JAMIE LYNN GALLIAN
16222 Monterey Lane Unit 376
Huntington Beach, CA 92649
(714) 321-3449
jamiegallian@gmail.com

In PRO PER

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| | Case No. 8:21-bk-11710-ES |
| In re: | Chapter 7 |
| JAMIE LYNN GALLIAN, | **DEBTORS REPLY OPPOSITION, MEMORANDUM OF POINTS AND AUTHORITIES TO HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES' MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION AND JOINDER PARTIES HUNTINGTON BEACH GABLES HOA; JANINE JASSO.** |
| Debtor. | |
| | Hearing Date: June 2, 2022 |
| | Time:       10:30 a.m. |
| | Courtroom:   5A |

TO THE HONORABLE ERITHE A. SMITH, ALL PARTIES AND TO THEIR

ATTORNEY'S OF RECORD:

Defendant Gallian opposes the Motion objecting to debtor's claimed homestead filed by

Interested Party, Houser Bros Co dba Rancho Del Rey Mobilehome Estates and Interested

Joinder's The Huntington Beach Gables Homeowners Association and Janine B. J

The purpose of bankruptcy is to give debtors a fresh start by shedding debts that they owed but

cannot pay.  Part of the fresh start includes lien avoidance on exempt assets. ***See Richardson,***

***224 B.R. at 808.***  Debtor wants to maximize the amount of property she gets to keep to avoid

any creditor collection efforts, especially efforts to collect their personal residence.

California law is instructive regarding property interests that debtors may possess at filing which are included in the bankruptcy estate as defined in § 541 of the Bankruptcy Code. To avoid a lien, it must impair an interest a debtor has in an exempt asset. Cited California law and cases affirm that a homestead right is an interest in real property. *See* California Const., Art. 12, §§ 1 & 2.

As the U.S. Supreme Court defines it, property of the estate consists of "all the interests in property, legal and equitable, possessed by the debtor at the time of filing ..." *Owen v. Owen,* 500 U.S. 305, 308 (1991).  This definition is extremely broad.

Debtor has continuously lived in her personal residence in Huntington Beach, CA TRACT 10542, Lot 1 & Lot 2, Unit 1, 2, 3, 4, the location of 459 units, in Unit 53 and then Unit 376 respectively.

There are two subject residence(s) debtor makes request to this Honorable Court to take Judicial Notice of:

**1.  4476 Alderport Drive, Unit 53 Huntington Beach, Ca 92649 A.P.N. 937-630-53.**

Debtor was the tenant from November 23, 2009 through March 22, 2017; Debtor was gifted the property from her step-mother and debtor's predecessor Sandra L. Bradley on March 23, 2017, Instrument No, 2017-0116715.  On October 31, 2018, debtor sold Unit 53 to Randall Nickel, a bona fide purchaser for value of $379,000.00.  A.P.N. 937-630-53.

**Statement of Financial Affairs, DOC 1, Part 7, No. 18,  page(s) 46-60,**

Debtor disclosed the sale of her primary residence, Unit 53 in her Chapter 7 petition filed July 9, 2021.  Subsequently, debtor read the petition question more closely and the

question asks "Within the last 2 years before you filed for bankruptcy, did you sell, trade or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"  Debtor disclosed No. 18, "Primary residence sold leasehold on 10/31/2018, 4476 Alderport Dr. #53, ….Paid in exchange amount as $379,000.00.

**2.  16222 Monterey Lane, Unit 376, Homeowner November 1, 2018 - to the present day.**

Petitioner, Houser Bros Co. and the two joinders, Huntington Beach Gables Homeowners Association; Janine Jasso, Esq. make no allegations that debtor has lived anywhere else or claimed any other property as her homestead exemption to the sale date of Unit 53 on October 31, 2018, and the purchase of Unit 376 November 1, 2018, to the present day.

Debtor designated and occupied the property as her homestead. *See* 4 Collier on Bankruptcy P 522.10 (16th 2020).  As previously stated, the only requirement for claiming a homestead exemption under the California exemption statute that the home claimed be "the principal residence of such person." Record title to the homestead is not required to claim a homestead exemption in the property.

Debtors' Chapter 7 Petition and Schedules July 9, 2021, DOC 1, Schedule A/B required debtor to "list any ownership interest or legal or equitable interest in any residence, building, land, or similar property."  Debtor answered "Yes" on Schedule A/B, DOC 1, page 12 of 60, to indicate and disclose that she owned a legal or equitable interest in the Residence located at 16222 Monterey Lane, Unit 376, Huntington Beach, CA 92649, with a $235,000.00 value, Fee simple.  Debtor also disclosed **DOC 1, Part 1, page 12 of 60,**

"Personal Residence of Debtor since 11/1/2018, 2014 Skyline Custom Villa Manufactured Home Decal No. LBM1081.

Debtor disclosed under penalty of perjury on July 9, 2021, "J-Sandcastle Co LLC executed Release of Title, signed and notarized by Jamie Lynn Gallian, its Member on February 25, 2021. Debtor inquired with and disclosed to the Trustee's Assistant Lori Werner, and again at the first 341 Meeting of Creditors, when debtor was asked whether her schedules were correct under penalty of perjury.  Debtor forwarded a copy of and explained to the Trustee and the creditors that Debtor received an email dated August 11, 2021 at 3:54p.m, from Sarina Ramirez, Housing and Community Development 3737 Main Street Suite 400, Riverside, Ca 92501, Program Technician, Registration and Titling, a Title Search from confirmation from Housing and Community Development Release of Registered Title with HCD had not been processed to the best of her knowledge and Registered Title with HCD reflected Debtor's single member LLC, J-Sandcastle Co. LLC on July 9, 2021, the date debtor signed her schedules. Debtor had no information besides her copy of the Notarized Release on the Certificate of Title, released dated February 25, 2021, and a copy of NOTICE OF SALE OR TRANSFER, dated February 25, 2021.

**In Debtors DOC 1, page 15 of 60,** Debtor disclosed a "Manufactured Home Financing Note" and a UCC-1, File No. 19-769190527, with the Secretary of State on Debtor's primary residence, Decal No. LBM1081.

**In Debtors DOC 1, page 21 of 60,** Debtor disclosed a UCC-1, Filing Date of 1/14/2019, J-Pad, LLC File No. 19-7691905279.

4

On July 9, 2021, **Chapter 7, Statement of Financial Affairs, DOC 1, Part 7, No. 16, page 46-60,** Debtor disclosed and listed various amounts of monies paid in attorney fees, over $113,700.00 to various attorneys. There are several other attorneys who were paid attorney's fees for legal consulting. However, there was not enough room to list every amount and the attorney paid.

In additional to the 1/14/2019, UCC-1 there was an UCC-AD filed on 1/14/2019, File No. 19-7691916827, after debtor realized she listed herself as the Debtor on File No. 19-7691905279. Debtor further disclosed and filed with HCD a Statement to Encumber in favor of Ron Pierpont, (debtors ex-husband since 2015), perfected 8/20/2020, for funds Ms. Pierpont advanced Debtor for a bail bond.

Concealment of assets by a bankrupt is a fraud upon her creditors. It can only be established by clear and convincing proof. There is no proof of any literal transfer or concealment of any property, no falsification of any financial statement to secure credit; there is no scheme to execute any such intent.

In this case, the petitioners "proof" consists solely of the "date" HCD printed a Registration Card or printed a Certificate of Title by the Sacramento Office of Housing and Community Development.

Moving party's own documents establish that ownership of Unit 376 was released by J-Sandcastle Co LLC, signed and notarized by its Member Jamie Lynn Gallian on February 25, 2021.

To the extent petitioners are arguing that HCD's Certificate of Title Documents and/or the Registration Card Document are conclusive evidence on this issue, then why aren't they stuck with the conclusion that HCD's transfer date is binding as well.

Additionally, petitioner's failed to cite any legal authority in the motion that ownership does not change until HCD gets around to opening thousands of envelopes sent to various HCD locations

throughout California; processes the enclosed documents, and then and only then when the documents are received in Sacramento, (Sacramento is the only location that prints Certificate of Title Documents) changes to Certificate of Title and Registration Cards are sent through the United States Mail.

Individuals can own things of a personal nature such as cars, boats, planes, manufactured homes, without the Certificate of Title reflecting their name all the time. The important fact that petitioners are missing is "Possession of the Certificate of Title and Section "B" on the back side of the Certificate of Title indicate by a Releasing Signature of Registered Owner, and the Date of Release.

Whether or not such proof is sufficient to require a forfeiture of the bankrupt's right to make her own selection of her exemptions depends upon her ability reasonably to explain HCDs processing of claims. If her explanation is reasonable and exonerates her from fraud, no restriction on her right to select her exemptions may be imposed.

Federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Bankruptcy Code, abrogating *Latman v. Burdette*, 366 F.3d 774, *In re Yonikus*, 996 F.2d 866, *In re Doan*, 672 F.2d 831, and *Stewart v. Ganey*, 116 F.2d 1010.

The uncontradicted proof establishes the following facts: The Debtor sold unencumbered real property with a Homestead Exemption noted on the 2018-2019 Secured Tax Assessors Bill of the debtors previous residence A.P.N. 937-630-53, commonly described as 4476 Alderport Drive, Unit 53, Huntington Beach, CA 92649, sold on October 31, 2018, as disclosed on DOC 1. Debtor moved from the Alderport Drive home on or about September 11, 2018, after she was battered by a board members husband on August 5, 2018, in contemplation of the house being sold in September 2018, to the first purchasers, the Ginestra's. Debtor signed a 3-year lease on September 11, 2018, 5782 Pinon Drive Huntington Beach, CA 92649. Debtor received her original escrow deposit returned by check from Express Escrow on the first home she opened escrow on Unit 108, in Rancho Del Rey

1    Mobilehome Estates.  Debtors home on Alderport had not sold as a result the seller of Unit 108,

2    would not accept a contingency offer, backed out of the deal to sell Unit 108.

3        Gallian signed a 3-year lease with Henry Newton, paid a $ and resigned herself that she could

4    not afford and did not qualify to secure financing without a significant down payment. Housing

5    prices were beginning to rise as well a rents.

6        On or about October 28 or 29, 2018, debtor dropped the price on the Alderport home listed

7    for sale on Zillow.com. The very next morning debtor received a message through Zillow with a

8    phone number that an interested person would like to view the Alderport property.  Debtor met with

9    the buyers and sold the property the next day.  Debtor owned the Alderport home unencumbered. It

10   was gifted to debtor from her step-mother about a year earlier in March 2017 with an adjusted Prop

11   58 tax basis.

12

13       The new buyers were thrilled for a variety of reasons.  The buyer was purchasing the home

14   for his daughter who worked in Orange County.  It would be her first home away from home.  The

15   parents lived part of the time in Big Bear Lake, and the other part of the time in Riverside County.

16   The drive back and forth and the time spent looking for a home to purchase for their daughter was

17   wearing on them. The home on Alderport was vacant, except for a few larger items stored in the

18   garage on Alderport.  Debtor was current on the county property taxes and the HOA monthly fees

19   were paid.  The buyers were contemplating getting the keys as soon as the documents were signed,

20   notarized and filed.  There were no loans on the property or encumbrances. Debtor  provided two

21   preliminary title reports to the buyer along with two notebooks with information concerning the

22   Governing Documents, Sub-condominium/Grant Deed, Conveyance of Remainder Interest, Gables

23   Rules & Regulations, and a copy of the City Permit for the air conditioner installed in 2015, etc.

24   Debtor sent the HOA management company, Elite Management, by overnight mail about a week

25   earlier, a "Demand Letter" with a request for HOA Minutes, Financial Disclosures, 12 Months of

26   Board Meeting Minutes, Copy of Insurance Disclosure, Unit 53 Monthly Dues Statement, etc.

27

28

Debtor paid an expedited fee upon request of the Gables Management Company, Elite, Linn Joslyn, for the information to be provided within 24 hours.  Debtor also paid the October 2018 month HOA Dues by money order which included a $10.00 late fee.

**STANDING**

   *Matter of Southmark Corp.*, 62 F.3d 104, 106 (5th Cir. 1995) (a party to an executory contract has a claim against the debtor [only] when the [debtor has rejected] the contract). INTERESTED PARTY HOUSER BROS CO dba Rancho Del Rey Mobilehome Estates does not have standing to bring this Motion, therefore it must be dismissed.

# TABLE OF AUTHORITIES

<u>CASES</u>

*In re Bassin,* 637 F.2d 668, 670 (9th Cir. 1980)…………………………………………

*In re Carter,* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999)……………………………………

*In re Diaz,* 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016)……………………………………

*In re Greene*, 583F.3d 614, 618 (9th Cir. 2009)…………………………………………

In re Kelley, 300 B.R. 11, 16 (9th Cir. B.A.P. 2003)……………………………………..

*In re Pass*, 553 B.R. 749, 757 (B.A.P. 9th Cir. 2016)……………………………………

*In re Sewell,* 180 F.3d 707, 710 (5th Cir. 1999)…………………………………………..

*Gravel, Shea & Wright, Ltd. v. Bank of New England (In re New England Carpet Co.),*
744 F.2d 16, 17 (2d Cir. 1984)……………………………………………………………...

*Haskins v. Certified Escrow & Mortg. Co.,* (1950) 96 Cal. App. 2d 688, 691…………..

*Kono v. Meeker,* 196 Cal. App. 4th 81, 86 (2011)…………………………………………..

*Matter of Southmark Corp.,* 62 F.3d 104, 106 (5th Cir. 1995)…………………………..

*Mehrtash v. Mehrtash* (2001) 93 CA4th 75, 81, 112 CR2d 802, 806……………………

*Nadel v. Mayer* (*In re Mayer*), 167 B.R. 186 (9th Cir.BAP1994)………………………..

*Oppenheim v. Goodley* (1957) 148 Cal.App.2d 325, 328)………………………………

*Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20–21 (2000)………………………...

*Tassone v. Tovar* (1994) 28 Cal.App.4th 765, 768 ……………………………………..

*United States ex rel Farmers Home Admin. v. Arnold & Baker Farms,*
177 B.R. 648, 654 (9th Cir. BAP 1994)…………………………………………………….

*United Savs. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988)…………….

11 U.S.C. § 522(p) ................................................................................................... 15, 16

11 U.S.C. § 522(p)(1). ..................................................................................................... 15

11 U.S.C. § 704.730 ........................................................................................................ 16

11 U.S.C. § 704.740(a) ................................................................................................... . 10

11 U.S.C. § 704.740(b) ...................................................................................................10

Cal. Code Civ. P. § 703.130 ........................................................................................... 16

Cal. Code Civ. P. § 704.710(c) ...................................................................................... 11

Cal. Code Civ. P. § 704.720(a) ...................................................................................... 10

Cal. Code Civ. Proc. § 704.710(a)(2) ........................................................................... 11

CCP § 704.210……………………………………………………………………………

CCP § 704.730 ..........................................................................................................9, 11 15

CCP § 704.780(a) ...........................................................................................................12

CCP § 704.780(a)(1) ...................................................................................................... 11

CCP §§ 704.710-704.850 ............................................................................................... 9

CCP §§ 704.910-704.995 ............................................................................................... 9

CCP 704.730(a) ............................................................................................................... 10

STATUTES

11 U.S.C. § 522 ................................................................................................................ 9

11 U.S.C. § 522(b) ........................................................................................................ 3, 9

11 U.S.C. § 522(b)(1)………………………………………………………………………..

11 U.S.C. § 522(b)(3)(A) .............................................................................................. 15

11 U.S.C. § 522(c) ........................................................................................................ 3, 9

11 U.S.C. § 522(g) ...........................................................................................................3

11 U.S.C. § 522(o) ................................................................................. 15, 16

11 U.S.C. § 522(o)(1-4). ........................................................................15

11 U.S.C. § 704.730 ............................................................................... 16

11 U.S.C. § 704.740(a) .......................................................................... 10

11 U.S.C. § 704.740(b) .......................................................................... 10

Cal. Code Civ. P. § 703.130 ................................................................... 16

CCP §§ 703.580(b)……………………………………………………..

Cal. Code Civ. P. § 704.710(c) ............................................................. 11

Cal. Code Civ. P. § 704.720(a) ............................................................. 10

Cal. Code Civ. Proc. § 704.710(a)(2) ...................................................11

CCP § 704.730 ............................................................................. 9, 11, 15

CCP § 704.780(a)................................................................................... 12

CCP § 704.780(a)(1) ............................................................................. 11

CCP §§ 704.710-704.850 ....................................................................... 9

CCP §§ 704.910-704.995 ....................................................................... 9

CCP 704.730(a)..................................................................................... 10

## OTHER AUTHORITIES

FED.RULE OF EVIDENCE R. 301…………………………………….

4 COLLIER ON BANKRUPTCY P 522.10 (16th 2020)

PRELAWSUIT CONSIDERATIONS, Cal. Prac. Guide Enf. J. & Debt
(Rutter Group 2020) Ch. 3-C, 3:318.1……………………………………

REQUIEMENT OF INJURY TO CREDITOR 8 Witkin, Cal. Proc. 5th
Enf Judgm § 497 (2020)……………………………………………...

16A Cal. Jur. 3d CREDITORS RIGHTS AND REMEDIES § 406…………………………

1

2 RULES

3 Rule 1009…………………………………………………………………………………..12

4 Rule 4003(c)...................................................................................................................12

5 STANDARD

6 "preponderance of the evidence"  In re Kelley, 300 B.R. 11, 16 (9th Cir. B.A.P. 2003).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Memorandum of Points and Authorities

1.  At the time a petition for bankruptcy is filed, "all legal or equitable interests of the debtor in property" become available to satisfy creditors' claims and costs of the proceedings **unless the assets are '"exempted' from use** in satisfying claims of creditors and other authorized charges." *In re Sewell,* 180 F.3d 707, 710 (5th Cir. 1999); FRBP § 541(a)(1).

Bankruptcy exemptions are determined by the applicable state law on the date of the filing of the original bankruptcy petition. *__In re Bassin__*, 637 F.2d 668, 670 (9th Cir. 1980).

California has, per FRBP § 522(b)(1), has "opted out" of the federal exemption scheme and therefore California debtors may claim only those exemptions allowable under California law.

### Debtor Followed the California Statute by Filing a Declared Homestead

Debtor's complied with filing a Declared Homestead on July 9, 2021, Official Records of Clerk Recorder.  California homestead exemption statute entitles her to claim that exemption for bankruptcy purposes.

### A Debtor's Claimed Exemptions Are Presumptively Valid

Generally, claimed exemptions are "presumptively valid" and the objecting party thus bears the burden of proving that the exemption is improper. *In re Carter,* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999); FRBP §4003(c).

However, the Supreme Court in *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20–21 (2000), held that because burden of proof is substantive, in the absence of a federal interest requiring a different result, the state law allocation of the burden should apply in bankruptcy objection to claims.

1   Although the burden of proof lies with the party claiming the exemption, exemption

2   statutes are generally construed in favor of the debtor. *Kono v. Meeker,* 196 Cal. App. 4th 81, 86

3   (2011).

4   Pursuant to Cal. Civ. Proc. Code § 704.780(a), the burden to show a debtor's entitlement

5   to a homestead exemption rests with the debtor, **[unless]** a declared homestead has been

6   recorded. Cal. Civ. Proc. Code § 704.780(a) as is the case in this Chapter 7.  **DOC**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## a. Creditor has failed to shift the burden to Debtor

Creditor has failed to state any recognized objection to the California homestead exemption. "The exemption protects a 'homestead,' defined as a dwelling in which the debtor or the debtor's spouse resided on the date the judgment creditor's lien attached (in bankruptcy, the petition date) and has resided continuously until the court's determination that the dwelling is a homestead." *In re Pass*, 553 B.R. 749, 757 (B.A.P. 9th Cir. 2016) (citing Cal. Civ. Proc. Code §704.710(c)). "Thus, this protection is available in bankruptcy if the debtor was living in the home on the petition date. The exemption is 'automatic' in the sense that it requires no affirmative act by the debtor to make it effective; rather, it applies automatically to any dwelling that meets the definition." In re Pass, 553 B.R. at 757.

Interested party Houser Bros, Co or the joinders objection makes no allegation that the Property was not the principal dwelling in which Debtor resided on the date the bankruptcy petition was filed.

Second, the Debtor has resided in the Property since the Property was acquired on November 1, 2018, with the unencumbered proceeds from the sale of her previous home, October 31, 2018.

Third, Debtor claimed the $600,000 homestead exemption in her Schedule C § 704.730(a)(1) which provides for the $600,000 exemption.

Debtor's automatic exemption was effective on the date of the petition.

## b. Declared Homestead

The date for the determination of the homestead exemption amount is the date on which debtors file a bankruptcy petition. *In re Pass*, 553 B.R.749, 760 (B.A.P. 9th Cir. 2016) (citing *Moffat v. Habber* (In re Moffat), 119 B.R. 201, 204 n. 3 (9th Cir. BAP 1990)).

The Ninth Circuit BAP directly refutes Creditor's proposition in a substantially similar case where the creditor argues that a $100,000 homestead exemption limit be used instead of the $150,000 homestead exemption limit because $100,000 was the exemption limit in the year that the judgment lien attached. *In re Zall*, No. BAP.EC-05-1476-MOSB, 2006 WL 6811022, at *2 (B.A.P. 9th Cir. Sept. 5, 2006). The BAP went on to overrule that creditor's objection and find that the petition date was the date for determination of the amount of the homestead exemption under California law. Id.; see also *Nadel v. Mayer* (*In re Mayer*), 167 B.R. 186 (9th Cir.BAP1994).

**The BAP has also found that:**

Under California law, two species of homestead protection are available to judgment debtors, the "automatic" (or Article 4) homestead exemption and the "declared" (or Article 5) homestead protection, respectively.

These protections are available under different circumstances, they serve different purposes, and they confer different rights on debtors. "[T]here is no overlap between these rights." Id. At 756 (emphasis added). Depending on the circumstances, a given debtor may be entitled to one or the other, or to both, or to neither. Id.

*In re Pass,* 553 B.R. 749, 756–57 (B.A.P. 9th Cir. 2016) (citing *In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987)). As a result, Debtor's declared homestead declaration does not prevent Debtor from the benefit or use of the automatic homestead exemption (Schedule C) and Creditor has provided no case law or statute indicating otherwise. Katz v. Pike (In re Pike), 243 B.R. 66,

69-71 (9th Cir. BAP 1999); See also Avetoom v. Fridman (In re Fridman), Nos. CC-21-1101-LSF, 8:21-bk-10513-ES, 2022 Bankr. LEXIS 358, at *13 (B.A.P. 9th Cir. Feb. 11, 2022).

"[W]hen a debtor claims an exemption created under state law, the scope of the exemption is determined under state law which may provide that certain types of debtor misconduct warrant denial of the exemption.'" In re Gray, 523 B.R. 170, 175 (B.A.P. 9th Cir. 2014) (quoting Law v. Siegel, 134 S. Ct. 1188, 1196-97 (2014).

Courts in the Ninth Circuit have determined if or what kinds of equitable doctrines can be used by bankruptcy courts to disallow exemptions. "Without reaching the bankruptcy court's power to disallow exemptions or the relevance of California public policy concerning homestead exemptions, the Court agrees with the bankruptcy court that Creditors' California law theories would not preclude Debtor's homestead exemption in this case."

*In re Gilman,* No. 1:11-BK-11603-VK, 2020 WL 7087703, at *5 (C.D. Cal. Oct. 28, 2020).

In light of California public policy favoring liberal application of the homestead exemption, debtor respectfully requests this Court find Interested party Houser Bros Co and the joinders arguments in effective towards Debtor's homestead exemption.

"[A] valid claim of equitable estoppel consists of the following elements:

(a) a representation or concealment of material facts

(b) made with knowledge actual or virtual, of the facts

(c) to a party ignorant, actually and permissibly, of the truth

(d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was

induced to act on it." *In re Gilman*, No. 1:11-BK-11603-VK, 2020 WL 7087703, at *5 (C.D. Cal.

Oct. 28, 2020) (quoting *Behnke v. State Farm Gen. Ins. Co*., 196 Cal. App. 4th 1443,

1465 (2011)).

Debtor entered into a contract (the "Contract") with Creditor Houser Bros Co Attorney

Vivienne Alston on or about August 7 or 8, 2019, whereby Creditor agreed to dismiss her

Unlawful Detainer Case 30-2019-01041423, against Houser Bros for advancing their "Self Help"

against debtor; Gallian would dismiss her Wrongful Eviction Case against Houser Bros Co.

Gallian complied and dismissed the wrongful eviction.  Attorney Alston applied exparte

to the UD Court insisting the attorney mis-calendared, therefore failing to attend a status

conference hearing on or about August 7, 2019.  The Unlawful Detainer case was dismissed on

the courts own motion for failure to prosecute.  Thereafter, J-Sandcastle Co LLC, tendered a

cashier's check in the amount of $10,860.00 to the park manager Kathryne Houser-Curtiss and

Park Manager(s) Willie Maskulnski and Rick Maskulnski to obtain a signed Lot 376 agreement

with J-Sandcastle Co LLC.

Ms. Curtiss, the park Manager accepted the check from J-Sandcastle Co.'s Member

Jamie Gallian, proceeded to hand the check to bookkeeper Willie Maskulnski for processing on

the books.  Ms. Curtiss commented to Ms. Gallian that "she appreciated the check being for the

tenancy date beginning November 1, 2018 through August 31, 2019", instead of November 16,

2018 when Ms. Gallian delivered the application and tax clearance to HCD Office in Riverside

after attending a hearing at CJC Honorable James L. Crandall with the Association.

Assume for a moment the November 16, 2018, Security Agreement and Promissory Note are invalid, Creditor did not provide any evidence that Debtor intended to file bankruptcy in July 2021. Additionally, the alleged November 16, 2018, Security Agreement and Promissory Note doesn't contain any representations about Lender Gallian not filing for bankruptcy. Lastly, California has a public policy favoring liberal application of the homestead exemption. Therefore, Creditor has failed to meet their burden.

Creditor has failed to provide evidence showing that the Debtor had already anticipated filing bankruptcy. California has a public policy favoring liberal application of the homestead exemption.

# Declaration of Jamie Lynn Gallian

1. On October 31, 2018, Jamie Lynn Gallian ("Debtor") sold her unencumbered primary residence located at 4476 Alderport Drive Huntington Beach, CA 92649, A.P.N. 937-630-53, Tract 10542 Lot 1, Unit 53, to a bona fide purchaser, Randall Nickel for $379,000.00, Instrument No. 2018000396579, recorded Official Records of Clerk Recorder, County of Orange.

Ms. Gallian received the market value, far greater than any unit in the Gables subdivision sold for in the calendar year 2018. Gallian deposited the funds into her personal Chase Private Client Savings Account.

2. Gallian's home in the Gables, Unit 53, A.P.N. 937-630-53 listed on the 2018-2019 Secured Property Tax Roll with the Orange County Treasurer – Tax Collector included a Homeowners Exemption of $-7000. Gallian Decl.

3. On November 1, 2018, Gallian received an executed release and surrendered Certificate of Title LBM1081, for a 2014 Skyline Custom Villa Manufactured Home. The home was sold in place on Lot 376 within Tract 10542, Unit 4. Ms. Gallian paid the Orange County Assessor back taxes owed on the home LPT 891-569-62, which included a deposit for the next years taxes with her personal Alliant Credit Union checking account.XXXX-6018

4. Ms. Gallian resides in the home as her primary residence located at 16222 Monterey Lane Unit 376, Huntington Beach, CA 92649, and always anticipated it being her primary residence since November 2018.

5. Debtor purchased a 2014 Skyline Custom Villa manufactured home LBM 1081, with exempt funds from the sale of her unencumbered home on October 31, 2018, AP.N. 937-630-53 in the Gables subdivision.

6. Debtor personally delivered to the HCD Riverside office, the Ryan surrendered Certificate of Title Card, released on November 1, 2018, to Jamie Lynn Gallian with a signed

NOTICE OF SALE OR TRANSFER, EXECUTED BY THE SELLER LISA RYAN ON

NOVEMBER 1, 2018.

     7.  Under Section III, NOTICE OF SALE OR TRANSFER of the **State of California**

**Housing and Community Development Registration and Titling Form** contained the name of

JAMIE LYNN GALLIAN as the NAME OF PURCHASER/NEW OWNER on November 1,

2018, whited out and replaced with J-Sandcastle Co LLC on the form  to the right side on or

about November 15, 2018.

     8.  On November 1, 2018, debtor is informed and believe Lisa Ryan, the Seller of

LBM1081, gave NOTICE OF SALE OR TRANSFER to Park Management and to Houser Bros

Co dba Rancho Del Rey Mobilehome Estates.

     9.  On November 14, 2018, Houser Bros Co attorney Vivienne Alston, unlawfully filed

and obtained a WRIT of EXECUTION IN THE NAME OF LISA RYAN AND CONTINUED

TO HARASS AND TORMENT DEBTOR AND HER FAMILY BY USING THE SHERIFF

DEPARTMENT TO EXECUTE THE WRIT WITH THE KNOWLEDGE THAT LISA RYAN

SOLD THE 2014 SKYLINE CUSTOM VILLA AS ANTICIPATED BY THE PARTIES

STIPULATED JUDGMENT DATED OCTOBER 18, 2O18 OCSC 30-2018-01013582.

     10.  JAMIE GALLAIN, registered the personal property manufactured home with

Housing and Community Development on November 16, 2018, has claimed as exempt.11 U.S.C.

§ 522(b) (providing that "an individual debtor may exempt from property of the estate…")

**(o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of**

**an interest in--**

(1) real or personal property that the debtor or a dependent of the debtor uses as a residence;

(2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a

residence;

(3) a burial plot for the debtor or a dependent of the debtor; or

(4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;

## **Federal Rule of Bankruptcy Procedure 1009** provides that:

"A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." As recognized by the Ninth Circuit Bankruptcy Appellate Panel in In re Goswami, 304 B.R. 386 (9th Cir. BAP 2003), the Ninth Circuit has a liberal policy of "allowing debtors to amend their exemptions schedules so as to enhance their fresh start." Id. at 394, citing, In re Michael, 163 F.3d 526, 529 (9th Cir. 1998). As the Bankruptcy Appellate Panel further noted in Goswami, "The liberal rule governing amendments reflects the Ninth Circuit's 'preference for resolution on the merits, as against strict adherence to formalities.' " Id., citing and quoting, In re Anderson–Walker Indus., Inc., 798 F.2d 1285, 1287 (9th Cir. 1986). In light of the policy of liberality of amendment of bankruptcy petition documents, expressly including bankruptcy schedules, as stated in Rule 1009 and as recognized in the case law, there does not appear to be any legal authority to allow this court to bar any further amendments by the Debtor of his schedules.

## **RECITALS OF FACTS**

A.    GALLIAN held a Grant Deed and Condominium Sublease for a specific lot within a Planned Unit Community as defined in Civil Code §4175, located at 4476 Alderport Drive Unit 53 Huntington Beach, CA 92649 ("UNIT") as of March 23, 2017. ("Unit 53")

a.    GALLIAN became record owner of the Grant Deed and Condominium Sub-leasehold on March 23, 2017, by way of an Assignment recorded in the Official Records of the County of Orange as Document Number 2017-000116815, which was "Gifted" to GALLIAN by Gallians predecessor and co-defendant, her step-mother, Sandra L Bradley ("BRADLEY").

b.  GALLIAN sold her interests in her separate property, Unit 53, to Randall L. Nickel on October 31, 2018, by way of a Grant Deed and Assignment of Condominium Sublease recorded in the Official Clerk Records of the County of Orange as Document Number 2018-000395579.

B.      By virtue of GALLIAN'S Ground leasehold and Sub-Condominium Leasehold GALLIAN was an owner of separate interest coupled with an undivided percentage interest in common with all owners of separate interest and a Membership in the ASSOCIATION, as defined by Civil Code section 4160, subject to the Governing Documents of the ASSOCIATION, as defined by Civil Code section 4150, including but not limited to:

a.  **Declaration of Covenants, Conditions and Restrictions** for Huntington Beach Gables ("CC&Rs") recorded on May 28, 1980, as Document No. 1980-28926, Official Records of Clerk Recorder, County of Orange;

b.  **First Amendment to Declaration of Covenants, Conditions and Restrictions** for Huntington Beach Gables recorded on August 5, 1980, as Document No. 1980-5002, Official Records of Clerk Recorder, County of Orange.

c.  **Condominium Plan** recorded on October 18, 1979, as Document No. 79-28814, Official Records of Clerk Recorder, County of Orange.

**ADDITIONAL DOCUMENTS RECORDED**

**Official Records of Clerk Recorder, County of Orange.**

A.  **COVENANT RUNNING WITH THE LAND** recorded on November 6, 1979, Book 13383, Pg(s) 1868-1870, in the Orange County Recorder's Office

a.  **Partial Cancellation of Master Lease** recorded on November 7, 1980, Book 13424, Pg(s) 1253-1255, Instrument No. 8691, in the Orange County Recorder's Office;

b. **Partial Cancellation of Sublease** recorded on November 7, 1980, Book 13424, Pg(s) 1256-1258, Instrument No. 8692, in the Orange County Recorder's Office;

c. All right, title and interest as Tenant, in and under that certain **Master Lease/Ground Lease,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1259-1273, Instrument No. 8693, in the Orange County Recorder's Office;

d. All right, title and interest as Tenant, in and under that certain **Condominium Sublease,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1274-1290, Instrument No. 8694, in the Orange County Recorder's Office; As amended by the First Amendment to the Condominium Sublease effective January 1, 2003, recorded in the Office of the Orange County Clerk Recorder as Document No. 2003-001044770 o August 28, 2003:

e. All right, title and interest as Tenant, in and under that certain **Conveyance of Remainder Interest,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1291-1293, Instrument No. 8695, in the Orange County Recorder's Office;

f. All right, title and interest as Tenant, in and under that **certain Condominium Sublease (Short Form – Memorandum and Grant Deed,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1294-1298, Instrument No. 8696, in the Orange County Recorder's Office:

g. The **Articles of Incorporation** of the Huntington Beach Gables Homeowners Association, recorded with the California Secretary of State May 23, 1980;

h. **The Bylaws of the Huntington Beach Gables** ("Bylaws"); executed May 23, 1980;

Debtor resides in a manufactured home which she filed a Declared Homestead Exemption and believes she purchased her current residence with exempt funds, claimed as exempt.

Debtor has been the subject of continued mistruths regarding Fee Interest and Air-Space, and has been paying property taxes for over 10 years on land that she also pays ground lease payments on.

Debtor registered the Certificate of Title to the 2014 Skyline Custom Villa manufactured home in her name on February 25, 2021 after a mandatory settlement conference with Houser Bros Co the management company for Rancho Del Rey.

Debtor admits that she personally delivered the surrendered documents to HCD in Riverside, in fact the petitioners documents are stamped November 16, 2018, which included the surrendered Certificate of Title and Release of Title dated November 1, 2018, executed under penalty of perjury, by the seller, Lisa Ryan to debtor on November 1, 2018, of a 2014 Skyline Custom Villa manufactured home.

**The Stipulated Judgment between Houser Bros Co and Lisa Ryan 30-2018-01013582,** contemplated that Lisa Ryan had 6 months, or until February 3, 2019, to sell her home in place. Ryan was moving out of her home and a new owner would purchase the home and complete the required residency requirements.  Ryan sold her home 14 days after the Stipulated Judgment was

agreed to by the parties and became an Order of the Court on October 18, 2018. OCSC 30-2018-01013582.

Lisa Ryan, Seller, signed and executed State of California, Department of Housing and Community Development NOTICE OF SALE OR TRANSFER, gave notice to Rancho Del Rey that she sold the 2014 Skyline Custom Villa manufactured home on November 1, 2018, located and installed pursuant to Health & Safety 18551, on Lot 376, Unit 4, in TRACT 10542, under a recorded **Condominium Sublease and Grant Deed Short Form Memorandum,** recorded in the Official Records of the Clerk Recorder for the County of Orange against A.P.N. 178-011-16; under a **Condominium Plan** recorded October 18, 1979, in Book 13358, page 1193, of Official Records and **Covenants Running With The Land**, executed on October 19, 1979, recorded November 18, 1979, in Book 13383, page 1868-1870, of Official Records of the Clerk Recorder for the County of Orange against A.P.N. 178-011-16.

On November 11, 2018, almost two weeks after Jamie Gallian purchased the 2014 Skyline Custom Villa home from Lisa Ryan, and after Lisa Ryan gave Notice of Sale on November 1, 2018, Houser Bros Co attorney Vivienne Alston filed a Writ of Execution in the name of Lisa Ryan, dated 11/14/2018, without application to the Court or Notice and delivered it to the Orange County Sheriff on or about November 19, 2018.

On November 16, 2018 over 2 weeks after the manufactured home was purchased by Jamie Gallian on November 1, 2018, Jamie Lynn Gallian drove to Riverside HCD and registered the 2014 manufactured home in the name of her sole member LLC J-Sandcastle Co LLC until the earliest of several things happened:

1.  Jamie Gallian would be allowed to terminate the three-year residential lease she entered into for the property at 5782 Pinon Drive Huntington Beach, CA on September 11, 2018:

2.  Jamie Gallian would be allowed to intervene into the civil action Houser Bros Co. v Lisa Ryan 30-2018-01013582, and have the WRIT recalled and terminated by Court Order.

3. Request sanctions against the Houser Bros Co attorney for interfering with the terms of the purchase of the 2014 Manufactured Home;

4. Requests sanctions against the Houser Bros Co for violating the Davis Stirling Act and the Subdivision Map Act;

5. Figure out why a Tract Map and Condominium Plan were recorded August 1979 and October 1979, against TRACT 10542, Unit 1, 2, 3, 4, Lot 1 & Lot 2, and the First Amendment to the CC&Rs recorded 1 day before the tentative map was to expire on 8-6-1980, and recorded unlawfully after Cal Bre issued the "White Report" was in mid July 1980 for "TRACT 10542";

6. More importantly determine the legality of "Air-Space Condominiums" on leased land in violation of Article 935 and Huntington Beach Subdivision Map Ordinances;

7. Request the Tax Assessor refund approximately 8 years of overpayment of taxes for the "Land" and in addition to paying the property taxes, payments made for "Air-Space subcondominium on leased land, also payments made against a ground lease bill for 8 years.

Because property of the estate includes only the debtor's interest in the LLC - and not the manufactured home owned by the LLC - Debtor's claim of exemption is authorized under the law because it is debtor's primary residence and has been since debtor purchased the home on November 1, 2018, with the funds of her previous homestead disclosed on her initial chapter 7 petition, DOC 1.

Further, there is a 2018 Security Agreement and Promissory Note against the manufactured home perfected 1/14/2019, on the face of the Certificate of Title to the 2014 manufactured home held by J-Pad, LLC.

Registering title to the manufactured home to one LLC and subjecting its value to a perfected lien held by another LLC does not prevent debtor from claiming a homestead exemption in her personal residence.

27

## 2.    Factual Background

## A.    Procedural Background

On July 9, 2021 ("Petition Date"), Jamie Lynn Gallian ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. On the same date, Ms. Gallian filed her initial Schedules and Statements ("Original Schedules"). A true and correct copy of the Original Schedules is attached to the Declaration of Jamie Lynn Gallian ("Gallian Declaration")

At the instant of the commencement of a bankruptcy case, an automatic stay comes into effect as a matter of law. 11 U.S.C. § 362(a). The initial 341 meeting of creditors was held August 18, 2021, continued approximately 9 nine times.

At the August 18, 2021, 341 Meeting of Creditors, Debtor informed the Trustee Jeffrey Golden and the Interested Parties present, namely Houser Bros Co and Janine Jasso, Esq. and Huntington Beach Gables Homeowners Association that Debtor believed her petition was inaccurate and she would be amending her petition concerning several areas one that the Registered Owner of the 2014 Manufactured Home as of the date the Petition was filed and that debtor received from HCD a Title Search dated July 27, 2021, which reflected Jamie Lynn Gallian as the Registered Owner perfected 2/25/2021, however J-Pad, LLC 1/14/2019 perfected Certificate of Title was mistakenly removed when it was only requested Mr. Pierpont 8/20/20, Encumbrance be removed.

HCD Riverside Manager, Ms. Sylvia Cruz spoke to debtor instructed debtor when she received the Original Certificate of Title from Sacramento in the US Mail, which debtor did receive approximately August 5, 2021, to take the form that was printed August 3, 2021, to HCD in Riverside to correct and re-add J-Pad, LLC1/14/2019 as the Legal Owner back to the Certificate of Title.

Debtor was informed at the Riverside office she would have to pay a second fee of approximately $118.00 to HCD Riverside to correct the error which was made by the Sacramento Registration and Titling Department at the beginning of July 2021.  Debtor paid $118.00 by an assigned DTN number approximately July 14, 2021, and again on or about August 6, 2021, at HCD Riverside using an ATM card to make the correction on August 6, 2021 reflected on the Title Search dated August 11, 2021 provided by email to debtor by HCD Riverside Technician Sarina provided to the Trustee.

On the petition date July 9, 2021, the registered title owner of the manufactured home located at 16222 Monterey Lane, Unit #376, Huntington Beach, CA 92649 ("Property") was Jamie Lynn Gallian as of February 25, 2021, the date J-Sandcastle Co LLC signed and dated to release the Certificate of Title to Jamie Lynn Gallian, notarized the same date.

J-Sandcastle Co, LLC ("J-Sandcastle LLC") was subject to perfected UCC-1 filing 1/14/2019, supported by a Security Instrument and Promissory Note dated November 16, 2018, executed at Central Justice Center between J-Sandcastle Co LLC, Jamie Lynn Gallian, Member and Jamie Lynn Gallian, Lender and J-Pad, LLC, it's Manager and the holder of the Note with all legal owners, J-Pad, LLC perfected under Certificate of Title ("COTA") under the laws of the State of California.

Debtor's Schedules further reflect that she the sole owner of J-Sandcastle LLC. Because the LLC was listed as the registered owner of the manufactured home on the Petition Date, the debtor disclosed the name of the LLC on the debtor's petition and disclosed on Schedule AB she had an interest in the property.

Debtor resides in the home and it is debtors home and property of debtor's Estate. Debtor is entitled to a homestead exemption.

**Transferring Exempt Property May Not be a Fraudulent Transfer Under California Law**

Debtor wants to maximize the amount of property she gets to keep, to avoid, any creditor collection efforts, especially efforts to collect her personal residence.

California laws create a specific, statutory exclusion from fraudulent transfer claims for property that has no equity beyond an <u>exemption</u>, including transferring a personal residence subject to <u>California's homestead exemption</u>. Such transfers may be entirely exempt from an attack as a <u>fraudulent transfer in California court</u>, also known as fraudulent conveyance, or voidable transaction.

**The Language of California's Uniform Voidable Transactions Act Excludes Exempt Property, Including a Personal Residence Subject to a Homestead** *Exemption*

Under the California Uniform Voidable Transactions Act (UVTA), creditors can attack as an actually fraudulent transfer a "**transfer**" made "With actual intent to hinder, delay, or defraud any creditor of the debtor" or "Without receiving a reasonably equivalent value in exchange for the transfer or obligation…." California Civil Code § 3439.04. Creditors can also seek to avoid as a constructively fraudulent transfer any "**transfer**" made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." <u>California Civil Code § 3439.05</u>.

In turn, the definitions under the California Uniform Voidable Transactions Act provides that "'**Transfer**' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." California Civil Code § 3439.01(m).

Definitions under the California Uniform Voidable Transactions Act also provide that: "'Asset' means **property** of a debtor, but the term **does not include** the following:

(1) Property to the extent it is encumbered by a valid lien.

(2) Property to the extent it is generally exempt under nonbankruptcy law**."** <u>California Civil Code, § 3439.01(a).</u>

**<u>Debtor's previous property residence was sold on October 31, 2018, was exempted under California's exemption laws</u>** and is excluded from the definition of an asset that can be subject to a claim that of being a fraudulent transfer.  This exemption has been explained by one California court in 2019, "the [California] UVTA defines an asset as the 'property of a debtor,' excluding property 'to the extent it is encumbered by a valid lien[,]' and 'to the extent it is generally exempt under nonbankruptcy law.' ([California Civil Code] § 3439.01, subd. (a).) As noted by the Legislative Committee Comments, the definition of asset 'requires a determination that the property is subject to enforcement of a money judgment.

Under **<u>Section 704.210 of the Code of Civil Procedure</u>**, property **that [is not]** subject to enforcement of a money judgment is exempt.' (Legis. Com. com., 12A pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 3439.01, p. 253.)" <u>Potter v. Alliance United Ins. Co.</u> (2019) 37 Cal.App.5th 894, 906.

The decision follows a 1994 California court of appeal opinion: "It has long been the rule that a gift, sale, or pledge of any part of a homestead cannot, under any circumstances, be with intent to defraud a creditor not having a lien upon the premises, for a creditor is not entitled to complain of the transfer by the debtor of an asset which he could not have reached, had the debtor retained it.  If the homestead is valid, no attempted disposition or conveyance of the property, however fraudulent, injures the creditor. For such act, leaves the creditor in the same position in which he would have been before it was done.

A Debtor's attempt to defeat her creditors is not commendable, such conduct neither enlarges plaintiff's rights, nor gives him benefits as punishment of debtor. In such circumstances the defendant's motives are immaterial." *Tassone v. Tovar* (1994) 28 Cal.App.4th 765, 768 (quoting *Oppenheim v. Goodley* (1957) 148 Cal.App.2d 325, 328).

"*Mehrtash [v. Mehrtash* (2001) 93 Cal.App.4th 75, 80] rightly affirmed the longstanding principle that injury-in-fact is an essential element of a claim under the UFTA [Uniform Fraudulent Transfer Act] , and we follow that principle in the present case. A creditor has not been injured unless the transfer puts beyond reach property the creditor **could subject to payment of his or her debt.**" *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 845.

The *Fidelity* court continued that: "Rather, we reiterate and adopt the following language of the *Mehrtash* opinion: 'Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce the plaintiff's money judgment, it could not be sold without a court order because it is the [debtor's dwelling], and could not be sold without a minimum bid equal to [all] encumbrances and senior liens [plus] the homestead exemption. The plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside.' (*Mehrtash*, *supra*, 93 Cal.App.4th at p. 81) The evidence at trial showed that *Fidelity* could not have obtained any net recovery if the transfer were set aside and a forced sale of the property was sought." *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847.

A number of secondary sources have also discussed this requirement of an of an "injury" to creditor required to attack a transfer as fraudulent under California law. *See Requirement of Injury to Creditor.*, 8 Witkin, Cal. Proc. 5th Enf Judgm § 497 (2020); 16A Cal. Jur. 3d Creditors' Rights and Remedies § 406 ("A creditor [has not] been injured unless the transfer puts beyond

the creditor's reach property that he or she otherwise would be able to subject to the payment of his or her or her debt"); Prelawsuit Considerations, Cal. Prac. Guide Enf. J. & Debt (Rutter Group 2020) Ch. 3-C, 3:318.1 ("*Mehrtash v. Mehrtash* (2001) 93 CA4th 75, 81, 112 CR2d 802, 806—real property conveyance not fraudulent where plaintiff not injured (no evidence that value of property could support net recovery with mortgages, senior liens and homestead exemption)").

### Transferring a Home with No Equity May be Excluded from California's Fraudulent Transfer Laws

The law is that: "A transfer in fraud of creditors may be attacked only by one who is injured by the transfer. A creditor [does not] sustain injury unless the transfer puts beyond his reach property which he otherwise would be able to subject to the payment of his debt." *Haskins v. Certified Escrow & Mortg. Co.*, (1950) 96 Cal. App. 2d 688, 691.

Since Houser Bros Co, Huntington Beach Gables Homeowners Association or Janine Jasso, [would not] have benefited from collecting on a debtor's property with no equity, transferring such property should generally not be considered a fraudulent conveyance.

Priority claims are paid ahead of general unsecured creditors but may not be paid out of encumbered assets absent secured creditor consent or application of § 506(c). *See Gravel, Shea & Wright, Ltd. v. Bank of New England (In re New England Carpet Co.)*, 744 F.2d 16, 17 (2d Cir. 1984); *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir. 1984); *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1982); *In re American Resources Management Corp.*, 51 B. R. 713, 721 (Bankr. D. Utah 1985).

For all of the above reasons, Debtor respectfully requests this Court deny the Motion by Houser Bros Co., Huntington Beach Gables Homeowners Association and Janine Jasso, Esq. all interested parties objecting to debtors claimed homestead exemption.

1         I declare under penalty of perjury of the laws of the State of California the foregoing to

2    be true and correct to the best of my ability and belief.

3    Signed this 31st day of May 2022, at Huntington Beach. CA County of Orange

4

5                          Respectfully Submitted,

6    Dated:  June 1, 2022

7                         By: *Jamie Lynn Gallian*

8                         JAMIE LYNN GALLIAN
                          Debtor,  IN PRO PER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 5801 SKYLAB ROAD HUNTINTON BEACH, CA 92647

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS REPLY OPPOSITION TO HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES' MOTION TO TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION JOINDER OF GABLES HOA AND JANINE JASSO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 31, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Aaron E DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Jeffrey I Golden (TR)**    lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend oza@ecf.courtdrive.com
- **Brandon J Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Eric P Israel**    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Mark A Mellor**    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

**2.    SERVED BY UNITED STATES MAIL**:

On (*date*) May 31, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Janine Jasso, Esq.**
16025 Warmington Lane
Huntington Beach, CA 92649

**Michael D Poole**
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 31, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Erithe A. Smith, USBC, 411 West Fourth Street, Santa Ana, CA 92701
- Janine B. Jasso, Esq.. j9_jasso@yahoo.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 31, 2022 | Robert McLelland | *Robert McLelland* |
|---|---|---|
| Date | Printed Name | Signature |

3