# EXHIBIT  1

# 7/9/2021 CHAPTER 7 PETITION

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

CENTRAL DISTRICT OF CALIFORNIA

Case number *(if known)* _____

Chapter you are filing under:

■ Chapter 7
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Check if this is an amended filing

**FILED**

JUL - 9 2021

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy          04/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

|  |  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| 1. | **Your full name** | | |
|  | Write the name that is on your government-issued picture identification (for example, your driver's license or passport). | **Jamie**<br>First name | <br>First name |
|  | | **Lynn**<br>Middle name | <br>Middle name |
|  | Bring your picture identification to your meeting with the trustee. | **Gallian**<br>Last name and Suffix (Sr., Jr., II, III) | <br>Last name and Suffix (Sr., Jr., II, III) |
| 2. | **All other names you have used in the last 8 years**<br>Include your married or maiden names. | **Jamie L Gallian** | |
| 3. | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-3936** | |

Debtor 1    __Jamie Lynn Gallian_____    Case number *(if known)* _____

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**<br><br>Include trade names and *doing business as* names | ■ I have not used any business name or EINs.<br><br>Business name(s)<br>_____<br><br>EIN<br>_____ | ☐ I have not used any business name or EINs.<br><br>Business name(s)<br>_____<br><br>EIN<br>_____ |
| **5. Where you live** | **16222  Monterey  Ln. SP#376**<br>**Huntington  Beach,  CA  92649**<br>Number, Street, City, State & ZIP Code<br><br>**Orange**<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br>_____<br>Number, P.O. Box, Street, City, State & ZIP Code | If Debtor 2 lives at a different address:<br><br>_____<br>Number, Street, City, State & ZIP Code<br><br>_____<br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br>_____<br>Number, P.O. Box, Street, City, State & ZIP Code |
| **6. Why you are choosing *this district* to file for bankruptcy** | Check one:<br><br>■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.)<br>_____ | Check one:<br><br>☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.)<br>_____ |

Debtor 1    __Jamie Lynn Gallian__    Case number *(if known)* _____

| Part 2: | Tell the Court About Your Bankruptcy Case |

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)*). Also, go to the top of page 1 and check the appropriate box.

- ■ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

**8. How you will pay the fee**

- ■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

- ☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

- ☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

- ■ No.
- ☐ Yes.

| | District _____ | When _____ | Case number _____ |
| | District _____ | When _____ | Case number _____ |
| | District _____ | When _____ | Case number _____ |

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

- ■ No
- ☐ Yes.

| | Debtor _____ | | Relationship to you _____ |
| | District _____ | When _____ | Case number, if known _____ |
| | Debtor _____ | | Relationship to you _____ |
| | District _____ | When _____ | Case number, if known _____ |

**11. Do you rent your residence?**

- ■ No.    Go to line 12.
- ☐ Yes.    Has your landlord obtained an eviction judgment against you?

   - ☐ No. Go to line 12.
   - ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Debtor 1   **Jamie Lynn Gallian**                                          Case number *(if known)* _____

---

**Report About Any Businesses You Own as a Sole Proprietor**

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.   Go to Part 4.

☐ Yes.   Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor* or a debtor as defined by 11 U.S.C. § 1182(1)?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines. If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

■ No.   I am not filing under Chapter 11.

☐ No.   I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.   I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.   I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

**Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention**

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.   What is the hazard?   _____

If immediate attention is needed, why is it needed?   _____

Where is the property?   _____

_____
Number, Street, City, State & Zip Code

---

Debtor 1   **Jamie Lynn Gallian**                                                                 Case number *(if known)* _____

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1  **Jamie Lynn Gallian**                                                Case number *(if known)* _____

| Part 6: | Answer These Questions for Reporting Purposes |

**16.** What kind of debts do you have?

   **16a.** **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

     ☐ No. Go to line 16b.
     ■ Yes. Go to line 17.

   **16b.** **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

     ☐ No. Go to line 16c.
     ☐ Yes. Go to line 17.

   **16c.** State the type of debts you owe that are not consumer debts or business debts

     _____

**17.** Are you filing under Chapter 7?

   ☐ No. I am not filing under Chapter 7. Go to line 18.

   ■ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

     ■ No
     ☐ Yes

**18.** How many Creditors do you estimate that you owe?

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**19.** How much do you estimate your assets to be worth?

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ■ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**20.** How much do you estimate your liabilities to be?

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ■ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Part 7: | Sign Below |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

_Jamie L Gallian_                  _____
**Jamie Lynn Gallian**                                              Signature of Debtor 2
Signature of Debtor 1

Executed on  **7/9/2021**                                           Executed on  _____
    MM / DD / YYYY                                                  MM / DD / YYYY

Debtor 1    **Jamie Lynn Gallian**                                                    Case number *(if known)*

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

_____        Date  _____
Signature of Attorney for Debtor                                                MM / DD / YYYY

_____

_____
Firm name

_____
Number, Street, City, State & ZIP Code

Contact phone  _____        Email address  _____

_____
Bar number & State

---

8

Debtor 1 _____    Case number (if known)_____
         First Name    Middle Name    Last Name

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☒ No
☐ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☒ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☒ No
☐ Yes. Name of Person_____.
        Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

X _*signature*_                                X _____
Signature of Debtor 1                          Signature of Debtor 2

Date  _7/9/2021_                               Date  _____
      MM / DD / YYYY                                 MM / DD / YYYY

Contact phone _____                Contact phone _____

Cell phone _714-321-3449_                      Cell phone _____

Email address _____                Email address _____

## STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LBR 1015-2
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1.  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)
**None.**

2.  (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)
**None.**

3.  (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)
**None.**

4.  (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)
**8:03-bk-1856-JB; Chapter 7; Central District of California - Santa Ana; Filed 08/04/2003; Discharged 11/17/2003**

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at **Santa Ana**_____, California.

Date: _____7/9/2021_____

**Jamie Lynn Gallian**
Signature of Debtor 1

_____
Signature of Debtor 2

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*October 2018*                    *Page 1*                    **F 1015-2.1.STMT.RELATED.CASES**

10

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | |
| | First Name          Middle Name          Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name          Middle Name          Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number (if known) | _____ | ☐ Check if this is an amended filing |

# Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.**

### Part 1:    Summarize Your Assets

| | | Your assets<br>Value of what you own |
|---|---|---|
| 1. | Schedule A/B: Property (Official Form 106A/B) | |
| | 1a. Copy line 55, Total real estate, from Schedule A/B...................................................... | $          235,000.00 |
| | 1b. Copy line 62, Total personal property, from Schedule A/B............................................. | $          19,634.34 |
| | 1c. Copy line 63, Total of all property on Schedule A/B....................................................... | $          254,634.34 |

### Part 2:    Summarize Your Liabilities

| | | Your liabilities<br>Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | |
| | 2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D...* | $          561,789.00 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | |
| | 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*............................... | $          0.00 |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*......................... | $          427,177.76 |
| | **Your total liabilities** | $          988,966.76 |

### Part 3:    Summarize Your Income and Expenses

| | | |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I*............................................... | $          1,000.00 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J*.................................................... | $          2,676.00 |

### Part 4:    Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**
   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☑ Yes

7. **What kind of debt do you have?**

   ☑ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum          Summary of Your Assets and Liabilities and Certain Statistical Information          page 1 of 2

Debtor 1   **Jamie Lynn Gallian**                                  Case number *(if known)* _____

8.  **From the *Statement of Your Current Monthly Income:*** Copy your total current monthly income from Official Form          $ _____ **1,000.00**
    122A-1 Line 11; **OR,** Form 122B Line 11; **OR,** Form 122C-1 Line 14.

9.  **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F:***

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ 0.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ _____ 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ _____ 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ _____ 0.00 |

| Fill in this information to identify your case and this filing: | |
|---|---|
| Debtor 1 | **Jamie Lynn Gallian** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |

☐ Check if this is an
   amended filing

## Official Form 106A/B
# Schedule A/B: Property                                                12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
■ Yes. Where is the property?

### Located on APN 178-011-16, Space No. 376

| 1.1 | | What is the property? Check all that apply | | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

**16222 Monterey Ln Space #376**
Street address, if available, or other description

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
■ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Huntington Beach    CA    92649-0000**
City                State    ZIP Code

Current value of the entire property?    Current value of the portion you own?
**$235,000.00**                **$235,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

Who has an interest in the property? Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

**Orange**
County
Personal Residence of Debtor since 11/1/2018
2014 Skyline Custom Villa Manufactured Home
Decal No. LBM1081
Serial Number AC7V710394GB 56'x15'2"
Serial Number AC7V710394GA 60'x15'2"

Other information you wish to add about this item, such as local property identification number: LPT APN 891-569-62

☐ Check if this is community property (see instructions)

**Registered Title with HCD Debtor's single member LLC, J-Sandcastle Co, LLC**

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................=>**    **$235,000.00**

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1     **Jamie Lynn Gallian**                                                    Case number *(if known)*

### 3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
■ Yes

| 3.1 | | | |
|---|---|---|---|
| Make: **Kia** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
| Model: **Sportage** | ■ Debtor 1 only | | |
| Year: **2020** | ☐ Debtor 2 only | Current value of the entire property? | Current value of the portion you own? |
| Approximate mileage: | ☐ Debtor 1 and Debtor 2 only | | |
| Other information: | ☐ At least one of the debtors and another | | |
| Location: 16222 Monterey Ln #376, Huntington Beach CA 92649 (LEASE) | ☐ Check if this is community property (see instructions) | $0.00 | $0.00 |

### 4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...........................................................=>     | $0.00 |

### Part 3:   Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?     **Current value of the portion you own?** Do not deduct secured claims or exemptions.

### 6. Household goods and furnishings
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes.  Describe.....

| Location: 16222 Monterey Ln #376, Huntington Beach CA 92649 | $4,500.00 |

### 7. Electronics
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
■ Yes. Describe     **Wall Television, Computer, Printer.**     $ 500.00
☐ No.
Location: 16222 Monterey Ln #376, Huntington Beach CA 92649

### 8. Collectibles of value
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
■ No
☐ Yes.  Describe.....

### 9. Equipment for sports and hobbies
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
■ No
☐ Yes.  Describe.....

### 10. Firearms
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes.  Describe.....

Debtor 1    **Jamie Lynn Gallian**    Case number *(if known)* _____

### 11. Clothes
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
☒ Yes. Describe.....

| Location: 16222 Monterey Ln #376, Huntington Beach CA 92649 | | $1,000.00 |
|---|---|---|

### 12. Jewelry
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☒ Yes. Describe
☐ No

20 year old Movado Wrist-watch 40th birthday gift; Costume jewelry from Mother and Grandmother Misc/ sized rings, various non-gold chains and bracelets, earrings.    $1,000.00

Location: 16222 Monterey Ln #376, Huntington Beach CA 92649

### 13. Non-farm animals
*Examples:* Dogs, cats, birds, horses
☒ Yes. Describe
☐ No.

5-year old Rescued Wired Terrier Dog-White "Ammie"

Location: 16222 Monterey Ln #376, Huntington Beach CA 92649

### 14. Any other personal and household items you did not already list, including any health aids you did not list
☒ No
☐ Yes. Give specific information.....

### 15.
Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................    $7,000.00

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?    **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

### 16. Cash
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☒ No
☐ Yes......................................................................................

### 17. Deposits of money
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
☒ Yes.......................

|  | Institution name: |  |
|---|---|---|
| 17.1 | **Checking and savings** | J-Sandcastle Co LLC - Chase - Un-cashed Tendered Space 376 Rent Checks | $ 8,050.00 |
| | | Alliant Credit Union (Personal) Stimulus Ck | $ 4,048.34 |

### 18. Bonds, mutual funds, or publicly traded stocks
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
☒ No
☐ Yes................... Institution or issuer name:

### 19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture
☐ No
☒ Yes. Give specific information about them...................

| Name of entity: | % of ownership: | |
|---|---|---|
| J-Sandcastle Co., LLC - Debtor's single member LLC (Purpose is to hold Registered title with HCD, to Debtor's primary residence)   LBM1081 | 100 % | $0.00 |

Debtor 1    **Jamie Lynn Gallian**    Case number *(if known)* _____

| | | | |
|---|---|---|---|
| **J-Pad, LLC**<br>**(Debtor owns 1/3 interest in LLC; only purpose**<br>**is to hold a note and UCC-1 filing on Debtor's**<br>**primary residence) LBM1081** | 33.33 | % | $0.00 |

---

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them
           Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
☐ No
■ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| **IRA** | **Fidelity** | $7,400.00 |

---

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
  No

| | | | |
|---|---|---|---|
| ☒ Yes. .................... | Institution name or individual: | Houser Bros. Co. dba Rancho Del Rey Mobilehome Estates<br>Ground Lease Deposit (Ryan) Agreement Space 376 - 1/1/2006 | **$ 686.00** |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
■ No
☐ Yes............    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
■ No
☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?**<br>Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......
 

          _____

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1   **Jamie Lynn Gallian**                                 Case number *(if known)* _____

☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes.  Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ■ No
    ☐ Yes. Name the insurance company of each policy and list its value.
              Company name:                          Beneficiary:                    Surrender or refund
                                                                                     value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive
    property because someone has died.
    No                          Father, DOD 6/17/2000, Charles J. Bradley, Jr.  Probate OCSC
    ☒ Yes.  Give specific information..    30-2017-00915711                                            $ unknown

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

    No
    ■ Yes.  Describe each claim........   Personal Injury: Against HOA Date of Injury 8/5/2018;  Severe nerve injury to
                                          top of left foot and left wrist Injury; occurred in the HOA common area of APN
                                          178-771-03, located on  APN 178-011-16,                       $ unknown

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

    ☐ No

    ■ Yes.  Describe each claim.........
    | Personal injury claims against Huntington Beach Gables<br>Homeowner's Association and Ind. Jesus Jasso Jr.;<br>DOI: 8/5/2018; Case No.: 30-2020-01153679 | $ unknown |
    | Potential insurance bad faith claim against Mercury<br>Insurance Failure to Indemnify; No lawsuit filed yet.<br>Related to Case No(s).: 30-2017-00913985, 30-2017-00962999 | $ unknown |
    | Real estate failure to disclose, claim against previous<br>homeowner Sandra Bradley; DOI: 04/11/2017; No lawsuit<br>filed yet. | $ unknown |
    | Houser Bros Co GP dba Rancho Del Rey Mobilehome Estates<br>Retaliation; Trespassing/Unlawful Entry; Wrongful Eviction;<br>Forcible Detainer; Cruelty to an animal causing death.<br>Failure to offer and execute rental agreement. | $ unknown |

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36.  **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
     for Part 4. Write that number here** ................................................................................................    $20,184.34

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ■ No. Go to Part 6.
    ☐ Yes.  Go to line 38.

Official Form 106A/B                         Schedule A/B: Property                                   page 5

Debtor 1    **Jamie Lynn Gallian**                                         Case number *(if known)* _____

| Part 6 | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

☐ Yes. Go to line 47.

| Part 7: | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |
|---|---|

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

☑ No

☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ..................................    **$0.00**

| Part 8: | **List the Totals of Each Part of this Form** |
|---|---|

55. **Part 1: Total real estate, line 2** ...................................................................................    **$235,000.00**

56. **Part 2: Total vehicles, line 5**                                    $0.00

57. **Part 3: Total personal and household items, line 15**            $ 7,000.00

58. **Part 4: Total financial assets, line 36**                         $ 20,184.34

59. **Part 5: Total business-related property, line 45**               $0.00

60. **Part 6: Total farm- and fishing-related property, line 52**      $0.00

61. **Part 7: Total other property not listed, line 54**         +      $0.00

62. **Total personal property.** Add lines 56 through 61...         **$27,184.34**   Copy personal property total    **$27,184.34**

63. **Total of all property on Schedule A/B.** Add line 55 + line 62                                    **$262,184.34**

Official Form 106A/B                          Schedule A/B: Property                                    page 6

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:   Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

    ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

    ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Location: 16222 Monterey Ln #376, Huntington Beach CA 92649**<br>Line from *Schedule A/B*: **6.1** | $7,000.00 | ■ $,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Checking and savings: Alliant Credit= Union          Stimulous Cks**<br>Line from *Schedule A/B*: **17.1** | $4,048.34 | ■ $4,048.34<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 541(b)(11) |
| **Checking and savings: Chase Bank**<br>Line from *Schedule A/B*: **17.1**<br>**8 months uncashed rent checks tendered to Houser Bros. dba Rancho Del Rey MHE/Fidelity 401K** | $8,050.00 | ■ $8,050<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.070 |
| **J-Sandcastle Co., LLC - Debtor's single member LLC (Purpose is to hold Registered title with HCD to Debtor's primary residence) 100 % ownership**<br>Line from *Schedule A/B*: **19.1** | $0.00 | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.060 |

Debtor 1    **Jamie Lynn Gallian**

Case number (if known) _____

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own<br>Copy the value from Schedule A/B | Amount of the exemption you claim<br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| **J-Pad, LLC**<br>**(Debtor owns 1/3 interest in LLC; only purpose is to hold a note and UCC-1 filing on Debtor's primary residence)**<br>**33.33 % ownership**<br>Line from Schedule A/B: **19.2** | $0.00 | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.060 |
| **IIRA: Fidelity IRA**<br>Line from Schedule A/B: **21.1** | $7400.00 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.115(a)(1) & (2), (b) |
| **Personal injury claims against Huntington Beach Gables Homeowner's Association and Jesus Jasso Jr.; DOI:  8/5/2018; Case No.: 30-2020-01153679**<br>Line from Schedule A/B: **34.1** | unknown    $0.00 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.140 |
| **Potential insurance bad faith claim against Mercury Insurance related to claim against Huntington Beach Gables Homeowner's Association; No lawsuit filed yet.  Related to Case Nos.: 30-2017-00913985, 30-2017-00962999**<br>Line from Schedule A/B: **34.2** | unknown    $0.00 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.140 |
| **Real estate fraud; Failure to disclose, claim against Sandra Bradley; DOI: 04/11/2017; No lawsuit filed yet.** Line from Schedule A/B: **34.3** | unknown    $0.00 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.140 |
| **Restitution claim against Jesus Jasso Jr. from PC §242**<br>**OCDA Case no.: 19WM09951**<br>Line from Schedule A/B: **34.4** | Unknown    $0.00 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.140 |

3. **Are you claiming a homestead exemption of more than $170,350?**
   (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

      ☐ No

      ☐ Yes

**Fill in this information to identify your case:**

| Debtor 1 | Jamie Lynn Gallian | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number
(if known) _____

☐ Check if this is an
amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

### Part 1:   List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>if any |
|---|---|---|---|---|
| **2.1**  Houser Bros. Co. | | $0.00 | $235,000.00 | $0.00 |

Creditor's Name
**DBA Rancho Del Rey
Mobilehome Estates
16222 Monterey Ln
Huntington Beach, CA
92649**

Describe the property that secures the claim:

**16222 Monterey Ln #376 Huntington Beach, CA 92649  Orange County Registered HCD Title held by Debtor's single member LLC - J-Sandcastle Co, LLC**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

_____
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 and another (J-Sandcastle Co, LLC)
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

Nature of lien. Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset) **Unexpired term of 80-yr. Ground Leasehold - Tract No. 10542, Unit 4, Space 376.**

Date debt was incurred   **11/1/2018 ongoing**   Last 4 digits of account number   **0376**

Debtor 1  **Jamie Lynn Gallian**
First Name        Middle Name        Last Name

Case number (if known) _____

| 2.2 | **J-Pad, LLC** | | $175,000.00 | $235,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name
**4519 Ponderosa Way**
**Yorba Linda, CA 92886**
Number, Street, City, State & Zip Code

**Ron Pierpont**
Creditor's Name
**4519 Ponderosa Way**
**Yorba Linda, CA 92886**

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred  **1/14/2019;**
**8/20/2020.**

**Describe the property that secures the claim:**

**16222 Monterey Ln #376 Huntington Beach, CA 92649  Orange County, HCD Title held by Debtor's single member LLC - J-Sandcastle Co, LLC**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)  **Manufactured Home Financing Note**
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)  **UCC-1 File No. 19-7691905279  Filing Date: 1/14/2019; Encumbrance; HCD Lien perfected 8/20/2020, Ronald J. Pierpont (Loan WJC 8/7/2019, 1/27/2020)**

Last 4 digits of account number    **LBM1081**

---

| 2.3 | **Kia Motors Finance** | | $4,186.00 | $0.00 | $4,186.00 |
|---|---|---|---|---|---|

Creditor's Name

**PO Box 20815**
**Fountain Valley, CA 92728**
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred

**Describe the property that secures the claim:**

**2020 Kia Sportage Location: 16222 Monterey Ln #376, Huntington Beach CA 92649 (LEASE)**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)  **Auto Lease**

Last 4 digits of account number    **9742**

---

| 2.4 | **Orange County Tax Assessor** | | $0.00 | $235,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**P.O. Box 149**
**Santa Ana, CA 92702**
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred

**Describe the property that secures the claim:**

**16222 Monterey Ln #376 Huntington Beach, CA 92649  Orange County Title held by Debtor's single member LLC - J-Sandcastle Co, LLC, APN 891-569-62**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)  **Property Taxes**

Last 4 digits of account number    **Decal LBM 1081; APN: 891-569-62**

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 4

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1  __Jamie Lynn Gallian__                                    Case number (if known) _____
    First Name    Middle Name    Last Name

| | | | | |
|---|---|---|---|---|
| **2.5** | **The Huntington Beach Gables Homeowners Association** | Describe the property that secures the claim: | $319,653.59 | $235,000.00 | $241,319.59 |

**2.5**  **The Huntington Beach Gables Homeowners Association**

Creditor's Name

c/o Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131;
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**      **$319,653.59**     **$235,000.00**     **$241,319.59**

16222 Monterey Ln #376 Huntington Beach, CA 92649  Orange County HCD Title held by Debtor's single member LLC - J-Sandcastle Co, LLC

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

    EJ-1

Date debt was incurred __May 6, 2019__    Last 4 digits of account number **OCJC** 30-2017-00913985

---

**2.6**  **The Huntington Beach Gables Homeowners Association**

Creditor's Name

c/o Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131;
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**      **$9,265.00**     **$235,000.00**     **$9,265.00**

16222 Monterey Ln #376 Huntington Beach, CA 92649  Orange County HCD Title held by Debtor's single member LLC - J-Sandcastle Co, LLC

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

    EJ-001 2019000148568 - filed OC REC. 5/3/2019

Date debt was incurred __March 21, 2019__    Last 4 digits of account number **OCJC** 30-2017-00962999

---

Debtor 1   **Jamie Lynn Gallian**                                          Case number *(if known)*
    First Name    Middle Name    Last Name

| 2.7 | **Huntington Beach Gables Homeowners Association** | Describe the property that secures the claim: | $53,684.41 | $235,000.00 | $53,684.41 |

Creditor's Name:

**Jasso; Gragnano; Phillips; Beck; Paulin; Burrett.**
**c/o Gordon Rees Scully & Mansukhani**
**633 W 5th Street, 52nd Floor**
**Los Angeles, CA 90071**
**c/o Epsten Grinnell & Howell, APC**
**10200 Willow Creek Road, Ste 100**
**San Diego, CA 92131;**
    Number, Street, City, State & Zip Code

**16222 Monterey Ln #376 Huntington Beach, CA 92649  Orange County HCD Title held by Debtor's single member LLC - J-Sandcastle Co, LLC**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

■ Other (including a right to offset)    **Judgment Lien (JL1)    File # U200003862424 -7/26/2020**

Date debt was incurred    Dec. 4, 2018          Last 4 digits of account number    **OCJC 30-2017-00913985**

Add the dollar value of your entries in Column A on this page. Write that number here:    $561,789.00

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:    $561,789.00

| **Part 2:** | **List Others to Be Notified for a Debt That You Already Listed** |

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Official Form 106D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 4 of 4

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com
                                                Best Case Bankruptcy

**Fill in this information to identify your case:**

Debtor 1      **Jamie Lynn Gallian**
_____
First Name          Middle Name          Last Name

Debtor 2      _____
(Spouse if, filing)   First Name          Middle Name          Last Name

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number   _____
(if known)

☐ Check if this is an
   amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                              12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:   List All of Your PRIORITY Unsecured Claims

1.   **Do any creditors have priority unsecured claims against you?**

■ No. Go to Part 2.

☐ Yes.

### Part 2:   List All of Your NONPRIORITY Unsecured Claims

3.   **Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

4.   **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

| | | |
|---|---|---|
| **BS Investors, LP**<br>**G/HB** | | **Total claim** |
| **4.1** Nonpriority Creditor's Name | Last 4 digits of account number   0376 | **Unknown** |
| **18201 Von Karmen Ste. 450**<br>**Irvine, CA 92612** | When was the debt incurred?   **11/1/2018-present** | |
| Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply | |
| Who incurred the debt? Check one. | | |
| ■ Debtor 1 only | ☐ Contingent | |
| ☐ Debtor 2 only | ☐ Unliquidated | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Disputed | |
| ☐ At least one of the debtors and another | Type of NONPRIORITY unsecured claim: | |
| ☐ Check if this claim is for a  community debt | ☐ Student loans | |
| Is the claim subject to offset? | ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims | |
| ■ No | ☐ Debts to pension or profit-sharing plans, and other similar debts | |
| ☐ Yes | ■ Other. Specify   OCSC Filed 1/2/2019   30-2019-0101423 | |

Debtor 1    **Jamie Lynn Gallian**                                                    Case number *(if known)*

| 4.2 | **Gordon Rees Scully & Mansukhani** | Last 4 digits of account number _____ | **Unknown** |

Nonpriority Creditor's Name

**633 W 5th Street, 52nd Floor**
**Los Angeles, CA 90071**
Number Street City State Zip Code

When was the debt incurred?    **12/4/2018; 5/6/2019**

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **OCSC Case No. 30-2017-00913985   Huntington Beach Gables Homeowners Association; Lee Gragnano; Ted Phillips; Lindy Beck; Janine Jasso; Jennifer Paulin; Lori Burrett**

---

| 4.3 | **Houser Bros. Co.** | Last 4 digits of account number    **0376** | **Unknown** |

Nonpriority Creditor's Name

**dba Rancho Del Rey Mobile Home Estates**
**17610 Beach Blvd Ste. 32**
**Huntington Beach, CA 92647**
Number Street City State Zip Code

When was the debt incurred?    **11/1/2018-present**

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Unlawful Detainer Lawsuit Filed 1/2/2019 OCSC 30-2019-01041423**

---

| 4.4 | **Internal Revenue Service** | Last 4 digits of account number _____ | **$3,361.00** |

Nonpriority Creditor's Name

**PO Box 7346**
**Philadelphia, PA 19101-7346**
Number Street City State Zip Code

When was the debt incurred?    _____

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Income Taxes**

---

Debtor 1    **Jamie Lynn Gallian**

Case number (if known) _____

| 4.5 | **James H Casello** | Last 4 digits of account number _____ | **Unknown** |

Nonpriority Creditor's Name

**Casello & Lincoln, Attorneys at Law**
**525 N Cabrillo Park Drive Ste 104**
**Santa Ana, CA 92701**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Misc. Debt.** _____

---

| 4.6 | **Janine Jasso c/o Huntington Beach Gables Homeowners Association** | Last 4 digits of account number _____ | **$46,138.00** |

Nonpriority Creditor's Name:

**Gordon Rees Scully & Mansukhani**
**633 W 5th Street, 52nd Floor**
**Los Angeles, CA 90071**

When was the debt incurred?    **12/4/2018**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **EJ-1 2018000467142, FILED 12/14/18 OC CLK REC**
OCSC Case No. 30-2017-00913985  Huntington Beach Gables Homeowners Association;
Lee Gragnano, Ted Phillips, Lindy Beck, Janine Jasso, Jennifer Paulin, Lori Burrett

---

| 4.7 | **Jennifer Ann Paulin c/o Huntington Beach Gables Homeowners Association:** | Last 4 digits of account number _____ | **$0.00** |

Nonpriority Creditor's Name

c/o **Gordon Rees Scully & Mansukhani**
**633 W 5th Street, 52nd Floor**
**Los Angeles, CA 90071**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **EJ-1 2018000467142, FILED 12/14/18 OC CLK REC;    OCSC Case No.**
**30-2017-00913985  Huntington Beach Gables Homeowners Association;**

---

Debtor 1    Jamie Lynn Gallian

Case number *(if known)* _____

| 4.8 | Lee S Gragnano c/o Huntington Beach Gables Homeowners Association | Last 4 digits of account number ____ | $0.00 |

Nonpriority Creditor's Name
c/o Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  EJ-1 2018000467142, FILED 12/14/18 OC CLK REC;    OCSC Case No. 30-2017-00913985   Huntington Beach Gables Homeowners Association;

| 4.9 | Lindy Beck c/o Huntington Beach Gables Homeowners Association | Last 4 digits of account number ____ | $0.00 |

Nonpriority Creditor's Name
c/o Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  EJ-1 2018000467142, FILED 12/14/18 OC CLK REC;   OCSC Case No. 30-2017-00913985   Huntington Beach Gables Homeowners Association;

| 4.10 | Lisa Ryan | Last 4 digits of account number ____ | $8,743.02 |

Nonpriority Creditor's Name

20949 Lassen St. Apt 208
Chattsworth, CA 91311

When was the debt incurred?    10-18-2018

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    30-2018-01013582   Misc Debt

Debtor 1    **Jamie Lynn Gallian**                                                Case number (if known) _____

| 4.1<br>1 | **Lori Burnett Huntington Beach Gables Homeowners Association** | Last 4 digits of account number _____ | **$0.00** |

Nonpriority Creditor's Name
**c/o Gordon Rees Scully & Mansukhani**
**633 W 5th Street, 52nd Floor**                      When was the debt incurred?    _____
**Los Angeles, CA 90071**
Number Street City State Zip Code                     As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.
■ Debtor 1 only                                       ☐ Contingent
☐ Debtor 2 only                                       ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only                          ☐ Disputed
☐ At least one of the debtors and another ☐           Type of NONPRIORITY unsecured claim:
☐ Check if this claim is for a community              ☐ Student loans
  debt                                                ☐ Obligations arising out of a separation agreement or divorce that you did not
Is the claim subject to offset?                          report as priority claims
■ No                                                  ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes                                                 ■ Other. Specify  EJ-1 2018000467142, FILED 12/14/18 OC CLK REC;   OCSC Case
                                                         No. 30-2017-00913985, Huntington  Beach Gables Homeowners Association

| 4.1<br>2 | **Nationwide Reconveyance, LLC** | Last 4 digits of account number _____ | **$0.00** |

Nonpriority Creditor's Name
**c/o Feldsott & Lee**
**23161 Mill Creek Drive Ste 300**                    When was the debt incurred?    _____
**Lagina Hills, CA 92653**
Number Street City State Zip Code                     As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.
■ Debtor 1 only                                       ☐ Contingent
☐ Debtor 2 only                                       ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only                          ☐ Disputed
☐ At least one of the debtors and another             Type of NONPRIORITY unsecured claim:
☐ Check if this claim is for a  community             ☐ Student loans
  debt                                                ☐ Obligations arising out of a separation agreement or divorce that you did not
Is the claim subject to offset?                          report as priority claims
■ No                                                  ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes                                                 ■ Other. Specify  **Lawsuit - Case No  30-2020-01163055-CU-OR-CJC**

| 4.1<br>3 | **Patricia C. Ryan** | Last 4 digits of account number _____ | **Unknown** |

Nonpriority Creditor's Name

**20949 Lassen St. Apt 208**                          When was the debt incurred?    _____
**Chattsworth, CA 91311**
Number Street City State Zip Code                     As of the date you file, the claim is: Check all that apply
Who incurred the debt? Check one.
■ Debtor 1 only                                       ☐ Contingent
☐ Debtor 2 only                                       ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only                          ☐ Disputed
☐ At least one of the debtors and another             Type of NONPRIORITY unsecured claim:
☐ Check if this claim is for a  community             ☐ Student loans
  debt                                                ☐ Obligations arising out of a separation agreement or divorce that you did not
Is the claim subject to offset?                          report as priority claims
■ No                                                  ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes                                                 ■ Other. Specify  **Lawsuit - Houser v Ryan UD**

Debtor 1    **Jamie Lynn Gallian**                                    Case number *(if known)* _____

| 4.1 4 | **Rancho Bernard Condominium Management** | | Last 4 digits of account number _____ | $0.00 |

Nonpriority Creditor's Name

When was the debt incurred? _____

**dba Elite Community Management**
**c/o Gordon Rees Scully Mansukhani**
**5 Park Plaza Ste 1100**
**Irvine, CA 92614**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **Lawsuit  Case No. 30-2020-01163055**

---

| 4.1 5 | **Randall Nickell** | | Last 4 digits of account number _____ | Unknown |

Nonpriority Creditor's Name

**4476 Alderport Dr**
**Huntington Beach, CA 92649**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **Lawsuit - Case No**
    **30-2020-01163055-CU-OR-CJC**

---

| 4.1 6 | **Orange County Superior Court Bench Citation  (Civil C-33)** | | Last 4 digits of account number    17-00913985 | $5,000.00 |

Nonpriority Creditor's Name

When was the debt incurred?    7/8/2021

**c/o Feldsott & Lee**
**23161 Mill Creek Drive Ste 300**
**Laguna Hills, CA 92653**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **MISC DEBT Collection Case 30-2017-00913985**

---

Debtor 1   **Jamie Lynn Gallian**                                           Case number *(if known)* _____

---

| 4.1 7 | **People of the State Of California 18WM05278** | Last 4 digits of account number _____ | **$ 13,229.24** |

Nonpriority Creditor's Name

**West Justice Center
8141 13th Street
Westminster, CA 91683**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Misc. Debt - 2021000348287  Filed 05/27/2021;  OC Clerk Recorder**

---

| 4.1 8 | **Superior Default Services Inc** | Last 4 digits of account number _____ | **$0.00** |

Nonpriority Creditor's Name

**c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Lawsuit 30-2020-01163055**

---

| 4.1 9 | **The Huntington Beach Gables** | Last 4 digits of account number _____ | **$319,653.59** |

Nonpriority Creditor's Name

**Homeowners Association
c/o Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131**

When was the debt incurred?   **5/6/2019**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **EJ-001 2019000165259, FILED 05/16/2019 OC CLERK RECORDER; OCSC No. 30-2017-00913985; Huntington Beach Gables Homeowners Association;**

---

Debtor 1   **Jamie Lynn Gallian**                                        Case number (if known) _____

| | |
|---|---|
| **4.2 0** | **The Huntington Beach Gables** |

| | |
|---|---|
| **The Huntington Beach Gables** | Last 4 digits of account number _____  _____  $9,265.00 |
| Nonpriority Creditor's Name | |
| **Homeowners Association** | When was the debt incurred?   **March 21, 2019** |
| **c/o Epsten Grinnell & Howell, APC** | |
| **10200 Willow Creek Road, Ste 100** | |
| **San Diego, CA 92131** | |
| Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply |
| Who incurred the debt? Check one. | |
| ■ Debtor 1 only | ☐ Contingent |
| ☐ Debtor 2 only | ☐ Unliquidated |
| ☐ Debtor 1 and Debtor 2 only | ☐ Disputed |
| ☐ At least one of the debtors and another | **Type of NONPRIORITY unsecured claim:** |
| ☐ **Check if this claim is for a  community debt** | ☐ Student loans |
| Is the claim subject to offset? | ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims |
| ■ No | ☐ Debts to pension or profit-sharing plans, and other similar debts |
| ☐ Yes | ■ Other. Specify  **EJ-001 2019000148568, FILED 05/03/2019 OC CLERK RECORDER; OCSC Case No. 30-2017-00962999, Huntington  Beach Gables Homeowners Association** |

| | |
|---|---|
| **4.2 1** | **The Huntington Beach Gables** | Last 4 digits of account number _____  _____  $3,070.00 |
| Nonpriority Creditor's Name | |
| **Homeowners Association** | When was the debt incurred?   **September 27, 2018** |
| **c/o Epsten Grinnell & Howell APC** | |
| **10200 Willow Creek Road, Ste 100 San** | |
| **Diego, CA 92131** | |
| Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply |
| Who incurred the debt? Check one. | |
| ■ Debtor 1 only | ☐ Contingent |
| ☐ Debtor 2 only | ☐ Unliquidated |
| ☐ Debtor 1 and Debtor 2 only | ☐ Disputed |
| ☐ At least one of the debtors and another | **Type of NONPRIORITY unsecured claim:** |
| ☐ **Check if this claim is for a  community debt** | ☐ Student loans |
| Is the claim subject to offset? | ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims |
| ■ No | ☐ Debts to pension or profit-sharing plans, and other similar debts |
| ☐ Yes | ■ Other. Specify **EJ-001 2018000435011, FILED 11/19/2018 OC CLERK RECORDER; OCSC  No. 30-2017-00913985, Huntington  Beach Gables Homeowners Association** |

| | |
|---|---|
| **4.2 2** | **Ted Phillips c/o Huntington Beach Gables Homeowners Association** | Last 4 digits of account number _____  _____  $0.00 |
| Nonpriority Creditor's Name | |
| **c/o Gordon Rees Scully & Mansukhani** | When was the debt incurred?   _____ |
| **633 W 5th Street, 52nd Floor** | |
| **Los Angeles, CA 90071** | |
| Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply |
| Who incurred the debt? Check one. | |
| ■ Debtor 1 only | ☐ Contingent |
| ☐ Debtor 2 only | ☐ Unliquidated |
| ☐ Debtor 1 and Debtor 2 only | ☐ Disputed |
| ☐ At least one of the debtors and another | **Type of NONPRIORITY unsecured claim:** |
| ☐ **Check if this claim is for a  community debt** | ☐ Student loans |
| Is the claim subject to offset? | ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims |
| ■ No | ☐ Debts to pension or profit-sharing plans, and other similar debts |
| ☐ Yes | ■ Other. Specify **EJ-001 2018000467142, FILED 12/14/2018 OC CLERK RECORDER; OCSC  No. 30-2017-00913985, Huntington  Beach Gables Homeowners Association** |

Debtor 1    **Jamie Lynn Gallian**                                    Case number (if known) _____

| 4.2 3 | **The Huntington Beach Gables Homeowners Association** | | |
|---|---|---|---|

Nonpriority Creditor's Name
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653
Number Street City State Zip Code=

**Who incurred the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number _____     **Unknown**

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify **OCSC CX Complaint Lawsuit 30-2020-01163055  Filed (11/9/2020)**
**Nickel  vs.  Huntington  Beach Gables Homeowners Association**

---

| 4.2 4 | **United Airlines** | | |
|---|---|---|---|

Nonpriority Creditor's Name
PO Box 0675
Carol Stream, IL 60132-0675

Number Street City State Zip Code=
**Who incurred the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community= debt**
**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number    10092                $9,572.91

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify **Misc Debt COBRA**

---

| 4.2 5 | **US Bank NA** | | |
|---|---|---|---|

Nonpriority Creditor's Name
PO Box 64799
Saint Paul, MN 55164

Number Street City State Zip Code
**Who incurred the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number    6482                $9,145.00

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify= **Collection**

---

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |
|---|---|

**5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.**

Debtor 1    __Jamie Lynn Gallian__                                    Case number (if known) _____

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Feldsott & Lee**<br>**23161 Mill Creek Drive Ste 300**<br>**Laguna Hills, CA 92653** | Line **4.23** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Feldsott & Lee**<br>**23161 Mill Creek Drive Ste 300**<br>**Laguna Hills, CA 92653** | Line **4.12** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Feldsott & Lee**<br>**23161 Mill Creek Drive Ste 300**<br>**Laguna Hills, CA 92653** | Line **4.18** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Gorden G May**<br>**Grant, Genovese & Baratta, LLP**<br>**2030 Main Street, Ste. 1600**<br>**irvine, CA 92614** | Line **4.1** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Gordon Rees Scully & Mansukhani**<br>**5 Park Plaza Ste. 1100**<br>**Irvine, CA 92614** | Line **4.14** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Gordon Rees Scully & Mansukhani**<br>**633 W 5th Street, 52nd Floor**<br>**Los Angeles, CA 90071** | Line **4.2** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>**4.6; 4.7; 4.8; 4.9; 4.11; 4.22**    ☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Mark Mellor**<br>**Mellor Law Firm**<br>**6800 Indiana Avenue Ste. 220**<br>**Riverside, CA 92506** | Line **4.15** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Vivian J. Alston**<br>**Alston, Alston, & Diebold**<br>**27201 Puerta Real, Ste. 300**<br>**Mission Viejo, CA 92691** | Line **4.3** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims<br><br>Last 4 digits of account number |

| **Part 4:** | **Add the Amounts for Each Type of Unsecured Claim** |
|---|---|

6. **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.**

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 0.00 |

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |

| Debtor 1 | **Jamie Lynn Gallian** | | Case number (if known) | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | 427,177.76 |
| 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ | 427,177.76 |

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number (if known) | _____ | ☐ Check if this is an amended filing |

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ■ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.
   ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone). See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| | Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|---|
| 2.1 | **Kia Motors**<br>Name<br>**P.O. Box 20815**<br>Number    Street<br>**Fountain Valley, CA 92708**<br>City    State    ZIP Code | **Kia Sportage Car Lease** |
| 2.2 | **Robert P. Warmington Co**<br>Name<br>**3090 Pullman St.**<br>Number    Street<br>**Costa Mesa, CA 92626**<br>City    State    ZIP Code | **Unexpired Ground Leasehold Located on APN 178-011-01, Unit 4, Tract 10542, Space 376. Expires 12/31/2059** |
| 2.3 | **BS Investors, LP**<br>Name<br>**18201 Von Karman Ste. 450**<br>Number    Street<br>**Irvine, CA    92612**<br>City    State    ZIP Code | **Unexpired Ground Leasehold Located on APN 178-011-01. Unit 4, Tract 10542, Space 376. Expires 12/31/2059** |
| 2.4 | **Houser Bros Co dba Rancho Del Rey Mobilehome Estates**<br>Name<br>**16222 Monterey Ln**<br>Number    Street<br>**Huntington Beach CA 92649**<br>City    State    ZIP Code | **Unexpired Ground Leasehold, Located on APN 178-011-01. Unit 4, Tract 10542, Space 376. Expires 12/31/2059** |
| 2.5 | Name<br>Number    Street<br>City    State    ZIP Code | |

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 106H
## Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No. Go to line 3.
■ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

    ■ No
    ☐ Yes.

    In which community state or territory did you live?    **-NONE-**   . Fill in the name and current address of that person.

    _____
    Name of your spouse, former spouse, or legal equivalent
    Number, Street, City, State & Zip Code

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| *Column 1:* **Your codebtor** | *Column 2:* **The creditor to whom you owe the debt** |
|---|---|
| Name, Number, Street, City, State and ZIP Code | Check all schedules that apply: |

| 3.1 | |
|---|---|
| Name | |

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

Number   Street
City      State    ZIP Code

| 3.2 | |
|---|---|
| Name | |

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

Number   Street
City      State    ZIP Code

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Jamie Lynn Gallian** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:
_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Employment |
|---|---|

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Employment status** | ☐ Employed<br>■ Not employed | ☐ Employed<br>☐ Not employed |
| | **Occupation** | **Unemployed/Disabled;date of Injury 8/5/2018, severe crushing injury left foot, with nerve impingment, protruding interior bone left interior portion foot.** | |
| | **Employer's name** | | |
| | **Employer's address** | | |
| | | **Flight Attendant-United Airlines** | |
| | How long employed there? | **22 years Last day; worked 10/26/2018** | |

| Part 2: | Give Details About Monthly Income |
|---|---|

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | $ N/A |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ 0.00 | +$ N/A |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ 0.00 | $ N/A |

Debtor 1  __Jamie Lynn Gallian_____          Case number (*if known*) _____

|  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| Copy line 4 here | 4. | $ | 0.00 | $ N/A |

5. **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ N/A |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ N/A |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ N/A |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ N/A |
| 5e. | Insurance | 5e. | $ 0.00 | $ N/A |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ N/A |
| 5g. | Union dues | 5g. | $ 0.00 | $ N/A |
| 5h. | Other deductions. Specify: | 5h.+ | $ 0.00 + | $ N/A |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.   6.   $ 0.00   $ N/A

7. **Calculate total monthly take-home pay.**  Subtract line 6 from line 4.   7.   $ 0.00   $ N/A

8. **List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 1,000.00 | $ N/A |
| 8b. | Interest and dividends | 8b. | $ 0.00 | $ N/A |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ N/A |
| 8e. | Social Security | 8e. | $ 0.00 | $ N/A |
| 8f. | Other government assistance that you regularly receive Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | $ N/A |
| 8h. | Other monthly income. Specify: | 8h.+ | $ 0.00 + | $ N/A |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.   9.   $ 1,000.00   $ N/A

10. **Calculate monthly income.**  Add line 7 + line 9.   10.   $ 1,000.00 + $ N/A = $ 1,000.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____   11.  +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.**  The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it
applies   12.   $ 1,000.00

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
- ■ No.
- ☐ Yes. Explain: _____

Fill in this information to identify your case:

Debtor 1    **Jamie Lynn Gallian**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter
   13 expenses as of the following date:

MM / DD / YYYY

## Official Form 106J
# Schedule J: Your Expenses                                      12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct
information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case
number (if known). Answer every question.

### Part 1:    Describe Your Household

1.  **Is this a joint case?**

    ■ No. Go to line 2.
    ☐ Yes. Does Debtor 2 live in a separate household?

        ☐ No
        ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**    ■ No

    Do not list Debtor 1 and     ☐ Yes.  Fill out this information for
    Debtor 2.                            each dependent..............

    Do not state the
    dependents names.

    | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
    |---|---|---|
    | _____ | _____ | ☐ No  ☐ Yes |
    | _____ | _____ | ☐ No  ☐ Yes |
    | _____ | _____ | ☐ No  ☐ Yes |
    | _____ | _____ | ☐ No  ☐ Yes |

3.  **Do your expenses include**     ■ No
    **expenses of people other than**  ☐ Yes
    **yourself and your dependents?**

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report
expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the
applicable date.

Include expenses paid for with non-cash government assistance if you know
the value of such assistance and have included it on *Schedule I: Your Income*
(Official Form 106I.)

|  |  | **Your expenses** |
|---|---|---|

| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. | $ | 0.00 |
|---|---|---|---|---|
|  | If not included in line 4: |  |  |  |
| 4a. | Real estate taxes | 4a. | $ | 100.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. | $ | 100.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. | $ | 100.00 |
| 4d. | Homeowner's association or condominium dues | 4d. | $ | 0.00 |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. | $ | 100.00 |

Debtor 1   __Jamie Lynn Gallian__   Case number (if known) _____

| | | | | | |
|---|---|---|---|---|---|
| 6. | **Utilities:** | | | | |
| | 6a. | Electricity, heat, natural gas | 6a. | $ | 200.00 |
| | 6b. | Water, sewer, garbage collection | 6b. | $ | 60.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 160.00 |
| | 6d. | Other. Specify:= **Space #376 Rent** | 6d. | $ | 1,086.00 |
| 7. | **Food and housekeeping supplies** | | 7. | $ | 500.00 |
| 8. | **Childcare and children's education costs** | | 8. | $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. | $ | 0.00 |
| 10. | **Personal care products and services** | | 10. | $ | 30.00 |
| 11. | **Medical and dental expenses** | | 11. | $ | 125.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. | $ | 100.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. | $ | 0.00 |
| 14. | **Charitable contributions and religious donations** | | 14. | $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | | |
| | 15a. | Life insurance | 15a. | $ | 0.00 |
| | 15b. | Health insurance | 15b. | $ | 0.00 |
| | 15c. | Vehicle insurance | 15c. | $ | 175.00 |
| | 15d. | Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. | $ | 240.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c. | Other. Specify: | 17c. | $ | 0.00 |
| | 17d. | Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | | 19. | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.** | | | | |
| | 20a. | Mortgages on other property | 20a. | $ | 0.00 |
| | 20b. | Real estate taxes | 20b. | $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify: | | 21. | +$ | 0.00 |
| 22. | **Calculate your monthly expenses** | | | | |
| | 22a. | Add lines 4 through 21. | | $ | 2,676.00 |
| | 22b. | Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2= | | $ | |
| | 22c. | Add line 22a and 22b. The result is your monthly expenses. | | $ | 2,676.00 |
| 23. | **Calculate your monthly net income.** | | | | |
| | 23a.= | Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | 1,000.00 |
| | 23b.= | Copy your monthly expenses from line 22c above. | 23b. | -$ | 2,676.00 |
| | 23c. | Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. | $ | -1,676.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.   Explain here: _____

Fill in this information to identify your case:

| Debtor 1 | **Jamie Lynn Gallian** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number
(if known)   _____

☐ Check if this is an
   amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| | Sign Below |
|---|---|

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

■ No

☐ Yes. Name of person _____   Attach *Bankruptcy Petition Preparer's Notice,
   Declaration, and Signature* (Official Form 119)

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X _____     X _____

**Jamie Lynn Gallian**
Signature of Debtor 1                        Signature of Debtor 2

Date    7/9/2021                              Date _____

Official Form 106Dec                **Declaration About an Individual Debtor's Schedules**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy                4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1.  **What is your current marital status?**

    ☐ Married
    ■ Not married

2.  **During the last 3 years, have you lived anywhere other than where you live now?**

    ■ No
    ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

3.  **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

    ■ No
    ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2    Explain the Sources of Your Income**

4.  **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
    Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
    If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

    ☐ No
    ■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
| For last calendar year: (January 1 to December 31, 2020 ) | ■ Wages, commissions, bonuses, tips | $1,408.00 | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Debtor 1    **Jamie Lynn Gallian**                                              Case number *(if known)*

| | Debtor 1<br>**Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and<br>exclusions) | Debtor 2<br>**Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions<br>and exclusions) |
|---|---|---|---|---|
| **For the calendar year before that:**<br>**(January 1 to December 31, 2019 )** | ■ Wages, commissions,<br>bonuses, tips | $3,375.00 | ☐ Wages, commissions,<br>bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

---

5.  **Did you receive any other income during this year or the two previous calendar years?**
    Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

    List each source and the gross income from each source separately. Do not include income that you listed in line 4.

    ☐  No
    ■  Yes. Fill in the details.

| | Debtor 1<br>**Sources of income**<br>Describe below. | **Gross income from<br>each source**<br>(before deductions and<br>exclusions) | Debtor 2<br>**Sources of income**<br>Describe below. | **Gross income**<br>(before deductions<br>and exclusions) |
|---|---|---|---|---|
| **From January 1 of current year until<br>the date you filed for bankruptcy:** | Unemployment | $0.00 | | |
| **For last calendar year:**<br>**(January 1 to December 31, 2020 )** | Unemployment | $21,227.00 | | |
| | Retirement | $31,922.58 | | |

---

**Part 3:    List Certain Payments You Made Before You Filed for Bankruptcy**

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
    ☐  **No.   Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?
    ☐  No     Go to line 7.
    ☐  Yes    List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
    * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

    ■  **Yes.  Debtor 1 or Debtor 2 or both have primarily consumer debts.**
    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?
    ■  No     Go to line 7.
    ☐  Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| | | | | |

---

Debtor 1    **Jamie Lynn Gallian**                                    Case number *(if known)* _____

---

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

   ■ No
   ☐ Yes. List all payments to an insider.

   | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
   |---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   ■ No
   ☐ Yes. List all payments to an insider

   | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
   |---|---|---|---|---|
   | | | | | Include creditor's name |

---

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

---

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

   ☐ No
   ■ Yes. Fill in the details.

   | Case title Case number | Nature of the case | Court or agency | Status of the case |
   |---|---|---|---|
   | Filed 1/2/2019 Houser Bros Co v Jamie Gallian 30-2019-01041423-CI-UD-CJC | Unlawful Detainer | Orange County Superior Court 700 W Civic Center West Santa Ana, CA 92701 | ■ Pending ☐ On appeal ☐ Concluded |
   | Filed 11/8/2020 Randall L Nickell v. The Huntington Beach Gabels HOA, etal 30-2020-01163055-CU-OR-CJC | Civil | Orange County Superior Court 700 Civic Center Drive West Santa Ana, CA 92701 | ■ Pending ☐ On appeal ☐ Concluded |
   | Filed 4/11/2017 Huntington Beach Gables Homeowners Association vs. Sandra Bradley et al. 30-2017-00913985-CU-CO-CJC | Collections | Orange County Superior Court 700 Civic Center Drive West Santa Ana, CA 92701 | ☐ Pending ☐ On appeal ☐ Concluded |
   | Filed 12/22/2017 Huntington Beach Gables Homeowners Association vs. Jamie Lynn Gallian 30-2017-00962999-CU-HR-CJC | Collections | Orange County Superior Court 700 Civic Center Drive West Santa Ana, CA 92701 | ☐ Pending ☐ On appeal ☐ Concluded |
   | | | | ☐ Pending ☐ On appeal ☐ Concluded |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

Debtor 1    **Jamie Lynn Gallian** _____     Case number *(if known)* _____

10. Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?
Check all that apply and fill in the details below.

                   **A WRIT dated 11/19/18, in the name of LISA T. RYAN, Case No. 30-2018-01013582 was UNLAWFULLY executed by Park**

- ■ No. Go to line 11.   **Mgr., Houser Bros Co GP on 3/4/2019, against the bona fide purchase of Ryan home LBM1081 on 11/1/2018.**
- ☐ Yes. Fill in the information below. · **Possession returned to bona fide buyer by Judicial Officer Judge Carmen Luege. on 3/6/19, OCJC.**

| Creditor Name and Address | Describe the Property **LBM 1081** | Date **3/6/2019** | Value of the property |
|---|---|---|---|
| **Houser Bros Co GP**<br>**dba RDRMHE** | Explain what happened | **Resident Gallian was removed from her home by force on 3/4/19,<br>Park Manager changed Locks unlawfully. Possession  ret. to Gallian.** | |

11. Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?
- ■ No
- ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?
- ■ No
- ☐ Yes

   **List Certain Gifts and Contributions**

13. Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?
- ■ No
- ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| **Person to Whom You Gave the Gift and Address:** | | | |

14. Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?
- ■ No
- ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| **Charity's Name**<br>**Address (Number, Street, City, State and ZIP Code)** | | | |

   **List Certain Losses**

15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?   **Unemployment due to Covid 19 pandemic massive layoffs in airline industry and other industries; California Governors Stay at Home Orders.  Unable to procure sustainable employment.  Apply for Covid 19 Rent Relief State Programs.**

No
- ☒ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

   **List Certain Payments or Transfers**

16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

- ☐ No
- ■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

Debtor 1    **Jamie Lynn Gallian**    Case number *(if known)*

| Person Who Was Paid; Address; Email address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| James H. Casello Esq.    SBN 76021 | Client Trust Account for Atty Fees | 2019-2020 | $ 43,000.00 |
| Michael Chulak, Esq.  SBN 194744 (suspended) | Client Trust Account for Atty Fees | 2018-2019 | $ 8,700.00 |
| Michael S. Devereux, Esq.    SBN 225240 | Client Trust Account for Atty Fees | 2018-2019 | $ 5,000.00 |
| Steven A. Fink, Esq.    SBN 93762 | Client Trust Account for Atty Fees | 2019-2020 | $ 30,000.00 |
| David R. Flyer, Esq.    SBN 10069 | Client Trust Account for Atty Fees | 2018-2019 | $ 17,000.00 |
| Raquel Flyer-Dashner Esq.    SBN 282248 | Client Trust Account for Atty Fees | 2018 | $ 5,000.00 |
| Frank A. Satalino, Esq.    SBN 143444 | Client Trust Account for Atty Fees | 2018 | $ 5,000.00 |
| | | TOTAL | $ 113,700.00 |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☐ No
■ Yes. Fill in the details.

| Person Who Received Transfer Address / Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Randall Nickell 4476 Alderport Dr. Unit 53 Huntington Beach, CA 92649 Bona fide purchaser for Value. | Primary residence sold Leasehold on 10/31/2018 4476 Alderport Drive #53, Huntington Beach, CA 92649 APN 937-63-053 | $379,000 | 10/31/2018 |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)
■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:    List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units**

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.
■ No
☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

Debtor 1    **Jamie Lynn Gallian**                                        Case number *(if known)*

---

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

   ☒ No
   ☐ Yes. Fill in the details.

   | Name of Financial Institution<br>Address *(Number, Street, City, State and ZIP Code)* | Who else had access to it?<br>Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
   |---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

   ☒ No
   ☐ Yes. Fill in the details.

   | Name of Storage Facility<br>Address *(Number, Street, City, State and ZIP Code)* | Who else has or had access to it?<br>Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
   |---|---|---|---|

   ### Part 9:    Identify Property You Hold or Control for Someone Else

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

   ☒ No
   ☐ Yes. Fill in the details.

   | Owner's Name<br>Address *(Number, Street, City, State and ZIP Code)* | Where is the property?<br>*(Number, Street, City, State and ZIP Code)* | Describe the property | Value |
   |---|---|---|---|

   ### Part 10:    Give Details About Environmental Information

   For the purpose of Part 10, the following definitions apply:

   ■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

   ■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

   ■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

   Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

   ☒ No
   ☐ Yes. Fill in the details.

   | Name of site<br>Address *(Number, Street, City, State and ZIP Code)* | Governmental unit<br>Address *(Number, Street, City, State and ZIP Code)* | Environmental law, if you know it | Date of notice |
   |---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

   ☒ No
   ☐ Yes. Fill in the details.

   | Name of site<br>Address *(Number, Street, City, State and ZIP Code)* | Governmental unit<br>Address *(Number, Street, City, State and ZIP Code)* | Environmental law, if you know it | Date of notice |
   |---|---|---|---|

---

Debtor 1    __Jamie Lynn Gallian__                                    Case number *(if known)* _____

---

26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

■ No
☐ Yes. Fill in the details.

| Case Title Case Number | Court or agency Name Address (Number, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

---

### Part 11:    Give Details About Your Business or Connections to Any Business

27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

■ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies. Go to Part 12.

■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business Name of accountant or bookkeeper | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|
| J-Sandcastle Co., LLC 16222 Monterey Lane #376 Huntington Beach, CA 92649 | Residential Management | EIN:  83-2453659 From-To  10/19/2018 - Present |
| J-Pad, LLC 16222 Monterey Lane #376 Huntington Beach, CA 92649 | Residential Management | EIN: From-To  02/09/2018 - Present |

---

28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

■ No
☐ Yes. Fill in the details below.

| Name Address (Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

---

### Part 12:    Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

✗ *Jamie L Gallian* (signature)

__Jamie Lynn Gallian__                                    Signature of Debtor 2
Signature of Debtor 1

Date    __7/9/20 21__                                     Date _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
■ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
■ No

---

Debtor 1 __Jamie Lynn Gallian__ _____    Case number *(if known)* _____

☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | |
| | First Name                Middle Name                Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name                Middle Name                Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number (if known) | _____ | ☐ Check if this is an amended filing |

## Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7          12/15

If you are an individual filing under chapter 7, you must fill out this form if:
■ creditors have claims secured by your property, or
■ you have leased personal property and the lease has not expired.
You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

**Part 1:**   **List Your Creditors Who Have Secured Claims**

1. For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Houser Bros. Co. dba Rancho Del Rey Mobile-home Estates Space #376, Unexpired Ground leasehold until 2059, located on APN 178-011-16; Parcel Map Book 108, Pg. 47 & 48, County of Orange property** <br> Description of securing debt: **16222 Monterey Ln. Space #376 Huntington Beach, CA 92649 Orange County. APN 891-569-62 Decal No. LBM1081  Title held by Debtor's single member LLC J-Sandcastle Co, LLC** | ☐ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ☒ Retain the property and enter into a *Reaffirmation Agreement.* <br> ■ Retain the property and [explain]: <br><br> **Debtor will retain collateral & continue to make Monthly Ground Space Payments #376, located on APN 178-011-16** | ☐ No <br><br> ■ Yes |
| Creditor's name: **J-Pad, LLC** <br><br> Description of property securing debt: **16222 Monterey Ln. Space #376 Huntington Beach, CA 92649 Orange County. APN-891-569-62, Decal No. LBM1081  Title held by Debtor's single member LLC J-Sandcastle Co, LLC** | ☐ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ☐ Retain the property and enter into a *Reaffirmation Agreement.* <br> ■ Retain the property and [explain]: <br><br> **Debtor will retain collateral & continue to make regular principal payments.** | ☐ No <br><br> ■ Yes |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1    __Jamie Lynn Gallian__                                    Case number *(if known)*_____

| | | |
|---|---|---|
| Creditor's name: | **Kia Motors Finance** | No |
| Description of property securing debt: | **2020 Kia Sportage** **Location: 16222 Monterey Ln #376, Huntington Beach CA 92649 (LEASE)** | ☐ Retain the property and redeem it.<br>☑ Retain the property and enter into a *Reaffirmation Agreement.*    ■ Yes<br>☐ Retain the property and [explain]: |

| | | |
|---|---|---|
| Creditor's name: | **Orange County Tax Assessor** | ☐ Surrender the property.    ☐ No<br>☐ Retain the property and redeem it. |
| Description of property securing debt: | **16222 Monterey Ln #376 Huntington Beach, CA 92649 Orange County. APN 891-569-62 Decal No. LBM1081  Title held by Debtor's single member LLC J-Sandcastle Co, LLC** | ☐ Retain the property and enter into a *Reaffirmation Agreement.*    ■ Yes<br>■ Retain the property and [explain]:<br><br>**Debtor will retain collateral & continue to make regular payments.** |

| | | |
|---|---|---|
| Creditor's name: | **The Huntington Beach Gables Homeowners Association** | ☐ Surrender the property.    ☐ No<br>☐ Retain the property and redeem it. |
| Description of property securing debt: | **16222 Monterey Ln #376 Huntington Beach, CA 92649 Orange County. APN 891-569-62 Decal No. LBM1081  Title held by Debtor's single member LLC J-Sandcastle Co, LLC** | ☐ Retain the property and enter into a *Reaffirmation Agreement.*    ■ Yes<br>■ Retain the property and [explain]:<br><br>**avoid lien using 11 U.S.C. § 522(f)** |

| | | |
|---|---|---|
| Creditor's name: | **The Huntington Beach Gables Homeowners Association** | ☐ Surrender the property.    ☐ No<br>☐ Retain the property and redeem it. |
| Description of property securing debt: | **16222 Monterey Ln #376 Huntington Beach, CA 92649 Orange County. APN 891-569-62 Decal No. LBM1081  Title held by Debtor's single member LLC J-Sandcastle Co, LLC** | ☐ Retain the property and enter into a *Reaffirmation Agreement.*    ■ Yes<br>■ Retain the property and [explain]:<br><br>**avoid lien using 11 U.S.C. § 522(f)** |

| | | |
|---|---|---|
| Creditor's name: | **The Huntington Beach Gables Homeowners Association** | ☐ Surrender the property.    ☐ No<br>☐ Retain the property and redeem it. |
| Description of property securing debt: | **16222 Monterey Ln #376 Huntington Beach, CA 92649 Orange County. APN 891-569-62 Decal No. LBM1081  Title held by Debtor's single member LLC J-Sandcastle Co, LLC** | ☐ Retain the property and enter into a *Reaffirmation Agreement.*    ■ Yes<br>■ Retain the property and [explain]:<br><br>**avoid lien using 11 U.S.C. § 522(f)** |

**Part 2:    List Your Unexpired Personal Property Leases**

**For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).**

**Describe your unexpired personal property leases**                                    **Will the lease be assumed?**

Official Form 108                **Statement of Intention for Individuals Filing Under Chapter 7**                page 2

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1   __Jamie Lynn Gallian__                                    Case number (if known) _____

| | | |
|---|---|---|
| Lessor's name:<br>Description of leased<br>Property: | **Houser Bros Co, dba Rancho Del Rey Mobile Home Estates**<br>Ground Leasehold until 2059, Space #376, located upon APN 178-011-01<br>2014 Skyline Villa - Manufactured Home installed on Space 376<br>July 2, 2014, LBM1081 | ☐ No<br><br>☒ Yes |
| Lessor's name:<br>Description of leased<br>Property: | **BS Investor, LP**<br>Ground Leasehold until 2059, Space #376, located upon APN 178-011-01<br>2014 Skyline Villa - Manufactured Home installed on Space 376,<br>July 2, 2014, LBM1081 | ☐ No<br><br>☒ Yes |
| Lessor's name:<br>Description of leased<br>Property: | **Kia Motors Finance**<br>2020 Kia Sportage | ☐ No<br><br>☒ Yes |
| Lessor's name:<br>Description of leased<br>Property: | | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | | ☐ No<br><br>☐ Yes |

**Part 3:   Sign Below**

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.

X _____          X _____
**Jamie Lynn Gallian**                             Signature of Debtor 2
Signature of Debtor 1

Date ___7/9/2021___                         Date _____

Official Form 108              **Statement of Intention for Individuals Filing Under Chapter 7**                page 3

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Fill in this information to identify your case: | | Check one box only as directed in this form and in Form 122A-1Supp: |
|---|---|---|

**Debtor 1**   Jamie Lynn Gallian

**Debtor 2**
(Spouse, if filing)

**United States Bankruptcy Court for the:**   Central District of California

**Case number**
(if known)

☐ 1. There is no presumption of abuse

☐ 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A-2).

☐ 3. The Means Test does not apply now because of qualified military service but it could apply later.

☐ Check if this is an amended filing

## Official Form 122A – 1
## Chapter 7 Statement of Your Current Monthly Income

04/20

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

**Part 1:**   Calculate Your Current Monthly Income

1. **What is your marital and filing status?** Check one only.

   ☑ **Not married.** Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☐ **Married and your spouse is NOT filing with you.** You and your spouse are:

   ☐ **Living in the same household and are not legally separated.** Fill out both Columns A and B, lines 2-11.

   ☐ **Living separately or are legally separated.** Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C § 707(b)(7)(B).

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $            0.00 | $ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $            0.00 | $ |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $            0.00 | $ |

5. **Net income from operating a business, profession, or farm**

|  |  | Debtor 1 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ | 0.00 | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | |
| Net monthly income from a business, profession, or farm $ | 0.00 | Copy here -> $ | 0.00 | $ |

6. **Net income from rental and other real property**

|  |  | Debtor 1 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ | 1,000.00 | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | |
| Net monthly income from rental or other real property $ | 1,000.00 | Copy here -> $ | 1,000.00 | $ |

| 7. | **Interest, dividends, and royalties** | $            0.00 | $ |
|---|---|---|---|

Debtor 1    **Jamie Lynn Gallian** _____    Case number *(if known)* _____

| | | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|---|

8. **Unemployment compensation**
$ 0.00 / $

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you _____ $ 0.00

For your spouse _____ $ _____

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.
$ 0.00 / $

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments made under the Federal law relating to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease 2019 (COVID-19); payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation  pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below..

_____ $ 0.00 / $ _____

_____ $ 0.00 / $ _____

Total amounts from separate pages, if any.    + $ 0.00 / $ _____

11. **Calculate your total current monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.
$ 1,000.00 + $ _____ = $ 1,000.00

**Total current monthly income**

| **Part 2:** | **Determine Whether the Means Test Applies to You** |
|---|---|

12. **Calculate your current monthly income for the year.** Follow these steps:

12a. Copy your total current monthly income from line 11 _____ Copy line 11 here=> $ 1,000.00

Multiply by 12 (the number of months in a year)    **x 12**

12b. The result is your annual income for this part of the form    12b. $ 12,000.00

13. **Calculate the median family income that applies to you.** Follow these steps:

Fill in the state in which you live.    | CA |

Fill in the number of people in your household.    | 1 |

Fill in the median family income for your state and size of household. _____    13. $ 62,938.00

To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

14. **How do the lines compare?**

14a. ■ Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse.* Go to Part 3. Do NOT fill out or file Official Form 122A-2.

14b. ☐ Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A-2.* Go to Part 3 and fill out Form 122A–2.

| **Part 3:** | **Sign Below** |
|---|---|

By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

X _____*Jamie L Gallian*_____ 7/9/2021

**Jamie Lynn Gallian**

Official Form 122A-1    **Chapter 7 Statement of Your Current Monthly Income**    page 2

| Debtor 1 | **Jamie Lynn Gallian** | | Case number (*if known*) | |
|---|---|---|---|---|

Signature of Debtor 1 _____

Date _____
MM / DD / YYYY

If you checked line 14a, do NOT fill out or file Form 122A-2.

If you checked line 14b, fill out Form 122A-2 and file it with this form.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Jamie Lynn Gallian**<br>**16222 Monterey Ln. #376**<br>**Huntington Beach, CA 92649**<br>**714-321-3449**<br>**jamiegallian@gmail.com** | |

☒ *Debtor(s) appearing without an attorney*

☐ *Attorney for Debtor*

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>    **Jamie Lynn Gallian** | CASE NO.:<br><br>CHAPTER: **7** |
|---|---|
| | **VERIFICATION OF MASTER<br>MAILING LIST OF CREDITORS**<br><br>**[LBR 1007-1(a)]** |
| Debtor(s). | |

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __4__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: _____*7/9/2021*_____

_____
Signature of Debtor 1

Date: _____

_____
Signature of Debtor 2 (joint debtor) ) (if applicable)

Date: _____

_____
Signature of Attorney for Debtor (if applicable)

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                           **F 1007-1.MAILING.LIST.VERIFICATION**

57

Jamie Lynn Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649


David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660


Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653


Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA
92688


Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614


Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071


Houser Bros. Co.
DBA Rancho Del Rey Estates
16222 Monterey Ln
Huntington Beach, CA 92649


Houser Bros. Co.dba Rancho Del
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647


Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649


Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

J-Pad, LLC
2702 N Gaff Street
Orange, CA 92865


James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 104
Santa Ana, CA 92701


Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

Janine Jasso
P.O. Box 370161
El Paso, TX 79937


Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071


Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728


Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071


Linda Jean "Lindy" Beck
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071


Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311

2

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071


Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267


Michael Chulak-(Unknown)
MChulak@MTCLaw.com


Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 500
Beverly Hills, CA 90210-5536


Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653


Orange County Tax Assessor
P.O. Box 149
Santa Ana, CA 92701


Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311


Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660


People of the St of CA
8141 13th Street
Westminster, CA 92683


Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503

3

Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653


Stanley Feldsott, Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653


Steven A. Fink
13 Corporate Plaza Ste. 150
Newport Beach, CA 92660


The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 100
San Diego, CA 92131


The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131


Theodore R "Ted" Phillips
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071


United Airlines
P.O. Box 0675
Carol Stream, IL 60132-0675


US Bank NA
PO Box 64799
Saint Paul, MN 55164


Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 300
Mission Viejo, CA 92691


4

# EXHIBIT  2

# 7/9/2021- FILED CLERK RECORDER

# DEBTOR'S HOMESTEAD DECLARATION

18

Recording Requested by :

J-SANDCASTLE CO LLC

JAMIE LYNN GALLIAN
16222 MONTEREY LANE #376
HUNTINGTON BEACH, CA 92649

When recorded mail to:

JAMIE LYNN GALLIAN
16222 MONTEREY LANE #376
HUNTINGTON BEACH, CA 92649

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||| 88.00
* $ R 0 0 1 2 9 8 0 9 5 6 $ *
2021000443659 12:48 pm 07/09/21
18 414A D04   2
0.00 0.00 0.00 0.00 3.00 0.00 0.000.0075.00 3.00

IT
2P
SB
PP

SPACE ABOVE THIS LINE FOR RECORDER USE ONLY

# HOMESTEAD DECLARATION
### CCP §704.930

APN#: | 891-569-62

### 1. Name(s) of Declared Homestead owners:

JAMIE LYNN GALLIAN , do hereby claim a Declared

Homestead in the following real property located in:

the City of | HUNTINGTON BEACH, CA , County of | ORANGE , State of California,

more commonly known as:

16222 MONTEREY LANE SPACE 376 HUNTINGTON BEACH, CA 92649

*(Insert Common Street Address Above)*

and more particularly described as follows:

2014 SKYLINE CUSTOM VILLA DECAL NO. LBM1081 SERIAL NO. AC7V710394GB; AC7V710394GA; LOCATED ON LOT 376
ON APN 178-011-16, TRACT 10542, UNIT 4, PARCEL MAP BOOK 108, PG(S) 47 & 48

*(Insert Property Legal Description Above)*

**2. The Declared Homestead is the principal dwelling of the Declared Homestead Owner(s) listed above or such person(s) spouse.**

**3. The Declared Homestead Owner(s) listed above, or such person(s) spouse, resides in the Declared Homestead on the date this Homestead Declaration is recorded.**

**4. The facts stated in this Homestead Declaration are known to be true as of the personal knowledge of the person(s) below executing and acknowledging this Homestead Declaration.**

Dated: 07/08/2021

*(Signature of Declared Homestead Owner or Spouse)*

JAMIE LYNN GALLIAN
*(Printed Name of Declared Homestead Owner or Spouse)*

*(Signature of Declared Homestead Owner of Spouse)*

JAMIE LYNN GALLIAN
*(Printed Name of Declared.Homestead Owner or Spouse)*

( See Attached Acknowledgment )

63

**ACKNOWLEDGMENT**

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of ___O~6452_____ )

On __7/9/21__ before me, _Greg Buysman, Notary Public_
(insert name and title of the officer)

personally appeared _Jamie Lynn Galligan_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

GREG BUYSMAN
COMM # 2341449
ORANGE County
California Notary Public
Comm Exp Feb. 5, 2025

Signature _____ (Seal)

**Shari L. Freidenrich, CPA**
**Orange County Treasurer-Tax Collector**
P.O. BOX 1438 • Santa Ana, CA 92702-1438
601 N. Ross Street, Building 16, Santa Ana
Office Hours: 8:00 AM-5:00 PM Monday – Friday
Phone Hours: 9:00 AM-5:00 PM (714) 834-3411
octreasurer.com/octaxbill

**DID YOU KNOW?**

Sign up to receive a text/email due date reminder at octreasurer.com/securedreminders

Pay online at octreasurer.com/octaxbill to receive same day credit, no service fee by eCheck and an emailed receipt.

Mailed payments must have a USPS postmark on or before the last timely payment date. If you wait until the last day to mail your payment, get your envelope hand-stamped with a postmark to ensure it is timely. See octreasurer.com/postmarks.

# 2021-22 SECURED PROPERTY TAX BILL

For Fiscal Year Beginning July 1, 2021 and Ending June 30, 2022
0000210-0000210 STMT------    344031 OCT017
#BWNLBHV ********AUTO**ALL FOR AADC 926
#8915 6962 2021 1#

GALLIAN, JAMIE LYNN
16222 MONTEREY LN SPC 376
HUNTINGTON BEACH CA 92649-2258

### PROPERTY LOCATION

16222 MONTEREY LN 376 HUNTINGTON BEACH

### ASSESSED VALUES & EXEMPTIONS AS OF JANUARY 1, 2021

| DESCRIPTION | FULL VALUE | COMPUTED TAX |
|---|---|---|
| PERSONAL PROPERTY - OTHER | 86,339 | |
| | | |
| **TOTAL VALUES:** | **86,339** | **946.92** |
| **TOTAL NET TAXABLE VALUE:** | **86,339** | **946.92** |

### OWNER OF RECORD AS OF 12:01 AM, JANUARY 1, 2021

J-SANDCASTLE CO LLC

## MOBILE HOME

| PARCEL NO. (APN) | TAX RATE AREA | 1st Installment DUE 11/1/21 | | 2nd Installment DUE 2/1/22 | | TO PAY BOTH INSTALLMENTS BY 12/10/21 |
|---|---|---|---|---|---|---|
| 891-569-62 | 04-902 | $473.46 | + | $473.46 | = | $946.92 |

## IMPORTANT INFORMATION

### INFORMATION COPY

Taxes were pre-paid at the time of purchase and will be credited towards this tax bill.

### VOTER APPROVED TAXES AND SPECIAL ASSESSMENTS

| SERVICE AGENCY | RATE | VALUE | TAXES |
|---|---|---|---|
| BASIC LEVY RATE | 1.00000 | 86,339 | 863.39 |
| COAST COMM COLLEGE DIST | .03119 | 86,339 | 26.92 |
| OCEAN VIEW SCHOOL DIST | .02796 | 86,339 | 24.14 |
| HUNTINGTON BCH UNION HS | .02260 | 86,339 | 19.52 |
| HUNTINGTON BEACH EMPLOYEE RETIREME | .01500 | 86,339 | 12.95 |
| | | | |
| TOTAL CHARGED | 1.09675 | | 946.92 |

F074-453 (2021)

FOR DETAILS OF TAX TYPES, VISIT OUR WEBPAGE AT OCTREASURER.COM/OCTAXBILL

THERE WILL BE A $26.00 FEE FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON

| FIRST INSTALLMENT DUE 11/1/21 → | $.00 | SECOND INSTALLMENT DUE 2/1/22 → | $.00 | TOTAL DUE AND PAYABLE → | $.00 |
|---|---|---|---|---|---|

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE
Manufactured Home                                    **Decal:    LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | |
| **Serial Number** | **Label/Insignia Number** | **Weight** | **Length** | **Width** | **Issued** | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 12, 2021 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA  90503

**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA 90503

Lien Perfected On:          01/14/19 15:22:00

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 12339739

08122021 - 2

STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

LBM1081

| Manufacturer ID/Name | | RY |
|---|---|---|
| 90002  SKYLINE HOMES INC | | |
| Serial Number | | |
| AC7V710394GB | | |
| AC7V710394GA | | |

**Addressee**

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA 90503

**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPA
HUNTINGTON BEACH, CA

**Situs Address**

16222 MONTEREY LN SPA
HUNTINGTON BEACH, CA

**Legal Owner(s)**

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA 90503

Lien Perfected On:     01/1

DEPARTMENT OF HOUSING AND
COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION & TITLING PROGRAM
P O BOX 277820
SACRAMENTO CA  958277820

FIRST-CLASS MAIL
PRSRT
US POSTAGE $000.46⁰
ZIP 95833
041M12251094
neopost
08/12/2021

RETURN
SERVICE
REQUESTED

**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 12339739

08122021 - 2

# Security Agreement

This security agreement is between J-SANDCASTLE CO. LLC, a(n) California limited liability company (the **"Borrower"**) and JAMIE LYNN GALLIAN, an individual (the **"Lender"**).

The Borrower is indebted to the Lender in the amount of $225000 (the **"Loan"**). The Loan is evidenced by a promissory note effective on the same date as this agreement (the **"Note"**), a copy of which is attached as **Exhibit A**. The Note and this agreement are collectively referred to as the **"Loan Documents."**

To induce the Lender to provide Loan to the Borrower as evidenced by the Note, the Borrower has agreed to enter into this security agreement for the benefit of the Lender and to grant the Lender a security interest in the Secured Property (as defined below) to secure the prompt payment, performance, and discharge in full of the Borrower's obligations under the Note.

The parties therefore agree as follows:

**1. GRANT OF SECURITY INTEREST.**

The Borrower grants to the Lender a security interest in the Secured Property (as defined in section 2 below) to secure payment of the Loan.

**2. SECURED PROPERTY.**

The secured property consists of all of the Borrower's interest as of the effective date of this agreement in the following properties and rights, wherever located, whether now owned or existing or later acquired and arising (the **"Secured Property"**): SERIAL NUMBER AC7V710394GB, AC7V710394GA; DECAL NUMBER LBM1081; ASSESSOR'S PARCEL NUMBER 891-569-62

**3. INDEBTEDNESS.**

This agreement is made to secure payment when due of the Loan. The Loan includes:

(a) all obligations of the Borrower to the Lender under the Note;

(b) all amendments, renewals, or extensions of the above;

(c) all costs incurred by the Lender in establishing, determining, continuing, or defending the validity or priority of its security interest, or in pursuing its rights under this agreement or any other Loan Document or in connection with any proceeding involving the Lender as a result of any financial accommodation to the Borrower; and

(d) all other costs of collecting the Loan, including attorneys' fees.

The Borrower shall reimburse the Lender for these expenses immediately on demand, and until paid all costs shall bear interest at the highest per year rate applicable to the Loan and permitted by law.

## 4. REAFFIRMATION OF LOAN.

The Borrower hereby reaffirms its obligation for the full and punctual payment and performance of the Note and all other obligations of the Borrower under the Note.

## 5. BORROWER'S OBLIGATIONS.

(a) The Borrower shall pay the Loan at the time and in the manner provided in the Note;

(b) The Borrower shall ensure that the Secured Property remains free of all security interests other than the rights of the Lender created by this agreement;

(c) The Borrower will defend the Lender's interest in the Secured Property against the claims of all other persons; and

(d) The Borrower may not transfer any Secured Property while this agreement is in effect without the prior written consent of the Lender, which consent may be withheld or given in the Lender's sole discretion.

## 6. RECORDING OF AGREEMENT.

On the effective date of this agreement, the Borrower will record this agreement and any security instrument creating a security interest on the Secured Property as required by law to protect the security interest of the Lender on the Secured Property. The Borrower shall pay all filing fees and associated expenses incident to this recordation.

## 7. EVENTS OF DEFAULT.

The Borrower will be in default under this agreement if any of the following occurs:

(a) A default in the payment of the Loan or any of the obligations contained in this agreement or in the Loan Documents;

(b) Any representation made to the Lender by the Borrower proving to have been false in any material respect when made;

(c) Loss, theft, substantial damage, or destruction, or any sale or encumbrance to which the Lender did not consent in writing, of the Secured Property, or the making of a levy, seizure, or attachment on that property; or

(d) An Event of Default, as defined in the Note.

## 8. REMEDIES FOR EVENTS OF DEFAULT.

If an Event of Default occurs, the Lender may declare the Loan immediately due. In addition, the Lender will have all of the remedies set forth below, and these remedies are cumulative, so that the Lender may exercise one or more of these remedies until the Loan is paid in full without right of reinstatement, disgorgement, or repayment by reason of a preference, other creditor action, or by operation of law:

(a) cause all or any portion of the Secured Property to be registered in its name or the name of its nominee, designee, or assignee;

(b) have the exclusive right to receive all distributions with respect to the Secured Property;

(c) dispose of the Secured Property, at private or public sale, without advertisement of the time or place of the sale (or any adjournment), free of any right of redemption by the Borrower (this right of redemption being expressly waived by the Borrower), at the price, in the manner, and to the purchaser (including the Lender) that the Lender determines in its sole discretion. The proceeds of this sale will be applied to the Loan and the sale expenses (and the Borrower will remain liable for any deficiencies); or

(d) all other rights and remedies arising under this agreement or applicable law.

## 9. RESPONSIBILITY FOR SECURED PROPERTY.

The Borrower assumes all responsibility for the Secured Property, and the Loan will not be affected by the loss, destruction,

damage, or theft of any of the Secured Property or its unavailability for any reason. The Lender

(a) has no duty (either before or after an Event of Default) to collect any amounts related to the Secured Property or to preserve

any rights relating to the Secured Property, and

(b) has no obligation to clean up or otherwise prepare the Secured Property for sale.

The Borrower remains obligated under each agreement included in the Secured Property. The exercise of the Lender of any rights

under this agreement does not release the Borrower from its obligations under the agreements included in the Secured Property.

The Lender has no liability under the agreements included in the Secured Property.

**10. TERMINATION.**

This agreement and all rights of the Lender under this agreement will terminate when the Lender is satisfied that the Loan and all

other obligations of the Borrower under the Loan Documents are paid and performed in full without reinstatement, disgorgement, or

repayment by reason of a preference, other credit or action, or operation of law.

**11. INCONSISTENCIES.**

If any provision of this agreement is inconsistent with any provision in the Note, the provisions of this agreement will control.

**12. GOVERNING LAW.**

(a) **Choice of Law.** The laws of the state of California govern this agreement (without giving effect to its conflicts of law principles).

(b) **Choice of Forum.** Both parties consent to the personal jurisdiction of the state and federal courts in ORANGE, California.

**13. AMENDMENTS.**

No amendment to this agreement will be effective unless it is in writing and signed by both parties.

**14. ASSIGNMENT AND DELEGATION.**

(a) **No Assignment.** The Borrower may not assign any of its rights under this note. All voluntary assignments of rights are limited

by this subsection.

(b) **No Delegation.** The Borrower may not delegate any performance under this note.

(c) **Enforceability of an Assignment or Delegation.** If a purported assignment or purported delegation is made, or if both are made, in violation of this section, it is void and they are void.

## 15. COUNTERPARTS; ELECTRONIC SIGNATURES.

(a) **Counterparts.** The parties may execute this agreement in any number of counterparts, each of which is an original but all of which constitute one and the same instrument.

(b) **Electronic Signatures.** This agreement, agreements ancillary to this agreement, and related documents entered into in connection with this agreement are signed when a party's signature is delivered by facsimile, email, or other electronic medium. These signatures must be treated in all respects as having the same force and effect as original signatures.

## 16. SEVERABILITY.

If any one or more of the provisions contained in this agreement is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this agreement, but this agreement will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in this agreement, unless the deletion of those provisions would result in such a material change as to cause completion of the transactions contemplated by this agreement to be unreasonable.

## 17. NOTICES.

(a) **Writing; Permitted Delivery Methods.** Each party giving or making any notice, request, demand, or other communication required or permitted by this agreement shall give that notice in writing and use one of the following types of delivery, each of which is a writing for purposes of this agreement: personal delivery, mail (registered or certified mail, postage prepaid, return-receipt requested), nationally recognized overnight courier (fees prepaid), facsimile, or email.

(b) **Addresses.** A party shall address notices under this section to a party at the following addresses:

If to the Borrower:

J-SANDCASTLE CO. LLC

5782 Pinon Drive

Huntington Beach, California 92649

jamiegallian@gmail.com

If to the Lender:

JAMIE LYNN GALLIAN

16222 Monterey Ln Sp. 376

Huntington Beach, California 92649

jamiegallian@gmail.com

(c) **Effectiveness.** A notice is effective only if the party giving notice complies with subsections (a) and (b) and if the recipient receives the notice.

**18. WAIVER.**

No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this agreement will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will constitute a continuing waiver, unless the writing so specifies.

**19. ENTIRE AGREEMENT.**

This agreement, together with the other Loan Documents, constitutes the final agreement of the parties. It is the complete and exclusive expression of the parties' agreement with respect to the subject matter of this agreement. All prior and contemporaneous

communications, negotiations, and agreements between the parties relating to the subject matter of this agreement are expressly

merged into and superseded by this agreement. The provisions of this agreement may not be explained, supplemented, or qualified

by evidence of trade usage or a prior course of dealings. Neither party was induced to enter this agreement by, and neither party is

relying on, any statement, representation, warranty, or agreement of the other party except those set forth expressly in this

agreement. Except as set forth expressly in this agreement, there are no conditions precedent to this agreement's effectiveness.

**20. HEADINGS.**

The descriptive headings of the sections and subsections of this agreement are for convenience only, and do not affect this

agreement's construction or interpretation.

**21. EFFECTIVENESS.**

This agreement will become effective when all parties have signed it. The date this agreement is signed by the last party to sign it

(as indicated by the date associated with that party's signature) will be deemed the date of this agreement.

**22. NECESSARY ACTS; FURTHER ASSURANCES.**

Each party shall use all reasonable efforts to take, or cause to be taken, all actions necessary or desirable to consummate and

make effective the transactions this agreement contemplates or to evidence or carry out the intent and purposes of this agreement.

[SIGNATURE PAGE FOLLOWS]

Each party is signing this agreement on the date stated opposite that party's signature.

J-SANDCASTLE CO. LLC

Date:_____    By:_____

Name: JAMIE L GALLIAN
Title: MEMBER

# ATTACHEMENT

I, JAMIE L. GALLIAN, MEMBER of J-Sandcastle Co, LLC certify under

penalty of perjury that the contents of this Document are true.

I declare I am the person who executed this instrument in my capacity

as the sole Member of J-Sandcastle Co, LLC which execution is my act

and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

Jamie L. Gallian

MEMBER, J-Sandcastle Co LLC

Date:_____    By:_____

Name: JAMIE LYNN GALLIAN

## ATTACHEMENT

I, JAMIE L. GALLIAN, certify under penalty of perjury,

that the contents of this Document are true.

I declare I am the person who executed this instrument, which execution

is my act and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

Jamie L. Gallian

EXHIBIT A

Attach copy of promissory note

# Secured Promissory Note (Fully Amortized)

$225000

11/16/2018

Huntington Beach, California

On or before 12/31/2048, for value received, the undersigned J-SANDCASTLE CO. LLC (the **"Borrower"**) promises to pay to the order of JAMIE LYNN GALLIAN (the **"Holder"**), in the manner and at the place provided below, the principal sum of $225000.

## 1. PAYMENT.

All payments of principal and interest under this note will be made in lawful money of the United States, without offset, deduction, or counterclaim, by wire transfer of immediately available funds to an account designated by the Holder in writing at least 10 days after the effective date of this note or, if this designation is not made, by check mailed to the Holder at 16222 Monterey Ln Sp. 376, Huntington Beach, California, 92649, or at such other place as the Holder may designate in writing.

## 2. MONTHLY INSTALLMENT PAYMENTS.

Principal and interest will be payable in 360 consecutive monthly installments of $1278.00, beginning on or before 12/15/2018 and continuing on the 15th day of each month, until the principal and interest have been paid in full. Each payment will be credited first to interest and then to principal, and interest will cease to accrue on any principal paid. Acceptance by the Holder of any payment differing from the designated installment payment listed above does not relieve the Borrower of the obligation to honor the requirements of this note.

## 3. INTEREST.

Interest on the unpaid principal balance of this note is payable from the date of this note until this note is paid in full, at the rate of 5.5% per year, or the maximum amount allowed by applicable law, whichever is less. Accrued interest will be computed on the basis of a 365-day or 366-day year, as the case may be, based on the actual number of days elapsed in the period in which it accrues.

## 4. PREPAYMENT.

The Borrower may prepay this note, in whole or in part, at any time before maturity without penalty or premium. Any partial prepayment will be credited first to accrued interest, then to principal. No prepayment extends or postpones the maturity date of this note.

## 5. SECURITY FOR PAYMENT.

This note is secured by certain assets of the Borrower in accordance with a separate security agreement dated 11/16/2018 between the Holder and the Borrower (the **"Security Agreement"**). If an Event of Default (defined below) occurs, the Holder will have the rights set forth below and in the Security Agreement.

## 6. EVENTS OF DEFAULT.

Each of the following constitutes an **"Event of Default"** under this note:

(a) the Borrower's failure to make any payment when due under the terms of this note, including the final payment due under this note when fully amortized;

(b) the filing of any voluntary or involuntary petition in bankruptcy by or regarding the Borrower or the initiation of any proceeding under bankruptcy or insolvency laws against the Borrower;

(c) an assignment made by the Borrower for the benefit of creditors; or

(d) the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 7. ACCELERATION; REMEDIES ON DEFAULT.

If any Event of Default occurs, all principal and other amounts owed under this note will become immediately due without any action by the Holder, the Borrower, or any other person. The Holder, in addition to any rights and remedies available to the Holder under this note, may, in its sole discretion, pursue any legal or equitable remedies available to it under applicable law or in equity, including taking any of the following actions:

(a) personally, or by agents or attorneys (in compliance with applicable law), take immediate possession of the collateral. To that end, the Holder may pursue the collateral where it may be found, and enter the Borrower's remises, with or without notice, demand, process of law, or legal procedure if this can be done without breach of the peace. If the premises on which any part of the collateral is located are not under the Borrower's direct control, the Borrower will exercise its best efforts to ensure that the Holder is promptly provided right of access to those premises. To the extent that the Borrower's consent would otherwise be required before a right of access could be granted, the Borrower hereby irrevocably grants that consent;

(b) require the Borrower to assemble the collateral and make it available to the Holder at a placeto be designated by the Holder that is reasonably convenient to both parties (it being acknowledged that the Borrower's premises are reasonably convenient to the Borrower);

(c) sell, lease, or dispose of the collateral or any part of it in any manner permitted by applicable law or by contract; and

(d) exercise all rights and remedies of a secured party under applicable law.

## 8. WAIVER OF PRESENTMENT; DEMAND.

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses or losses and interest on those, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned. Acceptance by the Holder or any other holder of this note of any payment differing from the designated payments listed does not relieve the undersigned of the obligation to honor the requirements of this note.

## 9. GOVERNING LAW.

(a) **Choice of Law.** The laws of the state of California govern this note (without giving effect to its conflicts of law principles).

(b) **Choice of Forum.** Both parties consent to the personal jurisdiction of the state and federal courts in Orange, California.

## 10. COLLECTION COSTS AND ATTORNEYS' FEES.

81

The Borrower shall pay all expenses of the collection of indebtedness evidenced by this note, including reasonable attorneys' fees and court costs in addition to other amounts due.

## 11. ASSIGNMENT AND DELEGATION.

(a) **No Assignment.** The Borrower may not assign any of its rights under this note. All voluntary assignments of rights are limited by this subsection.

(b) **No Delegation.** The Borrower may not delegate any performance under this note.

(c) **Enforceability of an Assignment or Delegation.** If a purported assignment or purported delegation is made in violation of this section, it is void.

## 12. SEVERABILITY.

If any one or more of the provisions contained in this note is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this note, but this note will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in it, unless the deletion of those provisions would result in such a material change so as to cause completion of the transactions contemplated by this note to be unreasonable.

## 13. NOTICES.

(a) **Writing; Permitted Delivery Methods.** Each party giving or making any notice, request, demand, or other communication required or permitted by this note shall give that notice in writing and use one of the following types of delivery, each of which is a writing for purposes of this note: personal delivery, mail (registered or certified mail, postage prepaid, return-receipt requested), nationally recognized overnight courier (fees prepaid), facsimile, or email.

(b) **Addresses.** A party shall address notices under this section to a party at the following addresses:

If to the Borrower:

J-Sandcastle Co. LLC

5782 Pinon Drive

Huntington Beach, California 92649

jamiegallian@gmail.com

If to the Holder:

Jamie Lynn Gallian

16222 Monterey Ln Sp. 376

Huntington Beach, California 92649

jamiegallian@gmail.com

**(c) Effectiveness.** A notice is effective only if the party giving notice complies with subsections (a) and (b) and if the recipient

receives the notice.

## 14. WAIVER.

No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this note will be

effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure,

right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will

constitute a continuing waiver, unless the writing so specifies.

## 15. HEADINGS.

The descriptive headings of the sections and subsections of this note are for convenience only, and do not affect this note's

construction or interpretation.

[SIGNATURE PAGE FOLLOWS]

Each party is signing this agreement on the date stated opposite that party's signature.

J-Sandcastle Co. LLC

Date:_____        By:_____

Name: Jamie L Gallian

Title: Member

Date:_____        By:_____

Name: Jamie Lynn Gallian

# ATTACHEMENT

I, JAMIE L. GALLIAN, MEMBER of J-Sandcastle Co, LLC certify under

penalty of perjury that the contents of this Document are true.

I declare I am the person who executed this instrument in my capacity

as the sole Member of J-Sandcastle Co, LLC which execution is my act

and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

Jamie L. Gallian

MEMBER, J-Sandcastle Co LLC

## ATTACHEMENT

I, JAMIE L. GALLIAN, certify under penalty of perjury,

that the contents of this Document are true.

I declare I am the person who executed this instrument, which execution

is my act and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

Jamie L. Gallian

# Secured Promissory Note (Fully Amortized)

$225000

11/16/2018

Huntington Beach, California

On or before 12/16/2048, for value received, the undersigned J-SANDCASTLE CO LLC (the **"Borrower"**) promises to pay to the order of J-PAD, LLC (the **"Holder"**), in the manner and at the place provided below, the principal sum of $225000.

## 1. PAYMENT.

All payments of principal and interest under this note will be made in lawful money of the United States, without offset, deduction, or counterclaim, by wire transfer of immediately available funds to an account designated by the Holder in writing at least 10 days after the effective date of this note or, if this designation is not made, by check mailed to the Holder at 5782 Pinon Drive, Huntington Beach, California, 92649, or at such other place as the Holder may designate in writing.

## 2. MONTHLY INSTALLMENT PAYMENTS.

Principal and interest will be payable in 360 consecutive monthly installments of $1278.00, beginning on or before 12/15/2018 and continuing on the 15th day of each month, until the principal and interest have been paid in full. Each payment will be credited first to interest and then to principal, and interest will cease to accrue on any principal paid. Acceptance by the Holder of any payment differing from the designated installment payment listed above does not relieve the Borrower of the obligation to honor the requirements of this note.

## 3. INTEREST.

Interest on the unpaid principal balance of this note is payable from the date of this note until this note is paid in full, at the rate of 5.5% per year, or the maximum amount allowed by applicable law, whichever is less. Accrued interest will be computed on the basis of a 365-day or 366-day year, as the case may be, based on the actual number of days elapsed in the period in which it accrues.

## 4. PREPAYMENT.

The Borrower may prepay this note, in whole or in part, at any time before maturity without penalty or premium. Any partial prepayment will be credited first to accrued interest, then to principal. No prepayment extends or postpones the maturity date of this note.

## 5. SECURITY FOR PAYMENT.

This note is secured by certain assets of the Borrower in accordance with a separate security agreement dated 11/16/2018 between the Holder and the Borrower (the **"Security Agreement"**). If an Event of Default (defined below) occurs, the Holder will have the rights set forth below and in the Security Agreement.

## 6. EVENTS OF DEFAULT.

Each of the following constitutes an **"Event of Default"** under this note:

(a) the Borrower's failure to make any payment when due under the terms of this note, including the final payment due under this note when fully amortized;

(b) the filing of any voluntary or involuntary petition in bankruptcy by or regarding the Borrower or the initiation of any proceeding under bankruptcy or insolvency laws against the Borrower;

(c) an assignment made by the Borrower for the benefit of creditors; or

(d) the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 7. ACCELERATION; REMEDIES ON DEFAULT.

If any Event of Default occurs, all principal and other amounts owed under this note will become immediately due without any action by the Holder, the Borrower, or any other person. The Holder, in addition to any rights and remedies available to the Holder under this note, may, in its sole discretion, pursue any legal or equitable remedies available to it under applicable law or in equity, including taking any of the following actions:

(a) personally, or by agents or attorneys (in compliance with applicable law), take immediate possession of the collateral. To that end, the Holder may pursue the collateral where it may be found, and enter the Borrower's remises, with or without notice, demand, process of law, or legal procedure if this can be done without breach of the peace. If the premises on which any part of the collateral is located are not under the Borrower's direct control, the Borrower will exercise its best efforts to ensure that the Holder is promptly provided right of access to those premises. To the extent that the Borrower's consent would otherwise be required before a right of access could be granted, the Borrower hereby irrevocably grants that consent;

(b) require the Borrower to assemble the collateral and make it available to the Holder at a place to be designated by the Holder that is reasonably convenient to both parties (it being acknowledged that the Borrower's premises are reasonably convenient to the Borrower);

(c) sell, lease, or dispose of the collateral or any part of it in any manner permitted by applicable law or by contract; and

(d) exercise all rights and remedies of a secured party under applicable law.

## 8. WAIVER OF PRESENTMENT; DEMAND.

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses or losses and interest on those, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned. Acceptance by the Holder or any other holder of this note of any payment differing from the designated payments listed does not relieve the undersigned of the obligation to honor the requirements of this note.

## 9. GOVERNING LAW.

(a) **Choice of Law.** The laws of the state of California govern this note (without giving effect to its conflicts of law principles).

(b) **Choice of Forum.** Both parties consent to the personal jurisdiction of the state and federal courts in Orange, California.

## 10. COLLECTION COSTS AND ATTORNEYS' FEES.

89

The Borrower shall pay all expenses of the collection of indebtedness evidenced by this note, including reasonable attorneys' fees and court costs in addition to other amounts due.

## 11. ASSIGNMENT AND DELEGATION.

**(a) No Assignment.** The Borrower may not assign any of its rights under this note. All voluntary assignments of rights are limited by this subsection.

**(b) No Delegation.** The Borrower may not delegate any performance under this note.

**(c) Enforceability of an Assignment or Delegation.** If a purported assignment or purported delegation is made in violation of this section, it is void.

## 12. SEVERABILITY.

If any one or more of the provisions contained in this note is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this note, but this note will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in it, unless the deletion of those provisions would result in such a material change so as to cause completion of the transactions contemplated by this note to be unreasonable.

## 13. NOTICES.

**(a) Writing; Permitted Delivery Methods.** Each party giving or making any notice, request, demand, or other communication required or permitted by this note shall give that notice in writing and use one of the following types of delivery, each of which is a writing for purposes of this note: personal delivery, mail (registered or certified mail, postage prepaid, return-receipt requested), nationally recognized overnight courier (fees prepaid), facsimile, or email.

**(b) Addresses.** A party shall address notices under this section to a party at the following addresses:

If to the Borrower:

J-Sandcastle Co LLC

5782 Pinon Drive

Huntington Beach, California 92649

jamiegallian@gmail.com

If to the Holder:

J-Pad, LLC

5782 Pinon Drive

Huntington Beach, California 92649

jamiegallian@gmail.com

**(c) Effectiveness.** A notice is effective only if the party giving notice complies with subsections (a) and (b) and if the recipient receives the notice.

## 14. WAIVER.

No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this note will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will constitute a continuing waiver, unless the writing so specifies.

## 15. HEADINGS.

The descriptive headings of the sections and subsections of this note are for convenience only, and do not affect this note's construction or interpretation.

[SIGNATURE PAGE FOLLOWS]

# **ATTACHEMENT**

I, JAMIE L. GALLIAN, MEMBER of J-Sandcastle Co, LLC certify under

penalty of perjury that the contents of this Document are true.

I declare I am the person who executed this instrument in my capacity

as the sole Member of J-Sandcaslte Co, LLC which execution is my act

and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

Jamie L. Gallian

MEMBER, J-Sandcastle Co LLC

# **ATTACHEMENT**

I, JAMIE L. GALLIAN, MEMBER OF J-Pad, LLC certify under penalty perjury,

that the contents contained in this Document are true.

I declare, I am  AUTHORIZED Member of J-Pad, LLC to act and I

accept this instrument on behalf of J-Pad, LLC, which is my act and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649


J-PAD, LLC

Jamie L. Gallian, MEMBER

**ATTACHMENT**

11. I certify under penalty of perjury that the contents of this Document are true.
I declare, I am the person who executed this instrument, which execution is my act and
deed.

Signature of Authorized Person:

Jamie L. Gallian

---

11.    I certify under penalty of perjury that the contents of this
Document are true.  I declare I am the person who executed this
instrument, which execution is my act and deed.

Signature of Authorized Person:

ANTHONY CALDERON, Manager of J-Pad, LLC

A notary public or other officer completing this certificate verifies only the identity of the individual(s) who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

Jamie L. Gallian

On before me, personally appeared Jamie L Gallian who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Notary Seal)
Signature of Notary Public

TRI THE TANG
Commission # 2206619
Notary Public - California
Orange County
My Comm. Expires JULY 22, 2021

---

A notary public or other officer completing this certificate verifies only the identity of the individual(s) who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

Anthony Calderon

On before me, , personally appeared Anthony Calderon on behalf of who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Notary Seal)
Signature of Notary Public

TRI THE TANG
Commission # 2206619
Notary Public - California
Orange County
My Comm. Expires JULY 22, 2021





# EXHIBIT   3

# 10/31/2018- A.P.N. 937-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 ALDERPORT DR.

HUNTINGTON BEACH, CA 92649

# TAX ASSESSOR'S DEBTOR'S HOMESTEAD EXEMPTION IN RESIDENCE SOLD ON 10/31/2018.



Shari L. Freidenrich, CPA
Orange County Treasurer - Tax Collector
P.O. Box 1438 • Santa Ana, CA 92702-1438
625 N. Ross Street, Building 11, Room 656, Santa Ana
Office Hours: 8:00 AM-5:00 PM Monday - Friday
Phone Hours: 9:00 AM-5:00 PM (714) 834-3411
ocgov.com/octaxbill

**DID YOU KNOW?**

Sign up to receive a text/email due date reminder at ocgov.com/taxreminder

Pay online at ocgov.com/octaxbill to receive same day credit, no service fee by eCheck and an emailed receipt.

Mailed payments must have a USPS postmark on or before the last timely payment date. If you wait until the last day to mail your payment, get your envelope hand-stamped with a postmark to ensure it is timely.

Major construction has eliminated close parking to our office - please pay online!

## 2018-19 SECURED PROPERTY TAX BILL

For Fiscal Year Beginning July 1, 2018 and Ending June 30, 2019

0000442-0000442 STMT----- 740701 OCT026
BWNLBHV ********AUTO**ALL FOR AADC 926
#9376 3053 0020 183#

HOUSER BROS CO
GALLIAN JAMIE L
4476 ALDERPORT DR UNIT 53
HUNTINGTON BEACH CA 92649-2288



**PROPERTY LOCATION**

4476 ALDERPORT 53 HUNTINGTON BEACH

### OWNER OF RECORD AS OF 12:01 AM, JANUARY 1, 2018

HOUSER BROS CO

## CORRECTED SECURED TAX BILL

**ASSESSED VALUES & EXEMPTIONS AS OF JANUARY 1, 2018**

| DESCRIPTION | FULL VALUE | COMPUTED TAX |
|---|---|---|
| LAND | 197,735 | |
| IMPROVEMENTS - BUILDING | 121,658 | |
| | | |
| TOTAL VALUES: | 319,393 | 3,853.78 |
| HOMEOWNER EXEMPTION | -7,000 | -76.78 |
| TOTAL NET TAXABLE VALUE: | 312,393 | 3,777 |

| PARCEL NO. (APN) | TAX RATE AREA | 1st Installment DUE 11/1/18 | | 2nd Installment DUE 2/1/19 | | TO PAY BOTH INSTALLMENTS BY 12/10/18 |
|---|---|---|---|---|---|---|
| 937-630-53 | 04-007 | $1,888.50 | + | $1,888.50 | = | $3,777.00 |

### IMPORTANT INFORMATION

If you sold this property or no longer own it, you can disregard this bill. Property taxes are the responsibility of the new owner. Contact the Office of the Assessor at (714) 834-2727 regarding ownership changes.

Enrollment date 10/04/18.

ORDER # REVISION 01 DATE 08/30/18 2018 CORRECTION OF ASSESSOR ASMNT INFO

Corrected Billing

| VOTER APPROVED TAXES AND SPECIAL ASSESSMENTS | | | |
|---|---|---|---|
| SERVICE AGENCY | RATE | VALUE | TAXES |
| BASIC LEVY RATE | 1.00000 | 312,393 | 3,123.93 |
| COAST COMM COLLEGE DIST | .03052 | 312,393 | 95.34 |
| OCEAN VIEW SD 2016, SR 2017A | .02404 | 312,393 | 75.10 |
| HUNTINGTON BCH UNION HS | .02388 | 312,393 | 74.60 |
| HUNTINGTON BEACH EMPLOYEE RETIREME | .01500 | 312,393 | 46.86 |
| METRO WATER D-MWDOC | .00350 | 312,393 | 10.93 |
| | | | |
| SPECIAL ASSESSMENT CHARGES | | PHONE NO. | |
| MOSQ,FIRE ANT ASSMT | | (800)273-5167 | 4.49 |
| VECTOR CONTROL CHG | | (800)273-5167 | 0.67 |
| MWD WATER STDBY CHG | | (866)807-6864 | 10.08 |
| OCSD SEWER USER FEE | | (714)593-7281 | 335.00 |
| | | | |
| TOTAL CHARGED | 1.09694 | | 3,777.00 |

FOR DETAILS OF TAX TYPES, VISIT OUR WEBSITE AT OCGOV.COM/OCTAXBILL

THERE WILL BE A $26.00 FEE FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON
RETAIN TOP PORTION FOR YOUR RECORDS – IF PAYING BY CHECK, YOUR CANCELLED CHECK IS YOUR RECEIPT OR PAY ONLINE AND RECEIVE AN EMAILED RECEIPT

RECORDING AT THE REQUEST OF:

·· 8696          BK 13824 PG 1294

$10.00
C3

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M  NOV  7  1980
LEE A. BRANCH, County Recorder

WHEN RECORDED MAIL TO:
Mr. and Mrs. John F. Turner
4476 Alderport
Huntington Beach, Ca. 92647

PAID
DOC TRANSFER TAX
LEE A. BRANCH
ORANGE CO. RECORDER

Mail Tax Statements to
Address Shown Above

The undersigned Grantor Declares The
Documentary Transfer Tax is $ 126.50
Computed On Full Value of Property
Conveyed in Huntington Beach, Ca.

## CONDOMINIUM SUBLEASE
### (SHORT FORM-MEMORANDUM)
### AND GRANT DEED

For the purpose of establishing and vesting in

JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

_____

_____

_____

(the "Condominium Owner"), a Condominium as defined in the

Condominium Plan (the "Condominium Plan"), recorded in Book

13358, Pages 1193, et seq., Official Records of Orange County,

California, located on Lots 1 and 2 of Tract 10542 in the

City of Huntington Beach, County of Orange, State of

California, as shown on a Map recorded in Book 456, Pages 49

and 50 of Miscellaneous Maps, in the Office of the County

Recorded or Orange County, California:

I.  DEMISING CLAUSE:

ROBERT P. WARMINGTON, an individual, ("Sublessor"), who

is the lessee under that certain Ground Lease dated as of

August 1, 1980, from HOUSER BROS. CO., a limited partnership,

as lessor, which Ground Lease is being recorded concurrently

herewith, hereby subleases to Condominium Owner, the follow-

ing real property:

Parcel 1

Unit  53 , as shown and defined on the

Condominium Plan, excepting that portion con-

sisting of buildings and other improvements.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

BK 13824 PG 1295

Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

for a term commencing on the date this instrument is recorded in the Office of the County Recorder of Orange County, California, and ending December 31, 2059, and for the rental and upon all the terms and conditions contained in that certain Condominium Sublease (the "Sublease") of even date herewith and recorded concurrently herewith, between Robert P. Warmington and the Condominium Owner.

II.    GRANTING CLAUSE:

THE ROBERT P. WARMINGTON CO., a California corporation ("Grantor"), hereby grants to the Condominium Owner for a term expiring upon expiration or an earlier termination of the Sublease the following real property:

2

BK 13824 PG 1296

Parcel 1

Those portions of Unit __53__, as shown
and defined on the Condominium Plan, con-
sisting of buildings and other improvements.

Parcel 2

An undivided one-eightieth (1/80) interest
in and to those portions of the Common Area
as shown and defined on the Condominium Plan,
consisting of buildings and other improvements.

Parcel 3

An exclusive easement for the use and
occupancy of those portions of Restricted
Common Area as defined on the Condominium
Plan for entry and staircases and attic space
relating to said Unit, consisting of buildings
and other improvements.

Parcel 4

Non-exclusive easement and right to use
those portions of the Common Area as defined
on the Condominium Plan, except Restricted
Common Area, consisting of buildings and other
improvements.

SUBJECT TO:

(a)  general and special taxes and assessments
     for the current fiscal year;

(b)  the Declaration of Restrictions recorded
     in Book 13618, Page 982, Official Records
     of Orange County, California, as amended,
     (the "Declaration");

3

BK 13824 PG 1237

(c) all other covenants, conditions, restric-
      tions, rights, reservation of rights of way
      and easements whether or not of record.

The buildings and other improvements referred to above
are the buildings and other improvements located on Lots 1
and 2 of Tract 10542, which are and shall remain real property,
as more specifically set forth in the Declaration.  The real
property demised and granted hereby which together constitute
a condominium must at all times be held by the same person
and may not be separately conveyed, assigned, transfered,
encumbered or otherwise alienated, voluntarily, involuntarily
or by operation of Law.

Dated:  ___August 1,___ , 1980.

SUBLESSOR:

Robert P. Warmington

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _____

By _____

4

BK 13824 PG 1298

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

*OFFICIAL SEAL*
*PEARL L. HUNT*
*NOTARY PUBLIC · CALIFORNIA*
*ORANGE COUNTY*
*My Commission Expires Mar 25, 1983*

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said State, personally appeared
___OLIVER N. CRARY___, known to me to be
the ___Vice President___, and ___WILLIAM J. PITTMAN___,
known to me to be the ___Secretary___ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

*OFFICIAL SEAL*
*PEARL L. HUNT*
*NOTARY PUBLIC · CALIFORNIA*
*ORANGE COUNTY*
*My Commission Expires Mar 25, 1983*

_Pearl L. Hunt_
Notary Public in and for said
County

[SEAL]

5

RECORDED D

8694

BK 13824 PG 1274

$19.00

Recorded at the Request of
and When Recorded Return To:

Robert P. Warmington
16592 Hale Avenue
Irvine, California    92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:00 A.M. NOV 7 1980

LEE A. BRANCH, County Recorder

A.P 178-06-01

## CONDOMINIUM SUBLEASE

THIS SUBLEASE (hereinafter "lease") is made
this 1st day of ___August___, 1980, by and between
ROBERT P. WARMINGTON, an individual whose address is 16592
Hale Avenue, Irvine, California 92714 (herein termed the
"Landlord"), and
   JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants
_____
_____
whose address is
   4476 Allport, Huntington Beach, Ca. 92647
(herein termed the "Tenant").

### W I T N E S S E T H:

That whereas Tenant is concurrently acquiring
certain interest in Condominium Unit __53__ on Lots 1 and 2
of Tract 10542 as shown on a map recorded in Book 456
Pages 49 and 50 Official Records of Orange County
California consisting of buildings and other improvements
located on Lots 1 and 2 of Tract 10542, which buildings
and other improvements are and shall remain real property.

1.    PROPERTY LEASED. For and in consideration
of the payment of the rents and taxes and other charges
and for the performance of all of the covenants and
conditions of this lease by Tenant, Landlord hereby
subleases to Tenant

        (i)  Unit __53__, (the "Unit") as shown and
        defined on that certain Condominium Plan
        recorded in Book 13358 Pages 1193 et seq.,
        Official Records of Orange County,
        California (the "Condominium Plan"),
        excepting therefrom all buildings and other
        improvements;

        (ii)  An undivided one-eightieth (1/80)
        interest in the Common Areas (as defined in
        the Condominium Plan, excepting therefrom
        all buildings and other improvements;

        (iii)  An easement for the exclusive use and
        occupancy of those portions of the
        Restricted Common Area (as defined on said
        Condominium Plan) for entry and staircases
        and attic space relating to said Unit,
        excepting therefrom all buildings and other
        improvements;

WPN:2004A

BK 13824 PG 1275

(iv)  A non-exclusive easement and right to use the Common Area (as defined on said Condominium Plan), except the Restricted Common Area, excepting therefrom all buildings and other improvements.

It is understood that "ouser Bros. Co., a California limited partnership (hereinafter the ". ster Lessor") and Landlord have entered into a Ground Lease dated as of August 1, 1980 which is being recorded concurrently herewith (the "Master Lease") as lessor and lessee, respectively. This lease shall be subject and subordinate to the Master Lease, provided that, pursuant to the Master Lease, Master Lessor has agreed not to disturb the subleasehold estate of Tenant in the event of a default under the Master Lease. Tenant acknowledges receipt of a copy of the Master Lease prior to Tenant's execution of this lease. The Unit is one unit in a Condominium Project (the "Project") constructed on the leased land and governed by a Declaration of Covenants, Conditions and Restrictions (the "Declaration") recorded in Book 13618, Page 982, Official Records of Orange County, California as amended.

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2.  **TERM OF LEASE.**  The leased land is leased for a basic term commencing on the date this Condominium Sublease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3.  **RENTAL.**  Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the sum of One Thousand Five Hundred DOLLARS ($1,500) per year, in quarterly installments of $375 each in advance, on the first day of the quarter of each calendar year of said term (Provided, however, if the term of this lease commences on a date other than the first day of a calendar quarter, Tenant shall pay an appropriately pro rated amount of such quarterly installments upon the commencement of such term); subject, however, to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment". All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4.  **TAXES AND ASSESSMENTS.**  In addition to the rents above provided, Tenant shall pay and discharge all taxes and general and special assessments of every description which may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, (including its Unit) and upon all rentals payable with respect to the leased land, whether belonging to Landlord, Tenant or the Master

WPN:2004A                    2

Lessor, as such taxes and assessments become due and payable during the term of this lease. Tenant agrees to protect and hold harmless the Landlord, the Master Lessor and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other charges which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5.  USE OF LEASED LAND.  Tenant shall use the leased land and its Unit for single family residential use and purpos s incidental thereto.  Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, or its Unit as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

6.  IMPROVEMENTS.  When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of Landlord whatsoever. Further, Tenant shall comply with all of the terms, covenants and conditions of the Master Lease pertaining to such construction, including, without limitation, the obligation to obtain the approval of the Master Lessor when, and to the extent required by the Master Lease.

7.  MAINTENANCE.  Landlord shall not be obligated to make any repairs, alterations, additions or improvements in, to, upon, or adjoining the leased land or any improvements that may be constructed or installed on the leased land.  As part of the consideration for Landlord entering this Lease, Tenant shall, at all times during the full term of this lease and at his sole cost and expense, keep, repair and maintain its Unit and those other portions of the leased land and buildings and improvements therein which are the responsibility of Tenant to maintain and repair under the provisions of the Declaration, in clean and sanitary condition and in good order and repair.  Tenant shall pay for all water, gas, heat, light, power, telephone and all other utilities and services furnished to its Unit.  Tenant shall make payment directly to the utility involved for all separately metered services and shall pay to the management body for the Project the proportionate share of all centrally metered utilities, such proportion to be determined by said management body.

Tenant shall at all times fully comply with and abide by the terms, covenants, restrictions, provisions and conditions of the Declaration and any amendments thereof, and any rules, regulations, agreements, decisions and determinations duly made by the management body for the Project established pursuant to the Declaration respecting the maintenance, use and occupation of its Unit

WPN:2004A                    3

BK 13824 PG 1277

and the leased land and any building or improvements
constructed thereon and the payment of all assessments and
charges of every type levied by the management body of the
Project in connection therewith.  In addition to the
foregoing, Tenant hereby covenants and agrees to promptly
pay at all times during the term hereof, before the same
shall become delinquent, Tenant's share of the common
expenses of the Project and any and all assessments,
charges, and duties of every description, levied under the
provisions of the Declaration, without cost, expense or
liability to Landlord.  Tenant shall further, during the
whole term of this Lease, by paying his proportionate
share of the common expenses of the Project make, build,
maintain and repair all fences, sewers, drains, curbs,
roads, sidewalks, parking areas, and other improvements
which may be required by law to be made, built, maintained
and repaired upon or adjoining or in connection with or
for the use of the leased land.

    8.    RESTORATION OF IMPROVEMENTS.  If, during the
term hereof, the dwelling, structures or other
improvements, if any, constructed by or for Tenant on the
leased land, or any part thereof, shall be damaged or
destroyed by fire or other casualty, Tenant may, at its
cost and expense, either (a) repair or restore said
dwelling and improvements; or (b) subject to the consent
of any encumbrancer, if any, tear down and remove the same
from the leased land.

    9.    LIENS AND CLAIMS.  Tenant shall not suffer
or permit to be enforced against the leased land or its
Unit, or any part thereof, any mechanics', laborers',
materialmen's, contractors', subcontractors', or any other
liens arising from or any claim for damages growing out of
any work of construction or improvement, or any other
claim or demand howsoever the same may arise, but Tenant
shall pay or cause to be paid all of said liens, claims
and demands before any action is brought to enforce the
same against the leased land and its Unit, and Tenant
hereby indemnifies and agrees to hold Landlord, and its
Unit free and harmless from all liability for any and all
such liens, claims and demands, together with all costs
and expenses, including, but not limited to, attorneys'
fees and court costs incurred by Landlord or Master Lessor
in connection therewith, and Landlord and Master Lessor
shall have the right, at any time and from time to time,
to post and maintain on the leased land, or any part
thereof, such notices of nonresponsibility as desired by
Landlord or as may be provided by law.  Notwithstanding
anything to the contrary contained in this paragraph, if
Tenant shall, in good faith, contest the validity of any
such lien, claim or demand, then Tenant shall, at its
expense, defend itself, Landlord and Master Lessor against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against landlord the leased land or its Unit, and
if Landlord shall require, Tenant shall furnish to
Landlord a surety bond satisfactory to Landlord in an
amount equal to such contested lien, claim or demand
indemnifying Landlord and Master Lessor against liability
for same; or, if Landlord shall request, Tenant shall

WPN:2004A                    4

BK 13824 PG 1278

procure and record the bond provided for in the Civil Code
of the State of California, or any comparable statute
hereafter enacted providing for a bond freeing the leased
land and the Unit from the effect of such lien or claim or
action thereon.

10. **LIABILITIES.** Landlord shall not be liable
for any loss, damage, injury or claim of any kind
whatsoever to any person or property of Tenant, or any of
Tenant's employees, guests or invitees or of any other
person whomsoever, caused by any use of the leased land or
by any defect in any building, structure or other
improvement constructed thereon, or arising from any
accident on the leased land or any fire or other casualty
thereon, or occasioned by the failure on the part of
Tenant to maintain said premises in safe condition, or by
any nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11. **LANDLORD PAYING CLAIMS.** Neither Landlord
nor the Master Lessor shall be liable for any loss,
damage, injury or claim of any kind or character to any
person or property arising from or caused by the use or
development of the leased land and the construction of
improvements thereon, including, without limitation, any
such loss, damage, injury or claim arising from or caused
by (i) any use of the leased land, or any part thereof;
(ii) any defect in the design, construction of or material
in any structure or improvement upon the leased land
or in any other therein; (iii) any defect in
soils or in the or soils or in the design and
accompli re : (iv) any act or omission of
Tenant ents, employees, licensees,
invitee. cont. s; (v) any accident on the leased
land or other casualty thereon; (vi) any representations
by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agent, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in
connection with the leased land; and Tenant, as a material
part of the consideration of this Lease, hereby waives on
its behalf all claims and demands against Landlord or the
Master Lessor for any such loss, damage or injury of
Tenant, and hereby indemnifies and agrees to hold Landlord
and the Master Lessor entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons,
and with respect to any such violations or charges arising

WPN:2004A                5

BK 13824 PG 1279

therefrom, including, without limitation, attorneys' fees and court costs incurred by Landlord and the Master Lessor in connection therewith.

Tenant either individually, or in conjunction with the Tenants of the remaining undivided interests in the leased land or through the management body for Project shall maintain at all times during the term of the Lease, at its expense and in companies aceptable to Landlord:

(a)  Worker's compensation insurance and employer's liability insurance.

(b)  Comprehensive liability insurance, with limits of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS for any one person; ONE MILLION ($1,000,000) DOLLARS for any one occurrence as to bodily injury or death; and ONE HUNDRED THOUSAND ($100,000) DOLLARS per occurrence as to property damage.

Each policy of insurance shall be issued by insurers of recognized responsibility, qualified to do business in California, acceptable to Landlord and the Master Lessor and which has, at the execution hereof, a rating at least equal to AXV by Best's Insurance Guide (or other equivalent rating if such Guide be discontinued) and shall name Landlord and the Master Lessor as an additional insured.  Prior to the time of commencement of this Lease, Tenant shall deliver certificates of insurance carriers of each policy of insurance as evidence of compliance with the above requirements and stating that not less than ten (10) days' written notice will be given to Landlord and the Master Lessor prior to cancellation or reduction in coverage or amount.

12.  **ASSIGNMENT.**  Tenant shall have the right to assign, sublet or otherwise transfer its interest under this lease without the prior written consent of Landlord. Notwithstanding the foregoing, this lease or any right hereunder shall in no case be assigned separate and apart from Tenant's Unit located on the leased land.  Also notwithstnding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

13.  **ENCUMBRANCES.**  Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed"), for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions.  Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

A.  Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of

WPN:2004A

BK 13824 PG 1280

any such trust deed or assignment, the provisions of this Lease shall control.

B.   Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C.   Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto.   Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D.   Landlord agrees that it will not terminate this Lease because of any default or breach hereunder or the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within sixty (60) days after service of written notice on the encumbrancer by Landlord of its intention to terminate this Lease for such default or breach, shall:

(a)   Cure such default or breach if the same can be cured by the payment or expenditure of money provided to be paid under the terms of this Lease, or if such default or breach is not so curable, cause the trustee under the trust       to commence and thereafter to diligently pursue to completion steps and proceedings for the foreclosure by sale or by exercise of a power of sale under and pursuant to the trust deed in the manner provided by law; and

(b)   Keep and perform all of the covenants and conditions of this Lease requiring the payment or expenditure of money by Tenant until such time as said leasehold shall be sold upon foreclosure, or by exercise of a power of sale, pursuant to the trust deed or shall be released or reconveyed thereunder; provided, however, that if the beneficiary under such trust deed shall fail or refuse to comply with any and all of the conditions of this Article with respect to a breach or default as to which notice of intention to terminate this Lease has been given to the encumbrancer, then and thereupon Landlord shall be released from the covenants of forebearance herein contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this Article may be given concurrently with or after Landlord's notice of default to Tenant as herein provided for in the Article entitled "Default."

Any mortgagee shall have the right at any time during the term hereof while this lease is in full force and effect:

WPN:2004A                7

BK 13824 PG 1281

(a)  To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)  To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person firm or corporation without the consent of Landlord as to such initial transfer, and such obligations shall not commence as to any obligation which cannot be satisfied by the payment of money prior to mortgagee's acquisition of the leasehold estate hereunder by reason of the exercise of its rights as aforesaid.

Until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein.

14.  DEFAULT.  Should Tenant fail to pay any installment of rent or any other sum provided in this lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of ten (10) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of thirty (30) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant

WPN:2004A                          8

BK 13824 PG 1282

shall execute, acknowledge and deliver to Landlord a proper instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to the leased land and any and all improvements thereon, if not removed by virtue of this Lease or otherwise.

16.  **PLACE OF PAYMENTS AND NOTICES.** All rents and other sums payable by Tenant to Landlord hereunder shall be paid to the Landlord at the address set forth after Landlord's name above. Whenever either party hereto desires to give written notice to the other respecting this Lease, such notice, if not personally delivered to Landlord or to Tenant, shall be sent by certified or registered mail, with postage prepaid, and directed to either party at the address hereinabove specified, or at such other address as either party may hereafter designate in writing. The service of any such written notice shall be deemed complete at the time of such personal delivery or within two (2) days after the mailing thereof in Orange County, California, as herein provided. Should Landlord or Tenant consist of more than one person, the personal delivery or mailing of such notice to any one of such persons shall constitute complete service upon all such persons. Any notice provided in the Article hereof entitled "Encumbrances" to be given by Landlord to any encumbrancer of Tenant shall be served in the same manner as herein provided in this Article and shall be delivered to the encumbrancer or directed to its address as last shown on the records of Landlord.

17.  **REMEDIES.** Should Tenant at any time be in default hereunder pursuant to the provisions of the Article hereof entitled "Default", then notwithstanding Tenant's breach of this lease and abandonment of the leased land, this lease shall continue in effect so long as Landlord does not terminate Tenant's right to possession and Landlord may enforce all of its rights and remedies hereunder, including, at the option of Landlord:

A.    Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article 3 above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten percent (10%) per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

B.    By written notice to Tenant, Landlord may declare this Lease at an end, re-enter the leased land by process of the law, eject all parties in possession

WPN:2004A

9

BK 13824 PG 1283

thereof therefrom and repossess said leased land, in which
event, Landlord shall have the right to recover from
Tenant:

     (i)   The worth at the time of award of the
unpaid rent which has been earned at the time of
termination;

     (ii)  The worth at the time of award of the
amount by which the unpaid rent which would have been
earned after termination until the time of award
exceeds the amount of such rental loss that the Tenant
proves could have been reasonably avoided;

     (iii) The worth at the time of award of the
amount by which the unpaid rent for the balance of the
term after the time of award exceeds the amount of
such rental loss for the same period that the Tenant
proves could be reasonably avoided;

     (iv)  All other amounts necessary to compensate
Landlord for all the detriment proximately caused by
Tenant's failure to perform its obligations hereunder
or which in the ordinary course of things are likely
to result therefrom; and

     (v)   In computing "worth at the time of award"
Landlord shall be allowed interest at the rate of ten
percent (10%) per annum.

Each of the terms, covenants, conditions and
provisions of Tenant under this lease is a material
consideration for this lease, the breach of which shall be
deemed a default hereunder. All rights, options and
remedies of Landlord contained in this lease shall be
construed and held to be cumulative, and no one of them
shall be exclusive of the other, and Landlord shall have
the right to pursue any one or all of such remedies or any
other remedy or relief which may be provided by law,
whether or not stated in this lease. No waiver by
Landlord of a breach of any of the terms, covenants or
conditions of this lease by Tenant shall be construed or
held to be a waiver of any succeeding or preceding breach
of the same or any other term, covenant or condition
herein contained. No waiver of any default of Tenant
hereunder shall be implied from any omission by Landlord
to take any action on account of such default if such
default persists or is repeated, and no express waiver
shall affect default other than as specified in said
waiver. The consent or approval by Landlord to or of any
act by Tenant requiring Landlord's consent or approval
shall not be deemed to waive or render unnecessary
Landlord's consent or approval to or of any subsequent
similar acts by Tenant.

In the event any action shall be instituted
between Landlord and Tenant in connection with this lease,
the party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

WPN:2004A                    10

BK 13824 PG 1284

18. **REPRESENTATIONS.** Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19. **HOLDING OVER.** This lease shall teminate and become null and void without further notice upon the expiration of said term. Any holding over shall not consitute a renewal hereof, but the tenancy shall thereafter be on a month-to-month basis and otherwise on the same terms and conditions as herein set forth.

20. **EMINENT DOMAIN.**

A. **Definition of Terms.** The term "total taking", as used in this Article, means the taking of the entire leased land under the power of eminent domain or the taking of so much of said land as to prevent or substantially impair the use thereof by Tenant for the uses and purposes hereinabove provided.

The term "partial taking" means the taking of a portion only of the leased land which does not constitute a total taking as defined above.

The term "taking" shall include a voluntary conveyance by Landlord to an agency, authority or public utility under threat of a taking under the power of eminent domain in lieu of formal proceedings.

The term "date of taking" shall be the date upon which title to the leased land or portion thereof passes to and vests in the condemnor.

The term "leased land" means the real property belonging to Landlord, together with any and all improvements placed thereon by Landlord or to which Landlord has gained title.

B. **Effect of Taking.** If, during the term hereof, there shall be a total taking or partial taking under the power of eminent domain, then the leasehold estate of Tenant in and to the leased land or the portion thereof taken shall cease and terminate as of the date of taking of the said land. If this lease is so terminated, in whole or in part, all rentals and other charges payable by Tenant to Landlord hereunder and attributable to the leased land or portion thereof taken shall be paid by Tenant up to the date of taking by the condemnor and the parties shall thereupon be released from all further liability in relation thereto.

C. **Allocation of Award – Total Taking.** All compensation and damages awarded for the total taking of

WPN:2004A                    11

BK 13824 PG 1285

the leased land allocated to Landlord under the terms of the Master Lease shall be allocated as follows:

    (a)  Tenant shall be entitled to an amount equal to the sum of the following:

        (i)  The fair market value of all of the improvements located on the leased land; and

        (ii)  The then fair market value of the Tenant's leasehold interest in the leased land.

    (b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

    D.  **Allocation of Award - Partial Taking.**  All compensation and damages awarded for the taking of a portion of the leased land allocated to Landlord under the terms of the Master Lease shall be allocated and divided as follows:

    (a)  Tenant shall be entitled to an amount equal to the sum of the following:

        (i)  The proportionate reduction of the fair market value of the improvements located on the leased land; and

        (ii)  The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

    (b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

    E.  **Reduction of Rent on Partial Taking.**  In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date of the expiration of the term of this lease, whichever date is sooner.  Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased land immediately thereafter.

    F.  **Determination of Fair Market Value.** Whenever fair market value must be determined for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by appraisers appointed pursuant to the Article in the Master Lease entitled "Condemnation" or if no such appraiser have been or are to be appointed, by agreement of Landlord and Tenant or, in the absence of such an agreement by appraisers appointed by Landlord and Tenant in the same manner as set forth in such Article.

WPN:2004A                    12

BK 13824PG 1286

21. RENTAL ADJUSTMENT.

A.    Effective January 1, 2000, January 1, 2020, and January 1, 2010, the annual rental payable hereunder shall be adjusted to a sum equal to ten percent (10%) of the unimproved fair market value of the leased land, or any portion then remaining subject to this Lease, as of such dates.  The said "unimproved fair market value" of the leased land shall be such value as determined by the Master Lessor and the Landlord in accordance with the terms and provisions of Article 21 of the Master Lease.  After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the annual rental, as so adjusted, be less than the annual rental in the immediately preceding period.

Pending the final determination of such adjusted rental, Tenant shall pay to Landlord the amount of rent previously payable under the Article of this lease entitled "Rental".  If such adjusted rental, as finally determined, shall exceed the amount of the previous rental, the excess amount accruing during the interim period shall be paid by Tenant to Landlord within thirty (30) days after the final determination of said adjusted rental.

B.    Effective January 1, 1990, January 1, 2010, January 1, 2030, and January 1, 2050, the annual rental shall be adjusted upwards as follows:  As promptly as practical after such dates, Landlord shall compute the increase, if any, in the cost of living during the period just ended, based upon the Consumers Price Index – Los Angeles/Long Beach/Anaheim Metropolitan Area (1967=100), "All items of goods and services purchased by urban wage and clerical worker families" (hereinafter called the "Index"), published by the Bureau of Labor Statistics of the United States Department of Labor.  The Index Number for the latest month prior to commencement of the term of this Lease, with respect to which such a Number is published, shall be the "Base Index Number" and the corresponding Index Number for the month which immediately preceeds the effective date of the adjustment shall be the "Current Index Number".

The annual rent shall be adjusted by multiplying the rental payable during the immediately preceding year of the term of this lease by a fraction, the numerator of which is the Current Index Number and the denominator of which is the Base Index Number; provided, however, that the annual rent shall never be reduced below the rental payable in the immediately preceding twelve-month period.

Tenant shall continue payment of rent installments in effect for the expiring rental period until notified by Landlord of the new rent.  Such notification shall include a memorandum showing the calculations used by Landlord in determining the new rent.  Immediately upon receipt of such notice, Tenant

WPN:2004A                    13

BK 13824 PG 1287

shall commence payment of the adjusted rent, and shall also pay to Landlord with respect to any period already expired within thirty (30) days after receipt of such notice, the excess of the new annual rent over the rent actually paid by Tenant.

If publication of the Index shall be discontinued, the most comparable Index when published by any branch or department of the United States Government shall be substituted, or if there is none, the parties shall agree on another source of information, and such adjustments in the method of computation shall be made as may be necessary to carry out the intent of this cost-of-living provision. Appropriate adjustments shall also be made in the event that the base period, or other aspects of the Index are changed. If the parties are unable to agree on a source of information, such source of information shall be determined by arbitration, pursuant to the provisions of the California Code of Civil Procedure.

Notwithstanding the foregoing, the annual rental shall not be adjusted pursuant to the above higher than a sum equal to one hundred seventy percent (170%) of the rent payable in the immediately preceding twelve-month period.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land .. to prevent any erosion thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so

WPN:2004A                    14

BK 13824 PG 1288

erected.  Such rights of use shall be as not to interfere
with the use and enjoyment of the lessees of adjoining
lots; and, in the event that any such party wall or fence
is damaged or injured from any cause other than the act or
negligence of one of the lessees, the same shall be
repaired or rebuilt at their joint expense.

24.  **COMPLIANCE WITH LAWS.**  Tenant covenants that
during the lease term, Tenant will comply, at no cost or
expense to Landlord, with all laws, ordinances, orders,
rules, regulations and requirements of all federal, state
and municipal governments and appropriate departments,
commissions, boards and officers thereof, which may be
applicable to the leased land or its Unit, buildings and
other improvements constructed thereon, or the use or
manner of use of the leased land or its Unit.  Tenant
accepts the leased land and its Unit in the actual
condition of the same as of the date of this lease.

25.  **ACCEPTANCE OF PERFORMANCE BY OTHERS.**
Landlord agrees to accept performance of any of the
covenants or agreements of Tenant contained herein from
(a) any group of ten or more tenants holding subleases of
individual interests in the leased land or (b) the
management body for the Project.

26.  **CONSTRUCTION AND EFFECT.**  Time is of the
essence of this lease.  The article headings herein are
used only for the purpose of convenience and shall not be
deemed to limit the subject to the articles hereof or to
be considered in the construction thereof.  Each and all
of the obligations, covenants, conditions and restrictions
of this lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant.  If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons.  In
this lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

27.  **NON-DISTURBANCE.**  No mortgage or deed of
trust placed on the leased land .  Landlord shall be
superior to the interest of Tenant herein unless the
mortgagee or beneficiary thereunder executes an agreement
in recordable form covenanting in a form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary this Lease
and the rights of Tenant hereunder shall not be disturbed
by reason of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect.

28.  **ESTOPPEL CERTIFICATES.**  Landlord and Tenant
shall at any time and from time to time, upon not less
than ten (10) days prior written request by the other

WPN:2004A            15

BK 13824 PG 1289

party or parties to this lease, execute, acknowledge and deliver to such party or parties a statement in writing certifying that this lease is unmodified and in full force and effect (or if there has been any modification thereof that the same is in full force and effect as modified and stating the modification or modifications) and that there are no defaults existing (or if there is any claimed default stating the nature and extent thereof); and stating the dates to which the rent and other charges have been paid in advance.  It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates of Tenant, or any prospective purchaser of the estate of Landlord, or any lender or prospective assignee of any lender on the security of the leased land or the fee estate or any part thereof, or upon the leasehold estate of Tenant or any part thereof, and any third person.

IN WITNESS WHEREOF, the parties hereto have executed this Sublease as of the day and year first above written.

By _____
Robert P. Warmington
"Landlord"

By _____
"Tenant"

By _____
"Tenant"

WPN:2004A                          16

BK 13824 PG 1290

STATE OF __CALIFORNIA__ )
                                          ) ss.
COUNTY OF __ORANGE__ )

On __August 1__ , 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared Robert P. Warmington, known to me to
be the person whose name is subscribed to the within
Instrument, and acknowledged to me that he executed the
same.

WITNESS my hand and official seal.

_____
Notary Public

[Seal]   OFFICIAL SEAL
        GAIL L. KING
        NOTARY PUBLIC - CALIFORNIA
        PRINCIPAL OFFICE IN
        ORANGE COUNTY
        My Commission Expires Nov 5 1982

[Attach acknowledgment form for Tenant]

STATE OF CALIFORNIA )
                                    ) ss.
COUNTY OF ___Orange___ )

On ___November 5, 1980___ , before me, the undersigned, a Notary Public in and for
said State, personally appeared ___John E. Turner and Virginia H. Turner___

_____

_____

known to me to be the person S whose name __are__
subscribed to the within instrument and acknowledged to me
that ___they___ executed the same

WITNESS my hand and official seal.

Signature _Bonnie Quenneville_

Bonnie Quenneville
_____
Name (Typed or Printed)



OFFICIAL SEAL
BONNIE QUENNEVILLE
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Jan. 13, 1984

(This area for official notarial seal)

WPN: 2004A                    17

RECORDED D

8695          Bk 13824 PG 1291

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California    92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1990

LEE A. BRANCH, County Recorder

Conveyance connected with leaseholder
interest not to exceed 99 years.

AP 178-011-01

### CONVEYANCE OF REMAINDER INTEREST

FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, THE ROBERT P. WARMINGTON CO., a California
corporation, hereby grants to ROBERT P. WARMINGTON, an
individual, the remainder interest in that portion of Lots 1
and 2 of Tract 10542 in the City of Huntington Beach, County
of Orange, State of California, as shown on a Map recorded in
Book 456, Pages 49 and 50 of Miscellaenous Maps, in the
Office of the County Recorder of Orange County, California,
described on Exhibit I attached hereto, after the term of
years expiring upon expiration or early termination of that
certain Condominium Sublease of even date herewith, made
by Robert P. Warmington, an individual, to _____

____John F. Turner and Virginia H. Turner, husband and wife, as Joint Tenants

_____

_____

_____,

a short form of which is being recorded concurrently herewith,
subject, however, to all matters whether or not of record.

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _____

By _____

BK 13824 PG 1292

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On ___August 1___, 1980, before me, the undersigned,
a Notary Public in and for said State, personally appeared
___OLIVER N. CRARY___, known to me to be the
___Vice President___, and ___WILLIAM J. PITTMAN___,
known to me to be the ___Secretary___ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.



Notary Public in and for
said County

[SEAL]

2



BK 13824 PG 1293

### EXHIBIT I

**Parcel 1**

Those portions of Unit 53, as shown and defined on a Condominium Plan ("the Condominium Plan"), recorded in Book 13358, Page 1193, et seq., consisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

**Parcel 3**

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

**Parcel 4**

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)  general and special taxes and assessments for the current fiscal year;

(b)  the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

(c)  all other covenants, conditions, restrictions, rights, reservation of rights of way and easements whether or not of record.

RECORDED

RECEIVED

RECEIVED
Headquarters
Subdivisions
JUL 16 1980
Department of Real Estate

JUL 1 1 1980

Dept. of Real Estate
Los Angeles Subdivisions

**DEPARTMENT OF REAL ESTATE**
**OF THE**
**STATE OF CALIFORNIA**

(213) 620-2700

CONDOMINIUMS

In the matter of the application of

ROBERT P. WARMINGTON COMPANY,
A California Corporation

for a Final Subdivision Public Report on

TRACT NUMBER 10542
THE GABLES-HUNTINGTON BEACH

ORANGE COUNTY, CALIFORNIA

**FINAL SUBDIVISION**
**PUBLIC REPORT**

FILE NO.       46,370 LA

ISSUED        JUNE 19, 1980

EXPIRES       JUNE 18, 1985

**This Report Is Not a Recommendation or Endorsement of the Subdivision
But Is Informative Only.**

---

**Buyer or Lessee Must Sign That He Has Received and Read This Report.**

---

This Report Expires on Date Shown Above. If There Has Been a Material Change in the Offering, an Amended Public Report Must Be Obtained and Used in Lieu of This Report.

Section 35700 of the California Health and Safety Code provides that the practice of discrimination because of race, color, religion, sex, marital status, national origin or ancestry in housing accommodations is against public policy.

Under Section 125.6 of the California Business and Professions Code, California real estate licensees are subject to disciplinary action by the Real Estate Commissioner if they make any discrimination, distinction or restriction in negotiating a sale or lease of real property because of the race, color, sex, religion, ancestry or national origin of the prospective buyer. If any prospective buyer or lessee believes that a licensee is guilty of such conduct, he or she should contact the Department of Real Estate.

Information Regarding Schools can be found on Page     8 and 9 of this report.

READ THE ENTIRE REPORT on the following pages before contracting to purchase a lot in this SUBDIVISION.

## SPECIAL NOTES

1. THE UNIFORM BUILDING CODE, CHAPTER 70, PROVIDES FOR LOCAL BUILD-ING OFFICIALS TO EXERCISE PREVENTIVE MEASURES DURING GRADING TO ELIMINATE OR MINIMIZE DAMAGE FROM GEOLOGIC HAZARDS SUCH AS LAND-SLIDES, FAULT MOVEMENTS, EARTHQUAKE SHAKING, RAPID EROSION OR SUBSIDENCE.  THIS SUBDIVISION IS LOCATED IN AN AREA WHERE SOME OF THESE HAZARDS MAY EXIST.  SOME CALIFORNIA COUNTIES AND CITIES HAVE ADOPTED ORDINANCES THAT MAY OR MAY NOT BE AS EFFECTIVE IN THE CONTROL OF GRADING AND SITE PREPARATION.

   PURCHASERS MAY DISCUSS WITH THE DEVELOPER, THE DEVELOPER'S ENGI-NEER, THE ENGINEERING GEOLOGIST AND THE LOCAL BUILDING OFFICIALS TO DETERMINE IF THE ABOVE-MENTIONED HAZARDS HAVE BEEN CONSIDERED AND IF THERE HAS BEEN ADEQUATE COMPLIANCE WITH CHAPTER 70 OR AN EQUIVALENT OR MORE STRINGENT GRADING ORDINANCE DURING THE CON-STRUCTION OF THIS SUBDIVISION.

2. NO ESCROWS FOR THE SALE OF UNITS WILL CLOSE UNTIL ALL SOILS AND FILL WORK HAS BEEN PERFORMED IN ACCORDANCE WITH THE RECOMMENDA-TIONS OF THE SOILS ENGINEER AND A NOTICE OF COMPLETION COVERING THE COMMON AREA IMPROVEMENTS HAS BEEN FILED OF RECORD.

3. THIS PROJECT IS A COMMON-INTEREST SUBDIVISION OF THE TYPE RE-FERRED TO AS A "CONDOMINIUM".  IT WILL BE OPERATED BY AN INCOR-PORATED OWNERS ASSOCIATION.

4. SINCE THE COMMON PROPERTY AND FACILITIES WILL BE MAINTAINED BY AN ASSOCIATION OF HOMEOWNERS, AND IT'S ESSENTIAL THAT THIS ASSO-CIATION BE FORMED EARLY AND PROPERLY, THE DEVELOPER MUST:

   a. COMPLETE ALL COMMON FACILITIES BY APPROXIMATELY JUNE, 1980. (SECTION 11018.5 OF THE BUSINESS AND PROFESSIONS CODE.); AND

   b. PAY ALL THE MONTHLY ASSESSMENTS WHICH HE OWES TO THE HOME-OWNERS ASSOCIATION FOR UNSOLD UNITS.  THE PAYMENTS MUST COM-MENCE ON THE FIRST DAY OF THE MONTH AFTER SUBDIVIDER CLOSES FIRST SALE.  (REGULATIONS 2792.9 AND 2792.16).

THE HOMEOWNER ASSOCIATION MUST:

   c. CAUSE THE FIRST ELECTION OF THE ASSOCIATION'S GOVERNING BODY TO BE HELD WITHIN 45 DAYS AFTER 51% SELL-OUT, OR IN ANY EVENT, NO LATER THAN SIX MONTHS AFTER CLOSING THE FIRST SALE.  (REGULATIONS 2792.17 AND 2792.19); AND

   d. PREPARE AND DISTRIBUTE TO ALL HOMEOWNERS A BALANCE SHEET AND INCOME STATEMENT.  (REGULATION 2792.22).

# COMMON INTEREST SUBDIVISION GENERAL INFORMATION

The project described in the attached Subdivision Public Report is known as a common-interest subdivision. Read the Public Report carefully for more information about the type of subdivision. The subdivision includes common areas and facilities which will be owned and/or operated by an owners' association. Purchase of a lot or unit automatically entitles and obligates you as a member of the association and, in most cases, includes a beneficial interest in the areas and facilities. Since membership in the association is mandatory, you should be aware of the following information before you purchase:

Your ownership in this development and your rights and remedies as a member of its association will be controlled by governing instruments which generally include a Declaration of Restrictions (also known as CC&R's), Articles of Incorporation (or association) and Bylaws. The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law. Study these documents carefully before entering into a contract to purchase a subdivision interest.

In order to provide funds for operation and maintenance of the common facilities, the association will levy assessments against your lot/unit. If you are delinquent in the payment of assessments, the association may enforce payment through court proceedings or your lot/unit may be liened and sold through the exercise of a power of sale. The anticipated income and expenses of the association, including the amount that you may expect to pay through assessments, are outlined in the proposed budget. Ask to see a copy of the budget if the subdivider has not already made it available for your examination.

A homeowner association provides a vehicle for the ownership and use of recreational and other common facilities which were designed to attract you to buy in this subdivision. The association also provides a means to accomplish architectural control and to provide a base for homeowner interaction on a variety of issues. The purchaser of an interest in a common-interest subdivision should contemplate active participation in the affairs of the association. He or she should be willing to serve on the board of directors or on committees created by the board. In short, "they" in a common-interest subdivision is "you". Unless you serve as a member of the governing board or on a committee appointed by the board, your control of the operation of the common areas and facilities is limited to your vote as a member of the association. There are actions that can be taken by the governing body without a vote of the members of the association which can have a significant impact upon the quality of life for association members.

Until there is a sufficient number of purchasers of lots or units in a common-interest subdivision to elect a majority of the governing body, it is likely that the subdivider will effectively control the affairs of the association. It is frequently necessary and equitable that the subdivider do so during the early stages of development. It is vitally important to the owners of individual subdivision interests that the transition from subdivider to resident-owner control be accomplished in an orderly manner and in a spirit of cooperation.

When contemplating the purchase of a dwelling in a common-interest subdivision, you should consider factors beyond the attractiveness of the dwelling units themselves. Study the governing instruments and give careful thought to whether you will be able to exist happily in an atmosphere of cooperative living where the interests of the group must be taken into account as well as the interests of the individual. Remember that managing a common-interest subdivision is very much like governing a small community . . . the management can serve you well, but you will have to work for its success.



SPECIAL NOTES   (Continued)

5. THE SUBDIVIDER HAS STATED THAT HE WILL PROVIDE YOU WITH A COPY
OF THE ARTICLES OF INCORPORATION, RESTRICTIONS AND BYLAWS, ONLY
BY POSTING THEM IN A PROMINENT LOCATION IN THE SALES OFFICE.
THESE DOCUMENTS CONTAIN NUMEROUS MATERIAL PROVISIONS THAT SUB-
STANTIALLY AFFECT AND CONTROL YOUR RIGHTS, PRIVILEGES, USE, OB-
LIGATIONS AND COSTS OF MAINTENANCE AND OPERATION.   YOU SHOULD
READ AND UNDERSTAND THESE DOCUMENTS BEFORE YOU OBLIGATE YOURSELF
TO PURCHASE A UNIT.

6. THE SUBDIVIDER STATED HE WILL NOT FURNISH THE CURRENT BOARD OF
OFFICERS OF THE HOMEOWNERS ASSOCIATION THE BUILDING PLANS TO IN-
CLUDE DIAGRAMS OF LOCATION OF MAJOR COMPONENTS, UTILITIES, AND
RELATED DATA.

THESE ITEMS WILL BE IMPORTANT TO THE BOARD OF OFFICERS OR THOSE
WHO WILL MANAGE OR REPAIR COMMON FACILITIES IN THIS SUBDIVISION.

7. SINCE THE SUBDIVIDER STATES HE WILL NOT FURNISH THE SAID PLANS
AND DIAGRAMS, THE BOARD OF OFFICERS OF THE HOMEOWNER ASSOCIATION
SHOULD TRY TO OBTAIN THEM FROM THE CONTRACTORS WHO WORKED ON THE
PROJECT OR FROM THE COUNTY/CITY BUILDING DEPARTMENT.

8. THE SUBDIVIDER HAS AN INTEREST IN THE ESCROW COMPANY WHICH IS TO
BE USED IN CONNECTION WITH THE SALE OR LEASE OF UNITS IN THIS
SUBDIVISION.   THE NATURE OF THE SUBDIVIDER'S INTEREST IS SET
FORTH IN THE ESCROW INSTRUCTIONS WHICH ARE TO BE USED.

9. IF YOU ACQUIRE TWO OR MORE UNITS YOU MAY BE REQUIRED TO OBTAIN
AN AMENDED PUBLIC REPORT BEFORE OFFERING TWO OR MORE OF THE
UNITS FOR SALE TO OTHERS.   IF YOU INTEND TO SELL TWO OR MORE
UNITS OR LEASE THEM FOR MORE THAN ONE YEAR, YOU ARE REQUIRED TO
OBTAIN AN AMENDED SUBDIVISION PUBLIC REPORT BEFORE YOU CAN OFFER
THE UNITS FOR SALE OR LEASE.

10. WARNING:  WHEN YOU SELL YOUR LEASEHOLD INTEREST IN A CONDOMINIUM
UNIT TO SOMEONE ELSE, YOU MUST GIVE THAT PERSON A COPY OF THE
DECLARATION OF RESTRICTIONS, THE ARTICLES OF INCORPORATION AND
OF THE BYLAWS.   IF YOU FORGET TO DO THIS, IT MAY COST YOU A PEN-
ALTY OF $500.00 -- PLUS ATTORNEY'S FEES PLUS DAMAGES.   (SEE
CIVIL CODE SECTION 1360.)

INTERESTS TO BE CONVEYED:   You will receive a lease to a specified
unit, together with an undivided fractional leasehold interest as a
tenant in common in the common area together with a membership in
"The Gables-Huntington Beach Homeowners Association" and rights to
use the common area.

LOCATION AND SIZE:    This subdivision is located at Edinger Avenue and Monterey Street within the city limits of Huntington Beach and is serviced by the usual city amenities.

This is a single phase project which consists of approximately 7.605 acres on which twenty buildings containing 80 units and 100 garage spaces, 100 driveway spaces, 59 on-street guest spaces and 53 off-street guest space will be constructed, together with common facilities consisting of a swimming pool, jacuzzi, cabana, volley ball court, landscaped areas and private drives which will be constructed

MANAGEMENT AND OPERATION:    The Gables-Huntington Beach Homeowners Association, which you must join, manages and operates the common areas in accordance with the Restrictions, Articles of Incorporation and the Bylaws.

MAINTENANCE AND OPERATIONAL EXPENSES:    The subdivider has submitted a budget for the maintenance and operation of the common areas and for long-term reserves.  This budget was reviewed by the Department of Real Estate.  You should obtain a copy of this budget from the subdivider.  Under this budget, the monthly assessment against each subdivision unit is $65.74 of which $13.84 is a monthly contribution to long-term reserves and is not to be used to pay for current operating expenses.

> IF THE BUDGET FURNISHED TO YOU BY THE DEVELOPER SHOWS A MONTHLY ASSESSMENT FIGURE WHICH VARIES 10% OF MORE FROM THE ASSESSMENT AMOUNT SHOWN IN THIS PUBLIC REPORT, YOU SHOULD CONTACT THE DEPARTMENT OF REAL ESTATE BEFORE ENTERING INTO AN AGREEMENT TO PURCHASE.

The association may increase or decrease assessments at any time in accordance with the procedure prescribed in the CC&R's or Bylaws. In considering the advisability of a decrease (or a smaller increase) in assessments, care should be taken not to eliminate amounts attributable to reserves for replacement or major maintenance.

> EXPENSES OF OPERATION ARE DIFFICULT TO PREDICT ACCURATELY AND EVEN IF ACCURATELY ESTIMATED INITIALLY, MOST EXPENSES INCREASE WITH THE AGE OF FACILITIES AND WITH INCREASES IN THE COST OF LIVING.

Monthly assessments will commence on all units during the month following the closing of the first sale of a unit. From that time, the subdivider is required to pay the association a monthly assessment for each unit which he owns, which has not been leased.

The remedies available to the association against owners who are delinquent in the payment of assessments are set forth in the CC&R's. These remedies are available against the subdivider as well as against other owners.

<u>MAINTENANCE AND OPERATIONAL EXPENSES</u>:  (Continued)

The subdivider has posted a bond as partial security for his obligation to pay these assessments.  The governing body of the association should assure itself that the subdivider has satisfied his obligations to the association with respect to the payment of assessments before agreeing to a release or exoneration of the security.

<u>EASEMENTS</u>:  Easements for utilities and other purposes are shown on the Title Report and Subdivision Map recorded in the Office of the Orange County Recorder, Book 456 of Miscellaneous Maps, Pages 48 thru 49 and Condominium Plan recorded in Book 13358, Page 1193.

<u>TITLE</u>:  Title is vested in Houser Bros. Co., a limited partnership, subject to:

A Ground Lease dated October 19, 1979, executed by Houser Bros. Co., a limited partnership, as Lessor, and Robert P. Warmington, a married man, as Lessee, a memorandum of which was recorded October 22, 1979 in Book 13362, Page 320 of Official Records and re-recorded December 6, 1979 in Book 13424, Page 499 of Official Records. Robert P. Warmington in turn has sublet the Ground Lease to Robert P. Warmington Co., a California corporation, the applicant.

<u>RESTRICTIONS</u>:  This subdivision is subject to Restrictions recorded in the Office of the Orange County Recorder, Book 13618, Page 982.

> FOR INFORMATION AS TO YOUR OBLIGATIONS AND RIGHTS,
> YOU SHOULD READ THE RESTRICTIONS.  THE SUBDIVIDER
> SHOULD MAKE THEM AVAILABLE TO YOU.

<u>WATER RIGHTS</u>:  You will not own the water rights under your land below a depth of 500 feet.  These have been dedicated to the City of Huntington Beach.  The right to surface entry has been waived.

<u>USES AND ZONING</u>:  Property to the south is zoned MH (Mobilehome).

<u>TAXES</u>:  The maximum amount of any tax on real property that can be collected annually by counties is 1% of the full cash value of the property.  With the addition of interest and redemption charges on any indebtedness, approved by voters prior to July 1, 1978, the total property tax rate in most counties is approximately 1.25% of the full cash value.

For the purchaser of a lot or unit in this subdivision, the "full cash value" of the lot or unit will be the valuation, as reflected on the tax roll, determined by the county assessor as of the date of purchase of the lot or unit or as of the date of completion of an improvement on the lot if that occurs after the date of purchase.

CONDITIONS OF SALE:  If your purchase involves financing, a form of deed of trust and note will be used.  These documents may contain the following provisions:

An Acceleration Clause.  This means that if you sell the property or default in your payment, the lender may declare the entire unpaid loan balance immediately due and payable.

A Late Charge.  This means that if you are late in making your monthly payment you may have to pay an additional amount as a penalty.

A Prepayment Penalty.  This means that if you wish to pay off your loan in whole or in part before it is due, you may be required to pay an additional amount as a penalty in accordance with the terms of the loan.

Transfer of the interest to the purchaser may be by a lease.  Your rights and responsibilities are governed by the specific terms of such lease.  You should read the entire lease.

The lease includes the following provision:

If you do not pay your installment on time, you may lose your property and all money you have paid in.

> BEFORE SIGNING, YOU SHOULD READ AND THOROUGHLY UNDERSTAND ALL LOAN DOCUMENTS.

PURCHASE MONEY HANDLING:  The subdivider must impound all funds received from you in an escrow depository until legal title is delivered to you.  (Refer to Sections 11013 and 11013.2(a) of the Business and Professions Code.)

If the escrow has not closed on your unit within one (1) year of the date of your deposit receipt, you may request return of your deposit.

FILLED GROUND:  The common area contains filled ground varying to a maximum depth of 3.6 feet.  These soils are to be properly compacted for the intended use under the supervision of a State licensed engineer.

FLOOD AND DRAINAGE:  Orange County advises as follows:

The land lies within the historic floodplain of the Santa Ana River where the risk of floodng has been substantially reduced since the completion of Prado Dam and Reservoir by the U. S. Corps of Engineers in 1941.  The largest flood-producing storm since completion of the dam occurred in 1969, an event which to the best information now available can be expected to recur on an average of 25 to 30 years over a long period of time.  Peak discharges in 1969 seriously damaged the Santa Ana River levees within Orange County, but no outbreak occurred and the levees have now been repaired.

FLOOD AND DRAINAGE:   (Continued)

In a report entitled "Flood Insurance Study Huntington Beach, California" prepared by the U. S. Army Corps of Engineers for the Federal Insurance Administration, the Corps of Engineers indicates that the occurrence of a storm with a recurrence interval approximating 50 years or greater will generate flows exceeding the present capacity of the Santa Ana River Channel.   Such flows will cause breaching of the river levee at indeterminable locations followed by widespread flooding of the Talbert Valley.   It is believed impossible to predict in advance where such break-out might occur or what particular area would subsequently be inundated.

The Corps of Engineers recently completed a study proposing modification to the Santa Ana River in the County of Orange, to Prado Dam, and the construction of an additional dam in the Mentone area of San Bernardino County.   However, it is impossible to predict when project authorization will be made by Congress, the appropriation approved, and the actual construction accomplished.

It is the opinion of this office that upon completion of the construction in accordance with the proposed grading, storm drain and street plans, the improvements on the building pads will be protected from flooding from storms occurring on an average of once every 50 years or less.

PUBLIC TRANSPORTATION:   Bus service is available adjacent to the site on Edinger Avenue.

SCHOOLS:   The Ocean View School District provides the following information:

| School | Distance |
|---|---|
| Haven View School<br>16081 Waikiki Lane<br>Huntington Beach, California | 1/4 mile |

The projected enrollment from the proposed tract is twenty K-8 grade students.   The capacity of Haven View School is 510 and enrollment is 447.

The District shall provide free transportation to and from school for pupils who live beyond the minimum distances, as measured by the shortest route.   Where hazardous conditions exist, transportation may be provided for students who live less than the minimum distances.   Handicapped children will be provided transportation as needed.

The Huntington Beach Union High School District provides the following information:

| School | Distance |
|---|---|
| Marina High School<br>15871 Springdale | 1.7 miles |

<u>SCHOOLS</u>:    (Continued)

Transportation is furnished at District expense to students living a distance fo more than three miles from their schools.

Huntington Beach Union High School District has six comprehensive high schools with a total capacity of 16,367 and a current enrollment of 21,346. This student overload is being accommodated by temporary structures and extended day schedule. The impact of continued enrollment growth will accelerate the extension of the school day and the continued implementation of other housing alternatives until a new high school is constructed. Any new housing must be considered carefully based on the availability of schools in Huntington Beach Union High School District.

> <u>NOTE</u>:    This school information was correct as of the date of this report. Purchasers may contact the local school district for current information on school assignments, facilities and bus service.

For further information in regard to this subdivision, you may call (213) 620-2700 or examine the documents at the Department of Real Estate, 107 South Broadway, Suite 7001, Los Angeles, CA 90012.



BK 13618PG 982

28926

WHEN RECORDED RETURN TO:
Meserve, Mumper & Hughes
4440 Von Karman Avenue, Suite 330
Newport Beach, California 92660

Attn:  Frank D. Stiefel, Esq.

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

$54.60
C7

4:00 P.M.  NOV 25 '80

LEE A. BRANCH, County Recorder

DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

LOTS 1 AND 2 OF TRACT NO. 10542
CITY OF HUNTINGTON BEACH
ORANGE COUNTY, CALIFORNIA

BK 13618PG 983

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 2 |
| Section 1.1 | Association | 2 |
| Section 1.2 | Board of Directors/Board | 2 |
| Section 1.3 | Common Area | 3 |
| Section 1.4 | Condominium | 3 |
| Section 1.5 | Condominium Plan | 3 |
| Section 1.6 | County | 3 |
| Section 1.7 | Declarant | 3 |
| Section 1.8 | Lessee | 3 |
| Section 1.9 | Lessor | 3 |
| Section 1.10 | Member | 3 |
| Section 1.11 | Mortgage | 3 |
| Section 1.12 | Mortgagee | 3 |
| Section 1.13 | Owner/Ownership | 3 |
| Section 1.14 | Project | 4 |
| Section 1.15 | Property | 4 |
| Section 1.16 | Unit | 4 |
| ARTICLE II | CREATION OF CONDOMINIUMS | 4 |
| Section 2.1 | Creation | 4 |
| Section 2.2 | Elements of Condominium | 4 |
| Section 2.3 | Boundaries of Units | 5 |
| Section 2.4 | Non-Severability | 5 |
| ARTICLE III | MEMBERSHIP IN ASSOCIATION | 5 |
| Section 3.1 | Membership | 5 |
| Section 3.2 | Transfer | 5 |
| Section 3.3 | Voting Rights | 6 |
| ARTICLE IV | PROPERTY RIGHTS IN THE COMMON AREAS | 7 |
| Section 4.1 | Members' Easements of Enjoyment | 7 |
| Section 4.2 | Delegation of Use | 7 |
| Section 4.3 | Waiver of Use | 7 |
| Section 4.4 | Common Area Improvements | 7 |
| ARTICLE V | COVENANT FOR ASSESSMENTS | 8 |
| Section 5.1 | Creation of the Lien and Personal Obligation of Assessments | 8 |
| Section 5.2 | General Purpose of Assessments | 9 |
| Section 5.3 | Regular Assessments | 9 |

BK 13618PG 984

(a)  Purposes........................ 9
(b)  Amount and Type of Payment........ 10
(c)  Date of Commencement.............. 10

Section 5.4    Special Assessments................. 11
Section 5.5    Delinquency........................ 11

(a)  Right of Association.............. 11
(b)  Notice of Lien................... 12
(c)  Foreclosure Sale................. 12
(d)  Curing of Default................ 12
(e)  Cumulative Remedies.............. 12
(f)  Subordination.................... 13
(g)  Expiration of Lien............... 13

Section 5.6    Exempt Property.................... 13
Section 5.7    Uniform Rate of Assessment......... 13
Section 5.8    No Offsets......................... 13

ARTICLE VI     ARCHITECTURAL CONTROL

Section 6.1    Architectural Approval............. 14
Section 6.2    Requirements for Approval.......... 14
Section 6.3    Term and Composition of Architectural
               Committee......................... 14
Section 6.4    Failure to Approve or Disapprove the Plans... 15
Section 6.5    No Liability...................... 15
Section 6.6    Notice of Noncompliance or Noncompletion... 15
Section 6.7    Rules and Regulations............. 16
Section 6.8    Variances......................... 16
Section 6.9    Appointment and Designation....... 16
Section 6.10   Review Fee and Address............ 16
Section 6.11   Inspection........................ 16

ARTICLE VII    EASEMENTS

Section 7.1    Rights of Association............. 17
Section 7.2    Rights of Declarant.............. 17
Section 7.3    Rights of Owners................. 18
Section 7.4    Encroachments on Common Area..... 18
Section 7.5    Restricted Common Areas.......... 19
Section 7.6    Other Encroachments.............. 19

ARTICLE VIII   MANAGEMENT

Section 8.1    Powers of the Association......... 19
Section 8.2    Purposes of the Association....... 19
Section 8.3    Contracting Authority............ 20
Section 8.4    Duties........................... 20
Section 8.5    Right of Entry................... 24

BK 13618 PG 985

Section 8.6    Duties of Owners................... 24
Section 8.7    Association to Defend Certain Actions.......... 25

ARTICLE IX    GENERAL RESTRICTIONS

Section 9.1    Partition........................... 26
Section 9.2    Interior of Unit.................... 26
Section 9.3    Nuisance........................... 26
Section 9.4    Use of Common Area................. 26
Section 9.5    Projections........................ 26
Section 9.6    Recreational Vehicles.............. 26
Section 9.7    Lavatory Facilities................ 26
Section 9.8    Signs.............................. 27
Section 9.9    Animals............................ 27
Section 9.10   Offensive Activities............... 27
Section 9.11   Right of Inspection................ 27
Section 9.12   Leases............................. 27
Section 9.13   Misconduct......................... 28
Section 9.14   Structural Changes................. 28
Section 9.15   Utilities.......................... 28
Section 9.16   Receptacles........................ 28
Section 9.17   Television; Radio.................. 28

ARTICLE X    MORTGAGE PROTECTION

Section 10.1   Seventy-Five Percent Vote of Mortgagees....... 28
Section 10.2   Other Rights of First Mortgagees........... 29
Section 10.3   Mortgagees Furnishing Information.......... 30
Section 10.4   Notice to First Mortgagees of Owner Default... 30
Section 10.5   Right of First Refusal................ 30
Section 10.6   Conflicts.......................... 30
Section 10.7   Notice of Destruction or Taking............. 30
Section 10.8   Breach of Declaration................. 31

ARTICLE XI    DESTRUCTION OF IMPROVEMENTS

Section 11.1   Destruction; Proceeds Exceed 85% of
               Reconstruction Costs.................. 31
Section 11.2   Destruction; Proceeds Less Than 85% of
               Reconstruction Costs.................. 31
Section 11.3   Rebuilding Procedures................ 31
Section 11.4   Rebuilding Contract................. 32
Section 11.5   Rebuilding Not Authorized.......... 32
Section 11.6   Minor Repair and Reconstruction............ 33

ARTICLE XII    CONDEMNATION

Section 12.1   Sale by Unanimous Consent............. 33



BK 13618PG 986

Section 12.2  Distribution of Proceeds of Sale............ 33
Section 12.3  Distribution of Condemnation Award.......... 33
Section 12.4  Revival of Right to Partition.............. 33

ARTICLE XIII  PARTITION

Section 13.1  Suspension................................. 34
Section 13.2  Proceeds................................... 34
Section 13.3  Power of Attorney.......................... 34

ARTICLE XIV  GENERAL PROVISIONS

Section 14.1  Term....................................... 34
Section 14.2  Notices.................................... 34
Section 14.3  Enforcement................................ 35
Section 14.4  Severability............................... 35
Section 14.5  Construction............................... 35
Section 14.6  Singular Includes Plural................... 35
Section 14.7  Attorneys' Fees............................ 35
Section 14.8  Nuisance................................... 35
Section 14.9  Amendments................................. 36
Section 14.10 Annexation................................. 37



BK 13618 PG 987

## DECLARATION OF
## COVENANTS, CONDITIONS AND RESTRICTIONS
## FOR THE HUNTINGTON BEACH GABLES

LOTS 1 AND 2 OF TRACT NO. 10542
CITY OF HUNTINGTON BEACH
ORANGE COUNTY, CALIFORNIA

THIS DECLARATION, made this 21st day of May 1980, by THE ROBERT P. WARMINGTON CO., a California corporation, (hereinafter referred to as "Declarant").

### WITNESSETH:

WHEREAS, Declarant is the owner of a subleasehold interest in certain real property in the City of Huntington Beach, County of Orange, State of California, described as:

Lots 1 and 2 of Tract 10542 as per map recorded in Book 456, Pages 49 and 50, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California.

WHEREAS, said real property is owned in fee by HOUSER BROS. CO., a California limited partnership, in which Clifford C. Houser and Vernon F. Houser are general partners, (hereinafter referred to as "Lessor"); and

WHEREAS, said real property has been leased by Lessor to Robert P. Warmington, an individual, (hereinafter referred to as "Lessee") pursuant to a Ground Lease dated October 19, 1979, and as evidenced by a Short Form Memorandum recorded on December 6, 1979, in Book 13424, pages 499, et seq., of the Official Records of Orange County, California; and

WHEREAS, Lessee has subleased the Property to Declarant, who now desires to divide its interest in the property and improvements thereon into a condominium project as defined in Sections 783 and 1350 of the California Civil Code in accordance with a recorded condominium plan for the project, as hereinafter defined; and

WHEREAS, Declarant has therefore deemed it desirable to impose a general plan for the improvement and development of said tract and all of the property described herein and the adoption and establishment of covenants, conditions and restrictions upon said real property and each and every lot and portion thereof and upon the use, occupancy and enjoyment thereof, all for the

BK 13618PG 988

purpose of enhancing and protecting the value, desirability and attractiveness of said tract; and

WHEREAS, Declarant has deemed it desirable for the efficient preservation of the value, desirability and attractiveness of said tract to create a corporation to which should be delegated and assigned the powers of administering and enforcing these covenants, conditions and restrictions, and collecting and disbursing funds pursuant to the assessment and charges hereinafter created and referred to; and

WHEREAS, THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a nonprofit corporation, has been incorporated under the laws of the State of California for the purpose of exercising the powers and functions aforesaid; and

WHEREAS, Lessor and Lessee have agreed to the restrictions to be imposed hereby and authorize the recordation of this Declaration, and evidence this agreement and authorization by executing this Declaration below; and

NOW THEREFORE, Declarant hereby covenants, agrees and declares that all of said units and property described above shall be held, sold, assigned, leased, encumbered, hypothecated, used, improved, and conveyed subject to the following covenants, conditions and restrictions and easements which are hereby declared to be for the benefit of the whole tract and all of the property described herein and the owners thereof, their successors and assigns. These covenants, conditions and restrictions and easements shall run with the said real property and shall be binding on all parties having or acquiring any right, title or interest in the described real property or any part thereof and are imposed upon said real property and every part thereof as a servitude in favor of each and every parcel thereof as the dominant tenement or tenements.

ARTICLE I
DEFINITIONS

The following terms used in these covenants, conditions and restrictions shall be applicable to this Declaration and are defined as follows:

Section 1.1. Association: "Association" shall mean and refer to THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a nonprofit corporation, incorporated under the laws of the State of California, its successors and assigns.

Section 1.2. Board of Directors/Board: "Board of Directors" or "Board" shall mean and refer to the duly elected Board of Directors of the Association.

2.

BK 13618PG 989

**Section 1.3.** **Common Area:** "Common Area" means and refers to the entire Project, except the Units.

**Section 1.4.** **Condominium:** "Condominium" means a condominium as defined in Section 783 of the California Civil Code and as used herein means a Unit, together with (a) an undivided 1/80 interest as tenant in common in the Common Area, (b) certain exclusive or nonexclusive easements granted herein to an Owner, and (c) a Membership in the Association.

**Section 1.5.** **Condominium Plan:** "Condominium Plan" shall mean and refer to that certain Condominium Plan recorded or to be recorded by Declarant on the Project in the office of the County Recorder wherein the Property is located.

**Section 1.6.** **County:** "County" shall mean and refer to the County of Orange, State of California.

**Section 1.7.** **Declarant:** "Declarant" shall mean and refer to THE ROBERT P. WARMINGTON CO., a California corporation, its successors and assigns.

**Section 1.8.** **Lessee:** "Lessee" shall mean and refer to Robert P. Warmington, a married man, his heirs, successors, and assigns.

**Section 1.9.** **Lessor:** "Lessor" shall mean and refer to HOUSER BROS. CO., a California limited partnership, its successors and assigns.

**Section 1.10.** **Member:** "Member" shall mean and refer to every person or entity who holds Membership in the Association.

**Section 1.11.** **Mortgage:** "Mortgage" shall mean and refer to any mortgage, deed of trust, assignment of leasehold or subleasehold interest or other conveyance of a Unit, or any interest therein, including, but not limited to, the improvements developed thereon to secure the performance of an obligation, which obligation will be reconveyed upon completion of such performance.

**Section 1.12.** **Mortgagee:** "Mortgagee" shall mean and refer to mortgagees, trustees, beneficiaries and holders of deeds of trust, assignees of any leasehold or subleasehold interests, and the holders of any indebtedness secured by Mortgages.

**Section 1.13.** **Owner/Ownership:** "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or Lessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation. Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means. All references

3.

BK 13618PG 990

herein to "ownership" shall mean and refer to the ownership of a
leasehold or subleasehold interest.

Section 1.14. Project: "Project" shall mean and refer
to the Property and all structures and other improvements
thereon.

Section 1.15. Property: "Property" or "Properties"
shall mean and refer to the leasehold interest in all of the real
property hereinbefore described.

Section 1.16. Unit: "Unit" or "Units" shall mean and
refer to the residential air space Units and related areas as
shown on the recorded Condominium Plan, and means the elements of
the Project which are not owned in common by the Owners of the
Condominiums in the Project.

ARTICLE II
CREATION OF CONDOMINIUMS

Section 2.1. Creation: Declarant, in order to establish
a plan of condominium ownership for the Project, hereby covenants
and agrees that it hereby divides the Project as follows:

(a) Into eighty (80) separately designated and
legally described Units which are comprised of certain
parcels of air space which are shown and more
particularly described on the Condominium Plan; and

(b) The remainder of the Project which shall be
deemed the Common Area and shall be subject to certain
easements and restrictions as set forth in this
Declaration and the Condominium Plan.

Section 2.2. Elements of Condominium: Each Condominium
shall be comprised of the following elements:

(a) A Unit;

(b) An undivided 1/80 leasehold interest as tenant
in common in the Common Area;

(c) Non-exclusive easement rights as described in
this Declaration;

(d) Certain exclusive easement rights over the
Common Area, defined hereinafter as Restricted Common
Areas; and

(e) A membership in the Association.

4.



BK 13618PG 991

**Section 2.3. Non-Severability:** Declarant, its successors, assigns, sublessees, and grantees, covenant and agree that the various elements of the Condominium Plan conveyed herewith shall not be separated or separately conveyed, and each such element shall be deemed to be conveyed or encumbered with its respective Unit even though the description in the instrument or conveyance or encumbrance may refer only to title to the Unit.

**Section 2.4. Boundaries of Units:** That portion of the Unit designed for use as a residence shall be bounded by and contained within the interior, undecorated surfaces of the perimeter walls, floors, ceilings, windows, fireplace boxes and doors. The Units do not, however, contain bearing walls, columns, vertical supports, floors, roofs, foundation, railings, fences, gates, garage doors, central heating; central refrigeration and central air-conditioning equipment, reservoir tanks, pumps and other central services, pipes, ducts, flues, conduits, wires and other utility installations, wherever located except the outlets thereof when located within the Unit.

In interpreting assignments, leases, subleases, deeds, declarations, and plans, the existing physical boundaries of the Unit or of a Unit reconstructed in substantial accordance with the original plans thereof shall be conclusively presumed to be its boundaries rather than the metes and bounds (or other description) expressed in the deed, assignment, lease, sublease, plan or declaration, regardless of minor lateral movement of the building and regardless of minor variance between boundaries shown on the Condominium Plan or in the assignment, lease, sublease or deed, and Declaration and those of the building.

## ARTICLE III
## MEMBERSHIP IN ASSOCIATION

**Section 3.1. Membership:** Every Owner of a Unit which is subject to assessment shall be a Member of the Association, and ownership of such Unit shall be the sole qualification for such Membership. The terms and provisions set forth in this Declaration, which are binding upon all Owners of all Units and all Members in the Association, are not exclusive, as the Member shall, in addition, be subject to the terms and provisions of the Articles of Incorporation and the Bylaws of the Association. Membership shall be appurtenant to and may not be separated from ownership of any Unit which is subject to assessment.

**Section 3.2. Transfer:** The Membership held by any Owner of a Unit shall not be transferred, pledged or alienated in any way, except upon the sale, assignment or encumbrance of such Unit and then only to the Purchaser or Mortgage holder of such Unit. Any attempt to make a prohibited transfer is void, and will not be reflected upon the books and records of the Association. In the event the Owner of any Unit should fail or refuse to transfer

5.



BK 13618PG 992

the Membership registered in his name to the assignee of such Unit, the Association shall have the right to record the transfer upon the books of the Association.

Section 3.3.  Voting Rights:  The Association shall have two (2) classes of voting Membership.

Class A:  Class A Members shall be all those Owners with the exception of the Declarant and shall be entitled to one vote for each Unit owned.  When more than one person holds an interest in any Unit, all such persons shall be Members.  The vote for such Unit shall be exercised as they determine, but in no event shall more than one vote be cast with respect to any Unit.

Class B:  The Class B Member shall be the Declarant. The Class B Member shall be entitled to three votes for each Unit in which it holds the interest required for Membership by Section 1 of this Article; provided that the Class B Membership shall cease and become converted to Class A Membership on the happening of any of the following events, whichever occurs earlier:

(a)  When the total votes outstanding in the Class A Membership equals the total votes outstanding in the Class B Membership;

(b)  The second anniversary of the Final Subdivision Public Report for this development.

All voting rights shall be subject to the restrictions and limitations provided herein and in the Articles and Bylaws of the Association.  Furthermore, notwithstanding any provisions herein excluding the vote of the Declarant, any provision herein calling for membership approval of action to be taken by the Association, except provisions with respect to the action referred to in Section 4.4, below to enforce the obligations of the Declarant, shall expressly require the vote or written assent of a prescribed percentage of each class of membership during the time that there are two outstanding classes of membership, as set forth above.  Furthermore any such provision calling for the vote or written assent of each class of membership for the initiation of action by or in the name of the Association, any requirement other than in Sections 4.4, and 14.9, below, and Section 10.1 of the Bylaws, that the vote of the Declarant shall be excluded in any such determination shall be applicable only if there has been a conversion of Class B to Class A shares and only for so long as the Declarant holds or directly controls twenty-five percent (25%) or more of the voting power of the Association.

6.



BK 13618PG 993

## ARTICLE IV
### PROPERTY RIGHTS IN THE COMMON AREA

**Section 4.1. Members' Easements of Enjoyment:** Declarant hereby grants to the Owner of each Unit a non-exclusive easement for access over the Common Area. Every Member shall have a right and easement of ingress and egress and of enjoyment in and to the Common Area which shall be appurtenant to and shall pass with the title to every Unit, subject to the following provisions:

(a)  The right of the Association to limit the number of guests of Members.

(b)  The right of the Association to establish uniform rules and regulations pertaining to the use of the Common Area and the recreational facilities thereof.

(c)  The right of the Association, in accordance with its Articles and Bylaws, to borrow money for the purpose of improving the Common Area and facilities and in aid thereof, to mortgage said property, provided that the rights of such mortgages shall be subordinate to the rights of the Members, and provided further that any such mortgage shall have the prior approval of at least seventy-five percent (75%) of all first Mortgagees, as set forth below.

(d)  The right of the Association to suspend the right to use of the recreational facilities by an Owner but only in accordance with the notice and hearing requirements set forth in the Bylaws.

(e)  Those easement rights set forth in Article VII, below.

**Section 4.2.  Delegation of Use:**  Any Member may delegate, in accordance with the Bylaws, his right of enjoyment to the Common Area and facilities to the Members of his family, his tenants or contract purchasers who reside in his Unit.

**Section 4.3.  Waiver of Use:**  No Member may exempt himself from personal liability for assessments duly levied by the Association, nor release the Unit owned by him from the liens and charges hereof, by waiver of the use and enjoyment of the Common Area and the facilities thereon or by abandonment of his Unit.

**Section 4.4.  Common Area Improvements:**  If Common Area improvements which are to be erected upon the Common Area by Declarant have not been completed prior to the issuance of the Subdivision Public Report and the Association is the obligee under a bond or other arrangement (hereafter "Bond") to secure performance of the commitment of Declarant to complete the

7.



BK 13618 PG 994

improvements, the Board of Directors of the Association shall consider and vote on the question of action by the Association to enforce the obligations under the Bond with respect to any improvement for which a Notice of Completion has not been filed within sixty (60) days after the completion date specified for that improvement in the Planned Construction Statement appended to the Bond. If the Association has given an extension in writing for the completion of any Common Area improvement, the Board of Directors of the Association shall consider and vote on the question of action by the Association to enforce the obligations under the Bond if a Notice of Completion has not been filed within thirty (30) days after the expiration of the extension. If the Board of Directors of the Association determines that it will not initiate action to enforce the obligations under the Bond or fails to consider and vote on the question within the applicable time period set forth above, then, upon receipt of a petition signed by not less than ten percent (10%) of the total voting power of the Association, the Board of Directors of the Association shall hold a special meeting of Members not less than fifteen (15) days nor more than thirty (30) days after receipt of the petition for the purpose of voting to override the decision of the Board of Directors not to initiate action to enforce the obligations under the Bond or to consider and vote on the question if the Board of Directors has not acted. At this special meeting, a vote of a majority of the voting power of the Members, excluding Declarant, shall determine all matters presented regarding the enforcement of obligations under the Bond. Such vote to take action to enforce the obligations under the Bond shall be the decision of the Association and the Board of Directors shall thereafter implement this decision by initiating and pursuing appropriate action in the name of the Association.

ARTICLE V
COVENANT FOR ASSESSMENTS

Section 5.1. Creation of the Lien and Personal Obligation of Assessments: The Declarant, for each Unit owned by it within the Property, hereby covenants and agrees to pay, and each Owner of any Unit by acceptance of a lease therefor, whether or not it shall be so expressed in such lease, is deemed to covenant and agree to pay to the Association certain assessments as described below, such assessments to be fixed, established and collected as hereinafter provided. Such assessments together with such interest thereon and costs of collection thereof, as hereinafter provided, shall be a charge on the Unit and that portion of the leasehold estate appurtenant to said Unit and shall be a continuing lien upon said Unit and said leasehold estate against which each such assessment is made. Each such assessment, together with such interest, costs and reasonable attorneys' fees, shall also be the personal obligation of the person who was the Owner of such Unit at the time when the

8.



BK 13618PG 995

assessment fell due. The personal obligation shall not pass to
his successors in title until expressly assumed by them.

Section 5.2. General Purpose of Assessments: The
assessments levied by the Association shall be used exclusively
for the purpose of promoting the recreation, health, safety, and
welfare of the Members of the Association, and, in particular,
for the improvement and maintenance of the properties, services
and facilities devoted to this purpose, or to the payment to or
reimbursement of other affected parties or governmental entities
for the improvement and maintenance thereof, and related to the
use and enjoyment of the Common Area and those Association
responsibilities set forth herein.

Section 5.3. Regular Assessments: Regular Assessments
shall be levied and collected by the Association in accordance
with the following:

(a) Purposes: To cover the following expenses:

(1) Maintenance, management, operation, repair
and replacement of the Common Area and all other
areas on the Property which are maintained by the
Association;

(2) Costs relating to the maintaining of a
security guard gate adjoining the Property as
determined from time to time by the Association and
the owner of said adjoining property;

(3) Unpaid assessments;

(4) Cost of management and administration of
the Association, including, but not limited to,
compensation paid by the Association to managers,
accountants, attorneys and employees;

(5) The costs of utilities, trash pick up and
disposal (if such services are provided) and other
services benefiting the Owners and their Units to
the extent such services are paid for by the
Association;

(6) The costs of fire, casualty, liability,
workmen's compensation and other insurance covering
the Common Area;

(7) The costs of any other insurance obtained
by the Association;

(8) Reasonable reserves as deemed appropriate
by the Board;

9.



BK 13618PG 996

(9)  The costs of bonding any members of the Board, any professional management agent, or any other person handling the funds of the Association;

(10)  Taxes paid by the Association.

(11)  Amounts paid by the Association for discharge of any lien or encumbrance levied against the Common Area or portions thereof;

(12)  Costs incurred by any committees established by the Board;

(13)  The costs of any other item or items designated by, or in accordance with other expenses, incurred by the Association for any reason whatsoever in connection with the Common Area, this Declaration, the Articles or the By-laws or in furtherance of the purposes of the Association or in the discharge of any obligations imposed on the Association by this Declaration;

(14)  Lease payments, if any, required to be made on the Common Areas; and.

(15)  Association's proportionate share of the costs incurred for maintenance of Monterey Lane and the guard gates maintained thereon, if any, pursuant to that certain Agreement attached hereto as Exhibit "A".

(b)  Amount and Type of Payment:  Until the expiration of one (1) year immediately following the conveyance of the first Unit to an Owner, the maximum regular assessment shall be as set forth in the Final Subdivision Report for the Property.  From and after said year, the maximum regular assessment may be increased each year by the Board of Directors, but not more than twenty percent (20%) above the maximum regular assessment for the previous year.  The maximum regular assessment may be increased above twenty percent (20%) only by the vote or written assent of a majority of the voting power of the Members excluding Declarant.

(c)  Date of Commencement:  The regular assessments provided for herein shall commence as to all Units on the first day of the month following the closing of escrow on the sale of the first Unit to an Owner.  The first regular assessment shall be adjusted according to the number of months remaining in the calendar year.  The Board of Directors shall fix the amount of the regular assessment against each Unit at least thirty (30) days in advance of each regular assessment period.  Written

10.



BK 13618PG 997

notice of the regular assessment shall be sent to every Owner subject thereto. The due dates shall be established by the Board of Directors. The Association shall, upon demand, and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Unit have been paid. A properly executed certificate of the Association as to the status of assessments on a Unit is binding upon the Association as of the date of its issuance.

Section 5.4. Special Assessments: In addition to the regular assessments authorized above, the Association may levy in any assessment year, a special assessment applicable to that year only, for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Common Area, including fixtures and personal property related thereto, provided that any such assessment which in the aggregate exceed five percent (5%) of the budgeted gross expenses of the Association for that year shall require the vote or written assent of a majority of the voting power of the Members, excluding Declarant. In addition, special assessments may be levied against and collected from a particular owner and his Unit to reimburse the Association for certain costs or expenses that have been incurred by the Association or Declarant with respect to bringing the Owner and his Unit into compliance with the terms of this Declaration or with respect to materials or services furnished to such Owner or his Unit at his request or on his behalf as may be provided herein.

Section 5.5. Delinquency: Any assessment provided for in this Declaration, which is not paid when due, shall be delinquent and shall be subject to the following provisions. All references hereinafter made to the sale of a Unit shall also include the assignment of the leasehold or subleasehold interest therein.

(a) Right of Association: If any such assessment is not paid within thirty (30) days after the due date, the assessment shall bear interest from the date of delinquency at the rate of six percent (6%) per annum, and the Association may, at its option, bring an action at law against the Owner personally obligated to pay the same, or, upon compliance with the notice provisions set forth herein to foreclose the lien against the Unit, and there shall be added to the amount of such assessment, the costs of preparing and filing the complaint in such action, and in the event a judgment is obtained, such judgment shall include said interest and a reasonable attorneys' fee, together with the costs of action. Each Owner vests in the Association or its assigns, the right

11.

Branch :ORI,User :DDEL                         Comment:                              Station Id :DMCL



BK 13618 PG 998

and power to bring all actions at law or lien foreclosure
against such Owner or other Owners for the collection of
such delinquent assessments. No Owner may waive or
otherwise escape the liability for the assessments
provided for herein by non-use of the Common Area or
abandonment of his Unit.

(b)  Notice of Lien:  No action shall be brought to
foreclose said assessment lien or to proceed under the
power of sale herein provided less than thirty (30) days
after the date a notice of claim of lien (hereinafter
referred to as "Notice of Delinquent Assessment") is
deposited in the United States mail, certified or
registered, postage prepaid, to the Owner of said Unit,
and a copy thereof is recorded by the Association in the
office of the County Recorder; said Notice of Delinquent
Assessment must recite a good and sufficient legal
description of any such Unit, the record Owner or reputed
Owner thereof, the amount claimed (which shall include
interest on the unpaid assessment at the rate of six
percent (6%) per annum, plus reasonable attorneys' fees
and expenses of collection in connection with the debt
secured by said lien), and the name and address of the
claimant.

(c)  Foreclosure Sale:  Any such sale provided for
above is to be conducted in accordance with the
provisions of Sections 2924, 2924b, and 2924c of the
Civil Code of the State of California, applicable to the
exercise of powers of sale in mortgages and deed of
trust, or in any other manner permitted or provided by
law.  The Association, through its duly authorized
agents, shall have the power to bid on the Unit at
foreclosure sale, and to acquire and hold, lease,
mortgage and convey the same.

(d)  Curing of Default:  Upon the timely curing of
any default for which a Notice of Delinquent Assessment
was filed by the Association, the officers of the
Association are hereby authorized to file or record, as
the case may be, an appropriate release of such Notice of
Delinquent Assessment, upon payment by the defaulting
Owner of a reasonable fee, to cover the costs of
preparing and filing or recording such release, together
with the payment of such other costs, interest or fees as
shall have been incurred.

(e)  Cumulative Remedies:  The assessment lien and
the rights to foreclosure and sale thereunder shall be in
addition to and not in substitution for all other rights
and remedies which the Association and its assigns may
have hereunder and by law, including a suit to recover a
money judgment for unpaid assessments, as above provided.

12.



BK 13618PG 999

(f) **Subordination:** A lien for regular and special assessments shall be subordinate to the lien of any first Mortgage. The sale or transfer of any Unit as a result of the exercise of a power of sale or a judicial foreclosure under a default under such first Mortgage or the termination of an Owner's interest in the Unit by Lessor shall extinguish the lien of such assessments as to payments which become due prior to such sale or transfer. No such transfer or termination as discussed above shall relieve the new Owner, be it the former beneficiary under the first Mortgage or other person, from liability for any assessments thereafter becoming due or from the lien thereof.

(g) **Expiration of Lien:** Unless sooner satisfied and released or the enforcement thereof initiated as hereafter provided such lien shall expire and be of no further force or effect one year from the date of recordation of the Notice of Delinquent Assessment. The one year period may be extended by the Association for not to exceed one additional year by recording a written extension thereof.

**Section 5.6. Exempt Property:** The following property subject to this Declaration shall be exempted from the assessments, charge and lien created herein: (a) all properties dedicated to and accepted by a local public authority; (b) all Common Area; and (c) all properties exempted from taxation by the laws of the State of California, upon the terms and to the extent of such legal exemption.

Notwithstanding any provision herein, no land or improvements devoted to residential dwelling use shall be exempt from said assessments, charges or liens.

**Section 5.7. Uniform Rate of Assessment:** Except as provided for in Section 5.4 relating to a special assessment levied against an individual Owner as described therein, both regular and special assessments shall be levied against each Owner according to the ratio of the number of Units owned by the Owner assessed to the total number of Units subject to assessment, and shall be collected on a monthly basis.

**Section 5.8. No Offsets:** No offsets for any reason shall be allowed against the full payment of any assessment levied pursuant to this Declaration, including, without limitation, a claim that the Association is not properly exercising its duties of maintenance or enforcement.

-13-

BK 13618PG 1000

# ARTICLE VI
## ARCHITECTURAL CONTROL

**Section 6.1. Architectural Approval:** Except for purposes of proper maintenance and repair, no person or entity shall install, erect, attach, build, place, construct or remove any lighting, shades, screens, signs, awnings, patio covers, decorations, fences, walls, aerials, antennas, landscaping or make any changes or otherwise alter (including the painting thereof) the exterior (or structurally alter the interior) of any Unit or the Common Area until plans and specifications (hereinafter the "Plans") as required in Section 6.2 shall have been reviewed and approved in writing by an Architectural Committee (hereinafter the "Architectural Committee") and Lessor. For purposes of this section the term "exterior" shall mean any outside wall, outside surface, roof, outside door, balcony, patio, garage, or other outside structure of said Unit.

**Section 6.2. Requirements for Approval:** Said Plans shall be prepared by a duly licensed architect or other person approved by the Architectural Committee and shall include, where appropriate, the following: (a) color, shape, dimensions and materials to be used; (b) building plans; (c) exterior elevations, surfaces and sections, structural design and salient exterior details; (d) general exterior color schemes; and (e) landscaping plans showing plants, hedges, and fences. All such Plans shall be submitted in writing over the signature of the Owner or his authorized agent. Approval shall be based, among other things, on adequacy of site dimensions; adequacy of structural design and materials; conformity and harmony of external design with neighboring structures; effect of location and use of improvements and landscaping on neighboring property, improvements landscaping, operations and uses; preservation of view and aesthetic beauty; with respect to fences, walls and landscaping, assurance of adequate access to the Association in connection with the performance of its duties and the exercise of its power hereunder; conformity with such rules and regulations as may be adopted by the Architectural Committee in accordance with this Article; and conformity of the Plans to the purpose and general plan and intent of this Declaration.

**Section 6.3. Term and Composition of Architectural Committee:** The Architectural Committee shall be composed of three (3) members. Prior to the first anniversary date of the issuance of the original Public Report for the Project, Declarant may appoint the three (3) original members of the Architectural Committee and their replacements, if necessary. Declarant's appointees to the Architectural Committee need not be Members of the Association. Declarant shall retain the right to appoint a majority of the members of the Architectural Committee until the earlier occurrence of either of the following events:

14.

BK 13618PG 1001

(a) When ninety percent (90%) or more of the Units have been sold; or

(b) On the fifth anniversary date of the original issuance of the Public Report for the Project.

After one year from the date of issuance of the original Public Report for the Project, the Board shall have the right to appoint one Member to the Architectural Committee, who shall be a member of the Association.

From and after the occurrence of any of the events referenced in (a) and (h) hereinabove, whichever occurs first, the Board shall have the power to appoint all members of the Architectural Committee who shall all be Members of the Association.

**Section 6.4.    Failure to Approve or Disapprove the Plans:** In the event the Lessor or the Architectural Committee, or its representatives designated in accordance with Section 6.9, fail to either approve or disapprove such Plans within thirty (30) days after the same have been submitted to them, it shall be conclusively presumed that the Lessor and the Architectural Committee have approved such Plans. All improvement work approved by the Lessor and Architectural Committee shall be diligently completed and constructed in accordance with the approved Plans.

**Section 6.5.    No Liability:** Neither Declarant, Lessor, Lessee, Association, Architectural Committee, or the members or designated representatives thereof shall be liable in damages to anyone submitting Plans to them for approval, or to any Owner of property affected by this Declaration by reason of mistake in judgment, negligence, or nonfeasance arising out of or in connection with the approval or disapproval or failure to approve or disapprove any such Plans, or for any defect in any structure constructed from such Plans. Such Plans are not approved for engineering design. Every Owner and his authorized agent, if any, who submits Plans to the Architectural Committee for approval agrees, by reason of such submission, that no action or suit of any kind will be commenced against Declarant, Lessor, Lessee, Association, Architectural Committee, or any of the members or designated representatives thereof to recover any damages.

**Section 6.6.    Notice of Noncompliance or Noncompletion:** Notwithstanding anything to the contrary contained herein, after the expiration of the later of one year from the date of issuance of a building permit by a municipal or other governmental authority for any improvements or one year from the date of commencement of construction of any improvements within the Project, said improvements shall, in favor of purchasers and encumbrancers in good faith and for value, be deemed to be in



15.



BK 13618PG 1802

compliance with all provisions of this Article, unless actual notice of such noncompliance or noncompletion, executed by the Architectural Committee or its designated representatives, shall appear of record in the office of the County Recorder or unless legal proceedings shall have been instituted to enforce compliance or completion.

Section 6.7.  Rules and Regulations:  The Architectural Committee may from time to time, in its sole discretion, adopt, amend and repeal reasonable rules and regulations interpreting and implementing the provisions hereof and establishing reasonable architectural standards over the Project.

Section 6.8.  Variances:  Where circumstances such as topography, location of property lines, location of trees, configuration of the improvements on the Property, or other matters require, the Architectural Committee, by the vote or written assent of a majority of its members, may allow reasonable variances as to any of the covenants, conditions or restrictions contained in this Declaration under the jurisdiction of the Architectural Committee, on such terms and conditions as it shall require; provided, however, that all such variances shall be in keeping with the general plan for the improvement and development of the Project.

Section 6.9.  Appointment and Designation:  The Architectural Committee may from time to time, by the vote or written assent of a majority of its members, delegate any of its rights or responsibilities hereunder to one or more duly licensed architects or other qualified persons who shall have full authority to act on behalf of said Architectural Committee in all matters so delegated.

Section 6.10.  Review Fee and Address:  Any Plans required by Section 6.2 shall be submitted in writing for review and approval together with a reasonable processing fee.  The address of the Architectural Committee shall be the principal place of business of the Association, or such other place as the Architectural Committee may from time to time designate in writing to the Board.  Such address shall be the place for the submittal of any plans and specifications and the place where the current rules and regulations, if any, of the Architectural Committee shall be kept.

Section 6.11.  Inspection:  Any member or agent of the Architectural Committee may from time to time at any reasonable hour or hours and upon reasonable notice enter and inspect any property subject to the jurisdiction of said Architectural Committee as to its improvements or maintenance in compliance with the provisions hereof.

16.

BK 13618 PG 1003

## ARTICLE VII
### EASEMENTS

**Section 7.1.  Rights of Association:** There is hereby reserved to the Association such easements as are necessary to perform the duties of the Association.

**Section 7.2.  Rights of Declarant:** The Declarant, for itself and its successors and assigns, reserves the following rights and easements:

(a)  Easement over the Common Area for the installation and maintenance of electric, telephone, cable television, water, gas, and sanitary sewer lines and drainage facilities.

(b)  The right to use on a non-interference basis the Association clubhouse, if there be one constructed upon the Common Area, as a sales facility.  Such use by Declarant or its sales agents or representatives shall not unreasonably interfere with the Members in their use and enjoyment of the Common Area or recreational facilities thereon.  This reservation by Declarant shall terminate on the happening of either of the following events, whichever occurs earlier:

(1)  On the expiration of a three (3) year period from the date of issuance by the Department of Real Estate of the State of California of a Final Subdivision Public Report with respect to the Property; or

(2)  On the sale of all of the Units in the Project.

(c)  Easements over the Common Area for construction, display, maintenance, sales, and exhibit purposes in connection with the construction, development and sale or lease of the Project until the sale by Declarant of all Condominiums within the Project, provided, however, that the exercise of such easements by Declarant shall not unreasonably interfere with the reasonable use and enjoyment of the Units or the Common Area by the Owners.  Until the sale of all of the Units in the Project, Declarant may use any of the Units owned by it within the Project as model home sites and any of the Common Area as incidental parking.  Declarant reserves the right to alter its construction, development and design plans as it deems appropriate.

(d)  The right of Declarant (and its agents, employees and representatives) to enter on the Common Area to construct improvements on the Property and to

17.



BK 13618 PG 1004

make repairs and remedy construction defects if such entry shall not interfere with the use of any occupied Unit unless authorized by the Owner thereof; provided, however, that the Declarant shall be responsible for the timely repair of any damage caused to the Common Area or any Unit by the Declarant (and its agents, employees and representatives) in exercising this right.

(e)  So long as Declarant owns any Units in the Project, this Declaration cannot be amended or modified to change or eliminate the easements reserved herein to Declarant without the prior written approval of Declarant, and any attempt to do so shall be null and void and shall have no effect whatsoever.

Section 7.3.  Rights of Owners:  The rights and duties of the Owners of Units within the Property with respect to sanitary sewer and water, electricity, gas and telephone and cable television lines and drainage facilities shall be governed by the following:

(a)  Wherever sanitary sewer house connections and/or water house connections or electricity, gas or telephone and cable television lines or drainage facilities are installed within the Property, which connection lines or facilities or any portion thereof, lie in or upon the Common Area or lie in or upon Units owned by others, then the Owner of a Unit served by said connections, lines or facilities, shall have the right, and is hereby granted an easement to the full extent necessary therefor, to enter upon these Units or to have utility companies enter upon these Units within the properties in or upon which said connections, lines or facilities, or any portion thereof, lie to repair, replace, and generally maintain said connections as and when the same may be necessary as set forth below.

(b)  Wherever sanitary sewer house connections and/or water house connections or electricity, gas or telephone or cable television lines or drainage facilities are installed within the Property, which connections serve more than one Unit, the Owner of each Unit served by said connections shall be entitled to the full use and enjoyment of such portions of said connections as service his Unit.

Section 7.4.  Encroachments on Common Area:  Eaves, window boxes, fireplace units, porches and air conditioner units or similar improvements which may be erected or installed on the Property by Declarant, may encroach onto the Common Area, provided, however, that any such encroachment shall not exceed a maximum of four (4) feet.

18.

BK 13618PG 1005

**Section 7.5.** **Restricted Common Areas:** There is hereby reserved and established for certain Owners, various exclusive easements over the Common Area, which shall be deemed "Restricted Common Areas". These may include any or all of the following:

(a)  Entry areas or courts into the Units, which rights shall be shared with the Unit Owners whose Units abut such areas.

(b)  Attic space, which shall be for the exclusive use of the Owners of the Unit to which such space adjoins.

Such Restricted Common Areas are designated on the Condominium Plan and are referenced in a manner necessary to delineate to which Owner of a Unit the particular right exists. The Owner to which the rights to a Restricted Common Area run shall be obligated to keep and maintain such areas in a safe and clean condition; provided, however, that general maintenance and repair shall primarily remain the obligation of the Association.

**Section 7.6.** **Other Encroachments:** Each Unit and Common Area improvements within the Project is hereby declared to have an easement over all adjoining Units and Common Area for the purpose of accommodating an encroachment due to engineering errors, errors in original construction, settlement or shifting of the building, or any other cause. There shall be valid easements for the maintenance of said encroachments so long as they shall exist, and the rights and obligations of Owners shall not be altered in any way to said encroachment, settlement or shifting; provided, however, that in no event shall a valid easement for encroachment be created in favor of an Owner or Owners if said encroachment occurred due to the willful misconduct of said Owner or Owners. In the event a structure is partially or totally destroyed, and then repaired or rebuilt, the Owners of each Unit agree that minor encroachments over adjoining Units shall be permitted and that there shall be valid easements for the maintenance of said encroachments so long as they shall exist.

ARTICLE VIII

**MANAGEMENT**

**Section 8.1.** **Powers of the Association:** All powers relating to management, operation and maintenance of the Common Area, as well as certain rights, duties and powers relating to the Property, as set forth herein and in the Bylaws, shall be vested in the Association.

**Section 8.2.** **Purposes of the Association:** The specific and primary purposes of and powers of the Association are to manage and maintain the Common Area, Monterey Lane, and all

19.



BK 1361 PG 1005

facilities, improvements, and landscaping thereon, to maintain certain individual improvements on the Units, and to provide recreational activities for the Members, foster and support community activities of the Members, and perform the functions set forth in this Declaration of Covenants, Conditions and Restrictions, and the Association's Articles of Incorporation, and Bylaws.

**Section 8.3. Contracting Authority:** The Association shall have the right and power to employ or engage a manager and other employees or agents and contract for such services, labor and materials as it may deem reasonably necessary to operate and maintain the Common Area and the improvements thereon and to discharge its other duties as herein provided.

**Section 8.4. Duties:** The Association shall have the powers to and be responsible for:

(a) The enforcement of this Declaration, the Bylaws of the Association and other agreements of the Association.

(b) Subject to Section 8.6, below, maintaining the Common Area and facilities and improvements thereon (including furnishings and equipment related thereto) in a good, clean, attractive and sanitary order and repair.

(c) Providing water, sewer, refuse collection, electrical, telephone, gas and other necessary utilities service for the Common Area, and maintenance, gardening and landscaping for the Common Area.

(d) Granting easements where necessary for utilities and sewer facilities over the the Common Area to serve the Common Area and the Units.

(e) The payment of taxes and assessments which are or could become a lien on the Common Area or some portion thereof.

(f) Establishing and maintaining a working capital and contingency fund in an amount to be determined by the Board of Directors of the Association.

(g) Providing exterior maintenance of each Unit which is subject to assessment hereunder, only as follows:

(1) Paint, maintain, and repair and replace (if required because of normal wear, tear or deterioration) roofs, gutters, downspouts and exterior building surfaces, and maintain the

20.



BK 13618PG 1007

landscaping (including the trees, shrubs, grass and walks) within the Common Area.

(2) Such exterior maintenance shall not include: glass surfaces; landscaping within the private balcony areas of each Unit; balcony covers or other additions built or maintained within private balcony areas by an Owner; repairs or replacements arising out of or caused by the willful or negligent act of the Owner, his family, guests, or invitees, or caused by any of the perils covered by a standard form fire insurance policy with extended coverage endorsement thereon, or caused by flood, earthquake or other Acts of God. Such excluded items shall be the responsibility of each Owner; provided, however, that if an Owner shall fail to maintain or make the repairs or replacements which are the responsibility of such Owner, as provided above, then, upon vote of a majority of the Board of Directors, and after not less than thirty (30) days' notice to the Owner, the Association shall have the right (but not the obligation) to enter the Unit and provide such maintenance or make such repairs or replacements, and the cost thereof shall be added to the assessments chargeable to such Unit and shall be payable to the Association by the Owner of the Unit.

(3) For the purposes solely of performing the exterior maintenance authorized by this Section, the Association's agents or employees shall have the right, after reasonable notice to the Owner, to enter upon any Unit at reasonable hours.

(h) Obtaining and maintaining in force the following policies of insurance:

(1) Comprehensive public liability insurance insuring the Association, any manager, the Lessee and Declarant and the Owners and occupants of Units and their respective family members, guests, invitees, and the agents and employees of each, against any liability incident to the ownership or use of the Common Area and including, if obtainable, a cross-liability or severability of interest endorsement insuring each insured against liability to each other insured. Such insurance shall include coverage against water damage liability, liability for nonowned and hired automobiles, liability for property of others and any other liability or risk customarily covered with respect to projects similar in construction, location, and use.

21.



BK 13618PG 1008

(2) Master or blanket policy of fire insurance for the full insurable value of all of the improvements within the Project. The form, content, and term of the policy and its endorsements and the issuing company must be satisfactory to all institutional Mortgagees. If more than one institutional Mortgagee has a loan of record against the Project, or any part of it, the policy and endorsements shall meet the maximum standards of the various institutional Mortgagees represented in the Project. The policy shall contain an agreed amount endorsement or its equivalent, an increased cost of construction endorsement or a contingent liability from operation of building laws endorsement or their equivalent, an extended coverage endorsement, vandalism, malicious mischief coverage, a special form endorsement and a determinable cash adjustment clause or a similar clause to permit cash settlement covering full value of the improvements in cash of partial destruction and a decision not to rebuild. The policy shall be in the amounts as shall be determined by the Board. The policy shall name as insured the Association, the Owners, Declarant, and Lessee as long as Declarant or Lessee is the owner of any Unit and all institutional Mortgagees as their respective interests may appear, and may contain a loss payable endorsement in favor of the trustee described in this declaration.

(3) Except as provided in this Section, no Owner can separately insure his Unit or any part of it against loss by fire or other casualty covered by any insurance carrier under subparagraph (2). If any Owner violates this provision, any diminution in insurance proceeds otherwise payable that results from the existence of such other insurance will be chargeable to the Owner who acquired other insurance, and the Owner will be liable to the Association to the extent of any such diminution. An Owner can insure his personal property against loss. In addition, any improvements made by an Owner to the real property within his Unit may be separately insured by the Owner, but the insurance is to be limited to the type and nature of coverage commonly known as tenant's improvement. All such insurance that is individually carried must contain a waiver of subrogation rights by the carrier as to other Owners, the Association, Declarant, Lessor, and Lessee.

(4) All insurance proceeds payable hereunder and subject to the rights of the Mortgagees, below, may be paid to a trustee, to be held and expended

22.



BK 13618PG 1009

for the benefit of the Owners, Mortgagees and others, as their respective interests shall appear. Said trustee shall be a commercial bank that agrees in writing to accept such trust. If repair or reconstruction is authorized, the Board shall have the duty to contract for such work as provided for in this Declaration.

(5)   The Board may and, if required by any Mortgagee, shall purchase and maintain demolition insurance in adequate amounts to cover demolition in case of total or partial destruction and a decision not to rebuild, and a blanket policy of flood insurance. The Board also shall purchase and maintain worker's compensation insurance, to the extent that it is required by law, for all employees of the Project. The Board also shall purchase and maintain fidelity bonds or insurance (which shall be in an amount not less than 150% of each year's estimated annual operating expenses and reserves and shall contain an endorsement of coverage of any person who may serve without compensation) sufficient to meet the requirements of any Mortgagee. The Board shall purchase and maintain such insurance on personal property owned by the Association, and any other insurance, that it deems necessary or that is required by any Mortgagee.

(6)   An Owner may carry whatever personal liability and property damage liability insurance with respect to his Unit that he desires. However, any such policy shall include a waiver of subrogation clause acceptable to the Board and to any Mortgagee.

(7)   The Board is appointed attorney-in-fact by each Owner to negotiate and agree on the value and extent of any loss under any policy carried hereunder. The Board is granted full right and authority to compromise and settle any claim or enforce any claim by legal action or otherwise and to execute releases in favor of any insurer.

(8)   Any Mortgagee has the option to apply insurance proceeds payable on account of a Unit in reduction of the obligation secured by the mortgage of such Mortgagee.

(9)   Notwithstanding the foregoing provisions of this Article, the Association shall continuously maintain in effect such casualty, flood and liability insurance and a fidelity bond meeting the insurance and fidelity bond requirements for

23.



BK 13618PG 1010

condominium projects established by Federal National Mortgage Association, Government National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Housing Administration, or Veterans' Administration, so long as any one is a Mortgagee, Owner, or insures or guarantees a mortgage within the Property, except to the extent such coverage is not available or has been waived in writing by the foregoing entities.

(i)   Make lease payments, if any, required to be paid on the Common Area.

(j)   Maintenance of Monterey Lane, and any guard-gates thereon, pursuant to that certain Agreement attached hereto as Exhibit "A".

Section 8.5.  Right of Entry:  The Association or its agents may enter any Unit when necessary in connection with any maintenance, landscaping or construction for which the Association is responsible.  Upon consent of the Owner, which consent shall not be unreasonably withheld, the Association or its agents may enter a Unit to perform maintenance, repairs or construction for which the Association is responsible.  Such entry shall be made with as little inconvenience to the Owner as reasonably possible, and any damage caused thereby shall be repaired by the Association.

Section 8.6.  Duties of Owners:  In addition to all other obligations set forth herein, the Owners shall be responsible for the following:

(a)   In the event the Board shall determine that the walls, ceilings, floors, doors or any other portion of the Common Area forming the boundaries of a Unit have been damaged from within the Unit, notwithstanding that such damage may be to the Common Area, the Owner of the Unit shall be responsible for repairing such damage in a timely manner and in accordance with such rules as the Board or Architectural Committee shall from time to time adopt.  In the event such repair is not so accomplished by the Owner, the Association or its delegates shall have the right at reasonable times to enter the Unit to effect such repair, and the cost thereof shall be charged to said Owner and, if not paid in a timely manner, shall be a special assessment.

(b)   The repair of any wall or fence separating neighboring Units shall be the joint responsibility of the Owners whose Units are separated by such wall or fence, notwithstanding that such wall or fence may consist in part of Common Area.  Such adjoining Owners shall share the expense of such repair equally, but if

24



BK 13618 PG 1011

one such Owner refuses to join in such repair, the other
may undertake such repair himself and shall receive
contribution from his neighbor for his neighbor's share
of the cost thereof.  In the event that such repair is
required because of the acts or negligence of one of such
adjoining Owners, such repair shall be accomplished by
such Owner at his sole expense.

(c)  Each Owner shall be responsible for the care,
maintenance and replacement of his electric garage door
opener, notwithstanding the fact that such may have been
installed by the Declarant.

Section 8.7.  Association to Defend Certain Actions:  In
the event that a lawsuit is brought against all or substantially
all of the Members within the Project which will or could result
in any lien or encumbrance being levied against an entire
Project, the following terms shall apply:

(a)  The Association shall defend such lawsuit and
the costs of such defense shall be a special assessment
against all of the Members within the Project joined as
defendants in such lawsuit; provided, however, in the
event that an insurance carrier is obligated to provide
such defense under a policy of insurance carried by the
Association, the Association shall be relieved of the
obligation to provide such defense.  Nothing contained
herein shall in any way limit the rights of any Member or
Members to retain counsel of their choice to represent
them in such lawsuit at their own expense.  In the event
that a Member so chooses, he shall not be relieved of
liability for the special assessment provided for in this
Section.

(b)  In the event that a lien or encumbrance not
covered by California Civil Code Section 1357 attaches to
all or substantially all of the Project by reason of a
judgment or otherwise, the Association shall promptly
take the appropriate steps to remove such lien,
including, but not limited to, the payment of money and
the posting of a bond.  The Association shall have the
power to borrow money and to take such other steps as are
necessary to free a Project of such liens.

(c)  Simultaneously with any action taken pursuant
to the above sections, the Association shall levy a
special assessment against each of the Members whose
Condominiums were subject to the lien or encumbrance
which caused the Association to act pursuant to said
Section equal to each such Member's pro rata share of
such lien or encumbrance.  In the event that such special
assessment is not paid within thirty (30) days of its due
date, the Board may effect the remedies of Section 1356

25.

BK 13618PG 1012

of the California Civil Code and any other remedies
contained herein.

## ARTICLE IX
## GENERAL RESTRICTIONS

**Section 9.1. Partition:** The Common Area shall remain
undivided; and no Owner shall bring any action for partition,
excepting as otherwise herein provided, it being agreed that this
restriction is necessary in order to preserve the rights of the
Owners with respect to the operation and management of the
Project.

**Section 9.2. Interior of Unit:** Each Owner shall have
the right to paint, repaint, tile, wax, paper or otherwise
refinish and decorate the inner surfaces of the walls, ceiling
floors, windows and doors bounding his own Unit.

**Section 9.3. Nuisance:** Neither the Property, nor any
portion thereof, shall be used for any purpose tending to injure
the reputation thereof, or to disturb the neighborhood or
occupants of adjoining property, or to constitute a nuisance, or
in violation of any public law, ordinance, or regulation in any
way applicable thereto.

**Section 9.4. Use of Common Area:** The Common Area shall
be used for park, recreational, social and other purposes
directly related to the uses authorized under this Declaration.

**Section 9.5. Projections:** No projections of any type
shall be placed or permitted to remain above the roof of any
residential building with the exception of one or more chimneys
and one or more vent stacks. No outside air conditioning units,
evaporating coolers, television or radio pole or antenna shall be
constructed, erected or maintained on any building or on any Unit
or Common Area or connected in such manner as to be visible from
the outside of any such building, except as may be constructed by
Declarant.

**Section 9.6. Recreational Vehicles:** No mobile home,
recreational vehicle, motor home, camper, minihome, boat, truck
of size in excess of 3/4 ton, or trailer of any kind shall be
kept, stored, parked, maintained, constructed or repaired on any
part of the Project other than in specific designated parking
areas as approved by the Board of Directors.

**Section 9.7. Lavatory Facilities:** No privy shall be
erected, maintained or used upon any portion of a Unit or Common
Area, but a temporary privy may be permitted during the course of
construction of a building. Any lavatory, toilet or water closet
which shall be erected, maintained or used upon any portion of a
Unit or Common Area shall be enclosed and located within a

26.



BK 13618 PG 1013

building permitted under this Declaration to be erected on the Unit or Common Area, shall be properly connected with the sewer system and shall be so constructed and operated that no offensive odor shall arise or otherwise escape therefrom.

**Section 9.8. Signs:** Except for a sign having a maximum face area of three (3) square feet and advertising the Property for sale or rent, no sign or other advertising device of any character shall be erected, maintained, or displayed upon any part of the Property; provided, however, that Declarant may erect and maintain on the Common Area or on any Unit owned by it such signs and other advertising devices or structures, as it may deem necessary or proper in connection with the conduct of its operations for the development, improvement, subdivision and sale of said property; provided further that residential signs having a maximum face area of seventy-two (72) square inches giving the name of the occupant and/or the address of a Unit may be displayed on such Unit. The Association or its agents may summarily remove and destroy all signs not conforming to this Section.

**Section 9.9. Animals:** No animals, fowl, reptiles or poultry shall be kept on the Property, except that domestic dogs, cats, birds and fish may be kept as household pets upon said property provided that they are not kept, bred or raised thereon for commercial purposes or in unreasonable quantities. Notwithstanding the foregoing, no animals or fowl may be kept on the Property which result in any annoyance or are obnoxious to residents in the vicinity.

**Section 9.10. Offensive Activities:** No noxious or offensive trades or activity shall be carried on upon any portion of the Property, nor shall anything be done or maintained thereon which may be or become an annoyance or nuisance to the neighborhood, or which shall in any way interfere with the quiet enjoyment of each of the Owners of his respective dwelling unit, or which shall in any way increase the rate of insurance.

**Section 9.11. Right of Inspection:** During reasonable hours and after reasonable notice, any agent of the Association shall have the right to enter upon and inspect the Property or any portion thereof and the improvements thereon for the purpose of ascertaining whether or not the provisions of this Declaration are being complied with and shall not be deemed guilty of trespass by reason thereof. Provided, however, that there shall be no entry into any dwelling unit without the express consent of the Owner.

**Section 9.12. Leases:** With the exception of a lender in possession of a Unit following a default in a first Mortgage, a foreclosure proceeding or any deed or other arrangement in lieu of foreclosure, no Unit Owner shall be permitted to lease his Unit for transient or hotel purposes. No Unit Owner may lease

27.



BK 13618PG 1014

less than the entire Unit. Any lease between an Owner and lessee shall provide that the terms of the lease are subject in all respects to the provisions of this Declaration, the Articles of Incorporation and Bylaws of the Association, and that any failure by the lessee to comply with the terms of such documents shall be a default under the lease. All leases shall be in writing.

**Section 9.13. Misconduct:** Each Owner shall be liable to the Association for any damage to the Common Area or to any of the equipment or improvements thereon which may be sustained by reason of the negligence or willful misconduct of said Owner or of his family, relatives, guests or invitees, both minor and adult but only to the extent such Owner would be legally responsible under the laws of the State of California.

**Section 9.14. Structural Changes:** Nothing shall be done in any Unit, or in, on or to the Common Areas, which will impair the structural integrity of any building or which would structurally change any building without the prior written consent of the Board and Lessor.

**Section 9.15. Utilities:** Each Owner of a Unit shall be obligated to pay any and all assessments for water, sewage, gas, electricity, or other utilities, taxes and other charges assessed individually against such Unit.

**Section 9.16. Receptacles:** No Owner shall deposit any garbage, refuse or rubbish in or on the Common Area unless such matter is deposited in appropriate containers suitably placed as designated by the Board so as not to detract from the physical appearance of the Common Area or the Project. Trash bins may be placed upon the Common Area by each Owner only in accordance with such rules and regulations as may be promulgated by the Board and may remain upon the Common Areas only on trash pickup days.

**Section 9.17. Television; Radio:** No alteration to or modification of the radio and/or television antenna system, as developed by the Declarant, shall be permitted and no Owner may be permitted to construct and/or use and operate his own external radio and/or television antenna.

ARTICLE X
MORTGAGE PROTECTION

**Section 10.1. Seventy-Five Percent Vote of Mortgagees:** Except as provided by statute, in case of condemnation or substantial loss to the Units and/or Common Area, without the prior written approval of at least seventy-five percent (75%) of all first Mortgagees, based one (1) vote for each Mortgagee, neither the Association nor the Members shall be entitled to do any of the following:

28.



BK 13618PG1018

(a) By act or omission, dissolve the Association or abandon or terminate the Project.

(b) By act or omission, abandon, partition, sell, alienate, subdivide, release, transfer, hypothecate, or otherwise encumber the Common Area. This provision is not intended to restrict or otherwise prohibit an Owner from selling or encumbering his own Condominium, nor shall it prohibit the granting of easements for public utilities or other public purposes consistent with the intended use of the Common Area.

(c) Partition or subdivide a Condominium.

(d) Amend a material provision of this Declaration, the Bylaws or the Articles; for purposes of determining what provisions are material in this Declaration and in the Bylaws or the Articles, such provisions in these documents which are required by the rules, regulations or guidelines of programs administered by Federal National Mortgage Association, Government National Mortgage Association, and Federal Home Loan Mortgage Corporation shall be deemed material, but not by way of limitation, with respect to other provisions in these documents.

(e) Effectuate any decision to terminate professional management and assume self management of the Association.

(f) Change the pro rata interest or obligations of any individual Unit for the purpose of: (i) levying assessments on charges or allocating distributions of hazard insurance proceeds on condemnation awards, or (ii) determining the pro rata share of ownership of each Unit in the Common Area.

(g) Use hazard insurance proceeds for losses to any Property (whether to Units or to Common Areas) for other than the repair, replacement, or reconstruction of such Property.

Section 10.2. Other Rights of First Mortgagees. Any first Mortgagee shall, upon written request to the Association, be entitled to:

(a) Inspect the books and records of the Association during normal business hours.

(b) Receive the annual audited financial statements of the Association ninety (90) days following the end of the Association's fiscal year.

29.



BK 13618PG 1018

(c)  Receive written notice on all annual and special meetings of the Members or of the Board, and first Mortgagees shall further be entitled to designate a representative to attend all such meetings in order to, among other things, draw attention to violations of this Declaration which have not been corrected or made the subject of remedial action by the Association; provided, however, nothing contained in this Section shall give a first Mortgagee the right to call a meeting of the Board or of the Members for any purpose or to vote at any such meeting.

Section 10.3.  Mortgagees Furnishing Information: Mortgagees are hereby authorized to furnish information to the Board concerning the status of any loan encumbering a Unit.

Section 10.4.  Notice to First Mortgagees of Owner Default:  Any first Mortgagee shall be entitled to written notification from the Association of any default in the performance of the obligations imposed by this Declaration by the Owner whose Unit is encumbered by such Mortgagee's mortgage, which default has not been cured within sixty (60) days of a request therefor by the Association; provided, however, the Association shall only be obligated to provide such notice to first Mortgagees who have previously requested such notice in writing.

Section 10.5.  Right of First Refusal:  The right of an Owner to sell, transfer or otherwise convey his Unit shall not be the subject of any right of first refusal or any similar restriction in favor of the Association.  In the event this Declaration is amended to provide for any right of first refusal in the Association, a Mortgagee who comes into possession of a Unit pursuant to a judicial foreclosure or a trustee's sale shall be exempt therefrom.

Section 10.6.  Conflicts:  In the event of any conflict between any of the provisions of this Article and any of the other provisions of this Declaration, the provisions of this Article shall control.

Section 10.7.  Notice of Destruction or Taking:  In the event that the Common Area or any Unit or any portion thereof is substantially damaged or is made the subject of any condemnation proceeding in eminent domain or is otherwise sought to be acquired by a condemning authority, the Board shall promptly notify any first Mortgagee affected by such destruction, taking or threatened taking.  For purposes herein, the term "substantially damaged" shall mean damages exceeding Ten Thousand Dollars ($10,000.00).  If requested in writing by a first Mortgagee, the Association shall evidence its obligations under this Section in a written agreement in favor of such first Mortgagee.

30



BK 13618PG 1041

**Section 10.8. Breach of Declaration.** A breach of any of the covenants, conditions or restrictions of this Declaration shall not defeat or render invalid the lien of any First Mortgage made in good faith and for value on any Unit of the Property or any portion thereof, but said covenants and restrictions shall be binding upon and effective against any Owner of any of said Units whose title is acquired by the foreclosure of any lien or mortgage thereon or sale under any deed of trust given to secure the payment of money.

## ARTICLE XI
## DESTRUCTION OF IMPROVEMENTS

**Section 11.1. Destruction; Proceeds Exceed 85% of Reconstruction Costs.** If there is a total or partial destruction of the improvements in the development, and if the available proceeds of the insurance carried pursuant to Article VIII are sufficient to cover not less than eighty-five percent (85%) of the costs of repair and reconstruction, the improvements shall be promptly rebuilt unless, within ninety (90) days from the date of destruction, Members then holding at least seventy-five percent (75%) of the total voting power of each class of Members present and entitled to vote, in person or by proxy, at a duly constituted meeting, determine that such repair and reconstruction shall not take place. If repair and reconstruction is to take place, the Board shall be required to execute, acknowledge and record in the office of the County Recorder, not later than one hundred twenty (120) days from the date of such destruction, a certificate declaring the intention of the Members to rebuild.

**Section 11.2. Destruction; Proceeds Less Than 85% of Reconstruction Costs.** If the proceeds of insurance are less than eighty-five percent (85%) of the costs of repair and reconstruction, repair and reconstruction may nevertheless take place if, within ninety (90) days from the date of destruction, Members then holding at least fifty-one percent (51%) of the total voting power of each class of Members present and entitled to vote, in person or by proxy, at a duly constituted meeting, determine that such repair and reconstruction shall take place. If repair and reconstruction is to take place, the Board shall be required to execute, acknowledge and record in the office of the Orange County Recorder, not later than one hundred twenty (120) days from the date of such destruction, a certificate declaring the intention of the Members to rebuild.

**Section 11.3. Rebuilding Procedures.** If the Members determine to rebuild pursuant to Sections 11.1 or 11.2, above, the Owner of each Unit located within a structure that has been totally or partially destroyed shall be obligated to contribute his proportionate share of the cost of reconstruction or restoration of the structure containing his Unit, over and above

31.



BK 1361 PG 10

the available insurance proceeds, which proportionate share shall be based upon the ratio of the square footage of the floor area of the Unit to be assessed to the total square footage of the floor area of all Units to be assessed. All Owners shall contribute their proportionate share of the cost of reconstruction or restoration of any portion of the Common Area not comprising the structure within which a Unit is located, and the proportionate share of each Owner shall be equal to a fraction the numerator of which is one (1) and the denominator of which is the total number of Units then comprising the Project. If any Owner fails or refuses to pay his proportionate share, the Board may levy a special assessment against the condominium of such Owner which may be enforced under the lien provisions contained in Article V or in any other manner provided in this Declaration. If any Owner disputes the amount of his proportionate liability under this Section, such Owner may contest the amount of his liability by submitting to the Board within ten (10) days after notice to the Owner of his share of the liability written objections supported by cost estimates or other information that the Owner deems to be material and may request a hearing before the Board at which he may be represented by counsel. Following such hearing, the Board shall give written notice of its decision to all Owners, including any recommendation that adjustments be made with respect to the liability of any Owners. If such adjustments are recommended, the notice shall schedule a special meeting of Members for the purpose of acting on the Board's recommendation, including making further adjustments, if deemed by the Members to be necessary or appropriate. All adjustments shall be affirmed or modified by a majority of the total voting power of each class of Members. If no adjustments are recommended by the Board, the decision of the Board shall be final and binding on all Owners, including any Owner filing objections.

Section 11.4. Rebuilding Contract: If the Members determine to rebuild, the Board or its authorized representative shall obtain bids from at least two reputable contractors and shall award the repair and reconstruction work to the lowest bidder. The Board shall have the authority to enter into a written contract with the contractor for such repair and reconstruction, and the insurance proceeds held by the trustee shall be disbursed to the contractor according to the terms of the agreement. It shall be the obligation of the Board to take all steps necessary to assure the commencement and completion of authorized repair and reconstruction at the earliest possible date.

Section 11.5. Rebuilding Not Authorized: If the Members determine not to rebuild, then any insurance proceeds then available for such rebuilding shall be distributed to the Owner of each Unit or its Mortgagee in the same ratio as the fair market value of his Unit bears to the fair market value of all of the Units immediately prior to the destruction, in accordance

32.



BK 13618PG 1019

with normal appraisal techniques. The Board shall have the duty, within one hundred and twenty (120) days from the date of such destruction, to execute, acknowledge and record in the office of the County Recorder, a certificate declaring the intention of the Members not to rebuild.

Section 11.6.  Minor Repair and Reconstruction:  In any case, the Board shall have the duty to repair and reconstruct improvements, without the consent of Members and irrespective of the amount of available insurance proceeds, in all cases of partial destruction when the estimated cost of repair and reconstruction does not exceed Twenty Thousand Dollars ($20,000). The Board is expressly empowered to levy a special assessment for the cost of repairing and reconstructing improvements to the extent insurance proceeds are unavailable, such assessment to be levied as described in Section 11.3 (but without the consent or approval of Members despite any contrary provisions) in this Declaration.

ARTICLE XII
CONDEMNATION

Section 12.1.  Sale by Unanimous Consent:  If an action for condemnation of all or a portion of the Project is proposed or threatened by any governmental agency having the right of eminent domain, then, on unanimous written consent of all of the Owners and after written notice to at least seventy-five percent (75%) of all first Mortgagees, the Project, or a portion of it may be sold.

Section 12.2.  Distribution of Proceeds of Sale:  On a sale occurring under Section 12.1 above, the proceeds shall be distributed to the Owner and the Mortgagees of each Unit as their respective interests may appear in the same ratio as that set forth in Section 11.5, above.

Section 12.3.  Distribution of Condemnation Award:  If the Project, or a portion of it, is not sold but is instead taken, the judgment of condemnation shall by its terms apportion the award among the Owners and their respective Mortgagees, and in the same ratio as that set forth in Section 11.5, above.

Section 12.4.  Revival of Right to Partition:  On sale or on taking that renders more than fifty percent (50%) of the Units in the Project uninhabitable, the right of any Owner to partition through legal action shall revive immediately.

33.



BK 13618 PG 1020

### ARTICLE XIII
### PARTITION.

**Section 13.1. Suspension:** Except as specifically set forth to the contrary in this Declaration, the right of partition is suspended pursuant to the California Civil Code as to the Project. Nothing in this Declaration, however, shall prevent partition or division of interest between joint or common Owners of one (1) Unit, provided that the written approval of a first Mortgagee of such Unit is first obtained.

**Section 13.2. Proceeds:** Proceeds or property resulting from a partition shall be distributed to and among the respective Owners and their Mortgagees in the same ratio as that set forth in Section 12.2, above.

**Section 13.3. Power of Attorney:** Pursuant to the California Civil Code, each Owner grants the Association an irrevocable power of attorney to sell the Project for the benefit of the Owners when partition can be had. Exercise of the power is subject to the approval of Members.

### ARTICLE XIV
### GENERAL PROVISIONS

**Section 14.1. Term:** The covenants and restrictions of this Declaration shall run with and bind the Property, Association and any Owner, their legal representatives, heirs, successors and assigns, for a term of twenty (20) years from the date this Declaration is recorded, after which time they shall be automatically extended for successive periods of ten (10) years.

**Section 14.2. Notices:** Any notice to be given to an Owner or a Mortgagee under the provisions of this Declaration shall be in writing and may be delivered as follows:

(a) Notice to an Owner shall be deemed to have been properly delivered when delivered personally prepaid to the most recent address furnished by such Owner in writing to the Association for the purpose of giving notice, or if no such address shall have been furnished, then to the street address of such Owner's Condominium in the Project. Any notice so deposited in the mail within the County, shall be deemed delivered forty-eight (48) hours after such deposit. In the case of co-Owners, any such notice may be delivered or sent to any one of the co-Owners on behalf of all co-Owners and shall be deemed delivered on all such co-Owners.

(b) Notice to a Mortgagee shall be deemed to have been properly delivered when placed in the first class United States mail, postage prepaid, to the address

34.



BK 13618PG 1021

furnished to the Association by such Mortgagee for purposes of notice or, if no such address is furnished, to any office of the Mortgagee in the county, or, if no such office is located in the county, to any office of such Mortgagee.

Section 14.3. Enforcement: The Association, Lessor, Lessee, any Owner, or their successor in interest, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration or any amendment thereto, including the right to prevent the violation of any such restrictions, conditions, covenants or reservations and the right to recover damages or other dues for such violation; provided, however, that with respect to assessment liens, the Association shall have the exclusive right to the enforcement thereof. Failure by the Association or by any Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

Section 14.4. Severability: Invalidation of any one of these covenants, conditions or restrictions by judgment or court order shall in no way affect any other provisions, which shall remain in full force and effect.

Section 14.5. Construction: The provisions of this Declaration shall be liberally construed to effectuate its purpose of creating a uniform plan for the development of a residential community or tract and for the maintenance of common recreational facilities and Common Area. Section headings are inserted for convenience only and are not intended to be a part of this document or in any way to define, limit or describe the scope or intent of the particular section to which they refer.

Section 14.6. Singular Includes Plural: Whenever the context of this Declaration requires it, the singular shall include the plural and the masculine shall include the feminine.

Section 14.7. Attorneys' Fees: In the event action is instituted against an Owner to enforce any of the provisions contained in this Declaration, the party prevailing in such action shall be entitled to recover from the other party thereto as part of the judgment reasonable attorneys' fees and costs of such action, which attorneys' fees and costs shall also be added to such Owner's assessments.

Section 14.8. Nuisance: The result of every act or omission whereby any of the covenants contained in this Declaration or if the Bylaws are violated in whole or in part is hereby declared to be and constitutes both a public and private nuisance, and every remedy allowed by law or equity against every such result and may be exercised by any Owner, by the Association

35.



BK 13618 PG 1022

or its successors in interest, or by the County of Orange or
other affected governmental entity. Such remedy shall be deemed
cumulative and not exclusive.

Section 14.9. Amendments: Unless otherwise provided for
herein, this Declaration of Covenants, Conditions and
Restrictions may be amended only by the affirmative assent or
vote of not less than seventy-five percent (75%) of the voting
power of the Members and Lessor, excluding the Declarant;
provided, however, that although Declarant has not obtained the
Veterans' Administration ("VA") or Federal Housing Administration
("FHA") approval in connection with the development of this
Project, such approval may be sought by Declarant. In the event
that the VA or FHA approval is so sought for the purpose of
having FHA and/or VA insure or guarantee any mortgage or
providing any form of assistance within the purview of such
agencies with respect to this Project, the rules and regulations
of FHA and/or VA, as the same exist at the date of recording of
this Declaration, may require this Declaration to be amended in
certain respects and additionally will require that FHA and/or VA
participate in certain decisions affecting the Project and
management of the Association. Therefore, effective as of the
date this Project receives FHA and/or VA approval, this
Declaration is thereby amended as follows without the necessity
of any vote or written assent of the Owners or Mortgagees:

    (a)  The following actions will require the prior
    approval of the FHA and/or VA:

        (1)  Alteration of any Unit, construction of
        additional improvements, the establishment of
        additional licenses, reservations and rights-of-way,
        or alteration of construction plans and designs by
        Declarant.

        (2)  Merger or consolidation or dissolution of
        the Association.

        (3)  Any amendment or modification of this
        Declaration, the Articles or By-Laws.

    (b)  The Association shall submit to FHA and/or VA,
    sixty (60) days prior to the beginning of each fiscal
    year of the Association, for their review and approval,
    as the case may be, a budget of the expenses for the
    ensuing fiscal year, on the FHA and/or VA model form of
    budget, indicating the amount of assessments contemplated
    for the next fiscal year period.

    In the event the FHA, VA, or both, approve the Project as
provided herein, if requested to do so by FHA and/or VA, the
Board shall be automatically authorized and shall be obligated to
execute a Regulatory Agreement on FHA Form No. 3278 (revised

-36-



BK 13618PG 1073

August, 969) or such later version thereof then in use or the
analogous VA form or both as modified to reflect any
peculiarities pertaining to the Property as shall be deemed
appropriate by FHA and/or VA.

**Section 14.10.  Annexation:**  Additional residential
property and Common Area may be annexed to the Property with the
consent of two-thirds (2/3) of the voting power of the Members,
excluding Declarant.

IN WITNESS WHEREOF, the undersigned being the Declarant
herein, has hereunder set its hand this _____21st_____ day of
_May_____, 1980.

THE ROBERT P. WARMINGTON CO.,
a California corporation

By _____
   Its

By _____
   Its

The foregoing is hereby approved and agreed to this 21st
day of ____May_____, 1980.

_____
Robert P. Warmington, an individual

HOUSER BROS CO., a California
limited partnership

By _____
   General Partner

By _____
   General Partner

37.



BK 13618 PG 1024

CONSENT OF LIENHOLDER

AND SUBORDINATION OF LIEN

The undersigned beneficiary under that certain Deed of Trust dated October 31, 1979 recorded as Instrument No. 12790084 in Book 13328, pages 991 through 1012, inclusive, of Official Records of Orange County, California, consents to all of the provisions contained in the attached Declaration of Covenants, Conditions and Restrictions and agrees that the lien of the deed of trust shall be junior and subordinate and subject to said Declaration.

Dated: May 12, 1980

Lienholder

By _Crocker National Bank_

By _____

STATE OF CALIFORNIA )
                    ) SS.
COUNTY OF _Orange_  )

On _May 12_, 1980, before me, the undersigned, a Notary public in and for said State, personally appeared _____, known to me to be the President, and _____, known to me to be the _____ Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

_____
Notary Public in and for said
County and State

38.

BK 13618 PG 1025

## REIMBURSEMENT AGREEMENT

This Reimbursement Agreement is entered into this _____ day of _____, 1980, by and between Houser Bros. Co., a California Limited Partnership ("Houser") and Huntington Beach Gables Homeowners Association, a California non-profit corporation ("Association").

### R E C I T A L S

A.  Houser has leased to Robert P. Warmington, an individual, certain real property in the City of Huntington Beach, more particularly described as Tract 10542, as per map recorded in Book 456, pages 49 and 50 of Miscellaneous Maps, Orange County which has been developed as a condominium project (the "Warmington Property").

B.  Houser is presently the owner of certain real property located adjacent and contiguous to the Warmington Property which property is presently developed as a mobile home park known as Rancho del Rey Mobile Estates (the "Houser Property").

C.  Located on the Houser Property, and adjacent to the Warmington Property, is a certain roadway known as Monterey Lane (the "Roadway").  The Warmington Property and the owners and residents thereof have an easement for ingress and egress over the Roadway.  Houser and the Association agree that it would enhance the values of the Warmington Property and the Houser Property if guardgates (the "Guardgates") are con-

## EXHIBIT A

1

BK 13618PG 1027

(b)  Utilities and insurance related to the Guard-
gate.  Houser agrees to obtain and maintain in force during
the term hereof, a policy or policies of comprehensive public
liability insurance of not less than One Million Dollars
($1,000,000.00), insuring Houser, the Association and all
owners of the Warmington Property.

(c)  Maintenance and repair of Guardgate.

(d)  Maintenance and repair of the Roadway.

(e)  Street lighting for the Roadway.

Houser agrees to obtain bids for said Costs and to submit
same to the Association for its review and approval.  In
addition, Houser shall make available, for inspection by the
Association during all normal business hours, the books and
records of Houser related to the maintenance of the Roadway
and Guardgates.

III.  REIMBURSEMENT FOR COSTS

During the term hereof, the parties hereto agree that the
Association shall pay over to Houser, upon receipt of invoice
therefor, the Association's share of the Costs actually
incurred, which shall be an amount equal to 80/459 of said
Costs, but not to exceed Four Hundred Dollars ($400) per month
during the calendar year 1980, and thereafter not to exceed
Four Hundred Dollars ($400.00) per month plus an annual
percentage increase based on the percentage increase, if any,
for each ensuing calendar year period, in the Consumer Price
Index, all items, Los Angeles-Long Beach area Standard
Metropolitan Statistical area, as published by the United
States Department of Labor, Bureau of Labor Statistics.

3



IV.  TERM

    This Agreement shall commence as of the execution hereof, and shall terminate on October 17, 2059.

V.  INDEMNIFICATION

    The parties hereto acknowledge and agree that the Association's sole responsibility herein is the payment of its share of the costs as set forth above, and that Houser shall bear all responsibilities, obligations and liabilities related to the maintenance of the Roadway and Guardgates.  In furtherance thereof, Houser agrees to indemnify, defend and hold the Association harmless from any and all claims or damages arising out of the maintenance and use of said Roadway and Guardgates.

VI.  MISCELLANEOUS

    The parties further agree as follows:

        (a)  In the event any action is instituted to enforce any provision contained herein, the prevailing party shall be entitled to attorney's fees and costs so incurred.

        (b)  This Agreement shall bind and inure to the benefit of the successors and assigns of the parties hereto.

        (c)  This Agreement may only be amended by written agreement between the parties hereto.

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

HOUSER BROS. CO., a California    HUNTINGTON BEACH GABLES
Limited Partnership           HOMEOWNERS ASSOCIATION, a
                        California Non-Profit Corporation

By _____    By _____
                                          President

By _____    By _____
                                          Secretary

BK 13618 PG 1026

structed and maintained on the Roadway, and if the Roadway is maintained in a safe and clean manner.

D. In order to enable the construction of the Guardgates, and to insure the continued maintenance of the Roadway and Guardgates by Houser, and the payment by the Association of its share of the costs incurred thereby, the parties hereto have entered into this Agreement.

## T E R M S

For valuable and complete consideration, the parties hereto hereby agree as follows:

I.   CONSTRUCTION OF GUARDGATES

Houser hereby agrees to construct or cause to be constructed, two Guardgates on the Roadway, in accordance with plans and specifications approved and agreed upon by Houser and the Association.  Except as specifically set forth below, all costs incurred in the construction of the Guardgates shall be borne solely by Houser.

II.  MAINTENANCE OF ROADWAY AND GUARDGATE

Houser hereby agrees to keep, maintain, repair and replace, when necessary, the Roadway and Guardgates in a safe, decent and proper condition, and subject to rights of reimbursement below, to pay the costs related thereto, which shall include, but shall not necessarily be limited to the following (the "Costs"):

(a). Compensation, plus any necessary withholding taxes, social security and related payments, for one guard to operate the Guardgate daily.

Branch :ORI,User :DDEL                    Comment:                                    Station Id :DMCL



STATE OF CALIFORNIA
COUNTY OF Orange

BK 13618 PG 1029

On May 27, 1980, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington

known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

Pearl L. Hunt
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

---

(Partnership)

STATE OF CALIFORNIA
COUNTY OF ORANGE

On May 21, 1980, before me, the undersigned, a Notary Public in and for said State, personally appeared Clifford C. Houser and Vernon F. Houser

known to me to be general partners of the partnership that executed the within instrument, and acknowledged to me that said partnership executed the same.

WITNESS my hand and official seal.

Signature _Irene B. Burnett_

---

STATE OF CALIFORNIA
COUNTY OF Orange

On May 27, 1980, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington known to me to be the Vice Pres. President, and Oliver N. Crary known to me to be the Secretary of the corporation that executed the within instrument, and known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

Pearl L. Hunt
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)



CROCKER NATIONAL BANK

BK 13618 PG 1030

STATE OF CALIFORNIA )
                          ) ss.
COUNTY OF ORANGE     )

On *May 12*, 19*82*, before me, the undersigned, a Notary Public in and for said State, personally appeared *XAVIER S. CEDAR* and _____, known to me to be the *VICE PRESIDENT* and _____, respectively, of CROCKER NATIONAL BANK, the national banking association that executed the within instrument, and also known to me to be the person(s) that executed the within instrument on behalf of CROCKER NATIONAL BANK, the national banking association therein named, and acknowledged to me that such national banking association executed the same pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

PALMIRA OESTERREICH

OFFICIAL SEAL
PALMIRA OESTERREICH
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Sep. 17, 1982

RECORDING REQUESTED BY

5002

BK 13690 PG 1091

WHEN RECORDED RETURN TO:

MESERVE, MUMPER & HUGHES
5190 Campus Drive
Newport Beach, CA  92660

Attn:  Frank D. Stiefel

$6.00
C1

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

-3 00 P.M.  AUG  5 '80

LEE A. BRANCH, County Recorder

---

### FIRST AMENDMENT TO
### DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS
### FOR THE HUNTINGTON BEACH GABLES

#### Tract 10542
#### City of Huntington Beach
#### Orange County, California

This First Amendment to Declaration of Covenants, Conditions and Restrictions is made this 30 day of JULY , 1980, by THE ROBERT P. WARMINGTON CO., a California corporation ("RPW Co."), HOUSER BROS. CO., a California limited partnership ("Houser") and ROBERT P. WARMINGTON, an individual ("Warmington").

WHEREAS, Houser is the owner of the fee interest in the following described property (the "Property"):

Lots 1 and 2 of Tract No. 10542 as per map recorded in Book 456, Pages 49 and 50, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California; and

WHEREAS, Warmington is the lessee of the Property; and

WHEREAS, RPW Co. is the sublessee and the developer of the improvements constructed on the Property, and is also the Declarant as that term is defined in that certain Declaration of Covenants, Conditions and Restrictions recorded May 28, 1980, in Book 13618, pages 982 through 1030, inclusive, Official Records of Orange County, California (the "Declaration"); and

WHEREAS, Warmington and RPW Co. intend to assign, convey and set over to ultimate consumers, various leasehold and fee interests in the Condominium Units, as defined in the Declaration, which collectively shall constitute the Condominium to be acquired by said consumer; and

WHEREAS, Warmington, Houser and RPW Co. desire to clarify the Declaration to insure that the interests so conveyed are inseparable and constitute the entire interest to be conveyed, which clarification requires an amendment to the Declaration.

1

BK 13690 PG 1092

**NOW THEREFORE**, Warmington, Houser and RPW Co., do hereby declare as follows:

1.  That collectively they are the sole owners of the Property as their interests may appear.

2.  That they retain the exclusive and sole right to amend the Declaration.

3.  That, in furtherance of the foregoing, the following amendments are hereby made to the Declaration:

    (a)  Section 1.13 of the Declaration is hereby amended to read as follows:

"**Section 1.13. Owner/Ownership:** "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or a lessee or sublessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation. Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means. All references herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest."

    (b)  Section 2.2 of the Declaration is hereby amended to read as follows:

"**Section 2.2. Elements of Condominium:** Each Condominium shall be comprised of the following elements:

    (a)  A leasehold or sub-leasehold estate in a Unit as shown and defined on the Condominium Plan, excepting that portion of a Unit consisting of buildings and other improvements;

    (b)  An undivided one-eightieth (1/80) interest in a leasehold or subleasehold interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion of the Common Area consisting of building and other improvements;

    (c)  An exclusive easement on the leasehold or sub-leasehold estate referred to in item (b) above, which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit, excepting that portion consisting of buildings and other improvements;

2



BK 13690 PG 1093

(d)  A non-exclusive easement and right to use the leasehold or sub-leasehold estate referred to in item (b) above except the Restricted Common Area, excepting that portion consisting of buildings and other improvements;

(e)  A fee interest in that portion of a Unit, as shown and defined on the Condominium Plan, which consists of buildings and other improvements;

(f)  An undivided one eightieth (1/80) fee interest in and to those portions of the Common Area, as shown and defined on the Condominium Plan which consist of buildings and other improvements;

(g)  An exclusive easement on the fee estate referred to in item (f) above which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit which consist of buildings and other improvements;

(h)  A non-exclusive easement and right to use the fee estate referred to in item (f) above except the Restricted Common Area, which consist of buildings and improvements; and

(i)  A membership in the Association."

4.    All other terms and conditions of the Declaration shall reamin in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment as of the day first above written, its effective date.

THE ROBERT P. WARMINGTON CO., a California corporation

By _____

HOUSER BROS., CO., a California Limited Partnership
By _____
By _____

_____
Robert P. Warmington

3



.845 CA (8-74)

(Corporation)

**STATE OF CALIFORNIA**
**COUNTY OF** *Orange* } SS.

On *July 31, 198_* before me, the undersigned, a Notary Public in and for said State, personally appeared *Roger L. Burrell* known to me to be the *Vice* President, and known to me to be Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

**WITNESS** my hand and official seal.

Signature *Pearl L. Hunt*

```
OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983
```

(This area for official notarial seal)

---

TITLE INSURANCE AND TRUST
A TICOR COMPANY

TO 1946 CA (8-74)

(Partnership)

**STATE OF CALIFORNIA**
**COUNTY OF** *ORANGE* } SS.

On *AUGUST 4, 1980* before me, the undersigned, a Notary Public in and for said State, personally appeared *CLIFFORD C. HOUSER AND VERNON F. HOUSER* known to me to be *BOTH* of the partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

**WITNESS** my hand and official seal.

Signature *G. McDonald*

```
OFFICIAL SEAL
G. McDONALD
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 15, 1984
```

(This area for official notarial seal)

---

TITLE INSURANCE AND TRUST
A TICOR COMPANY

TO 1944 CA (8-74)

(Individual)

**STATE OF CALIFORNIA**
**COUNTY OF** *Orange* } SS.

On *July 31, 1980* before me, the undersigned, a Notary Public in and for said State, personally appeared *Robert P. Warmington* , known to me to be the person____ whose name____ *is* subscribed to the within instrument and acknowledged that *he* executed the same.

**WITNESS** my hand and official seal.

Signature *Pearl L. Hunt*

```
OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983
```

(This area for official notarial seal)

BK 13690PG 1094



28814

SHEET 1 OF 5 SHEETS

CONDOMIN

LOT

WHEN RECORDED MAIL TO
FIRST AMERICAN TITLE COMPANY
114 EAST FIFTH STREET
SANTA ANA, CALIFORNIA 92701
ATTN: CHUCK BUCKLEY

TRACT

IN ORANGE COUNTY, RECORDS
OF ORANGE COUNTY, CALIFORNIA

IN THE CITY OF

*12:40 PM OCT 18 1979                    COUNTY

LEE A. BRANCH, County Recorder                    STATE OF

CERTIFICATE UNDER CALIFORNIA CIVIL CODE SECTION 1351

WE THE UNDERSIGNED, BEING ALL OF THE RECORD OWNERS OF AND RECORD
HOLDERS OF SECURITY INTERESTS IN THE REAL PROPERTY, DESCRIBED IN
THE DOCUMENTS HEREINAFTER MENTIONED, DO HEREBY CERTIFY THAT:

WE HEREBY CONSENT TO THE RECORDATION OF THE PLAN OF CONDOMINIUM,
PURSUANT TO CHAPTER 1, TITLE 6, PART 4, DIVISION SECOND, CALIFORNIA
CIVIL CODE, CONSISTING OF (I) THE DESCRIPTION OF SURVEY MAPS OF THE
SURFACE OF THE LAND INCLUDED WITHIN THE PROJECT, AS SUCH DESCRIPTION
OF SURVEY MAPS ARE SET FORTH UPON OR CONSTITUTED BY THE SUBDIVISION
MAP SHOWING LOT 1 & 2 OF TRACT NO. 10542 IN THE CITY OF HUNTINGTON
BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 466, PAGES 47 TO 49 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY, AND WHICH SUBDIVISION MAP IS HEREBY BY REFERENCE IN-
CORPORATED HEREIN. (II) THE DIAGRAMATIC FLOOR PLANS ATTACHED HERETO
AND MADE A PART HEREOF, AND (III) THIS CERTIFICATE.

DATE: Oct 4 1979

HOUSER BROS., CO., A LIMITED PARTNERSHIP


VERNON F. HOUSER                         CLIFFORD C. HOUSER
GENERAL PARTNER                          GENERAL PARTNER

ROBERT P. WARMINGTON, OPTIONEE UNDER AN OPTION AGREEMENT RECORDED
IN BOOK 12912, PAGE 1053 OF OFFICIAL RECORDS.


ROBERT P. WARMINGTON
OPTIONEE


STATE OF CALIFORNIA)
COUNTY OF ORANGE    ) SS

ON THIS 4TH DAY OF OCT 1977 BEFORE ME,
A NOTARY PUBLIC IN AND FOR
SAID STATE, PERSONALLY APPEARED VERNON F. HOUSER
AND CLIFFORD C. HOUSER KNOWN TO ME TO BE THE PART-
NERS OF HOUSER BROS. CO., A LIMITED PARTNERSHIP
THE PARTNERSHIP THAT EXECUTED THE WITHIN INSTRU-
MENT AND ACKNOWLEDGED TO ME THAT SUCH PARTNERSHIP
EXECUTED THE SAME.

MY COMMISSION EXPIRES                    AND

# MINIUM  PLAN
## LOT NUMBER 1 2
# CT NO. 10542

### IN THE CITY OF HUNTINGTON BEACH
### COUNTY OF ORANGE
### STATE OF CALIFORNIA



BK 13358 PG

--- 1351

AND RECORD
IN
THAT:

MINIUM,
CALIFORNIA
MAPS OF THE
DESCRIPTION
SUBDIVISION
HUNTINGTON
RECORDED IN
RECORDED
REFERENCE IN
HERETO

This Project consists of all of the land and real
included within the boundary lines of Lot 1 and 2 of Tract 10542
the City of Huntington Beach, County of Orange, State of Cali...
as shown on a map recorded in Book    , pages        inclusive
Miscellaneous Maps, in the office of the County Recorder of said
County.

DEFINITIONS

1.  Common Area:  The term "Common Area" shall mean
to all of the property described above, except the Units, as
below.

2.  Unit:  The term "Unit" shall mean and refer to all
the elements of a Condominium, as defined below, not owned in
with the other owners of Condominiums in the Project.

3.  Restricted Common Area:  The term "Restricted
Area" shall mean and refer to those portions of the Common Area
are reserved for the exclusive use of owners of particular
described herein.



4.  Condominium:  The term "Condominium" shall mean
to an interest in the Project consisting of (a) a Unit, (b) an
1/80 interest in the Common Area, (c) certain designated exclus
to-use easements over Restricted Common Areas, (d) non-exclusive
ment rights over the Common Area, and (e) a membership in the
Beach Gables, Homeowners Association.

GENERAL NOTES

1.  This Project is composed of Common Area and eighty
Units, which have been numbered from 1 to 80.

2.  Each Unit shall contain and be composed of the fo
air parcels as defined below:

(a)  A dwelling area air space parcel

(1)  Designated herein by the letter "D".

(2)  Lateral boundaries for each dwelling
space parcel are as shown on the typical
grammatic plans attached hereto as
and 5.

(3)  Elevations for dwelling area air parcels
as shown in the elevation tabulation
hereto as Sheet 2.

(4)  The boundaries of a dwelling area air
parcel are the i



MERS OF _____ ____, CO., A LIMITED _____
THE PARTNERSHIP THAT EXECUTED THE WITHIN INSTRU-
MENT AND ACKNOWLEDGED TO ME THAT SUCH PARTNERSHIP
EXECUTED THE SAME.

MY COMMISSION EXPIRES ___ _12/12/80_
                          WITNESS MY HAND AND
                          OFFICIAL SEAL.

OFFICIAL SEAL
MARY LOU _____
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My Commission Expires Dec 12, 1980

NOTARY _____

STATE OF CALIFORNIA)
COUNTY OF ORANGE   ) ss

ON THIS 4TH DAY OF October, 1979, BEFORE ME
_____ S. Cook, A NOTARY PUBLIC IN AND
FOR SAID STATE, PERSONALLY APPEARED Roger P. Washington
KNOWN TO ME TO BE THE PERSON DESCRIBED IN, AND WHOSE
NAME IS SUBSCRIBED TO THE WITHIN INSTRUMENT AND HE
ACKNOWLEDGED TO ME THAT HE EXECUTED THE SAME.

MY COMMISSION EXPIRES 6/26/81   WITNESS MY HAND
AND OFFICIAL SEAL.

OFFICIAL SEAL
YVONNE S. COOK
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 26, 1981

NOTARY PUBLIC IN AND FOR SAID STATE

I HEREBY CERTIFY THAT I AM A REGISTERED CIVIL ENGINEER OF THE STATE OF
CALIFORNIA; THAT THIS PLAN, CONSISTING OF 6 SHEETS, CORRECTLY _____
A TRUE AND COMPLETE SURVEY OF THIS CONDOMINIUM PROJECT AND THE DELI_____
TION OF THE UNITS TO BE CONTAINED IN THE BUILDING AS BUILT THEREON.

DATED: 10-3-79          _____ H. MADDLE, R.C.E. NO. 14814

(3)    Elevations for dwelling area air parcels are
as shown in the elevation tabulation attached
hereto is Sheet 2.

(4)    The boundaries of a dwelling area air space
parcel are the interior surfaces of the per-
imeter walls, floors, ceilings, windows and
doors thereof, and said air space parcel in-
cludes both the surfaces so described and the
air space so encompassed.

(b)    A Patio air space parcel

(1)    Designated herein by the letter "P".

(2)    Shall only exist on lower levels.

(3)    Shall be owned by and be a part of the Unit
to which it adjoins.

(4)    Lateral boundaries for each patio air space
parcel shall be the exterior finished surfaces
of the perimeter wall, windows and doors of
the adjoining Unit and partition walls, fences
and rails where they exist; otherwise, they
are the vertical plans at the limits of the
horizontal dimensions set forth on the typical
diagrammatic plans attached hereto Sheets 4
and 5.

(5)    Elevations for patio air space parcels are as
indicated in note no.3 under Elevation Tabulation as shown
on sheet no. 2.

(c)    A Garage air space parcel

(1)    Designated herein by the letter "G".

(2)    Shall only exist on lower levels.

(3)    Shall be owned by and be a part of the Unit
for which it is designated on the typical
diagrammatic plans attached hereto as Sheets
4 and 5.

(4)    Lateral boundaries for each garage air space
parcel are as shown on the typical diagrammatic
plans attached hereto as Sheets 4 and 5.

(5)    Elevations for garage air space parcels are as
shown in the elevation tabulation attached here-
to as Sheet 2.

(6)    The boundaries of a garage air space parcel are
the interior surfaces of the perimeter walls,
floors, ceilings and doors thereof, and said
air space parcel includes both the surfaces so
described and the air space so encompassed.

SHEET 1 OF 5 SHEETS

BK 13358 PG 1197

# CONDOMIN

LOT

# TRACT 1

IN THE CITY OF
COUNTY
STATE OF C

3.   The Units do not contain bearing walls, columns, vertical supports, floors, roofs, foundation, railings, fences, gates, garage doors, central heating, central refrigeration and central air-conditioning equipment, reservoir tanks; pumps and other central services, pipes, ducts, flues, conduits, wires and other utility installations, wherever located except the outlets thereof when located within the Unit.

In interpreting deeds, declarations, and plans, the existing physical boundaries of the Unit or of a Unit reconstructed in substantial accordance with the original plans thereof shall be conclusively presumed to be its boundaries rather than the metes and bounds (or other description) expressed in the deed, plan or declaration, regardless of minor lateral movement of the Building and regardless of minor variance between boundaries shown on the condominium plan or in the deed and declaration and those of the building.

4.   Is addition to the air space parcels referred to above, certain Units include rights to certain Restricted Common Areas, as defined below:

(a)  Entry Courts and Staircases.

(1)  Designated herein by the letter "E".

(2)  Lateral boundaries for entry courts are as shown on the typical diagrammatic plans attached hereto as Sheets 4 and 5.

(3)  Shall be for the exclusive user and enjoyment of the owners of the Unit which adjoins said entry court, and shall be designated as Restricted Common Area.

(4)  Entry courts on those buildings which have upper levels shall also include staircases to said upper levels. Such staircases shall be for exclusive use of the owners of the upper level Units to which they adjoin.

(b)  Attic Space.

(1)  Designated herein by the letter "A".

(2)  Shall be for the exclusive use and enjoyment of the owners of the Unit which adjoins said attic space.

(3)  Lateral boundaries of attic   space shall be the same as that shown for the Building consist of the diagrammatic plans attached hereto as

Branch :ORI,User :DDEL                          Comment:                                    Station Id :DMCL





(5)    TYPICAL DIMENSIONS OF EACH UNIT AND ITS LEVEL IS
the same as that shown for the Dwelling Area Unit
on diagrammatic plans attached hereto as sheets
4 and 5.

5.    All boundary lines intersect at right angles unless otherwise indicated.

6.    All elevations and dimensions are in feet.

7.    All wall thicknesses are as shown on diagrammatic plans
Sheets 4 and 5.

8.    Bench Mark:  HB-E29-72        1972 ADJUSTED ELEV. 11.15
IN THE SOUTHWEST PART OF THE INTERSECTION OF BOLSA CHICA
STREET AND EDINGER AVE., 190 FT. SOUTH OF THE CENTERLINE
OF EDINGER, 58.5 FT. WEST OF CENTERLINE OF BOLSA CHICA,
10.5 FT. WEST OF THE CURB FACE, 1 FT. SOUTH OF A 36 FT.
CONC. DRIVEWAY DEPRESSION, 4' SOUTHEAST OF THE CENTER OF
A 5 INCH DIAMETER STEEL LAMP POST, SET IN THE TOP OF A
CONCRETE POST, 0.2 FEET HIGHER THAN THE CURB.

### ELEVATION TABULATION

| UNIT NO. | TYPICAL FOR ALL FIRST FLOOR DWELLING FINISHED FLOOR ELEVATIONS. | TYPICAL FOR ALL GARAGE FINISHED FLOOR ELEVATIONS AT ENTRANCE. |
|---|---|---|
| 1-8 | 10.53 | 9.53 |
| 5-8 | 10.76 | 9.76 |
| 9-12 | 10.76 | 9.76 |
| 13-16 | 10.40 | 9.40 |
| 17-20 | 10.70 | 9.70 |
| 21-24 | 10.90 | 9.90 |
| 25-28 | 11.50 | 10.50 |
| 29-32 | 11.50 | 10.50 |
| 33-36 | 11.40 | 10.40 |
| 37-40 | 11.90 | 10.90 |
| 41-44 | 11.90 | 10.90 |
| 45-48 | 11.90 | 10.90 |
| 49-52 | 11.70 | 10.70 |
| 53-56 | 11.70 | 10.70 |
| 57-60 | 11.70 | 10.70 |
| 61-64 | 10.80 | 9.80 |
| 65-68 | 10.80 | 9.80 |
| 69-72 | 10.63 | 9.63 |
| 73-76 | 10.78 | 9.74 |
| 77-80 | 10.52 | 9.52 |

NOTES:

1.    ALL FINISHED CEILINGS FOR FIRST FLOOR DWELLING AREAS ARE TYPICALLY
8.1' ABOVE THEIR RESPECTIVE FIRST FLOOR DWELLING AREA FINISHED
FLOOR AS TABULATED ABOVE, UNLESS SHOWN OTHERWISE.

2.    ALL SECOND FLOOR FINISHED FLOOR ELEVATIONS ARE TYPICALLY 9.1'
ABOVE THE FINISHED FLOOR FOR THEIR RESPECTIVE FIRST FLOOR
DWELLING AREA AS TABULATED ABOVE, UNLESS SHOWN OTHERWISE.

3.    ALL SECOND FLOOR FINISHED CEILING ELEVATIONS ARE TYPICALLY 8.1'
ABOVE THEIR RESPECTIVE SECOND FLOOR DWELLING AREA FINISHED FLOOR
ELEVATION AS INDICATED IN NOTE 2.

4.    IN THE CASE OF UNITS 4, 8, 12, 16, 20, 24, 28, 32, 36, 40, 44, 48,
52, 56, 60, 64, 68, 72, 76 & 80 (SECOND FLOOR UNITS ONLY) THE
FINISHED FLOOR ELEVATIONS ARE THE SAME AS THE ADJACENT SECOND
FLOOR UNITS WITHIN THE SAME BUILDING.

5.    ALL PATIOS ARE AT FIRST FLOOR LEVEL AND THEIR FINISH SURFACE IS 0.48 BELOW THE
FIRST FLOOR DWELLING FINISHED FLOOR ELEVATIONS TO WHICH THEY ARE ASSIGNED
AND ATTACHED. THE VERTICAL ELEMENT OF THE PATIO AIR SPACE IS TYPICALLY
8.48 ABOVE THEIR FINISH SURFACE.

BK 13358 PG 1199

Branch :ORI,User :DDEL                    Comment:                    Station Id :DMCL

itself
as sheets

unless other-

on plans on

ELEV. 11,181
BOLSA CHICA
CENTERLINE
CHICA.
A 36 FT.
CENTER OF
TOP OF A

GRADE
ELEVATIONS

TYPICAL FOR ALL GRADE
CEILING ELEVATIONS.

18.60
18.66
18.70
18.90
18.00
18.00
19.60
19.60
19.60
20.00
20.00
20.00
17.00
18.00
18.80
18.90
18.70
18.60
18.60

TYPICALLY

8.1%

8.1'
FLOOR

38, 44, 48,
THE
SECOND

THE
LY









SHEET 4 OF 5 SHEETS

BK 13358 PG 1205

# CONDOMINI

LOT

# TRACT

IN THE CITY OF
COUNTY OF
STATE OF CA





**FIRST FLOOR**

**BUILDING TYPE A**



MINIUM PLAN

LOT NUMBER 1 +2

T NO. 10648

THE CITY OF HUNTINGTON BEACH
COUNTY OF ORANGE
STATE OF CALIFORNIA

BK 13358 PG 12

FIRST FL

BUILDING



FIRST FLOOR

BUILDING TYPE B



# PARCEL MAP

SHEET 2 OF 2 SHEETS
2 PARCELS
58.362 ACRES

T.P.M. 77-7
R.S.T. 8531

IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

BEING A PORTION OF THE E 1/2 OF THE NW 1/4 OF SECTION 20, T 5 S, R 11W,
IN THE RANCHO LA BOLSA CHICA, AS SHOWN ON A MAP RECORDED IN BOOK
51, PAGE 13 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

VALLEY CONSULTANTS, INC.
SAM F. KNISS, R.C.E. No 17377

27127
DEC 23 1977
108.48

## BASIS OF BEARINGS

THE BASIS OF BEARINGS ON THIS MAP IS THE CENTER
LINE OF EDINGER AVENUE ( N 89° 38' 26" E)AS SHOWN
ON TRACT No 6808, M.M. 295/39-42, RECORDS OF ORANGE COUNTY.

## MONUMENT NOTES

o - FOUND MONUMENTS AS NOTED.

• - SET 1" I.P. W/ R.C.E TAG No 17377.

⊕ - SET SPK. & WASHER MKD "RCE 17377".

EDINGER AVENUE

PARCEL 1
7.640 AC.

E MONTEREY ST.
(PRIVATE ROAD)
60' WIDE

PARCEL 2
50.755 AC.

SCALE: 1" = 200'

TR. NO. 6808
M.M 295/39-42

HUMBOLT DR.

TR NO. 5963
M.M 282/48-50

P.M. 96/30

HEIL AVENUE



**my FirstAm®    Tax Map**                    **16222 Monterey Ln #376, Huntington Beach, CA 92649**



**Tax Map**                    **16222 Monterey Ln #376, Huntington Beach, CA 92649**

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.



Units 1, 2, 3 and 4 of Lot 2 of the following:

All that certain land situated in the State of California, County of Orange, City of Huntington Beach, described as follows:

Proposed Tract No. 10542, being a subdivision of the following:

A portion of the northeast one quarter (1/4) of the northwest one quarter (1/4) of Section 20, Township 5 south, Range 11 west, in the Rancho Las Bolsa Chica, as shown on a map recorded in book 51, page 13 of Miscellaneous Maps, records of said Orange County, being described as follows:

Parcel 1 of a map filed in book 108, page 48 of Parcel Maps.

## NOTICE OF COMPLIANCE WITH CONDITIONS ON TRACT
## AUTHORIZATION FOR RELEASE FOR RECORDING

TO:        City Clerk                    Date _____

FROM:      PLANNING DEPARTMENT
           James W. Palin

TRACT NO. _____

RECREATION & PARKS FEES PAID __ 512.00 ____

Other: _____

_____
        (Signature)









SHEET 1 OF 2 SHEETS

2 LOTS
2476 ACRES
(ALL OF TENTATIVE
TRACT NO. 10542)

# TRACT NO. 10542

IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

BEING A SUBDIVISION OF PARCEL 1 AS SHOWN ON A MAP RECORDED

IN BOOK 109, PAGES 47 48 OF PARCEL MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

MADOLE & ASSOCIATES, INC.
J.M. MADOLE R.C.E. 14614

NOVEMBER, 1978

**SURVEYOR'S CERTIFICATE**

I, J.M. MADOLE, DO HEREBY CERTIFY THAT I AM A REGISTERED CIVIL ENGINEER NO. 14614 OF THE STATE OF CALIFORNIA, THAT THIS MAP CONSISTING OF 2 SHEETS AND THE TRUE AND COMPLETE SURVEY MADE IN WHICH IT CORRECTLY REPRESENTS, WERE BOTH MADE BY ME OR UNDER MY DIRECTION; THAT THE MONUMENTS ARE OF THE CHARACTER AND OCCUPY THE POSITIONS INDICATED, OR WILL BE SET IN SUCH POSITIONS WITHIN NINETY DAYS AFTER THE ACCEPTANCE OF IMPROVEMENTS; AND THAT SAID MONUMENTS ARE SUFFICIENT TO ENABLE THE SURVEY TO BE RETRACED.

R.C.E. NO. 14614

**CITY ENGINEER'S CERTIFICATE**

I HEREBY CERTIFY THAT I HAVE EXAMINED THIS MAP AND HAVE FOUND IT TO BE SUBSTANTIALLY IN CONFORMANCE WITH THE TENTATIVE MAP AS FILED WITH, AMENDED AND APPROVED BY THE CITY PLANNING COMMISSION; THAT ALL PROVISIONS OF THE SUBDIVISION MAP ACT AND CITY SUBDIVISION REGULATIONS HAVE BEEN COMPLIED WITH AND I AM SATISFIED SAID MAP IS TECHNICALLY CORRECT.

DATED THIS 26th DAY OF July, 1979.

DONALD L. LACHER
ACTING CITY ENGINEER
OF HUNTINGTON BEACH.

**CITY CLERK'S CERTIFICATE**

STATE OF CALIFORNIA }
COUNTY OF ORANGE    } SS

I HEREBY CERTIFY THAT THIS MAP WAS PRESENTED FOR APPROVAL TO THE CITY COUNCIL OF THE CITY OF HUNTINGTON BEACH AT A REGULAR MEETING THEREOF HELD ON THE 6th DAY OF August, 1979 AND THAT THEREUPON SAID COUNCIL DID, BY AN ORDER DULY PASSED AND ENTERED, APPROVE SAID MAP AND DID ACCEPT ON BEHALF OF THE PUBLIC THE DEDICATION AND DID ALSO ACCEPT ON BEHALF OF THE CITY OF HUNTINGTON BEACH:

DATED THIS 9th DAY OF August, 1979.

ALICIA M. WENTWORTH
CITY CLERK OF HUNTINGTON BEACH   BY

**PLANNING DIRECTOR CERTIFICATE**

I, JAMES W. PALIN, ACTING SECRETARY TO THE PLANNING COMMISSION OF THE CITY OF HUNTINGTON BEACH, ORANGE COUNTY, CALIFORNIA, DO HEREBY CERTIFY THAT I HAVE EXAMINED THIS MAP AND FOUND IT TO BE SUBSTANTIALLY THE SAME AS THE TENTATIVE MAP FILED WITH, AMENDED AND APPROVED BY THE CITY PLANNING COMMISSION.

DATED THIS 6th DAY OF August, 1979.

SECRETARY TO THE PLANNING COMMISSION

**COUNTY TAX COLLECTOR'S CERTIFICATE**

I HEREBY CERTIFY THAT ACCORDING TO THE RECORDS OF MY OFFICE THERE ARE NO LIENS AGAINST THE LAND COVERED BY THIS MAP OR ANY PART THEREOF FOR UNPAID STATE, COUNTY, MUNICIPAL OR LOCAL TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES, EXCEPT TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES NOT YET PAYABLE.

DATED THIS 9th DAY OF August, 1979.

ROBERT L. CITRON
COUNTY TAX COLLECTOR-TREASURER   BY

**COUNTY SURVEYOR'S CERTIFICATE**

I HEREBY CERTIFY THAT I HAVE EXAMINED THIS MAP AND HAVE FOUND THAT ALL MAPPING PROVISIONS OF THE SUBDIVISION MAP ACT HAVE BEEN COMPLIED WITH AND I AM SATISFIED SAID MAP IS TECHNICALLY CORRECT RELATIVE TO THE TRACT MAP BOUNDARY.

DATED THIS 17th DAY OF Aug, 1979.

C. R. NELSON
COUNTY SURVEYOR   BY

**COUNTY CLERK'S TAX CERTIFICATE**

STATE OF CALIFORNIA }
COUNTY OF ORANGE    } SS

I HEREBY CERTIFY TO THE RECORDER OF ORANGE COUNTY THAT THE PROVISIONS OF THE SUBDIVISION MAP ACT HAVE BEEN COMPLIED WITH REGARDING DEPOSITS TO SECURE THE PAYMENT OF TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES ON THE LAND COVERED BY THIS MAP.

DATED THIS 14th DAY OF August, 1979.

JUNE ALEXANDER
CLERK OF THE BOARD   BY June Alexander



# TRACT NO. 10542

IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

BK 13383 PG 1868

ROBERT P. WARMINGTON
16592 Hale Avenue
Irvine, California 92714

**$5.00**

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:01 A.M.  NOV 6 1979
LEE A. BRANCH, County Recorder

(Space above line for Recorder's use only)

## COVENANT RUNNING WITH THE LAND

THIS INSTRUMENT is made this _19th_ day of _October_,
19 79, by HOUSER BROS. CO., a California limited partnership
("Houser") whose sole general partners are Clifford C.
Houser and Vernon F. Houser.

### RECITALS

A.    Houser is the owner of certain real property in
the City of Huntington Beach, County of Orange, State of
California, described as Parcels 1 and 2 as shown on a Par-
cel Map recorded in Book 108, Pages 47 and 48, inclusive, of
Parcel Maps in the Office of the County Recorder of said
County (hereinafter "Parcel 1" and "Parcel 2" respectively).

B.    Concurrently herewith, Houser is leasing Parcel 1
to ROBERT P. WARMINGTON, a married man ("Warmington") by a
Ground Lease of even date herewith (the "Ground Lease"), a
memorandum of which is being recorded concurrently or
substantially concurrently with this instrument.

C.    Pursuant to the Ground Lease, Warmington may use
Parcel 1 to develop thereon single-family residences or con-
dominiums.  The Ground Lease further provides that access
to Parcel 1 from Edinger Avenue (the abutting public street)
is to be had over a portion of Monterey Lane, a private
street located on right-of-way easements on either side of
the southerly boundary of Parcel 1 with Parcel 2.  The
maintenance of the portion of Monterey Lane as to which
Warmington (and the residents of homes or condominiums to
be built by Warmington on Parcel 1) has easement rights is
the responsibility of Houser as Landlord under the Ground
Lease as provided therein.

D.    It is the intention of Houser and Warmington that
Houser's obligations under the Ground Lease also run with
and bind a portion of Parcel 2 and the successive owners
thereof as described in this instrument.

NOW, THEREFORE, in consideration of the foregoing and
other good and valuable consideration, the receipt of which
is hereby acknowledged, including without limitation, Warm-
ington's execution of the Ground Lease, Houser hereby cov-
enants, declares and agrees that Houser's obligations as

-1-

BK 13383 PG 1869

Landlord concerning Monterey Lane as set forth in Section 7.9 of the unrecorded Option Agreement between Landlord and Tenant, as optionor and optionee respectively, which preceded the execution of the Ground Lease, hereby incorporated herein by reference, are also covenants running with the portion of Parcel 2 described by extending the southerly boundary of Parcel 1 parallel to Edinger Avenue to the westerly boundary of Parcel 2, and every portion of the area so described (the "Covenant Area"), and shall bind the Covenant Area, Houser and Houser's heirs, assigns, representatives and successors in interest for the benefit of Warmington and the leasehold estate in Parcel 1 under the Ground Lease and any portions into which it may be divided, by Residential Leases (as defined in the Ground Lease) or otherwise. In the event of a breach of the foregoing covenants, or any of them, Warmington may seek any remedy available at law or in equity, including without limitation an action seeking damages, to seek specific enforcement thereof, or to enjoin the breach or continued breach thereof. It is specifically understood that any of the foregoing remedies may be employed at the option of Warmington, and the failure to do so may allow any one or more of any such breach shall not be a waiver of the right to employ any of such remedies upon the continuance of such breach or any subsequent breach. As used in the foregoing, "Warmington" shall include any of Warmington's heirs, successors or representatives as well as any assignee or sublessee of Warmington's leasehold estate under the Ground Lease in Parcel 1 or any portion into which it may be divided and any leasee under a Residential Lease, Consumer Sublease or Affiliate Sublease (as defined in the Ground Lease); provided, however, lessees under such Residential Leases and sublessees under such Consumer Subleases shall not have the right to enforce such covenant except on the majority vote of the association of such lessees or sublessees formed by Warmington to manage Parcel 1. If Warmington or such lessees under such Residential Leases acquire the fee interest in all or a portion of Parcel 1, the benefit of the covenant described above shall run in favor of such fee interests and their successors therein, but subject to the same restriction concerning enforceability by residents of Parcel 1 set forth above. Nothing herein shall relieve Warmington or lessees under such Residential Leases or sublessees under such Consumer Subleases from their obligations to pay for a share in the maintenance of the portion of Monterey Lane used to gain access to Parcel 1.

IN WITNESS WHEREOF, Houser has executed this instrument on the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _Clifford C. Houser_
    Clifford C. Houser

By _Vernon F. Houser_
    Vernon F. Houser

BK 13383 PG 1870

STATE OF CALIFORNIA  )
                     )  ss.
COUNTY OF ORANGE     )

On this *14th* day of *October*, 1979,
before me, a Notary Public, personally appeared Clifford C.
Houser and Vernon F. Houser, known to me to be the general
partners of the partnership that executed the within instru-
ment, and acknowledged to me that such partnership executed
the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981

*Christine A. Belmonte*
Notary Public in and for said
County and State

- 3 -

# Title Chain & Lien Report

**4476 Alderport Dr #53, Huntington Beach, CA 92649-2288**

APN: 937-630-53

Orange County Data as of: 07/14/2020

| | Search Start Date: | 01/01/1967 | Start Date: | 01/01/1967 |
|---|---|---|---|---|
| | Search End Date: | 08/03/2020 | End Date: | 08/03/2020 |

| Date | Type | Grantor | Grantee | Document # | Doc Ref. |
|---|---|---|---|---|---|
| 11/07/1980 | Plat, County Miscellaneous Plat | Houser Bros | Warmington Robert | 13824.1253 | |
| 11/07/1980 | Plat, County Miscellaneous Plat | Warmington Robert | Robert P Warmingto | 13824.1256 | |
| 11/07/1980 | Lease | Houser Bros | Warmington Robert | 13824.1259 | 121726 |
| 03/22/1983 | Assignment Of Lease Or Sublease | Turner John F | Cal State | 1983.121726 | |
| 11/07/1980 | Lease | Warmington Robert | Turner John F | 13824.1274 | 331538 |
| 05/22/2007 | Assignment Of Lease Or Sublease | Walther Virginia | Rider Larry W | 2007.331538 | |
| 11/07/1980 | Deed | Robert P Warmingto | Warmington Robert | 13824.1291 | |
| 11/07/1980 | Deed | Robert P Warmingto | Turner John F | 13824.1294 | |
| 11/07/1980 | Deed Of Trust | Turner John F | 4476 Alderport | 13824.1299 | 160268 |
| 04/18/1983 | Assignment | | | 1983.160268 | |
| 11/07/1980 | Plat, County Miscellaneous Plat | Houser Bros | Warmington Robert | 13824.1306 | |
| 11/07/1980 | Plat, County Miscellaneous Plat | Warmington Robert | Robert P Warmingto | 13824.1309 | |
| 01/25/1982 | Lien | Turner John F | | 1982.28038 | 229508 |
| 04/27/1987 | Release | Turner John F | | 1987.229508 | |
| 03/22/1983 | Deed Of Trust | Turner John F | Cal State | 1983.121725 | 158849 |
| 04/15/1983 | Request For Notice | | | 1983.158849 | |
| 09/15/1986 | Assignment | | | 1986.422792 | |
| 02/03/1987 | Office Information, (Additional Document Information) | Ticor | | N/A | |
| 04/23/1987 | Deed Of Trust | Turner John F | Mercury Sav | 1987.223072 | 452800 |
| 08/22/1991 | Assignment | | | 1991.452800 | |
| 04/27/1987 | Substitution Of Trustee | | | 1987.229509 | |
| 04/27/1987 | Reconveyance | | | 1987.229510 | |
| 04/27/1987 | Assignment | Cal State | Turner John F | 1987.229511 | |
| 08/20/1987 | Reconveyance | | | 1987.473448 | |
| 09/24/1998 | Assignment Of Lease Or Sublease | G HB Investors | Wertin Trust | 1998.644009 | |
| 09/24/1998 | Assignment Of Lease Or Sublease | Wertin Trust | Brief Trust | 1998.644010 | |
| 07/23/1999 | Assignment Of Lease Or Sublease | Ghb Investors & | BS Investors LLC | 1999.542301 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.    PAGE 1 OF 4

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**30.00**

19980644010 4:03pm 09/24/98

005 11009904 11 28
A34 9 6.00 24.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

BARRY BRIEF, Trustee
c/o Laguna Monarch Group, Inc.
10 Monarch Bay Plaza, Suite B
Monarch Beach, CA  92629

9820299-AS

_____
                SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN #_____

Documentary Transfer Tax: ___$0___     NO TRANSFER TAX DUE
                                        Term of Lease less than
                                        99 years

### MEMORANDUM OF ASSIGNMENT OF GROUND LEASE AND SUBLEASES

1.    This Memorandum of Assignment of Ground Lease
("Memorandum") is made and entered into by and between BARBARA D.
WERTIN SEPARATE PROPERTY TRUST DATED APRIL 21, 1995 ("Assignor"),
and the BARRY BRIEF FAMILY TRUST DATED MAY 11, 1993 ("Assignee").

2.    Assignor has assigned to Assignee all of its
right, title and interest in and to an undivided 78.34% interest
in a certain ground lease and subleases covering real property
located in the City of Huntington Beach, County of Orange, State
of California, as more particularly described on attached
Exhibit "A", which is incorporated herein by this reference, [unrecorded]
pursuant to the terms and conditions of that certain Assignment
and Assumption of Interest in Ground Lease and Subleases dated
effective September 24, 1998, by and between Assignor and
Assignee (the "Assignment").  The terms and conditions of the
Assignment are incorporated herein by this reference.

            Executed on _October 9_____, 1998 at _Irvine_____,
California.

"ASSIGNOR"                      "ASSIGNEE"

BARBARA D. WERTIN SEPARATE       BARRY BRIEF FAMILY TRUST
PROPERTY TRUST DATED APRIL       DATED MAY 11, 1992
21, 1995
                                 By: _____
By: _Barbara D Wertin_               Barry Brief
    Barbara D. Wertin             Its:  Trustee
Its:  Trustee

STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

On _September 9 1998_, before me,
_____, Notary Public, personally
appeared BARBARA D. WERTIN, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
authorized signature(s) on the instrument the person(s), or the
entity on behalf of which the person(s) acted, executed the
instrument.

_____
NOTARY PUBLIC

(seal)        


STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

On _9-10-98_, before me,
_W.S. BETTINI_, Notary Public, personally
appeared BARRY BRIEF, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person whose name
is subscribed to the within instrument and acknowledged to me
that he executed the same in his authorized capacity, and that by
his authorized signature on the instrument the person, or the
entity on behalf of which the person acted, executed the
instrument.

_____
NOTARY PUBLIC

(seal)    

2

221

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS
AS FOLLOWS:

NAME OF NOTARY:               **CHRISTINE JAMESON**

COUNTY WHERE BOND IS FILED:   **ORANGE**

DATE COMMISSION EXPIRES:      **AUG 7, 2002**

COMMISSION NO.:               **1189752**

MANUFACTURERS/VENDOR NO.      **VSI1**


PLACE OF EXECUTION:   SANTA ANA, CALIFORNIA
DATE:     September 24, 1998


BY: _____
    FIRST AMERICAN TITLE INSURANCE COMPANY

Alta Plain
Language Commitment

**OR-9820299**

TITLE OFFICER - SWIERCZEWSKI

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, **COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH,** DESCRIBED AS FOLLOWS:

PARCEL 1:

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON AREA OF LOTS 1 AND 2 OF TRACT NO. 10542, AS SHOWN ON A MAP RECORDED IN BOOK 456, PAGES 49 AND 50 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON AREA.

PAGE 4

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

THE ESTATE OR INTEREST IN THE LAND DESCRIBED IN THIS COMMITMENT IS:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES AS TO PARCELS 1 AND 2, SAID ESTATES BEING MORE PARTICULARLY DESCRIBED AS THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET FORTH IN SUBPARAGRAPH (A) HEREIN BELOW, AND SUBLESSORS' INTERESTS UNDER THOSE CERTAIN SUBLEASES SET FORTH IN SUB-PARAGRAPH (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)    THOSE CERTAIN GROUND LEASES, DATED AUGUST 1, 1980, EXECUTED BY HOUSER BROS. CO., A LIMITED PARTNERSHIP ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 198 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |

PAGE 6

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 27 | 13789 | 1600 |
| 28 | 13787 | 1834 |
| 29 | 13778 | 173 |
| 30 | 13896 | 1090 |
| 31 | 14091 | 1139 |
| 32 | 13726 | 1346 |
| 33 | 14005 | 1903 |
| 34 | 14048 | 1460 |
| 35 | 13861 | 723 |
| 36 | 13814 | 666 |
| 37 | 13768 | 1032 |
| 38 | 13793 | 1179 |
| 39 | 13818 | 1665 |
| 40 | 13783 | 1875 |
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14094 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |

PAGE 7

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)   THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT | ORIGINAL |
|---|---|---|---|---|
| SUBLESSEE | | | | |
| 1 | 13754 | 243 | | |
| 2 | 14091 | 1066 | | |
| 3 | 14045 | 133 | | |
| 4 | 13733 | 216 | AND | |
| | 13754 | 52 | | |
| 5 | 13760 | 917 | | |
| 6 | 13982 | 432 | | |
| 7 | 13754 | 312 | | |
| 8 | 13726 | 1256 | AND | |
| | 13754 | 69 | | |
| 9 | 13822 | 1561 | | |
| 10 | 13773 | 25 | | |
| 11 | | | 82-128058 | |
| 12 | 13807 | 1584 | | |
| 13 | 13780 | 369 | | |
| 14 | 13797 | 1103 | | |
| 15 | 13780 | 477 | | |
| 16 | 13726 | 1328 | AND | |
| | 13754 | 86 | | |
| 17 | 13763 | 234 | | |
| 18 | 13915 | 205 | | |
| 19 | 13997 | 361 | | |
| 20 | 13807 | 1684 | | |
| 21 | 13733 | 296 | | |
| 22 | 13775 | 250 | | |
| 23 | 13803 | 602 | | |
| 24 | 14038 | 707 | | |
| 25 | 13793 | 970 | | |
| 26 | 13814 | 622 | | |
| 27 | 13789 | 1615 | | |
| 28 | 13787 | 1849 | | |
| 29 | 13778 | 188 | | |
| 30 | 13896 | 1125 | | |
| 31 | 14091 | 1154 | | |
| 32 | 13726 | 1364 | AND | |
| | 13754 | 120 | | |
| 33 | 14005 | 1919 | | |

PAGE 8

226

Alta Plain
Language Commitment

OR-9820299
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 34 | 14048 | 1475 |
| 35 | 13861 | 738 |
| 36 | 13814 | 681 |
| 37 | 13768 | 1047 |
| 38 | 13793 | 1194 |
| 39 | 13818 | 1680 |
| 40 | 13783 | 1800 |
| 41 | 13824 | 1327 |
| 42 | 13867 | 813 |
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

PAGE 9

227

Alta Plain
Language Commitment

**OR-9820299**

TITLE OFFICER - SWIERCZEWSKI

NOTE:  THE LESSEE'S INTEREST UNDER SAID LEASES AND THE SUB-LESSOR'S INTEREST
UNDER SAID SUBLEASE HAS BEEN ASSIGNED TO G/HB INVESTORS, A CALIFORNIA LIMITED
PARTNERSHIP BY ASSIGNMENT WHICH RECORDED SEPTEMBER 30, 1986 AS INSTRUMENT
NO. 86-456266 OF OFFICIAL RECORDS, REFERENCE BEING HEREBY MADE TO THE RECORD
THEREOF FOR FULL PARTICULARS.

PAGE 10

8691                          BK 13824 PG 1253

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

Houser Bros. Co.
17610 Beach Boulevard
Suite 32
Huntington Beach, California

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:00 A.M. NOV 7 1980

LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF MASTER LEASE

HOUSER BROS. CO., a limited partnership, as Landlord,
and ROBERT P. WARMINGTON, as Tenant, hereby cancel, effective
when this instrument is recorded in the Office of the County
Recorder of Orange County, California, that certain Ground
Lease dated October 19, 1979, a Short Form-Memorandum of
which was recorded in Book 13424, Page 499, Official Records
of Orange County, California, with respect to those portions
of Lots 1 and 2 of Tract 10542 in the City of Huntington
Beach, County of Orange, State of California, as shown on a
Map recorded in Book 456, Pages 49 and 50 of Miscellaneous
Maps, in the Office of the County Recorder of Orange County,
California, described on Exhibit A attached hereto.

IN WITNESS WHEREOF, HOUSER BROS. CO. and ROBERT P.
WARMINGTON have executed this instrument as of August 1,
1980.

HOUSER BROS. CO.

By _____

By _____

_____
ROBERT P. WARMINGTON

BK 13824 PG 1254

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF ORANGE     )

On _____ Aug 12, 1980, before me, the undersigned,
a Notary Public in and for said County and State, personally
appeared ____ VERNON F. HOUSER _____ and
____ CLIFFORD C. HOUSER _____ , known to me to be
_____ two _____ of the partners of the limited
partnership that executed the within instrument, and
acknowledged to me that such limited partnership executed
the same.

OFFICIAL SEAL
PEARL L HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFONRIA )
                     ) ss.
COUNTY OF ORANGE     )

On _August 1_____ , 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

2

BK 13824 PG 1255

## EXHIBIT A

### Parcel 1

Unit 53, as shown and defined on a Condominium Plan ("the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED I

8692

BK 13824 PG 1256

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California  92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF SUBLEASE

ROBERT P. WARMINGTON, as Landlord, and THE ROBERT P.
WARMINGTON CO., a California corporation, as Tenant, hereby
cancel, effective when this instrument is recorded in the
Office of the County Recorder of Orange County, California,
that certain Sublease dated October 19, 1979, a Short Form-
Memorandum of which was recorded in Book 13424, Page 504,
Official Records of Orange County, California, with respect
to those portions of Lots 1 and 2 of Tract 10542, in the City
of Huntington Beach, County of Orange, State of California,
as shown on a map recorded in Book 456, Pages 49 and 50 of
Miscellaneous Maps, in the Office of the County Recorder of
Orange County, California, described on Exhibit A attached
hereto.

IN WITNESS WHEREOF, ROBERT P. WARMINGTON and THE
ROBERT P. WARMINGTON CO. have executed this instrument as
of August 1, 1980.

_____
Robert P. Warmington

THE ROBERT P. WARMINGTON CO.

By _____

By _____

BK 13824 PG 1257

STATE OF CALIFORNIA   )
                   ) ss.
COUNTY OF ORANGE     )

    On August 1 , 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.



                                     Notary Public in and for
                                     said County

[SEAL]


STATE OF CALIFORNIA   )
                   ) ss.
COUNTY OF ORANGE     )

    On August 1 , 1960, before me, the undersigned, a
Notary Public in and for said State, personally appeared
    OLIVER N. CRARY           , known to me to be
the   Vice President   , and   WILLIAM J. PITTMAN   ,
known to me to be the   Secretary     of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

    WITNESS my hand and official seal.

                                         Notary Public in and for said
                                       County

[SEAL]

2

BK 13824 PG 1258

## EXHIBIT A

### Parcel 1

Unit 53 , as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED I



*my*FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Record of Survey - Book.Page |
| Book: | 30 |
| Page: | 40 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.   AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

**Recorded Document**                                                                                                                           **04/05/2022**

©2005-2022 First American Financial Corporation and/or its affiliates. All rights reserved.



# RECORD OF SURVEY

## LOMITA LAND AND WATER CO.

SHOWING A PORTION OF THE BOUNDARY LINE LOCATED
IN SECTIONS 20 & 29, BOTH IN T 5 S, R 11 W, S.B.
B. & M., ORANGE COUNTY, CALIF.

SCALE: 1"= 100'          FEBRUARY, 1956.

Bearings are based on ALGONQUIN STREET as being N.0°40'00" W, as shown on Tract No. 86, M.M. 10/35,36.
2" Pipe, set in concrete and tagged L.S. 2326, set at all points marked thus "●", unless otherwise noted.

8693

BK 13824 PG 1259

$ 17.00

Recorded at the Request of and
When Recorded Mail To:

Robert P. Warmington
16592 Hale Avenue
Irvine, CA 92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

No Consideration
Lease Is For a Definite Term

AP 178-011-01

## GROUND LEASE

THIS GROUND LEASE is made this 1st day of August, 1980, by
and between HOUSER BROS. CO., a limited partnership
organized and existing under the laws of the State of
California in which Clifford C. Houser and Vernon F.
Houser constitute the sole general partners whose address
is Suite 204, 610 East Seventeenth Street, Santa Ana,
California 92701 (herein termed the "Landlord"), and
Robert P. Warmington whose address is 16592 Hale Avenue,
Irvine, CA 92714.

## W I T N E S S E T H :

1. **PROPERTY LEASED.** For and in consideration of the
payment of the rents and taxes and other charges and for
the performance of all of the covenants and conditions of
this Lease by Tenant, Landlord hereby leases to Tenant
those portions of Lots 1 and 2 of Tract 10542 in the City
of Huntington Beach, County of Orange, State of
California, as shown on a map recorded in Book 456, Pages
49 and 50 of Miscellaneous Maps, in the Office of the
County Recorder of Orange County, California, described as
follows:

### Parcel 1

Unit 53 , as shown and defined on a Condominium
Plan (the "Condominium Plan") recorded in Book 13358,
Pages 1193, et seq., Official Records of Orange
County, California, excepting that portion consisting
of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the
Common Area as shown and defined on the Condominium
Plan, excepting that portion consisting of buildings
and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy
of those portions of the Restricted Common Area as
defined on said Condominium Plan for entry and
staircases and attic space relating to said Unit,
excepting that portion consisting of buildings and
other improvements.

WPN:4077A

237

BK 13824 PG 1260

Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

(hereinafter referred to as the "leased land").

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2.  TERM OF LEASE.  The leased land is leased for a basic term commencing on the date this Ground Lease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3.  RENTAL.  Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the annual sum of Nine Hundred DOLLARS ($900) in monthly installments of $75.00 each, in advance, on the first day of calendar month of said term; provided, however, if said term commences on other than the first day of a calendar month the first installment shall be paid on such commencement date in an appropriately reduced amount.  Said rent is subject to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment".  All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4.  TAXES AND ASSESSMENTS.  In addition to the rents above provided, Tenant shall pay, prior to the delinquency date thereof, all taxes and general and special assessments of every description which, during the term of this Lease, may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, whether belonging to Landlord or Tenant, and Tenant agrees to protect and hold harmless the Landlord and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other expenses which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5.  USE OF LEASED LAND.  Tenant shall use the leased land for any purposes permitted under the zoning and other land use laws and regulations applicable thereto.  Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

WPN: 4077A                    2

BK 13824 PG 1261

6.  IMPROVEMENTS.  When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of landlord whatsoever.

7.  MAINTENANCE OF LEASED LAND.  Landlord shall not be obligated to make any repairs, alterations, additions or improvements in or to or upon or adjoining the leased land or any structure of other improvement that may be constructed or installed thereon, but Tenant shall, at all times during the full term of this Lease and at its sole cost and expense, keep and maintain all buildings, structures and other improvements on the leased land, if any, in good order and repair, and the whole of the leased land and all improvements thereto free of weeds and rubbish and in a clean, sanitary and neat condition, and Tenant shall construct, maintain and repair all facilities and other improvements which may be required at any time by law upon or adjoining or in connection with or for the use of the leased land or any part thereof, and Tenant shall make any and all additions to or alterations in any buildings and structures on said premises which may be required and shall otherwise observe and comply with any and all public laws, ordinances and regulations for the time being, applicable to the leased land, and Tenant agrees to indemnify and save harmless the Landlord against all actions, claims and damages by reason of Tenant's failure to keep and maintain said premises and any buildings and improvements thereon as hereinabove provided, or by reason of its nonobservance or nonperformance of any law, ordinance and regulation applicable thereto.

8.  RESTORATION OF IMPROVEMENTS.  If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9.  LIENS AND CLAIMS.  Tenant shall not suffer or permit to be enforced against Landlord's title to the leased land, or any part thereof, any lien, claim or demand arising from any work of construction, repair, restoration, maintenance or removal as herein provided or otherwise arising, except liens, claims or demands suffered by or arising from the actions of Landlord, and Tenant shall pay all such liens, claims and demands before any action is brought to enforce the same against said land.  Tenant agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims or demands, together with all costs and expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred by Landlord in connection therewith.  Landlord shall have the right at

WPN: 4077A                    3

BK 13824 PG 1262

any time to post and maintain on the leased land such
notices as may be necessary to protect landlord against
liability for all such liens or otherwise.
Notwithstanding anything to the contrary contained in this
Article, if Tenant shall, in good faith, contest the
validity of any such lien, claim or demand, the Tenant
shall, at its expense, defend itself and landlord against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against Landlord or the leased land, and if
Landlord shall require, Tenant shall furnish to Landlord a
surety bond satisfactory to Landlord in an amount equal to
such contested lien, claim or demand, indemnifying
Landlord aainst liability for same, or if Landlord shall
request, Tenant shall procure and record the bond provided
for in Section 3143 of the California Code of Civil
Procedure, or any comparable statute hereafter enacted
providing for a bond freeing the leased land from the
effect of such lien or claim or action thereon.

10.  LIABILITIES.  Landlord shall not be liable for any
loss, damage or injury of any kind whatsoever to the
person or property of Tenant, or any of Tenant's
employees, guests or invitees or of any other person
whomsoever, caused by any use of the leased land or by any
defect in any building, structure or other improvement
constructed thereon, or arising from any accident on the
leased land or any fire or other casualty thereon, or
occasioned by the failure on the part of Tenant to
maintain said premises in safe condition, or by any
nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  LANDLORD PAYING CLAIMS.  Should Tenant fail or refuse
to pay any tax, assessment or other charge upon the leased
land when due and payable as provided herein, or any lien
or claim arising out of the construction, repair,
restoration, maintenance and use of the leased land and
the buildings and improvements thereon, or any other
claim, charge or demand which Tenant has agreed to pay
under the covenants of this Lease, and if after thirty
(30) days written notice from landlord to Tenant and to
its authorized encumbrancer, if any, Tenant or its said
encumbrancer shall fail or refuse to pay and discharge the
same, then Landlord may, at its option, pay such tax,
assessment, lien, claim, charge or demand, or settle or
discharge any action therefor or judgment thereon, and all
costs, expenses and other sums incurred or paid by
Landlord in connection therewith shall be repaid to
Landlord by Tenant upon written demand, together with
interest thereon at the rate of ten (10%) percent per
annum from the date of payment until repaid, and any

WFN: 4077A                    4

BK 13824 PG 1263

default in such repayment shall constitute a breach of the covenants and conditions of this Lease. Notwithstanding the forgoing, if Tenant shall in good faith contest the validity of any tax or assessment levied again.t the leased land, then Tenant may withhold payment thereof pending settlement of its claim or pay the same under protest; and, in either case, at Tenant's expense, shall defend itself and landlord against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the leased land.

12. **ASSIGNMENT.** Tenant shall have the right to assign, sublet or otherwise transfer its interest under this Lease without the prior written consent of Landlord. Notwithstanding the foregoing, this Lease or any right hereunder shall in no case be assigned separate and apart from the Tenants interest in the improvements located on the leased land. Also notwithstanding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

13. **ENCUMBRANCES.** Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed"), for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions. Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

A. Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of any such trust deed or assignment, the provisions of this Lease shall control.

B. Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C. Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto. Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D. Landlord agrees that it will not terminate this Lease because of any default or breach hereunder on the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within ninety (90) days after service of written notice on the encumbrancer by Landlord

WPN: 4077A                    5

BK 13824 PG 1264

of its intention to terminate this Lease for such default or breach, shall:

    (a)  Cure such default or breach if the same can be cured by the payment or expenditure of money provided to be paid under the terms of this Lease, or if such default or breach is not so curable, cause the trustee under the trust deed to commence and thereafter to diligently pursue to completion steps and proceedings for the foreclosure by sale or by exercise of a power of sale under and pursuant to the trust deed in the manner provided by law; and

    (b)  Keep and perform all of the covenants and conditions of this Lease requiring the payment or expenditure of money by Tenant until such time as said leasehold shall be sold upon foreclosure, or by exercise of a power of sale, pursuant to the trust deed or shall be released or reconveyed thereunder; provided, however, that if the beneficiary under such trust deed shall fail or refuse to comply with any and all of the conditions of this Article with respect to a breach or default as to which notice of intention to terminate this Lease has been given to the encumbrancer, then and thereupon Landlord shall be released from the covenants of forebearance herein contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this Article may be given concurrently with or after Landlord's notice of default to Tenant as herein provided for in the Article entitled "Termination".

14.  TERMINATION.  Should Tenant fail to pay any installment of rent or any other sum provided in this Lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of thirty (30) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this Lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of sixty (60) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this Lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this Lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased

WPN: 4077A          6

BK 1́      ̃ 1265

land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant shall execute, acknowledge and deliver to Landlord a proper instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to the leased land and any and all improvements thereon, if not removed by virtue of this Lease or otherwise.

16.  PLACE OF PAYMENTS AND NOTICES.  All rents and other sums payable by Tenant to Landlord hereunder shall be paid to the Landlord at the address set forth after Landlord's name above.  Whenever either party hereto desires to give written notice to the other respecting this Lease, such notice, if not personally delivered to Landlord or to Tenant, shall be sent by certified or registered mail, with postage prepaid, and directed to either party at the address hereinabove specified, or at such other address as either party may hereafter designate in writing.  The service of any such written notice shall be deemed complete at the time of such personal delivery or within two (2) days after the mailing thereof in Orange County, California, as herein provided.  Should Landlord or Tenant consist of more than one person, the personal delivery or mailing of such notice to any one of such persons shall constitute complete service upon all such persons.  Any notice provided in the Article hereof entitled "Encumbrances" to be given by Landlord to any encumbrancer of Tenant shall be served in the same manner as herein provided in this Article and shall be delivered to the encumbrancer or directed to its address as last shown on the records of Landlord.

17.  REMEDIES.  Should Tenant at any time be in default hereunder pursuant to the provisions of the Article hereof entitled "Termination", then notwithstanding Tenant's breach of this Lease and abandonment of the leased land, this Lease shall continue in effect so long as Landlord does not terminate Tenant's right to possession and Landlord may enforce all of its rights and remedies hereunder, including, at the option of Landlord:

     A.  The right to declare the term hereof ended and with process of law to reenter the leased land and take possession thereof and remove all persons therefrom, and Tenant shall have no further claim thereon or hereunder; or

     B.  The right to collect rent and other charges as the same may from time to time become due and to bring actions for such collections without terminating this Lease, and to thereafter at any time elect to terminate this Lease and all of the rights of Tenant in or to the leased land.

Should Landlord elect to terminate the Lease, Landlord shall be entitled to recover the worth at the time of the award of the amount by which the unpaid rent for the balance of the term, after the time of the award, exceeds the amount of the rental loss for the same period that Tenant proves could be reasonably avoided, together with

WP: 4077A                7

BK 13824 PG 1268

the rent then unpaid, if any, together with any other remedy permitted under California Civil Code Section 1951.2 or any other similar statute hereafter enacted.

If Landlord shall elect to reenter the leased land under the provisions of A or B above, Landlord shall not be liable for damages by reason of such reentry.

Notwithstanding any other provision of this Lease, Landlord agrees that if the default complained of, other than for the payment of monies, is of such nature that the same cannot be cured within the period specified above, then such default shall be deemed to be cured if Tenant, within such period, shall have commenced the curing thereof and shall continue thereafter with all due diligence to cause such curing and does so complete the same with the use of such diligence.

Each of the terms, covenants, conditions and provisions of Tenant under this Lease is a material consideration for this Lease, the breach of which shall be deemed a default hereunder. All rights, options and remedies of Landlord contained in this Lease shall be construed and held to be cumulative, and no one of them shall be exclusive of the other, and Landlord shall have the right to pursue any one or all of such remedies or any other remedy or relief which may be provided by law, whether or not stated in this Lease. No waiver by Landlord of a breach of any of the terms, covenants or conditions of this Lease by Tenant shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition herein contained. No waiver of any default of Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect default other than as specified in said waiver. The consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar acts by Tenant.

In the event any action shall be instituted between Landlord and Tenant in connection with this Lease, the party prevailing in such action shall be entitled to recover from the other party all of its costs, including reasonable attorneys' fees, as fixed by the court therein.

18. REPRESENTATIONS. Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19. HOLDING OVER. This Lease shall terminate and become null and void without further notice upon the expiration of said term. Any holding over shall not constitute a

WPN: 4077A                    8

BK 13824 PG 1267

renewal hereof, but the tenancy shall thereafter be on a
month-to-month basis and otherwise on the same terms and
conditions as herein set forth.

20. **EMINENT DOMAIN.**

A. **Definition of Terms.** The term "total taking", as
used in this Article, means the taking of the entire
leased land under the power of eminent domain or the
taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes herein above provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary conveyance
by Landlord to an agency, authority or public utility
under threat of a taking under the power of eminent domain
in lieu of formal proceedings.

The term "date of taking" shall be the date upon which
title to the leased land or portion thereof passes to and
vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B. **Effect of Taking.** If, during the term hereof,
there shall be a total taking or partial taking under the
power of eminent domain, then the leasehold estate of
Tenant in and to the leased land or the portion thereof
taken shall cease and terminate as of the date of taking
of the said land. If this Lease is so terminated, in
whole or in part, all rentals and other charges payable by
Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liaility in relation thereto.

C. **Allocation of Award - Total Taking.** All
compensation and damages awarded for the total taking of
the leased land and Tenant's leasehold interest therein
shall be allocated a follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The then fair market value of all of
the improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

WPN: 4077A                9

BK 13824 PG 1268

D.  Allocation of Award - Partial Taking.  All compensation and damages awarded for the taking of a portion of the leased land shall be allocated and divided as follows:

(a)  Tenant shall be entitled to an amount equal to the sum of the following:

(i)  The proportionate reduction of the fair market value of the improvements located on the leased land; and

(ii)  The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

E.  Reduction of Rent on Partial Taking.  In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date of the expiration of the term of this Lease, whichever date is sooner.  Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased and immediately thereafter.

F.  Determination of Fair Market Value.  Whenever fair market value must be determined for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by the arbitration procedure set forth in the Article entitled "Rental Adjustment".

21.  RENTAL ADJUSTMENT.  Effective January 1, 2000, January 1, 2020 and January 1, 2040, the annual rental payer hereunder shall be adjusted to a sum equal to 8% of the unimproved fair market value of the Leased Land. After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the rental, as so adjusted, be less than the initial rental in the Article of this Lease entitled "Rental".

If, by January 1, 2000, January 1, 2020 or January 1, 2040 (as the case may be), the parties hereto shall have failed to agree upon such adjusted rental, then and thereupon the fair market value of the leased land and the amount of rental to be adjusted in relation thereto, as hereinafter provided, shall be determined by arbitration as follows: within ten (10) days after the date set for determining fair market value, each of the parties hereto shall appoint in writing an arbitrator and give written

WPN: 4077A                    10

BK 13824 PG 1269

notice thereof to the other party; or, in case of the
failure of either party so to do, the other party may
apply to the Superior Court of Orange County, California,
to appoint an arbitrator to represent the defaulting party
in the manner prescribed in the then existing statutes of
the State of California applicable to arbitration, the
provisions of which statutes shall apply to and govern the
arbitration herein provided for with the same effect as
though incorporated herein.  Within ten (10) days after
the appointment of said two (2) arbitrators (in either
manner) they shall appoint in writing a third arbitrator
and give written notice thereof to Landlord and Tenant,
and if they shall fail to do so, then either party hereto
may make application to said Superior Court to appoint
such third arbitrator in the manner prescribed in said
arbitration statutes.  The three (3) arbitrators so
appointed (in either manner) shall promptly fix a
convenient time and place in the County of Orange for
hearing the matter to be arbitrated and shall give
reasonable written notice thereof to each of the parties
hereto and with reasonable diligence shall hear and
determine the matter in accordance with the provisions
hereof and of said arbitration statutes, and shall execute
and acknowledge their award thereon in writing and cause a
copy thereof to be delivered to each of the parties hereto
and the award of a majority of said arbitrators shall
determine the questions arbitrated, and a judgment may be
rendered by said Superior Court confirming said award or
the same may be vacated, modified or corrected by said
Court at the instance of either of the parties hereto in
accordance with said arbitration statutes, and said
judgment shall have the force and effect as provided in
said statutes.

Each of the parties hereto shall pay for the services of
its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration.  Pending the
final decision of such adjusted rental, Tenant shall pay
to Landlord the amount of rent previously payable under
the Article of this Lease entitled "Rental".  If such
adjusted rental, as finally determined, shall exceed the
amount of the previous rental, the excess amount accruing
during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final
determination of said adjusted rental.  If such adjusted
rental, as finally determined, shall be less than such
previous rental, the amount of any excess paid by Tenant
during said interim period shall be credited against the
first rentals thereafter payable hereunder.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage
of water from the leased land and improvements thereon to
drain or flow into adjacent streets and not upon adjoining
property, and Tenant shall so maintain all slopes or
terraces on the leased land as to prevent any erosion
thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on
the leased land, the wall or walls of which adjoin the
wall or walls of a dwelling constructed on a contiguous
lot, any such wall shall be considered to adjoin and abut
the wall of the contiguous lot against the surface from
the bottom of the foundation over the full length and

WPN: 4077A                    11

BK 13824 PG 1270

height of any building so erected for residential
purposes. Both Tenant and lessees of contiguous lots
shall have a reciprocal easement appurtenant to each of
said lots over said contiguous lots fo. the purpose of
accommodating any encroachment of any wall of any dwelling
house.

Tenant and the lessees of contiguous lots shall have a
reciprocal easement appurtenant to each of said lots over
said contiguous lots for the purpose of accommodating any
natural settlement of any structures located on any of
said lots.

Should there be found to exist any party wall or party
fence, the agreement between Tenant and the lessee of a
contiguous lot or lots shall be that the lessees of the
contiguous lots who have a party wall or party fence shall
equally have the right to the use of such wall or fence,
and such wall shall be considered to adjoin and abut
against the surface from the bottom of the foundation over
the full length and height of any building so erected.
Such rights of use shall be as not to interfere with the
use and enjoyment of the lessees of adjoining lots; and,
in the event that any such party wall or fence is damaged
or injured from any cause other than the act or negligence
of one of the lessees, the same shall be repaired or
rebuilt at their joint expense.

24. CONSTRUCTION AND EFFECT. Time is of the essence of
this Lease. The article headings herein are used only for
the purpose of convenience and shall not be deemed to
limit the subject to the articles hereof or to be
considered in the construction thereof. Each and all of
the obligations, covenants, conditions and restrictions of
this Lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant. If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons. In
this Lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

25. NON-DISTURBANCE. No mortgage or deed of trust placed
on the leased land by Landlord shall be superior to the
interest of Tenant herein, unless Landlord and Tenant
execute an agreement in recordable form satisfactory to
the Tenant that in the evinte of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary, this Lease
and the rights of Tenant hereunder shall not be disturbed
by reaso. of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect and that in
the event of any conflict between the terms of this Lease
and any such mortgage or deed of trust with regard to
insurance or condemnation proceeds or any other provisions
of the Lease or the mortgage or the deed of trust, the
terms and provisions of this Lease shall prevail.

WPN: 4077A                    12

BK 13824 PG 1271

26.  ESTOPPEL CERTIFICATES.  Landlord and Tenant shall at
any time and from time to time, upon not less than ten
(10) days prior written request by the other party or
parties to this Lease, execute, acknowledge and deliver to
such party or parties a statement in writing certifying
that this Lease is unmodified and in full force and effect
(or if there has been any modification thereof that the
same is in full force and effect as modified and stating
the modification or modifications) and that there are no
defaults existing (or if there is any claimed default
stating the nature and extent thereof); and stating the
dates to which the rent and other charges have been paid
in advance.  It is expressly understood and agreed that
any such statement delivered pursuant to this section may
be relied upon by any prospective assignee or sublessee of
the leasehold estate, or estates of Tenant, or any
prospective purchaser of the estate of Landlord, or any
lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

27.  CONDOMINIUM SUBLEASE.

(a)  Landlord hereby agrees with Tenant for the
benefit of the Condominium Owner/Subtenant under
any Condominium Subleases that:

(i)  So long as such Condominium
Owner/Subtenant is not in default in the payment
of rental or other charges due under the
Condominium Sublease or in the performance of any
of the other terms, covenants or conditions of
the Condominium Sublease on such Condominium
Owner/Subtenant's part to be performed, such
Condominium Owner/Subtenant's possession of the
lot subject to such Condominium Sublease and
Condominium Owner/Subtenant's other rights and
privileges under the Condominium Sublease shall
not be interfered with by the Landlord, its
successors or assigns.

(ii)  Should this Lease be terminated prior
to the expiration of the term hereof or any
extensions of said term for any reason
whatsoever, including without limitation, as a
result of Tenant's breach thereof or default
thereunder, the Condominium Sublease shall
continue in full force and effect as a direct
lease between Landlord and the Condominium
Owner/Subtenant under the Condominium Sublease,
upon and subject to all of the terms, covenants
and conditions of the Condominium Sublease for
the balance of the term thereof remaining,
provided that such Condominium Owner/Subtenant
attorns to Landlord in writing.  Notwithstanding
the foregoing, Landlord shall not be bound by any
act or omission of Tenant as the prior sublessor
under the Condominium Sublease.  Landlord shall
not be bound by any prepayment of rent (other
than through the Payment Agreement referred to in
subparagraph 27(c) hereof or other charges which
such Condominium Owner/Subtenant might have paid

WPN: 4077A                    11

BK 13824 PG 1272

for more than three (3) months in advance to
Tenant as the prior sublessor, and Landlord shall
not be bound by any amendment to or modification
of any Condominium Sublease or by any waiver or
forbearance on the part of Tenant as the prior
sublessor thereunder made or given without the
written consent of Landlord.

(b)  If, the provisions of the foregoing
notwithstanding, a Condominium Sublease is
terminated by reason of any termination of this
Lease, it is hereby agreed that the Condominium
Owner/Subtenant under such Condominium Sublease
and Landlord shall enter into a new lease upon
the terms and conditions of the Condominium
Sublease for the then remaining balance of the
term of the Condominium Sublease.

(c)  In the event that such Condominium Subleases
shall call for the payment of rent less
frequently than quarte  annually, the provisions
of subparagraph 27(a) shall only be applicable if
Landlord and Tenant enter into a Payment
Agreement under the terms of which all rental to
be paid by Condominium Owner/Subtenant under the
terms of the Condominium Sublease will be paid to
a neutral depository, such as a bank, savings and
loan, trust company or escrow company.  Such
neutral depository shall be instructed to remit
to lessor from such sum collected the amount due
under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this
Lease as of the day and year first above written.

                        HOUSER BROS. CO., a limited
                        partnership

                        By _____
                           General Partner

                        By _____
                           General Partner

                                "Landlord"


                        _____
                        Robert P. Warmington

                                "Tenant"


WPN: 4077A                   14

BK 13824 PG 1273

STATE OF   CALIFORNIA    )
                          ) ss.
COUNTY OF   ORANGE     )

On _____ Aug 13 ___, 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared Vernon F. & Clifford C. Houser, known
to me to be   two                 of the partners
of the partnership that executed the within Instrument,
and acknowledged to me that such partnership executed the
same.

WITNESS my hand and official seal.

[OFFICIAL SEAL stamp: PEARL L HUNT, NOTARY PUBLIC - CALIFORNIA, ORANGE COUNTY, My Commission Expires Mar 25, 1983]

_Pearl L. Hunt_
Notary Public

[Seal]

STATE OF   CALIFORNIA    )
                          ) ss.
COUNTY OF   ORANGE     )

On _____ August 1 ___, 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared   ROBERT P. WARMINGTON  ,
known to me to be the person whose name is subscribed to
the within Instrument, and acknowledged to me that   HE
executed the same.

WITNESS my hand and official seal.

[OFFICIAL SEAL stamp: PEARL L HUNT, NOTARY PUBLIC - CALIFORNIA, ORANGE COUNTY, My Commission Expires Mar 25, 1983]

_Pearl L. Hunt_
Notary Public

[Seal]

WPN: 4077A            15

RECORDED L

8694            BK 13824 PG 1274

$ 19 ⁰⁰

Recorded at the Request of
and When Recorded Return To:

Robert P. Warmington
16592 Hale Avenue
Irvine, California    92714

```
RECORDED AT REQUEST ON
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder
```

A.P 178-00-01

## CONDOMINIUM SUBLEASE

THIS SUBLEASE (hereinafter "lease") is made
this 1st day of _____August_____ , 1980, by and between
ROBERT P. WARMINGTON, an individual whose address is 16592
Hale Avenue, Irvine, California 92714 (herein termed the
"Landlord"), and
JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as joint Tenants

w(h)ose address is
4476 Alderport, Huntington Beach, Ca. 92647
(herein termed the "Tenant").

## W I T N E S S E T H:

That whereas Tenant is concurrently acquiring
certain interest in Condominium Unit 53 on Lots 1 and 2
of Tract 10542 as shown on a map recorded in Book 456
Pages 49 and 50 Official Records of Orange County
California consisting of buildings and other improvements
located on Lots 1 and 2 of Tract 10542, which buildings
and other improvements are and shall remain real property.

1.    PROPERTY LEASED.  For and in consideration
of the payment of the rents and taxes and other charges
and for the performance of all of the covenants and
conditions of this lease by Tenant, Landlord hereby
subleases to Tenant

(i)  Unit 53 , (the "Unit") as shown and
defined on that certain Condominium Plan
recorded in Book 13358 Pages 1193 et seq.,
Official Records of Orange County,
California (the "Condominium Plan"),
excepting therefrom all buildings and other
improvements;

(ii)  An undivided one-eightieth (1/80)
interest in the Common Areas (as defined in
the Condominium Plan, excepting therefrom
all buildings and other improvements;

(iii)  An easement for the exclusive use and
occupancy of those portions of the
Restricted Common Area (as defined on said
Condominium Plan) for entry and staircases
and attic space relating to said Unit,
excepting therefrom all buildings and other
improvements;

WPN:2004A

BK 13824 PG 1275

(iv)  A non-exclusive easement and right to use the Common Area (as defined on said Condominium Plan), except the Restricted Common Area, excepting therefrom all buildings and other improvements.

It is understood that "Houser Bros. Co., a California limited partnership (hereinafter the "Master Lessor") and Landlord have entered into a Ground Lease dated as of August 1, 1980 which is being recorded concurrently herewith (the "Master Lease") as lessor and lessee, respectively. This lease shall be subject and subordinate to the Master Lease, provided that, pursuant to the Master Lease, Master Lessor has agreed not to disturb the subleasehold estate of Tenant in the event of a default under the Master Lease. Tenant acknowledges receipt of a copy of the Master Lease prior to Tenant's execution of this lease. The Unit is one unit in a Condominium Project (the "Project") constructed on the leased land and governed by a Declaration of Covenants, Conditions and Restrictions (the "Declaration") recorded in Book 13618, Page 982, Official Records of Orange County, California as amended.

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2.  **TERM OF LEASE.**  The leased land is leased for a basic term commencing on the date this Condominium Sublease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3.  **RENTAL.**  Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the sum of One Thousand Five Hundred DOLLARS ($1,500) per year, in quarterly installments of $375 each in advance, on the first day of the quarter of each calendar year of said term (Provided, however, if the term of this lease commences on a date other than the first day of a calendar quarter, Tenant shall pay an appropriately pro rated amount of such quarterly installments upon the commencement of such term); subject, however, to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment". All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4.  **TAXES AND ASSESSMENTS.**  In addition to the rents above provided, Tenant shall pay and discharge all taxes and general and special assessments of every description which may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, (including its Unit) and upon all rentals payable with respect to the leased land, whether belonging to Landlord, Tenant or the Master

WPN:2004A                      2

BK 13324 PG 1276

Lessor, as such taxes and assessments become due and payable during the term of this lease. Tenant agrees to protect and hold harmless the Landlord, the Master Lessor and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other charges which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5. **USE OF LEASED LAND.** Tenant shall use the leased land and its Unit for single family residential use and purpos s incidental thereto. Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, or its Unit as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

6. **IMPROVEMENTS.** When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of Landlord whatsoever. Further, Tenant shall comply with all of the terms, covenants and conditions of the Master Lease pertaining to such construction, including, without limitation, the obligation to obtain the approval of the Master Lessor when, and to the extent required by the Master Lease.

7. **MAINTENANCE.** Landlord shall not be obligated to make any repairs, alterations, additions or improvements in, to, upon, or adjoining the leased land or any improvements that may be constructed or installed on the leased land. As part of the consideration for Landlord entering this Lease, Tenant shall, at all times during the full term of this lease and at his sole cost and expense, keep, repair and maintain its Unit and those other portions of the leased land and buildings and improvements therein which are the responsibility of Tenant to maintain and repair under the provisions of the Declaration, in clean and sanitary condition and in good order and repair. Tenant shall pay for all water, gas, heat, light, power, telephone and all other utilities and services furnished to its Unit. Tenant shall make payment directly to the utility involved for all separately metered services and shall pay to the management body for the Project the proportionate share of all centrally metered utilities, such proportion to be determined by said management body.

Tenant shall at all times fully comply with and abide by the terms, covenants, restrictions, provisions and conditions of the Declaration and any amendments thereof, and any rules, regulations, agreements, decisions and determinations duly made by the management body for the Project established pursuant to the Declaration respecting the maintenance, use and occupation of its Unit

WPN:2004A                    3

BK 13824 PG 1277

and the leased land and any building or improvements
constructed thereon and the payment of all assessments and
charges of every type levied by the management body of the
Project in connection therewith.  In addition to the
foregoing, Tenant hereby covenants and agrees to promptly
pay at all times during the term hereof, before the same
shall become delinquent, Tenant's share of the common
expenses of the Project and any and all assessments,
charges, and duties of every description, levied under the
provisions of the Declaration, without cost, expense or
liability to Landlord.  Tenant shall further, during the
whole term of this lease, by paying his proportionate
share of the common expenses of the Project make, build,
maintain and repair all fences, sewers, drains, curbs,
roads, sidewalks, parking areas, and other improvements
which may be required by law to be made, built, maintained
and repaired upon or adjoining or in connection with or
for the use of the leased land.

     8.   RESTORATION OF IMPROVEMENTS.  If, during the
term hereof, the dwelling, structures or other
improvements, if any, constructed by or for Tenant on the
leased land, or any part thereof, shall be damaged or
destroyed by fire or other casualty, Tenant may, at its
cost and expense, either (a) repair or restore said
dwelling and improvements; or (b) subject to the consent
of any encumbrancer, if any, tear down and remove the same
from the leased land.

     9.   LIENS AND CLAIMS.  Tenant shall not suffer
or permit to be enforced against the leased land or its
Unit, or any part thereof, any mechanics', laborers',
materialmen's, contractors', subcontractors', or any other
liens arising from or any claim for damages growing out of
any work of construction or improvement, or any other
claim or demand howsoever the same may arise, but Tenant
shall pay or cause to be paid all of said liens, claims
and demands before any action is brought to enforce the
same against the leased land and its Unit, and Tenant
hereby indemnifies and agrees to hold Landlord, and its
Unit free and harmless from all liability for any and all
such liens, claims and demands, together with all costs
and expenses, including, but not limited to, attorneys'
fees and court costs incurred by Landlord or Master Lessor
in connection therewith, and Landlord and Master Lessor
shall have the right, at any time and from time to time,
to post and maintain on the leased land, or any part
thereof, such notices of nonresponsibility as desired by
Landlord or as may be provided by law.  Notwithstanding
anything to the contrary contained in this paragraph, if
Tenant shall, in good faith, contest the validity of any
such lien, claim or demand, then Tenant shall, at its
expense, defend itself, Landlord and Master Lessor against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against landlord the leased land or its Unit, and
if Landlord shall require, Tenant shall furnish to
Landlord a surety bond satisfactory to Landlord in an
amount equal to such contested lien, claim or demand
indemnifying Landlord and Master Lessor against liability
for same; or, if Landlord shall request, Tenant shall

WPN:2004A               4

BK 13824 PG 1278

procure and record the bond provided for in the Civil Code of the State of California, or any comparable statute hereafter enacted providing for a bond freeing the leased land and the Unit from the effect of such lien or claim or action thereon.

10. **LIABILITIES.** Landlord shall not be liable for any loss, damage, injury or claim of any kind whatsoever to any person or property of Tenant, or any of Tenant's employees, guests or invitees or of any other person whomsoever, caused by any use of the leased land or by any defect in any building, structure or other improvement constructed thereon, or arising from any accident on the leased land or any fire or other casualty thereon, or occasioned by the failure on the part of Tenant to maintain said premises in safe condition, or by any nuisance made or suffered on the leased land, or any improvements thereto, or by any act or omission of Tenant, or of any member of Tenant's family or of Tenant's employees, guests or invitees, or arising from any other cause whatsoever, and Tenant hereby waives on its behalf all claims and demands against Landlord for any such loss, damage or injury of Tenant, and hereby agrees to indemnify and save Landlord free and harmless from liability for any such loss, damage or injury of other persons, and from all costs, expenses and other charges arising therefrom and in connection therewith.

11. **LANDLORD PAYING CLAIMS.** Neither Landlord nor the Master Lessor shall be liable for any loss, damage, injury or claim of any kind or character to any person or property arising from or caused by the use or development of the leased land and the construction of improvements thereon, including, without limitation, any such loss, damage, injury or claim arising from or caused by (i) any use of the leased land, or any part thereof; (ii) any defect in the design, construction of or material in any structure or improvement upon the leased land or in any other improvement therein; (iii) any defect in soils or in the compaction of soils or in the design and accomplishment thereof; (iv) any act or omission of Tenant or its agents, employees, licensees, invitees, contractors; (v) any accident on the leased land or other casualty thereon; (vi) any representations by Tenant or any of its agents or employees; (vii) a violation or alleged violation by Tenant, its employees or agent, of any law now or hereafter enacted; (viii) any other cause whatsoever in connection with Tenant's use of the leased land; or (ix) the application of the principles of strict liability with respect to any act or omission during the term of this Lease of Tenant or its agents, employees, licensees, invitees or contractors in connection with the leased land; and Tenant, as a material part of the consideration of this Lease, hereby waives on its behalf all claims and demands against Landlord or the Master Lessor for any such loss, damage or injury of Tenant, and hereby indemnifies and agrees to hold Landlord and the Master Lessor entirely free and harmless from all liability for any such loss, damage, injury or claim with respect to any person or property made by other persons, and with respect to any such violations or charges arising

WPN:2004A                    5

BK 13824 PG 1279

therefrom, including, without limitation, attorneys' fees
and court costs incurred by Landlord and the Master Lessor
in connection therewith.

Tenant either individually, or in conjunction
with the Tenants of the remaining undivided interests in
the leased land or through the management body for Project
shall maintain at all times during the term of the Lease,
at its expense and in companies aceptable to Landlord:

(a)  Worker's compensation insurance and
employer's liability insurance.

(b)  Comprehensive liability insurance, with
limits of not less than FIVE HUNDRED THOUSAND
($500,000) DOLLARS for any one person; ONE MILLION
($1,000,000) DOLLARS for any one occurrence as to
bodily injury or death; and ONE HUNDRED THOUSAND
($100,000) DOLLARS per occurrence as to property
damage.

Each policy of insurance shall be issued by
insurers of recognized responsibility, qualified to do
business in California, acceptable to Landlord and the
Master Lessor and which has, at the execution hereof, a
rating at least equal to AXV by Best's Insurance Guide (or
other equivalent rating if such Guide be discontinued) and
shall name Landlord and the Master Lessor as an additional
insured.  Prior to the time of commencement of this Lease,
Tenant shall deliver certificates of insurance carriers of
each policy of insurance as evidence of compliance with
the above requirements and stating that not less than ten
(10) days' written notice will be given to Landlord and
the Master Lessor prior to cancellation or reduction in
coverage or amount.

12.  ASSIGNMENT.  Tenant shall have the right to
assign, sublet or otherwise transfer its interest under
this lease without the prior written consent of Landlord.
Notwithstanding the foregoing, this lease or any right
hereunder shall in no case be assigned separate and apart
from Tenant's Unit located on the leased land.  Also
notwithstnding the foregoing, Landlord shall accept
Tenant's assignee in writing following a request therefor.

13.  ENCUMBRANCES.  Tenant shall have the right
to assign Tenant's interest in this Lease and the leased
land to a trustee under a deed of trust (herein called
"trust deed"), for the benefit of a lender (herein called
"encumbrancer") upon and subject to the following
covenants and conditions.  Landlord's consent shall not be
required for such assignment, but Landlord shall execute
its written consent to such assignment by trust deed
following a request therefor from Tenant:

A.  Said trust deed and said assignment and all
rights acquired thereunder shall be subject to each and
all of the covenants, conditions and restrictions set
forth in this Lease and to all rights and interests of the
Landlord hereunder; and, in the event of any conflict
between the provisions of this Lease and the provisions of

WPN:2004A

BK 13824 PG 1280

any such trust deed or assignment, the provisions of this
Lease shall control.

B.   Any encumbrancer as a transferee under the
provisions of this Article shall be liable to perform the
obligations of the Tenant under this Lease only so long as
such encumbrancer holds title to the leasehold.

C.   Upon and immediately after the recording of
the trust deed covering the leased land, Tenant, at
Tenant's expense, shall cause to be recorded in the office
of the Recorder of Orange County, California, a written
request for a copy, to the Landlord, of any notice of
default and of any notice of sale under the trust deed as
provided by the statutes of the State of California
relating thereto.   Tenant shall furnish to landlord a
complete copy of the trust deed and note secured thereby,
together with the name and address of the holder thereof.

D.   Landlord agrees that it will not terminate
this Lease because of any default or breach hereunder on
the part of the Tenant if the encumbrancer or the trustee
under such deed of trust, within sixty (60) days after
service of written notice on the encumbrancer by Landlord
of its intention to terminate this Lease for such default
or breach, shall:

(a)   Cure such default or breach if the same can
be cured by the payment or expenditure of money
provided to be paid under the terms of this Lease, or
if such default or breach is not so curable, cause the
trustee under the trust    to commence and
thereafter to diligently pursue to completion steps
and proceedings for the foreclosure by sale or by
exercise of a power of sale under and pursuant to the
trust deed in the manner provided by law; and

(b)   Keep and perform all of the covenants and
conditions of this Lease requiring the payment or
expenditure of money by Tenant until such time as said
leasehold shall be sold upon foreclosure, or by
exercise of a power of sale, pursuant to the trust
deed or shall be released or reconveyed thereunder;
provided, however, that if the beneficiary under such
trust deed shall fail or refuse to comply with any and
all of the conditions of this Article with respect to
a breach or default as to which notice of intention to
terminate this Lease has been given to the
encumbrancer, then and thereupon Landlord shall be
released from the covenants of forebearance herein
contained with respect to such breach or default.

Any notice to the encumbrancer provided for in
this Article may be given concurrently with or after
Landlord's notice of default to Tenant as herein provided
for in the Article entitled "Default."

Any mortgagee shall have the right at any time
during the term hereof while this lease is in full force
and effect:

WPN:2004A                    7

BK 13824 PG 1281

(a)  To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)  To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person firm or corporation without the consent of Landlord as to such initial transfer, and such obligations shall not commence as to any obligation which cannot be satisfied by the payment of money prior to mortgagee's acquisition of the leasehold estate hereunder by reason of the exercise of its rights as aforesaid.

Until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein.

14.  DEFAULT.  Should Tenant fail to pay any installment of rent or any other sum provided in this lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of ten (10) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of thirty (30) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant

WPN:2004A                              8

BK 13824 PG 1282

shall execute, acknowledge and deliver to Landlord a proper instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to the leased land and any and all improvements thereon, if not removed by virtue of this Lease or otherwise.

16. **PLACE OF PAYMENTS AND NOTICES.** All rents and other sums payable by Tenant to Landlord hereunder shall be paid to the Landlord at the address set forth after Landlord's name above. Whenever either party hereto desires to give written notice to the other respecting this Lease, such notice, if not personally delivered to Landlord or to Tenant, shall be sent by certified or registered mail, with postage prepaid, and directed to either party at the address hereinabove specified, or at such other address as either party may hereafter designate in writing. The service of any such written notice shall be deemed complete at the time of such personal delivery or within two (2) days after the mailing thereof in Orange County, California, as herein provided. Should Landlord or Tenant consist of more than one person, the personal delivery or mailing of such notice to any one of such persons shall constitute complete service upon all such persons. Any notice provided in the Article hereof entitled "Encumbrances" to be given by Landlord to any encumbrancer of Tenant shall be served in the same manner as herein provided in this Article and shall be delivered to the encumbrancer or directed to its address as last shown on the records of Landlord.

17. **REMEDIES.** Should Tenant at any time be in default hereunder pursuant to the provisions of the Article hereof entitled "Default", then notwithstanding Tenant's breach of this lease and abandonment of the leased land, this lease shall continue in effect so long as Landlord does not terminate Tenant's right to possession and Landlord may enforce all of its rights and remedies hereunder, including, at the option of Landlord:

A. Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article 3 above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten percent (10%) per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

B. By written notice to Tenant, Landlord may declare this Lease at an end, re-enter the leased land by process of the law, eject all parties in possession

WPN:2004A                    9

BK 13824 PG 1283

thereof therefrom and repossess said leased land, in which
event, Landlord shall have the right to recover from
Tenant:

(i)   The worth at the time of award of the
unpaid rent which has been earned at the time of
termination;

(ii)   The worth at the time of award of the
amount by which the unpaid rent which would have been
earned after termination until the time of award
exceeds the amount of such rental loss that the Tenant
proves could have been reasonably avoided;

(iii) The worth at the time of award of the
amount by which the unpaid rent for the balance of the
term after the time of award exceeds the amount of
such rental loss for the same period that the Tenant
proves could be reasonably avoided;

(iv)   All other amounts necessary to compensate
Landlord for all the detriment proximately caused by
Tenant's failure to perform its obligations hereunder
or which in the ordinary course of things are likely
to result therefrom; and

(v)   In computing "worth at the time of award"
Landlord shall be allowed interest at the rate of ten
percent (10%) per annum.

Each of the terms, covenants, conditions and
provisions of Tenant under this lease is a material
consideration for this lease, the breach of which shall be
deemed a default hereunder.  All rights, options and
remedies of Landlord contained in this lease shall be
construed and held to be cumulative, and no one of them
shall be exclusive of the other, and Landlord shall have
the right to pursue any one or all of such remedies or any
other remedy or relief which may be provided by law,
whether or not stated in this lease.  No waiver by
Landlord of a breach of any of the terms, covenants or
conditions of this lease by Tenant shall be construed or
held to be a waiver of any succeeding or preceding breach
of the same or any other term, covenant or condition
herein contained.  No waiver of any default of Tenant
hereunder shall be implied from any omission by Landlord
to take any action on account of such default if such
default persists or is repeated, and no express waiver
shall affect default other than as specified in said
waiver.  The consent or approval by Landlord to or of any
act by Tenant requiring Landlord's consent or approval
shall not be deemed to waive or render unnecessary
Landlord's consent or approval to or of any subsequent
similar acts by Tenant.

In the event any action shall be instituted
between Landlord and Tenant in connection with this lease,
the party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

WPN:2004A                    10

BK 13824 PG 1284

18.  REPRESENTATIONS.  Tenant covenants and
agrees that it has examined the leased land and that the
same is delivered to it in good order and condition and
that no representations as to said land have been made by
Landlord or by any person or agent acting for Landlord,
and it is agreed that this document contains the entire
agreement between the parties hereto and that there are no
verbal agreements, representations, warranties or other
understandings affecting the same.

19.  HOLDING OVER.  This lease shall terminate and
become null and void without further notice upon the
expiration of said term.  Any holding over shall not
consitute a renewal hereof, but the tenancy shall
thereafter be on a month-to-month basis and otherwise on
the same terms and conditions as herein set forth.

20.  EMINENT DOMAIN.

A.  Definition of Terms.  The term "total
taking", as used in this Article, means the taking of the
entire leased land under the power of eminent domain or
the taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes hereinabove provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary
conveyance by Landlord to an agency, authority or public
utility under threat of a taking under the power of
eminent domain in lieu of formal proceedings.

The term "date of taking" shall be the date upon
which title to the leased land or portion thereof passes
to and vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B.  Effect of Taking.  If, during the term
hereof, there shall be a total taking or partial taking
under the power of eminent domain, then the leasehold
estate of Tenant in and to the leased land or the portion
thereof taken shall cease and terminate as of the date of
taking of the said land.  If this lease is so terminated,
in whole or in part, all rentals and other charges payable
by Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liability in relation thereto.

C.  Allocation of Award - Total Taking.  All
compensation and damages awarded for the total taking of

WPN:2004A            11

BK 13824 PG 1285

the leased land allocated to Landlord under the terms of
the Master Lease shall be allocated as follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The fair market value of all of the
improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

D.  **Allocation of Award – Partial Taking.**  All
compensation and damages awarded for the taking of a
portion of the leased land allocated to Landlord under the
terms of the Master Lease shall be allocated and divided
as follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The proportionate reduction of the
fair market value of the improvements located on
the leased land; and

(ii)  The proprotionate reduction of the
fair market value of Tenant's leasehold interest
in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

E.  **Reduction of Rent on Partial Taking.**  In the
event of a partial taking, the rent payable by Tenant
hereunder shall be adjusted from the date of taking to the
next rental adjustment date or to the date of the
expiration of the term of this lease, whichever date is
sooner.  Such rental adjustment will be made by reducing
the basic rental payable by the Tenant in the ratio that
the fair market value of the leased land at the date of
taking bears to the fair market value of the leased land
immediately thereafter.

F.  **Determination of Fair Market Value.**
Whenever fair market value must be determined for the
purposes of this Article, and the parties fail to agree in
writing on such fair market value within ten (10) days of
a request for such agreement from either party, then fair
market value shall be determined by appraisers appointed
pursuant to the Article in the Master Lease entitled
"Condemnation" or if no such appraiser have been or are to
be appointed, by agreement of Landlord and Tenant or, in
the absence of such an agreement by appraisers appointed
by Landlord and Tenant in the same manner as set forth in
such Article.

WPN:2004A                    12

BK 13824 PG 1286

21. **RENTAL ADJUSTMENT.**

A.    Effective January 1, 2000, January 1, 2020, and January 1, 2010, the annual rental payable hereunder shall be adjusted to a sum equal to ten percent (10%) of the unimproved fair market value of the leased land, or any portion then remaining subject to this Lease, as of such dates.  The said "unimproved fair market value" of the leased land shall be such value as determined by the Master Lessor and the Landlord in accordance with the terms and provisions of Article 21 of the Master Lease. After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the annual rental, as so adjusted, be less than the annual rental in the immediately preceding period.

Pending the final determination of such adjusted rental, Tenant shall pay to Landlord the amount of rent previously payable under the Article of this lease entitled "Rental".  If such adjusted rental, as finally determined, shall exceed the amount of the previous rental, the excess amount accruing during the interim period shall be paid by Tenant to Landlord within thirty (30) days after the final determination of said adjusted rental.

B.    Effective January 1, 1990, January 1, 2010, January 1, 2030, and January 1, 2050, the annual rental shall be adjusted upwards as follows:  As promptly as practical after such dates, Landlord shall compute the increase, if any, in the cost of living during the period just ended, based upon the Consumers Price Index - Los Angeles/Long Beach/Anaheim Metropolitan Area (1967=100), "All items of goods and services purchased by urban wage and clerical worker families" (hereinafter called the "Index"), published by the Bureau of Labor Statistics of the United States Department of Labor.  The Index Number for the latest month prior to commencement of the term of this Lease, with respect to which such a Number is published, shall be the "Base Index Number" and the corresponding Index Number for the month which immediately preceeds the effective date of the adjustment shall be the "Current Index Number".

The annual rent shall be adjusted by multiplying the rental payable during the immediately preceding year of the term of this lease by a fraction, the numerator of which is the Current Index Number and the denominator of which is the Base Index Number; provided, however, that the annual rent shall never be reduced below the rental payable in the immediately preceding twelve-month period.

Tenant shall continue payment of rent installments in effect for the expiring rental period until notified by Landlord of the new rent.  Such notification shall include a memorandum showing the calculations used by Landlord in determining the new rent.  Immediately upon receipt of such notice, Tenant

WPN:2004A                         13

BK 13824 PG 1287

shall commence payment of the adjusted rent, and shall also pay to Landlord with respect to any period already expired within thirty (30) days after receipt of such notice, the excess of the new annual rent over the rent actually paid by Tenant.

If publication of the Index shall be discontinued, the most comparable Index when published by any branch or department of the United States Government shall be substituted, or if there is none, the parties shall agree on another source of information, and such adjustments in the method of computation shall be made as may be necessary to carry out the intent of this cost-of-living provision. Appropriate adjustments shall also be made in the event that the base period, or other aspects of the Index are changed. If the parties are unable to agree on a source of information, such source of information shall be determined by arbitration, pursuant to the provisions of the California Code of Civil Procedure.

Notwithstanding the foregoing, the annual rental shall not be adjusted pursuant to the above higher than a sum equal to one hundred seventy percent (170%) of the rent payable in the immediately preceding twelve-month period.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land so to prevent any erosion thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lot shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so

WPN:2004A                        14

BK 13824 PG 1288

erected.  Such rights of use shall be as not to interfere
with the use and enjoyment of the lessees of adjoining
lots; and, in the event that any such party wall or fence
is damaged or injured from any cause other than the act or
negligence of one of the lessees, the same shall be
repaired or rebuilt at their joint expense.

24.  **COMPLIANCE WITH LAWS.**  Tenant covenants that
during the lease term, Tenant will comply, at no cost or
expense to Landlord, with all laws, ordinances, orders,
rules, regulations and requirements of all federal, state
and municipal governments and appropriate departments,
commissions, boards and officers thereof, which may be
applicable to the leased land or its Unit, buildings and
other improvements constructed thereon, or the use or
manner of use of the leased land or its Unit.  Tenant
accepts the leased land and its Unit in the actual
condition of the same as of the date of this lease.

25.  **ACCEPTANCE OF PERFORMANCE BY OTHERS.**
Landlord agrees to accept performance of any of the
covenants or agreements of Tenant contained herein from
(a) any group of ten or more tenants holding subleases of
individual interests in the leased land or (b) the
management body for the Project.

26.  **CONSTRUCTION AND EFFECT.**  Time is of the
essence of this lease.  The article headings herein are
used only for the purpose of convenience and shall not be
deemed to limit the subject to the articles hereof or to
be considered in the construction thereof.  Each and all
of the obligations, covenants, conditions and restrictions
of this lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant.  If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons.  In
this lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

27.  **NON-DISTURBANCE.**  No mortgage or deed of
trust placed on the leased land   Landlord shall be
superior to the interest of Tenant herein unless the
mortgagee or beneficiary thereunder executes an agreement
in recordable form covenanting in a form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary this Lease
and the rights of Tenant hereunder shall not be disturbed
by reason of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect.

28.  **ESTOPPEL CERTIFICATES.**  Landlord and Tenant
shall at any time and from time to time, upon not less
than ten (10) days prior written request by the other

WPN:2004A                    15

BK 13824 PG 1289

party or parties to this lease, execute, acknowledge and
deliver to such party or parties a statement in writing
certifying that this lease is unmodified and in full force
and effect (or if there has been any modification thereof
that the same is in full force and effect as modified and
stating the modification or modifications) and that there
are no defaults existing (or if there is any claimed
default stating the nature and extent thereof); and
stating the dates to which the rent and other charges have
been paid in advance.  It is expressly understood and
agreed that any such statement delivered pursuant to this
section may be relied upon by any prospective assignee or
sublessee of the leasehold estate, or estates of Tenant,
or any prospective purchaser of the estate of Landlord, or
any lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

        IN WITNESS WHEREOF, the parties hereto have
executed this Sublease as of the day and year first above
written.


                            By _____
                               Robert P. Warmington
                                   "Landlord"


                            By _____
                                   "Tenant"


                            By _____
                                   "Tenant"


WPN:2004A                   16

BK 13824 PG 1290

STATE OF ___CALIFORNIA___ )
                                     ) ss.
COUNTY OF ___ORANGE___ )

On ___August 1___, 1980, before me the
undersigned, a Notary Public in and for said State,
personally appeared Robert P. Warmington, known to me to
be the person whose name is subscribed to the within
Instrument, and acknowledged to me that he executed the
same.

WITNESS my hand and official seal.

Notary Public

[Seal]

OFFICIAL SEAL
GAIL L. KING
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Nov. 5, 1982

[Attach acknowledgment form for Tenant]

STATE OF CALIFORNIA
COUNTY OF ___Orange___ } ss.
On ___November 5, 1980___, before me, the undersigned, a Notary Public in and for
said State, personally appeared ___John E. Turner and Virginia H. Turner___

known to me to be the person S whose name ___are___
subscribed to the within instrument and acknowledged to me
that ___they___ executed the same
WITNESS my hand and official seal.

Signature ___Bonnie Quenneville___



OFFICIAL SEAL
BONNIE QUENNEVILLE
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Jan. 13, 1984

___Bonnie Quenneville___
Name (Typed or Printed)

(This area for official notarial seal)

WPN:2004A                    17

RECORDED D

8695          BK 13824 PG 1291

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California   92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:00 A.M. NOV 7 1988

LEE A. BRANCH, County Recorder

Conveyance connected with leaseholder
interest not to exceed 99 years.

AP 178-011-01

## CONVEYANCE OF REMAINDER INTEREST

FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, THE ROBERT P. WARMINGTON CO., a California
corporation, hereby grants to ROBERT P. WARMINGTON, an
individual, the remainder interest in that portion of Lots 1
and 2 of Tract 10542 in the City of Huntington Beach, County
of Orange, State of California, as shown on a Map recorded in
Book 456, Pages 49 and 50 of Miscellaneous Maps, in the
Office of the County Recorder of Orange County, California,
described on Exhibit I attached hereto, after the term of
years expiring upon expiration or early termination of that
certain Condominium Sublease of even date herewith, made
by Robert P. Warmington, an individual, to _____

_____John F. Turner and Virginia H. Turner, husband and wife, as Joint Tenants

_____

_____

_____,

a short form of which is being recorded concurrently herewith,
subject, however, to all matters whether or not of record.

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _Oline N Gray_

By _William F. Britt_

269

BK 13824 PG 1292

STATE OF CALIFORNIA ）
                    ） ss.
COUNTY OF ORANGE    ）

    On __August 1_____, 1980, before me, the undersigned,
a Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____, known to me to be the
__Vice President____, and _____WILLIAM J. PITTMAN_____,
known to me to be the ____Secretary_____ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

                         Notary Public in and for
                         said County

[SEAL]

OFFICIAL SEAL
GAIL L. KING
NOTARY PUBLIC. CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Mar 3, 1982

2

BK 13824 PG 1293

## EXHIBIT I

### Parcel 1

Those portions of Unit 53, as shown and defined on a Condominium Plan ("the Condominium Plan"), recorded in Book 13358, Page 1193, et seq., consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

### Parcel 3

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

### Parcel 4

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)  general and special taxes and assessments for the current fiscal year;

(b)  the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

(c)  all other covenants, conditions, restrictions, rights, reservation of rights of way and easements whether or not of record.

RECORDED D

8696          BK 13824 PG 1294

RECORDING AT THE REQUEST OF:

$10.00
C3

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

WHEN RECORDED MAIL TO:
Mr. and Mrs. John F. Turner
4476 Aldenport
Huntington Beach, Ca. 92647

PAID
DOC TRANSFER TAX
LEE A. BRANCH
ORANGE CO. RECORDER

Mail Tax Statements to
Address Shown Above

The undersigned Grantor Declares The
Documentary Transfer Tax is $126.50
Computed On Full Value of Property
Conveyed in Huntington Beach, Ca.

AP 122-011-01

### CONDOMINIUM SUBLEASE
### (SHORT FORM—MEMORANDUM)
### AND GRANT DEED

For the purpose of establishing and vesting in

JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

_____

_____
_____

(the "Condominium Owner"), a Condominium as defined in the
Condominium Plan (the "Condominium Plan"), recorded in Book
13358, Pages 1193, et seq., Official Records of Orange County,
California, located on Lots 1 and 2 of Tract 10542 in the
City of Huntington Beach, County of Orange, State of
California, as shown on a Map recorded in Book 456, Pages 49
and 50 of Miscellaneous Maps, in the Office of the County
Recorded or Orange County, California:

I.  DEMISING CLAUSE:

ROBERT P. WARMINGTON, an individual, ("Sublessor"), who
is the lessee under that certain Ground Lease dated as of
August 1, 1980, from HOUSER BROS. CO., a limited partnership,
as lessor, which Ground Lease is being recorded concurrently
herewith, hereby subleases to Condominium Owner, the follow-
ing real property:

Parcel 1

Unit  53 , as shown and defined on the
Condominium Plan, excepting that portion con-
sisting of buildings and other improvements.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

272

BK 13824 PG 1295

Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

for a term commencing on the date this instrument is recorded in the Office of the County Recorder of Orange County, California, and ending December 31, 2059, and for the rental and upon all the terms and conditions contained in that certain Condominium Sublease (the "Sublease") of even date herewith and recorded concurrently herewith, between Robert P. Warmington and the Condominium Owner.

II.  GRANTING CLAUSE:

THE ROBERT P. WARMINGTON CO., a California corporation ("Grantor"), hereby grants to the Condominium Owner for a term expiring upon expiration or an earlier termination of the Sublease the following real property:

2

273

BK 13824 PG 1296

## Parcel 1

Those portions of Unit ___53___, as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

## Parcel 2

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

## Parcel 3

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

## Parcel 4

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)   general and special taxes and assessments for the current fiscal year;

(b)   the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

3

BK 13824 PG 1237

(c) all other covenants, conditions, restric-
tions, rights, reservation of rights of way
and easements whether or not of record.

The buildings and other improvements referred to above
are the buildings and other improvements located on Lots 1
and 2 of Tract 10542, which are and shall remain real property,
as more specifically set forth in the Declaration. The real
property demised and granted hereby which together constitute
a condominium must at all times be held by the same person
and may not be separately conveyed, assigned, transfered,
encumbered or otherwise alienated, voluntarily, involuntarily
or by operation of Law.

Dated:    August 1,    , 1980.

SUBLESSOR:

Robert P. Warmington

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By

By

4

BK 13824 PG 1298

STATE OF CALIFORNIA   )
                      ) ss.
COUNTY OF ORANGE     )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA   )
                      ) ss.
COUNTY OF ORANGE     )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said State, personally appeared
___OLIVER N. CRARY___, known to me to be
the ___Vice President___, and ___WILLIAM J. PITTMAN___,
known to me to be the ___Secretary___ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for said
County

[SEAL]

5

RECORDED D

276

**EXHIBIT A**

RECORDING REQUESTED BY
CHICAGO TITLE COMPANY
AND WHEN RECORDED MAIL TO

SANDRA BRADLEY
18 MEADOW BROOK DR
COTO DE CAZA, CA  92679

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

30.00

2009000633802 04:05pm 11/23/09
401 59 A34 A04 A12 5
0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

Escrow No.     -
Order No.    985040290 - S32

SPACE ABOVE THIS LINE FOR RECORDER'S USE

ASSIGNMENT OF CONDOMINIUM SUBLEASE

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

CPFR4 --11/13/06bk

Document Number: 2009000633802 Page: 1 of 4

**WHEN RECORDED MAIL TO:**
(Assignee's Name & Address)
SANDRA BRADLEY
18 MEADOW BROOK DR
COTA DE CAZA CA 92679

*NO CONSIDERATION*
*TERN OF*
*LEASE LESS*        (Space Above this Line for Recorder's use)
*THAN 99 YEARS.*

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned
___LARRY W. RIDER AND TERRI A. RIDER HUSBAND AND WIFE AS JOINT TENANTS__, hereby transfers and assigns to _SANDRA L. BRADLEY A WIDOW_____,
all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and _JOHN F. TURNER AND VIRGINIA H TURNER HUSBAND AND WIFE AS JOINT       ;_
_TENANTS_
as Tenant, recorded on _NOVEMBER 7, 1980_____ in Book _13824_, Page _1274_ inclusive, as Instrument No. _8694___ of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on _AUG 28, 2003_ as Instrument No. _2003 001044770_. The property that is the subject of the Sublease is described as follows:

Unit _53_ of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: _11/19/2009_

_Assignor (s)_

_Terri A Rider_

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE

On _11/19/2009_, before me, _ANTHONY H. DUONG_, personally appeared _LARRY W. RIDER & TERRI A. RIDER_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANTHONY H. DUONG
COMM. #1657553
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires April 11, 2010
BCTO

_Anthony H. Duong_
Signature of Notary Public                    (This space for notarial seal)

Page 1 of 2

J:\UC PERM\Masters-BST\MASTER-OHB-Assignment of Condominium Sublease with Notary.doc

---

11/17/2009 14:28 FAX                                                      @009

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 11/17/09

_____
Assignee (s)

STATE OF ~~CALIFORNIA~~ Missouri  )
COUNTY OF ~~ORANGE~~ St Louis City ) ss.

On November 17, 2009 before me, Kenneth J. Ball, personally appeared Sandra L. Bradley, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(This space for notarial seal)

```
KENNETH J. BALL
Notary Public-Notary Seal
State of Missouri, Saint Louis City
Commission # 09703489
My Commission Expires Aug 10, 2013
```

Page 2 of 2

J:\JC PERM\Masters-BSI\MASTER-GHB-Assignment of Condominium Sublease with Notary.doc

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 3/31/2017

CERTIFICATION FEE: 4.00

COUNTY CLERK-RECORDER

*Hugh Nguyen*

ORANGE COUNTY
STATE OF CALIFORNIA

Certified Copy of document number 2009000633802

Document Number: 2009000633802 Page: 4 of 4

Order No.

Escrow No.

Loan No.

**Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder**

24.00

2010000219518 1:00 pm 05/10/10
153 420 A34 A04 A12   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NO CONSIDERATION
TERM OF LEASE
LESS THAN 99 YEARS

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770.  The property that is the subject of the Sublease is described as follows:

Unit 55 of Tract 10542.  Legal Description contained on Exhibit "A" attached hereto and made a part hereof.
TOGETHER WITH all buildings and other improvements on said land.

DATED:  3/10/2010

Assignor, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

*On March 10, 2010, before me _____, a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

Signature _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift trust public*    Document Number: 2010000219518 Page: 1 of 4

Page 1
Order No. 985040290

## DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Document Number: 2010000219518 Page: 2 of 4

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 3/10/2010

Assignee, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

*On 3/10/2010 , before me, Henly J Coopersmith , a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature*

> HENRY J. COOPERSMITH
> COMM. #1879512
> NOTARY PUBLIC ● CALIFORNIA
> ORANGE COUNTY
> Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

Document Number: 2010000219518 Page: 3 of 4

Certified Copy of document number 2010000219518

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 3/31/2017

CERTIFICATION FEE: 4.00



COUNTY CLERK-RECORDER

_Hugh Nguyen_

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: 2010000219518 Page: 4 of 4

RECORDING REQUESTED BY:

Mrs. Sandra L. Bradley
18 Meadow Wood Drive
Coto de Caza, CA 92679

WHEN RECORDED RETURN TO:
same as above

MAIL TAX STATEMENTS TO:
same as above

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
|||||||||||||||||||||||||||||||||||||| 30.00
2010000309926 2:10 pm 06/30/10
276 421 A34 A04 A12   5
0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

_____

(space above this line for recorder's use)

### CORRECTING ASSIGNMENT OF CONDOMINIUM SUBLEASE

The original **ASSIGNMENT OF CONDOMINIUM SUBLEASE** recorded as
document #2010000219518 on 05/10/10 inadvertently referred to
Unit 53 as Unit 55.  It is now corrected to UNIT 53 as stated in
the attached Exhibit "A".

Document Number: 2010000309926 Page: 1 of 6

Order No.

Escrow No.

Loan No.

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

24.00

2010000219518 1:00 pm 05/10/10
153 420 A34 A04 A12    3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**NO CONSIDERATION**
**TERM OF LEASE**
**LESS THAN 99 YEARS**

CORRECTING ... OF
# ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 53 of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: 3/10/2010

_Assignor, SANDRA L. BRADLEY_

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

On _March 10, 2010_ before me _____, a Notary Public
in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be
the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her
authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted,
executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

Document Number: 2010000309926 Page: 2 of 6

Page   1
Order No.  985040290

## DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Document Number: 2010000309926 Page: 3 of 6

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 3/10/2010 _____

Assignee, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

*On 3/10/2010 , before me, Henry J Coopersmith , a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

Signature _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

Document Number: 2010000309926 Page: 4 of 6

Page 1
Order No. 985040290

## DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Document Number: 2010000309926 Page: 5 of 6

Certified Copy of document number 2010000309926

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: __3/31/2017__

CERTIFICATION FEE: __6.00__

COUNTY CLERK-RECORDER

*Hugh Nguyen*

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: 2010000309926 Page: 6 of 6

## THE HUNTINGTON BEACH GABLES
## HOMEOWNERS' ASSOCIATION
c/o Elite Community Management    38760 Sky Canyon Drive Murrieta, Ca 92563
Phone: 888.354.8322    Fax: 951.699.1661

April 12, 2016

*I agree to the items below.
Sandra Bradley*

Sandra L Bradley
18 Meadowbrook Drive
Coto De Caza, CA 92679

RE:    ACC Application to approve Sun (patio) cover

Dear Homeowner:

Attached is a copy of the application submitted to install a patio cover. It
has been approved by the board with the following conditions:
1) Size no larger than ~~12"x12"~~ *10 x 15*
2) Permit must be pulled from city
3) Notarized statement from Sandra Bradley agreeing to maintain
   patio cover including: cosmetic appearance, and termite
   treatment.
4) Cover must be removed at time of sale of property and patio
   brought back to its original condition or seller obtains and submits
   to Board notarized statement and signature of new owner agreeing
   to maintenance conditions stated in #3.
5) Patio cover must be painted same color as trim of unit.

Sincerely,

Linn Joslyn

Linn Joslyn CMCA®
Community Association Manager
**Huntington Beach Gables Homeowners' Association**
cc: Board
    Jamie Gallian

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
County of _Orange_          )

On _04/19/2016_ before me, _Bonnie Coelho, notary public_
. Date                      Here Insert Name and Title of the Officer
personally appeared _Sandra L. Bradley_
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**BONNIE COELHO**
Commission No. 1975866
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires APRIL 21, 2016

Signature _Bonnie Coelho_
              Signature of Notary Public

_Place Notary Seal Above_
─────────────────── **OPTIONAL** ───────────────────
_Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._
Description of Attached Document
Title or Type of Document: _Letter 4/12/16_ _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____
Capacity(ies) Claimed by Signer(s)
Signer's Name: _____        Signer's Name: _____
☐ Corporate Officer — Title(s): ____    ☐ Corporate Officer — Title(s): ____
☐ Partner — ☐ Limited ☐ General       ☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact    ☐ Individual      ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator  ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____             ☐ Other: _____
Signer Is Representing: _____      Signer Is Representing: _____

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)    Item #5907

**RECORDING REQUESTED BY:**

Jamie Gallian
4476 Alderport Dr.
Huntington Beach, CA
92649

**AND WHEN RECORDED MAIL TO:**

Jamie Gallian
4476 Alderport Dr.
Huntington Beach, CA
92649

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

33.00

* $ R 0 0 0 9 1 4 7 5 4 1 $ *

2017000116815 8:25 am 03/23/17
276 415 A34 A04 F14   6
0.00 0.00 0.00 0.00 15.00 0.00 0.00 0.00

**TITLE OF DOCUMENT:**  Assignment of Condominium
                          SubLease
                   Lease from present to 2059

Transfer Tax exempt. This Lease is a
Gift between family Members.

2T
6P
2FF
CC
2CF

RECORDING REQUESTED BY:

~~Sandra Bradley~~
~~19 Meadow Wood Dr.~~
~~Coto de Caza, CA 92679~~

*Jamie Gallian*
*4476 Alderport D)*
*Huntington Beach*
*Ca 92649*

WHEN RECORDED RETURN TO:

~~same as above~~ *Jamie Gallian*
*4476 Alderport Dr.*
*Huntington Beach, CA 92649*

(space above this line for Recorder's use)

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For no consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, as Trustee of the Sandra L. Bradley Trust, hereby transfers and assigns to JAMIE L. GALLIAN, a single woman, all right, title and interest of the undersigned as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, and individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC, by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on November 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on August, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 53 of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made a part hereof.
TOGETHER WITH all buildings and other improvements on said land.

NO CONSIDERATION – TERM OF LEASE LESS THAN 99 YEARS

Dated: *3/22/2017*

_____
Assignor, SANDRA L. BRADLEY
Trustee of the Sandra L. Bradley Trust

1

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
*COUNTY OF ORANGE*

*On* 3/22/2017 *, before me,* HENRY J. COOPERSMITH, *a Notary Public in and for said State personally appeared* SANDRA L. BRADLEY, *who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

Signature

HENRY J. COOPERSMITH
COMM. # 2054619
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES FEB. 6, 2018

2

# EXHIBIT "A"

## DESCRIPTION

der No: 985040290

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

RECORDING REQUESTED BY:

~~Sandra Bradley~~ *Jamie Gallian*
~~19 Meadow Wood Dr.~~ *4476 Adderport*
~~Coto de Caza, CA 92679~~ *Huntington Bach CA 92649*

WHEN RECORDED RETURN TO:

~~same as above~~ *Jamie Gallian 4476 Adderport Huntington Beach, CA 92649*

_____

(space above this line for Recorder's use)

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to the Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

Dated: *3/22/17*

_____

Assignee, JAMIE L. GALLIAN

1

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

On _3/22/2017_____, before me, _Henry J Coopersmith_

a Notary Public in and for said State personally appeared JAMIE L. GALLIAN, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

HENRY J. COOPERSMITH
COMM. # 2054619
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES FEB. 6, 2018

2

THIS IS A TRUE CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: **MAR 2 3 2017**
CERTIFICATION FEE: **7.00**

COUNTY CLERK-RECORDER

ORANGE COUNTY
STATE OF CALIFORNIA

### DECLARATION OF SANDRA L. BRADLEY

I, Sandra L. Bradley, declare as follows:

1.      I am over the age of eighteen, a resident of Orange County, and the former owner of the condominium located at 4476 Alderport Drive, #53, in Huntington Beach, California ("subject condominium"). I am a named defendant in a civil lawsuit brought by The Huntington Beach Gables Homeowners' Association ("HOA") regarding changes to condominium #53 that allegedly violate the architectural requirements of the HOA. Jamie Gallian is a co-defendant.

2.      I provide this declaration to the HOA about my best recollection of events regarding the allegations contained in the HOA's pending lawsuit. I have personal knowledge of the facts set forth in my declaration unless stated otherwise. If called to testify, I could, and would, provide competent and admissible testimony about the facts set forth in my declaration.

3.      On November 19, 2009, I purchased the subject condominium. The subject condominium was purchased with the intention of having co-defendant Jamie Gallian live there as my tenant.

4.      I do not recall the history of how I came to have the HOA's governing documents for the subject condominium. I do remember that Jamie Gallian provided me with parts of the HOA's governing documents towards the beginning of the dispute with the HOA. During that time, Ms. Gallian was my tenant.

5.      For various reasons including the pending lawsuit by the HOA and a very strained relationship with Jamie Gallian, I decided to transfer full ownership of the subject condominium to Jamie Gallian effective March 23, 2017. I have not held an ownership in the subject condominium since that time or otherwise been a member of the HOA.

1

6.      During my ownership of the subject condominium, the only tenant that I had was Jamie Gallian. I never lived at the subject condominium.

7.      For all practical purposes during my ownership, Jamie Gallian had day-to-day control over the subject condominium by virtue of her tenancy and residency. At times, Ms. Gallian would attend HOA meetings for me and was a contact person for me relative to the HOA.

8.      At no time did I ever give Jamie Gallian authority to engage in any activity that violated the governing documents for the HOA. Any authority that I gave to Ms. Gallian to perform repair work and/or maintenance to the subject condominium was contingent upon the work being in compliance with the governing documents.

9.      For any repair work and/or maintenance to the subject condominium, Jamie Gallian was given the authority to select the appropriate vendor, schedule the vendor(s) to perform the work, and supervise the work including compliance with the HOA's governing documents. Ms. Gallian was also authorized to obtain the necessary approvals from the HOA and/or any governmental entity such as the City of Huntington Beach. Ms. Gallian understood the authority that I granted to her to handle the repairs and/or maintenance required her to obtain all necessary permits and/or approvals. I later learned the air-conditioning unit was installed by Ms. Gallian outside of the unit's rear yard fence, and in the Association's common areas.

10.     I never authorized Jamie Gallian to make any modifications and/or improvements to the HOA's common area. I had no knowledge that Ms. Gallian wanted to make any modifications and/or improvements to the HOA's common area. To the extent that Ms. Gallian has installed, altered and/or modified the HOA's common area, it was done without my knowledge and/or consent.

2

302

11.    At some point, I think in 2015, Ms. Gallian asked me to replace the heater in the subject condominium. I agreed to replace the heater. The extent of my personal involvement, as I understood it, was simply paying for the replacement of the heater including the installation costs. Ms. Gallian would handle all the other details. At the last minute, and without my permission, Ms. Gallian added a new air-conditioning unit to the project. After some discussion, I finally agreed to pay for the labor to complete the project. Ms. Gallian continued to be responsible for making sure the work was performed in a professional and workmanlike manner consistent with the requirements of the HOA's governing documents. I was not involved in the placement of the new air-conditioning unit.

12.    At another time during my ownership, which I think was in 2016, Ms. Gallian installed an open-lattice patio cover without my knowledge or approval. She informed me about it after the fact. Even then, it was my understanding (perhaps presumption) the work was done with the appropriate approval and/or permits. Ms. Gallian paid all of the costs associated with the open-lattice patio cover.

13.    After the open-lattice patio cover was installed, I did go see it because the HOA was concerned the open-lattice patio cover was not painted. Sometime later, again without my knowledge or consent, Ms. Gallian installed a roof, awning and gutters on the open-lattice patio cover.

14.    After receiving a request from the HOA to remove the roof, awning and gutters from the open-lattice patio cover, I asked Ms. Gallian to remove these items. Ms. Gallian refused. I then offered to pay for the roof, awning and gutters to be removed by my handyman at no expense to Ms. Gallian. That offer was likewise refused with Ms. Gallian telling me she was "handling the issue." Ms. Gallian specifically warned me that she would refuse to allow my handyman to enter

3

the subject condominium to address any issue raised by the HOA.  To avoid further conflict, I decided not to send my handyman.

15.     Until the time I transferred the subject condominium to Jamie Gallian, on March 23, 2017, I was not aware that Ms. Gallian had a disability that required a variance from the HOA's governing documents.

16.     Based mostly on the overall nature of my deteriorated relationship with Jamie Gallian and the HOA's violation enforcement efforts, I decided to transfer/gift 100% ownership of the subject condominium from my revocable Trust to Jamie Gallian effective March 22, 2017.

17.     I agree to cooperate in good faith with the HOA as it pursues its claims against Ms. Gallian.  I authorize my attorney Michael R. Halvorsen, Esq. to receive service of any subpoena from the HOA relative to the lawsuit against Jamie Gallian to obtain her compliance with the HOA's governing documents.


I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.  Executed this 3-0 day of October 2017 in Coto de Caza, California.

_Sandra L Bradley_
_____
SANDRA L. BRADLEY

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 03/02/2018                TIME: 08:30:00 AM        DEPT:  C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK:  Nga Quach
REPORTER/ERM: Amber N. Hogate CSR# 13525
BAILIFF/COURT ATTENDANT:  None/Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72743477

**EVENT TYPE**: Mandatory Settlement Conference

---

**APPEARANCES**

Pejman D. Kharrazian, from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Lee Gragano and Janine Jasso from The Huntington Beach Gables Homeowners Association, Plaintiff, present.
Brenda K. Radmacher, from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Raquel Flyer, from Flyer & Flyer, present for Defendant/Cross-Complainant Jamie L. Gallian.
Jamie L. Gallian, Defendant/Cross-Complainant is present.

The parties waive any objections to the trial judge conducting a settlement conference.

Settlement conference is held. Case is settled.

The terms of the settlement are recited in open court. Each party indicates on the record that they understand and agree to the terms as stated.

This court retains jurisdiction to enforce the settlement.

The Order to Show Cause re: Dismissal on Settled Case is scheduled for 06/04/2018 at 08:30 AM in Department C33.

No appearance is necessary if the full dismissal is filed by 06/04/2018.

All other future hearing dates are ordered vacated.

---

DATE: 03/02/2018                    MINUTE ORDER                        Page 1
DEPT:  C33                                                          Calendar No.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME: Central Justice Center | |

| SHORT TITLE: The Huntington Beach Gables Homeowners Association vs. Bradley | |
|---|---|

| **NOTICE OF REJECTION OF ELECTRONIC FILING** | CASE NUMBER:<br>30-2017-00913985-CU-CO-CJC |
|---|---|

The electronic filing described by the summary data below was reviewed and rejected by the Superior Court of California, County of Orange

## E-Filing Summary Data

Electronically Submitted By: Jamie Gallian
On Behalf of:
Transaction Number:        3662908
Court received Date:        05/01/2018
Court received Time:        05:00:02 PM
Amount not to Exceed:

## Documents Electronically Filed

JAMIE_FRANKFILED3.2.18MSCHOATranscript 2

This electronic filing was rejected based on the following reason(s):

**Reject Reason 1:**  other
Clerk's Comments to Submitter:
Must contain date of Conditional or unconditional settlement or approximate date for which the Request for Dismissal will be filed.

## E-Filing Service Provider Information
Name:          DDSLegal
Email:          efilingstatus@ddslegal.com
Contact Person:  DDSLegal OCEFiling Support
Phone:          7146625555

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CENTRAL JUSTICE CENTER

### MINUTE ORDER

DATE: 06/04/2018                    TIME: 08:30:00 AM              DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: Darci Mullarky CSR# 5569
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72768738

**EVENT TYPE**: Order to Show Cause re: Dismissal on Settled Case

---

EVENT ID/DOCUMENT ID: 72793807

**EVENT TYPE**: Motion to Strike or Tax Costs
MOVING PARTY: Ted Phillips, Lindy Beck, Jennifer Paulin, Lee Gragnano, Janine Jasso, Lori Burrett
CAUSAL DOCUMENT/DATE FILED: Motion to Strike or Tax Costs, 02/28/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Brenda K. Radmacher, Esq., from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.

---

Order to Show Cause re: Dismissal held. Extensive discussion held in open court as to the status of the settlement. Upon the order of the court, the parties meet and confer. The case is not settled.

The motion by cross-defendants Lee Gragnano, Ted Phillips, Lindy Buck, Jennifer Paulin, Janine Jasso, and Lori Burrett to strike the Memorandum of Costs filed by cross-complainant Jamie Gallian is continued to 07/19/2018 at 08:30 AM in this department.

Jury Trial scheduled for 08/06/2018 at 08:30 AM in Department C33, if the matter is not resolved at the hearing set for 07/19/2018.

---

DATE: 06/04/2018                                    Page 1
DEPT: C33                       MINUTE ORDER
                                                    Calendar No.

34

1    MS. GALLIAN:  ABSOLUTELY.

2    THE COURT:  SO YOU'VE ALL SAVED A LOT OF MONEY

3 BY GETTING THIS CASE RESOLVED TODAY, SO THANK YOU ALL.

4

5     (PROCEEDINGS CONCLUDED)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# Epsten Grinnell&Howell APC
### Attorneys at Law

Respond to:  San Diego office

www.epsten.com
800.300.1704

June 14, 2018

**SENT VIA FIRST CLASS MAIL AND E-MAIL**

Jamie L. Gallian
4476 Alderport Drive
Huntington Beach, CA 92649

**Re:    Signed Transcript of Settlement Agreement**
*Huntington Beach Gables Homeowners Association v. Gallian*
OCSC Case No. 30-2017-00913985-CU-CO-CJC
Our File No.:  5786.06

Dear Ms. Gallian:

Attached is the Reporter's Transcript of Proceedings dated March 2, 2018 from the Mandatory Settlement Conference ("Transcript") the parties attended.  The Transcript reflects the parties' agreement to a stipulated settlement of the above-referenced matter pursuant to Code of Civil Procedure Section 664.6.

The parties agreed to sign the Transcript on the record at the June 4, 2018 hearing on the OSC re Dismissal.  (See June 4, 2018 RT at p. 34, lines 4-20.)  You also signed a copy of the Transcript in the jury room of Department 33 in the presence of the Hon. James T. Crandall, but a copy of your signature was not provided to the Association.  For the record of the parties, a signature page has been added to the end of the Transcript, and *the Association has signed the Transcript*.  Please countersign the Transcript at your earliest convenience and return a copy to me.

We look forward to resolving this lawsuit with you in good faith pursuant to the terms of the stipulated settlement reached on March 2, 2018.

Sincerely,

EPSTEN GRINNELL & HOWELL, APC

Pejman D. Kharrazian

PDK/jac
Enclosure:    MSC Transcript from March 2, 2018 signed by the Association
cc:    Brenda K. Radmacher, Esq. (via email)

3530622v1

**San Diego**
10200 Willow Creek Rd., Suite 100
San Diego, California 92131
858.527.0111 • fax 858.527.1531

**Coachella Valley**
74830 Highway 111, Suite 100
Indian Wells, California 92210
760.836.1036 • fax 760.836.1040

**Inland Empire**
43460 Ridge Park Dr., Suite 200
Temecula, California 92590
800.300.1704 • fax 858.527.1531

**SETTLEMENT AND RELEASE AGREEMENT PURSUANT TO THE REPORTER'S TRANSCRIPT OF PROCEEDINGS DATED MARCH 2, 2018**

The parties to the lawsuit, captioned: *The Huntington Beach Gables Homeowners Association v. Bradley et al.*, Orange County Superior Court Case No. 30-2017-00913985-CU-CO-CJC agree to a settlement and mutual release of this lawsuit, including any related cross-actions, pursuant to the terms put on the record before the Court as reflected in the preceding Reporter's Transcript of Proceedings dated March 2, 2018.

IN WITNESS WHEREOF, the Parties hereto have executed this settlement agreement to be effective as of the date of last execution.

THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION

DATED: _____6/13_____, 2018    By: _____
                                        Lee Gragnano, President

DATED: _____6-13_____, 2018    By: _____
                                        Janine Jasso, Vice President

**JAMIE L. GALLIAN**

DATED: _____, 2018    By: _____
                                        JAMIE L. GALLIAN

-37-

3573265v1

310

1  Rian W. Jones, Bar No. 118830
rjones@epsten.com
2  Pejman D. Kharrazian, Bar No. 279260
pkharrazian@epsten.com
3  EPSTEN GRINNELL & HOWELL APC
10200 Willow Creek Road, Suite 100
4  San Diego, California 92131
(858) 527-0111/ Fax (858) 527-1531
5

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/10/2018** at 11:58:00 AM
Clerk of the Superior Court
By e Clerk,Deputy Clerk

6  Attorneys for Plaintiff
THE HUNTINGTON BEACH GABLES
7  HOMEOWNERS ASSOCIATION

8  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9  COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION, a
12  California Nonprofit Mutual Benefit
Corporation,
13
Plaintiff,
14
v.
15
SANDRA L. BRADLEY, individually and
16  as Trustee of the Sandra L. Bradley Trust;
JAMIE L. GALLIAN, an individual; and
17  DOES 1 through 25, inclusive,

18  Defendants.

19

20  _____

21  AND ALL RELATED CROSS-ACTIONS

22

CASE NO. 30-2017-00913985-CU-CO-CJC

Judge:  James L. Crandall
Dept.: C33

**NOTICE OF RULING ON PLAINTIFF'S
MOTION TO ENFORCE SETTLEMENT
AND ENTER JUDGMENT PURSUANT TO
THE TERMS OF STIPULATED
SETTLEMENT (CODE OF CIVIL
PROCEDURE § 664.6)**

Motion Hearing
Date:  July 19 , 2018
Time:  1:30 p.m.
Dept:  C33

First Amended Complaint Filed: May 16, 2017
Trial Date: December 10, 2018

23  **TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR**

24  **ATTORNEYS OF RECORD HEREIN:**

25  **PLEASE TAKE NOTICE** that on July 19, 2018 at 1:30 p.m. in Department 33 of the

26  above-entitled court, located at 700 Civic Center Drive West, Santa Ana, CA 92701, this Court

27  held a hearing on Plaintiff's Motion to Enforce Settlement and Enter Judgment pursuant to the

28  terms of Stipulated Settlement (Code of Civil Procedure § 664.6). After hearing argument

- 1 -

NOTICE OF RULING ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AND ENTER
JUDGEMENT PURSUANT TO THE TERMS OF STIPULATED SETTLEMENT (CCP §664.6)

3614243v1

1   from Defendant JAMIE L. GALLIAN and counsel for Plaintiff, the Court denied Plaintiff's

2   Motion to enforce settlement.

3          The Jury Trial set for August 6, 2018 is ordered continued to December 10, 2018 at

4   9:00 AM. All discovery cutoff dates and deadlines are continued and shall track the December

5   10, 2018 trial date.

6          Attached hereto as Exhibit A is a true and correct copy of the Court's July 19, 2018

7   Minute Order.

8

9   Dated:  July 30, 2018                          EPSTEN GRINNELL & HOWELL, APC

10

11                                                 By:

12                                                 Rian W. Jones
                                                   Pejman D. Kharrazian
13                                                 Attorneys for Plaintiff
                                                   THE HUNTINGTON BEACH GABLES
14                                                 HOMEOWNERS ASSOCIATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

NOTICE OF RULING ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AND ENTER
JUDGEMENT PURSUANT TO THE TERMS OF STIPULATED SETTLEMENT (CCP §664.6)

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
### CENTRAL JUSTICE CENTER

## MINUTE ORDER

DATE: 07/19/2018                    TIME: 01:30:00 PM        DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: Candace Khorouzan
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72819785

**EVENT TYPE**: Motion to Enforce Settlement
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Motion - Other Enforce Settlement, 06/22/2018

EVENT ID/DOCUMENT ID: 72852524

**EVENT TYPE**: Motion - Other
MOVING PARTY: Jamie L. Gallian
CAUSAL DOCUMENT/DATE FILED: Motion - Other to Withdraw Memorandum of Cost, 07/17/2018

EVENT ID/DOCUMENT ID: 72842898

**EVENT TYPE**: Motion to Strike or Tax Costs
MOVING PARTY: Ted Phillips, Lindy Beck, Jennifer Paulin, Lee Gragnano, Janine Jasso, Lori Burrett
CAUSAL DOCUMENT/DATE FILED: Motion to Strike or Tax Costs, 02/28/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq. and Joyce J. Kapsal, Esq., from Epsten Grinnell & Howell, APC, present for
Cross - Defendant,Plaintiff(s).
Brenda K. Radmacher, Esq., from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Jamie Gallian, present.

1.    MOTION    BY    PLAINTIFF/CROSS-DEFENDANT    THE    HUNTINGTON    BEACH    GABLES
HOMEOWNERS ASSOCIATION TO ENFORCE SETTLEMENT AND ENTER JUDGMENT PURSUANT
TO THE TERMS OF STIPULATED SETTLEMENT

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both
written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become
the final ruling of the court.

Motion by Plaintiff/Cross-defendant The Huntington Beach Gables Homeowners Association to Enforce
Settlement and Enter Judgment Pursuant to the Terms of Stipulated Settlement:

---

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

Moving Party's Request for Judicial Notice [RJN]:

In support of the original moving papers, moving party filed a Notice of Lodgment [NOL] with all of its supporting exhibits, which also requests judicial notice of all of Moving Party's supporting exhibits.

The court grants grant judicial notice as to Ex. A [certified reporter's transcript of the 3-2-18 MSC hearing], Ex. E [certified reporter's transcript of the 6-4-18 OSC hearing], and Ex. J [a criminal complaint filed against responding party Gallian for allegedly violating the restraining order issued in OCSC Case No. 2017-00962999.

All of these documents are properly subject to judicial notice as court records. (Ev. 452(d)(1).) However, as to Ex. J, the court will take judicial notice of the fact that the complaint was filed, but not of the truth of its contents. A court may take judicial notice of the existence of documents in court files, but can only take judicial notice of the truth of facts asserted in such documents as orders, findings of fact and conclusions of law, and judgments. (6 Witkin, Cal. Proc. 5th (2008), Chapter VII, "Proceedings Without Trial," Section 232, p. 674, citing *In re David C.* (1984) 152 Cal.App.3d 1189, 1205.)

The court denies the remainder of the RJN. The remaining documents consists of letters and emails between Moving Party and Responding Party [or their counsel] (MP Exs. C, D, F-H, N], photos of RP allegedly re-installing a corrugated roof (MP Ex. I), copies of numerous police reports allegedly filed against RP by various other residents (MP Exs. L, M, O-S), and an email allegedly from a police detective to MP HOA (MP Ex. S). There is no basis under Evidence Code sec. 452 to take judicial notice of emails, letters, or police reports.

However, these exhibits are otherwise properly authenticated by the various declarations submitted with the moving papers, and there are no evidentiary objections by RP defendant; thus, the court will consider them, despite the fact that many are not properly subject to judicial notice.

Moving Party Reply RJN:

With the Reply, MP submitted a supplemental notice of lodging and request for judicial notice, requesting judicial notice of 14 letters from association residents. The Reply indicates these letters are "from Association residents complaining about Ms. Gallian's bad acts, bullying, harassment, and intimidation." (Reply at 6:16-18.) There are no letters attached to the Reply NOL.

The court denies MP's Reply RJN, because (1) MP does not provide copies of the documents requested (CRC 3.1306(c)); (2) for the same reason, MP has not provided the court with sufficient information to enable it to take judicial notice (Ev. 453(b)); and (3) for the same reason, as well as the fact that the request was not made until the Reply, MP has not provided Responding Party with sufficient notice of the request (Ev. 453(a)).

**Merits:**

In comparing the terms Moving Party contends are part of the settlement agreement, with the transcript of the MSC hearing (MP Ex. A), there are too many discrepancies and inconsistencies to find an enforceable settlement, or a "meeting of the minds" as to several key terms, which are disputed.

CCP 664.6 states:
If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the

---

DATE: 07/19/2018                    MINUTE ORDER                    Page 2
DEPT: C33                                                           Calendar No.

CASE TITLE: The Huntington Beach Gables
Homeowners Association vs. Bradley

CASE NO: **30-2017-00913985-CU-CO-CJC**

court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

A motion to enforce settlement may be decided on declarations. (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.) Moreover, CCP 664.6 provides the court authority to interpret settlement terms and determine disputed factual matters regarding the settlement agreement, based on contract principles, but not to add material terms which were not agreed to by the parties. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) "[N]othing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Id.* at 810)

Moving Party has shown that at the MSC on 3-2-18, plaintiff HOA and defendant Gallian reached a settlement agreement, the terms of which were placed on the record. (MP Ex. A [Certified Reporter's Transcript of the March 2, 2018 MSC ("MSC RT").] The parties also stipulated, and the court agreed on the record, to retain jurisdiction to enforce the settlement pursuant to Code of Civil Procedure section 664.6, and to enter judgment pursuant to the terms of the settlement if necessary. (MP Ex. A at 31:9-21.)

However, MP's summary of the terms of the settlement [moving papers at 9:25-10:23] is inaccurate in numerous respects. More importantly, as to several of the key terms, the MSC transcript shows that the terms were unclear, or that there was no agreement at all. Moreover, Responding Party has a point that the proposed written settlement agreements proposed by Moving Party attorney (MP Exs. D, F, G) include terms which do not appear to be part of the settlement.

First, according to MP, the terms of the stipulated settlement were as set forth at 9:25-10:23 of the moving papers. However, the transcript of the MSC is inconsistent with settlement agreement.

There are also disputes as to the terms of key provisions of the settlement, and thus disputes as to whether the parties in fact reached an agreement as to these terms at all.

First, MP contends the settlement included an agreement that Association would withdraw the preliminary injunction issued by the court on January 11, 2018, but that the terms of the preliminary injunction were incorporated into the settlement agreement. (Moving papers at 10:9-11, citing MSC RT at p. 9, 12-13.) However, review of the MSC transcript in fact shows that RP objected to incorporating all of the terms of the preliminary injunction. (*Id.* at 10:11-14:6.) Defendant Gallian in fact only agreed to the following:

1. RP will not make any other modifications, additions, or improvements without prior approval by the board, requested through counsel. (MSC RT at 10:6-9, 12:13-23.)
2. RP agreed to abide by the CC&Rs, and HOA rules and regulations. (*Id.* at 12:20-24.)
3. If RP believed there was an area not being watered or that something is not being done [in common areas], she would contact her counsel and have counsel contact the HOA attorney so it could be addressed. (*Id.* at 14:2-13.)

Second, MP also contends that "the parties agreed to a stipulation to the terms of the … WVTRO … [o]nce the stipulation is executed, the Association will dismiss the WVTRO without prejudice and vacate the hearing set for August 15, 2018 … [but] [i]f Ms. Gallian violates the stipulation, the Association may go back to Court to reinstate the WVTRO." (Moving papers at 10:12-15, citing MSC RT at p. 15, 32-33.)

---

DATE: 07/19/2018
DEPT: C33

MINUTE ORDER

Page 3
Calendar No.

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

---

This is not accurate either. The transcript at first indicates that Association will dismiss WVTRO action as of the date of the MSC (MSC RT at 14:17-19, 15:5-13); that Gallian will not talk to, photograph, make gestures to, or approach any of the board members (*Id.* at 14:19-22); that Gallian will not come onto board members' property; (*Id.* at 14:22) and that if Gallian violates these terms, HOA may refile the WVTRO action (*Id.* at 14:23-24). However, the transcript goes on to state:

MR. KHARRAZIAN: RIGHT. SO THE TERMS -- BASICALLY THEY'LL BE A STIPULATION TO THE TERMS OF THE CURRENT ORDER BUT THE ORDER WILL BE DISMISSED AND DISSOLVED AT THE - -

MS. GALLIAN: TODAY.

MR. KHARRAZIAN: AS OF TODAY.

THE COURT: ALL RIGHT. I - -

MR. KHARRAZIAN: OR AS SOON AS WE CAN GET BEFORE JUDGE STAFFORD AND - -

THE COURT: I THINK THAT'S A REASONABLE COMPROMISE BY THE BOARD. AND I THANK YOU FOR THAT.

MS. GALLIAN: RIGHT.

(*Id.* at 15:5-16.)
…
MS. GALLIAN: I WANT TO MAKE SURE THE LAST THING IS THE TWO REPRESENTATIVES WHO CAN SIGN ON BEHALF OF THE BOARD ARE HERE TO TAKE THE W.V. OFF. THEY CAN DISMISS IT.

THE COURT: YEAH.

MS. GALLIAN: TODAY.

THE COURT: EVERYTHING STOPS.

MR. KHARRAZIAN: HANG ON. ACTUALLY I THINK THE AGREEMENT WAS THAT COUNSEL, MS. FLYER, WILL FILE - -

MS. FLYER: STIPULATION.

MR. KHARRAZIAN: - - THE REQUEST WITH THE WORKPLACE VIOLENCE TRO DEPARTMENT TO ENTER INTO THE STIPULATION, SO I'M NOT SURE THAT THAT CAN HAPPEN TODAY. BUT IT'S - - IT'S - -

MS. FLYER: IT WILL HAPPEN AS SOON AS I CAN - -

MR. KHARRAZIAN: MS. GALLIAN'S COUNSEL'S CONTROL.

---

DATE: 07/19/2018                    MINUTE ORDER                    Page 4
DEPT: C33                                                           Calendar No.

CASE TITLE: The Huntington Beach Gables      CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

MS. FLYER: AS SOON AS I CAN FEASIBLY DO IT, I WILL DO IT.

THE COURT: THANKS.

MS RADMACHER: AND THE BOARD WILL - - AND MEMBERS AS NEEDED WILL COOPERATE WITH COUNSEL TO EXECUTE ANY DOCUMENTS NEEDED TO ALLOW THAT TO HAPPEN.

MS. FLYER: THANK YOU.

MS. GALLIAN: BUT AS OF RIGHT NOW, THERE'S NOTHING -- THERE'S NO - -

THE COURT: AND ONE FINAL WORD - -

MS. GALLIAN: THERE'S NO WORKPLACE VIOLENCE, AT ALL.

(*Id.* at 32:3-33:5.)

The foregoing shows that the alleged terms of that portion of the stipulated settlement regarding incorporating the WVTRO terms are entirely unclear. "A settlement agreement that incorporates other documents can be enforced pursuant to § 664.6 if there was a "meeting of the minds" regarding the terms of the incorporated documents." (Weil & Brown, Rutter Group, Civil Procedure Before Trial, Chapter 12(II)-F, Section 12:955.6, citing *Weddington Productions, Inc. v. Flick*, *supra* at 813; emphasis added.)

Here, however, it does not appear that there was any "meeting of the minds" as to what terms of the stipulation to resolve the WVTRO were in fact to include; whether the stipulation to resolve the WVTRO was to be entered in that action, or incorporated into the settlement in the current action; or when the HOA would dismiss the WVTRO action [either as of the date of the MSC, or upon entry of the settlement].

As this is a key term of the purported settlement, and as there does not appear to be a "meeting of the minds" as to the terms of resolution of the WVTRO action, it is unclear how the court could enter judgment of this disputed terms.

Thus, the motion is denied on this basis, as the court cannot grant a CCP 664.6 motion to enforce only a portion of the settlement: "[W]hile the court may, under certain circumstances, reject a settlement agreement as a whole, it may *not* approve only *part* of it for § 664.6 enforcement without the parties' mutual consent." (Weil & Brown, Rutter Group, *Civil Procedure Before Trial*, Chapter 12(II)-F, Section 12:979.2, citing *Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1375; emphasis in original.)

"Moreover, to be binding, the agreement must be *sufficiently definite* to enable courts to give it an exact meaning. If an essential element is reserved for future agreement, it is not definite enough. [Citations.]" (*Id.* at Section 12:955.5.) Here, at least as to the terms of resolution of the WVTRO action, the settlement does not appear to be sufficiently definite to be enforceable.

The court notes that the MSC transcript indicates that the settlement also included additional terms, which MP does not address or discuss:
1. Association was to dismiss this action upon payment of the $15K by Gallian. (MSC RT at 16:6-8.)

---

DATE: 07/19/2018                      MINUTE ORDER                           Page 5
DEPT: C33                                                              Calendar No.

CASE TITLE: The Huntington Beach Gables      CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

2. Association would place no further assessments on Gallian's account related to this litigation, including the "tree removal," although Association was not waiving any future claims regarding the "tree removal." (*Id.* at 16:16-25.)

3. Gallian acknowledged HOA's claim of authority to work exclusively in the common area, and agreed not to do any further work in the common area. (*Id.* at 18:2-19:8.)

4. Both the Board and Gallian would comply with the HOA governing documents. (*Id.* at 25:2-11.)

5. Other than any disclosures that the Board is obligated by law to make to its members, the parties are not to make any disclosures about this lawsuit. (*Id.* at 25:14-26:7.)

6. Gallian's five storage bins could remain in place for 90 days or until she moved, whichever came first, and after which time they would be moved "to the parallel parking spots that are across the street from where they are." (*Id.* at 27:5-28:18.)

MP fails to explain why the court should enter a judgment which do not include the above terms.

The motion by plaintiff The Huntington Beach Gables Association to enforce settlement is **denied**. (CCP § 664.6.)

The court finds that the parties did not reach a "meeting of the minds" as to several key terms of the settlement, including allegedly incorporating the terms of the preliminary injunction previously entered in this action, and resolution of the separate Workplace Violence Temporary Restraining Order action.

The request for judicial notice by plaintiff The Huntington Beach Gables Association in support of the moving papers is granted as to Exs. A, E and J. (Ev. 452(d).) As to Ex. J, the court takes judicial notice of the fact that the document was filed, but not of the truth of its contents. (*In re David C.* (1984) 152 Cal.App.3d 1189, 1205.)

Moving party to give notice.

2. MOTION BY CROSS-DEFENDANTS LEE GRAGNANO, TED PHILLIPS, LINDY BECK, JENNIFER PAULIN, JANINE JASSO AND LORI BURRETT TO STRIKE MEMORANDUM OF COSTS

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become the final ruling of the court.

Motion by Cross-defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso and Lori Burrett to Strike Memorandum of Costs:

The motion by cross-defendants Lee Gragnano, Ted Phillips, Lindy Buck, Jennifer Paulin, Janine Jasso, and Lori Burrett to strike the Memorandum of Costs filed by cross-complainant Jamie Gallian is **granted**.

Cross-complainant Gallian dismissed these moving parties; thus, moving parties are the prevailing parties entitled to costs, not Gallian. (CCP 1032(a)(2), (a)(4); CRC 3.1700(b).)

Prevailing parties to give notice.

3. FURTHER RULINGS

---

DATE: 07/19/2018                    MINUTE ORDER                    Page 6
DEPT: C33                                                        Calendar No.

CASE TITLE: The Huntington Beach Gables
Homeowners Association vs. Bradley                    CASE NO: **30-2017-00913985-CU-CO-CJC**

The Jury Trial set for 08/06/2018 is ordered continued to 12/10/2018 at 9:00 AM.

All discovery cutoff dates and deadlines are continued and shall track the 12/10/2018 trial date.

Discovery issues to be addressed by formal motion.

DATE: 07/19/2018                    MINUTE ORDER                    Page 7
DEPT:  C33                                                          Calendar No.

# BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 09/15/18 |
| Payment: | _____ |

**Jamie Gallian
4476 Alderport Drive
Huntington Beach, CA  92649**

Oct-Dec 2018 Quarterly Ground Rent
Delinquent if not received by Oct 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 10/01/18 | Ground Rent (10/2018) | 2,211.22 | | 2,211.22 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:    **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |



DOCUMENT CONTAINS COLORED BACKGROUND ON WHITE PAPER. "VOID" FEATURE, SIMULATED WATERMARK (REVERSE SIDE) MICRO-PRINT BORDER.

PLEASE POST THIS PAYMENT FOR OUR MUTUAL CUSTOMER

**Account:    GHB - 053 - 053GAL**                                $2,213.00

Please Direct Any Questions To                    35/1210
(855) 739-0856
ONLINE BANKING - BILL PAYMENT                    0000006027

JAMIE LYNN GALLIAN
4478 ALDERPORT DR
HUNTINGTON BEACH, CA 92649-2288

BANK OF AMERICA, N.A.                            **September 10, 2018**

Pay <u>TWO THOUSAND TWO HUNDRED THIRTEEN AND 00/100 -----------------------------------</u>    **DOLLARS**

$ | *****2,213.00

TO      BS INVESTORS - HB GABLES
THE     1340 REYNOLDS AVE STE 116               Void After 180 DAYS.
ORDER   IRVINE, CA 92614-5525                   *Signature On File*
OF      |Il.ll.....ll.l.ll.ll.ll..ll.l.ll.l.l.l.l.ll.ll.l.ll.ll.ll    This check has been authorized
                                                by your depositor

WARNING: THIS BORDER CONTAINS MICRO-TYPE WHICH WILL NOT REPRODUCE OR A COPIER

⑈"006027⑈" ⑈:121000358⑈: 325051149938⑈" 189

321

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
### CENTRAL JUSTICE CENTER

## MINUTE ORDER

DATE: 11/09/2018                    TIME: 08:30:00 AM        DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: Eric Yu
REPORTER/ERM: Janet (ACRPT) Taylor CSR# 9463
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72926149

**EVENT TYPE**: Ex Parte
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 11/07/2018

---

**APPEARANCES**
BRENDA K. RADMACHER, specially appearing for Gordon & Rees LLP, present for Cross -
Defendant,Plaintiff(s).
PEJMAN D. KHARRAZIAN, specially appearing for Epsten Grinnell & Howell, APC, present for Cross -
Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.

---

Ex-Parte application for TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR
PRELIMINARY INUNCTION TO ENJOIN DISBURSEMENTS FROM PROCEEDS OF SALE OF REAL
PROPERTY, OR ALTERNATIVELY, FOR AN ORDER REQUIRING GALLIAN TO DEPOSIT AT LEAST
$52,145.27 WITH THE COURT is requested by the Huntington Beach Gables Homeowners Association
and Board members'.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the
evidence presented, now rules as follows:

Ex Parte application for Temporary restraining order and order to show cause for preliminary inunction to
enjoin disbursements from proceeds of sale of real property, or alternatively, for an order requiring
gallian to deposit at least $52,145.27 with the court is denied without prejudice.

Ex-Parte application TO CONTINUE TRIAL is requested by Plaintiff.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the
evidence presented, now rules as follows:

---

DATE: 11/09/2018                    MINUTE ORDER                    Page 1
DEPT: C33                                                        Calendar No.

CASE TITLE: The Huntington Beach Gables          CASE NO.: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

---

EX PARTE APPLICATION TO CONTINUE TRIAL is denied.

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 11/16/2018                    TIME: 08:30:00 AM          DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: Darci Mullarky CSR# 5569
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72930711

**EVENT TYPE**: Ex Parte
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 11/15/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.
Steven A. Fink, Esq. in a limited scope representation.

EX PARTE APPLICATION BY PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION FOR ORDER SHORTENING TIME RE (1) MOTION TO BE DEEMED PREVAILING PARTY AND (2) MOTION TO COMPEL AND FOR TERMINATING SANCTIONS AGAINST JAMIE L. GALLIAN; AND FOR A STAY OF THE ACTION

Hearing held in open court. A discussion is held regarding the status of this matter and the court rules as follows:

The Application by Plaintiff for an Order Shortening Time is granted.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to be Deemed the Prevailing Party, For an Award of Its Attorney's Fees and Costs and For Judgment on Its Complaint, set for 01/17/2018 is ordered advanced to the date of trial, 12/10/2018 at 9:00 a.m. in Department C33.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to Compel and for Terminating Sanctions or Issue/Evidence Sanctions Against Defendant, and for Monetary Sanctions, set for 01/17/2018 is ordered advanced to the date of trial, 12/10/2018 at 9:00 a.m. in Department C33.

---

DATE: 11/16/2018                    MINUTE ORDER                    Page 1
DEPT: C33                                                          Calendar No.

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 12/06/2018          TIME: 01:30:00 PM          DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: (ACRPT) Candace Khorouzan CSR# 11579
BAILIFF/COURT ATTENDANT: Nicole Guerrero

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 72902420
**EVENT TYPE**: Motion for Judgment on the Pleadings
MOVING PARTY: Jamie L. Gallian
CAUSAL DOCUMENT/DATE FILED: Motion for Judgment on the Pleadings, 09/26/2018

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present telephonically.

MOTION BY JAMIE L. GALLIAN FOR JUDGMENT ON THE PLEADINGS

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become the final ruling of the court.

The request for judicial notice by defendant Jamie L. Gallian is granted as to the original complaint (Ex. 1), the First Amended Complaint (Ex. 2), and the "Certificate Re Compliance with Civil Code Section 5950" (Ex. 4). (Ev. 452(d)(1).)

Defendant's request for judicial notice is denied as to the letter attached as Ex. 3.

The motion for judgment on the pleadings by defendant Jamie L. Gallian is denied.

Moving party has not shown that the court has no jurisdiction of the subject of any cause of action alleged by plaintiff, nor has she shown that the First Amended Complaint fails to state facts sufficient to constitute a cause of action against this moving defendant. (CCP 438(c)(1)(B); *Leko v. Cornerstone Building Inspection Service* (2001) 86 Cal.App.4th 1109, 1114 [like a demurrer, motion for judgment on the pleadings lies only for defects apparent on the face of the pleading or which are subject to judicial notice, and the facts alleged in the pleading are presumed true; extraneous evidence not properly subject to judicial notice is not permitted].)

DATE: 12/06/2018
DEPT: C33

MINUTE ORDER

Page 1
Calendar No.

325

CASE TITLE: The Huntington Beach Gables        CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

Moving party fails to show that the prelitigation alternative dispute resolution [ADR] requirements of Civil Code 5930 et seq. apply (see Civil Code 5930(b)); fails to show that any prelitigation ADR demand was untimely; and fails to cite evidence or authority that moving party's time to respond to any prelitigation ADR demand (Civil Code 5935(c)) only commences once she became a member.

Moving party's other arguments go to the merits of plaintiff's claims, and/or rely on extrinsic evidence not properly subject to judicial notice, and thus are not appropriate for a motion for judgment on the pleadings.

The court also notes that moving party failed to submit the declaration required by CCP 439.

Plaintiff The Huntington Beach Gables Homeowners Association to give notice.

Housekeeping matters are addressed. Department C33 is presently engaged in trial on an unrelated matter. The court issues the following orders:

The Jury Trial set for 12/10/2018 in Department C33 is vacated.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to be Deemed the Prevailing Party, For an Award of Its Attorney's Fees and Costs and For Judgment on Its Complaint, set for 12/10/2018, is ordered continued to 01/31/2019 at 01:30 PM in this department.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to Compel and for Terminating Sanctions or Issue/Evidence Sanctions Against Defendant, and for Monetary Sanctions, set for 12/10/2018 is ordered continued to 01/31/2019 at 01:30 PM in this department.

---

DATE: 12/06/2018                        MINUTE ORDER                        Page 2
DEPT: C33                                                                   Calendar No.