D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Movant and Creditor,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>Debtor. | Case No. 8:21-bk-11710-ES<br><br>Chapter 7<br><br>NOTICE OF LODGMENT OF EXCERPTS OF CERTIFIED TRANSCRIPT IN SUPPORT OF REPLY TO DEBTOR'S OPPOSITION TO MOTION OBJECTING TO CLAIMED HOMESTEAD EXEMPTION<br><br>[Dk. No. 130]<br><br>Date: July 21, 2022<br>Time: 10:30 a.m.<br>Ctrm: 5A[1]<br>Location: 411 W. Fourth Street, Santa Ana, CA 92701 |

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, AND ALL INTERESTED PARTIES:

Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") files this Notice of Lodgment in support of its reply ("Reply") filed on July 7, 2022, as Dk. No. 130. At the time the Reply was filed, the certified transcript of Debtor's deposition held on June 28, 2022, was

[1] To continue to aid in the mitigation of the spread of the COVID-19 virus and in light of the response of the Bar to continue virtual appearances, Judge Smith will continue to hold the majority of her hearings remotely using ZoomGov audio and video. However, beginning September 1, 2021, Judge Smith will allow the option for in-person hearings and/or hybrid proceedings for trial and evidentiary hearings only.

not yet available. As such, the Reply cited to and attached as Exhibit "5" portions of the rough draft of the deposition provided by the reporter. On July 19, 2022, the Reporter completed the transcription of the Certified Transcript. Attached are true and correct excerpts from the certified Transcript to replace the rough draft excerpts attached to the Reply. Nothing new is added in this Notice of Lodgment. Instead, the certified copy is merely being provided to verify the contents of the rough draft attached to the Reply.

DATED: July 20, 2022

MARSHACK HAYS LLP

By: /s/ D. Edward Hays
D. EDWARD HAYS
LAILA MASUD
BRADFORD N. BARNHARDT
Attorneys for Movant and Creditor,
HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES

# EXHIBIT 5

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT

---oOo---

In Re

JAMIE LYNN GALLIAN,

Debtor

HOUSER BROS. CO. Dba RANCHO DEL REY MOBILE HOME ESTATES,

,
Plaintiff,

CERTIFIED COPY

vs. No. 8:21-bk-11710-ES

JAMIE LYNN GALLIAN,

Defendants.
_________________________________/

REMOTE CONFERENCING DEPOSITION OF JAMIE GALLIAN

Taken before NICOLE HATLER

CSR No. 13730

June 28, 2022

JOB No. 22-112744

Q. -- correct?

A. It was a notarized signature, yes.

Q. Okay. And that was my next question is how do we know that it happened at or about that time --

A. Because --

Q. -- and --

A. -- it was notarized, twice.

Q. And you've provided us with that notary acknowledgement in the documents, correct?

A. Yes, I have.

Q. And --

A. It's in your -- it's in your documents, as well.

Q. And I'll -- I think I have it up on the screen here. So let me see if I'm smart enough to do a screen share.

A. And I think that -- I believe I asked -- sent you back your documents yesterday and put page numbers, if we could use the page numbers so that I can get to it easily.

Q. It's page 5 of 461.

A. Okay.

Q. In the PDF. And that's an acknowledgement of February 25, 2021, by a notary Greg Buysman, or something like that.

A. Yeah. He's at the local UPS store here.

Q. Okay. And so -- oh, Buysman. I see it -- it's spelled out below. I was trying to read the printing. B-U-Y-S-M-A-N.

And so, you went into the UPS store and had this notary acknowledge that this document -- this certificate of title was being signed on February 25th of 2021, correct?

A. That's correct. However -- if you stop scrolling for a second -- what he notarized -- go up a little bit. No, up, up, up, up. Okay. Okay. So what he's notarizing -- I'm sorry. Can you show me the first line under the signature? No. Go, go -- well, I guess down. Is that what you're -- okay. Stop.

So what he's notarizing is this section right here, the date that I released section B is what he's -- what he's -- you see the 2-25 right here?

Q. Yeah. I see it. So that's what's notarized and then ultimately submitted to HCD, correct?

A. Yes. However, don't forget the tax clearance certificate. That was a nightmare

(Reporter clarification.)

THE WITNESS: It's called the tax clearance certificate.

BY MR. HAYS:

Q. So why don't you tell us what this is and why it

was a nightmare?

A. Well, because the HCD does not change a -- change a certificate of title without paying the current taxes and a year in advance, and I didn't have the money for that. And that's why there's such a difference between -- you see this date right here is July 9th.

Q. Of 2021, correct?

A. That's right. That's the day that I filed bankruptcy. That's when I had -- that's the only time I had the money to pay all that. I didn't realize that they -- they charge so -- they -- they --

And I go, Why are you charging me, like, two or three years?

That's our policy.

I'm like, That can't be the policy. But it's -- it's what they do.

Q. So you submitted the request for the title to be reissued --

A. Uh-huh.

Q. -- based on the February 2021 release?

A. Right, but I didn't have a tax clearance certificate.

Q. And then you were notified that they would not reissue the title until you get this tax clearance certificate?

A. That's correct. And that's why, finally, when I got everything, that's why I believed that July 14th stamp is finally on when they started making -- when they finally officially started making the change.

Q. And so, when -- what resulted in this tax clearance certificate getting issued? You submitted some money?

A. Yeah. You have to pay the current plus a year in advance.

Q. And the money that you paid was paid on July 9th --

A. Correct.

Q. -- 2021?

A. That's correct.

Q. And in what form did you pay it?

A. My Capital One charge card, my VISA card.

Q. Did you have to submit any other paperwork on that date or was it just make the payment?

A. No. You order it online and you go and pick it up with -- and, you know, obviously besides give the money, but that's it.

Q. So on July 9, you go online on the computer --

A. And order it again. Because, see, it's only good for -- when you order it -- I ordered it in -- you know, a long time ago, but I didn't know they were going

to charge me two years. So I never went and picked it up the first time. And then it wasn't until the 9th that I had all the money. I went down there, I paid it, and then that certificate is good for 90 days.

Q. Okay. Let me stop you right there. You said you went down and paid it, and earlier I thought you said you paid online with your charge card?

A. No, no, no. You order it. No. You order the certificate. Okay. They don't -- you -- you have to order it. You can go to the Orange County tax assessor and you drop down to the mobile home, and you type in there, and you order this tax clearance certificate, and they call you and tell you when it's ready.

Or you can follow up and say, Hey, you know what, I've been waiting a long time, you know, can you possibly find the time to do this today? And I went down to the office, the tax clearance -- or the tax assessor's office and paid the bill with my Capital One VISA card.

Q. So --

A. And then they give you this document.

Q. So on July 9th of 2021, you were standing in the tax collector's office with a charge card paying the money that they required?

A. Yes. Before I filed bankruptcy. It was in the morning that I was there and the -- the -- I don't know,

Bankruptcy Court was in the afternoon, like, 2:00 or something.

Q. And then when you got this piece of paper --

A. Uh-huh.

Q. -- handed to you, this original piece of paper with the fancy stamp on it?

A. Yep.

Q. What do you do with that?

A. You have to send it up to Sacramento.

Q. So you then mailed it to Sacramento?

A. Or I could have scanned it into my computer, either one. I don't remember which, how -- how it got there. But they have the original, so I think I followed up with the original.

Q. So you think you mailed the original to them and that's why, on July 14, five days later, they finally put a stamp on it like they're now processing all of this?

A. That's correct.

Q. Okay. And then sometime after July 14th, you get the brand new, original certificate of title back in the mail?

A. Yeah. Well, yeah, but I think that what I said was -- is that I had thought, you know, what is taking so long? I didn't realize that Sacramento is the only one that -- that processes original, you know, so to speak,

these big pink slips. So anyway -- so that's what happened.

So I remember I said that I had to wait because I noticed on the -- what do you call it -- the title search that whoever processed it took JPad and Ron Pierpont off, and that was not the intent.

Q. I understand. So the -- I want to make sure that the documents are -- that we've been referring to are clearly marked as exhibits. And so --

A. They are, but they're out of order, and you've got -- and that's why I wanted to do the page numbers so that --

Q. But -- but just hold on. Hold on.

A. Go ahead. I'm sorry.

Q. I'm trying to -- I'm trying to ask a question and we need to --

A. I'm sorry.

Q. -- keep the reporter happy with both of us.

So the first piece of paper that shows the July 14th stamp is now up on the screen. It's page of 3 of 461.

Is that the front page of the title that got issued after the tax clearance certificate?

A. No. That's the -- that's the original certificate of title, the February 24th one, 2021. If

you look down here at the bottom -- if you go up a little bit -- tiny, tiny print, there should be -- okay. See right there underneath the word "department," see right -- those -- those numbers down there 02-24, way down underneath the word, Department.

Q. Yes, yes.

A. That's the day I come to find out -- or come to learn that's their little date on there where they mail this document, but that's just my own -- I don't work there, so I don't know what they do.

Q. So --

A. -- I, kind of, figured out that's -- must be what that means.

Q. Hold on. Hold on. I'm trying to figure out because all of this is in one big PDF --

A. Uh-huh.

Q. -- what is the first page of the title.

Is this the first page?

A. Correct.

Q. Okay. And is it a one-page document?

A. This is the back.

Q. So the back of page 3 of 461 is what's up on the screen now, which is page 4 of 461.

A. Correct. But that -- that -- this document that was submitted to HCD wasn't -- well, let's see. No.

Okay.

So because the tax clearance certificate had J Sandcastle and Jamie Gallian, they said I had to sign it and put it in both names, and I said, No, that defeats the whole purpose. So we argued about that back and forth, and I think one of your exhibits here -- Rebecca whatever, I don't know, O'Laughlin or something, does a -- does a memo or something that she spoke to me after I contacted the tax assessor's office.

And I said, Why would you put both names on there? Because that's not how -- when you go online under the tax assessor's portal and order this document, that's not what it said. It did not say Jamie Gallian and J Sandcastle, or J Sandcastle and Jamie Gallian. So I don't know why they did that, and I didn't notice it when I -- when I picked it up. And so, she called me.

Q. Let me stop for a second. I'm trying to figure out which pages of this big PDF constitute a single document so that I can -- can call that Exhibit 1 for the record.

A. Okay.

Q. So -- so going to page 3, it's entitled, Certificate of title, near the top.

A. Uh-huh.

Q. And that's the front page of a document, and

A. Yeah. Huntington Beach Gables, yes.

Q. Just trying to make the record clear.

A. Yeah.

Q. And so, you believe it's possible that J Sandcastle funded some of the attorneys' fees in some of these four cases even though it was not a named party, correct?

A. Well, because that's where all the money is. I mean, there was only -- you know, as you said in the beginning, you know, there's only $379,000. Okay. Well, if 185 of it went over to here, you know, what's left? And, well, 175 went over here. Okay. Well, you know, I took money out of my 401(k) because all the money is gone. There is no more,.

And so, the problem -- I think -- I think -- let me just -- let me just say this. What's convoluted about all of this is the fact that I've been trying to be very, very frugal in trying to not spend money that I believe didn't belong to me, meaning that I am -- I was J Sandcastle's tenant. Okay.

And I was paying rent to J Sandcastle, so, you know, yeah, though I'm the member also, I -- in my mind, they are separate -- separate. And it's -- I paid rent just as if a stranger off the street, like I said, that if I was forced to have to -- to rent this place.

That's -- that's why that $9,000 was there. It's like -- it's not -- it doesn't belong to Jamie Gallian any more. It's rent paid to J Sandcastle because they are the legal owner who's trying to pay the debt of the space. So it just gets so convoluted when you -- when -- and I know that you're doing -- we've been very patient with each other; however, it's not simple. It's not a simple answer because it's been almost five years.

Q. So let me clarify something you just said. I believe you said you've been paying rent to J Sandcastle; is that correct?

A. That's correct. Well, until February 25th.

Q. And so, from November of 2018 through February of 2021, you were making monthly payments to J Sandcastle for rent?

A. Yeah, or I would make -- give deposits to them so that -- you know, I was the tenant. Okay. They're still entitled to be paid rent for the person who lives in -- in the unit. And that's the way I was trying to treat it is that the -- the rent goes to them and --

Q. So -- so on a monthly basis, you would pay rent?

A. Yes.

Q. And what was the amount of the rent?

A. 1,086, exactly what the ground lease -- or what the last ground lease payment or amount was here, that

was in the UD action.

Q. So from November of 2018 through February of 2021, that's a little bit more than two years --

A. Correct.

Q. -- it's about two years and three or four months?

A. Yes.

Q. And at just over $1,000 a month, that's roughly $25,000, give or take, correct?

A. That's -- that's correct. That's correct.

Q. So --

A. However -- okay. However, circumstances changed, okay, where there were many months that I couldn't pay that because I lost my job. Okay. And my disability was exhausted. Okay. Thank God, you know, COVID relief money came. So yeah, about 20,000 --

Q. Is there --

A. -- about $20,000 is -- is about what I believe that I have set aside, specifically, that is due Houser because of the rent that I need to pay that I set aside for J Sandcastle, who should have paid Houser, but that whole thing fell apart, so now I'm paying Houser -- or JPad is paying Houser.

Q. Let me -- let me clarify.

So on a monthly basis, you would take the money

from a Jamie Gallian account and transfer it over to a J Sandcastle account?

A. Pretty much. Or -- or if there was a lump sum that I put into that account, meaning, I think, there was one or two when my career ended at United, the 401(k) payments -- so those went to J Sandcastle. So that's why I'm so interested in getting with the CPA to figure out, you know, this money was paid on my behalf for the purpose, because I was their tenant, and that's the way I had always intended to treat it, if that makes sense.

Q. But again, whether it was each and every month or periodically, you paid rent by transferring money from your account to a J Sandcastle's account over this period of time?

A. Yes.

Q. And then the rent stopped in February of 2021 after J Sandcastle transferred title back to you?

A. Released. Yeah. Released their interest in the -- in the home. Then I never paid out of the J Sandcastle account again.

Q. And so, from that point in February of 2021 forward, you now considered yourself an owner and not a tenant or renter?

A. Yeah, so to speak. Then I -- then it was really my responsibility to keep separate, you know, the rent

REPORTER'S CERTIFICATE

I, NICOLE HATLER, a Shorthand Reporter, State of California, do hereby certify:

That JAMIE GILLIAN, in the foregoing deposition named, was present and by me sworn as a witness in the above-entitled action at the time and place therein specified;

That said deposition was taken before me at said time and place, and was taken down in shorthand by me, a Certified Shorthand Reporter of the State of California, and was thereafter transcribed into typewriting, and that the foregoing transcript constitutes a full, true and correct report of said deposition and of the proceedings that took place;

IN WITNESS WHEREOF, I have hereunder subscribed my hand this 19th day of July 2022.

NICOLE HATLER, CSR NO. 13730
State of California

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **NOTICE OF LODGMENT OF EXCERPTS OF CERTIFIED TRANSCRIPT IN SUPPORT OF REPLY TO DEBTOR'S OPPOSITION TO MOTION OBJECTING TO CLAIMED HOMESTEAD EXEMPTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 20, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On **July 20, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 20, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

PURSUANT TO THE COURTROOM POLICIES AND PROCEDURES OF THE HONORABLE ERITHE A. SMITH, COURTROOM 5A, §VIII. JUDGES' OR COURTESY COPIES, EXCEPT FOR DOCUMENTS 200 PAGES OR OVER, INCLUDING EXHIBITS, JUDGE SMITH **DOES NOT** REQUIRE JUDGES' COPIES.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 20, 2022 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012 **F 9013-3.1.PROOF.SERVICE**

Main Document Page 20 of 20

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**