

my FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1274 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

8694

BK 13824 PG 1274

$19.00

Recorded at the Request of
and When Recorded Return To:

Robert P. Warmington
16592 Hale Avenue
Irvine, California    92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:00 A.M. NOV 7 1980

LEE A. BRANCH, County Recorder

A.P 178-00-01

## CONDOMINIUM SUBLEASE

THIS SUBLEASE (hereinafter "lease") is made
this 1st day of ___August___, 1980, by and between
ROBERT P. WARMINGTON, an individual whose address is 16592
Hale Avenue, Irvine, California 92714 (herein termed the
"Landlord"), and

__JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife, as Joint Tenants__

whose address is
__4476 Al_port, Huntington Beach, Ca. 92647__
(herein termed the "Tenant").

### W I T N E S S E T H:

That whereas Tenant is concurrently acquiring
certain interest in Condominium Unit __53__ on Lots 1 and 2
of Tract 10542 as shown on a map recorded in Book 456
Pages 49 and 50 Official Records of Orange County
California consisting of buildings and other improvements
located on Lots 1 and 2 of Tract 10542, which buildings
and other improvements are and shall remain real property.

1.    PROPERTY LEASED.  For and in consideration
of the payment of the rents and taxes and other charges
and for the performance of all of the covenants and
conditions of this lease by Tenant, Landlord hereby
subleases to Tenant

(i)  Unit __53__, (the "Unit") as shown and
defined on that certain Condominium Plan
recorded in Book 13358 Pages 1193 et seq.,
Official Records of Orange County,
California (the "Condominium Plan"),
excepting therefrom all buildings and other
improvements;

(ii)  An undivided one-eightieth (1/80)
interest in the Common Areas (as defined in
the Condominium Plan, excepting therefrom
all buildings and other improvements;

(iii)  An easement for the exclusive use and
occupancy of those portions of the
Restricted Common Area (as defined on said
Condominium Plan) for entry and staircases
and attic space relating to said Unit,
excepting therefrom all buildings and other
improvements;

WPN:2004A

BK 13824 PG 1275

    (iv)  A non-exclusive easement and right to
use the Common Area (as defined on said
Condominium Plan), except the Restricted
Common Area, excepting therefrom all
buildings and other improvements.

It is understood that Houser Bros. Co.. a California
limited partnership (hereinafter the "Master Lessor") and
Landlord have entered into a Ground Lease dated as of
August 1, 1980 which is being recorded concurrently
herewith (the "Master Lease") as lessor and lessee,
respectively. This lease shall be subject and subordinate
to the Master Lease, provided that, pursuant to the Master
Lease, Master Lessor has agreed not to disturb the
subleasehold estate of Tenant in the event of a default
under the Master Lease. Tenant acknowledges receipt of a
copy of the Master Lease prior to Tenant's execution of
this lease. The Unit is one unit in a Condominium Project
(the "Project") constructed on the leased land and
governed by a Declaration of Covenants, Conditions and
Restrictions (the "Declaration") recorded in Book 13618,
Page 982, Official Records of Orange County, California as
amended.

SUBJECT TO:

    (a)  Current taxes and assessments.

    (b)  Covenants, conditions, restrictions,
reservations, rights, rights-of-way and easements of
record.

    2.  **TERM OF LEASE**.  The leased land is leased for
a basic term commencing on the date this Condominium Sublease
is recorded in the Office of the County Recorder of Orange County,
California and ending on December 31, 2059, subject, however,
to earlier termination as hereinafter provided.

    3.  **RENTAL**.  Tenant agrees to pay to Landlord,
as rental for the use and occupancy of said leased land
during the term of this lease, the sum of One Thousand
Five Hundred DOLLARS ($1,500) per year. in quarterly
installments of $375 each in advance, on the first day of
the quarter of each calendar year of said term (Provided,
however, if the term of this lease commences on a date
other than the first day of a calendar quarter, Tenant
shall pay an appropriately pro rated amount of such
quarterly installments upon the commencement of such
term); subject, however, to adjustment at the time and in
the manner as herein provided for in Article 21 entitled
"Rental Adjustment". All rentals hereunder and charges
with respect thereto shall be paid in lawful money of the
United States of America.

    4.  **TAXES AND ASSESSMENTS**.  In addition to the
rents above provided, Tenant shall pay and discharge all
taxes and general and special assessments of every
description which may be levied upon or assessed against
the leased land and all interest therein and improvements
and other property thereon, (including its Unit) and upon
all rentals payable with respect to the leased land,
whether belonging to Landlord, Tenant or the Master

WPN:2004A                    2

BK 13324 0 1276

Lessor, as such taxes and assessments become due and payable during the term of this lease. Tenant agrees to protect and hold harmless the Landlord, the Master Lessor and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other charges which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5.  USE OF LEASED LAND.  Tenant shall use the leased land and its Unit for single family residential use and purpos s incidental thereto.  Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, or its Unit as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

6.  IMPROVEMENTS.  When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of Landlord whatsoever. Further, Tenant shall comply with all of the terms, covenants and conditions of the Master Lease pertaining to such construction, including, without limitation, the obligation to obtain the approval of the Master Lessor when, and to the extent required by the Master Lease.

7.  MAINTENANCE.  Landlord shall not be obligated to make any repairs, alterations, additions or improvements in, to, upon, or adjoining the leased land or any improvements that may be constructed or installed on the leased land.  As part of the consideration for Landlord entering this Lease, Tenant shall, at all times during the full term of this lease and at his sole cost and expense, keep, repair and maintain its Unit and those other portions of the leased land and buildings and improvements therein which are the responsibility of Tenant to maintain and repair under the provisions of the Declaration, in clean and sanitary condition and in good order and repair.  Tenant shall pay for all water, gas, heat, light, power, telephone and all other utilities and services furnished to its Unit.  Tenant shall make payment directly to the utility involved for all separately metered services and shall pay to the management body for the Project the proportionate share of all centrally metered utilities, such proportion to be determined by said management body.

Tenant shall at all times fully comply with and abide by the terms, covenants, restrictions, provisions and conditions of the Declaration and any amendments thereof, and any rules, regulations, agreements, decisions and determinations duly made by the management body for the Project established pursuant to the Declaration respecting the maintenance, use and occupation of its Unit

WPN:2004A                    3

BK 13824 PG 1277

and the leased land and any building or improvements constructed thereon and the payment of all assessments and charges of every type levied by the management body of the Project in connection therewith.  In addition to the foregoing, Tenant hereby covenants and agrees to promptly pay at all times during the term hereof, before the same shall become delinquent, Tenant's share of the common expenses of the Project and any and all assessments, charges, and duties of every description, levied under the provisions of the Declaration, without cost, expense or liability to Landlord.  Tenant shall further, during the whole term of this Lease, by paying his proportionate share of the common expenses of the Project make, build, maintain and repair all fences, sewers, drains, curbs, roads, sidewalks, parking areas, and other improvements which may be required by law to be made, built, maintained and repaired upon or adjoining or in connection with or for the use of the leased land.

8.   RESTORATION OF IMPROVEMENTS.  If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9.   LIENS AND CLAIMS.  Tenant shall not suffer or permit to be enforced against the leased land or its Unit, or any part thereof, any mechanics', laborers', materialmen's, contractors', subcontractors', or any other liens arising from or any claim for damages growing out of any work of construction or improvement, or any other claim or demand howsoever the same may arise, but Tenant shall pay or cause to be paid all of said liens, claims and demands before any action is brought to enforce the same against the leased land and its Unit, and Tenant hereby indemnifies and agrees to hold Landlord, and its Unit free and harmless from all liability for any and all such liens, claims and demands, together with all costs and expenses, including, but not limited to, attorneys' fees and court costs incurred by Landlord or Master Lessor in connection therewith, and Landlord and Master Lessor shall have the right, at any time and from time to time, to post and maintain on the leased land, or any part thereof, such notices of nonresponsibility as desired by Landlord or as may be provided by law.  Notwithstanding anything to the contrary contained in this paragraph, if Tenant shall, in good faith, contest the validity of any such lien, claim or demand, then Tenant shall, at its expense, defend itself, Landlord and Master Lessor against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against landlord the leased land or its Unit, and if Landlord shall require, Tenant shall furnish to Landlord a surety bond satisfactory to Landlord in an amount equal to such contested lien, claim or demand indemnifying Landlord and Master Lessor against liability for same; or, if Landlord shall request, Tenant shall

BK 13824 PG 1278

procure and record the bond provided for in the Civil Code
of the State of California, or any comparable statute
hereafter enacted providing for a bond freeing the leased
land and the Unit from the effect of such lien or claim or
action thereon.

10.  LIABILITIES.  Landlord shall not be liable
for any loss, damage, injury or claim of any kind
whatsoever to any person or property of Tenant, or any of
Tenant's employees, guests or invitees or of any other
person whomsoever, caused by any use of the leased land or
by any defect in any building, structure or other
improvement constructed thereon, or arising from any
accident on the leased land or any fire or other casualty
thereon, or occasioned by the failure on the part of
Tenant to maintain said premises in safe condition, or by
any nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  LANDLORD PAYING CLAIMS.  Neither Landlord
nor the Master Lessor shall be liable for any loss,
damage, injury or claim of any kind or character to any
person or property arising from or caused by the use or
development of the leased land and the construction of
improvements thereon, including, without limitation, any
such loss, damage, injury or claim arising from or caused
by (i) any use of the leased land, or any part thereof;
(ii) any defect in the design, construction of or material
in any structure or improvement upon the leased land
or in any other therein; (iii) any defect in
soils or in the or soils or in the design and
accompli (iv) any act or omission of
Tenant ents, employees, licensees,
invitee, cont s; (v) any accident on the leased
land or other casualty thereon; (vi) any representations
by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agent, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in
connection with the leased land; and Tenant, as a material
part of the consideration of this Lease, hereby waives on
its behalf all claims and demands against Landlord or the
Master Lessor for any such loss, damage or injury of
Tenant, and hereby indemnifies and agrees to hold Landlord
and the Master Lessor entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons,
and with respect to any such violations or charges arising

WPN:2004A                          5

BK 13824 PG 1279

therefrom, including, without limitation, attorneys' fees and court costs incurred by Landlord and the Master Lessor in connection therewith.

Tenant either individually, or in conjunction with the Tenants of the remaining undivided interests in the leased land or through the management body for Project shall maintain at all times during the term of the Lease, at its expense and in companies aceptable to Landlord:

(a)  Worker's compensation insurance and employer's liability insurance.

(b)  Comprehensive liability insurance, with limits of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS for any one person; ONE MILLION ($1,000,000) DOLLARS for any one occurrence as to bodily injury or death; and ONE HUNDRED THOUSAND ($100,000) DOLLARS per occurrence as to property damage.

Each policy of insurance shall be issued by insurers of recognized responsibility, qualified to do business in California, acceptable to Landlord and the Master Lessor and which has, at the execution hereof, a rating at least equal to AXV by Best's Insurance Guide (or other equivalent rating if such Guide be discontinued) and shall name Landlord and the Master Lessor as an additional insured. Prior to the time of commencement of this Lease, Tenant shall deliver certificates of insurance carriers of each policy of insurance as evidence of compliance with the above requirements and stating that not less than ten (10) days' written notice will be given to Landlord and the Master Lessor prior to cancellation or reduction in coverage or amount.

12.  **ASSIGNMENT**.  Tenant shall have the right to assign, sublet or otherwise transfer its interest under this lease without the prior written consent of Landlord. Notwithstanding the foregoing, this lease or any right hereunder shall in no case be assigned separate and apart from Tenant's Unit located on the leased land.  Also notwithstnding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

13.  **ENCUMBRANCES**.  Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed"), for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions.  Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

A.  Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of

WPN:2004A

BK 13824 PG 1280

any such trust deed or assignment, the provisions of this Lease shall control.

B.   Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C.   Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto.   Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D.   Landlord agrees that it will not terminate this Lease because of any default or breach hereunder or the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within sixty (60) days after service of written notice on the encumbrancer by Landlord of its intention to terminate this Lease for such default or breach, shall:

(a)   Cure such default or breach if the same can be cured by the payment or expenditure of money provided to be paid under the terms of this Lease, or if such default or breach is not so curable, cause the trustee under the trust      to commence and thereafter to diligently pursue to completion steps and proceedings for the foreclosure by sale or by exercise of a power of sale under and pursuant to the trust deed in the manner provided by law; and

(b)   Keep and perform all of the covenants and conditions of this Lease requiring the payment or expenditure of money by Tenant until such time as said leasehold shall be sold upon foreclosure, or by exercise of a power of sale, pursuant to the trust deed or shall be released or reconveyed thereunder; provided, however, that if the beneficiary under such trust deed shall fail or refuse to comply with any and all of the conditions of this Article with respect to a breach or default as to which notice of intention to terminate this Lease has been given to the encumbrancer, then and thereupon Landlord shall be released from the covenants of forebearance herein contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this Article may be given concurrently with or after Landlord's notice of default to Tenant as herein provided for in the Article entitled "Default."

Any mortgagee shall have the right at any time during the term hereof while this lease is in full force and effect:

WPN:2004A                    7

BK 13824 PG 1281

(a)  To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)  To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person firm or corporation without the consent of Landlord as to such initial transfer, and such obligations shall not commence as to any obligation which cannot be satisfied by the payment of money prior to mortgagee's acquisition of the leasehold estate hereunder by reason of the exercise of its rights as aforesaid.

Until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein.

14.  DEFAULT.  Should Tenant fail to pay any installment of rent or any other sum provided in this lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of ten (10) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of thirty (30) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant

WPN:2004A                     8

BK 13824 PG 1282

shall execute, acknowledge and deliver to Landlord a proper instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to the leased land and any and all improvements thereon, if not removed by virtue of this Lease or otherwise.

16.   PLACE OF PAYMENTS AND NOTICES.  All rents and other sums payable by Tenant to Landlord hereunder shall be paid to the Landlord at the address set forth after Landlord's name above. Whenever either party hereto desires to give written notice to the other respecting this Lease, such notice, if not personally delivered to Landlord or to Tenant, shall be sent by certified or registered mail, with postage prepaid, and directed to either party at the address hereinabove specified, or at such other address as either party may hereafter designate in writing.  The service of any such written notice shall be deemed complete at the time of such personal delivery or within two (2) days after the mailing thereof in Orange County, California, as herein provided.  Should Landlord or Tenant consist of more than one person, the personal delivery or mailing of such notice to any one of such persons shall constitute complete service upon all such persons.  Any notice provided in the Article hereof entitled "Encumbrances" to be given by Landlord to any encumbrancer of Tenant shall be served in the same manner as herein provided in this Article and shall be delivered to the encumbrancer or directed to its address as last shown on the records of Landlord.

17.   REMEDIES.  Should Tenant at any time be in default hereunder pursuant to the provisions of the Article hereof entitled "Default", then notwithstanding Tenant's breach of this lease and abandonment of the leased land, this lease shall continue in effect so long as Landlord does not terminate Tenant's right to possession and Landlord may enforce all of its rights and remedies hereunder, including, at the option of Landlord:

A.   Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article 3 above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten percent (10%) per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

B.   By written notice to Tenant, Landlord may declare this Lease at an end, re-enter the leased land by process of the law, eject all parties in possession

WPN:2004A                                        9

BK 13824 PG 1283

thereof therefrom and repossess said leased land, in which
event, Landlord shall have the right to recover from
Tenant:

(i)    The worth at the time of award of the
unpaid rent which has been earned at the time of
termination;

(ii)   The worth at the time of award of the
amount by which the unpaid rent which would have been
earned after termination until the time of award
exceeds the amount of such rental loss that the Tenant
proves could have been reasonably avoided;

(iii)  The worth at the time of award of the
amount by which the unpaid rent for the balance of the
term after the time of award exceeds the amount of
such rental loss for the same period that the Tenant
proves could be reasonably avoided;

(iv)   All other amounts necessary to compensate
Landlord for all the detriment proximately caused by
Tenant's failure to perform its obligations hereunder
or which in the ordinary course of things are likely
to result therefrom; and

(v)    In computing "worth at the time of award"
Landlord shall be allowed interest at the rate of ten
percent (10%) per annum.

Each of the terms, covenants, conditions and
provisions of Tenant under this lease is a material
consideration for this lease, the breach of which shall be
deemed a default hereunder. All rights, options and
remedies of Landlord contained in this lease shall be
construed and held to be cumulative, and no one of them
shall be exclusive of the other, and Landlord shall have
the right to pursue any one or all of such remedies or any
other remedy or relief which may be provided by law,
whether or not stated in this lease. No waiver by
Landlord of a breach of any of the terms, covenants or
conditions of this lease by Tenant shall be construed or
held to be a waiver of any succeeding or preceding breach
of the same or any other term, covenant or condition
herein contained. No waiver of any default of Tenant
hereunder shall be implied from any omission by Landlord
to take any action on account of such default if such
default persists or is repeated, and no express waiver
shall affect default other than as specified in said
waiver. The consent or approval by Landlord to or of any
act by Tenant requiring Landlord's consent or approval
shall not be deemed to waive or render unnecessary
Landlord's consent or approval to or of any subsequent
similar acts by Tenant.

In the event any action shall be instituted
between Landlord and Tenant in connection with this lease,
the party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

WPN:2004A                     10

BK 13824 PG 1284

18.  REPRESENTATIONS.  Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19.  HOLDING OVER.  This lease shall terminate and become null and void without further notice upon the expiration of said term.  Any holding over shall not consitute a renewal hereof, but the tenancy shall thereafter be on a month-to-month basis and otherwise on the same terms and conditions as herein set forth.

20.  EMINENT DOMAIN.

A.  Definition of Terms.  The term "total taking", as used in this Article, means the taking of the entire leased land under the power of eminent domain or the taking of so much of said land as to prevent or substantially impair the use thereof by Tenant for the uses and purposes hereinabove provided.

The term "partial taking" means the taking of a portion only of the leased land which does not constitute a total taking as defined above.

The term "taking" shall include a voluntary conveyance by Landlord to an agency, authority or public utility under threat of a taking under the power of eminent domain in lieu of formal proceedings.

The term "date of taking" shall be the date upon which title to the leased land or portion thereof passes to and vests in the condemnor.

The term "leased land" means the real property belonging to Landlord, together with any and all improvements placed thereon by Landlord or to which Landlord has gained title.

B.  Effect of Taking.  If, during the term hereof, there shall be a total taking or partial taking under the power of eminent domain, then the leasehold estate of Tenant in and to the leased land or the portion thereof taken shall cease and terminate as of the date of taking of the said land.  If this lease is so terminated, in whole or in part, all rentals and other charges payable by Tenant to Landlord hereunder and attributable to the leased land or portion thereof taken shall be paid by Tenant up to the date of taking by the condemnor and the parties shall thereupon be released from all further liability in relation thereto.

C.  Allocation of Award - Total Taking.  All compensation and damages awarded for the total taking of

WPN:2004A                   11

BK 13824 PG 1285

the leased land allocated to Landlord under the terms of
the Master Lease shall be allocated as follows:

(a)   Tenant shall be entitled to an amount equal
to the sum of the following:

(i)   The fair market value of all of the
improvements located on the leased land; and

(ii)   The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)   Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

D.   Allocation of Award - Partial Taking.   All
compensation and damages awarded for the taking of a
portion of the leased land allocated to Landlord under the
terms of the Master Lease shall be allocated and divided
as follows:

(a)   Tenant shall be entitled to an amount equal
to the sum of the following:

(i)   The proportionate reduction of the
fair market value of the improvements located on
the leased land; and

(ii)   The proportionate reduction of the
fair market value of Tenant's leasehold interest
in the leased land.

(b)   Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

E.   Reduction of Rent on Partial Taking.   In the
event of a partial taking, the rent payable by Tenant
hereunder shall be adjusted from the date of taking to the
next rental adjustment date or to the date of the
expiration of the term of this lease, whichever date is
sooner.   Such rental adjustment will be made by reducing
the basic rental payable by the Tenant in the ratio that
the fair market value of the leased land at the date of
taking bears to the fair market value of the leased land
immediately thereafter.

F.   Determination of Fair Market Value.
Whenever fair market value must be determined for the
purposes of this Article, and the parties fail to agree in
writing on such fair market value within ten (10) days of
a request for such agreement from either party, then fair
market value shall be determined by appraisers appointed
pursuant to the Article in the Master Lease entitled
"Condemnation" or if no such appraiser have been or are to
be appointed, by agreement of Landlord and Tenant or, in
the absence of such an agreement by appraisers appointed
by Landlord and Tenant in the same manner as set forth in
such Article.

WPN:2004A                    12

BK 13824PG 1286

21.  RENTAL ADJUSTMENT.

A.    Effective January 1, 2000, January 1, 2020,
and January 1, 2040, the annual rental payable hereunder
shall be adjusted to a sum equal to ten percent (10%) of
the unimproved fair market value of the leased land, or
any portion then remaining subject to this Lease, as of
such dates.  The said "unimproved fair market value" of
the leased land shall be such value as determined by the
Master Lessor and the Landlord in accordance with the
terms and provisions of Article 21 of the Master Lease.
After any such adjustment of rent, Tenant shall pay to
Landlord such rental as so adjusted during the period
applicable thereto at the times and in the manner herein
provided for in the Article entitled "Rental"; provided,
however, in no event shall the annual rental, as so
adjusted, be less than the annual rental in the
immediately preceding period.

Pending the final determination of such adjusted
rental, Tenant shall pay to Landlord the amount of rent
previously payable under the Article of this lease
entitled "Rental".  If such adjusted rental, as finally
determined, shall exceed the amount of the previous
rental, the excess amount accruing during the interim
period shall be paid by Tenant to Landlord within thirty
(30) days after the final determination of said adjusted
rental.

B.    Effective January 1, 1990, January 1, 2010,
January 1, 2030, and January 1, 2050, the annual rental
shall be adjusted upwards as follows:  As promptly as
practical after such dates, Landlord shall compute the
increase, if any, in the cost of living during the period
just ended, based upon the Consumers Price Index - Los
Angeles/Long Beach/Anaheim Metropolitan Area (1967=100),
"All items of goods and services purchased by urban wage
and clerical worker families" (hereinafter called the
"Index"), published by the Bureau of Labor Statistics of
the United States Department of Labor.  The Index Number
for the latest month prior to commencement of the term of
this Lease, with respect to which such a Number is
published, shall be the "Base Index Number" and the
corresponding Index Number for the month which immediately
preceeds the effective date of the adjustment shall be the
"Current Index Number".

The annual rent shall be adjusted by multiplying
the rental payable during the immediately preceding year
of the term of this lease by a fraction, the numerator of
which is the Current Index Number and the denominator of
which is the Base Index Number; provided, however, that
the annual rent shall never be reduced below the rental
payable in the immediately preceding twelve-month period.

Tenant shall continue payment of rent
installments in effect for the expiring rental period
until notified by Landlord of the new rent.  Such
notification shall include a memorandum showing the
calculations used by Landlord in determining the new
rent.  Immediately upon receipt of such notice, Tenant

BK 13824 PG 1287

shall commence payment of the adjusted rent, and shall also pay to Landlord with respect to any period already expired within thirty (30) days after receipt of such notice, the excess of the new annual rent over the rent actually paid by Tenant.

If publication of the Index shall be discontinued, the most comparable Index when published by any branch or department of the United States Government shall be substituted, or if there is none, the parties shall agree on another source of information, and such adjustments in the method of computation shall be made as may be necessary to carry out the intent of this cost-of-living provision. Appropriate adjustments shall also be made in the event that the base period, or other aspects of the Index are changed. If the parties are unable to agree on a source of information, such source of information shall be determined by arbitration, pursuant to the provisions of the California Code of Civil Procedure.

Notwithstanding the foregoing, the annual rental shall not be adjusted pursuant to the above higher than a sum equal to one hundred seventy percent (170%) of the rent payable in the immediately preceding twelve-month period.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land .. to prevent any erosion thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and height of any building so erected for residential purposes.  Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so

BK 13824 PG 1288

erected. Such rights of use shall be as not to interfere
with the use and enjoyment of the lessees of adjoining
lots; and, in the event that any such party wall or fence
is damaged or injured from any cause other than the act or
negligence of one of the lessees, the same shall be
repaired or rebuilt at their joint expense.

24. **COMPLIANCE WITH LAWS.**  Tenant covenants that
during the lease term, Tenant will comply, at no cost or
expense to Landlord, with all laws, ordinances, orders,
rules, regulations and requirements of all federal, state
and municipal governments and appropriate departments,
commissions, boards and officers thereof, which may be
applicable to the leased land or its Unit, buildings and
other improvements constructed thereon, or the use or
manner of use of the leased land or its Unit.  Tenant
accepts the leased land and its Unit in the actual
condition of the same as of the date of this lease.

25. **ACCEPTANCE OF PERFORMANCE BY OTHERS.**
Landlord agrees to accept performance of any of the
covenants or agreements of Tenant contained herein from
(a) any group of ten or more tenants holding subleases of
individual interests in the leased land or (b) the
management body for the Project.

26. **CONSTRUCTION AND EFFECT.**  Time is of the
essence of this lease.  The article headings herein are
used only for the purpose of convenience and shall not be
deemed to limit the subject to the articles hereof or to
be considered in the construction thereof.  Each and all
of the obligations, covenants, conditions and restrictions
of this lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant.  If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons.  In
this lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

27. **NON-DISTURBANCE.**  No mortgage or deed of
trust placed on the leased land  Landlord shall be
superior to the interest of Tenant herein unless the
mortgagee or beneficiary thereunder executes an agreement
in recordable form covenanting in a form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary this Lease
and the rights of Tenant hereunder shall not be disturbed
by reason of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect.

28. **ESTOPPEL CERTIFICATES.**  Landlord and Tenant
shall at any time and from time to time, upon not less
than ten (10) days prior written request by the other

BK 13824 PG 1288

party or parties to this lease, execute, acknowledge and deliver to such party or parties a statement in writing certifying that this lease is unmodified and in full force and effect (or if there has been any modification thereof that the same is in full force and effect as modified and stating the modification or modifications) and that there are no defaults existing (or if there is any claimed default stating the nature and extent thereof); and stating the dates to which the rent and other charges have been paid in advance. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates of Tenant, or any prospective purchaser of the estate of Landlord, or any lender or prospective assignee of any lender on the security of the leased land or the fee estate or any part thereof, or upon the leasehold estate of Tenant or any part thereof, and any third person.

      IN WITNESS WHEREOF, the parties hereto have executed this Sublease as of the day and year first above written.

By   *[signature]*
  Robert P. Warmington
    "Landlord"

By   *[signature]*
    "Tenant"

By   *[signature]*
    "Tenant"

WPN:2004A     16

BK 13824 PG 1290

STATE OF ___CALIFORNIA____ )
                                   ) ss.
COUNTY OF ___ORANGE____      )

On ___August 1___ , 19 80, before me the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington, known to me to be the person whose name is subscribed to the within Instrument, and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

                                   _____
                                   Notary Public

[Seal]   
OFFICIAL SEAL
GAIL L. KING
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Nov 5, 1982

[Attach acknowledgment form for Tenant]

STATE OF CALIFORNIA        )
                                   ) ss.
COUNTY OF ___Orange____    )

On ___November 5, 1980___ , before me, the undersigned, a Notary Public in and for said State, personally appeared ___John E. Turner and Virginia H. Turner___ _____

_____

known to me to be the person S whose name are subscribed to the within instrument and acknowledged to me that ___they___ executed the same

WITNESS my hand and official seal.

Signature ___Bonnie Quenneville___

Bonnie Quenneville
Name (Typed or Printed)

OFFICIAL SEAL
BONNIE QUENNEVILLE
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Jan. 13, 1984

(This area for official notarial seal)

Form 2001—(Individual) First American Title Company

WPN:2004A                     17

RECORDED D



**Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1291 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

8695          BK 13824PG 1291

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California    92714

```
RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M.  NOV  7  1988

LEE A. BRANCH, County Recorder
```

Conveyance connected with leaseholder
interest not to exceed 99 years.

AP 178-011-01                                                    13/4

## CONVEYANCE OF REMAINDER INTEREST

FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, THE ROBERT P. WARMINGTON CO., a California
corporation, hereby grants TO ROBERT P. WARMINGTON, an
individual, the remainder interest in that portion of Lots 1
and 2 of Tract 10542 in the City of Huntington Beach, County
of Orange, State of California, as shown on a Map recorded in
Book 456, Pages 49 and 50 of Miscellaneous Maps, in the
Office of the County Recorder of Orange County, California,
described on Exhibit I attached hereto, after the term of
years expiring upon expiration or early termination of that
certain Condominium Sublease of even date herewith, made
by Robert P. Warmington, an individual, to _____

____John F. Turner and Virginia H. Turner, husband and wife, as Joint Tenants

_____

_____

_____,

a short form of which is being recorded concurrently herewith,
subject, however, to all matters whether or not of record.

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _Olive N Grany_

By _William F Bitt_

BK 13824 PG 1292

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On ___August 1_____, 1980, before me, the undersigned,
a Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____, known to me to be the
_Vice President_, and ____WILLIAM J. PITTMAN____,
known to me to be the ___Secretary___ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

OFFICIAL SEAL
GAIL L KING
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Nov 5 1982

Notary Public in and for
said County

[SEAL]

2

BK 13824 PG 1293

## EXHIBIT I

### Parcel 1

Those portions of Unit 53 , as shown and defined on a Condominium Plan ("the Condominium Plan"), recorded in Book 13358, Page 1193, et seq., consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

### Parcel 3

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

### Parcel 4

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a) general and special taxes and assessments for the current fiscal year;

(b) the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

(c) all other covenants, conditions, restrictions, rights, reservation of rights of way and easements whether or not of record.

RECORDED IN



**myFirstAm®**    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1294 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING AT THE REQUEST OF:

·· **8696**    BK **13824** PG **1294**

$10.00
C3

WHEN RECORDED MAIL TO:
Mr. and Mrs. John F. Turner
4476 Alderport
Huntington Beach, Ca. 92647

PAID
DOC TRANSFER TAX
LEE A BRANCH
ORANGE CO. RECORDER

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M  NOV  7  1980

LEE A. BRANCH, County Recorder

Mail Tax Statements to
Address Shown Above

The undersigned Grantor Declares The
Documentary Transfer Tax is $ 126.50
Computed On Full Value of Property
Conveyed in Huntington Beach, Ca.

A F  _____

## CONDOMINIUM SUBLEASE
### (SHORT FORM-MEMORANDUM)
### AND GRANT DEED

For the purpose of establishing and vesting in

JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

_____

_____

_____

(the "Condominium Owner"), a Condominium as defined in the

Condominium Plan (the "Condominium Plan"), recorded in Book

13358, Pages 1193, et seq., Official Records of Orange County,

California, located on Lots 1 and 2 of Tract 10542 in the

City of Huntington Beach, County of Orange, State of

California, as shown on a Map recorded in Book 456, Pages 49

and 50 of Miscellaneous Maps, in the Office of the County

Recorded or Orange County, California:

I.  **DEMISING CLAUSE:**

ROBERT P. WARMINGTON, an individual, ("Sublessor"), who

is the lessee under that certain Ground Lease dated as of

August 1, 1980, from HOUSER BROS. CO., a limited partnership,

as lessor, which Ground Lease is being recorded concurrently

herewith, hereby subleases to Condominium Owner, the follow-

ing real property:

**Parcel 1**

Unit __53__, as shown and defined on the

Condominium Plan, excepting that portion con-

sisting of buildings and other improvements.

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

BK 13824 PG 1295

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

for a term commencing on the date this instrument is recorded in the Office of the County Recorder of Orange County, California, and ending December 31, 2059, and for the rental and upon all the terms and conditions contained in that certain Condominium Sublease (the "Sublease") of even date herewith and recorded concurrently herewith, between Robert P. Warmington and the Condominium Owner.

II.  GRANTING CLAUSE:

THE ROBERT P. WARMINGTON CO., a California corporation ("Grantor"), hereby grants to the Condominium Owner for a term expiring upon expiration or an earlier termination of the Sublease the following real property:

2

BK 13824 PG 1296

Parcel 1

Those portions of Unit __53__ , as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

Parcel 2

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

Parcel 3

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

Parcel 4

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)   general and special taxes and assessments for the current fiscal year;

(b)   the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

3

BK 13824 PG 1237

(c) all other covenants, conditions, restric-
tions, rights, reservation of rights of way
and easements whether or not of record.

The buildings and other improvements referred to above
are the buildings and other improvements located on Lots 1
and 2 of Tract 10542, which are and shall remain real property,
as more specifically set forth in the Declaration. The real
property demised and granted hereby which together constitute
a condominium must at all times be held by the same person
and may not be separately conveyed, assigned, transfered,
encumbered or otherwise alienated, voluntarily, involuntarily
or by operation of Law.

Dated:    August 1,     , 1980.

SUBLESSOR:

Robert P. Warmington

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By

By

4

BK 13824 PG 1298

STATE OF CALIFORNIA     )
                        ) ss.
COUNTY OF ORANGE        )

On __August 1__, 1980, before me, the undersigned, a Notary Public in and for said County and State, personally appeared ROBERT P. WARMINGTON, known to me to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same.

*OFFICIAL SEAL*
*PEARL L. HUNT*
*NOTARY PUBLIC - CALIFORNIA*
*ORANGE COUNTY*
*My Commission Expires Mar 25, 1983*

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA     )
                        ) ss.
COUNTY OF ORANGE        )

On __August 1__, 1980, before me, the undersigned, a Notary Public in and for said State, personally appeared __OLIVER N. CRARY__, known to me to be the __Vice President__, and __WILLIAM J. PITTMAN__, known to me to be the __Secretary__ of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within Instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

*OFFICIAL SEAL*
*PEARL L. HUNT*
*NOTARY PUBLIC - CALIFORNIA*
*ORANGE COUNTY*
*My Commission Expires Mar 25, 1983*

_Pearl L. Hunt_
Notary Public in and for said
County

[SEAL]

5

RECORDED D



**myFirstAm®**    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1986 |
| DocID: | 456266 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.



86-456266

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

IRELL & MANELLA
840 Newport Center Drive, Suite 500
Newport Beach, California 92660
Attention: Patrick J. Evans, Esq.

MAIL TAX STATEMENTS TO:

G/HB INVESTORS,
c/o AP Development Company
17911 Mitchell Avenue
Irvine, California 92714
Attn: Hugh Saddington

*1444086MT*

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS. CO.

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

•818 PM  SEP 30 '86

Lee A. Branch  COUNTY
RECORDER

(Space Above for Recorder's Use)

The undersigned grantor declares:
The real property conveyed hereunder
is located in the City of Huntington
Beach, County of Orange. The
Documentary Transfer Tax is
$ 247.50  based on full value of
the real property conveyed here-
under, but not on the leasehold
conveyed hereunder, which leasehold
is for a term less than ninety-nine
(99) years.

ASSIGNMENT AND ASSUMPTION
OF
GROUND LEASES
AND
CONDOMINIUM SUBLEASES
AND
GRANT DEED

THIS ASSIGNMENT AND ASSUMPTION OF GROUND LEASES AND
CONDOMINIUM SUBLEASES AND GRANT DEED ("Assignment") is made
and entered into this 30th day of September, 1986 by and
between Robert P. Warmington, a married man, as assignor and
grantor ("Assignor") and G/HB Investors, a California limited
partnership as assignee and grantee ("Assignee").

-1-

2PE01SL

R E C I T A L S

A.    Houser Bros. Co., a limited partnership ("Houser")
is the fee owner of that certain real property (the "Houser
Property") located in the City of Huntington Beach and more
particularly described in Exhibit "A" attached hereto;

B.    Located on the Houser Property is a condominium
project (the "Condominium Project") created by that certain
Condominium Plan (the "Condominium Plan") recorded in Book
13358, Pages 1193, et. seq., official Records of Orange
County, California;

C.    The Condominium Plan shows and defines and there
are eighty (80) condominiums (the "Condominiums") in the
Condominium Project;

D.    Houser leased the Condominiums, except for the
Condominium Project buildings and improvements, to Assignor
under those certain Ground Leases (the "Ground Leases") dated
August 1, 1980 and described in Exhibit "B" attached hereto;

E.    Assignor subleased the Condominiums, except for the
Condominium Project buildings and improvements, to individual
condominium tenants (the "Tenants" or a "Tenant") under those
certain Condominium Subleases, (the "Subleases") dated August

-2-

2PE01SL

**86-456266**

1, 1980 more particularly described in Exhibit "B" attached hereto;

F.    The property leased under the Ground Leases and the Subleases is more particularly described as Parcels 1, 2, 5 and 6 of Exhibit "B" attached hereto;

G.    The Robert P. Warmington Company ("Company") owned the Condominium Project buildings and improvements and conveyed the Condominium Project buildings and improvements to the Tenants, for a term, with respect to each Tenant, ending on the expiration or earlier termination of the Tenant's Sublease, thereby retaining a remainder interest in a determinable fee estate with respect to the Condominium Project buildings and improvements (the "Remainder Interest"), which Remainder Interest is more particularly described as parcels 3 and 4 of Exhibit "B" attached hereto;

H.    Company conveyed the Remainder Interest to Assignor; and

I.    Assignor now desires to assign, transfer and convey all of his right, title and interest in and to the Ground Leases and Subleases (collectively the "Leases") and the Remainder Interest to Assignee and Assignee desires to assume all of Assignor's obligations under the Leases.

-3-

2PE01SL



86-456266

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, Assignor and Assignee agree as follows:

## A G R E E M E N T

1. **Assignment**. Assignor hereby assigns, transfers, conveys and sets over to Assignee all of his right, title and interest in and to the Leases.

2. **Grant of Remainder Interest**. Assignor hereby grants, assigns, transfers and sets over to Assignee all of its right, title and interest in and to the Remainder Interest.

3. **Quitclaim Grant**. Assignor hereby remises, releases and forever quitclaims to Assignee all of his right, title and interest in and to the Houser Property, the Condominium Project, and any property or other rights defined in the Condominium Plan.

4. **Assumption**. Assignee hereby assumes and agrees to keep and perform all of Assignor's obligations under the Leases.

-4-

2PEG1SL

5. **Indemnification.** Assignor agrees to indemnify and hold Assignee harmless from all claims, damages, lawsuits, and liabilities which arise out of or relate to Assignor's obligations under the Leases.

6. **Effective Date.** This Assignment shall be effective on the date it is recorded.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment on the date first written above.

"ASSIGNOR"

Robert P. Warmington

I am the spouse of Robert P. Warmington. I hereby consent and agree to the terms of the foregoing Assignment.

Loring P. Warmington

"ASSIGNEE"

G/HB Investors,
  a California limited partnership

By: AP Development Company,
  a California corporation,
  general partner

By: John E. Wertin, Chairman

-5-

E X H I B I T  "A"

The Houser Property

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Maps, in the office of the County Recorder of Said County.

86-456266

E X H I B I T   "B", Page 1

The Leases, the property leased pursuant to the Leases, and the property comprising the Remainder Interest are described as follows:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES AS TO PARCELS 1 AND 2, SAID ESTATES BEING MORE PARTICULARLY DESCRIBED AS THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET FORTH IN SUB-PARAGRAPH (A) HEREIN BELOW, AND SUBLESSORS' INTERESTS UNDER THOSE CERTAIN SUBLEASES SET FORTH IN SUB-PARAGRAPH (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)   THOSE CERTAIN GROUND LEASES, DATED AUGUST 1, 1980, EXECUTED BY HOUSER BROS.   CO., A LIMITED PARTNERSHIP ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL

(continued)



**B6-456266**

EXHIBIT "B" Page 2



ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444084
AMENDMENT NO. 1

PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS
TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE
TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED
AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 199 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |
| 27 | 13789 | 1600 | |
| 28 | 13787 | 1834 | |
| 29 | 13778 | 173 | |
| 30 | 13896 | 1090 | |
| 31 | 14091 | 1139 | |
| 32 | 13726 | 1346 | |
| 33 | 14005 | 1903 | |
| 34 | 14048 | 1460 | |
| 35 | 13861 | 723 | |
| 36 | 13814 | 666 | |
| 37 | 13768 | 1032 | |
| 38 | 13793 | 1179 | |
| 39 | 13810 | 1665 | |
| 40 | 13783 | 875 | |

PAGE 3



B6-456266

EXHIBIT "B" Page 3

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

| 41 | 13824 | 1312 |
|----|-------|------|
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14074 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B) THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY
ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS
SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE
TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED
AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT | ORIGINAL |
|------|------|------|------------|----------|

PAGE 4



EXHIBIT "B" Page 4

R6-456266



ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

SUBLESSEE

| 1 | 13754 | 243 | |
|---|---|---|---|
| 2 | 14091 | 1066 | |
| 3 | 14045 | 133 | |
| 4 | 13733 | 216 | AND |
|   | 13754 | 52 | |
| 5 | 13760 | 917 | |
| 6 | 13982 | 432 | |
| 7 | 13754 | 312 | |
| 8 | 13726 | 1256 | AND |
|   | 13754 | 69 | |
| 9 | 13822 | 1561 | |
| 10 | 13773 | 25 | |
| 11 | | | 82-128058 |
| 12 | 13807 | 1584 | |
| 13 | 13780 | 369 | |
| 14 | 13797 | 1103 | |
| 15 | 13780 | 477 | |
| 16 | 13726 | 1328 | AND |
|   | 13754 | 86 | |
| 17 | 13763 | 234 | |
| 18 | 13915 | 205 | |
| 19 | 13997 | 361 | |
| 20 | 13807 | 1684 | |
| 21 | 13733 | 296 | |
| 22 | 13775 | 250 | |
| 23 | 13803 | 602 | |
| 24 | 14038 | 707 | |
| 25 | 13793 | 970 | |
| 26 | 13814 | 622 | |
| 27 | 13789 | 1615 | |
| 28 | 13787 | 1849 | |
| 29 | 13778 | 188 | |
| 30 | 13896 | 1125 | |
| 31 | 14091 | 1154 | |
| 32 | 13726 | 1364 | AND |
|   | 13754 | 120 | |
| 33 | 14005 | 1919 | |
| 34 | 14048 | 1475 | |
| 35 | 13861 | 738 | |
| 36 | 13814 | 681 | |
| 37 | 13766 | 1047 | |
| 38 | 13793 | 1194 | |
| 39 | 13818 | 1680 | |
| 40 | 13783 | 1800 | |
| 41 | 13824 | 1327 | |
| 42 | 13867 | 813 | |

PAGE 5



EXHIBIT "B" Page 5

86-456266

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

4.    THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS
FOLLOWS:

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY
OF ORANGE, CITY OF HUNTINGTON BEACH, DESCRIBED AS FOLLOWS:

PARCEL 1:

PAGE 6



EXHIBIT "B" Page 6      86-456266

ALTA PLAIN                                    OR-1444086
LANGUAGE COMMITMENT                           AMENDMENT NO. 1

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM
PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND
FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING
THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.


PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING
THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND
DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE
PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM
PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS
OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM
PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID
UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS
DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON
AREA.

86-456266

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF ORANGE             )

    On this 24th day of September, in the year 1986, before
me, the undersigned, a Notary Public in and for said State,
personally appeared Robert P. Warmington, personally known to
me or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument,
and acknowledged to me that he executed it.

WITNESS my hand and official seal.



*Pearl L. Hunt*

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF ORANGE             )

    On this 24d day of September, in the year 1986, before
me, the undersigned, a Notary Public in and for said State,
personally appeared Loring P. Warmington, personally known to
me or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument,
and acknowledged to me that she executed it.

WITNESS my hand and official seal.



*Pearl L. Hunt*

2PE01SL





86-456266

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On September 23, 1986, before me, the undersigned, a
Notary Public in and for said State, personally appeared John
E. Wertin, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person who executed the
within instrument as the Chairman on behalf of AP Development
Company, the corporation therein named, and acknowledged to me
that said corporation executed the within instrument pursuant
to its bylaws or a resolution of its board of directors, said
corporation being known to me to be the general partner of G/HB
Investors, the limited partnership that executed the within
instrument, and acknowledged to me that such corporation
executed the same as such partner and that such partnership
executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
SHIRLEY A. GERBASI
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Exp. Apr. 23, 1990

2PE01SL

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 6.00

19980020299 11:26am 01/14/98

005 28006503 28 49
A32 1 6.00 0.00 0.00 0.00 0.00 0.00

**PREPARED BY AND
RECORDING REQUESTED BY:**
Mical Mortgage, Inc.

and when recorded **MAIL** to:
**MICAL MORTGAGE, INC.
PO BOX 81427**
San Diego, CA 92138-9891
    LN #928362

space above this line for recorder's use

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
**COUNTRYWIDE HOME LOANS, INC., and/or its assigns
155 NO. LAKE AVE., PASADENA, CA 91101**
all beneficial interest under that certain Deed of Trust dated    NOVEMBER 20,    1997
executed by   TERRI K. LAMBERTH, AN UNMARRIED WOMAN

Trustor(s);

to  UNITED TITLE COMPANY,
    A CALIFORNIA CORPORATION                              Trustee;
and recorded as Instrument No. 97-610303 on  NOV. 26,    1997 in Book        Page
of Official Records in the County Recorder's office of    ORANGE            County, State of
**CALIFORNIA , describing land therein as per recorded Deed of Trust referred to herein.**

TOGETHER with the note or notes therein described or referred to, the money due and to become thereon with
interest, and all rights accrued under said Deed of Trust.
    DATED this 11 **day of**  DEC.    1997

**MICAL MORTGAGE INC.
A CALIFORNIA CORPORATION**

**ELIZABETH BORGMEIER, VICE PRESIDENT**

(ACKNOWLEDGMENT FOR CORPORATION)
STATE OF **CALIFORNIA**          County  of **San Diego**
On this    11    **day of**      DEC.    1997 , before me, **FRAN KIMBER,** Notary Public, personally
appeared **ELIZABETH BORGMEIER,** personally known to me to be the person whose name is subscribed to
the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by
her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.
WITNESS my hand and official seal

**FRAN KIMBER    (com. exp. 2 Oct. 1999)**

FRAN KIMBER
COMM. #1072157
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
OCTOBER 2, 1999
CSC1    CSC1



_my_FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644004 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
IRVINE CA 92612
Attn: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644004 4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California
## Bill Jones
### Secretary of State
SACRAMENTO



I, *BILL JONES, Secretary of State of California, hereby certify:*

That the annexed transcript of _____|_____ page(s) was prepared by
and in this office from the record on file, of which it purports to be a copy,
and that it is full, true and correct.

IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California

AUG 2 6 1998

*Bill Jones*

Secretary of State



SEC STATE FORM LP 222A (Rev. 8/96)



# State of California
## Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form.**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1)
8622400032

2. NAME OF LIMITED PARTNERSHIP
G/HB Investors, a California limited partnership

3. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUB-SECTION(S). CONTINUE ON SECOND PAGE IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:   STATE:   ZIP CODE:

C. CALIFORNIA OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:   STATE: CA   ZIP CODE:

D. GENERAL PARTNER ADDRESS CHANGE:
NAME:
ADDRESS:
CITY:   STATE:   ZIP CODE:

E. GENERAL PARTNER NAME CHANGE:
OLD NAME:
NEW NAME:

F. GENERAL PARTNER(S) WITHDRAWN:
NAME: Barbara D. Wertin Separate Property Trust Established pursuant to Trust Instrument
NAME: dated April 21, 1995

G. GENERAL PARTNER ADDED:
NAME: LPL Asset Management Corporation, a California corporation
ADDRESS: 19100 Von Karman Avenue, Suite 370
CITY: Irvine   STATE: CA   ZIP CODE: 92612

H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:
NAME:
ADDRESS:
CITY:   STATE:   ZIP CODE:

I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:
NAME:
ADDRESS:
CITY:   STATE:   ZIP CODE:

J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:
(PLEASE INDICATE NUMBER ONLY)

K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).
NUMBER OF PAGES ATTACHED:

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

SIGNATURE  Barbara D. Wertin as Trustee of the Barbara D. Wertin Separate Property Trust
POSITION OR TITLE
Established pursuant to Trust Instrument dated April 21, 1995
SIGNATURE
POSITION OR TITLE   DATE 8/12/98

LPL Asset Management Corporation a California Corporation
SIGNATURE
By: Hugh M. Saddington   8/12/98
POSITION OR TITLE President   DATE
SIGNATURE
POSITION OR TITLE   DATE

THIS SPACE FOR FILING OFFICER USE
8622400032

FILED
In the office of the Secretary of State of the State of California
AUG 18 1998
BILL JONES, Secretary of State

RETURN ACKNOWLEDGEMENT TO:
NAME: SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS: 19100 Von Karman Avenue, Suite 400
CITY: Irvine, California 92612
STATE:
ZIP CODE:

SEC/STATE REV. 1/96   FORM LP-2 - FILING FEE: $30.00
Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

FORM; PARTNERSHIP; FORM

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



<u>my**FirstAm**®</u>    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644005 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Smith, Silbar, Parker
& Woffinden, LLP
19100 Von Karman
Suite 400
Irvine CA 92612
Attn: Lisa Silbar

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644005 4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California
## Bill Jones
### Secretary of State
SACRAMENTO



I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of _____|_____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California

AUG 2 6 1998

*Bill Jones*

Secretary of State

SEC STATE FORM LP 222A  (Rev.  6/96)

# State of California
# Secretary of State

**Form LP-2**

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE--FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

3. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: | E. GENERAL PARTNER NAME CHANGE<br><br>OLD NAME:<br><br>NEW NAME: |
|---|---|
| C. CALIFORNIA OFFICE ADDRESS CHANGE:<br><br>ADDRESS:<br><br>CITY:          STATE: CA          ZIP CODE: | F. GENERAL PARTNER(S) WITHDRAWN:<br><br>NAME: Barbara Wertin<br><br>NAME: |
| D. GENERAL PARTNER ADDRESS CHANGE:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: | G. GENERAL PARTNER ADDED: Barbara D. Wertin Separate<br>NAME: Property Trust Established Pursuant to Trust Instrument dated April 21, 1995<br>ADDRESS: 1048 Irvine Avenue, Suite 485<br>CITY: Irvine     STATE: CA     ZIP CODE: 92660 |
| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: |
| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:<br><br>☐ (PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).<br><br>NUMBER OF PAGES ATTACHED: ☐ |

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

*Barbara Wertin*
SIGNATURE

Barbara Wertin     4/21/95
POSITION OR TITLE          DATE

SIGNATURE

POSITION OR TITLE          DATE

*Barbara D. Wertin*
SIGNATURE  Barbara D. Wertin Trustee of the Barbara D. Wertin Separate
POSITION OR TITLE     Property Trust Established     DATE
Pursuant to Trust Instrument dated
SIGNATURE          April 21, 1995
                         4/21/95
POSITION OR TITLE     POSITION OR TITLE          DATE

THIS SPACE FOR FILING OFFICER USE

86 22400032

**FILED**
In the office of the Secretary of State
of the State of California

**AUG 1 8 1998**

*Bill Jones*
BILL JONES, Secretary of State

5. RETURN ACKNOWLEDGEMENT TO:

NAME: SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS: 19100 Von Karman Avenue, Suite 400
CITY: Irvine, California 92612
STATE:
ZIP CODE:

SEC/STATE REV. 1/96          FORM LP-2 -- FILING FEE: $30.00
Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY:  _____



**myFirstAm®**    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

State:              CA
County:             Orange
Document Type:      Document - Year.DocID
Year:               1998
DocID:              0644006

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Smith, Silbar, Parker
& Woffinden, LLP
19100 Von Karman
Suite 400
Irvine CA 92612
Attn: Lisa Silbar

**RECORDING REQUESTED BY**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

9820299-AS

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644006 4:03pm 09/24/98

005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE



# State of California

## Bill Jones

### Secretary of State

SACRAMENTO

*I, BILL JONES, Secretary of State of California, hereby certify:*

*That the annexed transcript of _____|_____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.*



*IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California*

AUG 2 6 1998

*Secretary of State*

SEC STATE FORM LP 222A (Rev. 8/96)



# State of California
## Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read Instructions on back before completing this form**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.
A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:            STATE:        ZIP CODE:

C. CALIFORNIA OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:            STATE: **CA**    ZIP CODE:

D. GENERAL PARTNER ADDRESS CHANGE:
NAME:
ADDRESS:
CITY:            STATE:        ZIP CODE:

E. GENERAL PARTNER NAME CHANGE
OLD NAME:
NEW NAME:

F. GENERAL PARTNER(S) WITHDRAWN:
NAME: J and B Wertin Revocable Trust Established
NAME: pursuant to Trust Instrument dated
NAME: October 30, 1989

G. GENERAL PARTNER ADDED:
NAME: Barbara Wertin
ADDRESS: 1048 Irvine Avenue, Suite 485
CITY: Newport Beach STATE: CA  ZIP CODE: 92660

H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:
NAME:
ADDRESS:
CITY:            STATE:        ZIP CODE:

I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:
NAME:
ADDRESS:
CITY:            STATE:        ZIP CODE:

J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:
(PLEASE INDICATE NUMBER ONLY)

K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).
NUMBER OF PAGES ATTACHED:

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

SIGNATURE  John E. Wertin Trustee
of the J and B Wertin Revocable
POSITION OR TITLE        DATE
Trust Instrument dated
SIGNATURE  October 30, 1989
                6/28/93
POSITION OR TITLE        DATE

SIGNATURE  Barbara Wertin
Barbara Wertin    6/28/93
POSITION OR TITLE        DATE
SIGNATURE
POSITION OR TITLE        DATE

THIS SPACE FOR FILING OFFICER USE
8622400032

**FILED**
In the office of the Secretary of State
of the State of California

AUG 18 1998

BILL JONES, Secretary of State

RETURN ACKNOWLEDGEMENT TO:
NAME    SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS  19100 Von Karman Avenue, Suite 400
CITY     Irvine, California 92612
STATE
ZIP CODE

SEC/STATE REV. 1/96

FORM LP-2 – FILING FEE: $30.00
Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



**_my_FirstAm®**   **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644007 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

*SMITH, SILBAR, PARKER*
*& WOFFINDEN LLP*
*19100 Von Karman*
*Suite 400*
*IRVINE CA 92612*
*Attn: LISA SILBAR*

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

*9820299-AJ*

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

|||||||| **12.00**

19980644007 4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO



I, *BILL JONES, Secretary of State of California, hereby certify:*

That the annexed transcript of _____|_____ page(s) was prepared by
and in this office from the record on file, of which it purports to be a copy,
and that it is full, true and correct.



*IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California*

AUG 2 6 1998

*Bill Jones*

*Secretary of State*

SEC STATE FORM LP 222A (Rev. 8/96)

# State of California
## Secretary of State

Form LP-2

# AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read Instructions on back before completing the form**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| | |
|---|---|
| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) **8622400032** | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |

3. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUBSECTION(S) CONTINUE ON SECOND PAGE IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:        STATE:        ZIP CODE:

E. GENERAL PARTNER NAME CHANGE:
OLD NAME:
NEW NAME:

C. CALIFORNIA OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:        STATE: **CA**    ZIP CODE:

F. GENERAL PARTNER(S) WITHDRAWN:
NAME: M.V. Villas Associates, a California limited partnership
NAME:

D. GENERAL PARTNER ADDRESS CHANGE:
NAME:
ADDRESS:
CITY:        STATE:        ZIP CODE:

G. GENERAL PARTNER ADDED:
NAME: J and B Wertin Revocable Trust Established pursuant to Trust Instrument dated 10/30/8
ADDRESS: 1048 Irvine Avenue, Suite 485
CITY: Newport Beach    STATE: CA    ZIP CODE: 92660

H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:
NAME:
ADDRESS:
CITY:        STATE:        ZIP CODE:

I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:
NAME:
ADDRESS:
CITY:        STATE:        ZIP CODE:

J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:
(PLEASE INDICATE NUMBER ONLY)

K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).
NUMBER OF PAGES ATTACHED:

4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

M.V. Villas Associates, a California limited partnership
SIGNATURE
By: M.V. Villas, Inc., a California corporation
POSITION OR TITLE        DATE
By: *John E. Wertin*
SIGNATURE John E. Wertin
President        6/28/93
POSITION OR TITLE        DATE

*John E. Wertin* Trustee
of the J and B Wertin Revocable Trust
POSITION OR TITLE        DATE
Established pursuant to
Trust Instrument Dated 10/30/89
SIGNATURE
        6/28/93
POSITION OR TITLE        DATE

THIS SPACE FOR FILING OFFICER USE
86 22400003 2

**FILED**
In the office of the Secretary of State
of the State of California

AUG 1 8 1998

*Bill Jones*
BILL JONES, Secretary of State

5. RETURN ACKNOWLEDGEMENT TO:
NAME: SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS: 19100 Von Karman Avenue, Suite 400
CITY: Irvine, California 92612
STATE:
ZIP CODE:

SEC/STATE REV. 1/96

FORM LP-2 - FILING FEE: $30.00
Approved by Secretary of State



*my*FirstAm®   **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

|  |  |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644008 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION  OF TITLE  TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOLFFINDEN
19100 Von Karman
IRVINE CA 92612
Attn: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY
9820299-AS

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

21.00

19980644008 4:03pm 09/24/98

005 11009904 11 28
C15 6 6.00 15.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO



I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of ____5____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California

SEP 02 1998

Secretary of State

SEC STATE FORM LP 222A (Rev. 8/96)

STATE OF CALIFORNIA
CERTIFICATE OF LIMITED PARTNERSHIP—FORM LP-1
IMPORTANT—Read instructions on back before completing this form

This Certificate is presented for filing pursuant to Chapter 3, Article 2, Section 15621, California Corporations Code.

**1. NAME OF LIMITED PARTNERSHIP**

G/HR Investors, a California limited partnership

| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | 3. CITY AND STATE | 4. ZIP CODE |
|---|---|---|
| 17911 Mitchell Avenue | Irvine, California | 92714 |

| 5. STREET ADDRESS OF CALIFORNIA OFFICE IF EXECUTIVE OFFICE IN ANOTHER STATE | 6. CITY | 7. ZIP CODE |
|---|---|---|
| | CALIF. | |

**8. COMPLETE IF LIMITED PARTNERSHIP WAS FORMED PRIOR TO JULY 1, 1984 AND IS IN EXISTENCE ON DATE THIS CERTIFICATE IS EXECUTED.**

THE ORIGINAL LIMITED PARTNERSHIP CERTIFICATE WAS RECORDED ON _____ 19___ WITH THE

RECORDER OF _____ COUNTY.    FILE OR RECORDATION NUMBER _____

**9. NAMES AND ADDRESSES OF ALL GENERAL PARTNERS: (CONTINUE ON SECOND PAGE, IF NECESSARY)**

NAME: Woodcrest Development, Inc., a California corporation, John E. Wertin, Chairman
ADDRESS: 17911 Mitchell Avenue
CITY: Irvine    STATE: California    ZIP CODE: 92714

**9A.**
NAME:
ADDRESS:
CITY:    STATE    ZIP CODE

**9B.**
NAME:
ADDRESS:
CITY:    STATE    ZIP CODE

**10. NAME AND ADDRESS OF AGENT FOR SERVICE OF PROCESS**

NAME: John E. Wertin
ADDRESS: 17911 Mitchell Avenue
CITY: Irvine    STATE California    ZIP CODE 92714

**11. TERM FOR WHICH THIS PARTNERSHIP IS TO EXIST** dissolution upon the first to occur of general partner adjudged a bankrupt, dissolution by law or vote of partners owning 80% or more of partnership assets.

**12. FOR THE PURPOSE OF FILING AMENDMENTS, DISSOLUTION AND CANCELLATION CERTIFICATES PERTAINING TO THIS CERTIFICATE, THE ACKNOWLEDGMENT OF [1] GENERAL PARTNERS IS REQUIRED.**

**13. ANY OTHER MATTERS THE GENERAL PARTNERS DESIRE TO INCLUDE IN THIS CERTIFICATE MAY BE NOTED ON SEPARATE PAGES AND BY REFERENCE HEREIN IS A PART OF THIS CERTIFICATE. NUMBER OF PAGES ATTACHED [0]**

**14. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED (SEE INSTRUCTIONS)**

| SIGNATURE OF GENERAL PARTNER    DATE | SIGNATURE OF GENERAL PARTNER    DATE |
|---|---|
| Woodcrest Development, Inc., a California corporation, John E. Wertin, Chairman | |
| SIGNATURE OF GENERAL PARTNER    DATE | SIGNATURE OF GENERAL PARTNER    DATE |
| SIGNATURE OF OTHER THAN GENERAL PARTNER    DATE | TITLE OR DESIGNATION    DATE |

**15. THIS SPACE FOR FILING OFFICER USE (FILE NUMBER, DATE OF FILING)**

8622400032

FILED
In the office of the Secretary of State
of the State of California

AUG 11 1986

March Fong Eu
MARCH FONG EU
SECRETARY OF STATE

**16. RETURN ACKNOWLEDGMENT TO:**

NAME
ADDRESS    Hugh M. Saddington, CPA
CITY AND    17911 Mitchell Ave.
STATE    Irvine, CA  92714
ZIP CODE

FORM LP-1—FILING FEE $70
Approved by the Secretary of State

STATE OF CALIFORNIA

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP—FORM LP-2
### IMPORTANT—Read instructions on back before completing this form
This Amendment is presented for filing pursuant to Chapter 3, Article 2, Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE) | 2. SECRETARY OF STATE FILE DATE (ORIGINAL CERTIFICATE) |
|---|---|
| 8622400032 | August 11, 1986 |

**3. NAME OF LIMITED PARTNERSHIP**

G/HB Investors, a California limited partnership

**4. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTIONS)**

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

_____, a California Limited Partnership

B. THE PRINCIPAL EXECUTIVE OFFICE ADDRESS ☐ OR THE OFFICE ADDRESS IN CALIFORNIA, IF THE PRINCIPAL EXECUTIVE OFFICE IS LOCATED OUTSIDE CALIFORNIA ☐ IS CHANGED TO:

(STREET)            (CITY)            (STATE)            (ZIP)

C. THE ADDRESS OF THE FOLLOWING GENERAL PARTNER(S) IS CHANGED TO: (CONTINUE ON SEPARATE PAGE IF NECESSARY)

(NAME)            (STREET)            (CITY)            (STATE)            (ZIP)

D. THE FOLLOWING GENERAL PARTNER(S) HAS (HAVE) WITHDRAWN: (CONTINUE ON SEPARATE PAGE IF NECESSARY)

Woodcrest Development, Inc., a California corporation
John E. Wertin, Chairman, 17911 Mitchell Avenue, Irvine, California 92714

E. THE FOLLOWING GENERAL PARTNER(S) HAS (HAVE) BEEN ADDED: (CONTINUE ON SEPARATE PAGE IF NECESSARY)

AP Development Company, a California corporation
John E. Wertin, Chairman, 17911 Mitchell Avenue, Irvine, California 92714

F. THE ADDRESS OF THE CURRENT AGENT FOR SERVICE OF PROCESS IS CHANGED TO:

(STREET)            (CITY)            (STATE)            (ZIP)

G. THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:

(NAME)            (STREET)            (CITY)            (STATE)            (ZIP)

H. THE TERM FOR WHICH THE LIMITED PARTNERSHIP IS TO EXIST HAS BEEN CHANGED TO: _____

I. OTHER MATTERS INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).

NUMBER OF PAGES ATTACHED: | 0 |

**5. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)**

Woodcrest Development, Inc.,          AP Development Company,
a California corporation,             a California corporation,
John E. Wertin, Chairman             John E. Wertin, Chairman
        (Withdrawn)                          (Added)

_____ 9-23-86    _____ 9-23-86
SIGNATURE OF GENERAL PARTNER   DATE    SIGNATURE OF GENERAL PARTNER   DATE

_____    _____    _____
SIGNATURE OF OTHER THAN GENERAL PARTNER    TITLE OR DESIGNATION    DATE

**6. THIS SPACE FOR FILING OFFICER USE**
(DATE OF FILING)

8622400032

FILED
In the office of the Secretary of State
of the State of California

SEP 24 1986

March Fong Eu
MARCH FONG EU, Secretary of State

**7. RETURN ACKNOWLEDGMENT TO:**

NAME
ADDRESS        Hugh M. Saddington, CPA
CITY           17911 Mitchell Avenue
STATE          Irvine, California 92714
ZIP CODE

FORM LP-2—FILING FEE $15
Approved by the Secretary of State



## State of California
### March Fong Eu
#### Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP
### IMPORTANT—Read instructions on back before completing this form

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 8622400032 | G/HB Investors, a California limited partnership |

3. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY).

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

**B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:**
ADDRESS:
CITY: STATE: ZIP CODE:

**C. CALIFORNIA OFFICE ADDRESS CHANGE:**
ADDRESS:
CITY: STATE: CA ZIP CODE:

**D. GENERAL PARTNER ADDRESS CHANGE:**
NAME:
ADDRESS:
CITY: STATE: ZIP CODE:

**E. GENERAL PARTNER NAME CHANGE:**
OLD NAME:
NEW NAME:

**F. GENERAL PARTNER(S) WITHDRAWN:**
NAME: AP Development Company, a
NAME: California corporation

**G. GENERAL PARTNER(S) ADDED:**
NAME: TNPC, Inc.
ADDRESS: 17911 Mitchell Ave
CITY: Irvine STATE: CA ZIP CODE: 92714

**H. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:**
NAME:
ADDRESS: CITY: STATE: CA ZIP CODE:

**I. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, DISSOLUTION, CONTINUATION AND CANCELLATION IS CHANGED TO:**
PLEASE INDICATE NUMBER ONLY.

**J. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGES.**
NUMBER OF PAGES ATTACHED:

4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

AP DEVELOPMENT COMPANY    TNPC, Inc.    (added)

SIGNATURE                 SIGNATURE

President    8/26/89    President    8/26/89
POSITION OR TITLE    DATE    POSITION OR TITLE    DATE

SIGNATURE                 SIGNATURE

POSITION OR TITLE    DATE    POSITION OR TITLE    DATE

**THIS SPACE FOR FILING OFFICER USE**

86 22400032

**FILED**
In the office of the Secretary of State
of the State of California
SEP 13 1993
March Fong Eu
MARCH FONG EU
SECRETARY OF STATE

5. RETURN ACKNOWLEDGEMENT TO:
NAME: TNPC, Inc.
ADDRESS: John E. Wertin
CITY: 17911 Mitchell Ave
STATE: Irvine, CA 92714
ZIP CODE:

SEC/STATE REV. 1/88    FORM LP-2—FILING FEE, $15
Approved by Secretary of State

4.



State of California

March Fong Eu
Secretary of State

Form LP-2

# AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

IMPORTANT—Read instructions on back before completing this form

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—Form LP-1) | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 8622400032 | G/HB Investors, a California limited partnership |

3. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.)

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: | E. GENERAL PARTNER NAME CHANGE: |
|---|---|
| ADDRESS:<br>CITY:        STATE:     ZIP CODE: | OLD NAME: TNPC, Inc. a California corporation<br>NEW NAME: The Pacific Company |
| C. CALIFORNIA OFFICE ADDRESS CHANGE: | F. GENERAL PARTNER(S) WITHDRAWN: |
| ADDRESS:<br>CITY:        STATE: CA   ZIP CODE: | NAME:<br>NAME: |
| D. GENERAL PARTNER ADDRESS CHANGE: | G. GENERAL PARTNER ADDED: |
| NAME:<br>ADDRESS:<br>CITY:        STATE:     ZIP CODE: | NAME:<br>ADDRESS:<br>CITY:        STATE:     ZIP CODE: |

H. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:

NAME:

ADDRESS:                          CITY:        STATE: CA   ZIP CODE:

| I. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, DISSOLUTION, CONTINUATION AND CANCELLATION IS CHANGED TO:<br><br>(PLEASE INDICATE NUMBER ONLY) | J. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGES.<br><br>NUMBER OF PAGES ATTACHED: ☐ |
|---|---|

4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

| TNPC, Inc. | The Pacific Company | THIS SPACE FOR FILING OFFICER USE |
|---|---|---|
| SIGNATURE | SIGNATURE | 86 22400032 |
| President        11/1/89 | President        11/1/89 | |
| POSITION OR TITLE    DATE | POSITION OR TITLE    DATE | **FILED** |
| *(signature)* | *(signature)* | In the office of the Secretary of State of the State of California |
| SIGNATURE | SIGNATURE | OCT 01 1993 |
| POSITION OR TITLE    DATE | POSITION OR TITLE    DATE | *March Fong Eu* |

5. RETURN ACKNOWLEDGEMENT TO:

NAME
ADDRESS     The Pacific Company
CITY        John E. Wertin
STATE       17911 Mitchell Avenue
ZIP CODE    Irvine, CA  92714

SEC/STATE REV. 1/88

FORM LP-2—FILING FEE: $15
Approved by Secretary of State

MARCH FONG EU
SECRETARY OF STATE



## State of California

### March Fong Eu
*Secretary of State*

Form LP-2

# AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

### IMPORTANT—Read instructions on back before completing this form

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 8622400032 | G/HB Investors, a California limited partnership |

3. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY).

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: | E. GENERAL PARTNER NAME CHANGE: |
|---|---|
| ADDRESS: | OLD NAME: |
| CITY:          STATE:          ZIP CODE: | NEW NAME: |
| **C. CALIFORNIA OFFICE ADDRESS CHANGE:** | **F. GENERAL PARTNER(S) WITHDRAWN:** |
| ADDRESS: | NAME: The Pacific Company, |
| CITY:          STATE: CA          ZIP CODE: | NAME: |
| **D. GENERAL PARTNER ADDRESS CHANGE:** | **G. GENERAL PARTNER ADDED:** |
| NAME: | NAME: M.V. Villas Associates, a California limited partnership |
| ADDRESS: | ADDRESS: 17911 Mitchell Avenue |
| CITY:          STATE:          ZIP CODE: | CITY: Irvine   STATE: CA   ZIP CODE: 92714 |

H. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:

NAME:

ADDRESS:          CITY:          STATE: CA          ZIP CODE:

| I. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, DISSOLUTION, CONTINUATION AND CANCELLATION IS CHANGED TO: | J. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGES. |
|---|---|
| PLEASE INDICATE NUMBER ONLY. | NUMBER OF PAGES ATTACHED: |

4. IT IS HEREBY DECLARED THAT I AM (WE ARE THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

| | | THIS SPACE FOR FILING OFFICER USE |
|---|---|---|
| The Pacific Company | M.V. Villas Associates, a California limited partnership | 8622400032 |
| SIGNATURE | SIGNATURE | |
| President          10/20/92 | By: M.V. Villas, Inc., a | **FILED** |
| POSITION OR TITLE          DATE | California corporation, G.P. | In the office of the Secretary of State of the State of California |
| *Jhn E. Wertin* | By: *Jhn E. Wertin* | NOV - 1 1993 |
| SIGNATURE | John E. Wertin | *March Fong Eu* |
| POSITION OR TITLE          DATE | President of G.P. 10/20/92 | MARCH FONG EU SECRETARY OF STATE |
| | POSITION OR TITLE          DATE | |

5. RETURN ACKNOWLEDGEMENT TO:

NAME
ADDRESS    ⌈ M.V. Villas Associates
CITY          John E. Wertin
STATE         17911 Mitchell Avenue
ZIP CODE  ⌊ Irvine, CA  92714

SEC/STATE REV. 1/88          FORM LP-2—FILING FEE: $15
                             Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION:   SANTA ANA, CA

DATED:   September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



<sup>my</sup>FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644009 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION  OF TITLE  TO REAL  PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**30.00**

19980644009 4:03pm 09/24/98

005 11009904 11 28
A34 9 6.00 24.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

BARBARA D. WERTIN, TRUSTEE
1048 Irvine Avenue
Suite 485
Newport Beach, California  92660

9820299 -AS

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN #_____

Documentary Transfer Tax:___$0___   NO TRANSFER TAX
                                      DUE - Term of lease less than
                                         99 years

### MEMORANDUM OF ASSIGNMENT OF GROUND LEASE AND SUBLEASES

      1.    This Memorandum of Assignment of Ground Lease and Subleases ("Memorandum") is made and entered into by and between G/HB INVESTORS, a California limited partnership ("Assignor"), and BARBARA D. WERTIN SEPARATE PROPERTY TRUST DATED APRIL 21, 1995, a revocable intervivos trust ("Assignee").

      2.    Assignor has assigned to Assignee an undivided 78.34% interest in a certain ground lease and subleases covering real property located in the City of Huntington Beach, County of Orange, State of California, as more particularly described on attached Exhibit "A", which is incorporated herein by this reference, pursuant to the terms and conditions of that certain unrecorded Second Amendment to Partnership Agreement of G/HB Investors dated as of August 1, 1998, by and between Assignor, Assignee and LPL Asset Management Corporation, a California corporation (the "Amendment").  The terms and conditions of the Amendment are incorporated herein by this reference.

      Executed on _September 9_, 1998 at _Irvine_____, California.

"ASSIGNEE"

BARBARA D. WERTIN SEPARATE
PROPERTY TRUST DATED APRIL
21, 1995

By: _Barbara D. Wertin_
    Barbara D. Wertin
Its:  Trustee

"ASSIGNOR"

G/HB INVESTORS, a California
limited partnership

By:  LPL Asset Management
    Corporation, a
    California corporation
By:_____
    Hugh M. Saddington
    President

STATE OF CALIFORNIA )
                 ) ss.
COUNTY OF ORANGE     )

On *September 9, 1998*, before me,
_____, Notary Public, personally
appeared BARBARA D. WERTIN, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
authorized signature(s) on the instrument the person(s), or the
entity on behalf of which the person(s) acted, executed the
instrument.

*Christine Jameson*
NOTARY PUBLIC

(seal)



STATE OF CALIFORNIA )
                 ) ss.
COUNTY OF ORANGE     )

*W.S. Bettini* On *9-10-98*, before me,
_____, Notary Public, personally
appeared HUGH M. SADDINGTON, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person whose
name is subscribed to the within instrument and acknowledged to
me that he executed the same in his authorized capacity, and that
by his authorized signature on the instrument the person, or the
entity on behalf of which the person acted, executed the
instrument.

*W. S. Bettini*
NOTARY PUBLIC

(seal)

2

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS
AS FOLLOWS:

NAME OF NOTARY:              **CHRISTINE JAMESON**

COUNTY WHERE BOND IS FILED:  **ORANGE**

DATE COMMISSION EXPIRES:     **AUG 7, 2002**

COMMISSION NO.:              **1189752**

MANUFACTURERS/VENDOR NO.     **VSI1**


PLACE OF EXECUTION:   SANTA ANA, CALIFORNIA
DATE:     September 24, 1998


BY: _____
    FIRST AMERICAN TITLE INSURANCE COMPANY

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, **COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH,** DESCRIBED AS FOLLOWS:

PARCEL 1:

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON AREA OF LOTS 1 AND 2 OF TRACT NO. 10542, AS SHOWN ON A MAP RECORDED IN BOOK 456, PAGES 49 AND 50 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON AREA.

PAGE 4

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

THE ESTATE OR INTEREST IN THE LAND DESCRIBED IN THIS COMMITMENT IS:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES AS TO PARCELS 1 AND 2, SAID ESTATES BEING MORE PARTICULARLY DESCRIBED AS THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET FORTH IN SUBPARAGRAPH (A) HEREIN BELOW, AND SUBLESSORS' INTERESTS UNDER THOSE CERTAIN SUBLEASES SET FORTH IN SUB-PARAGRAPH (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)    THOSE CERTAIN GROUND LEASES, DATED AUGUST 1, 1980, EXECUTED BY HOUSER BROS. CO., A LIMITED PARTNERSHIP ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 198 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 27 | 13789 | 1600 |
| 28 | 13787 | 1834 |
| 29 | 13778 | 173 |
| 30 | 13896 | 1090 |
| 31 | 14091 | 1139 |
| 32 | 13726 | 1346 |
| 33 | 14005 | 1903 |
| 34 | 14048 | 1460 |
| 35 | 13861 | 723 |
| 36 | 13814 | 666 |
| 37 | 13768 | 1032 |
| 38 | 13793 | 1179 |
| 39 | 13818 | 1665 |
| 40 | 13783 | 1875 |
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14094 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)    THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT | ORIGINAL |
|---|---|---|---|---|
| SUBLESSEE | | | | |
| 1 | 13754 | 243 | | |
| 2 | 14091 | 1066 | | |
| 3 | 14045 | 133 | | |
| 4 | 13733 | 216 | AND | |
| | 13754 | 52 | | |
| 5 | 13760 | 917 | | |
| 6 | 13982 | 432 | | |
| 7 | 13754 | 312 | | |
| 8 | 13726 | 1256 | AND | |
| | 13754 | 69 | | |
| 9 | 13822 | 1561 | | |
| 10 | 13773 | 25 | | |
| 11 | | | | 82-128058 |
| 12 | 13807 | 1584 | | |
| 13 | 13780 | 369 | | |
| 14 | 13797 | 1103 | | |
| 15 | 13780 | 477 | | |
| 16 | 13726 | 1328 | AND | |
| | 13754 | 86 | | |
| 17 | 13763 | 234 | | |
| 18 | 13915 | 205 | | |
| 19 | 13997 | 361 | | |
| 20 | 13807 | 1684 | | |
| 21 | 13733 | 296 | | |
| 22 | 13775 | 250 | | |
| 23 | 13803 | 602 | | |
| 24 | 14038 | 707 | | |
| 25 | 13793 | 970 | | |
| 26 | 13814 | 622 | | |
| 27 | 13789 | 1615 | | |
| 28 | 13787 | 1849 | | |
| 29 | 13778 | 188 | | |
| 30 | 13896 | 1125 | | |
| 31 | 14091 | 1154 | | |
| 32 | 13726 | 1364 | AND | |
| | 13754 | 120 | | |
| 33 | 14005 | 1919 | | |

PAGE 8

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 34 | 14048 | 1475 |
| 35 | 13861 | 738 |
| 36 | 13814 | 681 |
| 37 | 13768 | 1047 |
| 38 | 13793 | 1194 |
| 39 | 13818 | 1680 |
| 40 | 13783 | 1800 |
| 41 | 13824 | 1327 |
| 42 | 13867 | 813 |
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

PAGE 9

Alta Plain
Language Commitment

**OR-9820299**

TITLE OFFICER - SWIERCZEWSKI

NOTE:  THE LESSEE'S INTEREST UNDER SAID LEASES AND THE SUB-LESSOR'S INTEREST
UNDER SAID SUBLEASE HAS BEEN ASSIGNED TO G/HB INVESTORS, A CALIFORNIA LIMITED
PARTNERSHIP BY ASSIGNMENT WHICH RECORDED SEPTEMBER 30, 1986 AS INSTRUMENT
NO. 86-456266 OF OFFICIAL RECORDS, REFERENCE BEING HEREBY MADE TO THE RECORD
THEREOF FOR FULL PARTICULARS.

PAGE 10



Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**30.00**

|||||||||||||||||||||||

19980644010 4:03pm 09/24/98

005 11009904 11 28
A34 9 6.00 24.00 0.00 0.00 0.00 0.00



RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

BARRY BRIEF, Trustee
c/o Laguna Monarch Group, Inc.
10 Monarch Bay Plaza, Suite B
Monarch Beach, CA  92629

*9820299 - AS*

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN # _____

Documentary Transfer Tax: ___$0___

*NO TRANSFER TAX DUE*
*Term of Lease less than*
*99 years*

### MEMORANDUM OF ASSIGNMENT OF GROUND LEASE AND SUBLEASES

1.   This Memorandum of Assignment of Ground Lease
("Memorandum") is made and entered into by and between BARBARA D.
WERTIN SEPARATE PROPERTY TRUST DATED APRIL 21, 1995 ("Assignor"),
and the BARRY BRIEF FAMILY TRUST DATED MAY 11, 1993 ("Assignee").

2.   Assignor has assigned to Assignee all of its
right, title and interest in and to an undivided 78.34% interest
in a certain ground lease and subleases covering real property
located in the City of Huntington Beach, County of Orange, State
of California, as more particularly described on attached
Exhibit "A", which is incorporated herein by this reference, *, unrecorded*
pursuant to the terms and conditions of that certain Assignment
and Assumption of Interest in Ground Lease and Subleases dated
effective September 24, 1998, by and between Assignor and
Assignee (the "Assignment").   The terms and conditions of the
Assignment are incorporated herein by this reference.

Executed on *October 9*____, 1998 at *Irvine*_____,
California.

"ASSIGNOR"

BARBARA D. WERTIN SEPARATE
PROPERTY TRUST DATED APRIL
21, 1995

By: *Barbara D Wertin*
    Barbara D. Wertin
Its:  Trustee

"ASSIGNEE"

BARRY BRIEF FAMILY TRUST
DATED MAY 11, 1992

By: _____
    Barry Brief
Its:  Trustee

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On _September 9 1998_, before me,
_____, Notary Public, personally
appeared BARBARA D. WERTIN, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
authorized signature(s) on the instrument the person(s), or the
entity on behalf of which the person(s) acted, executed the
instrument.

_Christine Jameson_
                                    NOTARY PUBLIC

(seal)



STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On _9-10-98_, before me,
_W.S. BETTINI_____, Notary Public, personally
appeared BARRY BRIEF, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person whose name
is subscribed to the within instrument and acknowledged to me
that he executed the same in his authorized capacity, and that by
his authorized signature on the instrument the person, or the
entity on behalf of which the person acted, executed the
instrument.

_W. S. Bettini_
                                    NOTARY PUBLIC

(seal)

2

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS
AS FOLLOWS:

NAME OF NOTARY:                         **CHRISTINE JAMESON**

COUNTY WHERE BOND IS FILED:    **ORANGE**

DATE COMMISSION EXPIRES:         **AUG 7, 2002**

COMMISSION NO.:                          **1189752**

MANUFACTURERS/VENDOR NO.       **VSI1**


PLACE OF EXECUTION:   SANTA ANA, CALIFORNIA
DATE:    September 24, 1998


BY: _____
    FIRST AMERICAN TITLE INSURANCE COMPANY

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, **COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH,** DESCRIBED AS FOLLOWS:

PARCEL 1:

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON AREA OF LOTS 1 AND 2 OF TRACT NO. 10542, AS SHOWN ON A MAP RECORDED IN BOOK 456, PAGES 49 AND 50 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON AREA.

Alta Plain
Language Commitment

OR-9820299
TITLE OFFICER - SWIERCZEWSKI

THE ESTATE OR INTEREST IN THE LAND DESCRIBED IN THIS COMMITMENT IS:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES AS TO PARCELS 1 AND 2, SAID ESTATES BEING MORE PARTICULARLY DESCRIBED AS THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET FORTH IN SUBPARAGRAPH (A) HEREIN BELOW, AND SUBLESSORS' INTERESTS UNDER THOSE CERTAIN SUBLEASES SET FORTH IN SUB-PARAGRAPH (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)    THOSE CERTAIN GROUND LEASES, DATED AUGUST 1, 1980, EXECUTED BY HOUSER BROS. CO., A LIMITED PARTNERSHIP ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 198 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |

PAGE 6

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 27 | 13789 | 1600 |
| 28 | 13787 | 1834 |
| 29 | 13778 | 173 |
| 30 | 13896 | 1090 |
| 31 | 14091 | 1139 |
| 32 | 13726 | 1346 |
| 33 | 14005 | 1903 |
| 34 | 14048 | 1460 |
| 35 | 13861 | 723 |
| 36 | 13814 | 666 |
| 37 | 13768 | 1032 |
| 38 | 13793 | 1179 |
| 39 | 13818 | 1665 |
| 40 | 13783 | 1875 |
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14094 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)    THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT ORIGINAL |
|---|---|---|---|
| SUBLESSEE | | | |
| 1 | 13754 | 243 | |
| 2 | 14091 | 1066 | |
| 3 | 14045 | 133 | |
| 4 | 13733 | 216 | AND |
| | 13754 | 52 | |
| 5 | 13760 | 917 | |
| 6 | 13982 | 432 | |
| 7 | 13754 | 312 | |
| 8 | 13726 | 1256 | AND |
| | 13754 | 69 | |
| 9 | 13822 | 1561 | |
| 10 | 13773 | 25 | |
| 11 | | | 82-128058 |
| 12 | 13807 | 1584 | |
| 13 | 13780 | 369 | |
| 14 | 13797 | 1103 | |
| 15 | 13780 | 477 | |
| 16 | 13726 | 1328 | AND |
| | 13754 | 86 | |
| 17 | 13763 | 234 | |
| 18 | 13915 | 205 | |
| 19 | 13997 | 361 | |
| 20 | 13807 | 1684 | |
| 21 | 13733 | 296 | |
| 22 | 13775 | 250 | |
| 23 | 13803 | 602 | |
| 24 | 14038 | 707 | |
| 25 | 13793 | 970 | |
| 26 | 13814 | 622 | |
| 27 | 13789 | 1615 | |
| 28 | 13787 | 1849 | |
| 29 | 13778 | 188 | |
| 30 | 13896 | 1125 | |
| 31 | 14091 | 1154 | |
| 32 | 13726 | 1364 | AND |
| | 13754 | 120 | |
| 33 | 14005 | 1919 | |

PAGE 8

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 34 | 14048 | 1475 |
| 35 | 13861 | 738 |
| 36 | 13814 | 681 |
| 37 | 13768 | 1047 |
| 38 | 13793 | 1194 |
| 39 | 13818 | 1680 |
| 40 | 13783 | 1800 |
| 41 | 13824 | 1327 |
| 42 | 13867 | 813 |
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

**OR-9820299**

TITLE OFFICER - SWIERCZEWSKI

Alta Plain
Language Commitment

NOTE:  THE LESSEE'S INTEREST UNDER SAID LEASES AND THE SUB-LESSOR'S INTEREST
UNDER SAID SUBLEASE HAS BEEN ASSIGNED TO G/HB INVESTORS, A CALIFORNIA LIMITED
PARTNERSHIP BY ASSIGNMENT WHICH RECORDED SEPTEMBER 30, 1986 AS INSTRUMENT
NO. 86-456266 OF OFFICIAL RECORDS, REFERENCE BEING HEREBY MADE TO THE RECORD
THEREOF FOR FULL PARTICULARS.

# 2003

# FIRST AMENDMENT TO GROUND LEASE

# 2003

# FIRST AMENDMENT TO GROUND LEASE

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Houser Bros., Co.
17610-17612 Beach Blvd., Suite 32
Huntington Beach, CA 92647
Attn: Clifford Houser

Recorded in Official Records, County of Orange
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖28.00
2003001013605 11:13am 08/21/03
214 110 A17 12
0.00 0.00 0.00 0.00 22.00 0.00 0.00 0.00



_____
(Space Above For Recorder's Use)

## FIRST AMENDMENT TO GROUND LEASE
### (Unit 53)

THIS FIRST AMENDMENT TO GROUND LEASE ("First Amendment"), effective as of January 1, 2003 (the "Effective Date"), is made and entered into by and between HOUSER BROS., CO., a California limited partnership ("Landlord") and BS INVESTORS, LLC, a California limited liability company ("Tenant").

### RECITALS

A.     Landlord is the fee owner of that certain real property (the "Houser Property") located in the City of Huntington Beach and more particularly described in Exhibit "A" attached hereto.

B.     On October 18, 1979, a Condominium Plan was recorded for the Houser Property in Book 13358, Pages 1193, et. seq., in the official records of Orange County, California (the "Condominium Plan").  After the Condominium Plan was recorded, a condominium project consisting of eighty (80) condominium units was constructed on the Houser Property in accordance with the Condominium Plan (the "Condominium Project").

C.     By a document entitled "Ground Lease", dated August 1, 1980, entered into by and between Landlord, as landlord, and Robert P. Warmington ("Warmington") as tenant, (the "Ground Lease"), Landlord leased to Warmington that certain real property described in Exhibit "B" attached hereto.  The Ground Lease was recorded on November 7, 1980 in the Official Records of Orange County, California in Book 13824 at page 1259, et. seq.

D.     The property leased under the Ground Lease, described in Exhibit "B", is referred to in this First Amendment as the "Leased Land".  The condominium unit that is identified in the legal description of the Leased Land is one unit in the Condominium Project pursuant to the Condominium Plan.    Eighty (80) separate Ground Leases were entered into for the Condominium Project, one for each of the eighty (80) units located on the Houser Property.

E.     By a document entitled "Condominium Sublease", dated August 1, 1980, entered into by and between Warmington, as landlord, and John F. Turner and Virginia H. Turner (the

2060/003708-0019
414778.02 a07/11/03

Branch :ATH,User :2004                    Comment:                                    Station Id :M3Y7

"Original Subtenant"), as Subtenant, Warmington subleased the Leased Land to the Original Subtenant (the "Condominium Sublease"). The Condominium Sublease was recorded on November 7, 1980 in the Official Records of Orange County, California in Book 13824 at page 1274, et. seq.

F.    The term of the Ground Lease and the term of the Condominium Sublease commenced on the date of the recording of the Condominium Sublease. The term ends on December 31, 2059.

G.    By a document entitled "Assignment and Assumption of Interest in Ground Lease and Subleases", Tenant acquired the tenant's (ground lessee's) interest in the Ground Lease to the Leased Land and the landlord's (sublessor's) interest in the Condominium Sublease. By such assignment document, Tenant also assumed and agreed to be bound by all the terms and conditions of the Ground Lease and the Condominium Sublease. The Assignment and Assumption of Interest in Ground Lease and Subleases was recorded on July 23, 1999 in the official records of Orange County, California as Instrument No. 19990542301.

H.    Article 3 of the Ground Lease provides that the tenant agreed to pay as the initial rental for the use and occupancy of the Leased Land during the term of the Ground Lease the sum of $900 per year. Article 3 of the Ground Lease further provides that the rental for the Leased Land is subject to adjustment at the time and in the manner provided for in Article 21 of the Ground Lease.

I.    In or around February 2000, a dispute arose among the parties to the Ground Lease and Condominium Sublease concerning the interpretation, application and enforceability of the provisions in paragraph 21(A) of the Condominium Sublease with respect to scheduled rental adjustments effective January 1, 2000, January 1, 2020 and January 1, 2040. As a result of such dispute, Landlord and Tenant, as co-plaintiffs, filed a Complaint for Declaratory Relief in the Superior Court of the State of California, for the County of Orange, case number 00CC09649 (the "Action"). In the Complaint, Landlord and Tenant requested that the Court determine the rights, duties and obligations of the Landlord, Tenant and Subtenant under the Condominium Sublease with respect to the rental adjustments under Article 21 of the Condominium Sublease. The determination of the Action also affected the rental obligations under the Ground Lease.

J.    Landlord, Tenant and Subtenant have settled the Action pursuant to the terms of a written settlement agreement among them. Landlord and Tenant hereby agree to replace Article 21 of the Ground Lease to set forth the agreed amount of rental that shall be paid by Tenant for use and occupancy of the Leased Land from and after January 1, 2000 through the end of the Ground Lease term.

K.    Tenant has assigned its interest in the Condominium Sublease and the Leased Land to a trustee under a deed of trust for the benefit of a lender referred to herein as "Tenant's Mortgagee". Tenant's Mortgagee and the deed of trust encumbering Tenant's interest in the Leased Land are identified on Exhibit "C", attached hereto and made a part hereof.

2060/003708-0019
414778.02 a07/11/03                                  -2-

NOW, THEREFORE, in consideration of the above-referenced Recitals and for other valuable consideration, receipt of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

## AMENDMENT

1.  **AGREED RENTAL FOR PERIOD FROM JANUARY 1, 2000 TO DECEMBER 31, 2002**

    1.1   Agreed Rental Amount

        The parties hereby agree that Tenant shall pay Landlord, and Landlord shall accept from Tenant, in full satisfaction of Tenant's rental obligation for use and occupancy of the Leased Land for the three-year period from January 1, 2000 through and including December 31, 2002 the aggregate sum of SEVEN THOUSAND NINE HUNDRED SEVENTY DOLLARS AND SIXTY-THREE CENTS ($7,970.63).

    1.2   Agreed Balance Due

        Landlord hereby acknowledges its receipt from Tenant of rent paid prior to the effective date of this Amendment for the three-year period from January 1, 2000 to December 31, 2002. Landlord and Tenant agree that the remaining rent balance that Tenant shall pay Landlord for the three-year period from January 1, 2000 to December 31, 2002 (as determined pursuant to an unrecorded agreement between the parties) shall be paid by Tenant concurrently with Tenant's execution of this First Amendment.

2.  **AGREED RENTAL EFFECTIVE JANUARY 1, 2003**

    2.1   Agreed Rental Amount Effective January 1, 2003

        The parties hereto agree that effective January 1, 2003, Tenant shall pay Landlord as the annual rental for the use and occupancy of the Leased Land for each of calendar year 2003 and calendar year 2004, the sum of THREE THOUSAND SEVEN HUNDRED NINETY-TWO DOLLARS ($3,792.00). The annual rental shall be subject to adjustment on January 1, 2005 and every other subsequent January 1st of the remaining Ground Lease term as provided in Section 3 of this First Amendment.

    2.2   Payment of Agreed 2003 and 2004 Rental

        The 2003 and 2004 annual rental shall be paid in twelve (12) monthly installments per year of $316.00 each. If Tenant has paid less than $316.00 per month for the months in 2003 prior to Tenant's execution of this First Amendment, Tenant shall pay the balance of such 2003 rent remaining due concurrently with Tenant's execution of this First Amendment and thereafter pay to Landlord the monthly rental payments as and when due.

3.    ADJUSTMENTS TO ANNUAL RENTAL COMMENCING JANUARY 1, 2005

    3.1    Periodic Cost of Living Adjustments

        On January 1, 2005, and on every other subsequent January 1st (i.e., commencing January 1, 2007) of the remaining Ground Lease term (each, an "Adjustment Date"), the annual rental payable by Tenant to Landlord for use and occupancy of the Leased Land shall be subject to a cost of living adjustment as follows:  On each Adjustment Date, the annual rental payable during the calendar year immediately preceding the applicable Adjustment Date shall be increased by an amount equal to Eighty Percent (80%) of the lesser of the following amounts:

        (a)    An amount equal to seven percent (7%) of the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date; or

        (b)    An amount equal to that percent of the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date that equals the percent increase, if any, in the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for All Urban Consumers -- Los Angeles -- Riverside -- Orange County, All Items (Base Year 1982-1984 = 100) (the "Index") for the twelve-month period between October of the calendar year that is fifteen (15) calendar months before the applicable Adjustment Date and October of the calendar year that is three (3) months before the applicable Adjustment Date.  In no event, however, shall the annual rental be less than the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date.

        For example, if the applicable Adjustment Date is January 1, 2007, and the Index has increased by five percent (5%) between October 2005 and October 2006, the annual rental for the calendar year 2007 shall be increased effective January 1, 2007 by four percent (4%) (80% of 5%) of the annual rental payable in the year 2006.  If the Index has increased by seven percent (7%) or more between October 2005 and October 2006, the annual rental shall be increased effective January 2007 by five and six-tenths percent (5.6%) (80% of 7%) of the annual rental payable in the year 2006, which is the maximum increase on any Adjustment Date.  If the Index has declined or not increased between October 2005 and October 2006, there would be no adjustment to the annual rental effective January 1, 2007.

        If the Index is changed so that the base year differs from the base years 1982-1984, the Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics.  If the Index is discontinued or revised during the Lease Term or if its publication schedule is changed, the government index or computation with which it is replaced shall be used to obtain substantially the same result as if the Index had not been discontinued or revised.  If the Index is discontinued and not replaced, the parties shall jointly select a replacement index that will obtain substantially the same result as the discontinued Index would have obtained if it had not been discontinued.

    3.2    Additional Agreed Annual Rental Increases

        The parties agree that the annual rental payable by Tenant for use and occupancy of the Leased Land shall also be increased by the sum of TWO HUNDRED EIGHTY-EIGHT

DOLLARS ($288) per year on each of the following Adjustment Dates:  January 1, 2005, January 1, 2007, January 1, 2009, January 1, 2011 and January 1, 2013.  Such agreed increases shall be in addition to the cost of living increases described in Section 3.1.

3.3    Notice of Rental Adjustment

Tenant shall calculate the amount of the new annual rental effective on the Adjustment Date (and provide the CPI Index information for such Adjustment Date) determined in accordance with the provisions of Section 3.1 and Section 3.2 above and shall send such proposed rent invoices to Landlord for Landlord's approval at least twenty (20) days before each applicable Adjustment Date.

3.4    Payment of Annual Rental

Tenant shall pay the annual rental for each year of the lease term from January 1, 2004 through the end of the term in twelve (12) equal monthly installments in advance on the first day of the month of each calendar year.  The amount of each installment shall be the amount of the annual rental due for the applicable calendar year divided by twelve.

4.    EFFECT OF AMENDMENT; CONFIRMATION OF GROUND LEASE AS AMENDED

4.1    Effect of Amendment

The provisions of this First Amendment shall replace and supersede the provisions of Article 21 of the Ground Lease with respect to all rental adjustments effective on or after January 1, 2000.  If there is any inconsistency between any provisions in this First Amendment and in the Ground Lease, or any other agreement or instrument entered into on or before this First Amendment, the provisions of this First Amendment shall prevail.

4.2    Confirmation of Consistent Terms of Ground Lease

Except to the extent expressly modified by this First Amendment, the terms of the Ground Lease are hereby confirmed and shall remain in full force and effect.  The Ground Lease and this First Amendment contain and set forth all of the terms, covenants and conditions of the Ground Lease between the parties as of the Effective Date.

4.3    Entire Agreement

This First Amendment is the complete, final and exclusive statement between the parties with respect to the modifications and amendments to the Ground Lease.  This First Amendment supersedes all prior and contemporaneous agreements and understandings among the parties relating to such modifications and amendments.  This First Amendment may only be amended or modified by a written instrument signed by the parties hereto (or their respective successors and assigns).

5.    UNDERLINE FURTHER ASSURANCES

Each party to this First Amendment will at its own cost and expense execute and deliver such further documents or instruments and will take such other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this First Amendment.

6.    SUCCESSORS AND ASSIGNS

The provisions of this First Amendment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, heirs, executors, administrators and assigns.

7.    NOTICES

Any notice that may or must be given by either party under this First Amendment shall be delivered: (i) personally; (ii) by certified mail, return receipt requested; or (iii) by a nationally recognized overnight courier, addressed to the party to whom it is intended. Any notice given shall be sent to the respective address of the party set forth on the signature page below, or to such other address as that party may designate for service of notice by a notice given in accordance with the provisions of this Section 7. A notice sent pursuant to the terms of this Section 7, shall be deemed delivered: (a) when delivery is completed, if delivered personally; (b) two (2) days after deposit into the United States mail; or (c) the business day following deposit with a nationally recognized overnight courier.

IN WITNESS WHEREOF, the parties have executed this First Amendment on the date specified below.

"LANDLORD"

Dated: _Aug 4 - 2003_

HOUSER BROS., CO.,
a California limited partnership

By: _____
Clifford Houser,
Its general partner

[Signatures continued on next page.]

2060/003708-0019
414778.02 a07/11/03

-6-

"TENANT"

Dated: _____

BS INVESTORS, LLC,
a California Limited Liability Company


By:    G/HB Investors,
       a California Limited Partnership
Its:   Member

By:    LPL Asset Management
       Corporation,
       a California corporation
Its:   General Partner


By: _____
       Hugh M. Saddington,
Its:   President

2060/003708-0019
414778.02 a07/11/03

-7-

STATE OF CALIFORNIA          )
                            )
COUNTY OF ORANGE            ) ss.
                            )

On 8-4-03, before me, Virginia Langham, Notary Public,
personally appeared, Clifford Houser, personally known to me, to
be the person whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his authorized
capacity, and that by his signature on the instrument the person
or the entity upon behalf of which the person acted, executed the
instrument.

Witness my hand and official seal

VIRGINIA LANGHAM
Comm. # 1289473
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Jan. 31, 2005

Signature of Notary Public

-8-

Branch :AH,User :2004                    Comment:                                    Station Id :M3Y7

STATE OF CALIFORNIA              )
                                )  ss.
COUNTY OF ORANGE                )

On August 6, 2003, before me, Judith D. Collins, Notary Public, personally appeared, Hugh M. Saddington, personally known to me, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Signature of Notary Public

JUDITH D. COLLINS
Commission # 1265596
Notary Public - California
Orange County
My Comm. Expires May 28, 2004

-9-

**EXHIBIT "A"**

THE HOUSER PROPERTY

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange,
State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of
Maps, in the office of the County Recorder of said County.

2060/003708-0019
414778.02 a07/11/03

**EXHIBIT "A"**
TO FIRST AMENDMENT TO GROUND LEASE

## EXHIBIT "B"

### LEASED LAND

Those portions of Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California, described as follows:

PARCEL 1

Unit 53, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et. seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

PARCEL 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

PARCEL 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

PARCEL 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

2060/003708-0019
414778.02 a07/11/03

### EXHIBIT "B"
### TO FIRST AMENDMENT TO GROUND LEASE

## EXHIBIT "C"

### CONSENT OF LANDLORD'S MORTGAGEE

The undersigned, Fullerton Community Bank, F.S.B., with an address of 200 West Commonwealth Avenue, Fullerton, CA 92832, is the beneficiary under that certain Deed of Trust dated July 12, 1999, and recorded on July 23, 1999 in the Official Records of Orange County, California as Instrument No. 19990542302 (the "Deed of Trust"), and hereby consents to Landlord entering into this First Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Ground Lease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

FULLERTON    COMMUNITY    BANK,
F.S.B
By: _____
C. W. Gregory
Its:  President

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF ORANGE           )

On August 7, 2003, before me, Rebecca Nissen, Notary Public, personally appeared, C. W. Gregory, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Signature of Notary Public

REBECCA NISSEN
COMM # 1281396
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Nov. 10, 2004

[SEAL]

### EXHIBIT "C"
### TO FIRST AMENDMENT TO GROUND LEASE

06/29/2005
INSTRUMENT NO. 2005000504166

# CORRECTIVE AMENDEMENT TO GROUND LEASE
## (UNITS 1-80)

# FIRST AMENDMENT TO GROUND LEASE

C.    The Ground Leases were amended pursuant to that certain First Amendment to Ground Lease entered into for each of the eighty (80) Ground Leases which instruments were recorded against the Houser Property in the Official Records of Orange County, California on August 21, 2003 as Instrument Nos. 2003-001013553, 2003-001013554, 2003-001013555, 2003-001013556, 2003-001013557, 2003-001013558, 2003-001013559, 2003-001013560, 2003-001013561, 2003-001013562, 2003-001013563, 2003-001013564, 2003-001013565, 2003-001013566, 2003-001013567, 2003-001013568, 2003-001013569, 2003-001013570, 2003-001013571, 2003-001013572, 2003-001013573, 2003-001013574, 2003-001013575, 2003-001013576, 2003-001013577, 2003-001013578, 2003-001013579, 2003-001013580, 2003-001013581, 2003-001013582, 2003-001013583, 2003-001013584, 2003-001013585, 2003-001013586, 2003-001013587, 2003-001013588, 2003-001013589, 2003-001013590, 2003-001013591, 2003-001013592, 2003-001013593, 2003-001013594, 2003-001013595, 2003-

001013596, 2003-001013597, 2003-001013598, 2003-001013599, 2003-001013600, 2003-001013601, 2003-001013602, 2003-001013603, 2003-001013604, 2003-001013605, 2003-001013606, 2003-001013607, 2003-001013608, 2003-001013609, 2003-001013610, 2003-001013611, 2003-001013612, 2003-001013613, 2003-001013614, 2003-001013615, 2003-001013616, 2003-001013617, 2003-001013618, 2003-001013619, 2003-001013620, 2003-001013621, 2003-001013622, 2003-001013623, 2003-001013624, 2003-001013625, 2003-001013626, 2003-001013627, 2003-001013628, 2003-001013629, 2003-001013630, 2003-001013631, and 2003-001013632 (collectively, the "First Amendments").

D.      The First Amendments incorrectly stated the methodology for adjustments to annual rental commencing January 1, 2005, and the parties desire to enter into this Corrective Amendment to Ground Lease to correctly set forth the agreement of the parties with respect to rental increases under the First Amendments.

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Houser Bros., Co.
17610-17612 Beach Blvd., Suite 32
Huntington Beach, CA 92647
Attn: Craig E. Houser

‖‖‖‖‖‖‖‖‖‖‖ 27.00
2005000504166 02:56pm 06/29/05
116 33 A17  8
0.00  0.00  0.00  0.00  21.00  0.00  0.00  0.00



_____

(Space Above For Recorder's Use)

## CORRECTIVE AMENDMENT TO GROUND LEASE
### (Units 1 – 80)

THIS CORRECTIVE AMENDMENT TO GROUND LEASE ("Corrective Amendment"), effective as of January 1, 2003 (the "Effective Date"), is made and entered into by and between HOUSER BROS., CO., a California limited partnership ("Landlord") and BS INVESTORS, LLC, a California limited liability company ("Tenant").

### RECITALS

A.     Landlord is the fee owner of that certain real property (the "Houser Property") located in the City of Huntington Beach and more particularly described in Exhibit "A" attached hereto.

B.     On October 18, 1979, a Condominium Plan was recorded for the Houser Property in Book 13358, Pages 1193, et. seq., in the official records of Orange County, California (the "Condominium Plan"). After the Condominium Plan was recorded, a condominium project consisting of eighty (80) condominium units was constructed on the Houser Property in accordance with the Condominium Plan (the "Condominium Project"). Eighty (80) separate ground leases were entered into for the Condominium Project (the "Ground Leases").

C.     The Ground Leases were amended pursuant to that certain First Amendment to Ground Lease entered into for each of the eighty (80) Ground Leases which instruments were recorded against the Houser Property in the Official Records of Orange County, California on August 21, 2003 as Instrument Nos. 2003-001013553, 2003-001013554, 2003-001013555, 2003-001013556, 2003-001013557, 2003-001013558, 2003-001013559, 2003-001013560, 2003-001013561, 2003-001013562, 2003-001013563, 2003-001013564, 2003-001013565, 2003-001013566, 2003-001013567, 2003-001013568, 2003-001013569, 2003-001013570, 2003-001013571, 2003-001013572, 2003-001013573, 2003-001013574, 2003-001013575, 2003-001013576, 2003-001013577, 2003-001013578, 2003-001013579, 2003-001013580, 2003-001013581, 2003-001013582, 2003-001013583, 2003-001013584, 2003-001013585, 2003-001013586, 2003-001013587, 2003-001013588, 2003-001013589, 2003-001013590, 2003-001013591, 2003-001013592, 2003-001013593, 2003-001013594, 2003-001013595, 2003-

001013596, 2003-001013597, 2003-001013598, 2003-001013599, 2003-001013600, 2003-001013601, 2003-001013602, 2003-001013603, 2003-001013604, 2003-001013605, 2003-001013606, 2003-001013607, 2003-001013608, 2003-001013609, 2003-001013610, 2003-001013611, 2003-001013612, 2003-001013613, 2003-001013614, 2003-001013615, 2003-001013616, 2003-001013617, 2003-001013618, 2003-001013619, 2003-001013620, 2003-001013621, 2003-001013622, 2003-001013623, 2003-001013624, 2003-001013625, 2003-001013626, 2003-001013628, 2003-001013629, 2003-001013630, 2003-001013631, and 2003-001013632 (collectively, the "First Amendments").

D.    The First Amendments incorrectly stated the methodology for adjustments to annual rental commencing January 1, 2005, and the parties desire to enter into this Corrective Amendment to Ground Lease to correctly set forth the agreement of the parties with respect to rental increases under the First Amendments.

NOW, THEREFORE, in consideration of the above-referenced Recitals and for other valuable consideration, receipt of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

## AMENDMENT

1.    Ground Lease Rental.    Section 3 of each of the First Amendments is hereby deleted in its entirety and replaced with the following:

"3.    ADJUSTMENTS TO ANNUAL RENTAL COMMENCING JANUARY 1, 2005

3.1    Periodic Cost of Living Adjustments

On January 1, 2005, and on every other subsequent January 1st (i.e., January 1, 2007, January 1, 2009, etc.) of the remaining Ground Lease term (each, an "Adjustment Date"), the annual rental payable by Tenant to Landlord for use and occupancy of the Leased Land shall be subject to a cost of living adjustment determined on the basis of the "CPI Index" increases for the prior two "Comparison Periods." The annual rental for each subsequent even-numbered calendar year (i.e. 2006, 2008, etc.) of the remaining Ground Lease Term shall be the annual rental payable for the prior calendar year. The cost of living adjustment on each Adjustment Date shall be calculated as follows:

A sum equal to the annual rental payable during the calendar year immediately preceding the applicable Adjustment Date multiplied by the product of (a) the percentage increase of the CPI index for the "Current Comparison Period"; and (b) the percentage increase of the CPI Index for the "Prior Comparison Period"; provided, however, that during each Comparison Period, the percentage increase shall never be greater than seven percent (7%) nor less than zero notwithstanding the actual increase or decrease in the CPI Index.

The term "CPI Index" shall mean and refer to the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for All Urban Consumers -- Los Angeles -- Riverside -- Orange County, All Items (Base Year 1982-1984 = 100).

The term "Comparison Period" shall mean and refer to the twelve-month period between October and the prior October.

The term "Current Comparison Period" shall mean and refer to the Comparison Period between October of the calendar year that is fifteen (15) calendar months before the applicable Adjustment Date and October of the calendar year that is three (3) months before the applicable Adjustment Date.

The term "Prior Comparison Period" shall mean and refer to the Comparison Period immediately prior to the Current Comparison Period.

The parties acknowledge that the percentage change in the CPI Index was 2.2319% for the October, 2002 through October, 2003 Comparison Period and 4.5261% for the October, 2003 through October, 2004 Comparison Period. Accordingly, the annual rental payable in calendar years 2005 and 2006 is Four Thousand Three Hundred Forty and 10/100 Dollars ($4,340.10), calculated as follows:

$$((\$3,792 \times 102.2319\%) \times 104.5261\%) + \$288$$

where $3,792 is the annual rental for calendar years 2003 and calendar year 2004 multiplied by the CPI Index increases for the Current Comparison Period and the Prior Comparison Period preceding the Adjustment Date of January 1, 2005, plus $288.00 as the additional rental increase payable pursuant to Section 3.2 below.

To further illustrate the rental increase calculation (inclusive of the additional rent increase pursuant to Section 3.2 below), if the CPI Index were to adjust for the next four (4) Comparison Periods (starting with the October, 2004 through October, 2005 Comparison Period) by 6%, 8%, 3%, and -1%, respectively, the annual rental payable by Tenant hereunder would be as follows:

| | |
|---|---|
| Calendar Year 2007 | $5,210.55 |
| Calendar Year 2008 | $5,210.55 |
| Calendar Year 2009 | $5,654.87 |
| Calendar Year 2010 | $5,654.87 |

In the above example, in the Comparison Period where the CPI Index increased by 8%, the adjustment for such year would be limited to 7%, and in the

Comparison Period where the CPI Index decreased by 1%, there would be no adjustment, in accordance with the proscribed limitations on CPI Index adjustments.

If the CPI Index is changed so that the base year differs from the base years 1982-1984, the CPI Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics. If the CPI Index is discontinued or revised during the Lease Term or if its publication schedule is changed, the government index or computation with which it is replaced shall be used to obtain substantially the same result as if the CPI Index had not been discontinued or revised. If the CPI Index is discontinued and not replaced, the parties shall jointly select a replacement index that will obtain substantially the same result as the discontinued Index would have obtained if it had not been discontinued.

### 3.2   Additional Agreed Annual Rental Increases

The parties agree that the annual rental payable by Tenant for use and occupancy of the Leased Land shall also be increased by the sum of Two Hundred Eighty-Eight Dollars ($288) per year on each of the following Adjustment Dates: January 1, 2005, January 1, 2007, January 1, 2009, January 1, 2011 and January 1, 2013. Such agreed increases shall be in addition to the cost of living increases described in Section 3.1.

### 3.3   Notice of Rental Adjustment

Tenant shall calculate the amount of the new annual rental effective on the Adjustment Date (and provide the CPI Index information for the Current Comparison Period and the Prior Comparison Period) determined in accordance with the provisions of Section 3.1 and Section 3.2 above and shall send such proposed rent invoices to Landlord for Landlord's approval at least twenty (20) days before each applicable Adjustment Date.

### 3.4   Payment of Annual Rental

Tenant shall pay the annual rental for each year of the lease term from January 1, 2004 through the end of the term in twelve (12) equal monthly installments in advance on the first day of the month of each calendar year. The amount of each installment shall be the amount of the annual rental due for the applicable calendar year divided by twelve."

Accordingly, the rental to be paid to Landlord by Tenant for calendar years 2005 and 2006 under the eighty (80) Ground Leases totals Three Hundred Forty-Seven Thousand Two Hundred Eight Dollars ($347,208) per annum payable in equal monthly installments of Twenty-Eight Thousand Nine Hundred Thirty-Four Dollars ($28,934).

2.      Lender Consent.  Tenant's mortgagee hereby consents to Tenant entering into this Corrective Amendment as provided in Exhibit "B", attached hereto and made a part hereof.

3.      Full Force and Effect.    Except as otherwise set forth in this Corrective Amendment to Ground Lease, the Ground Leases, as modified by the First Amendments, shall remain unmodified and in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Corrective Amendment to Ground Lease on the date specified below.

Dated:  6/27/05

"LANDLORD"

HOUSER BROS., CO.,
a California limited partnership

By: _____
        Craig E. Houser,
        Its general partner

"TENANT"

Dated:  6-8-05

BS INVESTORS, LLC,
a California Limited Liability Company

By:     G/HB Investors,
        a California Limited Partnership
Its:     Member

        By:     LPL Asset Management
                Corporation,
                a California corporation
        Its:      General Partner

                By: _____
                        Hugh M. Saddington,
                        Its:  President

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF __ORANGE__     )

On __JUN 2 7 2005__, before me, **THOMAS G. KNAACK**, Notary Public, personally appeared _____CRAIG E. Houser_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public

[SEAL]

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF __ORange__     )

On __June 8, 2005__, before me, __Judith D. Collins__, Notary Public, personally appeared __Hugh M. Saddington__, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public

[SEAL]

267/003708-0019
584537.03 a06/08/05

## EXHIBIT "A"

### THE HOUSER PROPERTY

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Maps, in the office of the County Recorder of said County.

267/003708-0019
584537.03 a06/08/05

### EXHIBIT "A"
### TO CORRECTIVE AMENDMENT TO GROUND LEASE

Document Number: 2005000504166 Page: 7 of 8

## EXHIBIT "B"

### CONSENT OF TENANT'S MORTGAGEE

The undersigned, Fullerton Community Bank, F.S.B., with an address of 200 West Commonwealth Avenue, Fullerton, CA 92832, is the beneficiary under that certain Deed of Trust dated July 12, 1999, and recorded on July 23, 1999 in the Official Records of Orange County, California as Instrument No. 19990542302 (the "Deed of Trust"), and hereby consents to Tenant entering into this Corrective Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Ground Lease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

FULLERTON COMMUNITY BANK, F.S.B

By: _____

Its _____

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF __ORANGE__         )

On __JUNE 21, 2005__, before me, __MARIA FRANCO__, Notary Public, personally appeared __CARL GREGORY**__, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public

[SEAL]



MARIA FRANCO
COMM # 1332033
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Dec. 5, 2005

267/003704-0019
584537.03 a06/08/05

### EXHIBIT "B"
### TO CORRECTIVE AMENDMENT TO GROUND LEASE

**RECORDING REQUESTED BY:**

**Mr. Randy Nickel**
**4476 Alderport Drive**
**Huntington Beach, CA 92649**

**MAIL TAX STATEMENTS TO:**

**Mr. Randy Nickel**
**4476 Alderport Drive.**
**Huntington Beach, CA 92649**

Lease from Present to 2059

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

96.00

\* S R 0 0 1 0 4 4 6 0 2 6 \$ \*

2018000395579 2:35 pm 10/31/18

227 415 A34   5

0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 3.00

---

**TITLE OF DOCUMENT:**        **ASSIGNMENT OF CONDOMINIUM SUBLEASE**

WHEN RECORDED MAIL TO:
(Assignee's Name & Address)
MR. RANDALL L. NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

Mail tax statements to:
MR. RANDALL L NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

---

(Space Above this Line for Recorder's Use)

## ASSIGNMENT OF GROUND LEASE & CONDOMINIUM SUBLEASE

No Consideration.  Term of Lease Less Than 99 years.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as
Tenant,** entered into that certain **GROUND LEASE** also known as the **MASTER LEASE dated October
19, 1979,** a Short Form Memorandum recorded in the Office of the Orange County, California Clerk
Recorder in Book 13424, Page 499 inclusive.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as
Tenant,** entered into a **PARTIAL CANCELLATION OF MASTER LEASE dated November 7, 1980**
for that certain **MASTER LEASE dated October 19, 1979**; recorded in the Office of the Orange County,
California Clerk Recorder in Book 13424, Pg(s) 1253-1255, **\*\*Instrument No. 8691**.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as
Tenant,** entered into that certain **SUBLEASE dated October 19, 1979,** a Short Form Memorandum
recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 504,
inclusive, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington
Beach, California as shown on Miscellaneous Map(s) recorded in Book 456, Page(s) 49 and 50, in the
Office of the Orange County, California Clerk Recorder.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as
Tenant,** entered into a **PARTIAL CANCELLATION OF SUBLEASE dated October 19, 1979;** for that
certain SUBLEASE dated November 7, 1980, a Short Form Memorandum recorded in the Office of the
Orange County, California Clerk Recorder in Book 13824, Pg(s) 1256-1258, with respect to those portions
of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California recorded in Book 456,
Page(s) 49 and 50 of Miscellaneous Maps, in the Office of the Orange County, California Clerk Recorder,
**\*\*Instrument No. 8692;**

**WHEREAS**
    For valuable consideration, receipt of which is hereby acknowledged, the undersigned
**JAMIEL GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his
sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that
certain **MASTER LEASE/ Ground Lease, dated November 7, 1980,** recorded in the Office of the
Orange County, California Clerk Recorder in Book 13824, Pg(s) 1259-1273, **\*\*Instrument No. 8693;**

1

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE, dated August 1, 1980,** by and between ROBERT P. WARMINGTON, as Landlord, and **JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANT,** recorded on November 7, 1980, Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1274-1290, **\*\*Instrument No. 8694;**

As amended by the **FIRST AMENDMENT TO CONDOMINIUM SUBLEASE** effective January 1, 2003, recorded in the Office of the Orange County, California Clerk Recorder as Document No. 2003-001044770 on August 28, 2003.

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONVEYANCE OF REMAINDER INTEREST, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1291-1293, **\*\*Instrument No. 8695;**

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE (SHORT FORM – MEMORANDUM AND GRANT DEED, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1294-1298, **\*\*Instrument No. 8696.**

DATED: _10/31/18_

_____
ASSIGNOR JAMIE L GALLIAN


STATE OF CALIFORNIA        )
                          ) ss.
COUNTY OF ORANGE
A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_, before me, _Paul Dyer, Notary Public_
Personally appeared _Jamie L Gallian_,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

(This space for Notary Seal)

_____
Signature of Notary Public

2

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby Accepts said Assignment and hereby agrees with for the benefit of the Master Lessor, Sublessor/Landlord, Tenant and under the Original Condominium Sublease commonly referred to throughout this document as "Condominium Sublease", described in said Assignment, to keep, perform and be bound by all the terms, covenants and conditions contained in said Condominium Sublease and as amended by the First Amendment to Condominium Sublease on the part of the Master Lessor, Sublessor/Landlord and Condominium Sublease Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the Original Condominium Sublease Tenant there under.

Assignee agrees to pay Sublessor/Landlord a late fee equal to 6% of any rent or other payment due under the Condominium Sublease, which is not received by Sublessor/Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and costs incurred by Landlord to collect rent or other payment under the Condominium Sublease or to otherwise enforce Sublessor/Landlord rights under the Condominium Sublease.

DATED: _10·31· 18_                    _____

ASSIGNEE RANDALL L NICKEL

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF ORANGE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_ before me, _Paul Dyer, Notary Public_ ,
Personally appeared _Randall L Nickel_ ,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____                              (This space for Notary Seal)

Signature of Notary Public

PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

# EXHIBIT A (LEGAL)

The estate or interest in the land described:

A Ground leasehold and Condominium Sublease hold estate as to Parcels 1 and 2, said estate being more particularly described as the Lessees' interest under that certain <u>Ground Lease</u> set forth in subparagraph (A) herein below:

(A)    That certain <u>Ground Lease dated August 1, 1980</u>, executed by Houser Bros. Co, A Limited Partnership organized under the Laws of the State of California, in which Clifford C. Houser and Vernon F. Houser constitute the sole General Partners, as Landlord, and by Robert P. Warmington, as Tenant, for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County:    **Book 13824 Page 1259-1273**
**APN: 937-63-053, Unit 53.**

(B)    That certain <u>Condominium Sublease dated August 1, 1980</u>, executed by Robert P. Warmington, as Sub-lessor and John F. Turner and Virginia H. Turner (Original Sublessee) for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County: **Book 13824 Page 1274-1290**
**APN: 937-63-053, Unit 53.**

All that certain land interest situated in the State of California, County of Orange and is described as follows:

Parcel    1:
Unit 53 as shown and defined on a Condominium Plan (the **"Condominium Plan"**) recorded in Book 13358 Page(s) 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements;

Parcel    2:
An undivided one-eightieth (1/80th) interest as Tenants in Common in the Common Area of Lots 1 and 2 Tract No. 10542, in the City of Huntington Beach, County of Orange, State of California as shown on a map recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Map, records of Orange County, California, as shown on the <u>Condominium Plan</u>, excepting that portion consisting of buildings and other improvements.

Except there from all minerals, oil, gas and other hydrocarbon substances lying below a depth of 500 feet below the surface of said Land without the right of surface entry above the depth of 500 feet from the surface, as reserved in deeds of record.

Parcel    3:
Those portions of Unit 53, building 14, inclusive, as shown and defined on the <u>Condominium Plan</u>, Consisting of buildings and other improvements.

Parcel    4:
An undivided one-eightieth (1/80th) interest as Tenants in Common, in and to those portions of the Common Area as shown and defined on the <u>Condominium Plan</u>, consisting of buildings or other improvements.

Parcel    5:
An easement for the exclusive use and occupancy of those portions of the restricted Common Area, as defined on said <u>Condominium Plan</u> for ground level entry, courtyard entry, staircases, garages, and attic space relating to said units.

Parcel    6:
A non-exclusive easement and right to use the Common Area as defined on said <u>Condominium Plan</u>, except the restricted Common Area(s).

4

## BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

Account:          ghb - 053 - 053gal

Date:             09/14/17

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA   92649**

Payment:          _____

· 4th QTR - Oct-Dec 2017
DELINQUENT IF NOT RECEIVED BY 10/10/2017

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
|  | Balance Forward |  |  | 0.00 |
| 10/01/17 | Ground Rent (10/2017) | 2,144.73 |  | 2,144.73 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:          **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days |  | 60 Days | 90 Days | Amount Due |
|---------|---------|--|---------|---------|------------|
| 0.00 | 0.00 |  | 0.00 | 0.00 | 2,144.73 |

**BS INVESTORS - HB GABLES**

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| Account: | ghb - 053 - 053gal |
|---|---|
| Date: | 12/18/17 |
| Payment: | _____ |

Jamie Gallian
4476 Alderport Drive
Huntington Beach, CA  92649

, 1st QTR Jan-Mar 2018
Delinquent if not received by January 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 01/01/18 | Ground Rent (01/2018) | 2,211.22 | | 2,211.22 |

1st QUARTER 2018 GROUND RENT ($2,144.73 + $66.49 CPI INCREASE)
**TOTAL = $2,211.22**

ENCLOSURES:

(1)   Schedule entitled "Calculation of Rent Increase 1/1/2018" (see reverse side)
(2)   U.S. Department of Labor, Bureau of Labor Statistics Consumer Price Index
(3)   Excerpt from First Amendment to Condominium Sublease

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter.  Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:          **BS INVESTORS-GABLES HB**

Thank you and Happy Holidays from
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |

# BS INVESTORS - HB GABLES

**Statement**

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

Account:     ghb - 053 - 053gal

Date:     03/15/18

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA   92649**

Payment:     _____

2nd QTR Apr-Jun 2018
Delinquent if not received by April 10, 2018

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 0.00 |
| 04/01/18 | Ground Rent (04/2018) | 2,211.22 | | 2,211.22 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:     **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---------|---------|--|---------|---------|------------|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |

# ~~BS~~ INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

Account:     ghb - 053 - 053gal

Date:     06/15/18

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA   92649**

Payment:     _____

Jul-Sep 2018 Quarterly Ground Rent
Delinquent if not received by July 10, 2018

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
|      | Balance Forward |       |          | -0.78 |
| 07/01/18 | Ground Rent (07/2018) | 2,211.22 |    | 2,210.44 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter.  Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:              **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | 60 Days | 90 Days | Amount Due |
|---------|---------|---------|---------|------------|
| 0.00 | 0.00 | 0.00 | 0.00 | 2,210.44 |



**Shari L. Freidenrich, CPA**
Orange County Treasurer - Tax Collector
P.O. BOX 1438 • Santa Ana, CA 92702-1438
625 N. Ross Street, Building 11, Room 100, Santa Ana
Office Hours: 8:00 AM-5:00 PM Monday - Friday
Phone Hours: 9:00 AM-5:00 PM (714) 834-3411
ocpay.com/octaxbill

## 2017–18 SECURED PROPERTY TAX BILL

For Fiscal Year Beginning July 1, 2017 and Ending June 30, 2018

601937-501597 STMT-----    038977-OCT013
#BWNLBHV ***********AUTO**5-DIGIT 92649
#9376 3053 2017 4#

HOUSER BROS CO
GALLIAN JAMIE L
4476 ALDERPORT DR UNIT 53
HUNTINGTON BEACH CA 92649-2288



OWNER OF RECORD AS OF 12:01 AM, JANUARY 1, 2017

HOUSER BROS CO
GALLIAN, JAMIE L

### DID YOU KNOW?

Don't wait in line, pay online at ocgov.com/octaxbill, receive same day credit and an emailed receipt. There is no cost to pay by eCheck! Also, due to construction, parking at the Civic Center is not close to our office.

Mailed payments must have a USPS postmark on or before the delinquent date. If you wait until the last day to mail your payment, get your envelope hand-stamped with a postmark to ensure it is timely.

Sign up to receive a due date reminder email at ocgov.com/taxreminder.

PROPERTY LOCATION

**4476 ALDERPORT 53 HUNTINGTON BEACH**

ASSESSED VALUES & EXEMPTIONS AS OF JANUARY 1, 2017

| DESCRIPTION | FULL VALUE | COMPUTED TAX |
|---|---|---|
| LAND | 193,858 | |
| IMPROVEMENTS - BUILDING | 115,559 | |
| TOTAL VALUES: | 309,417 | 3,752.48 |
| TOTAL NET TAXABLE VALUE: | 309,417 | 3,752.48 |

| PARCEL NO. (APN) | TAX RATE AREA | 1st Installment DUE 11/1/17 | 2nd Installment DUE 2/1/18 | TO PAY BOTH INSTALLMENTS BY 12/11/17 |
|---|---|---|---|---|
| 937-630-53 | 04-007 | $1,876.24    + | $1,876.24    = | $3,752.48 |

### IMPORTANT INFORMATION

If you sold this property or no longer own it, you can disregard this bill. Property taxes are the responsibility of the new owner. Contact the Office of the Assessor at (714) 834-2727 regarding ownership changes.

LOCATED ON AP 178-771-03

| ITEMIZED TAXES AND SPECIAL ASSESSMENTS | | | |
|---|---|---|---|
| SERVICE AGENCY | RATE | VALUE | TAXES |
| BASIC LEVY RATE | 1.00000 | 309,417 | 3,094.16 |
| COAST COMM COLLEGE DIST | .03145 | 309,417 | 97.31 |
| OCEAN VIEW SD 2016, SR 2017A | .02703 | 309,417 | 83.63 |
| HUNTINGTON BCH UNION HS | .02403 | 309,417 | 74.35 |
| HUNTINGTON BEACH EMPLOYEE RETIREME | .01500 | 309,417 | 46.42 |
| METRO WATER D-MWDOC | .00350 | 309,417 | 10.83 |
| | | | |
| SPECIAL ASSESSMENT CHARGES | | PHONE NO. | |
| MOSQ,FIRE ANT ASSMT | | (800)273-5167 | 4.03 |
| VECTOR CONTROL CHG | | (800)273-5167 | 0.57 |
| MWD WATER STDBY CHG | | (866)807-6864 | 10.08 |
| OCSD SEWER USER FEE | | (714)593-7281 | 331.00 |
| | | | |
| TOTAL CHARGED | 1.10101 | | 3,752.48 |

**FOR DETAILS OF TAX TYPES, VISIT OUR WEBSITE AT OCGOV.COM/OCTAXBILL**

THERE WILL BE A $26.00 FEE FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON
RETAIN TOP PORTION FOR YOUR RECORDS – IF PAYING BY CHECK, YOUR CANCELLED CHECK IS YOUR RECEIPT OR PAY ONLINE AND RECEIVE AN EMAILED RECEIPT

F1074 453 (2017)

ORANGE COUNTY RECORDS
CLAUDE PARRISH

Page 1 of 2

2018 JUL 10 AM 9:58 CONDOMINIUM

INDEX, TRACT NO. 10542

PROJECT NO. 937-63    TRACT NO. 10542    NO. LOTS 2    A.P. NO. 178-771-03

| BILLING NO. | LOCATED ON LOT | UNIT NO. | COMMON AREA |
|---|---|---|---|
| 937-63-001 | Lot 2 | 1 | Und. 1/80 Int in Lots 1 & 2 |
| 937-63-002 | " | 2 | " |
| 937-63-003 | " | 3 | " |
| 937-63-004 | " | 4 | " |
| 937-63-005 | " | 5 | " |
| 937-63-006 | " | 6 | " |
| 937-63-007 | " | 7 | " |
| 937-63-008 | " | 8 | " |
| 937-63-009 | " | 9 | " |
| 937-63-010 | " | 10 | " |
| 937-63-011 | " | 11 | " |
| 937-63-012 | " | 12 | " |
| 937-63-013 | " | 13 | " |
| 937-63-014 | " | 14 | " |
| 937-63-015 | " | 15 | " |
| 937-63-016 | " | 16 | " |
| 937-63-017 | " | 17 | " |
| 937-63-018 | " | 18 | " |
| 937-63-019 | " | 19 | " |
| 937-63-020 | " | 20 | " |
| 937-63-021 | " | 21 | " |
| 937-63-022 | " | 22 | " |
| 937-63-023 | " | 23 | " |
| 937-63-024 | " | 24 | " |
| 937-63-025 | " | 25 | " |
| 937-63-026 | " | 26 | " |
| 937-63-027 | " | 27 | " |
| 937-63-028 | " | 28 | " |
| 937-63-029 | " | 29 | " |
| 937-63-030 | " | 30 | " |
| 937-63-031 | " | 31 | " |
| 937-63-032 | " | 32 | " |
| 937-63-033 | " | 33 | " |
| 937-63-034 | " | 34 | " |
| 937-63-035 | " | 35 | " |
| 937-63-036 | " | 36 | " |
| 937-63-037 | " | 37 | " |
| 937-63-038 | " | 38 | " |
| 937-63-039 | " | 39 | " |
| 937-63-040 | " | 40 | " |
| 937-63-041 | Lot 1 | 41 | " |
| 937-63-042 | " | 42 | " |
| 937-63-043 | " | 43 | " |
| 937-63-044 | " | 44 | " |

10

ORANGE COUNTY ASSESSOR
CLAUDE PARRISH

**Page 2 of 2**

2018 JUL 10 AM 9:58    CONDOMINIUM

INDEX, TRACT NO. 10542

PROJECT NO. 937-63    TRACT NO. 10542    NO. LOTS 2    A.P. NO. 178-771-03

| BILLING NO. | LOCATED ON LOT | UNIT NO. | COMMON AREA |
|---|---|---|---|
| 937-63-045 | Lot 1 | 45 | Und. 1/80 Int in Lots 1 & 2 |
| 937-63-046 | " | 46 | " |
| 937-63-047 | " | 47 | " |
| 937-63-048 | " | 48 | " |
| 937-63-049 | " | 49 | " |
| 937-63-050 | " | 50 | " |
| 937-63-051 | " | 51 | " |
| 937-63-052 | " | 52 | " |
| 937-63-053 | " | 53 | " |
| 937-63-054 | " | 54 | " |
| 937-63-055 | " | 55 | " |
| 937-63-056 | " | 56 | " |
| 937-63-057 | " | 57 | " |
| 937-63-058 | " | 58 | " |
| 937-63-059 | " | 59 | " |
| 937-63-060 | " | 60 | " |
| 937-63-061 | " | 61 | " |
| 937-63-062 | " | 62 | " |
| 937-63-063 | " | 63 | " |
| 937-63-064 | " | 64 | " |
| 937-63-065 | " | 65 | " |
| 937-63-066 | " | 66 | " |
| 937-63-067 | " | 67 | " |
| 937-63-068 | " | 68 | " |
| 937-63-069 | " | 69 | " |
| 937-63-070 | " | 70 | " |
| 937-63-071 | " | 71 | " |
| 937-63-072 | " | 72 | " |
| 937-63-073 | " | 73 | " |
| 937-63-074 | " | 74 | " |
| 937-63-075 | " | 75 | " |
| 937-63-076 | " | 76 | " |
| 937-63-077 | " | 77 | " |
| 937-63-078 | " | 78 | " |
| 937-63-079 | " | 79 | " |
| 937-63-080 | " | 80 | " |

RECEIVED

JUL 1 1 1980

RECEIVED
Headquarters
Subdivisions
JUL 1 6 1980
Department of Real Estate

**DEPARTMENT OF REAL ESTATE**
**OF THE**
**STATE OF CALIFORNIA**

(213) 620-2700

Dept. of Real Estate
Los Angeles Subdivisions

CONDOMINIUMS

In the matter of the application of

ROBERT P. WARMINGTON COMPANY,
A California Corporation

for a Final Subdivision Public Report on

TRACT NUMBER 10542
THE GABLES-HUNTINGTON BEACH

ORANGE COUNTY, CALIFORNIA

**FINAL SUBDIVISION**
**PUBLIC REPORT**

| | |
|---|---|
| FILE NO. | 46,370 LA |
| ISSUED | JUNE 19, 1980 |
| EXPIRES | JUNE 18, 1985 |

**This Report Is Not a Recommendation or Endorsement of the Subdivision**
**But Is Informative Only.**

---

**Buyer or Lessee Must Sign That He Has Received and Read This Report.**

---

This Report Expires on Date Shown Above. If There Has Been a Material Change in the Offering, an
Amended Public Report Must Be Obtained and Used in Lieu of This Report.

Section 35700 of the California Health and Safety Code provides that the practice of discrimination
because of race, color, religion, sex, marital status, national origin or ancestry in housing accommodations is
against public policy.

Under Section 125.6 of the California Business and Professions Code, California real estate licensees are
subject to disciplinary action by the Real Estate Commissioner if they make any discrimination, distinction
or restriction in negotiating a sale or lease of real property because of the race, color, sex, religion, ancestry
or national origin of the prospective buyer. If any prospective buyer or lessee believes that a licensee is
guilty of such conduct, he or she should contact the Department of Real Estate.

Information Regarding Schools can be found on Page    8 and 9 of this report.

READ THE ENTIRE REPORT on the following pages before contracting to purchase a lot in this
SUBDIVISION.

## SPECIAL NOTES

1. THE UNIFORM BUILDING CODE, CHAPTER 70, PROVIDES FOR LOCAL BUILD-
   ING OFFICIALS TO EXERCISE PREVENTIVE MEASURES DURING GRADING TO
   ELIMINATE OR MINIMIZE DAMAGE FROM GEOLOGIC HAZARDS SUCH AS LAND-
   SLIDES, FAULT MOVEMENTS, EARTHQUAKE SHAKING, RAPID EROSION OR
   SUBSIDENCE.   THIS SUBDIVISION IS LOCATED IN AN AREA WHERE SOME
   OF THESE HAZARDS MAY EXIST.   SOME CALIFORNIA COUNTIES AND CITIES
   HAVE ADOPTED ORDINANCES THAT MAY OR MAY NOT BE AS EFFECTIVE IN
   THE CONTROL OF GRADING AND SITE PREPARATION.

   PURCHASERS MAY DISCUSS WITH THE DEVELOPER, THE DEVELOPER'S ENGI-
   NEER, THE ENGINEERING GEOLOGIST AND THE LOCAL BUILDING OFFICIALS
   TO DETERMINE IF THE ABOVE-MENTIONED HAZARDS HAVE BEEN CONSIDERED
   AND IF THERE HAS BEEN ADEQUATE COMPLIANCE WITH CHAPTER 70 OR AN
   EQUIVALENT OR MORE STRINGENT GRADING ORDINANCE DURING THE CON-
   STRUCTION OF THIS SUBDIVISION.

2. NO ESCROWS FOR THE SALE OF UNITS WILL CLOSE UNTIL ALL SOILS AND
   FILL WORK HAS BEEN PERFORMED IN ACCORDANCE WITH THE RECOMMENDA-
   TIONS OF THE SOILS ENGINEER AND A NOTICE OF COMPLETION COVERING
   THE COMMON AREA IMPROVEMENTS HAS BEEN FILED OF RECORD.

3. THIS PROJECT IS A COMMON-INTEREST SUBDIVISION OF THE TYPE RE-
   FERRED TO AS A "CONDOMINIUM".   IT WILL BE OPERATED BY AN INCOR-
   PORATED OWNERS ASSOCIATION.

4. SINCE THE COMMON PROPERTY AND FACILITIES WILL BE MAINTAINED BY
   AN ASSOCIATION OF HOMEOWNERS, AND IT'S ESSENTIAL THAT THIS ASSO-
   CIATION BE FORMED EARLY AND PROPERLY, THE DEVELOPER MUST:

   a.  COMPLETE ALL COMMON FACILITIES BY APPROXIMATELY JUNE, 1980.
       (SECTION 11018.5 OF THE BUSINESS AND PROFESSIONS CODE.); AND

   b.  PAY ALL THE MONTHLY ASSESSMENTS WHICH HE OWES TO THE HOME-
       OWNERS ASSOCIATION FOR UNSOLD UNITS.   THE PAYMENTS MUST COM-
       MENCE ON THE FIRST DAY OF THE MONTH AFTER SUBDIVIDER CLOSES
       FIRST SALE.   (REGULATIONS 2792.9 AND 2792.16).

THE HOMEOWNER ASSOCIATION MUST:

   c.  CAUSE THE FIRST ELECTION OF THE ASSOCIATION'S GOVERNING BODY
       TO BE HELD WITHIN 45 DAYS AFTER 51% SELL-OUT, OR IN ANY
       EVENT, NO LATER THAN SIX MONTHS AFTER CLOSING THE FIRST
       SALE.   (REGULATIONS 2792.17 AND 2792.19); AND

   d.  PREPARE AND DISTRIBUTE TO ALL HOMEOWNERS A BALANCE SHEET AND
       INCOME STATEMENT.   (REGULATION 2792.22).

# COMMON INTEREST SUBDIVISION GENERAL INFORMATION

The project described in the attached Subdivision Public Report is known as a common-interest subdivision. Read the Public Report carefully for more information about the type of subdivision. The subdivision includes common areas and facilities which will be owned and/or operated by an owners' association. Purchase of a lot or unit automatically entitles and obligates you as a member of the association and, in most cases, includes a beneficial interest in the areas and facilities. Since membership in the association is mandatory, you should be aware of the following information before you purchase:

Your ownership in this development and your rights and remedies as a member of its association will be controlled by governing instruments which generally include a Declaration of Restrictions (also known as CC&R's), Articles of Incorporation (or association) and Bylaws. The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law. Study these documents carefully before entering into a contract to purchase a subdivision interest.

In order to provide funds for operation and maintenance of the common facilities, the association will levy assessments against your lot/unit. If you are delinquent in the payment of assessments, the association may enforce payment through court proceedings or your lot/unit may be liened and sold through the exercise of a power of sale. The anticipated income and expenses of the association, including the amount that you may expect to pay through assessments, are outlined in the proposed budget. Ask to see a copy of the budget if the subdivider has not already made it available for your examination.

A homeowner association provides a vehicle for the ownership and use of recreational and other common facilities which were designed to attract you to buy in this subdivision. The association also provides a means to accomplish architectural control and to provide a base for homeowner interaction on a variety of issues. The purchaser of an interest in a common-interest subdivision should contemplate active participation in the affairs of the association. He or she should be willing to serve on the board of directors or on committees created by the

board. In short, "they" in a common-interest subdivision is "you". Unless you serve as a member of the governing board or on a committee appointed by the board, your control of the operation of the common areas and facilities is limited to your vote as a member of the association. There are actions that can be taken by the governing body without a vote of the members of the association which can have a significant impact upon the quality of life for association members.

Until there is a sufficient number of purchasers of lots or units in a common-interest subdivision to elect a majority of the governing body, it is likely that the subdivider will effectively control the affairs of the association. It is frequently necessary and equitable that the subdivider do so during the early stages of development. It is vitally important to the owners of individual subdivision interests that the transition from subdivider to resident-owner control be accomplished in an orderly manner and in a spirit of cooperation.

When contemplating the purchase of a dwelling in a common-interest subdivision, you should consider factors beyond the attractiveness of the dwelling units themselves. Study the governing instruments and give careful thought to whether you will be able to exist happily in an atmosphere of cooperative living where the interests of the group must be taken into account as well as the interests of the individual. Remember that managing a common-interest subdivision is very much like governing a small community . . . the management can serve you well, but you will have to work for its success.



SPECIAL NOTES  (Continued)

5.  THE SUBDIVIDER HAS STATED THAT HE WILL PROVIDE YOU WITH A COPY
OF THE ARTICLES OF INCORPORATION, RESTRICTIONS AND BYLAWS, ONLY
BY POSTING THEM IN A PROMINENT LOCATION IN THE SALES OFFICE.
THESE DOCUMENTS CONTAIN NUMEROUS MATERIAL PROVISIONS THAT SUB-
STANTIALLY AFFECT AND CONTROL YOUR RIGHTS, PRIVILEGES, USE, OB-
LIGATIONS AND COSTS OF MAINTENANCE AND OPERATION.   YOU SHOULD
READ AND UNDERSTAND THESE DOCUMENTS BEFORE YOU OBLIGATE YOURSELF
TO PURCHASE A UNIT.

6.  THE SUBDIVIDER STATED HE WILL NOT FURNISH THE CURRENT BOARD OF
OFFICERS OF THE HOMEOWNERS ASSOCIATION THE BUILDING PLANS TO IN-
CLUDE DIAGRAMS OF LOCATION OF MAJOR COMPONENTS, UTILITIES, AND
RELATED DATA.

THESE ITEMS WILL BE IMPORTANT TO THE BOARD OF OFFICERS OR THOSE
WHO WILL MANAGE OR REPAIR COMMON FACILITIES IN THIS SUBDIVISION.

7.  SINCE THE SUBDIVIDER STATES HE WILL NOT FURNISH THE SAID PLANS
AND DIAGRAMS, THE BOARD OF OFFICERS OF THE HOMEOWNER ASSOCIATION
SHOULD TRY TO OBTAIN THEM FROM THE CONTRACTORS WHO WORKED ON THE
PROJECT OR FROM THE COUNTY/CITY BUILDING DEPARTMENT.

8.  THE SUBDIVIDER HAS AN INTEREST IN THE ESCROW COMPANY WHICH IS TO
BE USED IN CONNECTION WITH THE SALE OR LEASE OF UNITS IN THIS
SUBDIVISION.   THE NATURE OF THE SUBDIVIDER'S INTEREST IS SET
FORTH IN THE ESCROW INSTRUCTIONS WHICH ARE TO BE USED.

9.  IF YOU ACQUIRE TWO OR MORE UNITS YOU MAY BE REQUIRED TO OBTAIN
AN AMENDED PUBLIC REPORT BEFORE OFFERING TWO OR MORE OF THE
UNITS FOR SALE TO OTHERS.   IF YOU INTEND TO SELL TWO OR MORE
UNITS OR LEASE THEM FOR MORE THAN ONE YEAR, YOU ARE REQUIRED TO
OBTAIN AN AMENDED SUBDIVISION PUBLIC REPORT BEFORE YOU CAN OFFER
THE UNITS FOR SALE OR LEASE.

10. WARNING:  WHEN YOU SELL YOUR LEASEHOLD INTEREST IN A CONDOMINIUM
UNIT TO SOMEONE ELSE, YOU MUST GIVE THAT PERSON A COPY OF THE
DECLARATION OF RESTRICTIONS, THE ARTICLES OF INCORPORATION AND
OF THE BYLAWS.  IF YOU FORGET TO DO THIS, IT MAY COST YOU A PEN-
ALTY OF $500.00 -- PLUS ATTORNEY'S FEES PLUS DAMAGES.   (SEE
CIVIL CODE SECTION 1360.)

INTERESTS TO BE CONVEYED:  You will receive a lease to a specified
unit, together with an undivided fractional leasehold interest as a
tenant in common in the common area together with a membership in
"The Gables-Huntington Beach Homeowners Association" and rights to
use the common area.

LOCATION AND SIZE:    This subdivision is located at Edinger Avenue and Monterey Street within the city limits of Huntington Beach and is serviced by the usual city amenities.

This is a single phase project which consists of approximately 7.605 acres on which twenty buildings containing 80 units and 100 garage spaces, 100 driveway spaces, 59 on-street guest spaces and 53 off-street guest space will be constructed, together with common facilities consisting of a swimming pool, jacuzzi, cabana, volley ball court, landscaped areas and private drives which will be constructed

MANAGEMENT AND OPERATION:    The Gables-Huntington Beach Homeowners Association, which you must join, manages and operates the common areas in accordance with the Restrictions, Articles of Incorporation and the Bylaws.

MAINTENANCE AND OPERATIONAL EXPENSES:    The subdivider has submitted a budget for the maintenance and operation of the common areas and for long-term reserves.  This budget was reviewed by the Department of Real Estate.  You should obtain a copy of this budget from the subdivider.  Under this budget, the monthly assessment against each subdivision unit is $65.74 of which $13.84 is a monthly contribution to long-term reserves and is not to be used to pay for current operating expenses.

> IF THE BUDGET FURNISHED TO YOU BY THE DEVELOPER SHOWS A MONTHLY ASSESSMENT FIGURE WHICH VARIES 10% OF MORE FROM THE ASSESSMENT AMOUNT SHOWN IN THIS PUBLIC REPORT, YOU SHOULD CONTACT THE DEPARTMENT OF REAL ESTATE BEFORE ENTERING INTO AN AGREEMENT TO PURCHASE.

The association may increase or decrease assessments at any time in accordance with the procedure prescribed in the CC&R's or Bylaws. In considering the advisability of a decrease (or a smaller increase) in assessments, care should be taken not to eliminate amounts attributable to reserves for replacement or major maintenance.

> EXPENSES OF OPERATION ARE DIFFICULT TO PREDICT ACCURATELY AND EVEN IF ACCURATELY ESTIMATED INITIALLY, MOST EXPENSES INCREASE WITH THE AGE OF FACILITIES AND WITH INCREASES IN THE COST OF LIVING.

Monthly assessments will commence on all units during the month following the closing of the first sale of a unit.  From that time, the subdivider is required to pay the association a monthly assessment for each unit which he owns, which has not been leased.

The remedies available to the association against owners who are delinquent in the payment of assessments are set forth in the CC&R's. These remedies are available against the subdivider as well as against other owners.

<u>MAINTENANCE AND OPERATIONAL EXPENSES</u>:   (Continued)

The subdivider has posted a bond as partial security for his obliga-
tion to pay these assessments.  The governing body of the associa-
tion should assure itself that the subdivider has satisfied his ob-
ligations to the association with respect to the payment of assess-
ments before agreeing to a release or exoneration of the security.

<u>EASEMENTS</u>:   Easements for utilities and other purposes are shown on
the Title Report and Subdivision Map recorded in the Office of the
Orange County Recorder, Book 456 of Miscellaneous Maps, Pages 48
thru 49 and Condominium Plan recorded in Book 13358, Page 1193.

<u>TITLE</u>:   Title is vested in Houser Bros. Co., a limited partnership,
subject to:

A Ground Lease dated October 19, 1979, executed by Houser Bros. Co.,
a limited partnership, as Lessor, and Robert P. Warmington, a
married man, as Lessee, a memorandum of which was recorded October
22, 1979 in Book 13362, Page 320 of Official Records and re-recorded
December 6, 1979 in Book 13424, Page 499 of Official Records.
Robert P. Warmington in turn has sublet the Ground Lease to Robert
P. Warmington Co., a California corporation, the applicant.

<u>RESTRICTIONS</u>:   This subdivision is subject to Restrictions recorded
in the Office of the Orange County Recorder, Book 13618, Page 982.

> FOR INFORMATION AS TO YOUR OBLIGATIONS AND RIGHTS,
> YOU SHOULD READ THE RESTRICTIONS.  THE SUBDIVIDER
> SHOULD MAKE THEM AVAILABLE TO YOU.

<u>WATER RIGHTS</u>:   You will not own the water rights under your land be-
low a depth of 500 feet.  These have been dedicated to the City of
Huntington Beach.  The right to surface entry has been waived.

<u>USES AND ZONING</u>:   Property to the south is zoned MH (Mobilehome).

<u>TAXES</u>:   The maximum amount of any tax on real property that can be
collected annually by counties is 1% of the full cash value of the
property.  With the addition of interest and redemption charges on
any indebtedness, approved by voters prior to July 1, 1978, the to-
tal property tax rate in most counties is approximately 1.25% of the
full cash value.

For the purchaser of a lot or unit in this subdivision, the "full
cash value" of the lot or unit will be the valuation, as reflected
on the tax roll, determined by the county assessor as of the date of
purchase of the lot or unit or as of the date of completion of an
improvement on the lot if that occurs after the date of purchase.

CONDITIONS OF SALE:  If your purchase involves financing, a form of deed of trust and note will be used.  These documents may contain the following provisions:

An Acceleration Clause.  This means that if you sell the property or default in your payment, the lender may declare the entire unpaid loan balance immediately due and payable.

A Late Charge.  This means that if you are late in making your monthly payment you may have to pay an additional amount as a penalty.

A Prepayment Penalty.  This means that if you wish to pay off your loan in whole or in part before it is due, you may be required to pay an additional amount as a penalty in accordance with the terms of the loan.

Transfer of the interest to the purchaser may be by a lease.  Your rights and responsibilities are governed by the specific terms of such lease.  You should read the entire lease.

The lease includes the following provision:

If you do not pay your installment on time, you may lose your property and all money you have paid in.

BEFORE SIGNING, YOU SHOULD READ AND THOROUGHLY
UNDERSTAND ALL LOAN DOCUMENTS.

PURCHASE MONEY HANDLING:  The subdivider must impound all funds received from you in an escrow depository until legal title is delivered to you.  (Refer to Sections 11013 and 11013.2(a) of the Business and Professions Code.)

If the escrow has not closed on your unit within one (1) year of the date of your deposit receipt, you may request return of your deposit.

FILLED GROUND:  The common area contains filled ground varying to a maximum depth of 3.6 feet.  These soils are to be properly compacted for the intended use under the supervision of a State licensed engineer.

FLOOD AND DRAINAGE:  Orange County advises as follows:

The land lies within the historic floodplain of the Santa Ana River where the risk of floodng has been substantially reduced since the completion of Prado Dam and Reservoir by the U. S. Corps of Engineers in 1941.  The largest flood-producing storm since completion of the dam occurred in 1969, an event which to the best information now available can be expected to recur on an average of 25 to 30 years over a long period of time.  Peak discharges in 1969 seriously damaged the Santa Ana River levees within Orange County, but no outbreak occurred and the levees have now been repaired.

FLOOD AND DRAINAGE:   (Continued)

In a report entitled "Flood Insurance Study Huntington Beach, California" prepared by the U. S. Army Corps of Engineers for the Federal Insurance Administration, the Corps of Engineers indicates that the occurrence of a storm with a recurrence interval approximating 50 years or greater will generate flows exceeding the present capacity of the Santa Ana River Channel.   Such flows will cause breaching of the river levee at indeterminable locations followed by widespread flooding of the Talbert Valley.   It is believed impossible to predict in advance where such break-out might occur or what particular area would subsequently be inundated.

The Corps of Engineers recently completed a study proposing modification to the Santa Ana River in the County of Orange, to Prado Dam, and the construction of an additional dam in the Mentone area of San Bernardino County.   However, it is impossible to predict when project authorization will be made by Congress, the appropriation approved, and the actual construction accomplished.

It is the opinion of this office that upon completion of the construction in accordance with the proposed grading, storm drain and street plans, the improvements on the building pads will be protected from flooding from storms occurring on an average of once every 50 years or less.

PUBLIC TRANSPORTATION:   Bus service is available adjacent to the site on Edinger Avenue.

SCHOOLS:   The Ocean View School District provides the following information:

| School | Distance |
|---|---|
| Haven View School<br>16081 Waikiki Lane<br>Huntington Beach, California | 1/4 mile |

The projected enrollment from the proposed tract is twenty K-8 grade students.   The capacity of Haven View School is 510 and enrollment is 447.

The District shall provide free transportation to and from school for pupils who live beyond the minimum distances, as measured by the shortest route.   Where hazardous conditions exist, transportation may be provided for students who live less than the minimum distances.   Handicapped children will be provided transportation as needed.

The Huntington Beach Union High School District provides the following information:

| School | Distance |
|---|---|
| Marina High School<br>15871 Springdale<br>Huntington Beach, California | 1.7 miles |

<u>SCHOOLS</u>:   (Continued)

Transportation is furnished at District expense to students living a distance fo more than three miles from their schools.

Huntington Beach Union High School District has six comprehensive high schools with a total capacity of 16,367 and a current enrollment of 21,346.  This student overload is being accommodated by temporary structures and extended day schedule.   The impact of continued enrollment growth will accelerate the extension of the school day and the continued implementation of other housing alternatives until a new high school is constructed.   Any new housing must be considered carefully based on the availability of schools in Huntington Beach Union High School District.

> <u>NOTE</u>:   This school information was correct as of the date of this report.  Purchasers may contact the local school district for current information on school assignments, facilities and bus service.

For further information in regard to this subdivision, you may call (213) 620-2700 or examine the documents at the Department of Real Estate, 107 South Broadway, Suite 7001, Los Angeles, CA 90012.

Branch :ORI,User :DDEL                    Comment:                    Station Id :DMCL



WHEN RECORDED RETURN TO:

MESERVE, MUMPER & HUGHES
5190 Campus Drive
Newport Beach, CA  92660

Attn:  Frank D. Stiefel

5002

$6.00
C1

BK 13690PG 1091

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

-3 00 P.M.    AUG 5'80

LEE A. BRANCH, County Recorder

FIRST AMENDMENT TO
DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

Tract 10542
City of Huntington Beach
Orange County, California

This First Amendment to Declaration of Covenants, Conditions and Restrictions is made this 30 day of JULY, 1980, by THE ROBERT P. WARMINGTON CO., a California corporation ("RPW Co."), HOUSER BROS. CO., a California limited partnership ("Houser") and ROBERT P. WARMINGTON, an individual ("Warmington").

WHEREAS, Houser is the owner of the fee interest in the following described property (the "Property"):

Lots 1 and 2 of Tract No. 10542 as per map recorded in Book 456, Pages 49 and 50, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California; and

WHEREAS, Warmington is the lessee of the Property; and

WHEREAS, RPW Co. is the sublessee and the developer of the improvements constructed on the Property, and is also the Declarant as that term is defined in that certain Declaration of Covenants, Conditions and Restrictions recorded May 28, 1980, in Book 13618, pages 982 through 1030, inclusive, Official Records of Orange County, California (the "Declaration"); and

WHEREAS, Warmington and RPW Co. intend to assign, convey and set over to ultimate consumers, various leasehold and fee interests in the Condominium Units, as defined in the Declaration, which collectively shall constitute the Condominium to be acquired by said consumer; and

WHEREAS, Warmington, Houser and RPW Co. desire to clarify the Declaration to insure that the interests so conveyed are inseparable and constitute the entire interest to be conveyed, which clarification requires an amendment to the Declaration.

1

Branch :ORI,User :DDEL                Comment:                                Station Id :DMCL



BK 13890PG 1092

NOW THEREFORE, Warmington, Houser and RPW Co., do hereby declare as follows:

1.  That collectively they are the sole owners of the Property as their interests may appear.

2.  That they retain the exclusive and sole right to amend the Declaration.

3.  That, in furtherance of the foregoing, the following amendments are hereby made to the Declaration:

    (a)  Section 1.13 of the Declaration is hereby amended to read as follows:

"Section 1.13.  Owner/Ownership:  "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or a lessee or sublessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation.  Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means.  All references herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest."

    (b)  Section 2.2 of the Declaration is hereby amended to read as follows:

"Section 2.2.  Elements of Condominium:  Each Condominium shall be comprised of the following elements:

    (a)  A leasehold or sub-leasehold estate in a Unit as shown and defined on the Condominium Plan, excepting that portion of a Unit consisting of buildings and other improvements;

    (b)  An undivided one-eightieth (1/80) interest in a leasehold or subleasehold interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion of the Common Area consisting of building and other improvements;

    (c)  An exclusive easement on the leasehold or sub-leasehold estate referred to in item (b) above, which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit, excepting that portion consisting of buildings and other improvements;

2



BK 13690 PG 1093

(d)  A non-exclusive easement and right to use the leasehold or sub-leasehold estate referred to in item (b) above except the Restricted Common Area, excepting that portion consisting of buildings and other improvements;

(e)  A fee interest in that portion of a Unit, as shown and defined on the Condominium Plan, which consists of buildings and other improvements;

(f)  An undivided one eightieth (1/80) fee interest in and to those portions of the Common Area, as shown and defined on the Condominium Plan which consist of buildings and other improvements;

(g)  An exclusive easement on the fee estate referred to in item (f) above which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit which consist of buildings and other improvements;

(h)  A non-exclusive easement and right to use the fee estate referred to in item (f) above except the Restricted Common Area, which consist of buildings and improvements; and

(i)  A membership in the Association."

4.    All other terms and conditions of the Declaration shall reamin in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment as of the day first above written, its effective date.

THE ROBERT P. WARMINGTON CO., a California corporation

By _____

HOUSER BROS., CO., a California Limited Partnership
By _____
By _____

_____
Robert P. Warmington

3

Branch :ORI,User :DDEL                    Comment:                                        Station Id :DMCL

BK 13690PG 1094

.445 CA (8-74)
**(Corporation)**

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

STATE OF CALIFORNIA
COUNTY OF _Orange_ } SS.
On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said
State, personally appeared _Roger L. Darrell_
known to me to be the _____ President, and
known to me to be the _____ Secretary
of the corporation that executed the within Instrument,
known to me to be the persons who executed the within
Instrument on behalf of the corporation therein named, and
acknowledged to me that such corporation executed the
within instrument pursuant to its by-laws or a resolution of
its board of directors.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

TO 1946 CA (8-74)
**(Partnership)**

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

STATE OF CALIFORNIA
COUNTY OF _ORANGE_ } SS.
On _AUGUST 4, 1980_
before me, the undersigned, a Notary Public in and for said State, personally appeared
_CLIFFORD C. HOUSER AND VERNON F. HOUSER_
_____ known to me
to be _BOTH_ of the partners of the partnership
that executed the within instrument, and acknowledged to me
that such partnership executed the same.

WITNESS my hand and official seal.

Signature _G. McDonald_

OFFICIAL SEAL
G. McDONALD
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 15, 1984

(This area for official notarial seal)

TO 1944 CA (8-74)
**(Individual)**

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

STATE OF CALIFORNIA
COUNTY OF _Orange_ } SS.
On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said
State, personally appeared
_Robert P. Warmington_
_____ known to me
to be the person _____ whose name _is_ subscribed
to the within instrument and acknowledged that _he_
executed the same.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

**RANCHO DEL REY OVER 55 MANUFACTURED HOME PARK**
*Qualifying and Occupancy Requirements 2018*
*16222 Monterey Lane*
*Huntington Beach 92649*
*THANYA*
*5 STAR HOMES SP#1231425*
*714 308-7735*

## General Information:

- **EACH, Prospective Resident** must submit a park application with attached **proof of income prior to opening escrow**

- **Person/s to occupy the home** must verify income of **$3786 per month, renting of property or sub-letting is not allowed**

- **Park may ONLY use income of owner/occupant 55 or over, registered on Title and sign Lease Agreement**

- **Income verification MUST** be in the form of **COPIES;** direct deposit, bank **statements showing SOURCE,** social security, retirement, pay stubs, etc. **Funds/savings in an account is NOT income**

- **Applicants MAY submit Income Tax Statement for alternate verification of income if more convenient**

- **One owner 55 or over, others over 18,** residents **MUST park cars in driveway,** guest parking for guests only. Extra resident's cars may park on Monterey Lane

- **Park allows two small indoor pets, dogs 22 lbs OR 15 in" at shoulder**

- **Dogs must be on leash at all times,** no solid fencing, privacy screens are **allowed. May have doggie gate if home has a porch, with owner present. Dogs are not allowed to be left in any enclosed area, not allowed on common area or in the park office.** Dogs may be walked thru the park on leash

- *Monthly space rent $1325 for 2018, plus utilities. Space rent increases each year between 2%-4%. Lease is for one year*

- *Mandatory meeting with manager with ALL occupants for Rules and Regulations for final park approval, week day appointments only*

- *Obtaining a loan or paying cash for a home is separate from qualifying for* **park** *income requirement. If obtaining a loan, the amount of the mortgage* **payment will** *be added to the park's income requirement * 5 Star Home Lending Richard Herr/714 891-6383 *Request a park and loan application* Thanya 714 308-7735*

RANCHO DEL REY MOBILE HOME ESTATES
16222 MONTEREY LANE
HUNTINGTON BEACH, CALIFORNIA

MOBILEHOME RENTAL AGREEMENT

INFORMATION SUMMARY

The following information from the Agreement is summarized for the convenience of both of us. Please see the applicable paragraphs in this Agreement for the complete information which controls if there is a difference between it and the following:

A.    Space Number: 376

B.    Resident(s): Laura Ryan, Lisa T. Ryan, Patricia C. Ryan

C.    Date this Agreement Begins and Length/Term of this Agreement:

    (1)    On a month-to-month basis beginning _____, 20___.

            (Resident's Initials)

    (2)    For a period of 12 months beginning _____ 1-1- , 2006     XJR
         (not to exceed 12 months).    (Resident's Initials)

D.    Monthly Rent: Your beginning monthly rent will be $ 696. 00     . The amount of your rent may be increased at any time on ninety (90) days' notice. The increase in rent may be made because of such things as new or increased operating expenses we may incur, increases in what we believe to be a fair market rent for your mobilehome space or any other reason we believe, in our sole discretion, to be appropriate so long as the rent increase is not otherwise specifically prohibited by law.
         (Resident's Initials)

E.    Utilities:

    (1)    Utilities You Pay to Park:

            Electricity, Water and Natural Gas on submetered basis.

            Sewer and Trash at an initial charge of $ 10. 27     /month for Sewer and $ 12. 33     /month for Trash.

    (2)    Utilities Included in Your Rent: None.

    (3)    Utilities you purchase from Others: Telephone and cable TV.

    Utilities may be increased or changed as allowed by this Agreement.

F.    Other Charges:

(1)    Late Payment:        $20.00

(2)    Returned Checks: $20.00

(3)    Security Deposit: $ _0_

(4)    RV/Extra Vehicles:    $ 60 00 _____ per month per vehicle

(5)    Government Fees:      As charged to Park

(6)    Extra Persons Charge:    $ 0 _____ per day per person

(7)    Guest Cottage Charge:    $ 50 00 _____ per day.

(8)    Other: _____
_____

These above charges may be increased or changed as allowed by this Agreement.

G.    Facilities to be provided by the Park for Residents during the term of this Agreement, unless changed: The streets, R.V. storage area (subject to separate agreement and charge), 2 clubhouses, 2 swimming pools and spas, 4 saunas, 3 laundry rooms and 2 guest cottages which are available for residents to rent to house their short-term guests.

H.    Services to be provided by the Park for Residents during the term of this Agreement, unless changed: Park Manager, electricity, natural gas, water, sewer, and trash.

Facilities and services may be decreased or changed as allowed by this Agreement.  The cost of providing and maintaining facilities and services may increase your rent per the provisions of this Agreement.

### DISCLOSURES AND IMPORTANT ACKNOWLEDGMENTS

OUR MOBILEHOME PARK IS AN OLDER PARK; THEREFORE, THE UTILITY SYSTEMS (ELECTRIC, NATURAL GAS, SEWER AND WATER) DO NOT WORK AS WELL AS NEWER SYSTEMS AND DO PERIODICALLY BREAK DOWN OR PROVIDE LESS-THAN-ADEQUATE SERVICE.

YOU ACKNOWLEDGE THAT WE HAVE OFFERED YOU THE OPTION OF HAVING THIS AGREEMENT HAVE A TERM OF 12 MONTHS OR LESS, INCLUDING A MONTH-TO-MONTH TENANCY.  YOU ALSO ACKNOWLEDGE THAT YOU HAVE VOLUNTARILY SELECTED THE TERM LISTED AT PARAGRAPH C ON PAGE 1 OF THIS AGREEMENT.

RESOLUTION OF DISPUTES:  YOU AGREE THAT THOSE DISPUTES WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES," WILL BE DETERMINED BY SUBMISSION TO WHAT IS KNOWN AS A REFERENCE AND NOT BY WHAT MOST PEOPLE CONSIDER THE NORMAL LAWSUIT OR BY RESORTING TO NORMAL COURT PROCESSES.  BY SIGNING THIS AGREEMENT, BOTH YOU AND WE ARE GIVING UP OUR CONSTITUTIONAL RIGHT TO HAVE THOSE DISPUTES DECIDED IN A COURT OF LAW BEFORE A JURY AND, INSTEAD, ARE ACCEPTING THE USE OF THE REFERENCE PROCEDURES.

I AGREE I HAVE READ AND UNDERSTOOD THE ABOVE DISCLOSURES AND ACKNOWL-
EDGMENTS.

SIGNATURE: _____    DATE: 1/10/2006

SIGNATURE: _____    DATE: 1/20/2006

SIGNATURE: _____    DATE: _____

1.    **TERM:** You are renting the Space listed at paragraph A on page 1 of this Agreement in Rancho Del Rey Mobile Home Estates located in Huntington Beach, California (the Park). This Agreement is for the term and begins on the date listed at paragraph C on page 1 of this Agreement unless it terminates earlier per the termination paragraphs of this Agreement.

2.    **RENT:** Your rent will be the amount listed at paragraph D on page 1 of this Agreement and it may be increased as permitted by that paragraph.

3.    **UTILITIES:**

3.1    You are responsible for making sure that your mobilehome and all appliances and equipment in your mobilehome are compatible with the electric service and capacity now available, and we shall have no liability or responsibility to you if the available electrical supply is incompatible. You agree not to install electrical appliances which will use energy in excess of the electrical service and capacity available to your Space. You also agree that you will not attempt to increase the electrical service and capacity of your Space by installing any device or doing anything else unless you have received our prior written permission. If your electrical demands exceed the capability of the Park, or are otherwise inconsistent with the capabilities of the Park, you will be deemed to be in default under your rental or lease agreement and you will, in addition to all of the remedies available to us, reimburse us within ten (10) working days for any costs and expense we incur in remedying the situation created by your use of excessive or inconsistent electrical demands. You also agree to indemnify and hold us harmless against any loss, cost, damage, expense (including attorneys' fees and costs) or other liability incurred or imposed by reason of any injury to persons or property which occurs as a result of your electrical demands. As the amount of such electrical service and capacity will affect your ability to have electrical appliances, you must determine in advance from us in writing the amount of electrical service and capacity available to your Space and insure that your mobilehome and all appliances and equipment in it are compatible with that service and capacity.

3.2    We will provide, submeter and separately charge you monthly for gas, water, and electricity. Any increases in the cost of utilities submetered will be immediately passed-through and paid by you. We will initially charge you monthly the amount indicated in paragraph E(1) on page 1 of this Agreement for trash and sewer. Any increase in the cost of utilities separately charged will be immediately passed-through and paid by you, at such prevailing rates regulated and authorized by the utility companies. You will contract with and pay directly for all other utilities you require.

4.    **RENT AND OTHER CHARGES:**

4.1    If you do not maintain your mobilehome or Space as required by this Agreement and the Rules and Regulations, we may give you a notice requiring you to comply in fourteen (14) days. If you do not, we may charge you a reasonable fee for having this work done. In accordance with Civil Code §798.36 Management may after providing you with 14 days notice charge you with the reasonable costs for removal personal property and storage thereof for a period of sixty-day period prior to the ultimate disposal of unclaimed property.

4.2    If you store or park a vehicle, trailer or something else in the recreational vehicle storage lot or other extra vehicle parking area, you will be charged the amount indicated in paragraph F(4) on page 2 of this Agreement. This charge may be increased at any time on sixty (60) days' written notice. This storage or parking will be per the terms

REGARDING A REFERENCE ALSO APPLIES TO MEDIATION.

6.5    WE MAY, AT OUR OPTION, ELECT TO HAVE ANY OF THE FOLLOWING DISPUTES SUBMITTED TO A REFERENCE OR TO BE TRIED IN THE COURTS UNDER NORMAL PROCEDURES TO A JUDGE SITTING ALONE WITHOUT A JURY:  (a) TERMINATION OF TENANCY DUE TO A FAILURE TO PAY RENT OR OTHER CHARGES OR FOR ANY OF THE OTHER REASONS TENANCY MAY BE TERMINATED PER CIVIL CODE §798.56(a) THROUGH (e), INCLUSIVE; (b) FORCIBLE DETAINER; (c) INJUNCTIVE RELIEF PER [i] CODE OF CIVIL PROCEDURE §527.6, [ii] CIVIL CODE §798.87(b), OR [iii] CIVIL CODE §798.88; (d) PAYMENT OF THE MAINTENANCE FEE PROVIDED FOR IN CIVIL CODE §798.36; (e) CONDEMNATION OR A CHANGE OF THE USE OF THE PARK AS PROVIDED IN CIVIL CODE §798.56(f) AND (g); AND (f) TO PRESERVE ANY EQUITABLE RIGHTS RELATING TO ANY DISPUTE.   MEDIATION WILL NOT OCCUR FOR THE DISPUTES IN THIS PARAGRAPH 6.5.

6.6    "DISPUTE" INCLUDES NOT ONLY DISPUTES YOU MAY HAVE WITH US BUT ALSO DISPUTES AGAINST ANY OF OUR EMPLOYEES, CONTRACTORS, AGENTS OR ANY OTHER PERSON WHO YOU CONTEND HAS INJURED YOU WHEN YOU ALSO CONTEND THAT WE ARE RESPONSIBLE FOR THAT OTHER PERSON'S ACTS OR FAILURE TO ACT.

6.7    BEFORE THE LAWSUIT REQUIRED TO BEGIN A REFERENCE MAY BE FILED, MEDIATION MUST BE ATTEMPTED.  THIS IS DONE BY YOU SERVING US AND THE JUDICIAL ARBITRATION AND MEDIATION SERVICE, INC. ("JAMS") WITH A WRITTEN DEMAND OR NOTICE OF INTENTION TO REQUIRE A REFERENCE.

6.8    YOU MUST GIVE US THIS NOTICE NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE. IF YOU DO NOT GIVE US NOTICE WITHIN THE ONE (1) YEAR TIME PERIOD, YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY INJURY OR DAMAGE YOU OR OTHERS IN YOUR HOUSEHOLD MAY EXPERIENCE AND, THEREFORE, THAT DISPUTE WILL NOT BE SUBJECT TO A REFERENCE OR ANY PROCEEDING IN THE COURTS.   THIS ONE (1) YEAR TIME LIMITATION APPLIES TO BEING ENTITLED TO BOTH MEDIATION AND A REFERENCE.  FOR EXAMPLE, IF THE DATE WHEN YOU FIRST BECAME AWARE OF THE DISPUTE WAS JANUARY 1, 1995, NOTICE OF THE DISPUTE MUST BE GIVEN BY YOU TO US BY DECEMBER 31, 1995 IN ORDER TO HAVE THE DISPUTE MEDIATED AND HAVE A REFERENCE, AND IF NOTICE WAS GIVEN AFTER DECEMBER 31, 1995, NEITHER MEDIATION OR A REFERENCE WOULD OCCUR.

6.9    THE NOTICE REFERRED TO IN PARAGRAPH 6.8 MUST PROVIDE: (i) A DESCRIPTION OF THE DISPUTE, AND (ii) FACTS FROM WHICH THE DISPUTE ARISES INCLUDING WITNESSES, DATES, TIMES AND CIRCUMSTANCES.  IF THE DISPUTE IS NOT RESOLVED IN NINETY (90) DAYS BY MEDIATION, THE DISPUTE

© 2006  Alston & Glasser, LLP   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

DETERMINED TO BE NECESSARY BY THE MEDIATOR OR REFEREE, THE FAILURE OF ONE OF US TO PAY WILL <u>NOT</u>, HOWEVER, ABATE, STAY, OR SUSPEND THE MEDIATION OR REFERENCE AND THE MEDIATOR OR REFERENCE.

6.14    YOU ACKNOWLEDGE HAVING READ THIS PARAGRAPH 6.    YOU ALSO AGREE THAT THESE PROVISIONS WILL APPLY TO YOU AT ALL TIMES IN THE FUTURE (EVEN THOUGH THAT MAY BE BEYOND THE TERM OF THIS AGREEMENT OR AFTER YOUR TENANCY OR THIS AGREEMENT HAS BEEN TERMINATED OR YOU MOVE FROM THE PARK) UNLESS THESE PROVISIONS ARE ELIMINATED AFTER THE TERM OF THIS AGREEMENT ENDS BY A WRIT-TEN 60-DAY NOTICE FROM US TO YOU.

6.15    NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE YOUR DISPUTES WITH US DECIDED BY A NEUTRAL REFEREE AS PROVIDED BY CALIFORNIA LAW, AND YOU ARE GIVING UP ALL RIGHTS YOU HAVE TO HAVE THE DISPUTES LITIGATED IN A COURT OR BY A JURY TRIAL.  IF YOU REFUSE TO SUBMIT TO A REFERENCE AFTER AGREEING TO THESE PROVISIONS, YOU MAY BE COMPELLED TO A REFERENCE UNDER CALIFORNIA LAW.  YOUR AGREEMENT TO THESE PROVISIONS IS VOLUNTARY.  YOU HAVE READ AND UNDERSTAND THIS PARAGRAPH 6 AND AGREE TO SUBMIT YOUR DISPUTES TO A "REFERENCE" AS PROVIDED IN THIS PARAGRAPH 6.

BY INITIALING BELOW, YOU ACKNOWLEDGE THE PROVISIONS AND AGREEMENTS IN PARAGRAPH 6 ABOVE.

Initials of Homeowner(s): _____

7.    **SALE OF MOBILEHOME:** You may sell/transfer your mobilehome per your and our rights and obligations under this Agreement.  You must, however, give us sixty (60) days' written notice of your intent to sell/transfer your mobilehome.  You must also give us written notice at least ten (10) days prior to your execution of any escrow, sale, exchange, transfer or other agreement.  The requirements of this Agreement and this paragraph will apply even if you sell or transfer only a portion of your interest in your mobilehome.

8.    **REMOVAL OF MOBILEHOMES UPON SALE TO THIRD PARTIES:**

We may, in order to upgrade the quality of the Park, require the removal of mobilehomes from the Spaces upon their sale or transfer to a third party, in accordance with the provisions of the Mobilehome Residency Law and other applicable law.  Any such rights granted us due to amendments, deletions, or modifications of the Mobilehome Residency Law and other applicable law may be enforced by us at our option.

9.    **APPROVAL OF PURCHASER AND SUBSEQUENT RESIDENTS:**

9.1    If your prospective buyer/transferee intends for the mobilehome to remain in the Park, or the buyer/transferee intends to reside in the Park, the buyer/transferee must do the following before occupying the mobilehome or Space: complete an application for residency, sign the Park's current rental or lease agreement which may be different than this Agreement and be accepted by us.  The rent we are then charging may be increased to any amount we believe appropriate.  We may request a financial statement, credit report, references and other reasonable information we need from any prospective buyer/ transferee.  If the buyer/transferee is not approved by us or does not

in effect after your breach and abandonment and recover rent as it becomes due, if you have the right to sublet or assign, subject only to reasonable limitations).

14.3    You agree that the amount of our damages against you per the terms of this paragraph 13 may, at our sole option, be determined by paragraph 6 of this Agreement and that the mediation portions of such provisions shall not be applicable.

15.    **INDEMNIFICATION:** To the fullest extent the law allows, we have no liability to you or anyone else for anything which is not caused by our active negligence or willful acts and you agree to completely release, discharge, indemnify, and hold us free and harmless from all claims for which we are not liable, including providing a defense and the payment of attorneys' fees and costs of an attorney we choose. You agree to indemnify and hold us harmless from all claims, including providing a defense and the payment of attorneys' fees, and costs of an attorney we choose, which occur because of the negligent or willful conduct of you or others who you invite to be in the Park. You also agree to indemnify and hold us harmless from all claims you may have of economic loss, diminution in market value, or depreciation of your mobilehome, and other improvements.

16.    **INCORPORATED DOCUMENTS:** You agree you have received, read and understood a copy of: This Agreement; the Mobilehome Residency Law which is effective as of January 1st of the year in which you signed this Agreement or signed a document accepting an assignment of this Agreement (which you agree was attached to this Agreement at the time you received it); the Rules and Regulations (including signs posted in the common areas) which you agree are effective immediately; R.V. Storage Agreement; and other: _____.
You understand that by signing this Agreement, you are bound by all of the terms and conditions of these documents and signs as they may be revised per this Agreement.

17.    **COMPLIANCE WITH LAW AND RULES AND REGULATIONS:** You agree to comply with all applicable laws, ordinances, regulations and all terms of this Agreement, the Rules and Regulations, and all terms contained in any document referred to in this Agreement, as they may be changed.

18.    **ZONING, USE PERMIT AND OWNER INFORMATION:** The zoning under which the Park operates is MHP - Mobilehome Park. The permits under which the Park operates are not subject to expiration or renewal. The Park is not located on land which we lease from someone else, but we do have the option to enter into such a lease at any time in the future. If we exercise this option, we will notify you of the expiration date of the lease.

19.    **TRANSFER OF PARK'S INTEREST:** If we sell or transfer our interest in the Park to anyone else, we will be automatically relieved of our obligations under this Agreement which occur after the date of the sale/transfer.

20.    **NOTICES:** All notices required or allowed by this Agreement must be in writing. Except for notices terminating your tenancy, the service of any other notice on you will be valid if it is personally served on you or mailed to you at your address in the Park by First Class United States Mail, postage prepaid.

21.    **WAIVER:**

21.1    If you fail to meet any of your obligations under this Agreement, a delay or omission by us in exercising any right or remedy we have because of your default will not impair any of our rights or remedies against you, nor will it be considered a waiver by us of any right or remedy. No waiver by us of our right to enforce any provision of this Agreement after any default on your part will be effective unless it is made in writing and signed by us, nor will it be considered a waiver of our rights to enforce each and every provision of this Agreement upon any further or other default on your part. Our acceptance of rent will also not be a waiver of any breach by you of any term or provision of this Agreement, including any rule, regulation or other term or provision contained in any document referred to in this Agreement.

21.2    Any delay, omission, or mistake by us in exercising any right to make any of the increases allowed by paragraph 2 of this Agreement or other provisions of this Agreement will not impair any of our rights or be considered to be a waiver by us. Instead, we may, at any time, correct our delay, omission, or mistake and collect from you the full

28.    **HOLDOVER TENANCY:** If you continue to live in the Park after the term of this Agreement has expired or it has been terminated (including any extension of the initial term we agree to), and you have not signed a new rental or lease agreement with us, you shall be on a month-to-month tenancy. During that month-to-month tenancy, you will pay all rent and other charges required by this Agreement and all the terms and provisions of this Agreement, including the "Resolution of Disputes" provisions will continue to apply to you. We may, however, increase the rent or charges you pay or change any other terms of this Agreement upon ninety (90) days' written notice to you.

29.    **COUNTERPARTS:** This Agreement may be signed in duplicate copies, each of which shall be considered an original, but all of which taken together will be one and the same document.

30.    **EXHIBITS:** Each exhibit or other document referred to in this Agreement is attached or enclosed and incorporated in this Agreement by this reference.

31.    **OWNER'S APPROVAL AND OPTIONS:** All references in this Agreement and documents it refers to that our approval is required or other similar terms indicating our approval must be obtained by you means you must obtain our prior written approval by submitting a written request to us which describes what you want to do. References in this Agreement that we may, at our option, adjust or increase rents up to or by a certain amount or do anything else at our option, means we have the right, if we wish, to do so.

32.    **STATUTE OF LIMITATION:** ANY LAWSUIT OR OTHER ACTION AGAINST US MUST BE FILED BY YOU WITH THE COURT NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE OR CLAIM. IF YOU DO NOT FILE THE LAWSUIT OR OTHER ACTION AGAINST US WITH THE COURTS WITHIN THIS ONE (1) YEAR TIME PERIOD, YOU WILL HAVE NO RIGHT TO PROSECUTE OR PURSUE THE LAWSUIT OR OTHER ACTION AND YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY OF THE CLAIMS, DAMAGES, OR OTHER ALLEGATIONS AND RELIEF ASSERTED IN THE LAWSUIT OR OTHER ACTION.    IF THE RESOLUTION OF DISPUTES PROVISIONS OF THIS AGREEMENT ARE APPLICABLE TO YOUR DISPUTE OR CLAIM, THEY, TOO, WILL BE SUBJECT TO THE LIMITATIONS OF THIS PARAGRAPH.

33.    **USE AND OCCUPANCY:** Unless otherwise specifically allowed by this Agreement or other documents it incorporates, at all times one of the persons listed on the last page of this Agreement, or on the document assigning this Agreement, must be the "registered" owner of the mobilehome, and that person must regularly occupy the mobilehome, and it must also be their primary residence. When title to the Mobilehome is held in a trust which has been established for the purpose of estate planning one of the person(s) who established the trust must reside in the home on full time basis. You agree that the information you have provided us regarding you, other members of your household and your mobilehome is true and correct. You also agree to promptly notify us, in writing, of any change in this information. Please refer to the Rules and Regulations for further clarification of your use and occupancy of the mobilehome and Space. We, or someone we designate, may conduct a mobilehome sales or rental business in the Park.

34.    **INSPECTION:** By signing this Agreement, or accepting an assignment of it, you agree you have carefully inspected the Space you are renting and all of our services, improvements and facilities and you have found them to be safe and as represented by us to you, either orally or in writing, and you accept them as they are. To the extent that you have found such services, improvements and facilities not to be safe or not to be as represented by us to you, either orally or in writing, you nonetheless agree to accept them as they are.

35.    **ENFORCEMENT OF CONDITIONS OF TENANCY:** You agree that the enforcement of this Agreement, the Rules and Regulations and the provisions of other documents and conditions of tenancy are a private matter between us and each resident on an individual basis and the enforcement or the lack thereof by us with regard to any resident shall not result in any damage or injury to, or claim by you. You also agree that you are not a third party beneficiary of any agreement between us and any other residents or person(s).

36.    **MAINTENANCE OF IMPROVEMENTS:** You are financially responsible to maintain, repair and replace as reasonably necessary your mobilehome and all equipment, structures and other improvements to your mobilehome

© 2006 Hart & Giesen, LLP All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

and Space in good and safe condition and repair and in an aesthetically pleasing condition at all times. This includes, without limitation, the following: the mobilehome, accessory equipment and structures, fences, driveways (except park installed driveways), trees (except trees which present a specific health and safety violation or hazard), banks, and landscaping. Regardless of whether you are the original homeowner/occupant of the Space or of your mobilehome or purchased your mobilehome from a former homeowner who previously lived at your Space, this paragraph applies to you and you are responsible even for those things which were installed by a former owner or resident of the mobilehome or Space, us, or any prior or future owner of the Park. You are financially responsible for insuring at all times that the mobilehome, Space, and their improvements complies with all local, state and federal laws and regulations. (The only exception is any of the Park's utility systems on your Space which are owned by us or a utility company so we or they are responsible for them and park installed driveways.) The preceding includes without limitation such things as: insuring that the drainage is sufficient to prevent water from accumulating on your Space or under your mobilehome or running off so it adversely affects other Spaces or our property; that all required setbacks and lot line requirements are met and there are no encroachments on other property; that all building code and other similar requirements are met; and that all building and other permits have been obtained.

37.    **CONDEMNATION:** If any portion of the Park is taken under the power of eminent domain, or is sold to any authority having the power of eminent domain, either under threat of condemnation or while condemnation proceedings are pending or the utility systems or other portions of the Park are or will be affected by the condemnation to the point where, in our sole opinion, it is not economically desirable to continue operations, we will have the right to terminate this Agreement as of the date the condemning authority takes possession. The entire amount of any award for taking of all or any part of a space or the Park or for any other reason under the power of eminent domain will be our property whether such award shall be made as compensation for diminution in value of the leasehold or for taking the fee or the taking of any interest you may have because of this Agreement or any other lease or rental agreement you have with us or your tenancy in the Park. Nothing contained in this paragraph, however, will preclude you from obtaining any award from the condemning authority to you for the loss of or damage to your mobilehome or other removable personal property.

38.    **TIME OF ESSENCE:** Time is of the essence in this Agreement and each and every provision thereof.

39.    **MODIFICATION FOR LENDER:** If, in connection with our obtaining financing where we use the Park as security, a lender requests reasonable changes in this Agreement as a condition to such financing, you agree to promptly consent to those changes if they do not increase your obligations under this Agreement or materially adversely affect you.

40.    **ESTOPPEL CERTIFICATE:** You shall, on our request, sign and deliver to us a written statement certifying that (a) this Agreement is unmodified and in full force and effect (or if there have been modifications that they are in full force and effect as modified; (b) the dates to which the rent and other charges have been paid; (c) the term of this Agreement; (d) the amount of any security deposit; (e) we are not in default nor have we been in the past under any provision of this Agreement or any laws or regulations affecting our obligations; and (f) any other matters as may be reasonably requested by us. Any such statement may be relied on by us or any person we give it to. You will be in default of this Agreement if you fail to do the above within 10 days of your receipt of a written request for such statement. We may, at our option, treat your failure to sign and deliver this document to us as your agreement to the information we've requested and that we are not in default nor have we been in the past under any provision of this Agreement or any laws, or regulations affecting our obligations to you.

41.    **LIMITATION OF OUR LIABILITY:** In consideration of this Agreement, you agree that, in the event of any actual or alleged failure, breach or default by us under this Agreement or otherwise, your sole and exclusive remedy shall be against the value of our mobilehome park which is identified in this Agreement as the Park (including any insurance policies of us or the Park), not other property or assets which we may own.

42.    **MEGAN'S LAW:** The California Department of Justice, sheriff's departments, other local law enforcement authorities maintain for public access a database of the locations of persons required to register as an identified sex offender. The database is updated on a quarterly basis and a source of information about the presence of these individuals is any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line

© 2006 Alston & Glasor, LLP    All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

through which inquires about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. There is a charge for "900" calls information regarding neighborhoods is not available through the "900" telephone service.

**The phone numbers to call for information: (714) 960-8843**

Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.**Meganslaw.ca.gov** . Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. _Executed, Huntington Bch, 1:23pm, on 11-16-18_

43.    **EXECUTION:** The Agreement is signed by you at _1_:_23_ o'clock _f_ .m., on _1-16_: 20_06_ This Agreement is signed by us on _1-16_, 20_06_

NOTE TO NEW RESIDENTS: THIS AGREEMENT WILL NOT BE EFFECTIVE UNLESS YOU COMPLETE THE PURCHASE OF THE MOBILEHOME AND IF YOU DO NOT, YOU WILL HAVE NO RIGHTS OF TENANCY IN THE PARK.

PLEASE READ CAREFULLY BEFORE SIGNING THIS AGREEMENT AND ALL OF THE OTHER DOCUMENTS REFERRED TO IN THIS AGREEMENT.

I/WE AGREE THAT WE HAVE READ, UNDERSTOOD AND VOLUNTARILY AGREED TO ALL OF THE PROVISIONS OF THIS AGREEMENT WHICH CONSIST OF THIS MOBILEHOME RENTAL AGREE-MENT AND THE OTHER DOCUMENTS REFERRED TO IN IT.

I/WE HAVE BEEN ADVISED BY REPRESENTATIVES OF THE PARK THAT I/WE HAVE THE RIGHT TO CONSULT A LAWYER AND GET THE LAWYER'S ADVICE BEFORE SIGNING THIS AGREEMENT.

[ ]    RESIDENT(S)' INITIALS: _____    I/WE HAVE TAKEN THIS AGREEMENT TO A LAWYER BEFORE SIGNING IT. THE LAWYER IS:

    Name:    _____

    Address:    _____

    Telephone:    _____

[ ]    RESIDENT(S)' INITIALS: _____    I/WE HAVE DECLINED TO SEEK LEGAL COUNSEL BEFORE SIGNING THIS AGREEMENT.

NOTICE: BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT THOSE DISPUTES WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES" WILL BE DECIDED BY A NEUTRAL REFEREE AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE PARAGRAPH 6 OF THIS AGREEMENT.

HOMEOWNER(s) SIGNATURE(s)        RANCHO DEL REY MOBILE HOME ESTATES

By: _Wildamaskubishi_

_SandcastleCo LLC_    _1/16/18_

_11/16/2018_

11/18/18

Person(s) in addition to the above who
will reside in the above Space for whom
applications for residency were submitted
and approved,

I. Sandcastle Co. LLC

Jenne L. Gallian

John Y. Gallian, Member

John R. Gallian

# HUNTINGTON BEACH CITY ORDINANCE

### 17.38.020 Temporary Rental of Mobile Home

**D.**    Hereafter, "renter" refers to the person or persons who pay rent to the mobile home owner in exchange for the temporary right to reside within the subject mobile home (and the related right to occupy the space upon which the mobile home is located), but not as a co-occupant with the owner. Any renter of a mobile home must meet all the rules of occupancy of the mobile home park in which the mobile home is located with the exception of any rule which directly or indirectly prohibits, in conflict with this section, the temporary rental of a mobile home for up to one year

Prior to the mobile home renter's taking occupancy, that renter and the mobile home owner shall provide the park owner with:

1.    A copy of the mobile home rental agreement;
2.    The true names of all intended occupants and their residential phone number;
3.    Business phone numbers for all adult occupants who have such numbers; and
4.    An agreement signed by all adult occupants, which reads as follows:

**E.**    Such temporary rentals authorized by this chapter may not exceed 12 months in any two-year period subject to renewal because of continued hardship. **(3277-5/95)**

I have received copies of the lease between the park owner and the homeowner for Space # **376** and current park rules.

I have read those documents with care. I believe I understand them. I believe that I qualify for occupancy under those rules and the master lease (except for provisions prohibiting subleasing). I agree to abide by those Park Rules and to meet all obligations of that master lease which are relevant to an occupant. I understand that the park owner may directly enforce the within agreement against me without giving up any rights against the mobile home owner.

Sincerely,

*[signature]* 11/16/18

Jamie L Gallian

*RANCHO DEL REY OVER 55 MANUFACTURED HOME PARK*
*Qualifying and Occupancy Requirements 2018*
*16222 Monterey Lane*
*Huntington Beach 92649*
*THANYA*
*5 STAR HOMES SP#1231425*
*714 308-7735*

## General Information:

- **EACH, Prospective Resident** must submit a park application with attached **proof of income prior to opening escrow**

- **Person/s** to occupy the home must verify income of $3786 per month, **renting of property or sub-letting is not allowed**

- **Park may ONLY use income of owner/occupant 55 or over, registered on Title and sign Lease Agreement**

- **Income verification MUST be in the form of COPIES;** direct deposit, bank **statements showing SOURCE**, social security, retirement, pay stubs, etc. **Funds/savings in an account is NOT income**

- **Applicants MAY submit Income Tax Statement for alternate verification of income if more convenient**

- **One owner 55 or over, others over 18, residents MUST park cars in driveway, guest parking for guests only. Extra resident's cars may park on Monterey Lane**

- Park allows two small indoor pets, dogs 22 lbs OR 15 in" at shoulder

- **Dogs must be on leash at all times, no solid fencing, privacy screens are allowed. May have doggie gate if home has a porch, with owner present. Dogs are not allowed to be left in any enclosed area, not allowed on common area or in the park office. Dogs may be walked thru the park on leash**

- *Monthly space rent $1325 for 2018, plus utilities. Space rent increases each year between 2%-4%. Lease is for one year*

- *Mandatory meeting with manager with ALL occupants for Rules and Regulations for final park approval, week day appointments only*

- *Obtaining a loan or paying cash for a home is separate from qualifying for **park** income requirement. If obtaining a loan, the amount of the mortgage payment **will** be added to the park's income requirement * 5 Star Home Lending Richard Herr/714 891-6383 *Request a park and loan application* Thanya 714 308-7735*

EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO.: 170746 | FOR COURT USE ONLY |
|---|---|---|

NAME: VIVIENNE J ALSTON
FIRM NAME: ALSTON ALSTON & DIEBOLD
STREET ADDRESS: 27201 PUERTA REAL, STE 300
CITY: MISSION VIEJO    STATE: CA    ZIP CODE: 92691
TELEPHONE NO.: 714 556 9400    FAX NO. 714 556 9500
E-MAIL ADDRESS: valston@aadlawyers.com
ATTORNEY FOR (name): HOUSER BROS. CO.

[x] ORIGINAL JUDGMENT CREDITOR    [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA  CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

Plaintiff: HOUSER BROS. CO.
Defendant: LISA RYAN

*Pursuant to California Government Code § 68150(I), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g).*

| | | CASE NUMBER: |
|---|---|---|
| [ ] | EXECUTION (Money Judgment) | 30 2018 01013582 CLUDCJC |
| WRIT OF | [x] POSSESSION OF [ ] Personal Property | [x] Limited Civil Case (including Small Claims) |
| | [ ] SALE [x] Real Property | [ ] Unlimited Civil Case (including Family and Probate) |

1. **To the Sheriff or Marshal of the County of:** ORANGE COUNTY
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. **To any registered process server:** You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): HOUSER BROS. CO., a California general partnership dba RANCHO DEL REY MOBILE HOME ESTATES
   is the [x] original judgment creditor [ ] assignee of record  whose address is shown on this form above the court's name.

4. **Judgment debtor** *(name, type of legal entity if not a natural person, and last known address):*

   LISA RYAN
   16222 Monterey Lane, Space 376
   Huntington Beach, California 92649

   [ ] Additional judgment debtors on next page

5. **Judgment entered** on *(date):*
   10- 18 -2018 A

6. [ ] Judgment renewed on *(dates):*

7. **Notice of sale under this writ**
   a. [x] has not been requested.
   b. [ ] has been requested *(see next page).*

8. [ ] Joint debtor information on next page.

[SEAL]

9. [x] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. [ ] This writ is issued on a sister-state judgment.
    For Items 11–17, see form MC-012 and form MC-013-INFO.

11. Total judgment *(as entered or renewed)* $
12. Costs after judgment *(CCP 685.090)* $
13. Subtotal *(add 11 and 12)* $
14. Credits to principal *(after credit to interest)* $
15. Principal remaining due *(subtract 14 from 13)* $
16. Accrued interest remaining due per CCP 685.050(b) *(not on GC 6103.5 fees)* $
17. Fee for issuance of writ $25.00
18. Total *(add 15, 16, and 17)* $25.00
19. Levying officer:
    a. Add daily interest from date of writ *(at the legal rate on 15) (not on GC 6103.5 fees)* . . . . . . . . . . . . . . $
    b. Pay directly to court costs included in 11 and 17 *(GC 6103.5, 68637; CCP 699.520(i))* . . . . . . . . . . . . . . $
20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

David H. Yamasaki, Clerk of the Court

| Issued on *(date):* 11/14/2018 | Clerk, by | _signature_ D.Cuevas, Deputy |
|---|---|---|

**NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.**

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2018]

**WRIT OF EXECUTION**

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov

EJ-130

| Plaintiff: HOUSER BROS. CO. | CASE NUMBER |
|---|---|
| Defendant: LISA RYAN | 30 2018 01013582 CLUDCJC |

21. ☐ Additional judgment debtor *(name, type of legal entity if not a natural person, and last known address):*

22. ☐ Notice of sale has been requested by *(name and address):*

23. ☐ Joint debtor was declared bound by the judgment (CCP 989–994)

   a. *on (date):*                           a. *on (date):*

   b. name, type of legal entity if not a natural person, and      b. name, type of legal entity if not a natural person, and
      last known address of joint debtor:                  last known address of joint debtor:

   c. ☐ Additional costs against certain joint debtors are itemized:   ☐ Below ☐ On Attachment 23c

24. ☒ (Writ of Possession or Writ of Sale) Judgment was entered for the following:

   a. ☒ Possession of real property: The complaint was filed on *(date):* 8-21-2018
       *(Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)*

     (1) ☒ The Prejudgment Claim of Right to Possession was served in compliance with CCP 415.46. The judgment includes
          all tenants, subtenants, named claimants, and other occupants of the premises.

     (2) ☐ The Prejudgment Claim of Right to Possession was NOT served in compliance with CCP 415.46.

     (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the
          judgment may file a Claim of Right to Possession at any time up to and including the time the levying officer returns
          to effect eviction, regardless of whether a Prejudgment Claim of Right to Possession was served.) *(See CCP 415.46
          and 1174.3(a)(2).)*

     (4) If the unlawful detainer resulted from a foreclosure (item 24a(3)), or if the Prejudgment Claim of Right to Possession was
         not served in compliance with CCP 415.46 (item 24a(2)), answer the following:

       (a)   The daily rental value on the date the complaint was filed was  $36.20

       (b)   The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates *(specify):*

   b. ☐ Possession of personal property.
       ☐ If delivery cannot be had, then for the value *(itemize in 24e)* specified in the judgment or supplemental order.
   c. ☐ Sale of personal property.
   d. ☐ Sale of real property.
   e. The property is described: ☒ Below ☐ On Attachment 24e

     16222 Monterey Lane, Space 376, Huntington Beach, California 92649

**WRIT OF EXECUTION**

EJ-130

| Plaintiff: HOUSER BROS. CO. | CASE NUMBER: |
| Defendant: LISA RYAN | 30 2018 01013582 CLUDCJC |

## NOTICE TO PERSON SERVED

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

EJ-130 [Rev. January 1, 2016]          **WRIT OF EXECUTION**                    Page 2 of 3

*Rancho Del Rey*

**MOBILE HOME ESTATES**
16222 MONTEREY LANE
HUNTINGTON BEACH, CA 92649
PHONE: (714) 846-1429

11/20/2018

**TO:**
Gallian, Jamie
5782 Pinon Drive
Huntington Beach, CA 92649

*Rancho Del Rey*

**MOBILE HOME ESTATES**
16222 MONTEREY LANE
HUNTINGTON BEACH, CA 92649
PHONE: (714) 846-1429

11/20/2018

**TO:**
Gallian, Jamie
5782 Pinon Drive
Huntington Beach, CA 92649



# PROSPECTIVE PURCHASER EVALUATION — NOTICE TO PROSPECTIVE PURCHASER



**Western
Manufactured Housing Communities
Association**

### Rancho Del Rey Mobile Home Estates
(Park Name)

TO: Prospective Homeowner: _____ Jamie Gallian _____
(Prospective Homeowner Name)

On 11/19/2018 _____, management received all of the information necessary to determine if you will be
(Date)

acceptable as a homeowner in the park, located at 16222 Monterey Ln. SPC 376 Huntington Beach, CA 92649 ____.
(space and address)

This is to advise prospective homeowner that the prospective homeowner is:

_____**APPROVED FOR RESIDENCY IN THE PARK, provided that the prospective homeowner complies with the requirements of Section 798.75 of the California Civil Code and executes a rental agreement with management.** In the event the prospective homeowner fails to execute the rental agreement, that person shall have no rights of tenancy. The prospective homeowner should contact management immediately to sign a rental agreement. You are also advised that any escrow, sale or transfer agreement for the mobilehome must contain a copy of either a fully executed rental agreement or a statement signed by both the management and you that the parties have agreed to the terms and conditions of the rental agreement.

__X__**DISAPPROVED**, because:

_____You have not demonstrated that you have the financial ability to pay the rent and charges of the park.

_____Management has determined that, based on your prior tenancies, you will not comply with the rules and regulations of the park.

_____Management has determined that you cannot comply with the requirements of the park's rules and regulations limiting residency to housing for older persons.

__X__ This disapproval includes the following reason(s):

__X__ Consumer Credit Report (check appropriate box below):

__X__ Information contained in a consumer credit report obtained from the consumer credit reporting agency named in the paragraph on page two of this form.

_____A consumer credit report containing insufficient information obtained from the consumer credit reporting agency named in the paragraph on page two of this form.

You have a right to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the consumer reporting agency.

Copyright © 2014. WMA.

Printed Using formsRus.com On-Line Forms Software



**From:** **Jamie Gallian** jamiegallian@gmail.com
**Subject:** Notice of Exparte hearing Tuesday December 4, 2018, 8:30am, C-61
**Date:** December 3, 2018 at 10:56 AM
**To:** valston@aadlawyers.com, Gordon G. May (ggm@ggb-law.com) ggm@ggb-Law.com
**Cc:** Steve Fink sfink@stevefinklaw.com, Jamie Gallian jamiegallian@gmail.com

Please take notice Jamie Gallian will appear exparte on December 4, 2018, C-61, 8:30a. 700 Civic Center Drive West
Santa Ana, CA 92701.

1. Ms. Gallian will ask the court to Order the Notice to Vacate mute.  Ms. Gallian's attorney Mr. Steven Fink has contacted
Attorney Vivienne Alston mutilple times to recall the Notice of Vacate
with no response to attorney Fink or Ms. Gallian.

Ms. Gallian contacted the Sheriff apartment at 9.50am and was told to contact the Court for an Order.


2. Ms. Gallian will ask this same court to dismiss Mr. Gordon UD action of October 17, 2018.
Ms. Gallian has asked Mr. Gordon May multiple times to withdraw and dismiss the fraudulent UD filed in this same court.
Ms. Gallian moved out of The Gables complying with the the landlord BS Investors LP, first Notice of Cure or Quit posted
on August 29, 2018. Ms. Gallian new tenancy outside The Gables began on September 11, 2018. Mr. May's UD action is
frivolous and its only purpose was to harass Ms. Gallian, unlawfully attempt eviction against a protected party under
temporary restraining order Gallian v Jasso, C-66, and delay the civil trial set on calendar 12-10-18.

Pleading papers will be served under separate cover.

Sincerely,


Jamie Gallian

**CIV-110**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>Gordon G. May (SBN 167112)<br>GRANT, GENOVESE & BARATTA, LLP<br>2030 Main Street, Suite 1600<br>Irvine, CA 92614<br><br>TELEPHONE NO (949) 660-1600    FAX NO *(Optional)* (949) 660-6060<br>E-MAIL ADDRESS *(Optional)* ggm@ggb-law.com<br>ATTORNEY FOR *(Name)* Plaintiff BS INVESTORS, LP | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**12/03/2018** at 12:09:00 PM<br>Clerk of the Superior Court<br>By Anh Dang, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS 700 Civic Center Drive West
MAILING ADDRESS
CITY AND ZIP CODE Santa Ana, CA 92701
BRANCH NAME CENTRAL JUSTICE CENTER

PLAINTIFF/PETITIONER    BS INVESTORS, LP, a California limited partnership

DEFENDANT/RESPONDENT    JAMIE L GALLIAN, an individual

| REQUEST FOR DISMISSAL | CASE NUMBER<br>30-2018-01024401-CU-UD-CJC |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1  TO THE CLERK: Please dismiss this action as follows:
  a  (1) ☐ With prejudice    (2) ☒ Without prejudice
  b  (1) ☒ Complaint    (2) ☐ Petition
    (3) ☐ Cross-complaint filed by *(name)*                       on *(date)*:
    (4) ☐ Cross-complaint filed by *(name)*                       on *(date)*:
    (5) ☐ Entire action of all parties and all causes of action
    (6) ☐ Other *(specify):*

2  (Complete in all cases except family law cases.)
  The court ☐ did ☒ did not waive court fees and costs for a party in this case  *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)*

Date: December 3, 2018

Gordon G. May
(TYPE OR PRINT NAME OF  ☒ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)         ► _____ (SIGNATURE)
                                          Attorney or party without attorney for:
*If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.    ☒ Plaintiff/Petitioner  ☐ Defendant/Respondent
                                        ☐ Cross-Complainant

3  TO THE CLERK: Consent to the above dismissal is hereby given **
  Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)     ► _____ (SIGNATURE)
                                          Attorney or party without attorney for:
** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j)                        ☐ Plaintiff/Petitioner  ☐ Defendant/Respondent
                                        ☐ Cross-Complainant

*(To be completed by clerk)*
4. ☒ Dismissal entered as requested on *(date)*  12/03/2018
5. ☐ Dismissal entered on *(date)*         as to only *(name):*
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify)*

7. a. ☐ Attorney or party without attorney notified on *(date)*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
     ☐ a copy to be conformed ☐ means to return conformed copy

Date:  12/03/2018     Clerk, by _____ , Deputy
            DAVID H. YAMASAKI, Clerk of the Court     A. DANG
                                                  Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan 1, 2013]      **REQUEST FOR DISMISSAL**   Legal Solutions Plus   Code of Civil Procedure, § 581 et seq.,
Gov. Code, § 68637(c), Cal. Rules of Court, rule 3.1390

CIV-110

| PLAINTIFF/PETITIONER. BS INVESTORS, LP, a California limited partnership<br>DEFENDANT/RESPONDENT: JAMIE L GALLIAN, an individual | CASE NUMBER:<br>30-2018-01024401-CU-UD-CJC |
|---|---|

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery  The court may refuse to dismiss the case until the lien is satisfied. (Gov  Code, § 68637 )

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐  not recovering anything of value by this action.
   b. ☐  recovering less than $10,000 in value by this action
   c. ☐  recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐  All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____          ▶ _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4

    I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2030 Main Street, Suite 1600, Irvine CA 92614.

5

    On December 3, 2018, I served the foregoing document described as **REQUEST FOR DISMISSAL** on the following person(s) in the manner indicated:

6

7

Jamie L. Gallian, an individual                  Defendant

8

5782 Pinon Drive
Huntington Beach,  CA 92649

9

Telephone No. : (714) 321-3449

10

**[ X ]**   (BY MAIL) I am familiar with the practice of Grant, Genovese & Baratta, LLP for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Grant, Genovese & Baratta, LLP, Irvine, California, following ordinary business practices.

11

12

13

14

15

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on December 3, 2018, at Irvine, California.

16

17

18

                  _____

19

                     Helena Coyle

20

21

22

23

24

25

26

27

28

| TO (Name and Address):<br>Lisa Ryan<br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | LEVYING OFFICER (Name and Address):<br>**Orange County Sheriff's Office**<br>**Sheriff's Civil Division**<br>**Suite 2**<br>**909 N. Main Street**<br>**Santa Ana, CA  92701** |
|---|---|
| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:<br>**Orange County Superior Court**<br>**700 Civic Center Drive West**<br>**Santa Ana, CA  92701**<br>**Central Justice Center** | **(714) 569-3700**<br>**Fax: (714) 569-2368**<br><br>**California Relay Service Number**<br>**(800) 735-2929 TDD or 711** |
| PLAINTIFF:<br>**Houser Bros Co**<br>DEFENDANT:<br>**Lisa Ryan** | COURT CASE NO.:<br><br>**30 2018 01013582 CLUDCJC** |
| **Notice to Vacate** | LEVYING OFFICER FILE NO.:<br><br>**2018517508** |

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| **Eviction Address:** | **16222 Monterey Lane Space 376**<br>**Huntington Beach, CA  92649** |
|---|---|

Final notice is hereby given that possession of the property must be turned over to the landlord on or before:

| **Final notice is hereby given that possession of the property must be turned over to the landlord on or before:** | **Monday, December 03, 2018 6:01 AM** |
|---|---|

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment.  If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage.  If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and you are not named on the writ, complete and file the attached Claim of Right of Possession form with this office.  No claim of right to possession can be filed if box 24a(1) located on the back of the writ is checked.



**Sandra Hutchens**
**Sheriff-Coroner**


By: _____
Sheriff's Authorized Agent


CPM Form 8.32
11/30/2009 (Revised)

**Original**

Jaime Gallian
16222 Monterey Ln. Space 376
Huntington Beach, CA 92649

92649-225876

SANTA ANA CA 926
12 DEC 2016 PM 3 L



ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

## ALSTON, ALSTON & DIEBOLD

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

OUR FILE NO: ___1510.___

December 10, 2018

### FIVE (5) DAY DEMAND
### FOR SURRENDER OF POSSESSION OF SITE

To:    Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental Agreement ("Occupants"):

NOTICE IS HEREBY GIVEN that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and surrender possession thereof commonly described as:

Space376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without right or authority under a rental agreement or otherwise. Based upon the foregoing facts, management is authorized to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or possession.

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2


**THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND NOTICE TO QUIT AS PER <u>CIVIL CODE</u> SECTION 798.75.  SHOULD YOU FAIL TO QUIT AND SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.**

ALSTON, ALSTON & DIEBOLD

Dated:  December 10, 2018

By: _____
VIVIENNE J. ALSTON
Authorized Agent for Owner


cc:    Client
       Park Manager



## Informal Title Search

### Unit Search

Identifier [ LBM1081 ]    [ Search ]

| Select | Unit Identifiers | Manufacturer | SITUS Address |
|---|---|---|---|
| ⊙ | Decal No.: LBM1081<br>MCO No.: 8802499<br>Serial No.: AC7V710394GB,<br>AC7V710394GA<br>HUD Label: PFS1130281,<br>PFS1130282 | Manufactured Date: 05/29/2014<br>Manufacturer: SKYLINE HOMES INC<br>Trade Name: CUSTOM VILLA<br>Unit Type: Manufactured Home | 16222 MONTEREY LN, SPACE # 376, HUNTINGTON BEACH, CA 92649 (ORANGE COUNTY) |

File No. [ LBM1081 ]

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                    GAVIN NEWSOM, Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF CODES AND STANDARDS



# Title Search

Date Printed:  Aug 11, 2021

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT  Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

| | |
|---|---|
| **Last Title Date:** | 08/03/2021 |
| **Last Reg Card:** | 08/03/2021 |
| **Sale/Transfer Info:** | Price $.00 Transferred on 02/25/2021 |

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County:  ORANGE

Legal Owner:

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA 90503

| | |
|---|---|
| **Lien Perfected On:** | 01/14/19 15:22:00 |

Title Searches:

JANINE JASSO
PO BOX 370161
EL PASO, TX 79937

| | |
|---|---|
| **Title File No:** | LBM1081 |

JAMIE GALLIAN
16222 MONTEREY LANE SPACE 376
HUNTINGTN BCH, CA 92649

| | |
|---|---|
| **Title File No:** | LBM1081 |

JAMIE GALLIAN
16222 MONTEREY LANE SPACE 376
HUNTINGTN BCH, CA 92649

| | |
|---|---|
| **Title File No:** | LBM1081 |



## my FirstAm®    Tax Map

**16222 Monterey Ln #376, Huntington Beach, CA 92649**



**Tax Map**                **16222 Monterey Ln #376, Huntington Beach, CA 92649**

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

From: **Cruz, Sylvia@HCD** Sylvia.Cruz@hcd.ca.gov 
Subject: Title Search - LBM1081
Date: January 18, 2019 at 8:17 AM
To: Jamie Gallian jamiegallian@gmail.com

Hello Ms. Gallian,

Here is the transfer information you can use to show the unit has been transferred until
the original Title goes out from our Sacramento District Office.

Sylvia

STATE OF CALIFORNIA - BUSINESS. CONSUMER SERVICES. AND HOUSING                    GAVIN NEWSOM. Governor

From: **Cruz, Sylvia@HCD** Sylvia.Cruz@hcd.ca.gov 
Subject: Title Search - LBM1081
Date: January 18, 2019 at 8:17 AM
To: Jamie Gallian jamiegallian@gmail.com

Hello Ms. Gallian,

Here is the transfer information you can use to show the unit has been transferred until the original Title goes out from our Sacramento District Office.

Sylvia

---

**STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES, AND HOUSING**　　　　　　　　**GAVIN NEWSOM, Governor**
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**DIVISION OF CODES AND STANDARDS**



### Title Search

Date Printed:  Jan 18, 2019

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT  Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

| | |
|---|---|
| **Last Title Date:** | 09/10/2014 |
| **Last Reg Card:** | Pending Reg Card |
| **Sale/Transfer Info:** | Price $175,000.00 Transferred on 11/01/2018 |

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County:  ORANGE

***END OF TITLE SEARCH***

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES, AND HOUSING                              **GAVIN NEWSOM, Governor**

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**DIVISION OF CODES AND STANDARDS**



# Title Search

Date Printed:  Jan 18, 2019

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |

| | | | |
|---|---|---|---|
| Manufactured Date: | 05/29/2014 | Last ILT Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Last Title Date:**        09/10/2014

**Last Reg Card:**         Pending Reg Card

**Sale/Transfer Info:**       Price $175,000.00 Transferred on 11/01/2018

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County:  ORANGE

***END OF TITLE SEARCH***

| TO (Name and Address): | LEVYING OFFICER (Name and Address): |
|---|---|
| Lisa Ryan<br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | Orange County Sheriff's Office<br>Sheriff's Civil Division<br>Suite 2<br>909 N. Main Street<br>Santa Ana, CA 92701 |
| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:<br><br>Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92701<br>Central Justice Center | (714) 569-3700<br>Fax: (714) 569-2368<br><br>California Relay Service Number<br>(800) 735-2929 TDD or 711 |
| PLAINTIFF:<br>Houser Bros Co<br>DEFENDANT:<br>Lisa Ryan | COURT CASE NO.:<br><br>30 2018 01013582 CLUDCJC |
| **Notice to Vacate** | LEVYING OFFICER FILE NO.:<br><br>2018517508 |

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| **Eviction Address:** | **16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649** |
|---|---|

Final notice is hereby given that possession of the property must be turned over to the landlord on or before:

| **Final notice is hereby given that possession of the property must be turned over to the landlord on or before:** | **Sunday, January 20, 2019 6:01 AM** |
|---|---|

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment. If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage. If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and you are not named on the writ, complete and file the attached Claim of Right of Possession form with this office. No claim of right to possession can be filed if box 24a(1) located on the back of the writ is checked.



Don Barnes
Sheriff-Coroner

By:  *Renee #6446*  Sheriff's Authorized Agent

CPM Form 8.32
11/30/2009 (Revised)

**Original**

**From:** nag-dl-mhonlinereports@jdpa.com
**Subject:** MH Online Value/Price Report Receipt
**Date:** July 27, 2021 at 8:55 AM
**To:** jamiegallian@gmail.com



# MH Online Receipt

### Order Information

**Description:**        Basic Value Report

**Invoice Number:**        448119-VIR

---

**Billing Information**
Jamie Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649
jamiegallian@gmail.com
714-321-3449

---

| | |
|---|---|
| **Basic Value Report:** | $30.00 |
| **CC Surcharge @ 2%:** | 0.60 |
| **Total Amount Charged:** | $30.60(USD) |

### Payment Information

**Date/Time:**        2021-07-27 15:55:06

**Transaction ID:**        6274013055746473204275

**Payment Method:**        Visa XXXX7357

**Transaction Type:**        Purchase

### Merchant Contact Information

**NADAguides.com**
Costa Mesa, CA 92626
United States
nag-dl-mhonlinereports@jdpa.com



**J.D. POWER**

## Used Manufactured Home Value Report

Reference Number  448119          Edition  July-Aug 2021          Date  07/27/2021

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

Floor Areas: Triple-Wide

| | Width | Length | Total Value |
|---|---|---|---|
| Main Floor Area: | 54 | x 60 | $171,168.00 |

| | | | |
|---|---|---|---|
| 1. | **Base Structure Value** | | **$171,168.00** |
| 2. | State Location Adjustment | x | 107 % |
| 3. | Total Guide Book Retail Value (in average condition) | | $183,149.76 |
| 4. | Condition Adjustment Selected: Good | x | 109 % |
| 5. | Condition Adjusted Value | | $199,633.24 |
| 6. | **Total Adjusted Value of Home** | | **$199,633.24** |
| 7. | Total Additional Features | + | $10,363.32 |
| 8. | **Total Adjusted (Retail) Value  of Home and Optional Equipment** | | **$209,996.56** |

Comments: This value report was produced by using NADAguides.com's Manufactured Housing Online Request Form. This is an automated valuation tool that generates value reports based on user-selected home criteria.

The value indication of this value report represents the depreciated replacement cost of the home and added features in retail dollars, and does not include adjustments for land, community "in place location value", or local market comparable sales.

This is not an appraisal form.

Disclaimer
All materials and related content contained within this product are the opinions of our editorial staff and may vary from home to home. Valuations will vary depending on market conditions, home condition, specifications or other circumstances that may be particular to a home transaction or parties involved with the transaction. NADAguides values and products may not be copied or reproduced, nor distributed for reasons that may exploit the information content of the company. NADAguides, its subsidiaries and affiliated entities, make no warranty express or implied, including without limitation, any warranty of merchantability or fitness for a particular purpose and they assume no responsibility for the accuracy of the values or other information published herein. NADAguides, its subsidiaries and affiliated entities, will not be liable for any special, incidental or consequential damages resulting from any use of this value report, including, without limitation, lost profits. No part of this report may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording or otherwise without prior written permission of NADAguides.

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.



**J.D. POWER**

# Used Manufactured Home Value Report

Reference Number  448119          Edition  July-Aug 2021          Date  07/27/2021

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|------------|--------------|------------|-------|--------|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

## ADDITIONAL FEATURES

| Description | Quantity | Unit of Measure | Age | Unit Price | Total Value |
|-------------|----------|-----------------|-----|------------|-------------|
| **Components** | | | | | |
| BATH FIXTURES | | | | | |
| Fiberglass Shower Stall | 1 | ea. | 5+ Yrs | $136.00 | $136.00 |
| Garden Tub (Skirted) | 1 | ea. | 5+ Yrs | $226.00 | $226.00 |
| Fiberglass Tub - Combo | 1 | ea. | 5+ Yrs | $191.00 | $191.00 |
| Total BATH FIXTURES | | | | | $553.00 |
| DOORS | | | | | |
| Deluxe House Type Exterior Door | 2 | ea. | 5+ Yrs | $99.00 | $198.00 |
| Total DOORS | | | | | $198.00 |
| ELECTRICAL | | | | | |
| Electric Home - Total | 1 | ea. | 5+ Yrs | $363.00 | $363.00 |
| Total ELECTRICAL | | | | | $363.00 |
| FAN | | | | | |
| Ceiling Paddle Fan | 3 | ea. | 5+ Yrs | $67.00 | $201.00 |
| Total FAN | | | | | $201.00 |
| FLOORING | | | | | |
| T & G Plywood Sub-Flooring | 3240 | sq. ft. | 5+ Yrs | $0.25 | $810.00 |
| Total FLOORING | | | | | $810.00 |
| HOUSE TYPE ROOFING | | | | | |
| Multi-wide | 1 | home | 5+ Yrs | $431.00 | $431.00 |
| Third/Tag-A-Long Section | 1 | home | 5+ Yrs | $123.00 | $123.00 |
| Total HOUSE TYPE ROOFING | | | | | $554.00 |
| HOUSE TYPE SIDING | | | | | |
| Multi-wide | 1 | home | 5+ Yrs | $833.00 | $833.00 |
| Third/Tag-A-Long Section | 1 | home | 5+ Yrs | $343.00 | $343.00 |
| Total HOUSE TYPE SIDING | | | | | $1,176.00 |

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.



**J.D. POWER**

# Used Manufactured Home Value Report

Reference Number  448119          Edition  July-Aug 2021          Date  07/27/2021

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

### Components

INTERIOR

| | | | | | |
|---|---|---|---|---|---|
| Cathedral/Vaulted Ceiling Rooms | 6 | ea. | 5+ Yrs | $121.00 | $726.00 |
| Total INTERIOR | | | | | $726.00 |

KITCHEN APPLIANCES

| | | | | | |
|---|---|---|---|---|---|
| 22 CF Refrigerator | 1 | ea. | 5+ Yrs | $485.00 | $485.00 |
| Dishwasher | 1 | ea. | 5+ Yrs | $177.00 | $177.00 |
| Garbage Disposal | 1 | ea. | 5+ Yrs | $80.00 | $80.00 |
| Total KITCHEN APPLIANCES | | | | | $742.00 |

MISCELLANEOUS

| | | | | | |
|---|---|---|---|---|---|
| Clothes Washer | 1 | ea. | 5+ Yrs | $199.00 | $199.00 |
| Clothes Dryer | 1 | ea. | 5+ Yrs | $221.00 | $221.00 |
| Fireplace (Built-In/Permanent) | 1 | ea. | 5+ Yrs | $1,011.00 | $1,011.00 |
| Total MISCELLANEOUS | | | | | $1,431.00 |

PLUMBING

| | | | | | |
|---|---|---|---|---|---|
| Stainless Steel Sink | 1 | ea. | 5+ Yrs | $92.00 | $92.00 |
| Total PLUMBING | | | | | $92.00 |

WINDOWS

| | | | | | |
|---|---|---|---|---|---|
| Skylight | 2 | ea. | 5+ Yrs | $133.00 | $266.00 |
| Total WINDOWS | | | | | $266.00 |

| **Total Components** | | | | | **$7,112.00** |
|---|---|---|---|---|---|

### Accessories

PORCHES/DECKS (Measure Width x Length Including Carpet & Rails)

| | | | | | |
|---|---|---|---|---|---|
| Elevated - Wood w/Rails | 120 | sq. ft. | 5+ Yrs | $6.78 | $813.60 |
| Total PORCHES/DECKS (Measure Width x Length Including Carpet & Rails) | | | | | $813.60 |

SKIRTING TO 30" HIGH (Measure Around Perimeter)

| | | | | | |
|---|---|---|---|---|---|
| Shiplap (Horizontal) | 228 | lin. ft. | 5+ Yrs | $6.24 | $1,422.72 |
| Total SKIRTING TO 30" HIGH (Measure Around Perimeter) | | | | | $1,422.72 |

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.



# Used Manufactured Home Value Report

Reference Number 448119          Edition July-Aug 2021          Date 07/27/2021

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

**Accessories**

STEPS

| | | | | | |
|---|---|---|---|---|---|
| Wood - 3 Steps | 5 | ea. | 5+ Yrs | $203.00 | $1,015.00 |
| Total STEPS | | | | | $1,015.00 |

| | |
|---|---|
| **Total Accessories** | **$3,251.32** |

| | |
|---|---|
| **Total Additional Features** | **$10,363.32** |

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.

| | Park Name : | **RANCHO DEL REY MOBILE ESTATES** |
| --- | --- | --- |
| | Park Address : | 16222 MONTEREY L HUNTINGTON BEACH, CA 92649 |
| | Spaces : | 379 |
| | From : | 3/14/2020 to 3/14/2022 |
| | Report date : | 3/14/2022 |

| Address City | Mfd Date MFG Trade | Original Current Sales Date | Decal Legal Dealer | Wd Lt | Total sq Ft Per Sq Ft |
| --- | --- | --- | --- | --- | --- |
| 16222 MONTEREY LN #315 HUNTINGTON BEACH | 03/29/2006 DELAWARE WESTERN HOMES CORP SILVERCREST | $365,000.00 **$325,000.00** 12/03/2021 | LBI5646 | 15.5 61 14.8333 61 | 1850.33 $175.64 |
| 16222 MONTEREY LN #105 HUNTINGTON BEACH | 11/20/2009 CMH MANUFACTURING WEST INC CHATEAU SERIES | $148,195.00 **$285,000.00** 10/15/2021 | LBK6772 5 STAR HOMES | 14.8333 54 14.8333 54 | 1602 $177.90 |
| 16222 MONTEREY LN #81 HUNTINGTON BEACH | 01/01/1965 MONTCLAIR MOBILE HOMES BONANZA | $3,300.00 **$149,000.00** 10/08/2021 | LBB4900 5 STAR HOMES | 10 48 10 48 | 960 $155.21 |
| 16222 MONTEREY LN #23 HUNTINGTON BEACH | 04/18/1997 FLEETWOOD HM CALIF INC SUNPOINTE VVS | $64,235.00 **$135,000.00** 10/01/2021 | LAX7136 5 STAR HOMES | 11.75 57.3333 11.75 56 | 1331.67 $101.38 |
| 16222 MONTEREY LN #310 HUNTINGTON BEACH | 12/04/2003 CHAMPION HOME BUILDERS COMPANY RESIDENTIAL | $153,325.00 **$319,500.00** 09/28/2021 | LBF6142 | 13.3333 58 13.3333 60 | 1573.33 $203.07 |
| 16222 MONTEREY LN #25 HUNTINGTON BEACH | 08/27/2004 SKYLINE HOMES INC OAKMANOR | $271,050.00 **$270,000.00** 09/15/2021 | LBG5840 5 STAR HOMES | 13.3333 59 13.3333 60.3333 | 1591.11 $169.69 |
| 16222 MONTEREY LN #150 HUNTINGTON BEACH | 11/03/2005 SKYLINE HOMES INC OAKMANOR | $289,637.00 **$280,000.00** 09/08/2021 | LBH7988 5 STAR HOMES | 13.3333 56 13.3333 56 | 1493.33 $187.50 |
| 16222 MONTEREY LN #159 HUNTINGTON BEACH | 01/01/1965 SKYLINE SKYLINE | $3,100.00 **$75,000.00** 07/29/2021 | LBO7483 5 STAR HOMES | 10 52 | 520 $144.23 |
| 16222 MONTEREY LN #316 HUNTINGTON BEACH | 02/01/2013 CMH MANUFACTURING WEST INC GOLDEN WEST | $148,572.00 **$100,000.00** 07/27/2021 | LBN2518 | 13.5 60 13.5 60 | 1620 $61.73 |
| 16222 MONTEREY LN #277 HUNTINGTON BEACH | 01/01/1968 ROLLAWAY | $18,999.00 **$162,000.00** 07/21/2021 | LBC7654 5 STAR HOMES | 12 57 12 57 | 1368 $118.42 |
| 16222 MONTEREY LN #70 HUNTINGTON BEACH | PTHSE | $9,300.00 **$48,000.00** 06/30/2021 | ABA2838 | 10 56 10 56 | 1120 $42.86 |

| | | | | | |
|---|---|---|---|---|---|
| 16222 MONTEREY LN #128<br>HUNTINGTON BEACH | 07/24/2000<br>DELAWARE WESTERN HOMES CORP<br>SILVERCREST | $113,000.00<br>**$215,000.00**<br>06/30/2021 | LBC1704<br>5 STAR HOMES | 12 53.3333<br>12 53.3333 | 1280<br>$167.97 |
| 16222 MONTEREY LN #30<br>HUNTINGTON BEACH | 10/04/1999<br>DELAWARE WESTERN HOMES CORP<br>SILVERCREST | $102,199.00<br>**$169,000.00**<br>05/13/2021 | LBA2954<br>5 STAR HOMES | 13.5 56<br>12.8333 56 | 1474.67<br>$114.60 |
| 16222 MONTEREY LANE SP 22<br>HUNTINGTON BEACH | 11/11/2013<br>CMH MANUFACTURING WEST INC<br>GOLDEN WEST | $130,000.00<br>**$212,000.00**<br>05/10/2021 | LBL8405<br>5 STAR HOMES | 11.8333 58<br>11.8333 58 | 1372.67<br>$154.44 |
| 16222 MONTEREY LANE #282<br>HUNTINGTON BEACH | 11/07/2013<br>CMH MANUFACTURING WEST INC<br>CMH | $202,858.00<br>**$330,000.00**<br>05/07/2021 | LBL7735<br>5 STAR HOMES | 14.8333 60<br>14.8333 58 | 1750.33<br>$188.54 |
| 16222 MONTEREY LN #221<br>HUNTINGTON BEACH | 02/26/2010<br>CMH MANUFACTURING WEST INC<br>CASTLE LIMITED | $225,000.00<br>**$319,500.00**<br>04/29/2021 | LBK5051<br>EAGLE COMMUNITY CREDIT UNION<br>J/R MOBILEHOME SALES | 11.8333 60<br>9.83333 56<br>11.8333 56 | 1923.33<br>$166.12 |
| 16222 MONTEREY LANE #10<br>HUNTINGTON BEACH | 08/14/2006<br>DELAWARE WESTERN HOMES CORP<br>SILVERCREST | $239,153.00<br>**$330,000.00**<br>04/23/2021 | LBI7633<br>5 STAR HOMES | 13.5 62.6667<br>13.5 61.3333<br>13.5 27 | 2038.5<br>$161.88 |
| 16222 MONTEREY LN #50<br>HUNTINGTON BEACH | 07/11/1991<br>HALLMARK SOUTHWEST CORP<br>WINCHESTER II | $55,000.00<br>**$105,000.00**<br>04/07/2021 | LAT2541<br>5 STAR HOMES | 12 56<br>12 56 | 1344<br>$78.12 |
| 16222 MONTEREY LN #274<br>HUNTINGTON BEACH | 01/01/1968<br>VIKING<br>EDGEWOOD | $15,700.00<br>**$187,000.00**<br>03/30/2021 | LBN5869<br>EAGLE COMMUNITY CREDIT UNION<br>BLUE CARPET MANUFACTURED HOMES | 12 57<br>12 57 | 1368<br>$136.70 |
| 16222 MONTEREY LN #254<br>HUNTINGTON BEACH | 01/01/1968<br>CORNELL<br>CORNELL | $14,100.00<br>**$109,000.00**<br>03/17/2021 | LBO5799<br>5 STAR HOMES | 12 57<br>12 57 | 1368<br>$79.66 |
| 16222 MONTEREY LN #325<br>HUNTINGTON BEACH | 08/01/2008<br>SKYLINE HOMES INC<br>PALMSPRINGS | $199,600.00<br>**$270,000.00**<br>03/12/2021 | LBJ9095<br>5 STAR HOMES | 13.3333 60<br>13.3333 56 | 1573.33<br>$171.61 |
| 16222 MONTEREY LN #192<br>HUNTINGTON BEACH | 06/03/2003<br>DELAWARE WESTERN HOMES CORP<br>SILVERCREST | $205,000.00<br>**$205,000.00**<br>03/01/2021 | LBF4183 | 13.5 56<br>12.8333 56 | 1474.67<br>$139.01 |
| 16222 MONTEREY LN #265<br>HUNTINGTON BEACH | 11/10/2020<br>CHAMPION HOME BUILDERS INC<br>SKYLINE | $306,641.00<br>**$306,641.00**<br>01/08/2021 | LBO4991<br>J/R MOBILEHOME SALES | 13.3333 60<br>13.3333 60 | 1600<br>$191.65 |
| 16222 MONTEREY LN #109<br>HUNTINGTON BEACH | 03/27/2020<br>CMH MANUFACTURING WEST INC<br>CLAYTON | $212,000.00<br>**$212,000.00**<br>12/15/2020 | LBO4868<br>MACY HOMES INC | 11.6667 56<br>11.6667 56 | 1306.67<br>$162.24 |

| Property | Date / Manufacturer / Community | Values / Sale Date | Account / Lender | Rates | Amounts |
|---|---|---|---|---|---|
| 16222 MONTEREY LN #213<br>HUNTINGTON BEACH | 04/13/2004<br>SKYLINE HOMES INC<br>OAKMANOR | $272,490.00<br>$262,590.00<br>11/24/2020 | | 11.8333 52<br>11.8333 56<br>11.8333 56 | 1940.67<br>$135.26 |
| 16222 MONTEREY LN #119<br>HUNTINGTON BEACH | SKYLINE<br>SKYLINE | $17,899.00<br>$135,000.00<br>10/30/2020 | LAZ5405 | 12 56<br>12 56 | 1344<br>$100.45 |
| 16222 MONTEREY LN #343<br>HUNTINGTON BEACH | 01/21/2013<br>CMH MANUFACTURING WEST INC<br>GOLDEN WEST | $133,709.00<br>$205,000.00<br>10/29/2020 | LBL4819<br>5 STAR HOMES | 13.5 58<br>13.5 58 | 1566<br>$130.91 |
| 16222 MONTEREY LN #57<br>HUNTINGTON BEACH | 08/02/2011<br>CMH MANUFACTURING WEST INC<br>GOLDEN WEST | $105,500.00<br>$190,000.00<br>10/27/2020 | LBK9621<br>5 STAR HOMES | 11.8333 56<br>11.8333 56 | 1325.33<br>$143.36 |
| 16222 MONTEREY LN #157<br>HUNTINGTON BEACH | 09/27/2004<br>CHAMPION HOME BUILDERS COMPANY<br>WELLINGTON MANOR | $0.00<br>$137,000.00<br>10/02/2020 | LBH5292<br>J/R MOBILEHOME SALES | 11.6667 56<br>11.6667 56 | 1306.67<br>$104.85 |
| 16222 MONTEREY LN #296<br>HUNTINGTON BEACH | 01/29/2015<br>SKYLINE HOMES INC<br>SUNSET RIDGE | $206,587.00<br>$271,000.00<br>09/24/2020 | LBM2824<br>5 STAR HOMES | 13.3333 62.6667<br>13.3333 60 | 1635.56<br>$165.69 |
| 16222 MONTEREY LN #231<br>HUNTINGTON BEACH | 07/13/2004<br>DELAWARE WESTERN HOMES CORP<br>SILVERCREST | $269,000.00<br>$199,900.00<br>09/17/2020 | LBI2401 | 13.5 56<br>12.8333 56 | 1474.67<br>$135.56 |
| 16222 MONTEREY LANE #269<br>HUNTINGTON BEACH | 06/08/2000<br>SKYLINE HOMES INC<br>OAKMANOR | $98,681.00<br>$240,000.00<br>09/11/2020 | LBB5766<br>5 STAR HOMES | 11.8333 52<br>11.8333 56<br>11.8333 62 | 2011.67<br>$119.30 |
| 16222 MONTEREY LN #108<br>HUNTINGTON BEACH | 06/26/2007<br>PALM HARBOR HOMES INC<br>PALM HARBOR | $275,000.00<br>$265,000.00<br>08/12/2020 | LBJ3986<br>EAGLE COMMUNITY CREDIT UNION<br>5 STAR HOMES | 13.3333 56<br>13.3333 59 | 1533.33<br>$172.83 |
| 16222 MONTEREY LN #260<br>HUNTINGTON BEACH | 05/17/2006<br>CMH MANUFACTURING WEST INC<br>GOLDEN WEST | $298,000.00<br>$200,000.00<br>08/12/2020 | LBJ1431<br>5 STAR HOMES | 11.8333 54<br>9.83333 53.3333<br>11.8333 46 | 1707.78<br>$117.11 |
| 16222 MONTEREY LN #311<br>HUNTINGTON BEACH | 11/18/2013<br>SKYLINE HOMES INC<br>SUNSET RIDGE | $157,911.00<br>$278,000.00<br>07/08/2020 | LBL8007<br>5 STAR HOMES | 13.3333 56<br>13.3333 58.6667 | 1528.89<br>$181.83 |
| 16222 MONTEREY LN SP 133<br>HUNTINGTON BEACH | 01/01/1973<br>SILVERCREST<br>SILVERCREST | $22,100.00<br>$107,000.00<br>06/23/2020 | LBO3342<br>5 STAR HOMES | 12 64<br>12 64 | 1536<br>$69.66 |
| 16222 MONTEREY LANE #82<br>HUNTINGTON BEACH | 12/14/1998<br>SKYLINE HOMES INC<br>GLENHAVEN | $92,000.00<br>$245,000.00<br>05/15/2020 | LAZ2767 | 11.8333 52<br>11.8333 52<br>11.8333 48 | 1798.67<br>$136.21 |
| 16222 MONTEREY LN #14<br>HUNTINGTON BEACH | 07/26/2011<br>CMH MANUFACTURING WEST INC<br>GOLDEN WEST | $109,647.00<br>$204,500.00<br>05/06/2020 | LBK9624 | 11.8333 56<br>11.8333 56 | 1325.33<br>$154.30 |
| 16222 MONTEREY LN #53<br>HUNTINGTON BEACH | 07/10/2019<br>CHAMPION HOME BUILDERS INC<br>SUNSET RIDGE | $230,000.00<br>$230,000.00<br>05/04/2020 | LBO3276<br>T K M HOME SALES INC. | 10 58<br>11.8333 54 | 1199<br>$191.83 |

|  | Original | Resale |
|---|---|---|
| Total | $5,738,487.00 | $8,288,541.00 |
| Average | $147,140.69 | $212,526.69 |
| Max | $365,000.00 | $330,000.00 |
| Min | $0.00 | $48,000.00 |
| Avg $SqFt | $93.81 | $141.27 |
| Avg SqFt | 1491 | 1491 |
| Number of records | 39 | |

Park Name : **SKANDIA MOBILE CC**

Park Address : 16444 BOLSA CHICA
HUNTINGTON BEACH, CA
92649

Spaces : 167

From : 3/14/2020 to 3/14/2022

Report date : 3/14/2022

| Address<br>City | Mfd Date<br>MFG<br>Trade | Original<br>Current<br>Sales Date | Decal<br>Legal<br>Dealer | Wd Lt | Total sq Ft<br>Per Sq Ft |
|---|---|---|---|---|---|
| 16444 BOLSA CHICA #12<br>HUNTINGTON BEACH | 06/21/2021<br>CHAMPION HOME BUILDERS INC-COR<br>SILVERCREST | $287,850.00<br>**$287,850.00**<br>09/24/2021 | LBO7177<br><br>BLUE CARPET MANUFACTURED HOMES | 11.8333 57.3333<br>11.8333 57.3333 | 1356.89<br>$212.14 |
| 16444 BOLSA CHICA ST #14<br>HUNTINGTON BEACH | 07/29/2011<br>SKYLINE HOMES INC<br>PALMSPRINGS | $182,015.00<br>**$268,556.00**<br>08/20/2021 | LBK9472 | 13.3333 60<br>13.3333 60 | 1600<br>$167.85 |
| 16444 BOLSA CHICA RD #140<br>HUNTINGTON BEACH | 10/29/2004<br>SKYLINE HOMES INC<br>OAKMANOR | $197,108.00<br>**$185,000.00**<br>08/03/2021 | LBG6541 | 13.3333 56<br>13.3333 56 | 1493.33<br>$123.88 |
| 16444 BOLSA CHICA RD #8<br>HUNTINGTON BEACH | 10/21/2003<br>SKYLINE HOMES INC<br>OAKMANOR | $160,875.00<br>**$274,500.00**<br>07/06/2021 | LBF5590 | 13.3333 56<br>13.3333 56 | 1493.33<br>$183.82 |
| 16444 BOLSA CHICA #81<br>HUNTINGTON BEACH | 11/30/2004<br>DELAWARE WESTERN HOMES CORP<br>SILVERCREST | $228,396.00<br>**$189,900.00**<br>03/12/2021 | LBG7635<br><br>J/R MOBILEHOME SALES | 12 60<br>12 60 | 1440<br>$131.88 |
| 16444 BOLSA CHICA ST SP 141<br>HUNTINGTON BEACH | 04/01/2005<br>DELAWARE WESTERN HOMES CORP<br>SILVERCREST | $235,000.00<br>**$189,000.00**<br>12/22/2020 | LBH3077<br>EAGLE COMMUNITY CREDIT UNION | 13.5 55<br>12.8333 55 | 1448.33<br>$130.49 |
| 16444 BOLSA CHICA ST #125<br>HUNTINGTON BEACH | 01/23/2013<br>CMH MANUFACTURING WEST INC<br>GOLDEN WEST | $136,000.00<br>**$220,000.00**<br>11/18/2020 | LBL5145 | 13.5 58<br>13.5 58 | 1566<br>$140.49 |
| 16444 BOLSA CHICA #34<br>HUNTINGTON BEACH | 02/13/2002<br>SKYLINE HOMES INC<br>OAKMANOR | $130,705.00<br>**$289,500.00**<br>10/14/2020 | LBD6797<br><br>5 STAR HOMES | 13.3333 58.6667<br>13.3333 58.6667 | 1564.44<br>$185.05 |
| 16444 BOLSA CHICA ST #57<br>HUNTINGTON BEACH | 08/29/2007<br>SKYLINE HOMES INC<br>OAKMANOR | $210,000.00<br>**$195,000.00**<br>10/08/2020 | LBJ5268<br><br>5 STAR HOMES | 11.8333 56<br>11.8333 45.6667 | 1203.06<br>$162.09 |
| 16444 BOLSA CHICA RD #7<br>HUNTINGTON BEACH | 01/28/2004<br>SKYLINE HOMES INC<br>OAKMANOR | $159,900.00<br>**$215,000.00**<br>09/28/2020 | LBF7355 | 13.3333 56<br>13.3333 56 | 1493.33<br>$143.97 |
| 16444 BOLSA CHICA RD #149<br>HUNTINGTON BEACH | 07/17/2020<br>CHAMPION HOME BUILDERS INC<br>SUNSET RIDGE | $239,000.00<br>**$239,000.00**<br>09/16/2020 | LBO5092<br><br>J/R MOBILEHOME SALES | 13.3333 56<br>13.3333 54 | 1466.67<br>$162.95 |

| | | | | | |
|---|---|---|---|---|---|
| 16444 BOLSA CHICA ST #126 | 07/21/2020 | $268,353.00 | LBO3916 | 13.3333 58 | 1520 |
| HUNTINGTON BEACH | CHAMPION HOME BUILDERS INC | **$268,353.00** | | 13.3333 56 | $176.55 |
| | SILVERCREST | 08/07/2020 | BLUE CARPET MANUFACTURED HOMES | | |
| 16444 BOLSA CHICA #98 | 02/07/2020 | $289,000.00 | LBO3158 | 13.3333 56 | 1466.67 |
| HUNTINGTON BEACH | CHAMPION HOME BUILDERS INC | **$289,000.00** | | 13.3333 54 | $197.05 |
| | SUNSET RIDGE | 06/17/2020 | J/R MOBILEHOME SALES | | |
| 16444 BOLSA CHICA #122 | 08/14/2015 | $191,600.00 | LBM5043 | 13.5 58 | 1566 |
| HUNTINGTON BEACH | CMH MANUFACTURING WEST INC | **$254,500.00** | | 13.5 58 | $162.52 |
| | GOLDEN WEST | 04/03/2020 | BLUE CARPET MANUFACTURED HOMES | | |

| | Original | Resale |
|---|---|---|
| Total | $2,915,802.00 | $3,365,158.00 |
| Average | $208,271.57 | $240,368.43 |
| Max | $289,000.00 | $289,500.00 |
| Min | $130,705.00 | $185,000.00 |
| Avg $SqFt | $142.67 | $162.91 |
| Avg SqFt | 1477 | 1477 |
| Number of records | 14 | |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 5801 SKYLAB ROAD HUNTINTON BEACH, CA 92647

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS NT of MOT RECONSIDERATION TO HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES'OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION JOINDER OF GABLES HOA AND JANINE JASSO.**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) JULY 26, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Aaron E DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Jeffrey I Golden (TR)**    lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend oza@ecf.courtdrive.com
- **Brandon J Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Eric P Israel**    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Mark A Mellor**    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) JULY 26, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

|  |  |
|---|---|
| **Janine Jasso, Esq.**<br>16025 Warmington Lane<br>Huntington Beach, CA 92649 | **Michael D Poole**<br>Feldsott & Lee<br>23161 Mill Creek Dr Ste 300<br>Laguna Hills, CA 92653 |

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) JULY 26, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Erithe A. Smith, USBC, 411 West Fourth Street, Santa Ana, CA 92701
- Janine B. Jasso, Esq.. j9_jasso@yahoo.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| JULY 26, 2022 | Robert McLelland | *Robert McLelland* |
|---|---|---|
| Date | Printed Name | Signature |