ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone:    (310) 277-0077
Facsimile:    (310) 277-5735

Attorneys for Jeffrey I. Golden,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br><br><br>          Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>**TRUSTEE'S NOTICE OF OPPOSITION, OPPOSITION AND REQUEST FOR HEARING TO DEBTOR'S NOTICE TO TRUSTEE TO ABANDON ESTATE'S INTEREST IN REINVESTED FUNDS FROM SALE OF UNIT 53, 10/31/2018 APN 937-630-53 TO PURCHASE LBM1081 ON NOVEMBER 1, 2018, AND AGAINST JAMIE LYNN GALLIAN RELATING TO THE PURCHASE IN THE PERSONAL PROPERTY COMMONLY KNOWN AS 16222 MONTEREY LN #376, HUNTINGTON BEACH, CALIFORNIA 92649; MEMORANDUM OF POINTS AND AUTHORITIES AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF**<br><br>[HEARING REQUESTED] |

PLEASE TAKE NOTICE that Jeffrey I. Golden, as the Chapter 7 Trustee for the

bankruptcy estate (the "Estate") of Jamie Lynn Gallian (the "Debtor), hereby submits this

opposition to the Debtor's Notice to Trustee to Abandon Estate's Interest in Reinvested Funds from

1

1    Sale of Unit 53, 10/31/2018 APN 937-630-53 to Purchase LBM1081 on November 1, 2018, and

2    Against Jamie Lynn Gallian Relating to the Purchase in the Personal Property Commonly Known

3    as 16222 Monterey Ln #376, Huntington Beach, California 92649 (*docket no. 203*) (the "Notice"),

4    and requests that the Debtor set a hearing on the Notice.

5            PLEASE TAKE FURTHER NOTICE that, pursuant to Local Bankruptcy Rule 9013-

6    1(o)(4), if a timely response and request for hearing is filed and served, within 14 days from the

7    date of service of the response and request for hearing, the moving party must schedule and give

8    not less than 14 days' notice of a hearing to all responding parties and the United States Trustee.  If

9    movant fails to timely serve notice of a hearing date, the Court may deny the motion without

10   prejudice without further notice or hearing.

11           PLEASE TAKE FURTHER NOTICE that any reply to this opposition must be in writing,

12   filed with the Clerk of the Bankruptcy Court and served upon counsel for the Trustee named in the

13   upper left-hand corner of this notice not less than seven calendar days before the hearing.

14

15   DATED:  September 8, 2022                DANNING, GILL, ISRAEL & KRASNOFF, LLP

16

17                                           By:        /s/ Aaron E. de Leest

18                                                 AARON E. DE LEEST
                                                 Attorneys for Jeffrey I. Golden, Chapter 7 Trustee
19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

The Debtor's Notice to Trustee to Abandon Estate's Interest in Reinvested Funds from Sale of Unit 53, 10/31/2018 APN 937-630-53 to Purchase LBM1081 on November 1, 2018, and Against Jamie Lynn Gallian Relating to the Purchase in the Personal Property Commonly Known as 16222 Monterey Ln #376, Huntington Beach, California 92649 (*docket no. 203*) (the "Notice"), seeks an order "to have" Jeffrey I. Golden, as the Chapter 7 Trustee for the Debtor's bankruptcy estate (the "Estate"):

> abandon the Estate's interest in debtor's personal residence she resides in and against Jamie Lynn Gallian ("Gallian") arising solely out of the purchase on November 1, 2018 with reinvested proceeds (the "Reinvested Proceeds") in the property commonly known as 16222 Monterey Lane Dr. Unit 376, Huntington Beach, California 92649 (the "Property") to Gallian, including any claims under the Uniform Voidable Transactions Act (California Civil Code §§ 3439 et seq.) and 11 U.S.C. § 544.

Notice, p. 1, lines 23-28.  No further description of the assets that the Debtor seeks to have abandoned is provided in the Notice.  Thus, it is unclear whether the Debtor is seeking abandonment of one asset – the Property – or three separate assets – the Property, the Reinvested Proceeds (which appears to be the equity in the Property), and unknown Uniform Voidable Transactions Act claims arising in relation to the Debtor's purchase of the Property (the "UVTA Claims") (collectively, the "Assets").  However, for the purposes of this opposition, the Trustee opposes abandonment of all three Assets as set forth herein.

### 1.    The Debtor Cannot File a Notice of Abandonment

The Debtor is not entitled to the relief requested in the Notice because Local Bankruptcy Rule 6007-1(a) does not permit the Debtor to file such a notice and use the notice provisions in Rule 6007-1.  Local Bankruptcy Rule 6007-1(a) provides that "only a trustee or debtor in possession who desires to abandon property of the estate may seek to do so by a notice of intent to abandon, without the necessity for filing a motion to abandon."  LBR 6007-1(a).  Therefore, because the Debtor is neither the Trustee in this chapter 7 case or a debtor in possession in a Chapter 11 case, the Debtor is not authorized to seek abandonment by way of the Notice, and the

1    requested relief must be denied.

2      Local Bankruptcy Rule 6007-1(b) requires that an order compelling the trustee or debtor in

3    possession to abandon estate property must be brought by motion.  LBR 6007-1(b).  The Notice is,

4    on its face, not a motion.  Therefore, the relief requested in the Notice must also be denied because

5    it was not brought by motion under Local Bankruptcy Rule 9013-1.

6

7      **2.**  <u>Objections if the Court Considers the Notice as a Motion</u>

8      To the extent that the Court treats the Notice as a motion to compel abandonment, the relief

9    requested still must be denied.[1]

10     Local Bankruptcy Rule 9013-1(a)(1) provides that the rules referenced in Fed. R. Bankr. P.

11   9013 relating to motion practice

12       applies to (A) all contested matters (FRBP 9014), including motions,
    whether filed in the bankruptcy case or an adversary proceeding,
13       objections, applications, orders to show cause, (B) all requests for an
    order of the court under FRBP 9013, such as applications that can be
14       presented without a hearing, and (C) all requests that may be directed
    to the Clerk, such as requests for the Clerk to enter a default.

15

16   LBR 9013-1(a)(1).

17     Local Bankruptcy Rule 9013-1(c)(3) further requires that evidence and declarations must be

18   served and filed <u>with</u> the moving papers as follows:

19       There must be served and filed with the motion and as a part thereof:

20       (A) Duly authenticated copies of all photographs and documentary
    evidence that  the moving party intends to submit in support of the
21       motion, in addition to the declarations required or permitted by FRBP
    9006(d); and

22       (B) A written statement of all reasons in support thereof, together
23       with a memorandum of the points and authorities upon which the
    moving party will rely.

24   LBR 9013-1(c)(3).

25   _____

26   [1] The Debtor also does not appear to have paid pay the required fee associated with filing a motion
to compel abandonment.  See https://www.cacb.uscourts.gov/filing-fees and 28 U.S.C. § 1930.
27   The Court should not condone the Debtor's failure to pay the required fee.

28

1    Here, because the Notice seeks the Debtor's affirmative relief of abandonment and is

2    required to be brought by motion, the rules in Local Bankruptcy Rule 9013-1 apply.  However, the

3    Debtor filed the Notice <u>without</u> filing or submitting <u>any evidence</u>, which is required to be filed with

4    and supported by evidence.  Accordingly, the relief requested must be denied on this ground alone.

5    In addition, due to the lack of evidence, the Debtor cannot meet her burden for

6    abandonment under 11 U.S.C. § 554(b).  As the Court is well aware, § 554(b) only permits a court

7    to order a trustee to abandon property of the estate where the property is "burdensome to the estate

8    or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).  An order to

9    compel abandonment is "the exception, not the rule" and it is the burden of the party seeking to

10   compel abandonment (i.e., the Debtor) to prove that the asset has no value.  *In re Gill*, 574 B.R.

11   709, 714 (B.A.P. 9th Cir. 2017) ("The moving party has the burden of establishing that the property

12   at issue is burdensome or of inconsequential value and benefit to the estate").  The Debtor, <u>without</u>

13   <u>any evidence,</u> cannot meet her burden.  The Debtor has not offered any evidence in support of her

14   request – let alone any evidence that the assets are burdensome or of inconsequential to the Estate.

15   Therefore, because the Debtor cannot meet her burden and has failed to do so, the relief requested

16   in the Notice must be denied.

17   To the extent that the Court looks past the Debtor's failure to meet her burden,

18   abandonment is still inappropriate at this time because there is value in the Property (or the equity

19   in the Property in the form of the Reinvested Proceeds) for the Estate.  The Property has a current

20   value at or near $300,000, the Debtor's claim of exemption in the Property was disallowed, and the

21   Trustee has now sought to employ a broker to sell it.  *See* docket no. 162, Trustee's Application to

22   Employ Coldwell Banker and Declaration of Greg Bingham,¶ 2, a true and correct copy of which is

23   attached as Exhibit "1" hereto and incorporated herein by this reference, and docket no. 177.

24   Rather than the Property and Reinvested Proceeds being burdensome or of inconsequential value to

25   the Estate, the opposite is true – there is value and benefit to the Estate.  In light of these facts, there

26   is simply no justification for the requested abandonment.

27   Additionally, abandonment of the UVTA Claims is also inappropriate because the Notice

28   does not describe such "claims", and the UVTA Claims are not listed and described on the

Debtor's schedules or amended schedules.  Accordingly, there can be no abandonment.  *See PM Factors, Inc. v. Kreisel (In re Kreisel)*, 399 B.R. 679, 687 (Bankr. C.D. Cal. 2008).  Creditors must receive notice of what is being abandoned before there can be any abandonment.  *Id.* at 688.  Here, without any description of the UVTA Claims, creditors (and the Trustee for that matter) are not on notice and can only guess at what the Debtor wants abandoned.  If the Debtor believes any such claims exist, the proper course is for the Debtor to amend her schedules to include and describe such claims and provide information to the Trustee so that he can evaluate them and decide if abandonment is appropriate or not.

### 3.     Conclusion

The Debtor has failed to properly seek abandonment of the Assets by way of the Notice or, if the Notice were considered a motion, engage with the substantive requirements of abandonment. The Debtor has provided no evidence that the Assets that she seeks to have abandoned are burdensome or of inconsequential value and, with respect to the UVTA Claims, has not established that any such claims even exist.  Therefore, the Court must deny the relief requested in its entirety. The Trustee prays for all other appropriate relief under the circumstances.

DATED:  September 8, 2022                 DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                          By:  _____/s/ Aaron E. de Leest_____
                                               AARON E. DE LEEST
                                               Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

## **REQUEST FOR JUDICIAL NOTICE**

Jeffrey I. Golden, as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor), requests that the Court take judicial notice of the following facts.

1.    The Debtor's schedules and amended schedules do not list or describe any asset or claims under the Uniform Voidable Transactions Act arising out of the Debtor's purchase of the property commonly known as 16222 Monterey Lane Dr. Unit 376, Huntington Beach, California 92649. *See* docket no. 1 (Debtor's schedule A/B) and docket nos. 15, 16, 22, 37, 38, 39 and 72 (Debtor's amended schedule A/B).

2.    On or about July 28, 2022, the Trustee filed his Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. 327 and 328; Memorandum of Points and Authorities; and Declarations of William Friedman and Greg Bingham in Support (*docket no. 162*), a true and correct copy of which is attached as Exhibit "1" hereto and incorporated herein by this reference.

3.    On or about August 5, 2022, the Court entered its Order Granting Houser Bros. Co. dba Rancho Del Rey Mobile Home Estate's Motion Objecting to Debtor's Claimed Homestead Exemption in 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, docket No. 95 (*docket no. 177*), disallowing any claim of exemption by the Debtor in such property.

DATED:  September 8, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:    _____/s/ Aaron E. de Leest_____
       AARON E. DE LEEST
       Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

**EXHIBIT "1"**

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000    Fax (714) 966-1002

1  Jeffrey I. Golden, State Bar No. 133040
   jgolden@wgllp.com
2  P.O. Box 2470
   Costa Mesa, California 92628-2470
3  Telephone: (714) 966-1000
   Facsimile:  (714) 966-1002
4
   Chapter 7 Trustee
5

6

7

8                     **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

10  In re                                  Case No. 8:21-bk-11710-ES

11  JAMIE LYNN GALLIAN,                    Chapter 7

12                          Debtor.        **APPLICATION OF THE CHAPTER 7
                                           TRUSTEE TO EMPLOY REAL ESTATE**
13                                         **BROKER COLDWELL BANKER REALTY
                                           AND AGENTS WILLIAM FRIEDMAN AND**
14                                         **GREG BINGHAM PURSUANT TO
                                           11 U.S.C. §§ 327 AND 328;**
15                                         **MEMORANDUM OF POINTS AND
                                           AUTHORITIES; AND DECLARATIONS OF**
16                                         **WILLIAM FRIEDMAN AND GREG
                                           BINGHAM IN SUPPORT**
17
                                           **[16222 Monterey Lane, Space #376,**
18                                         **Huntington Beach, CA 92649]**

19                                         <u>**Hearing information:**</u>
                                           **DATE:       August 18, 2022**
20                                         **TIME:        10:30 a.m.**
                                           **CTRM:       5A, Via ZoomGov**
21

22

23

24

25

26

27

28

   1373973.1                              1                    EMPLOYMENT APPLICATION

                                                                000009

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000 · Fax (714) 966-1002

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTOR AND DEBTOR'S COUNSEL; AND PARTIES IN INTEREST:**

Jeffrey I. Golden, the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Jamie Lynn Gallian ("Debtor"), files this *Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  In support of the Application, the Trustee submits the following memorandum of points and authorities and the attached declarations of William Friedman ("Friedman Declaration") and Greg Bingham ("Bingham Declaration").

## I.    STATEMENT OF FACTS

On July 9, 2021 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code, including her bankruptcy schedules ("Schedules"). Jeffrey I. Golden was appointed the Chapter 7 trustee.  Since filing her original Schedules, the Debtor has filed at least nine sets of amended schedules.

On the Petition Date, the registered title owner of the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 ("Property"), which is Debtor's residence, was J-Sandcastle Co, LLC.  According to the Debtor's Schedules, she was the 100% owner of J-Sandcastle Co, LLC.

The Debtor claimed a homestead exemption in the Property in the amount of $600,000.  On May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates, filed its Motion Objecting to Debtor's Claimed Homestead Exemption (Dkt. 95, "Motion").  The hearing on the Motion was held on June 2, 2022 and continued to July 21, 2022.  At the continued hearing, the Court granted the Motion and disallowed any claim of exemption by the Debtor in the Property.

The Trustee intends to administer the equity in the Property upon further court order to pay claims of creditors and expenses of administration.

## II.    PROPOSED EMPLOYMENT OF BROKER AND AGENTS

The Trustee has solicited the assistance of Coldwell Banker Realty, a licensed California real estate broker ("Broker"), and William Friedman and Greg Bingham (together, "Agents"), agents of the Broker, in determining the value of the Property.  Mr. Bingham has advised the Trustee that the fair market value of the Property is at or near $300,000.  *See* Bingham Declaration.

To facilitate the sale of the Property, the Trustee seeks to employ an experienced and reputable real estate broker and proposes to employ the Broker and the Agents pursuant to 11 U.S.C. §§ 327(a) and 328.  The Broker has agreed to advertise the Property, to market and show the Property, to represent the Estate in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the best offer for the sale of the Property.

The terms of employment agreed to by the Trustee, subject to approval of the Court, as set forth in the residential listing agreement, manufactured home listing addendum, and addendum to exclusive authorization and right to sale (together, "Listing Agreement") attached as **Exhibit 1**, are as follows:

1.    The Broker will have an exclusive listing on the Property, and the listing price will be $300,000.  The Listing Agreement, including the listing price, may be modified by the Trustee in his discretion.  The listing and sale of the Property is subject to Bankruptcy Court approval, and any sale of the Property will be "as is," without any representations, guarantees or warranties of any kind, whether expressed or implied, by the Trustee.  Upon the presentation of an acceptable purchase offer for the Property, the Trustee will file a motion seeking court authority to sell the Property and pay the total broker's commission of six percent (6%) from the sale proceeds through escrow.  A commission shall be paid only if the Property is sold by the Trustee.  The Trustee's motion will contain an overbid procedure.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000 · Fax (714) 966-1002

2.      The Agents are informed and understand that no sale may be consummated until after notice and a hearing.  Further, the Agents are aware of the provisions of 11 U.S.C. § 328(a) and understand and accept that, notwithstanding the terms and conditions of employment and compensation provided in the Listing Agreement, the Court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

The Agents are well qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Property.  Their profiles are attached as **Exhibit 2**.

### III.    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to 11 U.S.C. § 327(a), a trustee may employ attorneys and other professional persons who do not hold or represent an interest adverse to the estate, and who are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties.

The Trustee has previously employed the Broker and the Agents in cases that are unrelated to the Debtor's case.  David M. Goodrich, a partner in the Trustee's firm, has employed the Broker and William Friedman in other cases not involving the Debtor.  In addition, Danning, Gill, Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have worked with the Broker and Agents in other cases not involving the Debtor.

Except as provided above, to the best of the Trustee's knowledge, and based upon the attached Friedman and Bingham Declarations, the Broker and the Agents:

1.      have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, or any other party in interest, or their respective attorneys

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000  Fax (714) 966-1002

and accountants, or any person employed in the Office of the United States

Trustee;

    2.    are not creditors, equity security holders or insiders of the Debtor;

    3.    are not and were not, within two years before the date of the filing of

the petitions, directors, officers, or employees of the Debtor;

    4.    do not represent an individual or entity with an interest adverse to the

Estate;

    5.    are not related to the United States Trustee or to the Bankruptcy

Judge assigned to this case;

    6.    are disinterested within the meaning of 11 U.S.C. §§ 327(a) and

101(14);

    7.    do not have any fee sharing arrangement, understanding or

compensation sharing arrangement with any other entity, except for the customary

division of the commission from the sale of a property between the listing broker

and the selling broker, as provided for in the Listing Agreement; and

    8.    will not receive a retainer in this case.

## IV.    **CONCLUSION**

The Trustee believes the employment of the Broker and the Agents on the terms

and conditions provided herein is in the best interest of the Trustee and the Estate.

//

//

//

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000 · Fax (714) 966-1002

1373973.1

EMPLOYMENT APPLICATION

000013

**WHEREFORE,** the Trustee prays that the Application be approved and he be authorized to employ the Broker and the Agents, as an expense of the Estate, to market and sell the Property upon the terms and conditions set forth herein and in the Listing Agreement, and that he be authorized to execute the Listing Agreement attached hereto and any and all other ancillary documents necessary to list the Property for sale.

Respectfully submitted,

Dated:  July 28, 2022

*/s/ Jeffrey I. Golden*
JEFFREY I. GOLDEN
Chapter 7 Trustee

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000  Fax (714) 966-1002

1373973.1

6

EMPLOYMENT APPLICATION

000014

# DECLARATION OF WILLIAM FRIEDMAN

I, William Friedman, declare:

1.      I am a real estate agent licensed in the State of California.  I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto.  I am an agent of Coldwell Banker, located at 1608 Montana Avenue, Santa Monica, California 90403.  I am submitting this Declaration in support of the *Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  Any capitalized terms not expressly defined herein shall have the meanings provided in the Application.

2.      The Broker and I are qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Property.  A true and correct copy of the Listing Agreement is attached as **Exhibit 1**.  A true and correct copy of my profile is attached as **Exhibit 2**.

3.      On behalf of the Broker, I have agreed to accept employment on the terms and conditions set forth in the Application.

4.      The Broker and I have been employed by the Trustee in other unrelated matters.  The Broker and I also have been employed by David M. Goodrich, a partner in the Trustee's firm, in other cases not involving the Debtor.  In addition, Danning, Gill, Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have worked with the Broker and me in other cases not involving the Debtor.

5.      To the best of my knowledge, except as provided above, the Broker and I:

a.      have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000 · Fax (714) 966-1002

b.      are not creditors, equity security holders or insiders of the Debtor;

c.      are not and were not, within two (2) years before the date of the filing of the petition herein, directors, officers or employees of the Debtor;

d.      do not represent an individual or entity which holds an interest adverse to the Estate;

e.      are not related to the United States Trustee or to the Bankruptcy Judge assigned to this case;

f.      are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

g.      have no fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling broker, as provided for in the Listing Agreement; and

h.      will not receive a retainer in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __28__ day of July, 2022, at Los Angeles, California.

_____
William Friedman

# **DECLARATION OF GREG BINGHAM**

I, Greg Bingham, declare:

1.      I am a real estate agent licensed in the State of California.  I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto.  I am an agent of Coldwell Banker, located at 840 Newport Center Drive, Suite 100, Newport Beach, California 92660.  I am submitting this Declaration in support of the *Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  Any capitalized terms not expressly defined herein shall have the meanings provided in the Application.

2.      I have advised the Trustee that the current market value of the Property is at or near $300,000.

3.      The Broker and I are qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Property.  A true and correct copy of the Listing Agreement is attached as **Exhibit 1**.  A true and correct copy of my profile is attached as **Exhibit 2**.

4.      On behalf of the Broker, I have agreed to accept employment on the terms and conditions set forth in the Application.

5.      The Broker and I are employed by the Trustee in other unrelated matters.  In addition, Danning, Gill, Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have worked with the Broker and me in other cases not involving the Debtor.

6.      To the best of my knowledge, except as provided above, the Broker and I:

a.      have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, any other party or parties in interest, their respective

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000  Fax (714) 966-1002

000017

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000  Fax (714) 966-1002

1  attorneys and accountants, or any person employed in the Office of the United

2  States Trustee;

3       b.    are not creditors, equity security holders or insiders of the Debtor;

4       c.    are not and were not, within two (2) years before the date of the filing

5  of the petition herein, directors, officers or employees of the Debtor;

6       d.    do not represent an individual or entity which holds an interest

7  adverse to the Estate;

8       e.    are not related to the United States Trustee or to the Bankruptcy

9  Judge assigned to this case;

10       f.    are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

11       g.    have no fee sharing arrangement, understanding or compensation

12  sharing arrangement with any other entity, except for the customary division of the

13  commission from the sale of a property between the listing broker and the selling

14  broker, as provided for in the Listing Agreement; and

15       h.    will not receive a retainer in this case.

16  I declare under penalty of perjury that the foregoing is true and correct.

17  Executed on this _28___ day of July, 2022, at Newport Beach, California.



                               Greg Bingham

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

000019



RESIDENTIAL BROKERAGE

## William Friedman

2444 WILSHIRE BLVD. #102
SANTA MONICA, CA 90403
BUS. (310) 829-3939
FAX (310) 829-7010

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

Trustees:
Peter Mastan
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Peter Mastan
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

Lenders:
Countrywide Home Loans
Federal Home Loan Mortgage Corp
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank
Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

Receivers:
Adrian Stern
Samuel R. Biggs
David L. Ray

Operated by a subsidiary of NRT LLC.

EXHIBIT 1    PAGE 11

000020



### Greg Bingham
### Coldwell Banker Realty

Since 2001, Greg Bingham has worked as a real estate agent in the Los Angeles and Orange County areas. In 2003, upon selling his interest in his Sports Management Agency, he joined Coldwell Banker Residential Brokerage. In 2006, Greg took over management of the 84 agent, award winning office. In 2008, with the acquisition of his office, he joined his profitable practice with the expanding Coldwell Banker Previews International Orange County and Los Angeles companies with 54 offices in Southern California and returned to working directly with his clients. In 2015, he became manager and partner of The Smith Group at Coldwell Banker Residential Brokerage, currently the number one sales team in Southern California.

Awards and Recognition

President's Elite – Top ¼ of 1% of Agents in the United States (2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021)
President's Circle – Top 1% of Agents in the United States (2011, 2012, 2013)

Annually since 2006, he has personally sold over $50,000,000 in real estate on behalf of his clients. Clients include a private client group of athletes and entertainers, institutional clients Chase Bank, EMC, Saxon and a legal clientele of bankruptcy trustees and attorneys. He has worked on behalf of more than 20 Bankruptcy Court Trustees in the sale of real estate in Orange and Los Angeles Counties.

Training and Certification

Greg has completed the required course work and practical experience for Certified Distressed Property Specialist, Certified Negotiator and Short Sales and Foreclosure Resource.

Bingham has many years of experience in marketing and promotion. As the CEO of Special Olympics, he has devoted innumerable hours to youth sports and children and adults with disabilities. He has served on local, statewide, national and international boards for sports and education.

EXHIBIT 1    PAGE 12                    000021



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/22)

Date Prepared: _07/25/2022_

1. **EXCLUSIVE RIGHT TO SELL:** _____ _Jeffrey Golden, Ch 7 Trustee_ ("Seller")
   hereby employs and grants _Coldwell Banker Residential_ ("Broker")
   beginning (date) _July 25, 2022_ and ending at 11:59 P.M. on (date) _January 31, 2023_ ("Listing Period")
   the exclusive and irrevocable right to sell or transfer the real property described as _16222 Monterey Lane, Spc 376_
   _____, situated in _Huntington Beach_ (City),
   _Orange_ (County), California, _92649_ (Zip Code), Assessor's Parcel No. _____ ("Property").
   ☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional
   terms.
   ☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing
   Addendum and Advisory (C.A.R. Form PLA) for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Three Hundred Thousand_
   _____ Dollars ($ _300,000.00_____ ).
   B. Listing Terms: _Manufactured and Mobile Home Listing Addendum included; Subject to Bankruptcy Court Approval:_
   _Addendum attached._

3. **COMPENSATION TO BROKER:** _____:
   Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker
   individually and may be negotiable between Seller and Broker (real estate commissions include all
   compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ _6,000_ percent
   of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____
   AND _____, as follows:
   ☐ (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready,
   willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the
   Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any
   escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this
   Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property
   to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property
   during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating
   broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller,
   however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period
   or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, or otherwise
   transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would
   have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement
   or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after
   first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____.
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s)
   ("MLS") by offering to MLS brokers out of Broker's compensation specified in paragraph 3A, either ☐ _____ percent
   of the purchase price, or ☐ $ _____.
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may
   submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property
   involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property,
   unless specified as follows: _____.
   (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the
   Property is transferred to any of the following individuals or entities: _____.
   (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker
   is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such
   transaction.

© 2022, California Association of REALTORS®, Inc.

**RLA REVISED 6/22 (PAGE 1 OF 5)**                              Seller's Initials _____ / _____

🏠 EQUAL HOUSING OPPORTUNITY

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Coldwell Banker Residential, 840 Newport Center Dr., Suite 100   Newport Beach CA 92660   Phone: 5623350145   Fax: 5624152614   Monterey Lane
Greg Bingham                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

EXHIBIT 1    PAGE 13                                                            000022

Property Address: _16222 Monterey Lane, Spc 376, Huntington Beach,   92649_ Date: _07/25/2022_

4. A. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
 **ADDITIONAL ITEMS EXCLUDED:** _____
 **ADDITIONAL ITEMS INCLUDED:** _____
 Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

B. **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
  ☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
  ☐ Other _____
  **(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
  ☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
  ☐ Other _____
  Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5. **MULTIPLE LISTING SERVICE:**
A. **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
B. **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
C. **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

6. **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
A. **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
B. **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
C. **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
D. **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

| Seller's Initials _____ / _____ | Broker's/Agent's Initials _____ / _____ |
|---|---|

7. **PUBLIC MARKETING OF PROPERTY:**
A. **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see **paragraph 7F**) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
B. **PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i) Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
C. **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.
D. **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
  (1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).

RLA REVISED 6/22 (PAGE 2 OF 5)          Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Monterey Lane

EXHIBIT 1    PAGE 14

000023

Property Address: _16222 Monterey Lane, Spc 376, Huntington Beach,  92649_

OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

**E.  Whether paragraph 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

**F.**  ☐  **CLEAR COOPERATION POLICY DOES NOT APPLY: Paragraphs 7A** (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**8.  MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**A.  PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**B.  FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.
☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**9.  ~~SELLER REPRESENTATIONS:~~** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**10.  BROKER'S AND SELLER'S DUTIES:**

**A.  Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 10E as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.  Presentation of Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

**C.  Buyer Supplemental Offer Letters (Buyer Letters):**

(1) **Paragraph 8** of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.

(2) (A) **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR (B) ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D.**  Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F,** referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E.  Investigations and Reports:** Seller agrees, within 5 (or _____ ) Days of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F.**  ~~Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.~~

**11.  DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

RLA REVISED 6/22 (PAGE 3 OF 5)                                                     Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Monterey Lane

EXHIBIT 1    PAGE 15

000024

Property Address: _16222 Monterey Lane, Spc 376, Huntington Beach,   92649_

**12. AGENCY RELATIONSHIPS:**

   **A. DISCLOSURE:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   **B. SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F.**
   **C. POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   **D. CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.
   **E. POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
   **F. TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**14. PHOTOGRAPHS AND INTERNET ADVERTISING:**

   **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.
   **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take Images who do not have access to or have not read any limiting instruction in the MLS or who take Images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**15. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

   **A.** Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.
   **B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs, except as otherwise specified in **paragraph 22A.**

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TA)
   Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**22. DISPUTE RESOLUTION:**

RLA REVISED 6/22 (PAGE 4 OF 5)                                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       Monterey Lane



EXHIBIT 1     PAGE 16

000025

Property Address: *16222 Monterey Lane, Spc 376, Huntington Beach,   92649*

**A.  MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 18.** (4) Exclusions from this mediation agreement are specified in **paragraph 22B.**

**B.  ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

**C.  ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an **Arbitration Agreement (C.A.R. Form ARB).**

**23.  ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**24.  OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

**25.  LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within 3 Days after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)

(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 25** for additional terms.
(3) The name(s) of the Legally Authorized Signer(s) is: _____, _____.
(4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**SELLER SIGNATURE(S):**

(Signature) By, _____   Date: _____
Printed name of SELLER: *Jeffrey Golden, Ch 7 Trustee*
☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable. _____

(Signature) By, _____   Date: _____
Printed name of SELLER: _____
☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____
☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Coldwell Banker Residential*        DRE Lic. # *00616212*
Address *840 Newport Center Dr., Suite 100*   City *Newport Beach*   State *CA*   Zip *92660*
By _____ Tel.*(562)335-0145*  E-mail *greg.bingham@camoves.com*  DRE Lic.#*01309137*  Date *7/25/22*
   *Greg Bingham*
By *BMM Fwey*  Tel.*213 200-2 500*  E-mail *Dill FRIEd @ EARTHLINK.NET*  DRE Lic.#*00672-015*Date *7/25/22*

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2022 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



RLA REVISED 6/22 (PAGE 5 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com      Monterey Lane

EXHIBIT 1    PAGE 17                                                000026



CALIFORNIA
ASSOCIATION
OF REALTORS®

# MANUFACTURED HOME LISTING
## ADDENDUM
(C.A.R. Form MHLA, Revised 6/22)

The following terms and conditions are hereby incorporated in and made a part of the: Residential Listing Agreement, ☐ Other
_____ ("Agreement"),
dated _____ July 25, 2022 _____, on property known as 16222 Monterey Lane, Spc 376, Huntington Beach, 92649 _____

in which _____ Jeffrey Golden, Ch 7 Trustee _____ is referred to as ("Seller")
and _____ Coldwell Banker Realty _____ is referred to as ("Broker").

1. **TYPE OF MANUFACTURED HOME:** (Check the applicable box below: **paragraphs A1, A2 or B.**) (Check ONLY one box.)
   A. **PERSONAL PROPERTY MANUFACTURED HOME**
   (1) ☐ A Manufactured Home On Leased Or Rented Land (complete **paragraph 2**).
   Space Number _____ 376 _____ Park Name _____ Rancho Del Rey
   Park Address _____ 16222 Monterey Lane
   City _____ Huntington Beach _____ County _____ Orange _____ CA, Zip Code _____ 92649
   OR (2) ☐ A Manufactured Home To Be Sold With Real Property (complete **paragraph 2**).
   Real Property Situated in _____
   City _____ County _____ CA, Zip Code _____
   Assessor's Parcel No. _____
       **PURCHASE PRICE ALLOCATED AS FOLLOWS:**
           Manufactured Home $ _____
           Real Property $ _____

   OR B.  ☐ A REAL PROPERTY MANUFACTURED HOME situated in (also complete applicable parts of **paragraph 2**):
   City _____ County _____ CA, Zip Code _____
   Assessor's Parcel No. _____
   A real property manufactured home is one that meets the following requirements: **(i)** a building permit is obtained from local authorities pursuant to Health and Safety Code § 18551; **(ii)** the manufactured home is affixed to a foundation pursuant to Health and Safety Code § 18551; **(iii)** a certificate of occupancy is issued by local authorities; and **(iv)** there is recordation with the local authorities of a form pursuant to Health and Safety Code § 18551.

2. **ADDITIONAL DESCRIPTION:**
   Manufacturer's Name _____ Skyline Homes, Inc _____ Model _____ Custom Villa
   Date of manufacture _____ 05/29/2014 _____ Date of first sale _____ 07/28/2014
   Property is: ☐ On Local Property Tax Roll or ☒ Annual Registration and in Lieu of Tax, (sale/use tax may apply). Property shall be registered with the Department of Housing and Community Development ("HCD"), which must be notified upon sale, unless **(i)** Property has been converted to real property and title and registration surrendered to HCD or **(ii)** otherwise specified in writing.
   Approximate Width _____ 30'4" _____ Approximate Length _____ 60' _____ (without hitch) Expando Size _____
   HCD/HUD License/Decal Number PFS1130281 and PFS1130282
   Serial Numbers:        1. AC7V710394GB        2. AC7V710394GA        3. _____
   HCD/HUD Label/Insignia:    1. PFS1130281        2. PFS1130282        3. _____

3. **ITEMS INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.

4. **Paragraph 3D(2)** of the Agreement is modified as follows: Provided the Property is or includes a personal property manufactured home, Broker is authorized to cooperate and compensate HCD licensed dealers per Broker's policy.

5. A. Seller agrees that on close of escrow Property shall be free of liens and encumbrances, recorded, filed, registered or known to Seller.
   B. Seller agrees that evidence of title to the manufactured home, if personal property, shall be in the form of a duly endorsed, dated and delivered Certificate of Ownership; and Seller shall deliver the current Registration Certificate of Title as required by law.
   C. Seller agrees, if applicable, to deliver as soon as possible to Broker, for submission to buyer, a copy of Seller's lease or rental agreement and all current park and/or Homeowners' Association rules and regulations, and to inform Broker of any changes to either during the Listing Period.
   D. Seller represents that Property, if personal property, is either: **(i)** Located within an established mobilehome park as defined in California Health and Safety Code § 18214, and that advertising or offering it for sale is not contrary to any provision of any contract between Seller and mobilehome park ownership; OR **(ii)** that Property is located pursuant to a local zoning ordinance or permit on a lot where its presence has been authorized or its continued presence and such use would be authorized for a total an uninterrupted period of at least one year.
   E. Seller has not assigned or sublet the Property.

© 2022, California Association of REALTORS®, Inc.

**MHLA REVISED 6/22 (PAGE 1 OF 2)**      Buyer's Initials _____ / _____    Seller's Initials _____ / _____

EQUAL HOUSING
OPPORTUNITY

**MANUFACTURED HOME LISTING ADDENDUM (MHLA PAGE 1 OF 2)**

EXHIBIT 1    PAGE 18

000027

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Manufactured Home Listing Addendum.

Seller _____ Date _____
        *Jeffrey Golden, Ch 7 Trustee*
Seller _____ Date _____

Real Estate Broker (Listing Firm) *Coldwell Banker Residential* _____ DRE Lic. # *00616212*
By _____ DRE Lic. # *01309137* _____ Date  *7/25/22*
   *Greg Bingham*

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

    Published and Distributed by:
    REAL ESTATE BUSINESS SERVICES, LLC.
    a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
    525 South Virgil Avenue, Los Angeles, California 90020



**MHLA REVISED 6/22 (PAGE 2 OF 2)**

**MANUFACTURED HOME LISTING ADDENDUM (MHLA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        Monterey Lane

EXHIBIT 1    PAGE 19                                                    000028

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Jeffrey I. Golden, solely in the capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Jamie Lynn Gallian,("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker("Broker") the exclusive right to negotiate a sale of the mobile home commonly described as 16222 Monterey Lane, Spc 376, Huntington Beach, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1. <u>Addendum</u>. This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2. <u>No Liability</u>. The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3. <u>Termination</u>. The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4. <u>Abandonment</u>. The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest. In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5. <u>Conditions of Sale</u>. The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

124805.1    9937176A

EXHIBIT 1    PAGE 20

000029

a.    The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding if the property is subdividable.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The sale is subject to overbids.

f.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property.  The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.    All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law.  The Trustee is not required to deliver

124805.1    9937176A                    2

EXHIBIT 1    PAGE 21

000030

to the purchaser a written statement of compliance with any applicable state and local law.

     j.   The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

     k.   If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

     l.   Any sale is subject to the following conditions being satisfied before the close of escrow:

     (1)  the Trustee must prevail with respect to any objections to the proposed sale; and

     (2)  the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

     m.   The Property is being sold subject to:

     (1)  All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

     (2)  Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property. Title, however, is to be transferred free of secured claims of record.

     6.   <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property. The payment of the commission is subject to prior approval of the Bankruptcy Court.

     7.   <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

124805.1    9937176A

3

EXHIBIT 1    PAGE 22

000031

8.    <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization is not contrary to the terms and conditions herein, constitute the entire contract between the parties.    All prior agreements between the parties are incorporated into this agreement.    Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.    The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.    <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization.    This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

EXHIBIT 1    PAGE 23                    000032

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 600
Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*): Application Of The Chapter 7 Trustee To Employ Real Estate Broker Coldwell Banker Realty And Agents William Friedman And Greg Bingham Pursuant To 11 U.S.C. §§ 327 And 328; Memorandum Of Points And Authorities; And Declarations Of William Friedman And Greg Bingham In Support will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 28, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Aaron E DE Leest    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
Jeffrey I Golden (TR)    lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
D Edward Hays    ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
m
Brandon J Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
Eric P Israel    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
Valerie Smith    claims@recoverycorp.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) July 28, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Jamie Lynn Gallian                              William Friedman
16222 Monterey Ln Unit 376                1608 Montana Avenue
Huntington Beach, CA 92649              Santa Monica, California 90403
**Debtor**

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 28, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 7/28/2022 | Gloria Estrada | *Gloria Estrada* |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                  **F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  TRUSTEE'S NOTICE OF OPPOSITION, OPPOSITION AND REQUEST FOR HEARING TO DEBTOR'S NOTICE TO TRUSTEE TO ABANDON ESTATE'S INTEREST IN REINVESTED FUNDS FROM SALE OF UNIT 53, 10/31/2018 APN 937-630-53 TO PURCHASE LBM1081 ON NOVEMBER 1, 2018, AND AGAINST JAMIE LYNN GALLIAN RELATING TO THE PURCHASE IN THE PERSONAL PROPERTY COMMONLY KNOWN AS 16222 MONTEREY LN #376, HUNTINGTON BEACH, CALIFORNIA 92649; MEMORANDUM OF POINTS AND AUTHORITIES AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  September 8, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  September 8, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| September 8, 2022 | Vivian Servin | /s/ Vivian Servin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Aaron E DE Leest**   adeleest@DanningGill.com,
  danninggill@gmail.com;adeleest@ecf.inforuptcy.com

- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

- **Jeffrey I Golden (TR)**    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law

- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

- **Brandon J Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com

- **Eric P Israel**    eisrael@DanningGill.com,
  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

- **Mark A Mellor**    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

- **Valerie Smith**    claims@recoverycorp.com

- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

2. **SERVED BY U.S. MAIL**

Debtor
Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court
411 W. Fourth Street, Suite 5130
Santa Ana, CA  92701

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE