JAMIE L GALLIAN
16222 Monterey Lane Sp. # 376
Huntington Beach, CA 92649
714-321-3449
jamiegallian@gmail.com
In Pro Per

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA-SANTA ANA DIVISION

JAMIE LYNN GALLIAN

Debtor

CASE NO. 8:21-BK-11710-SC

*Hon. Scott C. Clarkson*

)
)
)
)

**Supplemental**
**JAMIE LYNN GALLIAN OBJECTION
TO HOUSER BROS CO DBA RANCHO
DEL REY MOBILE HOME ESTATES
MOTION FOR RELIEF OF STAY
WITHOUT  STANDING OR REAL
PARTY.**

)
)
)
)
)
)

Hearing:  FEBRUARY 1, 2023 Hearing
Time:  9:30am  VIA ZOOM.GOV

)
)
)

411 W. FOURTH STREET
SANTA ANA, CA 92701

## TO THE HONORABLE SCOTT C, CLARKSON, UNITED STATES
## BANKRUPTCY JUDGE, JEFFREY I. GOLDEN, CHAPTER 7 TRUSTEE
## AND ALL INTERESTED PARTIES.

-1-

Under <u>Article III of the Constitution</u>, the jurisdiction of a federal court is limited to cases and controversies. *See* <u>*Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)</u>.

To satisfy the case or controversy requirement, a plaintiff must have standing to sue. <u>*Id.*</u>

To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>*Id.* at 338, 136 S.Ct. 1540</u> (quoting <u>*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))</u>.

The issue presented is whether Houser Bros Co dba Rancho Del Rey Mobilehome Estates, established its standing as a real party in interest to pursue the Relief from Stay it requests.

On 1/18/2023, Debtor filed F-4001-1 RFS RESPONSE and attached Adv. Dk 37, Adv. No. 8:21-ap-01097-SC JOINT PRETRIAL STIPULATION for the proposition that under Section B. Disputed Facts (Page 5, Line 5 Dk. 37)

**B. Disputed Facts:**

**The following issues of fact, and no others, remain to be litigated:**

**1. Houser Bros. is the owner of and/or has a right of possession regarding several acres of real property in Huntington Beach California.**

# "Real Party in Interest"

**Defined:**

Generally, the real party in interest is the person who has the right to sue under the substantive law. It is the person who owns or holds title to the claim or property involved, as opposed to others who may be interested or benefited by the litigation. [Gantman v. United Pac. Ins. Co. (1991) 232 CA3d 1560, 1566, 284 CR 188, 191; Jasmine Networks, Inc. v. Sup.Ct. (Marvell Semiconductor, Inc.) (2009) 180 CA4th 980, 991, 103 CR3d 426, 433—"while superficially concerned with procedural rules," CCP § 367 "really calls for a consideration of rights and obligations"]

Real party in interest issues are often discussed in terms of plaintiff's "standing to sue." [See Powers v. Ashton (1975) 45 CA3d 783, 787, 119 CR 729, 732; Windham at Carmel Mtn. Ranch Ass'n v. Sup.Ct. (Presley) (2003) 109 CA4th 1162, 1172, 135 CR2d 834, 841; Blumhorst v. Jewish Family Services of Los Angeles (2005) 126 CA4th 993, 1001, 24 CR3d 474, 479—person invoking judicial process must have a real interest in the ultimate adjudication, having suffered (or about to suffer) "an injury of sufficient magnitude reasonably to assure that all the relevant facts and issues will be adequately presented"; Iglesia Evangelica Latina, Inc. v. Southern Pac. Latin American Dist. of Assemblies of God (2009) 173 CA4th 420, 445, 93 CR3d 75, 94—party must have "some special interest to be served or some particular right to be preserved or protected" (internal quotes omitted)]

**Trustee in Chapter 7 bankruptcy**:

All causes of action belonging to a bankrupt at the time of filing a Chapter 7 bankruptcy petition (liquidation) become part of the bankruptcy estate. The trustee in bankruptcy therefore is the real party in interest as to such causes of action (unless the trustee chooses to abandon them). [M & M Foods, Inc. v. Pacific American Fish Co., Inc. (2011) 196 CA4th 554, 564, 126 CR3d 310, 318; Curtis v. Kellogg & Andelson (1999) 73 CA4th 492, 505, 86 CR2d 536, 546; Cloud v. Northrop Grumman Corp. (1998) 67 CA4th 995, 1004, 79 CR2d 544, 549 (citing text)]

With respect to actions commenced prior to bankruptcy, courts are split on whether the trustee must be substituted in as plaintiff. (Parties may be substituted upon transfer of interest under CCP § 368.5; see ¶ 2:504.) [ABA Recovery Services, Inc. v. Konold (1988) 198 CA3d 720, 726, 244 CR 27, 31—substitution of trustee optional: prebankruptcy action may continue in name of debtor despite transfer of interest; compare Bostanian v. Liberty Sav. Bank (1997) 52 CA4th 1075, 1083, 61 CR2d 68, 73 (contra)—substitution required: debtor out of possession has no standing to prosecute cause of action that has passed to bankruptcy estate unless abandoned by trustee]

**Purpose of Requirement:**

The purpose of the real party in interest requirement is to assure that any judgment rendered will bar the owner of the claim sued upon from relitigating. "It is to save a defendant, against whom a judgment may be obtained, from further harassment or

vexation at the hands of some other claimant to the same demand." [Giselman v. Starr (1895) 106 C 651, 657, 40 P 8, 10; Cloud v. Northrop Grumman Corp. (1998) 67 CA4th 995, 1003, 79 CR2d 544, 549, fn. 2 (citing text); O'Flaherty v. Belgum (2004) 115 CA4th 1044, 1094, 9 CR3d 286, 326 (citing text)]

A litigant's standing to sue is a threshold issue to be determined by the court before addressing the merits. [Boorstein v. CBS Interactive, Inc. (2013) 222 CA4th 456, 465, 165 CR3d 669, 674]

Jury trial required where facts disputed: Where a party's standing depends on disputed facts or credibility determinations (e.g., ownership or possession of property), the parties are entitled to a jury trial on the issue. [People v. Sup.Ct. (Plascencia) (2002) 103 CA4th 409, 424, 126 CR2d 793, 804-805; Stofer v. Shapell Indus., Inc. (2015) 233 CA4th 176, 189-190, fn. 5, 182 CR3d 478, 488 (citing text)]

**Effect of Lack of Standing to Sue**

When a party lacks standing to sue, the action must be dismissed, unless the complaint can be amended by substituting a party who has standing. [Cloud v. Northrop Grumman Corp. (1998) 67 CA4th 995, 1004-1011, 79 CR2d 544, 549-554].

**Challenging - Procedure for Challenging Standing to Sue**

A complaint filed by someone other than the real party in interest is subject to general demurrer if the defect appears on the face of the complaint or from matters that can be judicially noticed; i.e., it fails to state a cause of action by the plaintiff

because the claim sued upon belongs to somebody else. [Carsten v. Psychology Examining Committee of Bd. of Med. Qual. Assur. (1980) 27 C3d 793, 796, 166 CR 844, 846; see Qualified Patients Ass'n v. City of Anaheim (2010) 187 CA4th 734, 752, 115 CR3d 89, 101; San Bernardino County v. Sup.Ct. (Inland Oversight Committee) (2015) 239 CA4th 679, 688, 190 CR3d 876, 883—"demurrer should have been sustained, because the complaint does not include adequate facts to demonstrate plaintiffs have standing as taxpayers to assert the claim alleged"]

If plaintiff's lack of standing to sue does not appear on the face of the complaint, the defect should be raised as an affirmative defense in the answer. See ¶ 6:430 ff.

**Defect not waived by failure to object:**

Plaintiff's lack of standing is treated as a "jurisdictional" defect and is not waived by defendant's failure to raise it by demurrer or answer: "(C)ontentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding." [Common Cause of Calif. v. Board of Supervisors of Los Angeles County (1989) 49 C3d 432, 438, 261 CR 574, 577—lack of standing can be raised for first time on appeal; Rialto Citizens for Responsible Growth v. City of Rialto (2012) 208 CA4th 899, 912, 146 CR3d 12, 21 (same); Cummings v. Stanley (2009) 177 CA4th 493, 501, 99 CR3d 284, 289 (citing text)]

Standing to sue affects the right to relief and goes to the existence of a cause of action against the defendant. [See CCP § 430.80; Killian v. Millard (1991) 228 CA3d 1601, 1605, 279 CR 877, 879]

-6-

A party has standing to seek relief from the automatic stay if it has a property interest in or is entitled to enforce or pursue remedies related to, the secured obligation that forms the basis of its motion.

Houser Bros Co has no secured obligation with respect to Houser Bros dba Rancho Del Rey Mobilehome Estates request for relief from the automatic stay,

The record before this Bankruptcy Court presented by Houser Bros Co dba Rancho Del Rey Mobilehome Estates does not support has standing.

Debtor respectfully requests the bankruptcy court make findings necessary to determine Houser Bros dba Rancho Del Rey Mobilehome Estates standing as a person entitled to enforce the Ms. Gallian's post-petition obligations.

Motions for relief from stay are contested matters. *See* Rules 4001(a) and 9014(a). Rule 9014(c) provides that Rule 7017 applies in contested matters.

Rule 7017 incorporates Civil Rule 17(a), which provides that "[a]n action must be prosecuted in the name of the real party in interest...." Considering the application of these rules, as a threshold matter, relief from stay proceedings are very limited in scope.

Given the limited grounds for obtaining ... relief from stay, read in conjunction with the expedited schedule for a hearing on the motion, most courts hold that motion for relief from stay hearings should not involve an adjudication on the merits of claims, defenses, or counterclaims, but simply determine whether the creditor has a *colorable claim* to the property of the estate.

*Biggs v. Stovin (In re Luz Int'l),* 219 B.R. 837, 842 (9th Cir.BAP1998) (emphasis added). *See, e.g., Johnson v. Righetti (In re Johnson),* 756 F.2d 738, 740–41 (9th Cir.1985).

1
2
Houser Bros Co Reply to Ms. Gallian's Opposition to RFS [Dk 298] reads
like a "Trial Brief" Reply Line 19-22..

3   "in her Response, Debtor hardly addresses the applicable standard for stay relief.

4   She instead filed a 25-page "Memorandum of Points & Authorities" ("P&A") (not

5   including the hundreds of pages of exhibits), that reads more like a trial brief in the

6   underlying Forcible Entry Action than a Response to a relief from stay motion."

7

8   On the contrary, Debtor was very mindful and purposely chose the Notice of

9   Lodgment Documents provided to the bankruptcy court when preparing her

10  Opposition to Houser Bros Motion for RFS [Dk 298] for the following reason:

11
12
13
14
15
16
*"Any appeal from a grant of motion for relief from stay, the Bankruptcy
Appellate Panel (BAP) or District Court could consider only those
documents that were before the bankruptcy court when it granted motion for
stay relief; evidence, or purported evidence, that was not properly before
bankruptcy court was not part of record on appeal. 11 U.S.C.A. § 362(d)."*

17
18
19

20  **1. Section 362(d)(1)**

21  Section 362(d)(1) provides that a bankruptcy court can grant relief from the

22  stay "for cause, including lack of adequate protection of an interest in property of

23  such party in interest." 11 U.S.C. § 362(d)(1).

24  Here, on December 19, 2022, the Bankruptcy Court, Honorable Erithe A. Smith,

25  Order Dk 274, determined Debtor was entitled to a Homestead Exemption in the

26  property, therefore Debtor did have equity in the Property at the time of filing her

27  bankruptcy petition because Debtor has resided in the home since November 2018,

28

-8-

as her primary residence and held title to the Property as of the date of filing her petition. Because Debtor owned the Property as of the date of filing her bankruptcy petition, the Property can be necessary for Debtor's effective reorganization. 11 U.S.C. §362(d)(2). Accordingly, relief from the automatic stay should be denied under section 362(d).

 "Cause" has no clear definition and is determined on a case-by-case basis. In re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985).

**2. Section 362(d)(2)**

Section 362(d)(2) provides relief from the automatic stay when:

the debtor has no equity in the property [and] the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

Both elements of the test must be met. See Stewart v. Gurley, 745 F.2d 1194, 1195 (9th Cir. 1984).

Again, on December 19, 2022, the Bankruptcy Court, Honorable Erithe A. Smith, Order Dk 274, determined Debtor was entitled to a Homestead Exemption in the property, therefore Debtor did have equity in the Property at the time of filing her bankruptcy petition because Debtor has resided in the home since November 2018, as her primary residence and held title to the Property as of the date of filing her petition. Because Debtor owned the Property as of the date of filing her bankruptcy petition, the Property can be necessary for Debtor's effective reorganization.

**TITLE:  Title is vested in Houser Bros. Co., a limited partnership,**

## subject to:

### 1.  Ground Lease

A Ground Lease dated October 19, 1979, executed by Houser Bros Co, a limited

partnership, as Lessor, ad Robert P. Warmington, a married man, as lessee, a

memorandum of which was recorded October 22, 1979 in Book 13362, Page 320

of Official Records and re-recorded December 6, 1979 in Book 13424, Page 499 of

Official Records.  Robert P. Warmington in turn as sublet the Gound Lease to

Robert P. Warmington Co., a California corporation.


**NOTE: THE LESSEE'S INTEREST UNDER SAID LEASES AND THE
SUB-LESSOR'S INTEREST UNDER SAID SUBLEASE HAS BEEN
ASSIGNED TO G/HB INVESTORS, A CALIFORNIA LIMITED
PARTNERSHIP BY ASSIGNMENT WHICH RECORDED SEPTEMBER
30, 1986 AS INSTRUMENT NO. 86456266 OF OFFICIAL RECORDS,
REFERENCE BEING HEREBY MADE TO THE RECORD THEREOF
FOR FULL PARTICULARS.**


07/24/1998 Assignment Of Lease Or Sublease G HB Investors Wertin Trust
1998.644009
07/24/1998 Assignment Of Lease Or Sublease Wertin Trust Brief Trust
1998.644010
07/23/1999 Assignment Of Lease Or Sublease Ghb Investors & BS Investors LLC
1999.542301

**Interests To Be Conveyed**

A Lease to a specified unit, together with an undivided fractional leasehold interest as a tenant in common in the common area together with a membership in "The Gables-Huntington Beach Homeowners Association" and rights to use the common area.

**Distinction Between "Assignment" and "Sublease":**

   Though the terms are often used interchangeably, "assignments" and "subleases" are distinct legal concepts and have distinct legal consequences.

a. **Assignment:**   A true "assignment" of a [tenant-Robert P. Waemington's] interest in a lease is the transfer of *all* of the tenant's right, title and interest in the leasehold.

The tenant, Robert P. Warmington assignment to BS Investors, LLC assignee steps into direct privity of estate with the landowner, (Master Lessor) acquiring the benefits and becoming obliged by the burdens of all "covenants running with the land."

If the assignee expressly assumes the master lease the assignee and landowner also stand in a privity of contract relationship. [*Vallely Investments, L.P. v. BancAmerica Comm'l Corp.* (2001) 88 CA4th 816, 822, 106 CR2d 689, 694]

Unlike a sublease  the selling tenant/assignor retains *no* reversionary interest in or right to reenter the leasehold, even if its assignee abandons the property; but the assignor remains in privity of contract with the landowner absent an express release. [See *Vallely Investments, L.P. v. BancAmerica Comm'l Corp.*, supra, 88 CA4th at 822-823, 106 CR2d at 694-695 (discussing distinctions

-11-

between sublease and assignment); *Kendall v. Ernest Pestana, Inc.* (1985) 40 C3d 488, 492, 220 CR 818, 820, fn. 2]

In contrast, by a sublease, the tenant transfers *less* than the entire premises or *less* than the entire term of the lease to a third party. A sublease does *not change* the privity relationship between landowner and sublessor tenant; i.e., subtenant and landowner are neither in privity of contract nor privity of estate.

The subtenant's rights are governed by the sublease with the master lease tenant (sublessor), which can be no greater than the rights granted by the master lease; and the landowner's rights remain governed by the master lease with the tenant (sublessor). [*Kendall v. Ernest Pestana, Inc.*, supra, 40 C3d at 492, 220 CR at 820, fn. 2; *Vallely Investments, L.P. v. BancAmerica Comm'l Corp.*, supra, 88 CA4th at 823, 106 CR2d at 695]

Thus, the tenant (not the subtenant) remains responsible for the payment of rent to the landowner (*Kendall v. Ernest Pestana, Inc.*, supra, 40 C3d at 502, 220 CR at 827); and, upon a default by the tenant, the landowner can usually terminate the sublease by terminating the ground lease.

A sublease would be technically created if the ground lease tenant "subleased" the entire property for the entire balance of the term except for the last day. Similarly, a sublease would be technically created even though the "sublessor" leases to the subtenant all but a nominal portion of the property for the entire balance of the term. And, a sublease is created where the transferring tenant retains a right of reentry.

Indeed, selling tenants may try to structure their deals in such a manner in an attempt to avoid the generally harsher restrictions on assignment [See generally, *Kendis v. Cohn* (1928) 90 CA 41, 58-60, 265 P 844, 851]

c. **Importance of distinction:** To the extent a tenant is subject to transfer restrictions, most ordinary leases do not distinguish between leasehold transfers by assignment vs. sublease; i.e., an assignment will either be permitted or prohibited on the same basis as a sublease.

However, ground leases frequently subject the two types of transfers to different standards. The reasons are two-fold:

(1) Assignee steps into assignor's shoes; subtenant's creditworthiness less important to landlord: Absent a novation an assignment does not itself let the assignor tenant out of its contractual obligations under the lease.

(2) Even so, privity of estate binds the new tenant/assignee to the lease obligations for so long as it remains in possession

(3) Thus, for all practical purposes, an assignment substitutes one tenant for another; and, because the parties to a ground lease have a long-term relationship, the landlord is justifiably concerned about the quality— especially the creditworthiness—of any assignee.

On the other hand, a sublease disturbs neither the privity of contract *nor* privity of estate relationship between the original tenant and landowner; indeed, a sublease is subordinate to the covenants in the Master Lease.

Since there is no substitution of the original tenant, the landowner is far less concerned about the quality of a subtenant.

-13-

For all of the above references to the unexpired 80 year Ground Lease, Houser Bros Co dba Rancho Del Rey Mobilehome Estates is not the Sublessor, BS Investors, LLC, included in Debtors Chapter 7 Petition and /Amendment.

Houser Bros Co dba Rancho Del Rey Mobilehome Estates Motion for RFS should be denied until the Court can determine the proper party.

I declare under penalty of perjury the forgoing to be true and correct.

Signed this 30th day of January, 2023, at Huntington Beach, CA

*Jamie Lynn Gallian*
JAMIE LYNN GALLIAN

-14-

| **LP-2** | **Amendment to Certificate of Limited Partnership (LP)** |
|---|---|

**FILED**

Secretary of State
State of California

04/29/2021

Filing Date

This Space For Office Use Only

To change information of record for your LP, fill out this form, and submit for filing along with:

– A **$30 filing fee**.
– A separate, non-refundable **$15 service fee** also must be included, if you drop off the completed form.

Items 3–7: **Only** fill out the information that is changing. Attach extra pages if you need more space or need to include any other matters.

For questions about this form, go to www.sos.ca.gov/business/be/filing-tips.

① **LP's Entity No.** (issued by CA Secretary of State)
198415300148

② **LP's Exact Name** (on file with CA Secretary of State)
Houser Bros. Co.

**New LP Name**
③ _____
Proposed New LP Name    The new LP name: **must** end with: "Limited Partnership," "LP," or "L.P.," and **may not** contain "bank," "insurance," "trust," "trustee," incorporated," "inc.," "corporation," or "corp." The name cannot be likely to mislead the public and must be distinguishable in the records from other LPs of record or reserved with the California Secretary of State.

**New LP Addresses**
④ a. _____   _____  **CA**  ____
   Street Address of Designated Office in CA    City (no abbreviations)    State    Zip
   b. _____   _____  ____  ____
   Mailing Address of LP, if different from 4a    City (no abbreviations)    State    Zip

**New Agent/Address for Service of Process** (The agent must be a CA resident or qualified 1505 corporation in CA.)
⑤ a. _____
   Agent's Name
   b. _____   _____  **CA**  ____
   Agent's Street Address (if agent is **not** a corporation)    City (no abbreviations)    State    Zip

**General Partner Changes**
⑥ a. New general partner: _____
      Name    Address    City (no abbreviations)    State    Zip
   b. Address change: _____
      Name    New Address    City (no abbreviations)    State    Zip
   c. Name change: Old name: _____  New name: _____
   d. Name of dissociated general partner: Chris Houser & Kathryn Curtiss

**Dissolved LP** (Either check box a **or** check box b and complete the information. Note: To terminate the LP, also file a Certificate of Cancellation (Form LP-4/7), available at www.sos.ca.gov/business/be/forms.)
⑦ a. ☐ The LP is dissolved and wrapping up its affairs.
   b. ☐ The LP is dissolved and has no general partners. The following person has been appointed to wrap up the affairs of the LP: _____
      Name    Address    City (no abbreviations)    State    Zip

**Read and sign below:** This form must be signed by (**1**) at least one general partner; (**2**) by each person listed in item 6a; **and** (**3**) by each person listed in item 6d **if** that person has not filed a Certificate of Dissociation (Form LP-101). If item 7b is checked, the person listed must sign. If a trust, association, attorney-in-fact, or any other person not listed above is signing, go to www.sos.ca.gov/business/be/filing-tips for more information. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are part of this amendment. Signing this document affirms under penalty of perjury that the stated facts are true.

▶ SEE EXIBIT A                    SEE EXIBIT A                    SEE EXIBIT A
   Sign here                       Print your name here            Date

▶ _____        _____        _____
   Sign here                       Print your name here            Date

Make check/money order payable to: **Secretary of State**
Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee.

**EXHIBIT A**
**TO LP-2 OF**
**HOUSER BROS. CO.**

Signing this document affirms under penalty of perjury that the stated facts are true.

_____
Craig Houser, General Partner

4/28/2021
_____
Date

**Dissociated General Partners**

_____
Chris Houser, Limited Partner

4/28/2021
Date

_____
Kathryn Curtiss, Limited Partner

4/28/2021
Date

198415300148

4

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Recorded in Official Records, County of Orange
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖34.00
2003001044770 12:56pm 08/28/03
118  4  A17  15
0.00  0.00  0.00  0.00  28.00  0.00  0.00  0.00

BS Investors
19100 Von Karman Ave., Suite 370
Irvine, CA 92612
Attn: Hugh M. Saddington

15

1CF

(Space Above For Recorder's Use)

## FIRST AMENDMENT TO CONDOMINIUM SUBLEASE

THIS FIRST AMENDMENT TO CONDOMINIUM SUBLEASE ("First Amendment"), effective as of January 1, 2003 (the "Effective Date"), is made and entered into by and between BS INVESTORS, LLC, a California limited liability company ("Landlord") and CAROLYN MARTIN and SUE TURNER ("Tenant").

### RECITALS

A.     Houser Bros. Co., a California limited partnership ("Master Lessor") is the fee owner of that certain real property (the "Houser Property") located in the City of Huntington Beach and more particularly described in Exhibit "A" attached hereto.

B.     On October 18, 1979, a Condominium Plan was recorded for the Houser Property in Book 13358, Pages 1193, et. seq., in the official records of Orange County, California (the "Condominium Plan").  After the Condominium Plan was recorded, a condominium project consisting of eighty (80) condominium units was constructed on the Houser Property in accordance with the Condominium Plan (the "Condominium Project").

C.     By a document entitled "Ground Lease", dated August 1, 1980, entered into by and between Master Lessor, as landlord, and Robert P. Warmington ("Warmington") as tenant, (the "Ground Lease"), Master Lessor leased to Warmington that certain real property described in Exhibit "B" attached hereto.  The Ground Lease was recorded on November 7, 1980, in the Official Records of Orange County, California in Book 13824, at page 1259, et. seq.

D.     The property leased under the Ground Lease, described in Exhibit "B", is referred to in this First Amendment as the "Leased Land".  The condominium unit that is identified in the legal description of the Leased Land is one unit in the Condominium Project pursuant to the Condominium Plan.    Eighty (80) separate Ground Leases were entered into for the Condominium Project, one for each of the eighty (80) units located on the Houser Property.

E.     By a document entitled "Condominium Sublease", dated August 1, 1980, entered into by and between Warmington, as landlord, and JOHN F. TURNER and VIRGINIA H.

UNIT 53

4476 Alderport

TURNER (the "Original Tenant"), as Tenant, Warmington subleased the Leased Land to the Original Tenant (the "Condominium Sublease"). The Condominium Sublease was recorded on November 7, 1980, in the Official Records of Orange County, California in Book 13824, at page 1274, et. seq.

F.       On November 7, 1980, a document entitled Condominium Sublease (Short Form -- Memorandum) and Grant Deed was recorded for the Leased Land in the Official Records of Orange County, California in Book 13824, at page 1291, et. seq.

G.       The term of the Ground Lease and the term of the Condominium Sublease commenced on the date of the recording of the Condominium Sublease. The term ends on December 31, 2059.

H.       By a document entitled "Assignment and Assumption of Interest in Ground Lease and Subleases", Landlord acquired the tenant's (ground lessee's) interest in the Ground Lease to the Leased Land and the landlord's (sublessor's) interest in the Condominium Sublease. By such assignment document, Landlord also assumed and agreed to be bound by all the terms and conditions of the Ground Lease and the Condominium Sublease. The Memorandum of Assignment of Ground Lease and Subleases was recorded on July 23, 1999 in the official records of Orange County, California as Instrument No. 19990542301.

I.       Tenant is the assignee of the Original Tenant's (sublessee's) interest in the Condominium Sublease for the Leased Land, and Tenant is the current owner of the building and other improvements granted to the Original Tenant, pursuant to the Condominium Sublease (Short Form -- Memorandum) and Grant Deed.

J.       Article 3 of the Condominium Sublease provides that the tenant agreed to pay as the initial rental for the use and occupancy of the Leased Land during the term of the Sublease the sum of $1,500 per year. Article 3 of the Condominium Sublease further provides that the rental for the Leased Land is subject to adjustment at the time and in the manner provided for in Article 21 of the Condominium Sublease.

K.       Paragraph 21(B) of the Condominium Sublease provides that effective January 1, 1990, January 1, 2010, January 1, 2030 and January 1, 2050, the annual rental shall be adjusted upwards in accordance with the increase, if any, in the cost of living during the 10-year period preceding the rental adjustment based upon a Consumer Price Index identified therein. On January 1, 1990, pursuant to paragraph 21(B) of the Condominium Sublease, the annual rental payable for use and occupancy of the Leased Land under the Condominium Sublease was increased to $2,279.04 per year.

L.       In or about February 2000, a dispute arose among the parties to the Ground Lease and Condominium Sublease concerning the interpretation, application and enforceability of the provisions in paragraph 21(A) of the Condominium Sublease with respect to scheduled rental adjustments effective January 1, 2000, January 1, 2020 and January 1, 2040. As a result of such dispute, Master Lessor and Landlord, as co-plaintiffs, filed a Complaint for Declaratory Relief in the Superior Court of the State of California, for the County of Orange, case number 00CC09649 (the "Action"). In the Complaint, Master Lessor and Landlord requested that the Court

determine the rights, duties and obligations of the Master Lessor, Landlord and Tenant under the Condominium Subleases with respect to the rental adjustments under Article 21 of the Condominium Sublease.

M.      Master Lessor, Landlord and Tenant have settled the Action pursuant to the terms of a written settlement agreement among them (the "Settlement Agreement"). The Settlement Agreement provides that the parties shall execute this First Amendment by which they amend and replace Article 21 of the Sublease to set forth the agreed amount of rental that shall be paid by Tenant for use and occupancy of the Leased Land from and after January 1, 2000 through the end of the Condominium Sublease term.

N.      Landlord has assigned its interest in the Condominium Sublease and the Leased Land to a trustee under a deed of trust for the benefit of a lender referred to herein as "Landlord's Mortgagee". Landlord's Mortgagee and the deed of trust encumbering Landlord's interest in the Leased Land are identified on Exhibit "C", attached hereto and made a part hereof.

O.      Tenant has assigned its interest in the Condominium Sublease and the Leased Land to a trustee under a deed of trust for the benefit of a lender referred to herein as "Tenant's Mortgagee". Tenant's Mortgagee and the deed of trust encumbering Tenant's interest in the Leased Land are identified on Exhibit "D", attached hereto made a part hereof.

NOW, THEREFORE, in consideration of the above-referenced Recitals and for other valuable consideration, receipt of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

## AMENDMENT

1.      AGREED RENTAL FOR PERIOD FROM JANUARY 1, 2000 TO DECEMBER 31, 2002

1.1      Agreed Rental Amount

The parties hereby agree that Tenant shall pay Landlord, and Landlord shall accept from Tenant, in full satisfaction of Tenant's rental obligation for use and occupancy of the Leased Land for the three-year period from January 1, 2000 through and including December 31, 2002 the aggregate sum of TWELVE THOUSAND THREE HUNDRED TWENTY-THREE DOLLARS AND FIFTY-SIX CENTS ($12,323.56).

1.2      Agreed Balance Due

Landlord hereby acknowledges its receipt from Tenant of rent in the amount of TEN THOUSAND FOUR HUNDRED TWENTY-SEVEN DOLLARS AND THIRTEEN CENTS ($10,427.13) paid prior to the effective date of this Amendment for the three-year period from January 1, 2000 to December 31, 2002. Landlord and Tenant agree that the remaining rent balance that Tenant shall pay Landlord for the three-year period from January 1, 2000 to December 31, 2002 shall be ONE THOUSAND EIGHT HUNDRED NINETY-SIX DOLLARS AND FORTY-FOUR CENTS ($1,896.44).

1.3    Payment of Agreed Balance Due

The parties agree that Tenant shall pay Landlord the agreed balance of $1,896.44.
[AND IF APPLICABLE] [along with the amount of _____
($_____) constituting past due attorneys' fees and costs due to Landlord] concurrently
with Tenant's execution of this First Amendment.

2.    AGREED RENTAL EFFECTIVE JANUARY 1, 2003

2.1    Agreed Rental Amount Effective January 1, 2003

The parties hereto agree that effective January 1, 2003, Tenant shall pay Landlord
as the annual rental for the use and occupancy of the Leased Land for the calendar year 2003, the
sum of FOUR THOUSAND SEVEN HUNDRED FORTY DOLLARS ($4,740). The annual
rental shall be subject to adjustment on January 1, 2004 and each subsequent January 1st of the
remaining Sublease term as provided in Section 3 of this First Amendment.

2.2    Payment of Agreed 2003 Rental

The 2003 annual rental shall be paid in four (4) quarterly installments of $1,185
each. Before the execution of this First Amendment by Tenant, Tenant has paid Landlord the
sum of $2,370 toward the annual rental for use and occupancy of the Leased Land for the
calendar year 2003. If Tenant has paid less than $2,370 for the first two (2) quarterly
installments of 2003 rental before Tenant's execution of this First Amendment, Tenant shall pay
the balance of such installments remaining due concurrently with Tenant's execution of this First
Amendment. The remaining two (2) quarterly installments shall be paid on July 1, 2003 and
October 1, 2003.

3.    ADJUSTMENTS TO ANNUAL RENTAL COMMENCING JANUARY 1, 2004

3.1    Annual Cost of Living Adjustments

On January 1, 2004, and on each subsequent January 1st of the remaining
Sublease term (the "Adjustment Date"), the annual rental payable by Tenant to Landlord for use
and occupancy of the Leased Land shall be subject to a cost of living adjustment as follows: On
each Adjustment Date, the annual rental payable during the calendar year immediately preceding
the applicable Adjustment Date shall be increased by an amount equal to the lesser of the
following amounts:

(a)    An amount equal to seven percent (7%) of the annual rental payable in the
calendar year immediately preceding the applicable Adjustment Date; or

(b)    An amount equal to that percent of the annual rental payable in the
calendar year immediately preceding the applicable Adjustment Date that equals the
percent increase, if any, in the Consumer Price Index of the Bureau of Labor Statistics of
the U.S. Department of Labor for All Urban Consumers -- Los Angeles -- Riverside --
Orange County, All Items (Base Year 1982-1984 = 100) (the "Index") for the twelve-
month period between October of the calendar year that is fifteen (15) calendar months

before the applicable Adjustment Date and October of the calendar year that is three (3) months before the applicable Adjustment Date. In no event, however, shall the annual rental be less than the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date.

For example, if the applicable Adjustment Date is January 1, 2010, and the Index has increased by five percent (5%) between October 2008 and October 2009, the annual rental for the calendar year 2010 shall be increased effective January 1, 2010 by five percent (5%) of the annual rental payable in the year 2009. If the Index has increased by seven percent (7%) or more between October 2008 and October 2009, the annual rental shall be increased effective January 2010 by seven percent (7%) of the annual rental payable in the year 2009, which is the maximum cost of living increase on any Adjustment Date. If the Index has declined or not increased between October 2008 and October 2009, there would be no cost of living adjustment to the annual rental effective January 1, 2010.

If the Index is changed so that the base year differs from the base years 1982-1984, the Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics. If the Index is discontinued or revised during the Lease Term or if its publication schedule is changed, the government index or computation with which it is replaced shall be used to obtain substantially the same result as if the Index had not been discontinued or revised. If the Index is discontinued and not replaced, the parties shall jointly select a replacement index that will obtain substantially the same result as the discontinued Index would have obtained if it had not been discontinued.

3.2    Additional Agreed Annual Rental Increases

The parties agree that the annual rental payable by Tenant for use and occupancy of the Leased Land shall also be increased by the sum of THREE HUNDRED SIXTY DOLLARS ($360) per year on each of the following Adjustment Dates:  January 1, 2005, January 1, 2007, January 1, 2009, January 1, 2011 and January 1, 2013. Such agreed increases shall be in addition to the cost of living increases described in Section 3.1.

3.3    Notice of Rental Adjustment

Included with Tenant's rent invoice for the annual rental amount on each Adjustment Date, Landlord shall inform Tenant of the amount of the new annual rental effective on the Adjustment Date (and provide the CPI Index information for such Adjustment Date) determined in accordance with the provisions of Section 3.1 and Section 3.2 above. Landlord shall send Tenant such rent invoices at least ten (10) days before each applicable Adjustment Date.

3.4    Payment of Annual Rental

Tenant shall pay the annual rental for each year of the lease term from January 1, 2004 through the end of the term in four (4) equal quarterly installments in advance on the first day of the quarter of each calendar year. The amount of each installment shall be the amount of the annual rental due for the applicable calendar year divided by four.

4.    EFFECT OF AMENDMENT; CONFIRMATION OF SUBLEASE AS AMENDED

    4.1    Effect of Amendment

       The provisions of this First Amendment shall replace and supersede the provisions of Article 21 of the Condominium Sublease with respect to all rental adjustments effective on or after January 1, 2000. If there is any inconsistency between any provisions in this First Amendment and in the Condominium Sublease, or any other agreement or instrument entered into on or before this First Amendment, the provisions of this First Amendment shall prevail.

    4.2    Confirmation of Consistent Terms of Condominium Sublease

       Except to the extent expressly modified by this First Amendment, the terms of the Condominium Sublease are hereby confirmed and shall remain in full force and effect. The Condominium Sublease and this First Amendment contain and set forth all of the terms, covenants and conditions of the Condominium Sublease among the parties as of the Effective Date.

    4.3    Entire Agreement

       This First Amendment is the complete, final and exclusive statement among the parties with respect to the modifications and amendments to the Condominium Sublease that the parties have agreed to in connection with the Settlement Agreement. This First Amendment supersedes all prior and contemporaneous agreements and understandings among the parties relating to such modifications and amendments. This First Amendment may only be amended or modified by a written instrument signed by the parties hereto (or their respective successors and assigns).

5.    FURTHER ASSURANCES

       Each party to this First Amendment will at its own cost and expense execute and deliver such further documents or instruments and will take such other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this First Amendment.

6.    SUCCESSORS AND ASSIGNS

       The provisions of this First Amendment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, heirs, executors, administrators and assigns.

7.    NOTICES

       Any notice that may or must be given by either party under this First Amendment shall be delivered: (i) personally; (ii) by certified mail, return receipt requested; or (iii) by a nationally recognized overnight courier, addressed to the party to whom it is intended. Any notice given shall be sent to the respective address of the party set forth on the signature page below, or to such other address as that party may designate for service of notice by a notice given in

accordance with the provisions of this Section 7.  A notice sent pursuant to the terms of this Section 7, shall be deemed delivered: (a) when delivery is completed, if delivered personally; (b) two (2) days after deposit into the United States mail; or (c) the business day following deposit with a nationally recognized overnight courier.

      IN WITNESS WHEREOF, the parties have executed this First Amendment on the date specified below.

"LANDLORD"

Dated: _6-24-03_

BS INVESTORS, LLC,
a California Limited Liability Company


By:    G/HB Investors,
        a California Limited Partnership
Its:    Member

    By:    LPL Asset Management
        Corporation,
        a California corporation
    Its:    General Partner


        By:_____
            Hugh M. Saddington,
            Its:  President

"TENANT"

Dated: _4/19/03_

      _____
      SUE TURNER

      _____
      CAROLYN MARTIN

## CONSENT OF MASTER LESSOR

Master Lessor hereby consents to the First Amendment subject to the following terms and provisions:

This consent shall in no way release Landlord from any of its covenants, agreements, liabilities and duties under the Ground Lease. Nothing contained in the First Amendment shall be deemed a modification of any of Landlord's obligations under the Ground Lease or a waiver of any of Master Lessor's rights under the Ground Lease, except as expressly provided in the First Amendment and the Compromise Settlement and Release Agreement executed by Master Lessor, Landlord and Tenant.

The Sublease continues, in all respects, to be subject to and subordinate to the Ground Lease and to all the terms and provisions contained therein, subject to the non-disturbance provisions contained in the Ground Lease and Sublease, including paragraph 27 of the Ground Lease and paragraph 1 of the Sublease. The non-disturbance provisions contained in the Ground Lease and Sublease shall apply to the Sublease, as amended by the First Amendment.

Master Lessor's consent to the First Amendment shall be limited solely to the First Amendment and shall not relieve Landlord or Tenant from any obligation to obtain the consent of Master Lessor to any further modification or amendment as may be required under the Ground Lease or Sublease.

Nothing in the First Amendment or in this Consent of Master Lessor shall be deemed to have established privity of contract between Master Lessor and Subtenant or to have otherwise altered the legal relationship of Master Lessor and Subtenant that was established by the original Ground Lease and the original Sublease.

IN WITNESS WHEREOF, the undersigned has executed this consent as of the _1st_ day of _July_, 2003.

HOUSER BROS., CO.,
a California limited partnership

By: _Clifford Houser_
Clifford Houser,
Its general partner

STATE OF CALIFORNIA )
) ss.
COUNTY OF _Orange_ )

On _April 19, 2003_, before me, _Jani Wilson_, Notary Public, personally appeared _Carolyn Martin_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Jani Wilson_
Notary Public

[SEAL]

JANI WILSON
Commission # 1356570
Notary Public - California
Orange County
My Comm. Expires Jun 12, 2006

STATE OF CALIFORNIA )
) ss.
COUNTY OF _Orange_ )

On _April 19, 2003_, before me, _Jani Wilson_, Notary Public, personally appeared _Sue Turner_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Jani Wilson_
Notary Public

[SEAL]

JANI WILSON
Commission # 1356570
Notary Public - California
Orange County
My Comm. Expires Jun 12, 2006

267/003708-0019
381986.04 a04/15/03

-9-

STATE OF CALIFORNIA          )
                             )  ss.
COUNTY OF ORANGE             )

On  6-24-03 , before me, Judith D. Collins, Notary Public, personally appeared, Hugh M. Saddington, personally known to me, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Signature of Notary Public

JUDITH D. COLLINS
Commission # 1265596
Notary Public - California
Orange County
My Comm. Expires May 28, 2004

-10-

STATE OF CALIFORNIA          )
                            )
COUNTY OF ORANGE            )  ss.

On )-1-03 , before me, Virginia Langham, Notary Public,
personally appeared, Clifford Houser, personally known to me, to
be the person whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his authorized
capacity, and that by his signature on the instrument the person
or the entity upon behalf of which the person acted, executed the
instrument.

    Witness my hand and official seal

VIRGINIA LANGHAM
Comm. # 1289473
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Jan. 31, 2005

Signature of Notary Public

-11-

## EXHIBIT "A"

### THE HOUSER PROPERTY

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Maps, in the office of the County Recorder of said County.

## EXHIBIT "B"

### LEASED LAND

Those portions of Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California, described as follows:

PARCEL 1

Unit 53, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et. seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

PARCEL 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

PARCEL 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

PARCEL 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

EXHIBIT "B"
TO FIRST AMENDMENT TO CONDOMINIUM SUBLEASE

**EXHIBIT "C"**

<u>CONSENT OF LANDLORD'S MORTGAGEE</u>

The undersigned, Fullerton Community Bank, F.S.B., with an address of _____, is the beneficiary under that certain Deed of Trust dated July 12, 1999, and recorded on July 23, 1999 in the Official Records of Orange County, California as Instrument No. 19990542302 (the "Deed of Trust"), and hereby consents to Landlord entering into this First Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Condominium Sublease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

FULLERTON COMMUNITY BANK, F.S.B

By: _____

Its _____

STATE OF CALIFORNIA                )
                                   ) ss.
COUNTY OF _____ )

On _____, before me, _____, Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public

[SEAL]

**EXHIBIT "C"**
**TO FIRST AMENDMENT TO CONDOMINIUM SUBLEASE**

## EXHIBIT "D"

### CONSENT OF TENANT'S MORTGAGEE

The undersigned, HOMESIDE LENDING, with an address of P. O. BOX 7198, Pasadena, CA 91109-7198, is the beneficiary under that certain Deed of Trust dated _____, and recorded on April 23, 1987 in the Official Records of Orange County, California as Instrument No. 1987-00223072 (the "Deed of Trust"), and hereby consents to Tenant entering into this First Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Condominium Sublease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

By: _____

Its_____

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF _____ )

    On _____, before me, _____, Notary Public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

    Witness my hand and official seal.

_____
Notary Public

[SEAL]

EXHIBIT "D"
TO FIRST AMENDMENT TO CONDOMINIUM SUBLEASE



# State of California
## Kevin Shelley
### Secretary of State

**FILED**
in the office of the Secretary of State
of the State of California

AG

MAR - 4 2005

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**A $30.00 filing fee must accompany this form.**

**IMPORTANT – Read instructions before completing this form**

This Space For Filing Use Only

| 1. SECRETARY OF STATE FILE NUMBER | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 198415300148 | HOUSER BROS. CO. |

**3. COMPLETE ONLY THE BOXES WHERE INFORMATION IS BEING CHANGED. ADDITIONAL PAGES MAY BE ATTACHED, IF NECESSARY:**

A. LIMITED PARTNERSHIP NAME (END THE NAME WITH THE WORDS "LIMITED PARTNERSHIP" OR THE ABBREVIATION "L.P.")

| B. THE STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|

| C. THE STREET ADDRESS IN CALIFORNIA WHERE RECORDS ARE KEPT | CITY | STATE CA | ZIP CODE |
|---|---|---|---|

| D. THE ADDRESS OF THE GENERAL PARTNER(S) NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|

| E. NAME CHANGE OF GENERAL PARTNER(S) FROM: | TO: |
|---|---|

F. GENERAL PARTNER(S) CESSATION
Clifford C. Houser

| G. NAME OF GENERAL PARTNER(S) ADDED | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| Craig Houser | 17610 Beach Boulevard, Ste. 32 | Huntington Beach, CA | 92647 |

| H. THE PERSON(S) AUTHORIZED TO WIND UP THE AFFAIRS OF THE LIMITED PARTNERSHIP NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|

I. THE NAME OF THE AGENT FOR SERVICE OF PROCESS

| J. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE CA | ZIP CODE |
|---|---|---|---|

K. NUMBER OF GENERAL PARTNERS' SIGNATURES REQUIRED FOR FILING CERTIFICATES OF AMENDMENT, RESTATEMENT, MERGER, DISSOLUTION, CONTINUATION AND CANCELLATION:

L. OTHER MATTERS (ATTACH ADDITIONAL PAGES, IF NECESSARY):

**4. I DECLARE THAT I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.**

| SIGNATURE OF AUTHORIZED PERSON | General Partner |
|---|---|
| | POSITION OR TITLE OF AUTHORIZED PERSON |
| Craig Houser | March 3, 2005 |
| TYPE OR PRINT NAME OF AUTHORIZED PERSON | DATE |
| | |
| SIGNATURE OF AUTHORIZED PERSON | POSITION OR TITLE OF AUTHORIZED PERSON |
| | |
| TYPE OR PRINT NAME OF AUTHORIZED PERSON | DATE |

LP-2 (REV 12/2003)                                                                 APPROVED BY SECRETARY OF STATE

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Houser Bros., Co.
17610-17612 Beach Blvd., Suite 32
Huntington Beach, CA 92647
Attn: Craig E. Houser

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 27.00
2005000504166 02:56pm 06/29/05
116 33 A17 8
0.00 0.00 0.00 0.00 21.00 0.00 0.00 0.00

_____
(Space Above For Recorder's Use)

## CORRECTIVE AMENDMENT TO GROUND LEASE
### (Units 1 – 80)

THIS CORRECTIVE AMENDMENT TO GROUND LEASE ("Corrective Amendment"), effective as of January 1, 2003 (the "Effective Date"), is made and entered into by and between HOUSER BROS., CO., a California limited partnership ("Landlord") and BS INVESTORS, LLC, a California limited liability company ("Tenant").

## RECITALS

A. Landlord is the fee owner of that certain real property (the "Houser Property") located in the City of Huntington Beach and more particularly described in Exhibit "A" attached hereto.

B. On October 18, 1979, a Condominium Plan was recorded for the Houser Property in Book 13358, Pages 1193, et. seq., in the official records of Orange County, California (the "Condominium Plan"). After the Condominium Plan was recorded, a condominium project consisting of eighty (80) condominium units was constructed on the Houser Property in accordance with the Condominium Plan (the "Condominium Project"). Eighty (80) separate ground leases were entered into for the Condominium Project (the "Ground Leases").

C. The Ground Leases were amended pursuant to that certain First Amendment to Ground Lease entered into for each of the eighty (80) Ground Leases which instruments were recorded against the Houser Property in the Official Records of Orange County, California on August 21, 2003 as Instrument Nos. 2003-001013553, 2003-001013554, 2003-001013555, 2003-001013556, 2003-001013557, 2003-001013558, 2003-001013559, 2003-001013560, 2003-001013561, 2003-001013562, 2003-001013563, 2003-001013564, 2003-001013565, 2003-001013566, 2003-001013567, 2003-001013568, 2003-001013569, 2003-001013570, 2003-001013571, 2003-001013572, 2003-001013573, 2003-001013574, 2003-001013575, 2003-001013576, 2003-001013577, 2003-001013578, 2003-001013579, 2003-001013580, 2003-001013581, 2003-001013582, 2003-001013583, 2003-001013584, 2003-001013585, 2003-001013586, 2003-001013587, 2003-001013588, 2003-001013589, 2003-001013590, 2003-001013591, 2003-001013592, 2003-001013593, 2003-001013594, 2003-001013595, 2003-

001013596, 2003-001013597, 2003-001013598, 2003-001013599, 2003-001013600, 2003-001013601, 2003-001013602, 2003-001013603, 2003-001013604, 2003-001013605, 2003-001013606, 2003-001013607, 2003-001013608, 2003-001013609, 2003-001013610, 2003-001013611, 2003-001013612, 2003-001013613, 2003-001013614, 2003-001013615, 2003-001013616, 2003-001013617, 2003-001013618, 2003-001013619, 2003-001013620, 2003-001013621, 2003-001013622, 2003-001013623, 2003-001013624, 2003-001013625, 2003-001013626, 2003-001013627, 2003-001013628, 2003-001013629, 2003-001013630, 2003-001013631, and 2003-001013632 (collectively, the "First Amendments").

D.    The First Amendments incorrectly stated the methodology for adjustments to annual rental commencing January 1, 2005, and the parties desire to enter into this Corrective Amendment to Ground Lease to correctly set forth the agreement of the parties with respect to rental increases under the First Amendments.

NOW, THEREFORE, in consideration of the above-referenced Recitals and for other valuable consideration, receipt of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

## AMENDMENT

1.    <u>Ground Lease Rental</u>.    Section 3 of each of the First Amendments is hereby deleted in its entirety and replaced with the following:

"3.    <u>ADJUSTMENTS TO ANNUAL RENTAL COMMENCING JANUARY 1, 2005</u>

3.1    <u>Periodic Cost of Living Adjustments</u>

On January 1, 2005, and on every other subsequent January 1st (i.e., January 1, 2007, January 1, 2009, etc.) of the remaining Ground Lease term (each, an "Adjustment Date"), the annual rental payable by Tenant to Landlord for use and occupancy of the Leased Land shall be subject to a cost of living adjustment determined on the basis of the "CPI Index" increases for the prior two "Comparison Periods." The annual rental for each subsequent even-numbered calendar year (i.e. 2006, 2008, etc.) of the remaining Ground Lease Term shall be the annual rental payable for the prior calendar year. The cost of living adjustment on each Adjustment Date shall be calculated as follows:

A sum equal to the annual rental payable during the calendar year immediately preceding the applicable Adjustment Date multiplied by the product of (a) the percentage increase of the CPI index for the "Current Comparison Period"; and (b) the percentage increase of the CPI Index for the "Prior Comparison Period"; provided, however, that during each Comparison Period, the percentage increase shall never be greater than seven percent (7%) nor less than zero notwithstanding the actual increase or decrease in the CPI Index.

267/003708-0019
584537.03 a06/08/05

Document Number: 2005000504166 Page: 2 of 8

The term "CPI Index" shall mean and refer to the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for All Urban Consumers -- Los Angeles -- Riverside -- Orange County, All Items (Base Year 1982-1984 = 100).

The term "Comparison Period" shall mean and refer to the twelve-month period between October and the prior October.

The term "Current Comparison Period" shall mean and refer to the Comparison Period between October of the calendar year that is fifteen (15) calendar months before the applicable Adjustment Date and October of the calendar year that is three (3) months before the applicable Adjustment Date.

The term "Prior Comparison Period" shall mean and refer to the Comparison Period immediately prior to the Current Comparison Period.

The parties acknowledge that the percentage change in the CPI Index was 2.2319% for the October, 2002 through October, 2003 Comparison Period and 4.5261% for the October, 2003 through October, 2004 Comparison Period. Accordingly, the annual rental payable in calendar years 2005 and 2006 is Four Thousand Three Hundred Forty and 10/100 Dollars ($4,340.10), calculated as follows:

$$((\$3,792 \times 102.2319\%) \times 104.5261\%) + \$288$$

where $3,792 is the annual rental for calendar years 2003 and calendar year 2004 multiplied by the CPI Index increases for the Current Comparison Period and the Prior Comparison Period preceding the Adjustment Date of January 1, 2005, plus $288.00 as the additional rental increase payable pursuant to Section 3.2 below.

To further illustrate the rental increase calculation (inclusive of the additional rent increase pursuant to Section 3.2 below), if the CPI Index were to adjust for the next four (4) Comparison Periods (starting with the October, 2004 through October, 2005 Comparison Period) by 6%, 8%, 3%, and -1%, respectively, the annual rental payable by Tenant hereunder would be as follows:

| | |
|---|---|
| Calendar Year 2007 | $5,210.55 |
| Calendar Year 2008 | $5,210.55 |
| Calendar Year 2009 | $5,654.87 |
| Calendar Year 2010 | $5,654.87 |

In the above example, in the Comparison Period where the CPI Index increased by 8%, the adjustment for such year would be limited to 7%, and in the

Document Number: 2005000504166 Page: 3 of 8

Comparison Period where the CPI Index decreased by 1%, there would be no adjustment, in accordance with the proscribed limitations on CPI Index adjustments.

If the CPI Index is changed so that the base year differs from the base years 1982-1984, the CPI Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics. If the CPI Index is discontinued or revised during the Lease Term or if its publication schedule is changed, the government index or computation with which it is replaced shall be used to obtain substantially the same result as if the CPI Index had not been discontinued or revised. If the CPI Index is discontinued and not replaced, the parties shall jointly select a replacement index that will obtain substantially the same result as the discontinued Index would have obtained if it had not been discontinued.

3.2    Additional Agreed Annual Rental Increases

The parties agree that the annual rental payable by Tenant for use and occupancy of the Leased Land shall also be increased by the sum of Two Hundred Eighty-Eight Dollars ($288) per year on each of the following Adjustment Dates: January 1, 2005, January 1, 2007, January 1, 2009, January 1, 2011 and January 1, 2013. Such agreed increases shall be in addition to the cost of living increases described in Section 3.1.

3.3    Notice of Rental Adjustment

Tenant shall calculate the amount of the new annual rental effective on the Adjustment Date (and provide the CPI Index information for the Current Comparison Period and the Prior Comparison Period) determined in accordance with the provisions of Section 3.1 and Section 3.2 above and shall send such proposed rent invoices to Landlord for Landlord's approval at least twenty (20) days before each applicable Adjustment Date.

3.4    Payment of Annual Rental

Tenant shall pay the annual rental for each year of the lease term from January 1, 2004 through the end of the term in twelve (12) equal monthly installments in advance on the first day of the month of each calendar year. The amount of each installment shall be the amount of the annual rental due for the applicable calendar year divided by twelve."

Accordingly, the rental to be paid to Landlord by Tenant for calendar years 2005 and 2006 under the eighty (80) Ground Leases totals Three Hundred Forty-Seven Thousand Two Hundred Eight Dollars ($347,208) per annum payable in equal monthly installments of Twenty-Eight Thousand Nine Hundred Thirty-Four Dollars ($28,934).

2.    <u>Lender Consent</u>.  Tenant's mortgagee hereby consents to Tenant entering into this Corrective Amendment as provided in <u>Exhibit "B"</u>, attached hereto and made a part hereof.

3.    <u>Full Force and Effect</u>.    Except  as  otherwise  set  forth  in  this  Corrective Amendment to Ground Lease, the Ground Leases, as modified by the First Amendments, shall remain unmodified and in full force and effect.

IN  WITNESS  WHEREOF,  the  parties  have  executed  this  Corrective  Amendment  to Ground Lease on the date specified below.

Dated: __6/27/05__

"LANDLORD"

HOUSER BROS., CO.,
a California limited partnership

By: _____
        Craig E. Houser,
        Its general partner


"TENANT"

Dated: __6-8-05__

BS INVESTORS, LLC,
a California Limited Liability Company


By:    G/HB Investors,
        a California Limited Partnership
Its:    Member

By:    LPL Asset Management
        Corporation,
        a California corporation
Its:    General Partner

By: _____
        Hugh M. Saddington,
        Its:  President

267/003708-0019
584537.03 a06/08/05

-5-

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF ___ORANGE___       )

On ___JUN 2 7 2005___, before me, **THOMAS G. KNAACK**, Notary Public,
personally appeared ___CRAIG E Houser___,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

Witness my hand and official seal.

THOMAS G. KNAACK
Commission # 1501086
Notary Public - California
Orange County
My Comm. Expires Aug 11, 2008

Notary Public

[SEAL]


STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF ORAnge             )

On June 8, 2005, before me, Judith D. Collins, Notary Public,
personally appeared Hugh M. Saddington,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

Witness my hand and official seal.

Judith D. Collins
Notary Public

[SEAL]



JUDITH D. COLLINS
Commission # 1487010
Notary Public - California
Orange County
My Comm. Expires May 28, 2008

267/003708-0019
584537.03 a06/08/05

-6-

## EXHIBIT "A"

### THE HOUSER PROPERTY

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Maps, in the office of the County Recorder of said County.

267/003708-0019
584537.03 a06/08/05

## EXHIBIT "A"
TO CORRECTIVE AMENDMENT TO GROUND LEASE

## EXHIBIT "B"

### CONSENT OF TENANT'S MORTGAGEE

The undersigned, Fullerton Community Bank, F.S.B., with an address of 200 West Commonwealth Avenue, Fullerton, CA 92832, is the beneficiary under that certain Deed of Trust dated July 12, 1999, and recorded on July 23, 1999 in the Official Records of Orange County, California as Instrument No. 19990542302 (the "Deed of Trust"), and hereby consents to Tenant entering into this Corrective Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Ground Lease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

FULLERTON COMMUNITY BANK, F.S.B

By: _____

Its _____

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF __ORANGE_____   )

    On __JUNE 21, 2005___, before me, __MARIA FRANCO_____, Notary Public, personally appeared ___CARL GREGORY**_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public

[SEAL]



MARIA FRANCO
COMM # 1332033
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Dec. 5, 2005

267/003708-0019
584537.03 a06/08/05

### EXHIBIT "B"
TO CORRECTIVE AMENDMENT TO GROUND LEASE

**First American**

*my* FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 2003 |
| DocID: | 1013605 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION  OF  TITLE  TO  REAL  PROPERTY.    IT  IS  NOT  AN  ABSTRACT,  LEGAL  OPINION,  OPINION  OF  TITLE,  TITLE  INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

**Recorded in Official Records, County of Orange**
**Tom Daly, Clerk-Recorder**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 28.00
**2003001013605 11:13am 08/21/03**
214 110 A17 12
0.00 0.00 0.00 0.00 22.00 0.00 0.00 0.00

Houser Bros., Co.
17610-17612 Beach Blvd., Suite 32
Huntington Beach, CA 92647
Attn: Clifford Houser

(Space Above For Recorder's Use)



## FIRST AMENDMENT TO GROUND LEASE
### (Unit 53)

THIS FIRST AMENDMENT TO GROUND LEASE ("First Amendment"), effective as of January 1, 2003 (the "Effective Date"), is made and entered into by and between HOUSER BROS., CO., a California limited partnership ("Landlord") and BS INVESTORS, LLC, a California limited liability company ("Tenant").

### RECITALS

A.    Landlord is the fee owner of that certain real property (the "Houser Property") located in the City of Huntington Beach and more particularly described in Exhibit "A" attached hereto.

B.    On October 18, 1979, a Condominium Plan was recorded for the Houser Property in Book 13358, Pages 1193, et. seq., in the official records of Orange County, California (the "Condominium Plan"). After the Condominium Plan was recorded, a condominium project consisting of eighty (80) condominium units was constructed on the Houser Property in accordance with the Condominium Plan (the "Condominium Project").

C.    By a document entitled "Ground Lease", dated August 1, 1980, entered into by and between Landlord, as landlord, and Robert P. Warmington ("Warmington") as tenant, (the "Ground Lease"), Landlord leased to Warmington that certain real property described in Exhibit "B" attached hereto. The Ground Lease was recorded on November 7, 1980 in the Official Records of Orange County, California in Book 13824 at page 1259, et. seq.

D.    The property leased under the Ground Lease, described in Exhibit "B", is referred to in this First Amendment as the "Leased Land". The condominium unit that is identified in the legal description of the Leased Land is one unit in the Condominium Project pursuant to the Condominium Plan. Eighty (80) separate Ground Leases were entered into for the Condominium Project, one for each of the eighty (80) units located on the Houser Property.

E.    By a document entitled "Condominium Sublease", dated August 1, 1980, entered into by and between Warmington, as landlord, and John F. Turner and Virginia H. Turner (the

"Original Subtenant"), as Subtenant, Warmington subleased the Leased Land to the Original Subtenant (the "Condominium Sublease"). The Condominium Sublease was recorded on November 7, 1980 in the Official Records of Orange County, California in Book 13824 at page 1274, et. seq.

F.    The term of the Ground Lease and the term of the Condominium Sublease commenced on the date of the recording of the Condominium Sublease. The term ends on December 31, 2059.

G.    By a document entitled "Assignment and Assumption of Interest in Ground Lease and Subleases", Tenant acquired the tenant's (ground lessee's) interest in the Ground Lease to the Leased Land and the landlord's (sublessor's) interest in the Condominium Sublease. By such assignment document, Tenant also assumed and agreed to be bound by all the terms and conditions of the Ground Lease and the Condominium Sublease. The Assignment and Assumption of Interest in Ground Lease and Subleases was recorded on July 23, 1999 in the official records of Orange County, California as Instrument No. 19990542301.

H.    Article 3 of the Ground Lease provides that the tenant agreed to pay as the initial rental for the use and occupancy of the Leased Land during the term of the Ground Lease the sum of $900 per year. Article 3 of the Ground Lease further provides that the rental for the Leased Land is subject to adjustment at the time and in the manner provided for in Article 21 of the Ground Lease.

I.    In or around February 2000, a dispute arose among the parties to the Ground Lease and Condominium Sublease concerning the interpretation, application and enforceability of the provisions in paragraph 21(A) of the Condominium Sublease with respect to scheduled rental adjustments effective January 1, 2000, January 1, 2020 and January 1, 2040. As a result of such dispute, Landlord and Tenant, as co-plaintiffs, filed a Complaint for Declaratory Relief in the Superior Court of the State of California, for the County of Orange, case number 00CC09649 (the "Action"). In the Complaint, Landlord and Tenant requested that the Court determine the rights, duties and obligations of the Landlord, Tenant and Subtenant under the Condominium Sublease with respect to the rental adjustments under Article 21 of the Condominium Sublease. The determination of the Action also affected the rental obligations under the Ground Lease.

J.    Landlord, Tenant and Subtenant have settled the Action pursuant to the terms of a written settlement agreement among them. Landlord and Tenant hereby agree to replace Article 21 of the Ground Lease to set forth the agreed amount of rental that shall be paid by Tenant for use and occupancy of the Leased Land from and after January 1, 2000 through the end of the Ground Lease term.

K.    Tenant has assigned its interest in the Condominium Sublease and the Leased Land to a trustee under a deed of trust for the benefit of a lender referred to herein as "Tenant's Mortgagee". Tenant's Mortgagee and the deed of trust encumbering Tenant's interest in the Leased Land are identified on Exhibit "C", attached hereto and made a part hereof.

NOW, THEREFORE, in consideration of the above-referenced Recitals and for other valuable consideration, receipt of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

## AMENDMENT

1.  **AGREED RENTAL FOR PERIOD FROM JANUARY 1, 2000 TO DECEMBER 31, 2002**

    1.1  Agreed Rental Amount

    The parties hereby agree that Tenant shall pay Landlord, and Landlord shall accept from Tenant, in full satisfaction of Tenant's rental obligation for use and occupancy of the Leased Land for the three-year period from January 1, 2000 through and including December 31, 2002 the aggregate sum of SEVEN THOUSAND NINE HUNDRED SEVENTY DOLLARS AND SIXTY-THREE CENTS ($7,970.63).

    1.2  Agreed Balance Due

    Landlord hereby acknowledges its receipt from Tenant of rent paid prior to the effective date of this Amendment for the three-year period from January 1, 2000 to December 31, 2002. Landlord and Tenant agree that the remaining rent balance that Tenant shall pay Landlord for the three-year period from January 1, 2000 to December 31, 2002 (as determined pursuant to an unrecorded agreement between the parties) shall be paid by Tenant concurrently with Tenant's execution of this First Amendment.

2.  **AGREED RENTAL EFFECTIVE JANUARY 1, 2003**

    2.1  Agreed Rental Amount Effective January 1, 2003

    The parties hereto agree that effective January 1, 2003, Tenant shall pay Landlord as the annual rental for the use and occupancy of the Leased Land for each of calendar year 2003 and calendar year 2004, the sum of THREE THOUSAND SEVEN HUNDRED NINETY-TWO DOLLARS ($3,792.00). The annual rental shall be subject to adjustment on January 1, 2005 and every other subsequent January 1st of the remaining Ground Lease term as provided in Section 3 of this First Amendment.

    2.2  Payment of Agreed 2003 and 2004 Rental

    The 2003 and 2004 annual rental shall be paid in twelve (12) monthly installments per year of $316.00 each. If Tenant has paid less than $316.00 per month for the months in 2003 prior to Tenant's execution of this First Amendment, Tenant shall pay the balance of such 2003 rent remaining due concurrently with Tenant's execution of this First Amendment and thereafter pay to Landlord the monthly rental payments as and when due.

3.    ADJUSTMENTS TO ANNUAL RENTAL COMMENCING JANUARY 1, 2005

    3.1    Periodic Cost of Living Adjustments

        On January 1, 2005, and on every other subsequent January 1st (i.e., commencing January 1, 2007) of the remaining Ground Lease term (each, an "Adjustment Date"), the annual rental payable by Tenant to Landlord for use and occupancy of the Leased Land shall be subject to a cost of living adjustment as follows:  On each Adjustment Date, the annual rental payable during the calendar year immediately preceding the applicable Adjustment Date shall be increased by an amount equal to Eighty Percent (80%) of the lesser of the following amounts:

        (a)    An amount equal to seven percent (7%) of the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date; or

        (b)    An amount equal to that percent of the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date that equals the percent increase, if any, in the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for All Urban Consumers -- Los Angeles -- Riverside -- Orange County, All Items (Base Year 1982-1984 = 100) (the "Index") for the twelve-month period between October of the calendar year that is fifteen (15) calendar months before the applicable Adjustment Date and October of the calendar year that is three (3) months before the applicable Adjustment Date.  In no event, however, shall the annual rental be less than the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date.

        For example, if the applicable Adjustment Date is January 1, 2007, and the Index has increased by five percent (5%) between October 2005 and October 2006, the annual rental for the calendar year 2007 shall be increased effective January 1, 2007 by four percent (4%) (80% of 5%) of the annual rental payable in the year 2006.  If the Index has increased by seven percent (7%) or more between October 2005 and October 2006, the annual rental shall be increased effective January 2007 by five and six-tenths percent (5.6%) (80% of 7%) of the annual rental payable in the year 2006, which is the maximum increase on any Adjustment Date.  If the Index has declined or not increased between October 2005 and October 2006, there would be no adjustment to the annual rental effective January 1, 2007.

        If the Index is changed so that the base year differs from the base years 1982-1984, the Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics.  If the Index is discontinued or revised during the Lease Term or if its publication schedule is changed, the government index or computation with which it is replaced shall be used to obtain substantially the same result as if the Index had not been discontinued or revised.  If the Index is discontinued and not replaced, the parties shall jointly select a replacement index that will obtain substantially the same result as the discontinued Index would have obtained if it had not been discontinued.

    3.2    Additional Agreed Annual Rental Increases

        The parties agree that the annual rental payable by Tenant for use and occupancy of the Leased Land shall also be increased by the sum of TWO HUNDRED EIGHTY-EIGHT

DOLLARS ($288) per year on each of the following Adjustment Dates:  January 1, 2005, January 1, 2007, January 1, 2009, January 1, 2011 and January 1, 2013.  Such agreed increases shall be in addition to the cost of living increases described in Section 3.1.

3.3    Notice of Rental Adjustment

Tenant shall calculate the amount of the new annual rental effective on the Adjustment Date (and provide the CPI Index information for such Adjustment Date) determined in accordance with the provisions of Section 3.1 and Section 3.2 above and shall send such proposed rent invoices to Landlord for Landlord's approval at least twenty (20) days before each applicable Adjustment Date.

3.4    Payment of Annual Rental

Tenant shall pay the annual rental for each year of the lease term from January 1, 2004 through the end of the term in twelve (12) equal monthly installments in advance on the first day of the month of each calendar year.  The amount of each installment shall be the amount of the annual rental due for the applicable calendar year divided by twelve.

4.    EFFECT OF AMENDMENT; CONFIRMATION OF GROUND LEASE AS AMENDED

4.1    Effect of Amendment

The provisions of this First Amendment shall replace and supersede the provisions of Article 21 of the Ground Lease with respect to all rental adjustments effective on or after January 1, 2000.  If there is any inconsistency between any provisions in this First Amendment and in the Ground Lease, or any other agreement or instrument entered into on or before this First Amendment, the provisions of this First Amendment shall prevail.

4.2    Confirmation of Consistent Terms of Ground Lease

Except to the extent expressly modified by this First Amendment, the terms of the Ground Lease are hereby confirmed and shall remain in full force and effect.  The Ground Lease and this First Amendment contain and set forth all of the terms, covenants and conditions of the Ground Lease between the parties as of the Effective Date.

4.3    Entire Agreement

This First Amendment is the complete, final and exclusive statement between the parties with respect to the modifications and amendments to the Ground Lease.  This First Amendment supersedes all prior and contemporaneous agreements and understandings among the parties relating to such modifications and amendments.  This First Amendment may only be amended or modified by a written instrument signed by the parties hereto (or their respective successors and assigns).

5.    FURTHER ASSURANCES

Each party to this First Amendment will at its own cost and expense execute and deliver such further documents or instruments and will take such other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this First Amendment.

6.    SUCCESSORS AND ASSIGNS

The provisions of this First Amendment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, heirs, executors, administrators and assigns.

7.    NOTICES

Any notice that may or must be given by either party under this First Amendment shall be delivered: (i) personally; (ii) by certified mail, return receipt requested; or (iii) by a nationally recognized overnight courier, addressed to the party to whom it is intended.  Any notice given shall be sent to the respective address of the party set forth on the signature page below, or to such other address as that party may designate for service of notice by a notice given in accordance with the provisions of this Section 7.  A notice sent pursuant to the terms of this Section 7, shall be deemed delivered: (a) when delivery is completed, if delivered personally; (b) two (2) days after deposit into the United States mail; or (c) the business day following deposit with a nationally recognized overnight courier.

IN WITNESS WHEREOF, the parties have executed this First Amendment on the date specified below.

"LANDLORD"

Dated: _Aug 4 2003_

HOUSER BROS., CO.,
a California limited partnership

By: _Clifford Houser_

Clifford Houser,
Its general partner

[Signatures continued on next page.]

"TENANT"

Dated: _____

BS INVESTORS, LLC,
a California Limited Liability Company

By:    G/HB Investors,
        a California Limited Partnership
    Its:    Member

        By:    LPL Asset Management
                Corporation,
                a California corporation
        Its:    General Partner

        By: _____
            Hugh M. Saddington,
            Its:  President

STATE OF CALIFORNIA          )
                             )
COUNTY OF ORANGE             )  ss.

On  8-4-03 , before me, Virginia Langham, Notary Public, personally appeared, Clifford Houser, personally known to me, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal

VIRGINIA LANGHAM
Comm. # 1289473
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Jan. 31, 2005

Signature of Notary Public

-8-

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF ORANGE      )

On August 6, 2003, before me, Judith D. Collins, Notary Public, personally appeared, Hugh M. Saddington, personally known to me, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

Signature of Notary Public

JUDITH D. COLLINS
Commission # 1265596
Notary Public - California
Orange County
My Comm. Expires May 28, 2004

## EXHIBIT "A"

### THE HOUSER PROPERTY

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Maps, in the office of the County Recorder of said County.

### EXHIBIT "A"
### TO FIRST AMENDMENT TO GROUND LEASE

## EXHIBIT "B"

### LEASED LAND

Those portions of Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California, described as follows:

PARCEL 1

Unit 53, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et. seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

PARCEL 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

PARCEL 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

PARCEL 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

### EXHIBIT "B"
### TO FIRST AMENDMENT TO GROUND LEASE

## EXHIBIT "C"

### CONSENT OF LANDLORD'S MORTGAGEE

The undersigned, Fullerton Community Bank, F.S.B., with an address of 200 West Commonwealth Avenue, Fullerton, CA 92832, is the beneficiary under that certain Deed of Trust dated July 12, 1999, and recorded on July 23, 1999 in the Official Records of Orange County, California as Instrument No. 19990542302 (the "Deed of Trust"), and hereby consents to Landlord entering into this First Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Ground Lease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

FULLERTON   COMMUNITY   BANK,
F.S.B
By: _____
C. W. Gregory
Its:  President

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF ORANGE             )

On August 7, 2003, before me, Rebecca Nissen, Notary Public, personally appeared, C. W. Gregory, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Signature of Notary Public

REBECCA NISSE
COMM # 1281396
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Nov. 10, 2004

[SEAL]

EXHIBIT "C"
TO FIRST AMENDMENT TO GROUND LEASE



# State of California
## Kevin Shelley
### Secretary of State

**FILED**
In the office of the Secretary of State
of the State of California
AG

MAR – 4 2005

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

A $30.00 filing fee must accompany this form.

IMPORTANT – Read instructions before completing this form

This Space For Filing Use Only

| 1. SECRETARY OF STATE FILE NUMBER | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 198415300148 | HOUSER BROS. CO. |

**3. COMPLETE ONLY THE BOXES WHERE INFORMATION IS BEING CHANGED. ADDITIONAL PAGES MAY BE ATTACHED, IF NECESSARY:**

A. LIMITED PARTNERSHIP NAME (END THE NAME WITH THE WORDS "LIMITED PARTNERSHIP" OR THE ABBREVIATION "L.P.")

| B. THE STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|

| C. THE STREET ADDRESS IN CALIFORNIA WHERE RECORDS ARE KEPT | CITY | STATE CA | ZIP CODE |
|---|---|---|---|

D. THE ADDRESS OF THE GENERAL PARTNER(S)

| NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|

E. NAME CHANGE OF GENERAL PARTNER(S)

FROM:                                TO:

F. GENERAL PARTNER(S) CESSATION

Clifford C. Houser

| G. NAME OF GENERAL PARTNER(S) ADDED | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| Craig Houser | 17610 Beach Boulevard, Ste. 32 | Huntington Beach, CA | 92647 |

H. THE PERSON(S) AUTHORIZED TO WIND UP THE AFFAIRS OF THE LIMITED PARTNERSHIP

| NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|

I. THE NAME OF THE AGENT FOR SERVICE OF PROCESS

| J. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE CA | ZIP CODE |
|---|---|---|---|

K. NUMBER OF GENERAL PARTNERS' SIGNATURES REQUIRED FOR FILING CERTIFICATES OF AMENDMENT, RESTATEMENT, MERGER, DISSOLUTION, CONTINUATION AND CANCELLATION:

L. OTHER MATTERS (ATTACH ADDITIONAL PAGES, IF NECESSARY):

**4. I DECLARE THAT I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.**

| _____ | General Partner |
|---|---|
| SIGNATURE OF AUTHORIZED PERSON | POSITION OR TITLE OF AUTHORIZED PERSON |

| Craig Houser | March 2, 2005 |
|---|---|
| TYPE OR PRINT NAME OF AUTHORIZED PERSON | DATE |

| _____ | _____ |
|---|---|
| SIGNATURE OF AUTHORIZED PERSON | POSITION OR TITLE OF AUTHORIZED PERSON |

| _____ | _____ |
|---|---|
| TYPE OR PRINT NAME OF AUTHORIZED PERSON | DATE |

LP-2 (REV 12/2003)                                APPROVED BY SECRETARY OF STATE

| LP-2 | Amendment to Certificate of Limited Partnership (LP) |
|------|------------------------------------------------------|

**FILED**
Secretary of State
State of California

MAY 0 8 2018

This Space For Office Use Only

To change information of record for your LP, fill out this form, and submit for filing along with:

- A $30 filing fee.
- A separate, non-refundable **$15** service fee also must be included, if you drop off the completed form.

Items 3–7: **Only** fill out the information that is changing. Attach extra pages if you need more space or need to include any other matters.

For questions about this form, go to *www.sos.ca.gov/business/be/filing-tips.htm*

① LP's File No. (Issued by CA Secretary of State)
198415300148

② LP's Exact Name (on file with CA Secretary of State)
HOUSER BROS. CO.

**New LP Name**

③ 
Proposed New LP Name          The new LP name: must end with: "Limited Partnership," "LP," or "L.P.," and may not contain "bank," "insurance," "trust," "trustee," "incorporated," "inc.," "corporation," or "corp."

**New LP Addresses**

④ a. _____ CA
Street Address of Designated Office in CA          City (no abbreviations)   State   Zip

b. _____
Mailing Address of LP, if different from 4a          City (no abbreviations)   State   Zip

**New Agent/Address for Service of Process** (The agent must be a CA resident or qualified 1505 corporation in CA.)

⑤ a. Craig Houser
Agent's Name

b. 16222 Monterey Lane          Huntington Beach          CA 92649
Agent's Street Address (if agent is not a corporation)          City (no abbreviations)   State   Zip

**General Partner Changes**

⑥ a. New general partner: See Exhibit A
Name          Address          City (no abbreviations)   State   Zip

b. Address change: _____
Name          New Address          City (no abbreviations)   State   Zip

c. Name change: Old name: _____   New name: _____

d. Name of dissociated general partner: _____

**Dissolved LP** (Either check box a or check box b and complete the information. Note: To terminate the LP, also file a Certificate of Cancellation (Form LP-4/7), available at www.sos.ca.gov/business/be/forms.htm.)

⑦ a. ☐ The LP is dissolved and wrapping up its affairs.

b. ☐ The LP is dissolved and has no general partners. The following person has been appointed to wrap up the affairs of the LP: _____
Name          Address          City (no abbreviations)   State   Zip

**Read and sign below:** This form must be signed by (1) at least one general partner; (2) by each person listed in item 6a; **and** (3) by each person listed in item 6d if that person has not filed a Certificate of Dissociation (Form LP-101). If item 7b is checked, the person listed must sign. If a trust, association, attorney-in-fact, or any other person not listed above is signing, go to www.sos.ca.gov/business/be/filing-tips.htm for more information. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are part of this amendment. Signing this document affirms under penalty of perjury that the stated facts are true.

► See Exhibit B          See Exhibit B          See Exhibit B
Sign here          Print your name here          Date

► _____
Sign here          Print your name here          Date

| Make check/money order payable to: **Secretary of State** | *By Mail* | *Drop-Off* |
|---|---|---|
| Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | Secretary of State Business Entities, P.O. Box 944225 Sacramento, CA 94244-2250 | Secretary of State 1500 11th Street, 3rd Floor Sacramento, CA 95814 |

Corporations Code § 15902.02
LP-2 (REV 01/2013)

2013 California Secretary of State
www.sos.ca.gov/business/be

**EXHIBIT A
TO LP-2 OF
HOUSER BROS. CO.**

Item 6a.

New General Partners:

      Kathryn Curtiss, 16222 Monterey Lane, Huntington Beach, CA 92649

      Chris Houser, 16222 Monterey Lane, Huntington Beach, CA 92649

1984 1530 0148

EXHIBIT B
TO LP-2 OF
HOUSER BROS. CO.

Signing this document affirms under penalty of perjury that the stated facts are true.

_____          5/2/18
Craig Houser, General Partner          Date

_____          5/2/18
Kathryn Curtiss, General Partner          Date

_____          5/2/18
Chris Houser, General Partner          Date

198415300148



*my* **FirstAm®**   **Tax Map**        **4476 Alderport Dr #53, Huntington Beach, CA 92649**

178-77





95-03

BSAYBROOK LANE

MARCH 1980        TRACT NO. 10542    M.M. 456-49,50        NOTE - ASSESSOR'S BLOCK &
                                                           PARCEL NUMBERS
                                                           SHOWN IN CIRCLES

SAYBROOK LANE

ASSESSOR'S MAP
BOOK 178 PAGE 77
COUNTY OF ORANGE

PROJECT 937-63
LOCATED ON A.P. 178-771-03

1"=200'

THIS MAP WAS PREPARED FOR ORANGE COUNTY ASSESSOR DEPT. PURPOSES ONLY. THE ASSESSOR MAKES NO GUARANTEE AS TO ITS ACCURACY NOR ASSUMES ANY LIABILITY FOR OTHER USES. NOT TO BE REPRODUCED. ALL RIGHTS RESERVED. COPYRIGHT ORANGE COUNTY ASSESSOR

CONDOMINIUM
INDEX, TRACT NO. 10542

PROJECT NO. 937-63   TRACT NO. 10542   NO. LOTS 2   A.P. NO. 178-771-03

| Billing No. | Located on Lot | Unit No. | Common Area |
|---|---|---|---|
| 937-63-001 | Lot 2 | 1 | Und 1/80 Int in Lots 1 & 2 |
| 937-63-002 | " | 2 | " |
| 937-63-003 | " | 3 | " |
| 937-63-004 | " | 4 | " |
| 937-63-005 | " | 5 | " |
| 937-63-006 | " | 6 | " |
| 937-63-007 | " | 7 | " |
| 937-63-008 | " | 8 | " |
| 937-63-009 | " | 9 | " |
| 937-63-010 | " | 10 | " |
| 937-63-011 | " | 11 | " |
| 937-63-012 | " | 12 | " |
| 937-63-013 | " | 13 | " |
| 937-63-014 | " | 14 | " |
| 937-63-015 | " | 15 | " |
| 937-63-016 | " | 16 | " |
| 937-63-017 | " | 17 | " |
| 937-63-018 | " | 18 | " |
| 937-63-019 | " | 19 | " |
| 937-63-020 | " | 20 | " |
| 937-63-021 | " | 21 | " |
| 937-63-022 | " | 22 | " |
| 937-63-023 | " | 23 | " |
| 937-63-024 | " | 24 | " |
| 937-63-025 | " | 25 | " |
| 937-63-026 | " | 26 | " |
| 937-63-027 | " | 27 | " |
| 937-63-028 | " | 28 | " |
| 937-63-029 | " | 29 | " |
| 937-63-030 | " | 30 | " |
| 937-63-031 | " | 31 | " |
| 937-63-032 | " | 32 | " |
| 937-63-033 | " | 33 | " |
| 937-63-034 | " | 34 | " |
| 937-63-035 | " | 35 | " |
| 937-63-036 | " | 36 | " |
| 937-63-037 | " | 37 | " |
| 937-63-038 | " | 38 | " |
| 937-63-039 | " | 39 | " |
| 937-63-040 | " | 40 | " |

Page 2 of 2
178-77

CONDOMINIUM
INDEX, TRACT NO. 10542

PROJECT NO. 937-63   TRACT NO. 10542   NO. LOTS 2   A.P. NO. 178-771-03

| Billing No. | Located on Lot | Unit No. | Common Area |
|---|---|---|---|
| 937-63-041 | Lot 2 | 41 | Und 1/80 Int in Lots 1 & 2 |
| 937-63-042 | " | 42 | " |
| 937-63-043 | " | 43 | " |
| 937-63-044 | " | 44 | " |
| 937-63-045 | " | 45 | " |
| 937-63-046 | " | 46 | " |
| 937-63-047 | " | 47 | " |
| 937-63-048 | " | 48 | " |
| 937-63-049 | " | 49 | " |
| 937-63-050 | " | 50 | " |
| 937-63-051 | " | 51 | " |
| 937-63-052 | " | 52 | " |
| 937-63-053 | " | 53 | " |
| 937-63-054 | " | 54 | " |
| 937-63-055 | " | 55 | " |
| 937-63-056 | " | 56 | " |
| 937-63-057 | " | 57 | " |
| 937-63-058 | " | 58 | " |
| 937-63-059 | " | 59 | " |
| 937-63-060 | " | 60 | " |
| 937-63-061 | " | 61 | " |
| 937-63-062 | " | 62 | " |
| 937-63-063 | " | 63 | " |
| 937-63-064 | " | 64 | " |
| 937-63-065 | " | 65 | " |
| 937-63-066 | " | 66 | " |
| 937-63-067 | " | 67 | " |
| 937-63-068 | " | 68 | " |
| 937-63-069 | " | 69 | " |
| 937-63-070 | " | 70 | " |
| 937-63-071 | " | 71 | " |
| 937-63-072 | " | 72 | " |
| 937-63-073 | " | 73 | " |
| 937-63-074 | " | 74 | " |
| 937-63-075 | " | 75 | " |
| 937-63-076 | " | 76 | " |
| 937-63-077 | " | 77 | " |
| 937-63-078 | " | 78 | " |
| 937-63-079 | " | 79 | " |
| 937-63-080 | " | 80 | " |



**Shari L. Freidenrich, CPA**
**Orange County Treasurer - Tax Collector**
P.O. BOX 1438 • Santa Ana, CA 92702-1438
630 N. Ross Street, Building 11, Room 238, Santa Ana
Office Hours: 8:00 AM-5:00 PM (Monday - Friday)
Phone Hours: 8:00 AM-5:00 PM (714) 834-3411
ocgov.com/octaxbill

## 2018-19 SECURED PROPERTY TAX BILL

For Fiscal Year Beginning July 1, 2018 and Ending June 30, 2019
0000442-0000442 STMT----  740701 OCT026
BWNLBHV ********AUTO**ALL FOR AADC 926
#9376 3053 0020 183#

HOUSER BROS CO
GALLIAN JAMIE L
4476 ALDERPORT DR UNIT 53
HUNTINGTON BEACH CA 92649-2288



OWNER OF RECORD AS OF 12:01 AM, JANUARY 1, 2018

HOUSER BROS CO

## CORRECTED SECURED TAX BILL

### DID YOU KNOW?

Sign up to receive a text/email due date reminder at ocgov.com/taxreminder

Pay online at ocgov.com/octaxbill to receive same day credit, no service fee by eCheck and an emailed receipt.

Mailed payments must have a USPS postmark on or before the last timely payment date. If you wait until the last day to mail your payment, get your envelope hand-stamped with a postmark to ensure it is timely.

Major construction has eliminated close parking to our office - please pay online!

**PROPERTY LOCATION**

**4476 ALDERPORT 53 HUNTINGTON BEACH**

ASSESSED VALUES & EXEMPTIONS AS OF JANUARY 1, 2018

| DESCRIPTION | FULL VALUE | COMPUTED TAX |
|---|---|---|
| LAND | 197,735 | |
| IMPROVEMENTS - BUILDING | 121,658 | |
| TOTAL VALUES: | 319,393 | 3,853.78 |
| HOMEOWNER EXEMPTION | -7,000 | -76.78 |
| TOTAL NET TAXABLE VALUE: | 312,393 | 3,777 |

| PARCEL NO / BILL NO | TAX RATE AREA | 1st INSTALLMENT DUE 11/01/18 | 2nd INSTALLMENT DUE 02/01/19 | TOTAL SECURED ANNUAL TAXES & SPECIAL ASSESSMENTS |
|---|---|---|---|---|
| 937-630-53 | 04-007 | $1,888.50 | + $1,888.50 | = $3,777.00 |

### IMPORTANT INFORMATION

If you sold this property or no longer own it, you can disregard this bill. Property taxes are the responsibility of the *new owner*. Contact the Office of the Assessor at (714) 834-2727 regarding ownership changes.

Enrollment date 10/04/18.

ORDER # REVISION 01 DATE 08/30/18 2018 CORRECTION OF ASSESSOR ASMNT INFO

Corrected Billing

| VOTER APPROVED TAXES AND SPECIAL ASSESSMENTS | | | |
|---|---|---|---|
| NAME OF AGENCY | RATE | VALUE | TAXES |
| BASIC LEVY RATE | 1.00000 | 312,393 | 3,123.93 |
| COAST COMM COLLEGE DIST | .03052 | 312,393 | 95.34 |
| OCEAN VIEW SD 2016, SR 2017A | .02404 | 312,393 | 75.10 |
| HUNTINGTON BCH UNION HS | .02388 | 312,393 | 74.60 |
| HUNTINGTON BEACH EMPLOYEE RETIREME | .01500 | 312,393 | 46.86 |
| METRO WATER D-MWDOC | .00350 | 312,393 | 10.93 |
| SPECIAL ASSESSMENT CHARGES | | PHONE NO. | |
| MOSQ,FIRE ANT ASSMT | | (800)273-5167 | 4.49 |
| VECTOR CONTROL CHG | | (800)273-5167 | 0.67 |
| MWD WATER STDBY CHG | | (866)807-6864 | 10.08 |
| OCSD SEWER USER FEE | | (714)593-7281 | 335.00 |
| TOTAL CHARGED | 1.09694 | | 3,777.00 |

FOR DETAILS OF TAX TYPES, VISIT OUR WEBSITE AT OCGOV.COM/OCTAXBILL

THERE WILL BE A $26.00 FEE FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON
RETAIN TOP PORTION FOR YOUR RECORDS – IF PAYING BY CHECK, YOUR CANCELLED CHECK IS YOUR RECEIPT OR PAY ONLINE AND RECEIVE AN EMAILED RECEIPT

<



**OLD REPUBLIC**
T I T L E   C O M P A N Y

18565 Jamboree Road, Suite 275
Irvine, CA 92612
(949) 476-5757

## PRELIMINARY REPORT

Update 2

Our Order Number  2930005415-61

Star Commercial Properties

Attention: DAVID PERRY

When Replying Please Contact:

Property Address:

Martin Vique
title.orange@ortc.com
Ph:(949)476-5755
Efax:(949)266-9509
Direct line: (855) 563-3827

4476 Alderport Unit 53, Huntington Beach, CA 92649

In response to the above referenced application for a policy of title insurance, OLD REPUBLIC TITLE COMPANY, as issuing Agent of Old Republic National Title Insurance Company, hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said Policy or Policies are set forth in Exhibit I attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the Homeowner's Policy of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit I. Copies of the Policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit I of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**
**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of  October 16, 2018, at 7:30 AM

### OLD REPUBLIC TITLE COMPANY
For Exceptions Shown or Referred to, See Attached

Page  1  of 6 Pages

OLD REPUBLIC TITLE COMPANY
**ORDER NO.** 2930005415-61
Update 2

The form of policy of title insurance contemplated by this report is:

Homeowner's Policy of Title Insurance - 2013; and ALTA Loan Policy - 2006. A specific request should be made if another form or additional coverage is desired.

The estate or interest in the land hereinafter described or referred or covered by this Report is:

A CONDOMINIUM, AS DEFINED IN SECTION 783 OF THE CALIFORNIA CIVIL CODE, FOR A TERM OF YEARS AS SET FORTH IN THAT CERTAIN CONDOMINIUM SUBLEASE RECORDED NOVEMBER 7, 1980 AS FILE NO. 8696, IN BOOK 13824 PAGE 1294, OFFICIAL RECORDS, UPON AND SUBJECT TO ALL THE PROVISIONS THEREIN CONTAINED AND AS MODIFIED THEREOF RECORDED AUGUST 28, 2003 AS INSTRUMENT NO. 03-1044770, OFFICIAL RECORDS.

Title to said estate or interest at the date hereof is vested in:

JAMIE L. GALLIAN, A SINGLE WOMAN

The land referred to in this Report is situated in the County of Orange, City of Huntington Beach, State of California, and is described as follows:

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN {"THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
**ORDER NO.** 2930005415-61
Update 2

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

APN: 937-630-53

At the date hereof exceptions to coverage in addition to the Exceptions and Exclusions in said policy form would be as follows:

1.  Taxes and assessments, general and special, for the fiscal year 2019 - 2020, a lien, but not yet due or payable.

2.  Taxes and assessments, general and special, for the fiscal year 2018 - 2019, as follows:

    | | | | |
    |---|---|---|---|
    | Assessor's Parcel No | : | 937-630-53 | |
    | Code No. | : | 04-007 | |
    | 1st Installment | : | $1,888.50 | NOT Marked Paid |
    | 2nd Installment | : | $1,888.50 | NOT Marked Paid |
    | Land Value | : | $197,735.00 | |
    | Imp. Value | : | $121,658.00 | |

3.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Section 75, et seq., of the Revenue and Taxation Code of the State of California.

4.  Water rights, claims or title to water, whether or not shown by the public records.

5.  Matters in various instruments of record which contain among other things easements and rights of way in, on, over and under the common area for the purpose of constructing, erecting, operating or maintaining thereon or thereunder overhead or underground lines, cables, wires, conduits, or other devices for electricity, telephone, storm water drains and pipes, water systems, sprinkling systems, water, heating and gas lines or pipes, and similar public or quasi-public improvements or facilities. also the right of use and enjoyment in and to and throughout the common area as well as the non-exclusive easements and rights for ingress, egress to the owner herein described.

    Reference is hereby being made to various documents and maps of record for full and further particulars.

    Affects the common area.

ORT 3158-B

**OLD REPUBLIC TITLE COMPANY**
**ORDER NO.** 2930005415-61
Update 2

6.  The fact that the ownership of said land does not include rights of access to or from the street or highway abutting said land, such rights having been relinquished by the map of said tract.

    Affects: Edinger avenue abutting common areas

    Said land however, abuts upon a public thoroughfare other than the road referred to above, over which rights of vehicular ingress and egress have not been relinquished.

7.  Matters in an instrument that, among other things, contain or provide for easements, assessments, liens and their subordination; provisions relating to partition, restrictions on severability of component interest, covenants, conditions and restrictions, which provide that no violation thereof and no enforcement of any lien provided for therein shall defeat or render invalid the lien of a mortgage or deed of trust made in good faith and for value, but omitting any covenants or restrictions if any, based upon race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under Title 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons.

    Recorded        :    May 28, 1980 in Book 13618 of Official Records, Page 982

        Modification thereof, but omitting any covenants or restrictions if any, based upon race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under Title 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons.

        Recorded        :    August 5, 1980 in Book 13690 of Official Records, Page 1091

8.  A lease affecting the premises herein described, executed by and between the parties herein named, with certain terms, covenants, conditions and provisions set forth therein.

    lessor:        Houser Bros, Co., a Limited Partnership
    lessee:        Robert P. Warrington
    recorded:      October 24, 1980 in book 13803, page 640, official records

    The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein.

9.  We find no open Deeds of Trust of record.  Please verify by inquiry of Escrow Personnel and/or Agents whether or not we have overlooked something and advise the Title Department accordingly prior to closing.

ORT 3158-B

OLD REPUBLIC TITLE COMPANY
**ORDER NO.** 2930005415-61
Update 2

10.    Abstract of Judgment for the amount herein stated and any other amounts due.

| | | |
|---|---|---|
| Creditor | : | TD Bank |
| Debtor | : | Jamie L. Gallian |
| Entered | : | October 4, 2016 |
| Court | : | Superior Court of California County of Orange |
| Case No. | : | 30-2013-00863489-CL-CL-CJC |
| Amount | : | $2,179.25 |
| Dated | : | February 10, 2017 |
| Recorded | : | March 9, 2017 in Official Records as Instrument Number 2017-00096952 |

11.    Abstract of Judgment for the amount herein stated and any other amounts due.

| | | |
|---|---|---|
| Creditor | : | Capital One Bank |
| Debtor | : | Jamie L. Galiian |
| Entered | : | August 15, 2017 |
| Court | : | Superior Court of California County of Orange |
| Case No. | : | 30-2017-00925831-CL-CL-CJC |
| Amount | : | $4,332.92 |
| Dated | : | August 17, 2017 |
| Recorded | : | September 6, 2017 in Official Records as Instrument Number 2017-000378355 |

12.    The requirement that this Company be provided with an opportunity to inspect the land. The Company reserves the right to make additional exceptions and/or requirements upon completion of its inspection.

13.    The Homeowner's Policy applies only if each insured named in Schedule A is a Natural Person (as Natural Person is defined in said policy). If each insured to be named in Schedule A is not such a Natural Person, contact the Title Department immediately.

14.    The effect of instruments, proceedings, liens, decrees or other matters which do not specifically describe said land but which, if any do exist, may affect the title or impose liens or encumbrances thereon. The name search necessary to ascertain the existence of such matters has not been completed and, in order to do so, we require a signed Statement of Identity from or on behalf of Jamie L. Gallian.

ORT 3158-B

**OLD REPUBLIC TITLE COMPANY**
**ORDER NO.** 2930005415-61
Update 2

-------------------- **Informational Notes** -------------------

A.  The applicable rate(s) for the policy(s) being offered by this report or commitment appears
to be section(s) 1.1 and 2.1.


B.  The above numbered report (including any supplements or amendments thereto) is hereby
modified and/or supplemented to reflect the following additional items relating to the
issuance of an American Land Title Association loan form policy:

NONE

NOTE: Our investigation has been completed and there is located on said land a
condominium known as 4476 Alderport Unit 53, Huntington Beach, CA 92649.

The ALTA loan policy, when issued, will contain the CLTA 100 Endorsement and 116 series
Endorsement.

Unless shown elsewhere in the body of this report, there appear of record no transfers or
agreements to transfer the land described herein within the last three years prior to the date
hereof, except as follows:

NONE


C.  All transactions that close on or after March 1, 2015 will include a $20.00 minimum recording
service fee, plus actual charges required by the County Recorder.

ORT 3158-B

**ORDER NO. :** 2930005415

# EXHIBIT A

The land referred to is situated in the County of Orange, City of Huntington Beach, State of California, and is described as follows:

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN {"THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

APN: 937-630-53

**BS-INVESTORS - HB GABLES**
c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

Jamie Gallian
4476 Alderport Drive
Huntington Beach, CA  92649

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 06/19/17 |
| Payment: | _____ |

JUL-SEP 2017 3RD QTR GROUND RENT
DELINQUENT IF NOT RECEIVED BY JULY 10, 2017

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | -2,144.73 |
| 07/01/17 | Ground Rent (07/2017) | 2,144.73 | | 0.00 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:        **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | -2,144.73 | 0.00 | 0.00 |

# BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 09/14/17 |
| Payment: | _____ |

Jamie Gallian
4476 Alderport Drive
Huntington Beach, CA  92649

· ' 4th QTR - Oct-Dec 2017
DELINQUENT IF NOT RECEIVED BY 10/10/2017

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 10/01/17 | Ground Rent (10/2017) | 2,144.73 | | 2,144.73 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:          **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|---|
| 0.00 | 0.00 | | | 0.00 | 0.00 | 2,144.73 |

## BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 12/18/17 |

Jamie Gallian
**4476 Alderport Drive**
**Huntington Beach, CA   92649**

Payment:    _____

.· 1st QTR Jan-Mar 2018
Delinquent if not received by January 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 01/01/18 | Ground Rent (01/2018) | 2,211.22 | | 2,211.22 |

1st QUARTER 2018 GROUND RENT ($2,144.73 + $66.49 CPI INCREASE)
TOTAL = $2,211.22

ENCLOSURES:

(1)   Schedule entitled "Calculation of Rent Increase 1/1/2018" (see reverse side)
(2)   U.S. Department of Labor, Bureau of Labor Statistics Consumer Price Index
(3)   Excerpt from First Amendment to Condominium Sublease

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:    **BS INVESTORS-GABLES HB**

Thank you and Happy Holidays from
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |

# BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 03/15/18 |

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA  92649**

Payment:    _____

2nd QTR Apr-Jun 2018
Delinquent if not received by April 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 04/01/18 | Ground Rent (04/2018) | 2,211.22 | | 2,211.22 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter.  Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:        **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |

# BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 06/15/18 |
| Payment: | _____ |

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA  92649**

Jul-Sep 2018 Quarterly Ground Rent
Delinquent if not received by July 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | -0.78 |
| 07/01/18 | Ground Rent (07/2018) | 2,211.22 | | 2,210.44 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to: **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,210.44 |

# BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

Account:     ghb - 053 - 053gal

Date:        09/15/18

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA   92649**

Payment:     _____

Oct-Dec 2018 Quarterly Ground Rent
Delinquent if not received by Oct 10, 2018

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
|  | Balance Forward |  |  | 0.00 |
| 10/01/18 | Ground Rent (10/2018) | 2,211.22 |  | 2,211.22 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:     **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---------|---------|---|---------|---------|------------|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |

RECORDING REQUESTED BY
LAWYERS TITLE CO.

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

30.00

19990542301 3:57pm 07/23/99
005 16020670 16 21
M11 9 6.00 24.00 0.00 0.00 0.00 0.00

BS INVESTORS, LLC
c/o Barry Brief, Manager
10 Monarch Bay Plaza, Suite "B"
Dana Point, CA 92629

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Documentary Transfer Tax: _____

## MEMORANDUM OF ASSIGNMENT OF GROUND LEASE AND SUBLEASES

    1.   This Memorandum of Assignment of Ground Lease and Subleases ("Memorandum") is made and entered into by and between G/HB INVESTORS, a California limited partnership ("G/HB") and BARRY BRIEF, TRUSTEE OF THE BARRY BRIEF TRUST DATED MAY 11, 1992 ("Brief Trust") (G/HB and Brief Trust are sometimes collectively referred to herein as "Assignor") and BS INVESTORS, LLC, a California limited liability company ("Assignee").

    2.   Assignor has assigned to Assignee all of its right, title and interest in and to a certain ground lease and subleases covering real property located in the City of Huntington Beach, County of Orange, State of California, as more particularly described on attached Exhibit "A", which is incorporated herein by this reference pursuant to the terms and conditions of that certain unrecorded Assignment and Assumption of Interests in Ground Lease and Subleases dated   July 12, 1999, by and between Assignor and Assignee (the "Assignment"). The terms and conditions of the Assignment are incorporated herein by this reference.

    3.   Houser Bros. Co., a California limited partnership, the Landlord under the terms of the ground lease ("Landlord"), has provided its consent to the Assignment.

[SIGNATURES ON FOLLOWING PAGE]

DOCUMENTARY TRANSFER TAX $ .......... NONE *

COMPUTED ON FULL VALUE OF PROPERTY CONVEYED

OR COMPUTED ON FULL VALUE LESS LIENS AND
ENCUMBRANCES REMAINING AT TIME OF SALE

UNDERSIGNED ASSIGNOR
Signature of Declarant or Agent determining tax, Firm Name

* Term of Lease Less Than
99 Years

STATE OF CALIFORNIA          )
                            ) ss.
COUNTY OF ORANGE             )

On July 12_____, 1999 before me, Sherle M. Springer
Notary Public, personally appeared BARRY BRIEF, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her authorized capacity,
and that by his/her signature on the instrument the person, or the entity upon behalf of which the
person acted, executed the instrument.



WITNESS my hand and official seal.

Signature of Notary

(SEAL)


STATE OF CALIFORNIA          )
                            ) ss.
COUNTY OF ORANGE             )

On July 12_____, 1999 before me, Sherle M. Springer
Notary Public, personally appeared HUGH M. SADDINGTON, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her authorized capacity,
and that by his/her signature on the instrument the person, or the entity upon behalf of which the
person acted, executed the instrument.

WITNESS my hand and official seal.

Signature of Notary

(SEAL)

3

Executed on July 15, 1999 at Huntington Beach California.

"ASSIGNOR"

BARRY BRIEF, TRUSTEE OF THE
THE BARRY BRIEF TRUST DATED
MAY 11, 1992

By: _____
        Barry Brief, Trustee

G/HB INVESTORS, a California limited
partnership

By: LPL Asset Management Corporation,
      a California corporation

By: _____
        Hugh M.  Saddington,  President

"ASSIGNEE"

BS INVESTORS, LLC, a California limited
liability company

By: _____
        Barry Brief
Its: Manager

"LANDLORD"

HOUSER BROS. CO., a California
limited liability company

By: _____
        Clifford C. Houser, General Partner

2

STATE OF CALIFORNIA       )
                                     ) ss.

COUNTY OF ORANGE        )

        On __July 15_____, 1999 before me, __Virginia Langham_____,
Notary Public, personally appeared CLIFFORD C. HOUSER, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her authorized capacity,
and that by his/her signature on the instrument the person, or the entity upon behalf of which the
person acted, executed the instrument.



WITNESS my hand and official seal.

_Virginia Langham_
Signature of Notary

(SEAL)

ORDER NO.:  9904983-12

**EXHIBIT A (LEGAL)**

Parcel 1:

Units 1 through 80 inclusive as shown and defined on a Condominium Plan (the "Condominium
Plan") recorded in Book 13358, Pages 1193 and following of Official Records of Orange
County, California, excepting that portion consisting of buildings and other
improvements.

Parcel 2:

An undivided eighty/eightieths (80/80) interest in the Common Area of Lots 1 and 2 of
Tract No. 10542, in the City of Huntington Beach, County of Orange, State of California,
as shown on a map recorded in Book 456, Pages 49 and 50 of Miscellaneous Maps, records of
Orange County, California, as shown and defined on the Condominium Plan, excepting that
portion consisting of buildings and other improvements.

Parcel 3:

Those portions of Units 1 through 80 inclusive, as shown and defined on the Condominium
Plan, consisting of buildings and other improvements.

Parcel 4:

An undivided eighty/eightieths (80/80) interest in and to those portions of the Common
Area as shown and defined on the Condominium Plan, consisting of buildings or other
improvements.

Parcel 5:

An easement for the exclusive use and occupancy of those portions of the restricted
Common Area, as defined on said Condominium Plan for entry and staircases and attic space
relating to said units.

Parcel 6:

A non-exclusive easement and right to use the Common Area as defined on said Condominium
Plan, except the restricted Common Area.

RECEIVED
Headquarters
Subdivisions
JUL 16 1980
Department of Real Estate

**DEPARTMENT OF REAL ESTATE
OF THE
STATE OF CALIFORNIA**

(213) 620-2700

RECEIVED

JUL 1 1 1980

Dept. of Real Estate
Los Angeles Subdivisions

CONDOMINIUMS

In the matter of the application of

ROBERT P. WARMINGTON COMPANY,
A California Corporation

for a Final Subdivision Public Report on

TRACT NUMBER 10542
THE GABLES-HUNTINGTON BEACH

ORANGE COUNTY, CALIFORNIA

**FINAL SUBDIVISION
PUBLIC REPORT**

| | |
|---|---|
| FILE NO. | 46,370 LA |
| ISSUED | JUNE 19, 1980 |
| EXPIRES | JUNE 18, 1985 |

**This Report Is Not a Recommendation or Endorsement of the Subdivision
But Is Informative Only.**

**Buyer or Lessee Must Sign That He Has Received and Read This Report.**

This Report Expires on Date Shown Above. If There Has Been a Material Change in the Offering, an Amended Public Report Must Be Obtained and Used in Lieu of This Report.

Section 35700 of the California Health and Safety Code provides that the practice of discrimination because of race, color, religion, sex, marital status, national origin or ancestry in housing accommodations is against public policy.

Under Section 125.6 of the California Business and Professions Code, California real estate licensees are subject to disciplinary action by the Real Estate Commissioner if they make any discrimination, distinction or restriction in negotiating a sale or lease of real property because of the race, color, sex, religion, ancestry or national origin of the prospective buyer. If any prospective buyer or lessee believes that a licensee is guilty of such conduct, he or she should contact the Department of Real Estate.

Information Regarding Schools can be found on Page      8 and 9 of this report.

READ THE ENTIRE REPORT on the following pages before contracting to purchase a lot in this SUBDIVISION.

SPECIAL NOTES

1. THE UNIFORM BUILDING CODE, CHAPTER 70, PROVIDES FOR LOCAL BUILD-
ING OFFICIALS TO EXERCISE PREVENTIVE MEASURES DURING GRADING TO
ELIMINATE OR MINIMIZE DAMAGE FROM GEOLOGIC HAZARDS SUCH AS LAND-
SLIDES, FAULT MOVEMENTS, EARTHQUAKE SHAKING, RAPID EROSION OR
SUBSIDENCE.   THIS SUBDIVISION IS LOCATED IN AN AREA WHERE SOME
OF THESE HAZARDS MAY EXIST.   SOME CALIFORNIA COUNTIES AND CITIES
HAVE ADOPTED ORDINANCES THAT MAY OR MAY NOT BE AS EFFECTIVE IN
THE CONTROL OF GRADING AND SITE PREPARATION.

PURCHASERS MAY DISCUSS WITH THE DEVELOPER, THE DEVELOPER'S ENGI-
NEER, THE ENGINEERING GEOLOGIST AND THE LOCAL BUILDING OFFICIALS
TO DETERMINE IF THE ABOVE-MENTIONED HAZARDS HAVE BEEN CONSIDERED
AND IF THERE HAS BEEN ADEQUATE COMPLIANCE WITH CHAPTER 70 OR AN
EQUIVALENT OR MORE STRINGENT GRADING ORDINANCE DURING THE CON-
STRUCTION OF THIS SUBDIVISION.

2. NO ESCROWS FOR THE SALE OF UNITS WILL CLOSE UNTIL ALL SOILS AND
FILL WORK HAS BEEN PERFORMED IN ACCORDANCE WITH THE RECOMMENDA-
TIONS OF THE SOILS ENGINEER AND A NOTICE OF COMPLETION COVERING
THE COMMON AREA IMPROVEMENTS HAS BEEN FILED OF RECORD.

3. THIS PROJECT IS A COMMON-INTEREST SUBDIVISION OF THE TYPE RE-
FERRED TO AS A "CONDOMINIUM".   IT WILL BE OPERATED BY AN INCOR-
PORATED OWNERS ASSOCIATION.

4. SINCE THE COMMON PROPERTY AND FACILITIES WILL BE MAINTAINED BY
AN ASSOCIATION OF HOMEOWNERS, AND IT'S ESSENTIAL THAT THIS ASSO-
CIATION BE FORMED EARLY AND PROPERLY, THE DEVELOPER MUST:

   a.  COMPLETE ALL COMMON FACILITIES BY APPROXIMATELY JUNE, 1980.
       (SECTION 11018.5 OF THE BUSINESS AND PROFESSIONS CODE.); AND

   b.  PAY ALL THE MONTHLY ASSESSMENTS WHICH HE OWES TO THE HOME-
       OWNERS ASSOCIATION FOR UNSOLD UNITS.   THE PAYMENTS MUST COM-
       MENCE ON THE FIRST DAY OF THE MONTH AFTER SUBDIVIDER CLOSES
       FIRST SALE.   (REGULATIONS 2792.9 AND 2792.16).

THE HOMEOWNER ASSOCIATION MUST:

   c.  CAUSE THE FIRST ELECTION OF THE ASSOCIATION'S GOVERNING BODY
       TO BE HELD WITHIN 45 DAYS AFTER 51% SELL-OUT, OR IN ANY
       EVENT, NO LATER THAN SIX MONTHS AFTER CLOSING THE FIRST
       SALE.   (REGULATIONS 2792.17 AND 2792.19); AND

   d.  PREPARE AND DISTRIBUTE TO ALL HOMEOWNERS A BALANCE SHEET AND
       INCOME STATEMENT.   (REGULATION 2792.22).

# COMMON INTEREST SUBDIVISION GENERAL INFORMATION

The project described in the attached Subdivision Public Report is known as a common-interest subdivision. Read the Public Report carefully for more information about the type of subdivision. The subdivision includes common areas and facilities which will be owned and/or operated by an owners' association. Purchase of a lot or unit automatically entitles and obligates you as a member of the association and, in most cases, includes a beneficial interest in the areas and facilities. Since membership in the association is mandatory, you should be aware of the following information before you purchase:

Your ownership in this development and your rights and remedies as a member of its association will be controlled by governing instruments which generally include a Declaration of Restrictions (also known as CC&R's), Articles of Incorporation (or association) and Bylaws. The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law. Study these documents carefully before entering into a contract to purchase a subdivision interest.

In order to provide funds for operation and maintenance of the common facilities, the association will levy assessments against your lot/unit. If you are delinquent in the payment of assessments, the association may enforce payment through court proceedings or your lot/unit may be liened and sold through the exercise of a power of sale. The anticipated income and expenses of the association, including the amount that you may expect to pay through assessments, are outlined in the proposed budget. Ask to see a copy of the budget if the subdivider has not already made it available for your examination.

A homeowner association provides a vehicle for the ownership and use of recreational and other common facilities which were designed to attract you to buy in this subdivision. The association also provides a means to accomplish architectural control and to provide a base for homeowner interaction on a variety of issues. The purchaser of an interest in a common-interest subdivision should contemplate active participation in the affairs of the association. He or she should be willing to serve on the board of directors or on committees created by the board. In short, "they" in a common-interest subdivision is "you". Unless you serve as a member of the governing board or on a committee appointed by the board, your control of the operation of the common areas and facilities is limited to your vote as a member of the association. There are actions that can be taken by the governing body without a vote of the members of the association which can have a significant impact upon the quality of life for association members.

Until there is a sufficient number of purchasers of lots or units in a common-interest subdivision to elect a majority of the governing body, it is likely that the subdivider will effectively control the affairs of the association. It is frequently necessary and equitable that the subdivider do so during the early stages of development. It is vitally important to the owners of individual subdivision interests that the transition from subdivider to resident-owner control be accomplished in an orderly manner and in a spirit of cooperation.

When contemplating the purchase of a dwelling in a common-interest subdivision, you should consider factors beyond the attractiveness of the dwelling units themselves. Study the governing instruments and give careful thought to whether you will be able to exist happily in an atmosphere of cooperative living where the interests of the group must be taken into account as well as the interests of the individual. Remember that managing a common-interest subdivision is very much like governing a small community . . . the management can serve you well, but you will have to work for its success.



SPECIAL NOTES (Continued)

5. THE SUBDIVIDER HAS STATED THAT HE WILL PROVIDE YOU WITH A COPY
OF THE ARTICLES OF INCORPORATION, RESTRICTIONS AND BYLAWS, ONLY
BY POSTING THEM IN A PROMINENT LOCATION IN THE SALES OFFICE.
THESE DOCUMENTS CONTAIN NUMEROUS MATERIAL PROVISIONS THAT SUB-
STANTIALLY AFFECT AND CONTROL YOUR RIGHTS, PRIVILEGES, USE, OB-
LIGATIONS AND COSTS OF MAINTENANCE AND OPERATION.  YOU SHOULD
READ AND UNDERSTAND THESE DOCUMENTS BEFORE YOU OBLIGATE YOURSELF
TO PURCHASE A UNIT.

6. THE SUBDIVIDER STATED HE WILL NOT FURNISH THE CURRENT BOARD OF
OFFICERS OF THE HOMEOWNERS ASSOCIATION THE BUILDING PLANS TO IN-
CLUDE DIAGRAMS OF LOCATION OF MAJOR COMPONENTS, UTILITIES, AND
RELATED DATA.

THESE ITEMS WILL BE IMPORTANT TO THE BOARD OF OFFICERS OR THOSE
WHO WILL MANAGE OR REPAIR COMMON FACILITIES IN THIS SUBDIVISION.

7. SINCE THE SUBDIVIDER STATES HE WILL NOT FURNISH THE SAID PLANS
AND DIAGRAMS, THE BOARD OF OFFICERS OF THE HOMEOWNER ASSOCIATION
SHOULD TRY TO OBTAIN THEM FROM THE CONTRACTORS WHO WORKED ON THE
PROJECT OR FROM THE COUNTY/CITY BUILDING DEPARTMENT.

8. THE SUBDIVIDER HAS AN INTEREST IN THE ESCROW COMPANY WHICH IS TO
BE USED IN CONNECTION WITH THE SALE OR LEASE OF UNITS IN THIS
SUBDIVISION.    THE NATURE OF THE SUBDIVIDER'S INTEREST IS SET
FORTH IN THE ESCROW INSTRUCTIONS WHICH ARE TO BE USED.

9. IF YOU ACQUIRE TWO OR MORE UNITS YOU MAY BE REQUIRED TO OBTAIN
AN AMENDED PUBLIC REPORT BEFORE OFFERING TWO OR MORE OF THE
UNITS FOR SALE TO OTHERS.  IF YOU INTEND TO SELL TWO OR MORE
UNITS OR LEASE THEM FOR MORE THAN ONE YEAR, YOU ARE REQUIRED TO
OBTAIN AN AMENDED SUBDIVISION PUBLIC REPORT BEFORE YOU CAN OFFER
THE UNITS FOR SALE OR LEASE.

10. WARNING:  WHEN YOU SELL YOUR LEASEHOLD INTEREST IN A CONDOMINIUM
UNIT TO SOMEONE ELSE, YOU MUST GIVE THAT PERSON A COPY OF THE
DECLARATION OF RESTRICTIONS, THE ARTICLES OF INCORPORATION AND
OF THE BYLAWS.  IF YOU FORGET TO DO THIS, IT MAY COST YOU A PEN-
ALTY OF $500.00 -- PLUS ATTORNEY'S FEES PLUS DAMAGES.  (SEE
CIVIL CODE SECTION 1360.)

INTERESTS TO BE CONVEYED:  You will receive a lease to a specified
unit, together with an undivided fractional leasehold interest as a
tenant in common in the common area together with a membership in
"The Gables-Huntington Beach Homeowners Association" and rights to
use the common area.

LOCATION AND SIZE:  This subdivision is located at Edinger Avenue and Monterey Street within the city limits of Huntington Beach and is serviced by the usual city amenities.

This is a single phase project which consists of approximately 7.605 acres on which twenty buildings containing 80 units and 100 garage spaces, 100 driveway spaces, 59 on-street guest spaces and 53 off-street guest space will be constructed, together with common facilities consisting of a swimming pool, jacuzzi, cabana, volley ball court, landscaped areas and private drives which will be constructed

MANAGEMENT AND OPERATION:  The Gables-Huntington Beach Homeowners Association, which you must join, manages and operates the common areas in accordance with the Restrictions, Articles of Incorporation and the Bylaws.

MAINTENANCE AND OPERATIONAL EXPENSES:  The subdivider has submitted a budget for the maintenance and operation of the common areas and for long-term reserves.  This budget was reviewed by the Department of Real Estate.  You should obtain a copy of this budget from the subdivider.  Under this budget, the monthly assessment against each subdivision unit is $65.74 of which $13.84 is a monthly contribution to long-term reserves and is not to be used to pay for current operating expenses.

> IF THE BUDGET FURNISHED TO YOU BY THE DEVELOPER
> SHOWS A MONTHLY ASSESSMENT FIGURE WHICH VARIES
> 10% OR MORE FROM THE ASSESSMENT AMOUNT SHOWN IN
> THIS PUBLIC REPORT, YOU SHOULD CONTACT THE DE-
> PARTMENT OF REAL ESTATE BEFORE ENTERING INTO AN
> AGREEMENT TO PURCHASE.

The association may increase or decrease assessments at any time in accordance with the procedure prescribed in the CC&R's or Bylaws. In considering the advisability of a decrease (or a smaller increase) in assessments, care should be taken not to eliminate amounts attributable to reserves for replacement or major maintenance.

> EXPENSES OF OPERATION ARE DIFFICULT TO PREDICT
> ACCURATELY AND EVEN IF ACCURATELY ESTIMATED
> INITIALLY, MOST EXPENSES INCREASE WITH THE AGE
> OF FACILITIES AND WITH INCREASES IN THE COST OF
> LIVING.

Monthly assessments will commence on all units during the month following the closing of the first sale of a unit.  From that time, the subdivider is required to pay the association a monthly assessment for each unit which he owns, which has not been leased.

The remedies available to the association against owners who are delinquent in the payment of assessments are set forth in the CC&R's. These remedies are available against the subdivider as well as against other owners.

MAINTENANCE AND OPERATIONAL EXPENSES:  (Continued)

The subdivider has posted a bond as partial security for his obliga-
tion to pay these assessments.  The governing body of the associa-
tion should assure itself that the subdivider has satisfied his ob-
ligations to the association with respect to the payment of assess-
ments before agreeing to a release or exoneration of the security.

EASEMENTS:  Easements for utilities and other purposes are shown on
the Title Report and Subdivision Map recorded in the Office of the
Orange County Recorder, Book 456 of Miscellaneous Maps, Pages 48
thru 49 and Condominium Plan recorded in Book 13358, Page 1193.

TITLE:  Title is vested in Houser Bros. Co., a limited partnership,
subject to:

A Ground Lease dated October 19, 1979, executed by Houser Bros. Co.,
a limited partnership, as Lessor, and Robert P. Warmington, a
married man, as Lessee, a memorandum of which was recorded October
22, 1979 in Book 13362, Page 320 of Official Records and re-recorded
December 6, 1979 in Book 13424, Page 499 of Official Records.
Robert P. Warmington in turn has sublet the Ground Lease to Robert
P. Warmington Co., a California corporation, the applicant.

RESTRICTIONS:  This subdivision is subject to Restrictions recorded
in the Office of the Orange County Recorder, Book 13618, Page 982.

> FOR INFORMATION AS TO YOUR OBLIGATIONS AND RIGHTS,
> YOU SHOULD READ THE RESTRICTIONS.  THE SUBDIVIDER
> SHOULD MAKE THEM AVAILABLE TO YOU.

WATER RIGHTS:  You will not own the water rights under your land be-
low a depth of 500 feet.  These have been dedicated to the City of
Huntington Beach.  The right to surface entry has been waived.

USES AND ZONING:  Property to the south is zoned MH (Mobilehome).

TAXES:  The maximum amount of any tax on real property that can be
collected annually by counties is 1% of the full cash value of the
property.  With the addition of interest and redemption charges on
any indebtedness, approved by voters prior to July 1, 1978, the to-
tal property tax rate in most counties is approximately 1.25% of the
full cash value.

For the purchaser of a lot or unit in this subdivision, the "full
cash value" of the lot or unit will be the valuation, as reflected
on the tax roll, determined by the county assessor as of the date of
purchase of the lot or unit or as of the date of completion of an
improvement on the lot if that occurs after the date of purchase.

CONDITIONS OF SALE:  If your purchase involves financing, a form of deed of trust and note will be used.  These documents may contain the following provisions:

An Acceleration Clause.  This means that if you sell the property or default in your payment, the lender may declare the entire unpaid loan balance immediately due and payable.

A Late Charge.  This means that if you are late in making your monthly payment you may have to pay an additional amount as a penalty.

A Prepayment Penalty.  This means that if you wish to pay off your loan in whole or in part before it is due, you may be required to pay an additional amount as a penalty in accordance with the terms of the loan.

Transfer of the interest to the purchaser may be by a lease.  Your rights and responsibilities are governed by the specific terms of such lease.  You should read the entire lease.

The lease includes the following provision:

If you do not pay your installment on time, you may lose your property and all money you have paid in.

BEFORE SIGNING, YOU SHOULD READ AND THOROUGHLY
UNDERSTAND ALL LOAN DOCUMENTS.

PURCHASE MONEY HANDLING:  The subdivider must impound all funds received from you in an escrow depository until legal title is delivered to you.  (Refer to Sections 11013 and 11013.2(a) of the Business and Professions Code.)

If the escrow has not closed on your unit within one (1) year of the date of your deposit receipt, you may request return of your deposit.

FILLED GROUND:  The common area contains filled ground varying to a maximum depth of 3.6 feet.  These soils are to be properly compacted for the intended use under the supervision of a State licensed engineer.

FLOOD AND DRAINAGE:  Orange County advises as follows:

The land lies within the historic floodplain of the Santa Ana River where the risk of floodng has been substantially reduced since the completion of Prado Dam and Reservoir by the U. S. Corps of Engineers in 1941.  The largest flood-producing storm since completion of the dam occurred in 1969, an event which to the best information now available can be expected to recur on an average of 25 to 30 years over a long period of time.  Peak discharges in 1969 seriously damaged the Santa Ana River levees within Orange County, but no outbreak occurred and the levees have now been repaired.

FLOOD AND DRAINAGE: (Continued)

In a report entitled "Flood Insurance Study Huntington Beach,
California" prepared by the U. S. Army Corps of Engineers for the
Federal Insurance Administration, the Corps of Engineers indicates
that the occurrence of a storm with a recurrence interval approxi-
mating 50 years or greater will generate flows exceeding the present
capacity of the Santa Ana River Channel.  Such flows will cause
breaching of the river levee at indeterminable locations followed by
widespread flooding of the Talbert Valley.  It is believed impos-
sible to predict in advance where such break-out might occur or what
particular area would subsequently be inundated.

The Corps of Engineers recently completed a study proposing modifi-
cation to the Santa Ana River in the County of Orange, to Prado Dam,
and the construction of an additional dam in the Mentone area of San
Bernardino County.  However, it is impossible to predict when pro-
ject authorization will be made by Congress, the appropriation
approved, and the actual construction accomplished.

It is the opinion of this office that upon completion of the con-
struction in accordance with the proposed grading, storm drain and
street plans, the improvements on the building pads will be pro-
tected from flooding from storms occurring on an average of once
every 50 years or less.

PUBLIC TRANSPORTATION:  Bus service is available adjacent to the
site on Edinger Avenue.

SCHOOLS:  The Ocean View School District provides the following in-
formation:

| School | Distance |
|---|---|
| Haven View School | 1/4 mile |
| 16081 Waikiki Lane | |
| Huntington Beach, California | |

The projected enrollment from the proposed tract is twenty K-8 grade
students.  The capacity of Haven View School is 510 and enrollment
is 447.

The District shall provide free transportation to and from school
for pupils who live beyond the minimum distances, as measured by the
shortest route.  Where hazardous conditions exist, transportation
may be provided for students who live less than the minimum dis-
tances.  Handicapped children will be provided transportation as
needed.

The Huntington Beach Union High School District provides the fol-
lowing information:

| School | Distance |
|---|---|
| Marina High School | 1.7 miles |
| 15871 Springdale | |

SCHOOLS:  (Continued)

Transportation is furnished at District expense to students living a
distance fo more than three miles from their schools.

Huntington Beach Union High School District has six comprehensive
high schools with a total capacity of 16,367 and a current enroll-
ment of 21,346.  This student overload is being accommodated by tem-
porary structures and extended day schedule.  The impact of con-
tinued enrollment growth will accelerate the extension of the school
day and the continued implementation of other housing alternatives
until a new high school is constructed.  Any new housing must be
considered  carefully  based  on  the  availability  of  schools  in
Huntington Beach Union High School District.

NOTE:    This school information was correct as of the
         date of this report.  Purchasers may contact
         the local school district for current infor-
         mation on school assignments, facilities and
         bus service.

For further information in regard to this subdivision, you may call
(213) 620-2700 or examine the documents at the Department of Real
Estate, 107 South Broadway, Suite 7001, Los Angeles, CA 90012.

# Title Chain & Lien Report

**16222 Monterey Ln, Huntington Beach, CA 92649-6214**
APN: 178-011-16

Orange County Data as of: 08/03/2020

| | | | |
|---|---|---|---|
| Search Start Date: | 01/01/1967 | Start Date: | 01/01/1967 |
| Search End Date: | 08/19/2020 | End Date: | 08/19/2020 |

| Date | Type | Grantor | Grantee | Document # | Doc Ref. |
|---|---|---|---|---|---|
| 10/22/1979 | Lease | Warmington Robert | Robert P Warmington | 13362.317 | |
| 10/22/1979 | Lease | Houser Bros | Warmington Robert | 13362.320 | |
| 11/06/1979 | Cancellation | Houser Bros | | 13383.1868 | |
| 12/06/1979 | Lease | Houser Bros | Warmington Robert | 13424.499 | |
| 12/06/1979 | Lease | Warmington Robert | Robert P Warmington | 13424.504 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1096 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1130 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1166 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1202 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1232 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1268 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1304 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1340 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1099 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1133 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1169 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1205 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1235 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1271 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1307 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1343 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.192 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.272 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.195 | |



| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.275 | |
| 09/26/1980 | Plat, County Miscellaneous Plat | | | 13760.957 | |
| 10/03/1980 | Release | | | 13773.4 | |
| 10/03/1980 | Release | | | 13773.7 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1726 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1779 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1729 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1782 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1775 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1828 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1778 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1831 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.949 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.952 | |
| 07/06/1990 | Deed | Houser Bros | Houser Bros | 1990.357100 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | Union Bank | 1990.357101 | 342851 |
| ⌃ 07/21/1997 | Amendment | Houser Bros | | 1997.342851 | |
| 10/06/1993 | Deed | Malmborg Jack N & | Malmborg Jack N & | 1993.678726 | |
| 10/08/1993 | Declaration Of Homestead | Sullivan John L | | 1993.686386 | |
| 01/27/1994 | Declaration Of Homestead | Gibbons Robert L | | 1994.66495 | |
| 07/13/1994 | Declaration Of Homestead | Hunn Nancy C | | 1994.451177 | |
| 01/28/1997 | Declaration Of Homestead | Rounds Royal E | | 1997.40615 | |
| 07/31/1998 | Reconveyance | | | 1998.499256 | |
| 06/19/2000 | Declaration Of Homestead | Newton Carol A | | 2000.321481 | |
| 08/23/2007 | Declaration Of Homestead | Moomau Linda Charl | | 2007.523219 | |
| 09/15/2014 | Declaration Of Homestead | Radzinski Linda M | | 2014.372099 | |
| 05/22/2017 | Declaration Of Homestead | Vanzyl Yvonne H | | 2017.208348 | |

## Liens, Filings & Judgments
16222 Monterey Ln, Huntington Beach, CA 92649-6214

| | | | | | |
|---|---|---|---|---|---|
| Search Start Date: | 01/01/1967 | Name(s) Searched: | Houser Bros Co, Houser Bros Co Trust | | |
| Search End Date: | 08/19/2020 | Match: | Exact | | |

| Date | Type | | Subject Name | | Document # | Doc Ref. |
|---|---|---|---|---|---|---|



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

| Date | Document | Party | Reference | |
|---|---|---|---|---|
| 06/10/1971 | Certificate Of Partnership | | 9672.175 | |
| 07/31/1972 | Certificate Of Partnership | Houser Bros | 10251.992 | |
| 08/17/1976 | Amendment | Houser | 11854.900 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.281 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.291 | |
| 11/04/1983 | Lien | Houser Bros | 1983.499211 | 282543 |
| ^ 07/31/1985 | Release | Houser Bros | 1985.282543 | |
| 05/02/1989 | Amendment | Houser | 1989.232116 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | 1990.357101 | 342851 |
| ^ 07/21/1997 | Amendment | | 1997.342851 | |
| 07/09/1990 | Certificate Of Partnership | Houser Bros | 1990.361236 | |
| 07/31/1998 | Reconveyance | | 1998.499256 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008431 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008432 | |
| 04/03/2006 | State Tax Lien | Houser Brothers | 2006.219506 | 409646 |
| ^ 07/30/2009 | Release | Houser Brothers | 2009.409646 | |
| 12/03/2008 | State Tax Lien | Houser Brothers | 2008.557266 | 409647 |
| ^ 07/30/2009 | Release | Houser Brothers | 2009.409647 | |
| 07/01/2009 | Release | Houser Brothers | 2009.347624 | |
| 12/03/2010 | State Tax Lien | Houser Brothers | 2010.652383 | 157636 |
| ^ 03/28/2011 | Release | Houser Brothers | 2011.157636 | |
| 06/14/2011 | Release | Houser | 2011.290442 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636007 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636008 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469087 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469088 | |
| 11/08/2016 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2016.564698 | |
| 11/19/2019 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2019.480966 | 8699 |
| ^ 01/08/2020 | Release | Houser Bros Co | 2020.8699 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

Branch :A14 User :2004    Comment:

Case 8:21-bk-11710-SC   Doc 315   Filed 01/31/23   Entered 01/31/23 16:09:31   Desc   Station Id :M3Y7
Main Document    Page 92 of 102



RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California 92714

8347

32442

$5.00

$6.00
C1

BK 13362 PG 317
BK 13424 PG 504

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:01 A.M. OCT 22 1979

LEE A. BRANCH, County Recorder

Space Above This Line for Recorder's Use Only

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS. CO.

GROUND SUBLEASE
(SHORT FORM—MEMORANDUM)

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

-8 15 PM DEC 6 1979

LEE A. BRANCH, County Recorder

THIS GROUND SUBLEASE (SHORT FORM—MEMORANDUM) is made this
19th day of October , 1979, by and between ROBERT P.
WARMINGTON (hereinafter "Landlord") and THE ROBERT P. WARMINGTON CO.,
a California Corporation (hereinafter "Tenant"), upon the following
terms and conditions:

W I T N E S S E T H:

1. Landlord leases to Tenant that certain real property
(the "leased land") located in the City of Huntington Beach, County of
Orange, State of California, which leased land is described on
Exhibit "A" attached hereto and made a part hereof, at the rental and
upon all of the terms and conditions set forth in that certain unrecorded
Ground Sublease of even date between Landlord and Tenant which is
incorporated herein by this reference.

2. The Property is leased for a term of eighty (80) years,
commencing as of October 19 , 19 79 and ending
October 18 , 2059 . The aforementioned incorporated Ground Sublease
provides, among other things, that it shall terminate as to the real
property covered by a Consumer Sublease (as defined in said incorporated
Ground Sublease) upon the commencement of the term of such Consumer
Sublease.

3. The aforementioned incorporated Ground Sublease provides,
among other things, that the Tenant shall pay all taxes, general and
special assessments and other charges which, during the term of this
lease, may be levied upon or assessed against the leased land and all
interests therein.

4. The aforementioned incorporated Ground Sublease also
provides, among other things, that Tenant shall not encumber, assign or
otherwise transfer said Sublease, or sublet the whole or any part of
the leased land without the prior written consent and approval of
Landlord, except as otherwise expressly permitted in said incorporated
Ground Sublease.

5. Landlord hereby irrevocably makes, constitutes and
appoints Tenant as Landlord's true and lawful attorney for him and
in his name, place and stead and for his use and benefit to exercise
any or all of the following powers as to the leased land, any interest
therein and/or any building or other improvement thereon: To undertake
any and all construction activities on or in connection with the leased
land and to execute on behalf of Landlord if Landlord has not executed
the same, as provided and within the time period set forth in said
incorporated Ground Sublease, any map, permit, application, survey,
report, approval, easement deed or other documents as are necessary or
convenient to obtain the required approvals, permits or other action of
the City of Huntington Beach, the County of Orange, California, and

BK 13362 PG 318
BK 13424 PG 505

other governmental and quasi governmental authorities, including public
utilities, for the development of the leased land in the manner
contemplated by said incorporated Ground Sublease, giving and granting
unto his said attorney full power and authority to do and perform all
and every act and thing whatsoever requisite, necessary or appropriate
to be done in and about the leased land as fully to all intents and
purposes as he might or could do if personally present, hereby ratifying
all that his said attorney shall lawfully do or cause to be done by
virtue of these presents. It is expressly agreed and understood that
the foregoing power of attorney is coupled with an interest.

6. Should there be any inconsistency between the terms of
this instrument and the Ground Sublease incorporated herein, the terms
of said incorporated Ground Sublease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused
this Short-Form-Memorandum of Ground Sublease to be duly executed as
of the day and year first above written.

LANDLORD:

Robert P. Warmington

TENANT:

The Robert P. Warmington Co.,
a California Corporation

By
Roger D. Darnell
Vice President

STATE OF CALIFORNIA)
COUNTY OF ORANGE )ss:
    On October 19        , 1979, before me, the undersigned, a Notary
Public in and for said State, personally appeared ROBERT P. WARMINGTON
known to me to be the person whose name is subscribed to the within
instrument and acknowledged to me that he executed the same.
    WITNESS my hand and official seal.

        OFFICIAL SEAL
        PEARL L. HUNT
        NOTARY PUBLIC-CALIFORNIA
        ORANGE COUNTY
        My Commission Expires Mar 25, 1983

Pearl L. Hunt

STATE OF CALIFORNIA)
COUNTY OF ORANGE )ss:
    On October 19        , 1979, before me, the undersigned, a Notary
Public in and for said State, personally appeared  ROGER D. DARNELL
known to me to be the Vice President of the Corporation that executed the
within instrument, and known to me to be the person who executed the within
instrument on behalf of the Corporation therein named, and acknowledged to
me that such Corporation executed the within instrument pursuant to its
by-laws or a resolution of its Board of Directors.
    WITNESS my hand and official seal.

        OFFICIAL SEAL
        PEARL L. HUNT
        NOTARY PUBLIC-CALIFORNIA
        ORANGE COUNTY
        My Commission Expires Mar 25, 1983

Pearl L. Hunt

        OFFICIAL SEAL
        PEARL L. HUNT
        NOTARY PUBLIC-CALIFORNIA
        ORANGE COUNTY
        My Commission Expires Mar 25, 1983

-2-

STATE OF CALIFORNIA
COUNTY OF **Orange** } ss.

BK 13424 PG 506

On **December 6, 1979** before me, the undersigned, a Notary Public in and for
said State, personally appeared **Robert P. Warmington**

known to me to be the person _____ whose name _____ **is**
subscribed to the within instrument and acknowledged to me
that _____ **he** _____ executed the same.
WITNESS my hand and official seal.

Signature *Pearl L. Hunt*

**PEARL L. HUNT**
Name (Typed or Printed)

OFFICIAL SEAL
**PEARL L. HUNT**
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

---

STATE OF CALIFORNIA
COUNTY OF **Orange** } ss.

On **December 6, 1979** before me, the undersigned, a Notary Public in and for
said State, personally appeared **Roger D. Darnell**
known to me to be the _____ **vice** President, _____
_____ of the corporation that executed the within instrument,
and known to me to be the persons who executed the within
instrument on behalf of the corporation therein named, and ac-
knowledged to me that such corporation executed the within
instrument pursuant to its by-laws or a resolution of its board of
directors.

WITNESS my hand and official seal.

Signature *Pearl L. Hunt*

**PEARL L. HUNT**
Name (Typed or Printed)

OFFICIAL SEAL
**PEARL L. HUNT**
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

Branch :A14 User :2904      Comment:
Case 8:21-bk-11710-SC   Doc 315   Filed 01/31/23   Entered 01/31/23 16:09:31   Desc
       Main Document    Page 95 of 102      Station Id :M3Y7



BK 13424 PG 507

BK 13362 PG 319

EXHIBIT "A"

PARCEL A:    Tract No. 10542, as shown on a Map recorded
in book 456, pages 49 and 50 of Miscellaneous
Maps, records of Orange County, California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as Per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:    A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"



RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California 92714
Attention: Roger D. Darnell.

8346
32443
$6.00

$7.00
C1

BK 13362 PG 320

BK 13424 PG 498

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:01 A.M. OCT 22 1979
LEE A. BRANCH, County Recorder

(Space above line for Recorder's use only)

RECORDING REQUESTED IN
FIRST AMERICAN TITLE INS. CO.

GROUND LEASE

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY CALIFORNIA

(SHORT FORM — MEMORANDUM)    3:22 PM DEC 6 1979

LEE A. BRANCH, County Recorder

THIS GROUND LEASE (SHORT FORM — MEMORANDUM) is made this 19th day of October , 1979, by and between HOUSER BROS. CO., a limited partnership, organized and existing under the laws of the State of California (hereinafter "Landlord"), and ROBERT P. WARMINGTON, a married man (hereinafter "Tenant"), upon the following terms and conditions:

W I T N E S S E T H :

1. Landlord leases to Tenant that certain real property (the "leased land") located in the City of Huntington Beach, County of Orange, State of California, which leased land is described in Exhibit A attached hereto and made a part hereof, at the rental and upon all the terms and conditions set forth in that certain unrecorded ground lease of even date between Landlord and Tenant which is incorporated herein by this reference.

2. The property is leased for a term of eighty (80) years, commencing as of the date first above written and continuing until the anniversary of the eightieth (80th) year thereafter. The aforementioned incorporated ground lease provides, among other things, that it shall terminate, as to the real property covered by a Residential Lease (as defined in said incorporated ground lease) upon the commencement of the term of such Residential Lease, but not as to the real property covered by a Consumer Sublease or Affiliate Sublease (as defined in said incorporated ground lease).

3. The aforementioned incorporated ground lease provides, among other things, that the Tenant shall pay all taxes, general and special assessments and other charges which, during the term of this lease, may be levied upon or assessed against the leased land and all interests therein.

4. The aforementioned incorporated ground lease also provides, among other things, that Tenant shall not encumber, assign or otherwise transfer said lease, or sublet the whole or any part of the leased land without the prior written consent and approval of Landlord, except as otherwise expressly permitted in said incorporated ground lease.

-1-

BK 13362 PG 321
BK 13424 PG 500

5.    Landlord hereby irrevocably makes, constitutes and appoints Tenant as Landlord's true and lawful attorney for it and in its name, place and stead and for its use and benefit to exercise any/or all of the following powers as to the leased land, any interest therein and/or any building or other improvement thereon. To undertake any and all construction activities on or in connection with the leased land and to execute on behalf of Landlord if Landlord has not executed the same, as provided and within the time period set forth in said incorporated ground lease, any map, permit, application, survey, report, approval, easement deed or other documents as are necessary or convenient to obtain the required approvals, permits or other action of the City of Huntington Beach, the County of Orange, California, and other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated ground lease, giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as it might or could do if personally present, hereby ratifying all that its said attorney shall lawfully do or cause to be done by virtue of these presents.  It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.    Should there be any inconsistency between the terms of this instrument and the ground lease incorporated herein, the terms of said incorporated ground lease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form - Memorandum of Lease to be duly executed as of the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _____
Clifford C. Houser,
General Partner

By _____
Vernon F. Houser,
General Partner

"Landlord"

_____
Robert P. Warmington

"Tenant"

-2-



BK 13362 PG 322
BK 13424 PG 501

EXHIBIT "A"

PARCEL A:    Tract No. 10542, as shown on a Map recorded
in book 456, pages 49 and 50 of Miscellaneous
Maps, records of Orange County, California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as Per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:    A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
Known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"



BK 13362 PG 323

BK 13424 PG 502

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF *ORANGE* )

On this *19th* day of *OCTOBER* , 1979,
before me, a Notary Public, personally appeared Clifford C.
Houser and Vernon P. Houser, known to be to be the general
partners of the partnership that executed the within instru-
ment, and acknowledged to me that such partnership executed
the same.

WITNESS my hand and official seal.

*Christine Anne Belmonte*
Notary Public in and for said
County and State

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF   ORANGE   )

On this 19th day of   October   , 1979, before me, the
undersigned, a Notary Public in and for said State, person-
ally appeared Robert P. Warmington, known to me to be the
person whose name is subscribed to the within instrument,
and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

*Pearl L. Hunt*
Notary Public in and for said
County and State

-3-



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
5801 SKYLAB ROAD
HUNTINGTON BEACH, CA 92647

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion*)
Supplemental Opposition to Houser Bros Co Relief of Automatic Stay

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/31/2023 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Notice of Motion to Avoid Liens under 11 U.S.C. §522(f)

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 01/31/2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

JANINE JASSO, ESQ.
EMAIL ADDRESS: J9_JASSO@YAHOO.COM

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 01/31/2023 | ROBERT MCLELLAND | *Robert McLelland* |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION (If needed):**

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Aaron E DE Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Jeffrey I Golden (TR)        lwerner@wgllp.com, jig@trustesolutions.net;kadela@wgllp.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Brandon J Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF   mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF   claims@recoverycorp.com

United States Trustee (SA)        ustpregion16.sa.ecf@usdoj.gov