| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Robert P. Goe - State Bar No. 137019<br>Brandon J. Iskander – State Bar No. 300916<br>GOE FORSYTHE & HODGES LLP<br>17701 Cowan Avenue, Suite 210<br>Building D<br>Irvine, CA 92614<br>rgoe@goeforlaw.com<br>biskander@goeforlaw.com<br><br>Telephone:  (949) 798-2460<br>Facsimile:  (949) 955-9437<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  Huntington Beach Gables HOA | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  SANTA ANA DIVISION**

| In re:<br><br>JAMIE LYNN GALLIAN,<br><br><br><br><br><br><br><br><br>                                                         Debtor(s). | CASE NO.: 8:21-bk-11710-SC<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)**<br><br>DATE: 07/19/2023<br>TIME: 10:00 am<br>COURTROOM: 5C |

**Movant**: Huntington Beach Gables Homeowners Association

1. **Hearing Location**:
   ☐ 255 East Temple Street, Los Angeles, CA 90012         ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 1                              **F 4001-1.RFS.NONBK.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  06/21/2023

GOE FORSYTHE & HODGES LLP
Printed name of law firm (if applicable)

Robert P. Goe
Printed name of individual Movant or attorney for Movant


/s/Robert P. Goe
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☐ Plaintiff

   b. ☒ Defendant

   c. ☐ Other (*specify*):

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*: Randall L. Nickel v The Huntington Beach Gables HOA, et al.

   b. *Docket number*: 30-2020-01163055-CU-OR-CJC

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending*:
      Superior Court of California - County of Orange - Central Justice Center

   d. Causes of action or claims for relief (Claims):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary ☐ An involuntary   petition under chapter   ☒ 7 ☐ 11 ☐ 12 ☐ 13
      was filed on (*date*) __07/09/2021__.

   b. ☐ An order to convert this case to chapter   ☐ 7 ☐ 11 ☐ 12 ☐ 13
      was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☒ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☒ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 3                          **F 4001-1.RFS.NONBK.MOTION**

f. ☐ The bankruptcy case was filed in bad faith.

    (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

    (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

    (4) ☐ The Debtor filed only a few case commencement documents.  No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☒ Other (*specify*):
    See attached

5. **Grounds for Annulment of Stay.**  Movant took postpetition actions against the Debtor.

    a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

    c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (*Important Note:  declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

    a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

    b. ☐ Supplemental declaration(s).

    c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

    d. ☐ Other evidence (*specify*):

7. ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☒ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☐ Other relief requested.


Date:  06/21/2023

GOE FORSYTHE & HODGES LLP
Printed name of law firm (*if applicable*)

Robert P. Goe
Printed name of individual Movant or attorney for Movant


/s/Robert P. Goe
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 5                        **F 4001-1.RFS.NONBK.MOTION**

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*) __ROBERT P. GOE_____, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

   ☐ I am the Movant.
   ☒ I am Movant's attorney of record in the Nonbankruptcy Action.
   ☐ I am employed by Movant as (*title and capacity*):
   ☐ Other (*specify*):

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3.  In the Nonbankruptcy Action, Movant is:

   ☐ Plaintiff
   ☒ Defendant
   ☐ Other (*specify):*

4.  The Nonbankruptcy Action is pending as:

   a.  *Name of Nonbankruptcy Action*: Randall L. Nickel v The Hunting Beach Gables HOA, et al.
   b.  *Docket number*: 30-2020-01163055-CU-OR-CJC
   c.  *Nonbankruptcy court or agency where Nonbankruptcy Action is pending*:
       Superior Court of California - County of Orange - Central Justice Center

5.  **Procedural Status of Nonbankruptcy Action**:

   a.  The Claims are:
       Movant only seeks stay relief to pursue its cross-complant against Randall L. Nickel, per the attached Exhibit 1 cross-complaint.  Pursuant to the attached Exhibit 2, Trustee abandonded the claims against Mr. Nickel.

   b.  True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit _____.

   c.  The Nonbankruptcy Action was filed on (*date*) _10/01/2020_.

   d.  Trial or hearing began/is scheduled to begin on (*date*) _06/30/2023_.

   e.  The trial or hearing is estimated to require _____ days (*specify*).

   f.  Other plaintiffs in the Nonbankruptcy Action are (*specify*):

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 6                          **F 4001-1.RFS.NONBK.MOTION**

g.  Other defendants in the Nonbankruptcy Action are (*specify*):

   See attached.

6.  **Grounds for relief from stay:**

   a.  ☐  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   b.  ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c.  ☐  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):


   d.  ☒  The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

      (1)  ☐  It is currently set for trial on (*date*) _____.

      (2)  ☒  It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*)  09/29/2023  .  The basis for this belief is (*specify*):


      (3)  ☒  The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

   e.  ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

      (1)  ☐  Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (2)  ☐  The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):


      (3)  ☐  Multiple bankruptcy cases affecting the Property include:

         (A)  Case name:
              Case number:                              Chapter:
              Date filed:          Date discharged:          Date dismissed:
              Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) Case name:

Case number:       Chapter:

Date filed:    Date discharged:    Date dismissed:

Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

(C) Case name:

Case number:       Chapter:

Date filed:    Date discharged:    Date dismissed:

Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f. ☐ See attached continuation page for other facts justifying relief from stay.

7. ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/28/2023 | Robert P. Goe | /s/Robert P. Goe |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*      Page 8      **F 4001-1.RFS.NONBK.MOTION**

# EXHIBIT 1

# EXHIBIT 1

Electronically Filed by Superior Court of California, County of Orange, 11/09/2020 09:59:00 AM.
30-2020-01163055-CU-OR-CJC - ROA # 31 - DAVID H. YAMASAKI, Clerk of the Court By Mary M Johnson, Deputy Clerk.

1  Stanley Feldsott (SBN 45128)
   Charlene A. Busch (SBN 124200)
2  FELDSOTT & LEE
   23161 Mill Creek Drive, Suite 300
3  Laguna Hills, CA  92653
   (949) 729-8002
4  Attorneys for Cross-Complainant THE HUNTINGTON
   BEACH GABLES HOMEOWNERS ASSOCIATION,
5  a California nonprofit mutual benefit corporation

6                    SUPERIOR COURT OF CALIFORNIA

7            COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

8  RANDALL L. NICKEL, an individual,            CASE NO.  30-2020-01163055-CU-OR-CJC
                                                Assigned for all purposes to:
9       Plaintiff,                              Hon. Deborah Servino, Dept. C21

10      vs.                                     **CROSS-COMPLAINT OF THE
                                                HUNTINGTON BEACH GABLES
11 THE HUNTINGTON BEACH GABLES                  HOMEOWNERS ASSOCIATION TO SET
   HOMEOWNERS ASSOCIATION, a California         ASIDE VOIDABLE TRANSFER  AND
12 corporation; JANINE BARBARA JASSO,           FOR INJUNCTIVE RELIEF**
   individually and as Board member and as Vice-
13 President of the Huntington Beach Homeowners
   Association; LEE S. GRAGNANO,  individually
14 and as Board member and as President of the
   Huntington Beach Homeowners Association;     (Civil Code § 3439 et seq.)
15 THEODORE R. "TED" PHILLIPS,
   individually and as Board member of the
16 Huntington Beach Homeowners Association;     Complaint filed:  October 1, 2020
   LINDA JEAN "LINDY" BECK,  individually       Trial Date:  Not set
17 and as Board member of the Huntington Beach
   Homeowners Association; JENNIFER ANN
18 PAULIN,  individually and as Board member of
   the Huntington Beach Homeowners Association;
19 LORI ANN BURRETT,  individually and as
   Board member of the Huntington Beach
20 Homeowners Association; RANCHO
   BERNARDO CONDOMINIUM
21 MANAGEMENT dba ELITE COMMUNITY
   MANAGEMENT, a California corporation;
22 NATIONWIDE RECONVEYANCE, LLC, a
   California limited liability company; SUPERIOR
23 DEFAULT SERVICES INC., a Calfifornia
   corporation; and DOES 1through 100, inclusive,
24
25      Defendants.
   _____
26
   THE HUNTINGTON  BEACH GABLES
27 HOMEOWNERS ASSOCIATION,
   a California nonprofit mutual benefit
28 corporation'

                              - 1 -
                        CROSS-COMPLAINT

Cross-Complainant,

vs.

RANDALL L. NICKEL, an individual; JAMIE
L. GALLIAN, an individual; and ROES 1
through 100, inclusive,

　　　Cross-Defendants.

Cross-Complainant THE HUNTINGTON BEACH GABLES HOMEOWNERS
ASSOCIATION ("Cross-Complainant" or "Association") alleges as follows:

　　　1.　　　Association is a nonprofit mutual benefit corporation organized and existing
under the laws of the State of California, with its principal place of business in Orange County,
California.

　　　2.　　　Cross-Complainant is, and at all relevant times was, a homeowners association
established to manage a common interest development as defined in California Civil Code
Sections 4080 and 4100, which is known as The Huntington Beach Gables, a planned
condominium development located in the City of Huntington Beach, County of Orange,
California ("The Gables"). A true and correct copy of the Association's Articles of Incorporation
is attached to this Cross-Complaint as Exhibit A, and is incorporated herein by this reference as if
set forth in full.

　　　3.　　　Cross-Defendant RANDALL L. NICKEL ("Nickel") is a resident of Orange
County, California and is the purported current sublessee and resident of 4476 Alderport Drive,
Unit 53, Huntington Beach, California 92649 ("Unit 53").

　　　4.　　　Cross-Defendant JAMIE L. GALLIAN ("Gallian") is a resident of Orange County,
California, and is Cross-Defendant Nickel's predecessor in interest to Unit 53 at The Gables.

　　　5.　　　Cross-Complainant is presently not aware of the true names and capacities of the
cross-defendants sued herein as ROES 1 through 100, inclusive, and therefore sues such cross-
defendants by such fictitious names. Cross-Complainant will amend this Cross-Complaint to
allege the true names and capacities of such cross-defendants when ascertained. Cross-
Complainant is informed and believes and based thereon alleges that each of the cross-defendants

named herein as ROES 1 through 100, inclusive, was and is in some manner responsible for the acts, omissions, and causes of action herein alleged, and for the damages and injuries caused to Cross-Complainant.

6.    <u>Jurisdiction and venue</u>.  Orange County, Central Justice Center is the proper venue for this matter because the real property which is the subject of the voidable transaction, title and possession to which is at issue, is located in Orange County, California.

7.    Tenants do not own their condominium units at The Gables in fee simple.  The Gables residents sublease an airspace unit under a triple net ground lease and Condominium Sublease, presently set to run until December 31, 2059.  Pursuant to Section 61(c) of California's Revenue and Taxation Code and Property Tax Rule 462.100, a "change in ownership" occurs upon the creation of a leasehold interest for a term of 35 years or more, or any transfer of an interest in a leasehold estate with 35 years or more remaining on the lease.  Each master ground lease is conditioned on compliance with the recorded Covenants, Conditions, and Restrictions governing The Gables ("CC&Rs"), a true and correct copy of which (together with the First Amendment thereto) is attached to this Cross-Complaint as collective Exhibit B and incorporated herein by this reference as if set forth in full.

8.    In 2017, the Association brought a lawsuit for breach of the governing documents (architectural violations) and nuisance against Cross-Defendant Gallian, who was then the sublessee and resident of Unit 53 (her predecessor in interest was also named in that lawsuit). Gallian brought a cross-complaint against the Association and its individual Board members in that action (collectively, the prior lawsuit and cross-complaint are referenced as the "Compliance Lawsuit")

9.    The Compliance Lawsuit was contentious, with numerous motions, discovery disputes, writ applications, *ex parte* applications, demurrers, and applications for awards of attorneys' fees.  The Association's individual Board members were named in Gallian's cross-complaint in the Compliance Lawsuit.  After months of legal wrangling, they successfully demurred and, on August 7, 2018, they applied for an award of more than $50,000 in attorneys' fees.

10.     While the Board members' motion for fees was pending, on October 31, 2018, Gillian purported to assign her ground lease and condo sublease to Nickel, who recorded the assignments on that same day.  A true and correct copy of the assignment of leases is attached to this Cross-Complaint as Exhibit C and incorporated herein by this reference as if set forth in full. Nickel purported to pay $379,000 for the assignment.  The very next day after the purported assignment of leases, on November 1, 2018, the Court in the Compliance Lawsuit issued a tentative ruling granting more than $46,000 in attorneys' fees to the successful Board members. This award was confirmed one week later, on November 8, 2018.

11.     Both the CC&Rs and California's Davis-Stirling Act provide that, in an action to enforce the governing documents, attorneys' fees are recoverable.  Considerably more than the $46,000 awarded to the individual Board members was at stake in the Compliance Lawsuit.  The Association in fact prevailed on its complaint, and prevailed in the defense of the cross-complaint brought by Gallian.  In a Judgment dated May 6, 2019, Gallian was ordered to pay the Association a total of $316,583.59, which included damages in the amount of $1,295, and costs and attorneys' fees on the underlying complaint of $10,693.12 and $178,362, respectively, and costs and attorneys' fees of $6,050.47 and $120,183 incurred in defense of Gallian's cross-complaint.

## FIRST CAUSE OF ACTION

## FOR ORDER TO SET ASIDE VOIDABLE TRANSFER

### (Against all Cross-Defendants)

12.     Cross-Complainant incorporates the previous paragraphs of this Cross-Complaint as if set forth in full.

13.     The assignment of the ground lease and condo sublease to Cross-Defendant Nickel was made with the intent to hinder, delay and defraud the Association in its future attempts to collect judgment in the then-pending Compliance Lawsuit, which was not going well for Gallian. Nickel knew of the Compliance Lawsuit and conspired with Gallian to strip her of her sole asset before judgment could be had in the Compliance Lawsuit, and to avoid payment of the attorneys' fees award to the Association's individual Board members.

14.     In addition to the litigation-related expenses faced by Gallian, she had accrued more than $6,000 in delinquent HOA assessment fees at the time of the transfer of the leases. The transfer was made, in part, to prevent the attachment of a lien for these fees on the leasehold interest of Gallian and to defeat the Association's attempts to collect the delinquent fees.

15.     The purported payment for the assignment of leases was either a sham in its entirety, or was less than reasonably equivalent value for the leases, when Gallian knew or reasonably should have believed that she would incur litigation-related debts beyond her ability to pay, and when she knew that she had incurred delinquent assessment fees beyond her ability to pay.

16.     The purported assignment of leases was a voidable transfer as defined in Civil Code § 3439.04.

17.     The Association is entitled to avoidance of the assignment of leases made by Cross-Defendants Gallian and Nickel pursuant to Civil Code § 3439.07(a)(1), and is further entitled to an injunction against further disposition of the leases governing Unit 53 during the pendency of this lawsuit, pursuant to Civil Code § 3439.07(a)(3)(A).

18.     In the instant case, the Association is entitled to an award of its attorneys' fees pursuant to Civil Code § 5975, and pursuant to the CC&Rs, which provide in pertinent part:

> In the event action is instituted against an Owner to enforce any of the provisions contained in this Declaration, the party prevailing in such action shall be entitled to recover from the other party thereto as part of the judgment reasonable attorneys' fees and costs of such action, which attorneys' fees and costs shall also be added to such Owner's assessments. [CC&Rs, Exh. C, at Section 14.7.]

### PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant prays for judgment against Cross-Defendants, and each of them, as follows:

1. For temporary, preliminary, and permanent mandatory or prohibitive injunctive relief preventing the further disposition of the ground lease and condo sublease governing Unit 53 during the pendency of this lawsuit;

2. For an Order setting aside the purported assignment of the ground lease and condo sublease from Gallian to Nickel as a voidable transfer;

3. For damages according to proof at trial;

4. For reasonable attorneys' fees;

5. For costs of suit incurred herein; and

6. For such other and further relief as may be just and proper.

DATED: November 5, 2020

FELDSOTT & LEE, A LAW CORPORATION

By: _____
Stanley Feldsott
Charlene A. Busch
Attorneys for Cross-Complainant
THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION

EXHIBIT A



# State of California

## OFFICE OF THE SECRETARY OF STATE

I, *MARCH FONG EU*, Secretary of State of the State of California, hereby certify:

That the annexed transcript has been compared with the record on file in this office, of which it purports to be a copy, and that same is full, true and correct.

*IN WITNESS WHEREOF*, I execute this certificate and affix the Great Seal of the State of California this

MAY 2 8 1980



*March Fong Eu*

*Secretary of State*

ENDORSED
FILED
in the office of the Secretary of State
of the State of California

MAY 2 3 1980
MARCH FONG EU, Secretary of State
By BILL HOLDEN
Deputy

ARTICLES OF INCORPORATION

OF

THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION

I.

NAME

The name of this corporation is THE HUNTINGTON BEACH
GABLES HOMEOWNERS ASSOCIATION, referred to herein as the
"Association".

II.

NON PROFIT MUTUAL BENEFIT CORPORATION

This Association is a nonprofit mutual benefit corpo-
ration organized under the Nonprofit Mutual Benefit Corpora-
tion Law.  The purpose of this Association is to engage
in any lawful act or activity for which a non profit mutual
benefit corporation may be organized under such law.

III.

SPECIFIC PURPOSES AND POWERS

The primary purposes for which the Association is
formed are to form a residential real estate management
association and to provide for the acquisition, construction,
management, maintenance, and care of real and personal property
held by the Association, or commonly held by the members
of the Association  referred to herein as the "Members",
or located in the development and owned by Members, and
otherwise to act and be operated as a "homeowners associa-

1

tion" as defined in the Internal Revenue Code of 1954,

as amended.

## IV.

## AGENT FOR SERVICE OF PROCESS

The name and business address in the State of California

of the Association's initial agent for service of process

is:

> Oliver N. Crary
> 16592 Hale Avenue
> Irvine, California 92714.

## V.

## AMENDMENT

These Articles of Incorporation may be amended only

by the affirmative vote or written assent of (a) not less

than a majority of the voting power of the Members, and

(b) not less than a majority of the voting power of the

Members, excluding the Declarant as defined in the Declaration

recorded on the project to which this Association is associated;

provided that if the two-class voting structure as set forth

in said Declaration is still in effect, these Articles of

Incorporation may not be amended without the vote or written

assent of the prescribed percentage of both classes of member-

ship.

Dated: _May 28, 1980_

_Frank D. Stiefel_
Frank D. Stiefel, Incorporator


I hereby declare that I am the person who executed
the foregoing Articles of Incorporation which execution
is my act and deed.

_Frank D. Stiefel_
Frank D. Stiefel

2

BYLAWS

OF

THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION

ARTICLE I

NAME AND LOCATION

The name of the corporation is THE HUNTINGTON BEACH
GABLES HOMEOWNERS ASSOCIATION, hereinafter referred to as the
"Association". The principal office of the Association shall be
located at 16592 Hale Avenue, Irvine, California 92714. Meetings
of members and directors shall be held within the Property
(defined in Declaration) or as close thereto as practicable.

ARTICLE II

DEFINITIONS

Section 2. 1. The definitions contained in the Declaration
are incorporated by reference herein.

Section 2. 2. "Declaration" shall mean and refer to the
Declaration of Covenants, Conditions applicable to the Property
recorded on the _28th_ day of _MAY_____, 19_80_. in Book _____,
page(s) _____, Official Records, Orange County.

ARTICLE III

MEETING OF MEMBERS AND VOTING

Section 3.1. Annual Meeting: The first annual meeting of
the members of the Association shall be held within 45 days after
the closing of the sale of the Unit which represents the 51st
percentile of Units authorized for sale under the first State of
California Public Report for the Property, but in no event shall
the meeting of the Association be held later than six (6) months
after the close of escrow on the sale of the first Unit in the
Property. The next annual meeting shall be set by the Board of
Directors so as to occur no later than ninety (90) days after the
close of the Association's fiscal year. Subsequent regular
annual meetings of the members shall be held within thirty (30)
days of the same day of the same month of each year thereafter,
at the hour of 10:00 o'clock A.M. If the day for the annual
meeting of the members is a legal holiday, the meeting will be

1.

held at the same hour on the first day following which is not a
legal holiday.

Section 3.2.  Special Meetings:  Special meetings of the
members may be called at any time by the vote for such a meeting
by a majority of a quorum of the Board of Directors, or upon
written request of the members representing not less than five
percent (5%) of the voting power of the Association.  If the
Association is the obligee under a bond or other arrangement to
secure performance of the commitment of the Declarant to complete
common area improvements which have not been completed prior to
the close of escrow of the sale of the first Unit, and the
provisions relating to such bonding contained in the Declaration
are applicable, a special meeting of members may be called in
accordance with the provisions of the Declaration which
provisions are incorporated by reference herein.

Section 3.3.  Notice and Place of Meetings:  Written notice
of each meeting of the members shall be given by, or at the
direction of, the secretary or person authorized to call the
meeting, by mailing a copy of such notice, postage prepaid,
first-class or registered, at least ten (10) but not more than
ninety (90) days before such meeting to each institutional lender
requesting notice and to each member entitled to vote thereat,
addressed to the member's address last appearing on the books of
the Association, or supplied by such member to the Association
for the purpose of notice.  Such notice shall specify the place,
day and hour of the meeting, and, in the case of a special
meeting, the purpose of the meeting.  Meetings shall be held at a
location on the Property whenever possible, and when not, at the
principal office of the Association or such other suitable place
convenient to the owners as may be designated by the Board of
Directors.  Unless unusual conditions exist, meetings shall not
be held outside the county in which the Property is located.

Section 3.4.  Quorum:  The presence either in person or by
proxy, at any meeting, of members representing a majority of the
voting power of the Association, shall constitute a quorum for
any action except as otherwise provided in the Articles of
Incorporation, the Declaration, or these Bylaws.  If, however,
such quorum shall not be present or represented at any meeting,
the members entitled to vote thereat shall have power to adjourn
the meeting from time to time without notice other than
announcement at the meeting, to a time not less than five (5)
days nor more than thirty (30) days from the time the preceding
meeting was called, and the required quorum at any such
subsequent meeting shall be twenty-five percent (25%) of the
voting power of the Association.  If a time and place for the
adjourned meeting is not fixed by those in attendance at the
original meeting, or if for any reason a new date is fixed for
the adjourned meeting after adjournment, notice of the time and
place of the adjourned meeting shall be given to members in the
manner described for regular meetings.

2.

JOINT EXHIBIT - PAGE - 0029

Section 3.5.  Proxies:  At all meetings of members, each member may vote in person or by proxy.  All proxies shall be in writing and filed with the secretary before the appointed time of each meeting.  Every proxy shall be revocable and shall automatically cease upon conveyance by the member of his Lot, or upon receipt of notice by the Secretary of the Board of the death or judicially declared incompetence of such member.

Section 3.6.  Voting:  The Association shall have two (2) classes of voting membership:

Class A:  Class A members shall be all owners with the exception of the Declarant.  Each Unit shall be entitled to one (1) vote.  When more than one person holds an interest in any Unit, all such persons shall be members.  The vote for such Unit shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any Unit.

Class B:  The Class B member(s) shall be the Declarant and shall be entitled to vote as follows:  Voting shall be the same as for Class A memberships, except that Class B members may triple their votes for each Lot owned.  The Class B memberships shall cease and be converted to Class A memberships upon the happening of either of the following events, whichever occurs earlier:

(a)  When the total votes outstanding in the Class A membership equal the total votes outstanding in the Class B membership; or

(b)  On the second anniversary of the original issuance of the Final Subdivision Public Report for the Project.

ARTICLE IV
ELECTION OF BOARD OF DIRECTORS

Section 4.1.  Number:  The affairs of this Association shall be managed by a Board of five (5) directors, who need not be members of the Association, until conversion of Class B memberships to Class A, after which time all directors must be members of the Association.

Section 4.2.  Nomination:  Nomination for election to the Board of Directors shall be made by a Nominating Committee.  Nominations may also be made from the floor at the annual meeting.  The Nominating Committee shall consist of a Chairman, who shall be a member of the Board of Directors, and two (2) or more members of the Association.  The Nominating Committee shall be appointed by the Board of Directors ninety (90) days prior to each annual meeting of the members, to serve until the close of

3.

JOINT EXHIBIT - PAGE - 0030

such annual meeting. The Nominating Committee shall make as many nominations for election to the Board of Directors as it shall in its discretion determine, but not less than the number of vacancies that are to be filled. Such nominations may be made from among members or non-members.

Section 4.3. Election; Term of Office: At the first annual meeting, the Members shall elect three (3) directors for a term of one (1) year and two (2) directors for a term of two (2) years; and at each annual meeting thereafter the Members shall elect directors for a term of two (2) years to succeed those directors whose terms have expired. If any annual meeting is not held, or the directors are not elected thereat, the directors may be elected at any special meeting of Members held for that purpose. All directors shall hold office until their respective successors are elected.

Election to the Board of Directors shall be by secret written ballot. At such election the members or their proxies may cast, in respect to each vacancy, as many votes as they are entitled to exercise under the provisions of the Declaration and pursuant to the rules of cumulative voting. The persons receiving the largest number of votes shall be elected; provided, however, that at any election in which the members other than Declarant do not have a sufficient percentage of the voting power of the Association to elect at least twenty percent (20%) of the directors through the accumulating of all of their votes, the persons nominated for the Board who receive the highest number of votes cast by members other than Declarant shall be elected to the Board until twenty percent (20%) of the Board is filled. Thereafter the remaining directors shall be elected in accordance with normal voting procedures.

Section 4.4. Removal: The entire Board of Directors may be removed, with or without cause, by a majority vote of the members of each class of the Association. Unless the entire Board is removed from office, as above, an individual director shall not be removed prior to the expiration of his term of office if the number of votes cast against his removal would be sufficient to elect the director if voted cumulatively at an election at which the same total number of votes were cast and the entire Board of Directors authorized at the time of the most recent election of the director to be removed were then being elected; provided, however, that notwithstanding the foregoing, a director who was elected to office solely by the votes of the members excluding the Declarant may be removed from office by a vote of the members holding a majority of the voting power excluding Declarant. In the event of death or resignation of a director, his successor shall be selected by a majority of the remaining members of the Board and shall serve for the unexpired term of his predecessor.

Section 4.5. Vacancies: Vacancies in the Board may be filled by a majority of the remaining directors, though less than

4.

a quorum, and each director so elected shall hold office for the
unexpected term of his predecessor and until his successor is
elected at an annual meeting of members, or at a special meeting
called for that purpose.

A vacancy or vacancies shall be deemed to exist in
case of the death or resignation of any director, or if the members
shall increase the authorized number of directors but shall fail
at the meeting at which such increase is authorized or at an adjournment
thereof, to elect the additional directors so provided for, or
in the case members fail at any time to elect the full number
of authorized directors.

The members may at any time elect directors to fill
any vacancy not filled by the directors, and may elect the additional
directors at the meeting at which an amendment of the Bylaws is
voted authorizing an increase in the number of directors.

If any director tenders his resignation to the Board,
the Board shall have power to elect a successor to take office
at such time as the resignation shall become effective.

Section 4.6.  Compensation:  Without the prior vote or
written assent of a majority of the voting power of the Members,
excluding Declarant, no director shall receive compensation for
any service he may render to the Association.  However, any director
may be reimbursed for his actual expenses incurred in the performance
of his duties.

Section 4.7.  Indemnification of Officers and Directors:
Each director and officer shall be indemnified by the Association
and the member against all expenses and liabilities, including
attorneys' fees, reasonably incurred by or imposed upon him by
judgment or settlement in connection with any proceeding to which
he may be a party, or in which he may become involved, by reason
of his being or having been a director or officer of the Association,
except in cases of fraud, gross negligence or bad faith of the
director or officer in the performance of his duties.

ARTICLE V

MEETINGS OF DIRECTORS

Section 5.1.  Regular Meetings:  Regular meetings of the
Board of Directors shall be held monthly at such place located
on the Property and hour as may be fixed from time to time by
resolution of the Board.  Should said meeting fall upon a legal
holiday, then that meeting shall be held at the same time on the
next day which is not a legal holiday.  Notice of the time and
place of each meeting shall be posted at a prominent place or
places within the Property, and shall be communicated to each
director not less than four (4) days prior to the meeting;
provided, however, that notice of the meeting need not be given

5.

to a director who has signed a waiver of notice or a written
consent to holding of the meeting.

Section 5.2. Special Meetings: Special meetings of the
Board of Directors shall be held when called by the president of
the Association, or by any two directors. The notice shall
specify the time and place of the meeting and the nature of the
business to be conducted and shall be sent to all directors and
posted in the manner prescribed for notice of regular meetings
not less than three (3) days prior to the scheduled time of the
meeting.

Section 5.3. Quorum: A majority of the number of directors
shall constitute a quorum for the transaction of business. Every
act performed or decision made by a majority of the directors
present at a duly held meeting at which a quorum is present shall
be regarded as the act of the Board.

Section 5.4. Attendance by Other Members: Regular and
special meetings of the Board shall be open to all members of the
Association provided, however, that Association members who are
not on the Board may not participate in any deliberation or
discussion unless expressly so authorized by vote of a majority
of a quorum of the Board.

Section 5.5. Executive Session: The Board may, upon vote of
a majority of a quorum, adjourn a meeting and reconvene in
executive session to discuss and vote upon personnel matters,
litigation in which the Association is or may become involved and
orders of business of a similar nature. The nature of any and
all business to be considered in the executive session shall
first be announced in the open session.

ARTICLE VI

POWERS AND DUTIES OF THE BOARD OF DIRECTORS

Section 6.1. Powers: The Board of Directors shall have
power to:

(a) Suspend the voting rights and right to use of the
recreational facilities of a member during any period in
which such member shall be in default in the payment of any
assessment levied by the Association or for a period not to
exceed thirty (30) days for infraction of published rules and
regulations provided that (i) the member to be suspended has
been given at least fifteen (15) days prior written notice of
such action to be taken, which notice shall be given in the
same manner as notice of special meetings of members is
given, and (ii) the member to be suspended is given the right
to be heard, by the Board of Directors, orally or in writing,
not less than five (5) days before the effective date of the
suspension.

6.

JOINT EXHIBIT - PAGE - 0033

(b)  Exercise for the Association all powers, duties and authority vested in or delegated to this Association and not reserved to the membership by other provisions of these Bylaws, the Articles of Incorporation, or the Declaration;

(c)  Declare the office of a member of the Board of Directors to be vacant in the event such member shall be absent from three (3) consecutive regular meetings of the Board of Directors; and

(d)  Employ a manager, an independent contractor, or such other employees as they deem necessary, and to prescribe their duties.  Any manager, agent or employee selected prior to the first annual election shall be employed to manage or work only until the first annual election, after initial organization, at which time the continuance of the same or the selection of a new manager or agent shall be determined by the Board of Directors selected at the first annual election.  In addition, the Association shall have the authority to delegate its power to committees, officers of the Association or employees.  All contracts of the Association, however, shall be limited in duration for a period of not more than one (1) year and be terminable by either party thereto upon ninety (90) days' written notice thereof without the payment of any penalty, except as follows:

(1)  A contract with a public utility company if the rates charged for the materials or services are regulated by the Public Utilities Commission provided, however, that the term for which the supplier will contract at the regulated rate.

(2)  Prepaid casualty and/or liability insurance policies of not to exceed three (3) years duration provided that the policy permits for short rate cancellation by the insured.

(e)  Cause to be prepared and distributed to each member:

(1)  A pro forma operating statement (budget) for each fiscal year shall be distributed not less than sixty (60) days before the beginning of the fiscal year.

(2)  A balance sheet as of an accounting date which shall be the last day of the month nearest in time to six (6) months from the date of closing of the first sale of a Lot to a member of the Association and an operating statement for an accounting period from the aforesaid date of first closing to the aforesaid accounting date shall be distributed within sixty (60) days after the accounting date.  The operating statement

7.

JOINT EXHIBIT - PAGE - 0034

shall include a schedule of assessments received or
receivable itemized by Lot number and by the name of the
person or entity assessed;

(3)   An annual report consisting of the following
shall be distributed within one hundred twenty (120)
days after the close of the fiscal year:

(i)   A balance sheet as of the end of the
fiscal year.

(ii)   An operating (income) statement for the
fiscal year.

(iii)   A statement of changes in financial
position for the fiscal year.

(iv)   Any information required to be reported
under Section 8322 of the Corporations Code of the
State of California.

(4)   An external audit by an independent public
accountant shall be required for fiscal year financial
statements (other than budgets) for any fiscal year in
which the gross income to the Association exceeds
$75,000.00.

(5)   If the report referred to in (3) above is not
prepared by an independent accountant, it shall be
accompanied by the certificate of an authorized officer
of the Association that the statements were prepared
without audit from the books and records of the
Association.

Section 6.2.   Duties:   It shall be the duty of the Board of
Directors to:

(a)   Cause to be kept a complete record of all its acts
and corporate affairs and to present a statement thereof to the
members at the annual meeting of the members, or at any special
meeting when such statement is requested in writing by one-fourth
(1/4) of the Class A members who are entitled to vote;

(b)   Supervise all officers, agents and employees of
this Association, and to see that their duties are properly
performed;

(c)   As more fully provided in the Declaration, to:

(1)   Fix the amount of the annual assessment
against each Unit at least thirty (30) days in advance
of each annual assessment period;

JOINT EXHIBIT - PAGE - 0035

(2)    Send written notice of each assessment to
every owner subject thereto at least thirty (30) days in
advance of each annual assessment period; and

(3)    Record a notice of assessment pursuant to
Civil Code Section 1356 and foreclose the lien against
any property for which assessments are not paid within
thirty (30) days after due date or bring an action at
law against the owner personally obligated to pay the
same.

(d)    Issue, or to cause an appropriate officer to issue,
upon demand by any person, a certificate setting forth
whether or not any assessment has been paid.  A reasonable
charge may be made by the Board for the issuance of these
certificates.  If a certificate states an assessment has been
paid, such certificate shall be conclusive evidence of such
payment;

(e)    Procure and maintain adequate liability and hazard
insurance on property owned by the Association;

(f)    Cause all officers or employees having fiscal
responsibilities to be bonded, as it may deem appropriate;

(g)    Appoint a paid manager responsibile to the Board
and delegate to such manager the authority to manage the
Property.

Section 6.3.    Prohibitions:  The Board shall be prohibited
from taking any of the following actions, except with the vote or
written assent of a majority of the voting power of the
Association residing in members other than the Declarant:

(a)    Incurring aggregate capital expenditures in any
fiscal year in excess of 5% of the budgeted gross expenses of
the Association for that fiscal year.

(b)    Selling during any fiscal year property of the
Association having an aggregate fair market value greater
than 5% of the budgeted gross expenses of the Association for
that fiscal year.

(c)    Paying compensation to members of the Board or to
officers of the Association for services performed in the
conduct of the Association's business provided, however, that
the Board may cause a member or officer to be reimbursed for
expenses incurred in carrying on the business of the
Association.

(d)    Filling a vacancy on the Board of Directors created
by the removal of a director.

9.

JOINT EXHIBIT - PAGE - 0036

ARTICLE VII

OFFICERS AND THEIR DUTIES

Section 7.1. Enumeration of Officers: The officers of this Association shall be a president and vice-president, who shall at all times be members of the Board of Directors, a secretary, and treasurer, and such other officers as the Board may from time to time by resolution create.

Section 7.2. Election of Officers: The election of officers shall take place at the first meeting of the Board of Directors following each annual meeting of the members.

Section 7.3. Term: The officers of this Association shall be elected annually by the Board and each shall hold office for one (1) year unless he shall sooner resign, or shall be removed, or otherwise disqualified to serve.

Section 7.4. Special Appointments: The Board may elect such other officers as the affairs of the Association may require, each of whom shall hold office for such period, have such authority, and perform such duties as the Board may, from time to time, determine.

Section 7.5. Resignation and Removal: Any officer may be removed from office by the Board with or without cause. Any officer may resign at any time by giving written notice to the Board, the president or the secretary. Such resignation shall take effect on the date of receipt of such notice or at any later time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 7.6. Vacancies: A vacancy in any office may be filled by appointment by the Board. The officer appointed to such vacancy shall serve for the remainder of the term of the officer he replaces.

Section 7.7. Multiple Offices: The offices of secretary and treasurer may be held by the same person. No person shall simultaneously hold more than one of any of the other offices except in the case of special offices created pursuant to ARTICLE VIII, below.

Section 7.8. Duties: The duties of the officers are as follows:

(a) President: The President shall preside at all meetings of the Board of Directors; shall see that orders and resolutions of the Board are carried out; shall sign all leases, mortgages, deeds and other written instruments and shall co-sign all checks and promissory notes.

10.

(b)  Vice-President:  The vice-president shall act in the place and stead of the president in the event of his absence, inability or refusal to act, and shall exercise and discharge such other duties as may be required of him by the Board.

(c)  Secretary:  The secretary shall record the votes and keep the minutes of all meetings and proceedings of the Board and of the members; serve notice of meetings of the Board and of the members; keep appropriate current records showing the members of the Association together with their addresses, and shall perform such other duties as required by the Board.

(d)  Treasurer:  The treasurer shall receive and deposit in appropriate bank accounts all monies of the Association and shall disburse such funds as directed by resolution of the Board of Directors; shall co-sign all checks and promissory notes of the Association and shall keep proper books of account.

Section 7.9.  Compensation:  No officer shall receive compensation for any service he may render to the Association. However, any officer may be reimbursed for his actual expenses incurred in the performance of his duties.

## ARTICLE VIII

### COMMITTEES

The Association shall appoint an Architectural Control Committee, as provided in the Declaration, and a Nominating Committee, as provided in these Bylaws.  In addition, the Board of Directors shall appoint other committees as deemed appropriate in carrying out its purpose.

## ARTICLE IX

### BOOKS AND RECORDS

Section 9.1.  The membership register, books of account and minutes of meetings of the members of the Board and of committees of the Board shall be made available for inspection and copying by any member, or by his duly-appointed representative, at any reasonable time and for a purpose reasonably related to his interest as a member, at the office of the Association or at such other place within the Project as the Board shall prescribe.

Section 9.2.  The Board shall establish reasonable rules with respect to:

11.

(a)  Notice to be given to the custodian of the records by the member desiring to make the inspection.

(b)  Hours and days of the week when such an inspection may be made.

(c)  Payment of the cost of reproducing copies of documents requested by a member.

Section 9.3.  Every director shall have the absolute right at any reasonable time to inspect all books, records and documents of the Association and the physical properties owned or controlled by the Association.  The right of inspection by a director includes the right to make extracts and copies of documents.

ARTICLE X

MISCELLANEOUS

Section 10.1.  Amendments:  These Bylaws may be amended only by the affirmative assent or vote of not less than seventy-five percent (75%) of the members, excluding the Declarant.

Section 10.2.  Conflicts:  In the case of any conflict between the Articles of Incorporation and these Bylaws, the Articles shall control; and in the case of any conflict between the Declaration and these Bylaws, the Declaration shall control.

Section 10.3.  Specific Voting Requirements:  Any provision herein calling for membership approval of action to be taken by the Association, except provisions with respect to the action referred to in Section 4.4 of the Declaration to enforce the obligations of the Declarant referred to therein, shall expressly require the vote or written assent of a prescribed percentage of each class of membership during the time that there are two outstanding classes of membership, as set forth above. Furthermore any such provisions herein calling for the vote or written assent of each class of membership for the initiation of action by or in the name of the Association, any requirement other than in Sections 4.4 and 14.9 of the Declaration, and Section 10.1, above, that the vote of the Declarant shall be exlcuded in any such determination shall be applicable only if there has been a conversion of Class B to Class A shares and only for so long as the Declarant holds or directly controls twenty-five percent (25%) or more of the voting power of the Association.

Section 10.4.  Fiscal Year:  The fiscal year of the Association shall begin on the first day of January and end on the 31st day of December of every year.

12.

JOINT EXHIBIT - PAGE - 0039

CERTIFICATION

We, the undersigned, being all of the directors of the Association, do hereby certify:

That we are entitled to exercise all of the voting power of said corporation;

That we hereby assent to the within and foregoing Bylaws and hereby adopt the same as the Bylaws of said corporation.

IN WITNESS WHEREOF, we have hereunto subscribed our names this _____ day of _____, 19__.

_____
Robert Odle

_____
William Risetsky

_____
Susan Cook

_____
Oliver N. Crary

_____
Keith Francis

I, the undersigned, the duly elected and acting secretary of The Huntington Beach Gables Homeowners Association, a California corporation, do hereby certify:

That the within and foregoing Bylaws were adopted as the Bylaws of said corporation on the _____ day of _____, 19__, and that same constitute the Bylaws of said corporation.

IN WITNESS WHEREOF, I have hereunto subscribed my name _____ this _____ day of _____, 19__.

_____
Susan Cook, Secretary

13.

JOINT EXHIBIT - PAGE - 0040

# EXHIBIT B

WHEN RECORDED RETURN TO:
Meserve, Mumper & Hughes
4440 Von Karman Avenue, Suite 330
Newport Beach, California 92660

Attn:  Frank D. Stiefel, Esq.

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

4 20 P.M.    MAY 28 '80

LEE A. BRANCH, County Recorder

$54.00
67

DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

LOTS 1 AND 2 OF TRACT NO. 10542
CITY OF HUNTINGTON BEACH
ORANGE COUNTY, CALIFORNIA

JOINT EXHIBIT - PAGE - 0041

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 2 |
| Section 1.1 | Association | 2 |
| Section 1.2 | Board of Directors/Board | 2 |
| Section 1.3 | Common Area | 3 |
| Section 1.4 | Condominium | 3 |
| Section 1.5 | Condominium Plan | 3 |
| Section 1.6 | County | 3 |
| Section 1.7 | Declarant | 3 |
| Section 1.8 | Lessee | 3 |
| Section 1.9 | Lessor | 3 |
| Section 1.10 | Member | 3 |
| Section 1.11 | Mortgage | 3 |
| Section 1.12 | Mortgagee | 3 |
| Section 1.13 | Owner/Ownership | 3 |
| Section 1.14 | Project | 4 |
| Section 1.15 | Property | 4 |
| Section 1.16 | Unit | 4 |
| ARTICLE II | CREATION OF CONDOMINIUMS | 4 |
| Section 2.1 | Creation | 4 |
| Section 2.2 | Elements of Condominium | 4 |
| Section 2.3 | Boundaries of Units | 5 |
| Section 2.4 | Non-Severability | 5 |
| ARTICLE III | MEMBERSHIP IN ASSOCIATION | 5 |
| Section 3.1 | Membership | 5 |
| Section 3.2 | Transfer | 5 |
| Section 3.3 | Voting Rights | 6 |
| ARTICLE IV | PROPERTY RIGHTS IN THE COMMON AREAS | 7 |
| Section 4.1 | Members' Easements of Enjoyment | 7 |
| Section 4.2 | Delegation of Use | 7 |
| Section 4.3 | Waiver of Use | 7 |
| Section 4.4 | Common Area Improvements | 7 |
| ARTICLE V | COVENANT FOR ASSESSMENTS | 8 |
| Section 5.1 | Creation of the Lien and Personal Obligation of Assessments | 8 |
| Section 5.2 | General Purpose of Assessments | 9 |
| Section 5.3 | Regular Assessments | 9 |

JOINT EXHIBIT - PAGE - 0042

|  |  |  |  |
|---|---|---|---|
| (a) | Purposes | 9 |
| (b) | Amount and Type of Payment | 10 |
| (c) | Date of Commencement | 10 |

| Section 5.4 | Special Assessments | 11 |
|---|---|---|
| Section 5.5 | Delinquency | 11 |

| (a) | Right of Association | 11 |
|---|---|---|
| (b) | Notice of Lien | 12 |
| (c) | Foreclosure Sale | 12 |
| (d) | Curing of Default | 12 |
| (e) | Cumulative Remedies | 12 |
| (f) | Subordination | 13 |
| (g) | Expiration of Lien | 13 |

| Section 5.6 | Exempt Property | 13 |
|---|---|---|
| Section 5.7 | Uniform Rate of Assessment | 13 |
| Section 5.8 | No Offsets | 13 |

ARTICLE VI      ARCHITECTURAL CONTROL

| Section 6.1 | Architectural Approval | 14 |
|---|---|---|
| Section 6.2 | Requirements for Approval | 14 |
| Section 6.3 | Term and Composition of Architectural Committee | 14 |
| Section 6.4 | Failure to Approve or Disapprove the Plans | 15 |
| Section 6.5 | No Liability | 15 |
| Section 6.6 | Notice of Noncompliance or Noncompletion | 15 |
| Section 6.7 | Rules and Regulations | 16 |
| Section 6.8 | Variances | 16 |
| Section 6.9 | Appointment and Designation | 16 |
| Section 6.10 | Review Fee and Address | 16 |
| Section 6.11 | Inspection | 16 |

ARTICLE VII      EASEMENTS

| Section 7.1 | Rights of Association | 17 |
|---|---|---|
| Section 7.2 | Rights of Declarant | 17 |
| Section 7.3 | Rights of Owners | 18 |
| Section 7.4 | Encroachments on Common Area | 18 |
| Section 7.5 | Restricted Common Areas | 19 |
| Section 7.6 | Other Encroachments | 19 |

ARTICLE VIII      MANAGEMENT

| Section 8.1 | Powers of the Association | 19 |
|---|---|---|
| Section 8.2 | Purposes of the Association | 19 |
| Section 8.3 | Contracting Authority | 20 |
| Section 8.4 | Duties | 20 |
| Section 8.5 | Right of Entry | 24 |

JOINT EXHIBIT - PAGE - 0043

Section 8.6    Duties of Owners................................ 24
Section 8.7    Association to Defend Certain Actions......... 25


ARTICLE IX      GENERAL RESTRICTIONS


Section 9.1    Partition...................................... 26
Section 9.2    Interior of Unit............................... 26
Section 9.3    Nuisance....................................... 26
Section 9.4    Use of Common Area............................. 26
Section 9.5    Projections.................................... 26
Section 9.6    Recreational Vehicles.......................... 26
Section 9.7    Lavatory Facilities............................ 26
Section 9.8    Signs.......................................... 27
Section 9.9    Animals........................................ 27
Section 9.10   Offensive Activities........................... 27
Section 9.11   Right of Inspection............................ 27
Section 9.12   Leases......................................... 27
Section 9.13   Misconduct..................................... 28
Section 9.14   Structural Changes............................. 28
Section 9.15   Utilities...................................... 28
Section 9.16   Receptacles.................................... 28
Section 9.17   Television; Radio.............................. 28


ARTICLE X       MORTGAGE PROTECTION

Section 10.1   Seventy-Five Percent Vote of Mortgagees....... 28
Section 10.2   Other Rights of First Mortgagees.............. 29
Section 10.3   Mortgagees Furnishing Information............. 30
Section 10.4   Notice to First Mortgagees of Owner Default.. 30
Section 10.5   Right of First Refusal......................... 30
Section 10.6   Conflicts...................................... 30
Section 10.7   Notice of Destruction or Taking............... 30
Section 10.8   Breach of Declaration.......................... 31


ARTICLE XI      DESTRUCTION OF IMPROVEMENTS

Section 11.1   Destruction; Proceeds Exceed 85% of
               Reconstruction Costs........................... 31
Section 11.2   Destruction; Proceeds Less Than 85% of
               Reconstruction Costs........................... 31
Section 11.3   Rebuilding Procedures.......................... 31
Section 11.4   Rebuilding Contract............................ 32
Section 11.5   Rebuilding Not Authorized...................... 32
Section 11.6   Minor Repair and Reconstruction................ 33


ARTICLE XII     CONDEMNATION

Section 12.1   Sale by Unanimous Consent...................... 33

JOINT EXHIBIT - PAGE - 0044

Section 12.2   Distribution of Proceeds of Sale............. 33
Section 12.3   Distribution of Condemnation Award.......... 33
Section 12.4   Revival of Right to Partition............... 33

ARTICLE XIII   PARTITION

Section 13.1   Suspension................................. 34
Section 13.2   Proceeds.................................. 34
Section 13.3   Power of Attorney......................... 34

ARTICLE XIV   GENERAL PROVISIONS

Section 14.1   Term..................................... 34
Section 14.2   Notices.................................. 34
Section 14.3   Enforcement.............................. 35
Section 14.4   Severability............................. 35
Section 14.5   Construction............................. 35
Section 14.6   Singular Includes Plural................. 35
Section 14.7   Attorneys' Fees......................... 35
Section 14.8   Nuisance................................. 35
Section 14.9   Amendments............................... 36
Section 14.10  Annexation............................... 37

DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

LOTS 1 AND 2 OF TRACT NO. 10542
CITY OF HUNTINGTON BEACH
ORANGE COUNTY, CALIFORNIA


THIS DECLARATION, made this _21st_ day of ___May___,
19_80_, by THE ROBERT P. WARMINGTON CO., a California corporation,
(hereinafter referred to as "Declarant").


WITNESSETH:

WHEREAS, Declarant is the owner of a subleasehold
interest in certain real property in the City of Huntington
Beach, County of Orange, State of California, described as:

Lots 1 and 2 of Tract 10542 as per map recorded in
Book _456_, Pages __49__ and __50__, inclusive, of
Miscellaneous Maps, in the Office of the County
Recorder of Orange County, California.


WHEREAS, said real property is owned in fee by HOUSER
BROS. CO., a California limited partnership, in which Clifford C.
Houser and Vernon F. Houser are general partners, (hereinafter
referred to as "Lessor"); and

WHEREAS, said real property has been leased by Lessor to
Robert P. Warmington, an individual, (hereinafter referred to as
"Lessee") pursuant to a Ground Lease dated _October 19_, 19_79_,
and as evidenced by a Short Form Memorandum recorded  on
_December 6_, 19_79_, in Book _13424_, pages _499_,
et seq.,           of the Official Records of Orange County,
California; and

WHEREAS, Lessee has subleased the Property to Declarant,
who now desires to divide its interest in the property and
improvements thereon into a condominium project as defined in
Sections 783 and 1350 of the California Civil Code in accordance
with a recorded condominium plan for the project, as hereinafter
defined; and

WHEREAS, Declarant has therefore deemed it desirable to
impose a general plan for the improvement and development of said
tract and all of the property described herein and the adoption
and establishment of covenants, conditions and restrictions upon
said real property and each and every lot and portion thereof and
upon the use, occupancy and enjoyment thereof, all for the

1.

JOINT EXHIBIT - PAGE - 0046

purpose of enhancing and protecting the value, desirability and attractiveness of said tract; and

WHEREAS, Declarant has deemed it desirable for the efficient preservation of the value, desirability and attractiveness of said tract to create a corporation to which should be delegated and assigned the powers of administering and enforcing these covenants, conditions and restrictions, and collecting and disbursing funds pursuant to the assessment and charges hereinafter created and referred to; and

WHEREAS, THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a nonprofit corporation, has been incorporated under the laws of the State of California for the purpose of exercising the powers and functions aforesaid; and

WHEREAS, Lessor and Lessee have agreed to the restrictions to be imposed hereby and authorize the recordation of this Declaration, and evidence this agreement and authorization by executing this Declaration below; and

NOW THEREFORE, Declarant hereby covenants, agrees and declares that all of said units and property described above shall be held, sold, assigned, leased, encumbered, hypothecated, used, improved, and conveyed subject to the following covenants, conditions and restrictions and easements which are hereby declared to be for the benefit of the whole tract and all of the property described herein and the owners thereof, their successors and assigns. These covenants, conditions and restrictions and easements shall run with the said real property and shall be binding on all parties having or acquiring any right, title or interest in the described real property or any part thereof and are imposed upon said real property and every part thereof as a servitude in favor of each and every parcel thereof as the dominant tenement or tenements.

## ARTICLE I
## DEFINITIONS

The following terms used in these covenants, conditions and restrictions shall be applicable to this Declaration and are defined as follows:

Section 1.1. Association: "Association" shall mean and refer to THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a nonprofit corporation, incorporated under the laws of the State of California, its successors and assigns.

Section 1.2. Board of Directors/Board: "Board of Directors" or "Board" shall mean and refer to the duly elected Board of Directors of the Association.

2.

Section 1.3.    Common Area:  "Common Area" means and
refers to the entire Project, except the Units.

Section 1.4.    Condominium:  "Condominium" means a
condominium as defined in Section 783 of the California Civil
Code and as used herein means a Unit, together with (a) an
undivided 1/80 interest as tenant in common in the Common Area,
(b) certain exclusive or nonexclusive easements granted herein to
an Owner, and (c) a Membership in the Association.

Section 1.5.    Condominium Plan:  "Condominium Plan" shall
mean and refer to that certain Condominium Plan recorded or to be
recorded by Declarant on the Project in the office of the County
Recorder wherein the Property is located.

Section 1.6.    County:  "County" shall mean and refer to
the County of Orange, State of California.

Section 1.7.    Declarant:  "Declarant" shall mean and
refer to THE ROBERT P. WARMINGTON CO., a California corporation,
its successors and assigns.

Section 1.8.    Lessee:  "Lessee" shall mean and refer to
Robert P. Warmington, a married man, his heirs, successors, and
assigns.

Section 1.9.    Lessor:  "Lessor" shall mean and refer to
HOUSER BROS. CO., a California limited partnership, its
successors and assigns.

Section 1.10.    Member:  "Member" shall mean and refer to
every person or entity who holds Membership in the Association.

Section 1.11.    Mortgage:  "Mortgage" shall mean and refer
to any mortgage, deed of trust, assignment of leasehold or
subleasehold interest or other conveyance of a Unit, or any
interest therein, including, but not limited to, the improvements
developed thereon to secure the performance of an obligation,
which obligation will be reconveyed upon completion of such
performance.

Section 1.12.    Mortgagee:  "Mortgagee" shall mean and
refer to mortgagees, trustees, beneficiaries and holders of deeds
of trust, assignees of any leasehold or subleasehold interests,
and the holders of any indebtedness secured by Mortgages.

Section 1.13.    Owner/Ownership:  "Owner" shall mean and
refer to the record assignee of the rights of Declarant and/or
Lessee to a Unit, but excluding those having such interest merely
as security for the performance of an obligation.  Such term
shall also mean and refer to the Lessee or Lessor if either
succeeds to the rights of said assignee through termination of
any lease or sublease or by any other means.  All references

3.

JOINT EXHIBIT - PAGE - 0048

herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest.

Section 1.14.  Project:  "Project" shall mean and refer to the Property and all structures and other improvements thereon.

Section 1.15.  Property:  "Property" or "Properties" shall mean and refer to the leasehold interest in all of the real property hereinbefore described.

Section 1.16.  Unit:  "Unit" or "Units" shall mean and refer to the residential air space Units and related areas as shown on the recorded Condominium Plan, and means the elements of the Project which are not owned in common by the Owners of the Condominiums in the Project.

ARTICLE II
CREATION OF CONDOMINIUMS

Section 2.1.  Creation:  Declarant, in order to establish a plan of condominium ownership for the Project, hereby covenants and agrees that it hereby divides the Project as follows:

(a)  Into eighty (80) separately designated and legally described Units which are comprised of certain parcels of air space which are shown and more particularly described on the Condominium Plan; and

(b)  The remainder of the Project which shall be deemed the Common Area and shall be subject to certain easements and restrictions as set forth in this Declaration and the Condominium Plan.

Section 2.2.  Elements of Condominium:  Each Condominium shall be comprised of the following elements:

(a)  A Unit;

(b)  An undivided 1/80 leasehold interest as tenant in common in the Common Area;

(c)  Non-exclusive easement rights as described in this Declaration;

(d)  Certain exclusive easement rights over the Common Area, defined hereinafter as Restricted Common Areas; and

(e)  A membership in the Association.

4.

JOINT EXHIBIT - PAGE - 0049

Section 2.3.  Non-Severability: Declarant, its
successors, assigns, sublessees, and grantees, covenant and agree
that the various elements of the Condominium Plan conveyed
herewith shall not be separated or separately conveyed, and each
such element shall be deemed to be conveyed or encumbered with
its respective Unit even though the description in the instrument
or conveyance or encumbrance may refer only to title to the Unit.

Section 2.4.  Boundaries of Units: That portion of the
Unit designed for use as a residence shall be bounded by and
contained within the interior, undecorated surfaces of the
perimeter walls, floors, ceilings, windows, fireplace boxes and
doors.  The Units do not, however, contain bearing walls,
columns, vertical supports, floors, roofs, foundation, railings,
fences, gates, garage doors, central heating; central
refrigeration and central air-conditioning equipment, reservoir
tanks; pumps and other central services, pipes, ducts, flues,
conduits, wires and other utility installations, wherever located
except the outlets thereof when located within the Unit.

In interpreting assignments, leases, subleases, deeds,
declarations, and plans, the existing physical boundaries of the
Unit or of a Unit reconstructed in substantial accordance with
the original plans thereof shall be conclusively presumed to be
its boundaries rather than the metes and bounds (or other
description) expressed in the deed, assignment, lease, sublease,
plan or declaration, regardless of minor lateral movement of the
building and regardless of minor variance between boundaries
shown on the Condominium Plan or in the assignment, lease,
sublease or deed, and Declaration and those of the building.

ARTICLE III
MEMBERSHIP IN ASSOCIATION

Section 3.1.  Membership: Every Owner of a Unit which is
subject to assessment shall be a Member of the Association, and
ownership of such Unit shall be the sole qualification for such
Membership.  The terms and provisions set forth in this
Declaration, which are binding upon all Owners of all Units and
all Members in the Association, are not exclusive, as the Member
shall, in addition, be subject to the terms and provisions of the
Articles of Incorporation and the Bylaws of the Association.
Membership shall be appurtenant to and may not be separated from
ownership of any Unit which is subject to assessment.

Section 3.2.  Transfer: The Membership held by any Owner
of a Unit shall not be transferred, pledged or alienated in any
way, except upon the sale, assignment or encumbrance of such Unit
and then only to the Purchaser or Mortgage holder of such Unit.
Any attempt to make a prohibited transfer is void, and will not
be reflected upon the books and records of the Association.  In
the event the Owner of any Unit should fail or refuse to transfer

JOINT EXHIBIT - PAGE - 0050

the Membership registered in his name to the assignee of such Unit, the Association shall have the right to record the transfer upon the books of the Association.

Section 3.3. Voting Rights: The Association shall have two (2) classes of voting Membership.

Class A: Class A Members shall be all those Owners with the exception of the Declarant and shall be entitled to one vote for each Unit owned. When more than one person holds an interest in any Unit, all such persons shall be Members. The vote for such Unit shall be exercised as they determine, but in no event shall more than one vote be cast with respect to any Unit.

Class B: The Class B Member shall be the Declarant. The Class B Member shall be entitled to three votes for each Unit in which it holds the interest required for Membership by Section 1 of this Article; provided that the Class B Membership shall cease and become converted to Class A Membership on the happening of any of the following events, whichever occurs earlier:

(a) When the total votes outstanding in the Class A Membership equals the total votes outstanding in the Class B Membership;

(b) The second anniversary of the Final Subdivision Public Report for this development.

All voting rights shall be subject to the restrictions and limitations provided herein and in the Articles and Bylaws of the Association. Furthermore, notwithstanding any provisions herein excluding the vote of the Declarant, any provision herein calling for membership approval of action to be taken by the Association, except provisions with respect to the action referred to in Section 4.4, below to enforce the obligations of the Declarant, shall expressly require the vote or written assent of a prescribed percentage of each class of membership during the time that there are two outstanding classes of membership, as set forth above. Furthermore any such provision calling for the vote or written assent of each class of membership for the initiation of action by or in the name of the Association, any requirement other than in Sections 4.4, and 14.9, below, and Section 10.1 of the Bylaws, that the vote of the Declarant shall be excluded in any such determination shall be applicable only if there has been a conversion of Class B to Class A shares and only for so long as the Declarant holds or directly controls twenty-five percent (25%) or more of the voting power of the Association.

6.

JOINT EXHIBIT - PAGE - 0051

ARTICLE IV
PROPERTY RIGHTS IN THE COMMON AREAS

Section 4.1.  Members' Easements of Enjoyment:  Declarant
hereby grants to the Owner of each Unit a non-exclusive easement
for access over the Common Area.  Every Member shall have a right
and easement of ingress and egress and of enjoyment in and to the
Common Area which shall be appurtenant to and shall pass with the
title to every Unit, subject to the following provisions:

     (a)  The right of the Association to limit the
number of guests of Members.

     (b)  The right of the Association to establish
uniform rules and regulations pertaining to the use of
the Common Area and the recreational facilities thereof.

     (c)  The right of the Association, in accordance
with its Articles and Bylaws, to borrow money for the
purpose of improving the Common Area and facilities and
in aid thereof, to mortgage said property, provided that
the rights of such mortgages shall be subordinate to the
rights of the Members, and provided further that any such
mortgage shall have the prior approval of at least
seventy-five percent (75%) of all first Mortgagees, as
set forth below.

     (d)  The right of the Association to suspend the
right to use of the recreational facilities by an Owner
but only in accordance with the notice and hearing
requirements set forth in the Bylaws.

     (e)  Those easement rights set forth in Article VII,
below.

Section 4.2.  Delegation of Use:  Any Member may
delegate, in accordance with the Bylaws, his right of enjoyment
to the Common Area and facilities to the Members of his family,
his tenants or contract purchasers who reside in his Unit.

Section 4.3.  Waiver of Use:  No Member may exempt
himself from personal liability for assessments duly levied by
the Association, nor release the Unit owned by him from the liens
and charges hereof, by waiver of the use and enjoyment of the
Common Area and the facilities thereon or by abandonment of his
Unit.

Section 4.4.  Common Area Improvements:  If Common Area
improvements which are to be erected upon the Common Area by
Declarant have not been completed prior to the issuance of the
Subdivision Public Report and the Association is the obligee
under a bond or other arrangement (hereafter "Bond") to secure
performance of the commitment of Declarant to complete the

7.

JOINT EXHIBIT - PAGE - 0052

improvements, the Board of Directors of the Association shall consider and vote on the question of action by the Association to enforce the obligations under the Bond with respect to any improvement for which a Notice of Completion has not been filed within sixty (60) days after the completion date specified for that improvement in the Planned Construction Statement appended to the Bond.  If the Association has given an extension in writing for the completion of any Common Area improvement, the Board of Directors of the Association shall consider and vote on the question of action by the Association to enforce the obligations under the Bond if a Notice of Completion has not been filed within thirty (30) days after the expiration of the extension.  If the Board of Directors of the Association determines that it will not initiate action to enforce the obligations under the Bond or fails to consider and vote on the question within the applicable time period set forth above, then, upon receipt of a petition signed by not less than ten percent (10%) of the total voting power of the Association, the Board of Directors of the Association shall hold a special meeting of Members not less than fifteen (15) days nor more than thirty (30) days after receipt of the petition for the purpose of voting to override the decision of the Board of Directors not to initiate action to enforce the obligations under the Bond or to consider and vote on the question if the Board of Directors has not acted. At this special meeting, a vote of a majority of the voting power of the Members, excluding Declarant, shall determine all matters presented regarding the enforcement of obligations under the Bond.  Such vote to take action to enforce the obligations under the Bond shall be the decision of the Association and the Board of Directors shall thereafter implement this decision by initiating and pursuing appropriate action in the name of the Association.

## ARTICLE V
## COVENANT FOR ASSESSMENTS

   Section 5.1.  Creation of the Lien and Personal Obligation of Assessments:  The Declarant, for each Unit owned by it within the Property, hereby covenants and agrees to pay, and each Owner of any Unit by acceptance of a lease therefor, whether or not it shall be so expressed in such lease, is deemed to covenant and agree to pay to the Association certain assessments as described below, such assessments to be fixed, established and collected as hereinafter provided.  Such assessments together with such interest thereon and costs of collection thereof, as hereinafter provided, shall be a charge on the Unit and that portion of the leasehold estate appurtenant to said Unit and shall be a continuing lien upon said Unit and said leasehold estate against which each such assessment is made.  Each such assessment, together with such interest, costs and reasonable attorneys' fees, shall also be the personal obligation of the person who was the Owner of such Unit at the time when the

8.

assessment fell due. The personal obligation shall not pass to his successors in title until expressly assumed by them.

Section 5.2.  General Purpose of Assessments:  The assessments levied by the Association shall be used exclusively for the purpose of promoting the recreation, health, safety, and welfare of the Members of the Association, and, in particular, for the improvement and maintenance of the properties, services and facilities devoted to this purpose, or to the payment to or reimbursement of other affected parties or governmental entities for the improvement and maintenance thereof, and related to the use and enjoyment of the Common Area and those Association responsibilities set forth herein.

Section 5.3.  Regular Assessments:  Regular Assessments shall be levied and collected by the Association in accordance with the following:

(a)  Purposes:  To cover the following expenses:

(1)  Maintenance, management, operation, repair and replacement of the Common Area and all other areas on the Property which are maintained by the Association;

(2)  Costs relating to the maintaining of a security guard gate adjoining the Property as determined from time to time by the Association and the owner of said ajoining property;

(3)  Unpaid assessments;

(4)  Cost of management and administration of the Association, including, but not limited to, compensation paid by the Association to managers, accountants, attorneys and employees;

(5)  The costs of utilities, trash pick up and disposal (if such services are provided) and other services benefiting the Owners and their Units to the extent such services are paid for by the Association;

(6)  The costs of fire, casualty, liability, workmen's compensation and other insurance covering the Common Area;

(7)  The costs of any other insurance obtained by the Association;

(8)  Reasonable reserves as deemed appropriate by the Board;

JOINT EXHIBIT - PAGE - 0054

(9)   The costs of bonding any members of the Board, any professional management agent, or any other person handling the funds of the Association;

(10) Taxes paid by the Association;

(11) Amounts paid by the Association for discharge of any lien or encumbrance levied against the Common Area or portions thereof;

(12) Costs incurred by any committees established by the Board;

(13) The costs of any other item or items designated by, or in accordance with other expenses incurred by the Association for any reason whatsoever in connection with the Common Area, this Declaration, the Articles or the By-laws or in furtherance of the purposes of the Association or in the discharge of any obligations imposed on the Association by this Declaration;

(14) Lease payments, if any, required to be made on the Common Areas; and

(15) Association's proportionate share of the costs incurred for maintenance of Monterey Lane and the guard gates maintained thereon, if any, pursuant to that certain Agreement attached hereto as Exhibit "A".

(b)   Amount and Type of Payment:  Until the expiration of one (1) year immediately following the conveyance of the first Unit to an Owner, the maximum regular assessment shall be as set forth in the Final Subdivision Report for the Property. From and after said year, the maximum regular assessment may be increased each year by the Board of Directors, but not more than twenty percent (20%) above the maximum regular assessment for the previous year.  The maximum regular assessment may be increased above twenty percent (20%) only by the vote or written assent of a majority of the voting power of the Members excluding Declarant.

(c)   Date of Commencement:  The regular assessments provided for herein shall commence as to all Units on the first day of the month following the closing of escrow on the sale of the first Unit to an Owner.  The first regular assessment shall be adjusted according to the number of months remaining in the calendar year.  The Board of Directors shall fix the amount of the regular assessment against each Unit at least thirty (30) days in advance of each regular assessment period.  Written

10.

notice of the regular assessment shall be sent to every
Owner subject thereto. The due dates shall be
established by the Board of Directors. The Association
shall, upon demand, and for a reasonable charge, furnish
a certificate signed by an officer of the Association
setting forth whether the assessments on a specified Unit
have been paid. A properly executed certificate of the
Association as to the status of assessments on a Unit is
binding upon the Association as of the date of its
issuance.

Section 5.4. Special Assessments: In addition to the
regular assessments authorized above, the Association may levy in
any assessment year, a special assessment applicable to that year
only, for the purpose of defraying, in whole or in part, the cost
of any construction, reconstruction, repair or replacement of a
capital improvement upon the Common Area, including fixtures and
personal property related thereto, provided that any such
assessments which in the aggregate exceed five percent (5%) of
the budgeted gross expenses of the Association for that year
shall require the vote or written assent of a majority of the
voting power of the Members, excluding Declarant. In addition,
special assessments may be levied against and collected from a
particular owner and his Unit to reimburse the Association for
certain costs or expenses that have been incurred by the
Association or Declarant with respect to bringing the Owner and
his Unit into compliance with the terms of this Declaration or
with respect to materials or services furnished to such Owner or
his Unit at his request or on his behalf as may be provided
herein.

Section 5.5. Delinquency: Any assessment provided for
in this Declaration, which is not paid when due, shall be
delinquent, and shall be subject to the following provisions.
All references hereinafter made to the sale of a Unit shall also
include the assignment of the leasehold or subleasehold interest
therein.

(a) Right of Association: If any such assessment
is not paid within thirty (30) days after the due date,
the assessment shall bear interest from the date of
delinquency at the rate of six percent (6%) per annum,
and the Association may, at its option, bring an action
at law against the Owner personally obligated to pay the
same, or, upon compliance with the notice provisions set
forth herein to foreclose the lien against the Unit, and
there shall be added to the amount of such assessment,
the costs of preparing and filing the complaint in such
action, and in the event a judgment is obtained, such
judgment shall include said interest and a reasonable
attorneys' fee, together with the costs of action. Each
Owner vests in the Association or its assigns, the right

11.

JOINT EXHIBIT - PAGE - 0056

and power to bring all actions at law or lien foreclosure against such Owner or other Owners for the collection of such delinquent assessments. No Owner may waive or otherwise escape the liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Unit.

(b)  Notice of Lien:  No action shall be brought to foreclose said assessment lien or to proceed under the power of sale herein provided less than thirty (30) days after the date a notice of claim of lien (hereinafter referred to as "Notice of Delinquent Assessment") is deposited in the United States mail, certified or registered, postage prepaid, to the Owner of said Unit, and a copy thereof is recorded by the Association in the office of the County Recorder; said Notice of Delinquent Assessment must recite a good and sufficient legal description of any such Unit, the record Owner or reputed Owner thereof, the amount claimed (which shall include interest on the unpaid assessment at the rate of six percent (6%) per annum, plus reasonable attorneys' fees and expenses of collection in connection with the debt secured by said lien), and the name and address of the claimant.

(c)  Foreclosure Sale:  Any such sale provided for above is to be conducted in accordance with the provisions of Sections 2924, 2924b, and 2924c of the Civil Code of the State of California, applicable to the exercise of powers of sale in mortgages and deed of trust, or in any other manner permitted or provided by law. The Association, through its duly authorized agents, shall have the power to bid on the Unit at foreclosure sale, and to acquire and hold, lease, mortgage and convey the same.

(d)  Curing of Default:  Upon the timely curing of any default for which a Notice of Delinquent Assessment was filed by the Association, the officers of the Association are hereby authorized to file or record, as the case may be, an appropriate release of such Notice of Delinquent Assessment, upon payment by the defaulting Owner of a reasonable fee, to cover the costs of preparing and filing or recording such release, together with the payment of such other costs, interest or fees as shall have been incurred.

(e)  Cumulative Remedies:  The assessment lien and the rights to foreclosure and sale thereunder shall be in addition to and not in substitution for all other rights and remedies which the Association and its assigns may have hereunder and by law, including a suit to recover a money judgment for unpaid assessments, as above provided.

12.

(f)  Subordination:  A lien for regular and special
assessments shall be subordinate to the lien of any first
Mortgage.  The sale or transfer of any Unit as a result
of the exercise of a power of sale or a judicial
foreclosure under a default under such first Mortgage or
the termination of an Owner's interest in the Unit by
Lessor shall extinguish the lien of such assessments as
to payments which become due prior to such sale or
transfer.  No such transfer or termination as discussed
above shall relieve the new Owner, be it the former
beneficiary under the first Mortgage or other person,
from liability for any assessments thereafter becoming
due or from the lien thereof.

(g)  Expiration of Lien:  Unless sooner satisfied
and released of the enforcement thereof initiated as
hereafter provided such lien shall expire and be of no
further force or effect one year from the date of
recordation of the Notice of Delinquent Assessment.  The
one year period may be extended by the Association for
not to exceed one additional year by recording a written
extension thereof.

Section 5.6.  Exempt Property:  The following property
subject to this Declaration shall be exempted from the
assessments, charge and lien created herein:  (a) all properties
dedicated to and accepted by a local public authority; (b) all
Common Area; and (c) all properties exempted from taxation by the
laws of the State of California, upon the terms and to the extent
of such legal exemption.

Notwithstanding any provision herein, no land or
improvements devoted to residential dwelling use shall be exempt
from said assessments, charges or liens.

Section 5.7.  Uniform Rate of Assessment:  Except as
provided for in Section 5.4 relating to a special assessment
levied against an individual Owner as described therein, both
regular and special assessments shall be levied against each
Owner according to the ratio of the number of Units owned by the
Owner assessed to the total number of Units subject to
assessment, and shall be collected on a monthly basis.

Section 5.8.  No Offsets:  No offsets for any reason
shall be allowed against the full payment of any assessment
levied pursuant to this Declaration, including, without
limitation, a claim that the Association is not properly
exercising its duties of maintenance or enforcement.

13.

## ARTICLE VI
## ARCHITECTURAL CONTROL

Section 6.1.  Architectural Approval:  Except for purposes of proper maintenance and repair, no person or entity shall install, erect, attach, build, place, construct or remove any lighting, shades, screens, signs, awnings, patio covers, decorations, fences, walls, aerials, antennas, landscaping or make any changes or otherwise alter (including the painting thereof) the exterior (or structurally alter the interior) of any Unit or the Common Area until plans and specifications (hereinafter the "Plans") as required in Section 6.2 shall have been reviewed and approved in writing by an Architectural Committee (hereinafter the "Architectural Committee") and Lessor. For purposes of this section, the term "exterior" shall mean any outside wall, outside surface, roof, outside door, balcony, patio, garage, or other outside structure of said Unit.

Section 6.2.  Requirements for Approval:  Said Plans shall be prepared by a duly licensed architect or other person approved by the Architectural Committee and shall include, where appropriate, the following:  (a) color, shape, dimensions and materials to be used; (b) building plans; (c) exterior elevations, surfaces and sections, structural design and salient exterior details; (d) general exterior color schemes; and (e) landscaping plans showing plants, hedges, and fences.  All such Plans shall be submitted in writing over the signature of the Owner or his authorized agent.  Approval shall be based, among other things, on adequacy of site dimensions; adequacy of structural design and materials; conformity and harmony of external design with neighboring structures; effect of location and use of improvements and landscaping on neighboring property, improvements landscaping, operations and uses; preservation of view and aesthetic beauty; with respect to fences, walls and landscaping, assurance of adequate access to the Association in connection with the performance of its duties and the exercise of its power hereunder; conformity with such rules and regulations as may be adopted by the Architectural Committee in accordance with this Article; and conformity of the Plans to the purpose and general plan and intent of this Declaration.

Section 6.3.  Term and Composition of Architectural Committee:  The Architectural Committee shall be composed of three (3) members.  Prior to the first anniversary date of the issuance of the original Public Report for the Project, Declarant may appoint the three (3) original members of the Architectural Committee and their replacements, if necessary.  Declarant's appointees to the Architectural Committee need not be Members of the Association.  Declarant shall retain the right to appoint a majority of the members of the Architectural Committee until the earlier occurrence of either of the following events:

14.

(a)  When ninety percent (90%) or more of the Units have been sold; or

(b)  On the fifth anniversary date of the original issuance of the Public Report for the Project.

After one year from the date of issuance of the original Public Report for the Project, the Board shall have the right to appoint one Member to the Architectural Committee, who shall be a member of the Association.

From and after the occurrence of any of the events referenced in (a) and (b) hereinabove, whichever occurs first, the Board shall have the power to appoint all members of the Architectural Committee who shall all be Members of the Association.

Section 6.4.  Failure to Approve or Disapprove the Plans: In the event the Lessor or the Architectural Committee, or its representatives designated in accordance with Section 6.9, fail to either approve or disapprove such Plans within thirty (30) days after the same have been submitted to them, it shall be conclusively presumed that the Lessor and the Architectural Committee have approved such Plans.  All improvement work approved by the Lessor and Architectural Committee shall be diligently completed and constructed in accordance with the approved Plans.

Section 6.5.  No Liability:  Neither Declarant, Lessor, Lessee, Association, Architectural Committee, or the members or designated representatives thereof shall be liable in damages to anyone submitting Plans to them for approval, or to any Owner of property affected by this Declaration by reason of mistake in judgment, negligence, or nonfeasance arising out of or in connection with the approval or disapproval or failure to approve or disapprove any such Plans, or for any defect in any structure constructed from such Plans.  Such Plans are not approved for engineering design.  Every Owner and his authorized agent, if any, who submits Plans to the Architectural Committee for approval agrees, by reason of such submission, that no action or suit of any kind will be commenced against Declarant, Lessor, Lessee, Association, Architectural Committee, or any of the members or designated representatives thereof to recover any damages.

Section 6.6.  Notice of Noncompliance or Noncompletion: Notwithstanding anything to the contrary contained herein, after the expiration of the later of one year from the date of issuance of a building permit by a municipal or other governmental authority for any improvements or one year from the date of commencement of construction of any improvements within the Project, said improvements shall, in favor of purchasers and encumbrancers in good faith and for value, be deemed to be in

15.

compliance with all provisions of this Article, unless actual
notice of such noncompliance or noncompletion, executed by the
Architectural Committee or its designated representatives, shall
appear of record in the office of the County Recorder or unless
legal proceedings shall have been instituted to enforce
compliance or completion.

Section 6.7.  Rules and Regulations:  The Architectural
Committee may from time to time, in its sole discretion, adopt,
amend and repeal reasonable rules and regulations interpreting
and implementing the provisions hereof and establishing
reasonable architectural standards over the Project.

Section 6.8.  Variances:  Where circumstances such as
topography, location of property lines, location of trees,
configuration of the improvements on the Property, or other
matters require, the Architectural Committee, by the vote or
written assent of a majority of its members, may allow reasonable
variances as to any of the covenants, conditions or restrictions
contained in this Declaration under the jurisdiction of the
Architectural Committee, on such terms and conditions as it shall
require; provided, however, that all such variances shall be in
keeping with the general plan for the improvement and development
of the Project.

Section 6.9.  Appointment and Designation:  The
Architectural Committee may from time to time, by the vote or
written assent of a majority of its members, delegate any of its
rights or responsibilities hereunder to one or more duly licensed
architects or other qualified persons who shall have full
authority to act on behalf of said Architectural Committee in all
matters so delegated.

Section 6.10.  Review Fee and Address:  Any Plans
required by Section 6.2 shall be submitted in writing for review
and approval together with a reasonable processing fee.  The
address of the Architectural Committee shall be the principal
place of business of the Association, or such other place as the
Architectural Committee may from time to time designate in
writing to the Board.  Such address shall be the place for the
submittal of any plans and specifications and the place where the
current rules and regulations, if any, of the Architectural
Committee shall be kept.

Section 6.11.  Inspection:  Any member or agent of the
Architectural Committee may from time to time at any reasonable
hour or hours and upon reasonable notice enter and inspect any
property subject to the jurisdiction of said Architectural
Committee as to its improvements or maintenance in compliance
with the provisions hereof.

16.

JOINT EXHIBIT - PAGE - 0061

ARTICLE VII
EASEMENTS

Section 7.1.  Rights of Association:  There is hereby
reserved to the Association such easements as are necessary to
perform the duties of the Association.

Section 7.2.  Rights of Declarant:  The Declarant, for
itself and its successors and assigns, reserves the following
rights and easements:

(a)  Easement over the Common Area for the
installation and maintenance of electric, telephone,
cable television, water, gas, and sanitary sewer lines
and drainage facilities.

(b)  The right to use on a non-interference basis
the Association clubhouse, if there be one constructed
upon the Common Area, as a sales facility.  Such use by
Declarant or its sales agents or representatives shall
not unreasonably interfere with the Members in their use
and enjoyment of the Common Area or recreational
facilities thereon.  This reservation by Declarant shall
terminate on the happening of either of the following
events, whichever occurs earlier:

(1)  On the expiration of a three (3) year
period from the date of issuance by the Department
of Real Estate of the State of California of a Final
Subdivision Public Report with respect to the
Property; or

(2)  On the sale of all of the Units in the
Project.

(c)  Easements over the Common Area for
construction, display, maintenance, sales, and exhibit
purposes in connection with the construction, development
and sale or lease of the Project until the sale by
Declarant of all Condominiums within the Project,
provided, however, that the exercise of such easements by
Declarant shall not unreasonably interfere with the
reasonable use and enjoyment of the Units or the Common
Area by the Owners.  Until the sale of all of the Units
in the Project, Declarant may use any of the Units owned
by it within the Project as model home sites and any of
the Common Area as incidental parking.  Declarant
reserves the right to alter its construction, development
and design plans as it deems appropriate.

(d)  The right of Declarant (and its agents,
employees and representatives) to enter on the Common
Area to construct improvements on the Property and to

17.

make repairs and remedy construction defects if such
entry shall not interfere with the use of any occupied
Unit unless authorized by the Owner thereof; provided,
however, that the Declarant shall be responsible for the
timely repair of any damage caused to the Common Area or
any Unit by the Declarant (and its agents, employees and
representatives) in exercising this right.

(e)  So long as Declarant owns any Units in the
Project, this Declaration cannot be amended or modified
to change or eliminate the easements reserved herein to
Declarant without the prior written approval of
Declarant, and any attempt to do so shall be null and
void and shall have no effect whatsoever.

Section 7.3.  Rights of Owners:  The rights and duties of
the Owners of Units within the Property with respect to sanitary
sewer and water, electricity, gas and telephone and cable
television lines and drainage facilities shall be governed by the
following:

(a)  Wherever sanitary sewer house connections
and/or water house connections or electricity, gas or
telephone and cable television lines or drainage
facilities are installed within the Property, which
connection lines or facilities or any portion thereof,
lie in or upon the Common Area or lie in or upon Units
owned by others, then the Owner of a Unit served by said
connections, lines or facilities, shall have the right,
and is hereby granted an easement to the full extent
necessary therefor, to enter upon these Units or to have
utility companies enter upon these Units within the
properties in or upon which said connections, lines or
facilities, or any portion thereof, lie to repair,
replace, and generally maintain said connections as and
when the same may be necessary as set forth below.

(b)  Wherever sanitary sewer house connections
and/or water house connections or electricity, gas or
telephone or cable television lines or drainage
facilities are installed within the Property, which
connections serve more than one Unit, the Owner of each
Unit served by said connections shall be entitled to the
full use and enjoyment of such portions of said
connections as service his Unit.

Section 7.4.  Encroachments on Common Area:  Eaves,
window boxes, fireplace units, porches and air conditioner units
or similar improvements which may be erected or installed on the
Property by Declarant, may encroach onto the Common Area,
provided, however, that any such encroachment shall not exceed a
maximum of four (4) feet.

T-1054

JOINT EXHIBIT - PAGE - 0003

Section 7.5.  Restricted Common Areas:  There is hereby reserved and established for certain Owners, various exclusive easements over the Common Area, which shall be deemed "Restricted Common Areas".  These may include any or all of the following:

(a)  Entry areas or courts into the Units, which rights shall be shared with the Unit Owners whose Units abut such areas.

(b)  Attic space, which shall be for the exclusive use of the Owners of the Unit to which such space adjoins.

Such Restricted Common Areas are designated on the Condominium Plan and are referenced in a manner necessary to delineate to which Owner of a Unit the particular right exists. The Owner to which the rights to a Restricted Common Area run shall be obligated to keep and maintain such areas in a safe and clean condition; provided, however, that general maintenance and repair shall primarily remain the obligation of the Association.

Section 7.6.  Other Encroachments:  Each Unit and Common Area improvements within the Project is hereby declared to have an easement over all adjoining Units and Common Area for the purpose of accommodating an encroachment due to engineering errors, errors in original construction, settlement or shifting of the building, or any other cause.-- There shall be valid easements for the maintenance of said encroachments so long as they shall exist, and the rights and obligations of Owners shall not be altered in any way to said encroachment, settlement of shifting; provided, however, that in no event shall a valid easement for encroachment be created in favor of an Owner or Owners if said encroachment occurred due to the willful misconduct of said Owner or Owners.  In the event a structure is partially or totally destroyed, and then repaired or rebuilt, the Owners of each Unit agree that minor encroachments over adjoining Units shall be permitted and that there shall be valid easements for the maintenance of said encroachments so long as they shall exist.

## ARTICLE VIII
## MANAGEMENT

Section 8.1.  Powers of the Association:  All powers relating to management, operation and maintenance of the Common Area, as well as certain rights, duties and powers relating to the Property, as set forth herein and in the Bylaws, shall be vested in the Association.

Section 8.2.  Purposes of the Association:  The specific and primary purposes of and powers of the Association are to manage and maintain the Common Area, Monterey Lane, and all

19.

JOINT EXHIBIT - PAGE 0064

facilities, improvements, and landscaping thereon, to maintain certain individual improvements on the Units, and to provide recreational activities for the Members, foster and support community activities of the Members, and perform the functions set forth in this Declaration of Covenants, Conditions and Restrictions, and the Association's Articles of Incorporation, and Bylaws.

Section 8.3. Contracting Authority: The Association shall have the right and power to employ or engage a manager and other employees or agents and contract for such services, labor and materials as it may deem reasonably necessary to operate and maintain the Common Area and the improvements thereon and to discharge its other duties as herein provided.

Section 8.4. Duties: The Association shall have the powers to and be responsible for:

(a)  The enforcement of this Declaration, the Bylaws of the Association and other agreements of the Association.

(b)  Subject to Section 8.6, below, maintaining the Common Area and facilities and improvements thereon (including furnishings and equipment related thereto) in a good, clean, attractive and sanitary order and repair.

(c)  Providing water, sewer, refuse collection, electrical, telephone, gas and other necessary utilities service for the Common Area, and maintenance, gardening and landscaping for the Common Area.

(d)  Granting easements where necessary for utilities and sewer facilities over the the Common Area to serve the Common Area and the Units.

(e)  The payment of taxes and assessments which are or could become a lien on the Common Area or some portion thereof.

(f)  Establishing and maintaining a working capital and contingency fund in an amount to be determined by the Board of Directors of the Association.

(g)  Providing exterior maintenance of each Unit which is subject to assessment hereunder, only as follows:

(1)  Paint, maintain, and repair and replace (if required because of normal wear, tear or deterioration) roofs, gutters, downspouts and exterior building surfaces, and maintain the

T70549
JOINT EXHIBIT - PAGE 2065    5/22/

landscaping (including the trees, shrubs, grass and
walks) within the Common Area.

(2)   Such exterior maintenance shall not
include:  glass surfaces; landscaping within the
private balcony areas of each Unit; balcony covers
or other additions built or maintained within
private balcony areas by an Owner; repairs or
replacements arising out of or caused by the willful
or negligent act of the Owner, his family, guests,
or invitees, or caused by any of the perils covered
by a standard form fire insurance policy with
extended coverage endorsement thereon, or caused by
flood, earthquake or other Acts of God.  Such
excluded items shall be the responsibility of each
Owner; provided, however, that if an Owner shall
fail to maintain or make the repairs or replacements
which are the responsibility of such Owner, as
provided above, then, upon vote of a majority of the
Board of Directors, and after not less than thirty
(30) days' notice to the Owner, the Association
shall have the right (but not the obligation) to
enter the Unit and provide such maintenance or make
such repairs or replacements, and the cost thereof
shall be added to the assessments chargeable to such
Unit and shall be payable to the Association by the
Owner of the Unit.

(3)   For the purposes solely of performing the
exterior maintenance authorized by this Section, the
Association's agents or employees shall have the
right, after reasonable notice to the Owner, to
enter upon any Unit at reasonable hours.

(h)  Obtaining and maintaining in force the
following policies of insurance:

(1)   Comprehensive public liability insurance
insuring the Association, any manager, the Lessee
and Declarant and the Owners and occupants of Units
and their respective family members, guests,
invitees, and the agents and employees of each,
against any liability incident to the Ownership or
use of the Common Area and including, if obtainable,
a cross-liability or severability of interest
endorsement insuring each insured against liability
to each other insured.  Such insurance shall include
coverage against water damage liability, liability
for nonowned and hired automobiles, liability for
property of others and any other liability or risk
customarily covered with respect to projects similar
in construction, location, and use.

21.

(2)   Master or blanket policy of fire insurance
for the full insurable value of all of the
improvements within the Project.  The form, content,
and term of the policy and its endorsements and the
issuing company must be satisfactory to all
institutional Mortgagees.  If more than one
institutional Mortgagee has a loan of record against
the Project, or any part of it, the policy and
endorsements shall meet the maximum standards of the
various institutional Mortgagees represented in the
Project.  The policy shall contain an agreed amount
endorsement or its equivalent, an increased cost of
construction endorsement or a contingent liability
from operation of building laws endorsement or their
equivalent, an extended coverage endorsement,
vandalism, malicious mischief coverage, a special
form endorsement and a determinable cash adjustment
clause or a similar clause to permit cash settlement
covering full value of the improvements in cash of
partial destruction and a decision not to rebuild.
The policy shall be in the amounts as shall be
determined by the Board.  The policy shall name as
insured the Association, the Owners, Declarant, and
Lessee as long as Declarant or Lessee is the owner
of any Unit and all institutional Mortgagees as
their respective interests may appear, and may
contain a loss payable endorsement in favor of the
trustee described in this declaration.

(3)   Except as provided in this Section, no
Owner can separately insure his Unit or any part of
it against loss by fire or other casualty covered by
any insurance carrier under subparagraph (2).  If
any Owner violates this provision, any diminution in
insurance proceeds otherwise payable that results
from the existence of such other insurance will be
chargeable to the Owner who acquired other
insurance, and the Owner will be liable to the
Association to the extent of any such diminution.
An Owner can insure his personal property against
loss.  In addition, any improvements made by an
Owner to the real property within his Unit may be
separately insured by the Owner, but the insurance
is to be limited to the type and nature of coverage
commonly known as tenant's improvements.  All such
insurance that is individually carried must contain
a waiver of subrogation rights by the carrier as to
other Owners, the Association, Declarant, Lessor,
and Lessee.

(4)   All insurance proceeds payable hereunder
and subject to the rights of the Mortgagees, below,
may be paid to a trustee, to be held and expended

22.

for the benefit of the Owners, Mortgagees and others, as their respective interests shall appear. Said trustee shall be a commercial bank that agrees in writing to accept such trust. If repair or reconstruction is authorized, the Board shall have the duty to contract for such work as provided for in this Declaration.

(5) The Board may and, if required by any Mortgagee, shall purchase and maintain demolition insurance in adequate amounts to cover demolition in case of total or partial destruction and a decision not to rebuild, and a blanket policy of flood insurance. The Board also shall purchase and maintain worker's compensation insurance, to the extent that it is required by law, for all employees of the Project. The Board also shall purchase and maintain fidelity bonds or insurance (which shall be in an amount not less than 150% of each year's estimated annual operating expenses and reserves and shall contain an endorsement of coverage of any person who may serve without compensation) sufficient to meet the requirements of any Mortgagee. The Board shall purchase and maintain such insurance on personal property owned by the Association, and any other insurance, that it deems necessary or that is required by any Mortgagee.

(6) An Owner may carry whatever personal liability and property damage liability insurance with respect to his Unit that he desires. However, any such policy shall include a waiver of subrogation clause acceptable to the Board and to any Mortgagee.

(7) The Board is appointed attorney-in-fact by each Owner to negotiate and agree on the value and extent of any loss under any policy carried hereunder. The Board is granted full right and authority to compromise and settle any claim or enforce any claim by legal action or otherwise and to execute releases in favor of any insurer.

(8) Any Mortgagee has the option to apply insurance proceeds payable on account of a Unit in reduction of the obligation secured by the mortgage of such Mortgagee.

(9) Notwithstanding the foregoing provisions of this Article, the Association shall continuously maintain in effect such casualty, flood and liability insurance and a fidelity bond meeting the insurance and fidelity bond requirements for

23.

T-1054½

Acc 5/28/80

condominium projects established by Federal National
Mortgage Association, Government National Mortgage
Association, Federal Home Loan Mortgage Corporation,
Federal Housing Administration, or Veterans'
Administration, so long as any one is a Mortgagee,
Owner, or insures or guarantees a mortgage within
the Property, except to the extent such coverage is
not available or has been waived in writing by the
foregoing entities.

(i)  Make lease payments, if any, required to be
paid on the Common Area.

(j) Maintenance of Monterey Lane, and any guard-
gates thereon, pursuant to that certain Agreement
attached hereto as Exhibit "A".

Section 8.5.  Right of Entry:  The Association or its
agents may enter any Unit when necessary in connection with any
maintenance, landscaping or construction for which the
Association is responsible.  Upon consent of the Owner, which
consent shall not be unreasonably withheld, the Association or
its agents may enter a Unit to perform maintenance, repairs or
construction for which the Association is responsible.  Such
entry shall be made with as little inconvenience to the Owner as
reasonably possible, and any damage caused thereby shall be
repaired by the Association.

Section 8.6.  Duties of Owners:  In addition to all other
obligations set forth herein, the Owners shall be responsible for
the following:

(a)  In the event the Board shall determine that the
walls, ceilings, floors, doors or any other portion of
the Common Area forming the boundaries of a Unit have
been damaged from within the Unit, notwithstanding that
such damage may be to the Common Area, the Owner of the
Unit shall be responsible for repairing such damage in a
timely manner and in accordance with such rules as the
Board or Architectural Committee shall from time to time
adopt.  In the event such repair is not so accomplished
by the Owner, the Association or its delegates shall have
the right at reasonable times to enter the Unit to effect
such repair, and the cost thereof shall be charged to
said Owner and, if not paid in a timely manner, shall be
a special assessment.

(b)  The repair of any wall or fence separating
neighboring Units shall be the joint responsibility of
the Owners whose Units are separated by such wall or
fence, notwithstanding that such wall or fence may
consist in part of Common Area.  Such adjoining Owners
shall share the expense of such repair equally, but if

24.

one such Owner refuses to join in such repair, the other
may undertake such repair himself and shall receive
contribution from his neighbor for his neighbor's share
of the cost thereof.  In the event that such repair is
required because of the acts or negligence of one of such
adjoining Owners, such repair shall be accomplished by
such Owner at his sole expense.

(c)  Each Owner shall be responsible for the care,
maintenance and replacement of his electric garage door
opener, notwithstanding the fact that such may have been
installed by the Declarant.

Section 8.7.  Association to Defend Certain Actions:  In
the event that a lawsuit is brought against all or substantially
all of the Members within the Project which will or could result
in any lien or encumbrance being levied against an entire
Project, the following terms shall apply:

(a)  The Association shall defend such lawsuit and
the costs of such defense shall be a special assessment
against all of the Members within the Project joined as
defendants in such lawsuit; provided, however, in the
event that an insurance carrier is obligated to provide
such defense under a policy of insurance carried by the
Association, the Association shall be relieved of the
obligation to provide such defense.  Nothing contained
herein shall in any way limit the rights of any Member or
Members to retain counsel of their choice to represent
them in such lawsuit at their own expense.  In the event
that a Member so chooses, he shall not be relieved of
liability for the special assessment provided for in this
Section.

(b)  In the event that a lien or encumbrance not
covered by California Civil Code Section 1357 attaches to
all or substantially all of the Project by reason of a
judgment or otherwise, the Association shall promptly
take the appropriate steps to remove such lien,
including, but not limited to, the payment of money and
the posting of a bond.  The Association shall have the
power to borrow money and to take such other steps as are
necessary to free a Project of such liens.

(c)  Simultaneously with any action taken pursuant
to the above sections, the Association shall levy a
special assessment against each of the Members whose
Condominiums were subject to the lien or encumbrance
which caused the Association to act pursuant to said
Section equal to each such Member's pro rata share of
such lien or encumbrance.  In the event that such special
assessment is not paid within thirty (30) days of its due
date, the Board may effect the remedies of Section 1356

25.

of the California Civil Code and any other remedies
contained herein.

ARTICLE IX
GENERAL RESTRICTIONS

Section 9.1. Partition: The Common Area shall remain
undivided; and no Owner shall bring any action for partition,
excepting as otherwise herein provided, it being agreed that this
restriction is necessary in order to preserve the rights of the
Owners with respect to the operation and management of the
Project.

Section 9.2. Interior of Unit: Each Owner shall have
the right to paint, repaint, tile, wax, paper or otherwise
refinish and decorate the inner surfaces of the walls, ceiling
floors, windows and doors bounding his own Unit.

Section 9.3. Nuisance: Neither the Property, nor any
portion thereof, shall be used for any purpose tending to injure
the reputation thereof, or to disturb the neighborhood or
occupants of adjoining property, or to constitute a nuisance, or
in violation of any public law, ordinance, or regulation in any
way applicable thereto.

Section 9.4. Use of Common Area: The Common Area shall
be used for park, recreational, social and other purposes
directly related to the uses authorized under this Declaration.

Section 9.5. Projections: No projections of any type
shall be placed or permitted to remain above the roof of any
residential building with the exception of one or more chimneys
and one or more vent stacks. No outside air conditioning units,
evaporating coolers, television or radio pole or antenna shall be
constructed, erected or maintained on any building or on any Unit
or Common Area or connected in such manner as to be visible from
the outside of any such building, except as may be constructed by
Declarant.

Section 9.6. Recreational Vehicles: No mobile home,
recreational vehicle, motor home, camper, minihome, boat, truck
of size in excess of 3/4 ton, or trailer of any kind shall be
kept, stored, parked, maintained, constructed or repaired on any
part of the Project other than in specific designated parking
areas as approved by the Board of Directors.

Section 9.7. Lavatory Facilities: No privy shall be
erected, maintained or used upon any portion of a Unit or Common
Area, but a temporary privy may be permitted during the course of
construction of a building. Any lavatory, toilet or water closet
which shall be erected, maintained or used upon any portion of a
Unit or Common Area shall be enclosed and located within a

26.

building permitted under this Declaration to be erected on the
Unit or Common Area, shall be properly connected with the sewer
system and shall be so constructed and operated that no offensive
odor shall arise or otherwise escape therefrom.

Section 9.8.  Signs:  Except for a sign having a maximum
face area of three (3) square feet and advertising the Property
for sale or rent, no sign or other advertising device of any
character shall be erected, maintained, or displayed upon any
part of the Property; provided, however, that Declarant may erect
and maintain on the Common Area or on any Unit owned by it such
signs and other advertising devices or structures, as it may deem
necessary or proper in connection with the conduct of its
operations for the development, improvement, subdivision and sale
of said property; provided further that residential signs having
a maximum face area of seventy-two (72) square inches giving the
name of the occupant and/or the address of a Unit may be
displayed on such Unit.  The Association or its agents may
summarily remove and destroy all signs not conforming to this
Section.

Section 9.9.  Animals:  No animals, fowl, reptiles or
poultry shall be kept on the Property, except that domestic dogs,
cats, birds and fish may be kept as household pets upon said
property provided that they are not kept, bred or raised thereon
for commercial purposes or in unreasonable quantities.
Notwithstanding the foregoing, no animals or fowl may be kept on
the Property which result in any annoyance or are obnoxious to
residents in the vicinity.

Section 9.10.  Offensive Activities:  No noxious or
offensive trades or activity shall be carried on upon any portion
of the Property, nor shall anything be done or maintained thereon
which may be or become an annoyance or nuisance to the
neighborhood, or which shall in any way interfere with the quiet
enjoyment of each of the Owners of his respective dwelling unit,
or which shall in any way increase the rate of insurance.

Section 9.11.  Right of Inspection:  During reasonable
hours and after reasonable notice, any agent of the Association
shall have the right to enter upon and inspect the Property or
any portion thereof and the improvements thereon for the purpose
of ascertaining whether or not the provisions of this Declaration
are being complied with and shall not be deemed guilty of
trespass by reason thereof.  Provided, however, that there shall
be no entry into any dwelling unit without the express consent of
the Owner.

Section 9.12.  Leases:  With the exception of a lender in
possession of a Unit following a default in a first Mortgage, a
foreclosure proceeding or any deed or other arrangement in lieu
of foreclosure, no Unit Owner shall be permitted to lease his
Unit for transient or hotel purposes.  No Unit Owner may lease

T-110542
JOINT EXHIBIT    PAGE 5/28/80

less than the entire Unit. Any lease between an Owner and lessee
shall provide that the terms of the lease are subject in all
respects to the provisions of this Declaration, the Articles of
Incorporation and Bylaws of the Association, and that any failure
by the lessee to comply with the terms of such documents shall be
a default under the lease. All leases shall be in writing.

Section 9.13. Misconduct: Each Owner shall be liable to
the Association for any damage to the Common Area or to any of
the equipment or improvements thereon which may be sustained by
reason of the negligence or willful misconduct of said Owner or
of his family, relatives, guests or invitees, both minor and
adult but only to the extent such Owner would be legally
responsible under the laws of the State of California.

Section 9.14. Structural Changes: Nothing shall be done
in any Unit, or in, on or to the Common Areas, which will impair
the structural integrity of any building or which would
structurally change any building without the prior written
consent of the Board and Lessor.

Section 9.15. Utilities: Each Owner of a Unit shall be
obligated to pay any and all assessments for water, sewage, gas,
electricity, or other utilities, taxes and other charges assessed
individually against such Unit.

Section 9.16. Receptacles: No Owner shall deposit any
garbage, refuse or rubbish in or on the Common Area unless such
matter is deposited in appropriate containers suitably placed as
designated by the Board so as not to detract from the physical
appearance of the Common Area or the Project. Trash bins may be
placed upon the Common Area by each Owner only in accordance with
such rules and regulations as may be promulgated by the Board and
may remain upon the Common Areas only on trash pickup days.

Section 9.17. Television: Radio: No alteration to or
modification of the radio and/or television antenna system, as
developed by the Declarant, shall be permitted and no Owner may
be permitted to construct and/or use and operate his own external
radio and/or television antenna.

ARTICLE X
MORTGAGE PROTECTION

Section 10.1. Seventy-Five Percent Vote of Mortgagees:
Except as provided by statute in case of condemnation or
substantial loss to the Units and/or Common Area, without the
prior written approval of at least seventy-five percent (75%) of
all first Mortgagees, based one (1) vote for each Mortgagee,
neither the Association nor the Members shall be entitled to do
any of the following:

28.



(a)  By act or omission, dissolve the Association or abandon or terminate the Project.

(b)  By act or omission, abandon, partition, sell, alienate, subdivide, release, transfer, hypothecate, or otherwise encumber the Common Area.  This provision is not intended to restrict or otherwise prohibit an Owner from selling or encumbering his own Condominium, nor shall it prohibit the granting of easements for public utilities or other publiv purposes consistent with the intended use of the Common Area.

(c)  Partition or subdivide a Condominium.

(d)  Amend a material provision of this Declaration, the Bylaws or the Articles; for purposes of determining what provisions are material in this Declaration and in the Bylaws or the Articles, such provisions in these documents which are required by the rules, regulations or guidelines of programs administered by Federal National Mortgage Association, Government National Mortgage Association, and Federal Home Loan Mortgage Corporation shall be deemed material, but not by way of limitation, with respect to other provisions in these documents.

(e)  Effectuate any decision to terminate professional management and assume self management of the Association.

(f)  Change the pro rata interest or obligations of any individual Unit for the purpose of:  (i) levying assessments on charges or allocating distributions of hazard insurance proceeds on condemnation awards, or (ii) determining the pro rata share of ownership of each Unit in the Common Area.

(g)  Use hazard insurance proceeds for losses to any Property (whether to Units or to Common Areas) for other than the repair, replacement, or reconstruction of such Property.

Section 10.2.  Other Rights of First Mortgagees.  Any first Mortgagee shall, upon written request to the Association, be entitled to:

(a)  Inspect the books and records of the Association during normal business hours.

(b)  Receive the annual audited financial statements of the Association ninety (90) days following the end of the Association's fiscal year.

29.

(c)   Receive written notice on all annual and special meetings of the Members or of the Board, and first Mortgagees shall further be entitled to designate a representative to attend all such meetings in order to, among other things, draw attention to violations of this Declaration which have not been corrected or made the subject of remedial action by the Association; provided, however, nothing contained in this Section shall give a first Mortgagee the right to call a meeting of the Board or of the Members for any purpose or to vote at any such meeting.

Section 10.3.   Mortgagees Furnishing Information: Mortgagees are hereby authorized to furnish information to the Board concerning the status of any loan encumbering a Unit.

Section 10.4.   Notice to First Mortgagees of Owner Default:   Any first Mortgagee shall be entitled to written notification from the Association of any default in the performance of the obligations imposed by this Declaration by the Owner whose Unit is encumbered by such Mortgagee's mortgage, which default has not been cured within sixty (60) days of a request therefor by the Association; provided, however, the Association shall only be obligated to provide such notice to first Mortgagees who have previously requested such notice in writing.

Section 10.5.   Right of First Refusal:   The right of an Owner to sell, transfer or otherwise convey his Unit shall not be the subject of any right of first refusal or any similar restriction in favor of the Association.   In the event this Declaration is amended to provide for any right of first refusal in the Association, a Mortgagee who comes into possession of a Unit pursuant to a judicial foreclosure or a trustee's sale shall be exempt therefrom.

Section 10.6.   Conflicts:   In the event of any conflict between any of the provisions of this Article and any of the other provisions of this Declaration, the provisions of this Article shall control.

Section 10.7.   Notice of Destruction or Taking:   In the event that the Common Area or any Unit or any portion thereof is substantially damaged or is made the subject of any condemnation proceeding in eminent domain or is otherwise sought to be acquired by a condemning authority, the Board shall promptly notify any first Mortgagee affected by such destruction, taking or threatened taking.   For purposes herein, the term "substantially damaged" shall mean damages exceeding Ten Thousand Dollars ($10,000.00).   If requested in writing by a first Mortgagee, the Association shall evidence its obligations under this Section in a written agreement in favor of such first Mortgagee.

JOINT EXHIBIT - PAGE - 0075

T-10542
Rec 5/28/80

Section 10.8. Breach of Declaration: A breach of any of the covenants, conditions or restrictions of this Declaration shall not defeat or render invalid the lien of any First Mortgage made in good faith and for value on any Unit of the Property or any portion thereof, but said covenants and restrictions shall be binding upon and effective against any Owner of any of said Units whose title is acquired by the foreclosure of any lien or mortgage thereon or sale under any deed of trust given to secure the payment of money.

## ARTICLE XI
## DESTRUCTION OF IMPROVEMENTS

Section 11.1. Destruction; Proceeds Exceed 85% of Reconstruction Costs: If there is a total or partial destruction of the improvements in the development, and if the available proceeds of the insurance carried pursuant to Article VIII are sufficient to cover not less than eighty-five percent (85%) of the costs of repair and reconstruction, the improvements shall be promptly rebuilt unless, within ninety (90) days from the date of destruction, Members then holding at least seventy-five percent (75%) of the total voting power of each class of Members present and entitled to vote, in person or by proxy, at a duly constituted meeting, determine that such repair and reconstruction shall not take place. If repair and reconstruction is to take place, the Board shall be required to execute, acknowledge and record in the office of the County Recorder, not later than one hundred twenty (120) days from the date of such destruction, a certificate declaring the intention of the Members to rebuild.

Section 11.2. Destruction; Proceeds Less Than 85% of Reconstruction Costs: If the proceeds of insurance are less than eighty-five percent (85%) of the costs of repair and reconstruction, repair and reconstruction may nevertheless take place if, within ninety (90) days from the date of destruction, Members then holding at least fifty-one percent (51%) of the total voting power of each class of Members present and entitled to vote, in person or by proxy, at a duly constituted meeting, determine that such repair and reconstruction shall take place. If repair and reconstruction is to take place, the Board shall be required to execute, acknowledge and record in the office of the Orange County Recorder, not later than one hundred twenty (120) days from the date of such destruction, a certificate declaring the intention of the Members to rebuild.

Section 11.3. Rebuilding Procedures: If the Members determine to rebuild pursuant to Sections 11.1 or 11.2, above, the Owner of each Unit located within a structure that has been totally or partially destroyed shall be obligated to contribute his proportionate share of the cost of reconstruction or restoration of the structure containing his Unit, over and above

31.

the available insurance proceeds, which proportionate share shall
be based upon the ratio of the square footage of the floor area
of the Unit to be assessed to the total square footage of the
floor area of all Units to be assessed. All Owners shall
contribute their proportionate share of the cost of
reconstruction or restoration of any portion of the Common Area
not comprising the structure within which a Unit is located, and
the proportionate share of each Owner shall be equal to a
fraction the numerator of which is one (1) and the denominator of
which is the total number of Units then comprising the Project.
If any Owner fails or refuses to pay his proportionate share, the
Board may levy a special assessment against the condominium of
such Owner which may be enforced under the lien provisions
contained in Article V or in any other manner provided in this
Declaration. If any Owner disputes the amount of his
proportionate liability under this Section, such Owner may
contest the amount of his liability by submitting to the Board
within ten (10) days after notice to the Owner of his share of
the liability written objections supported by cost estimates or
other information that the Owner deems to be material and may
request a hearing before the Board at which he may be represented
by counsel. Following such hearing, the Board shall give written
notice of its decision to all Owners, including any
recommendation that adjustments be made with respect to the
liability of any Owners. If such adjustments are recommended,
the notice shall schedule a special meeting of Members for the
purpose of acting on the Board's recommendation, including making
further adjustments, if deemed by the Members to be necessary or
appropriate. All adjustments shall be affirmed or modified by a
majority of the total voting power of each class of Members. If
no adjustments are recommended by the Board, the decision of the
Board shall be final and binding on all Owners, including any
Owner filing objections.

Section 11.4. Rebuilding Contract: If the Members
determine to rebuild, the Board or its authorized representative
shall obtain bids from at least two reputable contractors and
shall award the repair and reconstruction work to the lowest
bidder. The Board shall have the authority to enter into a
written contract with the contractor for such repair and
reconstruction, and the insurance proceeds held by the trustee
shall be disbursed to the contractor according to the terms of
the agreement. It shall be the obligation of the Board to take
all steps necessary to assure the commencement and completion of
authorized repair and reconstruction at the earliest possible
date.

Section 11.5. Rebuilding Not Authorized: If the Members
determine not to rebuild, then any insurance proceeds then
available for such rebuilding shall be distributed to the Owner
of each Unit or its Mortgagee in the same ratio as the fair
market value of his Unit bears to the fair market value of all of
the Units immediately prior to the destruction, in accordance

JOINT EXHIBIT - PAGE - 0077
T 79542

with normal appraisal techniques. The Board shall have the duty, within one hundred and twenty (120) days from the date of such destruction, to execute, acknowledge and record in the office of the County Recorder, a certificate declaring the intention of the Members not to rebuild.

Section 11.6. Minor Repair and Reconstruction: In any case, the Board shall have the duty to repair and reconstruct improvements, without the consent of Members and irrespective of the amount of available insurance proceeds, in all cases of partial destruction when the estimated cost of repair and reconstruction does not exceed Twenty Thousand Dollars ($20,000). The Board is expressly empowered to levy a special assessment for the cost of repairing and reconstructing improvements to the extent insurance proceeds are unavailable, such assessment to be levied as described in Section 11.3 (but without the consent or approval of Members despite any contrary provisions) in this Declaration.

## ARTICLE XII
## CONDEMNATION

Section 12.1. Sale by Unanimous Consent: If an action for condemnation of all or a portion of the Project is proposed or threatened by any governmental agency having the right of eminent domain, then, on unanimous written consent of all of the owners and after written notice to at least seventy-five percent (75%) of all first Mortgagees, the Project, or a portion of it may be sold.

Section 12.2. Distribution of Proceeds of Sale: On a sale occurring under Section 12.1 above, the proceeds shall be distributed to the Owner and the Mortgagees of each Unit as their respective interests may appear in the same ratio as that set forth in Section 11.5, above.

Section 12.3. Distribution of Condemnation Award: If the Project, or a portion of it, is not sold but is instead taken, the judgment of condemnation shall by its terms apportion the award among the Owners and their respective Mortgagees, and in the same ratio as that set forth in Section 11.5, above.

Section 12.4. Revival of Right to Partition: On sale or on taking that renders more than fifty percent (50%) of the Units in the Project uninhabitable, the right of any Owner to partition through legal action shall revive immediately.

33.

JOINT EXHIBIT - PAGE - 0078     J-19547
Rec. 5/28/80

ARTICLE XIII
PARTITION

Section 13.1.    Suspension:    Except as specifically set
forth to the contrary in this Declaration, the right or partition
is suspended pursuant to the California Civil Code as to the
Project.  Nothing in this Declaration, however, shall prevent
partition or division of interest between joint or common Owners
of one (1) Unit, provided that the written approval of a first
Mortgagee of such Unit is first obtained.

Section 13.2.    Proceeds:    Proceeds or property resulting
from a partition shall be distributed to and among the respective
Owners and their Mortgagees in the same ratio as that set forth
in Section 12.2, above.

Section 13.3.    Power of Attorney:    Pursuant to the
California Civil Code, each Owner grants the Association an
irrevocable power of attorney to sell the Project for the benefit
of the Owners when partition can be had.  Exercise of the power
is subject to the approval of Members.

ARTICLE XIV
GENERAL PROVISIONS

Section 14.1.    Term:    The covenants and restrictions of
this Declaration shall run with and bind the Property,
Association and any Owner, their legal representatives, heirs,
successors and assigns, for a term of twenty (20) years from the
date this Declaration is recorded, after which time they shall be
automatically extended for successive periods of ten (10) years.

Section 14.2.    Notices:    Any notice to be given to an
Owner or a Mortgagee under the provisions of this Declaration
shall be in writing and may be delivered as follows:

(a)  Notice to an Owner shall be deemed to have been
properly delivered when delivered personally prepaid, to
the most recent address furnished by such Owner in
writing to the Association for the purpose of giving
notice, or if no such address shall have been furnished,
then to the street address of such Owner's Condominium in
the Project.  Any notice so deposited in the mail within
the County, shall be deemed delivered forty-eight (48)
hours after such deposit.  In the case of co-Owners, any
such notice may be delivered or sent to any one of the
co-Owners on behalf of all co-Owners and shall be deemed
delivered on all such co-Owners.

(b)  Notice to a Mortgagee shall be deemed to have
been properly delivered when placed in the first class
United States mail, postage prepaid, to the address

34.

T-10542
Dec 5/28/82

furnished to the Association by such Mortgagee for
purposes of notice or, if no such address is furnished,
to any office of the Mortgagee in the county, or, if no
such office is located in the county, to any office of
such Mortgagee.

Section 14.3. Enforcement: The Association, Lessor,
Lessee, any Owner, or their successor in interest, shall have the
right to enforce, by any proceeding at law or in equity, all
restrictions, conditions, covenants, reservations, liens and
charges now or hereafter imposed by the provisions of this
Declaration or any amendment thereto, including the right to
prevent the violation of any such restrictions, conditions,
covenants or reservations and the right to recover damages or
other dues for such violation; provided, however, that with
respect to assessment liens, the Association shall have the
exclusive right to the enforcement thereof. Failure by the
Association or by any Owner to enforce any covenant or
restriction herein contained shall in no event be deemed a waiver
of the right to do so thereafter.

Section 14.4. Severability: Invalidation of any one of
these covenants, conditions or restrictions by judgment or court
order shall in no way affect any other provisions, which shall
remain in full force and effect.

Section 14.5. Construction: The provisions of this
Declaration shall be liberally construed to effectuate its
purpose of creating a uniform plan for the development of a
residential community or tract and for the maintenance of common
recreational facilities and Common Area. Section headings are
inserted for convenience only and are not intended to be a part
of this document or in any way to define, limit or describe the
scope or intent of the particular section to which they refer.

Section 14.6. Singular Includes Plural: Whenever the
context of this Declaration requires it, the singular shall
include the plural and the masculine shall include the feminine.

Section 14.7. Attorneys' Fees: In the event action is
instituted against an Owner to enforce any of the provisions
contained in this Declaration, the party prevailing in such
action shall be entitled to recover from the other party thereto
as part of the judgment reasonable attorneys' fees and costs of
such action, which attorneys' fees and costs shall also be added
to such Owner's assessments.

Section 14.8. Nuisance: The result of every act or
omission whereby any of the covenants contained in this
Declaration or if the Bylaws are violated in whole or in part is
hereby declared to be and constitutes both a public and private
nuisance, and every remedy allowed by law or equity against every
such result and may be exercised by any Owner, by the Association

35.

JOINT EXHIBIT - PAGE 0080

or its successors in interest, or by the County of Orange or other affected governmental entity.  Such remedy shall be deemed cumulative and not exclusive.

Section 14.9.  Amendments:  Unless otherwise provided for herein, this Declaration of Covenants, Conditions and Restrictions may be amended only by the affirmative assent or vote of not less than seventy-five percent (75%) of the voting power of the Members and Lessor, excluding the Declarant; provided, however, that although Declarant has not obtained the Veterans' Administration ("VA") or Federal Housing Administration ("FHA") approval in connection with the development of this Project, such approval may be sought by Declarant.  In the event that the VA or FHA approval is so sought for the purpose of having FHA and/or VA insure or guarantee any mortgage or providing any form of assistance within the purview of such agencies with respect to this Project, the rules and regulations of FHA and/or VA, as the same exist at the date of recording of this Declaration, may require this Declaration to be amended in certain respects and additionally will require that FHA and/or VA participate in certain decisions affecting the Project and management of the Association.  Therefore, effective as of the date this Project receives FHA and/or VA approval, this Declaration is thereby amended as follows without the necessity of any vote or written assent of the Owners or Mortgagees:

(a)  The following actions will require the prior approval of the FHA and/or VA:

(1)  Alteration of any Unit, construction of additional improvements, the establishment of additional licenses, reservations and rights-of-way, or alteration of construction plans and designs by Declarant.

(2)  Merger or consolidation or dissolution of the Association.

(3)  Any amendment or modification of this Declaration, the Articles or By-Laws.

(b)  The Association shall submit to FHA and/or VA, sixty (60) days prior to the beginning of each fiscal year of the Association, for their review and approval, as the case may be, a budget of the expenses for the ensuing fiscal year, on the FHA and/or VA model form of budget, indicating the amount of assessments contemplated for the next fiscal year period.

In the event the FHA, VA, or both, approve the Project as provided herein, if requested to do so by FHA and/or VA, the Board shall be automatically authorized and shall be obligated to execute a Regulatory Agreement on FHA Form No. 3278 (revised

36.

August, 1969) or such later version thereof then in use or the
analogous VA form or both as modified to reflect any
peculiarities pertaining to the Property as shall be deemed
appropriate by FHA and/or VA.

Section 14.10. Annexation: Additional residential
property and Common Area may be annexed to the Property with the
consent of two-thirds (2/3) of the voting power of the Members,
excluding Declarant.

IN WITNESS WHEREOF, the undersigned being the Declarant
herein, has hereunder set its hand this _____2/st_____ day of
_____MAY_____, 1980.

                              THE ROBERT P. WARMINGTON CO.,
                              a California corporation

                              By_____
                              Its_____

                              By_____
                              Its_____

The foregoing is hereby approved and agreed to this 2/st
day of _____MAY_____, 1980.

                              _____
                              Robert P. Warmington, an individual

                              BOUSER BROS CO., a California
                              limited partnership

                              By_____
                              General Partner

                              By_____
                              General Partner

37.

## CONSENT OF LIENHOLDER

## AND SUBORDINATION OF LIEN

The undersigned beneficiary under that certain Deed of Trust dated October 31, 1979 recorded as Instrument No. 1279084-WHB in Book 13375 , pages 991 through 1012 , inclusive, of Official Records of Orange County, California, consents to all of the provisions contained in the attached Declaration of Covenants, Conditions and Restrictions and agrees that the lien of the deed of trust shall be junior and subordinate and subject to said Declaration.

Dated: May 12, 1980

Lienholder

By CROCKER NATIONAL BANK

By Leslie S. Crecker

STATE OF CALIFORNIA )
                    ) SS.
COUNTY OF ORANGE )

On MAY 12 , 1980, before me, the undersigned, a Notary public in and for said State, personally appeared _____, known to me to be the President, and _____, known to me to be the Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

_____
Notary Public in and for said
County and State

38.

JOINT EXHIBIT - PAGE - 0083

T-10542
Klw 5/28/80

STATE OF CALIFORNIA

COUNTY OF **Orange** } ss.

On **May 27, 1980** before me, the undersigned, a Notary Public in and for said State, personally appeared **Robert P. Warmington**

known to me to be the person_____ whose name **is** subscribed to the within instrument and acknowledged to me that _____ **he** _____ executed the same.

WITNESS my hand and official seal.

Signature _Pearl L Hunt_

**Pearl L. Hunt**

Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

[This area for official notarial seal]

Form 9001—(Individual) First American Title Company

---

TC 1948 CA (8-74)
(Partnership)

TITLE INSURANCE
AND TRUST

STATE OF CALIFORNIA

COUNTY OF **ORANGE** } SS.

On **May 21, 1980** before me, the undersigned, a Notary Public in and for said State, personally appeared **Clifford C. Houser and Vernon F. Houser**

_____ known to me to be **general** partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

Signature _Irene B. Burnett_

OFFICIAL SEAL
IRENE B. BURNETT
Notary Public - California
ORANGE COUNTY
My Commission Expires July 1, 1980

---

STATE OF CALIFORNIA

COUNTY OF **Orange** } ss.

On **May 27, 1980** before me, the undersigned, a Notary Public in and for said State, personally appeared **Robert P. Warmington** President, and **Oliver N. Crary** known to me to be the **Vice Pres.** of the corporation that executed the within instrument, and known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature _Pearl L Hunt_

Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

Form 3005—(Corporation) First American Title Company

JOINT EXHIBIT - PAGE 0084

CROCKER NATIONAL BANK

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF ORANGE     )


On _May 12_____, 19_80_, before me, the undersigned, a Notary
Public in and for said State, personally appeared _LORILEE S. CEDAR_
and _____, known to me to be the _VICE_
_PRESIDENT_ and _____ respectively, of CROCKER NA-
TIONAL BANK, the national banking association that executed the within instrument,
and also known to me to be the person(s) that executed the within instrument on
behalf of CROCKER NATIONAL BANK, the national banking association therein named,
and acknowledged to me that such national banking association executed the same
pursuant to its bylaws or a resolution of its board of directors.


WITNESS my hand and official seal.


PALMIRA OESTERREICH

OFFICIAL SEAL
PALMIRA OESTERREICH
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Sep. 17, 1982

REIMBURSEMENT AGREEMENT

This Reimbursement Agreement is entered into this _____ day of _____, 1980, by and between Houser Bros. Co., a California Limited Partnership ("Houser") and Huntington Beach Gables Homeowners Association, a California non-profit corporation ("Association").

R E C I T A L S

A.    Houser has leased to Robert P. Warmington, an individual, certain real property in the City of Huntington Beach, more particularly described as Tract 10542, as per map recorded in Book 456, pages 49 and 50 of Miscellaneous Maps, Orange County which has been developed as a condominium project (the "Warmington Property").

B.    Houser is presently the owner of certain real property located adjacent and contiguous to the Warmington Property which property is presently developed as a mobile home park known as Rancho del Rey Mobile Estates (the "Houser Property").

C.    Located on the Houser Property, and adjacent to the Warmington Property, is a certain roadway known as Monterey Lane (the "Roadway"). The Warmington Property and the owners and residents thereof have an easement for ingress and egress over the Roadway. Houser and the Association agree that it would enhance the values of the Warmington Property and the Houser Property if guardgates (the "Guardgates") are con-

*Not to be Completed or Signed until*

EXHIBIT A

JOINT EXHIBIT - PAGE - 0086

structed and maintained on the Roadway, and if the Roadway is maintained in a safe and clean manner.

D. In order to enable the construction of the Guardgates, and to insure the continued maintenance of the Roadway and Guardgates by Houser, and the payment by the Association of its share of the costs incurred thereby, the parties hereto have entered into this Agreement.

## T E R M S

For valuable and complete consideration, the parties hereto hereby agree as follows:

I. CONSTRUCTION OF GUARDGATES

Houser hereby agrees to construct or cause to be constructed, two Guardgates on the Roadway, in accordance with plans and specifications approved and agreed upon by Houser and the Association. Except as specifically set forth below, all costs incurred in the construction of the Guardgates shall be borne solely by Houser.

II. MAINTENANCE OF ROADWAY AND GUARDGATE

Houser hereby agrees to keep, maintain, repair and replace, when necessary, the Roadway and Guardgates in a safe, decent and proper condition, and subject to rights of reimbursement below, to pay the costs related thereto, which shall include, but shall not necessarily be limited to the following (the "Costs"):

(a) Compensation; plus any necessary withholding taxes, social security and related payments, for one guard to operate the Guardgate daily.

IV.  TERM

This Agreement shall commence as of the execution hereof, and shall terminate on October 17, 2059.

V.  INDEMNIFICATION

The parties hereto acknowledge and agree that the Association's sole responsibility herein is the payment of its share of the costs as set forth above, and that Houser shall bear all responsibilities, obligations and liabilities related to the maintenance of the Roadway and Guardgates. In furtherance thereof, Houser agrees to indemnify, defend and hold the Association harmless from any and all claims or damages arising out of the maintenance and use of said Roadway and Guardgates.

VI.  MISCELLANEOUS

The parties further agree as follows:

(a)  In the event any action is instituted to enforce any provision contained herein, the prevailing party shall be entitled to attorney's fees and costs so incurred.

(b)  This Agreement shall bind and inure to the benefit of the successors and assigns of the parties hereto.

(c)  This Agreement may only be amended by written agreement between the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

HOUSER BROS. CO., a California          HUNTINGTON BEACH GABLES
Limited Partnership                     HOMEOWNERS ASSOCIATION, a
                                        California Non-Profit Corporation

By_____               By_____
                                                        President

By_____               By_____
= to Be Corrected on

5002

BK 13680 PG 1091

WHEN RECORDED RETURN TO:

$6.00
C1

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

RESERVE, RUMPER & HUGHES
5190 Campus Drive
Newport Beach, CA  92660

-3 00 P.M.   AUG 5 '80

Attn:  Frank D. Stiefel

LEE A. BRANCH, County Recorder

FIRST AMENDMENT TO
DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

Tract 10542
City of Huntington Beach
Orange County, California

This First Amendment to Declaration of Covenants, Conditions and Restrictions is made this _30_ day of _JULY_, 1980, by THE ROBERT P. WARMINGTON CO., a California corporation ("RPW Co."), HOUSER BROS. CO., a California limited partnership ("Houser") and ROBERT P. WARMINGTON, an individual ("Warmington").

WHEREAS, Houser is the owner of the fee interest in the following described property (the "Property"):

Lots 1 and 2 of Tract No. 10542 as per map recorded in Book 456, Pages 49 and 50, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California; and

WHEREAS, Warmington is the lessee of the Property; and

WHEREAS, RPW Co. is the sublessee and the developer of the improvements constructed on the Property, and is also the Declarant as that term is defined in that certain Declaration of Covenants, Conditions and Restrictions recorded May 28, 1980, in Book 13618, pages 982 through 1030, inclusive, Official Records of Orange County, California (the "Declaration"); and

WHEREAS, Warmington and RPW Co. intend to assign, convey and set over to ultimate consumers, various leasehold and fee interests in the Condominium Units, as defined in the Declaration, which collectively shall constitute the Condominium to be acquired by said consumer; and

WHEREAS, Warmington, Houser and RPW Co. desire to clarify the Declaration to insure that the interests so conveyed are inseparable and constitute the entire interest to be conveyed, which clarification requires an amendment to the Declaration.

1

BK 13890PG 1092

NOW THEREFORE, Warmington, Houser and RPW Co., do hereby declare as follows:

1.  That collectively they are the sole owners of the Property as their interests may appear.

2.  That they retain the exclusive and sole right to amend the Declaration.

3.  That, in furtherance of the foregoing, the following amendments are hereby made to the Declaration:

    (a)  Section 1.13 of the Declaration is hereby amended to read as follows:

"Section 1.13.  Owner/Ownership:  "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or a lessee or sublessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation.  Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means.  All references herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest."

    (b)  Section 2.2 of the Declaration is hereby amended to read as follows:

"Section 2.2.  Elements of Condominium:  Each Condominium shall be comprised of the following elements:

    (a)  A leasehold or sub-leasehold estate in a Unit as shown and defined on the Condominium Plan, excepting that portion of a Unit consisting of buildings and other improvements;

    (b)  An undivided one-eightieth (1/80) interest in a leasehold or subleasehold interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion of the Common Area consisting of building and other improvements;

    (c)  An exclusive easement on the leasehold or sub-leasehold estate referred to in item (b) above, which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit, excepting that portion consisting of buildings and other improvements;

2

JOINT EXHIBIT - PAGE - 0090

BK 13690 PG 1093

(d)  A non-exclusive easement and right to use the leasehold or sub-leasehold estate referred to in item (b) above except the Restricted Common Area, excepting that portion consisting of buildings and other improvements;

(e)  A fee interest in that portion of a Unit, as shown and defined on the Condominium Plan, which consists of buildings and other improvements;

(f)  An undivided one eightieth (1/80) fee interest in and to those portions of the Common Area, as shown and defined on the Condominium Plan which consist of buildings and other improvements;

(g)  An exclusive easement on the fee estate referred to in item (f) above which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit which consist of buildings and other improvements;

(h)  A non-exclusive easement and right to use the fee estate referred to in item (f) above except the Restricted Common Area, which consist of buildings and improvements; and

(i)  A membership in the Association."

4.   All other terms and conditions of the Declaration shall remain in full force and effect.

    IN WITNESS WHEREOF, the parties hereto have executed this First Amendment as of the day first above written, its effective date.

                              THE ROBERT P. WARMINGTON CO.,
                              a California corporation

                              By _____

                              HOUSER BROS., CO., a California
                              Limited Partnership
                              By _____
                              By _____

                              _____
                              Robert P. Warmington

5

BK 13690PG 1094

FD 1949 CA. (5-78)
(Corporation)

STATE OF CALIFORNIA
COUNTY OF _Orange_ } ss.

On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said
State, personally appeared _Roger L. Darnell_
known to me to be the _Vice_ President, and
known-to-me-to-be _____ Secretary
of the corporation that executed the within instrument,
known to me to be the persons who executed the within
instrument on behalf of the corporation therein named, and
acknowledged to me that such corporation executed the
within instrument pursuant to its by-laws or a resolution of
its board of directors.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

---

FD 1942 CA (5-78)
(Partnership)

STATE OF CALIFORNIA
COUNTY OF _ORANGE_ } ss.

On _AUGUST 4, 1980_
before me, the undersigned, a Notary Public in and for said State, personally appeared
_CLIFFORD C. HOUSER AND VERNON F. HOUSER_

_____ known to me
to be _BOTH_ of the partners of the partnership
that executed the within instrument, and acknowledged to me
that such partnership executed the same.

WITNESS my hand and official seal.

Signature _G. McDonald_

OFFICIAL SEAL
G. McDONALD
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 15, 1984

(This area for official notarial seal)

---

FD 1944 CA (6-74)
(Individual)

STATE OF CALIFORNIA
COUNTY OF _Orange_ } SS.

On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said
State, personally appeared _Robert P. Warmington_

_____ known to me
to be the person _whose name _is_ subscribed
to the within instrument and acknowledged that _he_
executed the same.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

# EXHIBIT C

RECORDING REQUESTED BY:

Mr. Randy Nickel
4476 Alderport Drive
Huntington Beach, CA 92649

MAIL TAX STATEMENTS TO:

Mr. Randy Nickel
4476 Alderport Drive.
Huntington Beach, CA 92649

Lease from Present to 2059

TITLE OF DOCUMENT:      ASSIGNMENT OF CONDOMINIUM SUBLEASE

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

96.00
* S R 0 0 1 0 4 4 6 0 2 6 $ *
2018000395579 2:35 pm 10/31/18
227 415 A34    5
0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 3.00

JOINT EXHIBIT - PAGE - 0333
Requested By: Joann Harris , Printed: 4/5/2019 3:31 PM

WHEN RECORDED MAIL TO:
(Assignee's Name & Address)
MR. RANDALL L. NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

Mail tax statements to:
MR. RANDALL L NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

_____

(Space Above this Line for Recorder's Use)

## ASSIGNMENT OF GROUND LEASE & CONDOMINIUM SUBLEASE
No Consideration. Term of Lease Less Than 99 years.

**WHEREAS**
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into that certain GROUND LEASE also known as the MASTER LEASE dated October 19, 1979, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 499 inclusive.

**WHEREAS**
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into a PARTIAL CANCELLATION OF MASTER LEASE dated November 7, 1980 for that certain MASTER LEASE dated October 19, 1979; recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Pg(s) 1253-1255, **Instrument No. 8691.

**WHEREAS**
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into that certain SUBLEASE dated October 19, 1979, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 504, inclusive, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California as shown on Miscellaneous Map(s) recorded in Book 456, Page(s) 49 and 50, in the Office of the Orange County, California Clerk Recorder.

**WHEREAS**
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into a PARTIAL CANCELLATION OF SUBLEASE dated October 19, 1979; for that certain SUBLEASE dated November 7, 1980, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1256-1258; with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Maps, in the Office of the Orange County, California Clerk Recorder, **Instrument No. 8692;

**WHEREAS**
For valuable consideration, receipt of which is hereby acknowledged, the undersigned JAMIEL GALLIAN, hereby transfers and assigns to RANDALL L NICKEL, a married man, as his sole and separate property all right, title and interest of the undersigned, as Tenant, in and under that certain MASTER LEASE/ Ground Lease, dated November 7, 1980, recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1259-1273, **Instrument No. 8693;

1

**JAMIE L GALLIAN**, hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property**, all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE, dated August 1, 1980**, by and between ROBERT P. WARMINGTON, as Landlord, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANT, recorded on November 7, 1980, Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1274-1290, **Instrument No. 8694;

As amended by the **FIRST AMENDMENT TO CONDOMINIUM SUBLEASE** effective January 1, 2003, recorded in the Office of the Orange County, California Clerk Recorder as Document No. 2003-001044770 on August 28, 2003.

**JAMIE L GALLIAN**, hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONVEYANCE OF REMAINDER INTEREST, dated November 7, 1980**, recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1291-1293, **Instrument No. 8695;

**JAMIE L GALLIAN**, hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property**, all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE (SHORT FORM – MEMORANDUM AND GRANT DEED, dated November 7, 1980**, recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1294-1298, **Instrument No. 8696.

DATED: ___10/31/18___        _____
                             ASSIGNOR JAMIE L GALLIAN

STATE OF CALIFORNIA        )
                          ) ss.
COUNTY OF ORANGE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On ___10/31/2018___, before me, ___Paul Dyer, Notary Public___

Personally appeared ___Jamie L Gallian___,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

_____
Signature of Notary Public

(This space for Notary Seal)

2

## ASSIGNMENT OF CONDOMINIUM SUBLEASE
### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby Accepts said Assignment and
hereby agrees with for the benefit of the Master Lessor, Sublessor/Landlord, Tenant and under the
Original Condominium Sublease commonly referred to throughout this document as "Condominium
Sublease", described in said Assignment, to keep, perform and be bound by all the terms, covenants
and conditions contained in said Condominium Sublease and as amended by the First Amendment to
Condominium Sublease on the part of the Master Lessor, Sublessor/Landlord and Condominium
Sublease Tenant therein to be kept and performed, to all intents and purposes as though the
undersigned Assignee was the Original Condominium Sublease Tenant there under.

Assignee agrees to pay Sublessor/Landlord a late fee equal to 6% of any rent or other payment due
under the Condominium Sublease, which is not received by Sublessor/Landlord within ten (10) days
of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of
10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to
pay attorneys fees and costs incurred by Landlord to collect rent or other payment under the
Condominium Sublease or to otherwise enforce Sublessor/Landlord rights under the Condominium
Sublease.

DATED: _10·31·18_                      _____
                                       ASSIGNEE RANDALL L NICKEL

STATE OF CALIFORNIA     )
                        ) ss.
COUNTY OF ORANGE

A notary public or other officer completing this certificate verifies only the identity of the individual
who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or
validity of that document.

On _10/31/2018_ before me, _Paul Dyer, Notary Public_,
Personally appeared_ Randall L Nickel_,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to
the within instrument and acknowledged to me that he executed the same in his authorized capacity,
and that by his signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____                          PAUL DYER
                                                 Notary Public – California
                                                 Riverside County
                                                 Commission # 2211935
                                                 My Comm. Expires Aug 28, 2021
Signature of Notary Public      (This space for Notary Seal)

3

## EXHIBIT A (LEGAL)

The estate or interest in the land described:

A Ground leasehold and Condominium Sublease hold estate as to Parcels 1 and 2, said estate being more particularly described as the Lessees' interest under that certain Ground Lease set forth in subparagraph (A) herein below:

    (A)    That certain Ground Lease dated August 1, 1980, executed by Houser Bros. Co, A Limited Partnership organized under the Laws of the State of California, in which Clifford C. Houser and Vernon F. Houser constitute the sole General Partners, as Landlord, and by Robert P. Warmington, as Tenant, for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County:   Book 13824 Page 1259-1273
    APN: 937-63-053, Unit 53.

    (B)    That certain Condominium Sublease dated August 1, 1980, executed by Robert P. Warmington, as Sub-lessor and John F. Turner and Virginia H. Turner (Original Sublessee) for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County: Book 13824 Page 1274-1290
    APN: 937-63-053, Unit 53.

All that certain land interest situated in the State of California, County of Orange and is described as follows:

Parcel    1:
Unit 53 as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358 Page(s) 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements;

Parcel    2:
An undivided one-eightieth (1/80th) interest as Tenants in Common in the Common Area of Lots 1 and 2 Tract No. 10542, in the City of Huntington Beach, County of Orange, State of California as shown on a map recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Map, records of Orange County, California, as shown on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

Except there from all minerals, oil, gas and other hydrocarbon substances lying below a depth of 500 feet below the surface of said Land without the right of surface entry above the depth of 500 feet from the surface, as reserved in deeds of record.

Parcel    3:
Those portions of Unit 53, building 14, inclusive, as shown and defined on the Condominium Plan, Consisting of buildings and other improvements.

Parcel    4:
An undivided one-eightieth (1/80th) interest as Tenants in Common, in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings or other improvements.

Parcel    5:
An easement for the exclusive use and occupancy of those portions of the restricted Common Area, as defined on said Condominium Plan for ground level entry, courtyard entry, staircases, garages, and attic space relating to said units.

Parcel    6:
A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the restricted Common Area(s).

4

**PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                           )     ss.
COUNTY OF ORANGE           )

I am a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 23161 Mill Creek Drive, Suite 300, Laguna Hills, California 92653.

On November 6, 2020, I served the following-described document:

**CROSS-COMPLAINT OF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION TO SET ASIDE VOIDABLE TRANSFER AND FOR INJUNCTIVE RELIEF**

on the parties in this action by placing true and correct copies thereof in a sealed envelope, addressed as follows:

| | |
|---|---|
| MARK A. MELLOR, ESQ.<br>THE MELLOR LAW FIRM<br>6800 Indiana Avenue<br>Riverside, CA 92506 | Attorney for Plaintiff/Cross-Defendant<br>RANDALL L. NICKEL |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal service on that same day with postage thereon fully paid at Laguna Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this 6th day of November, 2020, at Laguna Hills, California.

IVAN K. REYES

# EXHIBIT 2

# EXHIBIT 2

1   ERIC P. ISRAEL (State Bar No. 132426)
     *eisrael@DanningGill.com*
2   AARON E. DE LEEST (State Bar No. 216832)
     *adeleest@DanningGill.com*
3   DANNING, GILL, ISRAEL & KRASNOFF, LLP
     1901 Avenue of the Stars, Suite 450
4   Los Angeles, California 90067-6006
     Telephone:    (310) 277-0077
5   Facsimile:     (310) 277-5735

6   Attorneys for Jeffrey I. Golden,
     Chapter 7 Trustee

7

FILED & ENTERED

SEP 23 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall     DEPUTY CLERK

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                     **SANTA ANA DIVISION**

11

12   In re

13   JAMIE LYNN GALLIAN,

14

15            Debtor.

16

17

18

19 _____

| | |
|---|---|
| Case No. 8:21-bk-11710-SC | |
| Chapter 7 | |
| **ORDER AUTHORIZING TRUSTEE'S ABANDONMENT OF ESTATE'S INTEREST IN CLAIMS AGAINST RANDALL L. NICKEL RELATING TO THE OCTOBER 2018 TRANSFER OF THE PROPERTY COMMONLY KNOWN AS 4476 ALDERPORT DR. #53, HUNTINGTON BEACH, CALIFORNIA 92649** | |
| [No Hearing Required] | |

20        The Court having reviewed the Trustee's Notice of Intent to Abandon Estate's Interest

21 in Claims against Randall L. Nickel relating to the October 2018 Transfer of the Property

22 commonly known as 4476 Alderport Dr. #53, Huntington Beach, California 92649 (the "Notice of

23 Intent") (*docket no. 201*), filed by Jeffrey I. Golden, as Chapter 7 Trustee for the bankruptcy estate

24 (the "Estate") of Jamie Lynn Gallian (the "Debtor), and no objections or opposition having been

25 filed to the Notice of Intent, the Court hereby

26

27

28

ORDERS THAT:

1.      The Estate's interest in claims against Randall L. Nickel ("Nickel") arising solely out of the October 2018 transfer of the Debtor's interest in the property commonly known as 4476 Alderport Dr. #53, Huntington Beach, California 92649, to Nickel, including any claims under the Uniform Voidable Transactions Act (California Civil Code §§ 3439 et seq.) and 11 U.S.C. § 544, is abandoned.

###

Date: September 23, 2022

Scott C. Clarkson
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

17701 Cowan Avenue, Suite 210, Building D
Irvine, CA 92614

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __06/28/2023__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) __06/28/2023__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __06/28/2023__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott Clarkson, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| __06/28/2023__ | Kerry A, Murphy | /s/Kerry A. Murphy |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.