| Attorney or Party Name, Address, Telephone & FAX Nos, State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JAMIE LYNN GALLIAN<br>16222 MONTEREY LN. #376<br>HUNTINGTON BEACH, CA 92649<br>(714)321-3449<br>JAMIEGALLIAN@GMAIL.COM<br><br><br>☒ Respondent appearing without attorney<br>☐ Attorney for Respondent: | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**   SANTA ANA DIVISION

| In re:<br>JAMIE LYNN GALLIAN | CASE NO.: 8:21-bk-11710-ES<br>CHAPTER: 7 |
|---|---|
| | **RESPONSE TO MOTION REGARDING THE AUTOMATIC STAY AND DECLARATION(S) IN SUPPORT** |
| | DATE: ~~XXXXXX~~ 7/19/2023<br>TIME: 10:00 am<br>COURTROOM: ~~XX~~ 5C<br>PLACE: 411 West Fourth Street<br>Santa Ana, CA 92701 |
| Debtor(s). | |
| **Movant:** The Huntington Beach Gables Homeowners Association, A CA Nonprofit Mutual Benefit Corporation | |

**Respondent:** ☒ Debtor    ☐ trustee    ☐ other:

> NOTE REGARDING FILING AND SERVICE OF RESPONSE, EXHIBITS AND DECLARATIONS:
>
> A copy of the Response, exhibit(s) and declaration(s) must be served upon:
>
> (1) Movant's attorney (or Movant, if Movant does not have an attorney);
> (2) the trustee; and
> (3) the judge who presides over this bankruptcy case.
>
> Then the document must be filed with the court.

1. ☐ **NONOPPOSITION**
   The Respondent does not oppose the granting of the Motion.

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 1                          F 4001-1.RFS.RESPONSE

2. ☐ **LIMITED OPPOSITION**

   a. ☐ Respondent opposes the Motion only to the extent that it seeks immediate relief from stay. Respondent requests that no lock out, foreclosure, or repossession take place before (*date*): _____ and the reason for this request is (*specify*):

   b. ☐ As set forth in the attached declaration of the Respondent or the Debtor, the motion is opposed only to the extent that it seeks a specific finding that the Debtor was involved in a scheme to hinder, delay or defraud creditors.

   The Debtor:
   - (1) ☐ has no knowledge of the Property.
   - (2) ☐ has no interest in the Property.
   - (3) ☐ has no actual possession of the Property.
   - (4) ☐ was not involved in the transfer of the Property.

   c. ☐ Respondent opposes the Motion and will request a continuance of the hearing since there is an application for a loan modification under consideration at this time. Evidence of a pending loan modification is attached as Exhibit _____.

3. ☒ **OPPOSITION:** The Respondent opposes granting of the Motion for the reasons set forth below.

   a. ☐ The Motion was not properly served (*specify*):
   - (1) ☐ Not all of the required parties were served.
   - (2) ☐ There was insufficient notice of the hearing.
   - (3) ☐ An incorrect address for service of the Motion was used for (*specify*):

   **X OTHER: Moving party currently lacks authority to prosecute such cause of action as articulated by the Ninth Circuit Bankruptcy Appellate Panel in Hanlin v. Frazer (In re Vandevort), 2009 Bankr. LEXIS 4535; 2009 WL 7809927 (9th Cir. BAP Sept. 8, 2009);**

   b. ☒ Respondent disputes the allegations/evidence contained in the Motion and contends as follows:
   - (1) ☐ The value of the Property is $ _____, based upon (*specify*):

   - (2) ☐ Total amount of debt (loans) on the Property is $ _____.

   - (3) ☐ More payments have been made to Movant than the Motion accounts for. True and correct copies of canceled checks proving the payments that have been made are attached as Exhibit _____.

   - (4) ☐ There is a loan modification agreement in effect that lowered the amount of the monthly payments. A true and correct copy of the loan modification agreement is attached as Exhibit _____.

   - (5) ☐ The Property is necessary for an effective reorganization. Respondent filed or intends to file a plan of reorganization that requires use of the Property. A true and correct copy of the plan is attached as Exhibit _____.

   - (6) ☐ The Property is fully provided for in the chapter 13 plan and all postpetition plan payments are current. A true and correct copy of the chapter 13 plan is attached as Exhibit _____ and proof that the plan payments are current through the chapter 13 trustee is attached as Exhibit _____.

   - (7) ☒ The Property is insured. Evidence of current insurance is attached as Exhibit _____.

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 2                              F 4001-1.RFS.RESPONSE

02/17/2022 Doc. No. 65    Hearing Held (RE: related document(s)45 Motion for Relief from Stay - ACTION IN NON-BANKRUPTCY FORUM filed by Creditor The Huntington Beach Gables Homeowners Association) - Deny motion without prejudice to re-filing the motion if the cause of action for voidable transfer is abandoned or deemed abandoned by the chapter 7 trustee pursuant to 11 U.S.C. 554. (Daniels, Sally) (Entered: 02/28/2022)

(8) ☐ Movant's description of the status of the unlawful detainer proceeding is not accurate.

(9) ☐ Respondent denies that this bankruptcy case was filed in bad faith.

(10) ☒ The Debtor will be prejudiced if the Nonbankruptcy Action is allowed to continue the nonbankruptcy forum.

(11) ☒ Other (specify):
Movant has not sustained its burden to establish "cause" for relief from the stay under 11 U.S.C. Section 362

X    Moving party currently lacks authority to prosecute such cause of action as articulated by the Ninth Circuit Bankruptcy Appellate Panel in Hanlin v. Frazer (In re Vandevort), 2009 Bankr. LEXIS 4535; 2009 WL 7809927 (9th Cir. BAP Sept. 8, 2009);

c.    ☒ Respondent asserts the following as shown in the declaration(s) filed with this Response:

(1) ☐ The bankruptcy case was converted from chapter ____ to chapter ____.

(2) ☐ All postpetition arrearages will be cured by the hearing date on this motion.

(3) ☐ The Property is fully provided for in the chapter 13 plan and all postpetition plan payments
☐ are current, or ☐ will be cured by the hearing date on this motion.

(4) ☐ The Debtor has equity in the Property in the amount of $ _____.

(5) ☐ Movant has an equity cushion of $ _____ or _____% which is sufficient to provide adequate protection.

(6) ☐ The Property is necessary for an effective reorganization because (specify):

(7) ☒ The motion should be denied because (specify):
See the attached Memorandum of Points and Authorities along with the Declaration of Jamie Lynn Gallian in support thereof.

(8) ☒ An optional memorandum of points and authorities is attached in support of this Response.

4.    **EVIDENCE TO AUTHENTICATE EXHIBITS AND TO SUPPORT FACTS INSERTED IN THE RESPONSE:**

Attached are the following documents in support of this Response:

☒ Declaration by the Debtor                    ☐ Declaration by the Debtor's attorney
☐ Declaration by trustee                       ☐ Declaration by trustee's attorney
☐ Declaration by appraiser                     ☐ Other (specify):

Date: x~~02/10/2022~~
06/28/2023

_____
Printed name of law firm for Respondent (if applicable)

JAMIE LYNN GALLIAN
_____
Printed name of individual Respondent or attorney for Respondent

*Jamie Lynn Gallian*
_____
Signature of individual Respondent or attorney for Respondent

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**JAMIE LYNN GALLIAN**
**16222 MONTEREY LANE #376**
**HUNTINGTON BEACH, CA 92649**
**714-321-3449**
**JAMIEGALLIAN@GMAIL.COM**
**IN PRO PER**


# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION


In re:

JAMIE LYNN GALLIAN,

Debtor

_____

THE HUNTINGTON BEACH GABLES
HOMEOWNERS' ASSOCIATION, a
California Nonprofit Mutual Benefit
Corporation

                            *Plaintiff*,

              *v.*

JAMIE L GALLIAN, an individual;
RANDALL L. NICKEL, an individual; and
ROES 1 through 100, inclusive

                            Defendant.

Case No.  8:21-bk-11710-SC

Chapter 7

Adv. No. 8:21-ap-01095-SC

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION OF
CREDITOR THE HUNTINGTON BEACH
GABLES HOMEOWNERS
ASSOCIATION'S MOTION FOR RELIEF
FROM THE AUTOMATIC STAY;
DOC. 344

DECLARATION OF JAMIE LYNN
GALLIAN IN SUPPORT THEREOF.


Hearing

Date:  JULY 19, 2023

Time: 10:00 a.m.

Courtroom: 5C (Via Zoom .GOV

Location:  411 West Fourth Street

Santa Ana, CA. 92701-4593

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Creditor The Huntington Beach Gables Homeowners Association ("Creditor" or "Movant") Motion for Relief from Stay (the "Motion") should be denied as Movant has not sustained its burden to establish "cause" for relief from the stay under 11 U.S.C. 362.

On March 23, 2017, Debtor JAMIE LYNN GALLIAN accepted an "Assignment of Condominium Sublease" from her step-mother, SANDRA BRADLEY ("Bradley") debtors predecessor and Co-defendant in the HOAs Civil Case No. 30-2017-00913985.  Sandra L. Bradley, Assignee,  recorded an Intra-Family "Gift" in the Orange County Clerk Recorder's Office  Document No. 2017-116815. **Exhibit A**   The home, Unit 53, in question was originally purchased by SANDRA L. BRADLEY ("Bradley") on November 23, 2009, recorded in the Orange County Clerk Recorders Office Document No. 2009-633802.  **Exhibit B**   Debtor was the Bradley's tenant since November 23, 2009.  Debtor had no ownership in the unit or voting rights in the HOA,,  nor were the Gables recorded CC&Rs applicable to debtor.  Debtor was not a Legal Owner recorded with the Orange County Recorder of a Leasehold, interest per the CC&Rs, therefore debtor was not a Member of the Huntington Beach Gables Homeowners Association.

The Huntington Beach Gables Homeowners Association ("HOA") filed the 2017 Civil Lawsuit on April 11, 2017, Case No. 30-2017-00913985, 18 days after Gallian [became] a Member of  the HOA.  On March 2, 2017, the HOA sent ADR correspondence to owner Sandra L. Bradley, offering Alternative Dispute Resolution pursuant to Civil Code section 5935(c). **EXHIBIT C.** A homeowner in a common interest development after receiving an ADR request from the HOA has thirty (30) days after receipt of the offer to respond to the HOAs ADR request to submit the matter to dispute resolution with the Association.  The homeowner Sandra Bradley received the letter mailed to the address listed on the Associations Membership records.  I am informed and belief Sandra Bradley did not respond to the Associations' ADR offer. Instead, the homeowner, Sandra Bradley, the widow of debtor's deceased father, duped Jamie Gallian into believing she was getting an early inheritance.

2

On March 22, 2017, Sandra Bradley insisted her step-daughter, go to the Bradley Family

Trust Attorney's office, Henry Coopersmith, of Newport Beach.  Attorney Coopersmith had

waiting for debtor a notarized signed document by Sandra Bradley. Gallian was told to sign the

Acceptance of Subcondominium Leasehold by Attorney Coopersmith. Debtor complied. Legal

Title of Unit 53, to Debtor Gallian was under the guise as a "gift" allegedly a part of  her

inheritance left to her according to Attorney Coopersmith by debtors deceased father, husband of

Sandra Bradley.  After Sandra Bradley Assigned the Sub-condominium lease to Debtor and

Debtor Accepted the Assignment of the Sub-condominium, debtor asked for the GRANT DEED

to the home.  Debtor request were unanswered and ignored.  Later a TRO was filed against

debtor by Sandra Bradley's high-priced probate attorney's under elder abuse.  The RO expires on

July 25, 2022  Debtors father probate estate is still pending. The subcondominium Lease was

memorialized and recorded in the Orange County Clerk Recorders Office on March 23, 2017.

BRADLEY notified the HOA that Bradley was no longer the owner of the Unit 53.

Thereafter, the HOA failed to offer the new owner Jamie Gallian, Alternative Dispute Resolution

as required under Civil Code section 5935(c), giving the new owner (Gallian) 30 days to respond

to a request to submit the Associations matter to Alternative Dispute Resolution.  Instead, the

Association jumped the gun and filed a Civil Complaint against Debtor on April 11, 2017,

instead of after April 24, 2017, affording Debtor the opportunity to choose an arbitrator with the

Association and participate in ADR pursuant to Civil Code section 5935.

The Association filed a Civil Complaint on April 11, 2017, 18 days after debtor became

the legal owner gifted outside escrow by her step-mother, Sandra Bradley. The violations

occurred in the restricted common area and the Separate Area of Unit 53.  Debtor Gallian was

not the homeowner in 2014, 2015 or 2016 when the HOA alleges these violations occurred.

Debtor Jamie Gallian, the tenant, never received any HOA Notice of  Violation nor, based on

debtors information and belief did Gallians step-mother, the homeowner Sandra Bradley, ever

report to Debtor of receiving Notice of Architectural Violations in 2014, 2015 or 2016 from the

Association.  **EXHIBIT D**

The  address for BRADLEY on file in the Association Membership Records is not the Alderport Address where debtor lived as the tenant since November 23, 2009.  The address for all HOA correspondence, documented with the Orange County Tax Assessor's Office for the mailing of the Tax Assessment Bills for the Unit 53 subject to county property taxes. was 18 Meadowwood, Coto De Caza, CA 92679, approximately 40 miles south from debtor in Huntington Beach.

The Unverified 2017 civil action 30-2017-00913985, *The Huntington Beach Gables Homeowners Association, A CA Non Profit Mutual Benefit Corporation vs Sandra L. Bradley, an individual; Sandra L. Bradley, Trustee of the Sandra L. Bradley Trust; Jamie L. Gallian, an individual, Defendants* was filed in the Orange County Superior Court on April 11, 2017.

On December 22, 2017, Co-Defendant Sandra L. Bradley settled with the Association for $10,000.00.  The association dismissed the civil complaint against BRADLEY.  However, the association continued the civil action against Debtor as the remaining defendant.  Debtor and the Association President Lee Gragnano and Vice President Janine Jasso participated in a Mandatory Settlement Conference on March 2, 2018, with their attorneys present wherein the HOA agreed to dismiss an unnoticed, unverified exparte temporary restraining order filed against Gallian on December 22, 2017, attempting to get Gallian fired from her 22 year career as a flight crew member.  Gallian agreed to sell her home.   The Association and Gallian entered into a settlement under 664.6, placed on the record in front of the Honorable James L. Crandall, Judge of the Orange County Superior Court, C-33.  The parties were told to order a copy of the Reporter's Transcript from the March 2, 2018, Gallian complied.  The Court retained jurisdiction to enforce the settlement agreement. The Plaintiff was to dismiss the Civil Complaint and all TRO cases were to be dismissed. No new Cases were to be filed by any party. The Court stated new cases would constitute a breach of the settlement agreement.  On  May 1, 2018, Gallian filed Notice of Settlement with the trial court, Case No. 30-2017-00913985 with a certified copy of the Reporters Transcript from the Mandatory Settlement Conference.

The Clerks Office at CJC rejected Gallians filing as Gallian was   1.  Not the Plaintiff HOA of the

case and  (2). The notice did not contain a date of dismissal with the Notice of Settlement Gallian

filed on May 1, 2018 in Case No. 30-2017-00913985. In addition to the notice described above,

Gallian also filed through her Counsel Frank Satalino, Notice of Settlement in the unnoticed

exparte temporary restraining order action Case No. 30-2017-00962999, Huntington Beach Gables

Homeowners Association vs Jamie Gallian filed by the Huntington Beach Gables Board President

Lee Gragnano, on behalf of himself under CCP 527.8.  Lee Gragnano is not an EMPLOYER,

therefore the petition was filed unlawfully without notice of the exparte under CCP §§527.8.

Gragnano's single unnoticed exparte petition bootstrapped onto the petition the name of his live in

girl-friend and included the names of the five HOA Board Members and the husband of Board

Member Janine Jasso and her adult son over the age of 21 years and her school age daughter  The

Gables Board of Directors consisting of Lee Gragnano, Lindy Beck, Theodore Phillips, Lori

Burrett, Jennifer Paulin all orchestrated by and at times representing  Huntington Beach Gables

Homeowners Association under her CA Bar No. 170188, Attorney Janine Jasso, also a Gables

HOA Board Member are currently DEFENDENTS with others  in the *STATE COURT CASE,*

*NICKEL vs HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, et al.*   The

Movant is attempting to obtain relief of stay as debtor was named in the HOAs Cross-Complaint

filed almost three years after Gallian agreed to sell her home at the March 2, 2018 Mandatory

Settlement Conference.   The settlement agreement was vacated as the

attorneys for the HOA pushed the envelope when preparing a written settlement agreement. On

July 19, 2018, Honorable James L. Crandall denied the HOAs MOT to enforce the settlement

under 664.6 stating there was no meeting of the minds. **EXHIBIT**      Gallian move from HOA

on 9/11/18,and sold the property on October 31, 2018 recorded as Document No., 2018000395579

Notice to the trial court was given on November 1, 2018.   On November 9, 2018, Huntington

5

Beach Gables Homeowners Association filed an Exparte Motion asking the Honorable James L. Crandall, C-33, to freeze the proceeds from the sale of Gallians Home on October 31, 2018. The Court denied the HOA exparte Motion without prejudice as well as the HOAs MOTION to postpone the Jury Trial set to begin on December 10, 2019. **EXHIBIT**    The HOA never filed another Motion on the regular calendar to ask the Court to freeze the sale proceeds from GALLIANS home sold to Mr. Nickel unencumbered on October 31, 2018, above the selling price of any other unit in the Gables Community. The Court, C-33 Honorable James L. Crandall vacated, sua sponte, the Jury Trial on or about December 6, 2019.

The Associations instant Motion seeks to lift the bankruptcy stay so that Movant may proceed with its 2021 cross-complaint filed against non bankruptcy co defendant Randall L. Nickel and Debtor Jamie Lynn Gallian, Co-Defendant ("Debtor") in the 2020 Non-Bankruptcy State Court Action Action titled *Randall Nickel vs. The Huntington Beach Gables Homeowners Association et al.*, filed in October 2020, by the subsequent purchaser of Unit 53, [October 31, 2018], in the Superior Court of California, County of Orange, Case Number 30-2020-01163055-CU-OR-CJC (the "State Court Action").

However, the State Court Action is nowhere near the advance stages of discovery. Minimal discovery has been responded to by both sides. Only one deposition has taken place in the State Court Action. In fact, the State Court Action was still in its "infant" stage so to speak when the Notice of Stay was filed on July 20, 2021.

Further, Movant's claim that creditors will be better served "outside of bankruptcy" is self-serving and designed to protect only a single creditor (at the cost of others) but also a closely related creditor Houser Bros Co., who happens to be connected to movant, as the Master Lessor Houser Bros Co. under an 80-year Ground Leasehold effecting debtors previous residence and the ground leashold underneath debtors current residence both located on the same Parcel of land described in the Master Lease authored by Houser Bros Co attorneys Rutan & Tucker, Costa Mesa, CA. **EXHIBIT**    6

Master Lessor Houser Bros Co also has an adversary action pending in this court Case

No. 8:21-ap-01097-ES Houser Bros Co vs Jamie Lynn Gallian.

Moreover, the Master Lessor of Movant, HOUSER BROS CO ("Master Lessor") under

the 80- year GROUND LEASEHOLD ("the 80-year Ground Leasehold") **EXHIBIT** ,

HOUSER BROS CO is also debtors MASTER LESSOR [adv. 8;21-ap-01097] and has a

potential stake in the outcome of Movant's motion.

Master Lessor HOUSER BROS CO. violated the automatic stay on December 15, 2021

and again on January 20, 2022, when Houser Bros Co filed a new STATE COURT CASE 30-

2021-01236940 attempting to take control of debtors exempt real property, real property 2014

manufactured home and after debtor on October 27, 2021, was AWARDED CA COVID-19

RENT RELIEF BY THE STATE OF CALIFORNIA post-petition in the amount of $24,301.55,

Houser Bros Co refused to endorse the CA COVID-19 RENT RELIEF check no. 5806665, dated

November 8, 2021, after the Honorable Corey Cramin Ordered Houser Bros Co to hand deliver

the CA Covid-19 Rent Relief Check to the TRUSTEE Jeffrey Golden to deposit into the Trustee

Attorney Trust Account. Houser Bros Co instead mailed the check to the TRUSTEE,

unendorsed. The TRUSTEE Jeffrey Golden could not deposit the CA Covid-19 Rent Relief

Funds debtor lawfully applied for and qualified for.

Debtor demanded Houser Bros Co immediately comply with Honorable Judge Corey

Cramin, Minute Order dated 1/20/2022. Debtor refused. The CA COVID-19 RENT RELIEF

CHECK Debtor applied to the CA Covid Rent Relief Program on June 9, 2021, prepetition, to

mitigate the alleged back rent owed for the Groundlease, Lot 376, space where debtors

manufactured home is installed, qualified for the Covid Rent Relief. However, Houser Bros

refuses to CREDIT debtor any and all funds received from the CA COVID RENT RELIEF

PROGRAM, Lot 376 Ledger, with the funds received on or about November 10, 2021.

--

--

7

In allowing Movant to proceed in nonbankruptcy action is to enable them to achieve their nefarious intent to assist Master Lessor Houser Bros Co., .GP and Houser Bros Co dba Rancho Del Rey Mobilehome Estates in exercising dominion and control over debtors previous homestead exemption in Unit 53 located at 4476 Alderport Drive, Huntington Beach, CA 92649, or debtor's current filed and recorded homestead exemption of Unit 376, located at 16222 Monterey lane Huntington Beach, CA 92649.  Both homes located within TRACT 10542, recorded in Misc. Maps Book 456, pg. 49-50 as well as recorded Parcel Map Book 108, Pg 47-48 within the Orange County Clerk Recorders Office, County of Orange, depriving other creditors of their claims.

Given the procedural posture of the State Court Action, lifting the stay would substantially interfere with Debtor's Chapter 7 intended purpose thwarted now by Movants efforts as Movant is seeking a dissolution of the Debtor, without following the law.

Debtor is not in this bankruptcy case just because of the dispute it has over a Ground Lease tenancy for Unit 53 with the Gables HOA or Lot 376, Tract 10542 debtors current residence, with Master Lessor Landlord, Houser Bros Co dba Rancho Del Rey Mobilehome Estates.

Debtor's insurmountable debt prepetition, indispensably needs this court's protection to properly administer its debt. Debtor's "survival" is necessary for an effective fresh start  plan and which is debtors intent.

Granting relief from stay would jeopardize Debtor's ability to obtain a Fresh Start and prevent other creditors from getting paid through Debtor's non-exempt assets. As explained in more detail below, the Curtis factors weigh in favor of the Debtor and against the Movant. Debtor respectfully requests that Movant's Motion be denied.

## II. FACTUAL BACKGROUND

Debtor was a tenant in the Gables HOA for approximately eight years of her step-mother Sandra L. Bradley, the owner of Unit 53.  Debtor became the homeowner of Unit 53 [18] **EIGHTEEN DAYS** before the Huntington Beach Gables Homeowners Association, A CA Nonprofit Mutual Benefit Corporation incorporated on or about May 22, 1980, with the Secretary of State of California **filed a civil case April 11, 2017.**  The Gables condominium project was developed under a Condominium Plan recorded in the Orange County Recorders Office on August 17, 1979.  A tentative Map was approved set to expire on August 6, 1980.  On August 5, 1980, 1 day before the tentative map expired the Robert P. Warmington Corporation and Master Lessor Houser Bros Co made a material change [after] the Final Subdivision Report [White Report] was issued by the California Department of Real Estate filed on July 11, 1980.

The Condominium Project is located within Huntington Beach.  A homeowners association was formed known as The Huntington Beach Gables Homeowners Association and Tract 10542.  Unit 53, is commonly known as 4476 Alderport Drive, Unit 53, Huntington Beach, California 92649 (herein "Unit 53") is on leased land under an 80 year Ground Leasehold subject to recorded easements concerning APN 178-771-03, Misc Maps Bk 456, Pg 49

On or about March 22, 2017, Debtor accepted a "GIFT" from her step-mother, Sandra Bradley, the previous homeowner of the sub-condominium leasehold, Unit 53, by virtue of Bradley's  purchase on November 23, 2009, recorded in the Orange County Recorders' Office as Document No. 2009-633802, a true and correct copy of which is attached hereto as **Exhibit A.**

## III. LEGAL STANDARD

A creditor may move for relief from automatic stay under 11 U.S.C.  362(d), which provides that a bankruptcy court "shall grant relief from the stay" upon a showing of "cause." Id. "Cause" is determined on a case-by-case basis. Id; In re Tucson, 912 F.2d 1162, 1166 (9th Cir.

1990).  In Curtis, a Utah district court identified twelve factors courts should consider in

deciding whether there is "cause" to lift an automatic stay:

(1) Whether the relief will result in a partial or complete resolution of the issues;

(2) The lack of any connection with or interference with the bankruptcy case;

(3) Whether the foreign proceeding involves the debtor as a fiduciary;

(4) Whether a specialized tribunal has been established to hear the particular

cause of action and whether that tribunal has the expertise to hear such cases;

(5) Whether the debtor's insurance carrier has assumed full financial

responsibility for defending the litigation;

(6) Whether the action essentially involves third parties, and the debtor functions

only as a bailee or conduit for the goods or proceeds in question;

(7) Whether the litigation in another forum would prejudice the interests of other

creditors, the creditor's committee and other interested parties;

(8) Whether the judgment claim arising from the foreign action is subject to

equitable subordination;

(9) Whether movant's success in the foreign proceeding would result in a judicial

lien avoidable by the debtor under Section 522(f);

(10) The interests of judicial economy and the expeditious and economical determination of

litigation for the parties;

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared

for trial, and

(12) The impact of the stay and the "balance of hurt."

Curtis, 40 B.R. at 799-800; see also In re Plumberex Specialty Prods., Inc., 311 B.R. 551, 559

(Bankr. C.D. Cal. 2004) (adopting Curtis factors and recognizing courts in other circuits that

have done the same).

The Ninth Circuit has recognized that "the Curtis factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." Kronemyer, 405 B.R. 915, 921 (9th Cir. BAP 2009).

However, while the Curtis factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. Plumberex, 311 B.R. at 560. In fact, some cases regarding automatic stay do not mention Curtis at all. See In re Conejo Enterprises, Inc., 96 F.3d 346, 353 (9th Cir. 1996) (affirming bankruptcy court's denial of relief from automatic stay without discussing Curtis factors. As the Curtis court noted, "The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." 40 B.R. at 800.

In addition, the party seeking to lift the automatic stay has the burden of establishing a prima facie case that "cause" exists for relief under 362(d)(1). Id. If "cause" is established, "the burden shifts to the debtor to show that relief from the stay is unwarranted." Id.

## III. ARGUMENT

Here, Movant fails to address the Curtis factors, much less make the requisite showing of the cause thereunder.

A. Where Applicable, the Curtis Factors Do Not Support Relief From Stay

**i. Curtis Factor #1** - Relief Will Not Result in a Complete Resolution of the Issues

The State Court has not made any determination of any issues yet. Granting relief from stay could not resolve the issue of Movant's interference with Debtor's efforts.

11

Debtor will be greatly prejudiced if the relief from stay is granted to the Movant, whose sole

intention is to **steal the home of Plainitff in the STATE COURT,** *RANDALL NICKEL VS*

*HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION; JANINE JASSO; LEE*

*GRAGNANO; THEODORE PHILIIPS; LINDY BECK; JENNIFER PAULIN; LORI*

*BURRETT; ELITE COMMUNITY MANAGEMENT CO, ET AL Defendents*   and render the

debtor's assignment of the Ground Lease and Subcondominium leasehold which NICKEL

purchased unencumbered for valuable consideration invalid and allow Movant to gain possession

of the property and thereby exercising dominion and control over the debtor's exempt assets and

exempt equity and extinguish and defeat other creditor's claims in the Debtor.

Therefore, Curtis Factor #1 is in favor of the Debtor and against the Movant.

**ii. Curtis Factor #2 –** Substantial Interference with the Bankruptcy Case

   Relief from stay would undoubtedly interfere with Debtor's bankruptcy case. The State

Court Case is not in its advanced stage of litigation and not ready for trial as discovery has not

been completed yet. The reality is that only one full deposition was taken by Movant in the State

Court Action.  As such, neither party has had a meaningful opportunity to conduct discovery.

Consequently, the parties are nowhere near close to trial, despite a holding trial date of

May 6, 2022 set by the State Court. Furthermore, it could take more than a year for the

State Court Action to come to a conclusion, which would in turn delay and interfere with this

bankruptcy case from reaching a conclusion. Any trial would not just be centered on resolution of

Movant's cross claims against debtor, either, but Plaintiff RANDALL NICKEL 7 claims against

Movant and all named defendants as well.  Thus, the parties would be facing a month-long trial

in this case. To that end, the cost of litigating the State Court Action is one of the reasons that

drove the Debtor here in the first place. Expending financial resources debtor is incapable of

retaining competent counsel to defend on the state court action would undoubtedly frustrate

Debtor's efforts as well as prejudice Debtor's other creditors from potential  payment on their

claims. Based on the forgoing, Curtis Factor #2 is in favor of the Debtor and against the Movant.

**iii. Curtis Factor #3 –** The Foreign Proceeding Does Not Involve the Debtor as a Fiduciary The State Court Action does not involve the Debtor as a fiduciary. Therefore, Curtis Factor #3 is in favor of the Debtor and against the Movant.

**iv. Curtis Factor #4 –** No Specialized Tribunal is Required To Hear The State Court Action There is no specialized tribunal established to hear Movant's claim. Therefore, Curtis Factor #4 is in favor of the Debtor and against the Movant.

Consequently, the parties are nowhere near close to trial, despite a holding trial date of May 6, 2022, set by the State Court. Furthermore, it could take more than a year for the State Court Action to come to a conclusion, which would in turn delay and interfere with this bankruptcy case from reaching a conclusion.

Any trial would not just be centered on resolution of Movant's claims either, but Nickels claims against Movant as well. The Motion fails to mention that Plainitff Randall Nickel filed a Complaint against Movant in the State Court Action.

A true and correct copy of the Nickel Complaint is attached to the Declaration of Jamie Gallian.  Thus, the parties would be facing a month long trial in this case. To that end, the cost of litigating the State Court Action is one of the reasons that drove the Debtor here in the first place. Expending financial resources on the state court action would undoubtedly frustrate Debtor's fresh start efforts as well as prejudice Debtor's other creditors from getting paid on their claims.

Based on the forgoing, Curtis Factor #4 is in favor of the Debtor and against the Movant.

1

2

3      **v.      Curtis Factor #5** – There is No Insurance Carrier Defending Debtor

4
There is no insurance carrier defending Debtor from Movant's claim. As such, Debtor would
5
be representing herself sd there are no resources to defend herself against Movant should relief
6
from stay be granted.
7

8            Therefore, Curtis Factor #5 is in favor of the Debtor and against the Movant.

9

10      **vi.      Curtis Factor #6** – Whether the Action Essentially Involves Third Parties, and

11
the Debtor Functions Only As a Bailee or Conduit for the Goods or Proceeds in Question
12
"The purpose of this Curtis factor is clearly to identify actions that only superficially involve
13
the debtor and would have little or no effect on the debtor's bankruptcy." In re Landmark
14
Fence Co., 2011 WL 6826253.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Movant's action of seeking to set aside a fraudulent transfer directed at the Debtor belongs to the TRUSTEE JEFFREY GOLDEN. Any attempt to sue individual Randall Nickel is derivative, through the Debtor. As such, Debtor is not a bailee or a conduit for the goods or proceeds in questions.

Therefore, Curtis Factor #6 is in favor of the Debtor and against the Movant.

vii.    **Curtis Factor #7** - Whether the litigation in another forum would prejudice the interests of other creditors and other interested parties

This Curtis factor also weight in favor of the Debtor and against the Movant. Litigation in another forum would prejudice the interests of all other creditors as it would drain crucial resources of the Debtor, cause a long delay of any potential payout to creditors Moreover, the high cost of litigating the State Court Action might overwhelm the estate, resulting in a class of creditors that may have little or no chance of recovery of any amount. Debtor would also be greatly prejudiced if the relief from stay is granted to the Movant, whose sole intention is to liquidate the co-defendant Randall Nickel of his asset Unit 53.   The debtor's groundlease invalid. on Lot 376.  Therefore, Curtis Factor #7 is in favor of the Debtor and against the Movant.

viii.    **Curtis Factor #8** – Whether the Judgment Claim Arising from the Foreign Action is Subject to Equitable Subordination

This factor is not applicable in this case.

**ix.    Curtis Factor #9 –** Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)

This factor is not applicable in this case.

**x.    Curtis Factor #10 –** The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

Permitting litigation against Debtor to proceed in the very forum that drove the Debtor into bankruptcy in the first place would seriously impede and possibly prevent debtor from a fresh start in the bankruptcy proceeding. Discovery has not been finalized yet. There are other named defendants that have not filed their responses. One deposition has been taken by either side. It is going to take well-over a year for the State Court Action to be resolved in state court while the Debtor spends critical resources.  Thus, it is more efficient not to lift the stay.

Therefore, Curtis Factor #10 is in favor of the Debtor and against the Movant.

**xi.    Curtis Factor #11 –** Whether the Foreign Proceedings Have Progressed To the Point Where the Parties Are Prepared for Trial

The proceedings in the State Court Action have not progressed to the point where the parties are prepared for trial. Movant filed its Cross Complaint on or about November 1, 2020. Movant then filed its Answer to the Cross-Complaint on November 9, 2021. Some discovery

requests were made but the discovery is still not far from being completed. The trial date original

set for May 9, 2022 likely to be continued again as discovery has not been completed yet and

there are other named parties that have not filed their responses yet. Therefore, Curtis Factor #11

is in favor of the Debtor and against the Movant.

      **xii.**     **Curtis Factor #12 –** The Impact of the Stay and the "Balance of Hurt"

When considering relief from automatic stay, the bankruptcy court must consider the interests of

the debtor and the bankruptcy proceeding in addition to the interests of the creditors. As noted in

In re Martha Washington Hosp., 157 B.R. 392, 395 (N.D. Ill. 1993), "It is not enough for the

creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor

must show that neither the debtor nor the other creditors will be injured if the stay is lifted." The

"most important factor," however, "is the effect of such litigation on the administration of the

estate." Curtis, 40 B.R. at 800.

      Here, clearly the harm to the Debtor outweighs any conceivable benefit to Movant should

the stay be lifted. Moreover, there is really no benefit to Movant in granting its Motion.

Moreover, Debtor, has provided to the Trustee all requested documents with supporting bank

statements.

Movant has exercised the opportunity to review the documents it falsely alleges it has not had

access to. Debtor has been transparent with its creditors from day of the Petition filing and will

continue to comply with all the requirements imposed by this Court , Trustee Jeffrey Golden or

Office of the United States Trustee. As mentioned in Curtis Factor Two, lifting the stay would

substantially interfere with the Debtor's Chapter 7 bankruptcy case and will interfere with the

spirit of a Fresh Start.

17

Therefore, Curtis Factor #12 is in favor of the Debtor and against the Movant.

**Conclusion Re: Curtis Factors**

For the foregoing reasons, the Curtis factors weigh in favor of the Debtor and against the Movant. As such, Movant has not sustained its burden to establish "cause" for relief from the stay under 11 U.S.C. 362. Accordingly, Movant's Motion for Relief from Stay should be denied.

## IV. CONCLUSION

Debtor Jamie Lynn Gallian respectfully requests that this Court deny Creditor The Huntington Beach Gables Homeowners Association Motion for Relief from the Automatic Stay.

Respectfully submitted,

*Jamie Lynn Gallian*

DATED: 02/10/2022         JAMIE LYNN GALLIAN

## DECLARATION OF JAMIE LYNN GALLIAN

The Huntington Beach Gables Homeowners Association (Board of Director's) refused to allow the tenant Jamie Gallian and Unit 53 legal recorded homeowner, Sandra L. Bradley to make a change to Unit 53 Separate area solely because in the Boards opinion the owner allegedly made a change 2016 without first submitting a plan and obtaining the required prior approval. Unit 53 owner, BRADLEY, disagreed..

Next the Board refused to provide subsequent approval as punishment to homeowner BRADLEY. The Board was doing this despite the fact that the tenant GALLIAN and homeowner applied and submitted two options to mediate the 2016 dispute on February 3, 2017, presented prior to INTERNAL DISPUTE MEETING between tenant GALLIAN on behalf of owner BRADLEY and a representative of the Board that would have minimal impact or even no impact on the Separate Area as the improvement was within the Separate area of Unit 53 and tenant GALLIAN obtained sworn declarations from two adjoining neighbors who were the only two neighbors who had a view from their 2nd floor unit of patio cover aesthetics of the unit. The aesthetics were not of concern to any neighbor or was this one of the reasons new unit 53 owner as of 3/23/17, GALLIANS' Architectural Application was disapproved by the Board without a Quorum present at the Open Meeting of the Association Members on June 22, 2017. No mention or discussion was noted in the Minutes of June 2017 HOA Open Meeting concerning the Architectural Application submission by new owner Jamie Gallian, recorded 3/23/2017. California community associations must consider the plans and approve or disapprove any proposed modification based on the usual and customary factors, such as impact on the common area, on the community, and neighboring owners, etc. An HOA Board needs to show that their actions were regular, fair, and reasonable as a matter of law. Refusing to consider a new homeowner, [GALLIAN] (subsequent addendum to previous plan) for a modification allegedly made without BOD approval

2

1  is not a fair and reasonable response. Although GALLIAN and BRADLEY dispute there

2  was no approval, April 3, 2016, the initial Arc. Application, after the BODs request for

3  owner Sandra Bradley to provide her notarized signature agreeing to the terms of the

4  BOD Approval Letter dated April 11, 2016, BRADLEY complied with the BODs request

5

6       Ironwood Owners Association IX v. Solomon Court of Appeal decision is cited in

7  almost every architectural enforcement case filed, with the owner complaining that the

8  BOD of the homeowners association did not follow the requirements

9       The Court of Appeal reversed the trial court's decision. The Court determined

10 that, on the basis of the record before it, the Ironwood association had not established that

11 its actions were regular, fair, and reasonable as a matter of law. Therefore, the Ironwood

12 association was not entitled to a mandatory injunction compelling the Solomon's to

13 remove the trees.

14      The criteria for testing the reasonableness of an exercise of such a power by an

15 owners Association are:

16

17    (1) Whether the reason for withholding approval is rationally related to

18         the protection, preservation or

19         proper operation of the property and the purposes

20         of the Association as set forth in its governing documents, and

21    (2) Whether the power was exercised in a fair and nondiscrimatory manner.

22

23

24      Using the above stated criteria, the Appeal Court reviewed the actions taken by

25 the Ironwood ACC and the board of that association. The evidence did not show and the

26 association did not indicate that the ACC ever met to consider whether the Solomon's'

27 palm trees violated the standards of the CC&Rs. The record also provided no indication

28 that either the board or the ACC made any findings, formal or informal, as to whether the

3

1  palm trees met the standards set forth in the Declaration upon which the disapproval was

2  apparently based.

3      The Court determined that:

4          "The record as it stands discloses a manifest disregard for [the procedural]

5      provisions; whatever decision was made does not appear to be that of the

6      governing body or the committee designated to make the decisions; no findings of

7      any sort bridge the analytical gap between facts and the conclusions of the

8      decision maker, whoever that was; and the record provides no means for

9      ascertaining what standard was employed in the decision making process.

10

11     GALLIAN has always maintained and still believe her argument is supported by

12     the fact the ASSOCIATION does not have an Architectural Manual to document

13     for the Members what is allowed and not allowed as an improvement to a

14     Members Separate Area.  Because the association denied my subsequent

15     application without showing that the board ever demonstrated or considered

16     whether the plans and proposed modifications violated the [ANY] published

17     standards of the association's CC&Rs, GALLIAN has been the target of 2 years of

18     abuse by this BOARD.

19

20  I believe my addendum (plan) submitted to the HOA Board was subsequently denied

21  solely because in the Boards opinion I allegedly did not obtain prior approval, which I

22  believe is inaccurate information.

23

24

25  The ASSOCIATIONS April 12, 2016 approval letter sent to tenant Gallian and Bradley

26  the homeowner, constitutes approval by the Board, and all conditions within the

27  approval letter were agreed to by the owner Bradley who returned immediately to the

28  BOD and Elite Management, Community Manager, Linn Joslyn by email acknowleged

4

1  including the <u>notarized signature of the owner, Sandra Bradley submitted and agreed upon</u>

2  <u>conditions of the patio improvement as well by the tenant to the Board President w/request</u>

3  <u>to obtain a permit with copy of the Permit and Site Plan stamped by Huntington Beach</u>

4  <u>Building, Tenant GALLIAN agreed to all of the conditions put forth in the approval letter</u>

5  <u>sent by US Mail to th</u>e owner Sandra Bradley dated April 12, 2016.

6

7       The 4/3/16 initial ARC Application for an improvement to an owners Separate

8  property was submitted and approved 4-9-16, by a letter sent to owner on 4-12-16. There

9  was no mention in the April 2016 Open Board Meeting Minutes or Agenda, a Members

10  Submission for Arc. Approval, BRADLEY-Unit 53. The Architectural Application was

11  never documents in the HOA BOD Minutes before the approval letter was sent to owner

12  Bradley on April 12, 2016. Thereafter, hence 5 months later, and the improvement

13  completed and inspected by the City Inspector of Huntington Beach, the Board without

14  explanation, sent an email dated 8-24-16, claiming the improvement built within separate

15  property was not what the BOD approved. Again, the HOA Minutes had no mention in

16

17  the August 2016 Minutes or on Agenda of any BOD discussion or was there an ever an

18  onsite inspection by the BOD while the construction was in progress. BRADLEY sent an

19  addendum to the initial Architectural Application to compromise with the BOARD

20  submitted 9-22-16. The Board did not deny the application until November 1, 2016, a

21  violation of the CC&Rs, Gables HOA CC&Rs Section 6.4 states the BOD has 30 days to

22

23  approve or disapprove a member's submitted Arc Application. Later GALLIAN, the new

24  owner 3/23/2017, after the HOA Civil Complaint filed 4/11/2017, allerted Gallian to the

25  alleged violations, submitted a third Architectural Application for every alleged violation

26  claimed in the Civil Action 4/11/17 and FAC5-16-17 to the BOD on 6-4-17, after being

27  served the HOAs FAC complaint on 5-26-17. GALLIANS application was not denied or

28  approved based on any specific criteria set out in the CC&Rs or any written policy

published in any architectural rules, architectural standards, and/or guidelines.

5

1  Additionally, again there is no mention in the June 2017 Open Meeting Minutes or
2  Agenda or the Approved Minutes an Architectural Application for approval of an
3  improvement made in 2014, 2015 and 2016, before GALLIAN was a Member and
4  recorded homeowner.  No mention of Gallians Arc Application in the July 2017 HOA
5  Minutes, giving the Board a room for error.  No discussion appears in any Open Meeting
6  Agenda, or any mention even discussing the action of the HOA BOD in any Minutes of
7  any Open Meeting Minutes approved and signed by the Board Secretary for the Gables.
8  Prior to CONSIDERING or PURSUING such a devastating effect to the Membership by
9  not obtaining a vote of the Membership before filing a Civil Action in the Superior Court
10 without consideration or discussion with the entire MEMBERSHIP or conduction even
11 an informal vote of the MEMBERS, to take the temperature of the Owners would have
12 been prudent and wise.  Consideration in the future forming an ad-hoc committee
13 (Probably why the CC&Rs state the Board
14 
15 "SHALL" APPOINT A ARCHITECTURAL COMMITTEE AND A NOMINATION
16 COMMITTEE - the Board has never complied with this CC&R until September 27,
17 2018, reflected in the approved and signed Minutes) would have proven useful in
18 determining the 2016-2017 Board of Directors decisions made were fair and reasonable
19 and that its substantive decision was made in good faith, and is reasonable, not arbitrary
20 or capricious would have saved hundreds of thousand of dollars withdrawn illegally from
21 the Membership Reserve Account without approval by a majority vote instead of the
22 reckless endeavor made by the Board of Directors of an improvement owned by a
23 homeowner and on their separate property.
24 
25 I declare under penalty of perjury by the Laws of the State of California the foregoing is
26 true and correct.
27 DATED: 10 February 2022
28 

*Jamie L Gallian*
Jamie L Gallian

6

23

# THE HUNTINGTON BEACH GABLES
## HOMEOWNERS' ASSOCIATION
c/o Elite Community Management    38760 Sky Canyon Drive Murrieta, Ca 92563
Phone: 888.354.8322   Fax: 951.699.1661

April 12, 2016

*I agree to the items below.*
*Sandra Bradley*

Sandra L Bradley
18 Meadowbrook Drive
Coto De Caza, CA 92679

RE:    ACC Application to approve Sun (patio) cover

Dear Homeowner:

Attached is a copy of the application submitted to install a patio cover. It has been approved by the board with the following conditions:

1) Size no larger than ~~12"X12"~~ *10 X 15*
2) Permit must be pulled from city
3) Notarized statement from Sandra Bradley agreeing to maintain patio cover including: cosmetic appearance, and termite treatment.
4) Cover must be removed at time of sale of property and patio brought back to its original condition or seller obtains and submits to Board notarized statement and signature of new owner agreeing to maintenance conditions stated in #3.
5) Patio cover must be painted same color as trim of unit.

Sincerely,

*Linn Joslyn*
Linn Joslyn CMCA®
Community Association Manager
**Huntington Beach Gables Homeowners' Association**
cc: Board
    Jamie Gallian

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Orange_ )
On _04/19/2016_ before me, _Bonnie Coelho, notary public_
    Date                    Here Insert Name and Title of the Officer
personally appeared _Sandra L. Bradley_
                          Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**BONNIE COELHO**
Commission No. 1975866
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires APRIL 21, 2016

Signature _Bonnie Coelho_
              Signature of Notary Public

          _Place Notary Seal Above_

---

**—————— OPTIONAL ——————**
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Letter 4/12/16_ _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual   ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual   ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

---

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**EXHIBIT G**

# Epsten Grinnell & Howell
Attorneys at Law

*Respond to: San Diego office*

www.epsten.com
800.300.1704

March 2, 2017

**VIA E-MAIL, FIRST CLASS MAIL and CERTIFIED MAIL**

Sandra L. Bradley, Trustee of the Sandra L. Bradley
Trust Dated October 17, 2001
18 Meadowbrook Drive
Coto De Caza, CA 92679

Jamie Gallian
4476 Alderport Drive
Huntington Beach, CA 92649

Re: **Request For Resolution - Civil Code §§ 5975, 5925-5965**
Requesting Party: The Huntington Beach Gables Homeowners Association
Patio Cover Roof Dispute/Our File No. 5786.01

Dear Ms. Bradley and Ms. Gallian:

This firm represents The Huntington Beach Gables Homeowners Association ("Association"). In accordance with the provisions of California Civil Code section 5925 *et seq.*, this letter is being presented to you prior to the initiation of a lawsuit against you by the Association for a court ordered injunction related to enforcement of the Association's governing documents. The Association offers to resolve its dispute with you, without litigation, through alternative dispute resolution, as governed by Civil Code sections 5975, and 5925 through 5965.

**REQUESTING PARTY**

The Huntington Beach Gables Homeowners Association
℅ David A Kline, Esq.
Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Suite 100
San Diego, California 92131

**DESCRIPTION OF DISPUTES**

The Association's dispute with you concerns the 2016 installation of a roof on the patio cover attached outside the property located at 4476 Alderport Drive.

In or about March of 2016, you began installing an open lattice patio cover on the patio outside your unit. On April 12, 2016, the Association approved your request to install that patio cover in accordance with plans you submitted. Those plans did not include a roof. On or about April 14, 2016, the City of Huntington Beach issued a building permit for that patio cover. That permit made no mention of any roof on the patio cover.

In or about July of 2016, you installed a corrugated solid corrugated panel roof on that patio cover without obtaining the Association's approval. When alerted to the Association's

3145671v1

**San Diego**
10200 Willow Creek Rd., Suite 100
San Diego, California 92131
858.527.0111 • fax 858.527.1531

**Coachella Valley**
74830 Highway 111, Suite 100
Indian Wells, California 92210
760.836.1036 • fax 760.836.1040

**Inland Empire**
43460 Ridge Park Dr., Suite 200
Temecula, California 92590
800.300.1704 • fax 858.527.1531

Sandra L. Bradley
Jamie Gallian
March 2, 2017
Page 2

demand for the removal of the roof, you obtained a revised building permit on or about August 31, 2016.

Article VI, Section 6.1, of the CC&Rs, prohibits the installation of any shades, screens awnings, or patio covers until plans and specifications have been reviewed and approved in writing by the Association's Architectural Committee.

The Association objects to the solid corrugated panel roof of your patio cover, because, among other things, it lacks conformity with the external design of neighboring structures.

The parties' attempts to resolve this dispute through Internal Dispute Resolution have failed.

Because this matter may require a lawsuit and court ordered injunction to resolve the dispute, you can agree to submit this dispute to Alternative Dispute Resolution, as set forth below.

## REQUEST FOR ALTERNATIVE DISPUTE RESOLUTION

If this matter cannot be resolved amicably, notice is hereby given that the Association intends to enforce the terms of the governing documents through litigation. In accordance with the provisions of Civil Code sections 5975, and 5925 through 5965 (a copy of which we have enclosed), this letter is being written to you prior to the initiation of a lawsuit against you by the Association for injunctive relief related to the enforcement of the governing documents.

If you believe this matter can be resolved through mediation ("ADR"), the Association is willing to submit this dispute to mediation before the following mediator: John Edwards of West Coast Resolution Group, http://www.ncrconline.com/mediation-conflict-resolution/mediator/john-edwards. If there is someone else that you would like the Association to consider to mediate the dispute, please forward the mediator's name and contact information to our office for consideration.

The mediation will be scheduled at a mutually convenient time, date and location. Per Civil Code section 5940, the cost of such mediation will be shared jointly by both you and the Association (50/50 split).

## NOTICE OF REQUIREMENT TO RESPOND WITHIN THIRTY (30) DAYS

Be advised that unless the Association's offer to mediate the dispute is accepted within **thirty (30) days** of your receipt of this offer, it shall be deemed rejected. [Civ. Code § 5935] Acceptance of the offer must be in writing. You may accept or reject the offer on the enclosed form entitled "Response to Request for Resolution." In order to be accepted, your response must be received by the Association within **thirty (30) days** of your receipt of this Request for Resolution. If you agree to accept mediation, you may return the form to our office, and we will contact the mediator to set up a mediation session at a mutually convenient time.

3145671v1

Sandra L. Bradley
Jamie Gallian
March 2, 2017
Page 3

Similarly, Civil Code section 5940 requires that the mediation be completed within ninety (90) days of your acceptance of this offer or the Association may proceed with its litigation against you to obtain your compliance.

Furthermore, if you fail or refuse to submit this dispute to mediation, the Association may proceed to file suit against you immediately after the **thirty (30) day** response period expires. Please note that under Civil Code sections 5975(c) and 5960, you may be held responsible for any costs and attorneys' fees incurred by the Association to enforce the governing documents, including the costs for preparing this letter.

Please also note that Article VI, Section 6.6, of the CC&Rs, requires the Association to commence litigation within one year of the date of issuance of a building permit by the City of Huntington Beach. Because the City initially issued a building permit on April 14, 2016, it could be argued that the one-year period will expire before mediation could be complete. Accordingly, the Association's offer of Alternative Dispute Resolution is contingent upon Ms. Bradley's return to this office of her original notarized signature on the attached Agreement Concerning Real Property.

It is possible that there may be other violations, therefore, please do not consider the foregoing list to be conclusive. Any new violations which incur and/or discovered after the date of this mediation request may be included in any lawsuit filed against you.

We respectfully invite your prompt attention to the above. The Association is prepared to participate in good faith and expects that you will as well.

Sincerely

EPSTEN GRINNELL & HOWELL, APC

David A. Kline, Esq.

DAK
Enclosures:
Response to Request for Resolution
Civil Code Sections Civil Code Sections 5975, and 5925-5960
Agreement Concerning Real Property

3145671v1

## RESPONSE TO REQUEST FOR RESOLUTION

ASSOCIATION:          The Huntington Beach Gables Homeowners Association

HOMEOWNER:          Sandra L. Bradley, Trustee of the Sandra L. Bradley Trust Dated
                    October 17, 2001

RESIDENT:           Jamie Gallian

PROPERTY ADDRESS:    4476 Alderport Drive

DATE OF OFFER:      March 2, 2017

DATE OF RESPONSE:   _____

* * * * *

**PLEASE CHECK ONE BOX:**

☐    I/We accept the Association's offer to mediate the dispute before a mediator, to assist in
     the selection of a mediator, and I/we agree to pay one-half of the costs charged by the
     mediator
☐    I/We reject the Association's offer to mediate the dispute.

* * * * * *

Signature: _____        Signature: _____
           Sandra L. Bradley, Trustee                 Jamie Gallian

Address:   _____        Address:   _____

           _____                   _____

Date signed: _____        Date signed: _____

Telephone: _____        Telephone: _____

E-Mail     _____        E-Mail     _____

**Please Sign and Return Form Within Thirty Days of March 2, 2017**

**RETURN THIS FORM TO:**

David A. Kline, Esq.
Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Suite 100
San Diego, California 92131

3145671v1

California Civil Code

**Civil Code § 5975. <u>Enforcement of Governing Documents</u>.**

(a)   The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both.

(b)   A governing document other than the declaration may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association.

(c)   In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs

**Civil Code § 5925. <u>ADR Definitions</u>**

As used in this article:

(a)   "Alternative dispute resolution" means mediation, arbitration, conciliation, or other nonjudicial procedure that involves a neutral party in the decision making process. The form of alternative dispute resolution chosen pursuant to this article may be binding or nonbinding, with the voluntary consent of the parties.

(b)   "Enforcement action" means a civil action or proceeding, other than a cross-complaint, for any of the following purposes:

(1) Enforcement of this act.

(2) Enforcement of the Nonprofit Mutual Benefit Corporation Law (Part 3 (commencing with Section 7110) of Division 2 of Title 1 of the Corporations Code).

(3) Enforcement of the governing documents.

**Civil Code § 5930. <u>ADR Required Before Filing Certain Actions</u>**

(a)   An association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article.

(b)   This section applies only to an enforcement action that is solely for declaratory, injunctive, or writ relief, or for that relief in conjunction with a claim for monetary damages not in excess of the jurisdictional limits stated in Sections 116.220 and 116.221 of the Code of Civil Procedure.

(c)   This section does not apply to a small claims action.

(d)   Except as otherwise provided by law, this section does not apply to an assessment dispute.

**Civil Code § 5935. <u>Initiating ADR by Request for Resolution</u>**

(a)   Any party to a dispute may initiate the process required by Section 5930 by serving on all other parties to the dispute a Request for Resolution. The Request for Resolution shall include all of the following:

(1) A brief description of the dispute between the parties.

(2) A request for alternative dispute resolution.

(3) A notice that the party receiving the Request for Resolution is required to respond within 30 days of receipt or the request will be deemed rejected.

(4) If the party on whom the request is served is the member, a copy of this article.

(b)   Service of the Request for Resolution shall be by personal delivery, first-class mail, express mail, facsimile transmission, or other means reasonably calculated to provide the party on whom the request is served actual notice of the request.

(c)   A party on whom a Request for Resolution is served has 30 days following service to accept or reject the request. If a party does not accept the request within that period, the request is deemed rejected by the party.

**Civil Code § 5940. Time for Completing ADR Process and Cost Splitting**

(a)   If the party on whom a Request for Resolution is served accepts the request, the parties shall complete the alternative dispute resolution within 90 days after the party initiating the request receives the acceptance, unless this period is extended by written stipulation signed by both parties.

(b)   Chapter 2 (commencing with Section 1115) of Division 9 of the Evidence Code applies to any form of alternative dispute resolution initiated by a Request for Resolution under this article, other than arbitration.

(c)   The costs of the alternative dispute resolution shall be borne by the parties.

**Civil Code § 5945. Effect of ADR on Statute of Limitation**

If a Request for Resolution is served before the end of the applicable time limitation for commencing an enforcement action, the time limitation is tolled during the following periods:

(a)   The period provided in Section 5935 for response to a Request for Resolution.

(b)   If the Request for Resolution is accepted, the period provided by Section 5940 for completion of alternative dispute resolution, including any extension of time stipulated to by the parties pursuant to Section 5940

**Civil Code § 5950. Filing ADR Certificate when Filing Court Action**

(a)   At the time of commencement of an enforcement action, the party commencing the action shall file with the initial pleading a certificate stating that one or more of the following conditions are satisfied:

(1) Alternative dispute resolution has been completed in compliance with this article.

(2) One of the other parties to the dispute did not accept the terms offered for alternative dispute resolution.

(3) Preliminary or temporary injunctive relief is necessary.

(b)   Failure to file a certificate pursuant to subdivision (a) is grounds for a demurrer or a motion to strike unless the court finds that dismissal of the action for failure to comply with this article would result in substantial prejudice to one of the parties.

**Civil Code § 5955. Referral to ADR and Stay of Court Action by Stipulation**

(a)   After an enforcement action is commenced, on written stipulation of the parties, the matter may be referred to alternative dispute resolution. The referred action is stayed. During the stay, the action is not subject to the rules implementing subdivision (c) of Section 68603 of the Government Code.

(b)   The costs of the alternative dispute resolution shall be borne by the parties.

**Civil Code § 5960. Refusal to Participate in ADR; Effect on Award of Fees and Costs**

In an enforcement action in which attorney's fees and costs may be awarded, the court, in determining the amount of the award, may consider whether a party's refusal to participate in alternative dispute resolution before commencement of the action was reasonable.

**Civil Code § 5965. Annual Disclosure of ADR Procedures to Members**

(a)   An association shall annually provide its members a summary of the provisions of this article that specifically references this article. The summary shall include the following language:

3145671v1

"**Failure of a member of the association to comply with the alternative dispute resolution requirements of Section 5930 of the Civil Code may result in the loss of the member's right to sue the association or another member of the association regarding enforcement of the governing documents or the applicable law.**"

(b) The summary shall be included in the annual policy statement prepared pursuant to Section 5310.

Recording Requested By:

The Huntington Beach Gables
Homeowners Association

**When Recorded Return to:**

David A. Kline, Esq
Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Suite 100
San Diego, CA 92131

A.P.N. 937-630-53

## COVENANT AND AGREEMENT CONCERNING REAL PROPERTY

This Agreement Concerning Real Property ("Agreement") is made by and between the THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a California nonprofit mutual benefit corporation ("ASSOCIATION"), and SANDRA L. BRADLEY, Trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 ("OWNER"), with reference to the facts set forth below.

### RECITALS

a)   OWNER is the owner of a leasehold interest in the property located at 4476 Alderport Drive, Huntington Beach, California, which is more particularly described in the attached Exhibit "A" ("Subject Property").

b) ASSOCIATION is a California nonprofit mutual benefit corporation responsible for managing the condominium community known as Huntington Beach Gables, as set forth in the Declaration of Covenants, Conditions and Restrictions for the Huntington Beach Gables, recorded on May 25, 1980, as Doc. No. 28926 in the Official Records of Orange County, as amended or may be amended from time to time (collectively, the "CC&Rs").

c)   A dispute exists between OWNER and ASSOCIATION concerning the installation and maintenance of a solid corrugated panel roof on the lattice patio cover located on the exterior of the Subject Property ("Dispute").

### AGREEMENT

NOW THEREFORE, for good and valuable consideration, the ASSOCIATION and OWNER for themselves and for their respective successors (including successors in title or interest) assigns, heirs, devisees, executors, and administrators (collectively, "Successors") agree promise, and covenant as follows:

1)   Incorporation of Recitals.  The Parties to this Agreement incorporate all of the above Recitals as if fully set forth in the body of this Agreement.

3145671v1

2) Agreement to Refrain from Litigation. ASSOCIATION agrees to refrain from instituting litigation against OWNER concerning the Dispute until no earlier than July 15, 2017.

3) Recordation of Agreement. Both parties agree that this Agreement Concerning Real Property shall be recorded in order to place prospective purchasers or encumbrancers of the Subject Property on notice of the Dispute.

4) Binding upon Successors. Upon each transfer of the Subject Property and without any further action by any party, the respective rights and privileges of each party to this Agreement shall inure to the benefit of their respective successors with the same force and to the same extent as the party, and the duties and obligations of each party to this Agreement shall bind their respective successors with the same fore and to the same extent as the party. The parties agree that this Agreement shall be enforceable as a covenant running with the land or as an equitable servitude, or both, as applicable.

THE HUNTINGTON BEACH GABLES HOMEOWNERS
ASSOCIATION, a California nonprofit mutual benefit
corporation

Dated: _____    By: _____

                          Its: _____


                          By: _____

                          Its: _____


SANDRA L. BRADLEY, Trustee of the SANDRA L.
BRADLEY TRUST dated October 17, 2001

Dated: _____    By: _____

                          Its: Trustee

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT    CIV. CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____    On this ____ Day of ____    20 __

On _____    Before me, _____
          Date                    Here Insert Name and Title of Officer

Personally appeared _____
                            Name(s) of Signer(s)

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

*Place Notary Seal Above*

**OPTIONAL**

Though this section is optional, completing this information can deter alteration of the document of fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

| Title or Type of Document: | | Document Date: | |
| Number of Pages: | | Signer(s) Other Than Named Above: | |

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer- Title(s): _____
☐ Partner    ☐ Limited    ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____

Signer is Representing: _____

Signer's Name: _____

☐ Corporate Officer- Title(s): _____
☐ Partner    ☐ Limited    ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____

Signer is Representing: _____

©2014 National Notary Association www.NationalNotary.org 1-800-US-NOTARY (1-800-876-6827) Item #5907

3145671v1

Exhibit "A"
Legal Description of Subject Property

(i)   Unit 53 , (the "Unit") as shown and
defined on that certain Condominium Plan
recorded in Book 13358 Pages 1193 et seq.,
Official Records of Orange County,
California (the "Condominium Plan"),
excepting therefrom all buildings and other
improvements;

(ii)   An undivided one-eightieth (1/80)
interest in the Common Areas (as defined in
the Condominium Plan, excepting therefrom
all buildings and other improvements;

(iii)   An easement for the exclusive use and
occupancy of those portions of the
Restricted Common Area (as defined on said
Condominium Plan) for entry and staircases
and attic space relating to said Unit,
excepting therefrom all buildings and other
improvements;

(iv)   A non-exclusive easement and right to
use the Common Area (as defined on said
Condominium Plan), except the Restricted
Common Area, excepting therefrom all
buildings and other improvements.

**EXHIBIT A**

RECORDING REQUESTED BY
CHICAGO TITLE COMPANY
AND WHEN RECORDED MAIL TO

SANDRA BRADLEY
18 MEADOW BROOK DR
COTO DE CAZA, CA  92679

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||    30.00

**2009000633802** 04:05pm 11/23/09

401 59 A34 A04 A12 5

0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

Escrow No.   -
Order No.   985040290 - S32

— SPACE ABOVE THIS LINE FOR RECORDER'S USE —

ASSIGNMENT OF CONDOMINIUM SUBLEASE

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
( Additional recording fee applies )

CPFR4 --11/13/98bk

**WHEN RECORDED MAIL TO:**

(Assignee's Name & Address)

SANDRA BRADLEY
18 MEADOW BROOK DR
COTA DE CAZA CA 92679

*NO CONSIDERATION*
*TERN OF*
*LEASE LESS*     (Space Above this Line for Recorder's use)
*THAN 99 YEARS.*

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned
_____ LARRY W. RIDER AND TERRI A. RIDER HUSBAND AND WIFE AS JOINT TENANTS_, hereby
transfers and assigns to _SANDRA L. BRADLEY A WIDOW_ _____,
all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium
Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as
Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments
of record, and _JOHN F. TURNER AND VIRGINIA H TURNER HUSBAND AND WIFE AS JOINT_ _____
_TENANTS_
as Tenant, recorded on _NOVEMBER 7, 1980_ in Book _13824_, Page _1274_ inclusive, as
Instrument No. _8694_ of Official Records of Orange County, California, as amended by the First
Amendment to Condominium Sublease recorded on _AUG 28, 2003_ as Instrument No.
_2003 001044770_. The property that is the subject of the Sublease is described as follows:

Unit _53_ of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made
a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: _11/19/2009_

_Assignor(s)_

_Terri A. Rider_

STATE OF CALIFORNIA    )
                    ) ss.
COUNTY OF ORANGE

On _11/19/2009_, before me, _ANTHONY H. DUONG_, personally appeared
_LARRY W. RIDER & TERRI A. RIDER_, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANTHONY H. DUONG
COMM. #1657553
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires April 11, 2010
BCTO

_Anthony H. Duong_
Signature of Notary Public          Page 1 of 2      (This space for notarial seal)

J:\UC PERM\Masters-BST\MASTER-OHB-Assignment of Condominium Sublease with Notary.doc

**ASSIGNMENT OF CONDOMINIUM SUBLEASE**

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: _11/17/09_

_____
Assignee (s)

STATE OF ~~CALIFORNIA~~ Missouri )
                                        St Louis City ) ss.
COUNTY OF ~~ORANGE~~

On _November 17, 2009_ before me, _Kenneth J. Ball_, personally appeared _Sandra L. Bradley_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public                    (This space for notarial seal)

```
KENNETH J. BALL
Notary Public-Notary Seal
State of Missouri, Saint Louis City
Commission # 09703489
My Commission Expires Aug 10, 2013
```

Page 2 of 2

J:\JC PERM\Masters-BSI\MASTER-GHB-Assignment of Condominium Sublease with Notary.doc

Certified Copy of document number 2009000633802

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 3/31/2017

CERTIFICATION FEE: 4.00

COUNTY CLERK-RECORDER

Hugh Nguyen

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: 2009000633802 Page: 4 of 4

Order No.

Escrow No.

Loan No.

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

24.00

2010000219518 1:00 pm 05/10/10
153 420 A34 A04 A12    3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NO CONSIDERATION
TERM OF LEASE
LESS THAN 99 YEARS

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L, BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 55 of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: 3/10/2010

_____
Assignor, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

On _March 10, 2010_, before me, _____, a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

Signature _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift to public*

Document Number: 2010000219518 Page: 1 of 4

Page  1'
Order No. 985040290

## DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley

18 Meadow Brook Drive

Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 3/10/2010

Assignee, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

*On 3/10/2010        , before me, Henry J. Coopersmith        , a Notary Public*
*in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature*

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*



THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: __3/31/2017__

CERTIFICATION FEE: __4.00__

COUNTY CLERK-RECORDER

*Hugh Nguyen*

ORANGE COUNTY
STATE OF CALIFORNIA

RECORDING REQUESTED BY:

Mrs. Sandra L. Bradley
18 Meadow Wood Drive
Coto de Caza, CA 92679

WHEN RECORDED RETURN TO:
same as above

MAIL TAX STATEMENTS TO:
same as above

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

30.00

2010000309926 2:10 pm 06/30/10
276 421 A34 A04 A12    5
0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

_____
(space above this line for recorder's use)

CORRECTING ASSIGNMENT OF CONDOMINIUM SUBLEASE

The original ASSIGNMENT OF CONDOMINIUM SUBLEASE recorded as
document #2010000219518 on 05/10/10 inadvertently referred to
Unit 53 as Unit 55.  It is now corrected to UNIT 53 as stated in
the attached Exhibit "A".

Order No.

Escrow No.

Loan No.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

24.00
2010000219518  1:00 pm  05/10/10
153 420 A34 A04 A12   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**NO CONSIDERATION**

**TERM OF LEASE**

**LESS THAN 99 YEARS**

CORRECTING        OF

# ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770.  The property that is the subject of the Sublease is described as follows:

Unit 53 of Tract 10542.  Legal Description contained on Exhibit "A" attached hereto and made a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: 3/10/2010

_Assignor, SANDRA L. BRADLEY_

_STATE OF CALIFORNIA_
_COUNTY OF ORANGE_

On _March 10, 2010_ before me, _____, a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name  is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person  acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

_D/As deed tr mcD gift tax oblig_

Page 1

Order No. 985040290

DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 3/10/2010

_Sandra L. Bradley_
Assignee, SANDRA L. BRADLEY

STATE OF CALIFORNIA
COUNTY OF ORANGE

On 3/10/2010 , before me, Henry J Coopersmith , a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name  is  subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

D/As deed tr mcD gift tax oblig

Document Number: 2010000309926 Page: 4 of 6

Page  1
Order No.  985040290

## DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: __3/31/2017__

CERTIFICATION FEE: __6.00__

COUNTY CLERK-RECORDER

_Hugh Nguyen_

ORANGE COUNTY
STATE OF CALIFORNIA

Certified Copy of document number 2010000309926

Document Number: 2010000309926 Page: 6 of 6

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**04/11/2017** at 03:59:58 PM
Clerk of the Superior Court
By Jeanette Torres-Mendoza, Deputy Clerk

1  Douglas W. Grinnell, Bar No. 102082
   Pejman D. Kharrazian, Bar No. 279260
2  EPSTEN GRINNELL & HOWELL APC
   10200 Willow Creek Road, Suite 100
3  San Diego, California 92131
   (858) 527-0111/ Fax (858) 527-1531
4  dgrinnell@epsten.com
   pkharrazian@epsten.com
5
   Attorneys for Plaintiff THE HUNTINGTON BEACH
6  GABLES HOMEOWNERS ASSOCIATION

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  THE HUNTINGTON BEACH GABLES        CASE NO.  30-2017-00913985-CU-CO-CJC
    HOMEOWNERS ASSOCIATION, a
12  California Nonprofit Mutual Benefit                Judge James Crandall
    Corporation,
13                                      COMPLAINT FOR:
                    Plaintiff,
14                                      1. BREACH OF GOVERNING
         v.                               DOCUMENTS (Architectural Violation)
15
    SANDRA L. BRADLEY, individually and  2. NUISANCE
16  as Trustee of the Sandra L. Bradley
    Trust; JAMIE L. GALLIAN, an individual;
17  and DOES 1 through 25, inclusive,

18              Defendants.

19

20       Plaintiff alleges as follows:

21                        **PARTIES**

22       1.    Plaintiff, THE HUNTINGTON BEACH GABLES HOMEOWNERS

23  ASSOCIATION, (hereinafter the "Association") is, and at all times mentioned herein

24  was, a California nonprofit mutual benefit corporation, organized and existing under the

25  laws of the State of California, with its principal place of business in the City of

26  Huntington Beach, County of Orange, State of California.

27       2.    Plaintiff is an "Association," as presently defined in Civil Code section

28  4080 which was created for the purpose of managing a "Common Interest

3177068v4

Development," as defined in Civil Code section 4100, which consists in part of certain real property within the County of Orange, State of California, commonly known as "Huntington Beach Gables."

3.    Association is informed and believes, and thereon alleges, that Defendant SANDRA L. BRADLEY ("BRADLEY"), is an individual who resides in the County of Orange, State of California, and at all times mentioned herein was the owner and/or resident of 4476 Alderport Drive, Unit 53, Huntington Beach, California 92649 (herein referred to as "Unit 53"). BRADLEY at times held title to Unit 53 as Trustee of the "Sandra L. Bradley Trust."

4.    Association is informed and believes, and thereon alleges, that Defendant JAMIE L. GALLIAN ("GALLIAN"), is an individual who resides in the County of Orange, State of California, and at all times mentioned herein was a resident or owner of Unit 53.

## VENUE

5.    Orange County, Central Justice Center, is the proper venue to enforce the restrictive covenant in the above-captioned matter because it is the county in which the property subject to the restrictive covenant is located.

## DOE DEFENDANTS

6.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein under Section 474 of the Code of Civil Procedure as DOES 1 through 25 are unknown to Association, who therefore sues said Defendants by such fictitious names. Association will seek leave of court to amend its pleadings to set forth the true names and capacities of such fictitiously named Defendants when their identities become known to Association.

7.    Association is informed and believes, and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the events and happenings herein referred to, and proximately caused the injury and damages to Association as herein alleged.

- 2 -
COMPLAINT

1    8.    Association is informed and believes, and thereon alleges, that at all

2    times herein mentioned, each of the Defendants herein was the agent, servant,

3    representative and employee of each of the remaining Defendants, and was acting

4    within the scope and purpose of such agency, service and employment.

5    **GENERAL ALLEGATIONS**

6    9.    Defendants are the owners of, residents of, and/or claim some interest

7    in the condominium unit located within Huntington Beach Gables, which is commonly

8    referred to as 4476 Alderport Drive, Unit 53, Huntington Beach, California 92649

9    (herein "Unit 53").    Unit 53 is on leased land, and the Defendants accepted a

10   sub-leasehold estate to the condominium unit pursuant to an "Assignment of a

11   Condominium Sublease." On November 23, 2009, Defendant Bradley took leasehold

12   title to Unit 53, as a "widow" by virtue of an "Assignment of Condominium Sublease"

13   recorded in the Orange County Recorder's Office as Document No. 2009-633802, a

14   true and correct copy of which is attached hereto as **Exhibits A**.    On May 10, 2010,

15   Defendant Bradley assigned the rights and obligations under the Condominium

16   Sublease to the "Sandra L. Bradley Trust" recorded in the Orange County Recorder's

17   Office as Document No.2010-219518, a true and correct copy of which is attached

18   hereto as **Exhibits B**.    On June 30, 2010, Defendant Bradley recorded a "Correcting

19   Assignment of Condominium Sublease" recorded in the Orange County Recorder's

20   Office as Document No. 2010-309926, a true and correct copy of which is attached

21   hereto as **Exhibits C.**    On March 23, 2017, Defendant Bradley assigned the rights and

22   obligations under the Condominium Sublease to Defendant Gallian, which rights and

23   obligations were accepted by Defendant Gallian, recorded in the Orange County

24   Recorder's Office as Document No. 2017-116815, a true and correct copy of which is

25   attached hereto as **Exhibits D**.

26   10.    Unit 53 is subject to the terms and conditions of various "governing

27   documents," as defined in Civil Code Section 4150, which include, among other things,

28   the "Declaration of Covenants, Conditions and Restrictions for Huntington Beach

- 3 -
COMPLAINT

Gables" ("CC&Rs") recorded on May 28, 1980 as Document No. 1980-28926 in the

Orange County Recorder's Office, a true and correct copy of which is attached hereto

as **Exhibit E** and incorporated herein by reference; the First Amendment to

"Declaration of Covenants, Conditions and Restrictions for Huntington Beach Gables"

recorded on August 5, 1980 as Document No. 1980-5002 in the Orange County

Recorder's Office; and the Huntington Beach Gables' "Rules and Regulations" adopted

by the Board on August 26, 2003, a true and correct copy of which is attached hereto

as **Exhibit F** and incorporated herein by reference. The CC&Rs and the Rules and

Regulations are sometimes collectively referred to herein as the "Governing

Documents."

11. The Governing Documents touch and concern the entire community and

run with the land; the Governing Documents are binding on all parties having any right,

leasehold title or interest in any property within Huntington Beach Gables, as if they had

personally executed it.

12. The aforementioned CC&Rs were executed and recorded for the benefit

of members of Association, to enhance and protect the value, desirability and

attractiveness of Huntington Beach Gables, and to preserve the quiet enjoyment of

owners and residents therein.

13. The Governing Documents create and establish the Association as the

governing body for the management, administration, and operation of the Project.

Civil Code section 5975, subdivision (a) states "The covenants and restrictions in the

declaration shall be enforceable equitable servitudes, unless unreasonable, and shall

inure to the benefit of and bind all owners of separate interests in the development..."

The equitable servitudes doctrine is also set forth in the preamble on page 2 of the

CC&Rs. Article III, Section 3.1 of the CC&Rs requires Defendants to follow the

covenants, conditions and restrictions set forth in the CC&Rs. Defendants are,

therefore, required to follow the guidelines set forth in the Declaration.

- 4 -
COMPLAINT

1    14.    Association's CC&Rs are entitled to a presumption of reasonableness.

2    (*Nahrstedt v. Lakeside Village Condominium Association* (1994) 8 Cal.4th 361.)

3    15.    Defendants are now in breach of Association's Governing Documents.

4    16.    Association is entitled to enforce the Governing Documents pursuant to

5    Civil Code section 5975, subdivision (a), and the CC&Rs at Article XIV, Section 14.3.

6    17.    Association has fully performed all acts, services, and conditions required

7    by the Governing Documents to be performed on its part.

8    18.    Prior to filing suit, on March 2, 2017, correspondence offering Alternative

9    Dispute Resolution ("ADR") was sent by e-mail, certified mail and first class mail to

10   Defendants.    Association's ADR letter is attached hereto as **Exhibit G** and

11   incorporated herein by reference.  Pursuant to Civil Code section 5935(c), a party has

12   thirty (30) days after receipt of the offer to respond to the request to submit this matter

13   to dispute resolution.  Defendants did not accept Association's ADR offer.  Failure to

14   accept the offer to submit this matter to dispute resolution is deemed a rejection

15   pursuant to California Civil Code sections 5935(a)(3), 5935(c), and 5950(a)(2).

16   19.    A certificate of compliance with the ADR requirements in accordance

17   with Civil Code section 5950(a) has been filed herewith.

18                        **<u>FIRST CAUSE OF ACTION</u>**

19            **Breach of the Governing Documents, against all Defendants**

20   20.    Association restates and realleges Paragraphs 1 through 19 above, and

21   incorporates the same by reference as though fully set forth herein.

22   21.    Article VI, Section 6.1, of the CC&Rs prohibits the installation of any

23   shades, screens, awnings, patio covers, and any other exterior changes until plans and

24   specifications have been reviewed and approved in writing by Association.

25   22.    Article VI, Section 6.2, of the CC&Rs provides, in part, as follows:

26       ....  Approval shall be based, among other things, on
         adequacy of site dimensions; adequacy of structural design
27       and materials; **conformity and harmony of external
         design with neighboring structures**; the effect of location
28       and use of improvements and landscaping on neighboring

3177068v4

property, improvements landscaping; operations and uses; **preservation of view and esthetic beauty**; …. [Emphasis added]

23.     Association's Rules and Regulations, at page 1, paragraph 4, provide that "the overall philosophy is to establish regulations, which will permit the maintenance of an enjoyable life-style and an aesthetically appealing grounds and architectural decor."

24.     Pages 3-4 of the Rules and Regulations set forth the "Architectural Approval Process," and the initial steps are as follows:

> Any external modifications, additions or improvements to your home may not be undertaken without <u>prior</u> written request and submission of plans by the homeowner to the Architectural Committee and its subsequent written approval. This ruling includes courtyard and "A" unit deck landscaping, wooden decks, concrete slabs, courtyard covers, fences, screen doors, garage doors and the like.

> All plans for interior alterations, modifications or improvements, which would structurally alter the residence, must be submitted in writing to the Architectural Committee for approval <u>before</u> work is started on the project. (emphasis supplied in original.)

25.     At or about the end of March or beginning of April of 2016, Defendants began construction of an open lattice patio cover on Unit 53 without asking for the Association's Board's approval.     After the footings were installed by Defendants without approval, Association notified Defendants of their obligation to seek prior approval for the open lattice patio cover.

26.     On April 3, 2016, Gallian submitted, via email to Association's Board, (a) Association's Architectural Approval Application, which states that the proposed improvement is a "Sun Cover existing concrete patio cover to be 16 x 12"; (b) a Neighbor Advisement signed by Defendants' neighbors; (c) a picture of an open lattice patio cover with asterisks next to a patio cover called a 'Patio Cover' and one next to the word 'latace' [*sic*]; and (d) a picture of materials such as joist hangers, column base, strap.

27.     On April 12, 2016, Association approved Gallian's request to install "an open lattice patio cover" (herein referred to as "Patio Cover") in accordance with plans

1    submitted.  Those plans did **not** make any reference to a "roof" or "lightweight roof" or

2    "lightweight fiberglass patio cover" or "wood lathes covered with Fiberglass product."

3         28.    On or about April 14, 2016, Defendants obtained a permit from City of

4    Huntington Beach Department of Planning and Building ("City") for an "open lattice

5    patio cover."  That permit made no mention of any solid corrugated roof over the Patio

6    Cover.

7         29.    In July of 2016, Gallian installed solid corrugated sun panels (i.e., a roof)

8    on top of the Patio Cover.  The solid corrugated panel roof was installed **without**

9    obtaining Association's approval.

10        30.    On August 24, 2016, Association sent a letter to Defendants notifying

11   them that while the Patio Cover was approved, the unauthorized and non-compliant

12   roof thereon was not approved, and demanded Defendants remove the solid roof from

13   the Patio Cover.

14        31.    On or about August 31, 2016, Defendants obtained a revised permit from

15   the City to include "lightweight solid corrugated panels on cover."

16        32.    On September 13, 2016, the Association sent a letter to Defendants

17   calling them to a hearing regarding the architectural violations described above.  A

18   hearing was held on September 29, 2016, and Defendant Gallian attended the hearing.

19   Follow-up letters from the hearing were sent to the Defendants on October 4, 2016 and

20   on November 1, 2016 asking for the unauthorized solid roof on the Patio cover be

21   removed.

22        33.    When alerted to Association's demand for the removal of the solid

23   corrugated panel roof from the lattice patio cover, on or about September 28, 2016,

24   Defendants submitted a new Architectural Approval Application for the solid corrugated

25   roof of the Patio Cover.

26        34.    Association's Board met on January 21, 2017 to review Defendants' new

27   Architectural Approval Application.  The Board did not approve the solid corrugated

28   panel roof because, among other things, it violates Section 6.1 in the CC&Rs, it lacks

- 7 -
COMPLAINT

3177068v4

1    conformity with the external design of neighboring structures, it is not in keeping with

2    the architectural consistency in the community, and it is not aesthetically appealing.

3    There are no other corrugated panel roofs anywhere else in the Huntington Beach

4    Gables community.

5        35.    On January 25, 2017, Association sent a letter to Defendants informing

6    them the Board's decision to deny the application for the solid roof of the Patio Cover.

7    The letter asked Defendants to remove the solid roof by February 1, 2017.

8        36.    On February 3, 2017, Gallian and Board Member Janine Jasso met for an

9    Internal Dispute Resolution.    The parties discussed the dispute, but were unable to

10    come to a resolution.

11        37.    On February 7, 2017, the Association sent a letter to Defendants calling

12    them to a second hearing regarding the architectural violations described above.    A

13    hearing was held on February 18, 2017, and Defendant Gallian again appeared at the

14    hearing.    The unauthorized roof remained in place at the time of the hearing, and

15    therefore a hearing follow-up letter was sent to Defendants informing them a $100.00

16    fine was being applied to the account as a result of the architectural violation.

17        38.    In or about early 2017, Defendants doubled-down on their violations by

18    installing further unauthorized architectural improvements on the Patio Cover without

19    submitting for nor receiving Association's approval, in violation of the above referenced

20    sections of the Association's Governing Documents.    The additional unauthorized

21    improvements made by Defendants to the Patio Cover include:  gutters attached to the

22    Patio Cover; roll-up screens/shades attached to the Patio Cover; and additional lattice

23    on top of the solid corrugated roof to the Patio Cover.

24        39.    On March 2, 2017, Association sent correspondence to Defendants

25    offering ADR by e-mail, certified mail and first class mail to Defendants. (See Ex. G.)

26        40.    Accordingly, Defendants are in violation of the above stated restrictions

27    of Association's Governing Documents.  As of the date this complaint was prepared,

28    (a) the solid corrugated panel roof on the Patio Cover; (b) gutters attached to the Patio

- 8 -
COMPLAINT

1  Cover; (c) roll-up screens/shades attached to the Patio Cover; and (d) additional lattice

2  on top of the solid corrugated roof to the Patio Cover remain in place at Unit 53. Since

3  Association has been unable to secure Defendants' compliance with the Governing

4  Documents, Association now turns to the Court for intervention.

5      41.    Violation of the covenants contained in the Governing Documents by

6  Defendants as described herein damaged and continue to damage Association in a

7  manner that cannot now be estimated in terms of monetary compensation, and

8  Association therefore has no adequate remedy at law. Continued flagrant violations of

9  the Governing Documents will result in an equitable erosion of the covenants contained

10  therein, and will permanently and irrevocably damage Association and undermine its

11  authority.

12      42.    Because Association has no adequate remedy at law, Defendants, and

13  each of them, and their heirs, assigns and successors in interest, should be enjoined

14  from maintaining the property in violation of the Governing Documents, and should be

15  further ordered to comply with the terms of the Governing Documents, as herein above

16  mentioned, including, without limitation, Defendants should be ordered to remove the

17  unapproved solid corrugated panel roof on the Patio Cover.

18      43.    Additionally, Association requests that this Court grant it an order

19  allowing it, and/or its designated representative, the right, but not the obligation, to

20  enter the Unit 53 to bring it into compliance pursuant to Article VIII, Section 8.4(g)(2)

21  of the CC&Rs, which provides, in part, as follows:

22          … if an Owner shall fail to maintain or make the repairs or
           replacements which are the responsibility of such Owner, as
23          provided above, then, upon vote of a majority of the Board of
           Directors, and after not less than thirty (30) days' notice to the
24          Owner, the Association shall have the right (but not the
           obligation) to enter the Unit, and provide such maintenance or
25          make such repairs or replacements, and the cost thereof shall be
           added to the assessments chargeable to such Unit and shall be
26          payable to the Association by the Owner of the Unit.

27      Association requests the Court, as part of the order, enjoin Defendants from

28  interfering with Association's repair efforts and that the cost of any modifications,

- 9 -
COMPLAINT

3177068v4

1  alterations, additions or removals ordered by this court shall be awarded as damages

2  against Defendants in an amount to be determined at trial pursuant to Article VIII,

3  Section 8.4(g)(2) of the CC&Rs.

4      44.    As a proximate result of Defendants' breach of the Governing

5  Documents, Association has incurred, and will continue to incur, attorneys' fees, costs

6  and expenses in connection with the enforcement of the Governing Documents and

7  Defendants' violation thereof, all of which shall be established in an amount according

8  to proof at trial.   Association is entitled to recover its fees and costs pursuant to

9  California Civil Code §§ 5975(c), 5960 and Article XIV, Section 14.7 of the CC&Rs.

10  **SECOND CAUSE OF ACTION**

11  **Nuisance, against all Defendants**

12      45.    Association restates and realleges Paragraphs 1 through 44 above, and

13  incorporates the same by reference as though fully set forth herein.

14      46.    Article XIV, Section 14.8 of the CC&Rs provides, in part:

15      The result of every act or omission whereby any of the covenants
   contained in this Declaration or if the Bylaws are violated in whole

16  or in part is hereby declared to be and constitutes both a public
   and private nuisance, and every remedy allowed by law or equity

17  against every such result and may be exercised by any owner, by
   the Association …. Such remedy shall be deemed cumulative and

18  not exclusive.

19      47.    As a result of the Defendants' violations of the Governing Documents as

20  set forth above, Defendants have created conditions within the Association that have

21  become an annoyance and nuisance to the residents of Association.   The ongoing

22  violations of the Governing Documents by Defendants are a continuing nuisance that

23  interferes with the value, desirability and tranquility of the Association, and interferes

24  with the peace and enjoyment of the other property owners within the Association.

25      48.    The other owners and residents within Association did not consent to

26  Defendants' behavior in violation of the Governing Documents, but rather reasonably

27  relied on the covenants and restrictions set forth in the CC&Rs, which requires owners

28  comply with the Governing Documents of the Association.   The continued flagrant

- 10 -
COMPLAINT

1   violation of the Governing Documents by Defendants, will result in an equitable erosion

2   of the covenants contained therein, and will permanently and irrevocably damage the

3   Association and undermine its authority.  Accordingly, Defendants' continuing violation

4   has damaged and continues to damage the Association in a manner that cannot now

5   be estimated in terms of monetary compensation.  As such, the Association therefore

6   has no adequate remedy at law.

7          49.    As a result, any ordinary person would be reasonably annoyed by

8   Defendant's violations.

9          50.    There is no public benefit to the Defendant's failure to comply with the

10   Declaration.  Defendant's violations result in serious harm to every owner and resident

11   within the Association, and Defendant should be required to remedy these violations, as

12   set forth in paragraph 55 below, in order to abate the nuisance.

13          51.    Association further requests, pursuant to Civil Code sections 3502-3503,

14   that this court grant it an order allowing it, and/or its designated representative, the

15   right, but not the obligation, to enter Unit 53 to abate the nuisance and remove the solid

16   corrugated panel roof from the Patio Cover.

17          52.    Association requests that the cost of any abatement ordered by this court

18   shall be awarded as damages against Defendants in an amount not to exceed $25,000.

19          53.    Any order entered by this court, granting Association the right to abate the

20   nuisance, should not obviate Defendants' requirement to comply with a duly entered

21   order of this Court to cure the violations.

22          54.    As a proximate result of Defendants' breach of the Governing

23   Documents, Association has incurred, and will continue to incur, attorneys' fees, costs

24   and expenses in connection with the enforcement of the Governing Documents and

25   Defendants' violation thereof, all of which shall be established in an amount according

26   to proof at trial.  Association is entitled to recover its fees and costs pursuant to

27   California Civil Code §§ 5975(c), 5960 and Article XIV, Section 14.7 of the CC&Rs.

28

3177068v4

## **PRAYER**

WHEREFORE, Plaintiff THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION prays judgment against Defendants SANDRA L. BRADLEY, individually and as Trustee of the Sandra L. Bradley Trust, JAMIE L. GALLIAN, an individual, and DOES 1 through 25, inclusive, as follows:

55.    For a permanent injunction requiring Defendants SANDRA L. BRADLEY, individually and as Trustee of the Sandra L. Bradley Trust, JAMIE L. GALLIAN to remove:

  (a)  The solid corrugated panel roof on the Patio Cover;

  (b)  Gutters attached to the Patio Cover;

  (c)  Roll-up screens/shades attached to the Patio Cover; and

  (d)  Additional lattice on top of the solid corrugated roof of the Patio Cover;

all within thirty (30) days of any injunction and/or judgment granted herein.

56.    For an order granting Association and/or its designated representatives the right, but not the obligation, to enter Unit 53 to abate the architectural violations referenced in paragraph 55 herein, pursuant to California Civil Code sections 3502-3503 and its CC&Rs at Article VIII, Section 8.4(g)(2), without further notice to Defendants, should Defendants fail to comply with any judgment and/or injunction granted herein, within thirty (30) days after service of said judgment and/or injunction on Defendants;

57.    For an order granting Association to recover the costs of said abatement of the maintenance violations referenced in paragraph 55 above, in an amount not to exceed $25,000, as a part of the monetary judgment entered herein, upon application to the Court pursuant to a memorandum of costs after judgment;

58.    For an Order directing Defendants to comply with all other provisions of the Governing Documents;

- 12 -
COMPLAINT

1    59.    For costs of suit and litigation expenses incurred herein;

2    60.    For attorneys' fees incurred herein, pursuant to California Civil Code

3  Sections 5975(c), 5960, and Article XIV, Section 14.7 of the CC&Rs;

4    61.    For such other and further relief as the Court may deem just and proper.

5

6  Dated: April ___, 2017                         EPSTEN GRINNELL & HOWELL, APC

7

8                                        By: _____

9                                            Douglas W. Grinnell
                                             Pejman D. Kharrazian
                                             Attorneys for Plaintiff
10                                           THE HUNTINGTON BEACH GABLES
                                             HOMEOWNERS ASSOCIATION
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3177068v4

**EXHIBIT A**

RECORDING REQUESTED BY
CHICAGO TITLE COMPANY
AND WHEN RECORDED MAIL TO

SANDRA BRADLEY
18 MEADOW BROOK DR
COTO DE CAZA, CA  92679

Escrow No. -
Order No.  985040290 - S32

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

30.00

2009000633802 04:05pm 11/23/09
401 59 A34 A04 A12 5
0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

ASSIGNMENT OF CONDOMINIUM SUBLEASE

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
( Additional recording fee applies )

CPFR4 --11/13/96bk

WHEN RECORDED MAIL TO:

(Assignee's Name & Address)

SANDRA BRADLEY
18 MEADOW BROOK DR
COTA DE CAZA CA 92679

*NO CONSIDERATION TERM OF LEASE LESS THAN 99 YEARS.*

(Space Above this Line for Recorder's use)

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned

_____ LARRY W. RIDER AND TERRI A. RIDER HUSBAND AND WIFE AS JOINT TENANTS , hereby

transfers and assigns to __SANDRA L. BRADLEY A WIDOW_____,

all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium
Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as
Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments
of record, and __JOHN F. TURNER AND VIRGINIA H TURNER HUSBAND AND WIFE AS JOINT    ,

TENANTS

as Tenant, recorded on __NOVEMBER 7, 1980_____ in Book _13824_ , Page _1274_ inclusive, as
Instrument No. _8694_ of Official Records of Orange County, California, as amended by the First
Amendment to Condominium Sublease recorded on _AUG 28, 2003_ as Instrument No.
_2003 001044770_. The property that is the subject of the Sublease is described as follows:

Unit _53_ of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made
a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: _11/19/2009_

_____
Assignor (s)
Terri A Rider

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE

On _11 19 2009_ , before me, ANTHONY H. DUONG_____ , personally appeared
LARRY W. RIDER & TERRI A. RIDER_____ , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

Page 1 of 2

ANTHONY H. DUONG
COMM. #1857553
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Comm. Expires April 11, 2010

(This space for notarial seal)

J:\UC PBRM\Masters-BS\MASTER-GHB-Assignment of Condominium Sublease with Notary.doc

11/17/2009 14:28 FAX                                                                    ☑009

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: _11/17/09_

_____
Assignee (s)

_____

STATE OF ~~CALIFORNIA~~  M i ssouri )
COUNTY OF ~~ORANGE~~  St Lou is City) ss.

On _November 17, 20_ before me, _Kenneth J. Ball_, personally appeared _Sandra L. Bradley_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public                                        (This space for notarial seal)

KENNETH J. BALL
Notary Public-Notary Seal
State of Missouri, Saint Louis City
Commission # 09703489
My Commission Expires Aug 10, 2013

Page 2 of 2

J:\JC PERM\Masters-BSI\MASTER-GRB-Assignment of Condominium Sublease with Notary.doc

**EXHIBIT B**

Order No.

Escrow No.

Loan No.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

24.00

2010000219518 1:00 pm 05/10/10
153 420 A34 A04 A12   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**NO CONSIDERATION**
**TERM OF LEASE**
**LESS THAN 99 YEARS**

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770.  The property that is the subject of the Sublease is described as follows:

Unit 55 of Tract 10542.  Legal Description contained on Exhibit "A" attached hereto and made a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: 3/10/2010

Assignor, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

*On March 10, 2010, before me, _____, a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature*

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 8, 2014

*D/As deed tr mcD gift tax oblig*

Page  1                                          DESCRIPTION
Order No. 985040290
PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 3/10/2010                    _Sandra L. Bradley_

Assignee, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

*On 3/10/2010 , before me. Henry J Coopersmith , a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is  subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person  acted, executed the instrument.*

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature*

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

**EXHIBIT C**

RECORDING REQUESTED BY:

Mrs. Sandra L. Bradley
18 Meadow Wood Drive
Coto de Caza, CA 92679

WHEN RECORDED RETURN TO:
same as above

MAIL TAX STATEMENTS TO:
same as above

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

30.00

2010000309926 2:10 pm 06/30/10
276 421 A34 A04 A12  5
0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

(space above this line for recorder's use)

### CORRECTING ASSIGNMENT OF CONDOMINIUM SUBLEASE

The original **ASSIGNMENT OF CONDOMINIUM SUBLEASE** recorded as
document #2010000219518 on 05/10/10 inadvertently referred to
Unit 53 as Unit 55.  It is now corrected to UNIT 53 as stated in
the attached Exhibit "A".

Order No.

Escrow No.

Loan No.

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

|||||||||||||||||||||||||||||||||||||| 24.00

2010000219518  1:00 pm 05/10/10
153 420 A34 A04 A12   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NO CONSIDERATION
TERM OF LEASE
LESS THAN 99 YEARS

CORRECTING            OF

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 53 of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: 3/10/2010

Assignor, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

On March 10, 2010, before me, _____, a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

Page    1
Order No. 985040290

# DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 3/10/2010

_Sandra L. Bradley_
Assignee, SANDRA L. BRADLEY

STATE OF CALIFORNIA
COUNTY OF ORANGE

On _3/10/2010_, before me, _Henry J. Coopersmith_, a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

D/As deed tr mcD gift tax oblig

Page    1
Order No. 985040290

## DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

**EXHIBIT D**

276

RECORDING REQUESTED BY:

Jamie Gallian
4476 Alderport Dr.
Huntington Beach, CA
92649

AND WHEN RECORDED MAIL TO:

Jamie Gallian
4476 Alderport Dr.
Huntington Beach, CA
92649

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

* $ R 0 0 0 9 1 4 7 5 4 1 $ *    33.00
2017000116815 8:25 am 03/23/17
276 415 A34 A04 F14    6
0.00 0.00 0.00 0.00 15.00 0.00 0.00 0.00

TITLE OF DOCUMENT:    Assignment of Condominium
SubLease
Lease from present to 2059

Transfer Tax exempt. this Lease is a
Gift between family members.

2T
6P
2FF
CC
2CF

THIS IS A TRUE CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE:     MAR 2 3 2017
CERTIFICATION FEE:  7.00

COUNTY CLERK-RECORDER

Hugh Nguyen

ORANGE COUNTY
STATE OF CALIFORNIA

RECORDING REQUESTED BY:

~~Sandra Bradley~~
~~19 Meadow Wood Dr.~~
~~Coto de Caza, CA 92679~~

*Jamie Gallian*
*4476 Alderport Dr*
*Huntington Beach*
*Ca 92649*

WHEN RECORDED RETURN TO:

~~same as above~~ *Jamie Gallian*
*4476 Alderport Dr.*
*Huntington Beach Ca 92649*

_____

(space above this line for Recorder's use)

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For no consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, as Trustee of the Sandra L. Bradley Trust, hereby transfers and assigns to JAMIE L. GALLIAN, a single woman, all right, title and interest of the undersigned as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, and individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC, by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on November 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on August, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 53 of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made a part hereof.
TOGETHER WITH all buildings and other improvements on said land.

NO CONSIDERATION -- TERM OF LEASE LESS THAN 99 YEARS

Dated: 3/22/2017

Assignor, SANDRA L. BRADLEY
Trustee of the Sandra L. Bradley Trust

1

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
*COUNTY OF ORANGE*

*On* ___3/22/2017___ *, before me,* HENRY J. COOPERSMITH, *a Notary Public in and for said State personally appeared* SANDRA L. BRADLEY, *who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature* _____

HENRY J. COOPERSMITH
COMM. # 2054619
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES FEB. 6, 2018

2



EXHIBIT "A"

DESCRIPTION

der No: 985040290

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

RECORDING REQUESTED BY:

~~Sandra Bradley~~   *Jamie Gallian*
~~19 Meadow Wood Dr.~~  *4476 Alderport*
~~Coto de Caza, CA 92679~~  *Huntington Bch*
                           *CA 92649*

WHEN RECORDED RETURN TO:

~~same as above~~  *Jamie Gallian*
                 *4476 Alderport*
                 *Huntington Beach, CA*
                 *92649*

_____

(space above this line for Recorder's use)

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to the Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

Dated: *3/22/17*

_____
Assignee, JAMIE L. GALLIAN

1

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
*COUNTY OF ORANGE*

On _3/22/2017_____, before me, _Henry J Coopersmith_

*a Notary Public in and for said State personally appeared* JAMIE L. GALLIAN, *who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature* _____

HENRY J. COOPERSMITH
COMM. # 2054619
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES FEB. 6, 2018

2

**EXHIBIT E**



BK 13618 PG 982

28926

WHEN RECORDED RETURN TO:
Nossaman & Hughes
4040 MacArthur Avenue, Suite 330
Newport Beach, California 92660

Attn: Frank D. Stiefel, Esq.

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

$54.00
C7

4:22 P.M.    NOV 28 '90

LEE A. BRANCH, County Recorder

DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

LOTS 1 AND 2 OF TRACT NO. 10542
CITY OF HUNTINGTON BEACH
ORANGE COUNTY, CALIFORNIA

BK 13818 PG 983

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 2 |
| Section 1.1 | Association | 2 |
| Section 1.2 | Board of Directors/Board | 2 |
| Section 1.3 | Common Area | 3 |
| Section 1.4 | Condominium | 3 |
| Section 1.5 | Condominium Plan | 3 |
| Section 1.6 | County | 3 |
| Section 1.7 | Declarant | 3 |
| Section 1.8 | Lessee | 3 |
| Section 1.9 | Lessor | 3 |
| Section 1.10 | Member | 3 |
| Section 1.11 | Mortgage | 3 |
| Section 1.12 | Mortgagee | 3 |
| Section 1.13 | Owner/Ownership | 3 |
| Section 1.14 | Project | 4 |
| Section 1.15 | Property | 4 |
| Section 1.16 | Unit | 4 |
| ARTICLE II | CREATION OF CONDOMINIUMS | 4 |
| Section 2.1 | Creation | 4 |
| Section 2.2 | Elements of Condominium | 4 |
| Section 2.3 | Boundaries of Units | 5 |
| Section 2.4 | Non-Severability | 5 |
| ARTICLE III | MEMBERSHIP IN ASSOCIATION | 5 |
| Section 3.1 | Membership | 5 |
| Section 3.2 | Transfer | 5 |
| Section 3.3 | Voting Rights | 6 |
| ARTICLE IV | PROPERTY RIGHTS IN THE COMMON AREAS | 7 |
| Section 4.1 | Members' Easements of Enjoyment | 7 |
| Section 4.2 | Delegation of Use | 7 |
| Section 4.3 | Waiver of Use | 7 |
| Section 4.4 | Common Area Improvements | 7 |
| ARTICLE V | COVENANT FOR ASSESSMENTS | 8 |
| Section 5.1 | Creation of the Lien and Personal Obligation of Assessments | 8 |
| Section 5.2 | General Purpose of Assessments | 9 |
| Section 5.3 | Regular Assessments | 9 |

BK 13618PG 984

|          | (a) | Purposes............................................ | 9  |
|          | (b) | Amount and Type of Payment......................... | 10 |
|          | (c) | Date of Commencement............................... | 10 |

| Section 5.4 | | Special Assessments................................ | 11 |
| Section 5.5 | | Delinquency........................................ | 11 |

|          | (a) | Right of Association............................... | 11 |
|          | (b) | Notice of Lien..................................... | 12 |
|          | (c) | Foreclosure Sale................................... | 12 |
|          | (d) | Curing of Default.................................. | 12 |
|          | (e) | Cumulative Remedies................................ | 12 |
|          | (f) | Subordination...................................... | 13 |
|          | (g) | Expiration of Lien................................. | 13 |

| Section 5.6 | | Exempt Property.................................... | 13 |
| Section 5.7 | | Uniform Rate of Assessment......................... | 13 |
| Section 5.8 | | No Offsets......................................... | 13 |

| ARTICLE VI | | ARCHITECTURAL CONTROL |   |

| Section 6.1 | | Architectural Approval............................. | 14 |
| Section 6.2 | | Requirements for Approval.......................... | 14 |
| Section 6.3 | | Term and Composition of Architectural Committee..................................... | 14 |
| Section 6.4 | | Failure to Approve or Disapprove the Plans... | 15 |
| Section 6.5 | | No Liability....................................... | 15 |
| Section 6.6 | | Notice of Noncompliance or Noncompletion... | 15 |
| Section 6.7 | | Rules and Regulations.............................. | 16 |
| Section 6.8 | | Variances.......................................... | 16 |
| Section 6.9 | | Appointment and Designation........................ | 16 |
| Section 6.10 | | Review Fee and Address............................ | 16 |
| Section 6.11 | | Inspection......................................... | 16 |

| ARTICLE VII | | EASEMENTS |   |

| Section 7.1 | | Rights of Association.............................. | 17 |
| Section 7.2 | | Rights of Declarant................................ | 17 |
| Section 7.3 | | Rights of Owners................................... | 18 |
| Section 7.4 | | Encroachments on Common Area....................... | 18 |
| Section 7.5 | | Restricted Common Areas............................ | 19 |
| Section 7.6 | | Other Encroachments................................ | 19 |

| ARTICLE VIII | | MANAGEMENT |   |

| Section 8.1 | | Powers of the Association.......................... | 19 |
| Section 8.2 | | Purposes of the Association........................ | 19 |
| Section 8.3 | | Contracting Authority.............................. | 20 |
| Section 8.4 | | Duties............................................. | 20 |
| Section 8.5 | | Right of Entry..................................... | 24 |

Section 8.6   Duties of Owners.................... 24
Section 8.7   Association to Defend Certain Actions...... 25

ARTICLE IX    GENERAL RESTRICTIONS

Section 9.1   Partition...................... 26
Section 9.2   Interior of Unit................. 26
Section 9.3   Nuisance....................... 26
Section 9.4   Use of Common Area................ 26
Section 9.5   Projections.................... 26
Section 9.6   Recreational Vehicles............... 26
Section 9.7   Lavatory Facilities............... 26
Section 9.8   Signs........................ 27
Section 9.9   Animals....................... 27
Section 9.10  Offensive Activities............... 27
Section 9.11  Right of Inspection............... 27
Section 9.12  Leases....................... 27
Section 9.13  Misconduct..................... 28
Section 9.14  Structural Changes................ 28
Section 9.15  Utilities..................... 28
Section 9.16  Receptacles.................... 28
Section 9.17  Television; Radio................ 28


ARTICLE X     MORTGAGE PROTECTION

Section 10.1  Seventy-Five Percent Vote of Mortgagees...... 28
Section 10.2  Other Rights of First Mortgagees.......... 29
Section 10.3  Mortgagees Furnishing Information......... 30
Section 10.4  Notice to First Mortgagees of Owner Default... 30
Section 10.5  Right of First Refusal............... 30
Section 10.6  Conflicts...................... 30
Section 10.7  Notice of Destruction or Taking.......... 30
Section 10.8  Breach of Declarations............... 31


ARTICLE XI    DESTRUCTION OF IMPROVEMENTS

Section 11.1  Destruction; Proceeds Exceed 85% of
              Reconstruction Costs................ 31
Section 11.2  Destruction; Proceeds Less Than 85% of
              Reconstruction Costs................ 31
Section 11.3  Rebuilding Procedures............... 31
Section 11.4  Rebuilding Contract................ 32
Section 11.5  Rebuilding Not Authorized............. 32
Section 11.6  Minor Repair and Reconstruction.......... 33

ARTICLE XII   CONDEMNATION

Section 12.1  Sale by Unanimous Consent............. 33

Section 12.2   Distribution of Proceeds of Sale...............  33
Section 12.3   Distribution of Condemnation Award...........  33
Section 12.4   Revival of Right to Partition..................  33


ARTICLE XIII   PARTITION

Section 13.1   Suspension....................................  34
Section 13.2   Proceeds......................................  34
Section 13.3   Power of Attorney.............................  34


ARTICLE XIV    GENERAL PROVISIONS

Section 14.1   Term..........................................  34
Section 14.2   Notices.......................................  34
Section 14.3   Enforcement...................................  35
Section 14.4   Severability..................................  35
Section 14.5   Construction..................................  35
Section 14.6   Singular Includes Plural......................  35
Section 14.7   Attorneys' Fees...............................  35
Section 14.8   Nuisance......................................  35
Section 14.9   Amendments....................................  36
Section 14.10  Annexation....................................  37

BK 13618PG 987

### DECLARATION OF
### COVENANTS, CONDITIONS AND RESTRICTIONS
### FOR THE HUNTINGTON BEACH GABLES

LOTS 1 AND 2 OF TRACT NO. 10542
CITY OF HUNTINGTON BEACH
ORANGE COUNTY, CALIFORNIA

THIS DECLARATION, made this 21st day of _____May_____ 19 80, by THE ROBERT P. WARMINGTON CO., a California corporation, (hereinafter referred to as "Declarant").

### WITNESSETH:

WHEREAS, Declarant is the owner of a subleasehold interest in certain real property in the City of Huntington Beach, County of Orange, State of California, described as:

Lots 1 and 2 of Tract 10542 as per map recorded in Book 456 , Pages 49 and 50 , inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California.

WHEREAS, said real property is owned in fee by HOUSER BROS. CO., a California limited partnership, in which Clifford C. Houser and Vernon F. Houser are general partners, (hereinafter referred to as "Lessor"); and

WHEREAS, said real property has been leased by Lessor to Robert P. Warmington, an individual, (hereinafter referred to as "Lessee") pursuant to a Ground Lease dated October 19 , 1979, and as evidenced by a Short Form Memorandum recorded on December 6 , 1979, in Book 13424 , pages 199 et seq., of the Official Records of Orange County, California; and

WHEREAS, Lessee has subleased the Property to Declarant, who now desires to divide its interest in the property and improvements thereon into a condominium project as defined in Sections 783 and 1350 of the California Civil Code in accordance with a recorded condominium plan for the project, as hereinafter defined; and

WHEREAS, Declarant has therefore deemed it desirable to impose a general plan for the improvement and development of said tract and all of the property described herein and the adoption and establishment of covenants, conditions and restrictions upon said real property and each and every lot and portion thereof and upon the use, occupancy and enjoyment thereof, all for the

1.

BK 13618PG 988

purpose of enhancing and protecting the value, desirability and attractiveness of said tract; and

WHEREAS, Declarant has deemed it desirable for the efficient preservation of the value, desirability and attractiveness of said tract to create a corporation to which should be delegated and assigned the powers of administering and enforcing these covenants, conditions and restrictions, and collecting and disbursing funds pursuant to the assessment and charges hereinafter created and referred to; and

WHEREAS, THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a nonprofit corporation, has been incorporated under the laws of the State of California for the purpose of exercising the powers and functions aforesaid; and

WHEREAS, Lessor and Lessee have agreed to the restrictions to be imposed hereby and authorize the recordation of this Declaration, and evidence this agreement and authorization by executing this Declaration below; and

NOW THEREFORE, Declarant hereby covenants, agrees and declares that all of said units and property described above shall be held, sold, assigned, leased, encumbered, hypothecated, used, improved, and conveyed subject to the following covenants, conditions and restrictions and easements which are hereby declared to be for the benefit of the whole tract and all of the property described herein and the owners thereof, their successors and assigns. These covenants, conditions and restrictions and easements shall run with the said real property and shall be binding on all parties having or acquiring any right, title or interest in the described real property or any part thereof and are imposed upon said real property and every part thereof as a servitude in favor of each and every parcel thereof as the dominant tenement or tenements.

## ARTICLE I
### DEFINITIONS

The following terms used in these covenants, conditions and restrictions shall be applicable to this Declaration and are defined as follows:

Section 1.1.  Association:  "Association" shall mean and refer to THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a nonprofit corporation, incorporated under the laws of the State of California, its successors and assigns.

Section 1.2.  Board of Directors/Board:  "Board of Directors" or "Board" shall mean and refer to the duly elected Board of Directors of the Association.

2.

BK 13818PG 989

**Section 1.3. Common Area:** "Common Area" means and refers to the entire Project, except the Units.

**Section 1.4. Condominium:** "Condominium" means a condominium as defined in Section 783 of the California Civil Code and as used herein means a Unit, together with (a) an undivided 1/80 interest as tenant in common in the Common Area, (b) certain exclusive or nonexclusive easements granted herein to an Owner, and (c) a membership in the Association.

**Section 1.5. Condominium Plan:** "Condominium Plan" shall mean and refer to that certain Condominium Plan recorded or to be recorded by Declarant on the Project in the office of the County Recorder wherein the Property is located.

**Section 1.6. County:** "County" shall mean and refer to the County of Orange, State of California.

**Section 1.7. Declarant:** "Declarant" shall mean and refer to THE ROBERT P. WARMINGTON CO., a California corporation, its successors and assigns.

**Section 1.8. Lessee:** "Lessee" shall mean and refer to Robert P. Warmington, a married man, his heirs, successors, and assigns.

**Section 1.9. Lessor:** "Lessor" shall mean and refer to HOUSER BROS. CO., a California limited partnership, its successors and assigns.

**Section 1.10. Member:** "Member" shall mean and refer to every person or entity who holds Membership in the Association.

**Section 1.11. Mortgage:** "Mortgage" shall mean and refer to any mortgage, deed of trust, assignment of leasehold or subleasehold interest or other conveyance of a Unit, or any interest therein, including, but not limited to, the improvements developed thereon to secure the performance of an obligation, which obligation will be reconveyed upon completion of such performance.

**Section 1.12. Mortgagee:** "Mortgagee" shall mean and refer to mortgagees, trustees, beneficiaries and holders of deeds of trust, assignees of any leasehold or subleasehold interests, and the holders of any indebtedness secured by Mortgages.

**Section 1.13. Owner/Ownership:** "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or Lessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation. Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means. All references

3.

BK 13618 PG 990

herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest.

**Section 1.14. Project:** "Project" shall mean and refer to the Property and all structures and other improvements thereon.

**Section 1.15. Property:** "Property" or "Properties" shall mean and refer to the leasehold interest in all of the real property hereinbefore described.

**Section 1.16. Unit:** "Unit" or "Units" shall mean and refer to the residential air space Units and related areas as shown on the recorded Condominium Plan, and means the elements of the Project which are not owned in common by the Owners of the Condominiums in the Project.

## ARTICLE II
## CREATION OF CONDOMINIUMS

**Section 2.1. Creation:** Declarant, in order to establish a plan of condominium ownership for the Project, hereby covenants and agrees that it hereby divides the Project as follows:

(a) Into eighty (80) separately designated and legally described Units which are comprised of certain parcels of air space which are shown and more particularly described on the Condominium Plan; and

(b) The remainder of the Project which shall be deemed the Common Area and shall be subject to certain easements and restrictions as set forth in this Declaration and the Condominium Plan.

**Section 2.2. Elements of Condominium:** Each Condominium shall be comprised of the following elements:

(a) A Unit;

(b) An undivided 1/80 leasehold interest as tenant in common in the Common Area;

(c) Non-exclusive easement rights as described in this Declaration;

(d) Certain exclusive easement rights over the Common Area, defined hereinafter as Restricted Common Areas; and

(e) A membership in the Association.

BK 13618 PG 881

**Section 2.3.  Non-Severability:** Declarant, its successors, assigns, sublessees, and grantees, covenant and agree that the various elements of the Condominium Plan conveyed herewith shall not be separated or separately conveyed, and each such element shall be deemed to be conveyed or encumbered with its respective Unit even though the description in the instrument or conveyance or encumbrance may refer only to title to the Unit.

**Section 2.4.  Boundaries of Units:** That portion of the Unit designed for use as a residence shall be bounded by and contained within the interior, undecorated surfaces of the perimeter walls, floors, ceilings, windows, fireplace boxes and doors.  The Units do not, however, contain bearing walls, columns, vertical supports, floors, roofs, foundation, railings, fences, gates, garage doors, central heating, central refrigeration and central air-conditioning equipment, reservoir tanks, pumps and other central services, pipes, ducts, flues, conduits, wires and other utility installations, wherever located except the outlets thereof when located within the Unit.

In interpreting assignments, leases, subleases, deeds, declarations, and plans, the existing physical boundaries of the Unit or of a Unit reconstructed in substantial accordance with the original plans thereof shall be conclusively presumed to be its boundaries rather than the metes and bounds (or other description) expressed in the deed, assignment, lease, sublease, plan or declaration, regardless of minor lateral movement of the building and regardless of minor variance between boundaries shown on the Condominium Plan or in the assignment, lease, sublease or deed, and Declaration and those of the building.

ARTICLE III
MEMBERSHIP IN ASSOCIATION

**Section 3.1.  Membership:** Every Owner of a Unit which is subject to assessment shall be a Member of the Association, and ownership of such Unit shall be the sole qualification for such Membership.  The terms and provisions set forth in this Declaration, which are binding upon all Owners of all Units and all Members in the Association, are not exclusive, as the Member shall, in addition, be subject to the terms and provisions of the Articles of Incorporation and the Bylaws of the Association.  Membership shall be appurtenant to and may not be separated from ownership of any Unit which is subject to assessment.

**Section 3.2.  Transfer:** The Membership held by any Owner of a Unit shall not be transferred, pledged or alienated in any way, except upon the sale, assignment or encumbrance of such Unit and then only to the Purchaser or Mortgage holder of such Unit. Any attempt to make a prohibited transfer is void, and will not be reflected upon the books and records of the Association.  In the event the Owner of any Unit should fail or refuse to transfer

5.

BK 13618 PG 992

the Membership registered in his name to the assignee of such Unit, the Association shall have the right to record the transfer upon the books of the Association.

Section 3.3.  Voting Rights:  The Association shall have two (2) classes of voting Membership.

Class A:  Class A Members shall be all those Owners with the exception of the Declarant and shall be entitled to one vote for each Unit owned.  When more than one person holds an interest in any Unit, all such persons shall be Members.  The vote for such Unit shall be exercised as they determine, but in no event shall more than one vote be cast with respect to any Unit.

Class B:  The Class B Member shall be the Declarant. The Class B Member shall be entitled to three votes for each Unit in which it holds the interest required for Membership by Section 1 of this Article; provided that the Class B Membership shall cease and become converted to Class A Membership on the happening of any of the following events, whichever occurs earlier:

(a)  When the total votes outstanding in the Class A Membership equals the total votes outstanding in the Class B Membership;

(b)  The second anniversary of the Final Subdivision Public Report for this development.

All voting rights shall be subject to the restrictions and limitations provided herein and in the Articles and Bylaws of the Association.  Furthermore, notwithstanding any provisions herein excluding the vote of the Declarant, any provision herein calling for membership approval of action to be taken by the Association, except provisions with respect to the action referred to in Section 4.4, below to enforce the obligations of the Declarant, shall expressly require the vote or written assent of a prescribed percentage of each class of membership during the time that there are two outstanding classes of membership, as set forth above.  Furthermore any such provision calling for the vote or written assent of each class of membership for the initiation of action by or in the name of the Association, any requirement other than in Sections 4.4, and 14.9, below, and Section 10.1 of the Bylaws, that the vote of the Declarant shall be excluded in any such determination shall be applicable only if there has been a conversion of Class B to Class A shares and only for su long as the Declarant holds or directly controls twenty-five percent (25%) or more of the voting power of the Association.

6.

BK 13618PG 993

### ARTICLE IV
### PROPERTY RIGHTS IN THE COMMON AREAS

**Section 4.1.  Members' Easements of Enjoyment:**  Declarant hereby grants to the Owner of each Unit a non-exclusive easement for access over the Common Area.  Every Member shall have a right and easement of ingress and egress and of enjoyment in and to the Common Area which shall be appurtenant to and shall pass with the title to every Unit, subject to the following provisions:

(a)  The right of the Association to limit the number of guests of Members.

(b)  The right of the Association to establish uniform rules and regulations pertaining to the use of the Common Area and the recreational facilities thereof.

(c)  The right of the Association, in accordance with its Articles and Bylaws, to borrow money for the purpose of improving the Common Area and facilities and in aid thereof, to mortgage said property, provided that the rights of such mortgages shall be subordinate to the rights of the Members, and provided further that any such mortgage shall have the prior approval of at least seventy-five percent (75%) of all first Mortgagees, as set forth below.

(d)  The right of the Association to suspend the right to use of the recreational facilities by an Owner but only in accordance with the notice and hearing requirements set forth in the Bylaws.

(e)  Those easement rights set forth in Article VII, below.

**Section 4.2.  Delegation of Use:**  Any Member may delegate, in accordance with the Bylaws, his right of enjoyment to the Common Area and facilities to the Members of his family, his tenants or contract purchasers who reside in his Unit.

**Section 4.3.  Waiver of Use:**  No Member may exempt himself from personal liability for assessments duly levied by the Association, nor release the Unit owned by him from the liens and charges hereof, by waiver of the use and enjoyment of the Common Area and the facilities thereon or by abandonment of his Unit.

**Section 4.4.  Common Area Improvements:**  If Common Area improvements which are to be erected upon the Common Area by Declarant have not been completed prior to the issuance of the Subdivision Public Report and the Association is the obligee under a bond or other arrangement (hereafter "Bond") to secure performance of the commitment of Declarant to complete the

7.

BK 13618 PG 991

improvements, the Board of Directors of the Association shall consider and vote on the question of action by the Association to enforce the obligations under the Bond with respect to any improvement for which a Notice of Completion has not been filed within sixty (60) days after the completion date specified for that improvement in the Planned Construction Statement appended to the Bond.  If the Association has given an extension in writing for the completion of any Common Area improvement, the Board of Directors of the Association shall consider and vote on the question of action by the Association to enforce the obligations under the Bond if a Notice of Completion has not been filed within thirty (30) days after the expiration of the extension.  If the Board of Directors of the Association determines that it will not initiate action to enforce the obligations under the Bond or fails to consider and vote on the question within the applicable time period set forth above, then, upon receipt of a petition signed by not less than ten percent (10%) of the total voting power of the Association, the Board of Directors of the Association shall hold a special meeting of Members not less than fifteen (15) days nor more than thirty (30) days after receipt of the petition for the purpose of voting to override the decision of the Board of Directors not to initiate action to enforce the obligations under the Bond or to consider and vote on the question if the Board of Directors has not acted.  At this special meeting, a vote of a majority of the voting power of the Members, excluding Declarant, shall determine all matters presented regarding the enforcement of obligations under the Bond.  Such vote to take action to enforce the obligations under the Bond shall be the decision of the Association and the Board of Directors shall thereafter implement this decision by initiating and pursuing appropriate action in the name of the Association.

## ARTICLE V
## COVENANT FOR ASSESSMENTS

**Section 5.1.  Creation of the Lien and Personal Obligation of Assessments:**  The Declarant, for each Unit owned by it within the Property, hereby covenants and agrees to pay, and each Owner of any Unit by acceptance of a lease therefor, whether or not it shall be so expressed in such lease, is deemed to covenant and agree to pay to the Association certain assessments as described below, such assessments to be fixed, established and collected as hereinafter provided.  Such assessments together with such interest thereon and costs of collection thereof, as hereinafter provided, shall be a charge on the Unit and that portion of the leasehold estate appurtenant to said Unit and shall be a continuing lien upon said Unit and said leasehold estate against which each such assessment is made.  Each such assessment, together with such interest, costs and reasonable attorneys' fees, shall also be the personal obligation of the person who was the Owner of such Unit at the time when the

8.

BK 13618 PG 895

assessment fell due. The personal obligation shall not pass to
his successors in title until expressly assumed by them.

**Section 5.2. General Purpose of Assessment:** The
assessments levied by the Association shall be used exclusively
for the purpose of promoting the recreation, health, safety, and
welfare of the Members of the Association, and, in particular,
for the improvement and maintenance of the properties, services
and facilities devoted to this purpose, or to the payment to or
reimbursement of other affected parties or governmental entities
for the improvement and maintenance thereof, and related to the
use and enjoyment of the Common Area and those Association
responsibilities set forth herein.

**Section 5.3. Regular Assessments:** Regular Assessments
shall be levied and collected by the Association in accordance
with the following:

(a) **Purposes:** To cover the following expenses:

(1) Maintenance, management, operation, repair
and replacement of the Common Area and all other
areas on the Property which are maintained by the
Association;

(2) Costs relating to the maintaining of a
security guard gate adjoining the Property as
determined from time to time by the Association and
the owner of said adjoining property;

(3) Unpaid assessments;

(4) Cost of management and administration of
the Association, including, but not limited to,
compensation paid by the Association to managers,
accountants, attorneys and employees;

(5) The costs of utilities, trash pick up and
disposal (if such services are provided) and other
services benefiting the Owners and their Units to
the extent such services are paid for by the
Association;

(6) The costs of fire, casualty, liability,
workmen's compensation and other insurance covering
the Common Area;

(7) The costs of any other insurance obtained
by the Association;

(8) Reasonable reserves as deemed appropriate
by the Board;

9.-

BK 13618 PG 996

(9)  The costs of bonding any members of the Board, any professional management agent, or any other person handling the funds of the Association;

(10)  Taxes paid by the Association;

(11)  Amounts paid by the Association for discharge of any lien or encumbrance levied against the Common Area or portions thereof;

(12)  Costs incurred by any committees established by the Board;

(13)  The costs of any other item or items designated by, or in accordance with other expenses incurred by the Association for any reason whatsoever in connection with the Common Area, this Declaration, the Articles or the By-laws or in furtherance of the purposes of the Association or in the discharge of any obligations imposed on the Association by this Declaration;

(14)  Lease payments, if any, required to be made on the Common Areas; and.

(15)  Association's proportionate share of the costs incurred for maintenance of Monterey Lane and the guard gates maintained thereon, if any, pursuant to that certain Agreement attached hereto as Exhibit "A".

(b)  Amount and Type of Payment:  Until the expiration of one (1) year immediately following the conveyance of the first Unit to an Owner, the maximum regular assessment shall be as set forth in the Final Subdivision Report for the Property.  From and after said year, the maximum regular assessment may be increased each year by the Board of Directors, but not more than twenty percent (20%) above the maximum regular assessment for the previous year.  The maximum regular assessment may be increased above twenty percent (20%) only by the vote or written assent of a majority of the voting power of the Members excluding Declarant.

(c)  Date of Commencement:  The regular assessments provided for herein shall commence as to all Units on the first day of the month following the closing of escrow on the sale of the first Unit to an Owner.  The first regular assessment shall be adjusted according to the number of months remaining in the calendar year.  The Board of Directors shall fix the amount of the regular assessment against each Unit at least thirty (30) days in advance of each regular assessment period.  Written

10.

BK 13618PG 997

notice of the regular assessment shall be sent to every
Owner subject thereto.   The due dates shall be
established by the Board of Directors.  The Association
shall, upon demand, and for a reasonable charge, furnish
a certificate signed by an officer of the Association
setting forth whether the assessments on a specified Unit
have been paid.  A properly executed certificate of the
Association as to the status of assessments on a Unit is
binding upon the Association as of the date of its
issuance.

Section 5.3.  Special Assessments:  In addition to the
regular assessments authorized above, the Association may levy in
any assessment year, a special assessment applicable to that year
only, for the purpose of defraying, in whole or in part, the cost
of any construction, reconstruction, repair or replacement of a
capital improvement upon the Common Area, including fixtures and
personal property related thereto, provided that any such
assessments which in the aggregate exceed five percent (5%) of
the budgeted gross expenses of the Association for that year
shall require the vote or written assent of a majority of the
voting power of the Members, excluding Declarant.  In addition,
special assessments may be levied against and collected from a
particular Owner and his Unit to reimburse the Association for
certain costs or expenses that have been incurred by the
Association or Declarant with respect to bringing the Owner and
his Unit into compliance with the terms of this Declaration or
with respect to materials or services furnished to such Owner or
his Unit at his request or on his behalf as may be provided
herein.

Section 5.5.  Delinquency:  Any assessment provided for
in this Declaration, which is not paid when due, shall be
delinquent and shall be subject to the following provisions.
All references hereinafter made to the sale of a Unit shall also
include the assignment of the leasehold or subleasehold interest
therein.

     (a)   Right of Association:  If any such assessment
is not paid within thirty (30) days after the due date,
the assessment shall bear interest from the date of
delinquency at the rate of six percent (6%) per annum,
and the Association may, at its option, bring an action
at law against the Owner personally obligated to pay the
same, or, upon compliance with the notice provisions set
forth herein to foreclose the lien against the Unit, and
there shall be added to the amount of such assessment,
the costs of preparing and filing the complaint in such
action, and in the event a judgment is obtained, such
judgment shall include said interest and a reasonable
attorneys' fee, together with the costs of action.  Each
Owner vests in the Association or its assigns, the right

11.

BK 13618 PG 998

and power to bring all actions at law or lien foreclosure
against such Owner or other Owners for the collection of
such delinquent assessments. No Owner may waive or
otherwise escape the liability for the assessments
provided for herein by non-use of the Common Area or
abandonment of his Unit.

(b)  Notice of Lien:  No action shall be brought to
foreclose said assessment lien or to proceed under the
power of sale herein provided less than thirty (30) days
after the date a notice of claim of lien (hereinafter
referred to as "Notice of Delinquent Assessment") is
deposited in the United States mail, certified or
registered, postage prepaid, to the Owner of said Unit,
and a copy thereof is recorded by the Association in the
office of the County Recorder; said Notice of Delinquent
Assessment must recite a good and sufficient legal
description of any such Unit, the record Owner or reputed
Owner thereof, the amount claimed (which shall include
interest on the unpaid assessment at the rate of six
percent (6%) per annum, plus reasonable attorneys' fees
and expenses of collection in connection with the debt
secured by said lien), and the name and address of the
claimant.

(c)  Foreclosure Sale:  Any such sale provided for
above is to be conducted in accordance with the
provisions of Sections 2924, 2924b, and 2924c of the
Civil Code of the State of California, applicable to the
exercise of powers of sale in mortgages and deed of
trust, or in any other manner permitted or provided by
law.  The Association, through its duly authorized
agents, shall have the power to bid on the Unit at
foreclosure sale, and to acquire and hold, lease,
mortgage and convey the same.

(d)  Curing of Default:  Upon the timely curing of
any default for which a Notice of Delinquent Assessment
was filed by the Association, the officers of the
Association are hereby authorized to file or record, as
the case may be, an appropriate release of such Notice of
Delinquent Assessment, upon payment by the defaulting
Owner of a reasonable fee, to cover the costs of
preparing and filing or recording such release, together
with the payment of such other costs, interest or fees as
shall have been incurred.

(e)  Cumulative Remedies:  The assessment lien and
the rights to foreclosure and sale thereunder shall be in
addition to and not in substitution for all other rights
and remedies which the Association and its assigns may
have hereunder and by law, including a suit to recover a
money judgment for unpaid assessments, as above provided.

12.

BK 13618PG 999

(f)  **Subordination:**  A lien for regular and special assessments shall be subordinate to the lien of any first Mortgage.  The sale or transfer of any Unit as a result of the exercise of a power of sale or judicial foreclosure under a default under such first Mortgage or the termination of an Owner's interest in the Unit by Lessor shall extinguish the lien of such assessments as to payments which become due prior to such sale or transfer.  No such transfer or termination as discussed above shall relieve the new Owner, be it the former beneficiary under the First Mortgage or other person, from liability for any assessments thereafter becoming due or from the lien thereof.

(g)  **Expiration of Lien:**  Unless sooner satisfied and released or the enforcement thereof initiated as hereafter provided such lien shall expire and be of no further force or effect one year from the date of recordation of the Notice of Delinquent Assessment.  The one year period may be extended by the Association for not to exceed one additional year by recording a written extension thereof.

**Section 5.6.  Exempt Property:**  The following property subject to this Declaration shall be exempted from the assessments, charge and lien created herein:  (a) all properties dedicated to and accepted by a local public authority; (b) all Common Area; and (c) all properties exempted from taxation by the laws of the State of California, upon the terms and to the extent of such legal exemption.

Notwithstanding any provision herein, no land or improvements devoted to residential dwelling use shall be exempt from said assessments, charges or liens.

**Section 5.7.  Uniform Rate of Assessment:**  Except as provided for in Section 5.5 relating to a special assessment levied against an individual Owner as described therein, both regular and special assessments shall be levied against each Owner according to the ratio of the number of Units owned by the Owner assessed to the total number of Units subject to assessment, and shall be collected on a monthly basis.

**Section 5.8.  No Offsets:**  No offsets for any reason shall be allowed against the full payment of any assessment levied pursuant to this Declaration, including, without limitation, a claim that the Association is not properly exercising its duties of maintenance or enforcement.

-13-

BK 13616 PG 1000

## ARTICLE VI
## ARCHITECTURAL CONTROL

**Section 6.1.  Architectural Approval:**  Except for purposes of proper maintenance and repair, no person or entity shall install, erect, attach, build, place, construct or remove any lighting, shades, screens, signs, awnings, patio covers, decorations, fences, walls, aerials, antennas, landscaping or make any changes or otherwise alter (including the painting thereof) the exterior (or structurally alter the interior) of any Unit or the Common Area until plans and specifications (hereinafter the "Plans" as required in Section 6.2 shall have been reviewed and approved in writing by an Architectural Committee (hereinafter the "Architectural Committee") and Lessor. For purposes of this section the term "exterior" shall mean any outside wall, outside surface, outside door, roof, outside door, balcony, patio, garage, or other outside structure of said Unit.

**Section 6.2.  Requirements for Approval:**  Said Plans shall be prepared by a duly licensed architect or other person approved by the Architectural Committee and shall include, where appropriate, the following:  (a) color, shape, dimensions and materials to be used;  (b) building plans;  (c) exterior elevations, surfaces and sections, structural design and salient exterior details;  (d) general exterior color schemes;  and (e) landscaping plans showing plants, hedges, and fences.  All such Plans shall be submitted in writing over the signature of the Owner or his authorized agent.  Approval shall be based, among other things, on adequacy of site dimensions; adequacy of structural design and materials; conformity and harmony of external design with neighboring structures; effect of location and use of improvements and landscaping on neighboring property; improvements landscaping, operations and uses; preservation of view and aesthetic beauty; with respect to fences, walls and landscaping, assurance of adequate access to the Association in connection with the performance of its duties and the exercise of its power hereunder; conformity with such rules and regulations as may be adopted by the Architectural Committee in accordance with this Article; and conformity of the Plans to the purpose and general plan and intent of this Declaration.

**Section 6.3.  Term and Composition of Architectural Committee:**  The Architectural Committee shall be composed of three (3) members.  Prior to the first anniversary date of the issuance of the original Public Report for the Project, Declarant may appoint the three (3) original members of the Architectural Committee and their replacements, if necessary.  Declarant's appointees to the Architectural Committee need not be Members of the Association.  Declarant shall retain the right to appoint a majority of the members of the Architectural Committee until the earlier occurrence of either of the following events:

14.

BK 13618 PG 1001



(a) When ninety percent (90%) or more of the Units have been sold; or

(b) On the fifth anniversary date of the original issuance of the Public Report for the Project.

After one year from the date of issuance of the original Public Report for the Project, the Board shall have the right to appoint one Member to the Architectural Committee, who shall be a member of the Association.

From and after the occurrence of any of the events referenced in (a) and (b) hereinabove, whichever occurs first, the Board shall have the power to appoint all members of the Architectural Committee who shall all be Members of the Association.

**Section 6.4.  Failure to Approve or Disapprove the Plans:** In the event the Lessor or the Architectural Committee, or its representatives designated in accordance with Section 6.9, fail to either approve or disapprove such Plans within thirty (30) days after the same have been submitted to them, it shall be conclusively presumed that the Lessor and the Architectural Committee have approved such Plans.  All improvement work approved by the Lessor and Architectural Committee shall be diligently completed and constructed in accordance with the approved Plans.

**Section 6.5.  No Liability:**  Neither Declarant, Lessor, Lessee, Association, Architectural Committee, or the members or designated representatives thereof shall be liable in damages to anyone submitting Plans to them for approval, or to any Owner of property affected by this Declaration by reason of mistake in judgment, negligence, or nonfeasance arising out of or in connection with the approval or disapproval or failure to approve or disapprove any such Plans, or for any defect in any structure constructed from such Plans.  Such Plans are not approved for engineering design.  Every Owner and his authorized agent, if any, who submits Plans to the Architectural Committee for approval agrees, by reason of such submission, that no action or suit of any kind will be commenced against Declarant, Lessor, Lessee, Association, Architectural Committee, or any of the members or designated representatives thereof to recover any damages.

**Section 6.6.  Notice of Noncompliance or Noncompletion:** Notwithstanding anything to the contrary contained herein, after the expiration of the later of one year from the date of issuance of a building permit by a municipal or other governmental authority for any improvements or one year from the date of commencement of construction of any improvements within the Project, said improvements shall, in favor of purchasers and encumbrancers in good faith and for value, be deemed to be in

15.

BK 1361 PG 1602

Compliance with all provisions of this Article, unless actual notice of such noncompliance or noncompletion, executed by the Architectural Committee or its designated representatives, shall appear of record in the office of the County Recorder or unless legal proceedings shall have been instituted to enforce compliance or completion.

**Section 6.7. Rules and Regulations:** The Architectural Committee may from time to time, in its sole discretion, adopt, amend and repeal reasonable rules and regulations interpreting and implementing the provisions hereof and establishing reasonable architectural standards over the Project.

**Section 6.8. Variances:** Where circumstances such as topography, location of property lines, location of trees, configuration of the improvements on the Property, or other matters require, the Architectural Committee, by the vote or written assent of a majority of its members, may allow reasonable variances as to any of the covenants, conditions or restrictions contained in this Declaration under the jurisdiction of the Architectural Committee, on such terms and conditions as it shall require; provided, however, that all such variances shall be in keeping with the general plan for the improvement and development of the Project.

**Section 6.9. Appointment and Designation:** The Architectural Committee may from time to time, by the vote or written assent of a majority of its members, delegate any of its rights or responsibilities hereunder to one or more duly licensed architects or other qualified persons who shall have full authority to act on behalf of said Architectural Committee in all matters so delegated.

**Section 6.10. Review Fee and Address:** Any Plans required by Section 6.2 shall be submitted in writing for review and approval together with a reasonable processing fee. The address of the Architectural Committee shall be the principal place of business of the Association, or such other place as the Architectural Committee may from time to time designate in writing to the Board. Such address shall be the place for the submittal of any plans and specifications and the place where the current rules and regulations, if any, of the Architectural Committee shall be kept.

**Section 6.11. Inspection:** Any member or agent of the Architectural Committee may from time to time at any reasonable hour or hours and upon reasonable notice enter and inspect any property subject to the jurisdiction of said Architectural Committee as to its improvements or maintenance in compliance with the provisions hereof.

16.

BK 13603PG 1003

## ARTICLE VII
### EASEMENTS

**Section 1.** **Rights of Association.** There is hereby reserved to the Association such easements as are necessary to perform the duties of the Association.

**Section 1.2.** **Rights of Declarant.** The Declarant, for itself and its successors and assigns, reserves the following rights and easements:

(a) Easement over the Common Area for the installation and maintenance of electric, telephone, cable television, water, gas, and sanitary sewer lines and drainage facilities.

(b) The right to use on a non-interference basis the Association clubhouse, if there be one constructed upon the Common Area, as a sales facility. Such use by Declarant or its sales agents or representatives shall not unreasonably interfere with the Members in their use and enjoyment of the Common Area or recreational facilities thereon. This reservation by Declarant shall terminate on the happening of either of the following events, whichever occurs earlier:

(1) On the expiration of a three (3) year period from the date of issuance by the Department of Real Estate of the State of California of a Final Subdivision Public Report with respect to the Property; or

(2) On the sale of all of the Units in the Project.

(c) Easements over the Common Area for construction, display, maintenance, sales, and exhibit purposes in connection with the construction, development and sale or lease of the Project until the sale by Declarant of all Condominiums within the Project, provided, however, that the exercise of such easements by Declarant shall not unreasonably interfere with the reasonable use and enjoyment of the Units or the Common Area by the Owners. Until the sale of all of the Units in the Project, Declarant may use any of the Units owned by it within the Project as model home sites and any of the Common Area as incidental parking. Declarant reserves the right to alter its construction, development and design plans as it deems appropriate.

(d) The right of Declarant (and its agents, employees and representatives) to enter on the Common Area to construct improvements on the Property and to

-17-

make repairs and remedy construction defects if such
entry shall not interfere with the use of any occupied
Unit unless authorized by the Owner thereof; provided,
however, that the Declarant shall be responsible for the
timely repair of any damage caused to the Common Area or
any Unit by the Declarant (and its agents, employees and
representatives) in exercising this right.

(e)  So long as Declarant owns any Units in the
Project, this Declaration cannot be amended or modified
to change or eliminate the easements reserved herein to
Declarant without the prior written approval of
Declarant, and any attempt to do so shall be null and
void and shall have no effect whatsoever.

Section 7.3.  Rights of Owners:  The rights and duties of
the Owners of Units within the Property with respect to sanitary
sewer and water, electricity, gas and telephone and cable
television lines and drainage facilities shall be governed by the
following:

(a)  Wherever sanitary sewer house connections
and/or water house connections or electricity, gas or
telephone and cable television lines or drainage
facilities are installed within the Property, which
connection lines or facilities or any portion thereof,
lie in or upon the Common Area or lie in or upon Units
owned by others, then the Owner of a Unit served by said
connections, lines or facilities, shall have the right,
and is hereby granted an easement to the full extent
necessary therefor, to enter upon these Units or to have
utility companies enter upon these Units within the
properties in or upon which said connections, lines or
facilities, or any portion thereof, lie to repair,
replace, and generally maintain said connections as and
when the same may be necessary as set forth below.

(b)  Wherever sanitary sewer house connections
and/or water house connections or electricity, gas or
telephone or cable television lines or drainage
facilities are installed within the Property, which
connections serve more than one Unit, the Owner of each
Unit served by said connections shall be entitled to the
full use and enjoyment of such portions of said
connections as service his Unit.

Section 7.4.  Encroachments on Common Area:  Eaves,
window boxes, fireplace units, porches and air conditioner units
or similar improvements which may be erected or installed on the
Property by Declarant, may encroach onto the Common Area,
provided, however, that any such encroachment shall not exceed a
maximum of four (4) feet.

18.

BK 13618 PG 1005

**Section 7.5.  Restricted Common Areas:**  There is hereby reserved and established for certain Owners, various exclusive easements over the Common Area, which shall be deemed "Restricted Common Areas".  These may include any or all of the following:

    (a)  Entry areas or courts into the Units, which rights shall be shared with the Unit Owners whose Units abut such areas.

    (b)  Attic space, which shall be for the exclusive use of the Owners of the Unit to which such space adjoins.

Such Restricted Common Areas are designated on the Condominium Plan and are referenced in a manner necessary to delineate to which Owner of a Unit the particular right exists. The Owner to which the rights to a Restricted Common Area run shall be obligated to keep and maintain such areas in a safe and clean condition; provided, however, that general maintenance and repair shall primarily remain the obligation of the Association.

**Section 7.6.  Other Encroachments:**  Each Unit and Common Area improvements within the Project is hereby declared to have an easement over all adjoining Units and Common Area for the purpose of accommodating an encroachment due to engineering errors, errors in original construction, settlement or shifting of the building, or any other cause.  There shall be valid easements for the maintenance of said encroachments so long as they shall exist, and the rights and obligations of Owners shall not be altered in any way to said encroachment, settlement or shifting; provided, however, that in no event shall a valid easement for encroachment be created in favor of an Owner or Owners if said encroachment occurred due to the willful misconduct of said Owner or Owners.  In the event a structure is partially or totally destroyed, and then repaired or rebuilt, the Owners of each Unit agree that minor encroachments over adjoining Units shall be permitted and that there shall be valid easements for the maintenance of said encroachments so long as they shall exist.

ARTICLE VIII
MANAGEMENT

**Section 8.1.  Powers of the Association:**  All powers relating to management, operation and maintenance of the Common Area, as well as certain rights, duties and powers relating to the Property, as set forth herein and in the Bylaws, shall be vested in the Association.

**Section 8.2.  Purposes of the Association:**  The specific and primary purposes of and powers of the Association are to manage and maintain the Common Area, Monterey Lane, and all

-19-

BK 136 PG 1005

facilities, improvements, and landscaping thereon, to maintain certain individual improvements on the Units, and to provide recreational activities for the Members, foster and support community activities of the Members, and perform the functions set forth in this Declaration of Covenants, Conditions and Restrictions, and the Association's Articles of Incorporation, and Bylaws.

**Section 8.3.    Contracting Authority:**  The Association shall have the right and power to employ or engage a manager and other employees or agents and contract for such services, labor and materials as it may deem reasonably necessary to operate and maintain the Common Area and the improvements thereon and to discharge its other duties as herein provided.

**Section 8.4.    Duties:**  The Association shall have the powers to and be responsible for:

(a)   The enforcement of this Declaration, the Bylaws of the Association and other agreements of the Association.

(b)   Subject to Section 8.6, below, maintaining the Common Area and facilities and improvements thereon (including furnishings and equipment related thereto) in a good, clean, attractive and sanitary order and repair.

(c)   Providing water, sewer, refuse collection, electrical, telephone, gas and other necessary utilities service for the Common Area, and maintenance, gardening and landscaping for the Common Area.

(d)   Granting easements where necessary for utilities and sewer facilities over the the Common Area to serve the Common Area and the Units.

(e)   The payment of taxes and assessments which are or could become a lien on the Common Area or some portion thereof.

(f)   Establishing and maintaining a working capital and contingency fund in an amount to be determined by the Board of Directors of the Association.

(g)   Providing exterior maintenance of each Unit, which is subject to assessment hereunder, only as follows:

(1)   Paint, maintain, and repair and replace (if required because of normal wear, tear or deterioration) roofs, gutters, downspouts and exterior Building surfaces, and maintain the

20.

BK 13618 PG 1007

landscaping (including the trees, shrubs, grass and walks) within the Common Area.

(2)  Such exterior maintenance shall not include: glass surfaces; landscaping within the private balcony areas of each Unit; balcony covers or other additions built or maintained within private balcony areas by an Owner; repairs or replacements arising out of or caused by the willful or negligent act of the Owner, his family, guests, or invitees, or caused by any of the perils covered by a standard form fire insurance policy, with extended coverage endorsement thereon, or caused by flood, earthquake or other Acts of God. Such excluded items shall be the responsibility of each Owner; provided, however, that if an Owner shall fail to maintain or make the repairs or replacements which are the responsibility of such Owner, as provided above, then, upon vote of a majority of the Board of Directors, and after not less than thirty (30) days' notice to the Owner, the Association shall have the right (but not the obligation) to enter the Unit and provide such maintenance or make such repairs or replacements, and the cost thereof shall be added to the assessments chargeable to such Unit and shall be payable to the Association by the Owner of the Unit.

(3)  For the purposes solely of performing the exterior maintenance authorized by this Section, the Association's agents or employees shall have the right, after reasonable notice to the Owner, to enter upon any Unit at reasonable hours.

(b)  Obtaining and maintaining in force the following policies of insurance:

(1)  Comprehensive public liability insurance insuring the Association, any manager, the Lessee and Declarant and the Owners and occupants of Units and their respective family members, guests, invitees, and the agents and employees of each, against any liability incident to the ownership or use of the Common Area and including, if obtainable, a cross-liability or severability of interest endorsement insuring each insured against liability to each other insured.  Such insurance shall include coverage against water damage liability, liability for nonowned and hired automobiles, liability for property of others and any other liability or risk customarily covered with respect to projects similar in construction, location, and use.

21.

BK 13618 PG 1008

(2)  Master or blanket policy of fire insurance
for the full insurable value of all of the
improvements within the Project.  The form, content,
and term of the policy and its endorsements and the
issuing company must be satisfactory to all
institutional Mortgagees.  If more than one
institutional Mortgagee has a loan of record against
the Project, or any part of it, the policy and
endorsements shall meet the maximum standards of the
various institutional Mortgagees represented in the
Project.  The policy shall contain an agreed amount
endorsement or its equivalent, an increased cost of
construction endorsement or a contingent liability
from operation of building laws endorsement or their
equivalent, an extended coverage endorsement,
vandalism, malicious mischief coverage, a special
form endorsement and a determinable cash adjustment
clause or a similar clause to permit cash settlement
covering full value of the improvements in cash of
partial destruction and a decision not to rebuild.
The policy shall be in the amounts as shall be
determined by the Board.  The policy shall name as
insured the Association, the Owners, Declarant, and
Lessee, as long as Declarant or Lessee is the owner
of any Unit and all institutional Mortgagees as
their respective interests may appear, and may
contain a loss payable endorsement in favor of the
trustee described in this declaration.

(3)  Except as provided in this Section, no
Owner can separately insure his Unit or any part of
it against loss by fire or other casualty covered by
any insurance carrier under subparagraph (2).  If
any Owner violates this provision, any diminution in
insurance proceeds otherwise payable that results
from the existence of such other insurance, will be
chargeable to the Owner who acquired other
insurance, and the Owner will be liable to the
Association to the extent of any such diminution.
An Owner can insure his personal property against
loss.  In addition, any improvements made by an
Owner to the real property within his Unit may be
separately insured by the Owner, but the insurance
is to be limited to the type and nature of coverage
commonly known as tenant's improvements.  All such
insurance that is individually carried must contain
a waiver of subrogation rights by the carrier as to
other Owners, the Association, Declarant, Lessor,
and Lessee.

(4)  All insurance proceeds payable hereunder
and subject to the rights of the Mortgagees, below,
may be paid to a trustee, to be held and expended

22.

BK 13618PG 1009

for the benefit of the Owners, Mortgagees and
others, as their respective interests shall appear.
Said trustee shall be a commercial bank that agrees
in writing to accept such trust.  If repair or
reconstruction is authorized, the Board shall have
the duty to contract for such work as provided for
in this Declaration.

(5)  The Board may and, if required by any
Mortgagee, shall purchase and maintain demolition
insurance in adequate amounts to cover demolition in
case of total or partial destruction and a decision
not to rebuild, and a blanket policy of flood
insurance.  The Board also shall purchase and
maintain worker's compensation insurance, to the
extent that it is required by law, for all employees
of the Project.  The Board also shall purchase and
maintain fidelity bonds or insurance (which shall be
in an amount not less than 150% of each year's
estimated annual operating expenses and reserves and
shall contain an endorsement of coverage of any
person who may serve without compensation)
sufficient to meet the requirements of any
Mortgagee.  The Board shall purchase and maintain
such insurance on personal property owned by the
Association, and any other insurance that it deems
necessary or that is required by any Mortgagee.

(6)  An Owner may carry whatever personal
liability and property damage liability insurance
with respect to his Unit that he desires.  However,
any such policy shall include a waiver of
subrogation clause acceptable to the Board and to
any Mortgagee.

(7)  The Board is appointed attorney-in-fact by
each Owner to negotiate and agree on the value and
extent of any loss under any policy carried
hereunder.  The Board is granted full right and
authority to compromise and settle any claim or
enforce any claim by legal action or otherwise and
to execute releases in favor of any insurer.

(8)  Any Mortgagee has the option to apply
insurance proceeds payable on account of a Unit in
reduction of the obligation secured by the mortgage
of such Mortgagee.

(9)  Notwithstanding the foregoing provisions
of this Article, the Association shall continuously
maintain in effect such casualty, flood and
liability insurance and a fidelity bond meeting the
insurance and fidelity bond requirements for

- 23 -

N 13618 0010

condominium projects established by Federal National
Mortgage Association, Government National Mortgage
Association, Federal Home Loan Mortgage Corporation,
Federal Housing Administration, or Veterans'
Administration, so long as any one is a Mortgagee,
Owner, or insures or guarantees a mortgage within
the Property, except to the extent such coverage is
not available or has been waived in writing by the
foregoing entities.

(i)  Make lease payments, if any, required to be
paid on the Common Area.

(j)  Maintenance of Monterey Lane, and any guard-
gates thereon, pursuant to that certain Agreement
attached hereto as Exhibit "A".

Section 8.5.  Right of Entry:  The Association or its
agents may enter any Unit when necessary in connection with any
maintenance, landscaping or construction for which the
Association is responsible.  Upon consent of the Owner, which
consent shall not be unreasonably withheld, the Association or
its agents may enter a Unit to perform maintenance, repairs or
construction for which the Association is responsible.  Such
entry shall be made with as little inconvenience to the Owner as
reasonably possible, and any damage caused thereby shall be
repaired by the Association.

Section 8.6.  Duties of Owners:  In addition to all other
obligations set forth herein, the Owners shall be responsible for
the following:

(a)  In the event the Board shall determine that the
walls, ceilings, floors, doors or any other portion of
the Common Area forming the boundaries of a Unit have
been damaged from within the Unit, notwithstanding that
such damage may be to the Common Area, the Owner of the
Unit shall be responsible for repairing such damage in a
timely manner and in accordance with such rules as the
Board or Architectural Committee shall from time to time
adopt.  In the event such repair is not so accomplished
by the Owner, the Association or its delegates shall have
the right at reasonable times to enter the Unit to effect
such repair, and the cost thereof shall be charged to
said Owner and, if not paid in a timely manner, shall be
a special assessment.

(b)  The repair of any wall or fence separating
neighboring Units shall be the joint responsibility of
the Owners whose Units are separated by such wall or
fence, notwithstanding that such wall or fence may
consist in part of Common Area.  Such adjoining Owners
shall share the expense of such repair equally, but if

24

BK 13618PG 1011

one such Owner refuses to join in such repair, the other may undertake such repair himself and shall receive contribution from his neighbor for his neighbor's share of the cost thereof. In the event that such repair is required because of the acts or negligence of one of such adjoining Owners, such repair shall be accomplished by such Owner at his sole expense.

(c) Each Owner shall be responsible for the care, maintenance and replacement of his electric garage door opener, notwithstanding the fact that such may have been installed by the Declarant.

**Section 8.7. Association to Defend Certain Actions:** In the event that a lawsuit is brought against all or substantially all of the Members within the Project which will or could result in any lien or encumbrance being levied against an entire Project, the following terms shall apply:

(a) The Association shall defend such lawsuit and the costs of such defense shall be a special assessment against all of the Members within the Project joined as defendants in such lawsuit; provided, however, in the event that an insurance carrier is obligated to provide such defense under a policy of insurance carried by the Association, the Association shall be relieved of the obligation to provide such defense. Nothing contained herein shall in any way limit the rights of any Member or Members to retain counsel of their choice to represent them in such lawsuit at their own expense. In the event that a Member so chooses, he shall not be relieved of liability for the special assessment provided for in this Section.

(b) In the event that a lien or encumbrance not covered by California Civil Code Section 1257 attaches to all or substantially all of the Project by reason of a judgment or otherwise, the Association shall promptly take the appropriate steps to remove such lien, including, but not limited to, the payment of money and the posting of a bond. The Association shall have the power to borrow money and to take such other steps as are necessary to free a Project of such liens.

(c) Simultaneously with any action taken pursuant to the above sections, the Association shall levy a special assessment against each of the Members whose Condominiums were subject to the lien or encumbrance which caused the Association to act pursuant to said Section equal to each such Member's pro rata share of such lien or encumbrance. In the event that such special assessment is not paid within thirty (30) days of its due date, the Board may effect the remedies of Section 1356

25.

of the California Civil Code and any other remedies
contained herein.

## ARTICLE IX
## GENERAL RESTRICTIONS

**Section 9.1.  Partition:**  The Common Area shall remain
undivided; and no Owner shall bring any action for partition,
excepting as otherwise herein provided, it being agreed that this
restriction is necessary in order to preserve the rights of the
Owners with respect to the operation and management of the
Project.

**Section 9.2.  Interior of Unit:**  Each Owner shall have
the right to paint, repaint, tile, wax, paper or otherwise
refinish and decorate the inner surfaces of the walls, ceiling
floors, windows and doors bounding his own Unit.

**Section 9.3.  Nuisance:**  Neither the Property, nor any
portion thereof, shall be used for any purpose tending to injure
the reputation thereof, or to disturb the neighborhood or
occupants of adjoining property, or to constitute a nuisance, or
in violation of any public law, ordinance, or regulation in any
way applicable thereto.

**Section 9.4.  Use of Common Area:**  The Common Area shall
be used for park, recreational, social and other purposes
directly related to the uses authorized under this Declaration.

**Section 9.5.  Projections:**  No projections of any type
shall be placed or permitted to remain above the roof of any
residential building with the exception of one or more chimneys
and one or more vent stacks.  No outside air conditioning units,
evaporating coolers, television or radio pole or antenna shall be
constructed, erected or maintained on any building or on any Unit
or Common Area or connected in such manner as to be visible from
the outside of any such building, except as may be constructed by
Declarant.

**Section 9.6.  Recreational Vehicles:**  No mobile home,
recreational vehicle, motor home, camper, minihome, boat, truck
of size in excess of 3/4 ton, or trailer of any kind shall be
kept, stored, parked, maintained, constructed or repaired on any
part of the Project other than in specific designated parking
areas as approved by the Board of Directors.

**Section 9.7.  Lavatory Facilities:**  No privy shall be
erected, maintained or used upon any portion of a Unit or Common
Area, but a temporary privy may be permitted during the course of
construction of a building.  Any lavatory, toilet or water closet
which shall be erected, maintained or used upon any portion of a
Unit or Common Area shall be enclosed and located within a

26.

BK 13518PG 1833

building permitted under this Declaration to be erected on the Unit or Common Area, shall be properly connected with the sewer system and shall be so constructed and operated that no offensive odor shall arise or otherwise escape therefrom.

**Section 9.8.  Signs.**  Except for a sign having a maximum face area of three (3) square feet and advertising the Property for sale or rent, no sign or other advertising device of any character shall be erected, maintained, or displayed upon any part of the Property; provided, however, that Declarant may erect and maintain on the Common Area or on any Unit owned by it such signs and other advertising devices or structures, as it may deem necessary or proper in connection with the conduct of its operations for the development, improvement, subdivision and sale of said property; provided further that residential signs having a maximum face area of seventy-two (72) square inches giving the name of the occupant and/or the address of a Unit may be displayed on such Unit.  The Association or its agents may summarily remove and destroy all signs not conforming to this Section.

**Section 9.9.  Animals:**  No animals, fowl, reptiles or poultry shall be kept on the Property, except that domestic dogs, cats, birds and fish may be kept as household pets upon said property provided that they are not kept, bred or raised thereon for commercial purposes or in unreasonable quantities. Notwithstanding the foregoing, no animals or fowl may be kept on the Property which result in any annoyance or are obnoxious to residents in the vicinity.

**Section 9.10.  Offensive Activities:**  No noxious or offensive trades or activity shall be carried on upon any portion of the Property, nor shall anything be done or maintained thereon which may be or become an annoyance or nuisance to the neighborhood, or which shall in any way interfere with the quiet enjoyment of each of the Owners of his respective dwelling unit, or which shall in any way increase the rate of insurance.

**Section 9.11.  Right of Inspection:**  During reasonable hours and after reasonable notice, any agent of the Association shall have the right to enter upon and inspect the Property or any portion thereof and the improvements thereon for the purpose of ascertaining whether or not the provisions of this Declaration are being complied with and shall not be deemed guilty of trespass by reason thereof.  Provided, however, that there shall be no entry into any dwelling unit without the express consent of the Owner.

**Section 9.12.  Leases:**  With the exception of a lender in possession of a Unit following a default in a first Mortgage, a foreclosure proceeding or any deed or other arrangement in lieu of foreclosure, no Unit Owner shall be permitted to lease his Unit for transient or hotel purposes.  No Unit Owner may lease

27.

BK 13618 PG 1014

less than the entire Unit.  Any lease between an Owner and lessee
shall provide that the terms of the lease are subject in all
respects to the provisions of this Declaration, the Articles of
Incorporation and Bylaws of the Association, and that any failure
by the lessee to comply with the terms of such documents shall be
a default under the lease.  All leases shall be in writing.

    **Section 9.13.  Misconduct:**  Each Owner shall be liable to
the Association for any damage to the Common Area or to any of
the equipment or improvements thereon which may be sustained by
reason of the negligence or willful misconduct of said Owner or
of his family, relatives, guests or invitees, both minor and
adult but only to the extent such Owner would be legally
responsible under the laws of the State of California.

    **Section 9.14.  Structural Changes:**  Nothing shall be done
in any Unit, or in, on or to the Common Areas, which will impair
the structural integrity of any building or which would
structurally change any building without the prior written
consent of the Board and Lessor.

    **Section 9.15.  Utilities:**  Each Owner of a Unit shall be
obligated to pay any and all assessments for water, sewage, gas,
electricity, or other utilities, taxes and other charges assessed
individually against such Unit.

    **Section 9.16.  Receptacles:**  No Owner shall deposit any
garbage, refuse or rubbish in or on the Common Area unless such
matter is deposited in appropriate containers suitably placed as
designated by the Board so as not to detract from the physical
appearance of the Common Area or the Project.  Trash bins may be
placed upon the Common Area by each Owner only in accordance with
such rules and regulations as may be promulgated by the Board and
may remain upon the Common Areas only on trash pickup days.

    **Section 9.17.  Television; Radio:**  No alteration to or
modification of the radio and/or television antenna system, as
developed by the Declarant, shall be permitted and no Owner may
be permitted to construct and/or use and operate his own external
radio and/or television antenna.


                        ARTICLE X
                    MORTGAGE PROTECTION

    **Section 10.1.  Seventy-Five Percent Vote of Mortgagees:**
Except as provided by statute, in case of condemnation or
substantial loss to the Units and/or Common Area, without the
prior written approval of at least seventy-five percent (75%) of
all first Mortgagees, based on one (1) vote for each Mortgagee,
neither the Association nor the Members shall be entitled to do
any of the following:

                            28.

BK 13618 PG 101

(a) By act or omission, dissolve the Association or abandon or terminate the Project.

(b) By act or omission, abandon, partition, sell, alienate, subdivide, release, transfer, hypothecate, or otherwise encumber the Common Area. This provision is not intended to restrict or otherwise prohibit an Owner from selling or encumbering his own Condominium, nor shall it prohibit the granting of easements for public utilities or other public purposes consistent with the intended use of the Common Area.

(c) Partition or subdivide a Condominium.

(d) Amend a material provision of this Declaration, the Bylaws or the Articles; for purposes of determining what provisions are material in this Declaration and in the Bylaws or the Articles, such provisions in these documents which are required by the rules, regulations or guidelines of programs administered by Federal National Mortgage Association, Government National Mortgage Association, and Federal Home Loan Mortgage Corporation shall be deemed material, but not by way of limitation, with respect to other provisions in these documents.

(e) Effectuate any decision to terminate professional management and assume self management of the Association.

(f) Change the pro rata interest or obligations of any individual Unit for the purpose of: (i) levying assessments or charges or allocating distributions of hazard insurance proceeds or condemnation awards, or (ii) determining the pro rata share of ownership of each Unit in the Common Area.

(g) Use hazard insurance proceeds for losses to any Property (whether to Units or to Common Areas) for other than the repair, replacement, or reconstruction of such Property.

**Section 10.2. Other Rights of First Mortgagees.** Any first Mortgagee shall, upon written request to the Association, be entitled to:

(a) Inspect the books and records of the Association during normal business hours.

(b) Receive the annual audited financial statements of the Association ninety (90) days following the end of the Association's fiscal year.

29.

BK 13618 PG 1018

(c)  Receive written notice on all annual and special meetings of the members or of the Board; and first Mortgagees shall further be entitled to designate a representative to attend all such meetings in order to, among other things, draw attention to violations of this Declaration which have not been corrected or made the subject of remedial action by the Association; provided, however, nothing contained in this Section shall give a first Mortgagee the right to call a meeting of the Board or of the Members for any purpose or to vote at any such meeting.

**Section 10.3.  Mortgagees Furnishing Information:**  Mortgagees are hereby authorized to furnish information to the Board concerning the status of any loan encumbering a Unit.

**Section 10.4.  Notice to First Mortgagees of Owner Default:**  Any first Mortgagee shall be entitled to written notification from the Association of any default in the performance of the obligations imposed by this Declaration by the Owner whose Unit is encumbered by such Mortgagee's mortgage, which default has not been cured within sixty (60) days of a request therefor by the Association; provided, however, the Association shall only be obligated to provide such notice to first Mortgagees who have previously requested such notice in writing.

**Section 10.5.  Right of First Refusal:**  The right of an Owner to sell, transfer or otherwise convey his Unit shall not be the subject of any right of first refusal or any similar restriction in favor of the Association.  In the event this Declaration is amended to provide for any right of first refusal in the Association, a Mortgagee who comes into possession of a Unit pursuant to a judicial foreclosure or a trustee's sale shall be exempt therefrom.

**Section 10.6.  Conflicts:**  In the event of any conflict between any of the provisions of this Article and any of the other provisions of this Declaration, the provisions of this Article shall control.

**Section 10.7.  Notice of Destruction or Taking:**  In the event that the Common Area or any Unit or any portion thereof is substantially damaged or is made the subject of any condemnation proceeding in eminent domain or is otherwise sought to be acquired by a condemning authority, the Board shall promptly notify any first Mortgagee affected by such destruction, taking or threatened taking.  For purposes herein, the term "substantially damaged" shall mean damages exceeding Ten Thousand Dollars ($10,000.00).  If requested in writing by a first Mortgagee, the Association shall evidence its obligations under this Section in a written agreement in favor of such first Mortgagee.

30

BK 13618 PG 101

**Section 10.5.  Breach of Declaration:**  A breach of any of the covenants, conditions or restrictions of this Declaration shall not defeat or render invalid the lien of any First Mortgage made in good faith and for value on any Unit of the Property or any portion thereof, but said covenants and restrictions shall be binding upon and effective against any Owner of any of said Units whose title is acquired by the foreclosure of any lien or mortgage thereon or sale under any deed of trust given to secure the payment of money.


ARTICLE XI
DESTRUCTION OF IMPROVEMENTS

**Section 11.1.  Destruction; Proceeds Exceed 85% of Reconstruction Costs:**  If there is a total or partial destruction of the improvements in the development, and if the available proceeds of the insurance carried pursuant to Article VIII are sufficient to cover not less than eighty-five percent (85%) of the costs of repair and reconstruction, the improvements shall be promptly rebuilt unless, within ninety (90) days from the date of destruction, Members then holding at least seventy-five percent (75%) of the total voting power of each class of Members present and entitled to vote, in person or by proxy, at a duly constituted meeting, determine that such repair and reconstruction shall not take place.  If repair and reconstruction is to take place, the Board shall be required to execute, acknowledge and record in the office of the County Recorder, not later than one hundred twenty (120) days from the date of such destruction, a certificate declaring the intention of the Members to rebuild.

**Section 11.2.  Destruction; Proceeds Less Than 85% of Reconstruction Costs:**  If the proceeds of insurance are less than eighty-five percent (85%) of the costs of repair and reconstruction, repair and reconstruction may nevertheless take place if, within ninety (90) days from the date of destruction, Members then holding at least fifty-one percent (51%) of the total voting power of each class of Members present and entitled to vote, in person or by proxy, at a duly constituted meeting, determine that such repair and reconstruction shall take place. If repair and reconstruction is to take place, the Board shall be required to execute, acknowledge and record in the office of the Orange County Recorder, not later than one hundred twenty (120) days from the date of such destruction, a certificate declaring the intention of the Members to rebuild.

**Section 11.3.  Rebuilding Procedures:**  If the Members determine to rebuild pursuant to Sections 11.1 or 11.2, above, the Owner of each Unit located within a structure that has been totally or partially destroyed shall be obligated to contribute his proportionate share of the cost of reconstruction or restoration of the structure containing his Unit, over and above

31.

BK 136 [PG 10]

the available insurance proceeds, which proportionate share shall
be based upon the ratio of the square footage of the floor area
of the Unit to be assessed to the total square footage of the
floor area of all Units to be assessed. All Owners shall
contribute their proportionate share of the cost of
reconstruction or restoration of any portion of the Common Area
not comprising the structure within which a Unit is located, and
the proportionate share of each Owner shall be equal to a
fraction the numerator of which is one (1) and the denominator of
which is the total number of Units then comprising the Project.
If any Owner fails or refuses to pay his proportionate share, the
Board may levy a special assessment against the condominium of
such Owner which may be enforced under the lien provisions
contained in Article V or in any other manner provided in this
Declaration. If any Owner disputes the amount of his
proportionate liability under this Section, such Owner may
contest the amount of his liability by submitting to the Board
within ten (10) days after notice to the Owner of his share of
the liability written objections supported by cost estimates or
other information that the Owner deems to be material and may
request a hearing before the Board at which he may be represented
by counsel. Following such hearing, the Board shall give written
notice of its decision to all Owners, including any
recommendation that adjustments be made with respect to the
liability of any Owners. If such adjustments are recommended,
the notice shall schedule a special meeting of Members for the
purpose of acting on the Board's recommendation, including making
further adjustments, if deemed by the Members to be necessary or
appropriate. All adjustments shall be affirmed or modified by a
majority of the total voting power of each class of Members. If
no adjustments are recommended by the Board, the decision of the
Board shall be final and binding on all Owners, including any
Owner filing objections.

    Section 11.4. Rebuilding Contract: If the Members
determine to rebuild, the Board or its authorized representative
shall obtain bids from at least two reputable contractors and
shall award the repair and reconstruction work to the lowest
bidder. The Board shall have the authority to enter into a
written contract with the contractor for such repair and
reconstruction, and the insurance proceeds held by the trustee
shall be disbursed to the contractor according to the terms of
the agreement. It shall be the obligation of the Board to take
all steps necessary to assure the commencement and completion of
authorized repair and reconstruction at the earliest possible
date.

    Section 11.5. Rebuilding Not Authorized: If the Members
determine not to rebuild, then any insurance proceeds then
available for such rebuilding shall be distributed to the Owner
of each Unit or its Mortgagee in the same ratio as the fair
market value of his Unit bears to the fair market value of all of
the Units immediately prior to the destruction, in accordance

32.

BK 13618PG 1048

with normal appraisal techniques.  The Board shall have the duty, within one hundred and twenty (120) days from the date of such destruction, to execute, acknowledge and record in the office of the County Recorder, a certificate declaring the intention of the Members not to rebuild.

Section 11.6.  Minor Repair and Reconstruction:  In any case, the Board shall have the duty to repair and reconstruct improvements, without the consent of Members and irrespective of the amount of available insurance proceeds, in all cases of partial destruction when the estimated cost of repair and reconstruction does not exceed Twenty Thousand Dollars ($20,000). The Board is expressly empowered to levy a special assessment for the cost of repairing and reconstructing improvements to the extent insurance proceeds are unavailable, such assessment to be levied as described in Section 11.3 (but without the consent or approval of Members despite any contrary provisions) in this Declaration.

ARTICLE XII
CONDEMNATION

Section 12.1.  Sale by Unanimous Consent:  If an action for condemnation of all or a portion of the Project is proposed or threatened by any governmental agency having the right of eminent domain, then, on unanimous written consent of all of the Owners and after written notice to at least seventy-five percent (75%) of all first Mortgagees, the Project, or a portion of it may be sold.

Section 12.2.  Distribution of Proceeds of Sale:  On a sale occurring under Section 12.1 above, the proceeds shall be distributed to the Owner and the Mortgagees of each Unit as their respective interests may appear in the same ratio as that set forth in Section 11.5, above.

Section 12.3.  Distribution of Condemnation Award:  If the Project, or a portion of it, is not sold but is instead taken, the judgment of condemnation shall by its terms apportion the award among the Owners and their respective Mortgagees, and in the same ratio as that set forth in Section 11.5, above.

Section 12.4.  Revival of Right to Partition:  On sale or on taking that renders more than fifty percent (50%) of the Units in the Project uninhabitable, the right of any Owner to partition through legal action shall revive immediately.

33.

# ARTICLE XIII
## PARTITION

**Section 13.1.** **Suspension:** Except as specifically set forth to the contrary in this Declaration, the right of partition is suspended pursuant to the California Civil Code as to the Project. Nothing in this Declaration, however, shall prevent partition or division of interest between joint or common Owners of one (1) Unit, provided that the written approval of a first Mortgagee of such Unit is first obtained.

**Section 13.2.** **Proceeds:** Proceeds of property resulting from a partition shall be distributed to and among the respective Owners and their Mortgagees in the same ratio as that set forth in Section 12.2 above.

**Section 13.3.** **Power of Attorney:** Pursuant to the California Civil Code, each Owner grants the Association an irrevocable power of attorney to sell the Project for the benefit of the Owners when partition can be had. Exercise of the power is subject to the approval of Members.

# ARTICLE XIV
## GENERAL PROVISIONS

**Section 14.1.** **Term:** The covenants and restrictions of this Declaration shall run with and bind the Property, Association and any Owner, their legal representatives, heirs, successors and assigns, for a term of twenty (20) years from the date this Declaration is recorded, after which time they shall be automatically extended for successive periods of ten (10) years.

**Section 14.2.** **Notices:** Any notice to be given to an Owner or a Mortgagee under the provisions of this Declaration shall be in writing and may be delivered as follows:

(a) Notice to an Owner shall be deemed to have been properly delivered when delivered personally prepaid to the most current address furnished by such Owner in writing to the Association for the purpose of giving notice, or if no such address shall have been furnished, then to the street address of such Owner's Condominium in the Project. Any notice so deposited in the mail within the County, shall be deemed delivered forty-eight (48) hours after such deposit. In the case of co-Owners, any such notice may be delivered or sent to any one of the co-Owners on behalf of all co-Owners and shall be deemed delivered to all such co-Owners.

(b) Notice to a Mortgagee shall be deemed to have been properly delivered when placed in the first class United States mail, postage prepaid, to the address

34.

furnished to the Association by such Mortgagee for
purposes of notice or, if no such address is furnished,
to any office of the Mortgagee in the county, or, if no
such office is located in the county, to any office of
such Mortgagee.

Section 14.3. Enforcement: The Association, Lessor,
Lessee, any Owner, or their successor in interest, shall have the
right to enforce, by any proceeding at law or in equity, all
restrictions, conditions, covenants, reservations, liens and
charges now or hereafter imposed by the provisions of this
Declaration or any amendment thereto, including the right to
prevent the violation of any such restrictions, conditions,
covenants or reservations and the right to recover damages or
other dues for such violation; provided, however, that with
respect to assessment liens, the Association shall have the
exclusive right to the enforcement thereof. Failure by the
Association or by any Owner to enforce any covenant or
restriction herein contained shall in no event be deemed a waiver
of the right to do so thereafter.

Section 14.4. Severability: Invalidation of any one of
these covenants, conditions or restrictions by judgment or court
order shall in no way affect any other provisions, which shall
remain in full force and effect.

Section 14.5. Construction: The provisions of this
Declaration shall be liberally construed to effectuate its
purpose of creating a uniform plan for the development of a
residential community or tract and for the maintenance of common
recreational facilities and Common Area. Section headings are
inserted for convenience only and are not intended to be a part
of this document or in any way to define, limit or describe the
scope or intent of the particular section to which they refer.

Section 14.6. Singular Includes Plural: Whenever the
context of this Declaration requires it, the singular shall
include the plural and the masculine shall include the feminine.

Section 14.7. Attorneys' Fees: In the event action is
instituted against an Owner to enforce any of the provisions
contained in this Declaration, the party prevailing in such
action shall be entitled to recover from the other party thereto
as part of the judgment reasonable attorneys' fees and costs of
such action, which attorneys' fees and costs shall also be added
to such Owner's assessments.

Section 14.8. Nuisance: The result of every act or
omission whereby any of the covenants contained in this
Declaration or if the Bylaws are violated in whole or in part is
hereby declared to be and constitutes both a public and private
nuisance, and every remedy allowed by law or equity against every
such result and may be exercised by any Owner, by the Association,

35.

BK 13618 PG 1022

or its successors in interest, or by the County of Orange or
other affected governmental entity.  Such remedy shall be deemed
cumulative and not exclusive.

Section 14.2.  Amendment:  Unless otherwise provided for
herein, this Declaration of Covenants, Conditions and
Restrictions may be amended only by the affirmative assent or
vote of not less than seventy-five percent (75%) of the voting
power of the Members and Lessor, excluding the Declarant;
provided, however, that although Declarant has not obtained the
Veterans' Administration ("VA") or Federal Housing Administration
("FHA") approval in connection with the development of this
Project, such approval may be sought by Declarant.  In the event
that the VA or FHA approval is so sought for the purpose of
having FHA and/or VA insure or guarantee any mortgage or
providing any form of assistance within the purview of such
agencies with respect to this Project, the rules and regulations
of FHA and/or VA, as the same exist at the date of recording of
this Declaration, may require this Declaration to be amended in
certain respects and additionally will require that FHA and/or VA
participate in certain decisions affecting the Project and
management of the Association.  Therefore, effective as of the
date this Project receives FHA and/or VA approval, this
Declaration is thereby amended as follows without the necessity
of any vote or written assent of the Owners or Mortgagees:

(a)  The following actions will require the prior
approval of the FHA and/or VA:

(1)  Alteration of any Unit, construction of
additional improvements, the establishment of
additional licenses, reservations and rights-of-way,
or alteration of construction plans and designs by
Declarant.

(2)  Merger or consolidation or dissolution of
the Association.

(3)  Any amendment or modification of this
Declaration, the Articles or By-Laws.

(b)  The Association shall submit to FHA and/or VA,
sixty (60) days prior to the beginning of each fiscal
year of the Association, for their review and approval,
as the case may be, a budget of the expenses for the
ensuing fiscal year, on the FHA and/or VA model form of
budget, indicating the amount of assessments contemplated
for the next fiscal year period.

In the event the FHA, VA, or both, approve the Project as
provided herein, if requested to do so by FHA and/or VA, the
Board shall be automatically authorized and shall be obligated to
execute a Regulatory Agreement on FHA Form No. 2276 (revised

36.

BK 13618 PG 1079

August, 1969 or such later version thereof, then in use or the
analogous thereof or both as modified to reflect any
permissible pertaining to the Property as shall be deemed
appropriate by FHA and/or VA.

Section 11.10.  Annexation.  Additional residential
property and Common Area may be annexed to the Property with the
consent of two-thirds (2/3) of the voting power of the Members,
excluding Declarant.

IN WITNESS WHEREOF, the undersigned being the Declarant
herein, has hereunder set its hand this ___21st___ day of
___May___, 1980.

THE ROBERT P. WARMINGTON CO.,
a California corporation

By _____
Its

By _Olive N Gray_____
Its

The foregoing is hereby approved and agreed to this 21st
day of ___May___, 1980.

_____
Robert P. Warmington, an individual

HOUSER BROS CO., a California
limited partnership

By _Clifford G Houser__
General Partner

By _____
General Partner

37.



BK 13618 PG 1021

## CONSENT OF LIENHOLDER

### AND SUBORDINATION OF LIEN

The undersigned beneficiary under that certain Deed of Trust dated _____ have recorded as Instrument No. 12200 _____ in Book 1316 , pages 161 through 1012 , inclusive, of Official Records of Orange County, California, consents to all of the provisions contained in the attached Declaration of Covenants, Conditions and Restrictions and agrees that the lien of the deed of trust shall be junior and subordinate and subject to said Declaration.

Dated: May 12, 1980

Lienholder

By CROCKER NATIONAL BANK

By _____

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On MAY 12 , 1980, before me, the undersigned, a Notary public in and for said State, personally appeared _____ known to me to be the President, and _____ known to me to be the _____ Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

_____
Notary Public in and for said
County and State

38.

BK 13618 PG 1025

REIMBURSEMENT AGREEMENT

This Reimbursement Agreement is entered into this _____ day of _____, 1988, by and between Houser Bros. Co., a California Limited Partnership ("Houser") and Huntington Beach Gables Homeowners Association, a California non-profit corporation ("Association").

R E C I T A L S

A.  Houser has leased to Robert P. Warmington, an individual, certain real property in the City of Huntington Beach, more particularly described as Tract 10542, as per map recorded in Book 456, pages 49 and 50 of Miscellaneous Maps, Orange County which has been developed as a condominium project (the "Warmington Property").

B.  Houser is presently the owner of certain real property located adjacent and contiguous to the Warmington Property which property is presently developed as a mobile home park known as Rancho del Rey Mobile Estates (the "Houser Property").

C.  Located on the Houser Property, and adjacent to the Warmington Property, is a certain roadway known as Monterey Lane (the "Roadway").  The Warmington Property and the owners and residents thereof have an easement for ingress and egress over the Roadway.  Houser and the Association agree that it would enhance the values of the Warmington Property and the Houser Property if guardgates (the "Guardgates") are con-

**EXHIBIT A**

1

BK 13618 PG 1027

(b)  Utilities and insurance related to the Guard-
gate.  Houser agrees to obtain and maintain in force during
the term hereof, a policy or policies of comprehensive public
liability insurance of not less than One Million Dollars
($1,000,000.00), insuring Houser, the Association and all
owners of the Warmington Property.

      (c)  Maintenance and repair of Guardgate.

      (d)  Maintenance and repair of the Roadway.

      (e)  Street lighting for the Roadway.

Houser agrees to obtain bids for said Costs and to submit
same to the Association for its review and approval.  In
addition, Houser shall make available, for inspection by the
Association during all normal business hours, the books and
records of Houser related to the maintenance of the Roadway
and Guardgates.

III. REIMBURSEMENT FOR COSTS

During the term hereof, the parties hereto agree that the
Association shall pay over to Houser, upon receipt of invoice
therefor, the Association's share of the Costs actually
incurred, which shall be an amount equal to 80/159 of said
Costs, but not to exceed Four Hundred Dollars ($400) per month
during the calendar year 1980, and thereafter not to exceed
Four Hundred Dollars ($400.00) per month plus an annual
percentage increase based on the percentage increase, if any,
for each ensuing calendar year period, in the Consumer Price
Index, all items, Los Angeles-Long Beach area Standard
Metropolitan Statistical area, as published by the United
States Department of Labor, Bureau of Labor Statistics.

3

BK 13618 PG 1028

**IV.  TERM**

This Agreement shall commence as of the execution hereof, and shall terminate on October 17, 2059.

**V.  INDEMNIFICATION**

The parties hereto acknowledge and agree that the Association's sole responsibility herein is the payment of its share of the costs as set forth above, and that Houser shall bear all responsibilities, obligations and liabilities related to the maintenance of the Roadway and Guardgates. In furtherance thereof, Houser agrees to indemnify, defend and hold the Association harmless from any and all claims or damages arising out of the maintenance and use of said Roadway and Guardgates.

**VI.  MISCELLANEOUS**

The parties further agree as follows:

(a)  In the event any action is instituted to enforce any provision contained herein, the prevailing party shall be entitled to attorney's fees and costs so incurred.

(b)  This Agreement shall bind and inure to the benefit of the successors and assigns of the parties hereto.

(c)  This Agreement may only be amended by written agreement between the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

HOUSER BROS. CO., a California          HUNTINGTON BEACH GABLES
Limited Partnership                     HOMEOWNERS ASSOCIATION, a
                                        California Non-Profit Corporation

By _____              By _____
                                                          President

By _____              By _____
                                                          Secretary

BK 13618PG 1026

structed and maintained on the Roadway, and if the Roadway is maintained in a safe and clean manner.

D.   In order to enable the construction of the Guardgates, and to insure the continued maintenance of the Roadway and Guardgates by Houser, and the payment by the Association of its share of the costs incurred thereby, the parties hereto have entered into this Agreement.

## T E R M S

For valuable and complete consideration, the parties hereto hereby agree as follows:

I.   CONSTRUCTION OF GUARDGATES

Houser hereby agrees to construct or cause to be constructed, two Guardgates on the Roadway, in accordance with plans and specifications approved and agreed upon by Houser and the Association.  Except as specifically set forth below, all costs incurred in the construction of the Guardgates shall be borne solely by Houser.

II.  MAINTENANCE OF ROADWAY AND GUARDGATE

Houser hereby agrees to keep, maintain, repair and replace, when necessary, the Roadway and Guardgates in a safe, decent and proper condition, and subject to rights of reimbursement below, to pay the costs related thereto, which shall include, but shall not necessarily be limited to the following (the "Costs"):

(a)  Compensation, plus any necessary withholding taxes, social security and related payments, for one guard to operate the Guardgate daily.

2



STATE OF CALIFORNIA
COUNTY OF  Orange

BK 13618 PG 1029

On  May 27, 1980  before me, the undersigned, a Notary Public in and for
said State, personally appeared  Robert P. Warmington

known to me to be the person  whose name  is
subscribed to the within instrument, and acknowledged to me
that  he  executed the same

WITNESS my hand and official seal.

Signature  Pearl L. Hunt

Pearl L. Hunt
Name (Typed or Printed)

(This area for official notarial seal)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

(Partnership)

STATE OF CALIFORNIA
COUNTY OF  ORANGE  } ss.
On  May 21, 1980
before me, the undersigned, a Notary Public in and for said State, personally appeared  Clifford C.
Houser and Vernon F. Houser

known to me
to be  GENERAL  partners of the partnership
that executed the within instrument, and acknowledged to me
that such partnership executed the same.

WITNESS my hand and official seal.

Signature  Irene B. Burnett

OFFICIAL SEAL
...
ORANGE COUNTY
My Commission Expires July 1, 1980

STATE OF CALIFORNIA
COUNTY OF  Orange  } ss.
On  May 27, 1980,  before me, the undersigned, a Notary Public in and for
said State, personally appeared  Robert P. Warmington
known to me to be the  President, and  Oliver N. Crary
known to me to be the  Vice Pres.  Secretary of the corporation that executed the within instrument,
and known to me to be the persons who executed the within
instrument on behalf of the corporation therein named, and ac-
knowledged to me that such corporation executed the within
instrument pursuant to its by-laws or a resolution of its board of
directors.

WITNESS my hand and official seal.

Signature  Pearl L. Hunt

Pearl L. Hunt
Name (Typed or Printed)

(This area for official notarial seal)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

BK 13818 PG 1030

STATE OF CALIFORNIA )
                    ) SS.
COUNTY OF ORANGE    )

On _____ May 18 _____ 19 8_, before me, the undersigned, a Notary
Public in and for said State, personally appeared _____ XAVIER S. CHAR _____
and _____, known to me to be the _____ VICE
PRESIDENT _____ and _____, respectively, of CROCKER NA-
TIONAL BANK, the national banking association that executed the within instrument,
and also known to me to be the person(s) that executed the within instrument on
behalf of CROCKER NATIONAL BANK, the national banking association therein named,
and acknowledged to me that such national banking association executed the same
pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

_____
PALMIRA OESTERREICH



OFFICIAL SEAL
PALMIRA OESTERREICH
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Nov. 17, 1982

**EXHIBIT F**

5002

WHEN RECORDED RETURN TO:

$6.00
C1

MESERVE, MUMPER & HUGHES
5190 Campus Drive
Newport Beach, CA  92660

Attn: Frank D. Stiefel

BK 13620PG 1091

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

-3 00 P.M.    AUG 5 '80

LEE A. BRANCH, County Recorder

**FIRST AMENDMENT TO**
**DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS**
**FOR THE HUNTINGTON BEACH GABLES**

**Tract 10542**
**City of Huntington Beach**
**Orange County, California**

This First Amendment to Declaration of Covenants, Conditions and Restrictions is made this 3d day of JULY , 1980, by THE ROBERT P. WARMINGTON CO., a California corporation ("RPW Co."), HOUSER BROS. CO., a California limited partnership ("Houser") and ROBERT P. WARMINGTON, an individual ("Warmington").

WHEREAS, Houser is the owner of the fee interest in the following described property (the "Property"):

Lots 1 and 2 of Tract No. 10542 as per map recorded in Book 456, Pages 49 and 50, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California; and

WHEREAS, Warmington is the lessee of the Property; and

WHEREAS, RPW Co. is the sublessee and the developer of the improvements constructed on the Property, and is also the Declarant as that term is defined in that certain Declaration of Covenants, Conditions and Restrictions recorded May 28, 1980, in Book 13618, pages 982 through 1030, inclusive, Official Records of Orange County, California (the "Declaration"); and

WHEREAS, Warmington and RPW Co. intend to assign, convey and set over to ultimate consumers, various leasehold and fee interests in the Condominium Units, as defined in the Declaration, which collectively shall constitute the Condominium to be acquired by said consumer; and

WHEREAS, Warmington, Houser and RPW Co. desire to clarify the Declaration to insure that the interests so conveyed are inseparable and constitute the entire interest to be conveyed, which clarification requires an amendment to the Declaration.

1

BK 13890PG 1092

**NOW THEREFORE**, Warmington, Houser and RPW Co., do hereby declare as follows:

1.  That collectively they are the sole owners of the Property as their interests may appear.

2.  That they retain the exclusive and sole right to amend the Declaration.

3.  That, in furtherance of the foregoing, the following amendments are hereby made to the Declaration:

    (a)  Section 1.13 of the Declaration is hereby amended to read as follows:

"**Section 1.13.  Owner/Ownership:**  "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or a lessee or sublessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation.  Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means.  All references herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest."

    (b)  Section 2.2 of the Declaration is hereby amended to read as follows:

"**Section 2.2.  Elements of Condominium:**  Each Condominium shall be comprised of the following elements:

    (a)  A leasehold or sub-leasehold estate in a Unit as shown and defined on the Condominium Plan, excepting that portion of a Unit consisting of buildings and other improvements;

    (b)  An undivided one-eightieth (1/80) interest in a leasehold or subleasehold interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion of the Common Area consisting of building and other improvements;

    (c)  An exclusive easement on the leasehold or sub-leasehold estate referred to in item (b) above, which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit, excepting that portion consisting of buildings and other improvements;

2

BK 13690PG 1093

(d)  A non-exclusive easement and right to use the
leasehold or sub-leasehold estate referred to in
item (b) above except the Restricted Common Area,
excepting that portion consisting of buildings and
other improvements;

(e)  A fee interest in that portion of a Unit, as
shown and defined on the Condominium Plan, which
consists of buildings and other improvements;

(f)  An undivided one eightieth (1/80) fee interest
in and to those portions of the Common Area, as
shown and defined on the Condominium Plan which
consist of buildings and other improvements;

(g)  An exclusive easement on the fee estate
referred to in item (f) above which easement is
defined as Restricted Common Area as described on
the Condominium Plan for entry, staircases and attic
space relating to each Unit which consist of
buildings and other improvements;

(h)  A non-exclusive easement and right to use the
fee estate referred to in item (f) above except the
Restricted Common Area, which consist of buildings
and improvements; and

(i)  A membership in the Association."

4.  All other terms and conditions of the Declaration
shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this
First Amendment as of the day first above written, its
effective date.

THE ROBERT P. WARMINGTON CO.,
a California corporation

By _____

HOUSER BROS., CO., a California
Limited Partnership
By _____
By _____

_____
Robert P. Warmington

3

BK 13690PG 1094

TD 1949 CA (6-74)
(Corporation)

STATE OF CALIFORNIA
COUNTY OF _Orange_ } ss.

On _July 31, 198_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Roger D. Darnell_ Known to me to be the _Vice_ President, and-

known-to-me-to-be- Secretary of the corporation that executed the within instrument, known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

---

TD 7944 CA (6-74)
(Partnership)

STATE OF CALIFORNIA
COUNTY OF _ORANGE_ } ss.

On _AUGUST 4, 1980_ before me, the undersigned, a Notary Public in and for said State, personally appeared _CLIFFORD C. HOUSER AND VERNON F. HOUSER_

_____ known to me to be _BOTH_ of the partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

Signature _G. McDonald_

OFFICIAL SEAL
G. McDONALD
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 15, 1984

(This area for official notarial seal)

---

TD 7944 CA (6-74)
(Individual)

STATE OF CALIFORNIA
COUNTY OF _Orange_ } ss.

On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Robert P. Warrington_

_____, known to me to be the person_ whose name _is_ subscribed to the within instrument and acknowledged that _he_ executed the same.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

RECORDED



*Huntington Beach*

**Homeowners Association**

# Rules and Regulations

# Huntington Beach Gables Homeowners Association
# Rules and Regulations

## Table of Contents

Statement of General Policy         1

Pool, Jacuzzi and Barbecue Rules and Regulations    2-3

Architectural Approval Process    3-4

Architectural Rules and Standards    4-6

Gounds Rules    6-7

General Rules    7-8

Pet Rules    8-9

Parking Rules    9

Security Gate Rules    10

Procedures for Rule Enforcement    11

# STATEMENT OF GENERAL POLICY

The members of your Board of Directors are pleased to welcome you to Huntington Beach Gables. It is our responsibility to maintain the common areas and the recreational facilities in the community. If, at any time, you have any questions, suggestions or problems, please contact the management company for assistance.

The Covenants, Conditions and Restrictions (CC&R's) of the Association give the Board of Directors the power and authority to establish reasonable rules and regulations governing the use of the common areas and the personal conduct of all members, their families and their guests, and to establish and enforce penalties for the infraction of such rules.

The rules and regulations published herein were adopted by the Board on August 26, 2003 and supercede all previously adopted rules and regulations. Effectiveness becomes immediate upon receipt. It is your responsibility to see that all members of your family and your guests are aware of and abide by the Association rules, which are binding on the community.

The overall philosophy is to establish regulations, which will permit the maintenance of an enjoyable life-style and an aesthetically appealing grounds and architectural décor.

Your cooperation in complying with these rules and regulations will enable all of us to achieve maximum pride, enjoyment and harmony in our community.


The Board of Directors
Huntington Beach Gables
Homeowners Association

1

The members of the Association are responsible for the enforcement of the following rules. Compliance is the obligation of each resident. Your full cooperation can avoid the need for costly repairs and additional expenses that would have to be shared by all members. All owners are responsible for the actions of their tenants, guests and tradespersons.

## POOL, JACUZZI AND BARBECUE RULES AND REGULATIONS

1.  Pool and jacuzzi hours shall be:

    Sunday – Thursday      8:00 a.m. to 10:00 p.m.
    Friday – Saturday      8:00 a.m. to 11:00 p.m.

2.  One (1) pool area key per unit was initially issued by the Association. Reproduction of this key is prohibited. A replacement key is obtainable from the management company for a fee.

3.  By State Law, gates to the pool facility must be kept closed and locked at all times in order to ensure the safety of small children and to deter strangers from using the facility.

4.  Climbing or swinging on the pool fence or gate is not allowed.

5.  In the interest of curtailing expenses and for the conservation of energy, the pool will be heated on a schedule as determined by the Board of Directors.

6.  Children under the age of sixteen (16) year are not permitted in the pool area unless supervised by an adult resident.

7.  By State Law, children under the age of fourteen (14) years are not permitted to use the pool or jacuzzi unless accompanied by an adult.

8.  Infants and toddlers wearing diapers are required to wear tight-fitting rubber pants while in the pool or pool area.

9.  Guests must be accompanied by a member or resident when using the pool, jacuzzi or barbecue facilities. Each unit is allowed six (6) guests at any one time. Exceptions to the limit must be cleared through the Pool Committee Chairperson. Association members are responsible for the conduct of their guests and must see that they abide by the rules of the Association.

10. All members, residents and their families and guests swim at their own risk. It is advised that no one swim alone.

11. Suntan oil, lotion and sand from the volleyball court are damaging to filter equipment. Shower before entering the pool or jacuzzi.

2

12.    By State Law, pets are not permitted within the fence surrounding the pool area.

13.    Food must be kept away from the pool and jacuzzi at all times.

14.    Absolutely no glass objects or bottles are permitted in the pool area.

15.    No bicycles, skateboards, frisbees or balls are permitted in the pool area.

16.    Running in the pool area is prohibited.

17.    Unduly loud noises (including radios) are not permitted.

18.    Trash and cigarette butts are to be placed in the receptacles provided for their disposition.

19.    Patio furniture may not be removed from the pool area.

20.    No admittance to the pool pump room is permitted.  Anyone witnessed damaging pool equipment will be assessed for the cost of repair or replacement of the equipment.

21.    It is required that the barbecue grills be cleaned after each use with the brushes provided.

22.    The gas must be turned off and the lids lowered after use of the barbecue grills.

23.    The pool and spa areas are for personal recreation use only.


It is expected that everyone will use common sense regarding water safety and area cleanliness.


## ARCHITECTURAL APPROVAL PROCESS


1.    Any external modifications, additions or improvements to your home may not be undertaken without prior written request and submission of plans by the homeowner to the Architectural Committee and its subsequent written approval. This ruling includes courtyard and "A" unit deck landscaping, wooden decks, concrete slabs, courtyard covers, fences, screen doors, garage doors and the like.

2.    All plans for interior alterations, modifications or improvements, which would structurally alter the residence, must be submitted in writing to the Architectural Committee for approval before work is started on the project.

3.    Plans for approval must be submitted in duplicate to the Architectural Committee and shall include the following: (a) color, shape, dimensions and material to be used; (b) building plans; (c) exterior elevations, surfaces and

3

sections, structural design and salient exterior details; (d) general exterior color schemes; and (e) landscaping plans showing plants, hedges, trees, fences, etc.

4.    All plans must be accompanied by an attached letter of request, including the homeowner's name, address, telephone number, business address and telephone number, unit and tract number and general description of the planned improvements, as well as the name, address and telephone number of the architect or designer, if any.

5.    A City of Huntington Beach building permit is required for any structural modification.

6.    All exterior additions, alterations and improvements must be painted or stained to match the trim or stucco of the residence.

7.    Maintenance of any exterior additions, alterations or improvements shall be the responsibility of the homeowner and not the Association.

By consulting the Architectural Committee prior to making any improvements or additions to your unit, you will avoid undue embarrassment, expense and probable removal of those changes made without approval.

Each homeowner and his/her authorized agent, if any, who submits requests or plans to the Architectural Committee for approval, agrees by reason of such submittal that no action or suit of any kind will be taken against the homeowners association, Architectural Committee, any member or their designated representative, to recover any damages.

Plans will be reviewed upon within thirty (30) days after submittal and work must be completed by the homeowner in a timely manner.

## ARCHITECTURAL RULES AND STANDARDS

1.    The display of one (1) "For Sale" or "For Lease" sign, not exceeding a maximum face area of three square feet (3') and not placed more than three feet (3') above the ground, is permitted. The use of flags, banners, "Open House" signs and any other advertising device is permitted only during an Open House.

2.    Application for the purchase of a front screen door, in either black or bronze, must be made in writing to the Architectural Committee before purchase. The cost, delivery and installation of the screen door shall be borne by the applicant with future repairs and upkeep at his/her expense, and shall be maintained in good condition at all times.

3.    Awnings, sunshades and exterior shutters (other than existing shutters) are not permitted.

4

4. The color of the front entrance doors and courtyard gates may not be changed unless <u>each</u> homeowner of the same style building (English, Rural English, French or Colonial) agrees in writing to the change and assumes the cost of repainting and future upkeep and repair of same. In this event, the color selection must complement the existing color scheme and be acceptable to the Architectural Committee.

5. Unlandscaped courtyards must be kept free of weeds.

6. Trees within a courtyard shall not be permitted to grow so high as to block a neighbor's view. The spread of trees, plants, bushes, vines or shrubs shall be contained within the courtyard area and shall not encroach on the common areas.

7. Bushes, plants, hanging baskets, potted evergreens, etc. which are part of the front entrance, courtyard or "A" unit deck landscaping must be maintained in acceptable appearance.

8. Objects such as pots, urns, planters, potted plants, garden equipment, etc. may not be displayed on top of the courtyard fence or "A" unit deck railing.

9. All "A" unit deck landscaping must be maintained in acceptable appearance.

10. No floor covering may be fastened to the "A" unit deck. No floor covering is allowed on the steps leading up to the deck's surface.

11. Heavy containers, patio furniture, barbecues, tubs or planter boxes shall not be anchored to the surface of the "A" unit deck with nails or by any other method that will penetrate the deck's surface.

12. The homeowner will be responsible for any leaks in his/her or neighboring garages caused by the application of any floor covering or by the weight of heavy objects on the "A" unit deck area. The homeowner shall be solely liable for the repair and cost of the damage done.

13. The use of aluminum foil, paper, paint or other unconventional means of covering windows is prohibited.

14. Any visible seasonal decorations shall be removed within two (2) weeks following the holiday.

15. Laundry that is visible from the common area may not be hung on the exterior of any unit.

16. As designated by the Association, satellite dishes are allowed (as mandated by law). The only approved manner of installation shall be strapped to the chimney (architectural application is required).

17. Garage doors, fences and buildings shall not be used for playing handball, tennis, racquet ball, etc. Attached basketball hoops are not permitted.

5

18.  Umbrella sets shall complement the existing color scheme, be maintained in good condition and meet the approval of the Architectural Committee.

19.  Play equipment, patio furniture and other visible items within individual courtyards or "A" unit decks must be maintained in acceptable appearance.

20.  The addition of roof gutters and downspouts must be approved by the Architectural Committee prior to installation.

21.  Installation of air conditioner systems must be approved by the Architectural Committee prior to installation. Window-mounted air conditioner units are not permitted.

22.  Water softeners must be installed in a way which drains into the main sewer line. Drainage into a courtyard drain is not permitted. If any damage results from improper installation, the homeowner shall be liable for such damage.

23.  Saucers must be placed underneath all plants on decks in order to protect the deck surfaces.

Additional standards shall be established by the Architectural Committee, in its sole discretion, as the need arises.

## GROUNDS RULES

1.  Trash cans may not be stored in common areas or as to be visible from the common areas.

2.  The scheduled weekly trash collection day is FRIDAY. If a holiday occurs during any of the five (5) working days in a week, collection is made on SATURDAY. Trash shall be placed for pick-up no earlier than 6:00 p.m. the night preceding collection day. Containers must be tightly secured and removed from the collection area on the same day they are emptied. No rubbish, trash or garbage shall be allowed to accumulate.

3.  No homeowner may make any alteration or improvement to the common area in relation to the landscaping or remove any plant, bush, tree, etc. without written consent from the Board of Directors.

4.  Littering of any kind is strictly prohibited.

5.  Tampering with or adjusting sprinkler heads or timing devices in the common area other than by authorized personnel is strictly prohibited.

6.  For safety reasons, hoses must be stored away when not in use.

6

7.    No unlicensed vehicle shall be operated on the common areas.

8.    No motorcycle or motor driven vehicle shall be operated on any sidewalk or lawn area within the property.

9.    The volleyball court will be closed to any recreational activity after sundown.

10.    Children are prohibited from playing with or hanging on the volleyball court net.

11.    Any type of recreational activity, play equipment or toy that appears to be of a dangerous nature to a resident or damaging to the landscaping will not be permitted in the common areas.

12.    Tricycles and other wheeled toys must be kept off of the landscaped and greenbelt areas. Please instruct children on this rule.

13.    Toys may not be left unattended on the common area at any time.

14.    Climbing upon trees, gates, fences and roofs is strictly prohibited.

15.    The homeowner is responsible for the cost of replacing any trees, shrubs, plants, irrigation parts, etc. accidentally damaged or willfully destroyed by him/herself, his/her family, relatives, tenants or guests.


## GENERAL RULES


1.    The speed limit is ten (10) miles per hour on all streets within the Association property. The speed limit is twenty (20) miles per hour on Monterey Lane.

2.    Absentee owners are requested to register the name, address, phone number, length of tenancy and kind and number of pets owner by their tenants or lessees with the management company per the CC&R's.

3.    Consideration for the rights of other residents with respect to unduly loud and disturbing noises, whether caused by adults, children or animals, must be observed. This includes noisy play by children, loud radios, stereos and television sets, objectionable adult parties and incessantly barking or howling pets.

4.    Garage doors shall be kept closed except for ingress or egress of moving vehicles or while work is being accomplished therein.

5.    No articles of any kind are permitted to be hung over the courtyard fence, deck railing or swimming pool fence.

7

6.    Residential property may not be used for any business, commercial or any other non-residential purpose.

7.    No person shall discharge a firearm, slingshot or beebee gun on the premises.

8.    No garage/yard/estate sales are permitted within Huntington Beach Gables at any time.

State Laws and County and City Ordinances provide various restrictions on the use of Association areas and facilities.

## PET RULES

1.    No animals, fowl or reptiles shall be kept on the property, except that domestic dogs, cats, bird and fish may be kept as household pets upon said property provided that they are not kept, bred or raised thereon for commercial purposes or in unreasonable quantities.  Notwithstanding the foregoing, no animals or fowl may be kept on the property which result in any annoyance or are objectionable to residents in the vicinity.

2.    Animals must be on a leash and attended by a responsible person at all times while in the common area and on Monterey Lane.

3.    Pet owners must remove their pet's defecation from the common area and dispose of it in a sanitary manner at the time of defecation.

4.    Pet owners must keep their courtyards clean and sanitary so as not to create offensive odors.

5.    Pet owners will be held responsible for all damage caused by their pets in the common area.

6.    Pets are not permitted in the pool area at any time.

7.    Any person bringing or keeping a pet on the Association property shall be liable to all homeowners, their family members, guests, lessees and renters for any damage or harm done by the pet.

8.    Stray animals, inhumane treatment of animals or a neighbor's barking dog should be reported to the Orange County Animal Control at (714) 935-6848.

 All pets are subject to City, State and County Ordinances.  By observing these Ordinances and Rules of the association, owners will make their pets welcome in the community.

8

The Association is empowered to have removed from the premises any animal which, in the sole discretion of the Board of Directors, constitutes a nuisance to any other resident for any reason.

## PARKING RULES

1.  Owners and their guests shall park their vehicles in garages or in designated parking areas only. As all streets are considered fire lanes, parking that obstructs streets and impedes traffic is prohibited.

2.  Owners of vehicles which leak oil/oily substances on driveways or common area parking spaces will be required to: (a) remove the vehicle(s); and (b) reimburse the Association for restoration of the affected areas.

3.  Parking of recreational vehicles, boats and trucks in driveways or common areas is permitted for a maximum of 72 hours. In no case may any such vehicle be stored in this complex, except within private garage space.

4.  Abandoned or inoperable vehicles may not be parked on Huntington Beach Gables streets, driveways or parking areas.

5.  Vehicle repair in the common area (including driveways and in front of garages) is prohibited.

6.  Vehicles parked in guest and common parking areas must be contained within those designated spaces. No vehicles may obstruct access to walkways, driveways or mailboxes.

7.  Vehicles may not obstruct access to garages and garage driveways, except with the permission of the garage owner.

The Board of Directors has authority to ticket, fine and tow any vehicles which represent violation of these regulations. If vehicle towing is ordered by the Board, a towing charge will be assessed for which the vehicle owner will be held responsible.

The Board of Directors and the Huntington Beach Gables Homeowners Association are not responsible for damage to towed vehicles.

9

## SECURITY GATE RULES

1.  An authorized decal, obtainable from the security guard, must be placed in the lower left-hand corner of the vehicle's windshield.

2.  Residents must present proper identification upon arrival at the security gate in a non-resident's vehicle or in a rented car.

3.  Frequent visitors are required to show their current Guest Pass to the security guard for gate entry.

4.  The security guard shall be notified by telephone before the arrival of expected guests or tradespersons. The unlisted telephone number is (714) 840-6242; the gate is manned from 6:00 a.m. to 10:00 p.m. daily.

5.  When a resident expects more than four (4) cars with guests to arrive at the security gate at a specified time, a guest list must be provided to the security guard in advance of the expected time of arrival. This applies to any meeting or social gathering.

6.  In the event of prolonged absence from one's property, instructions concerning applicable entry restrictions, if any, shall be presented _in writing_ to the security guard.

7.  When a vehicle is sold or traded, the authorized decal must be removed and turned in to the security guard at which time a new decal will be issued for display on the replacement vehicle, if any.

8.  Before escrow closes on the sale of a unit, the Association requires verification that the former owner's vehicle decal(s) has/have been returned to the security guard.

9.  When a homeowner lists his/her property for sale or for rent, he/she will notify the security guard of the name of the listing agent. The homeowner or the listing agent must make all arrangements to view the property by appointment.

If a security guard is discourteous or fails to act according to common sense standards, it is the responsibility of the resident to report such behavior in writing to the Board of Directors. It is requested that you have no confrontation with the guard.

10

## PROCEDURES FOR RULE ENFORCEMENT

First Notice:        A warning letter will be sent.

Second Notice:       A hearing notice will be sent, at which time the homeowner may be
                     fined in the amount of $100.00.  If a violation requires corrective
                     work, the Association may cause such corrective actions to be
                     accomplished, then paid for by the affected owner.

Third Notice:        A hearing notice will be sent, at which time the homeowner may be
                     fined in the amount of $150.00.

Fourth Notice:       A hearing notice will be sent, at which time the homeowner may be
                     fined in the amount of $200.00.

Each subsequent notice will result in a hearing notice being sent and a potential fine
being assessed which doubles for each occurrence.

*All complaints from homeowners must be submitted in writing to the Board of
Directors or to the management company under the complaint's signature.  The
homeowner must agree to testify at a special Board hearing, if necessary.  The Board
will not initiate the Association's rule enforcement procedures against an alleged
violator based on a verbal complaint.*

11

**EXHIBIT G**

# Epsten Grinnell & Howell
Attorneys at Law

*Respond to:  San Diego office*                    www.epsten.com
800.300.1704

March 2, 2017

**VIA E-MAIL, FIRST CLASS MAIL and CERTIFIED
MAIL**

Sandra L. Bradley, Trustee of the Sandra L. Bradley          Jamie Gallian
Trust Dated October 17, 2001                                 4476 Alderport Drive
18 Meadowbrook Drive                                         Huntington Beach, CA 92649
Coto De Caza, CA 92679

Re:    **Request For Resolution - Civil Code §§ 5975, 5925-5965**
       Requesting Party: The Huntington Beach Gables Homeowners Association
       Patio Cover Roof Dispute/Our File No. 5786.01

Dear Ms. Bradley and Ms. Gallian:

This firm represents The Huntington Beach Gables Homeowners Association
("Association").  In accordance with the provisions of California Civil Code section 5925 *et seq.*,
this letter is being presented to you prior to the initiation of a lawsuit against you by the
Association for a court ordered injunction related to enforcement of the Association's governing
documents.  The Association offers to resolve its dispute with you, without litigation, through
alternative dispute resolution, as governed by Civil Code sections 5975, and 5925 through 5965.

**REQUESTING PARTY**

The Huntington Beach Gables Homeowners Association
% David A Kline, Esq.
Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Suite 100
San Diego, California 92131

**DESCRIPTION OF DISPUTES**

The Association's dispute with you concerns the 2016 installation of a roof on the patio
cover attached outside the property located at 4476 Alderport Drive.

In or about March of 2016, you began installing an open lattice patio cover on the patio
outside your unit.  On April 12, 2016, the Association approved your request to install that patio
cover in accordance with plans you submitted.  Those plans did not include a roof.  On or about
April 14, 2016, the City of Huntington Beach issued a building permit for that patio cover.  That
permit made no mention of any roof on the patio cover.

In or about July of 2016, you installed a corrugated solid corrugated panel roof on that
patio cover without obtaining the Association's approval.  When alerted to the Association's

3145671v1

**San Diego**                    **Coachella Valley**              **Inland Empire**
10200 Willow Creek Rd., Suite 100    74830 Highway 111, Suite 100     43460 Ridge Park Dr., Suite 200
San Diego, California 92131          Indian Wells, California 92210   Temecula, California 92590
858.527.0111 • fax 858.527.1531      760.836.1036 • fax 760.836.1040  800.300.1704 • fax 858.527.1531

Sandra L. Bradley
Jamie Gallian
March 2, 2017
Page 2

demand for the removal of the roof, you obtained a revised building permit on or about August 31, 2016.

Article VI, Section 6.1, of the CC&Rs, prohibits the installation of any shades, screens awnings, or patio covers until plans and specifications have been reviewed and approved in writing by the Association's Architectural Committee.

The Association objects to the solid corrugated panel roof of your patio cover, because, among other things, it lacks conformity with the external design of neighboring structures.

The parties' attempts to resolve this dispute through Internal Dispute Resolution have failed.

Because this matter may require a lawsuit and court ordered injunction to resolve the dispute, you can agree to submit this dispute to Alternative Dispute Resolution, as set forth below.

## REQUEST FOR ALTERNATIVE DISPUTE RESOLUTION

If this matter cannot be resolved amicably, notice is hereby given that the Association intends to enforce the terms of the governing documents through litigation. In accordance with the provisions of Civil Code sections 5975, and 5925 through 5965 (a copy of which we have enclosed), this letter is being written to you prior to the initiation of a lawsuit against you by the Association for injunctive relief related to the enforcement of the governing documents.

If you believe this matter can be resolved through mediation ("ADR"), the Association is willing to submit this dispute to mediation before the following mediator: John Edwards of West Coast Resolution Group, http://www.ncrconline.com/mediation-conflict-resolution/mediator/john-edwards. If there is someone else that you would like the Association to consider to mediate the dispute, please forward the mediator's name and contact information to our office for consideration.

The mediation will be scheduled at a mutually convenient time, date and location. Per Civil Code section 5940, the cost of such mediation will be shared jointly by both you and the Association (50/50 split).

## NOTICE OF REQUIREMENT TO RESPOND WITHIN THIRTY (30) DAYS

Be advised that unless the Association's offer to mediate the dispute is accepted within **thirty (30) days** of your receipt of this offer, it shall be deemed rejected. [Civ. Code § 5935] Acceptance of the offer must be in writing. You may accept or reject the offer on the enclosed form entitled "Response to Request for Resolution." In order to be accepted, your response must be received by the Association within **thirty (30) days** of your receipt of this Request for Resolution. If you agree to accept mediation, you may return the form to our office, and we will contact the mediator to set up a mediation session at a mutually convenient time.

3145671v1

Sandra L. Bradley
Jamie Gallian
March 2, 2017
Page 3

Similarly, Civil Code section 5940 requires that the mediation be completed within ninety (90) days of your acceptance of this offer or the Association may proceed with its litigation against you to obtain your compliance.

Furthermore, if you fail or refuse to submit this dispute to mediation, the Association may proceed to file suit against you immediately after the **thirty (30) day** response period expires. Please note that under Civil Code sections 5975(c) and 5960, you may be held responsible for any costs and attorneys' fees incurred by the Association to enforce the governing documents, including the costs for preparing this letter.

Please also note that Article VI, Section 6.6, of the CC&Rs, requires the Association to commence litigation within one year of the date of issuance of a building permit by the City of Huntington Beach. Because the City initially issued a building permit on April 14, 2016, it could be argued that the one-year period will expire before mediation could be complete. Accordingly, the Association's offer of Alternative Dispute Resolution is contingent upon Ms. Bradley's return to this office of her original notarized signature on the attached Agreement Concerning Real Property.

It is possible that there may be other violations, therefore, please do not consider the foregoing list to be conclusive. Any new violations which incur and/or discovered after the date of this mediation request may be included in any lawsuit filed against you.

We respectfully invite your prompt attention to the above. The Association is prepared to participate in good faith and expects that you will as well.

Sincerely

EPSTEN GRINNELL & HOWELL, APC

David A. Kline, Esq.

DAK
Enclosures:
    Response to Request for Resolution
    Civil Code Sections Civil Code Sections 5975, and 5925-5960
    Agreement Concerning Real Property

3145671v1

## RESPONSE TO REQUEST FOR RESOLUTION

ASSOCIATION:           The Huntington Beach Gables Homeowners Association

HOMEOWNER:          Sandra L. Bradley, Trustee of the Sandra L. Bradley Trust Dated
                              October 17, 2001

RESIDENT:              Jamie Gallian

PROPERTY ADDRESS:    4476 Alderport Drive

DATE OF OFFER:         March 2, 2017

DATE OF RESPONSE:    _____

\* \* \* \* \*

**PLEASE CHECK ONE BOX:**

☐    I/We accept the Association's offer to mediate the dispute before a mediator, to assist in
       the selection of a mediator. and I/we agree to pay one-half of the costs charged by the
       mediator
☐    I/We reject the Association's offer to mediate the dispute.

\* \* \* \* \* \*

Signature: _____    Signature: _____
               Sandra L. Bradley, Trustee                  Jamie Gallian

Address: _____    Address: _____

            _____              _____

Date signed: _____    Date signed: _____

Telephone: _____    Telephone: _____

E-Mail    _____    E-Mail    _____

**Please Sign and Return Form Within Thirty Days of March 2, 2017**

**RETURN THIS FORM TO:**

David A. Kline, Esq.
Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Suite 100
San Diego, California 92131

3145671v1

## California Civil Code

**Civil Code § 5975. <u>Enforcement of Governing Documents</u>.**

(a)  The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both.

(b)  A governing document other than the declaration may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association.

(c)  In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs

**Civil Code § 5925. <u>ADR Definitions</u>**

As used in this article:

(a)  "Alternative dispute resolution" means mediation, arbitration, conciliation, or other nonjudicial procedure that involves a neutral party in the decision making process. The form of alternative dispute resolution chosen pursuant to this article may be binding or nonbinding, with the voluntary consent of the parties.

(b)  "Enforcement action" means a civil action or proceeding, other than a cross-complaint, for any of the following purposes:

(1) Enforcement of this act.

(2) Enforcement of the Nonprofit Mutual Benefit Corporation Law (Part 3 (commencing with Section 7110) of Division 2 of Title 1 of the Corporations Code).

(3) Enforcement of the governing documents.

**Civil Code § 5930. <u>ADR Required Before Filing Certain Actions</u>**

(a)  An association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article.

(b)  This section applies only to an enforcement action that is solely for declaratory, injunctive, or writ relief, or for that relief in conjunction with a claim for monetary damages not in excess of the jurisdictional limits stated in Sections 116.220 and 116.221 of the Code of Civil Procedure.

(c)  This section does not apply to a small claims action.

(d)  Except as otherwise provided by law, this section does not apply to an assessment dispute.

**Civil Code § 5935. <u>Initiating ADR by Request for Resolution</u>**

(a)  Any party to a dispute may initiate the process required by Section 5930 by serving on all other parties to the dispute a Request for Resolution. The Request for Resolution shall include all of the following:

(1) A brief description of the dispute between the parties.

(2) A request for alternative dispute resolution.

(3) A notice that the party receiving the Request for Resolution is required to respond within 30 days of receipt or the request will be deemed rejected.

(4) If the party on whom the request is served is the member, a copy of this article.

(b) Service of the Request for Resolution shall be by personal delivery, first-class mail, express mail, facsimile transmission, or other means reasonably calculated to provide the party on whom the request is served actual notice of the request.

(c) A party on whom a Request for Resolution is served has 30 days following service to accept or reject the request. If a party does not accept the request within that period, the request is deemed rejected by the party.

**Civil Code § 5940. Time for Completing ADR Process and Cost Splitting**

(a)   If the party on whom a Request for Resolution is served accepts the request, the parties shall complete the alternative dispute resolution within 90 days after the party initiating the request receives the acceptance, unless this period is extended by written stipulation signed by both parties.

(b)   Chapter 2 (commencing with Section 1115) of Division 9 of the Evidence Code applies to any form of alternative dispute resolution initiated by a Request for Resolution under this article, other than arbitration.

(c)   The costs of the alternative dispute resolution shall be borne by the parties.

**Civil Code § 5945. Effect of ADR on Statute of Limitation**

If a Request for Resolution is served before the end of the applicable time limitation for commencing an enforcement action, the time limitation is tolled during the following periods:

(a)   The period provided in Section 5935 for response to a Request for Resolution.

(b)   If the Request for Resolution is accepted, the period provided by Section 5940 for completion of alternative dispute resolution, including any extension of time stipulated to by the parties pursuant to Section 5940

**Civil Code § 5950. Filing ADR Certificate when Filing Court Action**

(a)   At the time of commencement of an enforcement action, the party commencing the action shall file with the initial pleading a certificate stating that one or more of the following conditions are satisfied:

(1) Alternative dispute resolution has been completed in compliance with this article.

(2) One of the other parties to the dispute did not accept the terms offered for alternative dispute resolution.

(3) Preliminary or temporary injunctive relief is necessary.

(b)   Failure to file a certificate pursuant to subdivision (a) is grounds for a demurrer or a motion to strike unless the court finds that dismissal of the action for failure to comply with this article would result in substantial prejudice to one of the parties.

**Civil Code § 5955. Referral to ADR and Stay of Court Action by Stipulation**

(a)   After an enforcement action is commenced, on written stipulation of the parties, the matter may be referred to alternative dispute resolution. The referred action is stayed. During the stay, the action is not subject to the rules implementing subdivision (c) of Section 68603 of the Government Code.

(b)   The costs of the alternative dispute resolution shall be borne by the parties.

**Civil Code § 5960. Refusal to Participate in ADR; Effect on Award of Fees and Costs**

In an enforcement action in which attorney's fees and costs may be awarded, the court, in determining the amount of the award, may consider whether a party's refusal to participate in alternative dispute resolution before commencement of the action was reasonable.

**Civil Code § 5965. Annual Disclosure of ADR Procedures to Members**

(a)   An association shall annually provide its members a summary of the provisions of this article that specifically references this article. The summary shall include the following language:

"Failure of a member of the association to comply with the alternative dispute resolution requirements of Section 5930 of the Civil Code may result in the loss of the member's right to sue the association or another member of the association regarding enforcement of the governing documents or the applicable law."

(b) The summary shall be included in the annual policy statement prepared pursuant to Section 5310.

Recording Requested By:

The Huntington Beach Gables
Homeowners Association

**When Recorded Return to:**

David A. Kline, Esq
Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Suite 100
San Diego, CA 92131

A.P.N. 937-630-53

### COVENANT AND AGREEMENT CONCERNING REAL PROPERTY

This Agreement Concerning Real Property ("Agreement") is made by and between the THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a California nonprofit mutual benefit corporation ("ASSOCIATION"), and SANDRA L. BRADLEY, Trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 ("OWNER"), with reference to the facts set forth below.

### RECITALS

a)  OWNER is the owner of a leasehold interest in the property located at 4476 Alderport Drive, Huntington Beach, California, which is more particularly described in the attached Exhibit "A" ("Subject Property").

b) ASSOCIATION is a California nonprofit mutual benefit corporation responsible for managing the condominium community known as Huntington Beach Gables, as set forth in the Declaration of Covenants, Conditions and Restrictions for the Huntington Beach Gables, recorded on May 25, 1980, as Doc. No. 28926 in the Official Records of Orange County, as amended or may be amended from time to time (collectively, the "CC&Rs").

c)  A dispute exists between OWNER and ASSOCIATION concerning the installation and maintenance of a solid corrugated panel roof on the lattice patio cover located on the exterior of the Subject Property ("Dispute").

### AGREEMENT

NOW THEREFORE, for good and valuable consideration, the ASSOCIATION and OWNER for themselves and for their respective successors (including successors in title or interest) assigns, heirs, devisees, executors, and administrators (collectively, "Successors") agree promise, and covenant as follows:

1)  Incorporation of Recitals.  The Parties to this Agreement incorporate all of the above Recitals as if fully set forth in the body of this Agreement.

3145671v1

2)  Agreement to Refrain from Litigation.  ASSOCIATION agrees to refrain from instituting litigation against OWNER concerning the Dispute until no earlier than July 15, 2017.

3)  Recordation of Agreement.  Both parties agree that this Agreement Concerning Real Property shall be recorded in order to place prospective purchasers or encumbrancers of the Subject Property on notice of the Dispute.

4)  Binding upon Successors.  Upon each transfer of the Subject Property and without any further action by any party, the respective rights and privileges of each party to this Agreement shall inure to the benefit of their respective successors with the same force and to the same extent as the party, and the duties and obligations of each party to this Agreement shall bind their respective successors with the same fore and to the same extent as the party.  The parties agree that this Agreement shall be enforceable as a covenant running with the land or as an equitable servitude, or both, as applicable.

THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a California nonprofit mutual benefit corporation

Dated: _____        By:_____

                              Its:_____


                              By:_____

                              Its:_____


SANDRA L. BRADLEY, Trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001

Dated: _____        By:_____

                              Its: Trustee

3145671v1

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT    CIV. CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ____    On this ____    Day of ____    20 ____

On ____    Before me, ____
Date    Here Insert Name and Title of Officer

Personally appeared ____

Name(s) of Signer(s)

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature ____
Signature of Notary Public

*Place Notary Seal Above*

### OPTIONAL

Though this section is optional, completing this information can deter alteration of the document of fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

| Title or Type of Document: | | Document Date: | |
|---|---|---|---|
| Number of Pages: | | Signer(s) Other Than Named Above: | |

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ____

☐ Corporate Officer- Title(s): ____
☐ Partner    ☐ Limited    ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: ____
Signer is Representing: ____

Signer's Name: ____

☐ Corporate Officer- Title(s): ____
☐ Partner    ☐ Limited    ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: ____
Signer is Representing: ____

©2014 National Notary Association www.NationalNotary.org 1-800-US-NOTARY (1-800-876-6827) Item #5907

3145671v1

Exhibit "A"
Legal Description of Subject Property

(i)  Unit 53 , (the "Unit") as shown and
defined on that certain Condominium Plan
recorded in Book 13358 Pages 1193 et seq.,
Official Records of Orange County,
California (the "Condominium Plan"),
excepting therefrom all buildings and other
improvements;

(ii)  An undivided one-eightieth (1/80)
interest in the Common Areas (as defined in
the Condominium Plan, excepting therefrom
all buildings and other improvements;

(iii)  An easement for the exclusive use and
occupancy of those portions of the
Restricted Common Area (as defined on said
Condominium Plan) for entry and staircases
and attic space relating to said Unit,
excepting therefrom all buildings and other
improvements;

(iv)  A non-exclusive easement and right to
use the Common Area (as defined on said
Condominium Plan), except the Restricted
Common Area, excepting therefrom all
buildings and other improvements.

3145671v1

RECORDING REQUESTED BY:

Mr. Randy Nickel
4476 Alderport Drive
Huntington Beach, CA 92649

MAIL TAX STATEMENTS TO:

Mr. Randy Nickel
4476 Alderport Drive.
Huntington Beach, CA 92649

Lease from Present to 2059

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

96.00

* $ R 0 0 1 0 4 4 6 0 2 6 $ *

2018000395579 2:35 pm 10/31/18

227 415 A34   6

0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 3.00

---

**TITLE OF DOCUMENT:       ASSIGNMENT OF CONDOMINIUM SUBLEASE**

WHEN RECORDED MAIL TO:
(Assignee's Name & Address)
MR. RANDALL L. NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

Mail tax statements to:
MR. RANDALL L NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

---

(Space Above this Line for Recorder's Use)

## ASSIGNMENT OF GROUND LEASE & CONDOMINIUM SUBLEASE

No Consideration. Term of Lease Less Than 99 years.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into that certain **GROUND LEASE** also known as the **MASTER LEASE dated October 19, 1979**, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 499 inclusive.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into a **PARTIAL CANCELLATION OF MASTER LEASE dated November 7, 1980** for that certain **MASTER LEASE dated October 19, 1979**; recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Pg(s) 1253-1255, **Instrument No. 8691**.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into that certain SUBLEASE dated October 19, 1979, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 504, inclusive, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California as shown on Miscellaneous Map(s) recorded in Book 456, Page(s) 49 and 50, in the Office of the Orange County, California Clerk Recorder.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into a **PARTIAL CANCELLATION OF SUBLEASE dated October 19, 1979**; for that certain SUBLEASE dated November 7, 1980, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1256-1258, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Maps, in the Office of the Orange County, California Clerk Recorder, **Instrument No. 8692;**

**WHEREAS**
For valuable consideration, receipt of which is hereby acknowledged, the undersigned **JAMIEL GALLIAN**, hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **MASTER LEASE/ Ground Lease, dated November 7, 1980**, recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1259-1273, **Instrument No. 8693;**

1

Exhibit A - Page 2 of 5 to Decl. of Pejman D. Kharrazian
in Support of HOA's Ex Parte Appl to Continue Trial

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE, dated August 1, 1980,** by and between ROBERT P. WARMINGTON, as Landlord, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANT, recorded on November 7, 1980, Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1274-1290, **\*\*Instrument No. 8694;**

As amended by the **FIRST AMENDMENT TO CONDOMINIUM SUBLEASE** effective January 1, 2003, recorded in the Office of the Orange County, California Clerk Recorder as Document No. 2003-001044770 on August 28, 2003.

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONVEYANCE OF REMAINDER INTEREST, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1291-1293, **\*\*Instrument No. 8695;**

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE (SHORT FORM – MEMORANDUM AND GRANT DEED, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1294-1298, **\*\*Instrument No. 8696.**

DATED: _10/31/18_                          _____
                                           ASSIGNOR JAMIE L GALLIAN

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF ORANGE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_____, before me, _Paul Dyer, Notary Public_

Personally appeared _Jamie L Gallian_____,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021
```

_____                    (This space for Notary Seal)
Signature of Notary Public

2

Exhibit A - Page 3 of 5 to Decl. of Pejman D. Kharrazian
in Support of HOA's Ex Parte Appl to Continue Trial

# ASSIGNMENT OF CONDOMINIUM SUBLEASE
## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby Accepts said Assignment and hereby agrees with for the benefit of the Master Lessor, Sublessor/Landlord, Tenant and under the Original Condominium Sublease commonly referred to throughout this document as "Condominium Sublease", described in said Assignment, to keep, perform and be bound by all the terms, covenants and conditions contained in said Condominium Sublease and as amended by the First Amendment to Condominium Sublease on the part of the Master Lessor, Sublessor/Landlord and Condominium Sublease Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the Original Condominium Sublease Tenant there under.

Assignee agrees to pay Sublessor/Landlord a late fee equal to 6% of any rent or other payment due under the Condominium Sublease, which is not received by Sublessor/Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and costs incurred by Landlord to collect rent or other payment under the Condominium Sublease or to otherwise enforce Sublessor/Landlord rights under the Condominium Sublease.

DATED: _10·31·18_    _____
**ASSIGNEE RANDALL L NICKEL**

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE
A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_ before me, _Paul Dyer, Notary Public_,
Personally appeared _Randall L Nickel_,
Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(This space for Notary Seal)

PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

3

# EXHIBIT A (LEGAL)

The estate or interest in the land described:

A Ground leasehold and Condominium Sublease hold estate as to Parcels 1 and 2, said estate being more particularly described as the Lessees' interest under that certain Ground Lease set forth in subparagraph (A) herein below:

    (A)    That certain Ground Lease dated August 1, 1980, executed by Houser Bros. Co, A Limited Partnership organized under the Laws of the State of California, in which Clifford C. Houser and Vernon F. Houser constitute the sole General Partners, as Landlord, and by Robert P. Warmington, as Tenant, for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County:    **Book 13824 Page 1259-1273**
**APN: 937-63-053, Unit 53.**

    (B)    That certain Condominium Sublease dated August 1, 1980, executed by Robert P. Warmington, as Sub-lessor and John F. Turner and Virginia H. Turner (Original Sublessee) for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County: **Book 13824 Page 1274-1290**
**APN: 937-63-053, Unit 53.**

All that certain land interest situated in the State of California, County of Orange and is described as follows:

Parcel   1:
Unit 53 as shown and defined on a Condominium Plan (the **"Condominium Plan"**) recorded in Book 13358 Page(s) 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements;

Parcel   2:
An undivided one-eightieth (1/80th) interest as Tenants in Common in the Common Area of Lots 1 and 2 Tract No. 10542, in the City of Huntington Beach, County of Orange, State of California as shown on a map recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Map, records of Orange County, California, as shown on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

Except there from all minerals, oil, gas and other hydrocarbon substances lying below a depth of 500 feet below the surface of said Land without the right of surface entry above the depth of 500 feet from the surface, as reserved in deeds of record.

Parcel   3:
Those portions of Unit 53, building 14, inclusive, as shown and defined on the Condominium Plan, Consisting of buildings and other improvements.

Parcel   4:
An undivided one-eightieth (1/80th) interest as Tenants in Common, in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings or other improvements.

Parcel   5:
An easement for the exclusive use and occupancy of those portions of the restricted Common Area, as defined on said Condominium Plan for ground level entry, courtyard entry, staircases, garages, and attic space relating to said units.

Parcel   6:
A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the restricted Common Area(s).

Exhibit A - Page 5 of 5 to Decl. of Pejman D. Kharrazian
in Support of HOA's Ex Parte Appl to Continue Trial

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
### CENTRAL JUSTICE CENTER

### MINUTE ORDER

DATE: 09/28/2017                TIME: 01:30:00 PM        DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: Nga Quach
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: None/Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72661138
**EVENT TYPE**: Order to Show Cause re: Preliminary Injunction

---

**APPEARANCES**
Pejman D. Kharrazian, from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Thomas A. Greco, from O'Hara & Greco, APC, present for Defendant Jamie Gallian.

All parties submit on the court's tentative ruling posted on the Internet.

The court confirms the tentative ruling as follows:

Plaintiff The Huntington Beach Gables Homeowners Association's OSC Re: Issuance of Preliminary Injunction is CONTINUED to October 26, 2017 at 1:30 pm, as the court cannot consider the Defendant's opposition until such time as she files and serves a substitution of attorney designating Thomas Greco as her counsel of record. See Code Civ. Proc. § 285 & 284.

Additionally, Plaintiff's evidence fails to establish that Defendant Gallian is the owner of the subject condominium. Although Ms. Gallian admitted in open court she purchased the unit she rented for numerous years, plaintiff needs to either submit competent evidence showing that Ms. Gallian is the current owner, or provide supplemental briefing, not to exceed five pages, as to the Association's power to enforce recorded covenants and rules promulgated thereunder directly against a non-owner occupant, residing in a condominium unit.

Defendant may file a supplemental brief to address this issue as well, not to exceed five pages, to be filed and served at least nine court days before the continued hearing date.

The TRO shall remain in effect until the continued hearing date.

Moving party to give notice

---

DATE: 09/28/2017                        MINUTE ORDER                        Page 1
DEPT: C33                                                                 Calendar No.



1  JAMIE LYNN GALLIAN
   4476 ALDERPORT DRIVE
2  HUNTINGTON BEACH, CA 92649
   JAMIEGALLIAN@GMAIL.COM
3  IN PRO PER

4

5

6

7

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10           COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

11

12

13

14  THE HUNTINGTON BEACH GABLES
    HOMEOWNERS ASSOCIATION, a
15  California Nonprofit Mutual Benefit
    Corporation,
16
17                        Plaintiff,
18
                 vs.
19  SANDRA BRADLEY, individually and as
    Trustee of the Sandra L. Bradley Trust;
20  JAMIE GALLIAN, an individual; AND
    DOES 1 through 25, inclusive,
21
22
23                        Defendants.
24
25
26
27
28

{00574074.DOCX; 1}                                    -1-

CASE NO. 30-2017-00913985-CU-CO-CJC

Honorable: James Crandall
Dept: C-33

**SUPPLEMENTAL BRIEF – BY
DEFENDANT JAMIE L GALLIAN**

Date:    October 27, 2017
Time:    1:30pm
Dept:   "C-33"

Filed: 4-11-17
FAC: 5-16-17
Trial Date: 4-16-18

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
10/23/2017 at 12:00:00 PM
Clerk of the Superior Court
By Danielle Jurado,Deputy Clerk

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

In its minute order dated September 28, 2017, (a true and correct copy of which is attached hereto as (Exhibit 1) the Court ordered Defendant Gallian an opportunity to file a supplement brief to address the Association's power to enforce recorded covenants and rules promulgated hereunder directly against a non-owner occupant, residing in a condominium unit.

INTRODUCTION

1.    Enforcement against a bona fide purchaser. A restrictive covenant or equitable servitude creates an interest in real property and therefore it is not enforceable against a bona fide purchaser or a transferee from a bona fide purchaser who received an interest or lien on the property without knowledge or constructive notice of the restriction.[1]

2.    No obligation of successor owner to cure predecessor's breach. A person who acquires an estate subject to a covenant running with the land is not liable for a breach of the covenant which occurred prior to his or her acquisition of the estate, or which occurs after he or she has parted with the estate or ceased to enjoy its benefits.[2]

3.    Even though the obligation to perform the covenant runs with the land, this obligation only exists while the property is owned by the covenantor or its successors. Thus, the covenant to pay rent under a lease obligates a tenant only for rent which occurs during its possession,[3] and the successor in interest to a landlord under a lease is not liable for repairs where the breach occurred prior to the transfer.[4]

-2-

1    4.    Breach by predecessor not grounds for denial of benefits. The principle

2  that one is personally liable only for breaches of the covenant which occur during one's

3  ownership also has a corollary. Absent a continuing agreement by the successor in

4
5  interest, the successor cannot be denied the benefits of a covenant by reason of a

6  breach by his or her predecessor, and cannot be compelled to cure the breaches of its

7  predecessor as a condition of enjoying the benefits of the covenant after acquiring title.[5]

8

9    5.    Liability of successor for predecessor owner's breach. The transfer of title

10  by the covenantor does not relieve the covenantor of the personal obligation for his or

11  her own breach occurring prior to the actual conveyance of title[6] at least in the absence

12  of a novation,[7] even though the transferee is also bound to perform the terms of the

13  covenant.[8]  In the absence of a novation or assumption, the transferee is not liable for a

14
15  breach of a covenant which occurred before she acquired title.[9]

16

17  Example; payment of homeowner's assessments. When the transferor is delinquent in

18  the payment of assessments due a homeowners association, the purchaser at a

19  foreclosure sale is not liable for the payment of the delinquencies and is entitled to

20  membership in the association without payment of the delinquencies. The transferor

21  remains liable for the payment of the assessments until title is lost, voluntarily or

22  involuntarily, even though possession was relinquished prior to the transfer of title.[10]

23

24  **AUTHORITIES**

25  FOOTNOTES

26  1

27

28

1  Reiner v. Danial, 211 Cal. App. 3d 682, 690–691, 259 Cal. Rptr. 570 (2d Dist. 1989) (restriction recorded

2  outside the chain of title).

3  See §§ 10:34 to 10:40 (recorded document not in the chain of title), § 10:50 (bona fide purchaser; rules of

4  priority), § 10:58 (transfer from a bona fide purchaser), §§ 16:3 to 16:7 (creation of a covenant), §§ 16:9 to

5  16:16 (creation of an equitable servitude).

6

7  2

8  Civ. Code, § 1466.

9  3

10  Salisbury v. Shirley, 66 Cal. 223, 225–26, 5 P. 104 (1884); First Nat. Bank v. Aldridge, 33 Cal. App. 2d

11  485, 490, 92 P.2d 674 (3d Dist. 1939). Although the tenant may not have personal liability for rent, the

12  tenant may be subject to eviction and the lease subject to termination due to the predecessor tenant's

13  breach.

14  See § 34:130 (liability of the parties; tenant-assignor liability to the landlord); § 34:131 (liability to the

15  parties; assignee's rights vis-á-vis the landlord).

16

17  4

18  Farber v. Greenberg, 98 Cal. App. 675, 685–685, 277 P. 534 (3d Dist. 1929).

19  See § 34:54 (enforcement of covenants by and against successors), § 34:124 (transfer of the reversion).

20  In Baychester Shopping Center, Inc. v. San Francisco Residential Rent Stabilization and Arbitration Bd. of

21  City and County of San Francisco, 165 Cal. App. 4th 1000, 1007, 81 Cal. Rptr. 3d 341 (1st Dist. 2008), a

22  successor landlord's claim that Civ. Code, § 1466 precluded an obligation to refund rent overcharges by

23  the predecessor landlord was rejected on the basis that § 1466 applies only to obligations imposed by

24  covenant, not to obligations imposed by law.

25  5

26

27  Mountain Home Properties v. Pine Mountain Lake Assn., 135 Cal. App. 3d 959, 967–68, 185 Cal. Rptr.

28  623 (5th Dist. 1982) (also holding that language in the covenant purporting to obligate the successor to

-4-

1  cure the breach by the predecessor, without some express assumption by the successor, does not result

2  in liability for the successor).

3  6

4  Civ. Code, § 1466; Cerro de Alcala Homeowners Assn. v. Burns, 169 Cal. App. 3d Supp. 1, 4–5, 216 Cal.

5  Rptr. 84 (App. Dep't Super. Ct. 1985). In this case, the owner of a condominium unit vacated the

6  apartment and sought to avoid liability for assessments imposed prior to a subsequent trustee's sale by a

7  lender; the court found that the owner remained liable for assessment obligations incurred prior to the

8  actual conveyance, and noted that while the defendant no longer enjoyed possession of the property, "he

9  continued to enjoy the other benefits of ownership until the very moment of recordation of the trustee's

10  deed." 169 Cal. App. 3d Supp at 4.

11  7

12  See § 1:123 (novation; definition and requirements), § 1:124 (modification and novation compared), §

13  1:125 (assignment and novation compared).

14  8

15  Lincoln v. Narom Development Co., 10 Cal. App. 3d 619, 623, 624, 89 Cal. Rptr. 128 (1st Dist. 1970);

16  Grange Co. v. Simmons, 203 Cal. App. 2d 567, 573, 21 Cal. Rptr. 757 (5th Dist. 1962) (even though the

17  parties expressly stipulated that the covenant ran with the land); Barrows v. Jackson, 112 Cal. App. 2d

18  534, 538, 247 P.2d 99 (2d Dist. 1952), judgment aff'd, 346 U.S. 249, 73 S. Ct. 1031, 97 L. Ed. 1586

19  (1953); Pratt-Low Preserving Co. v. Evans, 55 Cal. App. 724, 728, 729, 204 P. 241 (3d Dist. 1921);

20  California Packing Corp. v. Grove, 51 Cal. App. 253, 255, 256, 196 P. 891 (3d Dist. 1921).

21  9

22  Civ. Code, § 1466; Mountain Home Properties v. Pine Mountain Lake Assn., 135 Cal. App. 3d 959, 971,

23  185 Cal. Rptr. 623 (5th Dist. 1982); Farber v. Greenberg, 98 Cal. App. 675, 684, 685, 277 P. 534 (3d Dist.

24  1929) (lessor's grantee not liable for predecessor landlord's breach of covenant to repair contained in

25  lease).

1    10

2    Mountain Home Properties v. Pine Mountain Lake Assn., 135 Cal. App. 3d 959, 971, 185 Cal. Rptr. 623

3    (5th Dist., 1982).

4

5

6

7    ## CONCLUSION

8    BASED UPON THE FOREGOING FACTS, SUPPORTING CASE LAW, RECORDED DOCUMENTS DATE OF CONVEYANCE

9    FROM MS. BRADLEY TO MS. GALLIAN, THE ASSOCIATIONS COMPLAINT HAS BEEN FILED NEGLIGENTLY AGAINST MS.

10   GALLIAN.  THE DATE(S) OF ALLEGED VIOLATIONS OF THE CONVENANT, CONDITION, & RESTRICTION (CC&RS) CITED

11   IN THE ASSOCIATIONS COMPLAINT AND THE ASSOCITIONS ATTEMPT AT AN INJUNCTION AGAINST MS. GALLIAN,

12   CLAIM THE SAME ALLEGATIONS IN THE ASSOCIATIONS COMPLAINT AS THE ASSOCIATION CLAIMS IN THEIR FILING

13   FOR A REQUEST FOR PRELIMINARY INJUNCTION AGAINST MS. GALLIAN FILED ON SEPTEMBER 12, 2017, ALMOST

14   VERBATIM.

15

16   THE ALLEGED VIOLATION THE ASSOCIATION CLAIMS IN THE COMPLAINT FILED ON 4-11-17 AND

17   FAC 5-16-17, THE ASSOCIATION IS CARRYING OVER AND ABUSING THEIR POWERS BY BULLYING MS. GALLIAN

18   ATTEMPTING TO HOLD MS. GALLIAN RESPONSIBLE FOR A PREVIOUS OWNERS VIOLATIONS JUST BECAUSE MS.

19   GALLIAN WAS THE TENANT FOR A NUMBR OF YEARS.

20   MS. GALLIAN RESPECTFULLY REQUESTS THE COURTS CONSIDERATION TO DISMISS PLAINTIFF'S COMPLAINT FILED

21   AGAINST THIS DEFENDANT.

22   I DECLARE UNDER PENALTY OF PERJURY THE FOREGAOING STATEMENTS ARE TRUE TO THE BEST OF MY ABILITY.

23

24   Dated: 10/31/17

25

26   JAMIE L. GALLIAN

-6-

### DECLARATION OF SANDRA L. BRADLEY

I, Sandra L. Bradley, declare as follows:

1.      I am over the age of eighteen, a resident of Orange County, and the former owner of the condominium located at 4476 Alderport Drive, #53, in Huntington Beach, California ("subject condominium"). I am a named defendant in a civil lawsuit brought by The Huntington Beach Gables Homeowners' Association ("HOA") regarding changes to condominium #53 that allegedly violate the architectural requirements of the HOA. Jamie Gallian is a co-defendant.

2.      I provide this declaration to the HOA about my best recollection of events regarding the allegations contained in the HOA's pending lawsuit. I have personal knowledge of the facts set forth in my declaration unless stated otherwise. If called to testify, I could, and would, provide competent and admissible testimony about the facts set forth in my declaration.

3.      On November 19, 2009, I purchased the subject condominium. The subject condominium was purchased with the intention of having co-defendant Jamie Gallian live there as my tenant.

4.      I do not recall the history of how I came to have the HOA's governing documents for the subject condominium. I do remember that Jamie Gallian provided me with parts of the HOA's governing documents towards the beginning of the dispute with the HOA. During that time, Ms. Gallian was my tenant.

5.      For various reasons including the pending lawsuit by the HOA and a very strained relationship with Jamie Gallian, I decided to transfer full ownership of the subject condominium to Jamie Gallian effective March 23, 2017. I have not held an ownership in the subject condominium since that time or otherwise been a member of the HOA.

1

6.      During my ownership of the subject condominium, the only tenant that I had was Jamie Gallian. I never lived at the subject condominium.

7.      For all practical purposes during my ownership, Jamie Gallian had day-to-day control over the subject condominium by virtue of her tenancy and residency. At times, Ms. Gallian would attend HOA meetings for me and was a contact person for me relative to the HOA.

8.      At no time did I ever give Jamie Gallian authority to engage in any activity that violated the governing documents for the HOA. Any authority that I gave to Ms. Gallian to perform repair work and/or maintenance to the subject condominium was contingent upon the work being in compliance with the governing documents.

9.      For any repair work and/or maintenance to the subject condominium, Jamie Gallian was given the authority to select the appropriate vendor, schedule the vendor(s) to perform the work, and supervise the work including compliance with the HOA's governing documents. Ms. Gallian was also authorized to obtain the necessary approvals from the HOA and/or any governmental entity such as the City of Huntington Beach. Ms. Gallian understood the authority that I granted to her to handle the repairs and/or maintenance required her to obtain all necessary permits and/or approvals. I later learned the air-conditioning unit was installed by Ms. Gallian outside of the unit's rear yard fence, and in the Association's common areas.

10.      I never authorized Jamie Gallian to make any modifications and/or improvements to the HOA's common area. I had no knowledge that Ms. Gallian wanted to make any modifications and/or improvements to the HOA's common area. To the extent that Ms. Gallian has installed, altered and/or modified the HOA's common area, it was done without my knowledge and/or consent.

11.    At some point, I think in 2015, Ms. Gallian asked me to replace the heater in the subject condominium. I agreed to replace the heater. The extent of my personal involvement, as I understood it, was simply paying for the replacement of the heater including the installation costs. Ms. Gallian would handle all the other details. At the last minute, and without my permission, Ms. Gallian added a new air-conditioning unit to the project. After some discussion, I finally agreed to pay for the labor to complete the project. Ms. Gallian continued to be responsible for making sure the work was performed in a professional and workmanlike manner consistent with the requirements of the HOA's governing documents. I was not involved in the placement of the new air-conditioning unit.

12.    At another time during my ownership, which I think was in 2016, Ms. Gallian installed an open-lattice patio cover without my knowledge or approval. She informed me about it after the fact. Even then, it was my understanding (perhaps presumption) the work was done with the appropriate approval and/or permits. Ms. Gallian paid all of the costs associated with the open-lattice patio cover.

13.    After the open-lattice patio cover was installed, I did go see it because the HOA was concerned the open-lattice patio cover was not painted. Sometime later, again without my knowledge or consent, Ms. Gallian installed a roof, awning and gutters on the open-lattice patio cover.

14.    After receiving a request from the HOA to remove the roof, awning and gutters from the open-lattice patio cover, I asked Ms. Gallian to remove these items. Ms. Gallian refused. I then offered to pay for the roof, awning and gutters to be removed by my handyman at no expense to Ms. Gallian. That offer was likewise refused with Ms. Gallian telling me she was "handling the issue." Ms. Gallian specifically warned me that she would refuse to allow my handyman to enter

3

the subject condominium to address any issue raised by the HOA. To avoid further conflict, I decided not to send my handyman.

15.    Until the time I transferred the subject condominium to Jamie Gallian, on March 23, 2017, I was not aware that Ms. Gallian had a disability that required a variance from the HOA's governing documents.

16.    Based mostly on the overall nature of my deteriorated relationship with Jamie Gallian and the HOA's violation enforcement efforts, I decided to transfer/gift 100% ownership of the subject condominium from my revocable Trust to Jamie Gallian effective March 22, 2017.

17.    I agree to cooperate in good faith with the HOA as it pursues its claims against Ms. Gallian. I authorize my attorney Michael R. Halvorsen, Esq. to receive service of any subpoena from the HOA relative to the lawsuit against Jamie Gallian to obtain her compliance with the HOA's governing documents.


I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct. Executed this 30 day of October 2017 in Coto de Caza, California.

*Sandra L Bradley*

SANDRA L. BRADLEY

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

10

11  THE HUNTINGTON BEACH GABLES,          Case No.: 30-2017-00913985-CU-CO-CJC
    HOMEOWNERS ASSOCIATION, a California  [Assigned For All Purposed To:
12  Nonprofit Mutual Benefit Corporation,  Hon. James Crandall, Dept. C-33]

13              Plaintiffs                [PROPOSED] ORDER GRANTING
                                          DEFENDANT SANDRA L. BRADLEY'S
14                                        APPLICATION FOR DETERMINATION OF
        v.                                GOOD-FAITH SETTLEMENT WITH
15                                        PLAINTIFF AND DISMISSING CROSS-
                                          COMPLAINT
16  SANDRA L. BRADLEY, individually and as
    Trustee of the Sandra L. Bradley Trust; JAMIE L.  [Code Civ. Proc. § 877.6(a)(2)]
17  GALLIAN, an individual; and DOES 1 through
    25, inclusive,                        Complaint Filed: April 11, 2017
18                                        Trial Date:    April 16, 2018
               Defendants.
19                                        [Filed concurrently with *Notice of Settlement*;
                                          *Application for Determination of Good-Faith*
20  _____    *Settlement*]

21  AND RELATED CROSS-ACTIONS

22      The Court has duly considered Defendant Sandra L. Bradley's Application for Good-Faith

23  Determination of the settlement reached between defendant Sandra L. Bradley, both individually and as

24  Trustee of the Sandra L. Bradley Trust, and the plaintiff, The Huntington Beach Gables Homeowners'

25  Association (herein "Application").

26

27                                      1
    [PROPOSED] ORDER GRANTING SANDRA L. BRADLEY'S APPLICATION FOR DETERMINATION OF
28    GOOD-FAITH SETTLEMENT WITH PTF. AND DISMISSING CROSS-COMPLAINT
    *The Huntington Beach Gables Homeowners Association v. Sandra L. Bradley, et al.*
    Orange County Superior Court, Case No.: 30-2017-00913985-CU-CO-CJC

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/04/2017** at 06:26:00 PM
Clerk of the Superior Court
By Shanon Howard,Deputy Clerk

1         IT IS HEREBY ORDERED that the Association's Motion for an Order Striking the

2  Cross-Complaint of Jamie L. Gallian filed on July 12, 2017 against the Association is hereby

3  GRANTED in its entirety without leave to amend on the grounds that it was filed after Ms.

4  Gallian's Answer, and therefore was not filed in conformity with California Code of Civil

5  Procedure §§ 428.50(a) and (c).  IT IS FURTHER ORDERED that Ms. Gallian's Cross-

6  Complaint is stricken in its entirety without prejudice to a successful motion for leave to file a

7  cross-complaint against the Association.

8         **IT IS SO ORDERED.**

9

10  Dated:  November 20, 2017

11

12                                      _____

13                                        Hon. James Crandall
                                            Judge of the Superior Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
~~[PROPOSED]~~ ORDER ON MOTION FOR AN ORDER STRIKING THE CROSS-COMPLAINT OF JAMIE L.
GALLIAN

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Douglas W. Grinnell/Pejman D. Kharrazian    SBN: 102082/279260<br>EPSTEN GRINNELL & HOWELL, APC<br>10200 WILLOW CREEK ROAD, SUITE 100, SAN DIEGO, CA 92131<br>TELEPHONE NO.: 858-527-0111    FAX NO. (Optional): 858-527-1531<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): The Huntington Beach Gables Homeowners Association | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**12/21/2017** at 11:39:00 AM<br>Clerk of the Superior Court<br>By Jorge A Gomez, Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE |
|---|
| STREET ADDRESS: 700 Civic Center Drive West |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Santa Ana, 92701 |
| BRANCH NAME: Central Justice Center |

PLAINTIFF/PETITIONER: The Huntington Beach Gables Homeowners Association

DEFENDANT/RESPONDENT: Sandra L. Bradley, etc., et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: 30-2017-00913985-CU-CO-CJC |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [X] With prejudice   (2) [ ] Without prejudice
   b. (1) [ ] Complaint   (2) [ ] Petition
      (3) [ ] Cross-complaint filed by (name)                on (date):
      (4) [ ] Cross-complaint filed by (name)                on (date):
      (5) [ ] Entire action of all parties and all causes of action
      (6) [X] Other (specify):* As to Sandra L. Bradley, only.

2. (Complete in all cases except family law cases.)
   The court [ ] did [X] did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)

Date: December 21, 2017

Douglas W. Grinnell/Pejman D. Kharrazian . . . . . . . . . . ▶
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)                          (SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
[X] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)                          (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

(To be completed by clerk)
4. [X] Dismissal entered as requested on (date)   12/21/17
5. [ ] Dismissal entered on (date)                as to only (name):
6. [ ] Dismissal **not entered** as requested for the following reasons (specify):

7. a. [ ] Attorney or party without attorney notified on (date):
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
         [ ] a copy to be conformed   [ ] means to return conformed copy

J. Gomez

Date: 12/21/17    David H. Yamasaki, Clerk of the Court    Clerk, by _____ , Deputy

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>Westlaw Doc & Form Builder®    www.courts.ca.gov |

CIV-110

| PLAINTIFF/PETITIONER: The Huntington Beach Gables Homeowners Association | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Sandra L. Bradley, etc., et al. | 30-2017-00913985-CU-CO-CJC |

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name)*:

2. The person named in item 1 is *(check one below)*:
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one)*:   ☐ Yes   ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶

_____        _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

---

| SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF ORANGE | | FOR COURT USE ONLY |
|---|---|---|
| **TITLE OF CASE (ABBREVIATED):**<br>The Huntington Beach Gables Homeowners Association v. Bradley, et al. | | |
| **ATTORNEY(S) NAME AND ADDRESS:**<br>Douglas W. Grinnell, Esq. (SBN: 102082)<br>Pejman D. Kharrazian, Esq. (SBN: 279260)<br>Epsten Grinnell & Howell, APC<br>10200 Willow Creek Rd., Suite 100<br>San Diego, California  92131 | **TELEPHONE**<br>(858) 527-0111<br><br>**FACSIMILE**<br>(858) 527-1531 | |
| **ATTORNEYS FOR:**<br>The Huntington Beach Gables Homeowners Assoc. | **HEARING: DATE-TIME-DEPT** | **CASE NUMBER**<br>30-2017-00913985 |

### DECLARATION OF SERVICE

I, Stephanie Hart, declare: that I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action; and I am employed in the County of San Diego, California, within which county the subject service occurred.  My business address is 10200 Willow Creek Rd., Suite 100, San Diego, California  92131.  On December 21, 2017 served the following document(s):

### REQUEST FOR DISMISSAL — AS TO SANDRA BRADLEY, ONLY

of which the original document(s), or a true and correct copy, is attached, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

| | |
|---|---|
| Jamie Gallian<br>4476 Alderport Drive<br>Huntington Beach, CA 92649<br>(714) 321-3449<br>jamiegallian@gmail.com | Defendant and Cross-Complainant in Pro Per |
| Adam Carrelejo, Esq.<br>MICHAEL T. CHULAK & ASSOCIATES<br>3-343 Camwppd St/. #2-3<br>Agoura Hills, CA  91301<br>(818) 991-9019<br>acarralejo@mtclaw.com | Attorney for Defendant and Cross-Complainant |
| Brenda Radmacher<br>James Hawley<br>GORDON REES SCULLY MANSUKHANI LLP<br>633 West Fifth Street, 52nd Floor<br>Los Angeles, CA  90071<br>(213) 576-5000 / Fax: (213) 680-4470<br>bradmacher@grsm.com / jhawley@grsm.com | Attorneys for Huntington Beach Gables Homeowners<br>Association on Cross-Complaint |

☐ **(BY MAIL)** I caused a true copy of each document, placed in a sealed envelope with postage fully paid, to be placed in the United States mail at San Diego, California.  I am "readily familiar" with this firm's business practice for collection and processing of mail, that in the ordinary course of business said document(s) would be deposited with the U.S. Postal Service on that   same day.  I understand that the service shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained on this affidavit.

*The Huntington Beach Gables Homeowners Association v. Bradley, et al.*
Case No. 30-2017-00913985

Declaration of Service

☐ **(BY OVERNIGHT DELIVERY)** I caused a true copy of each document, placed in a sealed envelope with delivery fees provided for, to be deposited in a box regularly maintained by Overnight Express. I am readily familiar with this firm's practice for collection and processing of documents for overnight delivery and know that in the ordinary course of Epsten Grinnell & Howell, APC business practice the document(s) described above will be deposited in a box or other facility regularly maintained by Overnight Express or delivered to a courier or driver authorized by Overnight Express to receive documents on the same date it is placed at Epsten Grinnell & Howell, APC for collection.

☒ **(BY E-MAIL OR ELECTRONIC TRANSMISSION)** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in the above Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 21, 2017, at San Diego, California.

_____
Stephanie Hart

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO.: | | FOR COURT USE ONLY |
|---|---|---|---|

NAME: Jamie Lynn Gallian

FIRM NAME:

STREET ADDRESS: 4476 Alderport Drive

CITY: Huntington Beach       STATE: CA    ZIP CODE: 92649

TELEPHONE NO.: 714-321-3449      FAX NO. :

E-MAIL ADDRESS: jamiegallian@gmail.com

ATTORNEY FOR (Name): in propria persona

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange

STREET ADDRESS: 700 Civic Center Drive West

MAILING ADDRESS:

CITY AND ZIP CODE: Santa Ana, CA 92701

BRANCH NAME: Central Justice Center

Plaintiff/Petitioner: The Huntington Beach Gables HOA, et al

Defendant/Respondent: Sandra L. Bradley, et al

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**12/27/2017** at 01:25:00 PM
Clerk of the Superior Court
By Giovanni Galon,Deputy Clerk

| REQUEST FOR DISMISSAL | CASE NUMBER: 30-2017-00913985-CU-CO-CJC |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1.  TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [x] With prejudice    (2) [ ] Without prejudice
   b. (1) [ ] Complaint    (2) [ ] Petition
      (3) [x] Cross-complaint filed by (name): Jamie L Gallian    on (date): 7-25-17
      (4) [ ] Cross-complaint filed by (name):    on (date):
      (5) [ ] Entire action of all parties and all causes of action
      (6) [x] Other (specify):* Lori Burrett, Lindy Beck, Ted Phillips,Jennifer Paulin, Janine Jasso, Lee Gragnano

2.  (Complete in all cases except family law cases.)
   The court [ ] did [x] did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).

Date: 11-3-17

Jamie L Gallian

(TYPE OR PRINT NAME OF [ ] ATTORNEY [x] PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

(SIGNATURE)

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[x] Cross Complainant

3.  **TO THE CLERK:** Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross Complainant

(To be completed by clerk)

4.  [x] Dismissal entered as requested on (date):   Dec. 27, 2017
5.  [ ] Dismissal entered on (date):    as to only (name):
6.  [ ] Dismissal **not entered** as requested for the following reasons (specify):

7.  a. [ ] Attorney or party without attorney notified on (date):
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed [ ] means to return conformed copy

David H. Yamasaki, Clerk of the Court

Date: Dec. 27, 2017    Clerk, by _____, Deputy

Giovanni Galon

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.; Gov. Code,
§ 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

CIV-110

| Plaintiff/Petitioner: The Huntington Beach Gables HOA, et al | CASE NUMBER: |
|---|---|
| Defendant/Respondent: Sandra L. Bradley, et al | 30-2017-00913985-CU-CO-CJC |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**
If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):*    Yes    No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____         ▶ _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

# SERVICE LIST

**Attorneys for Plaintiff The Huntington Beach Gables Homeowners Association**
Douglas W. Grinnell, Esq.
Pejman D. Kharrazian, Esq.
Epsten Grinnel & Howell, APC
10200 Willow Creek Rd., Suite 100
San Diego, California 92131
Phone: (858) 527-0111
Fax: (858) 527-1531
Email: pkharrazian@espten.com

**Attorneys for Sandra L. Bradley, individually and Trustee of the Sandra L. Bradley Trust**
Michael R. Halvorsen, Esq.
Phillips, Spallas & Angstadt LLP
3415 S Sepulveda Blvd., Suite 110
Los Angeles, CA 90034
Phone: (310) 407-3017
Fax: (310) 772-0023
Email: mhalvorsen@psalaw.net

**Attorneys for Plaintiff Jamie Gallian**
**In Pro Per**
Jamie L. Gallian
4476 Alderport Dr.
Huntington Beach, CA 92649
Email: Jamiegallian@gmail.com

1

2

3

4

5

6

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**11/20/2017** at 03:17:00 PM

Clerk of the Superior Court
By Shanon Howard,Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

| | |
|---|---|
| 11  THE HUNTINGTON BEACH GABLES | ) Case No. 30-2017-00913985-CU-CO- |
| HOMEOWNERS ASSOCIATION, a | ) CJC |
| 12  California Nonprofit Mutual Benefit | ) |
| Corporation, | ) |
| 13 | ) *Honorable James Crandall* |
| Plaintiff, | ) |
| 14 | ) [PROPOSED] ORDER ON |
| v. | ) DEMURRER TO CROSS- |
| 15 | ) COMPLAINT OF JAMIE L. |
| SANDRA L. BRADLEY, individually and | ) GALLIAN |
| 16  as Trustee of the Sandra L. Bradley Trust; | ) |
| JAMIE L. GALLIAN, an individual; and | ) FAC Filed: May 16, 2017 |
| 17  DOES 1 through 25, inclusive, | ) Trial Date: April 16, 2018 |
| | ) |
| 18          Defendants. | ) |
| | ) |
| 19 | ) |
| | ) |
| 20 | ) |
| AND RELATED CROSS-ACTIONS. | ) |
| 21 | ) |
| | ) |
| 22 | ) |

23          Cross-Defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso,

24   and Lori Burrett's (collectively the "Board Members") Demurrer to the Cross-Complaint of

25   Cross-Complainant Jamie L. Gallian came before this Court for a regularly scheduled hearing on

26   October 26, 2017, Honorable James Crandall presiding.  Having considered the Demurrer and

27   supporting papers, as well as the opposition papers, reply papers, and any oral argument, and

28   good cause appearing;

-1-

[PROPOSED] ORDER ON DEMURER TO CROSS-COMPLAINT OF JAMIE L. GALLIAN

1       IT IS HEREBY ORDERED that the Board Members' Demurrer to the Cross-Complaint

2 of Jamie L. Gallian filed on July 25, 2017 against the Board Members is hereby SUSTAINED

3 with leave to amend on the basis that the Cross-Complaint is uncertain, and fails to allege facts

4 sufficient to state a case of action. Leave to amended is limited to the three causes of action

5 asserted in the July 25, 2017 Cross-Complaint, and no additional or new causes of action may be

6 included in any amended cross-complaint without prior leave of court.

7       Ms. Gallian is hereby given until November 15, 2017 to file an amended cross-complaint

8 against the Board Members.  Any amended cross-complaint shall be asserted against all

9 remaining cross-defendants in a single pleading.

10      **IT IS SO ORDERED.**

11

12 Dated:  November 20, 2017

13

14                          Hon. James Crandall

15                          Judge of the Superior Court

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

[PROPOSED] ORDER ON DEMURRER TO CROSS-COMPLAINT OF JAMIE L. GALLIAN

MC-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY          STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|

NAME: Craig J. Mariam (SBN 225280) / Brenda Radmacher (SBN: 185265)
FIRM NAME: Gordon & Rees LLP
STREET ADDRESS: 633 W. 5th Street, 52nd Floor
CITY: Los Angeles    STATE: CA    ZIP CODE: 90071
TELEPHONE NO.: (213) 576-5000    FAX NO.: (877) 306-0043
E-MAIL ADDRESS: cmariam@grsm.com / bradmacher@grsm.com
ATTORNEY FOR (name): X-Defendants Gragnano; Phillips; Beck; Paulin; Jasso; Burrett

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**02/13/2018** at 08:27:00 AM

Clerk of the Superior Court
By Danielle Jurado, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 W. Civic Center Dr.
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

PLAINTIFF: The Huntington Beach Gables Homeowners Association

DEFENDANT: Sandra L. Bradley; Jamie L. Gallian et al.

| **MEMORANDUM OF COSTS (SUMMARY)** | CASE NUMBER:<br>30-2017-00913985-CU-CO-CJC |
|---|---|

The following costs are requested:

| | | | TOTALS |
|---|---|---|---|
| 1. | Filing and motion fees | $ | |
| 2. | Jury fees | $ | |
| 3. | Jury food and lodging | $ | |
| 4. | Deposition costs | $ | |
| 5. | Service of process | $ | |
| 6. | Attachment expenses | $ | |
| 7. | Surety bond premiums | $ | |
| 8. | Witness fees | $ | |
| 9. | Court-ordered transcripts | $ | |
| 10. | Attorney fees *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required)* | $ | |
| 11. | Court reporter fees as established by statute | $ | |
| 12. | Models, enlargements, and photocopies of exhibits | $ | |
| 13. | Interpreter fees | $ | |
| 14. | Fees for electronic filing or service | $ | 2,755.75 |
| 15. | Fees for hosting electronic documents | $ | |
| 16. | Other | $ | |
| | **TOTAL COSTS** | $ | 2,755.75 |

I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

Date: February 13, 2018

Brenda Radmacher                                    ▶
(TYPE OR PRINT NAME)                              (SIGNATURE OF DECLARANT)

(Proof of service on reverse)                                    Page 1 of 2

Form Approved for Optional Use
Judicial Council of California MC-010
[Rev. September 1, 2017]

**MEMORANDUM OF COSTS (SUMMARY)**

Code of Civil Procedure,
§§ 1032, 1033.5


American LegalNet, Inc.
www.FormsWorkFlow.com

MC-010

| SHORT TITLE | CASE NUMBER: |
|---|---|
| The Huntington Beach Gables HOA v. Sandra L. Bradley et al. | 30-2017-00913985-CU-CO-CJC |

## PROOF OF ☒ MAILING ☐ PERSONAL DELIVERY

1. At the time of mailing or personal delivery, I was at least 18 years of age and **not a party** to this legal action.

2. My residence or business address is *(specify)*:
   One of my business addresses is 633 West Fifth Street, 52nd Floor, Los Angeles, CA 90071

3. I mailed or personally delivered a copy of the *Memorandum of Costs (Summary)* as follows *(complete either a or b)*:

   a. ☒ **Mail.** I am a resident of or employed in the county where the mailing occurred.

   (1) I enclosed a copy in an envelope AND

      (a) ☐ **deposited** the sealed envelope with the United States Postal Service with the postage fully prepaid.

      (b) ☒ **placed** the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

   (2) The envelope was addressed and mailed as follows:

      (a) Name of person served: See attached Service List

      (b) Address on envelope:

      (c) Date of mailing: 2/13/2018

      (d) Place of mailing *(city and state)*: San Diego, CA

   b. ☐ **Personal delivery.** I personally delivered a copy as follows:

   (1) Name of person served:

   (2) Address where delivered:

   (3) Date delivered:

   (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: February 13, 2018

Jeanne P. Farrar
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF DECLARANT)

Page 2 of 2

MC-010 [Rev. September 1, 2017]

### MEMORANDUM OF COSTS (SUMMARY)



American LegalNet, Inc.
www.FormsWorkFlow.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**SERVICE LIST**

**Attorneys for Plaintiff The Huntington Beach Gables Homeowners Association**
Douglas W. Grinnell, Esq.
Pejman D. Kharrazian, Esq.
Epsten Grinnel & Howell, APC
10200 Willow Creek Rd., Suite 100
San Diego, California 92131
Phone: (858) 527-0111
Fax: (858) 527-1531
Email: pkharrazian@espten.com

**Attorneys for Sandra L. Bradley, individually and Trustee of the Sandra L. Bradley Trust**
Michael R. Halvorsen, Esq.
Phillips, Spallas & Angstadt LLP
3415 S Sepulveda Blvd., Suite 110
Los Angeles, CA 90034
Phone: (310) 407-3017
Fax: (310) 772-0023
Email: mhalvorsen@psalaw.net

**Attorneys for Plaintiff Jamie Gallian**
**In Pro Per**
Jamie L. Gallian
4476 Alderport Dr.
Huntington Beach, CA 92649
Email: Jamiegallian@gmail.com

1141304/36350923v.1

-3-

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CENTRAL JUSTICE CENTER

## MINUTE ORDER

DATE: 03/02/2018        TIME: 08:30:00 AM     DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: Nga Quach
REPORTER/ERM: Amber N. Hogate CSR# 13525
BAILIFF/COURT ATTENDANT: None/Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72743477
**EVENT TYPE**: Mandatory Settlement Conference

---

**APPEARANCES**
Pejman D. Kharrazian, from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Lee Gragano and Janine Jasso from The Huntington Beach Gables Homeowners Association, Plaintiff, present.
Brenda K. Radmacher, from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Raquel Flyer, from Flyer & Flyer, present for Defendant/Cross-Complainant Jamie L. Gallian.
Jamie L. Gallian, Defendant/Cross-Complainant is present.

The parties waive any objections to the trial judge conducting a settlement conference.

Settlement conference is held. Case is settled.

The terms of the settlement are recited in open court. Each party indicates on the record that they understand and agree to the terms as stated.

This court retains jurisdiction to enforce the settlement.

The Order to Show Cause re: Dismissal on Settled Case is scheduled for 06/04/2018 at 08:30 AM in Department C33.

No appearance is necessary if the full dismissal is filed by 06/04/2018.

All other future hearing dates are ordered vacated.

---

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME:    Central Justice Center | |
| SHORT TITLE: The Huntington Beach Gables Homeowners Association vs. Bradley | |

| **NOTICE OF REJECTION OF ELECTRONIC FILING** | CASE NUMBER:<br>30-2017-00913985-CU-CO-CJC |
|---|---|

The electronic filing described by the summary data below was reviewed and rejected by the Superior Court of California, County of Orange

## E-Filing Summary Data

Electronically Submitted By: Jamie Gallian
On Behalf of:

Transaction Number:      3662908
Court received Date:      05/01/2018
Court received Time:      05:00:02 PM
Amount not to Exceed:

## Documents Electronically Filed

JAMIE_FRANKFILED3.2.18MSCHOATranscript 2

This electronic filing was rejected based on the following reason(s):

**Reject Reason 1:**  other
                  Clerk's Comments to Submitter:
                  Must contain date of Conditional or unconditional settlement or
                  approximate date for which the Request for Dismissal will be filed.

## E-Filing Service Provider Information

Name:            DDSLegal
Email:           efilingstatus@ddslegal.com
Contact Person:  DDSLegal OCEFiling Support
Phone:           7146625555

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 06/04/2018              TIME: 08:30:00 AM          DEPT:  C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK:  P. Rief
REPORTER/ERM: Darci Mullarky CSR# 5569
BAILIFF/COURT ATTENDANT:  Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72768738

**EVENT TYPE**: Order to Show Cause re: Dismissal on Settled Case

---

EVENT ID/DOCUMENT ID: 72793807

**EVENT TYPE**: Motion to Strike or Tax Costs
MOVING PARTY: Ted Phillips, Lindy Beck, Jennifer Paulin, Lee Gragnano, Janine Jasso, Lori Burrett
CAUSAL DOCUMENT/DATE FILED: Motion to Strike or Tax Costs, 02/28/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross -
Defendant,Plaintiff(s).
Brenda K. Radmacher, Esq., from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.

---

Order to Show Cause re: Dismissal held. Extensive discussion held in open court as to the status of the
settlement. Upon the order of the court, the parties meet and confer. The case is not settled.

The motion by cross-defendants Lee Gragnano, Ted Phillips, Lindy Buck, Jennifer Paulin, Janine Jasso,
and Lori Burrett to strike the Memorandum of Costs filed by cross-complainant Jamie Gallian is
continued to 07/19/2018 at 08:30 AM in this department.

Jury Trial scheduled for 08/06/2018 at 08:30 AM in Department C33, if the matter is not resolved at the
hearing set for 07/19/2018.

---

DATE: 06/04/2018                              MINUTE ORDER                                    Page 1
DEPT:  C33                                                                          Calendar No.



Epsten Grinnell & Howell, APC
Attorneys at Law

Respond to: San Diego office

www.epsten.com
800.300.1704

June 14, 2018

**SENT VIA FIRST CLASS MAIL AND E-MAIL**

Jamie L. Gallian
4476 Alderport Drive
Huntington Beach, CA 92649

Re:    **Signed Transcript of Settlement Agreement**
*Huntington Beach Gables Homeowners Association v. Gallian*
OCSC Case No. 30-2017-00913985-CU-CO-CJC
Our File No.: 5786.06

Dear Ms. Gallian:

Attached is the Reporter's Transcript of Proceedings dated March 2, 2018 from the Mandatory Settlement Conference ("Transcript") the parties attended. The Transcript reflects the parties' agreement to a stipulated settlement of the above-referenced matter pursuant to Code of Civil Procedure Section 664.6.

The parties agreed to sign the Transcript on the record at the June 4, 2018 hearing on the OSC re Dismissal. (See June 4, 2018 RT at p. 34, lines 4-20.) You also signed a copy of the Transcript in the jury room of Department 33 in the presence of the Hon. James T. Crandall, but a copy of your signature was not provided to the Association. For the record of the parties, a signature page has been added to the end of the Transcript, and *the Association has signed the Transcript*. Please countersign the Transcript at your earliest convenience and return a copy to me.

We look forward to resolving this lawsuit with you in good faith pursuant to the terms of the stipulated settlement reached on March 2, 2018.

Sincerely,

EPSTEN GRINNELL & HOWELL, APC

Pejman D. Kharrazian

PDK/jac
Enclosure:    MSC Transcript from March 2, 2018 signed by the Association
cc:    Brenda K. Radmacher, Esq. (via email)

3530622v1

**San Diego**
10200 Willow Creek Rd., Suite 100
San Diego, California 92131
858.527.0111 • fax 858.527.1531

**Coachella Valley**
74830 Highway 111, Suite 100
Indian Wells, California 92210
760.836.1036 • fax 760.836.1040

**Inland Empire**
43460 Ridge Park Dr., Suite 200
Temecula, California 92590
800.300.1704 • fax 858.527.1531

34

1              MS. GALLIAN:  ABSOLUTELY.

2              THE COURT:  SO YOU'VE ALL SAVED A LOT OF MONEY

3    BY GETTING THIS CASE RESOLVED TODAY, SO THANK YOU ALL.

4

5                    (PROCEEDINGS CONCLUDED)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**SETTLEMENT AND RELEASE AGREEMENT PURSUANT TO THE REPORTER'S
TRANSCRIPT OF PROCEEDINGS DATED MARCH 2, 2018**

The parties to the lawsuit, captioned: *The Huntington Beach Gables Homeowners Association v. Bradley et al.*, Orange County Superior Court Case No. 30-2017-00913985-CU-CO-CJC agree to a settlement and mutual release of this lawsuit, including any related cross-actions, pursuant to the terms put on the record before the Court as reflected in the preceding Reporter's Transcript of Proceedings dated March 2, 2018.

IN WITNESS WHEREOF, the Parties hereto have executed this settlement agreement to be effective as of the date of last execution.

**THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION**

DATED: _6/13_____, 2018       By: _____
                                         Lee Gragnano, President

DATED: _6-13_____, 2018       By: _____
                                         Janine Jasso, Vice President

**JAMIE L. GALLIAN**

DATED: _____, 2018       By: _____
                                         JAMIE L. GALLIAN

-37-

1   Rian W. Jones, Bar No. 118830
    rjones@epsten.com
2   Pejman D. Kharrazian, Bar No. 279260
    pkharrazian@epsten.com
3   EPSTEN GRINNELL & HOWELL APC
    10200 Willow Creek Road, Suite 100
4   San Diego, California 92131
    (858) 527-0111/ Fax (858) 527-1531
5

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/10/2018** at 11:58:00 AM

Clerk of the Superior Court
By e Clerk,Deputy Clerk

6   Attorneys for Plaintiff
    THE HUNTINGTON BEACH GABLES
7   HOMEOWNERS ASSOCIATION

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11  THE HUNTINGTON BEACH GABLES          CASE NO. 30-2017-00913985-CU-CO-CJC
    HOMEOWNERS ASSOCIATION, a
12  California Nonprofit Mutual Benefit   Judge: James L. Crandall
    Corporation,                          Dept.: C33
13
                Plaintiff,               **NOTICE OF RULING ON PLAINTIFF'S**
14                                       **MOTION TO ENFORCE SETTLEMENT**
        v.                               **AND ENTER JUDGMENT PURSUANT TO**
15                                       **THE TERMS OF STIPULATED**
    SANDRA L. BRADLEY, individually and  **SETTLEMENT (CODE OF CIVIL**
16  as Trustee of the Sandra L. Bradley Trust; **PROCEDURE § 664.6)**
    JAMIE L. GALLIAN, an individual; and
17  DOES 1 through 25, inclusive,        Motion Hearing
                                         Date: July 19, 2018
18              Defendants.              Time: 1:30 p.m.
                                         Dept: C33
19
                                         First Amended Complaint Filed: May 16, 2017
20                                       Trial Date: December 10, 2018

21  AND ALL RELATED CROSS-ACTIONS

22

23        **TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR**

24  **ATTORNEYS OF RECORD HEREIN:**

25        **PLEASE TAKE NOTICE** that on July 19, 2018 at 1:30 p.m. in Department 33 of the

26  above-entitled court, located at 700 Civic Center Drive West, Santa Ana, CA 92701, this Court

27  held a hearing on Plaintiff's Motion to Enforce Settlement and Enter Judgment pursuant to the

28  terms of Stipulated Settlement (Code of Civil Procedure § 664.6). After hearing argument

- 1 -

3614243v1

NOTICE OF RULING ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AND ENTER
JUDGEMENT PURSUANT TO THE TERMS OF STIPULATED SETTLEMENT (CCP §664.6)

1    from Defendant JAMIE L. GALLIAN and counsel for Plaintiff, the Court denied Plaintiff's

2    Motion to enforce settlement.

3    　　　The Jury Trial set for August 6, 2018 is ordered continued to December 10, 2018 at

4    9:00 AM. All discovery cutoff dates and deadlines are continued and shall track the December

5    10, 2018 trial date.

6    　　　Attached hereto as Exhibit A is a true and correct copy of the Court's July 19, 2018

7    Minute Order.

8

9    Dated:  July 30, 2018　　　　　　　　　EPSTEN GRINNELL & HOWELL, APC

10

11    　　　　　　　　　　　　　　　　By: _____

12    　　　　　　　　　　　　　　　　　　Rian W. Jones
　　　　　　　　　　　　　　　　　　　　　Pejman D. Kharrazian
13    　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　THE HUNTINGTON BEACH GABLES
14    　　　　　　　　　　　　　　　　　　HOMEOWNERS ASSOCIATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3614243v1

NOTICE OF RULING ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AND ENTER
JUDGEMENT PURSUANT TO THE TERMS OF STIPULATED SETTLEMENT (CCP §664.6)

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 07/19/2018          TIME: 01:30:00 PM          DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: Candace Khorouzan
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72819785

**EVENT TYPE**: Motion to Enforce Settlement
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Motion - Other Enforce Settlement, 06/22/2018

EVENT ID/DOCUMENT ID: 72852524

**EVENT TYPE**: Motion - Other
MOVING PARTY: Jamie L. Gallian
CAUSAL DOCUMENT/DATE FILED: Motion - Other to Withdraw Memorandum of Cost, 07/17/2018

EVENT ID/DOCUMENT ID: 72842898

**EVENT TYPE**: Motion to Strike or Tax Costs
MOVING PARTY: Ted Phillips, Lindy Beck, Jennifer Paulin, Lee Gragnano, Janine Jasso, Lori Burrett
CAUSAL DOCUMENT/DATE FILED: Motion to Strike or Tax Costs, 02/28/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq. and Joyce J. Kapsal, Esq., from Epsten Grinnell & Howell, APC, present for
Cross - Defendant,Plaintiff(s).
Brenda K. Radmacher, Esq., from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Jamie Gallian, present.

1. MOTION BY PLAINTIFF/CROSS-DEFENDANT THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION TO ENFORCE SETTLEMENT AND ENTER JUDGMENT PURSUANT
TO THE TERMS OF STIPULATED SETTLEMENT

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both
written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become
the final ruling of the court.

Motion by Plaintiff/Cross-defendant The Huntington Beach Gables Homeowners Association to Enforce
Settlement and Enter Judgment Pursuant to the Terms of Stipulated Settlement:

---

CASE TITLE: The Huntington Beach Gables     CASE NO.: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

<u>Moving Party's Request for Judicial Notice [RJN]:</u>

In support of the original moving papers, moving party filed a Notice of Lodgment [NOL] with all of its supporting exhibits, which also requests judicial notice of all of Moving Party's supporting exhibits.

The court grants grant judicial notice as to Ex. A [certified reporter's transcript of the 3-2-18 MSC hearing], Ex. E [certified reporter's transcript of the 6-4-18 OSC hearing], and Ex. J [a criminal complaint filed against responding party Gallian for allegedly violating the restraining order issued in OCSC Case No. 2017-00962999.

All of these documents are properly subject to judicial notice as court records. (Ev. 452(d)(1).) However, as to Ex. J, the court will take judicial notice of the fact that the complaint was filed, but not of the truth of its contents. A court may take judicial notice of the existence of documents in court files, but can only take judicial notice of the truth of facts asserted in such documents as orders, findings of fact and conclusions of law, and judgments. (6 Witkin, Cal. Proc. 5th (2008), Chapter VII, "Proceedings Without Trial," Section 232, p. 674, citing *In re David C*. (1984) 152 Cal.App.3d 1189, 1205.)

The court denies the remainder of the RJN. The remaining documents consists of letters and emails between Moving Party and Responding Party [or their counsel] (MP Exs. C, D, F-H, N], photos of RP allegedly re-installing a corrugated roof (MP Ex. I), copies of numerous police reports allegedly filed against RP by various other residents (MP Exs. L, M, O-S), and an email allegedly from a police detective to MP HOA (MP Ex. S). There is no basis under Evidence Code sec. 452 to take judicial notice of emails, letters, or police reports.

However, these exhibits are otherwise properly authenticated by the various declarations submitted with the moving papers, and there are no evidentiary objections by RP defendant; thus, the court will consider them, despite the fact that many are not properly subject to judicial notice.

<u>Moving Party Reply RJN:</u>

With the Reply, MP submitted a supplemental notice of lodging and request for judicial notice, requesting judicial notice of 14 letters from association residents. The Reply indicates these letters are "from Association residents complaining about Ms. Gallian's bad acts, bullying, harassment, and intimidation." (Reply at 6:16-18.) There are no letters attached to the Reply NOL.

The court denies MP's Reply RJN, because (1) MP does not provide copies of the documents requested (CRC 3.1306(c)); (2) for the same reason, MP has not provided the court with sufficient information to enable it to take judicial notice (Ev. 453(b)); and (3) for the same reason, as well as the fact that the request was not made until the Reply, MP has not provided Responding Party with sufficient notice of the request (Ev. 453(a)).

**Merits:**

In comparing the terms Moving Party contends are part of the settlement agreement, with the transcript of the MSC hearing (MP Ex. A), there are too many discrepancies and inconsistencies to find an enforceable settlement, or a "meeting of the minds" as to several key terms, which are disputed.

CCP 664.6 states:
If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the

CASE TITLE: The Huntington Beach Gables            CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

A motion to enforce settlement may be decided on declarations. (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.) Moreover, CCP 664.6 provides the court authority to interpret settlement terms and determine disputed factual matters regarding the settlement agreement, based on contract principles, but not to add material terms which were not agreed to by the parties. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) "[N]othing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Id.* at 810)

Moving Party has shown that at the MSC on 3-2-18, plaintiff HOA and defendant Gallian reached a settlement agreement, the terms of which were placed on the record. (MP Ex. A [Certified Reporter's Transcript of the March 2, 2018 MSC ("MSC RT").] The parties also stipulated, and the court agreed on the record, to retain jurisdiction to enforce the settlement pursuant to Code of Civil Procedure section 664.6, and to enter judgment pursuant to the terms of the settlement if necessary. (MP Ex. A at 31:9-21.)

However, MP's summary of the terms of the settlement [moving papers at 9:25-10:23] is inaccurate in numerous respects. More importantly, as to several of the key terms, the MSC transcript shows that the terms were unclear, or that there was no agreement at all. Moreover, Responding Party has a point that the proposed written settlement agreements proposed by Moving Party attorney (MP Exs. D, F, G) include terms which do not appear to be part of the settlement.

First, according to MP, the terms of the stipulated settlement were as set forth at 9:25-10:23 of the moving papers. However, the transcript of the MSC is inconsistent with settlement agreement.

There are also disputes as to the terms of key provisions of the settlement, and thus disputes as to whether the parties in fact reached an agreement as to these terms at all.

First, MP contends the settlement included an agreement that Association would withdraw the preliminary injunction issued by the court on January 11, 2018, but that the terms of the preliminary injunction were incorporated into the settlement agreement. (Moving papers at 10:9-11, citing MSC RT at p. 9, 12-13.) However, review of the MSC transcript in fact shows that RP objected to incorporating all of the terms of the preliminary injunction. (*Id.* at 10:11-14:6.) Defendant Gallian in fact only agreed to the following:

1. RP will not make any other modifications, additions, or improvements without prior approval by the board, requested through counsel. (MSC RT at 10:6-9, 12:13-23.)
2. RP agreed to abide by the CC&Rs, and HOA rules and regulations. (*Id.* at 12:20-24.)
3. If RP believed there was an area not being watered or that something is not being done [in common areas], she would contact her counsel and have counsel contact the HOA attorney so it could be addressed. (*Id.* at 14:2-13.)

Second, MP also contends that "the parties agreed to a stipulation to the terms of the ... WVTRO ... [o]nce the stipulation is executed, the Association will dismiss the WVTRO without prejudice and vacate the hearing set for August 15, 2018 ... [but] [i]f Ms. Gallian violates the stipulation, the Association may go back to Court to reinstate the WVTRO." (Moving papers at 10:12-15, citing MSC RT at p. 15, 32-33.)

CASE TITLE: The Huntington Beach Gables
Homeowners Association vs. Bradley

CASE NO. **30-2017-00913985-CU-CO-CJC**

This is not accurate either. The transcript at first indicates that Association will dismiss WVTRO action as of the date of the MSC (MSC RT at 14:17-19, 15:5-13); that Gallian will not talk to, photograph, make gestures to, or approach any of the board members (*Id.* at 14:19-22); that Gallian will not come onto board members' property; (*Id.* at 14:22) and that if Gallian violates these terms, HOA may refile the WVTRO action (*Id.* at 14:23-24). However, the transcript goes on to state:

MR. KHARRAZIAN: RIGHT. SO THE TERMS -- BASICALLY THEY'LL BE A STIPULATION TO THE TERMS OF THE CURRENT ORDER BUT THE ORDER WILL BE DISMISSED AND DISSOLVED AT THE - -

MS. GALLIAN: TODAY.

MR. KHARRAZIAN: AS OF TODAY.

THE COURT: ALL RIGHT. I - -

MR. KHARRAZIAN: OR AS SOON AS WE CAN GET BEFORE JUDGE STAFFORD AND - -

THE COURT: I THINK THAT'S A REASONABLE COMPROMISE BY THE BOARD. AND I THANK YOU FOR THAT.

MS. GALLIAN: RIGHT.

(*Id.* at 15:5-16.)
...
MS. GALLIAN: I WANT TO MAKE SURE THE LAST THING IS THE TWO REPRESENTATIVES WHO CAN SIGN ON BEHALF OF THE BOARD ARE HERE TO TAKE THE W.V. OFF. THEY CAN DISMISS IT.

THE COURT: YEAH.

MS. GALLIAN: TODAY.

THE COURT: EVERYTHING STOPS.

MR. KHARRAZIAN: HANG ON. ACTUALLY I THINK THE AGREEMENT WAS THAT COUNSEL, MS. FLYER, WILL FILE - -

MS. FLYER: STIPULATION.

MR. KHARRAZIAN: - - THE REQUEST WITH THE WORKPLACE VIOLENCE TRO DEPARTMENT TO ENTER INTO THE STIPULATION, SO I'M NOT SURE THAT THAT CAN HAPPEN TODAY. BUT IT'S - - IT'S - -

MS. FLYER: IT WILL HAPPEN AS SOON AS I CAN - -

MR. KHARRAZIAN: MS. GALLIAN'S COUNSEL'S CONTROL.

---

CASE TITLE: The Huntington Beach Gables
Homeowners Association vs. Bradley

CASE NO: **30-2017-00913985-CU-CO-CJC**

MS. FLYER: AS SOON AS I CAN FEASIBLY DO IT, I WILL DO IT.

THE COURT: THANKS.

MS RADMACHER: AND THE BOARD WILL - - AND MEMBERS AS NEEDED WILL COOPERATE WITH COUNSEL TO EXECUTE ANY DOCUMENTS NEEDED TO ALLOW THAT TO HAPPEN.

MS. FLYER: THANK YOU.

MS. GALLIAN: BUT AS OF RIGHT NOW, THERE'S NOTHING -- THERE'S NO - -

THE COURT: AND ONE FINAL WORD - -

MS. GALLIAN: THERE'S NO WORKPLACE VIOLENCE, AT ALL.

(*Id.* at 32:3-33:5.)

The foregoing shows that the alleged terms of that portion of the stipulated settlement regarding incorporating the WVTRO terms are entirely unclear. "A settlement agreement that incorporates other documents can be enforced pursuant to § 664.6 if there was a "meeting of the minds" regarding the terms of the incorporated documents." (Weil & Brown, Rutter Group, Civil Procedure Before Trial, Chapter 12(II)-F, Section 12:955.6, citing *Weddington Productions, Inc. v. Flick, supra* at 813; emphasis added.)

Here, however, it does not appear that there was any "meeting of the minds" as to what terms of the stipulation to resolve the WVTRO were in fact to include; whether the stipulation to resolve the WVTRO was to be entered in that action, or incorporated into the settlement in the current action; or when the HOA would dismiss the WVTRO action [either as of the date of the MSC, or upon entry of the settlement].

As this is a key term of the purported settlement, and as there does not appear to be a "meeting of the minds" as to the terms of resolution of the WVTRO action, it is unclear how the court could enter judgment of this disputed terms.

Thus, the motion is denied on this basis, as the court cannot grant a CCP 664.6 motion to enforce only a portion of the settlement: "[W]hile the court may, under certain circumstances, reject a settlement agreement as a whole, it may *not* approve only *part* of it for § 664.6 enforcement without the parties' mutual consent." (Weil & Brown, Rutter Group, *Civil Procedure Before Trial*, Chapter 12(II)-F, Section 12:979.2, citing *Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1375; emphasis in original.)

"Moreover, to be binding, the agreement must be *sufficiently definite* to enable courts to give it an exact meaning. If an essential element is reserved for future agreement, it is not definite enough. [Citations.]" (*Id.* at Section 12:955.5.) Here, at least as to the terms of resolution of the WVTRO action, the settlement does not appear to be sufficiently definite to be enforceable.

The court notes that the MSC transcript indicates that the settlement also included additional terms, which MP does not address or discuss:
1. Association was to dismiss this action upon payment of the $15K by Gallian. (MSC RT at 16:6-8.)

CASE TITLE: The Huntington Beach Gables
Homeowners Association vs. Bradley

CASE NO. **30-2017-00913985-CU-CO-CJC**

2. Association would place no further assessments on Gallian's account related to this litigation, including the "tree removal," although Association was not waiving any future claims regarding the "tree removal." (*Id.* at 16:16-25.)

3. Gallian acknowledged HOA's claim of authority to work exclusively in the common area, and agreed not to do any further work in the common area. (*Id.* at 18:2-19:8.)

4. Both the Board and Gallian would comply with the HOA governing documents. (*Id.* at 25:2-11.)

5. Other than any disclosures that the Board is obligated by law to make to its members, the parties are not to make any disclosures about this lawsuit. (*Id.* at 25:14-26:7.)

6. Gallian's five storage bins could remain in place for 90 days or until she moved, whichever came first, and after which time they would be moved "to the parallel parking spots that are across the street from where they are." (*Id.* at 27:5-28:18.)

MP fails to explain why the court should enter a judgment which do not include the above terms.

The motion by plaintiff The Huntington Beach Gables Association to enforce settlement is **denied**. (CCP § 664.6.)

The court finds that the parties did not reach a "meeting of the minds" as to several key terms of the settlement, including allegedly incorporating the terms of the preliminary injunction previously entered in this action, and resolution of the separate Workplace Violence Temporary Restraining Order action.

The request for judicial notice by plaintiff The Huntington Beach Gables Association in support of the moving papers is granted as to Exs. A, E and J. (Ev. 452(d).) As to Ex. J, the court takes judicial notice of the fact that the document was filed, but not of the truth of its contents. (*In re David C.* (1984) 152 Cal.App.3d 1189, 1205.)

Moving party to give notice.

2. MOTION BY CROSS-DEFENDANTS LEE GRAGNANO, TED PHILLIPS, LINDY BECK, JENNIFER PAULIN, JANINE JASSO AND LORI BURRETT TO STRIKE MEMORANDUM OF COSTS

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become the final ruling of the court.

Motion by Cross-defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso and Lori Burrett to Strike Memorandum of Costs:

The motion by cross-defendants Lee Gragnano, Ted Phillips, Lindy Buck, Jennifer Paulin, Janine Jasso, and Lori Burrett to strike the Memorandum of Costs filed by cross-complainant Jamie Gallian is **granted**.

Cross-complainant Gallian dismissed these moving parties; thus, moving parties are the prevailing parties entitled to costs, not Gallian. (CCP 1032(a)(2), (a)(4); CRC 3.1700(b).)

Prevailing parties to give notice.

3. FURTHER RULINGS

CASE TITLE: The Huntington Beach Gables    CASE NO. **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

The Jury Trial set for 08/06/2018 is ordered continued to 12/10/2018 at 9:00 AM.

All discovery cutoff dates and deadlines are continued and shall track the 12/10/2018 trial date.

Discovery issues to be addressed by formal motion.

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**08/07/2018** at 01:42:00 PM

Clerk of the Superior Court
By Marlene Orellana,Deputy Clerk

1  Craig J. Mariam (SBN: 225280)
   cmariam@grsm.com
2  Brenda Radmacher (SBN: 185265)
   bradmacher@grsm.com
3  James E. Hawley (SBN: 299723)
   jhawley@gordonrees.com
4  GORDON & REES LLP
5  633 West Fifth Street, 52nd Floor
   Los Angeles, CA 90071
6  Phone: (213) 576-5000
   Facsimile:  (877) 306-0043
7
   Attorneys for Cross-Defendants
8  The Hunting Beach Gables Homeowners Association; Lee Gragnano; Ted Phillips; Lindy
   Beck; Jennifer Paulin; Janine Jasso; and Lori Burrett
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11          FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

12  THE HUNTINGTON BEACH GABLES          ) Case No. 30-2017-00913985-CU-CO-CJC
    HOMEOWNERS ASSOCIATION, a            )
13  California Nonprofit Mutual Benefit   ) *Honorable James Crandall*
    Corporation,                         )
14                                       ) **CROSS-DEFENDANTS LEE GRAGNANO,**
                                         ) **TED PHILLIPS, LINDY BECK, JENNIFER**
15                    Plaintiff,          ) **PAULIN, JANINE JASSO, AND LORI**
                                         ) **BURRETT'S NOTICE OF MOTION AND**
16           v.                           ) **MOTION FOR AWARD OF ATTORNEYS'**
                                         ) **FEES AND COSTS**
17  SANDRA L. BRADLEY, individually and  )
    as Trustee of the Sandra L. Bradley Trust; ) Hearing Date: September 27, 2018
18  JAMIE L. GALLIAN, an individual; and  ) Hearing Time:  1:30 p.m.
    DOES 1 through 25, inclusive,        ) Dept.: 33
19                                       ) Reservation No. 72865502
                    Defendants.          )
20  _____     ) FAC Filed: May 16, 2017
                                         ) Trial Date: December 10, 2018
21                                       )
                                         ) **Concurrently Filed With:**
22                                       ) 1.  Memorandum of Points and Authorities
       AND RELATED CROSS-ACTIONS.        ) 2.  Declaration of James E. Hawley
23                                       ) 3.  [Proposed] Order
                                         )
24                                       )
                                         )
25                                       )
                                         )
26                                       )
                                         )
27  _____     )
28                                       )

                              -1-
            CROSS-DEFENDANTS' NOTICE OF MOTION AND MOTION FOR
                  AWARD OF ATTORNEYS' FEES AND COSTS

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

08/07/2018 at 01:42:00 PM

Clerk of the Superior Court
By Marlene Orellana, Deputy Clerk

1  Craig J. Mariam (SBN: 225280)
   cmariam@grsm.com
2  Brenda Radmacher (SBN: 185265)
   bradmacher@grsm.com
3  James E. Hawley (SBN: 299723)
   jhawley@gordonrees.com
4  GORDON & REES LLP
   633 West Fifth Street, 52nd Floor
5  Los Angeles, CA 90071
   Phone: (213) 576-5000
6  Facsimile: (877) 306-0043

7  Attorneys for Cross-Defendants
8  THE HUNTING BEACH GABLES HOMEOWNERS ASSOCIATION; LEE GRAGNANO;
   TED PHILLIPS; LINDY BECK; JENNIFER PAULIN; JANINE JASSO; AND LORI
9  BURRETT

10         SUPERIOR COURT OF THE STATE OF CALIFORNIA

11         FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

12  THE HUNTINGTON BEACH GABLES           )  Case No. 30-2017-00913985-CU-CO-CJC
    HOMEOWNERS ASSOCIATION, a             )
13  California Nonprofit Mutual Benefit   )  *Honorable James Crandall*
    Corporation,                          )
14                                        )  **MEMORANDUM OF POINTS AND**
                          Plaintiff,      )  **AUTHORITIES IN SUPPORT OF**
15                                        )  **CROSS-DEFENDANTS LEE**
         v.                               )  **GRAGNANO, TED PHILLIPS, LINDY**
16                                        )  **BECK, JENNIFER PAULIN, JANINE**
    SANDRA L. BRADLEY, individually and   )  **JASSO, AND LORI BURRETT'S**
17  as Trustee of the Sandra L. Bradley Trust; )  **MOTION FOR AWARD OF**
    JAMIE L. GALLIAN, an individual; and  )  **ATTORNEYS' FEES AND COSTS**
18  DOES 1 through 25, inclusive,         )
                                          )  Hearing Date: September 27, 2018
19                        Defendants.     )  Hearing Time: 1:30 p.m.
                                          )  Dept.: 33
20  ─────────────────────────────────     )  Reservation No. 72865502
                                          )
21                                        )  FAC Filed: May 16, 2017
    AND RELATED CROSS-ACTIONS.            )  Trial Date: December 10, 2018
22                                        )
                                          )  **Concurrently Filed With:**
23                                        )     1. Notice of Motion and Motion
                                          )     2. Declaration of James E. Hawley
24                                        )     3. [Proposed] Order

25         Cross-Defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine

26  Jasso, and Lori Burrett (collectively the "Board Members") respectfully submit to this

27  Honorable Court the following Memorandum of Points and Authorities in support of its

28  Motion for Award of Attorneys' Fees and Costs.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  JAMIE L GALLIAN

2  4476 ALDERPORT DRIVE

3  HUNTINGTON BEACH,CA 92649

4  714-321-3449

5  JAMIEGALLIAN@GMAIL.COM

6  IN PRO PER

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**09/26/2018** at 12:30:00 PM
Clerk of the Superior Court
By e Clerk,Deputy Clerk

8  SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9  COUNTY OF ORANGE

10

11  THE HUNTINGTON BEACH GABLES
    HOMEOWNERS ASSOCIATION, a California
12  Nonprofit Mutual Benefit Corporation,

13                          Plaintiff,

14          v.

15  SANDRA L. BRADLEY, individually and as
    Trustee of the Sandra L. Bradley Trust;
16  JAMIE L. GALLIAN, an individual; and DOES
    1 through 25, inclusive,

17                          Defendants.

18

19  —————————————————————————

    AND RELATED CROSS-ACTIONS
20

Case No. 30-2017-00913985-CU-CO-CJC

*Assigned for All Purposes to
Judge James Crandall C33*

**OPPOSITION TO MOTION FOR FEES**

Date:        October 11, 2018
Time:        1:30 p.m.
Dept.:       C33

Trial Date:  December 10, 2018
Jury Trial

21  TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

22                          **1. LEGAL ARGUMENT**

23          Defendant Gallian opposes the motion for fees and costs filed by Cross-Defendants

24  Gragnano, Phillips, Beck, Paulin, Jasso and Burrett, who are jointly represented by the

25  same attorney. The motion must fail because: First, the request for fees is untimely under

26  *Cal. Rules of Court, Rule 3.1702(b)(1)*. Second, Cross-Defendants lack standing to pursue

27  fees. And, third, the governing order did not grant Cross-Defendants interim fees while the

28  remainder of the case continues with the homeowners association.

-1-

DEFENDANT'S OPPOSITION TO MOTION FOR ATTORNEYS FEES

## A. **The Fees Motion is Untimely**

Cross-Defendants assert that they prevailed when the cross-complaint was dismissed and they gave notice of entry of the dismissal on January 31, 2018, [Mtn P&A 3:24-27]. Cross-Defendants filed a cost memorandum on February 13, 2018 [Id., 4:3-4], but tacitly concede that they filed no motion for fees until the subject motion was filed on August 7, 2018. Their motion for fees was filed over six months after entry of notice of dismissal and is time barred.

*Cal. Rules of Court, Rule 3.1702(b)(1)* provides in part:

(a) Application. Except as otherwise provided by statute, this rule applies in civil cases to claims for statutory attorney's fees and claims for attorney's fees provided for in a contract. Subdivisions (b) and (c) apply when the court determines entitlement to the fees, the amount of the fees, or both, whether the court makes that determination because the statute or contract refers to "reasonable" fees, because it requires a determination of the prevailing party, or for other reasons.

(b) Attorney's fees before trial court judgment.

(1) *Time for motion*

A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court . . . must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case . . .

Continuing to the time rule, *Cal. Rules of Court, Rule 8.104* provides in part:

(a) Normal time

(1) . . . a notice of appeal must be filed on or before the earliest of: . . .

(B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled "Notice of Entry" . . .

-2-

DEFENDANT'S OPPOSITION TO MOTION FOR ATTORNEYS FEES

*Cal. Rules of Court, Rule 8.108* does not apply here, but in any event, that rule has an even shorter time period for seeking an appeal in special situations. Accordingly, since Cross-Defendants concede that they did not file motion for fees within 60 days of the date that they gave notice of entry of dismissal, or even within 180 days of entry of dismissal, they are time barred and their motion must be denied.

**B. Cross-Defendants have No Standing to Pursue Fees**

Cross-Defendants claim through their common attorney, Mr. Hawley, that they are all board members [Hawley decl. 2:1-2]. The board members did not file any declarations. First, as to Attorney Hawley, his representation that each of his clients is an owner is hearsay, *Evid. Code §1200*. And, second, Cross-Defendants bear the burden of proof to demonstrate standing, *Evid. Code §500*. There is a failure of proof as to standing. Cross-Defendants rely on *Civil Code §5975(c)* as the basis for fees [Mtn P&A 4:14-19].   *Civil Code §5975(a)* provides:

> The covenants and restrictions in the declaration shall be
>
> enforceable equitable servitudes, unless unreasonable, and
>
> shall inure to the benefit of and bind all owners of separate
>
> interests in the development. Unless the declaration states
>
> otherwise, these servitudes may be enforced by any owner of a
>
> separate interest or by the association, or by both.

There is no competent evidence before the Court that Cross-Defendants are "owners of a separate interest." Further, each of the cases cited by Cross-Defendants involves an action between an owner and an association, not between individuals. Cross-Defendants should have started their analysis with *Farber v. Bay View Terrace Homeowners Assn.* (4th Dist., Div. 3, 2006) 141 Cal.App.4th 1007, 1011 [Id., 5:20] (former owner lacked standing to seek declaratory relief against HOA as to which party had duty to repair leak; fees awarded against former owner), with our Court of Appeal holding:

> The common law rule is the same [as the Davis-Stirling Act].
>
> One who no longer owns land in a development subject to

1  reciprocal restrictions cannot enforce them, absent showing the

2  original covenanting parties intended to allow enforcement by

3  one who is not a landowner.

4      Cross-Defendants have not shown that they are landowners who are entitled to fees

5  against another owner under *Civil Code §1575(a)*. In each of Cross-Defendants'

6  authorities, the higher courts followed the American Rule and attorneys fees were never

7  awarded to individual persons against another individual: *Almanor Lakeside Villas Owners*

8  *Assn. v. Carson* (2016) 246 Cal.App.4th 761 [Mtn P&A 4:15-16] (action by HOA against

9  unit owners and their cross-complaint against the HOA; HOA, not the board members as

10  individuals, was awarded fees); *Salehi v. Surfside III Condominium Owners Assn.* (2011)

11  200 Cal.App.4th 1146 [Id., 4:20-21] (action by owner against HOA, when owner voluntarily

12  dismissed cross-complaint, fees were awarded to HOA); *Rancho Mirage Country Club*

13  *Homeowners Assn. v. Hazelbaker* (4th Dist., 2016) 2 Cal.App.5th 252 [Id., 4:22-23] (HOA

14  was awarded fees against owners who failed to live up to their mediation agreement);

15  *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664 [Id., 4:25-26]

16  (concerned a predecessor statutory provision for fees in action by shareholders against

17  housing cooperative, and fees were denied to the cooperative); *Heather Farms*

18  *Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568 [Id., 5:8] (there was no

19  prevailing party for determination of award of fees based on settlement in action between

20  HOA and owner); and, *Hsu v. Abbara* (1995) 9 Cal.4th 863 [Id., 5:14] (not applicable under

21  the Davis-Stirling Act, since it involved breach of real estate sales contract).

22      The only noteworthy aspect of Cross-Defendants' pleadings is violation of *Cal.*

23  *Rules of Court, Rule 2.104*, because they use font smaller than 12 points.

24  **C. The Court did Not Award Cross-Defendants any Fees**

25      Referring to the Court's minute order, of which Plaintiff-HOA gave notice, at page 6,

26  Cross-Defendants were awarded costs not fees and Cal. Rules of Court 3.1700(b) was

27  cited to place them on notice as to how to claim fees and costs, had they wished to do so,

28  see Exhibit "1," here.

## 2. CONCLUSIONS

Cross-Defendants motion is untimely. As individuals they lack standing to pursue fees against another individual, and the Court did not award Cross-Defendants fees. Cross-Defendants may seek to introduce new evidence in reply which must be disfavored.

Wherefore, Defendant Gallian prays that Cross-Defendants take nothing by their motion and for such further relief as may be proper.

Respectfully submitted,

Dated: September 26, 2018                By:    JAMIE L GALLIAN /S/_____

DEFENDANT'S OPPOSITION TO MOTION FOR ATTORNEYS FEES

# EXHIBIT "1"

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 07/19/2018             TIME: 01:30:00 PM        DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: Candace Khorouzan
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72819785

**EVENT TYPE**: Motion to Enforce Settlement
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Motion - Other Enforce Settlement, 06/22/2018

EVENT ID/DOCUMENT ID: 72852524

**EVENT TYPE**: Motion - Other
MOVING PARTY: Jamie L. Gallian
CAUSAL DOCUMENT/DATE FILED: Motion - Other to Withdraw Memorandum of Cost, 07/17/2018

EVENT ID/DOCUMENT ID: 72842898

**EVENT TYPE**: Motion to Strike or Tax Costs
MOVING PARTY: Ted Phillips, Lindy Beck, Jennifer Paulin, Lee Gragnano, Janine Jasso, Lori Burrett
CAUSAL DOCUMENT/DATE FILED: Motion to Strike or Tax Costs, 02/28/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq. and Joyce J. Kapsal, Esq., from Epsten Grinnell & Howell, APC, present for
Cross - Defendant,Plaintiff(s).
Brenda K. Radmacher, Esq., from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Jamie Gallian, present.

1.    MOTION    BY    PLAINTIFF/CROSS-DEFENDANT    THE    HUNTINGTON    BEACH    GABLES
HOMEOWNERS ASSOCIATION TO ENFORCE SETTLEMENT AND ENTER JUDGMENT PURSUANT
TO THE TERMS OF STIPULATED SETTLEMENT

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both
written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become
the final ruling of the court.

Motion by Plaintiff/Cross-defendant The Huntington Beach Gables Homeowners Association to Enforce
Settlement and Enter Judgment Pursuant to the Terms of Stipulated Settlement:

---

DATE: 07/19/2018                      MINUTE ORDER                           Page 1
DEPT: C33                                                              Calendar No.

CASE TITLE: The Huntington Beach Gables
Homeowners Association vs. Bradley

CASE NO: **30-2017-00913985-CU-CO-CJC**

Moving Party's Request for Judicial Notice [RJN]:

In support of the original moving papers, moving party filed a Notice of Lodgment [NOL] with all of its supporting exhibits, which also requests judicial notice of all of Moving Party's supporting exhibits.

The court grants grant judicial notice as to Ex. A [certified reporter's transcript of the 3-2-18 MSC hearing], Ex. E [certified reporter's transcript of the 6-4-18 OSC hearing], and Ex. J [a criminal complaint filed against responding party Gallian for allegedly violating the restraining order issued in OCSC Case No. 2017-00962999.

All of these documents are properly subject to judicial notice as court records. (Ev. 452(d)(1).) However, as to Ex. J, the court will take judicial notice of the fact that the complaint was filed, but not of the truth of its contents. A court may take judicial notice of the existence of documents in court files, but can only take judicial notice of the truth of facts asserted in such documents as orders, findings of fact and conclusions of law, and judgments. (6 Witkin, Cal. Proc. 5th (2008), Chapter VII, "Proceedings Without Trial," Section 232, p. 674, citing *In re David C.* (1984) 152 Cal.App.3d 1189, 1205.)

The court denies the remainder of the RJN. The remaining documents consists of letters and emails between Moving Party and Responding Party [or their counsel] (MP Exs. C, D, F-H, N], photos of RP allegedly re-installing a corrugated roof (MP Ex. I), copies of numerous police reports allegedly filed against RP by various other residents (MP Exs. L, M, O-S), and an email allegedly from a police detective to MP HOA (MP Ex. S). There is no basis under Evidence Code sec. 452 to take judicial notice of emails, letters, or police reports.

However, these exhibits are otherwise properly authenticated by the various declarations submitted with the moving papers, and there are no evidentiary objections by RP defendant; thus, the court will consider them, despite the fact that many are not properly subject to judicial notice.

Moving Party Reply RJN:

With the Reply, MP submitted a supplemental notice of lodging and request for judicial notice, requesting judicial notice of 14 letters from association residents. The Reply indicates these letters are "from Association residents complaining about Ms. Gallian's bad acts, bullying, harassment, and intimidation." (Reply at 6:16-18.) There are no letters attached to the Reply NOL.

The court denies MP's Reply RJN, because (1) MP does not provide copies of the documents requested (CRC 3.1306(c)); (2) for the same reason, MP has not provided the court with sufficient information to enable it to take judicial notice (Ev. 453(b)); and (3) for the same reason, as well as the fact that the request was not made until the Reply, MP has not provided Responding Party with sufficient notice of the request (Ev. 453(a)).

**Merits:**

In comparing the terms Moving Party contends are part of the settlement agreement, with the transcript of the MSC hearing (MP Ex. A), there are too many discrepancies and inconsistencies to find an enforceable settlement, or a "meeting of the minds" as to several key terms, which are disputed.

CCP 664.6 states:
If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the

CASE TITLE: The Huntington Beach Gables                  CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

A motion to enforce settlement may be decided on declarations. (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.) Moreover, CCP 664.6 provides the court authority to interpret settlement terms and determine disputed factual matters regarding the settlement agreement, based on contract principles, but not to add material terms which were not agreed to by the parties. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) "[N]othing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Id.* at 810)

Moving Party has shown that at the MSC on 3-2-18, plaintiff HOA and defendant Gallian reached a settlement agreement, the terms of which were placed on the record. (MP Ex. A [Certified Reporter's Transcript of the March 2, 2018 MSC ("MSC RT").] The parties also stipulated, and the court agreed on the record, to retain jurisdiction to enforce the settlement pursuant to Code of Civil Procedure section 664.6, and to enter judgment pursuant to the terms of the settlement if necessary. (MP Ex. A at 31:9-21.)

However, MP's summary of the terms of the settlement [moving papers at 9:25-10:23] is inaccurate in numerous respects. More importantly, as to several of the key terms, the MSC transcript shows that the terms were unclear, or that there was no agreement at all. Moreover, Responding Party has a point that the proposed written settlement agreements proposed by Moving Party attorney (MP Exs. D, F, G) include terms which do not appear to be part of the settlement.

First, according to MP, the terms of the stipulated settlement were as set forth at 9:25-10:23 of the moving papers. However, the transcript of the MSC is inconsistent with settlement agreement.

There are also disputes as to the terms of key provisions of the settlement, and thus disputes as to whether the parties in fact reached an agreement as to these terms at all.

First, MP contends the settlement included an agreement that Association would withdraw the preliminary injunction issued by the court on January 11, 2018, but that the terms of the preliminary injunction were incorporated into the settlement agreement. (Moving papers at 10:9-11, citing MSC RT at p. 9, 12-13.) However, review of the MSC transcript in fact shows that RP objected to incorporating all of the terms of the preliminary injunction. (*Id.* at 10:11-14:6.) Defendant Gallian in fact only agreed to the following:

1. RP will not make any other modifications, additions, or improvements without prior approval by the board, requested through counsel. (MSC RT at 10:6-9, 12:13-23.)
2. RP agreed to abide by the CC&Rs, and HOA rules and regulations. (*Id.* at 12:20-24.)
3. If RP believed there was an area not being watered or that something is not being done [in common areas], she would contact her counsel and have counsel contact the HOA attorney so it could be addressed. (*Id.* at 14:2-13.)

Second, MP also contends that "the parties agreed to a stipulation to the terms of the … WVTRO … [o]nce the stipulation is executed, the Association will dismiss the WVTRO without prejudice and vacate the hearing set for August 15, 2018 … [but] [i]f Ms. Gallian violates the stipulation, the Association may go back to Court to reinstate the WVTRO." (Moving papers at 10:12-15, citing MSC RT at p. 15, 32-33.)

CASE TITLE: The Huntington Beach Gables     CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

This is not accurate either. The transcript at first indicates that Association will dismiss WVTRO action as of the date of the MSC (MSC RT at 14:17-19, 15:5-13); that Gallian will not talk to, photograph, make gestures to, or approach any of the board members (*Id.* at 14:19-22); that Gallian will not come onto board members' property; (*Id.* at 14:22) and that if Gallian violates these terms, HOA may refile the WVTRO action (*Id.* at 14:23-24). However, the transcript goes on to state:

MR. KHARRAZIAN: RIGHT. SO THE TERMS -- BASICALLY THEY'LL BE A STIPULATION TO THE TERMS OF THE CURRENT ORDER BUT THE ORDER WILL BE DISMISSED AND DISSOLVED AT THE - -

MS. GALLIAN: TODAY.

MR. KHARRAZIAN: AS OF TODAY.

THE COURT: ALL RIGHT. I - -

MR. KHARRAZIAN: OR AS SOON AS WE CAN GET BEFORE JUDGE STAFFORD AND - -

THE COURT: I THINK THAT'S A REASONABLE COMPROMISE BY THE BOARD. AND I THANK YOU FOR THAT.

MS. GALLIAN: RIGHT.

(*Id.* at 15:5-16.)
…
MS. GALLIAN: I WANT TO MAKE SURE THE LAST THING IS THE TWO REPRESENTATIVES WHO CAN SIGN ON BEHALF OF THE BOARD ARE HERE TO TAKE THE W.V. OFF. THEY CAN DISMISS IT.

THE COURT: YEAH.

MS. GALLIAN: TODAY.

THE COURT: EVERYTHING STOPS.

MR. KHARRAZIAN: HANG ON. ACTUALLY I THINK THE AGREEMENT WAS THAT COUNSEL, MS. FLYER, WILL FILE - -

MS. FLYER: STIPULATION.

MR. KHARRAZIAN: - - THE REQUEST WITH THE WORKPLACE VIOLENCE TRO DEPARTMENT TO ENTER INTO THE STIPULATION, SO I'M NOT SURE THAT THAT CAN HAPPEN TODAY. BUT IT'S - - IT'S - -

MS. FLYER: IT WILL HAPPEN AS SOON AS I CAN - -

MR. KHARRAZIAN: MS. GALLIAN'S COUNSEL'S CONTROL.

---

DATE: 07/19/2018                    MINUTE ORDER                         Page 4
DEPT: C33                                                            Calendar No.

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

MS. FLYER: AS SOON AS I CAN FEASIBLY DO IT, I WILL DO IT.

THE COURT: THANKS.

MS RADMACHER: AND THE BOARD WILL - - AND MEMBERS AS NEEDED WILL COOPERATE WITH COUNSEL TO EXECUTE ANY DOCUMENTS NEEDED TO ALLOW THAT TO HAPPEN.

MS. FLYER: THANK YOU.

MS. GALLIAN: BUT AS OF RIGHT NOW, THERE'S NOTHING -- THERE'S NO - -

THE COURT: AND ONE FINAL WORD - -

MS. GALLIAN: THERE'S NO WORKPLACE VIOLENCE, AT ALL.

(*Id.* at 32:3-33:5.)

The foregoing shows that the alleged terms of that portion of the stipulated settlement regarding incorporating the WVTRO terms are entirely unclear. "A settlement agreement that incorporates other documents can be enforced pursuant to § 664.6 <u>if there was a "meeting of the minds" regarding the terms of the incorporated documents</u>." (Weil & Brown, Rutter Group, Civil Procedure Before Trial, Chapter 12(II)-F, Section 12:955.6, citing *Weddington Productions, Inc. v. Flick*, *supra* at 813; emphasis added.)

Here, however, it does not appear that there was any "meeting of the minds" as to what terms of the stipulation to resolve the WVTRO were in fact to include; whether the stipulation to resolve the WVTRO was to be entered in that action, or incorporated into the settlement in the current action; or when the HOA would dismiss the WVTRO action [either as of the date of the MSC, or upon entry of the settlement].

As this is a key term of the purported settlement, and as there does not appear to be a "meeting of the minds" as to the terms of resolution of the WVTRO action, it is unclear how the court could enter judgment of this disputed terms.

Thus, the motion is denied on this basis, as the court cannot grant a CCP 664.6 motion to enforce only a portion of the settlement: "[W]hile the court may, under certain circumstances, reject a settlement agreement as a whole, it may *not* approve only *part* of it for § 664.6 enforcement without the parties' mutual consent." (Weil & Brown, Rutter Group, *Civil Procedure Before Trial*, Chapter 12(II)-F, Section 12:979.2, citing *Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1375; emphasis in original.)

"Moreover, to be binding, the agreement must be *sufficiently definite* to enable courts to give it an exact meaning. If an essential element is reserved for future agreement, it is not definite enough. [Citations.]" (*Id.* at Section 12:955.5.) Here, at least as to the terms of resolution of the WVTRO action, the settlement does not appear to be sufficiently definite to be enforceable.

The court notes that the MSC transcript indicates that the settlement also included additional terms, which MP does not address or discuss:
1. Association was to dismiss this action upon payment of the $15K by Gallian. (MSC RT at 16:6-8.)

CASE TITLE: The Huntington Beach Gables     CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

2. Association would place no further assessments on Gallian's account related to this litigation, including the "tree removal," although Association was not waiving any future claims regarding the "tree removal." (*Id.* at 16:16-25.)

3. Gallian acknowledged HOA's claim of authority to work exclusively in the common area, and agreed not to do any further work in the common area. (*Id.* at 18:2-19:8.)

4. Both the Board and Gallian would comply with the HOA governing documents. (*Id.* at 25:2-11.)

5. Other than any disclosures that the Board is obligated by law to make to its members, the parties are not to make any disclosures about this lawsuit. (*Id.* at 25:14-26:7.)

6. Gallian's five storage bins could remain in place for 90 days or until she moved, whichever came first, and after which time they would be moved "to the parallel parking spots that are across the street from where they are." (*Id.* at 27:5-28:18.)

MP fails to explain why the court should enter a judgment which do not include the above terms.

The motion by plaintiff The Huntington Beach Gables Association to enforce settlement is **denied**. (CCP § 664.6.)

The court finds that the parties did not reach a "meeting of the minds" as to several key terms of the settlement, including allegedly incorporating the terms of the preliminary injunction previously entered in this action, and resolution of the separate Workplace Violence Temporary Restraining Order action.

The request for judicial notice by plaintiff The Huntington Beach Gables Association in support of the moving papers is granted as to Exs. A, E and J. (Ev. 452(d).) As to Ex. J, the court takes judicial notice of the fact that the document was filed, but not of the truth of its contents. (*In re David C.* (1984) 152 Cal.App.3d 1189, 1205.)

Moving party to give notice.

2. MOTION BY CROSS-DEFENDANTS LEE GRAGNANO, TED PHILLIPS, LINDY BECK, JENNIFER PAULIN, JANINE JASSO AND LORI BURRETT TO STRIKE MEMORANDUM OF COSTS

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become the final ruling of the court.

Motion by Cross-defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso and Lori Burrett to Strike Memorandum of Costs:

The motion by cross-defendants Lee Gragnano, Ted Phillips, Lindy Buck, Jennifer Paulin, Janine Jasso, and Lori Burrett to strike the Memorandum of Costs filed by cross-complainant Jamie Gallian is **granted**.

Cross-complainant Gallian dismissed these moving parties; thus, moving parties are the prevailing parties entitled to costs, not Gallian. (CCP 1032(a)(2), (a)(4); CRC 3.1700(b).)

Prevailing parties to give notice.

3. FURTHER RULINGS

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

The Jury Trial set for 08/06/2018 is ordered continued to 12/10/2018 at 9:00 AM.

All discovery cutoff dates and deadlines are continued and shall track the 12/10/2018 trial date.

Discovery issues to be addressed by formal motion.

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CENTRAL JUSTICE CENTER

## MINUTE ORDER

DATE: 11/09/2018        TIME: 08:30:00 AM      DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: Eric Yu
REPORTER/ERM: Janet (ACRPT) Taylor CSR# 9463
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72926149

**EVENT TYPE**: Ex Parte
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 11/07/2018

---

**APPEARANCES**
BRENDA K. RADMACHER, specially appearing for Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
PEJMAN D. KHARRAZIAN, specially appearing for Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.

---

Ex-Parte application for TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INUNCTION TO ENJOIN DISBURSEMENTS FROM PROCEEDS OF SALE OF REAL PROPERTY, OR ALTERNATIVELY, FOR AN ORDER REQUIRING GALLIAN TO DEPOSIT AT LEAST $52,145.27 WITH THE COURT is requested by the Huntington Beach Gables Homeowners Association and Board members'.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Ex Parte application for Temporary restraining order and order to show cause for preliminary inunction to enjoin disbursements from proceeds of sale of real property, or alternatively, for an order requiring gallian to deposit at least $52,145.27 with the court is denied without prejudice.

Ex-Parte application TO CONTINUE TRIAL is requested by Plaintiff.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

---

DATE: 11/09/2018            MINUTE ORDER            Page 1
DEPT: C33                                           Calendar No.

CASE TITLE: The Huntington Beach Gables    CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

EX PARTE APPLICATION TO CONTINUE TRIAL is denied.

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 11/16/2018          TIME: 08:30:00 AM          DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: Darci Mullarky CSR# 5569
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 72930711

**EVENT TYPE**: Ex Parte
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 11/15/2018

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross -
Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.
Steven A. Fink, Esq. in a limited scope representation.

EX PARTE APPLICATION BY PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS
ASSOCIATION FOR ORDER SHORTENING TIME RE (1) MOTION TO BE DEEMED PREVAILING
PARTY AND (2) MOTION TO COMPEL AND FOR TERMINATING SANCTIONS AGAINST JAMIE L.
GALLIAN; AND FOR A STAY OF THE ACTION

Hearing held in open court. A discussion is held regarding the status of this matter and the court rules as
follows:

The Application by Plaintiff for an Order Shortening Time is granted.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to be Deemed the
Prevailing Party, For an Award of Its Attorney's Fees and Costs and For Judgment on Its Complaint, set
for 01/17/2018 is ordered advanced to the date of trial, 12/10/2018 at 9:00 a.m. in Department C33.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to Compel and for
Terminating Sanctions or Issue/Evidence Sanctions Against Defendant, and for Monetary Sanctions, set
for 01/17/2018 is ordered advanced to the date of trial, 12/10/2018 at 9:00 a.m. in Department C33.

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 12/06/2018          TIME: 01:30:00 PM          DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: (ACRPT) Candace Khorouzan CSR# 11579
BAILIFF/COURT ATTENDANT: Nicole Guerrero

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72902420
**EVENT TYPE**: Motion for Judgment on the Pleadings
MOVING PARTY: Jamie L. Gallian
CAUSAL DOCUMENT/DATE FILED: Motion for Judgment on the Pleadings, 09/26/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present telephonically.

MOTION BY JAMIE L. GALLIAN FOR JUDGMENT ON THE PLEADINGS

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become the final ruling of the court.

The request for judicial notice by defendant Jamie L. Gallian is granted as to the original complaint (Ex. 1), the First Amended Complaint (Ex. 2), and the "Certificate Re Compliance with Civil Code Section 5950" (Ex. 4). (Ev. 452(d)(1).)

Defendant's request for judicial notice is denied as to the letter attached as Ex. 3.

The motion for judgment on the pleadings by defendant Jamie L. Gallian is denied.

Moving party has not shown that the court has no jurisdiction of the subject of any cause of action alleged by plaintiff, nor has she shown that the First Amended Complaint fails to state facts sufficient to constitute a cause of action against this moving defendant. (CCP 438(c)(1)(B); *Leko v. Cornerstone Building Inspection Service* (2001) 86 Cal.App.4th 1109, 1114 [like a demurrer, motion for judgment on the pleadings lies only for defects apparent on the face of the pleading or which are subject to judicial notice, and the facts alleged in the pleading are presumed true; extraneous evidence not properly subject to judicial notice is not permitted].)

---

CASE TITLE: The Huntington Beach Gables    CASE NO.: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

Moving party fails to show that the prelitigation alternative dispute resolution [ADR] requirements of Civil Code 5930 et seq. apply (see Civil Code 5930(b)); fails to show that any prelitigation ADR demand was untimely; and fails to cite evidence or authority that moving party's time to respond to any prelitigation ADR demand (Civil Code 5935(c)) only commences once she became a member.

Moving party's other arguments go to the merits of plaintiff's claims, and/or rely on extrinsic evidence not properly subject to judicial notice, and thus are not appropriate for a motion for judgment on the pleadings.

The court also notes that moving party failed to submit the declaration required by CCP 439.

Plaintiff The Huntington Beach Gables Homeowners Association to give notice.

Housekeeping matters are addressed. Department C33 is presently engaged in trial on an unrelated matter. The court issues the following orders:

The Jury Trial set for 12/10/2018 in Department C33 is vacated.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to be Deemed the Prevailing Party, For an Award of Its Attorney's Fees and Costs and For Judgment on Its Complaint, set for 12/10/2018, is ordered continued to 01/31/2019 at 01:30 PM in this department.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to Compel and for Terminating Sanctions or Issue/Evidence Sanctions Against Defendant, and for Monetary Sanctions, set for 12/10/2018 is ordered continued to 01/31/2019 at 01:30 PM in this department.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
5801 SKYLAB RD
HUNTINGTON BEACH, CA 92647

A true and correct copy of the foregoing document entitled: OPPOSITION **TO MOTION REGARDING
THE AUTOMATIC STAY AND DECLARATION(S) IN SUPPORT** will be served or was
served **(a)** on the judge in chambers in the form and
manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
06/28/2023____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____ served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/28/2023 | ROBERT MCLELLAND | *Robert McLelland* |
| Date | Printed Name | Signature |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                                    Page 4                                    **F 4001-1.RFS.RESPONSE**