JEFFREY I. GOLDEN (State Bar No. 133040)
*jgolden@go2.law*
3070 Bristol Street, Suite 640
Costa Mesa, CA  92626
Telephone:  (714) 966-1000
Facsimile: (714) 966-1002

Chapter 7 Trustee


ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br><br>JAMIE LYNN GALLIAN,<br><br><br><br>Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>**TRUSTEE'S NOTICE OF APPLICATION AND APPLICATION TO EMPLOY REAL ESTATE BROKER COLDWELL BANKER REALTY AND AGENTS WILLIAM FRIEDMAN AND GREG BINGHAM PURSUANT TO 11 U.S.C. §§ 327 AND 328; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF WILLIAM FRIEDMAN AND GREG BINGHAM AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT**<br><br>**[16222 Monterey Lane, Space #376, Huntington Beach, CA 92649]**<br><br>**DATE:    July 30, 2024 (Via ZoomGov)**<br>**TIME:    11:00 a.m.**<br>**PLACE:  Courtroom "5C"** |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTOR; AND PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that on July 30, 2024, at 11:00 a.m., in Courtroom "5C" of the United States Bankruptcy Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the estate of Jaime Lynn Gallian (the "Debtor"), seeks an order authorizing him to employ real estate broker Coldwell Banker Realty and agents William Friedman and Greg Bingham as his real estate broker, at the expense of the estate (the "Application").

The application is based upon this notice of application, the attached application, the complete files and records of this case, the attached Statement of Disinterestedness, and upon such other evidentiary matters as may be presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that any party seeking to oppose the Application must, not later than 14 days before the hearing date, file a written opposition with the Clerk of the Court and serve copies of the opposition upon the Trustee and Debtor's counsel and upon the Office of the United States Trustee, 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701. Failure to file and serve oppositions as set forth above may be deemed consent to the relief sought in the motion.  If you do not have any opposition to the motion and/or to approval of the Application, you need not take any further action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1       **PLEASE TAKE FURTHER NOTICE THAT the hearing on the Application will be**

2 **conducted by the Court remotely using ZoomGov audio and video technology only.**

3 **Accessibility information will be provided by the Court in its tentative ruling prior to the**

4 **hearing and may be viewed online at online at:**

5      http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

6

7 DATED:  July 1, 2024           DANNING, GILL, ISRAEL & KRASNOFF, LLP

8

9                     By:        */s/ Aaron E. de Leest*

10                         AARON E. DE LEEST
                        Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM AND POINTS AND AUTHORITIES

Jeffrey I. Golden, the Chapter 7 trustee ("Trustee") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), files this *Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  In support of the Application, the Trustee submits the following memorandum of points and authorities and the attached declarations of William Friedman ("Friedman Declaration") and Greg Bingham ("Bingham Declaration").

## I.

## STATEMENTS OF FACTS

### A.    BANKRUPTCY BACKGROUND

On July 9, 2021 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, including her bankruptcy schedules.

Jeffrey I. Golden was thereafter appointed the Chapter 7 trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors.

On the Petition Date, the registered title owner of the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 ("Property"), was vested in J-Sandcastle Co, LLC ("J-Sandcastle).  The Debtor was not on title to the Property on the Petition Date.

The Property was also subject to a consensual lien on the Property in favor of J-Pad, LLC ("J-Pad") in the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's family members, ex-husband, and former roommate as discussed below.

### B.    THE HOMESTEAD EXEMPTION

The Debtor claimed a homestead exemption in the Property in the amount of $600,000.

On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption (the "Exemption Motion") (*docket no. 95*).  The hearing on the Exemption Motion was held on June 2,

1  2022 and continued to July 21, 2022.  At the continued hearing, the Court granted the Exemption

2  Motion and disallowed any claim of exemption by the Debtor in the Property.

3       On or about July 26, 2022, the Debtor filed the Motion for Reconsideration from the

4  Court's July 21, 2022 ruling (the "Motion for Reconsideration") (*docket no. 157*).  The order

5  granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*).

6  The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court

7  took the matter under submission.

8       Thereafter, on or about December 19, 2022, the Court entered its order granting the

9  Debtor's Motion for Reconsideration and determined that the Debtor was entitled to a homestead

10  exemption in the Property in the amount of $600,000 ("Order Granting the Motion for

11  Reconsideration") (*docket no. 274*).

12       On or about December 29, 2022, Houser appealed from the Order Granting the Motion for

13  Reconsideration to the District Court (*docket no. 280*).

14       On or about November 1, 2023, the District Court handling the appeal entered an order that

15  reversed and remanded the Order Granting the Motion for Reconsideration on the grounds that the

16  Court failed to issue findings regarding the Debtor's interest in the Property "including whether

17  "Gallian ever acquired (and retained) an equitable interest in the Property" (the "Reconsideration

18  Order") (*docket no. 387*).

19       On or about May 15, 2024, the Court entered its order regarding the Reconsideration Order

20  (the "Remand Order ) (*docket no. 393*).  The Remand Order again found "that Debtor held a

21  sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal.

22  Civ. Proc. Code § 704.720(a)."

23       Hauser did not pursue any further appeal from the Remand Order and it is now final.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**C.    PRIOR FILING OF APPLICATION TO EMPLOY REAL ESTATE
BROKER**

On or about July 28, 2022, after the Debtor's exemption was disallowed at the hearing on July 21, 2022, the Trustee filed his Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant To 11 U.S.C. 327 and 328 (the "First Application") (*docket no. 162*) to assist the Trustee with marketing and selling the Property for the benefit of the estate and its creditors.

On or about September 28, 2022, the Court entered an order denying the Trustee's First Application, without prejudice, in light of the pending Motion for Reconsideration and need for the Trustee to address the various transfers of title and liens on the Property that needed to be avoided (*docket no. 241*).  For the reasons set forth below, the Trustee now believes that he has addressed the issues raised by the Court and that the employment of a real estate broker is ripe for determination.

**D.    TRUSTEE'S AVOIDANCE AND RECOVERY OF TRANSFERS OF TITLE
AND LIENS ON THE PROPERTY**

On or about June 30, 2023, the Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* (the "Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E. J. Gallian (collectively, the "Defendants").

**1.    Stipulated Judgments**

Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay, E. J. Gallian (the "Family Defendants") (*adv. docket nos. 43*), a stipulated judgment was entered against the Family Defendants on or about October 3, 2023 (*adv. docket no. 47*).  The judgment against the Family Defendants avoided the liens on the Property in favor of the Family Defendants.

1  The judgment also preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C.

2  § 551.

3         Pursuant to a stipulation with defendant Robert J. McLelland (*adv. docket nos. 52*), a

4  stipulated judgment was entered against Mr. McLelland on or about March 29, 2024 (*adv. docket*

5  *no. 66*).  The judgment against Mr. McLelland also avoided his lien on the Property in favor of the

6  Family Defendants.  The judgment also preserved those liens for the benefit of the Debtor's estate

7  pursuant to 11 U.S.C. § 551.

8

9              **2.    Default Judgments**

10        Pursuant to motions for default judgment filed by the Trustee with respect to defendants J-

11 Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, the "Defaulting Defendants") (*adv. docket*

12 *nos. 58, 59, and 76*), default judgments were entered against the Defaulting Defendants on or about

13 May 10, 2024 (*adv. docket nos. 79, 81 and 83*).

14        The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of

15 title of the Property to J-Sandcastle and recovered legal title to the Property and the beneficial

16 interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee.

17        The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the

18 amount of $225,000 and other liens on the Property in favor of J-Pad.  The judgment also preserved

19 those liens for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551.

20        The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont

21 does not have any interest in the Property and any valid, perfected, and/or unavoidable liens on the

22 Property.  It also avoided his liens on the Property and preserved those liens for the benefit of the

23 Debtor's estate pursuant to 11 U.S.C. § 551.

24

25              **3.    Trustee's Ability to Sell Property**

26        As a result of the above, title to the Property has been restored to the estate and the Property

27 is property of the estate.  In addition, the $225,000 consensual lien of J-Pad on the Property, and

28 the other consensual liens and interests on the Property in favor of the Family Defendants, Mr.

1   Pierpont, and Mr. McLelland, have been avoided and preserved for the benefit of the Debtor's

2   estate in the Trustee's name.

3          Although the Debtor has claimed a homestead exemption in the Property, the allowed

4   amount of the Debtor's homestead is determined when the Property is sold, rather than being fixed

5   as of the date the Debtor filed bankruptcy. *Robertson v. Alsberg (In re Alsberg)*, 161 B.R. 680, 684

6   (B.A.P. 9th Cir. 1993), aff'd, 68 F.3d 312 (9th Cir. 1995).  Furthermore, the Debtor's exemption in

7   the Property only comes from equity following consensual liens, which liens include the J-Pad lien.

8   *See* Cal. Code Civ. P. § 703.010.  Exemptions may be claimed only against involuntary liens, such

9   as judgments, attachments, and execution liens, and then only if the procedures of section 522(f)

10  are followed.  *Id.*  Thus, the consensual liens on the Property come ahead of any allowed amount of

11  the Debtor's homestead exemption.  *See In re Roach,* 2019 WL 408628, at *3-5 (B.A.P. 9th  Cir.

12  Jan, 29, 2019); *see also In re Bunn-Rodemann*, 491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013).

13         The Trustee now believes, notwithstanding the Debtor's allowed homestead exemption, that

14  he is in a position to sell the Property for the benefit of the estate and creditors.  The Trustee's

15  interest in the Property, in light of the avoided and preserved consensual J-Pad lien in the amount

16  of $225,000, and any other consensual liens, is senior to the Debtor's homestead exemption and

17  any distribution from the sales proceeds must be paid to the Trustee first in connection with the

18  consensual liens, and prior to any amount that the Debtor may be entitled to in connection with her

19  homestead exemption.  For example, the avoided and preserved consensual J-Pad lien of $225,000,

20  plus interest, which amount with interest the Trustee calculates to be not less than $293,791.44, as

21  of June 6, 2024, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90 per

22  day) must be paid before the any other junior liens and the Debtor's homestead exemption.

23  Because most if not all of the sales proceeds will be exhausted by the consensual liens that the

24  Debtor recorded against the Property, including the J-Pad lien, it is anticipated that there will little

25  to no proceeds available to pay with respect to the Debtor's claim of exemption in the Property.

26  / / /

27  / / /

28  / / /

## II.

## PROPOSED EMPLOYMENT OF REAL ESTATE BROKER AND AGENTS

The Trustee has solicited the assistance of Coldwell Banker Realty, a licensed California real estate broker ("Broker"), and William Friedman and Greg Bingham (together, "Agents"), agents of the Broker, in determining the value of the Property. Mr. Bingham has advised the Trustee that the fair market value of the Property is currently at or near $320,000. *See* Bingham Declaration.

To facilitate the sale of the Property, the Trustee seeks to employ an experienced and reputable real estate broker and proposes to employ the Broker and the Agents pursuant to 11 U.S.C. §§ 327(a) and 328. The Broker has agreed to advertise the Property, to market and show the Property, to represent the Estate in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the best offer for the sale of the Property.

The terms of employment agreed to by the Trustee, subject to approval of the Court, as set forth in the residential listing agreement, manufactured home listing addendum, and addendum to exclusive authorization and right to sale (together, "Listing Agreement") attached as Exhibit 1, are as follows:

1.      The Broker will have an exclusive listing on the Property, and the listing price will be $320,000. The Listing Agreement, including the listing price, may be modified by the Trustee in his sole discretion (except as to commission). The listing and sale of the Property are subject to Bankruptcy Court approval, and any sale of the Property will be "as is," without any representations, guarantees or warranties of any kind, whether expressed or implied, by the Trustee. Upon the presentation of an acceptable purchase offer for the Property, the Trustee will file a motion seeking court authority to sell the Property and pay the total broker's commission of six percent (6%) from the sale proceeds through escrow. A commission shall be paid only if a sale of the Property actually closes by the Trustee. The Trustee's motion will contain an overbid procedure.

2.      The Agents are informed and understand that no sale may be consummated until after notice and a hearing. Further, the Agents are aware of the provisions of 11 U.S.C. § 328(a)

1  and understand and accept that, notwithstanding the terms and conditions of employment and

2  compensation provided in the Listing Agreement, the Court may allow compensation different

3  from the compensation provided under such terms and conditions after the conclusion of such

4  employment, if such terms and conditions prove to have been improvident in light of developments

5  not capable of being anticipated at the time of the fixing of such terms and conditions.

6       The Agents are well qualified to represent the Trustee and the Estate in connection with the

7  marketing and sale of the Property.  Their profiles are attached collectively as Exhibit 2.

8  **III.**

9  **THE BROKER AND AGENTS CAN BE EMPLOYED PURSUANT TO 11 U.S.C.§ 327(a)**

10       Pursuant to 11 U.S.C. § 327(a), a trustee may employ attorneys and other professional

11  persons who do not hold or represent an interest adverse to the estate, and who are disinterested

12  persons, to represent or assist the trustee in carrying out the trustee's duties.

13       The Trustee has previously employed the Broker and the Agents in cases that are unrelated

14  to the Debtor's case.  David M. Goodrich, a partner in the Trustee's firm, has also employed the

15  Broker and William Friedman in other cases not involving the Debtor.  In addition, Danning, Gill,

16  Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have

17  worked with and retained the Broker and Agents in other cases not involving the Debtor.

18       Except as provided above, to the best of the Trustee's knowledge, and based upon the

19  attached Friedman and Bingham Declarations, the Broker and the Agents:

20       1.     have no connection with the Debtor, the Debtor's principals, insiders,

21  creditors, the Trustee, or any other party in interest, or their respective attorneys and accountants, or

22  any person employed in the Office of the United States Trustee;

23       2.     are not creditors, equity security holders or insiders of the Debtor;

24       3.     are not and were not, within two years before the date of the filing of the petitions,

25  directors, officers, or employees of the Debtor;

26       4.     do not represent an individual or entity with an interest adverse to the Estate;

27       5.     are not related to the United States Trustee or to the Bankruptcy Judge assigned to

28  this case;

6.     are disinterested within the meaning of 11 U.S.C. §§ 327(a) and 101(14);

7.     do not have any fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling broker, as provided for in the Listing Agreement; and

8.     will not receive a retainer in this case.

## IV.

## <u>CONCLUSION</u>

The Trustee believes the employment of the Broker and the Agents on the terms and conditions provided herein is in the best interest of the Trustee and the Debtor's estate.

WHEREFORE, the Trustee prays that the Application be approved and he be authorized to employ the Broker and the Agents, as an expense of the Estate, to market and sell the Property upon the terms and conditions set forth herein and in the Listing Agreement, and that he be authorized to execute the Listing Agreement attached hereto and any and all other ancillary documents necessary to list the Property for sale, and to modify and extend the listing (except not to increase the commission) in his sole discretion without further Court order. The Trustee further prays for all other and further relief.

DATED:  June 28, 2024

_____
Jeffrey I. Golden, Chapter 7 Trustee

SUBMITTED BY:

DATED: July 1, 2024          DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:     _/s/ Aaron E. de Leest_____
AARON E. DE LEEST
Attorneys for Jeffrey I. Golden,
Chapter 7 Trustee

1773193.1  27064                          11

1       **<u>DECLARATION OF WILLIAM FRIEDMAN</u>**

2       I, WILLIAM FRIEDMAN, declare as follows:

3       1.      I am a real estate agent licensed in the State of California.  I have personal

4   knowledge of the facts set forth herein, except as to those stated on information and belief and, as

5   to those, I am informed and believe them to be true.  If called as a witness, I could and would

6   competently testify to the matters stated herein.  I make this declaration in support of Application

7   of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents

8   William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328; Memorandum of

9   Points and Authorities; and Declarations of William Friedman and Greg Bingham in Support.

10      2.      I am an agent of Coldwell Banker, located at 1608 Montana Avenue, Santa Monica,

11  California 90403.

12      3.      The Broker and I are qualified to represent the Trustee and the Estate in connection

13  with the marketing and sale of the Property.  A true and correct copy of the Listing Agreement is

14  attached as Exhibit 1.  A true and correct copy of my profile is attached as Exhibit 2.

15      4.      On behalf of the Broker, I have agreed to accept employment on the terms and

16  conditions set forth in the Application.

17      5.      The Broker and I have been employed by the Trustee in other unrelated matters.

18  The Broker and I also have been employed by David M. Goodrich, a partner in the Trustee's firm,

19  in other cases not involving the Debtor.  In addition, Danning, Gill, Israel & Krasnoff, LLP, the

20  Trustee's general counsel, and attorney-trustees at that firm, have worked with the Broker and me

21  in other cases not involving the Debtor.

22      6.      To the best of my knowledge, except as provided above, the Broker and I:

23          a.      have no connection with the Debtor, the Debtor's principals, insiders,

24  creditors, the Trustee, any other party or parties in interest, their respective attorneys and

25  accountants, or any person employed in the Office of the United States Trustee;

26          b.      are not creditors, equity security holders or insiders of the Debtor;

27          c.      are not and were not, within two (2) years before the date of the filing of the

28  petition herein, directors, officers or employees of the Debtor;

1                    d.      do not represent an individual or entity which holds an interest adverse to the

2    Estate;

3                    e.      are not related to the United States Trustee or to the Bankruptcy Judge

4    assigned to this case;

5                    f.      are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

6                    g.      have no fee sharing arrangement, understanding or compensation sharing

7    arrangement with any other entity, except for the customary division of the commission from the

8    sale of a property between the listing broker and the selling broker, as provided for in the Listing

9    Agreement; and

10                   h.      will not receive a retainer in this case.

11

12         I declare under penalty of perjury under the laws of the United States of America that the

13   foregoing is true and correct.

14         Executed on this 27 day of June, 2024, at Los Angeles, California.

15

16                                       _____

17                                    WILLIAM FRIEDMAN

18

19

20

21

22

23

24

25

26

27

28

1773193.1  27064                                          13

## <u>DECLARATION OF GREG BINGHAM</u>

I, GREG BINGHAM, declare as follows:

1.      I am a real estate agent licensed in the State of California.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328; Memorandum of Points and Authorities; and Declarations of William Friedman and Greg Bingham in Support.

2.      I have advised the Trustee that the current market value of the Property is at or near $320,000.

3.      The Broker and I are qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Property.  A true and correct copy of the Listing Agreement is attached as Exhibit 1.  A true and correct copy of my profile is attached as Exhibit 2.

4.      On behalf of the Broker, I have agreed to accept employment on the terms and conditions set forth in the Application.

5.      The Broker and I are employed by the Trustee in other unrelated matters.  In addition, Danning, Gill, Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have worked with the Broker and me in other cases not involving the Debtor.

6.      To the best of my knowledge, except as provided above, the Broker and I:

        a.      have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

        b.      are not creditors, equity security holders or insiders of the Debtor;

        c.      are not and were not, within two (2) years before the date of the filing of the petition herein, directors, officers or employees of the Debtor;

        d.      do not represent an individual or entity which holds an interest adverse to the Estate;

1773193.1  27064                              14

1             e.        are not related to the United States Trustee or to the Bankruptcy Judge

2 assigned to this case;

3             f.        are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

4             g.        have no fee sharing arrangement, understanding or compensation sharing

5 arrangement with any other entity, except for the customary division of the commission from the

6 sale of a property between the listing broker and the selling broker, as provided for in the Listing

7 Agreement; and

8             h.        will not receive a retainer in this case.

9

10      I declare under penalty of perjury under the laws of the United States of America that the

11 foregoing is true and correct.

12      Executed on this _27_ day of June, 2024, at Los Angeles, California.

13

14

GREG BINGHAM

## REQUEST FOR JUDICIAL NOTICE

Jeffrey I. Golden, Chapter 7 Trustee (the "Trustee" or the "Plaintiff") hereby respectfully requests that the Court take judicial notice of the following facts pursuant to Fed. R. Evid. 201(d):

### BACKGROUND

1. On or about July 9, 2021 (the "Petition Date"), Jamie Lynn Gallian (the "Debtor") commenced this case by filing a voluntary petition for relief under Chapter 7 of the Code.

2. On the Petition Date, the registered title owner of the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 ("Property"), was vested in J-Sandcastle Co, LLC ("J-Sandcastle"). The Debtor was not on title to the Property on the Petition Date.

3. On the Petition Date, the Property was subject to a consensual lien on the Property in favor of J-Pad, LLC ("J-Pad") in the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's family members, ex-husband, and former roommate.

### THE HOMESTEAD EXEMPTION

4. The Debtor claimed a homestead exemption in the Property in the amount of $600,000.

5. On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption (the "Exemption Motion") (*docket no. 95*). The hearing on the Exemption Motion was held on June 2, 2022 and continued to July 21, 2022. At the continued hearing, the Court granted the Exemption Motion and disallowed any claim of exemption by the Debtor in the Property.

6. On or about July 26, 2022, the Debtor filed the Motion for Reconsideration from the Court's July 21, 2022 ruling (the "Motion for Reconsideration") (*docket no. 157*). The order granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*). The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court took the matter under submission.

7. Thereafter, on or about December 19, 2022, the Court entered its order granting the Debtor's Motion for Reconsideration and determined that the Debtor was entitled to a homestead

1   exemption in the Property in the amount of $600,000 ("Order Granting the Motion for

2   Reconsideration") (*docket no. 274*).

3         8.      On or about December 29, 2022, Houser appealed from the Order Granting the

4   Motion for Reconsideration to the District Court (*docket no. 280*).

5         9.      On or about November 1, 2023, the District Court handling the appeal entered an

6   order that reversed and remanded the Order Granting the Motion for Reconsideration on the

7   grounds that the Court failed to issue findings regarding the Debtor's interest in the Property

8   "including whether "Gallian ever acquired (and retained) an equitable interest in the Property" (the

9   "Reconsideration Order") (*docket no. 387*).

10        10.     On or about May 15, 2024, the Court entered its order regarding the Reconsideration

11  Order (the "Remand Order ) (*docket no. 393*).  The Remand Order again found "that Debtor held a

12  sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal.

13  Civ. Proc. Code § 704.720(a)."

14        11.     Hauser did not pursue any further appeal from the Remand Order and it is now final.

15  **PRIOR FILING OF APPLICATION TO EMPLOY REAL ESTATE BROKER**

16        12.     On or about July 28, 2022, after the Debtor's exemption was disallowed at the

17  hearing on July 21, 2022, the Trustee filed his Application to Employ Real Estate Broker Coldwell

18  Banker Realty and Agents William Friedman and Greg Bingham Pursuant To 11 U.S.C. 327 and

19  328 (the "First Application") (*docket no. 162*) to assist the Trustee with marketing and selling the

20  Property for the benefit of the estate and its creditors.

21        13.     On or about September 28, 2022, the Court entered an order denying the Trustee's

22  First Application, without prejudice, in light of the pending Motion for Reconsideration and need

23  for the Trustee to address the various transfers of title and liens on the Property that needed to be

24  avoided (*docket no. 241*).

25  **TRUSTEE'S AVOIDANCE AND RECOVERY OF TRANSFERS OF TITLE AND**

26  **LIENS ON THE PROPERTY**

27        14.     On or about June 30, 2023, the Trustee commenced an adversary proceeding, Adv.

28  No. 8:23-ap-01064-SC, by filing a Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2)

1773193.1   27064                                17

1  to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract;

2  (5) for Money Had and Received; and (6) Unjust Enrichment (the "Complaint") against Ronald J.

3  Pierpont, J-Pad LLC, J-Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay,

4  Robert J. McLelland, and E. J. Gallian (collectively, the "Defendants").

5        15.    Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin

6  Barclay, E. J. Gallian (the "Family Defendants") (*adv. docket nos. 43*), a stipulated judgment was

7  entered against the Family Defendants on or about October 3, 2023 (*adv. docket no. 47*).  The

8  judgment against the Family Defendants avoided and preserved liens on the Property in favor of

9  the Family Defendants for the benefit of the Debtor's estate.

10        16.    Pursuant to a stipulation with defendant Robert J. McLelland (*adv. docket nos. 52*),

11  a stipulated judgment was entered against Mr. McLelland on or about March 29, 2024 (*adv. docket

12  no. 66*).  The judgment against Mr. McLelland also avoided and preserved his lien on the Property

13  in favor of the Family Defendants for the benefit of the Debtor's estate.

14        17.    Pursuant to motions for default judgment filed by the Trustee with respect to

15  defendants J-Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, the "Defaulting Defendants")

16  (*adv. docket nos. 58, 59, and 76*), default judgments were entered against the Defaulting

17  Defendants on or about May 10, 2024 (*adv. docket nos. 79, 81 and 83*).

18        18.    The default judgment against J-Sandcastle avoided and preserved the Debtor's

19  transfers of title of the Property to J-Sandcastle and recovered legal title to the Property and the

20  beneficial interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee.

21        19.    The default judgment against defendant J-Pad avoided and preserved J-Pad's lien on

22  the Property in the amount of $225,000 for the benefit of the Debtor's bankruptcy estate and also

23  avoided and preserved other liens on the Property in favor J-Pad for the benefit of the Debtor's

24  estate.

25  / / /

26  / / /

27  / / /

28  / / /

20.     The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont does not have any interest in the Property and any valid, perfected, and/or unavoidable liens on the Property.  It also avoided and preserved his liens on the Property for the benefit of the Debtor's estate.

DATED:  July 1, 2024                          DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                    By:     _/s/ Aaron E. de Leest_____
                                            AARON E. DE LEEST
                                            Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

# EXHIBIT "1"



CALIFORNIA
ASSOCIATION
OF REALTORS®

# RESIDENTIAL LISTING AGREEMENT
### (Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/23)

Date Prepared: _05/22/2024_

1. **EXCLUSIVE RIGHT TO SELL:** _Jeffrey I. Golden, Chapter 7 Trustee_ ("Seller")
hereby employs and grants _Coldwell Banker Residential_ ("Broker")
beginning (date) _____ and ending at 11:59 P.M. on (date) _____ ("Listing Period")*
the exclusive and irrevocable right to sell or exchange the real property described as _16222 Monterey Ln. #376_
_____, situated in _Huntington Beach_ (City),
_____ (County), California, _92649_ (Zip Code), Assessor's Parcel No. _____ ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. Form PLA) additional terms.

*The maximum listing period allowed by law for residential property improved with one to four units is 24 months from the date this agreement is made. This restriction does not apply if Seller is a corporation, LLC or partnership. It is unlawful to record or file this listing agreement, or a memorandum or notice thereof, with the county recorder.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Three Hundred Twenty Thousand_
   Dollars ($ _320,000.00_ ).
   B. Listing Terms: _Bankruptcy Sale subject to Court approval; Property sold "as is"; Addendum attached._

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ _6.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, as follows:
      AND
      (1) ~~during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a~~ ready, willing and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____.
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in paragraph 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____.
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2023, California Association of REALTORS®, Inc.

RLA REVISED 12/23 (PAGE 1 OF 6)    Seller's Initials _____ / _____

## RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 6)

Coldwell Banker Residential, 840 Newport Center Dr., Suite 100    Newport Beach CA 92660    Phone: 5625580148    Fax: 5624152614    16222 Monterey
Greg Bingham    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

21

Property Address: <u>16222 Monterey Ln. #376, Huntington Beach, CA 92649</u>                    Date: <u>05/22/2024</u>

**4.  A.  ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
   **ADDITIONAL ITEMS EXCLUDED:** _____.
   **ADDITIONAL ITEMS INCLUDED:** _____
   Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.  (1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
   ☐ Solar power system     ☐ Alarm system     ☐ Propane tank     ☐ Water Softener
   ☐ Other
   **(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
   ☐ Solar power system     ☐ Windows or doors     ☐ Heating/Ventilation/Air conditioning system
   ☐ Other
   Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**C.  SMART HOME FEATURES:** The following smart home features/devices are:
   **(1) INCLUDED IN THE SALE (information regarding apps, logins, and instructions may be required in the sale):**
   _____
   _____.
   **(2) EXCLUDED FROM THE SALE:** _____.

**5.  MULTIPLE LISTING SERVICE:**
   **A.  WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
   **B.  WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing. If applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
   **C.  WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

**6.  BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS;**
   **A.  EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
   **B.  IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
   **C.  REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
   **D.  NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

              Seller's Initials _____ / _____              Broker's/Agent's Initials _____ / _____

**7.  PUBLIC MARKETING OF PROPERTY:**
   **A.  CLEAR COOPERATION POLICY:** MLS rules require ( ☐ Do NOT require – see **paragraph 7F**) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
   **B.  PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i) Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.

RLA REVISED 12/23 (PAGE 2 OF 6)                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     16222 Monterey

**22**



Property Address: _16222 Monterey Ln.  #376, Huntington Beach, CA  92649_

    **C.** **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.

    **D.** **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
        (1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).
    OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

    **E.** **Whether paragraph 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

    **F.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY: Paragraphs 7A** (other than the language in the parenthetical), **7B, 7D** and **7E** do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**8.** **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
    **A.** **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
    **B.** **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands **(i)** that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other Internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
        (1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
        (2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.
    **C.** **SELLER ELECTION TO OPT-OUT:** ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**9.** **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: ~~(i) any Notice of Default recorded against the Property;~~ (ii) any delinquent amounts due under any loan secured by or other obligation affecting the Property; (iii) any bankruptcy, ~~insolvency~~ or similar proceeding affecting ~~the Property;~~ (iv) any litigation, arbitration, administrative action, government investigation or other ~~pending or threatened~~ action that affects or may affect the Property or Seller's ability to transfer it; and (v) ~~any~~ ~~recent~~ pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker ~~if Seller~~ becomes aware of any of these items during the Listing Period or any extension ~~thereof.~~

**10.** **BROKER'S AND SELLER'S DUTIES:**
    **A.** **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in **10E** as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

    **B.** **Presentation of Offers:**
        (1) There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire in the hopes Seller will accept before the presentation date. Seller is advised to discuss and consider the best strategy for Seller.
        (2) (A) **Seller instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.
    OR (B) ☐ **Seller instructs Broker not to Present Offers until a Later Time:** Seller has elected to have Broker hold all offers and present them to Seller on ☐ _____ (date) or ☐ _____ Days after the property is listed as active on the MLS. Broker and Seller may amend this time by agreeing in writing. Broker will inform Seller that an offer has come in, but will not submit offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller.

    **C.** **Buyer Supplemental Offer Letters (Buyer Letters):**
        (1) **Paragraph 8** of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.
        (2) (A) **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.
    OR (B) ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

    **D.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

RLA REVISED 12/23 (PAGE 3 OF 6)        Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    16222 Monterey



**23**

Property Address: *16222 Monterey Ln.  #376, Huntington Beach, CA  92649*

**E. Investigations and Reports:** Seller agrees, within **5 (or _____ ) Days** of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____ .
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F.** ~~Seller agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney fees and costs arising from any incorrect~~ by Seller, or from any material facts that Seller knows but ~~fails to disclose including dangerous or hidden conditions on the Property.~~

**11. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**12. AGENCY RELATIONSHIPS:**

**A. DISCLOSURE:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B. SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F.**

**C. POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**D. CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**E. POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**F. TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**14. PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

**B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

RLA REVISED 12/23 (PAGE 4 OF 6)        Seller's Initials _____ / _____

RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 6)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com        16222 Monterey

**24**

Property Address: *16222 Monterey Ln.  #376, Huntington Beach, CA  92649*

**15. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

    **A.** Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

    **B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs except as provided in **paragraph 22A.**

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

    ☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

    *Manufactured home on leased land, Manufactured Home Listing Addendum attached.*

    ⋅

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**22. DISPUTE RESOLUTION:**

    **A. MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 18.** (4) **Exclusions from this mediation agreement are specified in paragraph 22B.**

    **B. ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

    **C. ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

**23. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**24. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

**25. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within **3 Days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**RLA REVISED 12/23 (PAGE 5 OF 6)**                          Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          16222 Monterey

**25**

Property Address: *16222 Monterey Ln.  #376, Huntington Beach, CA  92649*

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)
(1)  One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
(2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 25** for additional terms.
(3)  The name(s) of the Legally Authorized Signer(s) is: _____, _____.
(4)  If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).
(5)  If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____
_____.

**SELLER SIGNATURE(S):**

(Signature) By, _____    Date: _____

Printed name of SELLER: *Jeffrey I. Golden, Chapter 7 Trustee*

☐ Printed Name of Legally Authorized Signer: _____    Title, if applicable, _____

Address _____    City _____    State ____ Zip _____

Email _____    Phone # _____

(Signature) By, _____    Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____    Title, if applicable, _____

Address _____    City _____    State ____ Zip _____

Email _____    Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Coldwell Banker Residential*    DRE Lic# *01309137*

Address *840 Newport Center Dr., Suite 100*    City *Newport Beach*    State *CA*    Zip *92660*

By _____ Tel.*(562)335-0145*    E-mail *greg.bingham@camoves.com* DRE Lic# *00616212*    Date _____
*Greg Bingham*

By _____ Tel.*213 200-2 50*E-mail *billfried@earthlink.net*    DRE Lic# 00672015 Date 5-23-24
*Bill Friedman*

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2023 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 12/23 (PAGE 6 OF 6)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St. Suite 2200, Dallas, TX 75201  www.lwolf.com    16222 Monterey

**26**



**CALIFORNIA ASSOCIATION OF REALTORS®**

## MANUFACTURED HOME LISTING ADDENDUM
### (C.A.R. Form MHLA, Revised 6/22)

The following terms and conditions are hereby incorporated in and made a part of the: Residential Listing Agreement, ☐ Other ("Agreement"),
dated _____ **May 22, 2024** _____, on property known as **16222 Monterey Ln. #376, Huntington Beach, CA 92649** _____

in which _____ **Jeffrey I. Golden, Chapter 7 Trustee** _____ is referred to as ("Seller")
and _____ **Coldwell Banker Realty** _____ is referred to as ("Broker").

1. **TYPE OF MANUFACTURED HOME:** (Check the applicable box below: **paragraphs A1, A2 or B.**) (Check ONLY one box.)
   A. **PERSONAL PROPERTY MANUFACTURED HOME**
      (1) ☒ **A Manufactured Home On Leased Or Rented Land** (complete **paragraph 2**).
         Space Number _____ **376** _____ Park Name _____ **Rancho Del Rey** _____
         Park Address _____ **16222 Monterey Ln.** _____
         City _____ **Huntington Beach** _____ County _____ **Orange** _____ CA, Zip Code _____ **92649** _____
      OR (2) ☐ **A Manufactured Home To Be Sold With Real Property** (complete **paragraph 2**).
         Real Property Situated in _____
         City _____ County _____ CA, Zip Code _____
         Assessor's Parcel No. _____
         **PURCHASE PRICE ALLOCATED AS FOLLOWS:**
            Manufactured Home $ _____
            Real Property $ _____
   OR B. ☐ **A REAL PROPERTY MANUFACTURED HOME** situated in (also complete applicable parts of **paragraph 2**):
      City _____ County _____ CA, Zip Code _____
      Assessor's Parcel No. _____
      A real property manufactured home is one that meets the following requirements: **(i)** a building permit is obtained from local authorities pursuant to Health and Safety Code § 18551; **(ii)** the manufactured home is affixed to a foundation pursuant to Health and Safety Code § 18551; **(iii)** a certificate of occupancy is issued by local authorities; and **(iv)** there is recordation with the local authorities of a form pursuant to Health and Safety Code § 18551.

2. **ADDITIONAL DESCRIPTION:**
   Manufacturer's Name _____ Model _____
   Date of manufacture _____ Date of first sale _____
   Property is: ☐ On Local Property Tax Roll or ☐ Annual Registration and in Lieu of Tax, (sale/use tax may apply). Property shall be registered with the Department of Housing and Community Development ("HCD"), which must be notified upon sale, unless **(i)** Property has been converted to real property and title and registration surrendered to HCD or **(ii)** otherwise specified in writing.
   Approximate Width _____ Approximate Length _____ (without hitch) Expando Size _____
   HCD/HUD License/Decal Number _____
   Serial Numbers:    1. _____    2. _____    3. _____
   HCD/HUD Label/Insignia:    1. _____    2. _____    3. _____

3. **ITEMS INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
4. **Paragraph 3D(2)** of the Agreement is modified as follows: Provided the Property is or includes a personal property manufactured home, Broker is authorized to cooperate and compensate HCD licensed dealers per Broker's policy.
5. A. Seller agrees that on close of escrow Property shall be free of liens and encumbrances, recorded, filed, registered or known to Seller.
   B. Seller agrees that evidence of title to the manufactured home, if personal property, shall be in the form of a duly endorsed, dated and delivered Certificate of Ownership; and Seller shall deliver the current Registration Certificate of Title as required by law.
   C. Seller agrees, if applicable, to deliver as soon as possible to Broker, for submission to buyer, a copy of Seller's lease or rental agreement and all current park and/or Homeowners' Association rules and regulations, and to inform Broker of any changes to either during the Listing Period.
   D. Seller represents that Property, if personal property, is either: **(i)** Located within an established mobilehome park as defined in California Health and Safety Code § 18214, and that advertising or offering it for sale is not contrary to any provision of any contract between Seller and mobilehome park ownership; OR **(ii)** that Property is located pursuant to a local zoning ordinance or permit on a lot where its presence has been authorized or its continued presence and such use would be authorized for a total an uninterrupted period of at least one year.
   E. Seller has not assigned or sublet the Property.

© 2022, California Association of REALTORS®, Inc.

**MHLA REVISED 6/22 (PAGE 1 OF 2)**                    Seller's Initials _____ / _____

**MANUFACTURED HOME LISTING ADDENDUM (MHLA PAGE 1 OF 2)**

Coldwell Banker Residential, 840 Newport Center Dr., Suite 100    Newport Beach CA 92660    Phone: 5623350145    Fax: 5624152614    16222 Monterey
Greg Bingham    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

**27**

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Manufactured Home Listing Addendum.

Seller _____ Date _____
*Jeffrey I. Golden, Chapter 7 Trustee*
Seller _____ Date _____

Real Estate Broker (Listing Firm) *Coldwell Banker Residential* _____ DRE Lic. # *01309137*
By _____ DRE Lic. # *00616212*    Date *5/22/24*
*Greg Bingham*

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

MHLA REVISED 6/22 (PAGE 2 OF 2)



**MANUFACTURED HOME LISTING ADDENDUM (MHLA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    16222 Monterey

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Jeffrey I. Golden, solely in the capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Jamie Lynn Gallian,("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker("Broker") the exclusive right to negotiate a sale of the mobile home commonly described as 16222 Monterey Lane, Spc 376, Huntington Beach, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1. _Addendum_. This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2. _No Liability_. The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3. _Termination_. The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4. _Abandonment_. The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest. In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5. _Conditions of Sale_. The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

124805.1   9937176A

a.    The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding if the property is subdividable.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The sale is subject to overbids.

f.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property.  The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.    All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law.  The Trustee is not required to deliver

124805.1    9937176A                    2

to the purchaser a written statement of compliance with any applicable state and local law.

j.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

k.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

l.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    the Trustee must prevail with respect to any objections to the proposed sale; and

(2)    the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

m.    The Property is being sold subject to:

(1)    All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free of secured claims of record.

6.    <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  The payment of the commission is subject to prior approval of the Bankruptcy Court.

7.    <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

124805.1    9937176A                    3

8.   Entire Agreement. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization is not contrary to the terms and conditions herein, constitute the entire contract between the parties.   All prior agreements between the parties are incorporated into this agreement.   Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.   The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.   Bankruptcy Court Jurisdiction. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization.   This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

# EXHIBIT "2"



**William Friedman**

1608 MONTANA AVE
SANTA MONICA, CA 90403

RESIDENTIAL BROKERAGE

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Bankruptcy Trustees:**
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corporation
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank

Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
Stephen Donell
Samuel R. Biggs
David L. Ray



### Greg Bingham
### Coldwell Banker Residential Brokerage

Since 1996, Greg Bingham has worked as a real estate agent in the Los Angeles and Orange County areas. In 2003, upon selling his interest in his Sports Management Agency, he joined Coldwell Banker Residential Brokerage. In 2006, Greg took over management of the 84 agent, award winning office. In 2008, with the acquisition of his office, he joined his profitable practice with the expanding Coldwell Banker Previews International Orange County and Los Angeles companies with 54 offices in Southern California and returned to working directly with his clients. In 2015, he became manager and partner of The Smith Group at Coldwell Banker, currently the number one sales team in Southern California.

Awards and Recognition

President's Elite – Top ¼ of 1% of Agents in the United States (annually 2014 - 2022)
President's Circle – Top 1% of Agents in the United States (2011, 2012, 2013)

Annually since 2006, he has personally sold over $50,000,000 in real estate on behalf of his clients. Clients include a private client group of athletes and entertainers, institutional clients Chase Bank, EMC, Saxon and a legal clientele of bankruptcy trustees and attorneys. He has worked on behalf of more than 20 Bankruptcy Court Trustees in the sale of real estate in Orange and Los Angeles Counties.

Training and Certification

Greg has completed the required course work and practical experience for Certified Distressed Property Specialist, Certified Negotiator and Short Sales and Foreclosure Resource.

Bingham has many years of experience in marketing and promotion. As the CEO of Special Olympics, he has devoted innumerable hours to youth sports and children and adults with disabilities. He has served on local, statewide, national and international boards for sports and education.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): <u>Trustee's Notice Of Application And Application To Employ Real Estate Broker Coldwell Banker Realty And Agents William Friedman And Greg Bingham Pursuant To 11 U.S.C. §§ 327 And 328; Memorandum Of Points And Authorities; And Declarations Of William Friedman And Greg Bingham And Request For Judicial Notice In Support</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>July 1, 2024</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) <u>July 1, 2024</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 1, 2024 | Patricia Morris | */s/ Patricia Morris* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Bradford Barnhardt**    bbarnhardt@marshackhays.com,
  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Aaron E. DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Robert P Goe**    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com
- **Jeffrey I Golden (TR)**    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Brandon J. Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Eric P Israel**    eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Shantal Malmed**    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **Mark A Mellor**    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

2. **SERVED BY U.S. MAIL**

Debtor
Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5130
Santa Ana, CA 92701

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

BS Investors
Robert P. Warmington
C/o Gorden May Grant, Genovese &
Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660

Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA
92688

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
1773306.2  27064

**F 9013-3.1.PROOF.SERVICE**

Houser Bros. Co.
DBA Rancho De1 Rey Estates
16222 Monterey Ln
Huntington Beach CA 92649

Houser Bros. Co. dba Rancho De1
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647

Houser Brothers Co.
dba Rancho Del Rey Mobilehome Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647

Huntington Beach Gables HOA
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
Hills, CA 92653

Huntington Beach Gables Homeowners
Association
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649

Huntington Mobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91733

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649

Huntington Mobile Home Investments
LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Hyundai Capital America
PO BOX 269011
Plano, TX 75026

Internal Revenue Service Insolvency
PO BOX 7346
Philadelphia, PA 19101-7346

J-pad, LLC
2702 N Gaff Street
Orange, CA 92865

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503

J-Sandcastle Co, LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 104
Santa Ana, CA 92701

Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649

Janine Jasso
P.O. Box 370161
El Paso, TX 79937

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

Janine Jasso, Jennifer Paulin, Lori
Burrett et al.
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649

Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728

Lee Gragrano
16062 Warmington Ave.
Huntington Beach, CA 92649

Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

Linda Jean "Lindy" Beck
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Lisa T. Ryan
20949 Lassen St. Apt 208
Chatsworth, CA 91311

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649

Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 500
Beverly Hills, CA 90210-5536

Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653

Orange County Alternate Defender
600 Santa Ana Blvd, Ste 600
Santa Ana CA 92702

Orange County Public Defender
801 Civic Center Dr
West Santa Ana, CA 92702

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653

Patricia Ryan
20949 Lassen St. Apt 208
Chatsworth, CA 91311

People of the St of CA
8141 13th St
Westminster CA 92683-4576

Gennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506

Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612

Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612

S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92649

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679

Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653

Steven A. Fink
13 Corporate Plaza Ste. l50
Newport Beach, CA 92660

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701

Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 30O
Laguna Hills, CA 92653

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_
1773306.2  27064

**F 9013-3.1.PROOF.SERVICE**

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649

Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131

The Huntington Beach Gables
Homeowners Association
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Theodore R "Ted" Phillips
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675

US Bank
P O Box 5229
Cincinnati OH 45201-5229

US Bank NA
PO Box 64799
Saint Paul, MN 55164

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 30O
Mission Viejo, CA 92691

Zanine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649

Michael Chulak-tunknown)
Mchulak@MTcLaw.com
undeliverable

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.