1 ERIC P. ISRAEL (State Bar No. 132426)
 *eisrael@DanningGill.com*
2 DANNING, GILL, ISRAEL & KRASNOFF, LLP
 1901 Avenue of the Stars, Suite 450
3 Los Angeles, California 90067-6006
 Telephone: (310) 277-0077
4 Facsimile: (310) 277-5735

5 Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                    **SANTA ANA DIVISION**

11

12 In re                              Case No. 2:21-bk-11710-SC

13 JAMIE LYNN GALLIAN,                 Chapter 7

14        Debtor.                      **TRUSTEE'S NOTICE OF MOTION AND
                                       MOTION TO AUTHORIZE SALE OF**
15                                     **MANUFACTURED HOME CURRENTLY
                                       LOCATED AT 16222 MONTEREY LANE,**
16                                     **SPACE 376, HUNTINGTON BEACH, CA
                                       92649, DECAL NO. LBM1081, FREE AND**
17                                     **CLEAR OF LIENS AND HOMESTEAD
                                       EXEMPTION; MEMORANDUM OF**
18                                     **POINTS AND AUTHORITIES,
                                       DECLARATIONS OF JEFFREY I.**
19                                     **GOLDEN AND GREG BINGHAM AND
                                       REQUEST FOR JUDICIAL NOTICE IN**
20                                     **SUPPORT THEREOF**

21                                     Date:    March 4, 2025
                                       Time:    11:00 a.m.
22                                     Place:   Courtroom 5C
                                                411 W. Fourth Street
23                                                Santa Ana, California

24 / / /

25 / / /

26 / / /

27 / / /

28

1785196.1  27064                       1

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................7

I.    FACTUAL STATEMENT .............................................................................................7

    A.    Bankruptcy Background ...................................................................................7

    B.    The Debtor's Schedules ...................................................................................7

    C.    The Manufactured Home at Issue ....................................................................8

            1.    The Property ..........................................................................................8

            2.    Liens Against the Property .....................................................................8

            3.    The First Objection to the Debtor's Homestead Exemption, Appeal and Remand ..........................................................................................9

            4.    The Objection to the Debtor's Latest Exemption Claim ..................10

    D.    Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property ..........................................................................................................10

            1.    Stipulated Judgments ..........................................................................10

            2.    Default Judgments ...............................................................................11

    E.    Marketing Efforts...........................................................................................13

    F.    Denial of Debtor's Discharge and Appeal ....................................................13

    G.    Debtor's Chapter 13 Filing ............................................................................13

    H.    Debtor's Motion to Convert to Chapter 13 ....................................................13

    I.    Insurance Placed on the Property ..................................................................14

II.    PROPOSED OVERBID PROCEDURES ....................................................................14

III.    PROPOSED TREATMENT OF LIENS AND HOMESTEAD EXEMPTION....................16

IV.    LEGAL ARGUMENT..................................................................................................17

    A.    The Proposed Sale of the Property is Supported by the Trustee's Sound Business Judgment and is in the Best Interests of the Debtor's Estate and Its Creditors ........................................................................................................17

    B.    The Proposed Sale May be Authorized Under Section 363 of the Bankruptcy Code ...............................................................................................................18

# TABLE OF CONTENTS
### (Continued)

| | | | Page |
|---|---|---|---|

C.    The Trustee Requests that the Court Find that the Buyer and Any Backup Buyer Are Good Faith Purchasers Pursuant to Section 363(m) of the Bankruptcy Code ......................................................................................19

D.    Waiver of Fed. R. Bankr. P. 6004(h) is Warranted ...................................19

V.    CONCLUSION...................................................................................................20

DECLARATION OF JEFFREY I. GOLDEN.........................................................22

DECLARATION OF GREG BINGHAM................................................................24

REQUEST FOR JUDICIAL NOTICE....................................................................26

1

# TABLE OF AUTHORITIES

2                                                                          Page

3  ## CASES

4  *Ewell v. Diebert (In re Ewell),*
       958 F.2d 276, 281 (9th Cir. 1992) ...................................................................... 19

5
   *In re Bunn-Rodemann,*
6      491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013) ................................................ 12

7  *In re Continental Air Lines, Inc.,*
       780 F.2d 1223 (5th Cir. 1986) ............................................................................ 17
8
   *In re Derivium Capital, LLC,*
9      380 B.R. 392 (Bankr. D.S.C. 2007) .................................................................. 17

10 *In re Lahijani,*
       325 B.R. 282 (B.A.P. 9th Cir. 2005) ................................................................ 17
11
   *In re Lionel Corp.,*
12     722 F.2d 1063 (2d Cir. 1983) .............................................................................. 17

13 *In re Pine Coast Enters., Ltd.,*
       147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ............................................................ 19
14
   *In re Roach,*
15     2019 WL 408628, at *3-5 (B.A.P. 9th Cir. 2019) .......................................... 12

16 *Stephens Indus., Inc. v. McClung,*
       789 F.2d 386 (6th Cir. 1986) ............................................................................ 17
17

18 ## STATUTES

19 11 U.S.C. § 356(d)(1) .............................................................................................. 10

20 11 U.S.C. § 363(b)(1) .............................................................................................. 17

21 11 U.S.C. § 363(f) .................................................................................................... 18

22 11 U.S.C. § 363(m) .................................................................................................. 19

23 11 U.S.C. § 522(f) .................................................................................................... 12

24 11 U.S.C. § 551 ........................................................................................................ 11

25 11 U.S.C. § 704(a)(1) .............................................................................................. 17

26 11 U.S.C.§ 727 ........................................................................................................ 13

27 Cal. Civ. Proc. Code § 704.720(a) .......................................................................... 10

28 Cal. Code Civ. P. § 703.010 .................................................................................... 12

## TABLE OF AUTHORITIES
### (Continued)

| | Page |
|---|---|
| Cal. Code Regs. tit. 25 § 5595 (2025) | 16 |
| Cal. Code. Civ. P. § 697.310(a) | 16 |

## OTHER AUTHORITIES

| | |
|---|---|
| 10 Collier on Bankruptcy ¶ 6004.11 (2025) | 19 |

## RULES

| | |
|---|---|
| Fed. R. Bankr. P 6004(h) | 19, 20 |
| Local Bankruptcy Rules 6004-1(c) | 2 |

1 **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2 **JUDGE AND INTERESTED PARTIES:**

3       PLEASE TAKE NOTICE that on March 4, 2025, at 11:00 a.m., in Courtroom "5C" of the

4 United States Bankruptcy Court, for the Central District of California, located at 411 W. Fourth

5 Street, Santa Ana, California, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the

6 bankruptcy estate (the "Estate") of Jamie Lynn Gallian (the "Debtor"), will and hereby does move

7 the Court (the "Motion") under 11 U.S.C. § 363, and Local Bankruptcy Rules 6004-1(c) and 9013-

8 1, for an order authorizing the sale of the 2014 Skyline Custom Villa manufactured home, decal no.

9 LBM1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach,

10 California 92649 (the "Space"). The proposed sale is pursuant to a Purchase and Sale Agreement

11 and amendments (collectively the "PSA"), copies of which are attached collectively to the

12 Declaration of Jeffrey I. Golden (the "Golden Declaration") as Exhibit "1." The Trustee is

13 requesting authority to sell the Property free and clear of liens and interests pursuant to 11 U.S.C. §

14 363(f) and authorize the Trustee to disburse the amount of the avoided and preserved first lien to

15 the Trustee.

16       Pursuant to Local Bankruptcy Rule 6004-1(c), the Trustee provides the following

17 information:

18       A.     The date, time and place of the hearing on the Motion are set forth above.

19       B.     The Trustee has proposed the sale of the Property to Galaxy Homes, LLC (the

20 "Buyer"), subject to overbidding.

21       C.     The property to be sold consists of the Trustee's right, title, and interest in the

22 Property, with the following description:

23       Skyline, Custom Villa, 2014, net size 60x30. Serial Numbers
        AC7V710394GB/GA; DOH/HUD Numbers: PFS1130282 and PFS1130281;
24       Decal Number LBM1081 Year 2006.

25

26       The Property to be sold does not include the ground lease for the Space (the "Ground

27 Lease"), which was deemed rejected long ago. However, the Association (Houser Bros.) has

28 agreed to give any qualified buyer – but not the Debtor, a new ground lease.

D.    The Buyer has conducted all due diligence on the Property that the Buyer believes is necessary for the completion of this sale.  Any and all contingencies agreed to relating to the sale have been waived, and thus the sale will not be contingent upon any events or conditions other than Court approval and potential overbidding.

The Property will be sold for $275,000 (the "Proposed Sale Price") on an "as is," "where is" condition, with no warranty or recourse whatsoever.

E.    Based on records maintained by the California Department of Community Development (the "HCD"), which maintains title and lien records for manufactured homes, and proofs of claim filed in the Debtor's case, there are no known consensual encumbrances against the Property that have not been avoided, recovered and preserved for the benefit of the Estate.

The Trustee seeks to sell the Property free and clear of any and all liens and interests, including the Debtor's homestead exemption.  Because the consensual liens have been avoided, recovered and preserved, the Estate will realize the first approximate $301,011.14 from the sales proceeds on account of such liens.  Involuntary liens were not properly perfected, and in any event are junior to the avoided consensual liens.  Absent a significant increase in the sale price, the Debtor's homestead exemption is out of the money and will not be paid.

F.    The proposed sale is subject to higher and better bids and, by way of this Motion, the Trustee is requesting that the Court approve the overbid procedures described in the accompanying memorandum of points and authorities, summarized as follows:

1.    **Minimum initial overbid**:  $276,000.00 ($1,000.00 above the Buyer's current offer).

2.    **Minimum overbidding increments**:  $1,000.00.

3.    **Initial overbid deposit**:  $8,280.00 (*i.e.*, 3% of the minimum initial overbid price).

4.    **Qualification for overbidding**:  At least three (3) business days prior to the commencement of the hearing on this Motion, any party wishing to overbid on the Property must deliver to the Trustee's counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suiter 450, Los Angeles, California 90067:

1785196.1  27064

3

1     (a) a cashier's check payable to "Jeffrey I. Golden, Trustee" in the amount of

2 $8,280.00, and

3     (b) a written, executed overbid in the form attached as Exhibit "8" to the Trustee's

4 declaration.

5    5. The Trustee proposes that no party be allowed to bid on the Property absent

6 the timely delivery of the initial overbid deposit and the written, executed overbid form as set forth

7 above.  The Trustee in his sole discretion may determine that a party desiring to bid is not qualified

8 due to insufficient documentation or financial qualifications.  Accordingly, any party wishing to

9 bid is encouraged to contact the Trustee's counsel at least one week before the hearing to ensure

10 qualification.

11    6. **Back-up bidders**:  Any qualified overbidder who is not the successful

12 overbidder may opt to be a back-up bidder, subject to the Trustee's approval, in which case such

13 back-up bidder's initial deposit will be retained by the Trustee until the sale closes.

14    G. **Estimated Net Sale Proceeds**: The opening sale price for the Property is

15 $275,000.00, subject to a 6% brokers' commission, liens, fees, and anticipated costs of sale, as

16 follows:

17

| Sale Price | $275,000 .00 |
|---|---|
| 3% Commission to Coldwell Banker (Trustee's Broker) | ($8,250.00) |
| Commission to Galaxy (3%) (Buyer's Broker) | ($8,250.00) |
| Trustee's Avoided J-Pad Lien | $301,011.14[1] |
| Insurance Advances | $1,691.80 + |
| **Estimated Net Sale Proceeds (before escrow fees)** | **$256,808.20** |
|  |  |

24

25   Because the consensual lien now held by the Trustee exceeds the proposed sales price, the

26 Motion requests authority for the Trustee to not pay Debtor's allowed homestead because it is out

27 —————————————

28 [1] As of January 9, 2025, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90) per day.

1   of the money and the Debtor cannot claim an exemption in the recovered liens that the Debtor

2   voluntarily put on the Property pursuant to Section 522(g).

3       H.      The Trustee proposes to pay a real estate broker's commission of 6% of the sale

4   price of the Property to the brokers as follows: 3% to Trustee's broker Coldwell Banker Residential

5   Broker ("Coldwell Banker"), and 3% to Galaxy Homes, LLC ("Galaxy"), as the Buyer's broker in

6   connection with the closing of this sale.  If there is a successful overbidder (i.e., not the Buyer),

7   such successful overbidder's broker will receive the 3% allocated to the Buyer's broker.  If such

8   successful overbidder does not have a broker, the entire 6% commission will be paid to Coldwell

9   Banker, as Seller's broker.

10      I.      The Trustee obtained forced insurance for the Property and requests authority to pay

11  Trustee Insurance Agency ("TIA") $1,691.80 plus any additional accrued premiums before the sale

12  closes (collectively the "Insurance Advances").

13      J.      **Anticipated Taxes**: The Trustee is consulting with his accountant and will

14  supplement this motion with the estimated capital gain consequences of the sale, if any.

15      This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of

16  Points and Authorities, the Declarations of Jeffrey I. Golden and Greg Bingham and Request for

17  Judicial Notice; the papers and pleadings in the Debtor's bankruptcy case and related adversary

18  proceedings; and such other evidence that may be presented at the hearing.  Contemporaneously

19  herewith, the Trustee is filing a separate motion for turnover, and incorporates all evidence in

20  support thereof as well.

21      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f),

22  each interested party opposing, joining in or responding to the Motion must, not later than **14 days**

23  before the date of the hearing, file with the Clerk of the Bankruptcy Court and serve upon the

24  Trustee's general counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suite 450, Los Angeles,

25  California 90067, and the United States Trustee, 411 W. 4th Street, Suite 7160, Santa Ana,

26  California, either: (i) a complete written statement of all reasons in opposition thereto or in support

27  or joinder thereof, declarations and copies of all photographs and documentary evidence on which

28

1  the responding party intends to rely, and any responding memorandum of points and authorities; or

2  (ii) a written statement that the Motion will not be opposed.

3       Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve papers may

4  be deemed by the Court to be consent to the granting of the Motion.

5

6  DATED: January 31, 2025          DANNING, GILL, ISRAEL & KRASNOFF, LLP

7

8                        By:

9                           ERIC P. ISRAEL
                            Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## FACTUAL STATEMENT

### A.    Bankruptcy Background

On July 9, 2021 (the "Petition Date"), Jamie Lynn Gallian (the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Case"). Jeffrey I. Golden accepted appointment as the Trustee for the Debtor's estate (the "Estate") and continues to serve in that capacity.

Pursuant to an order entered on or about June 1, 2022, the Trustee retained the law firm of Danning, Gill, Israel, and Krasnoff, LLP ("Danning-Gill") as his general bankruptcy counsel. *Docket no. 108.* Effective as of January 31, 2025, the primary attorney at Danning-Gill who has been handling this file, Eric P. Israel, is leaving Danning-Gill and joining the firm of Levene, Neale, Bender, Yoo & Golubchik, L.L.P. The Trustee will be filing an application to employ the Levene Neale firm as his successor counsel and file an employment application thereon.

Pursuant to an order entered on or about September 5, 2024, the Trustee retained Coldwell Banker Realty ("Coldwell Banker") (agents William Friedman and Greg Bingham) as the Trustee's real estate broker to list, market and aid the Trustee in selling the Property described below (*docket no. 431*). A copy of the order employing Coldwell Banker is attached to the Request for Judicial Notice (the "RJN") as Exhibit "2".

### B.    The Debtor's Schedules

The Debtor has amended her schedules at least 13 times to date.[2] In her original schedules, she valued the Property at $235,000 and disclosed that title to the Property was vested in J-Sandcastle, LLC on the Petition Date, of which she was its sole member and its managing member. *Docket no. 1.* The Debtor's schedules further disclosed that the Property was subject to a lien in favor of J-Pad, LLC, and that she was its managing member. *Id.* A copy of pertinent pages from

---

[2] *See docket nos. 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468 and 519.*

1 those schedules are attached to the RJN as Exhibit "3". The Debtor later claimed a homestead

2 exemption in the Property in the amount of $600,000. *Docket no. 72, p. 20.*

3     As noted below, the Trustee commenced an adversary proceeding and recovered title to the

4 Property and avoided and preserved all of the consensual liens.

5 C.   **The Manufactured Home at Issue**

6     1.    The Property

7     On the Petition Date, the registered title owner of the manufactured home located at 16222

8 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Property"), was vested in J-

9 Sandcastle Co, LLC ("J-Sandcastle"). *Docket no. 468 (*Exhibit "3"*).* The Debtor was not on title to the

10 Property on the Petition Date.

11     2.    Liens Against the Property

12     The Property is subject to a consensual lien on the Property in favor of J-Pad, LLC ("J-Pad") in

13 the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's

14 family members, ex-husband, and a former roommate as discussed below. *Docket no. 468.* As noted

15 below, the Trustee commenced an adversary proceeding and recovered title to the Property and

16 avoided and preserved all consensual liens thereon.

17     The following two judgment liens were recorded against the Debtor (collectively the

18 "Abstracts of Judgment"):

19     a.    An abstract of judgment recorded on or after December 18, 2021, in favor of Janine

20 Jasso, Jennifer Paulin, Lori Burrett, Lee Gragnano, Lindy Beck, and Ted Phillips (collectively the

21 "Jasso Parties") in the sum of "at least $64,049.66 (not including additional interest, fees and other

22 costs)". See proof of claim no. 4-1 (Exhibit "9" to the RJN); and

23     b.    A series of abstracts of judgment recorded on or about May 3, 2019, May 16, 2019,

24 and November 18, 2019, in favor of The Huntington Beach Gables Homeowners Association

25 ("Gables") in the sum of "at least $510,742.55 (not including additional interest, fees and other

26 costs)". See proof of claim no. 1-1 (Exhibit "10" to the RJN).

27

28

1785196.1  27064             8

1    As discussed below, abstracts of judgment do not reach a manufactured home, which is

2    personal property – not real property.  Moreover, title was not vested in the Debtor at the time, and

3    the involuntary liens are junior to the avoided consensual liens and out of the money.

4        3.    <u>The First Objection to the Debtor's Homestead Exemption, Appeal and Remand</u>

5        On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates,

6    the homeowners association for the manufactured home park that includes the Space ("Houser

7    Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption (the "Exemption

8    Motion") (*docket no. 95*).  The hearing on the Exemption Motion was held on June 2, 2022, and

9    continued to July 21, 2022.  At the continued hearing, the Court granted the Exemption Motion and

10   disallowed any claim of exemption by the Debtor in the Property.

11       On or about July 26, 2022, the Debtor filed her Motion for Reconsideration from the

12   Court's July 21, 2022, ruling (the "Motion for Reconsideration") (*docket no. 157*).  The order

13   granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*).

14   The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court

15   took the matter under submission.

16       On or about December 19, 2022, the Court entered its order granting the Debtor's Motion

17   for Reconsideration, finding that the Debtor was entitled to a homestead exemption in the Property

18   (even though she was not on title) in the amount of $600,000 (the "Order Granting the Motion for

19   Reconsideration") (*docket no. 274*).

20       On or about December 29, 2022, Houser Bros. appealed the Order Granting the Motion for

21   Reconsideration to the District Court (*docket no. 280*).

22       On or about November 1, 2023, the District Court entered an order that reversed and

23   remanded the Order Granting the Motion for Reconsideration on the grounds that the Court did not

24   make findings regarding the Debtor's interest in the Property including whether "Gallian ever

25   acquired (and retained) an equitable interest in the Property" (the "Reversal and Remand Order")

26   (*docket no. 387*).

27       On or about May 15, 2024, the Court entered a further order after remand (the "Remand

28   Order") (*docket no. 393*).  The Remand Order again found "that Debtor held a sufficient equitable

1  interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code

2  § 704.720(a)."

3         Houser Bros. did not appeal the Remand Order, which is now final.

4         4.      The Objection to the Debtor's Latest Exemption Claim

5         On or about December 3, 2024, the Debtor amended her claim of exemption yet again.

6  *Docket no. 519*. The Second Exemption claimed an exemption in the ground lease for the "pad"

7  (the "Ground Lease"). A copy of that amendment is attached to the RJN as Exhibit "4".

8         Houser Bros. timely objected to that amended exemption claim. *Docket no. 529*. The

9  Trustee joined in that objection (*docket no. 533*), as did Gables (*docket no. 531*). The hearing

10  thereon is set for February 4, 2025, at 11:00 a.m.

11         The Ground Lease was never assumed, and hence was deemed rejected long ago. 11 U.S.C.

12  § 356(d)(1). In any event, the Trustee is not proposing via this Motion to sell or assume and assign

13  the Ground Lease. Houser has agreed to issue a new ground lease to a new qualified buyer – but

14  not the Debtor.

15  D.    **Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property**

16         On or about June 30, 2023, the Trustee commenced an adversary proceeding, adv. no. 8:23-ap-

17  01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and*

18  *Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money*

19  *Had and Received; and (6) Unjust Enrichment* ("Complaint") against Ronald J. Pierpont, J-Pad LLC, J-

20  Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E. J.

21  Gallian (collectively the "Defendants").

22         1.    **Stipulated Judgments**

23         Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay and

24  E. J. Gallian (collectively the "Family Defendants"), a stipulated judgment was entered against the

25  Family Defendants on or about October 3, 2023 (*adv. docket no. 47*). The judgment against the Family

26  Defendants avoided the liens on the Property in favor of the Family Defendants (the "Stipulated Family

27  Defendants Judgment"). The judgment also preserved those liens for the benefit of the Debtor's

28

1  estate pursuant to 11 U.S.C. § 551.  A copy of the Stipulated Family Defendants Judgment is

2  attached to the RJN as Exhibit "5".

3  Pursuant to a stipulation with defendant Robert J. McLelland ("Mr. McLelland") (*adv.*

4  *docket no.* 52), a stipulated judgment was entered against Mr. McLelland on or about March 29,

5  2024 (*adv. docket no.* 66) (the "McLelland Stipulated Judgment").  The judgment against Mr.

6  McLelland also avoided his lien on the Property.  The judgment also preserved his lien for the

7  benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.  A copy of the McClelland Stipulated

8  Judgment is attached to the RJN as Exhibit "6".

9  **2.    Default Judgments**

10  Pursuant to motions for default judgment filed by the Trustee with respect to defendants, J-

11  Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, "Defaulting Defendants"), default

12  judgments were entered against the Defaulting Defendants on or about May 10, 2024 (*adv. docket*

13  *nos.* 79, 81 and 83) (collectively the "Defaulting Defendants Judgments").  Copies of the

14  Defaulting Defendants Judgments are attached to the RJN collectively as Exhibit "7".

15  The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of

16  title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the

17  Property for the Debtor's bankruptcy estate in the name of the Trustee.  The Debtor's schedules

18  disclosed that the Debtor was the sole member of J-Sandcastle.

19  The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the

20  amount of $225,000 and other liens on the Property in favor of J-Pad.  The judgment also preserved

21  those liens for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551.  The

22  Debtor's schedules disclosed that the Debtor was the sole member of J-Pad.

23  The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont

24  does not have any interest in the Property.  It also avoided his liens on the Property and preserved

25  those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.

26  As a result of the above, title to the Property has been restored to the Estate, and the Property is

27  property of the estate.  In addition, the consensual lien in the original principal sum of $225,000 in

28  favor of J-Pad on the Property, and the other consensual liens and interests on the Property in favor of

1  the Family Defendants, Mr. Pierpont and Mr. McLelland, have been avoided and preserved for the

2  benefit of the Debtor's estate in the Trustee's name.

3        Although the Debtor has been allowed a homestead exemption in the Property, such

4  exemption is only payable from any equity following consensual liens, which liens include the

5  avoided and preserved J-Pad lien. *See* Cal. Code Civ. P. § 703.010. Exemptions may be claimed

6  only against involuntary liens, such as judgments, attachments and execution liens, and then only if

7  the procedures of section 522(f) are followed. *Id.* Thus, the consensual liens on the Property come

8  ahead of any allowed amount of the Debtor's homestead exemption. *See In re Roach*, 2019 WL

9  408628, at *3-5 (B.A.P. 9th Cir. 2019)[3]; *see also In re Bunn-Rodemann*, 491 B.R. 132, 134-35

10 (Bankr. E.D. Cal. 2013). To date, the Debtor has not succeeded on a 522(f) motion, but those liens

11 are junior to the avoided consensual liens in any event.

12       The Trustee contends that notwithstanding the Debtor's allowed homestead exemption, he

13 is in a position to sell the Property for the benefit of the Estate and creditors. Specifically, the

14 Trustee avoided and preserved the transfer of title to J-Sandcastle, the consensual J-Pad lien in the

15 amount of $225,000 plus interest and other liens. The payoff on the J-Pad avoided lien is now

16 approximately $301,000. This amount and the other avoided liens are senior to the Debtor's

17 homestead exemption. As such, any distribution from the sales proceeds must be paid to the

18 Trustee first in connection with the consensual liens, and prior to any amount that the Debtor may

19 be entitled to in connection with her homestead exemption.

20       For example, the avoided and preserved consensual J-Pad lien of $225,000.00, plus interest,

21 which amount with interest the Trustee calculates to be not less than $301,011.14[4], as of January 9,

22 2025, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90 per day)

23 must be paid before any other junior liens and the Debtor's homestead exemption. Because most if

24 not all of the sales proceeds will be exhausted by the consensual liens that the Debtor recorded

25

26  _____

27  [3] A copy of *Roach* is attached to the RJN as Exhibit "12".

28  [4] As of January 9, 2025, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90) per day.

1785196.1  27064                                    12

1  against the Property, including the J-Pad lien, absent significant overbidding, it is anticipated that

2  there will be no proceeds available to pay to the Debtor on account of her exemption.

3  E.    **Marketing Efforts**

4        An order approving the Trustee's employment of Coldwell Banker to sell the Property and

5  approving the listing agreement was entered on or about September 5, 2024. *Docket no. 431*

6  (Exhibit "2"). The listing price was $320,000. With the aid of the broker, the Trustee has

7  marketed the Property for sale, and the Buyer's offer is the best and only offer that the Trustee has

8  received to date. The Buyer has conducted all due diligence that it needs to close the sale, and

9  indeed has waived its contingencies. The only remaining requirement to close the sale is Court

10 approval, subject to qualified overbids made at the sale hearing.

11 F.    **Denial of Debtor's Discharge and Appeal**

12       On or about October 18, 2021, Houser Bros. filed a complaint under 11 U.S.C. § 727 to

13 deny the Debtor's discharge, adversary no. 8:22-ap-01097-SC. *Adv. docket no. 1.* Pursuant to an

14 order entered on or about May 23, 2023, the Court denied the Debtor's discharge (the "Discharge

15 Judgment"). *Adv. docket no. 81.*

16       The Debtor appealed that ruling to the United States District Court, which affirmed the

17 Discharge Judgment. *Adv. docket no. 131.* No further appeal was taken therefrom.

18 G.    **Debtor's Chapter 13 Filing**

19       On or about September 9, 2024, the Debtor filed another voluntary petition for relief – this

20 one under Chapter 13 of the Bankruptcy Code, which was assigned case no. 8:24-11267-SC (the

21 "Chapter 13 Case"). The Chapter 13 Case was dismissed on or about October 21, 2024. *Chapter*

22 *13 Docket no. 38.*

23 H.    **Debtor's Motion to Convert to Chapter 13**

24       On or about September 11, 2024, the Debtor filed a motion to convert this Case to Chapter

25 13. *Docket no. 438.* Pursuant to an order entered on or about October 29, 2024, the Court denied

26 the Debtor's motion to convert. *Docket no. 491.*

27

28

I.    **Insurance Placed on the Property**

The Trustee was unable to confirm that the Property was insured, and as a result obtained insurance from Trustee Insurance Services ("TIS"). As of this time, TIS is owed $1,691.80 for insurance premiums, plus $409.20 per month thereafter (collectively the "Insurance Advances"). The Trustee requests authority to pay TIS the Insurance Advances from the sale proceeds.

II.

**PROPOSED OVERBID PROCEDURES**

The Trustee requests that the Court approve the following procedures for overbids:

1.    Any party wishing to present an overbid must deliver the following to the Trustee at least three (3) business days prior to the commencement of the hearing on this Motion:

(a)    a deposit in the form of a cashier's check in the amount of $8,250.00 payable to "Jeffrey I. Golden, Trustee" (the "Deposit");

(b)    a written offer on the form attached as Exhibit "8" to the Declaration of Jeffrey I. Golden, without any changes or conditions; and

(c)    proof of ability to close acceptable in the sole discretion of the Trustee.

2.    A party's initial overbid must be no less than $276,000.00, representing $1,000.00 over the Proposed Sale Price.

3.    The acceptance of any overbid from a qualified bidder shall be in the Trustee's sole discretion and may be made prior to or at the time of hearing to confirm the sale.

4.    If qualified overbids are received and accepted by the Trustee, an auction will be held at and during the hearing on the Trustee's motion for approval of the proposed sale. The Trustee proposes that each overbid be made during the hearing be at least $1,000.00 more than the then-highest overbid. At the conclusion of the auction, the Trustee will have the right, based solely on business judgment and his sole discretion, to reject bids that are non-conforming and recommend to the Court for confirmation the offer that the Trustee determines is the highest and best offer.

5.    If the Court approves a sale to the bidding party (the "Successful Bidder"), the Successful Bidder will be bound by all of the terms of the Sale Agreement except as to price, without any contingencies (including no due diligence or financing contingencies). The Successful Bidder's Deposit will be retained by the Trustee and will be applied to the sale price. The Deposit will be non-refundable in the event that, for any reason whatsoever, the Successful Bidder fails to close the sale timely.

6.    The closing will take place as soon as practicable after the entry of the Court's order approving the sale (the "Sale Order"), but no later than the first business day after fourteen calendar days following entry of the Sale Order. The Trustee and the Successful Bidder may mutually agree in writing to extend the time for closing the sale, without the need to obtain Court approval of such extension(s).

7.    In his sole discretion, the Trustee may request that the Court confirm a "Back-Up Bidder" so that if the Successful Bidder does not close timely the Trustee may sell the Property to the Back-Up Bidder for the amount of such Back-Up Bidder's last bid. The Back-Up Bidder's Deposit will be retained by the Trustee. If the sale to the Successful Bidder does not close timely, the Trustee will advise the Back-Up Bidder accordingly. The closing will take place on or before fourteen (14) calendar days following the date on which the Trustee gives notice of the Successful Bidder's failure to close. The Back-Up Bidder will be bound by all the terms of the Sale Agreement except as to price, without contingencies (including any financing contingency). The Back-Up Bidder's Deposit will be retained by the Trustee and will be applied to the sale price. The Deposit will be non-refundable in the event that the Back-Up Bidder fails to close the sale timely.

8.    If a qualified overbidder is not the Successful Bidder or the Back-Up Bidder, the overbidder's Deposit will be returned to the overbidder within ten court days after the date of the hearing. If the sale to the Successful Bidder closes, the Back-Up Bidder's Deposit will be returned to the Back-Up Bidder within ten court days from the date of closing.

9.    Pursuant to the Court-approved listing agreement, the aggregate commission to be paid by the Trustee is an amount equal to 6.0% of the gross sales price (3% to Trustee's broker,

1785196.1  27064

15

1  Coldwell Banker, and 3% to Buyer's broker, Galaxy Homes (or the broker of the Successful

2  Bidder, as the case may be).

3

4                                    III.

5        **PROPOSED TREATMENT OF LIENS AND HOMESTEAD EXEMPTION**

6        The Trustee has avoided and preserved all of the consensual liens against the Property. As

7  discussed, the Homestead Exemption is junior to the avoided consensual liens. Hence, absent

8  significant overbidding, the homestead exemption is out of the money, and no funds will be paid on

9  account of the homestead exemption absent an overbid in a sufficient amount.

10       Because there are final judgments on the avoided and preserved liens, there is no need for

11 the liens and Homestead Exemption to attach to the sale proceeds, but the sale should be free and

12 clear of those liens and that interest.

13       Although the Abstracts of Judgment may have been recorded, Cal. Code. Civ. P. §

14 697.310(a) provides that an abstract of judgment only creates a lien on real property located in the

15 County where the abstract is recorded. A manufactured home is personal property, and liens are

16 perfected by recording with the HCD – not the County Recorder.[5] Moreover, the Abstracts of

17 Judgment are junior to the consensual liens,[6] and hence out of the money and unsecured. 11 U.S.C.

18 § 506. For all these reasons, the Abstracts of Judgment need not attach to the sale proceeds or be

19 paid.

20

21

22

23

24

---

25 [5] There is a limited exception for assessments of a manufactured home park, which may be
   perfected by an abstract of judgment recorded with the County Recorder. Cal. Code Regs. tit. 25 §
26 5595 (2025).

27 [6] The J-Pad lien was created on or about November 16, 2018 (*adv. docket no. 1 at ¶ 28*), whereas
   the judgments underlying the Abstracts of Judgment were entered on or about May 3, 2019
28 (Exhibit "9" at p.6) and December 4, 2018 (Exhibit "10" at p.4), respectively, so the Abstracts of
   Judgment were recorded later.

## IV.

### LEGAL ARGUMENT

A.   **The Proposed Sale of the Property is Supported by the Trustee's Sound Business
Judgment and is in the Best Interests of the Debtor's Estate and Its Creditors**

To enable the Trustee to fulfill his duty to "collect and reduce to money the property of the estate" (11 U.S.C. § 704(a)(1)), the trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In this Circuit and others, courts will authorize sales where the trustee's decision to sell assets outside the ordinary course of business is based upon sound business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) ("In determining whether to approve a sale proposed by a trustee, courts generally apply a business judgment test.").

Based on the Second Circuit's decision in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), courts generally hold that the following four elements must exist to satisfy the "sound business judgment test": (1) sound business reasons; (2) accurate and reasonable notice to interested persons; (3) an adequate, fair and reasonable price; and (4) good faith. *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (affirming sale of debtor's assets proposed by trustee as being supported by a sound business purpose); *Lionel*, 722 F.2d at 1071. "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection." *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *Derivium*, 380 B.R. at 404 ("the Trustee's business judgment is to be given 'great judicial deference,' [however] the Court must scrutinize whether the Trustee has fulfilled his duty to 'maximize the value obtained from a sale'").

The Trustee believes that the proposed sale of the Property, subject to overbid at the hearing, is the best method by which to realize the Estate's interest in the avoided and preserved liens. As detailed above, the Trustee retained a licensed real estate broker to list, market and aid him in selling the Property. The Trustee marketed the Property to the world at large via the MLS (multiple listing service), for several months. The Trustee has obtained an offer subject to

1  overbidding and Bankruptcy Court approval, and the Buyer's offer is the highest and best offer

2  received to date – indeed the only offer received.  The price was arrived at with the Buyer

3  following arm's-length negotiations, and the Trustee believes that it represents a fair and adequate

4  price for the Property.

5       The proposed sale is subject to overbids, so any and all qualified parties wishing to

6  purchase the Property for a higher price will have an opportunity to do so.

7  **B.**   **The Proposed Sale May be Authorized Under Section 363 of the Bankruptcy Code**

8       Section 363(f) of the Bankruptcy Code provides that, upon certain conditions, the trustee

9  may sell property free and clear of a lien or interest in such property:

> 10  The trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> 11  other than the estate, only if—
>
> 12  (1) applicable nonbankruptcy law permits sale of such property free
> and clear of such interest;
>
> 13
> 14  (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be
> 15  sold is greater than the aggregate value of all liens on such property;
>
> 16  (4) such interest is in bona fide dispute; or
>
> 17  (5) such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.
>
> 18

19  11 U.S.C. § 363(f).

20       The Trustee seeks to sell the Property free and clear of all liens, claims and interests. The

21  purchase price for the Property will be at least $275,000.  Aside from the liens the Trustee avoided

22  and recovered, discussed earlier, there are no other known liens or interests in the Property. The

23  Trustee consents to the sale of the Property free and clear of any portion of the liens for which

24  insufficient proceeds exist to pay the liens in full.  The Trustee further requests that the Court

25  approve payments of all sales costs from the Property sale proceeds, including broker commissions,

26  escrow fees and taxes, and to authorize the Trustee to reimburse the Insurance Advances.

27

28

C. **The Trustee Requests that the Court Find that the Buyer and Any Backup Buyer Are Good Faith Purchasers Pursuant to Section 363(m) of the Bankruptcy Code**

A purchaser of property is protected from the effects of reversal on appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good faith. *See* 11 U.S.C. § 363(m). A good faith purchaser is one who buys in good faith and for value. *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). The Code does not define "good faith," but courts have provided guidance as to the appropriate factors to consider. *See id.* (lack of good faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); *In re Pine Coast Enters., Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) (requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of sale proceeding).

Here, with Court authority, the Trustee employed Coldwell Banker to list, market and aid him in selling the Property. Coldwell Banker listed the Property to the world at large, and negotiations with the Buyer were made in an arm's-length fashion. The Trustee will continue to negotiate at arm's-length with potential overbidders, and intends to present further evidence to the Court at or before the hearing supporting a finding of good faith as to any Successful Bidder or Back-Up Bidder. Prior to the Buyer's submission of an offer to the Trustee, neither the Trustee nor the Estate had any preexisting relationship with the Buyer or Galaxy Homes. Moreover, the Trustee and his broker have submitted declarations supporting a finding of good faith. As a result, the Trustee requests that the Court make a finding that the party to whom the Court confirms the sale, as well as any Back-Up Bidder, is a good faith purchaser of the Property within the meaning of § 363(m) of the Code.

D. **Waiver of Fed. R. Bankr. P. 6004(h) is Warranted**

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides: "Unless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." The purpose of Fed. R. Bankr. P 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. 10 Collier on Bankruptcy ¶ 6004.11 (2025).

The Trustee respectfully requests a waiver of the 14-day stay of the effect of the sale order. It would be beneficial to the estate and all creditors to complete the sale at the earliest possible time, particularly after the Debtor's fraudulent transfers and obstreperous conduct have delayed administration of the Property. The Trustee prays that the Court enter such relief pursuant to Fed. R. Bankr. P. 6004(h) to ensure an expeditious closing.

## V.

## CONCLUSION

For the foregoing reasons, the Trustee requests that the Court enter an order:

1.      authorizing the Trustee to sell all right, title and interest in and to the Property free and clear of any and all liens, claims, and interests pursuant to 11 U.S.C. § 363(b) and (f);

2.      approving the proposed overbid procedures;

3.      directing that the sale be free and clear of all liens, claims and interests including the Debtor's homestead exemption and the Abstracts of Judgment;

4.      authorizing the Trustee to pay Coldwell Banker and the broker for the Buyer (or confirmed overbidder) an aggregate commission of 6% of the sale price;

5.      authorizing the Trustee to pay ordinary and customary costs of sale (including title and escrow fees), and to reimburse the Insurance Advances;

6.      authorizing the Trustee to pay the Estate the balance of the avoided and preserved J-Pad lien;

7.      determining that the Buyer and back-up bidder(s) (if any) are good faith purchasers within the meaning of 11 U.S.C. § 363(m);

8.      waiving the 14-day stay of Fed. R. Bankr. P. 6004(h);

9.      approving the form and manner of notice provided by the Trustee of the sale; and

10.     for such further relief as the Court deems just and proper.

DATED: January 31, 2025

DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:

ERIC P. ISRAEL
Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

21

# DECLARATION OF

# JEFFREY I. GOLDEN

## DECLARATION OF JEFFREY I. GOLDEN

I, Jeffrey I. Golden, declare as follows:

1.     I am the duly appointed and acting Chapter 7 trustee of the estate of Jamie Lynn Gallian (the "Debtor").

2.     I have personal knowledge of the facts in this declaration, or upon information and belief, and as to those matters I could testify competently thereto.

3.     I make this declaration in support of my Motion to Authorize Sale Free and Clear of Manufactured Home Decal No. LBM1081, Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Free and Clear of Liens and Homestead Exemption (the "Motion"). All capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the Motion.

4.     I entered into a "Purchase and Sale Agreement" (the "PSA") with Richard Herr, who assigned the agreement to Galaxy Homes, LLC (the "Buyer"), pursuant to which I agreed to sell, and the Buyer agreed to purchase, for $275,000.00, subject to overbid and Court approval, the Estate's right, title and interest in the 2014 Skyline Custom Villa manufactured home, decal no. LBM108 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space"), with the following description:

> Skyline, Custom Villa, 2014, net size 60x30. Serial Numbers AC7V710394GB/GA; DOH/HUD Numbers: PFS1130282 and PFS1130281; Decal Number LBM1081 Year 2006.

5.     True and correct copies of the PSA and its amendments which I executed are attached hereto, marked collectively as Exhibit "1" and incorporated herein by this reference.

6.     The ground lease for the Space (the "Ground Lease") was deemed rejected long ago, and the proposed sale does not include a sale of, or assuming and assigning, the Ground Lease. However, Houser Bros.' counsel has informed me that Houser Bros. has agreed to execute a new ground lease in favor of a qualified buyer – but not the Debtor.

7.     Attached as Exhibit "8" is a true and correct copy of the form that I intend to require for the submission of overbids. I intend to request that my broker, Coldwell Banker ("Coldwell Banker"), forward a copy of the form to potential overbidders.

8.    I have marketed the Property to the world at large since the Court approved my application to employ Coldwell Banker, subject to periodic interference from and delays caused by the Debtor, and believe it was properly and sufficiently exposed to the market during that time. The Property was listed on the MLS. The Buyer's offer is the only one I have received to date for the Property. It is my business judgment based on many years of experience as a bankruptcy trustee and of many real property sales I have conducted, that my proposed sale of the Property on the terms set forth in the PSA is in the best interests of the Estate and its creditors. Based on the evaluation and advice from Coldwell Banker, I believe that $275,000.00, subject to overbid, is a fair and reasonable price for the Property. This price is particularly fair and reasonable in light of the contentious litigation surrounding the Property since before the Debtor filed her bankruptcy case, and which litigation has the potential to continue beyond the closing of the sale.

9.    My broker has assisted with marketing of the Property to potential overbidders. I have no independent knowledge or familiarity with the Buyer. I am informed and believe that the Buyer has no connection with the Debtor, or anyone else associated with this Estate or the administration of the Estate.

10.    I was unable to confirm that the Property was insured, and as a result obtained insurance from Trustee Insurance Services ("TIS"). As of this time, TIS is owed $1,691.80 for insurance premiums, plus $409.20 per month thereafter (collectively the "Insurance Advances"). I request authority to pay TIS the Insurance Advances from the sale proceeds.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 31, 2025, at Los Angeles, California.

Jeffrey I. Golden

1785196.1 27064

23

# DECLARATION OF

# GREG BINGHAM

## DECLARATION OF GREG BINGHAM

I, Greg Bingham, declare as follows:

1.    I am a licensed real estate salesperson at Coldwell Banker Realty.

2.    I have personal knowledge of the facts in this Declaration, except those matters that are based upon information and belief and as to such matters, I believe such matters are true.  If called as a witness, I could testify competently to these facts.

3.    I am a California licensed real estate agent and I am experienced in selling residential and commercial properties..

4.    Pursuant to an order of the Court, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the estate of Jaime Lynne Gallian (the "Debtor"), retained my firm to list, market and aid him in selling the real property commonly known as 2014 Skyline Custom Villa manufactured home, decal no. LBM 1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space").

5.    The Property has been marketed since approximately October 24, 2024, when the Court entered the order granting my firm's employment application and approving the listing agreement.

6.    The marketing that was done for the Property included:

   a.    listing the property in the Multiple Listing Service;

   b.    sending an e-mail blast to approximately 1100 real estate agents working in the area;

   c.    advertising the Property on third party websites: Zillow, Trulia, Realtor.com, etc.;

   d.    Direct mail to targeted residents in the area;

   e.    contacting all active buyers agents in the mobile home communities and neighboring senior residential neighborhoods; and

   f.    Placing targeted advertising on social media: Facebook, Instagram.

7.    In addition to listing the Property, I assisted the Trustee in obtaining the offer that

1785056.1  27046

24

1   led to the agreement with Galaxy Homes, LLC, to purchase the Property for $275,000, for all

2   cash and no contingencies.

3         8.    In order to obtain that offer, in addition to the marketing efforts above, my team and

4   I held four accompanied Buyer tours of the Property. We received one offer.

5         9.    As well as the marketing actions described above, in order to encourage overbidding

6   at the hearing on the motion to approve the sale, the date and time thereof will be published in the

7   MLS and follow up calls to all agents and buyers inquiring about the Property..

8         10.   Based on my experience in the sale of properties in the area where the Property is

9   located, and my familiarity with the Property, I believe that the $275,000 price offered by Galaxy

10  Homes, LLC, reflects the current fair market value of the Property, subject to overbid.

11        11.   I believe Galaxy Homes, LLC, is not associated with the Debtor or any of the

12  professionals employed by the estate.

13

14       I declare under penalty of perjury under the laws of the United States of America that the

15  foregoing is true and correct.

16       Executed at Newport Beach, California on January 29, 2025.

17

18                —DocuSigned by:

                *Gregory Bingham*

19                GREG BINGHAM

20

21

22

23

24

25

26

27

28

1785056.1  27046

25

**REQUEST FOR JUDICIAL NOTICE**

Jeffrey I . Golden, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), hereby respectfully requests that the Court take judicial notice of the following facts:

A.    **Bankruptcy Background**

1.    On July 9, 2021 (the "Petition Date"), Jamie Lynn Gallian filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code, commencing case number 8:21-bk-11710-SC (the "Case"). Jeffrey I. Golden accepted appointment as the Trustee for the Debtor's estate (the "Estate") and continues to serve in that capacity.

2.    Pursuant to an order entered on or about June 1, 2022, the Trustee retained the law firm of Danning, Gill, Israel, and Krasnoff, LLP ("Danning-Gill") as his general bankruptcy counsel. *Docket no. 108*.

3.    Pursuant to an order entered on or about September 5, 2024, the Trustee retained Coldwell Banker Realty ("Coldwell Banker") (agents William Friedman and Greg Bingham) as the Trustee's real estate broker to list, market and aid the Trustee in selling the Property described below. *Docket no. 431*. A copy of the order employing Coldwell Banker is attached hereto as Exhibit "2".

B.    **The Debtor's Schedules**

4.    The Debtor has amended her schedules at least 13 times to date. In her original schedules, she valued the Property at $235,000 and disclosed that title to the Property was vested in J-Sandcastle, LLC on the Petition Date, of which she was its sole member and its managing member. Docket no. 1. The Debtor's schedules further disclosed that the Property was subject to a lien in favor of J-Pad, LLC, and that she was its managing member. Id. A copy of pertinent pages from those schedules are attached to the RJN as Exhibit "3". The Debtor later claimed a homestead exemption in the Property in the amount of $600,000. Docket no. 72, p. 20.

C.    **The Property at Bar**

The Property

5.    On the Petition Date, the registered title owner of the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Property"), was vested in J-Sandcastle Co, LLC ("J-Sandcastle"). *Docket no. 468.* The Debtor was not on title to the Property on the Petition Date.

Liens Against the Property

6.    The Property was subject to a consensual lien on the Property in favor of J-Pad, LLC ("J-Pad") in the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's family members, ex-husband, and former roommate as discussed below. *Docket no. 468.*

The First Objection to the Debtor's Homestead Exemption, Appeal and Remand

7.    On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption (the "Exemption Motion") (*docket no. 95*). The hearing on the Exemption Motion was held on June 2, 2022, and continued to July 21, 2022. At the continued hearing, the Court granted the Exemption Motion and disallowed any claim of exemption by the Debtor in the Property.

8.    On or about July 26, 2022, the Debtor filed her Motion for Reconsideration from the Court's July 21, 2022, ruling (the "Motion for Reconsideration") (*docket no. 157*). The order granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*). The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court took the matter under submission.

9.    On or about December 19, 2022, the Court entered its order granting the Debtor's Motion for Reconsideration finding that the Debtor was entitled to a homestead exemption in the Property (even though she was not on title) in the amount of $600,000 (the "Order Granting Motion for Reconsideration") (*docket no. 274*).

10.    On or about December 29, 2022, Houser Bros. appealed the Order Granting the Motion for Reconsideration to the District Court (*docket no. 280*).

11.    On or about November 1, 2023, the District Court entered an order that reversed and remanded the Order Granting the Motion for Reconsideration on the grounds that the Court did not make findings regarding the Debtor's interest in the Property including whether "Gallian ever acquired (and retained) an equitable interest in the Property" (the "Reversal and Remand Order") (*docket no. 387*).

12.    On or about May 15, 2024, the Court entered a further order after remand (the "Remand Order") (*docket no. 393*). The Remand Order again found "that Debtor held a sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code § 704.720(a)."

13.    Houser Bros. did not appeal the Remand Order, which is now final.

<u>The Objection to the Debtor's Latest Exemption Claim</u>

14.    On or about December 3, 2024, the Debtor amended her claim of exemption yet again. *Docket no. 519*. The Second Exemption claimed an exemption in the ground lease of the "pad" (the "Ground Lease"). A copy of that amendment is attached to the hereto, marked as Exhibit "4" and incorporated herein by this reference. The hearing thereon is set for February 4, 2025, at 11:00 a.m.

15.    Houser Bros. timely objected to that amended exemption claim (the "Objection"). *Docket no. 529*. The Trustee joined in that objection (*docket no. 533*), as did the Huntington Beach Gables Homeowners Association (*docket no. 531*). The Debtor filed an untimely opposition to that Objection on January 24, 2025. *Docket no. 535*.

16.    The Ground Lease was never assumed, and hence was deemed rejected long ago.

D.    **<u>Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property</u>**

17.    On or about June 30, 2023, the Trustee commenced an adversary proceeding, adv. no. 8:23-ap-01064-SC, by filing a Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment ("Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E. J. Gallian (collectively, the "Defendants").

**Stipulated Judgments**

18.     Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay, and E. J. Gallian (collectively the "Family Defendants"), a stipulated judgment was entered against the Family Defendants on or about October 3, 2023 (*adv. docket no. 47*). The judgment against the Family Defendants avoided the liens on the Property in favor of the Family Defendants (the "Stipulated Family Defendants Judgment"). The judgment also preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551. A copy of the Stipulated Family Defendants Judgment is attached hereto, marked as Exhibit "5" and incorporated herein by this reference.

19.     Pursuant to a stipulation with defendant Robert J. McLelland ("Mr. McLelland") (*adv. docket no. 52*), a stipulated judgment was entered against Mr. McLelland on or about March 29, 2024 (*adv. docket no. 66*) (the "McLelland Stipulated Judgment"). The judgment against Mr. McLelland also avoided his lien on the Property. The judgment also preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551. A copy of the McClelland Stipulated Judgment is attached hereto, marked as Exhibit "6" and incorporated herein by this reference.

**Default Judgments**

20.     Pursuant to motions for default judgment filed by the Trustee with respect to defendants, J-Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, "Defaulting Defendants"), default judgments were entered against the Defaulting Defendants on or about May 10, 2024 (*adv. docket nos.* 79, 81 and 83) (collectively the "Defaulting Defendants Judgments"). Copies of the Defaulting Defendants Judgments are attached hereto, marked as Exhibit "7" and incorporated herein by this reference.

21.     The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee.

22.     The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the amount of $225,000 and other liens on the Property in favor of J-Pad. The judgment also preserved those liens for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551.

1    23.    The default judgment against defendant Ronald J. Pierpont determined that Mr.

2  Pierpont does not have any interest in the Property. It also avoided his liens on the Property and

3  preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.

4  **E.**    **Denial of Debtor's Discharge and Appeal**

5    24.    On or about October 18, 2021, Houser Bros. filed a complaint under 11 U.S.C.§ 727

6  to deny the Debtor's discharge, adversary no. 8:22-ap-01097-SC. *Adv. docket no. 1.*  Pursuant to

7  an order entered on or about May 23, 2023, the Court denied the Debtor's discharge (the

8  "Discharge Judgment"). *Adv. docket no. 81.*

9    25.    The Debtor appealed that ruling to the United States District Court, which affirmed

10  the Discharge Judgment. *Adv. docket no. 131.*  No further appeal was taken therefrom.

11  **F.**    **Debtor's Chapter 13 Filing**

12    26.    On or about September 9, 2024, the Debtor filed another voluntary petition for relief

13  – this one under Chapter 13 of the Bankruptcy Code, which was assigned case no. 8:24-11267-SC

14  (the "Chapter 13 Case").  The Chapter 13 Case was dismissed on or about October 21, 2024.

15  *Chapter 13 Docket no. 38.*

16  **G.**    **Debtor's Motion to Convert to Chapter 13**

17    27.    On or about September 11, 2024, the Debtor filed a motion to convert the Case to

18  Chapter 13. *Docket no. 438.*  Pursuant to an order entered on or about October 29, 2024, the Court

19  denied the Debtor's motion to convert. *Docket no. 491.*

20  **H.**    **Proofs of Claim**

21    28.    A true and correct copy of claim no. 4-1 filed by the Jasso Parties is attached hereto,

22  marked as Exhibit "9" and incorporated herein by this reference.

23    29.    A true and correct copy of claim no. 1-2 filed by Gables is attached hereto, marked

24  as Exhibit "10" and incorporated herein by this reference.

25    30.    A true and correct copy of claim no. 7-1 filed by the Debtor is attached hereto,

26  marked as Exhibit "11" and incorporated herein by this reference.

27    31.    A copy of the unpublished case of *In re Roach*, 2019 WL 408628, at *3-5 (B.A.P.

28  9th Cir. 2019) is attached hereto, marked as Exhibit "12" and incorporated herein by this reference.

1

2    DATED:  January __, 2025                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

3

4                                                By: _____

5                                                    ERIC P. ISRAEL
                                                     Attorneys for Jeffrey I. Golden, Chapter 7 Trustee
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1785196.1  27064                                    31