CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:    chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) **BK Case No. 8:21-bk-11710-SC** |
| | ) |
| | ) **Chapter 7** |
| | ) |
| JAMIE LYNN GALLIAN | ) **DEBTOR'S OMNIBUS OPPOSITION TO** |
| | ) **TRUSTEE'S MOTIONS TO SELL [Docket** |
| | ) **539] AND FOR TURNOVER OF** |
| Debtor. | ) **PROPERTY [Docket 538] AND HOUSER** |
| | ) **JOINDERS [Docket 551 & 552];** |
| | ) **DECLARATION OF JAMIE GALLIAN** |
| | ) |
| | ) Date: March 4, 2025 |
| | ) Time: 11:00 AM |
| | ) Place: Courtroom 5C |
| | )    411 West 4th Street |
| | )    Santa Ana, California |
| | ) |

Debtor, Jamie Lynn Gallian hereby submits her Omnibus Opposition to Trustee's Motions to Sell [Docket 538] and Motion for Turnover of Property [Docket 539] and Joinders submitted by Houser Bros. Co. [Docket 551 & 552]. This Opposition is based on the following Memorandum of Points and Authorities and Supporting Declaration(s) and Request for Judicial Notice, and such other evidence and argument as may properly come before the Court.

Dated:  February 18, 2025        CHRISTOPHER L. BLANK, ATTORNEY AT
                                 LAW, PC

                                 By:   /S/*Christopher L. Blank*
                                     Christopher L. Blank, Attorney for Debtor
                                     Jamie Lynn Gallian

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Debtor Jamie Gallian lives in a manufactured home located at 16222 Monterey Lane, Space 376, Huntington Beach, California Decal No. LBM1081 (the "Property"). Gallian has an unassailable automatic exemption in her equitable interest in the Property ("Gallian's Exempt Interest") established by a Final Non-Appealable Order of this Court entered May 17, 2024 [Docket 394]. This Order is law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), cert. denied 508 U.S. 951 (1993). Despite Gallian's Exempt Interest in the Property, Trustee Jeff Golden proposes to kick her out of her home and sell the Property on March 4, 2025, the date set for hearing on Golden's Motion to Sell [Docket 539] and Motion for Turnover [Docket 538]. Golden proposes to sell the Property free and clear of all liens and interests, including Gallian's Exempt Interest. Golden has accepted an opening bid of $275,000.00 from Richard Herr of Galaxy Homes, subject to overbid.

Golden acknowledges that there is no non-exempt equity in the Property. Golden acknowledges that the proposed sale will not generate sufficient proceeds to pay anything for Gallian's Exempt Interest in the Property. Nonetheless, Golden asserts that this Court should approve the sale because he holds a lien against the Property that will be paid from the proceeds of the proposed sale. Golden asserts that he avoided and preserved a valuable lien from J-Pad LLC (the "J-Pad Lien") for the benefit of the bankruptcy estate that sits in first position on the Property. Golden is incorrect about that. Golden asserts that the amount owed on the J-Pad lien exceeds $300,000.00. Golden is incorrect about that too. Furthermore, Golden is not proposing to foreclose on the J-Pad Lien, or sell the J-Pad Lien as an asset of the estate. Rather, he is proposing to sell the Property itself.

Indisputable evidence shows that J-Pad never lent any money to anyone to support the imposition of a lien on the Property. J-Pad is owed nothing and never had a valid lien on the Property. The J-Pad Lien that was avoided and preserved for the bankruptcy estate has no value

1   and is entitled to no payment from the proceeds of any sale of the Property.

2          Golden's Motion to Sell must be denied because the law does not authorize him to

3   sell Gallian's homestead in derogation of her right to continued residence unless Gallian

4   consents to the sale, or the sale will generate sufficient proceeds to pay Gallian the entire amount

5   of Gallian's Exempt Interest in the Property.  Gallian does NOT consent to the proposed sale.

6   Even after discounting the value of the J-Pad Lien to zero, the proposed sale will not generate

7   anything close to the $600,000.00 that would need to be paid in satisfaction of Gallian's Exempt

8   Interest in the Property.

9          Because Golden has no right to sell Gallian's homestead, he has no right to kick her

10  out of her home.  Rather, in exercising his fiduciary duties to Gallian and the bankruptcy estate,

11  he must abandon the Property to Gallian because it is of no value to the bankruptcy estate.

12  **II.    ARGUMENT**

13         **a.  Burden of Proof.**

14         As the moving party, the Trustee bears the burden of proving each and every

15  element necessary to justify the relief he is seeking.

16         [14:715] **Noticed motion required:** Court authority to sell property free

17         and clear of liens or other interests out of the ordinary course of business

18         must be obtained by noticed motion. [11 USC § 363(b)(1); FRBP 6004(c),

19         9014; *see Ch. 19* re general motion practice].

20  Rutter, Cal. Prac. Guide Bankruptcy Ch. 14(I)-D, Selling Estate Property Outside Ordinary

21  Course of Business.

22         [14:746] The DIP or trustee has the burden of proof on most issues,

23         including the issue of adequate protection (*see ¶ 14:696 ff.*) in connection

24         with a sale free and clear of liens. [See 11 USC § 363(p)(1)]

25         (b) [14:747] **Creditor's burden re validity of security interest:** The

26         creditor has the burden of proving the "validity, priority or extent" of its

27         interest in the property being sold. [See 11 USC § 363(p)(2); *In re Meill*

28         (8th Cir. BAP 2010) 441 BR 610, 613-615.

3

1    *Id.*

2         To satisfy his burden in this case, Golden must show a valid business purpose

3    justifying the sale.  That is, Golden must prove that the sale will generate a substantial benefit to

4    the bankruptcy estate.  Additionally, because Golden is proposing to sell the Property free and

5    clear of Gallian's Exempt Interest in the Property, he must also prove that he is entitled to do so

6    under 11 U.S.C. Section 363(f).

7         b.    **California Law Prohibits Golden's Sale of Jamie Gallian's Home for Less**

8              **than the Amount of her $600,000 Homestead Exemption.**

9         For bankruptcy purposes, California has opted out of federal exemptions, electing

10   to utilize exemptions enacted under state law. 11 U.S.C. § 522(b); Cal. Civ. Proc. Code§

11   703.130. Therefore, exemption questions in California bankruptcies require the application of

12   California law. *In re Tallerico*, 532 B.R. 774, 780 (Bankr. E.D. Cal. 2015). The California

13   legislature enacted homestead exemption laws "to protect the sanctity of the family home against

14   a loss caused by a forced sale by creditors ... [ and] ensure that insolvent debtors and their

15   families are not rendered homeless by virtue of an involuntary sale of the residential property

16   they occupy .... " *Amin v. Khazindar*, 112 Cal. App.4th 582, 588 (Cal. Ct. App. 2003). As such,

17   there is a strong public policy toward adopting "a liberal construction of the la and facts to

18   promote the beneficial purposes of the homestead legislation to benefit the debtor." *Id.*

19        In California, a debtor may obtain the benefits of a homestead exemption either

20   by recording a declaration of homestead (Cal. Civ. Proc. Code § 704.910 - § 704.995), or

21   through an automatic homestead exemption (Cal. Civ. Proc. Code§ 704.710 - §704.850). The

22   automatic homestead exemption protects a debtor from forced judicial sales of a debtor's

23   dwelling. *In re Diaz*, 547 B.R. 329,334 (B.A.P. 9th Cir. 2016). "The filing of a bankruptcy

24   petition constitutes a forced sale for purposes of the automatic homestead exemption." *Id.*

25        The declared homestead exemption statutes were created first. However, "the

26   Legislature was quite obviously concerned with the large number of homeowners who were not

27   receiving the benefits of the homestead because of their ignorance of the law or their failure to

28   satisfy the technical requirements for declaring a homestead." *In re Gilman*, 608 B.R. 714, 722

(Bankr. C.D. Cal. 2019) (citing *San Diego White Truck Co. v. Swift*, 96 Cal. App.3d 88, 92 (Cal. Ct. App. 1979)). To solve this problem, the legislature created the automatic homestead exemption. *Id*. California homestead statutes must be liberally construed. Cal. Civ. Proc. Code§ 704.710 et seq. Liberal construction of California's homestead statutes serves to effectuate the statutory goal of helping to prevent Californians from losing their homes through hyper-technical interpretation. Cal. Civ. Proc. Code§ 704.710 et seq.

Additionally, the California legislature sought to broaden the interests protected by the automatic homestead exemption as compared to the interests covered by its predecessor, the declared homestead. An examination of the differences between the two statutory exemptions further illustrates this intent. The declared homestead is expressly limited to an **"interest in real property (whether present or future, vested or contingent, legal or equitable)** that is a 'dwelling' as defined in Section 704.710, but does not include a leasehold estate with an unexpired term of less than two years or the interest of the beneficiary of a trust." Cal. Civ. Proc. Code §704.910(c) (West) (emphasis added). Unlike the former provisions, Section 704.720 does not specify the interest that is protected and does not limit the homestead in a leasehold to a long-term lease; [any interest] sought to be reached by the judgment creditor in the homestead is subject to the exemption. Legislative Committee Comment to Amended Cal. Civ. Proc. Code§ 704.720 (West) (emphasis added).

Substantive issues regarding the allowance or disallowance of the claimed exemption at issue are governed by California Law. *In re Diener,* 483 B.R. 196, 203 (9th Cir. B.A.P. 2012). Furthermore, "[u]nder the California Code of Civil Procedure, a debtor in bankruptcy's interest in her dwelling may not be sold to enforce a money judgment." *Id.* (citing Cal. Civ. Proc. Code§§ 704.720, 704.740(a)).

In 2020, effective January 1, 2021, California enacted further restrictions on a creditor's right to force a sale of a debtor's residence to satisfy a consumer debt. Cal. Civ. Proc. Code§699.730. That section provides: "Notwithstanding any other law, the principal place of residence of a judgment debtor is not subject to sale under execution of a judgment lien based on a consumer debt unless the debt was secured by the debtor's principal place of residence at the

time it was incurred." The statute goes on to define consumer debt and various exceptions to the definition. The one case that has interpreted Section 699.730 determined that the law was constitutional and that the wealth of the debtor and the size of the debt were immaterial to the application of the statute. See, *Davis Boat Mfg.-Nordic, Inc. v. Smith*, 95 Cal. App. 5th 660, 670, 313 Cal. Rptr. 3d 673 (2023). The undersigned was unable to find a published case applying Section 699.730 in the context of a bankruptcy case involving a debtor with primarily consumer debts, such as the case at bar. However, the legislative history of Section 699.730 indicates that the California legislature intended to increase the protections against forced sales of dwellings.

> "[F]orced home sales are no longer reserved for extreme cases, but instead are frequently used (or threatened) to satisfy extremely small debts." This practice "is especially problematic considering [California's] current housing and homelessness crisis" and "what is anticipated to be a historic amount of unpaid consumer debt as a result of the current COVID-19 epidemic." Furthermore, "[f]oreclosing on homes due to ... debt is disruptive to low income communities," "communities of color," "seniors," and "people with disabilities." Assembly Bill No. 2463 was "crafted to accomplish the goal . . . of moving the state away from current law allowing a consumer's home to be *de facto* security for every debt they incur."

These reports reveal the primary objective of Assembly Bill No. 2463 is to curtail a particular method of debt collection that (1) has been increasingly used in an abusive manner, i.e., to force or threaten a home sale to satisfy even relatively small debts; (2) would exacerbate the state's housing and homelessness crisis in the midst of a global pandemic; and (3) has disproportionately affected marginalized communities. While these reports list "a variety of sources" of "[d]ebts in collections," "including medical bills, credit cards, auto loans, student loans, and utility bills," they do not suggest—as Davis Boat would have us believe—that only a

1    homeowner who incurs debts "for goods or services reasonably necessary

2    for [his] support or maintenance or that of his dependents" or "to purchase

3    essential items" (italics omitted) may be entitled to protection from the

4    forced sale of his or her principal residence. [Footnote omitted] Moreover,

5    even though Smith unquestionably owes more than "a few thousand

6    dollars" and even if we assume, arguendo, he is a "wealthy judgment

7    debtor" who is not a member of one of the marginalized groups identified

8    in Assembly Bill No. 2463, "the fact that ' " 'a statute can be applied in

9    situations not expressly anticipated by [the Legislature] does not

10    demonstrate ambiguity. It demonstrates breadth.' " ' [Citations.]"

11    *Id.*, at 675–76.

12        Golden cites the unpublished decision of *In re Roach*, No. 8:17-BK-12091-TA,

13    2019 WL 408628 (B.A.P. 9th Cir. Jan. 29, 2019) in support of his assertion that a debtor's

14    homestead can be sold without deference to the debtor's exemption as long as the bankruptcy

15    estate will benefit from the sale.  Golden overstates the holding of *Roach.*  By the time the case

16    got to the B.A.P. the subject property had been sold to a good faith buyer.  The debtor had not

17    sought or received a stay of the sale and therefore the propriety of the sale was no longer

18    contestable.  The B.A.P. decision only addressed the debtor's right to impose her exemption on

19    the proceeds of the sale that were split between a secured creditor and the bankruptcy estate

20    pursuant to a settlement agreement that had been approved by the Bankruptcy Court and was

21    final and non-appealable.  The B.A.P. decided her exemption rights did not attach to those

22    proceeds.

23        *In re Stark*, No. 20-CV-4766(EK), 2022 WL 2316176, at *5–6 (E.D.N.Y. June

24    28, 2022) is another unpublished opinion that goes the other way.  The *Stark* opinion states:

25        Thus the correct answer, in my view, is that in exchange for the

26        carve-out, the Trustee is delivering the sale of the Property outside a

27        foreclosure proceeding. Said differently, the Trustee is trading away, in

28        exchange for the carve-out, Stark's right to remain in the Property for an

7

1  extended period without making mortgage payments; her right to exclude

2  others during that period; and the like.

3       Having described the "value" at issue as such, it is clear that the

4  value resides in the homeowner's "property" rights in the house, and is

5  thus protected by the homestead exemption. Property rights in land are

6  commonly described, in our common law system, as a " 'bundle of sticks'

7  — a collection of individual rights which, in certain combinations,

8  constitute property." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct.

9  1921, 1937–38 (2019). And nestled among that bundle are the rights,

10 possessed by the debtor, that make the foreclosure process such a

11 headache for the secured creditor: the right to continue to reside in the

12 property and to exclude others (including the mortgage holder) from its

13 enjoyment. *E.g.*, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458

14 U.S. 419, 435 (1982) ("The power to exclude has traditionally been

15 considered one of the most treasured strands in an owner's bundle of

16 property rights.").

17                         * * *

18       The Bankruptcy Court therefore ended the inquiry prematurely. At

19 the end of the day, the Trustee is monetizing part of the value of "a lot of

20 land with a dwelling thereon" that is "owned and occupied as a principal

21 residence." And that value is exempted by the New York homestead

22 exemption statute.

23 *Id.* at 5, 6.

24       In our case, we are not dealing with a secured lender who is offering a tip to the

25 Trustee in return for the Trustee selling the Property pursuant to 11 U.S.C. Section 363.  More

26 importantly, we are not at the stage of arguing over how the proceeds of a sale might be

27 distributed.  Here, the Court must deny Golden's requests to kick Gallian out of her house and

28 sell it because Golden has no right to force the sale of the Property without complying with

California law.  California law prohibits the sale of a homestead unless the sale proceeds will be sufficient to pay the entirety of Galian's Exempt Interest in the Property.

Cal. Civ. Proc. Code § 704.720 (West) provides: "(a) A homestead is exempt from sale under this division to the extent provided in Section 704.800."

Cal. Civ. Proc. Code § 704.730 (West) in effect on the date Gallian filed her bankruptcy petition provided:

> (a) The amount of the homestead exemption is the greater of the following:
>
> (1) The countywide median sale price for a single-family home in the calendar year prior to the calendar year in which the judgment debtor claims the exemption, not to exceed six hundred thousand dollars ($600,000).
>
> (2) Three hundred thousand dollars ($300,000).
>
> (b) The amounts specified in this section shall adjust annually for inflation, beginning on January 1, 2022, based on the change in the annual California Consumer Price Index for All Urban Consumers for the prior fiscal year, published by the Department of Industrial Relations.

The upper limit for homes in Orange County in 2021 was $600,000.00.  Golden cannot meet his burden of demonstrating that the Property can be sold for an amount sufficient to pay Gallian the entirety of Gallian's Exempt Interest in the Property.

Cal. Civ. Proc. Code § 704.800 (West) provides:

> (a) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, including but not limited to any attachment or judgment lien, the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year.

9

1    (b) If no bid is received at the sale of a homestead pursuant to a

2    court order for sale that is 90 percent or more of the fair market value

3    determined pursuant to Section 704.780, the homestead shall not be sold

4    unless the court, upon motion of the judgment creditor, does one of the

5    following:

6    (1) Grants permission to accept the highest bid that exceeds the

7    amount of the minimum bid required by subdivision (a).

8    (2) Makes a new order for sale of the homestead.

9    The Court Order and appraisal provisions California law imposes on sales of

10   homesteaded real property do not apply to sales of homesteaded personal property.  See, Cal.

11   Civ. Proc. Code § 704.740 (West).  However, the minimum bid requirements do apply, as do the

12   prohibition against selling a homesteaded dwelling for less than the amount necessary to clear all

13   liens, and pay the judgment debtor the total amount of the exemption.  *See also*, Cal. Civ. Proc.

14   Code § 701.620 (West) applicable to execution sales of exempt personal property.

15   **c.  Gallian's Exempt Interest in the Property is not Property of the Estate and**

16   **Cannot be Sold by Golden.**

17   The Court must determine what property Golden is proposing to sell, and whether

18   it property of the estate.  Golden asserts that through default judgments and settlements in

19   Adversary Action 8:23-ap-01064-SC he has avoided and preserved various interests in the

20   Property.  He asserts that he has avoided and preserved the J-Pad lien, but he is not asking for

21   permission to sell it.  He also asserts that he has avoided and preserved the interests of J-

22   Sandcastle, Ron Pierpont, Robert J. McLelland, Steven D. Gallian, Brian J. Gallian, Justin

23   Barclay and E. J. Gallian.  Golden has not described these other interests he avoided and

24   preserved, and he has not asked for permission to sell these interests.  Rather, he is only asking

25   for permission to sell the Property itself.

26   Golden asserts that various creditors [Houser Bros. and the Jasso Parties] have

27   recorded abstracts in the Orange County land records, but those abstracts did not create liens on

28   the Property because the Property is personal property, not real property.  Gallian does not

dispute this.  Because the abstracts never created liens on the Property, there is no need to avoid them, sell free and clear of them or provide adequate protection for them.  Furthermore, Gallian's Exempt Interest in the Property is unaffected by any judgment liens that might exist on the Property.  Neither Gallian nor Golden has any need to avoid judgment liens that never attached to the Property.  Golden's references to the Section 522(f) of the Bankruptcy Code in his Motion to Approve Sale [Docket 539] appear to be inapposite.  See, Motion to Approve Sale, at 12, lines 3 – 11.

Gallian's Exempt Interest in the Property is not property of the estate.  However, title to the Property, i.e. hypothetical non-exempt equity in the Property is property of the estate. This is the interest that Golden is proposing to sell.  Because there is no non-exempt equity in the Property, unless Golden can sell the Property free and clear of Gallian's Exempt Interest in the Property, Golden's request to sell the Property must be denied.

> This case turns largely on the proper interpretation of California's
> homestead exemption statute. That statute defines "homestead" as a
> judgment debtor's principal dwelling place, Cal.Civ.Proc.Code §
> 704.710(c), and "homestead exemption" as a fixed dollar amount
> generated from the sale of the homestead. *Id.,* § 704.730. For the Hymans
> that amount is $45,000. *Id.,* § 704.730(a)(2). State law also provides that a
> judgment debtor's homestead may not be sold by judgment creditors
> unless the sale price of the homestead "exceeds the amount of the
> homestead exemption plus any additional amount necessary to satisfy all
> liens and encumbrances on the property...." *Id.,* § 704.800(a). If the sale
> price does exceed these amounts, the homestead may be sold and the
> judgment debtor is entitled to a sum equal to his homestead exemption
> from the proceeds of the sale. *Id.,* § 704.720(b).

*In re Hyman,* 967 F.2d 1316, 1318–19 (9th Cir. 1992) [Footnotes omitted].

Because there is admittedly no non-exempt equity in the Property over and above Gallian's Exempt Interest, Golden has no right to sell the Property.

**d.  Bankruptcy Law Prohibits Golden's Sale of the Property Free and Clear of Gallian's Exempt Interest in the Property Without Her Consent.**

Golden's Motions do not adequately address the requirements of 11 U.S.C. Section 363(f).  He treats Gallian's Exempt Interest in the Property as though it is nothing more than a right to receive money upon the sale of the Property, i.e., as though it is merely a lien.  He asserts that Gallian's Exempt Interest in the Property is junior to the J-Pad lien and the J-Pad lien is entitled to be paid more than $300,000.00 (an issue that will be addressed more fully below).  He asserts that Gallian's Exempt Interest in the Property is out of the money and therefore he can sell the Property without paying Gallian anything or providing adequate protection for her interest in the Property.  He is incorrect.

The automatic homestead exemption prohibits a forced sale of a homesteaded dwelling unless the sale generates sufficient proceeds to pay the entire amount of the debtor's exemption.  It protects the debtor from being displaced and becoming homeless as the result of a forced sale of the debtor's dwelling.  To a debtor, the most important aspect of the automatic homestead exemption is the right to continue to reside in the dwelling.  Golden completely ignores this aspect of California's homestead law.

11 U.S.C. Section 363(f) provides:

(f) The trustee may sell property [of the estate] under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

1    Gallian's Exempt Interest in the Property does not fit within any of the five

2    categories listed in Section 363(f).  As detailed above, California law prohibits a forced sale of

3    homesteaded property free and clear of the exemption for less than the amount necessary to pay

4    the exemption and all liens in full – thus negating categories (1), (3) and (5).  Gallian has not

5    consented to the sale.  In fact, Golden has not even requested her consent to the sale.  Thus,

6    category (2) does not apply.  Gallian's Exempt Interest in the Property has been established in a

7    Final Non-Appealable order of this Court [Docket 394].  Thus, category (4) does not apply.

8    Golden has cited no authority that allows a trustee to sell a debtor's homestead over the debtor's

9    objection in these circumstances.

10    **e.    Golden's Reliance on His Preservation of the J-Pad Lien does not Give Him**

11    **the Right to Sell Gallian's Home.**

12    Golden attempts to satisfy his burden of showing a business justification for

13    selling the Property by arguing that the sale will generate $256,000 or more in proceeds payable

14    on the J-Pad lien for the benefit of the bankruptcy estate.  Golden cites *Roach* and *In re Van de*

15    *Kamp's Dutch Bakeries*, 908 F.2d 517 (9th Cir. 1990) in support of this argument.  Both cases

16    are distinguishable.  In *Roach*, the secured interest in the debtor's property was not disputed.

17    The issue resolved by the B.A.P. was the debtor's claim that her homestead exemption should be

18    paid from the proceeds attributable to the secured interest that had been shared with the Trustee.

19    In *Van de Kamp*, the fight involved the priority of two different liens that were avoided by the

20    Trustee.  One lien was for unpaid benefit contributions owed to the unions that represented the

21    employees of the bakery business.  The other lien was a consensual lien involving the President

22    of the company.  The unions argued that outside of bankruptcy, their lien would have priority

23    over the President's lien.  The Court determined that because the Trustee had avoided and

24    preserved the President's lien, which on its face had priority over the unions' lien, the preserved

25    President's lien maintained its priority over the unions lien.

26    Appellants do not dispute that the avoided interest was properly perfected

27    prior in time to the asserted perfection of their lien. Under Washington

28    law, a fraudulent conveyance is good as between the parties and passes

13

1    title. *Preston–Parton Milling Co. v. Dexter Horton & Co.,* 22 Wash. 236,

2    60 P. 412 (1900). Appellants could have brought an action in state court

3    prior to the commencement of the bankruptcy action to avoid the

4    fraudulent transfer but chose not to do so. Now they ask this court to

5    determine how such an action would have concluded, and to grant them a

6    status they might have attained absent the bankruptcy proceedings. This

7    we cannot do.

8    *In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990).

9    　　　　When a Trustee avoids and preserves an interest in property, the Trustee "steps

10   into the shoes" of the party whose interest was avoided and preserved.  The effect of preserving

11   an interest, does not enhance the interest.  The Trustee enjoys no better rights in the asset

12   preserved than did the original holder of those rights.  See, *In re Appalachian Energy Indus.,*

13   *Inc.,* 25 B.R. 515 (Bankr. M.D. Tenn. 1982) (in avoiding the unperfected lien of the seller, the

14   trustee preserved only such rights as the seller possessed in the collateral, and on the facts

15   presented, the only right the seller acquired in the forklift, and thus the only right preserved for

16   the benefit of the estate, was a security interest junior to the bank's properly perfected security

17   interest), *In re Tri-Sonic, Inc.,* 1 B.R. 138 (Bankr. N.D. Tex. 1979) (preservation would not

18   enhance status of trustee's lien so that if it would have been defeated by junior claimants while in

19   hands of the original lienholder it was also vulnerable in trustee's hands), *Matter of Woodworks*

20   *Contemp. Furniture, Inc.*, 44 B.R. 971 (Bankr. W.D. Wis. 1984) (however substantial are powers

21   of trustee to preserve avoided lien free of technical defects, when lien by its very nature is not

22   securing purchase money, lien cannot be reinvented as one securing purchase money loan),

23   *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748 (W.D.N.Y. 1986) (trustee, upon avoiding

24   creditor's first-in-time but unperfected security interest, stepped into creditor's shoes as to its

25   unperfected security interest, and thus, bank's perfected security interest had priority over

26   trustee's unperfected security interest under New York law).

27   　　　　Our case does not involve a question of priority.  Our case involves the validity

28   and value of the J-Pad lien itself.  In his Motion to Approve Sale, Golden fails to address

1  California law regarding the validity, creation and satisfaction of liens and security interests.  We

2  must begin this analysis by recognizing that Golden has asserted that the J-Pad Lien that he

3  avoided and preserved is based on a 2019 Note and Security Agreement indicating that J-Pad is

4  owed $225,000.00 plus interest at the rate of 5.5%.  No such Note and Security Agreement are

5  attached as exhibits to Golden's Motion.  Golden attaches a copy of the Default Judgment

6  Avoiding the J-Pad lien to his Motion as part of **Exhibit 7** [Docket 539-1, pages 32 – 24].

7  Notably, it references various documents purporting to perfect the J-Pad lien, but does not

8  include a copy of any Note or Security Agreement.  A true and correct copy of the Complaint in

9  Avoidance Adversary Action, Case No. 8:23-ap-01064-SC, is attached hereto as **Exhibit 102**.

10  Notably it also fails to attach a copy of any Note or Security Agreement.

11  More importantly, in Paragraphs 30 and 31 of the Complaint in the Avoidance

12  Adversary Action, Golden alleges that:

13  30. Notwithstanding that the secured promissory notes were for

14  $225,000, J-Sandcastle did not advance or loan any money to J-Pad at any

15  point in time. The Debtor, however, advanced $175,000 to J-Pad at about

16  the time of the First J-Pad Transfer, with the balance of $50,000 coming

17  from the Debtor later (collectively, the "Third J-Pad Transfer").

18  31. Despite the two secured promissory notes, the $225,000 was

19  not owed to J-Pad. Rather, the $225,000 was owed by J-Pad to the Debtor

20  (who had in fact advanced the funds from her personal accounts).

21  **Exhibit 102**, at 6, lines 5 – 11.  These allegations were repeated in Golden's Motion for Default

22  Judgment against J-Pad and are the heart of Golden's argument for avoiding the J-Pad lien as a

23  fraudulent transfer [Docket 76 in the Avoidance Adversary Action].  That is, Golden has alleged

24  and proven that no money was ever lent by J-Pad to J-Sandcastle, and no debt was ever owed by

25  J-Sandcastle to J-Pad.  Gallian agrees that J-Pad did not lend any money to anyone and is not

26  owed any money.

27  Section 9203 of the California Commercial Code provides that:

28  (a) A security interest attaches to collateral when it becomes enforceable

15

1    against the debtor with respect to the collateral, unless an agreement

2    expressly postpones the time of attachment.

3    (b) Except as otherwise provided in subdivisions (c) to (i), inclusive, a

4    security interest is enforceable against the debtor and third parties with

5    respect to the collateral only if each of the following conditions is

6    satisfied:

7    (1) Value has been given.

8    (2) The debtor has rights in the collateral or the power to transfer rights in

9    the collateral to a secured party.

10    (3) One of the following conditions is met:

11    (A) The debtor has <u>signed</u> a security agreement that provides a description

12    of the collateral and, if the security interest covers timber to be cut, a

13    description of the land concerned.

14    * * *

15    Cal. Com. Code § 9203 (West).

16    According to the allegations and proof submitted by Golden in the Avoidance

17    Adversary Action, J-Pad gave no value in return for any security interest it was granted in the

18    Property by J-Sandcastle.  Golden has also failed to submit any evidence that J-Sandcastle ever

19    signed a security agreement providing a security interest in the Property to J-Pad or executed a

20    Note in favor of J-Pad.  As a result, no security interest ever attached to the Property in favor of

21    J-Pad and no debt is owed to J-Pad.  The Complaint in the Avoidance Adversary Action also

22    alleges that on July 9, 2021, the date that Gallian filed her bankruptcy petition, J-Pad and Ron

23    Pierpont released any interest in the Property.  See, **<u>Exhibit 102</u>**, paragraphs 35 & 36, at 6, lines

24    12 – 24.  Gallian does not dispute those allegations.  By avoiding and preserving the J-Pad Lien,

25    Golden steps into J-Pads shoes.  Golden's preservation did not enhance the rights of J-Pad.  The

26    lien never attached.  No debt is owed to J-Pad, or Golden as the holder of J-Pad's interest and no

27    money will inure to the benefit of the bankruptcy estate by Golden's sale of the Property.

28    Golden's Sale Motion must be denied.

16

**f. Golden has no Right to Sell Gallian's Home; Therefore, he has no Right to Kick Her Out of Her Home.**

Golden's Motion for Turnover is entirely based on his assertion that he is entitled to sell the Property without Gallian's consent. That assertion is incorrect. There is no non-exempt equity in the Property to sell. There is no benefit to be gained from selling the Property because Golden's preserved J-Pad Lien has no value and no right to be paid from the proceeds of any Sale. Gallian's right to continue to reside in the Property because she has an unassailable exemption in her equitable interest in the Property is indisputable. Therefore, Golden's Motion for Turnover must be denied.

**g. Waiver of Rule 6004(h) is Unjustified.**

Golden has asked the Court to waive the stay imposed by Rule 6004(h) on the grounds that the estate will benefit if no party is able to effectively appeal an order granting his motions. While that may be true, due process and justice will not be served by waiving the stay. Gallian believes this opposition has forcefully demonstrated that Golden has no right to sell the Property or kick her out of her home. However, if the Court were to disagree and grant Golden's Motions, the Court cannot deny that the effect on Gallian would be devastating, and that Gallian has at least made substantial colorable arguments calling into question Golden's right to the relief he seeks. At the very least, Gallian should be afforded the opportunity to seek a stay to preserve her right to effectively appeal any adverse ruling. That is what Rule 6004(h) is designed to provide, and it should not be subverted.

**III.    CONCLUSION**

Trustee Golden bears the burden of proving each and every fact necessary to support his Motions. He has failed to do so. Golden has failed to prove that the Property can be sold for enough to pay the entirety of Gallian's Exempt Interest in the Property. Golden has failed to prove that he has the right to sell the Property free and clear of Gallian's Exempt Interest under 11 U.S.C. Section 363(f). Golden has not and cannot prove that the J-Pad lien that he avoided and preserved for the estate ever attached to the Property. Golden has not and cannot prove that

any money was lent by J-Pad to anyone; therefore, Golden has not and cannot prove that the estate will receive any benefit from his proposed sale of the Property.  Because Golden cannot sell the Property, he has no right to kick Gallian out of her home.  Because the Property provides no benefit to the estate, Golden must immediately abandon it to Gallian.

Dated:  February 18, 2025

CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC

By:  /S/*Christopher L. Blank*
Christopher L. Blank, Attorney for Debtor Jamie Lynn Gallian

# DECLARATION OF JAMIE LYNN GALLIAN

I, Jamie Lynn Gallian, declare that the facts set forth below are true and correct of my own personal knowledge and if called upon to do so, I could and would testify competently to them.

1.    I am the Debtor in this matter.  I live in a manufactured home located at 16222 Monterey Lane, Space 376, Huntington Beach, California Decal No. LBM1081 (the "Property").

2.    I purchased the Property in 2018 and I have resided there continuously ever since.

3.    I have an unassailable automatic exemption in my equitable interest in the Property ("Gallian's Exempt Interest") established by a Final Non-Appealable Order of this Court entered May 17, 2024 [Docket 394].

4.    I am the sole manager of J-Pad, LLC ("J-Pad") and J-Sandcastle, LLC.  I am familiar with all financial transactions involving these entities as I am the sole person responsible for those transactions.

5.    J-Pad has never lent any money to J-Sandcastle, LLC or anyone else.  J-Pad has never provided any value to J-Sandcastle, LLC or anyone else.

6.    J-Pad has never had a security interest that **attached** to the Property.

7.    On February 25, 2021, months before I filed bankruptcy, I caused J-Sandcastle to transfer its interest in the Property to me individually.  I submitted the transfer documents to the California Department of Housing and Community Development ("HCD"), the government agency that handles title recordation for manufactured homes, on that date.

8.    On July 9, 2021, the date I filed bankruptcy, Ron Pierpont and J-Pad released any interest they may have had as legal owners (holders of a security interest) in the Property.

9.    I believe the Property is worth much more than the $275,000.00 Trustee Jeff Golden is proposing to accept for the purchase of the Property, although far less than the $600,000 amount of my exempt interest in the Property.

10.    For the entire time I have lived in the Property, I have kept tabs on purchase and sale transactions in my neighborhood. My opinion of value is based on my awareness of those purchase and sale transactions in my neighborhood over the last 4 years.

11.     The Property is in better than average condition compared to other units in my neighborhood and is newer that many units in my neighborhood.

12.     The proposed buyer, Galaxy Homes, is a broker, wholesaler and flipper of homes in my neighborhood.  Galaxy typically buys homes in the neighborhood on the cheap, fixes them up, and sells them for a profit.  My home, the Property, is in good condition and does not need to be fixed up.

13.     In the past, I have received offers to purchase the Property in excess of $335,000.00.  Trustee Golden has prevented me from attempting to market and sell the Property to a retail buyer who might pay close to fair market value for the Property.

14.     Homes in my neighborhood are not typically sold by real estate brokers because the homes are not considered real property.  Rather, homes are sold like cars and other types of personal property, without paying commissions of 6%.

15.     I have insured the Property throughout the time I have owned and resided in it.  Trustee Golden has not requested proof of current insurance.  A true and correct copy of my current insurance declaration page is attached as **Exhibit 101**.

16.     Attached hereto as **Exhibit 102** is a true and correct copy of the Complaint in Adversary Action 8:23-ap-01064-SC, the Avoidance Action by which Golden avoided and preserved the J-Pad lien.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the forgoing is true.

Executed on February 18, 2025 at Huntington Beach, California

  /S/Jamie Lynn Gallian
Jamie Lynn Gallian

purchase and sale transactions in my neighborhood over the last 4 years.

11.     The Property is in better than average condition compared to other units in my neighborhood and is newer that many units in my neighborhood.

12.     The proposed buyer, Galaxy Homes, is a broker, wholesaler and flipper of homes in my neighborhood.  Galaxy typically buys homes in the neighborhood on the cheap, fixes them up, and sells them for a profit.  My home, the Property, is in good condition and does not need to be fixed up.

13.     In the past, I have received offers to purchase the Property in excess of $335,000.00.  Trustee Golden has prevented me from attempting to market and sell the Property to a retail buyer who might pay close to fair market value for the Property.

14.     Homes in my neighborhood are not typically sold by real estate brokers because the homes are not considered real property.  Rather, homes are sold like cars and other types of personal property, without paying commissions of 6%.

15.     I have insured the Property throughout the time I have owned and resided in it.  Trustee Golden has not requested proof of current insurance.  A true and correct copy of my current insurance declaration page is attached as **Exhibit 101**.

16.     Attached hereto as **Exhibit 102** is a true and correct copy of the Complaint in Adversary Action 8:23-ap-01064-SC, the Avoidance Action by which Golden avoided and preserved the J-Pad lien.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the forgoing is true.

Executed on 2/19/2025 at Huntington Beach, California

　　　　　　　　　　　　　　　 /S/Jamie Lynn Gallian
　　　　　　　　　　　　　　　 Jamie Lynn Gallian

21

# EXHIBIT 101

# EXHIBIT 101

# EXHIBIT 101

**FARMERS**
INSURANCE

A Policy From
**FOREMOST INSURANCE COMPANY      GRAND RAPIDS, MICHIGAN**

N EN  721530
103-0927110811

THERESA SIMES INSURANCE AGENCY, INC.
FARMERS INSURANCE GROUP
17165 NEWHOPE ST F
FOUNTAIN VALLEY CA 92708-4230



04

JAMIE GALLIAN
16222 MONTEREY LN  SPACE 376
HUNTINGTON BEACH CA 92649-2258

**THIS IS NOT A BILL**

Dear JAMIE GALLIAN:

Your policy packet is enclosed. Please take a few minutes to read through the enclosed documents. This contract is your assurance of protection in case of an insured loss. Copies of your current policy forms are available upon your request. If you have any questions, please contact us at the address shown above or call us at (714) 966-3000 .

Thank you for choosing us for your insurance. We appreciate the opportunity to provide you coverage.

Sincerely,

THERESA SIMES INSURANCE AGENCY, INC.
FARMERS INSURANCE GROUP
89-0017-231

**P.S.  Did you know . . . Electronic payments are available!**

To sign up for electronic payments, please go to **MyForemostAccount.com.** You may choose to have us automatically withdraw your premium payments electronically from your designated account as they come due, or go to **MyForemostAccount.com** to see your bill and make a payment. As always, simply call our billing service at 1-800-532-4221 with questions about your bill.

**Need to report a claim?**  The Claims Contact Center is available to take your call 24 hours a day, seven days a week at 1-800-527-3907, or you may report a claim online at **Foremost.com.**

103-0927110811-04
Form 738413 07/13

86914    103-0927110811



**FARMERS**
INSURANCE

Underwritten by: **Foremost Insurance Company**  Grand Rapids, Michigan
Home Office:  P.O. Box 2450, Grand Rapids, Michigan 49501

Policy Number:  **103 - 0927110811 - 04**

# DECLARATIONS PAGE

**YOU AS NAMED INSURED AND YOUR ADDRESS:**

JAMIE GALLIAN
16222 MONTEREY LN  SPACE 376
HUNTINGTON BEACH CA 92649-2258

| POLICY INFORMATION | Policy Period: From 08/30/24 To 08/30/25 12:01 A.M. STANDARD TIME |
|---|---|
| Policy Number: 103-0927110811-04 | Renewal Of: |

| DWELLING LOCATION | RANCHO DEL REY MH ESTATES | |
|---|---|---|
| Address: 16222 MONTEREY LN  SPACE 376 HUNTINGTON BEACH CA 92649-2258 | In City Limits: YES | |
| | County: ORANGE | |

| DWELLING INFORMATION | Width: 30 | Length: 60 | Serial Number:  UNKNOWN |
|---|---|---|---|
| Model Year:  2014 | Manufacturer/ Model:  SKYLINE CUSTOM VILLA | | |

| RATING INFORMATION | Use: PRIMARY | | Customer Age Group: 50 OR OVER |
|---|---|---|---|
| Approved Park: YES | Auxiliary Heating Device: YES | Tied Down: | Age Of Dwelling:  10 Years |

**YOUR POLICY IS SERVICED BY:**

THERESA SIMES INSURANCE AGENCY, INC.
FARMERS INSURANCE GROUP
17165 NEWHOPE ST F
FOUNTAIN VALLEY CA 92708-4230

TELEPHONE:  (714) 966-3000

Agency Code: 89-0017-231-0

YOUR POLICY CHANGED EFFECTIVE 10/07/24. THIS REPLACES ANY PRIOR DECLARATIONS PAGE.

# FARMERS
INSURANCE

Underwritten by: **Foremost Insurance Company** Grand Rapids, Michigan
Home Office: P.O. Box 2450, Grand Rapids, Michigan 49501

Policy Number:  **103 - 0927110811 - 04**

## DECLARATIONS PAGE (CONTINUED)

**COVERAGES:** This policy provides only the coverages as shown below and your additional coverages described in the policy.

**AGGREGATE LIMIT:** The most we will pay in any one Policy Period for any one insured Location for Coverage E - Personal Liability is $1,000,000 regardless of the number of claims, suits or accidents.

| SECTION I YOUR PROPERTY COVERAGES | | AMOUNT OF INSURANCE* |
|---|---|---|
| A. DWELLING | | $217,267 |
| B. OTHER STRUCTURES | | $ 21,727 |
| C. PERSONAL PROPERTY | | $108,634 |
| D. ADDITIONAL LIVING EXPENSE | | $ 43,453 |

**\*REFER TO SECTION I "OUR PAYMENT METHODS" TO SEE HOW THESE AMOUNTS WILL BE APPLIED**

| SECTION II YOUR LIABILITY COVERAGES | LIMIT OF LIABILITY | |
|---|---|---|
| E. PERSONAL LIABILITY | EACH ACCIDENT | $100,000 |
| F. MEDICAL PAYMENTS TO OTHERS | EACH PERSON | $ 1,000 |

| | | |
|---|---|---|
| TOTAL SECTION I AND II COVERAGES PREMIUM | $ | 965.00 |

| | | |
|---|---|---|
| TOTAL SECTION I AND II COVERAGES ADDITIONAL PREMIUM | $ | 0.00 |

**SECTION I DEDUCTIBLE**

SECTION I LOSSES OR AMOUNTS OF INSURANCE ARE SUBJECT TO A DEDUCTIBLE OF $ 500 UNLESS STATED OTHERWISE IN YOUR POLICY AND ENDORSEMENTS.

| FORMS AND ENDORSEMENTS | | | ADDL/RETURN | POLICY PREMIUM |
|---|---|---|---|---|
| 4636 | 03/13 | HOMEOWNERS INSURANCE FOR MFG HOMES | | NO ADDED CHARGE |
| 5585 | 06/00 | WORKER COMP. & EMPLOYER'S LIABILITY | | NO ADDED CHARGE |
| 6493 | 11/21 | REQUIRED CHANGE - CALIFORNIA | | NO ADDED CHARGE |
| 6586 | 11/09 | ADDITIONAL NAMED INSURED | | NO ADDED CHARGE |
| 5112 | 05/21 | EXTENDED R/C PAYMENT METHOD | | $ 20.00 |
| 4035 | 01/07 | ADDITIONAL COVERAGE ENDORSEMENTS | | $ 5.00 |
| 5111 | 11/21 | REPLACEMENT COST PERSONAL PROPERTY | | $ 111.00 |
| 6637 | 05/10 | $1500 WATER LOSS DEDUCTIBLE | | $ -32.00 |

| | | |
|---|---|---|
| TOTAL FORMS AND ENDORSEMENTS PREMIUM | $ | 104.00 |

| | | |
|---|---|---|
| TOTAL POLICY PREMIUM AND OTHER CHARGES | $ | 1,069.00 |

| TOTAL ADDITIONAL PREMIUM AND OTHER CHARGES RESULTING FROM THIS CHANGE | $ 0.00 |
|---|---|

MINIMUM EARNED PREMIUM    $50

**SAVINGS INCLUDED IN YOUR POLICY PREMIUM**

| | |
|---|---|
| INSURED AGE DISCOUNT | $90 |
| AGE OF HOME | $368 |
| IN-PARK DISCOUNT | $464 |

**STATE SPECIFIC MESSAGES**

EARTHQUAKE COVERAGE NOT INCLUDED
THE LIMIT OF LIABILITY FOR THIS STRUCTURE (COVERAGE A) IS BASED ON AN ESTIMATE OF THE COST TO PURCHASE A COMPARABLE REPLACEMENT MOBILE HOME USING SPECIFIC

INFORMATION THAT YOU HAVE PROVIDED ABOUT YOUR MOBILE HOME.
IT IS UP TO YOU TO CHOOSE THE COVERAGES AND LIMITS THAT MEET YOUR NEEDS.
YOU HAVE A RIGHT TO REQUEST A NEW ESTIMATE OF THE REPLACEMENT COST FOR YOUR
HOME. PLEASE NOTIFY YOUR AGENT IF YOU WOULD LIKE A NEW ESTIMATE OR IF THERE ARE
ANY CHANGES TO THE FEATURES OF YOUR HOME.
THIS POLICY DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE UNLESS UNDER THE
FORMS/ENDORSEMENT SECTION IT SHOWS EXTENDED R/C PAYMENT METHOD.

**ADDITIONAL FEE INFORMATION**

In consideration of our agreement to allow you to pay in installments, the
following service fee(s) apply per installment:

| 1-PAY | 2-PAY | 4-PAY | 10-PAY | 12-PAY |
|-------|-------|-------|--------|--------|
| $0.00 | $4.00 | $4.00 | $4.00  | $2.00  |

If you have purchased a California Earthquake Authority ("CEA") companion policy
a $1.00 service fee will be applied per CEA installment.

**REASONS FOR THIS CHANGE**
- INFORMATION CONCERNING THE INSURED WAS CHANGED
- YOUR NAME OR ADDRESS HAS BEEN CHANGED





## ADDITIONAL NAMED INSURED
**6586** 11/09

**Name and Address of Additional Named Insured:**

J-PAD LLC
16222 MONTEREY LN #376
HUNTINGTON BEACH CA 92649-2258

**Insuring Agreement**

The following is added to the Insuring Agreement:

You, your and yours also means the additional person(s) named on this Additional Named Insured endorsement and that person's **family members**.

6586 11/09                            All other provisions of your policy apply.





# EXHIBIT 102

# EXHIBIT 102

# EXHIBIT 102

ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Plaintiff Jeffrey I. Golden,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>    Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>Adv. No. |
| JEFFREY I. GOLDEN, Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>    vs.<br><br>J-SANDCASTLE CO., LLC; J-PAD LLC; STEVEN D. GALLIAN; BRIAN J. GALLIAN; JUSTIN BARCLAY; RONALD J. PIERPONT; ROBERT J. MCLELLAND; AND E. J. GALLIAN,<br><br>    Defendants. | CHAPTER 7 TRUSTEE'S COMPLAINT: (1) TO AVOID AND RECOVER FRAUDULENT TRANSFERS; (2) TO AVOID AND RECOVER POSTPETITION TRANSFERS; (3) FOR DECLARATORY RELIEF; (4) FOR BREACH OF CONTRACT; (5) FOR MONEY HAD AND RECEIVED; AND (6) UNJUST ENRICHMENT<br><br>Date:    [SEE SUMMONS]<br>Time:    [SEE SUMMONS]<br>Place:   [SEE SUMMONS] |

Plaintiff alleges:

## **JURISDICTION**

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), (K), and (O).  This adversary proceeding is brought pursuant to 11 U.S.C. §§ 542, 544, 548, 549, 550 and 551 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.  This

1  adversary proceeding arises in and under and relates to the bankruptcy case under Chapter 7 of the

2  Bankruptcy Code (the "Code") entitled *In Jamie Lynn Gallian,* Case No. 8:21-bk-11710-SC (the

3  "Bankruptcy Case"), which is presently pending before the United States Bankruptcy Court for the

4  Central District of California, Santa Ana Division.  Plaintiff consents to and the Court can and

5  should enter a final judgment herein.  If and to the extent that the Court determines that it lacks

6  jurisdiction or authority to enter a final judgment, Plaintiff requests that the Court submit findings

7  of fact and conclusions of law for consideration by the District Court.

8

9  **PARTIES**

10  2.  Plaintiff in this adversary proceeding is Jeffrey I. Golden, the Chapter 7 trustee

11  ("Plaintiff" or the "Trustee") of the bankruptcy estate of Jamie Lynn Gallian, the debtor in the

12  Bankruptcy Case (the "Debtor").  Plaintiff brings this adversary proceeding solely in his capacity

13  as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

14  3.  Plaintiff is informed and believes, and based thereon alleges, that J-Sandcastle Co.,

15  LLC ("J-Sandcastle") was a California limited liability company, with its principal place of

16  business located in in the County of Orange, State of California.  The Debtor is the sole member

17  and manager of J-Sandcastle.

18  4.  Plaintiff is informed and believes, and based thereon alleges, that J-Pad LLC ("J-

19  Pad") was a California limited liability company, with its principal place of business located in in

20  the County of Orange, State of California.  The Debtor is the sole member and manager of J-Pad.

21  5.  Plaintiff is informed and believes, and based thereon alleges, that Steven D. Gallian

22  is an individual residing in the County of Orange, State of California.  Plaintiff is further informed

23  and believes that Steven D. Gallian is the Debtor's son.

24  6.  Plaintiff is informed and believes, and based thereon alleges, that Brian J. Gallian is

25  an individual residing in the County of Orange, State of California.  Plaintiff is further informed

26  and believes that Brian J. Gallian is the Debtor's son.

27

28

1719769.2 27064                    2

7. Plaintiff is informed and believes, and based thereon alleges, that E. J. Gallian is an individual residing in the County of Orange, State of California. Plaintiff is further informed and believes that E. J. Gallian is the Debtor's granddaughter.

8. Plaintiff is informed and believes, and based thereon alleges, that Justin Barclay is an individual residing in the County of Orange, State of California. Plaintiff is further informed and believes that Justin Barclay is the Debtor's son.

9. Plaintiff is informed and believes, and based thereon alleges, that Ronald J. Pierpont is an individual residing in the County of Orange, State of California. Plaintiff is further informed and believes that Ronald J. Pierpont is the Debtor's ex-husband.

10. Plaintiff is informed and believes, and based thereon alleges, that Robert J. McLelland is an individual residing in the County of Orange, State of California. Plaintiff is further informed and believes that Robert J. McLelland is the Debtor's roommate.

11. Plaintiff is further informed and believes, and based thereon alleges, that J-Sandcastle, J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, and Ronald Pierpont are all "insiders" of the Debtor pursuant to § 101(31) of the Code.

## **GENERAL ALLEGATIONS**

12. On or about July 9, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Code.

13. Jeffrey I. Golden thereafter accepted appointment as the Chapter 7 trustee for the Debtor's bankruptcy estate and continues to serve in that capacity for the benefit of creditors.

The J-Sandcastle Transfer

14. Up to and until about October 31, 2018, the Debtor lived at 4476 Alderport Drive, Unit 53, Huntington Beach, CA 92649 ("Alderport Property"), which she received as a gift in 2017 from her stepmother, Sandra Bradley ("Ms. Bradley"). The Debtor always held title to the Alderport Property in her own name.

15. On or about October 31, 2018, the Debtor sold the Alderport Property to Randall Nickell for $379,000, which he paid for in two cashier's checks payable to the Debtor, individually.

1719769.2  27064

3

1      16.     The Debtor deposited the funds from Mr. Nickell for the Alderport Property into a

2  Chase Bank account in her name.

3      17.     Thereafter, the Debtor used $185,000 of the proceeds from the sale of the Alderport

4  Property to purchase a manufactured home located at 16222 Monterey Lane, Space #376,

5  Huntington Beach, CA 92649 (the "Property") from Lisa Ryan.

6      18.     The Debtor paid Ms. Ryan the first $10,000 on November 1, 2018, and the $175,000

7  balance of the purchase price for the Property on November 17, 2018.

8      19.     Even though the Debtor paid for the Property with proceeds of her Alderport

9  Property deposited into a bank account in her own name, the Debtor transferred title to, and the

10  beneficial interest in, the Property to J-Sandcastle.

11      20.     At the time Debtor transferred the Property to J-Sandcastle, she was being sued in

12  multiple actions and judgments were later entered against her as follows:

13          a.     On November 8, 2018, in Case No. 30-2017-00913985, the Orange County

14  Superior Court ("OCSC") granted a motion by the Huntington Beach Gables Homeowners

15  Association ("HOA") for attorney's fees against the Debtor, and on December 4, 2018, the OCSC

16  entered an order on the motion, which reflected that the HOA had been awarded $46,138 of

17  attorney's fees against the Debtor, plus interest.

18          b.     On May 6, 2019, in Case No. 30-2017-00913985, the HOA obtained

19  judgment against the Debtor in excess of $315,000.

20          c.     On September 27, 2018, in Case No. 30-2017-00962999, the OCSC imposed

21  $3,070 of sanctions against the Debtor.

22          d.     On March 21, 2019, in Case No. 30-2017-00962999, the HOA obtained a

23  money judgment against the Debtor for $9,265.

24          e.     To date, the Debtor has paid approximately $1,295 on account of all these

25  judgments and orders.

26      21.     On November 1, 2018, Ms. Ryan executed a "Notice of Sale or Transfer" for the

27  Property with the Debtor, "Jamie Lynn Gallian," identified as the "Purchaser/New Owner."

28      22.     On November 15, 2018, however, Ms. Ryan whited-out the Debtor's name and

1   replaced it with "J-Sandcastle Co, LLC Its Manager Jamie L. Gallian," pursuant to a discussion the

2   Debtor and Ms. Ryan had on that day (the "First J-Sandcastle Transfer").

3       23.     The fully executed "Notice of Sale or Transfer" of the Property reflecting that J-

4   Sandcastle was the owner of the Property was transmitted to the California Department of Housing

5   and Community Development (the "HCD"), which handles the registering and titling of

6   manufactured and mobilehomes, on or about November 20, 2018 (the "Second J-Sandcastle

7   Transfer").  The First J-Sandcastle Transfer and Second J-Sandcastle Transfer are, collectively, the

8   "J-Sandcastle Transfers".

9       24.     J-Sandcastle paid no consideration to the Debtor for the J-Sandcastle Transfers or in

10  connection with receiving title to and the beneficial interest in the Property. J-Sandcastle did not

11  have any business other than its ownership of the Property.

12      25.     On the Petition Date, title to the Property remained with J-Sandcastle, and not the

13  Debtor.

14      26.     On or about July 28, 2021 (postpetition), however, the Debtor caused J-Sandcastle

15  to transfer title to herself personally.  Accordingly, as of August 10, 2021, the HCD records were

16  changed to reflect that the Property's registered owner was "Jamie Lynn Gallian".  By receiving

17  this transfer from J-Sandcastle, the Debtor is a subsequent transferee that did not take for value, in

18  good faith, and without knowledge of the voidability of the initial fraudulent transfer to J-

19  Sandcastle.

20  The J-Pad Transfers

21      27.     At about the time that the Debtor purchased the Property, she sought to conceal the

22  equity in the Property by granting a lien for $225,000 on the Property in favor of J-Pad.

23      28.     Accordingly, on November 16, 2018, the Debtor, as the sole member of J-

24  Sandcastle the "borrower", executed a secured promissory note in the amount of $225,000 in favor

25  of J-Pad.  The secured promissory note is secured by a separate security agreement dated

26  November 16, 2018, reflecting a security interest in the Property between J-Sandcastle and J-Pad

27  (the "First J-Pad Transfer").

28      29.     In addition, on November 16, 2018, the Debtor, individually as the "borrower", also

1719769.2  27064                         5

1   executed a secured promissory note in the amount of $225,000 in favor of J-Pad.  The secured

2   promissory note with the Debtor also purports to be secured by a separate security agreement dated

3   November 16, 2018, between the Debtor and J-Pad (the "Second J-Pad Transfer").  It is unknown if

4   the separate security agreement exists.

5          30.     Notwithstanding that the secured promissory notes were for $225,000, J-Sandcastle

6   did not advance or loan any money to J-Pad at any point in time.  The Debtor, however, advanced

7   $175,000 to J-Pad at about the time of the First J-Pad Transfer, with the balance of $50,000 coming

8   from the Debtor later (collectively, the "Third J-Pad Transfer").

9          31.     Despite the two secured promissory notes, the $225,000 was not owed to J-Pad.

10  Rather, the $225,000 was owed by J-Pad to the Debtor (who had in fact advanced the funds from

11  her personal accounts).

12         32.     On January 14, 2019, the Debtor individually and through J-Pad filed not less than

13  three UCC-1 Financing Statements with the California Secretary of State listing J-Pad as the

14  secured party and the collateral as the Property (collectively, the "Fourth J-Pad Transfer"). A UCC

15  filing failed to perfect liens against the Property.

16         33.     Thereafter, on August 20, 2020, the Debtor signed a "Statement to Encumber" that

17  was submitted to the HCD to add the Debtor's ex-husband, Ronald J. Pierpont, and J-Pad as

18  lienholders on the certificate of title for the Property (the "Fifth J-Pad Transfer").

19         34.     Thereafter, as of February 24, 2021, the certificate of title to the Property reflected

20  that Mr. Pierpont and J-Pad were the "legal owners" (i.e., the lienholders) on the Property.

21         35.     On or about July 9, 2021, however, Mr. Pierpont submitted a signed "Lien

22  Satisfied" form to the HCD removing Mr. Pierpont and J-Pad as the lienholders on the Property.

23         36.     Thereafter, as of August 3, 2021, the certificate of title to the Property did not reflect

24  any "legal owners" (i.e., lienholders) on the Property.

25         37.     On or about August 6, 2021 (postpetition), the Debtor, individually, signed and

26  submitted a "Statement of Facts" to the HCD stating that the legal owner of the Property was J-Pad

27  and that J-Pad perfected its lien on January 14, 2019 (the "Sixth J-Pad Transfer").

28         38.     The Debtor also submitted with the August 6, 2021, Statement of Facts a "Statement

1  to Encumber" purportedly signed on January 14, 2019, reflecting that the "legal owner" of the

2  Property was only J-Pad (the "Seventh J-Pad Transfer").

3       39.     The First, Second, Third, Fourth, Fifth, Sixth, and Seventh J-Pad Transfers are

4  collectively referred to as the "J-Pad Transfers".

5       40.     J-Pad paid no consideration for the J-Pad Transfers.

6       <u>The Steven and Brian Gallian Transfers</u>

7       41.     On August 20, 2020, the Debtor, as the member of J-Sandcastle, signed a

8  "Statement to Encumber" that was submitted to the HCD to add her sons Steven Gallian and Brian

9  Gallian as legal owners (i.e., lienholders) on the certificate of title for the Property (the "First

10  Steven and Brian Transfer").

11       42.     In addition, on December 4, 2020, the Debtor, as the member of J-Pad, filed a UCC

12  Financing Statement Amendment (UCC3) with the California Secretary of State listing Steven and

13  Brian Gallian as additional secured parties with respect to the Property (the "Second Steven and

14  Brian Transfer").  The UCC filings failed to perfect liens against the Property. The First Steven and

15  Brian Transfer and the Second Steven and Brian Transfer are collectively, the "Steven and Brian

16  Transfers".

17       43.     Steven and Brian Gallian paid no consideration for the Steven and Brian Transfers.

18       <u>Additional Postpetition Liens</u>

19       44.     In addition to the UCC Financing Statement Amendment (UCC3) filed on

20  December 4, 2020, with respect to Steven and Brian Gallian, on September 8, 2021, September 12,

21  2021, and September 24, 2021, the Debtor, individually and/or through J-Pad or J-Sandcastle,

22  purported to perfect or create additional liens on the Property in favor of J-Pad, Steven Gallian,

23  Brian Gallian, Justin Barclay, Ronald J. Pierpont, Robert J. McLelland, and E. J. Gallian by filing

24  multiple UCC Financing Statement Amendments (UCC3) with the California Secretary of State

25  listing J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, Mr. Pierpont, Robert J. Mclelland, and

26  E. J. Gallian as additional secured parties (collectively, the "Postpetition Transfers"). The UCC

27  filings failed to perfect liens against the Property.

28       45.     J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, Mr. Pierpont, Robert J.

1   McLelland, and E. J. Gallian paid no consideration for Postpetition Transfers or to be added as

2   additional secured parties with respect to the Property.

3         46.    The J-Sandcastle Transfers, J-Pad Transfers, Steven and Brian Transfers, and the

4   Postpetition Transfers are collectively referred to as the "Transfers".

5         47.    The Trustee is informed and believes, and based thereon alleges, that on the Petition

6   Date, there existed in this case one or more creditors holding unsecured claims allowable under

7   § 502 of the Code or that are not allowable only under § 502(e), that could have avoided the

8   Transfers under applicable law.

9

10                     **FIRST CLAIM FOR RELIEF**

11   **(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

12              **and California Civil Code §§ 3439.04, 3439.07 and 3439.08)**

13                       **(Against All Defendants)**

14         48.    Plaintiff refers to and incorporates herein by reference each and every allegation

15   contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

16         49.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor made

17   the Transfers with the actual intent to hinder, delay, or defraud one or more of her creditors.

18         50.    Pursuant to 11 U.S.C. §§ 544 and/or 548, California Civil Code § 3439.04(a), and

19   other applicable law, Plaintiff is entitled to avoid the Transfers as not being perfected or as

20   fraudulent.

21         51.    Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the

22   Transfers from the initial transferees and any subsequent transferees.

23         52.    Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value

24   thereof, plus interest thereon at the maximum legal rate.

25         53.    Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-

26   Pad, plus interest thereon at the maximum legal rate.

27         54.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided

28   Transfers, including title to and liens against the Property, are preserved for the benefit of the

1  Debtor's estate.

2

3  <u>**SECOND CLAIM FOR RELIEF**</u>

4  **(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

5  **and California Civil Code §§ 3439.05, 3439.07 and 3439.08)**

6  **(Against All Defendants)**

7       55.     Plaintiff refers to and incorporates herein by reference each and every allegation

8  contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

9       56.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor

10  received less than a reasonably equivalent value in exchange for the Transfers.

11      57.     Plaintiff is informed and believes, and based thereon alleges, that at the time the

12  Transfers were made, the Debtor was either insolvent or became insolvent as a result of the

13  Transfers.

14      58.     Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil

15  Code California Civil Code §§ 3439.05 and 3439.07, and other applicable law, Plaintiff is entitled

16  to avoid the Transfers as not being properly perfected or as fraudulent.

17      59.     Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the

18  Transfers from the initial transferees and any subsequent transferees.

19      60.     Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value

20  thereof, plus interest thereon at the maximum legal rate.

21      61.     Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-

22  Pad, plus interest thereon at the maximum legal rate.

23      62.     Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided

24  Transfers, including title to and liens against the Property, are preserved for the benefit of the

25  Debtor's estate.

26

27

28

**THIRD CLAIM FOR RELIEF**

**(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550, and California Civil Code §§ 3439.04(a), 3439.07, and 3439.08)**

**(Against all Defendants)**

63.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, and paragraph 56, of this Complaint as though fully set forth herein.

64.    Plaintiff alleges that at the time of the Transfers, the Debtor was engaged, or was about to engage, in business or a transaction or transactions for which her remaining assets were unreasonably small in relation to the business or transaction.

65.    Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil Code California Civil Code §§ 3439.05 and 3439.07, and other applicable law, Plaintiff is entitled to avoid the Transfers as either not being properly perfected or as fraudulent.

66.    Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the Transfers from the initial transferees and any subsequent transferees.

67.    Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value thereof, plus interest thereon at the maximum legal rate.

68.    Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-Pad, plus interest thereon at the maximum legal rate.

69.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided Transfers, including title to and liens against the Property, are preserved for the benefit of the Debtor's estate.

**FOURTH CLAIM FOR RELIEF**

**(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550, and California Civil Code §§ 3439.04(a), 3439.07, and 3439.08)**

**(Against all Defendants)**

70.    Plaintiff refers to and incorporates herein by reference each and every allegation

1  contained in paragraphs 1 through 47, inclusive, and paragraph 56, of this Complaint as though

2  fully set forth herein.

3       71.    Plaintiff alleges that the Debtor intended to incur, or believed or reasonably should

4  have believed that she would incur, debts that would be beyond her ability to pay as such debts

5  became due.

6       72.    Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil

7  Code California Civil Code §§ 3439.04(a) and 3439.07, and other applicable law, Plaintiff is

8  entitled to avoid the Transfers as either not being properly perfected or as fraudulent.

9       73.    Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the

10  Transfers from the initial transferees and any subsequent transferees.

11       74.    Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value

12  thereof, plus interest thereon at the maximum legal rate.

13       75.    Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-

14  Pad, plus interest thereon at the maximum legal rate.

15       76.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided

16  Transfers, including title to and liens against the Property, are preserved for the benefit of the

17  Debtor's estate.

18

19  **FIFTH CLAIM FOR RELIEF**

20  **(To Avoid and Recover Postpetition Transfers under 11 U.S.C. § 549(a))**

21  **(Against All Defendants)**

22       77.    Plaintiff hereby incorporates by this reference all of his allegations in Paragraphs

23  1 through 76, inclusive, of this Complaint as though fully set forth herein.

24       78.    The Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers

25  were not authorized under the Bankruptcy Code or by the Court.

26       79.    Pursuant to § 549 of the Code, the Trustee is entitled to avoid the Sixth J-Pad

27  Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers.

28       80.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, any liens

1 relating to Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers are

2 preserved for the benefit of the Debtor's estate.

3

4 **SIXTH CLAIM FOR RELIEF**

5 **(For Declaratory Relief)**

6 **(Against All Defendants)**

7     81.    Plaintiff hereby incorporates by this reference all of his allegations in Paragraphs

8 1 through 80, inclusive, of this Complaint as though fully set forth herein.

9     82.    An actual controversy exists in that Plaintiff contends that the Defendants do not

10 have valid, perfected, and unavoidable liens on the Property.

11     83.    Pursuant to 11 U.S.C. § 544(a)(2) and other applicable law, the Trustee is entitled to

12 a judgment determining that the Defendants do not have valid, perfected, and unavoidable liens on

13 the Property.

14

15 **SEVENTH CLAIM FOR RELIEF**

16 **(For Turnover – 11 U.S.C. § 542)**

17 **(Against all Defendants)**

18     84.    Plaintiff refers to and incorporates herein by reference each and every allegation

19 contained in paragraphs 1 through 83, inclusive, of this Complaint as though fully set forth herein.

20     85.    Upon avoidance, recovery, and preservation, the Property will be property of the

21 Debtor's bankruptcy estate.

22     86.    The Trustee may use, sell, or lease the Property under 11 U.S.C. § 363.

23     87.    Pursuant to 11 U.S.C. § 542, the Trustee is entitled to the turnover by the

24 Defendants of the Property.

25

26

27

28

1719769.2  27064        12

## EIGHTH CLAIM FOR RELIEF

### (For Breach of Contract)

### (Against J-Pad)

88.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 87, inclusive, of this Complaint as though fully set forth herein.

89.    Plaintiff alleges that the Debtor loaned $225,000 to J-Pad.

90.    Plaintiff alleges that the Debtor performed all of the terms and obligations on her part to be performed with respect to the terms of such loan.

91.    Plaintiff alleges that J-Pad has defaulted under the terms of the loan including, without limitation, its failure to repay all amounts owed.

92.    As of the date hereof, the outstanding principal balance owed to the Debtor by J-Pad is $225,000, plus interest.

## NINTH CLAIM FOR RELIEF

### (To Avoid Unjust Enrichment)

### (Against J-Pad)

93.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 92, inclusive, of this Complaint as though fully set forth herein.

94.    Plaintiff alleges that as a result of the J-Pad Transfers, J-Pad has been unjustly enriched, so that Plaintiff is entitled to recover from J-Pad money, in a sum of not less than $225,000, plus interest.

## TENTH CLAIM FOR RELIEF

### (To Avoid Unjust Enrichment)

### (Against J-Pad)

95.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 94, inclusive, of this Complaint as though fully set forth herein

96.    J-Pad owes the Debtor the principal sum of $225,000 for money had and received

1    by J-Pad from the Debtor.

2        97.    The Trustee is entitled to recover damages from J-Pad in the sum of not less than

3    $225,000, plus interest.

4

5        WHEREFORE, the Plaintiff prays for judgment against the Defendants as follows:

6    ON THE FIRST THROUGH FOURTH CLAIMS FOR RELIEF:

7        1.      For judgment in favor of the Plaintiff and against the Defendants avoiding the

8    Transfers;

9        2.      For a judgment in favor of the Plaintiff and against all transferees for the Trustee to

10    recover the transferred property;

11        3.      For a judgment in favor of the Plaintiff and against J-Sandcastle for the Trustee to

12    recover the Property from J-Sandcastle;

13        4.      For a judgment in favor of the Plaintiff and against J-Pad for the Trustee to recover

14    the Third J-Pad Transfer (i.e., $225,000) from J-Pad;

15        5.      For a judgment in favor of the Plaintiff and against the Defendants preserving any

16    avoided Transfers, including title to and liens against the Property, for the benefit of the Debtor's

17    estate.

18        6.      For an award of interest at the legal rate on all sums awarded to Plaintiff from

19    and after the date of the Transfers.

20    ON THE FIFTH CLAIM FOR RELIEF:

21        7.      For judgment in favor of the Plaintiff and against the Defendants avoiding and

22    recovering the Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers;

23        8.      For a judgment in favor of the Plaintiff and against the Defendants preserving any

24    liens relating to the J-J-Pad Transfers, Steven and Brian Transfers, and the Postpetition Transfers

25    for the benefit of the Debtor's estate.

26    ON THE SIXTH CLAIM FOR RELIEF:

27        9.      For a judgment determining that the Defendants do not have valid liens on the

28    Property.

ON THE SEVENTH CLAIM FOR RELIEF:

      10.    For a judgment for turnover of the Property to the Trustee.

ON THE EIGHTH, NINTH, AND TENTH CLAIMS FOR RELIEF:

      11.    For the sum of $225,000, together with interest thereon as allowed by contract and law.

ON ALL CLAIMS FOR RELIEF:

      12.    For costs of suit incurred herein; and

      13.    For all other and further relief as the Court deems just and proper.

DATED:  June 30, 2023               DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:     /s/ Aaron E. de Leest
               AARON E. DE LEEST
               Attorneys for Plaintiff Jeffrey I. Golden, Chapter 7
               Trustee

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>JEFFREY I. GOLDEN, Chapter 7 Trustee | DEFENDANTS J-SANDCASTLE CO., LLC; J-PAD LLC;<br>STEVEN D. GALLIAN; BRIAN J. GALLIAN; JUSTIN<br>BARCLAY; RONALD J. PIERPONT; ROBERT J.<br>MCLELLAND; AND E. J. GALLIAN |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>DANNING, GILL, ISRAEL & KRASNOFF, LLP<br>1901 AVENUE OF THE STARS, SUITE 450<br>LOS ANGELES, CA  90067-6006      310-277-0077 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1)TO AVOID AND RECOVER FRAUDULENT TRANSFERS; (2) TO AVOID AND RECOVER POSTPETITION TRANSFERS; (3) FOR DECLARATORY RELIEF; (4) FOR BREACH OF CONTRACT; (5) FOR MONEY HAD AND RECEIVED; AND (6) UNJUST ENRICHMENT

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer  *(1)*
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property  *(2)*

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment  *(3)*

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)  *(4)*

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $  225,000 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>JAMIE LYNN GALLIAN | BANKRUPTCY CASE NO.<br>8:21-bk-11710-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>SANTA ANA | NAME OF JUDGE<br>SCOTT C. CLARKSON |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Aaron E. de Leest | | |
| DATE<br><br>JUNE 30, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Aaron E. de Leest | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

**DEBTOR'S OMNIBUS OPPOSITION TO TRUSTEE'S MOTIONS TO SELL [Docket 539] AND FOR
TURNOVER OF PROPERTY [Docket 538] AND HOUSER JOINDERS [Docket 551 & 552];
DECLARATION OF JAMIE GALLIAN**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 18, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 18, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:
Bradford  Barnhardt on behalf of Interested Party   Courtesy NEF
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford  Barnhardt on behalf of Plaintiff   Houser Bros. Co.
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney   Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff   Jeffrey I. Golden
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party   The Huntington Beach Gables Homeowners
Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law,  jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party   Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff   Houser Bros. Co.

ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal  Malmed on behalf of Interested Party   Courtesy NEF
,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Plaintiff   Jeffrey I. Golden
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Laila  Masud on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Masud on behalf of Interested Party   Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Masud on behalf of Plaintiff   Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party   Courtesy NEF
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Valerie  Smith on behalf of Interested Party   Courtesy NEF
claims@recoverycorp.com

 United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg  Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

 Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William  Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649

Janine  Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor   The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653