| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ERIC P. ISRAEL, #132426<br>EPI@LNBYG.COM<br>LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.<br>2818 La Cienega Avenue<br>Los Angeles, CA 90034<br>Telephone: 310-229-1234<br><br>Attorneys for JEFFREY I. GOLDEN, Trustee<br><br>D. EDWARD HAYS, #162507<br>ehays@marshackhays.com<br>LAILA MASUD, #311731<br>lmasud@marshackhays.com<br>BRADFORD N. BARNHARDT, #328705<br>bbarnhardt@marshackhays.com<br>MARSHACK HAYS WOOD LLP<br>870 Roosevelt<br>Irvine, CA 92620<br>Telephone: (949) 333-7777<br>Facsimile: (949) 333-7778<br>☐ Individual *appearing without an attorney*<br>☒ *Attorney for:*   Movant and Creditor,<br>HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| In re:<br><br>JAMIE LYNN GALLIAN,<br><br><br><br><br><br><br><br><br>                                             Debtor(s) | CASE NO.:  8:21-bk-11710-SC<br><br>CHAPTER: 7<br><br>**NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE RE:**  (*title of motion[1]*):<br>CHAPTER 7 TRUSTEE'S (1) MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE; AND (2) MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION) |

PLEASE TAKE NOTE that the order titled [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: CHAPTER 7 TRUSTEE'S (1) MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE; AND (2) MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION was lodged on (*date*) March 7, 2025, and is attached.  This order relates to the motions which are docket numbers 538-39.

---

[1]  Please abbreviate if title cannot fit into text field.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                           Page 1                                           **F 9021-1.2.BK.NOTICE.LODGMENT**
131740v1/9999-403

Lodged Order

1  ERIC P. ISRAEL, #132426
   EPI@LNBYG.COM
2  LEVENE, NEALE, BENDER, YOO &
   GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, CA 90034
4  Phone: 310-229-1234
5  Facsimile:  310-229-1244

6  Attorneys for JEFFREY I. GOLDEN, Trustee

7  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
8  BRADFORD N. BARNHARDT, #328705
   bbarnhardt@marshackhays.com
9  MARSHACK HAYS WOOD LLP
   870 Roosevelt
10 Irvine, California 92620
   Telephone: (949) 333-7777
11 Facsimile: (949) 333-7778

12
   Attorneys for Creditor,
13 HOUSER BROS CO. dba RANCHO DEL
   REY MOBILE HOME ESTATES

14              UNITED STATES BANKRUPTCY COURT

15         CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

16 | In re | Case No.  8:21-bk-11710-SC |

17 | JAMIE LYNN GALLIAN, | Chapter 7 |

18 | Debtor. | [PROPOSED] FINDINGS OF FACT AND
   CONCLUSIONS OF LAW RE: ORDERS
19 | | GRANTING CHAPTER 7 TRUSTEE'S
   (1) MOTION FOR ORDER COMPELLING
20 | | DEBTOR AND ANY OTHER OCCUPANTS TO
   VACATE AND TURN OVER
21 | | MANUFACTURED HOME AND
   AUTHORIZING ISSUANCE OF WRIT OF
22 | | ASSISTANCE; AND (2) MOTION TO
   AUTHORIZE SALE OF MANUFACTURED
23 | | HOME CURRENTLY LOCATED AT 16222
   MONTEREY LANE, SPACE 376,
24 | | HUNTINGTON BEACH, CA 92649, DECAL
   NO. LBM1081, FREE AND CLEAR OF LIENS
25 | | AND HOMESTEAD EXEMPTION

26 Date:   March 4, 2025
   Time:   11:00 a.m.
27 Crtrm: 5C
   Location:  411 W. Fourth St.
28                Santa Ana, CA 92701

                        1

On March 4, 2025, at 11:00 a.m., the Court, the Honorable Scott C. Clarkson, United States Bankruptcy Judge presiding, heard the following motions filed by Jeffrey I. Golden, solely in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Jamie Lynn Gallian ("Debtor"), on January 31, 2025: (1) Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance ("Turnover Motion"), Docket No. 538; and (2) Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption ("Sale Motion"), Docket No. 539. Eric P. Israel, Esq., of Levene, Neale, Bender, Yoo & Golubchik L.L.P., appeared on behalf of the Trustee, who was personally present in the Courtroom. D. Edward Hays, Esq., of Marshack Hays Wood LLP, appeared on behalf of Creditor, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") which had joined in both the Turnover Motion and Sale Motion. Christopher L. Blank, Esq., appeared on behalf of the Debtor. Robert P. Goe, Esq., of Goe Forsythe & Hodges, LLP, appeared on behalf of the Huntington Beach Gables Homeowners Association. All other appearances were as noted on the record. At the conclusion of the hearing, the Court took the Turnover Motion and Sale Motion under submission.

After considering all pleadings and papers filed in this case and its related adversary proceedings, the oral arguments during the hearing, and for good cause appearing, the Court enters the following findings of fact and conclusions of law:

## Legal Standard

### A. Sale Motion

To enable the Trustee to fulfill his duty to "collect and reduce to money the property of the estate" (11 U.S.C. § 704(a)(1)), the trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In this Circuit and others, courts will authorize sales where the trustee's decision to sell assets outside the ordinary course of business is based upon sound business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C.

2007) ("In determining whether to approve a sale proposed by a trustee, courts generally apply a business judgment test.").

Based on the Second Circuit's decision in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), courts generally hold that the following four elements must exist to satisfy the "sound business judgment test": (1) sound business reasons; (2) accurate and reasonable notice to interested persons; (3) an adequate, fair and reasonable price; and (4) good faith. *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (affirming sale of debtor's assets proposed by trustee as being supported by a sound business purpose); *Lionel*, 722 F.2d at 1071. "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection." *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *Derivium*, 380 B.R. at 404 ("the Trustee's business judgment is to be given 'great judicial deference,' [however] the Court must scrutinize whether the Trustee has fulfilled his duty to 'maximize the value obtained from a sale'").

### i.    Sales Free and Clear

Section 363(f) of the Bankruptcy Code provides that, upon certain conditions, the trustee may sell property free and clear of a lien or interest in such property:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

### ii.    Good Faith Finding

A purchaser of property is protected from the effects of reversal on appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good faith. *See* 11 U.S.C. § 363(m). A good faith purchaser is one who buys in good faith and for value. *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). The Code does not define "good faith," but courts have provided guidance as to the appropriate factors to consider. *See id.* (lack of good faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); *In re Pine Coast Enters., Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) (requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of sale proceeding).

### iii.    Consensual Liens Have Priority Over Exemptions

Consensual liens have priority over exemptions. See Cal. Code Civ. P. § 704.850(a) ("The levying officer shall distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720."); *see also Roach v. Marshack (In re Roach)*, 2019 Bankr.LEXIS 263 (B.A.P. 9th Cir. Jan. 29, 2019) (holding that no proceeds from the sale of a debtor's house were payable on account of the debtor's homestead exemption because the Chapter 7 trustee had recovered a consensual lien against the home that exceeded in value the proceeds); *In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against involuntary liens").

Under 11 U.S.C. § 522(g), a debtor may not claim any exemption in amounts recovered by a trustee after a debtor's voluntary transfer. *See* 5 COLLIER ON BANKRUPTCY P 551.02[2] (2024) ("[Section 522(g)], however, does not allow a debtor to exempt property subject to the trustee's preserved lien position, unless such preserved lien was otherwise avoidable under section 522. Thus, generally, property that was voluntarily transferred by the debtor and recovered by the trustee under section 550 and preserved under section 551 cannot be exempted.").

Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided

4

1  under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section

2  506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the

3  estate."); *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990)

4  (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent

5  that the interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R.

6  581, 586 (B.A.P. 9th Cir. 1996) ("§ 551 does not exclude exempt property from preservation. An

7  avoided interest or lien encumbering exempt property is automatically preserved for the benefit of

8  the estate under § 551."); *see also* 11 U.S.C. § 541(a)(3) (defining property of the estate to include

9  any interest in property that the trustee recovers under 11 U.S.C. § 550); 11 U.S.C. § 541(a)(4)

10  (defining property of the estate to include any interest in property preserved for the benefit of or

11  ordered transferred to the estate under 11 U.S.C. § 551).

12       In other words, the law is clear that Section 551 lien avoidance permits the estate to succeed

13  to the entirety of the lien's priority and rights with respect to other competing interests under

14  applicable state law; preservation puts "the estate in the shoes of the creditor whose lien is avoided."

15  *In re Carvell*, 222 BR 178, 180 (1st Cir. B.A.P. 1998). Without this automatic preservation under

16  Section 551, avoiding a lien would only result in a windfall to junior lienholders or interest holders

17  at the expense of the estate and unsecured creditors. *In re Haberman*, 516 F.3d 1207, 1210 (10th Cir.

18  2008); see also *In re Carvell* at 180. As set forth in *Van de Kamp*, preservation prevents any

19  creditors from challenging that the avoided lien was otherwise unenforceable.

20       The fraudulent nature of the voluntariy transfer made by the Debtor also prevents her from

21  attacking the enforceability of the avoided and preserved lien. The California Supreme Court has

22  held that a fraudulent transfer is enforceable as between transferor and transferee.

23       "The grantor in a deed made for the purpose of defrauding, hindering, or delaying

24       his creditors cannot be relieved against its operation. As to him, it is valid."

25  *Moore v. Schneider*, 196 Cal. 380, 385, 238 P. 81, 82 (1925).

26       California's Uniform Voidable Transactions Act (CCP §§ 3439 et seq.) does not replace

27  common law regarding fraudulent transfers. Instead, they supplement common law. CCP § 3439.12.

28  See also, *Cortez v. Vogt*, 52 Cal.App.4th 917, 60 Cal. Rptr. 2d 841 (Cal. Ct. App. 1997). As such, the

1  Trustee, standing in the shoes of the avoided, recovered, and preserved lien, has the right to enforce

2  it as against any challenge by the Debtor.

3  **B. Turnover Motion**

4  Section 542(a) of the Bankruptcy Code requires: "Except as provided in subsection (c) or (d)

5  of this section, an entity… shall deliver to the trustee, and account for, such property or the value of

6  such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C.

7  § 542(a). Moreover, a debtor has an affirmative duty to cooperate with the Trustee and turn over all

8  estate property to the Trustee. 11 U.S.C. § 521(a)(3)-(4).

9  **i.    Property of the Estate**

10  Section 541(a) of the Bankruptcy Code provides that upon the filing of a bankruptcy case, an

11  estate is created. 11 U.S.C. § 541(a). The estate is "comprised of all the following property,

12  wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in

13  property as of the commencement of the case. . . . (3) Any interest in property that the trustee

14  recovers under section . . . 550 . . . .; (4) Any interest in property preserved for the benefit of or

15  ordered transferred to the estate under section 510(c) or 551 of this title…." The bankruptcy court

16  has exclusive jurisdiction over property of the Estate. *See* 28 U.S.C. § 1334(e); *Kismet Acquisition,*

17  *LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1050 (9th Cir. 2014) (court has "exclusive *in*

18  *rem* jurisdiction" over estate property).

19  Property of the estate must be accounted for and turned over to the trustee. 11 U.S.C.

20  § 542(a). "Bankruptcy Code § 542(a) grants a bankruptcy trustee the power to recover property of

21  the debtor's estate or such property's value." *Shapiro v. Henson*, 739 F.3d 1198, 1199 (9th Cir.

22  2014). Present possession of an interest which constitutes property of the estate is not a prerequisite

23  for the trustee seeking turnover of such property. *Id.* at 1204; *see, e.g.*, *APJL Consulting, LLC v.*

24  *Treasures, Inc. (In re Treasures, Inc.)*, 2015 Bankr. LEXIS 662 at *59 (B.A.P. 9th Cir. 2015). A

25  Chapter 7 debtor has a statutory duty to "surrender to the trustee all property of the estate and any

26  recorded information, including books, documents, records, and papers, relating to property of the

27  estate." 11 U.S.C. § 521(a)(4); *see Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d

28  1168, 1174 (9th Cir. 2014) ("…the debtor has a duty to surrender to the trustee all estate property.");

6

1    *see also Starky v. Birdsell (In re Starky),* 522 B.R. 220, 227 (B.A.P. 9th Cir. 2014); *see also*, *Mwangi*

2    *v. Wells Fargo Bank N.A*. (*In re Mwangi*), 432 B.R. 812, 818, 822 (B.A.P. 9th Cir. 2010) (estate

3    property must be turned over to trustee; "the failure to return property of the estate with knowledge

4    of the bankruptcy is a violation of both the automatic stay and of the turnover requirements of the

5    Bankruptcy Code") (*quoting Abrams v. Sw. Leasing & Rental, Inc*. (*In re Abrams*), 127 B.R. 239,

6    242-43 (B.A.P. 9th Cir. 1991)).

7    ## ii.    Personal Jurisdiction

8    "[T]he district court shall have original and exclusive jurisdiction of all cases under title 11."

9    28 U.S.C. § 1334(a). A debtor consents to personal jurisdiction of the bankruptcy court by filing a

10    bankruptcy petition. *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 870 (9th Cir. 2005) ("The

11    debtor invoked bankruptcy subject matter and *in personam* jurisdiction by filing a voluntary petition

12    in bankruptcy."); *see, e.g., In re Malek*, 591 B.R. 420, 426 (Bankr. N.D. Cal. 2018) ("[Debtor]

13    consented to the equitable jurisdiction of the bankruptcy court by voluntarily filing a bankruptcy

14    petition."); *In re Kasl*, 2009 Bankr. LEXIS 2351 at *10-11 (Bankr. C.D. Cal. January 13, 2009)

15    ("where the debtor voluntarily files a petition, the debtor submits to the personal jurisdiction of the

16    court sitting in the district in which he filed."); *In re Hunt*, 2014 U.S. Dist. LEXIS 189464 at *34

17    (C.D. Cal. July 25, 2014) ("It is axiomatic that a bankruptcy court has personal jurisdiction over a

18    debtor who files a voluntary bankruptcy petition.") (citing *Securities and Exchange Comm'n v. Ross*,

19    504 F.3d 1130, 1149 (9th Cir. 2007)).

20    ## iii.    Procedures for Enforcement of Turnover Order

21    Bankruptcy courts have the power to authorize the issuance of a writ of execution or

22    assistance authorizing and directing the Marshals to compel the surrender of real property. *See* Fed.

23    R. Civ. P. 70 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7070); *In re Kerlo*, 311

24    B.R. 256, 261 (Bankr. C.D. Cal. 2004) ("'a writ of assistance to deliver . . . possession [of real

25    property] . . . was agreeable to the usages and principals of law' and 'clearly lies under the express

26    terms of Fed. R. Civ. P. 70.'") (citing *Hamilton v. McDonald*, 503 F.2d 1138, 1148 (9th Cir. 1974)).

27    Indeed, the Court may issue any order that is necessary and appropriate to carry out the provisions of

28    the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Section 105 also authorizes the Court to grant a

trustee's request for issuance of a writ of assistance. Specifically, orders for possession of property may be enforced through writs and orders under Section 105(a). *See In re Kerlo*, 311 B.R. at 262.

## Findings of Fact

### A.   Bankruptcy Filing, the Property, and Debtor's HCD Submissions

1.      On July 9, 2021 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. The filing of the petition commenced *In re Gallian*, 8:21-bk-11710-SC ("Bankruptcy Case").[1]

### i.   The Property

2.      Since the Petition Date, most of the litigation in this case has centered around Debtor's manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649, described as a 2014 Skyline Custom Villa, decal no. LBM1081 ("Property").

3.      In late 2018, while Debtor was engaged in state-court lawsuits that could have possibly resulted in money judgments against her, she sold a residence held in her own name and used the proceeds from that sale to purchase the Property. *See Houser Bros. Co. v. Jamie Lynn*

---

[1] During oral argument, Debtor's counsel raised an issue regarding the Court's consideration of the record in this Bankruptcy Case. Rule 201 of the Federal Rules of Evidence ("FRE"), made applicably by Rule 9017 of the Federal Rules of Bankruptcy Procedure ("FRBP"), allows the Court to take judicial notice of adjudicative facts "at any stage of the proceeding." Fed. R. Evid. 201(a), (d). The Court may, on its own or upon request of a party, judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b), (c); *see also Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826, 837 (9th Cir. 2021) (noting that FRE 201 allows the court to judicially notice adjudicative facts—that is, the facts of the particular case that normally go to the jury in a jury case—at "any time"). Although the existence of court filings in another case is a proper subject of judicial notice, it is "unnecessary to judicially notice the existence of a filing already on the docket in this case, as it is already before the Court." *Kanaway Seafoods, Inc. v. Pac. Predator*, 2024 U.S. Dist. LEXIS 213502, at *2, 4 (D. Alaska Sept. 20, 2024); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). Although not necessary, the Court, for good measure, takes judicial notice of all facts on the docket set forth in these Findings of Fact. The Court does not, however, take judicial notice of the veracity of any judicially noticed facts. *See Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 973 n.5 (9th Cir. 2020) (noting that the district court was free to take judicial notice of the existence of certain policies that a party introduced in parallel litigation, but not the veracity of any disputed facts contained therein).

*Gallian (In re Jamie Lynn Gallian)*, Adv. Proc. No. 8:21-ap-01097-SC, Docket No. 81 at 10 (Memorandum Decision After Trial Regarding § 727 Claims).

4.    Despite using proceeds that belonged to her individually, Debtor directed the seller to replace her name with the name of her solely owned and managed company, J-Sandcastle Co., LLC ("J-Sandcastle"), on the notice of sale documentation. *See id.*

5.    Debtor directed the replacement of her name with J-Sandcastle on November 15, 2018, just days after a state court granted a motion for attorney's fees against her. *See id.*

6.    On the Petition Date, the Property was still being held in the name of J-Sandcastle. *See id.* at 10-11.

7.    In late 2018, Debtor also executed a promissory note and security agreement on the Property by and between two entities that she managed: J-Sandcastle and J-Pad, LLC ("J-Pad"). *Id.* at 11.

8.    Under this promissory note and security agreement, J-Sandcastle was the borrower and J-Pad the lender. *Id.*

9.    The agreement required J-Sandcastle to pay J-Pad $225,000.00 for a purported loan, although J-Pad did not loan any money to J-Sandcastle. *Id.*

10.    Rather, Debtor herself made the loan to J-Sandcastle, initially in the amount of $175,000.00, with the balance of the $225,000.00 loan funded approximately six months later. *Id.*

## ii.    Debtor's HDC Submissions

11.    Debtor has submitted multiple documents to the California Department of Housing and Community Development ("HDC")[2] listing J-Pad as the lienholder against the Property.

12.    On January 14, 2019, Debtor executed a "Statement to Encumber" under penalty of perjury, listing J-Pad as the legal owner (*i.e.*, lienholder) of the Property. *See* Docket No. 558 at 56 ("Statement to Encumber" attached as Exhibit 1 to the Declaration of Janine Jasso).

13.    On August 20, 2020, Debtor executed a "Statement to Encumber" under penalty of perjury listing "Ronald J. Pierpont, Member JPad LLC" as the legal owner of the Property. *See*

---

[2] The HCD issues certificates of title for manufactured/mobile homes.

9

Docket No. 558 at 36 ("Statement to Encumber" attached as Exhibit 1 to the Declaration of Janine Jasso).

14.    On August 20, 2020, Debtor executed a "Statement of Facts" certifying under penalty of perjury that the "new legal owner is J-Pad LLC, Ronald J. Pierpont, member." *See* Docket No. 558 at 38 ("Statement of Facts" attached as Exhibit 1 to the Declaration of Janine Jasso).

15.    On or about February 22, 2021, Debtor advised the HCD that the legal owner of the Property was jointly Ronald J. Pierpont and J-Pad. *See* Docket No. 558 at 34 ("Statement of Facts" attached as Exhibit 1 to the Declaration of Janine Jasso).

16.    On August 6, 2021 (after the Petition Date), Debtor executed a "Statement of Facts" certifying under penalty of perjury that: "J-Pad, LLC is the Legal Owner and perfected their lien 1/14/2019. The correct address for the Legal Owner – J-Pad LLC 21742 Anza Ave, Torrance, CA 90503." *See* Docket No. 558 at 54 ("Statement of Facts" attached as Exhibit 1 to the Declaration of Janine Jasso).

**B. Debtor's Schedules**

17.    In the Bankruptcy Case, Debtor has filed 15 sets of schedules, each of which she signed under penalty of perjury.

### i.    Original Schedules

18.    On July 9, 2021, as Docket No. 1, Debtor filed her original schedules.

19.    In Debtor's Schedule A/B, she scheduled a fee simple interest in the Property worth $235,000, noting: "Registered Title with HCD Debtor's single member LLC, J-Sandcastle Co, LLC." Docket No. 1 at 12.

20.    Debtor Scheduled a 100% interest in J-Sandcastle, the stated purpose of which was to "hold Registered title with HCD, to Debtor's primary residence." Docket No. 1 at 14.

21.    Debtor scheduled a 33.33% interest in J-Pad, the "only purpose" of which was to "hold a note and UCC-1 filing on Debtor's primary residence": the Property. Docket No. 1 at 15.

22.    Debtor's Schedule D disclosed a $175,000.00 secured claim held by J-Pad against the Property. Docket No. 1 at 21.

23.     Debtor's original Schedule D advised: "UCC-1 File NO. 19-7691905279 Filing Date: 1/14/2019; Encumbrance; HCD Lien perfected 8/20/2020, Ronald J. Pierpont (Loan WJC 8/7/2019, 1/27/2020)." Docket No. 1 at 21.

### ii.     First Amended Schedules

24.     On September 7, 2021, as Docket No. 15, Debtor filed her first amended schedules.

25.     Debtor's Schedule A/B discloses a $235,000.00 interest in the Property, indicating: "Registered Owner, Jamie Lynn Gallian with HCD perfected 2/25/2021." Docket No. 15 at 3.

26.     Debtor scheduled a 100% interest in J-Sandcastle. According to Debtor: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021." Docket No. 15 at 6.

27.     Debtor scheduled a 33.33% interest in J-Pad, with the following information: "Entity Assets include . . . Certificate of Title with HCD, perfected 1/14/2019, LBM 1081; 2014 Skyline Custom Villa Manufactured Home UCC-1 Manufactured Home Financing Statement perfected 1/14/2019, against personal property located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649." Docket No. 15 at 6.

28.     Debtor did not submit an amended Schedule D with her first amended schedules.

### iii.     Second Amended Schedules

29.     On September 22, 2021, as Docket No. 16, Debtor filed her second amended schedules.

30.     Debtor scheduled a $235,000.00 interest in the Property, indicating: "HCD COT Registration transferred 2/25/2021, from JSandcastle Co LLC Debtor's single member LLC, to Debtor . . . . Debtor Homestead Declaration filed with OC Clerk Recorder 7/9/2021@12:48 p.m." Docket No. 16 at 3.

31.     Debtor scheduled a 100% interest in J-Sandcastle, indicating: "Debtor Purchased home on 11/1/2018 . . . .  HCD Registered to JSandcastle Co LLC. . . . JSandcastle Co LLC transferred Registration to Jamie Lynn Gallian, perfected with HCD 2/25/2021 . . . ." Docket No. 16 at 6.

11

32.     Debtor scheduled a 1/7 interest in J-Pad, LLC, noting: "Only purpose is to hold HCD Certificate of Title, perfected 1/14/2019 of debtors [sic] primary residence 2014 Skyline Custom Villa, Decal No. LBM 1081; Serial no. 7V710394GB/GA to protect purchase of 2014 Manufactured Home as debtors [sic] primary residence and qualification 1/1/2006 Ryan Ground Leasehold Assigned to Debtor, located on APN 178-011-01 Tract 10542, Unit 4, Lot 376, pending litigation; preservation." Docket No. 16 at 6.

33.     Debtor did not submit an amended Schedule D with her second amended schedules.

### iv.    Third Amended Schedules

34.     On September 22, 2021, as Docket No. 17, Debtor filed her third amended schedules.

35.     Debtor did not submit an amended Schedule A/B with her third amended schedules.

36.     Debtor's Schedule D included a $175,000.00 secured claim held by J-Pad, Steven and Brian Gallian, EJ Gallian, Justin Barclay, Ronald J. Pierpont, and herself, against the Property, indicating: "Holder of UCC 1 Perfected 1/14/2019; HCD Registration Jamie Lynn Gallian perfected 2-25-2021." Docket No. 17 at 2.

### v.    Fourth Amended Schedules

37.     On October 14, 2021, as Docket No. 22, Debtor filed her fourth amended schedules.

38.     Debtor scheduled a $275,000.00 interest in the Property, indicating: "Title/Registration through HCD; LBM 1081 to Debtor." Docket No. 22 at 3.

39.     Debtor scheduled a 100% interest in J-Sandcastle, adding: "Note payable in the approximate amount of $225,000.00, dated 11/16/2018, secured by UCC-1, perfected 1/14/2019. . . ." Docket No. 22 at 5.

40.     Debtor scheduled a 70% interest in J-Pad, indicating: "J-Pad, LLC holds COT perfected with HCD. Holder of UCC-1, perfected 1/14/2019, secured Note receivable $225,000.00. ($175,000 & $88,000.00 Less note $225,000.00 = $38,000.00. Promissory Note payable to Ron Pierpont; Robert McLelland vs equity in LLC + protection [sic]." Docket No. 22 at 6.

41.     Debtor's Schedule D included a $225,000.00 secured claim of J-Pad, LLC, and Steven and Brian Gallian against the Property, indicating: "UCC-1 perfected 1/14/2019." Docket No. 22 at 13.

12

### vi.    Fifth Amended Schedules

42.    On November 16, 2021, as Docket No. 37, Debtor filed her fifth amended schedules.

43.    Debtor scheduled a $235,000.00 interest in the Property. Docket No. 37 at 3.

44.    Debtor scheduled a 100% interest in J-Sandcastle, indicating: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021 . . . ." Docket No. 37 at 6.

45.    Debtor scheduled a 33-1/3% interest in J-Pad, noting: "J-Pad, LLC Holder of COTA perfected 1/14/2019. UCC-1 AD filed 1/14/2019, 30yr. Manufactured Home Transaction secured by LBM1081, located on APN 178-011-16, Tract 10542, Unit 4, Lot 376. J-Pad, LLC Holder of Security Agreement, dated 11/16/18, Promissory Note ($175,000 & $88,000). Matures 2048. . . . Debtor manages 100%." Docket No. 37 at 6.

46.    Debtor did not submit an amended Schedule D with her fifth amended schedules.

### vii.    Sixth Amended Schedules

47.    On November 22, 2021, as Docket No. 38, Debtor filed her sixth amended schedules.

48.    Debtor scheduled a $235,000 interest in the Property, indicating that the Property was "Registered to Debtor" with "HCD COTA perfected 1/14/2019." Docket No. 38 at 3.

49.    Debtor scheduled a 100% interest in J-Sandcastle, adding: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021 . . . ." Docket No. 38 at 6.

50.    Debtor scheduled a 100% interest in J-Pad, noting: "J-Pad, LLC, Holder of COTA perfected 1/14/2019." Docket No. 38 at 6.

51.    Debtor did not submit an amended Schedule D with her sixth amended schedules.

### viii.    Seventh Amended Schedules

52.    On November 23, 2021, as Docket No. 39, Debtor filed her seventh amended schedules.

53.    Debtor scheduled a $235,000.00 interest in the property, stating that the Property was "Registered to Debtor. HCD COTA perfected 1/14/2019." Docket No. 39 at 6.

54.     Debtor scheduled a 100% interest in J-Sandcastle, adding: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021 . . . ." Docket No. 39 at 9.

55.     Debtor scheduled a 100% interest in J-Pad, noting: "J-Pad, LLC, Holder of COTA perfected 1/14/2019." Docket No. 39 at 9.

56.     Debtor did not submit an amended Schedule D with her seventh amended schedules.

### ix.     Eighth Amended Schedules

57.     On December 1, 2021, as Docket No. 42, Debtor filed her eighth amended schedules.

58.     Debtor did not submit an amended Schedule A/B with her eighth amended schedules.

59.     In Debtor's Schedule D, she listed a $225,000.00 secured claim held by herself, Steven Gallian, and Brian Gallian against the Property. Docket No. 42 at 4.

### x.     Ninth Amended Schedules

60.     On March 11, 2022, as Docket No. 72, Debtor filed her ninth amended schedules.

61.     Debtor scheduled a $235,000.00 interest in the Property. Docket No. 72 at 13.

62.     Debtor scheduled a 100% interest in J-Sandcastle, noting, among other things, "Debtors [sic] primary residence is 16222 Monterey Ln. Unit 376 . . . ." Docket No. 72 at 16.

63.     Debtor scheduled a 100% interest in J-Pad, which she valued at $500. Docket No. 72 at 16.

64.     Debtor did not submit an amended Schedule D with her ninth amended schedules.

### xi.     Tenth Amended Schedules

65.     On March 15, 2022, as Docket No. 75, Debtor filed her tenth amended schedules.

66.     Debtor did not submit an amended Schedule A/B with her tenth amended schedules.

67.     Debtor scheduled a $0.00 claim against the Property held by the Orange County Assessor; a $46,138.00 claim against the Property held by Janine Jasso regarding an Orange County Superior Court ("OCSC") judgment; $0.00 claims against the Property held by Jennifer Paulin, Lindy Beck, Lori Burrett, Lee Gragnano, and Theodore Phillips, regarding OCSC judgments; a $9,265.00 claim against the Property held by the Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $319,653.59 claim against the Property held by the

14

Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $0.00 claim against the Property held by BS Investors LP; a $0.00 claim against the Property held by Houser Bros.; a $0.00 claim against the Property held by S4, a California Limited Partnership; a $46,138.00 claim against the Property held by Huntington Beach Gables Homeowners Association regarding an OCSC judgment; $319,653.19 claim against the Property held by the Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $3,070.00 claim against the Property held by the Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $13,229.34 claim against the Property held by the People of the State of California regarding an OCSC judgment; and a $13,229.34 claim against the Property held by Janine Jasso for civil attorney's fees regarding an OCSC judgment. Docket No. 75 at 6-14.

### xii.    Eleventh Amended Schedules

68.    On May 12, 2022, as Docket No. 94, Debtor filed her eleventh amended schedules.

69.    Debtor did not submit amended Schedules A/B or D with her eleventh amended schedules.

### xiii.    Twelfth Amended Schedules

70.    On September 16, 2024, as Docket No. 444, Debtor filed her twelfth amended schedules.

71.    Debtor scheduled a $539,000.00 interest in the Property with a "80yr unexpired Recorded Gr. Lease." Docket No. 444 at 4.

72.    Debtor scheduled a 100% interest in J-Sandcastle and J-Pad, noting that both were "Terminated – Cancelled – w/ CA Sec. of ST [sic]." Docket No. 444 at 8.

73.    Debtor did not submit an amended Schedule D with her twelfth amended schedules.

### xiv.    Thirteenth Amended Schedules

74.    On October 21, 2024, as Docket No. 468, Debtor filed her thirteenth amended schedules.

75.    Debtor scheduled $539,000.00 interest in the Property with an "80yr unexpired Recorded Gr. Lease." Docket No. 468 at 4.

76.     Debtor scheduled $0.00 interests in J-Sandcastle and J-Pad, with no specified ownership percentage, noting that both were "Terminated – Cancelled CA SOS 11/22/21." Docket No. 468 at 8.

77.     Debtor did not submit an amended Schedule D with her thirteenth amended schedules.

### xv.     Fourteenth Amended Schedules

78.     On December 3, 2024, as Docket No. 519, Debtor filed her fourteenth amended schedules.

79.     Debtor did not submit amended Schedules A/B or D with her fourteenth amended schedules.

## C.     First Objection to Debtor's Homestead Exemption, Appeal, and Remand

80.     Since the filing of her first amended schedules on September 7, 2021, Debtor has consistently claimed a $600,000.00 homestead exemption in the Property pursuant to § 704.030 of the California Code of Civil Procedure ("CCP"). Docket No. 15 at 10; Docket No. 16 at 10; Docket No. 22 at 9; Docket No. 37 at 10; Docket No. 38 at 10; Docket No. 39 at 10; Docket No. 72 at 20; *see also* Docket No. 519 at 5 (amended Schedule C filed on December 3, 2024, claiming a $600,000.00 exemption in the Property pursuant to CCP §§ 704.930(a), 704.720(a), and 704.930).

81.     On May 12, 2022, Houser Bros. filed a "Motion Objecting to Debtor's Claimed Homestead Exemption" ("Exemption Motion"). Docket No. 95.

82.     The hearing on the Exemption Motion was held on June 2, 2022, and continued to July 21, 2022.

83.     During the continued hearing, the Court, the Hon. Erithe Smith presiding, granted the Exemption Motion and disallowed any claim of exemption by the Debtor in the Property.

84.     On July 26, 2022, Debtor filed a motion for reconsideration of the Court's July 21, 2022, ruling ("Motion for Reconsideration"). Docket No. 157.

85.     On August 5, 2022, as Docket No. 177, the Court entered its order granting the Exemption Motion.

16

86.    On September 22, 2022, the Court held a hearing on the Motion for Reconsideration and, at the conclusion of the hearing, took the matter under submission.

87.    On December 19, 2022, the Court entered an order granting the Motion for Reconsideration, finding that the Debtor was entitled to a homestead exemption in the Property (even though she was not on title) in the amount of $600,000.00 ("Order Granting Motion for Reconsideration"). Docket No. 274.

88.    On December 29, 2022, Houser Bros. appealed the Order Granting Motion for Reconsideration to the District Court. Docket No. 280.

89.    On November 1, 2023, the District Court entered an order reversing and remanding the Order Granting Motion for Reconsideration on the grounds that the Court did not make findings regarding the Debtor's interest in the Property including whether "Gallian ever acquired (and retained) an equitable interest in the Property" ("Reversal and Remand Order"). Docket No. 387.

90.    On or about May 15, 2024, the Court entered a further order after remand ("Remand Order"). Docket No. 393.

91.    The Remand Order again found that "Debtor held a sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code § 704.720(a)." Docket No. 393 at 6.

92.    Houser Bros. did not appeal the Remand Order, which is now final.

**D. Objection to Debtor's Latest Exemption Claim**

93.    On December 3, 2024, Debtor filed an amended Schedule C to claim an exemption in a ground lease ("Ground Lease") for the "pad;" *i.e.*, the space on which the mobilehome sits. Docket No. 519.

94.    On January 2, 2025, Houser Bros. filed a motion objecting to Debtor's claimed exemption in the Ground Lease. Docket No. 529.

95.    After a hearing held on February 4, 2025, the Court, on February 20, 2025, entered an order sustaining Houser Bros.'s objection to Debtor's claims of exemption in the Ground Lease. Docket No. 555.

96.     The Court highlighted in its ruling that the Debtor had already admitted, and the Court had previously found, that the Debtor was not a party to any ground lease. Docket No. 555 at 4.

## E.   Houser AP and Denial of Debtor's Discharge

97.     On October 18, 2021, Houser Bros. filed a "Complaint to (1) Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)."

98.     The filing of the complaint commenced *Houser Bros. Co. v. Jamie Lynn Gallian (In re Jamie Lynn Gallian)*, Adversary Proceeding No. 8:21-ap-01097-SC ("Houser AP").

99.     On October 22, 2021, as Houser AP Docket No. 3, Plaintiff filed an amended complaint ("Houser Complaint").

100.    On April 26, 2023, the Court held a bifurcated trial on Houser Bros.'s 11 U.S.C. § 727 claims. D. Edward Hays, Esq., and Bradford N. Barnhardt, Esq., appeared on behalf of Houser Bros. Debtor appeared *pro se*. All other appearances were as noted on the record.

101.    During the trial, Debtor gave the following responses to questioning by Houser Bros.'s counsel:

BY MR. HAYS:

Q And is the $225,000 that you're transferring here separate and apart from the $185,000 transferred to Ms. Ryan?

A Yes, sir.

Q Okay. And the promissory note, however, reflects that J-Sandcastle is the borrower, and that J-Pad is the holder that is owed the $225,000, correct?

A That's correct, sir.

Q And this promissory note is dated November 16 of 2018, as reflected on page 115?

A That's correct.

Q Okay. Did J-Pad, in fact, loan any money to J-Sandcastle?

A No, they did not.

Q But the promissory note requires J-Sandcastle to pay J-Pad the money, correct?

1    A They are the holder of the note, yes, with me. . . .

2    Q The collateral that was the subject of the security agreement was the manufactured home

3    in Space 376, correct?

4    A That's correct.

5    Q Okay. And so J-Sandcastle, who was on title, pledged a security interest in the mobile

6    home to secure repayment of this $225,000 we're talking about. That's what these documents

7    were accomplishing, correct?

8    A Yes.

9    Q Okay. Did J-Sandcastle ever pay $225,000 to J-Pad?

10    A No, sir.

11    Q Okay. Was the money ever paid to you individually?

12    A No, sir.

13    Q Was there ever any lawsuit filed to enforce payment under this note obligation?

14    A No, sir. It's not due yet.

15    *See* Houser AP Docket No. 72 at 66-67, 69 (trial transcript).

16    102.    Following post-trial briefing, the Court, on May 23, 2023, issued a "Memorandum

17    Decision After Trial Regarding § 727 Claims" ("727 Decision"). Houser AP Docket No. 81.

18    103.    In the 727 Decision, the Court found, *inter alia*, that Debtor's discharge should be

19    denied pursuant to 11 U.S.C. § 727(a)(2)(A) for concealing her equity in the Property:

20    Additionally, facts were presented to the Court demonstrating that Defendant further

21    concealed her equity in the property through the granting of liens to her business

22    entities and family members, which liens existed during the relevant time period. For

23    example, in late 2018, Defendant also executed a promissory note and security

24    agreement on the mobile home by and between two entities that she managed,

25    JSandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the

26    lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported

27    loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72,

28    Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially

19

1  in the amount of $175,000 Defendant did not fund the balance of the $225,000 loan

2  until approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the

3  foregoing information regarding the timing of funding, or source of funding, was

4  reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a

5  secured creditor, continuing the ongoing concealment of her true interest in the loan.

6  Additionally, within the year prior to the petition, liens in favor of Defendant's two

7  adult sons, Steven and Brian Gallian, were placed on the property, despite the fact that

8  neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.

9  Houser AP Docket No. 81 at 11-12.

10  104.    The Court further found that based on Debtor's trial testimony, she was the 100%

11  owner of J-Pad as of October 30, 2018, and that her explanation of scheduling varying interests in J-

12  Pad based on a mistake or owing people money was "wholly unbelievable." Houser AP Docket No.

13  18 at 15-16.

14  105.    Regarding Houser Bros.'s 11 U.S.C. § 727(a)(4) claim, the Court found as follows:

15  As noted previously, J-Pad was the holder of a $22[5],000 promissory note.

16  Defendant herself executed the promissory note on J-Pad's behalf, knowing full well

17  of the asset. It is this Court's view that $225,000 is a significant amount of money, and

18  Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder

19  of a significant asset, is a material, false oath made knowingly and fraudulently. So too

20  was Defendant's failure to schedule a value for JPad, who held a significant asset in

21  the form of the aforementioned note and lien on the mobile home.

22  The foregoing, coupled with the evidence presented by Plaintiff of Defendant's

23  other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is

24  entitled to judgment against Defendant on its § 727(a)(4) cause of action.

25  Houser AP Docket No. 81 at 16.

26  106.    On May 29, 2023, Debtor appealed the 727 Decision to the District Court,

27  commencing *In re Jamie Lynn Gallian*, District Court Appeal No. 8:23-cv-00961-WLH ("727

28  Appeal"). Houser AP Docket No. 83.

107.    On July 7, 2023, the Court entered a "Judgment Denying Debtor's Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)" ("727 Judgment"). Houser AP Docket No. 100.

108.    On July 31, 2024, the District Court entered an "Order on Appeal" in which it affirmed the Bankruptcy Court's judgment regarding all § 727 claims against Debtor ("727 District Court Order"). 727 Appeal Docket No. 26.

109.    In its order, the District Court found, *inter alia*: "The secured promissory note stated that J-Sandcastle was a borrower promising to pay $225,000 to J-Pad, LLC." 727 Appeal Docket No. 26 at 3.

110.    Debtor did not appeal the 727 District Court Order, and the 727 Judgment is now final.

## F.    Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property

111.    On June 30, 2023, the Trustee commenced an adversary proceeding, Adv. Proc. No. 8:23-ap-01064-SC ("Trustee AP"), by filing a "Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment" ("Trustee Complaint"), against Ronald J. Pierpont, J-Pad, J-Sandcastle, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, the "Defendants"). The Trustee AP included claims for relief under CCP §§ 3439 et seq.

### i.    Stipulated Judgments

112.    Pursuant to stipulations with Steven D. Gallian, Brian J. Gallian, Justin Barclay, and E.J. Gallian (collectively, the "Family Defendants"), a stipulated judgment was entered against the Family Defendants on October 3, 2023. Trustee AP Docket No. 47.

113.    The judgment against the Family Defendants avoided the liens on the Property in favor of the Family Defendants, and preserved those liens for the benefit of the Estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 47.

114.    Pursuant to a stipulation with Robert J. McLelland ("Mr. McLelland"), Trustee AP Docket No. 52, a stipulated judgment was entered against him on March 29, 2024. Trustee AP Docket No. 66.

115.    The stipulated judgment against Mr. McLelland also avoided his lien on the Property and preserved the lien for the benefit of the Estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 66.

## ii.    Default Judgments

116.    Pursuant to motions for default judgment filed by the Trustee regarding J-Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, "Defaulting Defendants"), default judgments were entered against the Defaulting Defendants on May 10, 2024. Trustee AP Docket Nos. 79, 81, 83.

117.    The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee. Trustee AP Docket No. 81.

118.    The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the amount of $225,000.00 and other liens on the Property in favor of J-Pad, and preserved the J-Pad lien for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 79.

119.    The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont did not have any interest in the Property, and avoided his liens on the Property and preserved those liens for the benefit of the Estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 83.

120.    As a result of the above, title to the Property has been restored to the Estate and the Property is property of the estate.

121.    In addition, the consensual lien in the original principal sum of $225,000.00 in favor of J-Pad on the Property, and the other consensual liens and interests in the Property in favor of the Family Defendants, Mr. Pierpont, and Mr. McLelland, have been avoided and preserved for the benefit of the Estate in the Trustee's name.

## G.    Employment of Real Estate Broker; Debtor's Efforts to Obstruct Sale

122.    On July 28, 2022, the Trustee filed an "Application . . . to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328" regarding the Property ("2022 Employment App"). Docket No. 162.

123.    On August 30, 2022, Debtor filed an opposition to the 2022 Employment App, asserting that the title to and liens against the Property precluded the Trustee from employing a broker to sell it. Docket No. 208 at 1-2, 19-20.

124.    The Court adopted this position by denying the Trustee's 2022 Employment App unless or until the liens were avoided. Docket No. 241.

125.    On July 1, 2024, after successfully obtaining judgments concluding the Trustee AP, the Trustee filed an "Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328" regarding the Property ("2024 Employment App"). Docket No. 395.

126.    On July 16, 2024, Debtor filed an opposition to the 2024 Employment Application. Docket No. 401.

127.    On September 5, 2024, the Court entered an order granting the 2024 Employment App. Docket No. 431.

### i.    Motion to Avoid Lien

128.    On August 27, 2024, Debtor filed a "Motion to Avoid Lien under 11 U.S.C. § 522(f)" ("Motion to Avoid Lien") regarding a $225,000.00 lien held by J-Pad/Trustee. Docket No. 422.

129.    The Motion to Avoid Lien sought to collaterally challenge the Trustee's final judgments discussed above avoiding the various transfers by the Debtor.

130.    On October 22, 2024, the Court entered an order denying the Motion to Avoid Lien. Docket No. 474.

### ii.    Chapter 13 Case

131.    On or about September 9, 2024, Debtor filed another voluntary petition for relief – this one under Chapter 13 of Title 11 of the United States Code, which was assigned Case No. 8:24-11267-SC ("Chapter 13 Case").

132.    The Chapter 13 Case was dismissed on or about October 21, 2024. Chapter 13 Case, Docket No. 38.

### iii.    Motion to Convert Bankruptcy Case to Chapter 13

133.    On or about September 11, 2024, the Debtor filed a motion to convert this Bankruptcy Case to Chapter 13. Docket No. 438.

134.    Pursuant to an order entered on or about October 29, 2024, the Court denied the Debtor's motion to convert. Docket No. 491.

### iv.    Order to Show Cause

135.    On September 12, 2024, the Court entered an "Order to Show Cause Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court" ("OSC"), based on Debtor's indication on the record at the August 27, 2024, hearings, that she and real estate agent Joseph Arroyo had listed the Property. Docket No. 440.

136.    On October 30, 2024, the Court entered an "Order on Order to Show Cause Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court," which, *inter alia*, ordered as follows:

> (1) Jamie Lynn Gallian is ordered to cease (a) exercising control over property of this estate including all efforts to market, sell, or otherwise transfer or encumber the Property, (b) interfering with the Trustee's administration of property of the estate or taking any action to damage property of the estate, (c) violating the automatic stay set forth in 11 U.S.C. § 362(a) in any manner, and (d) violating her duties under 11 U.S.C. § 521(a).

> (2) Jamie Lynn Gallian is ordered to appear at the Property on October 23, 2024, at 4:30 p.m., and to cooperate with the Trustee and his real estate broker in all respects including, without limitation, by providing access to the Property in order to inspect, take pictures, and conduct any other efforts needed for the Trustee and his real estate broker to list, market, and sell the Property.

> (3) Until otherwise ordered, Jamie Lynn Gallian is ordered to take all actions necessary to provide the Trustee and/or his real estate broker access to the

Property on 24 hours' oral notice to her via her cell phone without regard to
whether she will be physically present at the Property.

(4) If Jamie Lynn Gallian fails to comply with this order, she will be in civil contempt
of this order and may be subjected to further orders of the Court to coerce her to
purge her contempt and to comply with the Court's orders including, but not
limited to, being fined, incarcerated through an order of body detention, and/or
removed from the Property by the U.S. Marshal Service or other authorized agent.

(5) The OSC is vacated as to Joseph Arroyo.

(6) The hearing on the OSC is continued to November 5, 2024, at 11:00 a.m., in
Courtroom 5C located at 411 W. Fourth Street, Santa Ana, California 92701-
4593. The purpose of the hearing will be to determine if the Debtor is in
compliance or violation of any of the Court's orders. . . .

Docket No. 495.

137.    Following a continued hearing on the OSC on November 5, 2024, the Court
discharged the OSC. Docket No. 503.

### v.    Proof of Claim

138.    On October 2, 2024, Debtor filed Proof of Claim No. 7-1 in the amount of
$225,000.00, with 5.5% interest and no right to setoff, and secured against the Property, based on a
"LOAN TO CERTIFICATE OF LEGAL OWNER FOR REAL PROP LEASEHOLD RESIDENCY
APPLICANT SPACE 376 J-SANDCASTLE 11/18/2018."

139.    Debtor signed Proof of Claim No. 7-1 under penalty of perjury.

140.    Attached to Proof of Claim No. 7-1 are both the J-Pad security agreement and
promissory note.

## H.    Marketing of the Property, and Sale and Turnover Motions

141.    On or about October 24, 2024, the Trustee's real estate agent, Greg Bingham ("Mr.
Bingham") of Coldwell Banker Realty, listed the Property. Docket No. 539 at 30 (Declaration of
Greg Bingham, ¶ 5).

142. The marketing that Mr. Bingham did for the Property included: (a) listing the Property in the Multiple Listing Service; (b) sending an email blast to approximately 1,100 real estate agents working in the area; (c) advertising the Property on third-party websites such as Zillow, Trulia, and Realtor.com; (d) sending direct mail to targeted residents in the area; (e) contacting all active buyers agents in the mobilehome communities and neighboring senior residential neighborhoods; and (f) placing targeted advertising on social media, such as Facebook and Instagram. Docket No. 539 at 30 (Declaration of Greg Bingham, ¶ 6).

143. In marketing the Property, the Trustee experienced periodic interference from and delays caused by the Debtor. Docket No. 539 at 28 (Declaration of Jeffrey I. Golden in support of the Sale Motion, ¶ 8).

144. This interference included a December 13, 2024, email from the Debtor on which the Trustee was copied, advising: "Gentlemen, I am making arrangements to remove the 2014 Skyline Manufactured Home from the Rancho Del Rey Park and will inform you where it will be stored." *See* Docket No. 438 at 23 (Exhibit 1 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

145. On December 13, 2024, the Trustee was copied on a second email from the Debtor indicating: "Please accept this as Notice the home will be removed from the park as quickly as possible to avoid accruing any further accrual of rent." *See* Docket No. 438 at 26 (Exhibit 2 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

146. On December 17, 2024, the Trustee was copied on an email in which the Debtor advised: "In keeping with the spirit of the holidays, I respectfully request any Home Inspections and Termite Inspections be continued after January 2, 2025." *See* Docket No. 438 at 28 (Exhibit 3 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

147. On or about January 1, 2025, the Trustee was copied on an email in which the Debtor advised: "I came home sick with the flu from work. Fever with severe headache and body aches and bronchitis. I will be in bed resting due to the severe pain and migraine headaches. Please inform your broker of the circumstances." *See* Docket No. 438 at 30 (Exhibit 4 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

148.    Despite these delays, Mr. Bingham and his team held four accompanied buyer tours of the Property. Docket No. 539 at 31 (Declaration of Greg Bingham, ¶ 8).

149.    As of January 31, 2025, the Trustee had received one offer for the Property: a $275,000.00 offer, subject to overbid, from Galaxy Homes, LLC ("Galaxy"). Docket No. 539 at 27-28 (Declaration of Jeffrey I. Golden, ¶¶ 4, 8).

150.    On January 31, 2025, Trustee filed the Turnover Motion and Sale Motion as Docket Nos. 538-39, respectively.

151.    On February 13, 2025, Houser Bros. filed joinders to the Sale Motion and Turnover Motion as Docket Nos. 551-52, respectively.

152.    On February 18, 2025, through attorney Christopher L. Blank, Esq., Debtor filed an omnibus opposition to the Turnover Motion and Sale Motion, and to Houser Bros.'s joinders thereto ("Opposition"). Docket No. 554.

153.    In support of the Opposition, Debtor filed a "Declaration of Jamie Lynn Gallian" ("Gallian Declaration").

154.    On February 25, 2025, the Trustee and Houser Bros. filed a joint omnibus reply in support of the Turnover Motion and Sale Motion ("Reply"). Docket No. 558.

155.    Concurrently with the Reply, the Trustee and Houser Bros. filed evidentiary objections to the Gallian Declaration ("Evidentiary Objections"). Docket No. 559.

156.    On February 28, 2025, the Trustee filed a "Supplemental Declaration of Greg Bingham Re Receipt of Overbid . . . ," which indicated that on or about February 26, 2025, Mr. Bingham received an overbid from Gregory Alan Peplin ("Mr. Peplin") for $276,000.00, for all cash with no contingencies (the "Supplemental Bingham Declaration"). Docket No. 560 at 2.

157.    On or about March 1, 2025, the Court issued tentative rulings to grant both the Turnover Motion and the Sale Motion, approve the Sale Motion's overbid procedures, and permit the Trustee to conduct an auction.

158.    On March 3, 2025, Debtor filed a "Motion for Stay Pending Appeal of Order Granting Sale and Turnover of Homestead Property" ("Stay Motion"), which she purported to set for

hearing on March 4, 2025, at 11:00 a.m.—the same time scheduled for the hearings on the Turnover Motion and Sale Motion.[3]

159.    On March 4, 2025, at 11:00 a.m., the Court held a hearing on the Turnover Motion and the Sale Motion. *See* Docket No. 564 (audio of hearing).

160.    Appearances at the hearing were as noted above.

161.    During the hearing, the Trustee conducted an auction on the sale of the Property, during which Mr. Peplin prevailed with a $276,000.00 all cash bid to purchase the Property, with no contingencies whatsoever.  Also during the hearing, the Trustee withdrew his request for a waiver of the stay provided by Fed. R. Bankr. P. 6004(h).

162.    At the conclusion of the hearing, the Court took the Turnover Motion and Stay Motion under submission and requested that each party file and lodge proposed findings of fact and conclusions of law by March 7, 2025, at 5:00 p.m.

163.    The Court has considered the arguments set forth in the Turnover Motion and Sale Motion, Houser Bros.'s joinders thereto, Debtor's Opposition, the Trustee and Houser Bros.'s Reply, Debtor's Stay Motion the Supplemental Bingham Declaration and all other pleadings filed in the Bankruptcy Case and its adversary proceedings, the arguments of counsel on the record during the hearing, and the proposed findings of fact and conclusions of law submitted by the parties, and issues these findings of fact and conclusions of law.

---

[3] Debtor did not properly notice the Stay Motion for hearing on less than 48 hours' notice as required by Local Bankruptcy Rule 9075-1. Further, the plain language of Federal Rule of Bankruptcy Procedure 8007(a)(1)(A) requires an order to be entered before a party may move the bankruptcy court for a stay of that order. As such, the Court construes the Stay Motion as a thinly-veiled sur-reply to the Sale Motion and Turnover Motion. Sur-replies are unauthorized and need not be considered. *See, e.g., Jimenez v. ARCPE 1, LLP (In re Jimenez)*, 2021 Bankr.LEXIS 3100, at *4 (B.A.P. 9th Cir. Nov. 4, 2021) (indicating that a debtor's sur-reply to a motion to dismiss was "unauthorized"); *In re Martin*, 2019 Bankr.LEXIS 4028, at *12 (Bankr. C.D. Cal. Nov. 12, 2019) (noting that parties' sur-replies were unauthorized); *see also* Loc. Bankr. R. 9013-1 ("Motion Practice and Contested Matters," authorizing the filing of a motion, an opposition, and a reply, but not a sur-reply). Parties cannot skirt this prohibition by couching sur-replies as pleadings seeking other relief. Rather, courts look to substance over form and treat a sur-reply as a sur-reply, even if presented otherwise. *See Peery v. Escobar (In re Peery)*, 2019 Bankr.LEXIS 2441, at *15 (B.A.P. 9th Cir. Aug. 2, 2019) (noting that a party's sanctions motion "reads like an unauthorized surreply" used "primarily to refute the arguments raised in the reply brief" in a "thinly-veiled attempt to get in the last word in this appeal"). Nonetheless, the Court has considered the arguments set forth in the Stay Motion and finds them unavailing as set forth herein.

## Conclusions of Law

1.      The Trustee properly noticed the Sale Motion and Turnover Motion on all required parties. Docket No. 542-43.

2.      The Trustee properly set the Sale Motion and Turnover Motion for hearing. Docket No. 540-41.

3.      The Evidentiary Objections are overruled, and the Court gives the evidence submitted the weight it deserves.

### A. Sale Motion

4.      The Property constitutes property of the Estate.

5.      Based on the 727 Decision and the 727 District Court Order, it is law of the case that J-Pad held a lien against the Property as of the Petition Date.

6.      Debtor admitted that J-Pad held a consensual lien against the Property in various pleadings filed with the Court. *See* Docket No. 1 (Original Schedule D, listing a $175,000.00 secured claim of J-Pad against the Property); Docket No. 17 (amended Schedule D, including a $175,000.00 secured claim of J-Pad against the Property); Docket No. 22 (amended Schedule D, including a $225,000.00 secured claim of J-Pad against the Property); Docket No. 297 at 2-3 ("Motion to Avoid Lien Under 11 U.S.C. § 522(f)," in which Debtor represented under penalty of perjury that J-Pad held a lien against in the Property in the original amount of $225,000.00 and current amount of $175,000.00); Houser AP Docket No. 72 at 66-67, 69 (trial testimony); Debtor's opposition to 2022 Employment App  Docket No. 241; Proof of Claim No. 7-1 (representing under penalty of perjury that the J-Pad debt was due and owing with no right to setoff, that it was secured by a lien against the Property and attaching both the security agreement and promissory note).

7.      Debtor further admitted that J-Pad was the legal owner of the Property in multiple submissions to the HCD. *See* Docket No. 558 at 34, 36, 38, 54, 56 (Exhibit 1 to the Declaration of Janine Jasso submitted in support of the Reply).

8.      Debtor is judicially estopped from claiming that the J-Pad is worthless because she asserted in opposition to the 2022 Employment App that the title to and liens against the Property precluded the Trustee from employing a broker to sell it, Docket No. 208, which position the Court

29

1  adopted in denying the Trustee's application to employ a broker unless or until the liens were

2  avoided. Docket No. 241.

3       9.    To the extent Debtor disavows her past representations regarding the J-Pad lien, the

4  Court overrules her Opposition.

5       10.    The Debtor's argument that any party can challenge the avoided lien as worthless and

6  unenforceable is wrong as a matter of law. *See, Van de Kamp, supra.*

7       11.    The Debtor is further barred from attacking the enforceability of the lien because she

8  voluntarily made the fraudulent transfer. *See, Moore, supra.*

9       12.    The Debtor is further barred from challenging the lien because she may not

10  collaterally attack the final judgments in the Trustee AP.

11       13.    The Trustee avoided, recovered, and preserved J-Pad's lien against the Property

12  pursuant to 11 U.S.C. §§ 548, 550, and 551.

13       14.    The Trustee further avoided, recovered, and preserved title to the Property pursuant to

14  11 U.S.C. §§ 548, 550, and 551.

15       15.    Sound business reasons exist for the sale of the Property. Specifically, the Trustee

16  avoided, recovered, and preserved the consensual J-Pad lien against the Property, in the amount of

17  $225,000.00, plus interest, totaling $301,011.14 as of January 9, 2025, as set forth in the Sale

18  Motion. Daily interest of $33.90 continues to accrue until the lien is paid.  Docket No. 539 at p.16.

19       16.    The avoided, recovered, and preserved J-Pad lien is senior in priority to Debtor's

20  homestead exemption in the Property.

21       17.    The sales price of $276,000 will generate significant proceeds for the benefit of the

22  Estate.

23       18.    The Trustee gave accurate and reasonable notice of the sale to interested persons.

24  Specifically, the Trustee retained a licensed real estate broker who marketed the Property to the

25  world at large for several months and obtained an overbidder for the Property. Notice of the hearing

26  on the Sale Motion was properly given to all required parties. *See* Docket No. 542 (proof of service

27  attached to the notice of the hearing).

28

19.    The $276,000.00 sales price is adequate, fair, and reasonable. After months of marketing the Property, the Trustee had obtained one offer in the amount of $275,000.00 as of January 31, 2025. The sales price is especially adequate, fair, and reasonable in light of the steps Debtor took to obstruct the sales process, as detailed in the above Findings of Fact.

20.    The Trustee's overbid procedures are approved as fair and reasonable and not designed to chill overbids. The fact that the Trustee received an overbid substantiates that the overbid procedures were appropriate.

21.    The Property is being sold to the Buyer in good faith. Specifically, the Trustee negotiated the terms of the sale to Galaxy in an arm's length transaction after retaining a licensed real estate broker who marketed the Property to the world at large. *See generally* Docket No. 539 at 27-28, 30-31 (declarations of Trustee and Greg Bingham in support of the Sale Motion). Mr. Peplin is the debtor in a bankruptcy case pending as *In re Gregory A. Peplin*, Case No. 2:24-bk-13645-DS, wherein Mr. Peplin's home was sold to a third party, and Mr. Peplin received money on account of his homestead exemption. *See* Docket No. 560 at 2 (supplemental declaration of Greg Bingham). Mr. Peplin qualified as an overbidder and successfully bid on the Property at the auction in the amount of $276,000.00.

22.    Mr. Peplin is a good faith purchaser for purposes of 11 U.S.C. § 363(m) for the same reasons as set forth in Conclusions of Law ¶ 21.

23.    The Property is sold free and clear of all liens, claims, and interests, including Debtor's homestead exemption, pursuant to 11 U.S.C. § 363(f)(1) and (2). Specifically, under applicable nonbankruptcy law, the avoided, recovered, and preserved consensual liens against the Property are senior in priority to any claimed exemptions in the Property. And, the Trustee consents to the sale of the Property free and clear of any portion of the liens for which insufficient proceeds exist to pay the liens in full.

24.    The abstracts of judgment identified in the sale motion did not attach to the Property because it is personal property.  The holders of those abstracts did not oppose the Trustee's request in the Sale Motion to sell free and clear of their liens.

25.    All sales costs may be paid from the Property sales proceeds, including broker commissions, escrow fees and taxes, and reimbursement for the Insurance Advances as defined in the Sale Motion are approved.

26.    The Sale Motion is granted, and the Trustee is authorized to sell all right, title and interest of the Trustee in and to the Property free and clear of all liens, claims, and interests pursuant to 11 U.S.C. § 363(b) and (f), including the Debtor's homestead exemption. The Trustee may pay the Estate the balance of the avoided and preserved J-Pad lien from the proceeds of the sale of the Property.

**B. Turnover Motion**

27.    As discussed above, the Property is property of the Estate. The Trustee avoided, recovered, and preserved title to the Property from J-Sandcastle, and further avoided, recovered, and preserved the consensual liens against the Property, including the J-Pad lien.

28.    This Court has exclusive *in rem* jurisdiction over the Property as property of the Estate.

29.    The Court has personal jurisdiction over the Debtor, who consented to this Court's jurisdiction by filing a voluntary bankruptcy petition.

30.    The Debtor is in possession of the Property.

31.    The Property is of the type that the Trustee can sell pursuant to 11 U.S.C. § 363 as discussed above.

32.    The Property is not of inconsequential value or benefit to the Estate. Rather, Mr. Peplin is the purchaser of the Property for the price of $276,000, all cash with no contingencies, which amount is payable to the estate on account of the avoided, recovered, and preserved J-Pad lien.

33.    Pursuant to 11 U.S.C. § 542, Debtor and all occupants of the Property must vacate the Property and turn over possession of the Property to the Trustee.

34.    Should the Debtor or any occupants fail to turn over the Property as required by the Court's order, good cause exists for the Court to authorize the issuance of a writ of execution or assistance authorizing and directing the Marshals to compel the surrender of the Property.

Otherwise, the Estate may suffer irreparable harm, especially if the Debtor or any other occupants delay or frustrate the closing of the sale of the Property.

35.    Any finding of fact that is determined to be a conclusion of law shall be deemed a conclusion of law. Any conclusion of law that is deemed a finding of fact shall be deemed a finding of fact.

# # #

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On March 7, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

**SECURED CREDITOR**
J-PAD, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR
TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT
OR LAW TO RECEIVE SERVICE OF PROCESS
4519 PONDEROSA WAY
YORBA LINDA, CA 92886

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 7, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                      Page 2                    **F 9021-1.2.BK.NOTICE.LODGMENT**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO.:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEBTOR:** Christopher L Blank    chris@chrisblanklaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERESTED PARTY:** Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.