ERIC P. ISRAEL (State Bar No. #132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone:     310-229-1234
Facsimile: 310-229-1244

Attorneys for Jeffrey I. Golden, Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-SC |
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | **SUPPLEMENTAL DECLARATION OF GREG BINGHAM RE MARKETING EFFORTS AFTER VACATING MARCH 4, 2025 AUCTION RESULTS AND SCHEDULING NEW AUCTION RE MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081 (DOCKET NO. 569)** |
| | Date:   March 27, 2025<br>Time:   10:00 a.m.<br>Ctrm:  5C |

I, Greg Bingham, declare as follows:

1.      I am an individual over 18 years of age.

2.      The facts set forth below are known to be true of my personal knowledge.  If called upon to do so, I could and would competently testify thereto.

3.      I am a licensed real estate salesperson at Coldwell Banker Realty ("Coldwell Banker"), the duly employed real estate broker for Jeffrey I. Golden, the Chapter 7 trustee herein

1

(the "Trustee"), with respect to a manufactured home, decal no. LBM 1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space").

4.      The Trustee's counsel (Eric P. Israel) forwarded to me the Court's order entered on or about March 13, 2025 (*docket no. 569*) (the "Auction Vacating Order"). I have had several conversations with Mr. Israel since then about compliance with the Auction Order.

5.      The Association of Realtors/Multiple Listing Service maintains a Multiple Listing Service ("MLS") for licensed real estate brokers and salespersons. As a licensed real estate salesperson, I am subject to the rules of the MLS.

6.      Promptly after being advised that the auction had been vacated and re-set, I changed the listing for the Property to "Active under Contract" on the MLS. A true and correct copy of the listing is attached hereto, marked as Exhibit "A" and incorporated herein by this reference. As can be seen, the listing reflects all of the original terms of the auction: $275,000 price, $276,000 minimum overbid, $1,000 minimum bidding increments, but the date, time and place of the new auction hearing. I will leave the sale listing on the MLS as "Active under Contract" until the Court confirms the sale.

7.      Under the Rule and Policies of the MLS, "active under contract" includes a situation like this where there is an accepted offer subject to Court approval. A true and correct copy of pertinent Rules are attached hereto collectively as Exhibit "B". See pages 24-25. There are strict penalties for violating rules of the MLS.

8.      I have spoken about the Auction Order with David Guarino, the agent for Richard Herr, the principal for the original buyer – Galaxy Homes. I am advised that David Guarino is a salesperson with Galaxy Homes, although he also has a broker license with another company. I have also spoken with the overbidder, Greg Peplin ("Peplin"). Galaxy Homes and Peplin have advised me that they have agreed that Galaxy will no longer be the real estate broker for Peplin. Mr. Peplin advises that he never signed a written contract with Galaxy Homes. If I timely receive an overbid, I will immediately advise the Trustee.

2

1    9.    As previously stated, Coldwell Banker will remain the real estate broker for the

2    Trustee only. Subject to Court approval, 3% of the sale price is to be paid to Coldwell Banker as a

3    commission upon closing the sale of the Property. Since the listing agreement provided for an

4    aggregate commission of 6% and Peplin advises that he has obtained another real estate broker,

5    subject to Court approval, the other 3% would be paid to his new real estate broker.

6    10.    I intend to be present for the rescheduled auction on March 27, 2025, and will answer

7    any further questions the Court may have.

8

9    I declare under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.

11   Executed at Newport Beach, California, on March 20, 2025.

12

13   _____

14   GREG BINGHAM

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        3

# EXHIBIT "A"

**16222 Monterey Ln # 376, Huntington Beach 92649**

STATUS: **Active Under Contract**          LIST PRICE: **$276,000** ↓

Edinger to Monterey Ln, enter through Guard Gate




| | |
|---|---|
| BED / BATH: | **2/1,1,0,0** |
| SQFT(src): | **1,700 (E)** |
| PRICE PER SQFT: | **$162.35** |
| LOT(src): | |
| LEVELS: | **One** |
| GARAGE: | **0** |
| YEAR BLT(src): | **2014 (EST)** |
| BODY TYPE: | |
| DOM / CDOM: | **147/147** |
| SLC: | **Bankruptcy Property** |
| PARCEL #: | |
| LISTING ID: | **PW24187211** |

Rec **03/20/2025 : ACT UC : P-->U**

**Listing has Supplements**

**Submit Offer**

### DESCRIPTION

**Beautifully upgraded and customized 2 bedroom, 2 bath home in the sought after Rancho Del Rey Mobile Home Estates 55+ community in the Huntington Harbour area of Huntington Beach. Spacious kitchen with designer touches, wood cabinets and stone counter tops with an expansive kitchen island for casual dining and entertaining. The adjacent formal dining room with French doors, can be converted to a den or office. The primary suite with a large sitting area and walk in closet. The ensuite bath delivers a relaxing resort spa feel including dual sinks, a soaking tub and separate shower. Added convenience with a separate laundry room. Manufactured wood floors, fireplace in the living room and raised ceilings add warmth and esthetics to the home. A wrap around balcony and ample outdoor space lets you enjoy the ocean breezes. Covered carport for your vehicles with a large storage area. This 55+ community home is convenient to beaches, water sports, wetland hiking trails, shopping, restaurants, Coast Highway and much more. Community features include guard gated entry, onsite property management, two clubhouses with heated pools, spas, sauna, banquet facilities, billiard tables, outside barbeque areas.**

EXCLUSIONS:  Chandelier, Televisions, Appliances          INCLUSIONS:

| | | | |
|---|---|---|---|
| AREA:  **17 - Northwest Huntington Beach** | LIST $ ORIG.:  **$320,000** | SELLER WILL CONSIDER CONCESSIONS IN OFFER: | COOLING:  **None** |
| SUBDIVISION:  **Other (OTHR)/Rancho Del Rey** | PARKING:  **Attached Carport** | ROOMS:  **Kitchen, Laundry, Living Room, Main Floor Bedroom, Main Floor Primary Bedroom, Primary Bathroom, Primary Bedroom, Primary Suite, Walk-In Closet** | HEATING:  **Central, Fireplace(s), Forced Air** |
| COUNTY:  **Orange** | PARK NAME:  **Rancho Del Rey** | | VIEW:  **Panoramic** |
| 55+:  **Yes** | MOBILE LENGTH:  **60** | | WATERFRONT: |
| PETS ALLOWED:  **Yes** | MOBILE WIDTH:  **30** | | LAUNDRY:  **Individual Room** |
| MANAGEMENT CO.:  **Mr. Houser** | MOBILE HOME REMAINS?:  **Yes** | UTILITIES: | |
| MANAGEMENT CO. PH:  **714-846-1429** | PROBATE AUTHORITY: | ELECTRIC: | |
| MANAGER APPROVAL?:  **Yes** | | WATER SOURCE:  **Public** | |

### INTERIOR

| | | |
|---|---|---|
| INTERIOR:  **Ceiling Fan(s), Coffered Ceiling(s), Granite Counters, High Ceilings, Living Room Deck Attached, Pantry, Stone Counters, Storage** | APPLIANCES:  **Gas Water Heater** | ENTRY/LEVEL:  **1/1** |
| ACCESSIBILITY:  **None** | FLOOR: | |
| KITCHEN FEATURES:  **Granite Counters, Stone Counters, Walk-In Pantry** | BATHROOM FEATURES:  **Bathtub, Shower, Double Sinks in Primary Bath, Granite Counters, Stone Counters, Vanity area, Walk-in shower** | |

### EXTERIOR

| | | | |
|---|---|---|---|
| EXTERIOR:  **Awning(s)** | SECURITY: | LOT:  **0-1 Unit/Acre** | PATIO:  **Covered, Deck, Patio Open, Porch, Front Porch** |
| FENCING: | SEWER:  **Public Sewer** | POOL:  **Community, In Ground** | SPA:  **Community, In Ground** |
| DIRECTION FACES: | | | |

### BUILDING

| | | | |
|---|---|---|---|
| BUILDER NAME: | DOORS: | ROOFING: | CONSTRUCTION: |
| MAKE: | WINDOWS: | FOUNDATION: | OTHER STRUCTURES:  **Storage** |
| BUILDER MODEL: | SKIRT: | PROP. CONDITION: | |

### GARAGE AND PARKING

| | | | |
|---|---|---|---|
| # OF PADS: | ATTACHED GARAGE?: | GARAGE SPACES:  **0** | CARPORT SPACES: |
| UNCOVERED SPACES: | PARKING TOTAL:  **0** | RV PARKING FEE: | NUMBER OF SHEDS: |

### GREEN

| | | | |
|---|---|---|---|
| GREEN ENERGY GENERATION: | GREEN ENERGY EFFICIENT: | GREEN SUSTAINABILITY: | GREEN WATER CONSERVATION: |
| WALKSCORE: | | | |

### POWER PRODUCTION

| | |
|---|---|
| POWER PRODUCTION:  **No** | GREEN VERIFICATION:  **No** |

### COMMUNITY

| | | | |
|---|---|---|---|
| HOA FEE: | HOA NAME: | HOA PHONE: | HOA AMENITIES:  **Pool, Spa/Hot Tub, Sauna, Barbecue, Billiard Room, Recreation Room, Meeting Room** |
| HOA FEE 2: | HOA NAME 2: | HOA PHONE 2: | |
| HOA FEE 3: | HOA NAME 3: | HOA PHONE 3: | STORIES TOTAL:  **1** |
| COMMUNITY FEATURES:  **Biking , Street Lights** | HOA MANAGEMENT NAME: | HOA MANAGEMENT NAME 2: | |
| | | HOA MANAGEMENT NAME 3: | |

### SCHOOL

**SCHOOL DISTRICT:** **Huntington Beach** **ELEMENTARY:** **MIDDLE/JR HIGH:** **HIGH SCHOOL:**
**Union High**
**ELEM SOURCE:** **MIDDLE/JR SOURCE:** **HIGH SOURCE:**
**HIGH SCH DIST SOURCE:** **ELEMENTARY OTHER:** **MIDDLE/JR HIGH OTHER:** **HIGH SCHOOL OTHER:**

## SERIALS AND LICENSE

**SERIAL(U):** Ac7v71-0394-g-B/A    **INSIGNIA/LICENSE1:** 0    **DOH1:** 0
**SERIAL(X):**    **INSIGNIA/LICENSE2:**    **DOH2:**
**SERIAL(XX):**    **INSIGNIA/LICENSE3:**    **DOH3:**

## LAND

**LAND LEASE?:** **Yes**    **LAND LEASE $ FREQ.:** **Monthly**    **LOT SIZE DIM:**    **TAX BLOCK:**
**LAND LEASE AMOUNT:** **$2,150.00**    **ASSESSMENTS:** **Buyer to Verify**    **TAX LOT:** **000**    **TAX TRACT #:** **000**
**PARCEL #:**
**ADDITIONAL PARCEL(s):** **No**

## LISTING

**DATES**

**B.A. COMPENSATION:**    **LIST TERMS:** **Cash, Cash to New Loan**    **LIST CONTRACT DATE:** **10/24/24**
**BAC REMARKS:**    **LIST AGRMT:** **Exclusive Right To Sell**    **START SHOWING DATE:**
**DUAL/VARI. COMP?:** **No**    **LIST SERVICE:** **Full Service**    **ON MARKET DATE:** **10/24/24**
**CURRENT FINANCING:**    **AD NUMBER:**    **PRICE CHG TSTP:** **02/04/25**
**POSSESSION:** **Close Of Escrow**    **DISCLOSURES:** **Bankruptcy, CC And R's,**    **STATUS CHG TSTP:** **03/20/25**
**SIGN ON PROPERTY?:**    **Homeowners Association, Manufactured**    **MODIFIED TSTP:** **03/20/25**
**POINTS:**    **Homes Allowed**    **EXPIRATION DT:** **03/31/25**
**CONTINGENCY LIST:** **See Remarks**    **INTERNET, AVM?/COMM?:** **Yes/Yes**    **PURCH CONTRACT DATE:** **03/14/25**
**INTERNET?/ADDRESS?:** **Yes/Yes**    **EST. CLOSE DATE:** **05/25/25**
**NEIGHBORHOOD MARKET REPORT YN?:** **Yes**

**CONTINGENCY:** **Bankruptcy Sale, subject to Court approval. Buyer must qualify for space lease with park management. See Supplements for Bankruptcy Sale**
Process and information for Prospective Homeowners for Rancho Del Rey.
**PRIVATE REMARKS:** Interested Parties can overbid in Bankruptcy Court (Teleconference may be available if and to the extent permitted by the Court, subject
to Court procedures) on 3/27/25 at 10:00am. No later than 3 business days prior to the Hearing date, you must deliver: 1. Cashier's Check in the amount of
$8,280 payable to Jeffrey I. Golden, Chapter 7 Trustee; 2. A written offer for not less than $276,000 on form attached to Sale Motion as "Exhibit 8"; 3.
Written proof of financial ability to close escrow unconditionally acceptable in sole discretion of Trustee; 4. Executed affirmation to be bound by the terms of
the Purchase Agreement and waive all contingencies. Sale does not include ground lease, however Park Management will provide a new ground lease for a
new qualified buyer; Park Management approval is the responsibility of overbidder/buyer. Contact the Listing Agent for copy of Trustee's Motion Authorizing
Sale. Listing Agent: email greg.bingham@camoves.com or call/text 562-335-0145

## SHOWING INFORMATION

**SHOW CONTACT TYPE:** **Agent**    **LOCK BOX LOCATION:** **No Lock Box**    **OCCUPANT TYPE:** **Owner**
**SHOW CONTACT NAME:** **Greg Bingham**    **LOCK BOX DESCRIPTION:** **None, Seller**    **OWNER'S NAME:**
**SHOW CONTACT PHONE:** **562-335-0145**    Providing Access     Schedule a Showing
🔌➡️📷

**SHOWING INSTRUCTIONS:** **Showing by appointment only. Minimum 36 hours notice for showing appointment. Showing days and times: M-F after 4pm,**
**Sat/Sun 10am-5pm.**
**DIRECTIONS:** Edinger to Monterey Ln, enter through Guard Gate

## AGENT / OFFICE

## CONTACT PRIORITY

**LA:** **(PBINGREG)** **Greg Bingham**    **LA STATE LIC:** **01309137**    **1.LA CELL:** **562-335-0145**
**CoLA:**    **CoLA STATE LIC:**    **2.LA CELL:** **562-335-0145**
**LO:** **(PB14622)** **Coldwell Banker Realty**    **LO STATE LIC:** **00616212**    **3.LA DIRECT:**
**LO PHONE:** **949-644-1600Ext:0**    **LO FAX:** **949-644-1690**    **4.LA TOLL FREE:**
**CoLO:**    **CoLO STATE LIC:**    **5.LA VOICEMAIL:** **000-0000**
**CoLO PHONE:**    **CoLO FAX:**    **6.LA EMAIL:** **greg.bingham@camoves.com**
**OFFERS EMAIL:**
**greg.bingham@camoves.com**

## COMPARABLE INFORMATION

**CLOSE PRICE:**    **CONCESS FINANCING COSTS $:**
**LIST PRICE:** **$276,000**    **CONCESS PROP IMPROV COSTS $:**
**LIST $ ORIGINAL:**    **BA: ()**    **CoBA: ()**    **CONCESS BUYER BROKER FEE $:**
**PURCH CONTRACT DT:** **03/14/25**    **BO:**    **CoBO:**    **CONCESS CLOSING COSTS $:**
**EST. COE:** **05/25/25**    **BA STATE LIC:**    **CoBA STATE LIC:**    **CONCESS OTHER COSTS $:**
**DOM/CDOM:** **147/147**    **BO STATE LIC:**    **CoBO STATE LIC:**    **CONCESS AMOUNT (TOTAL) $:**
**BUYER FINANCING:**    **CONCESSION CMTS:**

## ESTIMATED SELLING INFORMATION

**EST BUYER AGENT:** **YOUTSIDE**    **EST BUYER OFFICE:** **Outside Office** **EST. CLOSE DATE:** **05/25/25**
**EST BA STATE LICENSE:** **0**    **EST BO STATE LICENSE:**
**EST CO BUYER AGENT:**    **EST CO BUYER OFFICE:**
**EST CO BA STATE LICENSE:**    **EST CO BO STATE LICENSE:**









EXHIBIT "B"



# CRMLS Rules & Policies

Effective January 13, 2025

# CRMLS Rules & Policy Changes

## Effective January 13, 2025

### Rules Changes:

**Rule 7.15 - No Offers of Compensation in the MLS** has been revised and now reads:

A Listing Broker may not input, or otherwise use the MLS in any capacity, or in any field, media or document uploaded to the MLS, to offer or convey any amount or any willingness of Listing Broker to share a commission with a Buyer Broker, or for a Seller to offer a specific compensation amount to a Buyer Broker. Nothing in this rule shall prevent the Listing Broker from inputting any amount or invitation from Seller to consider any concessions that may be requested by a Buyer in an offer, as long as any such communication of a concession does not limit or condition the concession on being used to pay any Buyer Broker or other buyer representative. Listing Brokers must place any such amount or invitation regarding seller concessions in the Public Remarks/Property Description field.

**Rule 10.2(e) - Reporting of Sales** has been revised and now reads:

The MLS may accept the reporting of sales information for comparable purposes about other properties which were not otherwise eligible for input into the MLS but are located in the MLS's service area and "sold" by a Participant who represented a party in the transaction (i.e. broker who represented the seller or broker who represented the buyer), as long as such reporting is authorized by a party in the transaction to the broker who represented it, (if requested by the MLS documentation must be presented to MLS within 2 days), and the circumstances of the representation are disclosed on the Service by the reporting participant or subscriber. Any submission of sales information must occur within 30 days after close of escrow.

### Citation Policy Changes:

**Rule 8.3 - Inaccurate Information (Auto Sold):** Violations of the auto sold (Matrix users only) portion of Rule 8.3 will no longer be given a warning.

**Rule 11.5(e) - Branded Media:** The fine imposed for violations of the Branded Media rule has been revised from $100 to $250.

**Rule 12.5 - Misuse of Public Remarks:** Violations of this rule where any agent or broker contact information is included in the Public Remarks will no longer be given a warning, and the fine for this specific violation will be $250.

     

# Contents

1. AUTHORITY. ................................................................................................................... 8
2. PURPOSE. ...................................................................................................................... 8
3. THE AOR/MLS COMMITTEE. .......................................................................................... 8
4. PARTICIPATION AND AUTHORIZED ACCESS. ................................................................. 8
   4.1 Participant. ............................................................................................................. 8
      4.1.1 Broker Participant. ......................................................................................... 8
      4.1.2 Appraiser Participant. .................................................................................... 9
      4.1.3 Redundant Participant Qualifications. ............................................................ 9
   4.2 Subscriber. ............................................................................................................ 9
      4.2.1 R.E. Subscriber. ............................................................................................ 9
      4.2.2 Appraiser Subscriber. .................................................................................. 10
      4.2.3 Redundant Subscriber Qualifications. .......................................................... 10
   4.3 Clerical Users. ...................................................................................................... 10
   4.4 Registered Assistant Access. ................................................................................ 10
      4.4.1 Assistant Fees. ............................................................................................ 10
      4.4.2 Assistant Written Agreement. ....................................................................... 10
      4.4.3 Assistant Information. ................................................................................... 11
      4.4.4 Assistant Identification. ................................................................................ 11
      4.4.5 Assistant Eligibility. ..................................................................................... 11
   4.5 Notification of Licensees. ...................................................................................... 11
   4.6 Participation Not Transferable. .............................................................................. 11
   4.7 Listing Broker Defined. .......................................................................................... 11
   4.8 Buyer Broker Defined. ........................................................................................... 11
   4.9 Appraiser Defined. ................................................................................................ 11
   4.10 Authorization for Mandatory Training. .................................................................... 12
   4.11 Subject to MLS Rules. ........................................................................................... 12
5. MLS FEES AND CHARGES. ........................................................................................... 12
   5.1 Service Fees and Charges. .................................................................................... 12
      5.1.1 Initial Participation and/or Application Fee. .................................................. 12
      5.1.2 Recurring Participation Fee. ......................................................................... 12
      5.1.3 Listing Fee. .................................................................................................. 13
      5.1.4 Computer Access Fees. ............................................................................... 13
      5.1.5 Certification of Nonuse. ................................................................................ 13
      5.1.6 Other Fees. .................................................................................................. 13
   5.2 Responsibility for Fees. ......................................................................................... 13
6. REGIONAL AND RECIPROCAL AGREEMENTS. ............................................................. 13
7. LISTING PROCEDURES. ............................................................................................... 13

7.1    Listings Subject to Rules and Policies of the MLS. ...................................................... 13

7.2    Property Already Listed by Another Agent/Broker. ...................................................... 13

7.3    Listing and Co-Listing Agents/Brokers. ...................................................................... 14

7.4    Range Pricing. .............................................................................................................. 14

7.5    Types of Listings; Responsibility for Classification. .................................................... 14

   7.5.1    Scope of Service; Limited Service Listings. ......................................................... 14

   7.5.2    Scope of Service; MLS Entry-Only Listings ......................................................... 15

   7.5.3    Scope of Service; Legal Obligations. ................................................................... 15

7.6    Types of Properties; Responsibility for Classification. ................................................ 15

7.7    Compliance with California and Federal Law. ............................................................. 16

7.8    Mandatory Delivery of Listing Agreement. ................................................................. 16

   7.8.1    Registered Listings ................................................................................................ 16

7.9    Mandatory Submission upon Marketing ...................................................................... 16

   7.9.1    No Cooperation Listing ......................................................................................... 17

7.10    Service Area ............................................................................................................... 17

7.11    Change of Listing Information. .................................................................................. 17

7.12    Withdrawal of Listing Prior to Expiration. ............................................................... 17

7.13    Contingencies. ........................................................................................................... 18

7.14    Detail on Listings Filed With the MLS. ..................................................................... 18

7.15    No Offers of Compensation in the MLS. .................................................................... 18

7.16    Disclosure of Compensation. ..................................................................................... 18

7.17    Consent to Act as Dual Agent. .................................................................................. 18

7.18    Auction and New Construction Listings ..................................................................... 18

   7.18.1    Auction Listings. ................................................................................................. 18

   7.18.2    New Construction Listings. ................................................................................. 19

7.19    No Disclosure of Listing Broker or Total Commission. ............................................. 19

7.20    Broker Participant or R.E. Subscriber as Principal ..................................................... 19

7.21    Multiple Unit Properties. ............................................................................................ 20

7.22    Expiration, Extension, and Renewal of Listings. ....................................................... 20

   7.22.1    Extension for Protected Buyer ............................................................................ 20

7.23    Listings of Participants or Subscribers Suspended, Expelled, or Resigned ................ 20

   7.23.1    Failure to Pay MLS Fees; Resignation ............................................................... 20

   7.23.2    Violations of MLS Rules ..................................................................................... 20

7.24    No Control of Commission Rates or Fees Charged by Participants ............................ 21

7.25    Dual Rate Commission Arrangements (Listing Broker Advantage). ........................... 21

7.26    Right of Listing Broker and Presentation of Counter-Offers. .................................... 21

7.27    REO Disclosure. ........................................................................................................ 21

8.    DOCUMENTATION; PERMISSION; ACCURACY OF INFORMATION. ............................. 21

| | | |
|---|---|---|
| 8.1 | Listing Agreement and Seller's Permission | 21 |
| 8.2 | Written Documentation | 22 |
| 8.3 | Accuracy of Information; Responsibility for Accuracy | 22 |
| 8.4 | Input Defined | 22 |
| 8.5 | Buyer, Seller, Purchase, and Sale Defined | 22 |
| 9. | SELLING PROCEDURES. | 23 |
| 9.1 | Showings. | 23 |
| 9.2 | Disclosing the Existence of Offers | 23 |
| 9.3 | Availability to Show or Inspect | 23 |
| 9.4 | Presentation of Offers | 23 |
| 9.5 | Submission of Offers and Counter-Offers | 23 |
| 9.6 | Right of Buyer Broker in Presentation of Offer | 24 |
| 9.7 | Removed. | 24 |
| 9.8 | Listing Broker Approval Showings and Negotiations. | 24 |
| 9.9 | Buyer Broker as a Buyer | 24 |
| 9.10 | Physical Presence of Participant or Subscriber | 24 |
| 10. | REPORTING SALES AND OTHER INFORMATION TO THE MLS. | 24 |
| 10.1 | Statuses. | 24 |
| 10.2 | Reporting of Sales | 25 |
| 10.3 | Removal of Listings for Refusal/Failure to Timely Report Status Changes | 26 |
| 10.4 | Reporting Cancellation of Pending Sale | 26 |
| 10.5 | Refusal to Sell | 26 |
| 11. | OWNERSHIP OF MULTIPLE LISTING SERVICE COMPILATIONS AND COPYRIGHTS | 26 |
| 11.1 | MLS Compilation Defined | 26 |
| 11.2 | Active Listing MLS Compilation Defined | 26 |
| 11.3 | Comparable Data MLS Compilation Defined | 26 |
| 11.4 | Authority to Put Listings in MLS Compilation | 26 |
| 11.5 | Media on the MLS | 27 |
| 11.5.1 | Mandatory submission Photograph/Rendering | 27 |
| 11.5.2 | Removal of Media | 28 |
| 11.6 | Copyright Ownership | 28 |
| 11.7 | Leasing of MLS Compilations | 28 |
| 11.8 | Removal of Historical Records | 28 |
| 11.9 | Removal of and Responsibility for Content | 28 |
| 11.10 | Indemnification; Limitation of Liability | 28 |
| 11.11 | Pursuing Complaints of Unauthorized Use of Listing Content | 29 |
| 11.12 | Participant Access and Entitlement to Their Own Listing Information; Data Portability | 29 |
| 12. | PROHIBITIONS AND REQUIREMENTS. | 30 |

- 3 -

12.1    Notification of California Department of Real Estate (DRE) or California Bureau of Real Estate Appraisers (BREA) Action ................................................................................................30

12.2    Violations of the Law ...................................................................................................30

12.3    Supervision of R.E. Licensees and Appraisers .............................................................30

12.4    Solicitation of Listing Filed With the MLS ..................................................................30

12.5    Misuse of Public Remarks ...........................................................................................30

    12.5.1    Misuse of Other Remarks and Media ...................................................................31

12.6    "For Sale" Signs ..........................................................................................................31

12.7    "Sold" Signs and Use of the Term "Sold." ...................................................................31

12.8    Advertising of Listing Filed With the MLS ..................................................................31

12.9    Limitations on Use of MLS Information in Advertising ................................................32

12.10   False or Misleading Advertising and Representations; True Picture Standard of Conduct. ....33

12.11   Use of MLS Information ..............................................................................................33

12.12   Confidentiality of MLS Information .............................................................................33

    12.12.1   Clerical Users .....................................................................................................34

12.13   Access to Comparable and Statistical Information ........................................................34

12.14   Display .......................................................................................................................34

12.15   Reproduction ..............................................................................................................34

    12.15.1   Copies to Prospective Buyers ..............................................................................34

    12.15.2   Information Reproduced .......................................................................................35

    12.15.3   Copies for Appraisals ..........................................................................................35

    12.15.4   Downloading into Computers ..............................................................................35

    12.15.5   Sold Information ..................................................................................................35

12.16   RELOCATED. ............................................................................................................35

12.17   Applicability of Rules to MLS ....................................................................................35

12.18   Listing Broker's Right to Opt Out of Internet Advertising of MLS Information ............36

12.19   Website Name and Status Disclosure ...........................................................................36

12.20   Use of the Terms MLS and Multiple Listing Services ..................................................36

12.21   Participant and Subscriber Standards of Conduct .........................................................36

12.22   Required Email Address ..............................................................................................36

12.23   Definition of Calendar Days/Business Days. ................................................................36

13.    LOCKBOXES. ...............................................................................................................37

13.1    Eligibility for Lockboxes .............................................................................................37

13.2    Key Use and Service ...................................................................................................37

13.3    Accountability. ...........................................................................................................37

13.4    Deemed Unaccountable. ..............................................................................................37

13.5    Written Authority. .......................................................................................................37

13.6    Lockbox Requirements ................................................................................................37

13.6.1   Approved Lockboxes ............................................................................................. 38

13.7   Listing Broker's Permission. ........................................................................................ 38

13.8   Unaccountable Keys ...................................................................................................... 38

13.9   Removal .......................................................................................................................... 38

13.10   Rules Violations. .......................................................................................................... 38

13.11   Right to Limit Access .................................................................................................. 38

14.   VIOLATIONS OF RULES AND POLICIES. ...................................................................... 38

14.1   Grounds for Disciplinary Action and Sanctions ......................................................... 38

14.2   Sanctions ........................................................................................................................ 39

14.3   Citations ......................................................................................................................... 39

14.3.1   Mandatory Hearing for Multiple Citations .................................................. 39

14.4   Duty to Correct and Cooperate. ................................................................................... 39

14.5   MLS Modification of Information. ............................................................................... 40

14.6   Abusive Conduct. .......................................................................................................... 40

14.7   Disclosure Limitations. ................................................................................................. 40

15.   PROCEDURES FOR MLS RULES HEARINGS. ............................................................. 40

16.   ARBITRATION. ................................................................................................................... 40

16.1   Mandatory Arbitration ................................................................................................... 40

16.2   Other Arbitration Agreements ...................................................................................... 40

16.3   Arbitration Between Association Members .................................................................. 40

16.4   Arbitration Involving Non-Association Members ....................................................... 41

16.5   Same Firm ...................................................................................................................... 41

16.6   Timing ............................................................................................................................ 41

17.   NONPAYMENT OF MLS FEES. ....................................................................................... 41

17.1   Nonpayment of MLS Fees ............................................................................................ 41

17.2   Disputed Amounts ......................................................................................................... 41

17.3   Reinstatement ................................................................................................................. 42

18.   CHANGE IN RULES AND POLICIES. .............................................................................. 42

19.   PARTICIPANT DATA ACCESS. ........................................................................................ 42

19.1   Participant Definition and Requirements for MLS Data Use Outside MLS Front End ........................... 42

19.2   Internet Data Exchange ("IDX"). ................................................................................. 43

19.2.1   Authorization. ................................................................................................... 43

19.2.2   Consent. ............................................................................................................ 44

19.2.3   Control. ............................................................................................................. 44

19.2.4   Display Content. ............................................................................................... 44

19.2.5   Listing Credit. ................................................................................................... 44

19.2.6   Source. .............................................................................................................. 45

19.2.7   Usage. ................................................................................................................ 45

19.2.8    Security.................................................................................................... 45

19.2.9    Display Purpose........................................................................................ 45

19.2.10    Restricted Display.................................................................................. 45

19.2.11    Restricted Access and Distribution.................................................... 45

19.2.12    Excluded Listings................................................................................... 45

19.2.13    Website Identification........................................................................... 45

19.2.14    Removed.................................................................................................. 45

19.2.15    Third Party Comments and Automated Value Estimates.................. 46

19.2.16    Making Corrections................................................................................ 46

19.2.17    Compliance............................................................................................. 46

19.2.18    Notification by Authorized Participants and Subscribers................. 46

19.2.19    Right to Charge for Download............................................................. 46

19.2.20    Modifications and Augmentations....................................................... 47

19.2.21    No Display of Offers of Compensation............................................... 47

19.3    Virtual Office Websites ("VOW")........................................................................ 47

19.3.1    VOW Definitions..................................................................................... 47

19.3.2    VOW Operating Parameters.................................................................. 48

19.3.3    VOW Registrant Access Requirements............................................... 48

19.3.4    VOW Contact Requirements................................................................. 49

19.3.5    VOW Data Security................................................................................ 49

19.3.6    VOW Listing Display Restrictions........................................................ 49

19.3.7    Posting Consumer Comments and Automated Value Estimate........ 50

19.3.8    Correction of VOW Listing Information............................................... 51

19.3.9    VOW Mandatory Listing Refresh......................................................... 51

19.3.10    VOW MLS Listing Distribution Limitations...................................... 51

19.3.11    VOW Privacy Policy............................................................................. 51

19.3.12    VOW Selective Listing Display........................................................... 51

19.3.13    Notification of MLS of Intent to Operate a VOW............................ 51

19.3.14    Operation of Multiple VOWs.............................................................. 51

19.3.15    VOW Data Display Limitations........................................................... 51

19.3.16    Changes to Listing Content................................................................. 51

19.3.17    Listing Accuracy Disclaimer............................................................... 52

19.3.18    Listing Broker or Agent Identification.............................................. 52

19.3.19    Listing Search Result Limitation........................................................ 52

19.3.20    Mandatory Registrant Password Change.......................................... 52

19.3.21    VOW Co-Branding and Advertising.................................................... 52

19.3.22    Identifying Listing Source................................................................... 52

19.3.23    Separate Source Listing Search.......................................................... 52

19.3.24    MLS Licensing Agreement for VOW. ...................................................................................... 52

19.3.25    Seller's Direction to Withhold from Internet. ........................................................................ 52

19.3.26    No Display of Offers of Compensation ................................................................................... 53

20.    REJECTION OF APPLICATION. ........................................................................................................ 53

1.     **AUTHORITY.**

The Associations of REALTORS® (AOR)/Multiple Listing Service may maintain a Multiple Listing Service ("MLS") or other "Services" for the use of licensed real estate Brokers and Salespersons and licensed or certified Appraisers under the terms of these rules as from time to time amended.

2.     **PURPOSE.**

CRMLS as a Multiple Listing Service is in the business of operating a broker cooperative by providing information and services to real estate brokers, agents, or appraisers for use in their professional activities by:
   a) Collecting from real estate agents, brokers or appraisers real-estate information and data, including but not limited to listing information.
   b) Enhancement and organization of that information and data with other property information to create property records.
   c) Distribution and display of those collected property records to real estate brokers and appraisers for their use in listing, selling, leasing, and valuing real estate for the benefit of consumers.
   d) Distribution of those collected property records to non-broker entities that use the property records to support real estate transactions or the real estate industry.
   e) Providing services, rules and systems that facilitate the cooperation between different brokers, and agents to represent clients in real estate transactions.

3.     **THE AOR/MLS COMMITTEE.**

The AOR/MLS shall be governed by its board of directors (hereinafter "Board of Directors") in accordance with its articles of incorporation and its bylaws. Committees may be established to perform such functions as may be delegated, but all actions of committees shall be subject to the approval and confirmation of the Board of Directors.

4.     **PARTICIPATION AND AUTHORIZED ACCESS.**

   **4.1**     **Participant**. A Participant is any individual who applies and is accepted by the MLS, and meets and continues to meet all of the following requirements of either a Broker Participant or an Appraiser Participant as defined below in Sections 4.1.1 and 4.1.2.

   The membership requirement shall be applied on a nondiscriminatory manner to all Participants and potential Participants.

   **4.1.1**     **Broker Participant.** A Broker Participant is a Participant who meets all the following requirements:

   a) The individual or corporation, for whom the individual acts as a Broker/officer, holds a valid California Real Estate Broker's license;
   b) The individual is a principal, partner, corporate officer, or branch office manager acting on behalf of a principal;
   c) The individual or corporation for whom the individual acts as a Broker/officer agrees to cooperate with other Participant Brokers in the capacity of a Real

- 8 -

Estate Broker;

    d) The individual has signed a written agreement to abide by the rules of the MLS in force at that time and as from time to time amended;

    e) The individual pays all applicable MLS fees; and

    f) The individual has completed any required orientation program of no more than eight (8) classroom hours within ninety (90) days after access has been provided <u>said program to be attended in-person or through remote means</u>. Failure to complete the required orientation shall result in termination of all MLS privileges unless extensions have been granted by applicant's service center or AOR/MLS.

**4.1.2    Appraiser Participant.** An Appraiser Participant is a Participant who meets all the following requirements:

    a) The individual holds a valid California Appraiser's certification or license issued by the Bureau of Real Estate Appraisers ("BREA") (also referred to as "Office" of Real Estate Appraisers or OREA);

    b) The individual is a principal, partner, corporate officer, or branch office manager acting on behalf of a principal;

    c) The individual has signed a written agreement to abide by the rules of the MLS in force at that time and as from time to time amended;

    d) The individual pays all applicable MLS fees; and

    e) The individual has completed any required orientation program of no more than eight (8) classroom hours within ninety (90) days after access has been provided <u>said program to be attended in-person or through remote means</u>. Failure to complete the required orientation shall result in termination of all MLS privileges unless extensions have been granted by applicant's service center or AOR/MLS.

**4.1.3    Redundant Participant Qualifications.** Participant type (Broker or Appraiser) must be selected during application for participation. A Participant with both a California Real Estate Broker's license and a California Appraiser's certification or license must join as a "Broker Participant" to be a Listing Broker (see Section 4.7), or Buyer Broker (see Section 4.8).

**4.2    Subscriber.** A Subscriber is an individual who applies and is accepted by the AOR/MLS, and meets and continues to meet all of the following requirements of either a R.E. Subscriber or Appraiser Subscriber as defined below in sections 4.2.1 and 4.2.2:

**4.2.1    R.E. Subscriber.** A R.E. Subscriber is a Subscriber who meets all the following requirements:

    a) The individual holds a valid California real estate salesperson's or broker's license;

    b) The individual is employed by or affiliated as an independent contractor with a Broker Participant;

    c) The individual agrees to cooperate with other Subscriber Agents and Participant Brokers in the handling of any real estate transaction;

d) The individual has signed a written agreement to abide by the rules and regulation of the service in force at that time and as from time to time amended;

e) The individual pays all applicable MLS fees; and

f) The individual has completed any required orientation program of no more than eight (8) classroom hours within ninety (90) days after access has been provided <u>said program to be attended in-person or through remote means.</u>

**4.2.2    Appraiser Subscriber.** An Appraiser Subscriber is a Subscriber who meets all of the following requirements:

a) The individual holds a valid California real estate appraiser's certification or license issued by the BREA;

b) The individual is employed by or affiliated as an independent contractor with an Appraiser Participant;

c) The individual has signed a written agreement to abide by the rules and policies of the service in force at that time and as from time to time amended;

d) The individual pays all applicable MLS fees; and

e) The individual has completed any required orientation program of no more than eight (8) classroom hours within thirty (30) days after access has been provided said program to be attended in-person or through remote means.

**4.2.3    Redundant Subscriber Qualifications.** Subscriber type (R.E. or Appraiser) must correlate to the participant type. A Subscriber who is both a California Real Estate Licensee and a California certified or licensed Appraiser must join as a "R.E. Subscriber," unless the employing or affiliated Participant is an Appraiser Participant.

**4.3    Clerical Users.** Individuals (whether licensed or unlicensed) under the direct supervision of an MLS Participant or Subscriber that perform only administrative and clerical tasks that do not require a real estate license or an Appraiser's certificate or license. Each Participant and Subscriber shall provide the AOR/MLS with a list of all Clerical Users employed by or affiliated as independent contractors with the Participant or Subscriber and shall immediately notify the AOR/MLS of any changes, additions, or deletions from the list.

**4.4    Registered Assistant Access.** Individuals (whether licensed or unlicensed) that use the MLS for clerical tasks such as entering listings and/or searching the database and are under the direct supervision of a Participant, Subscriber or Appraiser, may be given access to the MLS by a unique and individual passcode. The Assistant passcode will be directly linked to the Assistant's employer and will be terminated if said employer should become inactive in the MLS. An Assistant must adhere to the following requirements:

**4.4.1    Assistant Fees.** The Assistant fees will be up to date as set forth by the service center or AOR/MLS that the Assistant's employer participates at;

**4.4.2    Assistant Written Agreement.** The Assistant will have signed a written agreement to abide by the rules and policies of the service center or AOR/MLS and will be required to either attend MLS orientation or pass a standardized test administered by staff covering the service center or AOR/MLS rules and policies;

**4.4.3    Assistant Information.** The Assistant will only relay MLS information to his/her employer and not to members of the public, other service centers, and/or other AOR/MLS participants, subscribers or appraisers (this does not prohibit licensed assistants from performing duties of a real estate licensee or appraiser licensee outside of the MLS as long as the duties performed do not involve data retrieved from the service center or AOR/MLS database);

**4.4.4    Assistant Identification.** The Assistant may not be identified as an agent or contact person for a property listed with the service center or AOR/MLS;

**4.4.5    Assistant Eligibility.** Assistants may be eligible for lockbox access services, unless otherwise prohibited, and are prohibited from using any other Participant, Subscriber or Appraiser's access device.

**4.5    Notification of Licensees.** Each Participant shall provide the AOR/MLS with a list of all real estate licensees or certified or licensed Appraisers employed by or affiliated as independent contractors with such Participant or with such Participant's firm and shall immediately notify the AOR/MLS of any changes, additions, or deletions from the list. This list shall include any licensees under any Broker associate affiliated with the Participant.

**4.6    Participation Not Transferable.** Participation in the MLS is on an individual basis and may not be transferred or sold to any corporation, firm, or other individual. Any reimbursement of MLS fees is a matter of negotiation between those transferring the business or determined by internal contract arrangement within the firm. However, providing the first Participant consents, the AOR/MLS shall allow a firm to designate a different person as a Participant within the firm without additional initial participation fees. The AOR/MLS may charge an administrative fee for this service of reassigning Participants within a firm.

**4.7    Listing Broker Defined.** For purposes of these MLS rules, a Listing Broker is a Broker Participant who is also a listing agent in accordance with California Civil Code Section 1086, et. seq., who has obtained a written listing agreement by which the Listing Broker has been authorized to act as an agent to sell or lease the property or to find or obtain a buyer(s) or tenant(s). Whenever these rules refer to the Listing Broker, the term shall include a Subscriber in addition to the Participant or a licensee retained by the Listing Broker but shall not relieve the Listing Broker of responsibility for the act or rule specified.

**4.8    Buyer Broker Defined.** For purposes of these MLS rules, a Buyer Broker is a Broker Participant who is also a buyer's agent as defined in California Civil Code Section 1086, et. seq., who acts in cooperation with a Listing Broker to find or obtain a buyer(s) or tenant(s) for a listed property. The Buyer Broker may be the agent of the buyer(s) or, if subagency is offered and accepted, may be the agent of the seller(s). Whenever these rules refer to the Buyer Broker, the term shall include a Subscriber in addition to the Participant or licensee retained by the Buyer Broker but shall not relieve that Broker Participant of responsibility for the act or rule specified.

**4.9    Appraiser Defined.** For purposes of these MLS rules, an Appraiser is an Appraiser Participant, Appraiser Subscriber, or a licensed or certified Appraiser acting for the Appraiser Participant or Appraiser Subscriber. Whenever these rules refer to the Appraiser, the term

shall also include the Appraiser Subscriber, or a licensed or certified Appraiser employed by or affiliated as an independent contractor with the firm that employs the Appraiser but shall not relieve that Appraiser Participant of responsibility for the act or rule specified.

**4.10    Authorization for Mandatory Training.** Participants and Subscribers may be required, at the discretion of the MLS, to complete additional training of not more than four (4) classroom hours in any twelve (12) month period when deemed necessary by the MLS to familiarize Participants and Subscribers with system changes or enhancements, and/or changes to MLS rules or policies. Participants and Subscribers must be given the opportunity to complete any mandated additional training remotely.

**4.11    Subject to MLS Rules.** By becoming and remaining a Participant, Subscriber or Clerical User, each Participant, Subscriber and Clerical User agrees to be subject to these MLS Rules and Policies.

## 5.    MLS FEES AND CHARGES.

**5.1    Service Fees and Charges.** The AOR/MLS Board of Directors shall establish a schedule of MLS fees applicable to the MLS, which may include the following service fees and charges:

**5.1.1    Initial Participation and/or Application Fee.** Applicants for MLS services may be assessed initial participation and/or application fees.

**5.1.2    Recurring Participation Fee.** The recurring participation fee of each Broker Participant shall be an amount equal to the fee set for each individual times the total number of (1) the Broker Participant, plus (2) the number of Salespersons who have access to and use of the MLS, whether licensed as Brokers or as Salespersons, who are employed by or affiliated as independent contractors with such Participant or the Participant's firm. If more than one principal Broker in the same firm elects to be a Participant, the number of Salespersons in the firm will only be used once in calculating the recurring participation fees. A Broker Participant is not obligated to pay recurring participation fees or other MLS fees and charges for real estate licensees affiliated with the Participant or the Participant's firm if such licensees work out of a branch office of the Participant or the Participant's firm that does not participate in or otherwise use the MLS.

The recurring participation fee of each Appraiser Participant shall be an amount times the total number of (1) the Appraiser Participant, plus (2) the number of Appraisers who have access to and use of the MLS, who are employed by or affiliated as independent contractors with such Participant or the Participant's firm. If more than one principal Appraiser in the same firm elects to be a Participant, the number of Appraisers in the firm will only be used once in calculating the recurring participation fees. An Appraiser Participant is not obligated to pay recurring participation fees or other MLS fees and charges for licensed or certified Appraisers affiliated with the Participant or the Participant's firm if such Appraisers work out of a branch office of the Participant or the Participant's firm that does not participate in or otherwise use the MLS.

**5.1.3    Listing Fee.** A listing fee may be charged for each listing submitted to the MLS.

**5.1.4    Computer Access Fees.** The recurring computer access fee for each Participant shall be an amount established and approved by the AOR/MLS Board of Directors equal to the total number of Subscribers and Salespersons licensed or certified as Appraisers, Brokers, or Salespersons, who are employed by or affiliated as independent contractors with such Participant.

**5.1.5    Certification of Nonuse.** Participants may be relieved from payment under Sections 5.1.2 and 5.1.5 hereunder by certifying to the AOR/MLS that a licensed or certified person in the office is engaged solely in activities that do not require a real estate license or certification (clerical, etc.), or that the real estate Licensee or licensed or certified Appraiser will not use the MLS or MLS compilation in any way. In the event a real estate Licensee or Appraiser is found in violation of the nonuse certification, the Participant shall be subject to all MLS fees dating back to the date of the certification. The Participant and Subscriber may also be subject to any other sanction imposed for violation of MLS rules, including, but not limited to, a citation and suspension or termination of Participation rights and access to the MLS.

**5.1.6    Other Fees.** Other fees that are reasonably related to the operation of the MLS may be adopted.

**5.2    Responsibility for Fees.** In the event the AOR/MLS allows for direct billing or payment by a Subscriber for fees under these rules, such fees shall be the exclusive obligation of that Subscriber regardless of whether such Subscriber becomes affiliated with a different Participant. If the MLS does not allow for direct billing or payment by a Subscriber for MLS fees, such fees shall be the responsibility of the Participant with whom the Subscriber was affiliated with at the time the MLS fees were incurred. This section does not preclude in any way the ability of Participants to pursue reimbursement of MLS fees from current or past Subscribers or to establish agreements with Subscribers regarding payment or reimbursement of MLS fees.

**6.    REGIONAL AND RECIPROCAL AGREEMENTS.**

The AOR/MLS Board of Directors may approve and enter into regional or reciprocal agreements with AORs or MLS corporations owned or governed solely by AORs or licensed real estate brokers to allow the other MLS participants and subscribers access to the MLS in exchange for comparable benefits to the Participants and Subscribers of this MLS. In the event of such agreements, the Participants and Subscribers agree to abide by the respective rules of the other MLSs receiving and publishing a listing pursuant to such agreements and to abide by such rules when accessing the other databases or datasets.

**7.    LISTING PROCEDURES.**

**7.1    Listings Subject to Rules and Policies of the MLS.** Any listing filed with the MLS by a Listing Broker are subject to the rules of the MLS.

**7.2    Property Already Listed by Another Agent/Broker.** The MLS allows one listing per

property type for a specific property. There may be situations where more than one Broker believes they have a valid listing agreement for the same property. The MLS and/or Association cannot determine the validity of claims of competing contracts. It is the responsibility of the Brokers and seller to resolve the validity question prior to entering a listing into the MLS. Entering a listing into the MLS without a valid listing agreement is a violation of MLS Rules. Failure to remove a listing from the MLS following cancelation or expiration is a violation of MLS Rules.

**7.3**    **Listing and Co-Listing Agents/Brokers.** Only the listings of Participants and Subscribers will be accepted by the MLS. Inclusion of co-listings where the co-listing broker/agent is not a Participant or Subscriber in the MLS, or a Participant or Subscriber of a datashare partner MLS, is prohibited.

**7.4**    **Range Pricing.** If a listing is specified as a Range Price Listing, the Listing Agent or Broker must enter a valid range for the list price of that listing. In all cases, the default List Price shall be the high end of the range and the low end of the range can be no less than 85% of this price.

**7.5**    **Types of Listings; Responsibility for Classification.** The MLS shall accept exclusive right to sell, seller reserved, open, and probate listings in accordance with California Civil Code Section 1086, et seq., and auction listings that satisfy the requirements of these MLS rules. As used in these rules, "probate" includes conservatorships, guardianships, and similar protective proceedings in the Superior Court of California. Exclusive right to sell listings that contain any exceptions whereby the owner need not pay a commission if the property is sold to particular individuals shall be classified for purposes of these rules as an exclusive right to sell listing, but the Listing Broker shall notify all of the exceptions. It shall be the responsibility of the Listing Broker to properly classify the type of listing, and if necessary, obtain a legal opinion to determine the correct classification. By classifying the type of listing, the Listing Broker certifies that the listing falls under the legal classification designated. The MLS shall have no affirmative responsibility to verify the listing type of any listing filed with the MLS. However, the MLS shall have the right to have legal counsel make a determination as to the classification of the listing type, and if the Listing Broker does not reclassify it accordingly, the MLS shall have the right to reject or remove any such listing that the MLS determines falsely represents the classification of listing type.

**7.5.1**    **Scope of Service; Limited Service Listings.** Limited Service listings are listings whereby the Listing Broker, pursuant to the listing agreement, will not provide one, or more, of the following services:

a) Provide Buyer Brokers with any additional information regarding the property not already displayed in the MLS, but instead gives Buyer Brokers authority to contact the seller(s) directly for further information;

b) Accept and present to the seller(s) offers to purchase procured by Buyer Brokers, but instead gives Buyer Brokers authority to present offers to purchase directly to the seller(s);

c) Advise the seller(s) as to the merits of offers to purchase;

d) assist the seller(s) in developing, communicating, or presenting counter-offers; or

- 14 -

e) Participate on the seller's(s') behalf in negotiations leading to the sale of the listed property.

Said Limited Service listings will be identified with an appropriate code or symbol (e.g., "LS") in MLS compilations so potential Buyer Brokers will be aware of the extent of the services the Listing Broker will provide to the seller(s), and any potential for Buyer Brokers being asked to provide some or all of these services to Listing Broker's clients, prior to initiating efforts to show or sell the property.

**7.5.2    Scope of Service; MLS Entry-Only Listings.** MLS Entry-Only listings are listings whereby the Listing Broker, pursuant to the listing agreement, will not provide any of the following services:

a) Provide Buyer Brokers with any additional information regarding the property not already displayed in the MLS, but instead gives Buyer Brokers authority to contact the seller(s) directly for further information;

b) Accept and present to the seller(s) offers to purchase procured by Buyer Brokers, but instead gives Buyer Brokers authority to present offers to purchase directly to the seller(s);

c) Advise the seller(s) as to the merits of offers to purchase;

d) Assist the seller(s) in developing, communicating, or presenting counter-offers; or

e) Participate on the seller's(s') behalf in negotiations leading to the sale of the listed property.

Said MLS Entry-Only listings will be identified with an appropriate code or symbol (e.g. "EO") in MLS compilations so potential Buyer Brokers will be aware of the extent of the services the Listing Broker will provide to the seller(s), and any potential for Buyer Brokers being asked to provide some or all of these services to Listing Broker's clients, prior to initiating efforts to show or sell the property.

**7.5.3    Scope of Service; Legal Obligations.** The scope of service classifications set forth in these Rules do not alter any obligations otherwise imposed on real estate licensees under California law, including Department of Real Estate Policies, statutory law and/or common law. The MLS's acceptance or publication of listings eligible for MLS submission in no way constitutes a validation that said obligations have been met.

**7.6    Types of Properties; Responsibility for Classification.** The MLS shall accept listings that satisfy the requirements of these rules on the following types of property:

a) Residential

b) Residential Lease

c) Residential Income

d) Lots and Land

e) Mobile Home

f) Commercial

g) Commercial Lease

h) Business Opportunity

It shall be the responsibility of the Listing Broker to properly classify the type of property listed, and if necessary, obtain a legal opinion to determine the correct classification. By classifying the type of property listed, the Listing Broker certifies that the listing falls under the classification designated. The MLS shall have no affirmative responsibility to verify the property type of any listing filed with the MLS. However, the MLS shall have the right to have legal counsel decide as to the classification of the property type, and if the Listing Broker does not reclassify it accordingly, the MLS shall have the right to reject or remove any such listing that it determines falsely represents the classification of property type listing.

7.7    **Compliance with California and Federal Law.** Notwithstanding any other provision of these MLS rules to the contrary, the MLS shall accept any listing that it is required to accept under California or federal law.

7.8    **Mandatory Delivery of Listing Agreement.** Listing Broker shall input into the MLS all properties located in the MLS Service Area within two (2) Days of the Effective Date of any listing agreement on any exclusive right to sell/lease or seller reserved listing agreement on one to four-unit residential property and vacant lots. The Effective Date of a listing agreement is the later of all necessary signatures of the seller(s) have been obtained, or at the beginning date of the listing as specified in the contract. All necessary signatures are those needed to create an enforceable listing, which generally means all named signatories to the listing agreement. In the event there are known additional property owners not made a signatory to the listing, the Listing Broker shall disclose said fact to the MLS and state whether the listed seller will make the sale contingent on the consent of the additional property owners. In the event the listing agent is prevented from complying with the 2-day time period due to seller's delay in returning the signed listing agreement, the Listing Broker must deliver the listing to the MLS within 2 days of receipt back from seller. The AOR/MLS may require the Listing Broker to present documentation to the AOR/MLS evidencing the seller's delayed transmission. Only those listings that are within the service area of the MLS must be input. Open listings or listings of property located outside the MLS's service area (see Section 7.10) are not required by the MLS but may be input at the Broker Participant's option. Violations of this Rule may result in modifications being made to the DOM count of any listing at issue as provided for in Rule 14.5.

   7.8.1    **Registered Listings.** Listings that are subject to the above identified listing agreements, but which have not been placed in the MLS for cooperation must be Registered with the MLS in accordance with the requirements of Rule 7.8. Registered listings shall not be made available for viewing, or cooperation in the MLS database to cooperating Participants and DOM shall not calculate on a Registered listing. Registered listings are by definition subject to the requirements of Rule 7.9.

7.9    **Mandatory Submission upon Marketing.** Within one (1) business day of marketing or advertising a residential property to any member of the public for sale which contains one to four units, or is a residential vacant land lot which is subject to any exclusive right to sell or seller reserved listing agreement, the Listing Broker must submit the property into the MLS for cooperation with other CRMLS participants. Marketing and advertising includes, but is not limited to, any information about the property or its availability for sale displayed on any: signs, websites, social media, brokerage or franchise operated websites, communications

(verbal or written), multi-brokerage or franchise listing sharing networks, flyers or written material, on any applications, or by conducting an open house. Any individual or entity that has signed, within the previous year a Disclosure Regarding Real Estate Agency Relationship form in compliance with CA Civil Code section 2079.16 that identifies the Listing Broker shall not be considered a "member of the public" under this rule. Violations of this Rule may result in modifications being made to the DOM count of any listing at issue as provided for in Rule 14.5.

    **7.9.1**   **No Cooperation Listing.** If the seller in writing refuses to permit the property listing to be marketed or advertised as defined by Rule 7.9, and also instructs the Listing Broker to not disseminate the listing in the MLS , the Listing Broker shall obtain a written instruction from the seller  instructing the Listing Broker to do no marketing or advertising and refuses to authorize the listing to be disseminated by the MLS. The instruction shall include an advisory to seller that, in keeping the listing off the MLS, (1) No marketing or advertising of any kind will occur, (2) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to the MLS may not be aware seller's property is for sale, (3) seller's property will not be included on any   real estate Internet sites or applications that are used by the public to search for property listings, (4) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which seller is marketing the property, and (5) the reduction in exposure of the listing may lower the number of offers made on the property and may adversely impact the overall price.

**7.10**   **Service Area.** The MLS shall service the area which shall include the entire county that contains any of the territorial jurisdiction of (1) any member association, or (2) any data share partner AOR/MLS. At the option of the AOR/MLS, the MLS may adopt a policy to accept listings of properties located outside the territorial jurisdiction of the AOR/MLS. At the option of the AOR/MLS, the MLS may adopt a policy to accept listings of properties located outside the territorial jurisdiction of the AOR/MLS. If the AOR/MLS have entered into regional MLS agreements or a regional MLS corporation with other MLSs and have enlarged the service area as part of the agreement, submission of listings is mandatory for the enlarged service area covered by the combined territorial jurisdictions of the AOR's signatories to the regional MLS agreement or part of the regional MLS corporation.

**7.11**   **Change of Listing Information.** Listing Brokers shall submit any change in listing information, including the listed price or other change in the original listing agreement, to the MLS within 2 days after the authorized change is received by the Listing Broker. By submitting such changes to the MLS, the Listing Broker represents that the listing contract has been modified in writing to reflect such change or that the Listing Broker has obtained other legally sufficient written authorization to make such change.

**7.12**   **Withdrawal of Listing Prior to Expiration.** Listings of property must be withdrawn from the MLS by the Listing Broker before the expiration date of the listing agreement if the Listing Broker has received written instructions from the seller to withdraw the listing from the MLS. Listing Broker may withdraw any listing from the MLS 48 hours after providing seller with written notice of the broker's intention to withdraw the listing based on a dispute with the seller regarding the terms of the listing agreement. The MLS may require the Listing Broker to provide a copy of any notice of dispute or any written instructions from the seller. Sellers do

not have the unilateral right to require the MLS to cancel any listing. However, the MLS reserves the right to remove a listing from the MLS data base if the seller can document that his or her listing agreement with the Listing Broker has been terminated or is invalid. Withdrawal from the MLS with the seller's consent does not relieve the obligation of the Listing Broker to report the sale and sales price if it closes escrow while the seller is represented by the Listing Broker.

**7.13    Contingencies.** Any contingency or condition of any term in a listing shall be specified and noticed to the participants.

**7.14    Detail on Listings Filed With the MLS.** Electronically input data or a property data form, when filed with the MLS by the Listing Broker, shall be complete in every detail as specified on the property data form, including full gross listing price, termination date, , and any other item required to be completed as determined by the AOR/MLS Board of Directors. Property data forms may be returned if incomplete, and if not completed and returned within 2 days from the day the incomplete property data form was returned to the Listing Broker, the Broker Participant and R.E. Subscriber may be subject to penalties for failure to submit the completed property data form in a timely manner.

**7.15    No Offers of Compensation in the MLS.** A Listing Broker may not input, or otherwise use the MLS in any capacity, or in any field, media or document uploaded to the MLS, to offer or convey any amount or any willingness of Listing Broker to share a commission with a Buyer Broker, or for a Seller to offer a specific compensation amount to a Buyer Broker. Nothing in this rule shall prevent the Listing Broker from inputting any amount or invitation from Seller to consider any concessions that may be requested by a Buyer in an offer, as long as any such communication of a concession does not limit or condition the concession on being used to pay any Buyer Broker or other buyer representative. Listing Brokers must place any such amount or invitation regarding seller concessions in the Public Remarks/Property Description field.

**7.16    Disclosure of Compensation.** Listing Broker must disclose to prospective sellers or landlords that broker compensation is not set by law and is fully negotiable. This must be included in conspicuous language as part of any listing agreement. Listing Broker must conspicuously disclose in writing to sellers, and obtain seller's authority, for any payments or offer of payment that the Listing Broker or seller will make to another broker, agent or other representative (e.g., real estate attorney) acting for buyers. The disclosure must include the amount or rate of any such payment and be made in writing in advance of any payment or agreement to pay.

**7.17    Consent to Act as Dual Agent.** By listing a property and offering to cooperate with Buyer Broker, the Listing Broker is not automatically representing that the seller(s) have consented to the Buyer Broker acting as a dual agent representing both the buyer(s) and the seller(s). No Buyer Broker shall act as both an agent of the buyer(s) and the seller(s) without first contacting the Listing Broker and ascertaining that the seller(s) have consented to such dual agency.

**7.18    Auction and New Construction Listings**.

    **7.18.1    Auction Listings.** Only auction listings which comply with these MLS Rules and

Policies, including, but not limited to Sections 7.12 and 7.13, may be submitted to the Service. Auction listings entered into the MLS system shall have listing contracts as required under these Rules, be clearly labeled as auction listings, and provide all the terms and conditions of the auction. Reserve auctions are not permitted on the MLS. Auction listings shall further specify the following:

a) The list price, which shall be seller's minimum acceptable bid price;
b) The date, time and place of the auction;
c) All required procedures for Buyer's Broker to register their representation of a potential bidder;
d) The amount of the buyer's premium, if any;
e) The time or manner in which potential bidders may inspect the listed property;
f) Whether or not the seller will accept a purchase offer prior to the scheduled auction; and
g) Any other material rules or procedures for the auction, and;
h) Upon acceptance of any bid that concludes the auction such that no additional bids are accepted, the listing status shall be changed to Pending.

Subsections (b) through (g) above shall not appear in a listing's Public Remarks.

### 7.18.2 New Construction Listings.

a) Any Residential Property listed in the MLS that requires the disclosure of a Final Public Report pursuant to the Subdivided Lands Law prior to a sale of the property, or that requires a new construction building permit, shall be designated a NEW CONSTRUCTION LISTING (NCL). All MLS Rules shall apply to an NCL except as modified as follows:
b) Submitting an NCL shall cause to be exempted from the Mandatory Delivery Rule 7.8 each individual lot within the subdivision covered by the same Final Public Report as the NCL.
c) NCL's may remain in a Coming Soon status until such time as a certificate of occupancy is issued.

Upon final closing of any property subject to the same Final Public Report as the NCL, Listing Broker shall report or input in the MLS as "sold" and report the selling price within 2 days of the final closing date.

**7.19**    **No Disclosure of Listing Broker or Total Commission.** Listing Broker may not in any field, media or document inputted into the MLS disclose the Listing Broker's commission or the total amount of commission charged by the Listing Broker to the Seller. Nothing in this rule shall limit the ability of the Listing Broker to report the fact that a Seller has paid an amount either directly to or through the Listing Broker to a Buyer's Broker for a specific property. MLS will not collect the total amount charged or collected by a Buyer Broker but will only collect the amount paid by a Seller to a Buyer's Broker.

**7.20**    **Broker Participant or R.E. Subscriber as Principal.** If a Listing Broker, including any Subscriber has any interest in a property, the listing which is disseminated through the MLS shall contain a disclosure of that interest on the MLS.

**7.21    Multiple Unit Properties.** All properties which are to be sold or which may be sold separately must be indicated individually in the MLS and will be published separately. When part of a listed property has been sold, the Listing Broker shall input the appropriate changes on the MLS within 2 days.

**7.22    Expiration, Extension, and Renewal of Listings.**

    a)  Listings shall be changed to the appropriate off-market status on the expiration date specified on the listing unless the listing is extended or renewed by the Listing Broker.

    b)  The Listing Broker shall obtain written authorization from the seller(s) before filing any extension or renewal of a listing.

    c)  The Listing Broker may modify the status of an expired listing within seven (7) days of the Expiration date. At any time and for any reason, the MLS has the right to request a copy of the seller's written authorization to extend or renew a listing.

    d)  The calculation of Days on Market (DOM) is based on the MLS #.  The calculation of Cumulative Days on Market (CDOM) is based on APN # or address and will accumulate until a change of ownership has occurred or the property is not available for sale and no listing agreement is in effect for a period of 90 days or more.

    e)  At any time and for any reason, the MLS has the right to request a copy of the seller's(s') written authorization to extend or renew a listing.  If a Listing Broker is requested to provide a copy of such authorization and does not do so within 1 day of the request, the listing shall be subject to immediate removal from the MLS.

**7.22.1    Extension for Protected Buyer.** In the event a Listing Broker's listing has Expired or been Canceled, but a commission extension right for a protected buyer has been timely activated in the listing agreement and Listing Broker represents seller in said transaction, Listing Broker may be considered the "listing broker" for MLS reporting of sale so long as satisfactory documentation is presented to MLS.

**7.23    Listings of Participants or Subscribers Suspended, Expelled, or Resigned.**

**7.23.1    Failure to Pay MLS Fees; Resignation**. When a Participant or Subscriber of the MLS is suspended or expelled from the MLS for failure to pay MLS fees or charges, or if the Participant or Subscriber resigns from the MLS, the MLS shall cease to provide services to such Participant or Subscriber, including continued inclusion of listings in the MLS compilation of current listing information. In the event listings are removed from the MLS pursuant to this section, it shall be the sole responsibility of the Participant to notify the sellers(s) that the property is no longer listed in the MLS.

**7.23.2    Violations of MLS Rules**. When a Participant or Subscriber is suspended or expelled from the MLS for a violation of the MLS Rules, the AOR/MLS shall cease to provide MLS services to such Participant or Subscriber except that the listings in the MLS at the time of suspension or expulsion shall, at the suspended or expelled Participant's option, be retained in the MLS compilation of current listing information until sold, withdrawn, or expired, and shall not be renewed or extended by the MLS beyond the termination date of the listing agreement in effect when the expulsion became effective. In the event listings are removed from the MLS pursuant to this section, it

shall be the responsibility of the Participant to notify the seller(s) that the property is no longer listed in the MLS.

**7.24** **No Control of Commission Rates or Fees Charged by Participants.** The AOR/MLS shall not fix, control, recommend, suggest, or maintain commission rates or fees for services to be rendered by Participants. Further, the AOR/MLS shall not fix, control, recommend, suggest, or maintain the division of commissions or fees between cooperating Participants or between Participants and non-participants.

**7.25** **Dual Rate Commission Arrangements (Listing Broker Advantage).** The existence of a dual commission arrangement shall be disclosed by the Listing Broker by a key, code, or symbol as required by the MLS. A dual rate commission arrangement is one in which the seller agrees to pay Listing Broker one set rate of commission if the Buyer is represented by a Buyer Broker, and a different commission rate if the buyer is unrepresented or if the transaction occurs because of the efforts of the seller instead of the Listing Broker. The Listing Broker shall, in response to inquiries from potential Buyer Brokers, disclose the differential that would result in either a cooperative transaction or, alternatively, in a sale that results through the efforts of the seller(s) or owner. If the Buyer Broker is representing a buyer(s) or lessee(s), the Buyer Broker must then disclose such information to his or her client before the client makes an offer to purchase or lease.

**7.26** **Right of Listing Broker and Presentation of Counter-Offers.** The Listing Broker has the right to participate in the presentation of any counter-offer made by the seller(s) or lessor(s). The Listing Broker does not have the right to be present at any discussion or evaluation of a counter-offer by the buyer(s) or lessee(s) (except where the Buyer Broker is a subagent). However, if the buyer(s) or lessee(s) give written instructions to the Buyer Broker that the Listing Broker not be present when a counter-offer is presented, the Listing Broker has the right to a copy of the buyer's(s') or lessee's(s') written instructions.

**7.27** **REO Disclosure.** Listing Brokers submitting foreclosure, bank-owned or real estate owned ("REO") listings to the service shall disclose said status upon submission of the listing to the service.

**8.    DOCUMENTATION; PERMISSION; ACCURACY OF INFORMATION.**

**8.1** **Listing Agreement and Seller's Permission.** Prior to submitting a listing to the MLS, the Listing Broker shall obtain the written agreement of the seller(s) expressly granting the Listing Broker authority to:

    a) file the listing with the MLS for publication and dissemination to those authorized by the MLS;

    b) act as an agent for the seller(s);

    c) abide by the rules of the MLS;

    d) provide timely notice of status changes of the listing to the MLS;

    e) provide sales information, including selling price, to the MLS upon sale of the property for publication and dissemination to those authorized by the MLS; and

    f) publish sales information after the final closing of a sales transaction in accordance with these MLS rules (See Section 10.1).

**8.2    Written Documentation.**

a) Any Listing Broker filing any property as a listing with the MLS shall have a written listing agreement with all necessary signatures in their possession. Only listings that create an agency relationship between the seller(s) and the Listing Broker are eligible for submission to the MLS. By submitting a listing to the MLS, Listing Broker represent that they have in their possession such written agreements establishing agency and the represented type of listing agreement.

b) The AOR/MLS shall have the right to demand a copy of written documentation to verify the adequacy, and the information reported to the MLS, at any time.

c) The AOR/MLS shall also have the right to demand a copy of any written authorization required under these rules.

d) If the Participant or Subscriber fails to provide documentation requested by the AOR/MLS within 1 day, the AOR/MLS shall have the right to immediately remove the listing from the database.

**8.3    Accuracy of Information; Responsibility for Accuracy.** By inputting information into the MLS computer database, the Listing Broker represents that the information input is accurate to the best of the Listing Broker's knowledge. The Listing Broker shall use good faith efforts to determine the accuracy of the information and shall not submit or input information which the Listing Broker knows to be inaccurate. Upon receipt of the first publication or electronic transfer by the MLS of such information, the Listing Broker shall make all necessary corrections. The MLS merely publishes the MLS information and has no affirmative responsibility to verify the accuracy of the MLS information. The AOR/MLS, however, reserves the right to require Participants and Subscribers to change their MLS information if the AOR/MLS is made aware of alleged inaccuracies in the MLS information and the AOR/MLS determines that such inaccuracies do in fact exist. The MLS also reserves the right to remove a listing that contains said inaccurate information from the MLS compilation of current listings should Participant or Subscriber refuse or fail to timely correct. A Participant or Subscriber is required to correct inaccurate information within 2 days after being notified of the inaccuracies by the MLS. If a Participant or Subscriber fails to make necessary or required corrections to their MLS information, the Participant and Subscriber shall indemnify and hold harmless the AOR/MLS for any claims, cost, damage, or losses, including reasonable attorney fees and court costs, incurred by the MLS as a result of such failure. The AOR/MLS also reserves the right to remove information and listings from the database when it is clear that inaccurate data has been entered, in addition to disciplining the Participant and Subscriber for violations of the MLS rules. In no event will the AOR/MLS be liable to any Participant, Subscriber, or any other party for any indirect, special, or consequential damages arising out of any information published in the MLS, and all other damages shall be limited to an amount not to exceed the MLS fees paid by the Listing Broker.

**8.4    Input Defined.** All references or uses of the word "input" shall also include information which is submitted to the MLS for input in the MLS database by the AOR/MLS staff, whether such information was provided to the AOR/MLS staff on a "property data form" or otherwise.

**8.5    Buyer, Seller, Purchase, and Sale Defined.** All references to the buyer(s) shall also include tenant(s) and lessee(s).  All references to the seller(s) shall also include landlord(s) and lessor(s). All references to a purchase shall also include a lease. All references to a sale shall

also include a lease.

9.    **SELLING PROCEDURES.**

9.1    **Showings.** Buyer Broker shall follow all showing instructions as set forth in the MLS. Buyer Broker shall only provide access for showing, touring or inspecting a listed property to a client with whom the Buyer Broker has a written agreement that includes the following in a conspicuous location: a) a specific, objectively ascertainable compensation amount or rate, including how any such amount will be determined and the amount of compensation may not be open-ended such as "buyer broker fee shall be whatever amount a seller or listing broker is offering to pay buyer broker or buyer" and b) a term that prohibits Buyer Broker from receiving any fee or compensation that exceeds the amount or rate in the agreement with the buyer, regardless of the source of the payment of the fee and c) a statement that broker fees and commissions are not set by law and are fully negotiable. Nothing in this policy shall impose any restriction or requirement upon the Listing Broker.

9.2    **Disclosing the Existence of Offers.** Listing Brokers, in response to inquiries from buyers or Buyer Brokers, shall, with the seller's approval, disclose the existence of offers on the property. Where disclosure is authorized, the Listing Broker shall also disclose whether offers were obtained by the listing licensee, by another licensee in the listing firm, or by a Buyer Broker only if asked.

9.3    **Availability to Show or Inspect.** Listing Brokers shall not misrepresent the availability of access to show or inspect a listed property. For any property in which Listing Broker selected a status of Coming Soon or Hold, Listing Broker represents that the property shall have no showings or tours, whether conducted by Listing Broker or otherwise, until such time as the Property is placed in the Active or Active Under Contract status.

9.4    **Presentation of Offers**. The Listing Broker must make arrangements to present the offer as soon as possible or give the Buyer Broker a satisfactory reason for not doing so. If a seller(s)/landlord(s) has directed that offers from Buyer Brokers are not to be presented for any length of time, seller's direction authorizing such arrangement shall be in writing and Listing Broker shall provide clear and accurate notice of the date of presentation of offers to Participants and Subscribers in the MLS. In the event the Listing Broker will not be participating in the presentation of offers, the Listing Broker shall clearly indicate this fact in the listing information published by the MLS.

9.5    **Submission of Offers and Counter-Offers.** The Listing Broker shall submit to the seller(s) all offers and counter-offers until closing unless precluded by law, governmental rule, or expressly instructed in writing by the seller(s)/landlord(s) otherwise. If requested by Buyer Broker in writing, Listing Broker shall provide Buyer Broker with Listing Broker's written verification that Buyer Broker's offer was presented (or a written notification that the seller has waived the obligation to have the offer presented), said verification to be provided to Buyer Broker within 3 days of Buyer Broker's written request. The Buyer Broker acting for a buyer(s)/tenant(s), shall submit to buyer/tenant all offers and counter- offers until acceptance unless precluded by law, governmental rule, or expressly instructed by the buyer(s)/tenant(s) otherwise.

- 23 -

**9.6**    **Right of Buyer Broker in Presentation of Offer.** The Buyer Broker has the right to participate in the presentation of any offer to purchase he or she secures. The Buyer Broker does not have the right to be present at any discussion or evaluation of that offer by the seller(s) and the Listing Broker. However, if the seller(s) give written instructions to the Listing Broker requesting that the Buyer Broker not be present when an offer the Buyer Broker secured is presented, the Buyer Broker shall convey the offer to the Listing Broker for presentation. In such event, the Buyer Broker shall have the right to receive a copy of the seller's(s') written instructions from the Listing Broker. Nothing in this section diminishes or restricts the Listing Broker's right to control the establishment of appointments for offer presentations.

**9.7**    **Removed.**

**9.8**    **Listing Broker Approval Showings and Negotiations.** Appointments for showings and negotiations with the seller(s) for the purchase of listed property filed with the MLS shall be conducted through the Listing Broker except under the following circumstances:

  a)  The Listing Broker gives the Buyer Broker specific authority to show and/or negotiate directly with the seller(s), or;
  b)  After reasonable effort and no less than 24 hours, the Buyer Broker cannot contact the Listing Broker or his or her representative. However, the Listing Broker, at his or her option, may preclude such direct negotiations by the Buyer Broker by giving notice to all Participants through the MLS. In the event all showings and negotiations will be conducted solely by the seller(s), the Listing Broker shall clearly set forth such fact in the listing information published by the MLS.

**9.9**    **Buyer Broker as a Buyer.** If a Buyer Broker wishes to acquire an interest in property listed with a Listing Broker, such contemplated interest shall be disclosed to the Listing Broker prior to the time an offer to purchase is submitted to the Listing Broker.

**9.10**    **Physical Presence of Participant or Subscriber.** A Participant or Subscriber must be physically present on the property at all times when providing access to a listed property unless the Seller has consented otherwise.

**10.    REPORTING SALES AND OTHER INFORMATION TO THE MLS.**

**10.1**    **Statuses.** The following statuses shall apply to listings on the MLS and Listing Broker shall place a listing in the correct status:

Coming Soon:  A valid listing contract exists, and no offer has been accepted. The Listing Broker is in possession of a seller signed instruction to submit the listing as "Coming Soon". Marketing and Advertising as defined in Rule 7.9 is permitted and shall include language that the property is "Coming Soon" and shall include the date the property will become Active. The property is not available for showings consistent with Rule 9.3.

Active:  A valid listing contract exists, and no offer (with or without contingencies) has been accepted. Marketing and Advertising as defined in Rule 7.9 is permitted.

Active Under Contract: Offer accepted and either: 1) seller requests that property remain in an On-Market status and is looking for back-up offers, or; 2) the sale is subject to court or other third -party approval. Marketing and Advertising as defined in Rule 7.9 is permitted.

Hold: A valid listing contract exists, and no offer has been accepted. The Listing Broker is in possession of a seller written instruction to submit the listing as "Hold" This instruction may be due to various reasons such as multiple quality offers already received, repairs, illness, guests, etc. Marketing and Advertising as defined in Rule 7.9 is permitted.   The property is not available for showings consistent with Rule 9.3.

Withdrawn: A valid listing contract is in effect. However, the property is no longer being marketed and as such no Marketing or Advertising shall occur consistent with Rule 7.9.

Pending: The seller has accepted an offer and is not soliciting offers through the MLS. Any Marketing or Advertising of the property while in Pending status will not be considered a violation of Rule 7.9.

Canceled: The listing agreement has been canceled.

Expired: The listing agreement has expired. The time frame of the existing listing contract has run out.

Sold: Escrow has closed.

Leased: The property has been leased.

## 10.2   Reporting of Sales.

a) Listings with accepted offers shall be reported to the MLS or input into the MLS database as "pending" or "active under contract" within 2 days of the acceptance by the Listing Broker unless the negotiations were carried on under Section 9.1 (a) or (b), in which case, the Buyer Broker shall notify the Listing Broker of the "pending" or "active under contract" status within 2 business days after acceptance, whereby the Listing Broker shall then report or input the status change to the MLS within 2 days of receiving notice from the Buyer Broker.

b) The listing shall be published on the MLS as "pending" or "active under contract" with no price or terms prior to the final closing.

c) Upon final closing, the Listing Broker shall report or input the listing in the MLS as "sold" and report the selling price within 2 days of the final closing date unless the negotiations were carried on under Section 9.1 (a) or (b), in which case, the Buyer Broker shall notify the Listing Broker of the "sold" status and selling price within 2 days after the final closing date, whereby the Listing Broker shall then report or input the status change and selling price to the MLS within 2 days of receiving notice from the Buyer Broker.

d) Listings which were not input into the MLS for cooperation as a result of the seller's instructions may be input into the MLS "sold" data at the Listing Broker's option. However, listings which were input into the MLS but subsequently withdrawn must still be reported under this section if the seller is represented by the Listing Broker when it closes.

e) The MLS may accept the reporting of sales information for comparable purposes about other properties which were not otherwise eligible for input into the MLS but are located in the MLS's service area and "sold" by a Participant who represented a party in the transaction (i.e. broker who represented the seller or broker who represented the buyer), as long as such reporting is authorized by a party in the transaction to the broker who represented it, (if requested by the MLS documentation must be presented to MLS within 2 days), and the circumstances of the representation are disclosed on the Service by the reporting participant or subscriber. Any submission of sales information for comparable purposes must occur within 30 days after close of escrow.

**10.3    Removal of Listings for Refusal/Failure to Timely Report Status Changes.** The AOR/MLS is authorized to remove any listing from the MLS compilation of current listings where the Listing Broker has refused or failed to timely report status changes. Prior to the removal of any listing from the MLS, the Listing Broker shall be advised of the intended removal so the Listing Broker can advise his or her client(s).

**10.4    Reporting Cancellation of Pending Sale.** The Listing Broker shall report to the MLS within 2 days the cancellation of any pending sale and the listing shall be reinstated immediately so long as there is still a valid listing.

**10.5    Refusal to Sell.** If the seller(s) of any listed property filed with the MLS refuses to accept a written offer satisfying the terms and conditions stated in the listing, such fact shall be transmitted immediately to the MLS and to all Participants.

## 11.    OWNERSHIP OF MULTIPLE LISTING SERVICE COMPILATIONS AND COPYRIGHTS.

**11.1    MLS Compilation Defined.** The term "MLS compilation" includes, but is not limited to, the MLS computer database, all printouts of data from the MLS computer database, and all MLS publications.

**11.2    Active Listing MLS Compilation Defined.** "Active listing MLS compilation" shall mean that portion of the MLS compilation which includes listings currently for sale and all other indexes and other information relating to the current listing information.

**11.3    Comparable Data MLS Compilation Defined.** "Comparable Data MLS compilation" shall mean that portion of the MLS compilation that includes the off-market data, sold and appraisal information regarding properties that are not currently for sale, and all indexes and information relating to the sold information compilation.

**11.4    Authority to Put Listings in MLS Compilation.** By submitting any property listing content (e.g., photographs, images, graphics, audio and video recordings, virtual tours, drawings, renderings or any other representation, descriptions, remarks, narratives, pricing information, and other details or information related to listed property) to the MLS or inputting listing information into the MLS compilation, Participants and Subscribers represent and warrant that they have been authorized to grant license and also thereby do grant authority for and license the MLS to include the property listing content in its copyrighted MLS compilation. By submitting any property listing content to the MLS, Participants and Subscribers represent and warrant that they have been authorized to report information about the sales, price and

- 26 -

terms of a listing, have authority to grant and also thereby do grant authority for the MLS to include the sold information in its copyrighted MLS compilation.

**11.5** **Media on the MLS**. Media is defined as any depiction or expression of works including, but not limited to, photographs, images, drawings, renderings, audio, video, and virtual tours. The Participant/Subscriber submitting Media to the MLS grants CRMLS an irrevocable, unrestricted, transferable, perpetual, royalty-free, non-exclusive license (with right to sublicense) to use, store, reproduce, compile, display and distribute the media as part of its compilation. Submitted Media is any content placed in a listing, or content that is accessible by external links placed in a listing. Media submitted to the MLS is subject to the following:

    a) **Content Restrictions.** Content of Media submitted to the MLS shall be limited to visual representations of the property, anything included in the sale of the property, and/or any amenities or features related to the property. Inclusion of text or written communication, content that may be determined to create a safety hazard or concern, or content that is otherwise deemed to be inappropriate by MLS staff is prohibited. MLS staff shall have the right to remove from the MLS any Media that is in violation of any MLS rule, including but not limited to this section.

    b) **Prior Authorization.** By submitting any media to the MLS, the Participant and Subscriber represent and warrant that they own the right to reproduce and display the media or they have procured such rights and all necessary licenses from appropriate parties. Rights that have been obtained by the Participant/Subscriber from another party shall be fully set forth in a writing that must be in place prior to the submission of the subject Media to the MLS.

    c) **Truthful Representation.** Media submitted to the MLS must be a truthful representation of the property in all respects, including but not limited to the interiors of and views from the property and anything included in the sale of the property. Photos depicting views that are not of the property or from the property, or that are depicting HOA amenities must be captioned as such.

    d) **Subsequent Use of Media.** Use of Media that is included in the MLS Compilation by any subsequent Participant/Subscriber requires prior written authorization from the Participant/Subscriber who previously submitted the Media and any party with the legal right to grant such authorization. Notwithstanding the foregoing, subsequent use of Media which results in double watermarks appearing in the Media is prohibited.

    e) **Branded Media.** Branding of any Media submitted to the MLS is prohibited. Branding is defined as the inclusion of any content in media that can be used to identify any person or entity including but not limited to the listing broker or agent or any franchise or company the broker or agent are affiliated with, contact information for the broker or agent et al, or any other material that is or may be associated with the broker or agent et al. Media content that may be considered Branding includes, but is not limited to: signs, contact information, identifiable persons, logos, slogans, catchphrases, external links or references, team names, or any other items related to the broker or agent et al.

**11.5.1 Mandatory submission Photograph/Rendering**

    a) At least one photograph or rendering accurately depicting a substantial portion of the exterior of the subject property must be submitted to the MLS within two (2) days of entry of listing and must remain in the listing at all times for all statuses.

- 27 -

   b) Exemptions
      i.  Business Opportunity entries are exempted from 11.5.1.
     ii.  If applicable, a seller's written instruction to the listing broker expressly directing that photographs/renderings of the subject property not appear in the MLS compilation must be provided to the MLS/AOR within two (2) days of listing entry.
   c) The MLS/AOR reserves the right, after notice has been given to the Participant and Subscriber, to remove any listing from the database for failing to comply with this section.

**11.5.2  Removal of Media.** The MLS/AOR reserves the right, without notice, to remove any Media that does not comply with the MLS Rules and Policies.

**11.6**    **Copyright Ownership.** Notwithstanding 11.5, the MLS may brand any media submitted as part of a listing entry to protect its rights under this section. All right, title, and interest in each copy of every MLS compilation created and copyrighted by the MLS, and in the copyrights therein, shall at all times remain vested in the MLS. The MLS shall have the right to license such compilations or portions thereof to any entity pursuant to terms agreed upon by the Board of Directors. All right, title, and interest in each copy of every compilation created by any technology solution aggregator, shall, pursuant to agreement with the MLS, at all times remain vested in the aggregator.

**11.7**    **Leasing of MLS Compilations.** Each Participant shall be entitled to lease from the MLS the number of copies of each MLS compilation of active listing information sufficient to provide the Participant and Subscriber with one copy of such MLS compilation. Participants and Subscribers shall acquire by such lease only the right to use the MLS compilations in accordance with these rules. Clerical Users may have access to the information solely under the direction and supervision of the Participant or Subscriber. Clerical Users may not provide any MLS compilation or information to persons other than the Participant or the Subscriber under whom the Clerical User is registered.

**11.8**    **Removal of Historical Records.** The removal of history information from the MLS compilation is forbidden. No exceptions are to be made at any time.

**11.9**    **Removal of and Responsibility for Content**. The MLS has the right, but not the obligation, to reject, pull down, restrict publication of, access to or availability of content the MLS in good faith considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, unlawful or otherwise objectionable. Participants and Subscribers remain solely responsible and liable for the content they provide. In no case will any monitoring or removal of Participants' or Subscribers' content by the MLS make it responsible or liable for such content.

**11.10**    **Indemnification; Limitation of Liability**. Participant and Subscriber shall defend, indemnify and hold harmless the service and every other Participant and Subscriber for from and against any liability, claims, costs, damage or losses, including reasonable attorney fees and court costs, resulting from or arising out of any content Participant and/or Subscriber submit to or in any way wrongfully reproduce from the Service. In no event will the MLS be liable to any MLS Participant, Subscriber or any other party for any indirect, special or

consequential damages arising out of any information published in the MLS and all other damages shall be limited to an amount not to exceed the MLS fees paid by the Listing Broker.

**11.11** **Pursuing Complaints of Unauthorized Use of Listing Content.** MLS Participants and Subscribers may not take legal action against another Participant or Subscriber for alleged rules violation(s) unless the complaining Participant or Subscriber has first exhausted the remedies provided in these rules.

    a) **Notice.** Any Participant or Subscriber who believes another Participant or Subscriber has engaged in the unauthorized use or display of listing content, including photographs, images, audio or video recordings, and virtual tours, shall send notice of such alleged unauthorized use to the MLS. Such notice shall be in writing, specifically identify the allegedly unauthorized content, and be delivered to the MLS not more than sixty (60) days after the alleged misuse was first identified. No Participant or Subscriber may pursue action over the alleged unauthorized use and display of listing content in a court of law without first completing the notice and response procedures outlined in this section of the MLS rules.

    b) **Response.** Upon receiving a notice, the applicable Committee/Board of Directors will send the notice to the Participant or Subscriber who is accused of unauthorized use. Within ten (10) days from receipt, the Participant or Subscriber must either: 1) remove the allegedly unauthorized content, or 2) provide proof to the Committee/Board of Directors that the use is authorized. Any proof submitted will be considered by the Committee/Board of Directors, and a decision of whether it establishes authority to use the listing content will be made within thirty (30) days.

    c) **Determination.** If the Committee/Board of Directors determines that the use of the content was unauthorized, the Committee/Board of Directors may issue sanctions pursuant to the MLS rules, including a request to remove and/or stop the use of the unauthorized content within ten (10) days after transmittal of the decision. If the unauthorized use stems from a violation of the MLS rules, that too will be considered at the time of establishing an appropriate sanction.

    d) **Court Action If Uncured.** If after ten (10) days following transmittal of the Committee's/Board of Director's determination the alleged violation remains uncured (i.e., the content is not removed or the rules violation remains uncured), then the complaining party may seek action through a court of law.

**11.12** **Participant Access and Entitlement to Their Own Listing Information; Data Portability.** The Service must, upon request, promptly provide a Participant (or the Participant's designee) a data feed containing, at minimum, all active MLS listing content input into the MLS by or on behalf of the Participant and all the Participant's off-market listing content available in the MLS system. The delivery charges for the Participant's listing content shall be reasonably related to the actual costs incurred by the MLS. The data feed must be in compliance with the prevailing RESO (Real Estate Standards Organization) standards required by NAR MLS Policy. The Service will not limit the use of the Participant's listing content by the Participant or Participant's designee.

## 12.    PROHIBITIONS AND REQUIREMENTS.

**12.1    Notification of California Department of Real Estate (DRE) or California Bureau of Real Estate Appraisers (BREA) Action.** Participants and Subscribers are required to notify the AOR/MLS within 24 hours of any final action taken by the DRE or the Bureau of Real Estate Appraisers (BREA) against the Participant, Subscriber, or any licensee affiliated with the Participant or Subscriber, including, but not limited to, any final decisions restricting, suspending, or revoking a real estate license or Appraiser's certification or license of a Participant, the Participant's firm or corporation under which the Participant or Subscriber acts, or any licensee affiliated with the Participant or the Participant's firm or licensee or Appraiser who was affiliated with the Participant or Participant's firm at the time of the underlying act.

**12.2    Violations of the Law.** If a Participant, Subscriber, Appraiser, or a licensee affiliated with a Participant or Subscriber commits a felony or a crime involving moral turpitude or violates the Real Estate Law or the laws relating to Appraisers, the Participant and Subscriber shall be in violation of this section. However, a Participant or Subscriber shall not be found to have violated this section unless the Participant, Subscriber, Appraiser, or salesperson licensed to the Participant has been convicted, adjudged, or otherwise recorded as guilty by a final judgment of any court of competent jurisdiction of (1) a felony, or (2) a crime involving moral turpitude, or (3) on a determination by any court of competent jurisdiction, or official of the State of California authorized to make the determination, that the Participant or Subscriber violated a provision of the California Real Estate Law or a Regulation of the Real Estate Commissioner or law relating to Appraisers.

**12.3    Supervision of R.E. Licensees and Appraisers.** In addition to the notification requirements of Section 12.1, a Participant may not allow any licensee, under the Participant's license, whose license has been revoked, suspended or restricted by the DRE to use the MLS in any manner while the DRE discipline is in effect except that the licensee may use the MLS under a restricted license providing such use is consistent with and does not violate such license restrictions.

**12.4    Solicitation of Listing Filed With the MLS.** Participants and Subscribers shall not solicit a listing filed with the MLS unless such solicitation is consistent with Article 16 of the N.A.R. Code of Ethics, its Standards of Practice, and its Case Interpretations. The purpose of this section is to encourage sellers to permit their properties to be filed with the MLS by protecting them from being solicited through unwanted phone calls, visits, and communications, prior to expiration of the listing, by Brokers and salespersons seeking the listing upon its expiration. This section is also intended to encourage Brokers to participate in the MLS by assuring them that other Participants and Subscribers will not attempt to persuade the seller(s) to breach the listing agreement or to interfere with the Listing Broker's attempts to market the property. This section does not preclude solicitation of listings under circumstances otherwise permitted under Article 16 of the N.A.R. Code of Ethics, its Standards of Practice, and its Case Interpretations.

**12.5    Misuse of Public Remarks.** Information in the public remarks shall only relate to the description, features and condition of the property and related amenities. The following types of information may not be included in the public remarks:

- 30 -

- Contact information of any kind;
- Branded content (as defined in Rule 11.5(e));
- Links to external websites of any kind, including but not limited to, agent or broker sites, video tours, virtual showing or open house tools, vendor sites, or offer submission/application/auction platforms;
- Showing instructions or open house information;
- Information regarding lockboxes, alarms, gate or other security codes, or occupancy status of the property (a statement that the property shall be delivered vacant is not a violation of this section).
- Information deemed to create an unsafe or unsecure circumstance related to the listed property, property occupants, real estate practitioners, or the public;
- Information directed toward agents or brokers, including but not limited to, references to compensation, commission sharing or bonuses;
- Solicitations or invitations for the public to contact the listing agent or broker or any third parties affiliated with the listing agent or broker, and;
- Content that violates Fair Housing law or that is deemed discriminatory, illegal, defamatory, offensive, or otherwise inappropriate. CRMLS reserves the right to remove and issue citations for any inappropriate content.

By submitting remarks to the MLS, Participant and/or Subscriber represents and warrants he or she has the authority to grant, and hereby grants the MLS and the other Participants and Subscribers the right to reproduce and display the remarks in accordance with these rules. Copying of remarks by a subsequent listing agent for use in his or her own listing requires prior written authorization from the originating listing agent or other appropriate party with the legal right to reproduce and display such remarks.

**12.5.1 Misuse of Other Remarks and Media.** Participants and Subscribers may not use any remarks or other media fields in a property data profile sheet or listing submitted to the MLS or inputted directly into the MLS database for purposes of disparaging other real estate agents or conveying information about other offices or for conveying any other information that does not directly relate to the marketing of the listing.

**12.6    "For Sale" Signs.** Only the "For Sale" signs of the Listing Broker may be placed on the property.

**12.7    "Sold" Signs and Use of the Term "Sold."** Only Real Estate Brokers or R.E. Subscribers who participated in the transaction as the Listing Broker or Buyer Broker may claim to have "sold" the property. Prior to closing, a Buyer Broker may post a "sold" sign on a property only with the consent of the Listing Broker. This section does not, however, prohibit any Broker from advertising the addresses and prices of the properties that have sold in a neighborhood after the information regarding the properties has been published as long as the advertisement does not imply the agent was involved in the transaction unless such is the case and as long as the advertisement otherwise presents a `true picture' as is meant under Article 12 of the N.A.R. Code of Ethics, its Standards of Practice, and its Case Interpretations.

**12.8    Advertising of Listing Filed With the MLS.** A listing shall not be advertised in any media or used for any advertising purposes, including the Internet, by any Participant or Subscriber

other than the Listing Broker, without the prior consent of the Listing Broker except as provided in Section 19.2 relating to display of listings on the Internet.

**12.8.1 Advertising of Listing in Printed Neighborhood Market Report**. Subject to the conditions set forth in (a) through (c) below, as well as throughout these Rules, Participants and Subscribers may include the listings of others in their printed "Neighborhood Market Reports." The "Neighborhood Market Report" is defined as an advertising and/or information sheet (typically appearing in the form of a postcard, flier or newsletter) compiled by and/or for use by a licensee which sets forth a list of home activity in a particular neighborhood area. Advertising appearing in newspapers, magazines or other classified forms is not included in the definition of "Neighborhood Market Report" and is not authorized by this Rule 12.8.1.

    a) **Consent**. The listing brokers' consent for such advertising is presumed, in satisfaction of Rule 12.8, unless a listing broker affirmatively notifies the MLS that the listing broker refuses to permit others to advertise his listing in the "Neighborhood Market Report" (i.e. "opts-out") either on a blanket or listing by listing basis. Listing brokers that refuse to permit other Broker Participants or Subscribers to advertise their listings on a blanket basis may not display the listings of the other brokers' listings in their own "Neighborhood Market Reports". Even where Listing Brokers have given blanket authority for other Broker Participants and Subscribers to advertise their listings in the "Neighborhood Market Report", such consent may be withdrawn on a listing-by-listing basis where the seller has prohibited it. Participants and Subscribers are not permitted to include listings in their Neighborhood Market Report from which listing broker has opted out and will be responsible for verifying that they have permission to advertise all listings contained in their Neighborhood Market Reports.

    b) **Listing Attribution**. All On-Market listings in the "Neighborhood Market Report" must identify the name of the listing firm(s) and the name of the listing agent(s) in a manner designed to easily identify such listing firm(s) or agent(s). Such identification shall be in a reasonably prominent location and in a readily visible color and typeface not smaller than the median used in the display of listing data.

    c) **Allowable Listing Content**. Broker Participants and Subscribers may include only those portions of the MLS compilation consisting of the following: property address (and whether attached or detached), status, price, , number of bedrooms, number of bathrooms, number of garages (and whether attached or detached), square footage, lot size, year built, tract or development name, and if there's a pool. Display of other fields, as well as confidential information and photographs, is prohibited.

**12.9    Limitations on Use of MLS Information in Advertising.** Except as provided in Sections 12.7, 12.8, 12.11 and 12.15, truthful use of information from the MLS compilation of current listing information, from the MLS' "statistical report," or from any "sold" or "comparable" report of the MLS for public mass media advertising by an MLS Participant or Subscriber or in other public representations for purposes of demonstrating market share is not prohibited. However, any print or non-print forms of advertising or other forms of public representations

must clearly demonstrate the period of time over which such claims are based and must include the following, or substantially similar, notice in a manner readily visible to consumers but not less than 7pt type:

*"Based on information from California Regional Multiple Listing Service, Inc. as of [date the AOR/MLS data was obtained] and /or other sources. All data, including all measurements and calculations of area, is obtained from various sources and has not been, and will not be, verified by broker or MLS. All information should be independently reviewed and verified for accuracy. Properties may or may not be listed by the office/agent presenting the information".*

**12.10    False or Misleading Advertising and Representations; True Picture Standard of Conduct.** Participants and Subscribers may not engage in false or misleading advertising, including, but not limited to, advertisements or representations regarding the Participant's or Subscriber's relationship to the MLS, about the MLS itself, or about any property listed with the MLS. MLS Participants and Subscribers shall present a true picture in their advertising and representations to the public, including internet content, images and the URLs and domain names they use, and Participants and Subscribers may not:

**12.10.1** Engage in deceptive or unauthorized framing of real estate brokerage websites;

**12.10.2** Manipulate (e.g., presenting content developed by others) listing content and other content in any way that produces a deceptive or misleading result;

**12.10.3** Deceptively use metatags, keywords or other devices/methods to direct, drive or divert Internet traffic;

**12.10.4** Present content developed by others without either attribution or without permission, or;

**12.10.5** Otherwise mislead consumers, including use of misleading images.

**12.11    Use of MLS Information.** In recognition that the purpose of the MLS is to operate a broker cooperative and to market properties for cooperation with other Broker Participants and R.E. Subscribers for the sole purpose of selling the property, and that sellers of properties filed with the MLS have not given permission to disseminate the information for any other purpose, Participants and Subscribers are expressly prohibited from using MLS information for any purpose other than to market property to bona fide prospective buyers or to support market evaluations or appraisals as specifically allowed by Sections 12.14, 12.15 and 19.2. MLS information may also be used to develop Statistics, Market Condition Reports, and Broker or Agent Metrics. Any use of MLS information inconsistent with these sections is expressly prohibited. Nothing in this section, however, shall limit the MLS from entering into licensing agreements with MLS Participants and Subscribers or other third parties for use of the MLS information.

**12.12    Confidentiality of MLS Information.** Any information provided by the MLS to the Participants and Subscribers shall be considered and treated as confidential by Participants and Subscribers and shall be for the exclusive use of the Participants and Subscribers for

purposes described in Sections 2, 12.7, 12.11, 12.14, 12.15, 19.2 and this section. Participants and Subscribers shall at all times maintain control over and responsibility for each copy of any MLS compilation leased to them by the MLS and shall not distribute any such copies to persons other than Participants and Subscribers. Participants and Subscribers are responsible for the security of their pass codes and shall not give or allow use of or make available their pass codes to any person. Participants and Subscribers may reproduce or display the information as provided in these rules.

> **12.12.1 Clerical Users.** Clerical Users may have access to MLS information solely under the direction and supervision of the Participant or Subscriber. Clerical Users are expressly prohibited from displaying or distributing MLS information to anyone other than the Participant or Subscriber under whom they are registered. Access by Clerical Users to the database is solely for clerical and administrative functions for the Participant or Subscriber under whom the Clerical User is registered.

**12.13 Access to Comparable and Statistical Information.** AOR/MLS members who are actively engaged in real estate brokerage, management, mortgage financing, appraising, land development, or building, but who do not participate in the MLS, are nonetheless entitled to receive, by purchase or lease, all information other than current listing information that is generated wholly or in part by the MLS, including "comparable" information, "sold" information, and statistical reports. This information is provided for the exclusive use of AOR/MLS members and individuals affiliated with AOR/MLS members who are also engaged in the real estate business and may not be transmitted, retransmitted, or provided in any manner to any unauthorized individual, office, or firm except as otherwise specified in these rules.

**12.14 Display.** Subject to Sections 12.15 and 19.2, Broker Participants and R.E. Subscribers shall be permitted to display the MLS compilation in either electronic or printed format to specifically identify and bona fide prospective buyers only in conjunction with their ordinary business activities of attempting to locate ready, willing, and able buyers for the properties described in said MLS compilation. Broker Participants and R.E. Subscribers shall be permitted to display the MLS compilation in either electronic or printed format to specifically identified and bona fide sellers or prospective sellers only in conjunction with their ordinary business activities in listing properties. Appraiser Participants and Appraiser Subscribers shall be permitted to display the MLS compilation to the person requesting the appraisal only in conjunction with their ordinary business activities of producing a written appraisal. Such displays under this section shall be only in the immediate presence of the MLS Participant or Subscriber.

**12.15 Reproduction.** "Reproduction" shall include, but not be limited to, making photocopies, computer printouts, electronic transfers (including email), or downloading of MLS data or compilations. Participants and Subscribers or their affiliated licensees shall not reproduce any MLS compilation or any portion thereof except as provided in Section 19.2 and in the following limited circumstances:

> **12.15.1 Copies to Prospective Buyers**. Broker Participants and R.E. Subscribers may reproduce from the MLS compilation, and distribute to prospective real estate buyers, copies of those portions of the MLS compilation consisting only of a description of

the property, including the address, features, financing, and price, as well as photographic images and recordings of the property.

**12.15.2 Information Reproduced**. Unless the Participant or Subscriber obtains prior written consent from the Listing Broker, the information reproduced pursuant to this section shall not include the following:

    a) Property owner's name, phone number, and address (if different than the listed property);
    b) Instructions or remarks intended for Buyer Brokers, including, but not limited to, showing instructions or security references (ex: lock box, burglar alarm, or security system, vacancies) regarding the listed property;
    c) Type of listing; and.
    d) Other information which goes beyond a description of the property.

**12.15.3 Copies for Appraisals.** Participants and Subscribers may reproduce from the MLS compilation and attach to an appraisal as supporting documentation copies of those portions of the MLS compilation consisting only of such information on properties necessary to support a written appraisal or estimate of value on a particular property.

**12.15.4 Downloading into Computers.** Participants and subscribers may download MLS information into a computer or computer system as long as:

    a) Access to the computer or computer system receiving the information is strictly limited to authorized Participants, Subscribers, and Clerical Users as defined in these rules; and
    b) The information is only retransmitted to the Participants, Subscribers, and Clerical Users authorized to access the computer or computer system by these rules; and
    c) The information is not reformatted or used to create another product except as may be used by the Participant who downloaded the data and such use strictly complies with Sections 12.7, 12.11, 12.15 and 19.2.

**12.15.5 Sold Information.** Individuals legitimately in possession of current listing information, "sold" information, "comparable" or statistical information may utilize such information to support an estimate of value on a particular property for a particular client. However, only such information that the MLS has deemed to be non-confidential and necessary to support the estimate of value may be reproduced and attached to the report as supporting documentation. Any other use of such information is unauthorized and prohibited by these rules with the exception of usage as defined under Section 19.2.

**12.16 RELOCATED.** Refer to Section 19.2.

**12.17 Applicability of Rules to MLS.** These Rules are binding on the MLS Participants and Subscribers. Nothing in these Rules shall limit the right of the MLS to enter into licensing agreements with third parties for use of the MLS compilations or any portion thereof in accordance with terms approved by the Association or MLS Board of Directors.

**12.18  Listing Broker's Right to Opt Out of Internet Advertising of MLS Information.** If the MLS advertises MLS information on the Internet or licenses MLS information for advertising on the Internet, the Listing Broker shall have the right to opt out of such advertising in accordance with the MLS's procedures for opting out. The Listing Broker shall have the right to refuse to have listings displayed on a blanket basis or on a listing- by-listing basis in accordance with Section 19.2 by affirmatively notifying the AOR/MLS in accordance with the MLS procedures for opting out.  Notwithstanding anything in these Rules to the contrary, the AOR/MLS Board of Directors reserve the right to determine whether to provide Internet advertising services and whether such services are to be made available to non-REALTOR® members.

**12.19  Website Name and Status Disclosure.** MLS Participants' firm websites shall disclose the firm's name and state(s) of licensure in a reasonable and readily apparent manner. Websites of Subscribers affiliated with a Participant's firm shall disclose the firm's name and the Subscriber's state(s) of licensure in a reasonable and readily apparent manner.

**12.20  Use of the Terms MLS and Multiple Listing Services.** No MLS Participant or Subscriber shall, through the name of their firm, their URLs, their e-mail addresses, their website addresses, or in any other way represent, suggest, or imply that the individual or firm is an MLS, or that they operate an MLS. Participants and Subscribers shall not represent, suggest, or imply that consumers or others have direct access to MLS databases, or that consumers or others are able to search MLS databases available only to Participants and Subscribers. This does not prohibit Participants and Subscribers from representing that any information they are authorized under MLS rules to provide to clients or customers is available on their websites or otherwise.

**12.21  Participant and Subscriber Standards of Conduct.** The services which MLS Participants provide to their clients and customers shall conform to the standards of practice and competence which are reasonably expected in the specific real estate disciplines in which they engage; specifically, residential real estate brokerage, real property management, commercial and industrial real estate brokerage, real estate appraisal, real estate counseling, real estate syndication, real estate auction, and international real estate.
MLS participants shall not undertake to provide specialized professional services concerning a type of property or service that is outside their field of competence unless they engage the assistance of one who is competent on such types of property or service, or unless the facts are fully disclosed to the client. Any persons engaged to provide such assistance shall be so identified to the client and their contribution to the assignment should be set forth.

**12.22  Required Email Address.** Every MLS Participant/Subscriber shall be required to maintain on file with the AOR/MLS a current, accurate, and active email address at which they may be contacted.

**12.23  Definition of Calendar Days/Business Days.** For purposes of this Ruleset: All references to Days shall mean Calendar Days, which is defined as any day Monday through Sunday, excluding holidays. Where the term Business Days is used, the term is defined as any day Monday through Friday, excluding holidays.

**13.    LOCKBOXES.**

**13.1    Eligibility for Lockboxes.** MLS Participants and Subscribers are eligible for lockbox privileges if they otherwise qualify under this section. Clerical Users are not eligible for lockbox privileges. MLS Participants and Subscribers shall be eligible to hold a lockbox key provided:

    a)  The key holder signs a lease agreement with the lockbox provider.
    b)  The Participant to which the key holder is licensed cosigns the lease agreement with the lockbox provider.
    c)  The key holder continues to comply with all MLS rules relating to lockbox keys.
    d)  The key holder and Participant to whom the key holder is licensed remain eligible for MLS services.

**13.2    Key Use and Service.** Keys may not be used under any circumstances by anyone other than the key holder, including, but not limiting to, lending, borrowing, or sharing keys with others. Access codes may not be provided to third-parties without the consent of the seller. The AOR/MLS is not obligated to provide service on keys or lockboxes to an individual who is not the registered lessee or owner of the component. The key will only be used for the purpose of facilitating the sale/lease of a property.

**13.3    Accountability.** Key holders must account for keys upon request by the AOR/MLS. Key holders who cease to participate or subscribe to the MLS shall return all keys in their possession to the MLS.

**13.4    Deemed Unaccountable.** Keys shall be deemed unaccounted for if a key holder refuses or is unable to demonstrate that the key is within the key holder's physical control.

**13.5    Written Authority.** Participants and Subscribers shall not place a lockbox on a property without written authority from the seller(s) and occupant if other than the seller(s). A lockbox shall be removed from a listed property within 1 day after the close of escrow or upon expiration/cancellation of the listing (unless written agreement to the contrary is obtained from all parties). Inclusion in MLS compilations cannot be required as a condition of placing lockboxes on listed property.

**13.6    Lockbox Requirements.** If any lockbox or other device giving access to an On- Market listed property for Participants, Subscribers, and/or real estate professionals is authorized by the seller and/or occupant and is placed on or present on property listed through the MLS, such lockbox or device must be one that is approved by the MLS where the listing has been submitted. The authorized lockboxes sold by, leased by or otherwise offered through the local Association or MLS where the listing is submitted have been approved by the MLS. Unless expressly indicated otherwise by the MLS, for any other lockbox or device to be considered "MLS-approved," use of it must provide reasonable, timely access to listed property such that (1) it allows all Participants and Subscribers timely access to listed property by reliance solely on data submitted to and residing on the MLS; (2) complete, accurate and stand-alone instructions are provided for accessing the listed property in the appropriate agent section on the MLS; and (3) it ensures that the lockbox or device will provide reasonable access to listed property with any information, code or key needed to access the contents of the lockbox or

device to be made available or access to the property otherwise scheduled within 4 hours of initial contact in the event the lockbox or device requires the participating member to obtain additional information to enable access (ex: "call listing agent for entry code") with said 4 hour response obligation in effect every day from 8am to 6pm. The MLS reserves the right to require that the device be submitted in advance for approval. The MLS also may revoke the approval and/or subject the Participant to discipline if the device is used in a manner that fails to continue to satisfy this requirement. Failure to provide reasonable and timely access as required by this section will subject the listing agent to discipline and potential fines. More than one lockbox or access device may be used on a property as long as one of them is MLS-approved where the listing is submitted. It is incumbent upon the MLS Participant or Subscriber to verify the validity of the requesting party prior to providing the access information.

    **13.6.1 Approved Lockboxes.** The following are approved lockboxes: Supra, Sentrilock, Combo Lockbox, Programmable Electronic Deadbolt and all AOR/MLS contracted lockboxes.

**13.7    Listing Broker's Permission.** No MLS Participant or Subscriber may enter a property or open a lockbox without the Listing Broker's permission. Such permission may be granted by the Listing Broker by specifying permission to use the lockbox through the MLS. Appraiser Participants are expressly prohibited from using lockbox keys to enter a property without either the owner's or Listing Broker's permission.

**13.8    Unaccountable Keys.** Key holders and Participants cosigning with a key holder shall immediately report lost, stolen, or otherwise unaccountable keys to the AOR/MLS.

**13.9    Removal.** The lockbox must be removed with 1 day after the close of escrow or expiration/cancellation of the listing.

**13.10    Rules Violations.** Failure to abide by Rules relating to lockboxes as set forth in this section or failure to abide by the key lease agreement may result in discipline as provided in Sections 14 and 15 of these Rules, in addition to loss of or restriction on all lockbox and key privileges.

**13.11    Right to Limit Access.** The AOR/MLS reserves the right to refuse to issue a key or limit access to lockboxes if, in its sole discretion, it determines the security of the system would be compromised by issuing such keys or granting access to lockboxes.

## 14.    VIOLATIONS OF RULES AND POLICIES.

All references to *California Code of Ethics and Arbitration Manual* refer to the publication of the California Association of REALTORS® as amended from time to time.

**14.1    Grounds for Disciplinary Action and Sanctions.** After a hearing by a hearing panel as provided in the *California Code of Ethics and Arbitration Manual*, the Association or MLS Board of Directors may take disciplinary action and impose sanctions against any Participant and Subscriber:

    a)  For violation of any MLS rule.

- 38 -

b) On the Participant's or Subscriber's being convicted, adjudged, or otherwise recorded as guilty by a final judgment of any court of competent jurisdiction of (1) a felony, or (2) a crime involving moral turpitude, or (3) on a determination by any court of competent jurisdiction, or official of the State of California authorized to make the determination, that the Participant or Subscriber violated a provision of the California Real Estate Law or a Regulation of the Real Estate Commissioner or the laws relating to Appraisers or a Regulation of the Office of Real Estate Appraisers (OREA).

c) For any violation of subsection (a) by any person, including, but not limited to, a Clerical User or a salesperson, who is not a Participant or Subscriber but is employed by or affiliated with such Participant or Subscriber and was providing real estate related services within the scope of the Participant's or Subscriber's license. Lack of knowledge by the Participant or Subscriber of such salesperson's conduct shall only go to mitigation of discipline imposed.

d) For any violation of the N.A.R. Code of Ethics while a member of any Association of REALTORS®.

**14.2    Sanctions.** Sanctions or disciplinary action for violation of an MLS Rule may consist of one or more of those specified in the *California Code of Ethics and Arbitration Manual.*

**14.3    Citations**. The AOR/MLS may implement a schedule of fines (as outlined in the MLS Citation Policy) for certain MLS Rules violations and direct staff to issue citations for the specified MLS rules violations and implement a procedure whereby the Participant and Subscriber receiving the citation may either pay the amount specified on the citation or request a full hearing in accordance with the procedures set forth in the California Code of Ethics and Arbitration Manual.

> **14.3.1    Mandatory Hearing for Multiple Citations.** For any MLS Rule violation that would result in a fourth (or further) Citation in any calendar year, the violator and the violator's Office Manager or Designated Broker, if applicable, shall appear before a Professional Standards hearing panel to: 1) adjudicate the alleged MLS Rule violation(s), 2) determine additional sanctions the panel deems appropriate for the violator's continuing failure to follow the MLS Rules, and 3) determine sanctions the panel deems appropriate for the Office Manager or Designated Broker's failure to properly supervise and correct the violator's continuing failure to follow the MLS Rules. If the violator is the Designated Broker, determination of sanctions for failure to supervise shall not apply.

**14.4    Duty to Correct and Cooperate**.

a) A Participant and Subscriber, within 1 day of a Citation, must correct any violation of the Rules and Policies and bring the listing into compliance.

b) Failure to correct violations or cooperate with an investigation under the Rules and Policies within the 1-day correction period may subject a non- conforming listing to removal from the MLS database.

c) Any fines levied against a Participant under this Section as a result of the actions of a Subscriber under the Participant may be transferred to an appropriate manager under the Participant at Participant's discretion. Copies of all notices related to such fines shall be retained by the Participant.

**14.5    MLS Modification of Information.** In connection with the enforcement of MLS Rules and Policies or as otherwise needed to correct listing information, MLS Staff may modify any field or data point within any listing.

**14.6    Abusive Conduct.** Participants or Subscribers shall not engage in abusive conduct towards MLS or Association staff at any time in any interaction by any method of communication. Abusive conduct includes, but is not limited to, issuing threats or intimidation, using profanity or insulting language, harassment, bullying, coercion, shouting or otherwise behaving in a manner that creates apprehension in the recipient of the conduct.

**14.7    Disclosure Limitations.** Any information received by the MLS in response to an investigation that results in a "no violation" ruling may be shared with any reporting party.

## 15.    PROCEDURES FOR MLS RULES HEARINGS.

All MLS Rules hearings shall be processed in accordance with the *California Code of Ethics and Arbitration Manual* as from time to time amended which is hereby incorporated by reference. Failure to abide by the procedures of the *California Code of Ethics and Arbitration Manual* shall be a violation of these MLS rules.

## 16.    ARBITRATION.

**16.1    Mandatory Arbitration**. By becoming and remaining a Participant or Subscriber in the MLS, each Participant and Subscriber agrees to submit disputes arising out of the real estate business which also arises out of, or is in conjunction with, any listing filed with the MLS or any appraisal, to binding arbitration with any other Participant or Subscriber of this MLS, or participants or subscribers of any other MLS who are authorized to have access to this MLS under Section 6 of these rules. Such arbitrations shall be governed by the *California Code of Ethics and Arbitration Manual* as from time to time amended which is hereby incorporated by reference. This shall be deemed an arbitration agreement within the meaning of Part 3, Title 9 of the California Code of Civil Procedure. Failure to submit to arbitration and abide by the arbitration award, including but not limited to timely payment of the arbitration award as provided herein shall be a violation of these MLS Rules and subjects Participants and Subscribers to possible suspension from the MLS and/or other penalties.

**16.2    Other Arbitration Agreements.** Notwithstanding any other provision of these Rules, if any Participant or Subscriber enters into an agreement (either before or after a dispute arises) with another Participant or Subscriber to arbitrate a dispute utilizing non-MLS facilities, such persons are not bound to arbitrate the dispute covered by such agreement under these rules utilizing the AOR/MLS facilities.

**16.3    Arbitration Between Association Members.** Notwithstanding any other provision of these Rules:

   a) If all disputants are members of the same AOR, they shall arbitrate under that AOR in accordance with its rules.
   b) If the disputants are members of different AORs, they shall arbitrate in accordance with

any applicable regional or shared professional standards agreement. In the absence of such an agreement, the disputants remain obligated to arbitrate in accordance with the Interboard Arbitration Rules of the California Association of REALTORS® ("C.A.R.").

**16.4    Arbitration Involving Non-Association Members.** Notwithstanding any other provision of these Rules:

a) If one of more of the disputants are non-AOR members and all disputants receive MLS services through the same AOR, they shall arbitrate at the AOR unless the AOR participates in a regional MLS, in which case, they shall arbitrate in accordance with any applicable regional agreements between the AOR and the regional MLS

b) If one or more of the disputants are non-AOR members and the disputants receive MLS services through different AORs and the AORs participate in a regional MLS, they shall arbitrate in accordance with any applicable regional agreements between the AORs and the regional MLS.

c) In the absence of a regional agreement regarding the location of the arbitration, any dispute under subsection (a)-(c) may be conducted at any AOR where the respondent(s) holds AOR membership or receives MLS services.

**16.5    Same Firm.** Arbitration between persons from the same firm shall not be available and is not mandated by these Rules unless covered by arbitration rules relating to the obligations of AOR members to arbitrate.

**16.6    Timing.** For purposes of this Section 16, the duty to arbitrate shall be determined when facts giving rise to the dispute occurred. Therefore, a Participant or Subscriber shall have a duty to arbitrate if the person was an MLS Participant or Subscriber when facts giving rise to the dispute occurred. Termination of MLS participation or subscription shall not relieve the arbitration duty under this section for disputes that arose when the person was an MLS Participant or Subscriber. Requests for arbitration must be filed within one hundred and eighty (180) days after the closing of the transaction, if any, or after the facts constituting the matter could have been known in the exercise of reasonable diligence, whichever is later.

## 17.    NONPAYMENT OF MLS FEES.

**17.1    Nonpayment of MLS Fees.** If MLS fees, fines, charges, or other amounts owed the MLS are not paid on the due date specified on the invoice, the nonpaying Participant and/or Subscriber's MLS services shall be subject to suspension until such outstanding amounts are paid in full. The MLS may suspend MLS services under this section provided the MLS gives the Participant and/or Subscriber at least twenty (20) calendar days' prior notice of the proposed suspension date. Such notice may be included with the original billing statement for MLS fees, fines, or charges or any time thereafter. In the event the amounts owed remain unpaid for three months after the due date, the nonpaying Participant and/or Subscriber's MLS services shall automatically terminate regardless if notice of such termination is given.

**17.2    Disputed Amounts.** If a Participant and/or Subscriber disputes the accuracy of amount owed, the Participant and/or Subscriber may request a hearing before the Association or MLS Board of Directors. In order to request such a hearing, the Participant and/or Subscriber must first pay the disputed amount in whole which may be refunded in whole or part in accordance with

the Board of Directors' determination. Hearings under this section shall be conducted in accordance with the *California Code of Ethics and Arbitration Manual*. In the event the Board of Directors confirms the accuracy of the amount owed, the Participant and/or Subscriber shall also be subject to paying interest at the rate of ten (10%) per annum on such past due amounts.

**17.3    Reinstatement.** Any Participant and/or Subscriber whose MLS services have been terminated for nonpayment of MLS fees may reapply for participation in the MLS. However, prior to being granted access, such Participant and/or Subscriber must pay all fees applicable to new applicants and all past due amounts owed, including paying interest at the rate of ten (10%) per annum on such past due amounts.

## 18.    CHANGE IN RULES AND POLICIES.

The Rules of the MLS may be amended by a majority vote of the CRMLS Board of Directors based on recommendations from a Rules and Policies subcommittee made up of members from each participating AOR/MLS. Any changes to these rules which are mandated by the National Association of REALTORS® shall automatically be incorporated into these rules and do not require subcommittee or CRMLS Board of Directors approval. All changes to the rules shall be submitted to all reciprocating MLS.

## 19.    PARTICIPANT DATA ACCESS.

**19.1    Participant Definition and Requirements for MLS Data Use Outside MLS Front End.**

a) **Representation.** These rules govern the use of MLS data by a Participant outside of the Participants use and access to the MLS provided front end search and add/edit systems. Participant use of any MLS Data outside of the subscribed to front end systems licensed by MLS, and that is provided through a data feed of any portion of the MLS compilation is limited to Participants that are actively engaged in the direct representation, with all legally applied fiduciary duties as the agent of 1) buyers or tenant that show and make offers on properties listed in the MLS Database, or 2) Sellers or landlords that list properties in the MLS Database. Participants shall comply with all California Department of Real Estate (DRE) regulations related to the representation of buyers and sellers including but not limited to the signing of written agreements, conducting agent visual inspections and providing all disclosures.

b) **Actively Engaged.** Mere possession of a Broker's License is not sufficient to qualify for MLS data access participation. Rather, the requirement is that an individual or firm provides actual real estate brokerage services that requires a valid California license directly to clients   The Participant is actively engaged when they endeavor during the operation of its real estate business to list real property on the MLS including making information and the property available for showings when in the client's best interest and/or to represent buyers or tenants in showing and making offers on MLS listed properties. "Actively" means on a continual and on-going basis during the operation of the Participant's real estate business. The "actively" requirement is not intended to preclude MLS data access participation by a Participant or potential Participant that operates a real estate business on part time, seasonal, or similarly time-limited basis or that has its business interrupted by periods of relative inactivity occasioned by market

conditions. Similarly, the requirement is not intended to deny MLS data access participation to a Participant or potential Participant who has not achieved a minimum number of transactions despite good faith efforts, nor is it intended to permit an MLS to deny MLS data access participation based on the level of service provided by the Participant or Potential Participant as long as the level of service satisfies state law.

The key is that the Participant or potential Participant actively endeavors to provide licensed real estate brokerage services directly to clients by cooperating with one another in respect to properties of the type that are listed on the MLS in which participation is sought. An MLS may evaluate whether a Participant or potential Participant meets the Representation and Actively Engaged standards above only if the MLS has a reasonable basis to believe that the Participant or potential Participant is in fact not doing so.

c) **Referral Activity.** Note that solely engaging in referral activities is not sufficient to qualify for MLS data access, but if a broker Participant is actively engaged in providing brokerage services as described above and to an extent that does permit MLS data access, it may also engage in making some referrals to others. Nothing in this rule shall prohibit or limit the ability of MLS to grant access or a data license to an entity or person that does not qualify under these Participant Data Use Rules.

**19.2    Internet Data Exchange ("IDX").** "Internet Data Exchange" is a means by which each Participant subscribing to the program (IDX) permits the limited electronic display of Participant's listings appearing in Internet Data Exchange Database on each Participant's IDX Internet websites and on applications for mobile devices that said participating Broker Participants and. Subscribers control. The "Internet Data Exchange Database" (IDX Data) is the current aggregate compilation of all Marketed or Advertised listings information as defined in Section 10.1, Pending and Sold/Leased listings of all Internet Data Exchange Participants except those listings where the property seller has opted out of Internet publication by so indicating on the listing contract. The intent of IDX is to allow Participants that represent real estate sellers or buyers (or both) to permit other such Participants to advertise their listings in electronic displays including, but not limited to: websites, mobile applications, audio devices, and additional technologies. IDX is only available to Participants and Subscribers. MLS Participants may use the IDX data feed to advertise listings in any digital medium. Any participant, including any Subscriber affiliated with the Participant, that inputs a listing into the MLS consistent with the MLS rules is a "Listing Broker." An "Advertising Broker" means any Participant, including any Subscriber affiliated with that Participant, that uses the data feed to electronically display any information about a property filed with the MLS for which that Participant is not the Listing Broker.

**19.2.1    Authorization.** Subject to sections 19.2.2 through 19.2.15 below, and notwithstanding anything in these rules and policies to the contrary, Participants and Subscribers may electronically display aggregated MLS listing information in a status of Coming Soon, Active, Active Under Contract, Pending and Sold/Leased statuses through either downloading or by framing such information on the MLS or association public access website (if such a site is available). The download will include Publicly Accessible sold listing data closed after January 1, 2012. "Publicly Accessible" sold information as used in the IDX policy and rules, means data that is available electronically or in a hard copy to the public from city, county, state and

- 43 -

other government records. The downloading of raw data will be through the Participant only.

**19.2.2**   **Consent.** The Listing Brokers' consent for such Internet display is presumed, in satisfaction of Rule 12.8, unless a Listing Broker affirmatively notifies the MLS that the Listing Broker refuses to permit display on either a blanket or on a listing-by listing basis. Listing Brokers that refuse to permit other MLS Participants or Subscribers to display their listing information on a blanket basis may not display MLS listing information of other Brokers' listings. Even where Listing Brokers have given blanket authority for other Broker Participants and R.E. Subscribers to partake in IDX display of their listings, such consent may be withdrawn on a listing-by-listing basis where the seller has prohibited all Internet display.

**19.2.3**   **Control.** Broker Participants and R.E. Subscribers may only partake in IDX display on websites and applications for mobile devices which they control. Under IDX policy, "control" means that Broker Participants and R.E. Subscribers must have the ability to add, delete, modify and update information as required by the IDX policy. All displays of IDX listings must also be under the actual and apparent control of the Broker Participant and/or R.E. Subscriber and must be presented to the public as being that Broker Participant's and/or R.E. Subscriber's display. Actual control requires that Broker Participants and R.E. Subscribers have developed the display or caused the display to be developed for themselves pursuant to an agreement giving the Broker Participant and/or R.E. Subscriber authority to determine what listings will be displayed, and how those listing will be displayed. Apparent control requires that a reasonable consumer viewing the Broker Participant's and/or R.E. Subscriber's display will understand the display is the Broker Participant's and/or R.E. Subscriber's, and that the display is controlled by the Broker Participant and/or R.E. Subscriber.

**19.2.4**   **Display Content.** Participants and Subscribers shall not display confidential information fields, as determined by the MLS in the MLSs' sole discretion, such as that information intended for Buyer Brokers rather than consumers.

**19.2.5**   **Listing Credit.** All Listing Brokers grant permission for any Advertising Broker to display any listing submitted to the service by the Listing Broker only if the listing display or advertisement is clear so that a reasonable real estate consumer understands:

    a)  Who is the Listing Agent and Broker;
    b)  Who is the Advertising Broker, and;
    c)  How to contact that Listing Agent or Broker.

MLS may develop business rules to establish Advertising Attribution Fields for a Listing Brokers use during listing input that are required to be displayed by Advertising Brokers. MLS may provide Standards of Practice that assist in the interpretation of this rule which may contain examples and additional details to assist Advertising Brokers in understanding the Listing Credit rule.

**19.2.6    Source.** Information displayed shall indicate the source MLS of the information being displayed and the most recent date updated. Participants and Subscribers shall update all downloads and refresh all MLS downloads and IDX displays fed by those downloads of data at least once every 7 days.

**19.2.7    Usage.** Participants and Subscribers shall indicate on their displays that the information being provided is for consumers' personal, non-commercial use and may not be used for any purpose other than to identify prospective properties consumers may be interested in purchasing. Displays of minimum information (e.g. a one-line thumbnail search result, text messages, "tweets", etc. of two hundred (200) characters or less) are exempt from this requirement but only when linked directly to a display that includes all required disclosures.

**19.2.8    Security.** Participants' and Subscribers' websites must protect MLS data from misappropriation by employing reasonable efforts to monitor for and prevent "scraping" and other unauthorized accessing, reproduction or use of the MLS database.

**19.2.9    Display Purpose.** Broker Participants and R.E. Subscribers may not use IDX-provided listings for any purpose other than display as provided in these rules. This does not require Broker Participants and R.E. Subscribers to prevent indexing of IDX listings by recognized search engines.

**19.2.10    Restricted Display.** Listings, including property addresses, can be included in IDX displays except where sellers have directed their Listing Brokers to withhold their listing or the listing's property address from all display on the Internet (including, but not limited to publicly accessible websites or VOWs). This does not preclude listing Participants or Subscribers from displaying on their IDX sites or their other website(s) the listing or property address of consenting sellers.

**19.2.11    Restricted Access and Distribution.** Sharing of the MLS compilation with any third party not authorized by the MLS is prohibited. Except as provided in the IDX policy and these rules, an IDX site or a Participant or user operating an IDX site or displaying IDX information as otherwise permitted may not distributed, provide or make any portion of the MLS database available to any person or entity.

**19.2.12    Excluded Listings.** Not all listings from the MLS must be displayed on the Participant's and/or Subscriber's IDX sites so long as any exclusions are based on objective criteria, e.g., type of property, listed price or geographical location. Selection of listings displayed on any IDX site must be independently made by each Participant.

**19.2.13    Website Identification.** Any IDX display controlled by a Broker Participant or R.E. Subscriber must clearly identify the name of the brokerage firm under which they operate and the subscriber's name, if applicable, in a readily visible type font and color.

**19.2.14    Removed.**

**19.2.15  Third Party Comments and Automated Value Estimates.** Any IDX display controlled by a Broker Participant or RE Subscriber that:

a)  Allows third-parties to write comments or reviews about particular listings or displays a hyperlink to such comments or reviews in immediate conjunction with particular listings, or

b)  Displays an automated estimate of the market value of the listing (or hyperlink to such estimate) in immediate conjunction with the listing, shall disable or discontinue either or both of those features as to the seller's listing at the request of the seller. The Listing Broker or agent shall communicate to the MLS that the seller has elected to have one or both these features disabled or discontinued on all displays controlled by Broker Participants and R.E. Subscribers. Except for the foregoing and subject to section 19.2.15 below, a Broker Participant's or R.E. Subscriber's IDX site may communicate the Broker Participant's or R.E. Subscriber's professional judgment concerning any listing. Nothing shall prevent an IDX site from notifying its viewers that a particular feature has been disabled at the request of the seller.

**19.2.16  Making Corrections.** Broker Participants and R.E. Subscribers shall maintain a means (e.g., e-mail address, telephone number) to receive comments about the accuracy of any data or information that is added by or on behalf of Broker Participants and R.E. Subscribers beyond that supplied by the MLS and that relates to a specific property displayed on the IDX site. Broker Participants and R.E. Subscribers shall correct or remove any false data or information relating to a specific property upon receipt of a communication from the Listing Broker or listing agent for that property explaining why the data or information is false. However, the Broker Participants and R.E. Subscribers shall not be obligated to remove or correct any data or information that simply reflects good faith opinion, advice, or professional judgment.

**19.2.17  Compliance.** All IDX sites are subject to ongoing compliance auditing by the AOR/MLS. Changes to an IDX site necessary to cure a violation of MLS Rules must be accomplished within ten (10) calendar days of the transmittal of notice from the AOR/MLS of such violation. Violations may subject a Participant to sanctions as defined in the MLS Citation Policy, including but not limited to the immediate termination of the download agreement to receive or republish the IDX information.

**19.2.18  Notification by Authorized Participants and Subscribers.** Participants and Subscribers partaking in the display of MLS On-Market, Pending and/or Sold/Leased listing information of other Brokers' listings pursuant to Section 19.2 must notify the MLS before displaying said MLS active listing information and must give the MLS direct access as well as allow access for other Participants for purposes of monitoring/ensuring compliance with applicable rules and policies.

**19.2.19  Right to Charge for Download.** The MLS has the right to charge the costs of adding or enhancing its downloading capacity to Participants and Subscribers who request downloading of listing information pursuant to Section 19.2.

**19.2.20  Modifications and Augmentations.** Participants and Subscribers shall not modify or manipulate information relating to other participants listings. Participants and Subscribers may augment their IDX display of MLS data with applicable property information from other sources to appear on the same webpage or display, clearly separated by the data supplied by the MLS. The source(s) of the information must be clearly identified in the immediate proximity to such data. This requirement does not restrict the format of MLS data display or display of fewer than all of the available listings or fewer authorized fields.

**19.2.21  No Display of Offers of Compensation.** Participants and Subscribers shall not display on ay IDX website or application controlled or operated by Participant or Subscriber, any offers of compensation from either a Listing Broker or seller to any Buyer Broker or buyer representative on any property listing that is provided in the IDX data feed, other than an advertisement of potential sharing of compensation on a property subject to an exclusive listing agreement with the displaying Participant only.

**19.3    Virtual Office Websites ("VOW").**

**19.3.1    VOW Definitions.**

a) A Virtual Office Website ("VOW") is a Participant's Internet website, or a feature of a Participant's website, through which the Participant is capable of providing real estate brokerage services to consumers with whom the Participant has first established a broker-consumer relationship (as defined by state law) where the consumer has the opportunity to search MLS Listing Information, subject to the Participant's oversight, supervision, and accountability. A non-principal Broker or sales licensee affiliated with a Participant may, with his or her Participant's consent, operate a VOW. Any VOW of a non-principal broker or sales licensee is subject to the Participant's oversight, supervision, and accountability.

b) As used in Section 19 of these Rules, the term "Participant" includes a Participant's affiliated non-principal Brokers and sales licensees – except when the term is used in the phrases "Participant's consent" and "Participant's oversight, supervision, and accountability". References to "VOW" and "VOWs" include all VOWs, whether operated by a Participant, by a non-principal Broker or sales licensee, or by an Affiliated VOW Partner ("AVP") on behalf of a Participant.

c) "Affiliated VOW Partner" ("AVP") refers to an entity or person designated by a Participant to operate a VOW on behalf of the Participant, subject to the Participant's supervision, accountability and compliance with the VOW Policy. No AVP has independent participation rights in the MLS by virtue of its right to receive information on behalf of a Participant. No AVP has the right to use MLS Listing Information except in connection with operation of a VOW on behalf of one or more Participants. Access by an AVP to MLS Listing Information is derivative of the rights of the Participant on whose behalf the AVP operates a VOW.

d) As used in Section 19 of these Rules, the term "MLS Listing Information" refers to active listing information and non-confidential pending and sold data provided

- 47 -

by Participants to the MLS and aggregated and distributed by the MLS to Participants.

### 19.3.2   VOW Operating Parameters.

a) The right of a Participant's VOW to display MLS Listing Information is limited to that supplied by the MLS(s) in which the Participant has participatory rights. However, a Participant with offices participating in different MLSs may operate a master website with links to the VOWs of the other offices.

b) Subject to the provisions of the VOW Policy and these Rules, a Participant's VOW, including any VOW operated on behalf of a Participant by an AVP, may provide other features, information, or functions, e.g., Internet Data Exchange ("IDX").

c) Except as otherwise provided in the VOW Policy or in these Rules, a Participant need not obtain separate permission from other MLS Participants whose listings will be displayed on the Participant's VOW.

### 19.3.3   VOW Registrant Access Requirements.

a) Before permitting any consumer to search for or retrieve any MLS Listing Information on his or her VOW, the Participant must take each of the following steps:

   i. The Participant must first establish with that consumer a lawful broker-consumer relationship (as defined by state law), including completion of all actions required by state law in connection with providing real estate brokerage services to clients and customers (hereinafter "Registrants"). Such actions shall include, but are not limited to, satisfying all applicable agency, non-agency, and other disclosure obligations, and execution of any required agreements.

   ii. The Participant must obtain the name of, and a valid email address for, each Registrant. The Participant must send an email to the address provided by the Registrant confirming that the Registrant has agreed to the Terms of Use (described in subsection (d) below). The Participant must verify that the email address provided by the Registrant is valid and that the Registrant has agreed to the Terms of Use.

   iii. The Participant must require each Registrant to have a user name and a password, the combination of which is different from those of all other Registrants on the VOW. The Participant may, at his or her option, supply the user name and password or may allow the Registrant to establish its user name and password. The Participant must also assure that any email address is associated with only one user name and password.

b) The Participant must assure that each Registrant's password expires on a date certain but may provide for renewal of the password. The Participant must at all times maintain a record of the name, email address, user name, and current password of each Registrant. The Participant must keep such records for not less than 180 days after the expiration of the validity of the Registrant's password.

c) If the MLS has reason to believe that a Participant's VOW has caused or permitted a breach in the security of MLS Listing Information or a violation of

MLS rules, the Participant shall, upon request of the MLS, provide the name, email address, user name, and current password, of any Registrant suspected of involvement in the breach or violation. The Participant shall also, if requested by the MLS, provide an audit trail of activity by any such Registrant.

d)  The Participant shall require each Registrant to review, and affirmatively to express agreement (by mouse click or otherwise) to, a "Terms of Use" provision that provides at least the following:

　　i.  That the Registrant acknowledges entering into a lawful consumer-broker relationship with the Participant;

　　ii.  That all information obtained by the Registrant from the VOW is intended only for the Registrant's personal, non-commercial use;

　　iii.  That the Registrant has a bona fide interest in the purchase, sale, or lease of real estate of the type being offered through the VOW;

　　iv.  That the Registrant will not copy, redistribute, or retransmit any of the information provided except in connection with the Registrant's consideration of the purchase or sale of an individual property;

　　v.  That the Registrant acknowledges the MLS's ownership of, and the validity of the MLS's copyright in, the MLS database.

e)  The Terms of Use Agreement may not impose a financial obligation on the Registrant or create any representation agreement between the Registrant and the Participant. Any agreement entered into at any time between the Participant and Registrant imposing a financial obligation on the Registrant or creating representation of the Registrant by the Participant must be established separately from the Terms of Use, must be prominently labeled as such, and may not be accepted solely by mouse click.

f)  The Terms of Use Agreement shall also expressly authorize the MLS, and other MLS Participants or their duly authorized representatives, to access the VOW for the purposes of verifying compliance with MLS rules and monitoring display of Participants' listings by the VOW. The Agreement may also include such other provisions as may be agreed to between the Participant and the Registrant.

**19.3.4**　**VOW Contact Requirements.** A Participant's VOW must prominently display an email address, telephone number, or specific identification of another mode of communication (e.g., live chat) by which a consumer can contact the Participant to ask questions, or get more information, about any property displayed on the VOW. The Participant, or a non-principal broker or sales licensee licensed with the Participant, must be willing and able to respond knowledgeably to inquiries from Registrants about properties within the market area served by that Participant and displayed on the VOW.

**19.3.5**　**VOW Data Security.** A Participant's VOW must employ reasonable efforts to monitor for, and prevent, misappropriation, "scraping", and other unauthorized use of MLS Listing Information. A Participant's VOW shall utilize appropriate security protection such as firewalls as long as this requirement does not impose security obligations greater than those employed concurrently by the MLS.

**19.3.6**　**VOW Listing Display Restrictions.**

a)  A Participant's VOW shall not display listings or property addresses of any seller who has affirmatively directed the Listing Broker to withhold the seller's listing or property address from display on the Internet. The Listing Broker shall communicate to the MLS that the seller has elected not to permit display of the listing or property address on the Internet. Notwithstanding the foregoing, a Participant who operates a VOW may provide to consumers via other delivery mechanisms, such as email, fax, or otherwise, the listings of sellers who have determined not to have the listing for their property displayed on the Internet.

b)  A Participant who lists a property for a seller who has elected not to have the property listing or the property address displayed on the Internet shall cause the seller to execute a document that includes the following (or a substantially similar) provision:

**Seller Opt-Out Form**

1.  Please check either Option a or Option b

    a.  [  ] I have advised my broker or sales agent that I do not want the listed property to be displayed on the Internet.

    OR

    b.  [  ] I have advised my broker or sales agent that I do not want the address of the listed property to be displayed on the Internet.

2.  I understand and acknowledge that, if I have selected option a, consumers who conduct searches for listings on the Internet will not see information about the listed property in response to their search.

    _____

    Initials of Seller

c)  The Participant shall retain such forms for at least one year from the date they are signed, or one year from the date the listing goes off the market, whichever is greater.

### 19.3.7  Posting Consumer Comments and Automated Value Estimate.

a)  Subject to subsection (b), a Participant's VOW may allow third-parties:

    i.  to write comments or reviews about particular listings or display a hyperlink to such comments or reviews in immediate conjunction with particular listings, or

    ii.  display an automated estimate of the market value of the listing (or hyperlink to such estimate) in immediate conjunction with the listing.

b)  Notwithstanding the foregoing, at the request of a seller the Participant shall disable or discontinue either or both of those features described in subsection (a) as to any listing of the seller. The Listing Broker or agent shall communicate to the MLS that the seller has elected to have one or both of these features disabled or discontinued on all Participants' websites. Subject to the foregoing and to Section 19.8, a Participant's VOW may communicate the Participant's professional judgment concerning any listing. A Participant's VOW may notify its customers that a particular feature has been disabled "at the request of the

seller."

**19.3.8    Correction of VOW Listing Information.** A Participant's VOW shall maintain a means (e.g., email address, telephone number) to receive comments from the Listing Broker about the accuracy of any information that is added by or on behalf of the Participant beyond that supplied by the MLS and that relates to a specific property displayed on the VOW. The Participant shall correct or remove any false information relating to a specific property within 2 days following receipt of a communication from the Listing Broker explaining why the data or information is false. The Participant shall not, however, be obligated to correct or remove any data or information that simply reflects good faith opinion, advice, or professional judgment.

**19.3.9    VOW Mandatory Listing Refresh.** A Participant shall cause the MLS Listing Information available on its VOW to be refreshed at least once every three (3) days.

**19.3.10    VOW MLS Listing Distribution Limitations.** Except as provided in these rules, the NATIONAL ASSOCIATION OF REALTORS® VOW Policy, or any other applicable MLS rules or policies, no Participant shall distribute, provide, or make accessible any portion of the MLS Listing Information to any person or entity.

**19.3.11    VOW Privacy Policy.** A Participant's VOW must display the Participant's privacy policy informing Registrants of all of the ways in which information that they provide may be used.

**19.3.12    VOW Selective Listing Display.** A Participant's VOW may exclude listings from display based only on objective criteria, including, but not limited to, factors such as geography, list price, type of property, and whether the listing broker is a REALTOR®.

**19.3.13    Notification of MLS of Intent to Operate a VOW.** A Participant who intends to operate a VOW to display MLS Listing Information must notify the MLS of its intention to establish a VOW and must make the VOW readily accessible to the MLS and to all MLS Participants for purposes of verifying compliance with these Rules, the VOW Policy, and any other applicable MLS rules or policies.

**19.3.14    Operation of Multiple VOWs.** A Participant may operate more than one VOW himself or herself or through an AVP. A Participant who operates his or her own VOW may contract with an AVP to have the AVP operate other VOWs on his or her behalf. However, any VOW operated on behalf of a Participant by an AVP is subject to the supervision and accountability of the Participant.

**19.3.15    VOW Data Display Limitations.** NOT ADOPTED.

**19.3.16    Changes to Listing Content.** A Participant shall not change the content of any MLS Listing Information that is displayed on a VOW from the content as it is provided in the MLS. The Participant may, however, augment MLS Listing Information with additional information not otherwise prohibited by these Rules or by other applicable

MLS rules or policies so long as the source of such other information is clearly identified. This rule does not restrict the format of display of MLS Listing Information on VOWs or the display on VOWs of fewer than all of the listings or fewer than all of the authorized information fields.

19.3.17   **Listing Accuracy Disclaimer.** A Participant shall cause to be placed on his or her VOW in a manner readily visible to consumers but not less than 7pt type, the following, or substantially similar notice: "Based on information from California Regional Multiple Listing Service, Inc. as of [date the AOR/MLS data was obtained] and/or other sources. All data, including all measurements and calculations of area, is obtained from various sources and has not been, and will not be, verified by broker or MLS. All information should be independently reviewed and verified for accuracy. Properties may or may not be listed by the office/agent presenting the information."

19.3.18   **Listing Broker or Agent Identification.** NOT ADOPTED.

19.3.19   **Listing Search Result Limitation.** A Participant shall limit the number of listings that a Registrant may view, retrieve, or download to not more than 500 current listings and not more than 500 sold listings in response to any inquiry.

19.3.20   **Mandatory Registrant Password Change.** A Participant shall require that Registrants' passwords be reconfirmed or changed every 90 days.

19.3.21   **VOW Co-Branding and Advertising.** A Participant may display advertising and the identification of other entities ("co-branding') on any VOW the Participant operates or that is operated on his or her behalf. However, a Participant may not display on any such VOW deceptive or misleading advertising or co-branding. For purposes of this Section, co-branding will be presumed not to be deceptive or misleading if the Participant's logo and contact information (or that of at least one Participant, in the case of a VOW established and operated on behalf of more than one Participant) is displayed in immediate conjunction with that of every other party, and the logo and contact information of all Participants displayed on the VOW is as large as the logo of the AVP and larger than that of any third party.

19.3.22   **Identifying Listing Source.** A Participant shall cause any listing displayed on his or her VOW that is obtained from other sources, including from another MLS or from a broker not participating in the MLS, to identify the source of the listing.

19.3.23   **Separate Source Listing Search.** A Participant shall cause any listing displayed on his or her VOW obtained from other sources, including from another MLS or from a broker not participating in the MLS, to be searched separately from listings in the MLS.

19.3.24   **MLS Licensing Agreement for VOW.** Participants and the AVPs operating VOWs on their behalf must execute the license agreement required by the MLS.

19.3.25   **Seller's Direction to Withhold from Internet.** Where a seller affirmatively directs their listing broker to withhold either the seller's listing or the address of the seller's

listing from display on the Internet, a copy of the seller's affirmative direction shall be provided to the MLS within 2 days.

**19.3.26 No Display of Offers of Compensation.** Participants and Subscribers shall not display on any VOW they control or for which they receive a data feed, any offers of compensation from either a Listing Broker or seller to any Buyer Broker or buyer representative on any property listing that is provided in the VOW data feed, other than an advertisement of potential sharing of compensation on a property subject to an exclusive listing agreement with the displaying Participant only.

## 20.    REJECTION OF APPLICATION.

In the event an application for participation in the MLS, whether as a licensee or as a clerical support, is rejected by the Association, the applicant, and his or her broker, if any, will be promptly notified in writing of the reason for the rejection. The broker shall have the right to respond in writing, and to request a hearing before a panel selected from the Board of Directors. The hearing will be held in accordance with rules adopted from time to time by the Board of Directors, which will make provision for adequate notice of the time and place of the hearing and shall provide that the parties involved shall have the right to appear and present evidence, both oral and written, and be represented by legal counsel.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **SUPPLEMENTAL DECLARATION OF GREG BINGHAM RE MARKETING EFFORTS AFTER VACATING MARCH 4, 2025 AUCTION RESULTS AND SCHEDULING NEW AUCTION RE MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081 (DOCKET NO. 569)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 20, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Christopher L Blank    chris@chrisblanklaw.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Jeffrey I Golden (TR)    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Eric P Israel    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- Shantal Malmed    , cheryl.caldwell@gmlaw.com
- Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- Laila Rais    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **March 20, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 20, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                     **F 9013-3.1.PROOF.SERVICE**

1

None.

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is
3    true and correct.

4    March 20, 2025              D. Woo                          /s/ D. Woo
      _____
5    *Date*                          *Type Name*                     *Signature*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-8
Case 8:21-bk-11710-SC
Central District of California
Santa Ana
Thu Mar 20 14:12:38 PDT 2025

Christopher L. Blank, Attorney at Law, PC
2973 Harbor Blvd
Box 506
COSTA MESA, CA 92626-3912

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA  92660-6377

Houser Bros. Co. dba Rancho Del Rey Mobile H
c/o Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620-3663

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034-2618

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

16222 MONTEREY LANE UNIT 376
HUNTINGTON BEACH, CA 92649-2258

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

BS Investors
Robert P. Warmington C/o
Gorden May Grant, Genovese & Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

County of Orange Treasurer-Tax Collector
P.O. Box 4515
Santa Ana CA 92702-4515

Danning, Gill, Israel & Krasnoff, LLP
1901 Ave of The Stars, Ste 450
Los Angeles CA 90067-6006

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7907

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA 92688-8502

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614-8502

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Houser Bros. Co.
DBA Rancho Del Rey Estates
16222 Monterey Ln
Huntington Beachr CA 92649-6214

Houser Bros. Co.dba Rancho Del
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647-6876

Houser Brothers Co.
dba Rancho Del Rey Mobilehome Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647-6876

Huntington Beach Gables HOA
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
Hllls, CA 92653-7907

Huntington Beach Gables Homeowners Associati
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131-1655

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649-2277

Huntington Hobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91773-4045

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649-2277

Huntington Mobile Home Investments LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Hyundai Capital America
PO BOX 269011
Plano, TX 75026-9011

Hyundal Capital America
PO BOX 269011
Plano, TX 75026-9011

Internal Revenue Service
PO Box 7346
Philadelphia, 19101-7346

Internal Revenue Service Insolvency
PO BOX 7346
Philadelphia, PA 19101-7346

J-Sandcastle Co., LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649-2258

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503-6428


J-pad, LLC
2702 N Gaff Street
Orange, CA 92865-2417

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 104
Santa Ana, CA 92701-5017

Jamie Lynn Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649-2258


Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649-2278

(p)JANINE JASSO
PO BOX 370161
EL PASO TX 79937-0161

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005


Janine Jasso, Jennifer Paulin, Lori Burrett
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614-6840

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286


Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728-0815

Lee Gragnano
16062 Warmington Ave.
Huntington Beacha CA 92649-2285

Lee Gragrano
16062 Warmington Ave.
Huntington Beach, CA 92649-2285


Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Linda Jean ''Lindy'' Bec
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649-2297


Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649-2281


Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649-2293

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 500
Beverly Hills, CA 90210-5530


Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653-7907

Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239


People of the St of CA
8141 13th St
Westminster CA 92683-4576

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503-5000

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649-2288

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506-4267

Randell Nickel
c/o Mark Mellor, Esq. Ste. 220 6800
Indiana Ave.
Riverside, CA 92506

Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228


Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612-2559


S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92679-4738

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679-4738


Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653-7907

Steven A. Fink
13 Corporate Plaza Ste. 150
Newport Beach, CA 92660-7919

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701-3907


Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626-4607

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649


Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131-1669

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 100
San Diego, CA 92131


The Huntington Beach Gables Homeowners Assoc
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612-7119

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Theodore R ''Ted'' Phill
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005


(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606-6462

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675


United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 300
Mission Viejo, CA 92691-7359

qennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286


zanine Jasso
16025 Harmington Lane
Huntington Beacha CA 92649-2278

Christopher L Blank
Christopher L Blank, Esq
2973 Harbor Blvd #506
92626
Costa Mesa, CA 92626-3912

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

Jamie Lynn Gallian                    Jeffrey I Golden (TR)              William Friedman
16222 Monterey Ln Unit 376            Golden Goodrich LLP               Coldwell Banker Realty
Huntington Beach, CA 92649-2258       3070 Bristol Street, Suite 640   840 Newport Center Dr Ste 100
                                      Costa Mesa, CA 92626-3067        Newport Beach, CA 92660-6377

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Janine Jasso                          US Bank                          (d)US Bank NA
P.O. Box 370161                       P O Box 5229                     PO Box 64799
El Paso, TX 79937                     Cincinnati OH 45201-5229         Saint Paul, MN 55164

(d)Janine Jasso
PO Box 370161
El Paso, CA 79937

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF                       (u)The Huntington Beach Gables Homeowners Ass   (u)Michael Chulak-tunknown)
                                                                                      Mchulak@MTcLaw.com

(d)People of the St of CA             End of Label Matrix
8141 13th Street                      Mailable recipients    92
Westminster, CA 92683-4576            Bypassed recipients     4
                                      Total                  96