CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:    chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) BK Case No. 8:21-bk-11710-SC |
| | ) |
| | ) Chapter 7 |
| | ) |
| JAMIE LYNN GALLIAN | ) DEBTOR'S EVIDENCE AND ARGUMENT |
| | ) IN OPPOSITION TO PROPOSED FINDING |
| | ) OF GOOD FAITH PURCHASE |
| Debtor. | ) |
| | ) Date: April 10, 2025 |
| | ) Time: 9:30 AM |
| | ) Ctrm: 5C In-person |
| | ) |
| | ) |
| | ) |

TO THE COURT AND INTERESTED PARTIES: Debtor Jamie Lynn Gallian hereby presents evidence and argument in opposition to Trustee Jeffrey Golden's Request for Finding of Good Faith Purchase [Docket 566] as follows.

Gallian has requested and submitted compelling argument and evidence, as well as proposed findings of fact and conclusions of law demonstrating that the Court should deny Trustee Golden's Motion for Approval of Sale of her homestead. Gallian has also indicated that if the Court is inclined to grant that Motion, that the Court stay its order to allow Gallian to pursue an effective appeal. If the Court denies the Trustee's sale motion, or grants the sale motion but also grants a stay pending appeal, any finding of good faith becomes moot. However, if the Court grants the sale motion, and denies the sale motion Gallian opposes Golden's request for a finding that a sale to Mr. Peplin be found in good faith pursuant to 11

1

1  U.S.C. Section 363(m).

2      At the hearing that was held on March 4, 2025, after announcing that the Court was
3  taking the sale motion under submission, rather than immediately granting or denying that
4  motion, the Court had the Trustee conduct an auction involving the original stalking horse
5  bidder, Galaxy Homes and a competing bidder, Mr. Peplin.  In that auction, Peplin reiterated his
6  overbid of $276,000.00, and Galaxy indicated that it was content to allow Mr. Peplin to purchase
7  the Property at that price.  That is, Galaxy refused to overbid Peplin or further participate in the
8  auction.  Peplin's offer was accepted, conditioned on the Court approving the Trustee's sale
9  motion.  At that hearing, the Trustee requested a finding that Mr. Peplin was a good faith
10 purchaser entitled to the protections of 11 U.S.C. Section 363(m).  Gallian objected and the
11 Court offered the Trustee to submit evidence to support the good faith finding.

12     The Trustee submitted a declaration from Mr. Peplin explaining that he was a debtor in
13 bankruptcy, that the Trustee's broker had been involved in the sale of his homestead in his
14 bankruptcy, that he needed to reinvest his exempt proceeds from that sale in another homestead
15 in order to maintain an exemption in those funds.  He further explained that he was represented
16 in his efforts to purchase Gallian's homestead by David Guarino and that Guarino is a licensed
17 real estate agent employed by stalking horse bidder Galaxy Homes.

18     Gallian filed further opposition to the Trustee's request for a good faith finding arguing
19 that having hired the stalking horse bidder as his broker, he had chilled any chance for a
20 competitive bidding process at the auction that took place on March 4, 2025.  Apparently
21 recognizing that evidence supplied by the Trustee regarding the auction that took place on March
22 4 could not support a finding of good faith, and still holding the grant or denial of the Trustee's
23 sale motion under submission, the Court vacated the March 4 auction and ordered a redo to take
24 place on March 27.  The Court also offered/orderd the Trustee, Mr. Peplin and his broker the to
25 submit further evidence regarding his employment of Galaxy as his broker and other details, but
26 did not offer Gallian the same opportunity to submit evidence or argument in opposition to a
27 good faith finding.

28     The Trustee submitted an additional declaration from his broker, Coldwell Banker, an

2

additional declaration from Mr. Peplin, and an additional declaration from Mr. Peplin's "new" broker describing what transpired before the initial auction on March 4, and between March 4 and the submission of the additional declarations. That additional evidence indicates that Coldwell Banker did not represent Peplin, something that was already obvious. That additional evidence also indicated that Peplin hired Guarino apparently without a written representation agreement. That additional evidence also indicated that Peplin had dismissed Guarino and hired another broker who was not employed by Galaxy. The new broker's declaration indicated that she had a written representation agreement, but it was contingent on termination of Peplin's contract with Guarino and Galaxy. No writing was produced indicating that Galaxy or Guarino had accepted Peplin's termination of their agreement. Therefore, it is unclear whether Peplin may still owe Guarino and Galaxy compensation if he ultimately purchases Gallian's homestead, nor is it clear that the new broker has actually been hired by Peplin to pursue the purchase or what if any services the new broker has rendered to Peplin or anyone else connected to the sale.

Gallian contends that the evidence already before the Court conclusively proves that Peplin's offer to purchase Gallian's homestead does NOT qualify as a good faith purchase. Gallian has argued that because Galaxy was both the stalking horse bidder and the broker for Mr. Peplin as competing bidder the Trustee's proposed sale to Peplin is irretrievably imbued with bad faith. The Court's attempt to overcome this problem by vacating the original auction and holding another auction does not fix the problem.

The purpose of holding an auction is to motivate potential purchasers to bid up the price in the hope of generating the best price for the property being auctioned. It is unrealistic to expect spirited bidding where the competing bidder's broker is the only other cash buyer at the auction. Galaxy may make money on this transaction whether they purchase the property, or Mr. Peplin purchases the property. More importantly, Galaxy has a fiduciary duty to avoid harming their client, Mr. Peplin, by bidding up the price. That duty did not go away just because Peplin now claims he is no longer represented by Guarino. It's not just that Guarino represented both stalking horse bidder and overbidder, it is that Guarino is employed by the stalking horse bidder. As such, when he agreed to represent the overbidder, he created a fiduciary duty owed by the

stalking horse bidder not to harm the overbidder. The only way to do that would be to back out of the bidding. Conducting a second auction did not free the stalking horse bidder from its obligation not to harm Peplin. Peplin's dismissal of Guarino did not free the stalking horse bidder from its obligation not to harm Peplin.

A California real estate broker has a fiduciary duty to their client, which includes the obligation of utmost care, integrity, honesty, and loyalty in dealings with the client. *Lazar v. Bishop*, 107 Cal.App.5th 668 (2024)). This fiduciary duty precludes the broker from assuming a position adverse to that of their principal unless the principal consents. *Timmsen v. Forest E. Olson, Inc.*, 6 Cal.App.3d 860 (1970). Specifically, a broker representing a seller may breach their duty of honesty and fair dealing by secretly competing with the purchaser. *Nguyen v. Scott*, 206 Cal.App.3d 725 (1988). This duty of loyalty and undivided service means that the broker must act in the highest good faith towards their principal and disclose all material facts concerning the transaction that might affect the principal's decision. *Jorgensen v. Beach 'N' Bay Realty, Inc.*, 125 Cal.App.3d 155 (1981), *Montoya v. McLeod*, 176 Cal.App.3d 57 (1985). Therefore, a real estate broker in California has a fiduciary duty not to bid against their client, as doing so would constitute a position adverse to the client's interests and could be seen as a breach of the duty of loyalty and good faith. *Timmsen*.

Common sense and decades of experience possessed by this Court and all counsel involved also show that this sale has been infected by bad faith. When has a stalking horse bidder ever made an initial bid that was the maximum price the stalking horse bidder was willing to pay. Overbidding only required $1,000 increments. Can the Trustee seriously argue that $275k was the most that Galaxy was willing to pay for the Debtor's homestead? Can the Court seriously believe that if someone unrelated to Galaxy had offered $276k, that Galaxy would not even consider bidding $277k? The fact that no one on behalf of stalking horse bidder and dual broker Galaxy showed up for the March 27 hearing is additional evidence suggesting bad faith

Prior to the hearing, Gallian was not offered the opportunity to submit evidence or argument regarding the declarations submitted by the Trustee. Gallian was not offered the opportunity to cross-examine Peplin or any of the declarants. Trustee's counsel's suggestion that

Gallian could have conducted discovery between the submission of the declarations and the second auction on March 27 is ridiculous.  The Court's suggestion that Gallian's counsel could have submitted evidence of bad faith absent the Court's invitation to do so, and the tone and tenor of the Court's comments toward Gallian's counsel suggest that the Court bears some animosity toward Gallian and her counsel.  The Court's announcement that it was going to make a finding of good faith before giving Gallian's counsel an adequate opportunity to finish making his arguments to the Court or submit contrary evidence and argument in writing suggests that the Court may have been inclined to prejudge the issues presented.  Holding an evidentiary hearing does not fix those problems.  Rather, the Court must take a fresh open-minded look at the evidence already before the Court.  Upon doing so, Gallian suggests that making a finding of good faith would be manifest and reversible error.

Gallian does not intend to submit any affirmative testimony regarding the question of good faith.  Rather, Gallian intends to cross-examine the witnesses presented by the Trustee and provide impeachment evidence and rebuttal for any false testimony they may offer.  In that regard, Gallian points out that the Trustee has argued, but not submitted any direct evidence that Peplin actually qualifies to be a tenant at the Rancho Del Rey mobile home park.  On the contrary, the rules and regulations of the Park indicate that they will not accept anyone who has filed bankruptcy within the last five years as a tenant.  Mr. Peplin's bankruptcy was filed in 2024.  He does not appear to qualify as a tenant and therefore fails to qualify as a purchaser of Gallian's homestead.  See, Exhibit 1 attached.

Dated:  April 4, 2025           CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC

By:  /S/*Christopher L. Blank*
Christopher L. Blank, Attorney for Debtor Jamie Lynn Gallian

5