1  ERIC P. ISRAEL, #132426
   EPI@LNBYG.COM
2  LEVENE, NEALE, BENDER, YOO &
3  GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
4  Los Angeles, CA 90034
   Telephone: 310-229-1234
5  Fascimile:  310-229-1244

6  Attorneys for JEFFREY I. GOLDEN, Trustee

7
   D. EDWARD HAYS, #162507
8  ehays@marshackhays.com
   BRADFORD N. BARNHARDT, #328705
9  bbarnhardt@marshackhays.com
   MARSHACK HAYS WOOD LLP
10 870 Roosevelt
11 Irvine, CA 92620
   Telephone: (949) 333-7777
12 Facsimile: (949) 333-7778

13 Attorneys for Creditor,
   HOUSER BROS. CO. dba RANCHO DEL
14 REY MOBILE HOME ESTATES

15              UNITED STATES BANKRUPTCY COURT
16
        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION
17

18

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-SC |
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | JOINT REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN |
| | Date:   April 10, 2025<br>Time:  9:30 a.m.<br>Ctrm:  5C |

1

# TABLE OF CONTENTS

1.    Summary of Argument ...................................................................................2

2.    Factual Background .......................................................................................3

3.    List of Witnesses...........................................................................................8

4.    Legal Argument .............................................................................................8

    A.    Debtor cannot rebut the overwhelming evidence supporting a good faith
           purchaser finding. ..............................................................................8

    B.    Debtor lacks standing to challenge the § 363(m) finding on the basis of
           overbids.............................................................................................12

    C.    Houser Bros. has approved Mr. Peplin and his wife as park tenants....................15

5.    Conclusion ...................................................................................................16

Declaration of Chris Houser ....................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ctr. for Biological Diversity v. Kempthorne*,
   588 F.3d 701, 707 (9th Cir. 2009) ................................................................... 13

*Cty. of Imperial Treasurer-Tax Collector v. RW Meridian, LLC (In re RW Meridian LLC)*,
   2017 Bankr. LEXIS 4172, at *4 (B.A.P. 9th Cir. Dec. 6, 2017) .................................... 13

*Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*,
   177 F.3d 774, 778 n.2 (9th Cir. 1999) ................................................................ 13

*Ewell v. Diebert (In re Ewell)*,
   958 F.2d 276, 281 (9th Cir. 1992) ...................................................................... 9

i

*Filtercorp*,

    163 F.3d at 577 ................................................................................................. 9

*In re Fondiller*,

    707 F.2d 441, 442 (9th Cir. 1983) .................................................................... 13

*In re Peplin*,

    Case No. 2:24-bk-13645-DS, ECF No. 73 (Bankr. C.D. Cal. Aug. 19, 2024) .............................. 16

*In re Teligent*,

    417 B.R. at 210 ................................................................................................. 13

*In re Wilde Horse Enterprises, Inc.*,

    136 B.R. 830, 842 (Bankr. C.D. Cal. 1991).................................................... 9

*In re Zhang*,

    Case No. 6:22-bk-10523-SY, ECF No. 166 (Bankr. C.D. Cal. Feb. 13, 2024)............................. 11

*Lahijani*,

    325 B.R. at 288-89 ........................................................................................... 14

*Licata v. Coan*,

    2015 U.S. Dist. LEXIS 160333, at *14-15 (D. Conn. Sept. 22, 2015)........................ 13

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555, 560 (1992).................................................................................. 12

*Nev. Bus. Credit, LLC v. Kavanaugh (In re Golden Empire Air Rescue, Inc.)*,

    2007 Bankr.LEXIS 4880, at *21-22 (B.A.P. 9th Cir. Oct. 25, 2007)........................... 14

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*,

    163 F.3d 570, 577 (9th Cir. 1998) .................................................................... 8

*Republic of the Marsh. Is. v. United States*,

865 F.3d 1187, 1199 (9th Cir. 2017) .................................................................... 12

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*,

    417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009).................................................... 12

ii

*Thomas v. Namba (In re Thomas)*,

   287 B.R. 782, 785 (B.A.P. 9th Cir. 2002).......................................................................... 9

*United States v. 7501 N.W. 210th St.*,

   437 Fed.Appx. 754, 757-58 (10th Cir. 2011) .................................................................. 13

*Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*,

   450 B.R. 897, 907 n.11 (B.A.P. 9th Cir. 2011) .............................................................. 13

*Warth v. Seldin*,

   422 U.S. 490, 498 (1975)............................................................................................ 12, 13

*Wood v. Borland (In re Borland)*,

   2009 Bankr. LEXIS 5648, at *16-17 (Bankr. E.D. Cal. July 23, 2009) ......................... 11

**Statutes**

11 U.S.C. § 363(b) ..................................................................................................................... 8

11 U.S.C. § 363(m)...................................................................................................... 11, 15, 16

REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION

4880-1284-8131,v.1

1  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2  THE DEBTOR AND HER COUNSEL OF RECORD, AND ALL INTERESTED PARTIES:

3        Jeffrey I. Golden, solely in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy

4  estate ("Estate") of Jamie Lynn Gallian ("Debtor"), and Creditor, Houser Bros. Co., dba Rancho Del

5  Rey Mobile Home Estates ("Houser Bros."), and submit this Joint Reply ("Reply") in Support of the

6  11 U.S.C. § 363(m) Finding Re: Gregory A. Peplin ("Mr. Peplin").

7  **1.    Summary of Argument**

8        A good faith buyer is one who buys in good faith and for value. There is no dispute that Mr.

9  Peplin is buying for value; he submitted a $276,000.00 all cash, no contingency offer. Further, Mr.

10 Peplin is buying in good faith. He submitted the highest offer received after months of marketing

11 and had severed all ties with the stalking horse bidder by the time of the March 27, 2025, auction.

12 While Debtor suggests that the stalking horse bidder did not engage in a bidding war because of

13 collusion with Mr. Peplin, the facts are that the stalking horse bidder did not want to tie up additional

14 capital in an investment where the debtor had already filed a premature motion for stay pending

15 appeal *before the initial auction had even occurred*. Plus, the stalking horse bidder could have closed

16 on the property and re-sold it to Peplin for a profit but instead stepped aside to allow the estate to

17 receive the higher price.

18       Debtor also lacks standing to challenge a good faith finding because she lacks a pecuniary

19 interest in the outcome – in other words, her homestead is out of the money based on the fraudulent

20 lien she put against the property and that the trustee avoided, recovered, and preserved. In

21 bankruptcy, Chapter 7 debtors generally lack a sufficient pecuniary interest in estate administration

22 to create standing to object to or appeal from orders of the bankruptcy court. Debtor makes no

23 showing that the value of the Property or that any other sales or overbid process would yield

24 sufficient proceeds to exceed the Trustee's avoided lien against the property, which now exceeds

25 $304,000.00.

26

27                                            2

28 4880-1284-8131,v.1

1    Finally, Debtor's argument regarding Houser Bros.'s tenant approval procedures conflates

2   two totally separate issues: (1) the § 363(m) good faith purchaser standard to sell the manufactured

3   home; and (2) Houser Bros.'s internal policy for approval of applicants to lease the underlying

4   mobilehome park space. The evidence produced by the Debtor was the policy in effect in 2019. But,

5   Houser Bros. has changed its policy since that time. Under its current policy, Houser Bros. has

6   approved Mr. Peplin and his wife. In short, Mr. Peplin is a good faith purchaser that tendered the

7   highest price after months of marketing and his application to lease in the park has been approved.

8    For the reasons set forth in this brief, along with the entirety of the record in this case, Houser

9   Bros. and the Trustee jointly request that the Court find Mr. Peplin to be a good faith purchaser for

10  purposes of 11 U.S.C. § 363(m).

11  **2.    Factual Background**

12    On July 1, 2024, the Trustee filed an "Application to Employ Real Estate Broker Coldwell

13  Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and

14  328" ("2024 Employment App") regarding the mobilehome located at 16222 Monterey Lane, Space

15  376, Huntington Beach, CA 92649 ("Property"). Docket No. 395.

16    On September 5, 2024, the Court entered an order granting the 2024 Employment App.

17  Docket No. 431.

18    On or about October 24, 2024, the Trustee's real estate agent, Greg Bingham ("Mr.

19  Bingham") of Coldwell Banker Realty, listed the Property. Docket No. 539 at 30 (Declaration of

20  Greg Bingham, ¶ 5). The marketing that Mr. Bingham did for the Property included: (a) listing the

21  Property in the Multiple Listing Service; (b) sending an email blast to approximately 1,100 real

22  estate agents working in the area; (c) advertising the Property on third-party websites such as Zillow,

23  Trulia, and Realtor.com; (d) sending direct mail to targeted residents in the area; (e) contacting all

24  active buyers agents in the mobilehome communities and neighboring senior residential

25  neighborhoods; and (f) placing targeted advertising on social media, such as Facebook and

26  Instagram. *Id.* (Declaration of Greg Bingham, ¶ 6).

27

28  4880-1284-8131,v.1

In marketing the Property, the Trustee experienced periodic interference from, and delays caused by, the Debtor. Docket No. 539 at 28 (Declaration of Jeffrey I. Golden in support of the Sale Motion, ¶ 8). This interference included:

(1) On December 13, 2024, the Debtor sent an email on which the Trustee was copied, advising: "Gentlemen, I am making arrangements to remove the 2014 Skyline Manufactured Home from the Rancho Del Rey Park and will inform you where it will be stored." *See* Docket No. 438 at 23 (Exhibit 1 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

(2) On December 13, 2024, the Trustee was copied on a second email from the Debtor indicating: "Please accept this as Notice the home will be removed from the park as quickly as possible to avoid accruing any further accrual of rent." *See* Docket No. 438 at 26 (Exhibit 2 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

(3) On December 17, 2024, the Trustee was copied on an email in which the Debtor advised: "In keeping with the spirit of the holidays, I respectfully request any Home Inspections and Termite Inspections be continued after January 2, 2025." *See* Docket No. 438 at 28 (Exhibit 3 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

(4) On or about January 1, 2025, the Trustee was copied on an email in which the Debtor advised: "I came home sick with the flu from work. Fever with severe headache and body aches and bronchitis. I will be in bed resting due to the severe pain and migraine headaches. Please inform your broker of the circumstances." *See* Docket No. 438 at 30 (Exhibit 4 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

Despite these delays, Mr. Bingham and his team held four accompanied buyer tours of the Property. Docket No. 539 at 31 (Declaration of Greg Bingham, ¶ 8). As of January 31, 2025, the Trustee had received one offer for the Property: a $275,000.00 offer, subject to overbid, from Galaxy Homes, LLC ("Galaxy"). Docket No. 539 at 27- 28 (Declaration of Jeffrey I. Golden, ¶¶ 4, 8).

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

On January 31, 2025, the Trustee filed:

(1) A "Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance" ("Turnover Motion"), Docket No. 538; and

(2) A "Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption" ("Sale Motion"), Docket No. 539.

On February 13, 2025, Houser Bros. filed a joinder in support of the Turnover Motion, Docket No. 552, and a joinder in support of the Sale Motion, Docket No. 551.

On February 18, 2025, the Debtor substituted in counsel, Docket No. 553, and filed an "Omnibus Opposition to Trustee's Motions to Sell . . . and for Turnover of Property . . . and Houser Joinders," with a supporting "Declaration of Jamie Lynn Gallian" ("2/18 Gallian Declaration"). Docket No. 554.

On February 25, 2025, the Trustee and Houser Bros. filed a joint omnibus reply in support of the Turnover Motion and Sale Motion ("Turnover/Sale Reply"). Docket No. 558.

On February 28, 2025, the Trustee filed a "Supplemental Declaration of Greg Bingham Re Receipt of Overbid . . ." ("2/18 Bingham Declaration"), which indicated that on or about February 26, 2025, Mr. Bingham received an overbid from Mr. Peplin for $276,000.00, for all cash with no contingencies. Docket No. 560 at 2.

On or about March 1, 2025, the Court issued tentative rulings to grant both the Turnover Motion and the Sale Motion, approve the Sale Motion's overbid procedures, and permit the Trustee to conduct an auction.

On March 3, 2025, Debtor filed a "Motion for Stay Pending Appeal of Order Granting Sale and Turnover of Homestead Property" ("Stay Motion"), which she purported to set for hearing on March 4, 2025, at 11:00 a.m.—the same time scheduled for the hearings on the Turnover Motion and Sale Motion.

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

1      On March 4, 2025, at 11:00 a.m., the Court held a hearing on the Turnover Motion and the

2 Sale Motion. *See* Docket No. 564 (audio of hearing). Appearances were as set forth on the record.

3 The Court stated that it would treat the premature Stay Motion as a sur-reply. During the hearing, the

4 Trustee conducted an auction on the sale of the Property, during which Mr. Peplin prevailed with a

5 $276,000.00 all-cash bid to purchase the Property, with no contingencies whatsoever. Also, during

6 the hearing, the Trustee withdrew his request for a waiver of the stay provided by Fed. R. Bankr. P.

7 6004(h).

8      At the conclusion of the hearing, the Court took the Turnover Motion and Stay Motion under

9 submission and requested that each party file and lodge proposed findings of fact and conclusions of

10 law and any supporting good faith declarations by March 7, 2025, at 5:00 p.m.

11      On March 7, 2025:

12   1) Houser Bros. and the Trustee filed and lodged their joint findings of fact and conclusions

13      of law in support of the Turnover Motion and Sale Motion, Docket No. 565;

14   2) Houser Bros. and the Trustee filed a "Declaration of Gregory A. Peplin Re Good Faith

15      Purchaser Finding on Chapter 7 Trustee's Motion to Authorize Sale of Manufactured

16      Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA

17      92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption" ("3/7

18      Peplin Declaration"), Docket No. 566; and

19   3) Debtor filed and lodged her findings of fact and conclusions of law in opposition to the

20      Turnover Motion and Sale Motion, Docket No. 567.

21      On March 12, 2025, Debtor filed an "Opposition to Proposed Finding of Good Faith

22 Purchase." Docket No. 568.

23      On March 13, 2025, the Court entered an "Order Vacating Auction Results from March 4,

24 2025, Hearing and Setting New Auction Date of March 27, 2025." Docket No. 569.

25

26

27

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

28 4880-1284-8131,v.1

On March 20, 2025, the Trustee filed:

1) A "Supplemental Declaration of Gregory A. Peplin Re Court's Order Vacating March 4, 2025, Auction Results and Re-Setting Auction for March 27, 2025" ("3/20 Peplin Declaration"), Docket No. 577; and

2) A "Supplemental Declaration of Greg Bingham Re Marketing Efforts After Vacating March 4, 2025, Auction Results and Scheduling New Auction Re Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081" ("3/20 Bingham Declaration"), Docket No. 578.

On March 24, 2025, the Trustee filed a "Declaration of Lori Alvarez Re Court's Order Vacating March 4, 2025, Auction Results and Re-Setting Auction for March 27, 2025" ("Alvarez Declaration"). Docket No. 580.

On March 25, 2025, Debtor filed a "Compendium of Out of Circuit Cases Re Trustee's Sale Motion," citing *In re Traverse*, 753 F.3d 19 (1st Cir. 2014), and *In re Carmichael*, 439 B.R. 884 (Bankr. D. Kan. 2010).

On March 27, 2025, the Court held a continued hearing on the auction for the Sale Motion. Appearances were as noted on the record. During the auction, Mr. Peplin appeared and prevailed with a $276,000.00 overbid for the Property.

On March 28, 2025, the Court entered an "Order Re: Establishing Evidentiary Hearing for Interested Parties to Provide Further Evidence in Support and Opposition to a Determination of a Section 363(m) Finding with Respect to the Successful Buyer of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081" ("3/28 Order"). Docket No. 585.

On April 4, 2025, Debtor filed her "Evidence and Argument in Opposition to Proposed Finding of Good Faith Purchase." Docket No. 589.

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

4880-1284-8131,v.1

1    Houser and the Trustee file this joint pleading pursuant to the 3/28 Order.

2    **3.    List of Witnesses**

3    The Trustee and Houser Bros. intend to offer the following witnesses in support of the

4    § 363(m) finding:

5    (1) Gregory A. Peplin, the successful overbidder, who will testify regarding the facts as set

6    forth in his declarations submitted in support of the Sale Motion, including his terminated

7    relationship with Galaxy.

8    (2) The Trustee, who will offer rebuttal testimony to Debtor's arguments regarding the good

9    faith purchaser finding.

10    (3) Chris Houser, who will testify regarding Houser Bros.'s requirements for approval of

11    prospective tenants at the mobilehome park, as well as the approval of Mr. Peplin and his

12    wife as tenants.

13    (4) Greg Bingham, who will testify about the facts set forth in his declarations submitted in

14    support of the Sale Motion, including the marketing of the Property.

15    (5) Lori Alvarez, who will testify about the facts set forth in her declaration, including her

16    representation of Mr. Peplin.

17    The Trustee reserves the right to call David Guarino of Galaxy as a witness regarding

18    Galaxy's role in this transaction. The Trustee further reserves the right to question the Debtor as he

19    deems appropriate.

20    **4.    Legal Argument**

21    **A.    Debtor cannot rebut the overwhelming evidence supporting a good**

22    **faith purchaser finding.**

23    "A good faith buyer is one who buys in good faith and for value." *Paulman v. Gateway*

24    *Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998) (internal

25    quotation marks omitted). "[A]n actual finding of good faith is not an essential element for approval

26    of a sale under § 363(b)." *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (B.A.P. 9th Cir.

27    8

28    4880-1284-8131,v.1

1   2002). "Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In*

2   *re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation

3   marks omitted). "Lack of good faith is typically shown by fraud, collusion between the purchaser

4   and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

5   *Filtercorp*, 163 F.3d at 577 (citing *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir.

6   1992)); *see also Thomas*, 287 B.R. at 785.

7          Here, Mr. Peplin is purchasing the Property for value; namely, $276,000.00, all cash, with no

8   contingencies whatsoever. Mr. Peplin tendered the highest and best price after months of marketing.

9          The various declarations submitted by Trustee in support of the Sale Motion as listed above

10  establish that Mr. Peplin is buying the Property in good faith. Specifically, on or about October 24,

11  2024, the Trustee's real estate agent, Mr. Bingham, listed the Property. Docket No. 539 at 30

12  (Declaration of Greg Bingham in support of the Sale Motion, ¶ 5). Despite Debtor's efforts to

13  obstruct the marketing as set forth above, Mr. Bingham continued marketing the Property to the

14  world at large through the date of the second auction conducted on March 27, 2025. *See* Docket No.

15  578 (3/20 Bingham Declaration). During this period exceeding 5 months, Mr. Bingham received two

16  offers: Galaxy's $275,000.00 offer and Mr. Bingham's $276,000.00 overbid.

17         Mr. Peplin submitted his $276,000.00 overbid on or about February 26, 2025. Docket No.

18  560 at 2 (2/28 Bingham Decl. ¶ 5); Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 4). Mr. Peplin learned of

19  this Property through Mr. Bingham, who represented the bankruptcy trustee in selling Mr. Peplin's

20  home in Mr. Peplin's separate bankruptcy case. Docket No. 560 at 2 (2/28 Bingham Decl. ¶¶ 7-8);

21  Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 7). Galaxy was under no obligation to ever represent Mr.

22  Peplin as his buyer's agent, but it did so nonetheless. Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 7). The

23  fact that it did so underscores Galaxy's lack of interest in purchasing the Property for more than

24  $275,000.00 (or by trying to conceal the property from Mr. Peplin to flip it and realize the higher

25  price for itself).

26

27                                                    9

1    To the extent Debtor suggests that Galaxy only declined to participate in the overbid process

2 due to collusion with Mr. Peplin, Docket No. 589 at 2, 4, she lacks even a modicum of supporting

3 evidence. Galaxy was purchasing this Property as an investment and intended to immediately try to

4 sell the Property to another purchaser for a profit. A better explanation for Galaxy's decision to not

5 submit an overbid is Debtor's litigiousness in opposing the Sale Motion and Turnover Motion,

6 including the filing of a premature motion for stay pending appeal *before the initial hearing on the*

7 *Sale Motion and auction had occurred*. Docket No. 562. If anything chilled overbids, it was

8 Debtor's brash advertisement that she intended to gum up the sale of the Property, even if it meant

9 skirting the procedural rules with improperly filed pleadings and indefinitely delaying closing with a

10 stay pending appeal. In contrast to Galaxy, Mr. Peplin has a need to purchase replacement property

11 as a reinvestment of his homestead proceeds, Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 7), and intends

12 to live in the Property with his wife. As such, Mr. Peplin was motivated to pay a higher price for the

13 Property.

14    Debtor's argument, that "Galaxy has a fiduciary duty to avoid harming their client, Mr.

15 Peplin, by bidding up the price," Docket No. 589, is unavailing. It is undisputed that as of the March

16 27, 2025, auction, Mr. Peplin was represented by licensed real estate agent Lori Alvarez of Real

17 Estate Resolved. *See* Docket No. 580 (Alvarez Declaration). Lori Alvaraz has no connections with

18 Debtor, Trustee, or Galaxy. *Id.* It is also beyond dispute that Mr. Peplin terminated his agency

19 relationship with Galaxy before the March 27, 2025, auction. *See* Docket No. 577 at 3 (3/20 Peplin

20 Declaration, ¶ 8: "I have decided to terminate Galaxy Homes as my real estate broker. I have

21 contacted Lori Alvarez at Real Estate Resolved to represent me in this transaction, and we

22 formalized that representation on March 19, 2025."). Plus, Galaxy never had a written contract with

23 Mr. Peplin.

24

25

26

27

10

28 4880-1284-8131,v.1

1    Debtor cites no authority that real estate agents owe ongoing duties to their *former* clients,

2  and in fact the termination of the agency relationship terminates the fiduciary relationship, other than

3  the continuing fiduciary obligation not to disclose confidential information. *See Wood v. Borland (In*

4  *re Borland)*, 2009 Bankr. LEXIS 5648, at *16-17 (Bankr. E.D. Cal. July 23, 2009) (noting that the

5  fiduciary relationship between two individuals had terminated upon the termination of their real

6  estate agency relationship, other than the continuing fiduciary obligation not to disclose confidential

7  information). As such, as of the March 27, 2025, hearing, Galaxy was free to compete with its

8  *former* client in bidding for the Property.

9    Courts within this District regularly make § 363(m) findings even in the absence of overbids.

10  *See, e.g.*, *In re Zhang*, Case No. 6:22-bk-10523-SY, ECF No. 166 (Bankr. C.D. Cal. Feb. 13, 2024)

11  (order approving sale with a § 363(m) finding, despite no overbids having been received). Debtor

12  cites no authority that overbids are actually required for a § 363(m) finding, because that is not the

13  law.

14    Finally, Debtor claims that she was "not offered the opportunity to cross-examine [Mr.]

15  Peplin or any of the declarants," Docket No. 589 at 4, but the upcoming evidentiary hearing will

16  provide her with just such an opportunity. And, her suggestion, that she did not submit evidence of

17  bad faith based the Court's lack of "invitation" for her to do so, *id.* at 5, is laughable. Debtor has

18  submitted numerous unauthorized filings in this case, many since the Trustee filed the Sale Motion

19  and Turnover Motion. *See, e.g.*, Docket No. 562 (March 3, 2025, motion for stay pending appeal);

20  Docket No. 581 (compendium of supplemental out of circuit authority regarding 2010 and 2014

21  decisions, filed on March 25, 2025—just two days before the March 27, 2025, hearing). If Debtor

22  seriously had evidence to submit, the Trustee and Houser Bros. have no doubt that she would have

23  done so in advance of the March 27, 2025, auction. But, as Debtor's counsel acknowledged on the

24  record at the hearing, Debtor had no evidence to submit at the time. Notably, Debtor submitted one

25  exhibit by the April 4, 2025, deadline the Court granted her in its 3/28 Order, which exhibit is

26  completely irrelevant for the reasons set forth below.

27

28

11

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

4880-1284-8131,v.1

1    The Property has been extensively marketed and advertised for many months. There is not

2    even a scintilla of evidence of fraud, collusion between the purchaser and other bidders or the

3    trustee, or an attempt to take grossly unfair advantage of other bidders, collusion, or abuse of the

4    process. Mr. Peplin qualifies as a good faith purchaser. The fact that one bidder dropped out of

5    bidding to allow the estate to receive the higher price does not change that fact. The Court should

6    make an express finding thereon pursuant to section 363(m).

7    **B.    Debtor lacks standing to challenge the § 363(m) finding on the basis**

8    **of overbids.**

9    Standing is a threshold issue in every federal litigation. *Savage & Assocs., P.C. v. Mandl (In*

10    *re Teligent, Inc.)*, 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009). The question of standing is "whether

11    the litigant is entitled to have the court decide the merits of the dispute <u>or of the particular issues</u>."

12    *Id.* at 209-10 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (emphasis added by Bankruptcy

13    Court). The inquiry involves both constitutional limitations on federal-court jurisdiction and

14    prudential limitations on its exercise. *Id.* at 210 (citing *Warth*, 422 U.S. at 498). Constitutional

15    standing "imports justiciability:" whether the plaintiff has made out a "case or controversy" between

16    himself and the defendant within the meaning of Article III. *Id.* (quoting *Warth*, 422 U.S. at 498). To

17    establish Article III standing, a party must show: 1) an injury in fact that is actual or imminent rather

18    than conjectural or hypothetical; 2) the injury is "fairly traceable" to the conduct complained of; and

19    3) it is likely, as opposed to "speculative," that the injury will be redressed by a favorable decision.

20    *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Republic of the Marsh.*

21    *Is. v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (noting that constitutional standing is

22    derived from the "case and controversy" requirement of Article III of the Constitution and requires a

23    plaintiff to demonstrate "injury in fact, causation, and redressability").

24

25

26

27    12

28    4880-1284-8131,v.1

1    Prudential standing refers to the requirement that even when the plaintiff has alleged injury

2  sufficient to meet the "case or controversy" requirement, the plaintiff generally must assert his own

3  legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

4  parties. *In re Teligent*, 417 B.R. at 210 (citing *Warth*, 422 U.S. at 499).

5    The party asserting that it has standing bears the burden of establishing both constitutional

6  and prudential standing. *Cty. of Imperial Treasurer-Tax Collector v. RW Meridian, LLC (In re RW*

7  *Meridian LLC)*, 2017 Bankr. LEXIS 4172, at *4 (B.A.P. 9th Cir. Dec. 6, 2017); *see also Veal v. Am.*

8  *Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 907 n.11 (B.A.P. 9th Cir. 2011) (same). The

9  "jurisdictional issue of standing can be raised at any time." *Ctr. for Biological Diversity v.*

10  *Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009); *see also United States v. 7501 N.W. 210th St.*, 437

11  Fed.Appx. 754, 757-58 (10th Cir. 2011) (explaining that constitutional standing is a "threshold

12  jurisdictional question" that the court may raise "at any time").

13    In bankruptcy, the "general rule" is that, unlike creditors, Chapter 7 debtors lack standing to

14  object to or appeal from orders of the bankruptcy court because the commencement of liquidation

15  proceeding "extinguishes any pecuniary interests that they formerly held in property of the estate."

16  *Licata v. Coan*, 2015 U.S. Dist. LEXIS 160333, at *14-15 (D. Conn. Sept. 22, 2015); *see also*

17  *Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 n.2 (9th Cir.

18  1999) (noting that ordinarily, a debtor cannot challenge a bankruptcy court's order unless there is

19  likely to be a surplus after bankruptcy); *In re Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983) (noting

20  that a "hopelessly insolvent debtor" lacks standing to appeal orders affecting the size of the estate,

21  because such an order would not diminish the debtor's property, increase his or her burdens, or

22  detrimentally affect his or her rights).

23

24

25

26

27

13

28  4880-1284-8131,v.1

1    The idea of an overbid procedure is to ensure the best price given the trustee's fiduciary duty

2  to maximize the value to the estate. As the Ninth Circuit BAP explained:

3        The main issue with respect to the sale of estate assets is whether the trustees obtained

4        the best possible price in light of their fiduciary duty to maximize the value to the

5        estates. A sale that is well advertised and subject to overbids is usually the preferred

6        method to achieve the best possible price. However, the guiding principle is that the

7        "court's obligation in section 363(b) sales is to assure that optimal value is realized by

8        the estate under the circumstances." *Lahijani*, 325 B.R. at 288-89 (emphasis added).

9  *Nev. Bus. Credit, LLC v. Kavanaugh (In re Golden Empire Air Rescue, Inc.)*, 2007 Bankr.LEXIS

10 4880, at *21-22 (B.A.P. 9th Cir. Oct. 25, 2007).

11    Here, Debtor has not, and cannot, argue that there will be a surplus estate given the enormous

12 cost of administering this Estate due in large part to her fraud and litigiousness. Further, Debtor has

13 no pecuniary interest in the overbid process based on her homestead exemption. As set forth in the

14 Sale Motion, as of January 9, 2025, the payoff on the Trustee's avoided lien totaled $301,011.14,

15 with daily interest accruing at $33.90 per day. By April 10, 2025, the payoff on the Trustee's

16 avoided lien will total no less than $304,096.04.

17    Mr. Bingham obtained two offers for the Property after months of marketing: one for

18 $275,000.00, and one for $276,000.00. Debtor does not suggest that the Property should be sold for

19 more than $304,096.04 such that there will be surplus funds available to distribute to her on account

20 of her homestead exemption. A nearly $30,000.00 increase to the purchase price on a $276,000.00

21 property is significant. Accordingly, Debtor has not met her burden of showing that she has a

22 sufficient pecuniary interest in the overbid process to establish standing.

23 / / /

24 / //

14

## C.     Houser Bros. has approved Mr. Peplin and his wife as park tenants.

Debtor submitted one exhibit with her § 363(m) brief: the Houser Bros. application packet, as of April 11, 2019. Docket No. 590.

As an initial note, the Court's 3/28 Order required "copies of all proposed documents to be introduced into evidence" to be "affixed to supporting sworn declarations" and filed and served by April 4, 2025. Docket No. 585 at 3-4. Debtor filed her "Exhibit 1" untimely and unauthenticated. Debtor has no excuse for doing so. She is represented by counsel, who, despite having an entire week to submit argument and evidence, chose to file a brief at 11:55 p.m. on April 4, 2025—just five minutes before the deadline. Debtor then submitted her Exhibit 1 untimely, a day later - on April 5, 2025. This Court expressly cautioned the parties in its 3/28 Order that any pleading filed untimely or otherwise in violation of the requirements of the 3/28 Order would be stricken. Docket No. 585 at 4. Debtor and her attorney have repeatedly flouted the procedural rules and Court orders since the filing of the Sale Motion, including the submission of multiple unauthorized sur-replies. Houser Bros. and the Trustee request that the Court not countenance their continuing disregard for the rules by declining to consider the untimely Exhibit 1.

Even if the Court does consider Debtor's Exhibit 1, her argument relating thereto is a total red herring. Debtor claims that this evidence shows that Mr. Peplin "does not appear to qualify as a

/ / /

/ / /

15

4880-1284-8131,v.1

1    tenant." Docket No. 589 at 5. Whether Mr. Peplin qualifies as a good faith purchaser of the Property

2    for purposes of 11 U.S.C. § 363(m), and whether Mr. Peplin meets Houser Bros.'s standards for

3    approval for a leasehold interest in the mobilehome park, are two entirely separate issues.

4        In any event, since April 2019, Houser Bros. has updated its application requirements across

5    the board. Currently, the policy requires only that the "Applicant(s) must not have a *non-discharged*

6    bankruptcy in the past 5 years" (emphasis added). True and correct copies of Houser Bros.'s current

7    Prospective Homeowner Qualification Requirements are attached to the Declaration of Chris Houser

8    ("Houser Declaration") as **Exhibit 1**. Because the Bankruptcy Court granted Mr. Peplin a discharge

9    on August 19, 2024, *In re Peplin*, Case No. 2:24-bk-13645-DS, ECF No. 73 (Bankr. C.D. Cal. Aug.

10   19, 2024) ("Order of Discharge – Chapter 7"), and he and his wife otherwise jointly met the

11   standards for approval, Houser Bros. approved Mr. Peplin's application for residency at the park.

12   True and correct copies of the Prospective Purchaser Evaluations for Mr. Peplin and his wife, Ashley

13   Peplin, with limited redactions to protect confidential financial information, are attached as **Exhibit**

14   **2**.

15   **5.    Conclusion**

16       For the reasons stated above, Houser Bros. and the Trustee respectfully request that the Court

17   find Mr. Peplin to be a good faith purchaser for purposes of 11 U.S.C. § 363(m) based on the

18   existing record and any additional evidence admitted during the evidentiary hearing.

19

20   DATED: April 8, 2025                LEVENE, NEALE, BENDER, YOO & GOLUBCHIK
                                         L.L.P.
21

22                                       By:  _____
23                                            ERIC P. ISRAEL
                                              Attorneys for JEFFREY I. GOLDEN,
24                                            Trustee
25

26

27                                       16
     _____
         REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
28   4880-1284-8131,v.1

DATED: April 8, 2025                    MARSHACK HAYS WOOD LLP

                                            /s/ D. Edward Hays
                                    By: _____
                                        D. EDWARD HAYS
                                        BRADFORD N. BARNHARDT
                                        Attorneys for Creditor,
                                        HOUSER BROS. CO. dba RANCHO DEL
                                        REY MOBILE HOME ESTATES

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

# Declaration of Chris Houser

I, CHRIS HOUSER, say and declare as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.    The facts set forth below are true of my personal knowledge.

4.    I am the Park Operations Manager for Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.").

5.    I make this Declaration in support of the Joint Reply ("Reply") in Support of the 11 U.S.C. § 363(m) Finding Re: Gregory A. Peplin ("Mr. Peplin"). All capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the Reply.

6.    Houser Bros. owns the pad on which the Property is situated. Houser Bros.'s business model is to lease space (pads) to residents of the mobilehome park ("MHP"), who generally own their respective mobilehomes/manufactured homes.

7.    Over the course of my involvement in this case, I have become much more familiar with bankruptcy law than I was before. Given my increased knowledge of bankruptcy law, I believe that a person who receives a discharge and has adequate income and credit would be able to afford rent in the MHP. As such, Houser Bros. has amended its approval requirements not only for Mr. Peplin and his wife, but for all applicants for residency at the MHP. Houser Bros.'s current policies do not disqualify an applicant who has filed bankruptcy but received a discharge. True and correct copies of Houser Bros.'s current Prospective Homeowner Qualification Requirements are attached as **Exhibit 1**.

8.    On or about December 16, 2024, I transmitted an application for residency at the MHP to Mr. Peplin.

9.    On or around December 17, 2024, Houser Bros. received the applications for residency from Mr. Peplin and his wife.

DECLARATION

10.      On or around December 23, 2024, Houser Bros. advised Mr. Peplin and his wife that they were jointly approved for residency in the park, contingent on their purchase of the Property. True and correct copies of the Prospective Purchaser Evaluations for Mr. Peplin and his wife, Ashley Peplin, with limited redactions to protect confidential financial information, are attached as **Exhibit 2**.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 8, 2025.

CHRIS HOUSER

**EXHIBIT 1**

# TENANCY INFORMATION AND STANDARDS

[Civil Code Section 798.74]



Dear Homeowner or Prospective Homeowner:

The following are the items of information management will require, and the standards that will be utilized in determining if the prospective homeowner will be is acceptable as a homeowner in the park:

**Information required:**

- Fully executed purchase agreement for a mobilehome in the park.
- Fully executed Application for each person applying for tenancy.
- Fully executed additional forms: Consent to Obtain Consumer Credit, Information for Prospective Homeowners, Mobilehome Rental Agreement Disclosure and Privacy Statement Form.
- Color copy of applicant(s) State issued ID or Driver's License
- Two months of bank statements showing income deposits.
- Two months of income supporting documents (Pay stubs, SSA Letter etc.)

**Standards to be applied:**

- Applicant(s) must be at least 55 years of age. Additional occupants must be 18 years or older.
- Co-applicant must be a spouse or an equivalent status financial unit.
- Monthly Income must be at least three (3) times the monthly rent. Co-applicant income may be combined. A guarantor may be considered if income is below the requirement.
- FICO credit score must be 650 or higher. Applicant/Co-applicant FICO scores are combined with the mean score used.
- No evictions in the past 5 years.
- Applicant(s) must not have a non-discharged bankruptcy in the past 5 years.
- Application is evaluated on the ability of applicant(s) to conform to the (MRL) Mobile Home Residency Law and the Park's Rules and Regulations.
- References of past tenancy information and personal references are required and evaluated to confirm applicants will comply with the Rules and Regulations and MRL.
- Restrictions are placed on pets. The limit is two (2) small pets per space. Dogs must be approved by management and must be no greater than 15 inches at the shoulders or weigh less than 22 pounds. Service Animals are exempt.

Within fifteen (15) business days of receiving all of the information requested from an applicant, we will notify the seller and the applicant in writing of either acceptance or rejection as required by Civil Code Section 798.74(a).

Dated:_____

_____
Management

**EXHIBIT 2**

FROM
Rancho Del Rey Mobile Home Estates
16222 Monterey Ln OFC
Huntington Beach, CA 92649
(714) 846-1429

TO
Gregory Peplin
1429 Via Sevilla
La Verne, CA 91750



**Western**
**Manufactured Housing Communities**
**Association**

## PROSPECTIVE PURCHASER EVALUATION — NOTICE TO PROSPECTIVE PURCHASER

Rancho Del Rey Mobile Home Estates

On __12/18/2024__ , management received all of the information necessary to determine if you will be acceptable as a homeowner in the park, located at 16222 Monterey Ln **SPC 376** Huntington Beach, CA 92649.

This is to advise prospective homeowner that the prospective homeowner is:

X    **APPROVED FOR RESIDENCY IN THE PARK, provided that the prospective homeowner complies with the requirements of Section 798.75 of the California Civil Code, executes a rental agreement with management and satisfies any additional conditions listed below.** In the event the prospective homeowner fails to execute the rental agreement, that person shall have no rights of tenancy. The prospective homeowner should contact management immediately to sign a rental agreement. You are also advised that any escrow, sale or transfer agreement for the mobilehome must contain a copy of either a fully executed rental agreement or a statement signed by both the management and you that the parties have agreed to the terms and conditions of the rental agreement.

X    **ADDITIONAL CONDITIONS for approval:** Approval contingent on purchase of Space 376.

_____    ~~DISAPPROVED, because:~~

___    ~~You have not demonstrated that you have the financial ability to pay the rent and charges of the park.~~

___    ~~Management has determined that, based on your prior tenancies, you will not comply with the rules and regulations of the park.~~

___    ~~Management has determined that you cannot comply with the requirements of the park's rules and regulations limiting residency to housing for older persons.~~

___    ~~Other:~~

___    ~~This disapproval includes the following reason(s):~~

___    ~~Consumer Credit Report (check appropriate box below)~~

___    ~~Information contained in a consumer credit report obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

___    ~~A consumer credit report containing insufficient information obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

You have a right to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report provided by AmRent Inc. if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the consumer reporting agency.



1142P2A3ECEF1580024220241223

Copyright © 2014. WMA.

EXHIBIT 2, PAGE 21

__X__   Your credit score from the consumer reporting agency named in the paragraph below. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: ███████████████████████████████████

Key factors that adversely affected your credit score:

1. SERIOUS DELINQUENCY, AND PUBLIC RECORD OR COLLECTION FILED
2. NUMBER OF ACCOUNTS WITH DELINQUENCY
3. LACK OF RECENT REVOLVING ACCOUNT INFORMATION
4. LACK OF RECENT INSTALLMENT LOAN INFORMATION

If you have any questions regarding your credit score, you should contact the agency named in the paragraph below.

The consumer reporting agency that provided the report and/or credit score (if applicable) that influenced our decision in whole or in part is listed below. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

**Reporting Agency:**          **Report Provided By:**
Trans Union                    AmRent Consumer Assistance
PO Box 740241                  PO Box 530091
Atlanta, GA 30374-0241         Atlanta, GA 30353
(800) 685-1111                 (888) 898-6196

You may have additional rights under the credit reporting or consumer protection laws of California. For further information, you can contact the California Department of Consumer Affairs, or the California State Attorney General's office.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, religion, national origin, gender, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

Dated: 12/23/2024

Chris Houser - Park Management



EXHIBIT 2, PAGE 22

FROM
Rancho Del Rey Mobile Home Estates
16222 Monterey Ln OFC
Huntington Beach, CA 92649
(714) 846-1429

TO
Ashley Peplin
1429 Via Sevilla
La Verne, CA 91750



**Western
Manufactured Housing Communities
Association**

## PROSPECTIVE PURCHASER EVALUATION — NOTICE TO PROSPECTIVE PURCHASER

<u>Rancho Del Rey Mobile Home Estates</u>

On <u>12/18/2024</u>, management received all of the information necessary to determine if you will be acceptable as a homeowner in the park, located at <u>16222 Monterey Ln **SPC 376** Huntington Beach, CA 92649.</u>

This is to advise prospective homeowner that the prospective homeowner is:

X     **APPROVED FOR RESIDENCY IN THE PARK, provided that the prospective homeowner complies with the requirements of Section 798.75 of the California Civil Code, executes a rental agreement with management and satisfies any additional conditions listed below.** In the event the prospective homeowner fails to execute the rental agreement, that person shall have no rights of tenancy. The prospective homeowner should contact management immediately to sign a rental agreement. You are also advised that any escrow, sale or transfer agreement for the mobilehome must contain a copy of either a fully executed rental agreement or a statement signed by both the management and you that the parties have agreed to the terms and conditions of the rental agreement.

X     **ADDITIONAL CONDITIONS for approval:** Approval contingent on purchase of Space 376.

_____     ~~DISAPPROVED, because:~~

___     ~~You have not demonstrated that you have the financial ability to pay the rent and charges of the park.~~

___     ~~Management has determined that, based on your prior tenancies, you will not comply with the rules and regulations of the park.~~

___     ~~Management has determined that you cannot comply with the requirements of the park's rules and regulations limiting residency to housing for older persons.~~

___     ~~Other:~~

___     ~~This disapproval includes the following reason(s):~~

___     ~~Consumer Credit Report (check appropriate box below)~~

___     ~~Information contained in a consumer credit report obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

___     ~~A consumer credit report containing insufficient information obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

You have a right to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report provided by AmRent Inc. if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the consumer reporting agency.



1142P2A3ECEF1580024220241223

Copyright © 2014. WMA.

X___ Your credit score from the consumer reporting agency named in the paragraph below. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Key factors that adversely affected your credit score:

1. PROPORTION OF LOAN BALANCES TO LOAN AMOUNTS IS TOO HIGH
2. INSUFFICIENT LENGTH OF CREDIT HISTORY
3. TOO MANY ACCOUNTS WITH BALANCES
4. TOO MANY INQUIRIES IN THE LAST 12 MONTHS

If you have any questions regarding your credit score, you should contact the agency named in the paragraph below.

The consumer reporting agency that provided the report and/or credit score (if applicable) that influenced our decision in whole or in part is listed below. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

**Reporting Agency:**
Trans Union
PO Box 740241
Atlanta, GA 30374-0241
(800) 685-1111

**Report Provided By:**
AmRent Consumer Assistance
PO Box 530091
Atlanta, GA 30353
(888) 898-6196

You may have additional rights under the credit reporting or consumer protection laws of California. For further information, you can contact the California Department of Consumer Affairs, or the California State Attorney General's office.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, religion, national origin, gender, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

Dated: 12/23/2024 _____          _____

                                                 Chris Houser - Park Management

1142P2A3ECEF1580242220241223                                      Copyright © 2014. WMA.



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **JOINT REPLY IN SUPPORT OF 11 U.S.C.
§ 363(M) FINDING RE: GREGORY A. PEPLIN** will be served or was served **(a)** on the judge in chambers in the form and
manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 8,
2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **April 8, 2025**, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on **April 8, 2025**, I served the following persons and/or entities by personal delivery,
overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or
email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge
<u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**DEBTOR**
JAMIE LYNN GALLIAN
jamiegallian@gmail.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 8, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>: CONTINUED:

- **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR DEBTOR JAMIE LYNN GALLIAN:** Christopher L Blank    chris@chrisblanklaw.com
- **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
- **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
- **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
- **INTERSTED PARTY COURTESY NEF: Shantal Malmed**    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- **INTERESTED PARTY COURTESY NEF: Shantal Malmed**    , cheryl.caldwell@gmlaw.com
- **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
- **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4903-7392-5900, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                           **F 9013-3.1.PROOF.SERVICE**