

**FILED & ENTERED**

**APR 10 2025**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

|  |  |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br><br><br>Debtor. | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>**ORDER RE:**<br><br>**(1) CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE [DK. 538];**<br><br>**(2) TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION [DK. 539]; AND,**<br><br>**(3) GOOD FAITH FINDING PURSUANT TO SECTION 363(M).** |

On March 4, 2025, the Court held hearings on the (1) *Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance,* filed January 31, 2025 [Dk. 538] ("Turnover Motion"), and the (2) *Trustee's Motion To Authorize Sale Of*

1   *Manufactured Home Currently Located At 16222 Monterey Lane, Space 376,*

2   *Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And*

3   *Homestead Exemption* filed January 31, 2025 [Dk. 539] ("Sale Motion") (collectively,

4   "Motions"). Prior to the March 4, 2025, hearing, in response to the tentative rulings,

5   Debtor filed a *Motion to Stay Pending Appeal* on March 3, 2025 [Dk. 562]. Appearances

6   for the March 4, 2025, hearing are as noted in the record.

7         During the March 4, 2025, hearing, the Court permitted an auction to occur with

8   respect to the manufactured home located at 16222 Monterey Lane, Space 376,

9   Huntington Beach, CA 92649, Decal No. LBM1081 ("Property"), and an overbidding

10   party, Mr. Gregory A. Peplin ("Mr. Peplin" or "Buyer"), was the successful bidder. On the

11   evidence presented before it, however, the Court was not prepared to make a good faith

12   finding with respect to Mr. Peplin. The Court permitted the Chapter 7 Trustee to submit

13   a supplemental declaration in support of his request for a good faith finding under §

14   363(m) for the Court's review. Accordingly, the Declaration of Gregory A. Peplin was

15   filed on March 7, 2025 [Dk. 566], attesting to his good faith status to support a good

16   faith finding under 11 U.S.C. § 363(m). On March 12, 2025 [Dk. 568], Debtor filed an

17   Opposition to Mr. Peplin's declaration. The Opposition asserts that a single broker (who

18   was also the stalking horse bidder), Galaxy Homes LLC ("Galaxy") represented the two

19   potential buyers appearing at the March 4, 2025, sale auction. Although this Court

20   believed that the objection raised by Debtor was unmeritorious, instead of sustaining or

21   overruling the objection, the Court issued an order on March 13, 2025 [Dk. 569],

22   vacating the auction results and setting a new auction date of March 27, 2025. The

23   Trustee conducted a new auction at that time,[1] with appearances as noted in the record.

24   Mr. Peplin was again the successful bidder. The Court then set an evidentiary hearing

25   on the matter of the section 363(m) good faith purchaser determination, which was held

26

27

28   [1] At the March 27, 2025, auction, Mr. Peplin was no longer represented by Galaxy Homes, but instead
was represented by a different broker, Lori Alvarez of Real Estate Resolved. *See* Declaration of Lori
Alvarez filed 3/24/25 [Dk. 580].

on April 10, 2025.[2]  Appearances for the April 10, 2025, hearing are as noted in the record.

The Court, having considered the various Motions, all relevant pleadings, including the Motion for Stay Pending Appeal (which is denied by separate order but is incorporated into this Order by reference), the docket as a whole including those of the adversary proceedings of this case, and for the reasons set forth, finds good cause to GRANT the Motions for Sale, Turnover, and for a good faith purchaser finding under 11 U.S.C. § 363(m).

Following an evidentiary hearing held on April 10, 2025, on the sole subject of addressing the Trustee's request to consider and decide the good faith purchaser status of the Buyer, the Court finds that the successful purchaser was a good faith purchaser and finds that the factual and legal requirements of section 363(m) are met. The objections presented to the § 363(m) determination by Debtor are overruled.

The Trustee and the Buyer were required to present competent evidence of the status as a good faith purchaser of the Buyer, and they have met and exceeded their burden. Debtor has presented no evidence of her own, although she was permitted the opportunity to examine all declarants during the § 363(m) evidentiary hearing. She examined one declarant. Debtor has not disturbed Trustee's and Buyer's demonstrations of good faith.

## I.    Preliminary Statement

Before the filing of this voluntary Chapter 7 bankruptcy proceeding, Jamie Lynn Gallian ("Debtor" or "Gallian") engaged in certain fraudulent conduct with respect to the placement of a number of fraudulent liens on the Property in an attempt to shelter the Property from her creditors. She also submitted to this Court numerous false sworn statements under penalty of perjury throughout this case.

---

[2] § 363(m) provides that "[t]he reversal or modification or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

Debtor has the right to assert her homestead, which was awarded to her by the Bankruptcy Court. Her current problem is, by a combination of her own fraud and the Trustee's actions to avoid the fraudulent liens she originally placed on the mobile home, she put into motion the Trustee's duty to recover the fraudulent lien (in the amount of $225,000), the recovery of which by operation of law is positioned in front of (higher in priority) her homestead rights.

This result is seen often in bankruptcy courts, as the Bankruptcy Code and its recovery and avoidance statutes, specifically sections 551, 548 and 522(g)[3] *are designed to encourage debtors and others not to engage in fraudulent conduct before they file their bankruptcy petition*.[4] These sections of the Bankruptcy Code are also designed to provide recovery to the estate by a chapter 7 trustee's ability to avoid fraudulently or illegally placed liens onto property prior to the filing of the bankruptcy petition.

Additionally, when Debtor placed the fraudulent lien totaling $225,000[5] on the Property, purportedly held by the LLC, she also gave various family members and friends more liens on top of the $225,000 lien. These liens encumbered the Property without legitimate obligations and were avoided at considerable expense by the Trustee.[6]  Ironically in this matter, Debtor's opposition and collateral attack of the earlier judgment is (as the Court interpreted it) "I know that it was a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions,

---

[3] Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. Further, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.

[4] It usually works like this: a potential individual debtor asks their potential bankruptcy lawyer "[w]hy can't I put a fake lien on my house in favor of my son or cousin so that the bankruptcy trustee won't sell my home?"  The lawyer (at least a competent one) explains "[B]ecause if you do this, and the trustee avoids the lien, you might have your possible homestead subordinated to the avoided lien amount, whether the lien was actual or not. Don't do it."

[5] Debtor originally scheduled the obligation in favor of J-Pad as $175,000; she subsequently amended her schedules to falsely increase the amount to $225,000.

[6] Debtor's discharge was denied after a trial by a decision issued May 23, 2023, in which the Court found that Debtor had concealed her equity in the Property by issuing fraudulent liens, including the $225,000 J-Pad lien. *See* Adv. No. 8:21-ap-01097-SC, Dk. 81. That decision was affirmed on appeal and is now final.

since it was a fake lien, the Trustee recovered nothing." This Court notes that "nothing" would have resulted in a windfall payment of $225,000 to Debtor's company J-Pad LLC, of whom Debtor was the sole member.

The Court also notes that Debtor has maintained her ruse as to the validity of the lien up to, and even after, the Court avoided the fraudulent lien.

In summary, through costly adversary proceedings in this case, the Chapter 7 Trustee avoided, recovered and preserved both the fraudulent transfers of the Property and Debtor's fraudulent liens for the benefit of the estate. No party appealed those judgments, and they are final. The entirety of the opposition filed by Debtor on the present issue of the sale is a collateral attack on the previous avoidance actions.[7]

The Trustee now seeks to sell the Property and obtain its turnover, despite Debtor's objections. Although Debtor has, until this point, always maintained that the at-issue liens were legitimate, she now apparently contends that the liens lacked value.[8] Therefore, Debtor argues that, since the liens lacked value, Trustee cannot sell the Property over her objection. However, such a position would reward Debtor's fraudulent conduct, undermining the Bankruptcy Code's provisions that are designed to prevent such abuses and at the same time protect the interests of honest debtors and creditors alike.[9] In other words, Debtor's position is that a debtor, pre-petition, may place fraudulent liens on her property to obfuscate any equity, and after she is caught and a trustee avoids, recovers and preserves those fraudulent liens (in whatever amount they

---

[7] The Order on avoidance of the $225,000 lien is found at Adv. No. 8:23-ap-01064-SC, Dk. 79. The Order specifically sets forth the recovered value of the $225,000, which cannot now be challenged by a collateral attack in this proceeding.

[8] The Court observes that this attempted concession is being made by Debtor not to right her wrongs, but to circumvent the consequences of having a lien avoided, recovered, and preserved by the Trustee for the benefit of an estate. As set out in this Memorandum Opinion, this argument is (1) too clever by half, (2) permits this Court to directly infer the intentional wrongdoing and bad faith of the Debtor (where the earlier and common prevarications by the Debtor, until the last moment, have insisted that the lien in question was legitimate), and (3) is an impermissible collateral attack on a final (un-appealed) judgment of this Court.

[9] A central purpose of the Code is to provide individual debtors with a procedure to reorder their affairs and make peace with their creditors, but the Bankruptcy Code limits this opportunity of a "fresh start" to *honest* but unfortunate debtors. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

were recorded or asserted to be at the time), she can turn around and admit that they were fraudulent and worthless. This is the argument that the trustee has not recovered anything of value. What's missing is that the transferee (her own company) of a fraudulent lien would have been paid $225,000 in the event of a sale. In the end, Debtor's counsel's argument is, she can commit fraud with impunity. Of course this is a collateral attack on the specific, un-appealed, and final judgment entered by the Court assigning value to the avoided lien.

## II.    General Relevant Background

Who is this Debtor? Her voluntary chapter 7 case was commenced on July 9, 2021 ("Petition Date"). This case is atypical given the number of disputes which have arisen surrounding Debtor's residence in what should have been a simple, straight forward case and, which as noted throughout this opinion, have resulted in the denial of Debtor's discharge.[10]

In her initial filing, Debtor scheduled an interest in the Property (a mobile home) at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649. She valued the Property at $235,000, stating: "title held by Debtor's single member LLC – J-Sandcastle Co., LLC," with a lien on it held by J-Pad, LLC in the amount of $175,000, which amount was later increased to $225,000. **Debtor subsequently amended her schedules or petition no less than 13 times.**[11]  After significant litigation involving objections to her homestead, and appeals, Debtor now possesses an allowed homestead in the amount of approximately $600,000 on the Property.

On October 18, 2021, Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") initiated an adversary proceeding, Adv. No. 8:21-ap-01097-SC, against Debtor asserting claims under 11 U.S.C. §§ 523(a)(2) and (a)(6) and

---

[10] The disputes are, for the most part, in furtherance of Debtor's bid to keep the Property. For instance, Debtor has filed several motions to avoid the liens of Huntington Beach Gables Homeowners Association and of the Trustee, in place of J-Pad, a motion seeking to abandon the Estate's interest in her residence, an application to compel Trustee to cancel his transfer title to the Property, a motion to convert her case, and several appeals. The Court equates Debtor's oppositions to the sale of the Property in the same vein.
[11] *See* dockets 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468, and 519.

11 U.S.C. § 727.[12] The Court bifurcated the claims and conducted a trial on the § 727 claim. After a trial, which occurred on April 26, 2023, and having considered post-trial briefing, the Court issued a decision on May 23, 2023, as Docket No. 81 in Adv. No. 8:21-ap-01097-SC, **denying Debtor's discharge ("727 Decision")**. In the 727 Decision, the Court specifically found as follows:

> Additionally, facts were presented to the Court demonstrating that Defendant further concealed her equity in the property through the granting of liens to her business entities and family members, which liens existed during the relevant time period. For example, in late 2018, Defendant also executed a promissory note and security agreement on the mobile home by and between two entities that she managed, JSandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72, Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially in the amount of $175,000 Defendant did not fund the balance of the $225,000 loan until approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the foregoing information regarding the timing of funding, or source of funding, was reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a secured creditor, continuing the ongoing concealment of her true interest in the loan. Additionally, within the year prior to the petition, liens in favor of Defendant's two adult sons, Steven and Brian Gallian, were placed on the property, despite the fact that neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.
>
> ....
>
> As noted previously, J-Pad was the holder of a $22[5],000 promissory note. Defendant herself executed the promissory note on J-Pad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a significant amount of money, and Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder of a significant asset, is a material, false oath made knowingly and fraudulently. So too was Defendant's failure to

---

[12] The Court may take judicial notice of its own records in the same case. *See In re Abbatiello*, 484 B.R. 655, 658 (Bankr. M.D. Pa 2013) ("A bankruptcy judge may take judicial notice of his or her own docket"); *In re Martell*, 349 B.R. 233, 234 n.1 (Bankr. D. Idaho 2005) ("[T]he Court takes judicial notice of its file in this matter."). Further, the Court's rulings with respect to Debtor's behavior in connection with the Property, which form the basis for the 727 Decision, constitute law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.) (cert. denied 508 U.S. 951 (1993).

schedule a value for JPad, who held a significant asset in the form of the aforementioned note and lien on the mobile home.

The foregoing, coupled with the evidence presented by Plaintiff of Defendant's other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against Defendant on its § 727(a)(4) cause of action.

727 Decision, pgs. 11-12, 16. Debtor appealed this decision, which was affirmed by the United States District Court on July 31, 2024. *See* Adv. No. 8:21-ap-01097-SC, Dk. 131. After the denial of her discharge, Debtor sought to dismiss her case by a motion filed June 27, 2023 [Dk. 345], which was denied by an order entered July 26, 2023 [Dk. 368].

On June 30, 2023, Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* ("Avoidance Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle, LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, "Defendants"). Trustee recovered title to the Property (which pre-petition she had placed not in her name, but of her LLC) and avoided, recovered and preserved all of the consensual liens. The final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024, provides as follows:

The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

See Adv. No. 8:23-ap-01064-SC, Dk. 79.

Following the recovery of the Property (from J-Sandcastle, LLC) along with the avoidance, recovery, and preservation of the consensual liens on the Property, Trustee

filed an application to retain a broker to market and sell the Property on June 1, 2024 [Dk. 395], which Debtor opposed [Dks. 401-403]. The motion was granted by an order entered September 5, 2024 [Dk. 431]. Of note, however, at the hearing on Trustee's application to retain a broker, Debtor admitted to listing the Property on her own, which resulted in the Court's issuance of an order to show cause for contempt on September 12, 2024 [Dk. 440], which was discharged after a hearing held on November 5, 2024, when Debtor removed her broker.

In addition, shortly after the Court's approval of Trustee's broker's employment, Debtor filed a motion to convert the case to Chapter 13 on September 11, 2025 [Dk. 438]. That motion was denied by an order entered October 29, 2024 [Dk. 491].

Debtor subsequently amended her schedules again on December 3, 2024 [Dk. 519] and asserted an exemption in the "pad" underneath the mobile home, to which Houser Bros. objected on January 2, 2025 [Dk. 529]. Houser Bros.' objection was sustained by an order entered February 20, 2025 [Dk. 555].

On January 31, 2025, the Turnover Motion and the Sale Motion were filed [Dks. 538 and 539]. The Court conducted hearings on both motions on March 4, 2025, and then, after noting possible issues with respect to the dual representation of the two competing buyers[13], vacating the auction as discussed above, and conducted another auction on March 27, 2025. At the March 27, 2025, auction, Mr. Peplin appeared, again overbid on the Property, and became the successful buyer. He was represented by a broker, Lori Alvarez of the real estate brokerage RE Resolved.

---

[13] The Court notes that the original auction was vacated by the Court, *sua sponte*, and re-performed on March 27, 2025, not because of any actual problem observed by the Court **but only in an abundance of caution regarding a disclosure that both active bidders were represented by the same real estate broker. The Court observed that there might be an appearance of impropriety (although the Court found no impropriety) and decided that the auction should be held again with no dual representation present.** It is noted that the Court finds no issues arising from that alleged dual representation. This matter is further discussed with this Court's analysis of the Fifth Circuit Court of Appeals' compelling decision, *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019), which addressed almost exactly this situation. The Court also notes that the final bid for the Property was over the amount of the listed value of the Property by Debtor in her schedules.

1

### III.    Discussion – Summary of the Positions Presented

By these Motions, Trustee seeks approval of a sale under § 363 and turnover of the Property under § 542, free and clear of all liens and interests, including Debtor's $600,000 homestead.[14] Trustee asserts that there are no known encumbrances against the Property that have not been avoided, recovered, and preserved for the benefit of the Estate. Trustee asserts that any involuntary liens reflected by Abstract of Judgments were not properly perfected, and thus do not prevent the sale (and in any event are junior to the avoided consensual liens). Trustee further asserts that because all consensual liens have been avoided and recovered, the Estate will realize approximately $301,011.14 from the sales proceeds on account of such liens. With the result of the auction approved by this order, Debtor's homestead exemption is out of the money and most likely will not be paid unless there are sufficient funds. If any funds are available on account of her homestead after payment of the avoided consensual liens, they will be distributed in accordance with the Bankruptcy Code's priority system.

Debtor's opposition contends that Trustee may not sell the Property because she has not consented to such sale and the proposed sale price is insufficient to fully pay her allowed homestead. Debtor further asserts that it is indisputable that J-Pad never lent any money to anyone to support the imposition of a lien on the Property. Therefore, Debtor argues Debtor may benefit from her and that the J-Pad lien the Trustee holds is worth $0.

As set forth below, Debtor is incorrect that Trustee may not sell the Property. Her homestead exemption is junior in priority to the avoided consensual liens.[15] Further, to the extent Debtor claims that the fraudulent nature of the J-Pad lien she granted

---

[14] The sale does not include the ground lease for the underlying space, which was rejected long ago, but Houser Bros. asserts that it has agreed to give any qualified buyer - but not Debtor, a new ground lease.

[15] Consensual liens have priority over exemptions. *See* Cal. Code Civ. P. § 704.850(a) ("The levying officer shall distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720."); *see also In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against involuntary liens").

means that it cannot serve as a basis for Trustee's sale of the Property, this argument also fails. Trustee avoided, recovered and preserved the J-Pad lien in the amount of $225,000. Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate.[16] And, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.[17]

As such, the recovered liens are senior to her allowed homestead exemption and Trustee may sell the Property to realize such funds for the benefit of the Estate. Further, as the Property is one that Trustee may sell, as described below, the Trustee is entitled to turnover.

### A. Sale of the Property, Free and Clear of Liens

Under 11 U.S.C. § 704(a)(1), a trustee shall "collect and reduce to money the property of the estate…."  Debtor's property is property of the Estate which Trustee may sell.[18] Under § 363(b), the Court may authorize a trustee to "use, sell, or lease, other than in the ordinary course of business, property of the estate," provided the movant establishes the following: "(1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice to creditors [and interested parties] was proper; and (4) the sale is made in good faith."

---

[16] Section 551 reads: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."

[17] See *In re Bethea*, 275 B.R. 127, 129 (Bankr D.C. 2002) ("And, even if the exemption was claimed after the avoidance, the exemption would be invalid. Under 11 U.S.C.S. § 522(g)(1)(A), the debtor could only exempt a recovered lien if the transfer of the lien interest was not a voluntary transfer by the debtor. The avoided lien remained an encumbrance in favor of the estate, thus reducing the equity subject to the exemption.").

[18] *See e.g. In re Neal*, 424 B.R. 235,237 (Bankr. E.D. Mich 2010) (In discussing trustee's options to administer property with avoided lien, the court noted trustee's option to sell under § 363(b) or enforce trustee's rights as a lien creditor and when seeking to sell the property, trustee was acting as a trustee, and not a lien creditor). Further, while there is a general prohibition against selling a fully encumbered asset, trustee may rebut the presumption. In addressing whether to permit a carve-out, the court in *KVN Corp. v. Green (In re KVN Corp.),* 514 B.R. 1, 5-8 (9th Cir. BAP 2014) set forth a 3-part test to rebut presumption against trustee selling a fully encumbered asset. If applicable, this test is satisfied: (1) Trustee is fulfilling the trustee's basic duties; (2) Trustee has demonstrated "a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors"; and (3) and Trustee has fully disclosed the terms of the sale agreement to the bankruptcy court. *See KVN Corp.,* 514 B.R. at 8.

1  *In re Slates*, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing *In re*

2  *Lionel*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Wilde Horse Enterprises, Inc.*, 136

3  B.R. 830, 841 (Bankr. C.D. Cal 1991)); *see also In re 240 North Brand Partners, Ltd.*,

4  200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr.

5  S.D.N.Y. 2012); *WBQ Ptnr. v. Va. Dep't of Med. Assistance Servs. (In re WBQ Ptnr.*),

6  189 B.R. 97, 102 (Bankr. E.D. Va. 1995).  As further discussed herein, Trustee has

7  submitted adequate evidence that (a) a sound business purpose exists for the sale,

8  which is realizing the fraudulently concealed equity for the benefit of the Estate's

9  creditors; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and

10  reasonable, as demonstrated by not one, but two auctions; (3) notice to creditors [and

11  interested parties] was proper; and (4) the sale is made in good faith.

12      Under 363(f), "[t]he trustee may sell property under subsection (b) or (c) of this

13  section free and clear of any interest in such property" only if: (1) applicable non-

14  bankruptcy law permits sale of such property free and clear of such interest; (2) such

15  entity consents; (3) such interest is a lien and the price at which such property is to be

16  sold is greater than the aggregate value of all liens on such property; (4) such interest is

17  in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable

18  proceeding, to accept a money satisfaction of such interest. Trustee asserts, and has

19  provided evidence, that all known liens have been avoided.

20                          **B.  Debtor's Homestead and the Avoided Liens**

21      None of Debtor's arguments pertaining to the assertion of her homestead, or the

22  fraudulent nature of the avoided liens, serve as a bar to Trustee's sale of the Property.[19]

23      Trustee successfully avoided the consensual liens on the Property, which were

24  recovered for the benefit of the Estate, and which take priority over Debtor's homestead

25  exemption. *See In re Roach*, 2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019); *see also In*

26

27  _____

28  [19] Debtor raised another argument recently, that a successful buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease with the mobile home park.

1    *re Bunn-Rodemann*, 491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013). Exemptions may be

2    claimed only against involuntary liens, such as judgments, attachments, and execution

3    liens, and then only if the procedures of section 522(f) are followed. *See In re Roach*,

4    2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019).[20]

5        Further, Debtor's argument that the value of the avoided lien is $0.00 is

6    misguided, inaccurate, and a collateral attack on a final judgment. As noted above, the

7    final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024,

8    provides as follows:

9        The transfer to the Defendant of a lien on and security interest in the
         manufactured home located at 16222 Monterey Lane, Space #376, Huntington
10       Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB
         (the "Property") reflected by the secured promissory note and security agreement
11       between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018
         and lien on the Property in the **amount of $225,000** in favor of the Defendant are
12       avoided and preserved for the benefit of the Debtor's estate in the name of
         Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn
13       Gallian.
14

15   See Adv. No. 8:23-ap-01064-SC, Dk. 79 (**emphasis added**). Thus, $225,000 in equity

16   was avoided and preserved. Debtor's admission now that the lien is fraudulent does not

17   help her.[21]  As set forth above, but merits repeating, Debtor's opposition and collateral

18

---

19   [20] *See also Polk v. Cty. of Contra Costa*, 2014 U.S. Dist. LEXIS 111713, at *22 (E.D. Cal. Aug. 11, 2014)
     ("Case law is clear that a homestead exemption is not superior to a consensual lien. *See In re Patterson*,
20   139 B.R. 229, 232 (B.A.P. 9th Cir. 1992) (stating that a consensual lien "cannot be defeated by a
     homestead exemption."); *see In re Pavich*, 191 B.R. 838, 847 (Bankr. E.D. Cal. 1996) ("[E]xemption laws
21   do not protect property from enforcement of consensual liens."); *see In re Bunn-Rodemann*, 491 B.R.
     132, 136 (Bankr. E.D. Cal. 2013) ("[T]he [d]ebtor cannot claim an exemption in the value of the property
22   subject to the creditor's consensual lien. Exemptions may be claimed only against involuntary liens, such
     as judgments, attachments, and execution liens.")); and *Babaee v. Marshack (In re Babaee),* 2023 U.S.
23   App. LEXIS 24253, at *3 (9th Cir. Sep. 13, 2023) ("California law provides that consensual liens must be
     paid ahead of homestead exemptions. *See* Cal. Civ. Proc. Code § 704.850; *see also Amin v. Khazindar*,
24   112 Cal. App. 4th 582, 588, 5 Cal. Rptr. 3d 224 (Cal. 2003) (finding that homestead exemption has no
     effect on liens created voluntarily by property owners, nor does it have any effect on the claims of
25   creditors secured by liens with priority).").
     [21] Judicial estoppel also prevents Debtor from benefitting from her admission that the liens are fraudulent.
26   "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting
     one position, and then later seeking an advantage by taking a clearly inconsistent position. The doctrine
27   is aimed at not only preventing a party from gaining an advantage by asserting inconsistent positions, but
     also ensuring "the orderly administration of justice and . . . the dignity of judicial proceedings," and to
28   "protect against a litigant playing fast and loose with the courts."" *Daff v. Wallace (In re Cass)*, 2013
     Bankr. LEXIS 4653 (B.A.P. 9th Cir. 2013) (cleaned up).

attack of the earlier judgment is (as interpreted by this Court) "I know that it was a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions, since it was a fake lien, the Trustee recovered nothing."  This Court continues to observe that "nothing" would have resulted in a fraudulent payment to Debtor's company of $225,000 had the Property been sold by the Trustee and had the lien not been avoided. It is apparently only worth $0.00 if the creditors are entitled to the money.

As a result of Trustee's avoidance of the fraudulent liens, equity in the Property was created, which escalates to the benefit of the Estate. 11 U.S.C. § 551 provides that any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."); *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990) (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent that the interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586 (9th Cir. B.A.P. 1996) ("§ 551 does not exclude exempt property from preservation. An avoided interest or lien encumbering exempt property is automatically preserved for the benefit of the estate under § 551."); *see also* 11 U.S.C. § 541(a)(3) (defining property of the estate to include any interest in property that the trustee recovers under 11 U.S.C. § 550); 11 U.S.C. § 541(a)(4) (defining property of the estate to include any interest in property preserved for the benefit of or ordered transferred to the estate under 11 U.S.C. § 551).[22]

---

[22] Further, the Supreme Court's ruling in *Schwab v. Reilly,* 560 U.S. 770, 778-89 (2010) supports this assertion. In *Schwab*, the Supreme Court delineated between "in-kind" exemptions and "dollar amount" exemptions. *Id.* The Court held that the "provisions in § 522(d) ... permit debtors to exempt certain property in kind or in full regardless of value." *Id.* at 784. In the federal exemption scheme, in-kind exemptions include "professionally prescribed health aids, . . . disability benefits, [and] unmatured life insurance contracts." *Id.* Unlike in-kind exemptions, dollar-amount exemptions are exemptions that allow the debtor to exempt some portion of the exempt property's value. *Id.* at 800, n.5. While the effect of an allowed in-kind exemption is to remove the exempt property from the estate, for an allowed dollar-amount exemption, as is the case here, "title to the asset will remain with the estate pursuant to § 541." *Id.* at 792.

"Section 551 is intended to prevent the windfall to junior lienors that would otherwise result when a trustee in bankruptcy successfully avoids a senior lien on property." *In re Appalachian Energy Indus., Inc.,* 25 BR. 515, 516 (Bankr. M.D. Tenn. 1982). "The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided."[23]  The same results occur for homestead possessors (and in this case caused the fraudulent liens to be asserted in the first place, although that is not a requirement).

Finally, Debtor may not reach equity achieved by the estate, as under 11 U.S.C. § 522(g) a debtor may not claim any exemption in amounts recovered by a trustee after a debtor's voluntary transfer.

As explained by the court in *In re Bethea*:

Under § 522(c), property exempted generally remains liable for a debt secured by a lien. *In re Granati*, 271 B.R. 89, 95 (Bankr. E.D. Va. 2001) ("[V]alid liens, even against exempt property, pass through bankruptcy and may be enforced against the collateral ...."). Accordingly, § 522 treats a debtor's interest in real property as distinct from a mortgagee's lien on that property. Unless the debtor specifically listed the lien as being exempted, his exemption of the real property alone did not suffice to claim an exemption of the lien (that upon avoidance by the trustee would be property of the estate and exemptible under § 522(g) if the debtor met certain conditions).

*In re Bethea*, 275 B.R. 127, 129-130 (Bankr. D.D.C. 2002). Similarly, in the present case, Debtor may not claim an exemption in the avoided equity and the assertion of her homestead does not prevent Trustee's sale.

## C.  Buyer as Good-Faith Purchaser Under § 363(m)[24]

§ 363(m) provides that:

The reversal or modification or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

---

[23] S. REP. No. 95-989, at 91 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5877; H.R. REP. No. 95-595, at 376 (1977), reprinted in 1978 U.S.C.C.A.N. 5963.
[24] On appeal, a good faith finding under § 363(m) is reviewed for clear error. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002).

Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys "in good faith" and "for value." *In re M Capital Corporation*, 290 B.R. 743, 746 (9th Cir. BAP 2003). *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3rd Cir.1986). Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quoting *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985)); *In re M Capital Corp.,* 290 B.R. at 746-47, 752 ("Where good faith has been challenged, facts must be established to obtain the safety that section offers.").

"The choice of whether to make a finding of 'good faith' as part of the initial sale process belongs, in this circuit, to the bankruptcy court. Because findings of 'good faith' made at the time of the sale may be premature because they are made before the really interesting facts emerge, the Ninth Circuit does not require that a finding of 'good faith' be made at the time of sale." *In re Thomas*, 287 B.R. 782, 785 (9th Cir. B.A.P. 2002). The relevant focus of inquiry is good faith during the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985).

The original auction was conducted on March 4, 2025. The stalking horse bidder (the original bidder) and an over-bidder appeared. The over-bidder won the auction. The Court received an objection by Debtor to the Court's announced section 363(m) finding made at the sale hearing on March 4, 2025.  That objection asserted that a single broker represented the two potential buyers appearing at the sale auction, and in fact the broker was also the stalking horse bidder. The Court was first advised of the potential dual broker representation at the time of the hearing. Reviewing the objection and undertaking further research, the Court had several concerns and risks to consider, including (1) conflict of interest between buyers, (2) the duty of loyalty and confidentiality, (3) a

1   risk of auction manipulation, (4) a possible reduced leverage for the clients, (5)

2   possible disclosure and legal risks, and (6) creditor considerations and court

3   scrutiny requirements.

4        This Court has always insisted on full transparency and a competitive

5   bidding process in Section 363 sales. While full disclosure & consent may have

6   been provided to both buyers, the Court and other parties in interest must have

7   that information earlier than provided to evaluate the efficacy of the sales

8   process, and the Court should have been provided an opportunity to consider

9   and make any necessary adjustments, if required.

10       In this instance, the after-the-fact solution to ensure undivided loyalty,

11  avoid conflicts and to provide full transparency, was to vacate the auction results

12  of March 4, 2025, and order a new, second auction to be held on March 25,

13  2025, with prior full disclosures of broker representations of any buyers.

14       On March 27, 2025, at 11:00 am, the Court held a continued hearing to

15  permit the Chapter 7 Trustee to conduct a new auction, which was conducted by

16  the Chapter 7 Trustee on that date and time.

17       During the new auction hearing, upon the Trustee's request for the finding

18  of good faith of the successful buyer under section 363(m), Debtor through

19  counsel objected to a finding of good faith and requested that Debtor be

20  permitted to supplement the record and be provided with an opportunity to submit

21  evidence that the buyer is not a good faith purchaser under that provision of the

22  Bankruptcy Code.[25] The Court permitted Debtor to file and serve additional

23

24  _____

[25] During the April 10, 2025 hearing, Debtor's counsel asserted that the evidentiary hearing was not
25  requested by Debtor's counsel. However, a review of the transcript from the March 27, 2025 hearing,
reflects the following:
26        Mr. Blank: Your honor, I just want to make a record that you have not allowed me to a
          fulsome opportunity to present evidence and that I have asked for that opportunity and
27        you have denied it  .....
          Court: Do you have any evidence?
28        Mr. Blank: ... and I have more to say and yet you have cut me off....
          Court: Yes, Mr. Blank, I have a very busy ...
          Mr. Blank: ...which I understand...

1    briefing and evidence in support of her contention that the successful buyer is not

2    one in good faith, *See* Order, Dk. 585, which provided additional time to further

3    address their positions and present evidence on this subject. Debtor, through

4    counsel, filed no evidence but stated that counsel would cross-examine any

5    witnesses provided by the Trustee and Buyer, and further argued that the

6    successful bidder at the March 25, 2025, auction be disqualified.

7        The Ninth Circuit Bankruptcy Appellate Panel has held that "[w]hile a

8    finding of 'good faith' is not an essential element for approval of a sale under

9    section 363(b), such a determination becomes important with respect to potential

10   mootness when an appeal is taken from the order authorizing the sale."

11   *Fitzgerald v. Ninn Worx SR, Inc. (In re Fitzgerald),* 428 B.R. 872, 880-81 (9th Cir.

12   BAP 2010) (citing *Thomas v. Namba (In re Thomas),* 287 B.R. 782, 785 (9th Cir.

13   BAP 2002)).

14       The BAP in *Fitzgerald* continues, "[t]he boilerplate 'good faith' finding in

15   the Sale Order does not suffice under section 363(m), and the bankruptcy court

16   should not have signed such an order without an evidentiary foundation. Id. at

17   881 (citing *T.C. Investors v. Joseph (In re M Capital Corp*.), 290 B.R. 743, 752

18   (9th Cir. BAP 2003)). "'Unless and until 'good faith' has been determined, the

19   appeal is not moot under section 363(m).'" Id. (citing In re Thomas, 287 B.R. at

20   785).

21       In order to allow an appellate court to determine conclusively the

22   mootness of any appeal, the record of the bankruptcy court must be very clear.

23

24            Court: Mr. Blank, I have a very busy calendar today and I understand that you file things
              without permission, without leave of Court constantly and I am asking you one more time

25            do you have any evidence that you can tell me now with respect to countering the
              evidence that this Court has with respect to a 363(m) finding? Do you have any

26            evidence?
              Mr. Blank: The evidence before the Court, I believe, contradicts what the Court is saying

27            about granting a 363(m) finding.
              Court: Thank you very much. Do you have anything else?

28            Mr. Blank: No.
      Hearing Transcript from 3/27/25 at 10:14:17 a.m. - 10:15:16 a.m.

That is because, under § 363(m), when a "sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *Paulman v. Gateway Venture Partners III, LP (In re Filtercorp, Inc.),* 163 F.3d 570, 576 (9th Cir. 1998); 11 U.S.C. § 363(m).

> An "[a]bsence of good faith is 'typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Adeli v. Barclay* (In re Berkeley Del. Court, LLC), 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570, 577 (9th Cir. 1998)). And the relevant focus of inquiry is good faith during the course of the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy*), 786 F.2d 900, 902 (9th Cir. 1985).

*Lind v. Spacone (In re Lind),* 2019 Bankr. LEXIS 2052, *7-8 (9th Cir. BAP 2019).

This is the reason that the Court established and conducted an evidentiary hearing on the request for a section 363(m) finding.  Within its Order for the conduct of an evidentiary hearing, the Court cautioned the parties that the evidentiary hearing is expressly limited to the issue of whether a section 363(m) good faith finding can be made as to the successful bidder of the Property, Mr. Peplin. Notwithstanding this Order, Debtor's counsel continued to argue matters outside the scope of the hearing, and the Court listened.

**The Findings and Conclusions regarding Good Faith of the Buyer under Section 363(m).**

First, the determination of a finding of good faith under Section 363(m) does not impact at all the determination of a sale result under Section 363. This proceeding only addresses whether the buyer at the auction is a good faith purchaser for purposes of implementing the provisions of Section 363(m). The latest request of Debtor to disqualify the buyer is outside the scope of the proceedings here.[26]

---

[26] *As set forth in the earlier footnote,* fn. 19, Debtor raised another argument recently, that a successful buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile

Section 363 of the Bankruptcy Code generally allows the trustee to use, sell, or lease property of an estate, other than in the ordinary course of business, after notice and a hearing. 11 U.S.C. § 363. Under § 363(m), the validity of a "sale or lease of property" executed under the terms of section 363 cannot be challenged on appeal "unless [the bankruptcy court's] authorization and such sale or lease were stayed pending appeal." *Id*. § 363(m). This is why, in almost all sales proceedings, the Trustee asks for a good faith finding with respect to the successful purchaser. It is the Trustee's burden to demonstrate good faith. The Trustee has presented significant evidence to support the assertion and basis for a good faith finding under § 363(m).

For purposes of a full appreciation of this Court's understanding of its duties with respect to its § 363(m) finding, the standards of review of its decision follow.

A reviewing court analyzes a bankruptcy court's determination of a good faith purchaser pursuant to 11 U.S.C. § 363(m) under the clear error standard of review. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002). The "clear error" standard of review is a deferential standard used by appellate courts when reviewing findings of fact made by a trial court or lower tribunal, particularly in bench trials (trials without a jury) or in certain administrative or bankruptcy proceedings.

It means that the appellate court will not overturn a factual finding unless it has a "definite and firm conviction that a mistake has been committed." *In re Banks*, 263 F.3d 862, 869 (9th Cir. 2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

The appellate court gives great deference to the trial court, which had the opportunity to see the witnesses, hear the testimony, and evaluate credibility.

It applies to findings of fact, not legal conclusions (which are reviewed de novo). It further does not mean the appellate court must be convinced the lower court was correct — just that the finding wasn't clearly wrong, and it is often phrased like this:

---

home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease with the mobile home park.

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*United States v. U.S. Gypsum Co.,* 333 U.S. 364 (1948).

The Ninth Circuit has always adopted this standard of review. For example, and recently:

> [T]he bankruptcy court did not clearly err by finding that the purchaser of the real property was a bona fide good faith purchaser. *See Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1173-74 (9th Cir. 1988) (discussing good faith requirement for operation of mootness rule in bankruptcy; explaining that good faith does not depend on value); *see also Decker v. Tramiel (In re JTS Corp.),* 617 F.3d 1102, 1109 (9th Cir. 2010) (standard of review for bankruptcy court's findings of fact).

*Lind v. Spacone (In re Lind),* 840 Fed. Appx. 988, 989 (9th Cir. 2021). This standard mandates that the bankruptcy court look to the facts to determine the good faith purchaser, which includes the sales process undertaken by the bankruptcy estate.

At the March 27, 2025, auction, Mr. Peplin overbid on the Property and was the successful buyer. The stalking horse bidder remained as the first bidder and it did not overbid Mr. Peplin's overbid. As noted above, Mr Peplin was represented by a separate broker.

On April 10, 2025, the Court conducted an evidentiary hearing on the issue of § 363(m). Eight declarations from five parties were offered into evidence and considered by this Court. Those declarations are as follows: Jeffrey Golden, Chapter 7 Trustee [Dk. 539], Greg Bingham [Dks. 539, 560, 579], Greg Peplin the successful buyer [Dks. 566, 577], Lauri Alvarez [Dk. 580], and Chris Houser [Dk. 591]. Combined, each of these declarations establish a prima facie case that the standards by the Ninth Circuit for a finding of good faith under § 363(m) have been met. Those standards are set forth above.

Debtor was offered the opportunity to cross-examine each of these declarants, but Debtor only requested that declarant Peplin be placed under oath and submit to cross-examination. Debtor's counsel inquired whether Mr. Peplin ever told Galaxy that they were free to overbid Mr. Peplin (paraphrased). Mr. Peplin responded, "not specifically." [27] The only other question Debtor's counsel posed was whether Mr. Peplin ever received anything from Galaxy, written, orally, or otherwise, stating that Galaxy waived any right to any commission that may have been earned by representing Mr. Peplin in the sale (paraphrased). Mr. Peplin responded, "no."

Trustee's attorney, Mr. Israel, questioned Mr. Peplin and asked whether Mr. Peplin had a conversation with David Guarino of Galaxy and advised him that he was no longer Mr. Peplin's broker (paraphrased). Mr. Peplin responded that he had that conversation and confirmed he told Guarino that he was no longer his broker. However, Debtor's counsel objected to Mr. Peplin's responses as "hearsay." The Court overruled the objection. Trustee's attorney also asked Mr. Peplin whether his statement, that he told Mr. Guarino that he was no longer his broker, was a correct one, which Mr. Peplin answered in the affirmative. Debtor's counsel again objected to the response asserting hearsay. The Court again overruled the objection and finds that they are party admissions (Mr. Peplin being a party to this § 363(m) finding). Nevertheless, the Court is not considering the responses to Trustee's questions of Mr. Peplin at the April 10, 2025 evidentiary hearing with respect to this decision, as they are irrelevant.

The Court is mindful that the original purpose of its evidentiary hearing was because of the March 27 demand of Debtor's counsel to offer evidence and argument.[28]

---

[27] Counsel did not object to his own questions as hearsay.
[28] *See* fn. 25.

1   The Court has carefully considered all of the evidence presented, and

2   further has carefully considered all of the policy and economic arguments

3   presented by Debtor with respect to the conduct of the auction and this Court's

4   analysis under section 363(m).

5   Absence of good faith is "typically shown by fraud, collusion between the

6   purchaser and other bidders or the trustee, or an attempt to take grossly unfair

7   advantage of other bidders." *In re Filtercorp, Inc.,* 163 F.3d 570, 577 (9th Cir. 1998).

8   The Court has found the 2019 Fifth Circuit Court of Appeals decision *Rai*

9   *v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019) quite

10   helpful, as it directly addressed the issue of dual broker representation of two

11   potential buyers involved in a trustee section 363 sale. In reviewing a District

12   Court's dismissal of a debtor's appeal, the Fifth Circuit set out what this Court

13   believes are excellent guidelines to assist in consideration of Debtor's objections.

14   Addressing the same objections as this Debtor presents, the Fifth Circuit said:

> Rai primarily argues that Hawkins, the real estate broker, violated ethical
> and fiduciary duties, which Rai believes precludes a finding of good faith.
> This allegation is based on Hawkins's representing the purchasers and,
> through an agent of his firm, another bidder, meaning that Hawkins would
> have earned a commission if either bidder bought the property. But Rai
> does not show that Hawkins failed to disclose this conflict or to obtain
> consent to represent both parties. More fundamentally, as the district court
> observed, that Hawkins's firm represented two bidders does not show
> collusion. Because Hawkins would receive a commission from the sale to
> either of these bidders, he had no incentive to collude and depress the
> price; a reduction in the sales price would have adversely affected his
> pocketbook. Neither evidence nor common sense supports Rai's collusion
> allegation.
>
> Rai next argues that Taylor inadequately marketed the auction, resulting in
> suppression of the bidding. It is true that some ads were ineffective, but
> that is typically true of marketing efforts; some strategies work better than
> others. That is why marketeers try different approaches, which Taylor did.
> The result was a well-attended and competitive auction. Rai complains
> that only bidders from Mississippi attended. But a host of reasons might
> explain why there was only local interest despite national marketing
> efforts. None of this undermines the compelling evidence that the real
> estate sold for a market price. It is brazen for Rai to contend otherwise

when the company he helped run tried to sell Tract 4 just a couple years earlier for less than 1/3 of what it sold for at auction.

Lastly, Rai argues that Taylor might not have been a disinterested auctioneer because the trustee's son works for him "[f]rom time to time." It is unclear how this additional conjecture amounts to fraud that undermines the competitive nature of the auction or otherwise casts doubt on the economic evidence that the land was sold for value at a competitive auction.

*Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019).

Based upon the evidence before the Court arising throughout this proceeding, the Court makes the following findings of fact and conclusions of law: The auction was properly and adequately marketed; the auction had adequate participation; the auction encouraged competitive bidding that increased the sale price; there was no collusion even though during the first auction (now vacated) one broker may have represented different auction bidders (this has now been corrected by the new auction with no dual representation); the sale was an arm's length transaction; the price was adequate under the circumstances (the price was over the amount of the value of the Property listed in Debtor's schedules); and the Buyer is a good-faith purchaser under 11 U.S.C. § 363(m).

The broker's dual representation at the first auction did not suggest collusion, because the bidding was competitive. There was no dual representation at the second auction. It is also noted that the final sale price was as high or higher than the value placed on the Property by Debtor in her schedules. This Court has received evidence of a fair, non-collusive, honest auction, and has not been presented with evidence of any collusion, dishonesty, or untoward actions in this process. The Buyer is determined to be in good faith under the standards within the Ninth Circuit.

1

### D. Waiver of Rule 6004(h) Stay

Bankruptcy Rule 6004(h) provides that an "order authorizing the ... sale ... of property ... is stayed until the expiration of 14 days after entry of the order, <u>unless the court orders otherwise</u>." The 1999 Advisory Committee Note to Bankruptcy Rule 6004 states that the rule is intended "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the ... sale ... of property under § 363(b) of the Code before the order is implemented." *In re Verity Health Sys. of California, Inc.*, 598 B.R. 283, 296 (Bankr. C.D. Cal. 2018).

In this matter, the Court declines to waive the 6004(h) stay. Debtor has prematurely filed a Motion for Stay Pending Appeal, which will be resolved under separate order.

### E.  Turnover

Trustee seeks turnover of the Property. Section 542(a) of the Bankruptcy Code requires: "Except as provided in subsection (c) or (d) of this section, an entity… shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Moreover, a debtor has an affirmative duty to cooperate with the Trustee and turn over all estate property to the Trustee. 11 U.S.C. § 521(a)(3)-(4).

Trustee asserts that he is not confident Debtor will timely vacate and requires an enforceable order granting possession to give assurances to the buyer that possession can be delivered upon the close of sale. Having reviewed the entire history of this case, the Court agrees. Bankruptcy courts have the power to authorize the issuance of a writ of execution or assistance authorizing and directing the Marshals to compel the surrender of real property. *See* Fed. R. Civ. P. 70 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7070); *In re Kerlo*, 311 B.R. 256, 261 (Bankr. C.D. Cal. 2004) ("'a writ of assistance to deliver . . . possession [of real property] . . . was agreeable to the usages and principals of law' and 'clearly lies under the express terms of Fed. R. Civ. P. 70.'") (citing *Hamilton v. McDonald*, 503 F.2d 1138, 1148 (9th Cir.

1974)); *In re Bolden*, 327 B.R. 657, 668 (Bankr. C.D. Cal. 2005) (determining that debtor was uncooperative and "trustee needs a turnover order to market and sell the property"). Indeed, the Court may issue any order that is necessary and appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Section 105 also authorizes the Court to grant a trustee's request for issuance of a writ of assistance. Specifically, orders for possession of property may be enforced through writs and orders under Section 105(a). *See In re Kerlo*, 311 B.R. at 262.

### IV.    Motion for Stay Pending Appeal

As noted above, one day prior to the March 4, 2025, hearings, Debtor filed a Motion to Stay Pending Appeal on March 3, 2025 [Dk. 562] ("Motion for Stay"). At the hearing, the Court treated the Motion for Stay as both a sur-reply and a Motion for Stay. Under separate order, this Court shall resolve the Motion for Stay Pending Appeal.

### V.    Conclusion

As set forth above, Trustee may sell the Property and obtain turnover of the Property. Debtor's objections are overruled. Mr. Peplin is the successful bidder and is awarded the finding of a good faith buyer under § 363(m).

Debtor has requested a denial of a 6004(h) waiver to give her time to preserve her appeal rights, which is the purpose of 6004(h). However, Debtor, prior to the issuance of this Memoraudum Opinion, has filed both a Notice of Appeal and Motion for a Stay Pending Appeal. The Motion for Stay Pending Appeal shall be addressed in a separate order. The Trustee's request for a waiver of rule 6004(h) is granted.

**IT IS SO ORDERED.**

Date: April 10, 2025

Scott C. Clarkson
United States Bankruptcy Judge