


**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br>Debtor. | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>**ORDER DENYING MOTION FOR STAY PENDING APPEAL** |

One day ***prior*** to the first hearings on the Trustee's two Motions entitled (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance [Dk. 538] ("Turnover Motion"), and the (2) Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And Homestead Exemption [Dk. 539] ("Sale Motion"), Debtor in this case filed a motion for stay pending appeal [Dk. 562] ("Motion"). For all of the reasons stated below, the Court DENIES the Motion for Stay Pending Appeal.

## I. Preliminary Statement

Before the filing of this voluntary Chapter 7 bankruptcy proceeding, Jamie Lynn Gallian ("Debtor" or "Gallian") engaged in certain fraudulent conduct with respect to the placement of a number of fraudulent liens on the Property in an attempt to shelter the Property from her creditors. She also submitted to this Court numerous false sworn statements under penalty of perjury throughout this case.

Debtor has the right to assert her homestead, which was awarded to her by the Bankruptcy Court. Her current problem is, by a combination of her own fraud and the Trustee's actions to avoid the fraudulent liens she originally placed on the mobile home, she initiated the Trustee's duty to recover the fraudulent lien (in the amount of $225,000), the recovery of which by operation of law is positioned higher in priority than her homestead rights.

This result is seen often in bankruptcy courts. The Bankruptcy Code and its recovery and avoidance statutes, specifically sections 551, 548 and 522(g)[1] *are designed to encourage debtors and others not to engage in fraudulent conduct before they file their bankruptcy petition*.[2] These sections of the Bankruptcy Code are also designed to provide recovery to the estate by a chapter 7 trustee's ability to avoid fraudulently or illegally placed liens onto property prior to the filing of the bankruptcy petition.

Additionally, when Debtor placed the fraudulent lien totaling $225,000[3] on the Property, purportedly held by her LLC, she also gave various family members and friends more liens on top of the $225,000 lien. These liens encumbered the Property

[1] Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. Further, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.

[2] It usually works like this: a potential individual debtor asks their potential bankruptcy lawyer "[w]hy can't I put a fake lien on my house in favor of my son or cousin so that the bankruptcy trustee won't sell my home?" The lawyer (at least a competent one) explains "[B]ecause if you do this, and the trustee avoids the lien, you might have your possible homestead subordinated to the avoided lien amount, whether the lien was actual or not. Don't do it."

[3] Debtor originally scheduled the obligation in favor of J-Pad as $175,000; she subsequently amended her schedules to falsely increase the amount to $225,000.

without legitimate obligations and were avoided at considerable expense by the Trustee.[4] Ironically in this matter, Debtor's opposition and collateral attack of the earlier judgment is (as the Court interpretes it) "I know that it was a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions, since it was a fake lien, the Trustee recovered nothing." This Court notes that "nothing" would have resulted in a windfall payment of $225,000 to Debtor's company J-Pad LLC, of whom Debtor was the sole member.

The Court also notes that Debtor has maintained her ruse as to the validity of the lien up to, and even after, the Court avoided the fraudulent lien.

In summary, through costly adversary proceedings in this case, the Chapter 7 Trustee avoided, recovered and preserved both the fraudulent transfers of the Property and Debtor's fraudulent liens for the benefit of the estate. No party appealed those judgments, and they are final. The entirety of the opposition filed by Debtor related to the Sale and Turnover Motions were a collateral attack on the previous avoidance actions.[5]

The Trustee, by its Turnover and Sale Motions, proceeded despite Debtor's ongoing and sometimes (recurringly) untimely filed objections. The Order approving the Sale and Turnover has now been entered, as well as a finding under Section 363(m), and Debtor's Motion for Stay Pending Appeal is now ripe for this Court to rule upon.

Although Debtor has, until this point, always maintained that the at-issue liens were legitimate, she now contends that the liens lacked value.[6] Therefore, Debtor

---

[4] Debtor's discharge was denied after a trial by a decision issued May 23, 2023, in which the Court found that Debtor had concealed her equity in the Property by issuing fraudulent liens, including the $225,000 J-Pad lien. *See* Adv. No. 8:21-ap-01097-SC, Dk. 81. That decision was affirmed on appeal and is now final.

[5] The Order on avoidance of the $225,000 lien is found at Adv. No. 8:23-ap-01064-SC, Dk. 79. The Order specifically sets forth the recovered value of the $225,000, which cannot now be challenged by a collateral attack in this proceeding.

[6] The Court observes that this attempted concession is being made by Debtor not to right her wrongs, but to circumvent the consequences of having a lien avoided, recovered, and preserved by the Trustee for the benefit of an estate. As set out in this Memorandum Opinion, this argument is (1) too clever by half, (2) permits this Court to directly infer the intentional wrongdoing and bad faith of Debtor (where the earlier and common prevarications by Debtor, until the last moment, have insisted that the lien in question was legitimate), and (3) is an impermissible collateral attack on a final (un-appealed) judgment of this Court.

argues that since the liens lacked value, Trustee cannot sell the Property over her objection. However, such a position would reward Debtor's fraudulent conduct, undermining the Bankruptcy Code's provisions that are designed to prevent such abuses and at the same time protect the interests of honest debtors and creditors alike.[7] In other words, Debtor's position is that a debtor, pre-petition, may place fraudulent liens on her property to obfuscate any equity, and after she is caught and a trustee avoids, recovers and preserves those fraudulent liens (in whatever amount they were recorded or asserted to be at the time), she can turn around and admit that they were fraudulent and worthless. This is the argument that the Trustee has not recovered anything of value. What's missing is that the transferee (her own company) of a fraudulent lien would have been paid $225,000 in the event of a sale. In the end, Debtor's counsel's argument is, she can commit fraud with impunity. Of course this is a collateral attack on the specific, un-appealed, and final judgment entered by the Court assigning value to the avoided lien.

## II. General Relevant Background

Who is this Debtor? Her voluntary chapter 7 case was commenced on July 9, 2021 ("Petition Date"). This case is atypical given the number of disputes which have arisen surrounding Debtor's residence in what should have been a simple, straight forward case and, which as noted throughout this opinion, have resulted in the denial of Debtor's discharge.[8]

In her initial filing, Debtor scheduled an interest in the Property (a mobile home) at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649. She valued the Property at $235,000, stating: "title held by Debtor's single member LLC – J-Sandcastle

[7] A central purpose of the Code is to provide individual debtors with a procedure to reorder their affairs and make peace with their creditors, but the Bankruptcy Code limits this opportunity of a "fresh start" to *honest* but unfortunate debtors. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

[8] The disputes are, for the most part, in furtherance of Debtor's bid to keep the Property. For instance, Debtor has filed several motions to avoid the liens of Huntington Beach Gables Homeowners Association and of the Trustee, in place of J-Pad, a motion seeking to abandon the Estate's interest in her residence, an application to compel Trustee to cancel his transfer title to the Property, a motion to convert her case, and several appeals. The Court equates Debtor's oppositions to the sale of the Property in the same vein.

Co., LLC," with a lien on it held by J-Pad, LLC in the amount of $175,000, which amount was later increased to $225,000. **Debtor subsequently amended her schedules or petition no less than 13 times.**[9] After significant litigation involving objections to her homestead, and appeals, Debtor now possesses an allowed homestead in the amount of approximately $600,000 on the Property.

On October 18, 2021, Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") initiated an adversary proceeding, Adv. No. 8:21-ap-01097-SC, against Debtor asserting claims under 11 U.S.C. §§ 523(a)(2) and (a)(6) and 11 U.S.C. § 727.[10] The Court bifurcated the claims and conducted a trial on the § 727 claim. After a trial, which occurred on April 26, 2023, and having considered post-trial briefing, the Court issued a decision on May 23, 2023, as Docket No. 81 in Adv. No. 8:21-ap-01097-SC, **denying Debtor's discharge ("727 Decision")**. In the 727 Decision, the Court specifically found as follows:

> Additionally, facts were presented to the Court demonstrating that Defendant further concealed her equity in the property through the granting of liens to her business entities and family members, which liens existed during the relevant time period. For example, in late 2018, Defendant also executed a promissory note and security agreement on the mobile home by and between two entities that she managed, JSandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72, Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially in the amount of $175,000 Defendant did not fund the balance of the $225,000 loan until approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the foregoing information regarding the timing of funding, or source of funding, was reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a secured creditor, continuing the ongoing concealment of her true

[9] *See* dockets 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468, and 519.

[10] The Court may take judicial notice of its own records in the same case. *See In re Abbatiello*, 484 B.R. 655, 658 (Bankr. M.D. Pa 2013) ("A bankruptcy judge may take judicial notice of his or her own docket"); *In re Martell*, 349 B.R. 233, 234 n.1 (Bankr. D. Idaho 2005) ("[T]he Court takes judicial notice of its file in this matter."). Further, the Court's rulings with respect to Debtor's behavior in connection with the Property, which form the basis for the 727 Decision, constitute law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.) (cert. denied 508 U.S. 951 (1993).

> interest in the loan. Additionally, within the year prior to the petition, liens in favor of Defendant's two adult sons, Steven and Brian Gallian, were placed on the property, despite the fact that neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.
>
> ….
>
> As noted previously, J-Pad was the holder of a $22[5],000 promissory note. Defendant herself executed the promissory note on J-Pad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a significant amount of money, and Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder of a significant asset, is a material, false oath made knowingly and fraudulently. So too was Defendant's failure to schedule a value for JPad, who held a significant asset in the form of the aforementioned note and lien on the mobile home.
>
> The foregoing, coupled with the evidence presented by Plaintiff of Defendant's other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against Defendant on its § 727(a)(4) cause of action.

727 Decision, pgs. 11-12, 16. Debtor appealed this decision, which was affirmed by the United States District Court on July 31, 2024. *See* Adv. No. 8:21-ap-01097-SC, Dk. 131. After the denial of her discharge, Debtor sought to dismiss her case by a motion filed June 27, 2023 [Dk. 345], which was denied by an order entered July 26, 2023 [Dk. 368].

On June 30, 2023, Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* ("Avoidance Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle, LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, "Defendants"). Trustee recovered title to the Property (which pre-petition she had placed not in her name, but of her LLC) and avoided, recovered and preserved all of the consensual liens. The final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024, provides as follows:

> The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB

> (the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

See Adv. No. 8:23-ap-01064-SC, Dk. 79.

Following the recovery of the Property (from J-Sandcastle, LLC) along with the avoidance, recovery, and preservation of the consensual liens on the Property, Trustee filed an application to retain a broker to market and sell the Property on June 1, 2024 [Dk. 395], which Debtor opposed [Dks. 401-403]. The motion was granted by an order entered September 5, 2024 [Dk. 431]. Of note, at the hearing on Trustee's application to retain a broker, Debtor admitted to listing the Property on her own, which resulted in the Court's issuance of an order to show cause for contempt on September 12, 2024 [Dk. 440], which was discharged after a hearing held on November 5, 2024, when Debtor removed her broker.

In addition, shortly after the Court's approval of Trustee's broker's employment, Debtor filed a motion to convert the case to Chapter 13 on September 11, 2025 [Dk. 438]. That motion was denied by an order entered October 29, 2024 [Dk. 491].

Debtor subsequently amended her schedules again on December 3, 2024 [Dk. 519] and asserted an exemption in the "pad" underneath the mobile home, to which Houser Bros. objected on January 2, 2025 [Dk. 529]. Houser Bros.' objection was sustained by an order entered February 20, 2025 [Dk. 555].

On January 31, 2025, the Turnover Motion and the Sale Motion were filed [Dks. 538 and 539]. The Court conducted hearings on both motions on March 4, 2025, and then, after noting possible issues with respect to the dual representation of the two competing buyers,[11] vacating the auction as discussed above, and conducted another

---

[11] The Court notes that the original auction was vacated by the Court, *sua sponte*, and re-performed on March 27, 2025, not because of any actual problem observed by the Court **but only in an abundance of caution regarding a disclosure that both active bidders were represented by the same real estate broker. The Court observed that there might be an appearance of impropriety (although the Court found no impropriety) and decided that the auction should be held again with no dual**

auction on March 27, 2025. At the March 27, 2025, auction, Mr. Peplin appeared, again overbid on the Property, and became the successful buyer. He was represented by a broker, Lori Alvarez of the real estate brokerage RE Resolved.

Finally, Debtor through counsel requested that the Court not make a Section 363(m) finding of good faith. An evidentiary hearing on this matter was held on April 10, 2025, and after carefully consideration of the evidence, the Court found that the Buyer of the Property was a good faith purchaser.

**III. Discussion Regarding the Request for Stay Pending Appeal**

As noted above, one day prior to the March 4, 2025, hearings, Debtor filed a Motion to Stay Pending Appeal on March 3, 2025 [Dk. 562]. At that hearing, the Court treated the Motion for Stay as a sur-reply as well as a Motion for Stay. However, until the order re the Turnover Motion and Sale Motion was entered, the Motion for Stay was premature. *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1241 (C.D. Cal. 2007) (citing *Nikon, Inc. v. Ikon Corp.,* 1992 U.S. Dist. LEXIS 19386, at *8 (S.D.N.Y. 1992) ("In the absence of a pending appeal, a request for relief under Rule 62(c) is premature.")).

A request for a stay pending appeal is committed to the exercise of judicial discretion. *Doe v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citation omitted). The Court, when considering whether to issue a stay pending appeal, must consider the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

---

**representation present.** It is noted that the Court finds no issues arising from that alleged dual representation. This matter is further discussed with this Court's analysis of the Fifth Circuit Court of Appeals' compelling decision, *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019), which addressed almost exactly this situation. The Court also notes that the final bid for the Property was over the amount of the listed value of the Property by Debtor in her schedules.

*Guzman v. Shewry*, 2008 U.S. Dist. LEXIS 138862, at *2 (C.D. Cal. 2008) (citations omitted). The first two factors of the traditional standard are the most critical. *Nken v. Holder*, 556 U.S. at 434. The Court addresses each of these standards, in turn.

<u>(1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits</u>

Debtor argues that she is likely to prevail on the merits as Trustee may only sell a homestead if there is non-exempt equity. In addition, Debtor argues: 1) Debtor's exempt interest in the Property includes her right to continued possession of the Property; 2) Debtor's exempt interest is not property of the Estate and may not be sold by Trustee (Debtor also argues that her exempt interest in the Property, and the right to possess it, are not rights that a Trustee may sell free and clear of); 3) Debtor argues that the judgment avoiding and preserving the J-Pad lien does not give Trustee the right to sell the Property; and 4) Finally, contrary to the Court's statement in its tentative ruling, Debtor is not collaterally attacking the J-Pad Judgment.

Debtor's first argument states that the California exemption law recognizes the sanctity of an equitable interest in homestead property and the right to be free from threats of dispossession. That's hokum. The California exemptions provide that when proper procedures are used for an involuntary sale (such as a bankruptcy trustee sale or a judgment lien sheriff sale) voluntary liens, including those avoided and preserved for the debtor's creditors by a bankruptcy trustee, are paid before a homestead exemption. The homestead exemption takes a senior position only to involuntary liens such as judgment liens. If it didn't work that way, no secured lender would lend a dime to a homeowner. Debtor's assertion is simply a misstatement of the law.

Debtor's second and third arguments are based on assertions that bankruptcy law and the applicable rules do not permit a trustee to sell the exempt portion of property, or free and clear of that exempt portion and the rights appurtenant thereto. Again, the arguments presented by Debtor are mere sophistry. The bankruptcy law and rules allow the sale of a Chapter 7 debtor's property and require the trustee to make the

proper distributions in order of priority. Again, in this case, the Property was sold, and the proper distributions will be to holders of voluntary liens (including those avoided for the benefit of the bankruptcy estate) and then to any homestead funds, if any funds remain following the distribution to senior voluntary lien holders (including the bankruptcy estate in this instance).

In this matter, on the Petition Date, title to the Property was not in Debtor's name but held in the name of J-Sandcastle Co, LLC ("J-Sandcastle"). The Court notes that Debtor has amended her schedules at least 13 times to date. In her original schedules, Debtor valued the Property at $235,000 and disclosed that title to the Property was vested in J-Sandcastle, LLC (of which she was its managing member). Further, she scheduled the Property as being subject to a consensual lien in favor of J-Pad LLC, first in the amount of $175,000, and then later $225,000, plus interest, as well as other voluntary liens in favor of Debtor's family members, ex-husband, and a former roommate.

Trustee has recovered title to the Property and avoided the consensual liens on the Property.[12]

It is undisputed that Debtor has a homestead exemption on the Property. However, "California law provides that consensual liens must be paid ahead of homestead exemptions. *See* Cal. Civ. Proc. Code § 704.850; *see also Amin v. Khazindar*, 112 Cal. App. 4th 582, 588, 5 Cal. Rptr. 3d 224 (Cal. 2003) (finding that homestead exemption has no effect on liens created voluntarily by property owners, nor does it have any effect on the claims of creditors secured by liens with priority)." *Babaee v. Marshack (In re Babaee)*, 2023 U.S. App. LEXIS 24253, at *3 (9th Cir. Sep. 13, 2023).

---

[12] Pursuant to motions for default judgment filed by Trustee with respect to defendants J-Pad, J-Sandcastle, and Ronald J. Pierpoint, default judgments were entered against the defendants [Adv. Dks. 79, 81, 83] and avoided and preserved Debtor's transfers of title of the Property to J-Sandcastle and recovered legal title to the beneficial interest in the Property for Debtor's Estate in the name of Trustee. Stipulated judgments were also entered into with defendants Steven Gallian, Brian Gallian, Justin Barclay, and E.J. Gallian, which avoided, recovered, and preserved their liens for the benefit of the Estate as well. It appears that Debtor’s family did not want any part of this fraudulent enterprise.

Generally, an over-encumbered property will not be sold by a trustee, but "there are a variety of circumstances where a sale of over encumbered property would be in the best interests of the estate." *See e.g., In re Canonigo*, 276 B.R. 257, 262 (Bankr. N.D. Cal. 2002) (discussing the sale of over-encumbered property and avoided liens).

Through the Sale Motion, the Trustee sought to sell property of the Estate, which is his primary job. Trustee has avoided, recovered and preserved the consensual liens against the Property for the benefit of the Estate. Debtor’s homestead exemption is junior to the recovered lien, now controlled by the Trustee, and Trustee can consent to a sale even if the amount received will not pay off the obligation secured by the avoided lien. *In re Ellis*, 2011 Bankr. LEXIS 89, at *7 (Bankr. D. Idaho Jan. 7, 2011). Debtor cannot exempt this lien either. *See In re Bethea*, 275 B.R. 127, 133 (Bankr. D.D.C. 2002) ("Finally, even if the debtor were to amend his schedule C after the lien is avoided to claim the lien as exempt property, the claimed exemption would be invalid.").

Despite the foregoing, Debtor argues that no money was transferred in connection with J-Pad's lien and that the recovered lien is worth $0.[13] This argument is absurd. If the Court deemed Debtor's argument valid, any person could put "fake liens" on their property to shield equity from creditors and then claim later that the lien was worth $0 once the Trustee discovered fraud. This would encourage any homeowner to place fraudulent liens on their property to shield equity and then admit such action once a trustee initiated an avoidance action, which would render fraudulent transfer sections of the code toothless. In this matter, Debtor's actions in attempting to shield equity in the Property is impermissible. *See e.g., Ezra v. Seror (In re Ezra)*, 537 B.R. 924, 927 (B.A.P. 9th Cir. 2015). As noted in the Sale Order, Debtor forgets that if a sale were to occur with the J-Pad lien, un-avoided, J-Pad, LLC (of which she is the sole member) would have been paid $225,000 before her homestead.

---

[13] While it is undisputed that no funds were transferred in connection with the J-Pad lien, in Debtor’s Amended Schedule D [Dk. 22], Debtor scheduled the J-Pad Lien in the amount of $225,000.

Due to the foregoing, Trustee may sell the Property free and clear under § 363, which logically terminates any possessory rights Debtor held in the Property. *See* § 542 and § 363. Further, Trustee is empowered to sell the property not simply because he is the holder of an avoided lien, but because the sale of the Property would result in a benefit to the Estate.

Additionally, to the extent that Debtor argued that the final J-Pad judgment is worth $0, this clearly is an indirect collateral attack. The Final Judgment provides:

> The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the “Property”) reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor’s estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

[Dk. 79, ¶ 2, 4]. The judgment explicitly provides that the lien is avoided in the amount of $225,000, not $0. Moreover, as previously noted, Debtor scheduled, under penalty of perjury, the amount due to J-Pad as $225,000.

Finally, Debtor’s arguments regarding a HELOC loan are not persuasive as HELOC's are a specific type of loan with specific provisions controlling their governance. The argument is not relevant here.

Other than unpersuasive general arguments, Debtor has not provided any legal authority to support the assertions in the Motion to demonstrate that Debtor would prevail on the merits of an appeal.

<u>(2) Whether the applicant will be irreparably injured absent a stay</u>

Debtor argues she will suffer irreparable harm in two ways if a stay is not granted. Ironically, by her identified intentional fraud (which cost her bankruptcy discharge in the first place), she has been able to keep her creditors at bay for over four years, living free in her mobile home. The irreparable harm at this juncture falls squarely on the creditors of this Estate, the Trustee, and his counsel who have diligently

uncovered and dismantled Debtor’s fraud. She is correct that if a stay is not granted, now that the Sale Motion has been approved, she will be denied the ability to effectively appeal and continue to delay the bankruptcy case management and recovery to her creditors. The harm as to Debtor is not irreparable. She will obtain replacement housing, or perhaps stay with some of the relatives to whom she granted fraudulent liens on the Property.

While Debtor’s situation might be unfortunate, it is one of her own making and of no surprise. As noted by *Senate Permanent Subcom. on Investigations. v. Ferrer*, 2016 U.S. Dist. LEXIS 200309, at *13 (D.D.C. Sep. 30, 2016):

> It is well-settled that a party requesting the extraordinary equitable relief of a stay pending appeal "does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012) (internal quotation marks and citation omitted) (addressing the factor of irreparable harm in the context of a preliminary injunction); see also *Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 96 S. Ct. 2333, 49 L. Ed. 2d 124 (1976) (per curiam) (holding that a litigant cannot "be heard to complain about damage inflicted by its own hand"); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674, 244 U.S. App. D.C. 349 (D.C. Cir. 1985); Safari Club Int'l v. Jewell, 47 F. Supp. 3d 29, 36 (D.D.C. 2014), appeal dismissed, No. 14-5152, 2014 U.S. App. LEXIS 21304, 2014 WL 5838221 (D.C. Cir. Nov. 7, 2014).

In this matter, Debtor fraudulently attempted to shield equity in her Property. Had Debtor not granted the consensual liens subjected to avoidance, the Property would have only been subjected to Debtor's homestead exemption of approximately $600,000 with no liens in front. Fraud will out.[14] Accordingly, the asserted "irreparable harm" Debtor may face is the result of her own actions and so this factor weighs against the granting of a stay pending appeal.

<u>(3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding</u>

If the Court grants the Motion, the sale may not close due to the delay which would result in a loss of net recovery to the Estate to pay Debtor's creditors. Further, as

[14] "Fraud will out" is modeled after the older proverbial expression "Murder will out," which means that the truth about a serious wrongdoing will eventually be revealed, no matter how well it is concealed.

Trustee observes, Debtor's fraudulent transfers and conduct thus far have already delayed the sale of the Property for years. *In re Frantz, 534 B.R. 378, 390* (Bankr. D. Idaho 2015) (holding that because closing the present sale is in the best interests of the estate and its creditors, and that if stayed there would be a risk of loss of that sale as well as additional expenses incurred by the estate pending resolution of the appeal, substantial harm will come to trustee and the bankruptcy estate if a stay is imposed). Thus, this factor weighs against granting the Motion.

<u>(4) Where the public interest lies</u>

Under the facts and circumstances of this case, this factor weighs against granting the Motion for Stay. As explained by the Court in *In re Frantz,* 534 B.R. 378, 390 (Bankr. D. Idaho 2015), the public has an interest in prompt resolution of the bankruptcy process, which has already been circumvented in this case:

> [A]s to the fourth factor, the Court concludes public interest is not especially implicated by the dispute between Debtors and Trustee. To the extent it is, imposition of a stay on appeal retards the legitimate public interest in seeing the bankruptcy process not just run its course but to do so with due speed. Assets should be promptly gathered and administered, and creditors paid. Congress intended a deliberate and orderly process and charged trustees with the duty to "collect and reduce to money the property of the estate . . . as expeditiously as is compatible with the best interest of parties in interest." *See* § 704(a)(1). Staying the order of sale does not serve that interest.
>
> There is also public interest in due process. Debtors have been afforded the opportunity to have their objections heard and evaluated by the Court. They were given one prior opportunity to prove up their alternative proposal and failed to do so. The denial of a second opportunity, and the overruling of their objections, followed full consideration of their written submissions and oral argument. While disappointed in the outcome, Debtors were afforded due process.
>
> Though this factor of "public interest" is not significantly implicated in the present case, it does not tilt toward the imposition of stay.

*In re Frantz,* 534 B.R. 378, 390 (Bankr. D. Idaho 2015).

Debtor, in the Motion, argues that the California's public policy is to protect debtors from becoming homeless at the hands of aggressive judgment creditors. However, the only aggression here is Debtor’s four-year onslaught to impede the

bankruptcy process. There is no judgment creditor involved in this matter. The Trustee avoided fraudulent transfers after a voluntary petition was filed by Debtor in 2021 and is completing his duties to administer the Estate for the benefit of creditors.

**IV. Conclusion**

For all of the foregoing reasons, the Court finds good cause to DENY the Motion for Stay Pending Appeal. The parties are ordered to submit (a) this Order Denying Motion for Stay Pending Appeal and (b) the Order Re (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turnover Manufactured Home and Authorizing Issuance of Writ of Assistance; (2) Trustee's Motion to Authorize Sale of Manufactured Home; and (3) Good Faith Finding Pursuant to Section 363(m), entered April 10, 2025 [Dk. 593] to any District Court or Bankruptcy Appellate Panel that further considers any motion for stay pending appeal.

**IT IS SO ORDERED.**

Date: April 10, 2025

Scott C. Clarkson
United States Bankruptcy Judge